GOLD BENNETT CERA & SIDENER LLP
PAUL F. BENNETT (State Bar No. 63318)
STEVEN O. SIDENER (State Bar No. 121062)
JOSEPH M. BARTON (State Bar No. 188441)
C. ANDREW DIRKSEN (State Bar No. 197378)
595 Market Street, Suite 2300
San Francisco, California 94105-2835
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
E-Mail: pfb@gbcslaw.com
E-Mail: ssidener@gbcslaw.com
E-Mail: jbarton@gbcslaw.com
E-Mail: cdirksen@gbcslaw.com

Attorneys for Plaintiffs Computer World Solution,
Inc., Industrial Computing, Inc., Omni Circuits
International, LLC And General Digital Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | ) Case No. C-07-1827 SI ) ) MDL No. 1827 ) ) |
| _____ | ) |
| This Document Relates To: ALL DIRECT PURCHASER ACTIONS | ) **THE COMPUTER WORLD** ) **PLAINTIFFS' MOTION FOR** ) **APPOINTMENT OF GOLD BENNETT** ) **CERA & SIDENER LLP AS AN** ) **INTERIM CO-LEAD CLASS COUNSEL** ) **IN THE DIRECT PURCHASER CASES** ) **AND FOR ENTRY OF PRETRIAL** ) **ORDER NO. 1** ) ) Date:  June 8, 2007 ) Time: 9:00 a.m. ) Place: Courtroom 10 |

#117001

1

**NOTICE OF MOTION AND MOTION**

2  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3        PLEASE TAKE NOTICE that at 9:00 a.m. on June 8, 2007, or as soon thereafter as the

4  matter may be heard, Plaintiffs Computer World Solution, Inc., Omni Circuits International LLC,

5  General Digital Corporation and Industrial Computing, Inc., through their undersigned counsel

6  will, and hereby do, move this Court, before the Hon. Susan Illston at the United States District

7  Court, 450 Golden Gate Avenue, San Francisco, California, for an Order appointing Gold

8  Bennett Cera & Sidener LLP as an Interim Co-Lead Class Counsel for the Direct Purchaser

9  Plaintiffs and for entry of proposed Pretrial Order No. 1.

10        This motion is made pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and

11  on the grounds that the appointment of Interim Lead Counsel is appropriate at this time and that

12  Gold Bennett Cera & Sidener LLP is well-qualified and experienced to serve as an interim co-

13  lead class counsel in the direct purchaser cases.  This motion is based on this notice of motion

14  and motion, the following memorandum of law, all pleadings and records on file, and any

15  additional briefing and argument presented to the Court before or at the hearing on this motion.

16

**MEMORANDUM OF LAW**

17        Plaintiffs Computer World Solution, Inc., Omni Circuits International LLC, General

18  Digital Corporation and Industrial Computing, Inc. (collectively, the "Computer World

19  Plaintiffs") respectfully submit this memorandum in support of their Motion For Appointment of

20  Gold Bennett Cera & Sidener LLP ("Gold Bennett") As An Interim Co-Lead Class Counsel In

21  The Direct Purchaser Cases and For Entry of Pretrial Order No. 1.

22  **I.    INTRODUCTION**

23        This litigation arises out of an alleged global price-fixing conspiracy involving Thin-Film

24  Transistor Liquid Crystal Display ("TFT-LCD").  TFT-LCD is a form of liquid crystal display

25  which uses thin-film transistor technology to improve image quality.  Because of its light weight

26  and low voltage requirements, TFT-LCD technology is used in a wide variety of consumer

27  electronics products, including telephones, cameras and televisions.

28  //

THE COMPUTER WORLD PLTF'S MOT FOR APPT OF INTERIM CO-LEAD CLASS COUNSEL IN THE DIRECT
PURCHASER CASES AND FOR ENTRY OF PRETRIAL ORDER NO. 1 - Case No. C-07-1827 SI          -1-

#117001

1   The market for the manufacture and sale of TFT-LCD products is oligopolistic. In 2005,

2   defendants LG Philips Co., Ltd., Samsung Electronics Co., Ltd., AU Optronics Corp., and Chi

3   Mei Optoelectronics Corporation controlled approximately 70% of the global TFT-LCD panel

4   market. In December 2006, published reports first revealed that antitrust authorities in South

5   Korea, Japan, the European Union and the United States had begun coordinated investigations

6   into whether major LCD flat panel manufacturers had formed an illegal pricing cartel.

