Guido Saveri (SBN 22349; guido@saveri.com)
R. Alexander Saveri (SBN 173102, rick@saveri.com)
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6913

Bruce L. Simon (SBN 96241; bsimon@psswplaw.com)
Esther L. Klisura (SBN 221171; eklisura@psswplaw.com)
PEARSON, SIMON, SOTER, WARSHAW & PENNY, LLP
44 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

Steve W. Berman (*pro hac vice*, steve@hbsslaw.com)
Anthony D. Shapiro (*pro hac vice*, tony@hbsslaw.com)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Michael D. Hausfeld (mhausfeld@cmht.com)
Andrea L. Hertzfeld (ahertzfeld@cmht.com)
COHEN MILSTEIN HAUSFELD & TOLL, PLLC
1100 New York Avenue, NW
Suite 500 West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

[Additional counsel listed on signature page]
*Counsel for Direct Purchaser Plaintiffs and
the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. C07-1827 SI |
| | MDL No. 1827 |
| This Document Relates to: | **NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL** |
| ALL DIRECT PURCHASER ACTIONS | |
| | Date: June 8, 2007 |
| | Time: 9:00 a.m. |
| | Ctrm: 10, 19th Floor |
| | Honorable Susan Illston |

1

**TABLE OF CONTENTS**

2

**Page**

3   I.  INTRODUCTION ...................................................................................................... 3

4   II.  BACKGROUND ........................................................................................................ 3

5   III.  ARGUMENT ............................................................................................................. 4

6     A.  The Appointment of Interim Lead Class Counsel is Permitted
7        Under Rule 23(g) ............................................................................................. 4

8     B.  Proposed Interim Lead Class Counsel Have Extensive Antitrust Class
     Action Experience ........................................................................................... 5

9        1.  Saveri & Saveri, Inc. ........................................................................... 5

10       2.  Pearson, Simon, Soter, Warshaw & Penny, LLP .......................... 7

11       3.  Hagens Berman Sobol Shapiro LLP .................................................. 9

12       4.  Cohen Milstein Hausfeld & Toll, PLLC .......................................... 11

13    C.  Proposed Interim Lead Class Counsel Have Taken Significant Steps to
14       Advance This Litigation ................................................................................ 13

15    D.  Proposed Interim Lead Class Counsel Have the Resources and Geographic
     Coverage to Effectively Prosecute This Litigation ................................ 14

16    E.  Proposed Interim Lead Class Counsel Affirm Their Commitment to Work
17       Cooperatively With All Counsel .................................................................. 14

18    F.  Proposed Interim Lead Class Counsel Have a Case Management Plan
     for this Case .................................................................................................... 14

19       1.  Proposed Interim Class Counsel will Coordinate with Counsel for the
20         Indirect Purchaser Class ................................................................. 15

21       2.  Coordination of the Direct and Indirect Cases ......................... 16

22       3.  Coordination with the DOJ ........................................................ 19

23       4.  Additional Plaintiffs .................................................................... 19

     5.  Trial ................................................................................................. 20

24       6.  Proposed Interim Class Counsel's Meet and Confer Efforts ..... 21

25  IV.  CONCLUSION ...................................................................................................... 22

26

27

28

**NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL**
Master File No. C07-1827 SI

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

      **PLEASE TAKE NOTICE** that on June 8, 2007 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Susan Illston of the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, the undersigned law firms will and hereby do move the Court for an order appointing them as Interim Lead Class Counsel for the putative ***direct purchaser*** class in these actions and an order establishing pretrial procedures to govern before the first case-management conference and entry of a more comprehensive case-management order.  This motion is brought pursuant to Rule 1 and Rule 23(g) of the Federal Rules of Civil Procedure.  The grounds for this motion are that this complex case will benefit from the appointment of interim lead class counsel, and that the undersigned proposed interim lead class counsel are well qualified for the position due to their extensive experience in antitrust class action litigation and trials.  This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, the accompanying declaration of Bruce L. Simon and attached exhibits, any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

DATED:  May 4, 2007                 Respectfully submitted,

                     By:    /S/ Bruce L. Simon
                          Bruce L. Simon
                          Esther L. Klisura
                          PEARSON, SIMON, SOTER, WARSHAW
                            & PENNY, LLP
                          44 Montgomery Street, Suite 1200
                          San Francisco, CA  94104
                          Telephone:  (415) 433-9000
                          Facsimile:   (415) 433 9008

                          *Counsel for Direct Purchaser Plaintiffs Phelps Technologies, Inc. and Marshall Myers and the Proposed Direct Purchaser Plaintiff Class*

-1-
**NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL**
Master File No. C07-1827 SI

Guido Saveri
R. Alexander Saveri
Lisa M. Waste
Cadio Zirpoli
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA  94111
Telephone:   (415) 217-6810
Facsimile:   (415) 217-6913

*Counsel for Direct Purchaser Plaintiffs Crago
Corporation and Orion Home Systems, LLC and
the Proposed Direct Purchaser Plaintiff Class*

Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ronnie S. Spiegel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:   (206) 623-7292
Facsimile:   (206) 623-0594

Reed Kathrein
HAGENS BERMAN SOBOL SHAPIRO LLP
425 Second Street, Suite 500
San Francisco, CA  94107
Telephone:   (415) 896-6300
Facsimile:   (415) 896-6301

*Counsel for Direct Purchaser Plaintiff Home
Technologies Bellevue LLC and the Proposed
Direct Purchaser Plaintiff Class*

Michael D. Hausfeld
Kathleen M. Konopka
Andrea L. Hertzfeld
COHEN MILSTEIN HAUSFELD & TOLL, PLLC
1100 New York Avenue, NW
Suite 500 West Tower
Washington, DC  20005
Telephone:   (202) 408-4600
Facsimile:   (202) 408-4699

*Counsel for Direct Purchaser Plaintiffs Art's TV
& Appliance, Omnis Computer Systems, and
Magic Video, Inc. and the Proposed Direct
Purchaser Plaintiff Class*

**NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL**
Master File No. C07-1827 SI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, the law firms of Saveri & Saveri, Inc. ("Saveri"), Pearson, Simon, Soter, Warshaw & Penny, LLP ("Pearson Simon"), Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), and Cohen, Milstein, Hausfeld & Toll, PLLC ("Cohen Milstein"), respectfully seek appointment as Interim Lead Class Counsel for the ***direct purchaser*** class in this consolidated multidistrict litigation ("MDL").  The appointment of interim lead class counsel here will faciliate the orderly and efficient prosecution of this proceeding, which involves approximately 130 separately filed class actions and over two dozen defendants.  The four firms proposed here are well qualified for this appointment.  Each firm has a proven track record of experience, knowledge, and commitment of resources in similar antitrust class actions.  Each of the proposed interim class counsel has experience prosecuting antitrust class actions against the semiconductor industry and have undertaken substantial investigations into these cases.  Significantly, three of the four proposed interim class counsel, held leadership positions in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* (N.D. Cal., MDL. 1486), which presented many of the same issues that will come up here and was settled for over $325 million to the direct purchaser class, an "extraordinary" recovery.[1]  Finally, the proposed interim lead class counsel, each having conducted numerous trials, have a plan to efficiently handle and prosecute this proceeding through the time of trial.  As set forth more fully below, they have already begun to meet-and-confer with defense counsel and counsel for the indirect plaintiffs to organize this case.

## II.     BACKGROUND

This MDL proceeding arises from the alleged price-fixing of Thin Film Transistor Liquid Crystal Display ("TFT-LCD") products used as display screens in televisions, computer monitors, mobile phones, and other electronic devices.  Defendants are foreign and domestic TFT-LCD manufacturers and affiliated companies.  Plaintiffs allege that defendants' price-fixing conspiracy began in approximately 1998 and may be continuing to the present.  The United States Department

---

[1]    At a final settlement approval hearing in that case, Judge Phyllis Hamilton described the direct purchaser plaintiffs' settlement as "extraordinary," and stated, "I don't think I've seen one quite so high."  *See* Exhibit F to the declaration of Bruce L. Simon, page 7.

NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL
Master File No. C07-1827 SI

of Justice ("DOJ") is currently investigating possible antitrust violations in the TFT-LCD industry out of its San Francisco office.  *See* declaration of Bruce Simon, ¶ 2.

The first class action alleging this conspiracy was filed on December 11, 2006 on behalf of indirect purchasers.  On December 13, 2006, the Saveri firm filed the first direct purchaser action on behalf of Crago Corporation, who bought TFT-LCDs as a component for the manufacture of computers.  Shortly thereafter, each of the proposed interim class counsel filed direct purchaser class actions on behalf of their separate clients.  Meanwhile, several dozen similar class actions were filed in judicial districts across the country.  *See Id.* ¶ 3.

On December 22, 2006, a Motion for Transfer and Consolidation was filed pursuant to 28 U.S.C. Section 1407, requesting that these cases be consolidated or coordinated and transferred to the Northern District of California.  Cross-motions and substantial briefing ensued.  On April 17, 2007, the JPML transferred these cases to this Court.  Approximately 104 of the cases in this MDL are *indirect* purchaser actions and 24 are *direct* purchaser actions.  *See Id.* ¶ 4.  The four firms proposed here collectively represent a substantial number of direct purchaser plaintiffs and are supported by counsel in other direct purchaser cases as well.  *See Id.* ¶ 5.  The first case management conference in this proceeding is scheduled for June 8, 2007.

### III.    ARGUMENT

#### A.    The Appointment of Interim Lead Class Counsel is Permitted Under Rule 23(g)

Rule 23(g) of the Federal Rules of Civil Procedure provides that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(2)(A).  Where, as here, there are multiple class actions pending, "appointment of class counsel is necessary to protect the interests of class members."  *Donaldson v. Pharmacia Pension Plan*, 2006 U.S. Dist. Lexis 28697, at *2-3 (S.D. Ill. May 10, 2006).

It is particularly important in this case that interim lead class counsel be appointed now.  Given the breadth of this litigation, appointing experienced and knowledgeable interim lead class counsel is critical to the orderly conduct of the litigation and to ensure that the proposed direct purchaser class will be fairly and adequately represented from the start.  For example, under

- 4 -

1    Federal Rules of Civil Procedure 16 and 26, and Civil Local Rule 16-9, counsel for the parties are

2    required to meet and confer on many subjects and to reach agreement on matters such as service of

3    process on international defendants, a pretrial and trial schedule, and discovery issues, including

4    the preservation and availability of electronically stored information.  However, under the Local

5    Rules, unless otherwise ordered by the Court, ***only*** lead trial counsel may engage in these

6    discussions.  *See* Civil Local Rule 16-3.  For these reasons, the time is ripe to appoint interim lead

7    class counsel in order to begin the organization and implementation of a long-range plan to

8    adjudicate this matter.  In fact, the proposed interim lead class counsel have started that process.

9         Attorneys appointed to serve as interim class counsel "must fairly and adequately represent

10   the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In selecting lead or interim class counsel,

11   the court must consider the following factors:  (1) the work counsel has done in identifying or

12   investigating potential claims in the action; (2) counsel's experience in handling class actions, other

13   complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the

14   applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P.

15   23(g)(1)(C)(i).  As set forth below, each of these factors support appointment of the proposed

16   interim lead class counsel.

**B.    Proposed Interim Lead Class Counsel Have Extensive Antitrust Class Action Experience**

**1.    Saveri & Saveri, Inc.**

20   The Saveri firm has over 45 years of complex, multidistrict and class action litigation

21   experience and specializes in antitrust litigation.  The firm was actively involved in such landmark

22   antitrust cases as *Nisley v. Union Carbide and Carbon Corp.*, 300 F.2d 561 (10th Cir. 1960) and

23   *Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690 (1962), both forerunners

24   of present class action litigation.  These cases led to the development of present Federal Rule of

25   Civil Procedure 23 and some of the most important decisions in the field of antitrust law.   The

26   *Nisley* case was a class action tried before a jury both on liability and damages and resulted in a

27   verdict for the class.  *Nisely* is often referred to as a model for the trial of class actions and has been

NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL
Master File No. C07-1827 SI

repeatedly followed in later antitrust class action cases which have gone to trial. The attorneys

from the firm who will be working on this case include:

### a.    Guido Saveri

Since founding the Saveri firm in 1959, Guido Saveri has devoted his entire career to

antitrust and other corporate and complex litigation. Mr. Saveri was one of the trial attorneys in

*Nisely* and *Continental Ore* cases. Additionally, he was one of the principal attorneys in

*Sacramento Municipal Utility District v. Westinghouse Elec. Corp.*, 1962 Trade Cas. ¶ 70,552

(N.D. Cal. 1962), one of a group of cases which have come to be known as the "Electrical

Equipment Cases." From 1961-1965, Mr. Saveri represented clients including the State of

Washington, Sacramento Municipal Utility District, and the Modesto Irrigation District. Mr.

