Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
ZELLE HOFMANN VOELBEL MASON & GETTE LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
fscarpulla@zelle.com
ccorbitt@zelle.com

Thomas P. Dove (51921)
Christopher L. Lebsock (184546)
Jon T. King (205073)
FURTH LEHMANN & GRANT LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104-4249
Telephone: (415) 433-2070
Facsimile: (415) 982-2076
tdove@furth.com
clebsock@furth.com

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. C07-1827 SI |
| | MDL No. 1827 |
| This Document Relates to: | Case No. 06-CV-7588-SI |
| JUDD ELIASOPH, on behalf of himself and all others similarly situated, | |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| LG PHILIPS LCD CO., LTD.; LG PHILIPS LCD AMERICA, INC.; SAMSUNG ELECTRONICS CO. LTD.; SHARP CORPORATION; SHARP ELECTRONICS CORPORATION; TOSHIBA CORPORATION; TOSHIBA MATSUSHITA DISPLAY TECHNOLOGY CO., LTD.; HITACHI LTD.; HITACHI DISPLAYS, LTD.; HITACHI AMERICA LTD.; HITACHI ELECTRONIC DEVICES (USA), INC.; SANYO EPSON IMAGING DEVICES CORPORATION; NEC CORPORATION; NEC LCD TECHNOLOGIES, LTD.; NEC ELECTRONICS AMERICA, INC.; IDT INTERNATIONAL LTD.; AU OPTRONICS; INTERNATIONAL DISPLAY TECHNOLOGY | **JURY TRIAL DEMANDED** |

CO., LTD.; INTERNATIONAL DISPLAY )
TECHNOLOGY USA INC.; AU OPTRONICS )
CORPORATION AMERICA; CHI MEI )
OPTOELECTRONICS; CHI MEI )
OPTOELECTRONICS USA, INC.; CHUNGHWA )
PICTURE TUBES LTD.; and HANNSTAR )
DISPLAY CORPORATION )
                                                    )
                    Defendants.               )
                                                    )

Plaintiff, by his attorneys, brings this civil action for damages and injunctive

relief on behalf of himself and all others similarly situated against the above-named

Defendants, and demanding a trial by jury, complain and allege as follows:

## JURISDICTION AND VENUE

1.      This complaint is filed under Section 16 of the Clayton Act (15 U.S.C.

§26) to obtain injunctive relief for violations of Section 1 of the Sherman Act (15 U.S.C. §1),

to recover damages under state antitrust and consumer protection laws, and to recover the

costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiff and all others

similarly situated sustained as a result of the Defendants' violations of those laws.

2.      The Court has jurisdiction over the federal claim under 28 U.S.C.

§§1331 and 1337.  The Court has jurisdiction over the state law claims under 28 U.S.C. §1367

because those claims are so related to the federal claim that they form part of the same case or

controversy.  The Court also has jurisdiction over the state law claims under 28 U.S.C. §1332

because the amount in controversy for the Class exceeds $5,000,000, and there are members

of the Class who are citizens of a different state than the defendants.

3.      Venue is proper in this District under 15 U.S.C. §22 and 28 U.S.C.

§1391 because defendants reside, transact business, or are found within this District, and a

substantial part of the events giving rise to the claims arose in this District.

4.      The activities of the Defendants and their co-conspirators, as described

herein, were within the flow of, were intended to, and did have a substantial effect on the

foreign and interstate commerce of the United States.

-1-

**DEFINITIONS**

5.     As used herein, the term "TFT-LCD Products" means Thin Film Transistor Liquid Crystal Display products, including such products as are used in televisions, computer (both desktop and notebook) monitors, mobile phones, personal digital assistants ("PDA's") and other devices.

6.     As used herein, the term "Class Period" means the time period extending from at least January 1, 1998 through at least December 31, 2005.

**THE PARTIES**

**The Plaintiff**

7.     Plaintiff Judd Eliasoph, a California resident, indirectly purchased TFT-LCD Panels from one or more of the Defendants during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

**The Defendants**

8.     Defendant LG Philips LCD Co., Ltd. ("LG Philips") is a Korean entity with its principal place of business located at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721, Republic of Korea.  LG Philips is a joint venture created in 1999 by Philips Electronics NV and LG LCD. LG Philips maintains offices within this District in San Jose, California.  In its Form 6-K filed on December 11, 2006 with the United States Securities and Exchange Commission ("SEC"), LG Philips stated that it "is a leading manufacturer and supplier of thin-film transistor liquid crystal display (TFT-LCD) panels"; that it "manufactures TFT-LCD panels in a wide range of sizes and specifications for use in TVs, monitors, notebook PCs, and various applications"; that it "currently operates seven fabrication facilities and four back-end assembly facilities in Korea, China and Poland." (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200_j_e.jsp>).  During the Class Period, LG Philips manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