7   Thereafter, several cases were filed around the country alleging that certain manufacturers of

8   TFT-LCD had improperly conspired and agreed with each other to fix and artificially maintain

9   the price of TFT-LCD.

10   On April 17, 2007, the Judicial Panel on Multidistrict Litigation transferred the TFT-LCD

11   antitrust cases to this Court for consolidated or coordinated pretrial proceedings pursuant to 28

12   U.S.C. § 1407. Although numerous TFT-LCD cases have been filed on behalf of indirect

13   purchasers, the Computer World Plaintiffs believe that twenty-four (24) cases have been filed to

14   date on behalf plaintiffs claiming to be direct TFT-LCD purchasers. A chart listing the direct

15   purchaser cases is attached hereto as Exhibit A. Each of the direct purchaser plaintiffs has

16   alleged that defendants have committed violations of Section 1 of the Sherman Act, 15 U.S.C.

17   §1.

18   The Computer World Plaintiffs believe that it is appropriate for the Court to appoint

19   interim co-lead class counsel at this juncture. Interim co-lead class counsel are needed to protect

20   the interests of the class during pre-certification activities, such as making and responding to

21   motions, conducting discovery and moving for class certification. Fed. R. Civ. P 23(g)(2)(A).

22   As discussed more fully below, the Computer World Plaintiffs seek to have their counsel, Gold

23   Bennett, appointed as one of **no more than three (3) interim co-lead class counsel** for the direct

24   purchaser plaintiffs. The Computer World Plaintiffs do not make any recommendation as to

25   which two other counsel should be selected along with Gold Bennett to serve as interim co-lead

26   class counsel, other than to suggest that the selection be limited to those firms which (1)

27   represent qualified, serious and viable direct purchaser plaintiffs and (2) have the necessary

28   experience and resources to help manage a complex global cartel case such as this.

#117001

1    There are several reasons why Gold Bennett should be appointed to serve as one of the

2  interim co-lead class counsel in this case. First, Gold Bennett's clients, the Computer World

3  Plaintiffs, are large, significant purchasers who collectively represent **over $130 million worth**

4  **of TFT-LCD purchases** during the class period.[1]  Their large financial stake in this case means

5  that their interests are aligned with those of the class, namely, to establish defendants' liability

6  with an eye toward maximizing the recovery of money damages.  Given their stature and viability

7  as potential class representatives, they deserve to have representation in the interim leadership of

8  this case through their counsel, Gold Bennett.

9    Second, Gold Bennett has decades of class action experience and possesses the necessary

10 credentials, resources and expertise to effectively represent the interests of the putative direct

11 purchaser class.  Gold Bennett has extensive antitrust experience and has been appointed to serve

12 as co-lead class counsel in some of the nation's largest and most high-profile direct purchaser

13 antitrust cases.  In those cases, it has helped to recover hundreds of millions dollars.  Declaration

14 of Steven O. Sidener In Support of The Computer World Plaintiffs' Motion For The

15 Appointment of Gold Bennett Cera & Sidener LLP As An Interim Co-Lead Class Counsel and

16 For Entry of Pretrial Order No. 1 (the "Sidener Decl."), ¶3.

17    Furthermore, much of Gold Bennett's antitrust expertise has focused on prosecuting

18 complex international cartel cases such as this.  Indeed, in the last few years, it has successfully

19 obtained multimillion dollar recoveries in direct purchaser antitrust cases against several large

20 foreign entities and conglomerates throughout the world, including ones located in Germany,

21 France, Japan, The Netherlands, Italy, England and Taiwan, among other places.  Sidener Decl.,

22 ¶4.  In so doing, Gold Bennett has developed substantial experience in dealing with the difficult

23 issues that arise when suing foreign entities, such as obtaining service of process through

24 international conventions and conducting discovery outside of the United States.  Gold Bennett's

25 extensive experience in handling complex international price fixing cases would clearly be of

26 significant benefit to the members of the putative direct TFT-LCD purchaser class and help to

27 ─────────────

28 [1] The class period in the Computer World Plaintiffs' complaints runs from January 1, 1998
through December 31, 2005.