Saveri tried several of these cases and worked extensively in the coordinated program instituted by

the Murrah Committee under the direction of the then Chief Justice of the United States Supreme

Court. As a result of his experience in these cases, Mr. Saveri participated in drafting legislation

that created the JPML.

Mr. Saveri has been appointed co-lead counsel or chair of committee of plaintiffs' counsel

in numerous antitrust class actions including *In re Dynamic Random Access Memory (DRAM)

Antitrust Litigation* (N.D. Cal., MDL No. 1486), where Judge Phyllis Hamilton appointed him co-

lead counsel on behalf of direct purchasers; *In re Methionine Antitrust Litigation* (N.D. Cal., MDL

No. 1311), where Judge Charles Breyer appointed him co-lead counsel on behalf of a nationwide

class of direct purchasers; and *In re Citric Acid Antitrust Litigation* (N.D. Cal., MDL No. 1092),

where Judge Fern Smith appointed him co-lead counsel on behalf of a certified class of direct

purchasers of citric acid alleging price-fixing. In 1998, Mr. Saveri participated as one of the four

lead trial counsel in *In re Brand Name Prescription Drugs Antitrust Litigation* (N.D. Ill., MDL No.

997). This case was tried for more than two months and settled for $700 million in cash and $25

million in product.

In *Nancy Wolf vs. Toyota Motor Sales USA, Inc. et. al.*, (N.D. Cal., Case No. C-911-1377

MHP), in which Mr. Saveri served as one of the co-lead counsel, the Honorable Charles B.

Renfrew (Ret.), acting as Special Master commented, "If one were to compile a list of the

1   prominent plaintiffs anti-trust class action attorneys, the three lead counsel in the actions here

2   would be at the top of any nationwide list."  Mr. Saveri has testified before the Federal Judiciary

3   Committee on antitrust matters and has lectured before the Association of Trial Lawyers of

4   America, The Federal Practice Institute, and other lawyer associations.  He has also written

5   extensively on antitrust topics.

6                          **b.    R. Alexander Saveri**

7           Managing partner R. Alexander Saveri has specialized in antitrust class actions for more

8   than 10 years.  Mr. Saveri has served as, or is serving as, court appointed co-lead or liaison counsel

9   in many cases, including *In re Intel Corp. Microprocessor Antitrust Litigation* (D. Del., MDL No.

10  1717), an MDL proceeding on behalf of consumers who purchased Intel x86 microprocessors; and

11  *In re Vitamin C Antitrust Litigation* (E.D. NY., MDL No. 1738), an MDL antitrust class action on

12  behalf of purchasers of Vitamin C.

13                  **2.    Pearson, Simon, Soter, Warshaw & Penny, LLP**

14          Pearson Simon is a civil litigation firm with offices in Los Angeles and San Francisco.  The

15  firm specializes in complex litigation, including federal multidistrict litigation.  The firm handles

16  both national and multi-national class actions that present cutting edge issues in both substantive

17  and procedural areas.  Its attorneys have extensive experience in antitrust, consumer protection,

18  securities fraud, and unlawful employment practices.  They have expertise in litigating difficult and

19  large cases in an efficient and cost effective manner.  The attorneys from the firm who will be

20  working on the case are:

21                          **a.    Bruce L. Simon**

22          Named partner Bruce L. Simon specializes in complex cases involving antitrust, consumer

23  fraud, and securities cases.  He has served as lead or co-lead counsel in several nationwide class

24  actions including *In re Sodium Gluconate Antitrust Litigation*, an antitrust case involving a food

25  additive product; *In re Methionine Antitrust Litigation*, an antitrust class action that resulted in over

26  $100 million in settlements; *In re Citric Acid Antitrust Litigation,* which resulted in over $80

27  million in settlements for direct purchasers; *In re Louisiana Pacific Corp. Inner-Seal OSB Trade

28  Practices Litigation*, a product defect case involving a plywood substitute known as oriented strand

**NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL**
Master File No. C07-1827 SI

board; and *In re Behr Wood Sealant Litigation*, which resulted in a $107 million settlement of claims alleging that certain sealants were defective.  In addition, he recently served as co-chair of discovery in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*.

Mr. Simon has also litigated and tried many complex business cases.  He tried the Osborne Securities case in Santa Clara County and won a multi-million dollar jury verdict.  That case involved critical issues about the responsibilities of accountants and eventually went to the Supreme Court, setting standards for accounting liability in California.  He also represented Union Bank in a case against a national accounting firm, and obtained a $7 million jury verdict that was upheld on appeal.

Mr. Simon is a frequent speaker on trial strategies in business cases, and has lectured throughout the United States and internationally.  He is a past chair of the California State Bar's Antitrust and Unfair Competition Section and the Business Torts Section of the American Trial Lawyers Association.  Mr. Simon is the co-author of the *Matthew Bender Practice Guide: California Unfair Competition and Business Torts* (2004), which provides in-depth and practical coverage of the state's Unfair Competition Law, as well as antitrust law and other commonly prosecuted business torts.  He currently serves on the Board of Directors for Hastings College of the Law.

### b.    Esther L. Klisura

Associate Esther L. Klisura practices antitrust, consumer protection, and business litigation. She has significant federal motion practice experience and has briefed both procedural and substantive issues in antitrust class actions.  Her experience also includes large electronic document productions, and the taking of Rule 30(b)(6) and percipient witness depositions in an antitrust tying case.  Additionally, she has briefed class certification, structured class settlements, and created notice plans.  Recently, Ms. Klisura assisted in the trial preparation for *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*.  She is currently working on antitrust cases arising from the price-fixing of SRAM, flash memory, and digital music.  Ms. Klisura is a member of the State Bar of California's Antitrust & Unfair Competition Section, and she participates in the Northern District of California's Pro Bono Project.