9.     Defendant LG Philips LCD America, Inc. is an entity organized under the laws of California with its principal place of business located in this District at 150 East

Brokaw Rd., San Jose, CA 95112. During the Class Period, LG Philips LCD America, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

10. Defendant Samsung Electronics Co. Ltd. ("Samsung") is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. During the Class Period, Samsung manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

11. Defendant Sharp Corporation is a business entity organized under the laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan. During the Class Period, Sharp Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

12. Defendant Sharp Electronics Corporation is a wholly owned and controlled subsidiary of Sharp Corporation, with its principal place of business at Sharp Plaza, Mahwah, New Jersey, 07430. During the Class Period, Sharp Electronics Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States. Sharp Corporation and Sharp Electronics Corporation are referred to collectively herein as "Sharp."

13. Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the Class Period, Toshiba Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

14. Defendant Toshiba Matsushita Display Technology Co., Ltd. is a business entity organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. Defendant Toshiba Corporation states on its website the following regarding Toshiba Matsushita Technology Co., Ltd.: "[a]dvanced capabilities in LCD and organic LED displays drive product development and production and enhanced sales operations with a truly worldwide

reach. The company is the undisputed leader in low temperature polysilicon TFT technology, the preferred display for mobile devices and the underpinning technology for organic LED, the next generation display-of-choice for a range of products, including thin profile televisions. These leading-edge capabilities support us in providing high value added displays that are light and thin, consume little power and offer excellent image quality." (<http://www.toshiba.co.jp/worldwide/about/company/tmd.htm>). During the Class Period, Toshiba Matsushita Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

15. Toshiba Corporation and Toshiba Matsushita Display Technology Co., Ltd. are referred to collectively herein as "Toshiba."

16. Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its principal place of business at 6-1 Marunouchi Center Building 13F Chiyoda-ku,Tokyo,100-8220, Japan. During the Class Period, Hitachi Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

17. Defendant Hitachi Displays, Ltd. is a business entity organized under the laws of Japan, with its principal place of business located at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3,Chiyoda-ku,Tokyo,101-0022, Japan. On its website, Hitachi Displays, Ltd. states that "[w]e provide the world' s best products, quality and service to meet the needs of the digital age. These include Hitachi' s proprietary Advanced-Super IPS LCDs offering clear pictures from any angle; large-sized LCD modules for TVs using our original moving picture technology; small-sized LCD modules for information terminal devices such as cellular phones and digital cameras with low power consumption and high resolution picture realized by LTPS (low-temperature poly-silicon) technology; and middle-sized colorful LCD modules for amusement devices. We also produce components such as LCD drivers, color filters and back-lights." (<http://www.hitachi-displays.com/en/company/ work/ index.html>). During the Class Period, Hitachi Displays, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

18.     Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of defendant Hitachi Ltd.  Hitachi America Ltd. is a business entity organized under the laws of New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York, 10591.  During the Class Period, Hitachi America Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

19.     Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its principal place of business located at 575 Mauldin Road Greenville, South Carolina 29607.  During the Class Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

20.     Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America Ltd. and Hitachi Electronic Devices (USA), Inc. are referred to collectively herein as "Hitachi."

21.     Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is a "a joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd., started operations on October 1, 2004. It combines the liquid crystal display operations of Epson, Sanyo Electric, and Sanyo Group companies Tottori Sanyo Electric Co., Ltd. and Sanyo LCD Engineering Co., Ltd. and mobilizes each company's special fields of miniaturization, high resolution, high definition, and volume production technology."  (<http://www.sanyo-epson.com/e/company/outline/index.html>).  Defendant Sanyo Epson's principal place of business is located at World Trade Center Building 15F, 2-4-1 Hamamatsu-cho, Minato-ku, Tokyo Japan.  During the Class Period, Sanyo Epson manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

22.     Defendant NEC Corporation is a business entity organized under the laws of Japan with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001 Japan.  During the Class Period, NEC Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

23.     Defendant NEC LCD Technologies, Ltd. is a wholly owned and controlled subsidiary of Defendant NEC Corporation, and is an entity organized under the

-5-

laws of Japan with its principal place of business located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa 211-8666, Japan. During the Class Period, NEC LCD Technologies, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

24. Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville, California. During the Class Period, NEC manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

25. Defendant IDT International Ltd. is an entity organized under the laws of Bermuda with its principal place of business located at Block C, 9th Floor, Kaiser Estate Phase 1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong. During the Class Period, IDT International Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

26. Defendant International Display Technology Co., Ltd. is an entity organized under the laws of Japan with its principal place of business located at Nansei Yaesu Bldg. 3F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan. Defendant International Display Technology Co., Ltd. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation. During the time period covered by this Complaint, Defendant International Display Technology Co., Ltd. manufactured, sold, and distributed TFT-LCD Products to customers throughout the United States.