1    ensure that their interests are well-protected prior to class certification.

2        Accordingly, the Computer World Plaintiffs respectfully request that the Court grant their

3    motion and appoint Gold Bennett as one of three interim co-lead class counsel for the direct

4    purchaser plaintiffs.

5    **II.**      **THE COURT SHOULD APPOINT GOLD BENNETT AS AN INTERIM CO-LEAD COUNSEL IN THE DIRECT PURCHASER CASES**

6

7        **A.**      <u>**The Applicable Legal Standards**</u>

8        Fed. R. Civ P. 23(g)(2)(A) provides that a court "may designate interim counsel to act on

9    behalf of the putative class before determining whether to certify the action as a class action." 

10   The commentary to Rule 23 explains that the rule "authorizes [a] court to designate interim

11   counsel during the pre-certification period if necessary to protect the interests of the putative

12   class." Fed. R. Civ. P. 23, Advisory Committee Notes. In cases where, as here, "multiple

13   overlapping and duplicative class actions have been transferred to a single district," the

14   designation of interim class counsel is "probably essential for efficient case management." *In re*

15   *Air Cargo Shipping Services Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006).

16        Interim class counsel have responsibility for "protecting the interests of the class during

17   pre-certification activities, such as making and responding to motions, conducting any necessary

18   discovery, moving for class certification and negotiating settlement." Manual for Complex

19   Litigation (Fourth) (the "Manual"), § 22.11 at 246 (2004); *Air Cargo*, 240 F.R.D. at 57. The

20   criteria to be considered in appointing lead class counsel is set forth in Rule 23(g), Fed. R. Civ.

21   P. Although nowhere stated in the rules or advisory notes, some courts have concluded that the

22   selection criteria outlined in Rule 23(g) are also applicable in selecting interim class counsel.

23   *See, e.g., Air Cargo*, 240 F.R.D. at 57; *Parkinson v. Hyundai Motor America*, 2006 WL

24   //

25   //

26   //

27   //

28   //

THE COMPUTER WORLD PLTF'S MOT FOR APPT OF INTERIM CO-LEAD CLASS COUNSEL IN THE DIRECT
PURCHASER CASES AND FOR ENTRY OF PRETRIAL ORDER NO. 1 - Case No. C-07-1827 SI      -4-

#117001

1 | 2289801, at *2 (C.D. Cal. Aug. 7, 2006). Rule 23(g)'s selection criteria include:

2
> [T]he work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class....

3

4

5 | Fed. R. Civ. P. 23(g)(1)(C).[2]

6 |      The appointment of qualified and experienced lead counsel will clearly help to avoid

7 | needless waste and cost, and promote necessary coordination of proceedings, such as motion

8 | practice. "The benefits achieved by consolidation and the appointment of general [lead] counsel,

9 | *i.e.*, elimination of duplication and repetition and in effect the creation of a coordinator of diffuse

10 | plaintiffs through whom motions and discovery proceeding will be channeled, will most certainly

11 | redound to the benefit of all parties to the litigation." *MacAlister v. Guterma*, 263 F.2d 65, 69

12 | (2d Cir. 1958).

13 |      In appointing lead counsel, however, the focus should be on the best interests of the

14 | parties and the Court. The interim leadership organization should reflect, to the extent possible,

15 | the diversity among the plaintiffs. Indeed, in determining an appropriate leadership structure, the

16 | Manual urges the court to ensure that the designated counsel fairly represent the various interests

17 | in the litigation. *Manual*, §10.224. Leadership structures that are cobbled together merely to

18 | advance the interests of particular lawyers should be rejected. The selection of lead counsel

19 | should always be guided by the best interests of the plaintiffs, and not by self-serving agreements

20 | among counsel. *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 187 (2d Cir. 1987)

21 | (*citing Cullen v. New York State Civil Serv. Comm'n.*, 566 F.2d 846, 849 (2d Cir. 1977)).