- 8 -

1

    **3.**        **Hagens Berman Sobol Shapiro LLP**

2

    Hagens Berman is a Seattle-based law firm with 6 offices nationwide, including San

3

Francisco.  The firm has represented plaintiffs in numerous antitrust class actions, and is

4

particularly experienced in managing multi-state and nationwide class actions through an organized

5

and coordinated approach.  Hagens Berman has been recognized as one of the nation's leading

6

plaintiffs' law firms by the *National Law Journal*.  The firm has litigated some of the largest cases

7

in history, including the *Enron ERISA* litigation, which has become a model for complex litigation,

8

and landmark tobacco litigation, representing 13 states and resulting in the largest nationwide

9

settlement in history.  The lawyers from the firm who will be working on the case are:

10

    **a.**        **Steve W. Berman**

11

    Managing and named partner Steve Berman is regarded as one of the country's top civil

12

litigators.  He was recently recognized as one of the "Top 100 Influential Lawyers in America," by

13

the *National Law Journal*.  He served as a Special Assistant Attorney General for 13 states in the

14

tobacco litigation which resulted in the largest settlement in history.  He is experienced in trying

15

large scale cases.  He was in the eighth week of trial of the Washington tobacco trial when

16

defendants agreed to a global settlement.  He has experience in MDL trials as well.  He was part of

17

the trial team in the *WPPS Litigation* (a four-month trial) and is the lead trial lawyer for several

18

classes in claims against 22 pharmaceutical companies in the *Average Wholesale Price Litigation*

19

(D. Mass., MDL No. 551).  He has concluded the first six week trial in that MDL and is set to

20

begin the second.  In recognition of his prominence, Mr. Berman was also retained by Microsoft to

21

be part of the core national team representing the company in antitrust class actions resulting from

22

the DOJ's antitrust case against the company.

23

    **b.**        **Anthony D. Shapiro**

24

    Partner Anthony Shapiro concentrates on antitrust and complex commercial matters.  Mr.

25

Shapiro recently served as co-lead counsel in the *DRAM Antitrust Litigation*, shepherding the case

26

through motion practice, discovery, and trial preparation.  That case resulted in over $325 million

27

in settlements for the direct purchaser class.  Mr. Shapiro has been significantly involved in other

28

notable antitrust class actions, such as *In re Brand Name Prescription Drug Antitrust Litigation*,

NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL
Master File No. C07-1827 SI

producing nearly $800 million in compensation to class members; *In re Visa/MasterCard Antitrust Litigation*, producing $3 billion payment to the class of retail merchants in addition to significant injunctive relief; *In re Carbon Dioxide Antitrust Litigation*; *In re Carpet Antitrust Litigation*; *In re Infant Formula Antitrust Litigation*; *In re Medical X-Ray Film Antitrust Litigation*; *In re High Fructose Corn Syrup Antitrust Litigation*; *In re Commercial Tissue Products Antitrust Litigation*; *In re Flat Glass Antitrust Litigation*; *In re Lease Oil Antitrust Litigation*; *In re Bromine Antitrust Litigation*; *In re Linerboard Antitrust Litigation*; *In re OSB Antitrust Litigation*; and *In re Hydrogen Peroxide Antitrust Litigation.*

### c.   Reed Kathrein

Partner Reed Kathrein heads Hagens Berman's San Francisco office.  Mr. Kathrein has more than 30 years of experience in complex litigation involving antitrust, securities fraud and consumer class actions.  He has developed a reputation as one of Northern California's most successful attorneys in complex litigation and large class action cases.  Mr. Kathrein has been lead or co-lead counsel in numerous class actions and complex litigation including *In re Sun Microsystems Securities Litigation*, which settled for over $30 million; *In re AMD Securities Litigation*, which settled for over $30 million; and *In re 3Com Securities Litigation*, which settled for over $250 million.  He currently plays a lead role in the *In re National Security Agency Telecommunications Records Litigation*.  Mr. Kathrein has also served as lead or co-lead counsel in federal courts throughout the nation, such as *In re Abbott Laboratories Securities Litigation* (N.D. Ill.); *In re Pemstar Securities Litigation* (D. Minn.); *In re AOL 5.0 Litigation* (S.D. Fl.); *In re Sony DRM Litigation* (E.D. NY.); and *Watson v. Dell* (W.D. Wash.).

### d.   George W. Sampson

Mr. Sampson is a partner at Hagens Berman where he has worked since 1994.  He has served as co-lead counsel in the *Disposable Contact Lens Litigation* and the *Visa/MasterCard* debit card case, which settled on the eve of trial and resulted in the largest antitrust recovery in history.  Prior to joining Hagens Berman, Mr. Sampson served as Chief of the Antitrust Bureau for the New York Attorney General's Office.  Mr. Sampson oversaw a 22 person staff and managed case selection and investigation for all civil and criminal prosecutions.  His position as chief involved a

- 10 -

1   heavy trial practice, primarily in federal courts and often in conjunction with several states.  He

2   also served as Attorney General Liaison to the Federal-State Executive Working Group-Antitrust.

3   Mr. Sampson sits on the Executive Committee of the Antitrust and Consumer Protection of the

4   Washington State Bar Association and frequently speaks on antitrust issues.  He is admitted before

5   the United States Supreme Court and numerous state bars and federal courts of appeal.

6           **e.**      **Ronnie S. Spiegel**

7         Associate Ronnie Spiegel has over 7 years of experience managing and litigating antitrust

8   class actions.  Most recently, she worked on the *In Re DRAM Antitrust Litigation*, for which she

9   drafted many of the substantive pleadings, including class certification and plaintiffs' summary

10  judgment oppositions, and helped prepare the case for trial.  Her experience also includes extensive

11  work on other antitrust price-fixing litigation, including *In re Vitamins Antitrust Litigation*, *In re*

12  *Brand Name Prescription Drug Antitrust Litigation*, *In re Commercial Tissue Paper Antitrust*

13  *Litigation*, *In re Flat Glass Antitrust Litigation*, *In re Linerboard Antitrust Litigation*, *In re High*

14  *Fructose Corn Syrup Antitrust Litigation*, and *In re NASDAQ Market Makers Antitrust Litigation*.