27. Defendant International Display Technology USA Inc. is corporation with its principal place of business located at 101 Metro Drive Suite 510, San Jose, California. Defendant International Display Technology USA Inc. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation. During the time period covered by this Complaint, Defendant International Display Technology USA Inc. manufactured, sold, and distributed TFT-LCD Products to customers throughout the United States.

28. Defendant AU Optronics is Taiwan's largest manufacturer of TFT-LCD Products and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan. During the Class Period, AU Optronics. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

29. Defendant AU Optronics Corporation America ("AUOCA") is a wholly owned and controlled subsidiary of defendant AU Optronics and has its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas. AUOCA has a facility located in San Diego, California, During the Class Period, AUOCA manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

30. Defendant Chi Mei Optoelectronics Corporation ("Chi Mei") is a leading manufacturer of TFT-LCD Products and has its global headquarters at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan. During the Class Period, Chi Mei manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

31. Defendant Chi Mei Optoelectronics USA, Inc. is a wholly owned and controlled subsidiary of Chi Mei and has its corporate headquarters at 101 Metro Drive Suite 510, San Jose, California. During the Class Period, Chi Mei Optoelectronics USA, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

32. Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa") is a leading manufacturer of TFT-LCD Products and has its global headquarters at 1127 Hopin Rd., Padeh City, Taoyuan, Taiwan. During the Class Period, Chunghwa manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

33. Defendant HannStar Display Corporation ("HannStar") is a leading manufacturer of TFT-LCD Products and has its headquarters at No. 480, Rueiguang Road, 12th Floor, Neihu Chiu, Taipei 114, Taiwan. During the Class Period, HannStar manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

**Co-Conspirators**

34.     Various others, presently unknown to Plaintiff, participated as co-conspirators with the Defendants in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof.

35.     The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

36.     Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this suit as a class action pursuant Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff Class ("the Class") composed of and defined as follows:

> All persons and entities residing in the United States who, from January 1, 1998 through December 31, 2005, purchased TFT-LCD Products in the United States indirectly from the Defendants for their own use and not for resale. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

38.     This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

Based upon the nature of the trade and commerce involved and the number of indirect purchasers of TFT-LCD Products, Plaintiff believes that the

members of the Class number in the thousands, and therefore is sufficiently numerous that joinder of all Class members is not practicable;

Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff indirectly purchased TFT-LCD Products from one or more of the Defendants or their co-conspirators, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

The following common questions of law or fact, among others, exist as to the members of the Class:  whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, TFT-LCD Products;

whether the combination or conspiracy caused TFT-LCD Products prices to be higher than they would have been in the absence of Defendants' conduct;

the operative time period of Defendants' combination or conspiracy;

whether Defendants' conduct caused injury to the business or property of Plaintiff and the members of the Class;

the appropriate measure of the amount of damages suffered by the Class;

whether Defendants' conduct violates Section 1 of the Sherman Act;

whether Defendants' conduct violates Sections 16720 and 17200 of the California Business and Professions Code;

whether Defendants' conduct violates the antitrust, unfair competition, and consumer protection laws of the other states as alleged below; and

the appropriate nature of class-wide equitable relief.

These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

-9-

FIRST AMENDED CLASS ACTION COMPLAINT

1    After determination of the predominate common issues identified

2    above, if necessary or appropriate, the Class can be divided into logical and

3    manageable subclasses;

4    Plaintiff will fairly and adequately protect the interests of the Class in

5    that Plaintiff has no interests that are antagonistic to other members of the Class and

6    has retained counsel competent and experienced in the prosecution of class actions and

7    antitrust litigation to represent himself and the Class;

8    A class action is superior to other available methods for the fair and

9    efficient adjudication of this litigation since individual joinder of all damaged Class

10   members is impractical.  The damages suffered by individual Class members are

11   relatively small, given the expense and burden of individual prosecution of the claims

12   asserted in this litigation.  Thus, absent the availability of class action procedures, it

13   would not be feasible for Class members to redress the wrongs done to them.  Even if

14   the Class members could afford individual litigation, the court system could not.

15   Further, individual litigation presents the potential for inconsistent or contradictory

16   judgments and would greatly magnify the delay and expense to all parties and to the

17   court system.  Therefore, the class action device presents far fewer case management

18   difficulties and will provide the benefits of unitary adjudication, economy of scale and

19   comprehensive supervision by a single court;

20   Defendants have acted, and refused to act, on grounds generally

21   applicable to the Class, thereby making appropriate final injunctive relief with respect

22   to the Class as a whole; and

23   In the absence of a class action, Defendants would be unjustly enriched

24   because they would be able to retain the benefits and fruits of their wrongful conduct.