22 | **B.    The Computer World Plaintiffs Are Large, Serious and Viable Plaintiffs Who Deserve To Have A Voice In The Interim Leadership Structure Of This Case**

23

24 |      In a case with this degree of complexity, it is important that the interests of the class be

25 | guided by plaintiffs with a significant financial interest, such as the Computer World Plaintiffs.

26 | Such plaintiffs will necessarily have a strong economic incentive to ensure a vigorous

27

28
> [2] "If more than one adequate applicant seeks appointment as class counsel, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2)(B).

#117001

1  prosecution of the case for the benefit of the entire class. Plaintiffs with a large financial interest

2  in the case will probably have a greater incentive and ability (through their increased knowledge

3  of the market) to protect the interests of the class than plaintiffs who have a small (or nominal)

4  loss. Providing large, significant plaintiffs with a voice in the leadership organization will also

5  help to avoid inefficient leadership proposals that result from secret "backroom" political deals.

6        Each of the Computer World Plaintiffs is a large direct purchaser of TFT-LCD.

7  Collectively, they purchased **over $130 million** of TFT-LCD during the class period. Sidener

8  Decl., ¶5. Given their size and viability as potential class representatives, they should have

9  representation in the interim leadership of the direct purchaser litigation.

10       The following are brief profiles of the Computer World Plaintiffs:

11       **1.    Computer World Solution, Inc.**

12       Computer World Solution, Inc. ("CWS") is a corporation headquartered in Wheeling

13  Illinois. It has operations in North America, South America, Europe, Australia and Africa which

14  includes fourteen (14) factories and over 98,500 employees in over 280,000 square feet of

15  manufacturing space. It manufactures LCD flat panel monitors and TVs for resale. CWS

16  primarily works with volume resellers of LCD flat panel monitors and LCD flat panel TVs.

17  During the Class Period, CWS **purchased approximately $110 million worth** of LCD flat

18  panel monitors directly from defendants. Sidener Decl., ¶6.

19       **2.    General Digital Corporation**

20       General Digital Corporation ("General Digital") is a corporation located in Connecticut.

21  General Digital is a maker of industrial and special purpose LCD flat panel monitors, provider of

22  sunlight readable optical enhancements to LCD monitors and provider of software services. It

23  purchased LCD flat panel monitors directly from one or more of the defendants during the Class

24  Period. Its purchases of LCD flat panel monitors directly from defendants during the Class

25  Period were **approximately $7 million**. Sidener Decl., ¶7.

26       **3.    Industrial Computing, Inc.**

27       Industrial Computing, Inc. ("Industrial Computing") is a corporation located in

28  Massachusetts. It manufactures a range of industrial and military computer products. The

---

THE COMPUTER WORLD PLTF'S MOT FOR APPT OF INTERIM CO-LEAD CLASS COUNSEL IN THE DIRECT
PURCHASER CASES AND FOR ENTRY OF PRETRIAL ORDER NO. 1 - Case No. C-07-1827 SI          -6-

#117001

1  company builds specialized flat panel displays, ruggedized portable laptop, notebook and

2  lunchbox computers.  Industrial Computing builds products for major aerospace, automotive,

3  industrial and other firms.  During the Class Period, Industrial Computing purchased

4  **approximately $3.5 million** of LCD flat panel monitors directly from one or more of the

5  defendants. Sidener Decl., ¶8.

6          **4.**      **Omni Circuits International LLC.**

7        Omni Circuits International LLC ("Omni") is a limited liability company headquartered in

8  Brooksville, Florida.  It is an independent distributor of electronic components.  During the Class

9  Period, Omni purchased **more than $12 million** of LCD flat panel monitors directly from one or

10  more of the defendants.  Sidener Decl., ¶9.