15          **4.**      **Cohen Milstein Hausfeld & Toll, PLLC**

16        Cohen Milstein has more than 35 years of experience litigating some of the nation's most

17  complicated antitrust cases and has recovered billions of dollars in overpayments made by its

18  clients to monopolists, price-fixers, and other violators of the antitrust laws.  In 2002 and 2003, the

19  *National Law Journal* named Cohen Milstein one of the top 25 plaintiffs' firms in the nation, and

20  in 2006, named the firm as one of the top 11 plaintiffs' firms in the nation.  Cohen Milstein has

21  more than 50 attorneys, with offices in Washington, D.C., New York, Philadelphia, and Chicago.

22  A substantial portion of its practice – indeed, its largest practice group – is devoted to antitrust

23  class actions.

24        Cohen Milstein has served or is serving as lead counsel in many important antitrust cases,

25  including *In re Intel Corp. Microprocessor Antitrust Litigation* (D. Del., MDL No. 1717); *In re*

26  *Vitamins Antitrust Litigation* (D.D.C., MDL No. 1285), which resulted in a landmark partial

27  settlement of $1.1 billion; *Pease v. Jasper Wyman & Son, Inc.* (Knox County, Maine Superior

28  Court, Case No. 00-015), which resulted in a jury verdict in favor of plaintiffs; *In re Domestic Air*

NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL
Master File No. C07-1827 SI

1   *Transportation Antitrust Litigation* (N.D. Ga., MDL No. 861), which resulted in a $458 million

2   cash settlement for a class of approximately 12 million individuals and businesses; and *In re*

3   *Relafen Antitrust Litigation* (D. Mass. Case No. 01-12239).  The attorneys from the firm who will

4   be working on the case include:

5                   **a.      Michael D. Hausfeld**

6          Named partner Michael Hausfeld is regarded as one of the country's top civil litigators.  He

7   was recently recognized as one of the "Top 100 Influential Lawyers in America," by the *National*

8   *Law Journal*.  Chief Judge Edward Korman of the Eastern District of New York has stated that he

9   is one of the two "leading class action lawyers in the United States."  Furthermore, the *New York*

10  *Times* has referred to him as one of the "most prominent antitrust lawyers" in the nation.

11  Mr. Hausfeld is featured in *Done Deal* (Platinum Press 2005) as one of the world's best

12  negotiators.  In 2003, Mr. Hausfeld was the only private attorney permitted to attend the European

13  Commission's closed hearings in the Microsoft investigation, where he represented the interests of

14  consumers worldwide.

15                  **b.      Andrea L. Hertzfeld**

16         Associate Andrea Hertzfeld practices primarily within the International and Antitrust

17  practice groups at Cohen Milstein.  Ms. Hertzfeld currently works on several complex antitrust

18  class action cases, including *In re Air Cargo Shipping Services Antitrust Litigation* in the Eastern

19  District of New York and *In re Air Passenger Antitrust Litigation* in the Northern District of

20  California.  She has experience in federal motion practice and in briefing substantive and

21  procedural issues in large complex class action litigations, including class certification briefing.

22  Ms. Hertzfeld has worked on several federal antitrust class actions, including *In re New Motor*

23  *Vehicles Canadian Export Antitrust Litigation* and *In re EPDM Antitrust Litigation*.  In addition,

24  she is currently involved in other litigation in the electronics industry alleging price-fixing claims

25  against manufacturers of SRAM.  Ms. Hertzfeld is also the co-author of a forthcoming article that

26  will be published in the European Business Law Review.

27

28

**NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL**
Master File No. C07-1827 SI

**C.     Proposed Interim Lead Class Counsel Have Taken Significant Steps to Advance This Litigation**

Proposed interim lead class counsel have already taken significant steps to identify and investigate plaintiffs' claims and to advance litigation.  They were among the first to investigate the TFT-LCD industry and bring suit against the defendants.  They have performed substantial work in investigating the merits.  They have also advanced the case.  For example, proposed interim lead class counsel have completed service of Orion Home Systems, LLC's complaint on all 10 domestic defendants and on 8 of the 17 foreign defendants, a costly undertaking.  They are in the process of effecting service on the remaining foreign defendants.

Immediately after their cases were filed, proposed interim lead class counsel began coordinating with both defense counsel and other plaintiffs' counsel, to organize and streamline what was to become this MDL proceeding.  These discussions included future management of the case after transfer.  Each of the firms here agreed to uniform stipulations to extend the time to file responsive pleadings, and each firm submitted briefs to the JPML in support of consolidation of these cases.  In preparation for the upcoming case management conference, they have had discussions with attorneys representing indirect purchasers about the creation of a unified case management plan to present to the Court.  These early efforts have resulted in a draft case management order, which is attached as Exhibit A to the accompanying declaration of Bruce L. Simon.[2]

---

[2]     Several of the general case scheduling and pretrial management topics contained in the draft case management order have been raised with defendants, although not at the level of detail set forth in the draft order.  In addition, the proposed order draws from the experience proposed interim lead class counsel has had with the same defense counsel in other cases, and has stipulated language in those cases.  The topics covered by the draft order fall within the ambit of the standardized contents of the "Standing Order For All Judges Of The Northern District of California – Contents of Joint Case Management Statement."  The joint case management statement in this case is due on June 1, 2007.  Proposed interim lead class counsel will meet and confer with counsel for all defendants to work out the details of the case management statement and will present a revised proposed case management order reflecting any consensus achieved during those negotiations.

1

2

**D.      Proposed Interim Lead Class Counsel Have the Resources and Geographic Coverage to Effectively Prosecute This Litigation**

3        Collectively, proposed interim lead class counsel provide a network of attorneys in 14

4   offices located across the country.  Their geographic coverage makes them uniquely capable of

5   marshaling other plaintiffs' counsel and overseeing discovery matters, wherever they arise.