25   39.    The Claims in this case are also properly certifiable under the laws of

26   the State of California, and of the other individual states identified below in the Fourth and

27   Fifth Claims for Relief.

28

FIRST AMENDED CLASS ACTION COMPLAINT

1

**NATURE OF TRADE AND COMMERCE**

2          40.      Throughout the Class Period, Defendants and their co-conspirators

3    engaged in the business of marketing and selling TFT-LCD Products throughout the United

4    States.

5          41.      As Defendant LG Philips states on its website, "the thin-film transistor

6    liquid crystal display ("TFT-LCD") is a cutting-edge display, which screens picture

7    information by adjusting the amount of light permitted."  (<http://www.lgphilips-

8    lcd.com/homeContain/jsp/eng/tech/tech210_j_e.jsp>).  LG Philips further states that "TFT is

9    a circuit formed with semiconductor films on a thin glass substrate to control liquid

10   crystals….  This circuit plays a vital role in controlling each pixel, the basic unit of a picture

11   image.  The color filter displays a color image by coating the pixel (red, green and blue) on a

12   glass substrate."  *Id.*

13         42.      At the portion of its website entitled "How TFT-LCD Works"

14   Defendant LG Philips explains:

15              A pixel, the smallest unit to indicate a picture image, is formed by three
               sub-pixels consisting of red, green, and blue. The number of pixels
16             arranged in a display determines the resolution of the TFT-LCD. TFT
               is composed of the data line (image signal transfer) and gate line (TFT
17             on/off signal transfer).  TFT existing in each sub-pixel controls the
               voltage difference between the TFT glass electrode and the color filter
18             glass electrode in order to adjust the molecular array of liquid crystals.
               Such a change in the molecule direction of liquid crystals alters the
19             amount of light penetrating the liquid crystal layer. Consequently, the
               TFT-LCD display shows picture image information.
20
     (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_01_j_e.jsp>)
21
           43.      The company describes some of the applications for TFT-LCD
22
     technology as follows:
23
               TFT-LCD technology has created a wide range of computer and
24             consumer products that would have not been possible with cathode-ray
               tubes (CRT). The flat and thin attributes of LCDs makes them ideal for
25             mobile or portable applications. In addition, LCDs can operate at low
               voltage levels and dissipate with low heat exposure. Initially, LCDs
26             were incorporated into notebook computers, similar in size and
               resolution to 12-14 inch CRT monitors. Through innovation, TFT-LCD
27             engineers were able to develop displays providing much higher
               resolution than CRTs, in addition to producing them in larger sizes.
28

-11-
FIRST AMENDED CLASS ACTION COMPLAINT

Today, TFT-LCDs are challenging CRT-based desktop computer monitors. As a result, a wider range of mobile computing applications are now available. Engineers have found ways to reduce weight, thickness, and the frame width of notebook computer displays. New TFT process technologies make it possible to deliver more pixels per inch and allow even portable computers to display more information than the latest CRT monitor. Such technology became available just as DVDs became popular, so consumers can now get DVD players in very thin and light packages. Currently, a similar transformation is occurring with next-generation cell phones and wireless networks.

(<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/ tech210_02_j_e.jsp>).

44.     The market for TFT-LCD Products is huge. An October 10, 2006 article stated that "[m]anufacturers are expected to pump out 48.4 million LCDs for TVs this year alone, up 70 percent over 2005, while flat-panel sales – most of those using LCD technology – are expected to reach $US 88 billion this year and $US 100 billion in 2007, according to market research company DisplaySearch."

(<http://www.theage.com.au/news/home-theatre/they-are-building-it-but-will-lcd-sales-come/2006/10/09/1160246068541.html#>).

45.     The market for the manufacture and sale of TFT-LCD Products is also conducive to the type of collusive activity alleged here.  That market is oligopolistic in nature. According to data from iSuppli, in 2005, LG Philips had 21.4% of the large TFT-LCD panel global market share, Samsung had 20.9%, AU Optronics had 14.5%, Chi Mei had 11.8%, and Chunghwa had 7.3%, while the remaining suppliers controlled 24.1%.

(<http://www.eetimes.com/showArticle.jhtml?articleID=177101936>). Samsung took over the leading position in the industry in 2006. (<http://biz.yahoo.com/rb/061211/ lgphilips_investigation.html?.v=2 >).

46.     Some of these companies are known antitrust violators. Samsung, for example, was fined $300 million by the United States Department of Justice ("DOJ") in October of 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along with some of the other Defendants) for fixing prices of Static Random Access Memory.

47.     The industry is also marked by a web of cross-licensing agreements that facilitate collusion. AU Optronics, for example, entered into licensing arrangements with sharp in 2005 and Samsung in 2006. Chi Mei has licensing arrangements with Sharp, AU Optronics, Chunghwa, HannStar and Hitachi.