11       **C.**     **Gold Bennett Is Highly Experienced and Well-Qualified To Serve As An Interim Co-Lead Class Counsel In This Case**

12

13          **1.**      **A Three-Firm Interim Leadership Structure Would be Optimal**

14        Because of the size and the complexity of this case, the Computer World Plaintiffs

15  believe that the optimal interim leadership structure in the direct purchaser litigation is one that is

16  comprised of no more than three (3) firms.  The case is plainly large and global in nature.  As

17  such, it makes sense to have more than one firm in the leadership in order to properly manage the

18  complexity of discovery and motion practice and, more importantly, to muster the necessary

19  financial and managerial resources to prosecute effectively this case against defendants.  The

20  Computer World Plaintiffs, however, believe that having more than three firms in the interim

21  leadership structure is unnecessary and inefficient.  Three is enough.

22        The Computer World Plaintiffs make no recommendation as to which other two firms

23  should be selected to serve as interim co-lead counsel along with Gold Bennett, except that the

24  other two firms should (1) represent qualified, serious and viable direct purchaser plaintiffs and

25  (2) have the necessary experience and resources to help mange a complex global cartel case such

26  as this.

27  //

28  //

THE COMPUTER WORLD PLTF'S MOT FOR APPT OF INTERIM CO-LEAD CLASS COUNSEL IN THE DIRECT PURCHASER CASES AND FOR ENTRY OF PRETRIAL ORDER NO. 1 - Case No. C-07-1827 SI  -7-

#117001

1    **2.    The Direct Purchaser Class Would Benefit From Gold Bennett's**
     **Inclusion In The Interim Leadership Structure**

2

3        Gold Bennett should be appointed as one of the three interim co-lead counsel in this case.

4    As detailed in its Firm Resume, Gold Bennett possesses a wealth of experience and the resources

5    necessary to help manage and prosecute this litigation.  Sidener Decl., Ex. A.  They have

6    represented plaintiffs for over thirty years in complex business, antitrust and trade regulation

7    cases, among others.  *Id.*  Gold Bennett Cera & Sidener is an AV-rated firm by Martindale-

8    Hubbell and they have recovered hundreds of millions of dollars on behalf of clients in antitrust

9    cases.  *Id.*

10       Gold Bennett has served as co-lead counsel in some of the nation's largest and most

11   significant direct purchaser antitrust cases during the last few years, including:

12       •    *In re Rubber Chemicals Antitrust Litigation*, MDL No. 1648 (N.D. Cal) ($320

13       million);

14       •    *In te Methionine Antitrust Litigation*, MDL No. 1311 (N.D. Cal) ($107 million);

15       •    *In re EPDM Antitrust Litigation*, MDL No. 1542 (D. Conn)  ($81 million)

16            (partial);

17       •    *In re CR Antitrust Litigation*, MDL No. 1642 (D. Conn) ($62 million);

18       •    *In re Organic Peroxides Antitrust Litigation* (D.D.C.) ($37 million);

19       •    *In re NBR Antitrust Litigation* ($35 million) (W.D. Pa.) ($35 million);

20       •    *In re Plastics Additives Antitrust Litigation*, MDL No. 1684 (E.D. Pa.) ($30.4

21            million) (partial);

22       •    *In re Polyester Staple Antitrust Litigation*, MDL No. 1516 (W.D.N.C.) ($30.5

23            million) (partial); and

24       •    *In re MCAA Antitrust Litigation* (D.D.C.) ($15.6 million).

25   Sidener Decl., ¶3 and Ex. A.

26       Moreover, nearly all of these cases have involved allegations of global price-fixing and

27   market-rigging schemes.  Serving as co-lead counsel in these cases has given Gold Bennett a

28   wealth of experience in managing and prosecuting global cartel litigation.  In just the last five

1  years, Gold Bennett has helped to recover hundreds of millions of dollars in direct purchaser

2  antitrust cases against German, French, Dutch, Italian, Taiwanese and Japanese companies.

3  Sidener Decl., ¶4.  In so doing, Gold Bennett has obtained significant experience in dealing with

4  such thorny issues as effectuating service of process through international conventions, obtaining

5  discovery against foreign defendants and avoiding dismissal of foreign defendants on the basis of

6  a claim of lack of personal jurisdiction.  Gold Bennett's experience in aggressively litigating

7  against large foreign companies will likely prove important in this case.  Clearly, Gold Bennett

8  has the broad expertise, qualifications and resources to serve as interim co-lead class counsel in

9  this case.