6   Proposed interim lead class counsel include some of the largest plaintiffs firms in the world and

7   have a proven track record of committing resources to prosecute litigation through rigorous motion

8   practice, discovery, class certification, and trial.  Furthermore, three of the proposed interim lead

9   class counsel – Saveri, Pearson Simon, and Hagens Berman – have offices in San Francisco, which

10  will further facilitate the efficient scheduling of hearings, conferences, and other activities with the

11  Court and defense counsel.

12

13

**E.      Proposed Interim Lead Class Counsel Affirm Their Commitment to Work Cooperatively With All Counsel**

14       While the four firms proposed here believe they can provide the most fair and adequate

15  leadership structure for the class, they have an inclusive management style that will necessarily

16  seek and welcome the participation of the many other firms involved in this litigation.  Proposed

17  interim lead class counsel are committed to a cooperative approach among all counsel, and with the

18  permission of the Court, will work to establish an executive committee of counsel to ensure that the

19  direct purchaser class is adequately represented.  In doing so, proposed interim lead class counsel

20  will use all efforts to avoid waste and duplication in favor of efficiency.

21  **F.      Proposed Interim Lead Class Counsel Have a Case Management Plan for This Case**

22       Since the passage of the Class Action Fairness Act of 2005 ("CAFA"), federal courts have

23  been presented with the challenge of fashioning a case management plan that deals with the

24  intersection of direct purchaser actions, indirect purchaser actions, foreign purchaser actions, and

25  sometimes multi-governmental investigations.  As set forth herein, proposed interim lead class

26  counsel have extensive experience in organizing and prosecuting cases that present these

27  substantive and procedural issues, and hereby present a plan for efficiently and expeditiously

28  managing this proceeding through the time of trial.

NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL
Master File No. C07-1827 SI

One threshold issue remains constant from both before and after the passage of CAFA. Under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), there must be a separation between lead counsel for U.S. direct and indirect purchasers.  The legitimacy of both interests mandates a separate structure in order to avoid potential conflicts of interest presented in common representation of both direct and indirect purchasers.  For example, federal claims in violation of the antitrust laws prescribe exclusive recovery for the entirety of antitrust damage to the first direct purchaser, regardless of whether that illegal overcharge may have been passed on to downstream purchasers.  Certain states have authorized recovery for antitrust damages on behalf of indirect purchasers where it can be established that the original illegal overcharge was passed-on to them through the chain of distribution.  Antitrust injury to indirect purchasers under these laws is derivative of the original impact in the market of first purchasers.  Consequently, there will be differences in the markets analyzed and the measure of proof required to establish the existence and magnitude of injury.  These differences will in turn be reflected in discovery and other pretrial matters.

Because of differences between these claims, they benefit from separate representation throughout all phases of the litigation, whether it be in preparing the pleadings, engaging in discovery, certifying classes, or allocating settlement monies.  However, this does not mean that the direct and indirect cases cannot be coordinated with respect to these pretrial matters, so as to save the Court and counsel time and expense.  There are common questions that apply to all classes of plaintiffs, such as proof of the existence of a price-fixing conspiracy, its participants, the duration of the conspiracy, and how it operated.  Coordination in these areas presents the opportunity to achieve efficiency and economy without jeopardizing fairness to the parties.

1.    **Proposed Interim Class Counsel will Coordinate with Counsel for the Indirect Purchaser Class**

The case management plan outlined herein, proposes the parallel appointment of separate interim lead class counsel for direct purchasers and indirect purchasers.  This is an organizational structure that has been adopted in numerous other antitrust MDLs.  *See e.g. In re Air Cargo Shipping Services Antitrust Litigation* (E.D. NY., MDL No. 1775); *In re Methyl Methacrylate*

- 15 -
NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL
Master File No. C07-1827 SI

*(MMA) Antitrust Litigation* (E.D. Pa., MDL No. 1768); *In re Vitamin C Antitrust Litigation* (E.D. NY., MDL No. 1738); and *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, (N.D. Cal., MDL No. 1486).

### 2.    Coordination of the Direct and Indirect Cases

Even though it is a pre-CAFA case, the *DRAM Antitrust Litigation* had the convergence of many of the issues presented here and is thus a good template for how the coordination between the direct and indirect cases can be managed.  In fact, three of the proposed interim lead class counsel here held leadership positions in *DRAM*.  One prominent feature of the counsel organization in *DRAM* that should be adopted in this case as well is coordination between direct and indirect purchaser plaintiffs' lead counsel with respect to issues commonly effecting both groups.  For example, Bruce L. Simon, co-chair of discovery for the direct purchasers in *DRAM*, and Allan Steyer, one of the co-lead counsel representing the indirect purchasers in *DRAM*, served as liaisons on behalf of their respective plaintiffs' classes to coordinate discovery.  Under the supervision of the two groups of co-lead counsel, Messrs. Simon and Steyer helped organize not only the schedule for depositions, but also consulted on the documents to be used in depositions, the order in which depositions were taken, and the allocation of time for questioning.  Using this collaborative approach, the direct and indirect purchaser plaintiffs took over 100 coordinated depositions with little or no involvement by the court.  In fact, the court commented on multiple occasions how few were the times that the court was needed to intervene in any discovery disputes.  A similar liaison structure was adopted by the court in *In re Vitamins Antitrust Litigation* (D.D.C., MDL No. 1285).

The proposed interim lead class counsel here believe that a similar degree of coordination among lead class counsel for the direct purchasers and lead class counsel for indirect purchasers here will achieve both economic and time efficiencies.  Accordingly, they suggest that this Court provide for systematic, organized coordination between the two lead counsel groups with respect to all issues commonly affecting direct and indirect purchaser plaintiffs.  This coordination would include the following significant points:

### a.    Designation of Coordination Counsel

Upon appointing separate lead counsel groups to represent both the direct purchaser

- 16 -

1    plaintiffs and the indirect purchaser plaintiffs, proposed interim lead class counsel recommend that

2    the Court order each such group to select and submit to the Court to review and approve the names

3    of two attorneys to serve as coordination counsel between the direct and indirect actions.[3]

4    Coordination counsel's role would be to facilitate coordination among the lead counsel for each

5    group of plaintiffs and to divide work common to the two groups among their respective lead

6    counsel.[4]   The two attorneys selected to serve as coordination counsel would also serve as liaison

7    counsel between their respective plaintiff groups and the Court.  To assure that the case

8    management plans are implemented with an eye toward how the trial will be presented, trial

9    counsel will be involved in case management conferences with the Court.