48.     The market for the manufacture and sale of TFT-LCD Products is subject to high manufacturing and technological barriers to entry, some of which are described in Samsung's own November 3, 2005 "Market Perspective & Strategy" presentation available at its website. (<http://www.samsung.com/AboutSAMSUNG/ELECTRONICSGLOBAL/InvestorRelations/ IREventsPresentations/AnalystDay/index.htm >).  Efficient fabrication plants are large and costly.  TFT-LCD Products are also subject to technological advances, so that firms within the industry must undertake significant research and development expenses.

49.     The TFT-LCD Products industry has also been subject to significant consolidation during the Class Period, as reflected in AU Optronics' recent acquisition of Quanta Display, the creation in 2001 of AU Optronics itself through the merger of Acer Display and Unipac Optoelectronics, or Fujitsu Limited's transfer of its LCD business to Sharp in 2005.

50.     Defendants sell their TFT-LCD Products through various channels including to manufacturers of electronic products and devices, and to resellers of TFT-LCD Products.  These electronic products and devices and TFT-LCD Products are then sold, directly or indirectly, to consumers and are not altered during the course of sale.

51.     California is the largest market in the world for TFT-LCD Products and is the worldwide center of the PC industry and other industries that depend upon the TFT-LCD Products market.  Statements concerning the prices and market conditions for TFT-LCD Products were disseminated by Defendants from and into California on a regular and continuous basis.

1

### DEFENDANTS' ILLEGAL CONDUCT

2
       52.     Defendants and their co-conspirators have engaged in a contract,

3
combination, trust or conspiracy, the effect of which was to raise the prices at which they sold

4
TFT-LCD Products to artificially inflated levels from at least January 1, 1998 through at least

5
December 31, 2005.

6
       53.     Very recently, antitrust enforcement authorities in multiple countries

7
have begun investigating this unlawful cartel. On December 11, 2006, Defendant LG Philips,

8
in its Form 6-K filed with the SEC, stated the following:

9
10
11
12
> Last Friday, as part of an investigation of possible anticompetitive
> conduct in the LCD industry, officials from the Korean Fair Trade
> Commission (KFTC) visited the offices of LG.Phlips LCD in Seoul
> Korea.  In addition, the Japanese Fair Trade Commission (JFTC) issued
> a notice to our offices, in Tokyo, Japan and then United States
> Department of Justice (DOJ) issued a subpoena to our offices in San
> Jose, California.

13
(<http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200_j_e.jsp>).

14
       54.     On December 11, 2006, the Reuters news agency reported the

15
following:

16
17
18
> Samsung Electronics Co. Ltd. (005930.KS) is being investigated by fair
> trade watchdogs in South Korea, Japan and the United States, the
> second Korean flat screen maker named in a probe into possible price-
> fixing, a news agency report said on Tuesday.

19
20
21
> The report, from South Korea's Yonhap news agency, follows a
> disclosure by LG.Philips LCD Co. Ltd. (034220.KS) on Monday that it
> was the target of an investigation by the Korean Fair Trade
> Commission (KFTC), the Japanese Fair Trade Commission (JFTC) and
> had received a subpoena from the U.S. Department of Justice …

22
23
> Yonhap cited unnamed regulatory and industry sources in reporting
> local antitrust authorities were also looking into possible collusion by
> Samsung and LG.Philips to fix the prices of LCD products and control
> their supply …

24
25
> Late on Monday, a KFTC spokesman said the probe was being
> conducted by the Cartel Investigation Group.

26
(<http://business.scotsman.com/latest.cfm?id=1843512006>).

27
       55.     On December 12, 2006, other companies, including AU Optronics,

28
Sharp, Sanyo Epson, indicated they were under investigation.

56.     According to one report, " '[t]he subject of the probe is price fixing,' Akinori Yamada, a director of management and planning at Japan's Fair Trade Commission, said in Tokyo today. He said LG.Philips and Samsung were being questioned, although he declined to name or give the number of the other companies being investigated. In Washington, U.S. Justice Department spokeswoman Gina Talamona said the agency 'is investigating the possibility of anticompetitive practices'' and is cooperating with foreign authorities."

(<http://www.bloomberg.com/apps/news?pid=20601080&sid=aSF7WY69eUPg&refer=asia>). Another report indicated that "Min Chun Hong, an analyst at Goodmorning Shinhan Securities, said that if the companies [Samsung and LG Philips] were convicted, penalties could amount to about 200 billion won, or $216 million, each." (<http://www.iht.com/ articles/2006/12/12/business/flat.php>).

57.     Michael Min, an analyst at Korea Investment and Securities, has been quoted as saying that the investigation may be focused on a period over the last several years when manufacturers of TFT-LCD Products were charging comparable prices. (<http://www.washingtonpost.com/wp-dyn/content/article/2006/12/12/ AR2006121200260.html>).