10      Gold Bennett's qualifications to serve as effective co-lead class counsel in global antitrust

11  cases was recently confirmed by Judge Jenkins in *In re Rubber Chemicals Antitrust Litigation.*

12  That class action case arose from an international price fixing scheme involving rubber chemicals

13  used to treat and cure finished rubber products, such as tires.  The class action resulted in a

14  recovery of nearly $320 million.  In his Order certifying a class in that case, Judge Jenkins

15  observed the following:

16      In the instant lawsuit, it is undisputed that the counsel selected by the named
        plaintiffs – Gold Bennett and Cohen Milstein – have extensive experience and
17      expertise in antitrust and other class actions, as well as other complex litigation,
        and have successfully prosecuted such cases in courts across the country.  Gold
18      Bennett and Cohen Milstein, Co-Chairs of the Plaintiffs' Executive Committee,
        have worked together to identify, investigate, and prosecute the claims alleged
19      here.  They have reviewed documents produced in discovery, worked with
        economists to analyze impact and damage methodologies, analyzed comprehensive
20      transactional data, briefed legal issues, and engaged in negotiations with opposing
        counsel.  Gold Bennett and Cohen Milstein have also devoted considerable
21      attorney resources to this case and have associated with other counsel, experienced
        in class actions, who have assisted in the matter as members of the Plaintiffs'
22      Executive Committee.  There is every indication that Gold Bennett and Cohen
        Milstein are well equipped to fairly and adequately represent the interests of the
23      Class.

24  *In re Rubber Chemicals Antitrust Litig.,* 232 F.R.D. 346, 355 (N.D. Cal. 2006).[3]

25

26  _____

27  [3]    Judge Jenkins also observed of Gold Bennett in Rubber Chemicals:  "[C]ounsel before
    the Court are experienced counsel, and not only experienced in terms of longevity of practice, but
28  particularly expertise in antitrust matters of this nature."  Trans. Of Proceedings (June 21, 2005),
    at 16.  Sidener Decl., Ex. B at 16.

THE COMPUTER WORLD PLTF'S MOT FOR APPT OF INTERIM CO-LEAD CLASS COUNSEL IN THE DIRECT
PURCHASER CASES AND FOR ENTRY OF PRETRIAL ORDER NO. 1 - Case No. C-07-1827 SI        -9-

#117001

The quality of Gold Bennett's work in class actions has been repeatedly recognized by the courts. Indeed, Gold Bennett's conduct on behalf of one class led the then Chief Judge of the Northern District of California to write:

> [T]his action has been extraordinarily complex, resulting in over 300 orders by this court, several of which have been published, and many of which addressed difficult issues of first impression, and were eventually published. . . . [T]hroughout this action, class counsel has demonstrated superior legal abilities, and has submitted to the court briefs, memoranda and oral argument of the highest quality. . . . [C]ounsel's tireless efforts have conferred substantial benefits on the class. . .

*Roberts v. Heim*, 1991 WL 427888 at *6 (N.D. Cal. August 28, 1991), attached to Sidener Decl., Ex. C.

Put simply, in light of its significant credentials, experience and resources, Gold Bennett should be appointed to serve as one of the interim co-lead class counsel in this case.

## III.  CONCLUSION

For all of the foregoing reasons, the Computer World Plaintiffs respectfully request that its motion seeking the appointment of its counsel, Gold Bennett, as one of the co-lead class counsel in this litigation be granted. A proposed form of order (Pretrial Order No. 1) is submitted herewith.

Dated: May 4, 2007

GOLD BENNETT CERA & SIDENER LLP

By:*/s/ Steven O. Sidener*
          Steven O. Sidener

Attorneys for Plaintiffs Computer World Solution, Inc., Industrial Computing, Inc., Omni Circuits International, LLC And General Digital Corporation

THE COMPUTER WORLD PLTF'S MOT FOR APPT OF INTERIM CO-LEAD CLASS COUNSEL IN THE DIRECT PURCHASER CASES AND FOR ENTRY OF PRETRIAL ORDER NO. 1 - Case No. C-07-1827 SI          -10-

#117001