10                   **b.      Coordination vs. Consolidation**

11           The plan developed by proposed interim lead class counsel, in consultation with counsel for

12   the indirect plaintiffs, calls for the filing of separate consolidated amended complaints – one for the

13   direct purchaser class and one for the indirect purchaser class.  In both cases, counsel would have

14   to agree that there will be one trial for all direct purchaser claims, and another trial for the indirect

15   purchaser claims, notwithstanding the holding of *Lexecon Inc. v. Milberg Weiss Bershad Hynes &*

16   *Lerach*, 523 U.S. 26 (1998).  In this regard, the Court would consolidate all direct purchaser claims

17   for pretrial proceedings and trial, and separately consolidate the indirect purchaser claims.

18           The main intent of the case management plan that is attached as Exhibit A to the

19   accompanying declaration is to have separate, but coordinated, tracks for the direct and indirect

20   cases, with one trial for each case so as to avoid duplication of work and expenses regarding issues

21   common to both plaintiff classes.  In order to accomplish this, the parties and the Court must

22   fashion a procedure to keep the cases in one Court rather than be transferred back for trial to the

23   districts where they were originally filed pursuant to *Lexecon*, *supra*.  One means to achieve this

24   goal is to adopt a procedure similar to that employed in the *In re Mutual Funds Investment*

25   ───────────────
        [3]     Proposed interim lead class counsel herein are informed that Allan Steyer, who was
26   instrumental in coordination the *DRAM* litigation, will be suggested as coordination counsel for the
     indirect purchaser plaintiffs in this proceeding.

27           [4]     Of course, proposed interim lead class counsel contemplate that where issues affecting the
     two groups of plaintiffs differently or singly arise, selected co-lead counsel for each group would
28   be permitted to resolve such issues independently of lead counsel for the other group.

NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL
Master File No. C07-1827 SI

*Litigation* (D. Md., MDL No. 1586).  There, in order to have a single Court handle the litigation and to avoid transfer under *Lexecon,* Judge Frederick Motz and the four judge panel presiding over multiple tracks of litigation against defendant mutual fund managers adopted a pretrial order which required all parties to agree to a consolidated amended complaint that would be deemed originally filed in the District of Maryland where the case was transferred.  By doing so, the panel assured that there would be one trial per track.[5]

          **c.**      **Coordination of Discovery, Briefing and Other Pretrial Proceedings**

Proposed interim lead class counsel submit that coordination of those issues and proceedings which commonly affect both direct and indirect plaintiff groups should continue throughout pretrial proceedings with respect to discovery and briefing of common issues.  This coordination would include, for example, creation of a single document depository to which both groups would have equal access.  It is anticipated that counsel will opt for an electronic depository consistent with the new ESI rules.  Of course, proposed interim lead class counsel contemplate that, should issues arise requiring document discovery particular to only one group of plaintiffs, lead class counsel for that plaintiffs group would be permitted to establish a supplemental depository for those class-specific documents.  The same principle would govern any other discovery affecting only one group of plaintiffs—its own lead counsel would independently address such issues.  In addition, proposed interim lead class counsel's case management plan provides that all discovery should be conducted under the governance of a single protective order negotiated jointly with defendants by coordination counsel for both direct and indirect plaintiffs, on behalf of their respective lead counsel groups.  Similarly, to further facilitate maximum coordination, proposed interim lead class counsel proposed that when issues common to all plaintiff groups require the filing of motions or briefs, those motions and briefs should be filed jointly.

---

[5]    One anticipated issue that will need to be addressed in the proposed case management plan is the filing of state court indirect purchaser actions that are not removed, or are remanded.  The proposed plan calls for a stipulation by indirect purchaser counsel to either submit to federal jurisdiction or stay those cases until the completion of the proceedings in this case.

**NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL**
Master File No. C07-1827 SI

### 3.     Coordination with the DOJ

Another issue that the proposed interim lead class counsel are prepared to address is the government investigation and the accompanying concerns arising from investigative and grand jury privileges.  It is quite common to have the government ask for a stay of the civil litigation, which must be balanced against civil plaintiffs' need to pursue their case before evidence becomes stale. The matters that are likely to arise, and which need to be in the case management order issued by the Court, include: (1) the production of the grand jury documents by defendants; (2) the sequencing of depositions to avoid interference with the government's investigation; and (3) the amnesty applicant's cooperation with the civil plaintiffs, as required under the relevant statute. With respect to the latter, such cooperation would include, among other things, a proffer of facts potentially relevant to the civil action and the production of documents.  Coordination will avoid multiple identical proffers, document productions, and interviews.  To this end, proposed interim lead class counsel propose that contact with the amnesty applicant regarding such cooperation be made solely by court-appointed lead counsel for the direct and indirect purchasers plaintiffs, will prevent duplicative efforts.  Again, proposed interim lead class counsel have dealt with these issues before and have successfully worked with the DOJ to ensure that the interests of both the criminal and civil cases are met.  In *DRAM*, this coordination was achieved through a stipulation with the DOJ.

### 4.     Additional Plaintiffs

In the event that foreign purchaser plaintiffs assert their claims in the consolidated amended complaints, proposed interim lead class counsel submit that the same procedures for coordination summarized above should apply equally to the foreign purchaser class.  Specifically, proposed interim lead class counsel request that, should the claims of foreign plaintiffs be included in this litigation, that the Court appoint lead counsel to represent them, that coordination counsel be selected to serve in the role as described, and that, where issues common to foreign and domestic direct and indirect purchasers arise, that they be litigated in a coordinated fashion.

Proposed interim lead class counsel is familiar with the procedures by which such coordination of foreign and domestic purchaser claims can be achieved, as such procedures are

- 19 -

1    currently being implemented in the *In re International Air Transportation  Surcharge Antitrust*

2    *Litigation* (N.D.Cal., MDL No. 1793) before Judge Breyer in the Northern District of California, as

3    well as in the *In re Air Cargo Shipping Services Antitrust Litigation* (E.D. NY., MDL No. 1775)

4    before Judge Carol Amon in the Eastern District of New York, both of which assert claims on

5    behalf of domestic and foreign purchasers.  One of the proposed interim lead class counsel,

6    Michael D. Hausfeld, is presently co-lead counsel in both cases, and is also co-lead counsel

7    principally responsible for foreign purchasers in the *Air Cargo* litigation.  Accordingly, he is well-

8    experienced in managing coordination of foreign and domestic purchaser claims throughout all

9    stages of litigation.