58.     There are also other indications that defendants have engaged in collusive activity. A "Crystal Cycle" is an industry term that refers to shortages in the supply-and-demand cycle for LCD displays. A recent article in *Infoworld* (available at < http://www.infoworld.com/article/06/06/13/79145_25OPreality_1.html>) cited Chris Connery, an industry analyst at DisplaySearch, as follows: "[a]ccording to Connery, the talk in the industry is that the manufacturers are looking to create an artificial Crystal Cycle. At a recent conference in Taiwan, a leading producer of LCD glass stated publicly that the industry should collectively look at cutting back on production from 100 percent to at least 85 percent. Otherwise, if supply outpaces demand, manufacturers will be forced to cut prices. … Will the mother-glass manufacturers actually create this artificial shortage? 'The chatter is growing

FIRST AMENDED CLASS ACTION COMPLAINT

louder each day,' Connery says." A subsequent *Infoworld* article

(<http://www.infoworld.com/article/06/06/12/79223_HNphilipscutslcd_1.html >)

noted that the unnamed Taiwanese executive came from AU Optronics.

59.     Similarly, Samsung's presentation described above noted that "it was possible to secure a reasonable amount of profit while following the industry leaders" during the Class Period.

60.     Defendants, through their officers, directors and employees, effectuated the aforesaid contract, combination, trust or conspiracy between themselves and their co-conspirators by, among other things:

participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of TFT-LCD Products in the United States;

agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of TFT-LCD Products sold in the United States;

issuing price announcements and quotations in accordance with the agreements reached; and

selling TFT-LCD Products to various customers in the United States at non-competitive prices.

61.     Defendants' contract, combination, trust or conspiracy was centered in, carried out, effectuated and perfected mainly in the State of California.  Therefore, all members of the Class, whether or not California residents, are entitled to recover under California law, as well as the laws of their own states.

**ACTIVE CONCEALMENT**

62.     Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives.  Defendants and their co-conspirators

-16-

publicly provided pretextual and false justifications regarding their price increases. Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.  Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this class action litigation was commenced.

63.     As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**VIOLATIONS ALLEGED**

**First Claim for Relief**

**(Violation of Section 1 of the Sherman Act)**

64.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

65.     Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 1998 and continuing through December 31, 2005, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for TFT-LCD Products in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. §1).

66.     In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

To fix, raise, maintain and stabilize the price of TFT-LCD Products;

To allocate markets for TFT-LCD Products among themselves;

To submit rigged bids for the award and performance of certain TFT-LCD Products contracts; and

To allocate among themselves and collusively reduce the production of TFT-LCD Products.

The combination and conspiracy alleged herein has had the following effects, among others:

Price competition in the sale of TFT-LCD Products has been restrained, suppressed, and/or eliminated in the United States;

Prices for TFT-LCD Products sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

Those who purchased TFT-LCD Products directly or indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

67. Plaintiff has been injured and will continue to be injured in its business and property by paying more for TFT-LCD Products purchased indirectly from the Defendants and their co-conspirators than he would have paid and will pay in the absence of the combination and conspiracy, including paying more for personal computers and other products in which TFT-LCD Products is a component as a result of higher prices paid for TFT-LCD Products by the manufacturers of those products.

68. Plaintiff and the class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**Second Claim for Relief**

**(Violation of the California Cartwright Act)**

69. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

70. Defendants' contract, combination, trust or conspiracy was centered in, carried out, effectuated and perfected mainly within the State of California, and Defendant's

-18-

conduct within California injured all members of the Class throughout the United States. Therefore, this claim for relief under California law is brought on behalf of all members of the Class, whether or not they are California residents.

71.    Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 1998, and continuing thereafter at least up to December 31, 2005, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professional Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for, TFT-LCD Products at supra-competitive levels.

72.    The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for, TFT-LCD Products.

73.    For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following:

to fix, raise, maintain and stabilize the price of TFT-LCD Products;

to allocate markets for TFT-LCD Products amongst themselves;

to submit rigged bids for the award and performance of certain TFT-LCD Products contracts; and

to allocate amongst themselves the production of TFT-LCD Products.

74.    The combination and conspiracy alleged herein has had, inter alia, the following effects:

price competition in the sale of TFT-LCD Products has been restrained, suppressed and/or eliminated in the State of California and throughout the United States;

prices for TFT-LCD Products sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels in the State of California and throughout the United States; and those who purchased TFT-LCD Products from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

75.     Plaintiff and the other members of the Class paid supra-competitive, artificially inflated prices for TFT-LCD Products.