10          **5.      Trial**

11          The proposed coordination of the direct and indirect plaintiffs' claims will likely result in

12   the completion of pretrial discovery on common issues at the same time.  However, because of

13   differences in the claims asserted in each litigation, the direct and indirect plaintiffs may not be

14   ready for trial simultaneously.  Historically, the pretrial process is generally completed in direct

15   actions before it is completed in indirect actions.  Consequently, direct claims typically have been

16   able to be, and have been, tried first.

17          Despite the fact that trials by direct and indirect plaintiffs are generally separate, the

18   liability of cartel members for fixing prices in a market that immediately impacted direct

19   purchasers is an issue common to both set of claims.  Means consistent with due process should be

20   explored which would obviate the need to relitigate that fundamental issue of liability, from which

21   all injury, direct and indirect, is derived.  Although it is not necessary to determine at this early

22   stage of the litigation exactly what process should be used to achieve this objective, the Court may

23   wish to consider the following options:

24          (1)     **Joint Agreement**.  In a subsequent trial of indirect claims, the indirect plaintiffs and
                    defendants may agree to be bound by the finding of the jury in the direct plaintiffs'
25                  litigation as to the existence, scope and nature of the conspiracy.

26          (2)     **Offensive Collateral Estoppel**.  At the conclusion of the trial by the direct plaintiffs,
                    if the jury finds that there was a conspiracy by defendants, the indirect plaintiffs may
27                  assert the principle of offensive collateral estoppel with respect to the factual issues
                    of the existence, scope and nature of the conspiracy.

28

- 20 -

(3) **Summary Judgment**. After a full trial on the merits, rather than relitigating the issues of fact determined by the jury, either party, the indirect plaintiffs or defendants, may submit the trial record to the Court on a motion for summary judgment. The usual requirements of the Federal Rules of Civil Procedure would control with respect to the determination of the motion. In other words, the party opposing the summary judgment motion would have the opportunity to present any facts disputing the motion, but would be limited to presentation of facts not submitted to the jury in the trial of the direct claims that the opposing party contends were not considered by the jury and that would, if they had been so considered, have made a difference in the jury's determination.

**6.     Proposed Interim Class Counsel's Meet and Confer Efforts**

In anticipation of the June 8, 2007 case management conference, the proposed interim counsel have already begun the meet and confer process with counsel for the indirect plaintiffs and to a more limited degree with counsel for defendants. The following areas will be discussed and addressed in detail in the joint case management statement:

(1)   the establishment of a master docket and captions for the direct and indirect cases;

(2)   the organization of plaintiffs' counsel and their respective responsibilities;

(3)   the organization of defendants' counsel and their respective responsibilities;

(4)   whether there will be any motions for remand to decide;

(5)   the filing of consolidated and amended complaints;

(6)   a briefing schedule for motions to dismiss;

(7)   the manner in which papers are to be served;

(8)   the admission of attorneys licensed to practice in other districts;

(9)   the entry of a preservation order;

(10)  the entry of a protective order;

(11)  possible evidentiary stipulations, such as the early production of grand jury documents and sales data for each defendant;

(12)  the coordination of discovery between counsel for the direct purchaser plaintiffs, the indirect purchaser plaintiffs, and the foreign plaintiffs;

(13)  the procedure for obtaining and management of amnesty cooperation;

(14)  the protocols governing electronic discovery;

(15)  the creation of document depositories;

- 21 -
NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL
Master File No. C07-1827 SI

1      (16)    the phasing of the direct and indirect cases and the sequencing of the civil actions in

2                relation to the government action; and

3      (17)    the nature of the trials that will occur, including the possibility of trying all common

4                issues of liability only in the direct purchaser action, whether by application of

5                collateral estoppel, stipulation, or summary judgment.

## IV.      CONCLUSION

For the foregoing reasons, Saveri, Pearson Simon, Hagens Berman, and Cohen Milstein respectfully request appointment as interim lead class counsel for these consolidated direct purchaser class actions.

DATED: May 4, 2007                    Respectfully submitted,

By:    /S/ Bruce L. Simon
        Bruce L. Simon
        Esther L. Klisura
        PEARSON, SIMON, SOTER, WARSHAW
          & PENNY, LLP
        44 Montgomery Street, Suite 1200
        San Francisco, CA  94104
        Telephone:   (415) 433-9000
        Facsimile:   (415) 433 9008

*Counsel for Direct Purchaser Plaintiffs Phelps Technologies, Inc. and Marshall Myers and the Proposed Direct Purchaser Plaintiff Class*

        Guido Saveri
        R. Alexander Saveri
        Lisa M. Waste
        Cadio Zirpoli
        SAVERI & SAVERI, INC.
        111 Pine Street, Suite 1700
        San Francisco, CA  94111
        Telephone:   (415) 217-6810
        Facsimile:   (415) 217-6913

*Counsel for Direct Purchaser Plaintiffs Crago Corporation and Orion Home Systems, LLC and the Proposed Direct Purchaser Plaintiff Class*

- 22 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ronnie S. Spiegel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:    (206) 623-7292
Facsimile:    (206) 623-0594

Reed Kathrein
HAGENS BERMAN SOBOL SHAPIRO LLP
425 Second Street, Suite 500
San Francisco, CA  94107
Telephone:    (415) 896-6300
Facsimile:    (415) 896-6301

*Counsel for Direct Purchaser Plaintiff Home Technologies Bellevue LLC and the Proposed Direct Purchaser Plaintiff Class*

Michael D. Hausfeld
Kathleen M. Konopka
Andrea L. Hertzfeld
COHEN MILSTEIN HAUSFELD & TOLL, PLLC
1100 New York Avenue, NW
Suite 500 West Tower
Washington, DC  20005
Telephone:    (202) 408-4600
Facsimile:    (202) 408-4699

*Counsel for Direct Purchaser Plaintiffs Art's TV & Appliance, Omnis Computer Systems, and Magic Video, Inc. and the Proposed Direct Purchaser Plaintiff Class*

- 23 -

**NOTICE OF MOTION AND MOTION TO APPOINT INTERIM LEAD CLASS COUNSEL**
Master File No. C07-1827 SI