76.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in their business and property in that they paid more for TFT-LCD Products than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff seeks treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

## Third Claim for Relief

### (Violation of the California Unfair Competition Law)

77.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

78.     Defendants' business acts and practices were centered in, carried out, effectuated and perfected mainly within the State of California, and Defendant's conduct within California injured all members of the Class throughout the United States.  Therefore, this claim for relief under California law is brought on behalf of all members of the Class, whether or not they are California residents.

79.     Beginning on a date unknown to Plaintiff, but at least as early as January 1, 2002, and continuing thereafter at least up through December 31, 2005, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, et seq. of the California Business and Professions Code, by engaging in the acts and practices specified above.

80.     This Claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

81.     The Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, et seq., including, but not limited to, the following:

The violations of Section 1 of the Sherman Act, as set forth above;

The violations of Section 16720, et seq., of the California Business and Professions Code, set above;

Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as described above, whether or not in violation of Section 16720, et seq. of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

Defendants' act and practices are unfair to consumers of TFT-LCD Products in the State of California and throughout the United States, within the meaning of Section 17200, California Business and Professions Code; and

Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

82.     Plaintiff and each of the Class members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business acts or practices.

83.     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

84.     The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the members of the Class to pay supra-competitive and artificially-inflated prices for TFT-LCD Products. Plaintiff and the members of the class suffered injury in fact and lost money or property as a result of such unfair competition.

85.     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

86.     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiff and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

## **Fourth Claim for Relief**

### **(Violation of State Antitrust and Unfair Competition Laws)**

87.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

88.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Alabama Code §§8-10-1 et seq.

89.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Arizona Revised Stat. §§44-1401 et seq.

90.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of California Bus. & Prof. Code §§16700 et seq. and Cal. Bus. & Prof. Code §§17200 et seq.

91.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§28-4503 et seq.

92. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Iowa Code §§553.1 et seq.

93. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§50-101 et seq.

94. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 et seq.

95. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws. Ann. §§445.773 et seq.

96. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§325D.52 et seq.

97. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §75-21-1 et seq.

98. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. §§59-801 et seq.

99. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§598A et seq.

100. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§57-1-1 et seq.

101. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§75-1 et seq.

102. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§51-08.1-01 et seq.

103. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of the Pennsylvania common law.

104. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§37-1 et seq.

105. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§47-25-101 et seq.

106.    By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§2453 et seq.

107.    By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of West Virginia §§47-18-1 et seq.

108.    By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§133.01 et seq.

109.    Class Members in each of the states listed above paid supra-competitive, artificially inflated prices for TFT-LCD Products.  As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in their business and property in that they paid more for TFT-LCD Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

**Fifth Claim for Relief**

**(Violation of State Consumer Protection and Unfair Competition Laws)**

110.    Plaintiff incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

111.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

112.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. §§45.50.471 et seq.

113.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code §4-88-101 et seq.

114.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California Bus. & Prof. Code §17200 et seq.

115.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code §28-3901 et seq.

116.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. §501.201 et seq.

117.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. §480 et seq.

118.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §48-601 et seq.

119.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Stat. §50-623 et seq.

120.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Louisiana Rev. Stat. §51:1401 et seq.

121.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Maine Rev. Stat. §207 et seq.

122.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana Code §30-14-101 et seq.

123.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska Rev. Stat. §59-1601 et seq.

124.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. §57-12-1 et seq.

125.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New York Gen. Bus. Law §349 et seq.

126.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. §75-1.1 et seq.

127.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Oregon Rev. Stat. §646.605 et seq.

128.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. §6-13.1-1 et seq.

129.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of South Carolina Code Laws §39-5-10 et seq.

130.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code §13-11-1 et seq.

FIRST AMENDED CLASS ACTION COMPLAINT

1    131.   Defendants have engaged in unfair competition or unfair or deceptive

2  acts or practices in violation of 9 Vermont §2451 et seq.

3    132.   Defendants have engaged in unfair competition or unfair or deceptive

4  acts or practices in violation of West Virginia Code §46A-6-101 et seq.

5    133.   Defendants have engaged in unfair competition or unfair or deceptive

6  acts or practices in violation of Wyoming Stat. §40-12-105.

7    134.   Class Members in the states listed above paid supra-competitive,

8  artificially inflated prices for TFT-LCD Products.  As a direct and proximate result of

9  Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in

10  their business and property in that they paid more for TFT-LCD Products than they otherwise

11  would have paid in the absence of Defendants' unlawful conduct.

12                    **Sixth Claim for Relief**

13          **(Unjust Enrichment and Disgorgement of Profits)**

14    135.   Plaintiff incorporates and realleges, as though fully set forth herein,

15  each and every allegation set forth in the preceding paragraphs of this Complaint.

16    136.   Defendants have been unjustly enriched through overpayments by

17  Plaintiff and Class members and the resulting profits.

18    137.   Under common law principles of unjust enrichment, Defendants should

19  not be permitted to retain the benefits conferred via overpayments by Plaintiff and Class

20  members.

21    138.   Plaintiff seek disgorgement of all profits resulting from such

22  overpayments and establishment of a constructive trust from which Plaintiff and Class

23  members may seek restitution.

24                    **PRAYER FOR RELIEF**

25    WHEREFORE, Plaintiff prays:

26    1.   That the Court determine that the Sherman Act, state antitrust law, and

27  state consumer protection and/or unfair competition law claims alleged herein may be

28

1  maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

2  Procedure;

3      2.      That the unlawful conduct, contract, conspiracy or combination alleged

4  herein be adjudged and decreed to be:

5          a.      A restraint of trade or commerce in violation of Section 1 of the

6      Sherman Act, as alleged in the First Claim for Relief;

7          b.      An unlawful combination, trust, agreement, understanding, and/or

8      concert of action in violation of the state antitrust laws identified in the Second and

9      Fourth Claims for Relief herein;

10          c.      Violations of the state consumer protection and unfair competition laws

11      identified in the Third and Fifth Claims for Relief herein; and

12          d.      Acts of unjust enrichment as set forth in the Sixth Claim for Relief

13      herein.

14      3.      That Plaintiff and the Class recover damages, as provided by federal

15  and state antitrust laws, and that a joint and several judgment in favor of Plaintiff and the

16  Class be entered against the Defendants in an amount to be trebled in accordance with such

17  laws;

18      4.      That Defendants, their affiliates, successors, transferees, assignees, and

19  the officers, directors, partners, agents, and employees thereof, and all other persons acting or

20  claiming to act on their behalf, be permanently enjoined and restrained from in any manner:

21  (1) continuing, maintaining, or renewing the conduct, contract, conspiracy or combination

22  alleged herein, or from entering into any other conspiracy alleged herein, or from entering

23  into any other contract, conspiracy or combination having a similar purpose or effect, and

24  from adopting or following any practice, plan, program, or device having a similar purpose or

25  effect; and (2) communicating or causing to be communicated to any other person engaged in

26  the sale of TFT-LCD Products, information concerning bids of competitors;

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

1    5.    That Plaintiff be awarded restitution, including disgorgement of profits

2  obtained by Defendants as a result of their acts of unfair competition and acts of unjust

3  enrichment;

4    6.    That Plaintiff and members of the Class be awarded pre- and post-

5  judgment interest, and that that interest be awarded at the highest legal rate from and after the

6  date of service of the initial complaint in this action;

7    7.    That Plaintiff and members of the Class recover their costs of this suit,

8  including reasonable attorneys' fees as provided by law; and

9    8.    That Plaintiff and members of the Class have such other, further, and

10  different relief as the case may require and the Court may deem just and proper under the

11  circumstances.

12  Dated:  August 13, 2007                 Respectfully submitted,

13

14                                By:    _____
                                         Francis O. Scarpulla

15                                       Craig C. Corbitt
                                         ZELLE HOFMANN VOELBEL MASON &
                                            GETTE LLP

16                                       44 Montgomery Street
                                         Suite 3400

17                                       San Francisco, CA 94104
                                         Telephone:  (415) 693-0700

18                                       Facsimile:   (415) 693-0770

19                                       Thomas P. Dove
                                         Christopher L. Lebsock

20                                       Jon T. King
                                         FURTH LEHMANN & GRANT LLP

21                                       225 Bush Street, 15th Floor
                                         San Francisco, CA 94104-4249

22                                       Telephone:  (415) 433-2070
                                         Facsimile:   (415) 982-2076

23

24

25

26

27

28

1

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

demands a trial by jury for all issues so triable.

Dated:  August 13, 2007                      Respectfully submitted,


                                      By:      /s/ Craig C. Corbitt
                                            Francis O. Scarpulla (41059)
                                            Craig C. Corbitt (83251)
                                            ZELLE HOFMANN VOELBEL MASON &
                                            GETTE LLP
                                            44 Montgomery Street, Suite 3400
                                            San Francisco, CA 94104
                                            Telephone:  (415) 693-0700
                                            Facsimile:  (415) 693-0770
                                            fscarpulla@zelle.com
                                            ccorbitt@zelle.com

                                            Thomas P. Dove (51921)
                                            Christopher L. Lebsock (184546)
                                            Jon T. King (205073)
                                            FURTH LEHMANN & GRANT LLP
                                            225 Bush Street, 15th Floor
                                            San Francisco, CA 94104-4249
                                            Telephone:   (415) 433-2070
                                            Facsimile:  (415) 982-2076
                                            tdove@furth.com
                                            clebsock@furth.com


                                            Attorneys for Plaintiff and the Putative Class

#3170002v2

-29-

FIRST AMENDED CLASS ACTION COMPLAINT