1  Francis O. Scarpulla (41059)
   Craig C. Corbitt (83251)
2  Matthew R. Schultz (220641)
   Qianwe Fu (242669)
3  ZELLE HOFMANN VOELBEL MASON & GETTE LLP
   44 Montgomery Street, Suite 3400
4  San Francisco, CA  94104
   Telephone:     (415) 693-0700
5  Facsimile:      (415) 693-0770
   fscarpulla@zelle.com
6
   Joseph M. Alioto (42680)
7  Theresa D. Moore (99978)
   THE ALIOTO LAW FIRM
8  555 California Street, 31st Floor
   San Francisco, CA 94104
9  Telephone:     (415) 434-8900
   Facsimile:      (415) 434-9200
10 sexton@aliotolaw.com

11 *Interim Co-Lead Counsel for Indirect-Purchaser*
   *Plaintiffs and Class Members*
12
   (Other Counsel Listed on Signature Page)
13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                 SAN FRANCISCO DIVISION

17 IN RE TFT-LCD (FLAT PANEL)          )   Master File No. C07-1827 SI
   ANTITRUST LITIGATION                )
18 _____     )   MDL No. 1827
                                       )
19 This Document Relates to:           )   CLASS ACTION
                                       )
20 All Indirect-Purchaser Actions      )   **INDIRECT-PURCHASER PLAINTIFFS'**
                                       )   **CONSOLIDATED AMENDED**
21                                     )   **COMPLAINT**
                                       )
22                                     )   **DEMAND FOR JURY TRIAL**
                                       )
23 _____     )

24        Plaintiffs, indirect purchasers of thin film transistor liquid crystal display ("LCD") panels

25 as defined below, on behalf of themselves and all other similarly-situated indirect-purchasers, for

26 their Consolidated Amended Complaint against all defendants named herein, demand trial by jury

27 of all claims properly triable thereby, and complain and allege as follows:

28
                                          1

# I.    INTRODUCTION

1.    This case arises out of a long-running conspiracy extending from at least January 1, 1996 through at least December 31, 2006 ("the Class Period"), among Defendants and their co-conspirators, with the purpose and effect of fixing, raising, and maintaining prices for LCD panels sold indirectly to Plaintiffs and other indirect purchasers throughout the United States.

2.    Defendants and their co-conspirators formed an international cartel to illegally restrict competition in the LCD panel market, targeting and severely burdening indirect-purchasers throughout the United States.  During the Class Period, the conspiracy affected billions of dollars of commerce throughout the United States.  The conspiracy included communications and meetings in which Defendants agreed to eliminate competition and fix the prices for LCD panels.  As a result of Defendants' price fixing conspiracy, Plaintiffs have been injured in their business and property by paying more for LCD panels than Plaintiffs otherwise would have paid in the absence of Defendants' conspiracy.

3.    Plaintiffs bring this action seeking federal injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to recover damages under state antitrust, consumer protection, unfair trade, and/or deceptive trade practices laws, common law principles of restitution, disgorgement, unjust enrichment, as well as to recover the costs of suit, including reasonable attorneys fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendants' conspiracy to fix, raise, maintain and stabilize the prices of LCD panels.

# II.    JURISDICTION AND VENUE

4.    This action is brought under Section 16 of the Clayton Act (15 U.S.C. 26) to secure equitable relief against the defendants due to their violations of Section 1 of the Sherman Antitrust Act (15 U.S.C. 1), as well as under the antitrust and other laws of the State of California and other States listed herein to obtain restitution, recover damages, and to secure other relief against the defendants for violations of those laws.

5.    This Court has subject matter jurisdiction of the federal antitrust claims asserted in

1  this action under Section 16 of the Clayton Antitrust Act (15 U.S.C. 26) and Title 28 United States

2  Code Sections 1331 and 1337, and Section 1 of the Sherman Act (15 U.S.C. 1).  This Court has

3  subject matter jurisdiction of the state-law claims asserted in this action under Title 28, United

4  States Code Sections 1332(d) and 1367, in that the matter in controversy exceeds the sum of $5

5  million exclusive of interest and costs, members of the indirect-purchaser plaintiff class are

6  citizens of states different from defendants, and certain defendants are citizens or subjects of

7  foreign states.

8        6.    Venue is proper in this District pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391,

9  because one or more of the Defendants reside, is licensed to do business, or is found or transacts

10  business in this District, and a substantial part of the events or omissions giving rise to the

11  Plaintiffs' claims arose in this District.

12        7.    Defendants conduct business throughout the United States, including in this

13  jurisdiction, and they have purposefully availed themselves of the laws of the United States,

14  including specifically the laws of the state of California and the individual states listed herein.

15  Defendants' products are sold in the flow of interstate commerce, and defendants' activities had a

16  direct, substantial and reasonably foreseeable effect on such commerce.

17        8.    Defendants' conspiracy to fix the price of LCD panels substantially affected

18  commerce throughout the United States and in each of the states identified herein because

19  defendants, directly or through their agents, engaged in activities affecting each such state.

20  Defendants have purposefully availed themselves of the laws of each of the states identified herein

21  in connection with their activities relating to the production, marketing, and sale of LCD panels.

22  Defendants produced, promoted, sold, marketed, and/or distributed LCD panels, thereby

23  purposefully profiting from access to indirect-purchaser consumers in each such state.  Defendants

24  also contracted to supply or obtain goods or revenue related to the business for LCD panels.  As a

25  result of the activities described herein, defendants:

26        a.    Caused damage to the residents of the states identified herein;

27        b.    Caused damage in each of the states identified herein by acts or omissions

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

committed outside each such states by regularly doing or soliciting business
in each such state;

    c.     Engaged in persistent courses of conduct within each such state and/or
derived substantial revenue from the marketing of LCD panels or the
products in which they are used in each such state (and services relating to
such marketing); and

    d.     Committed acts or omissions that they knew or should have known would
cause damage (and did, in fact, cause such damage) in each such state while
regularly doing or soliciting business in each such state, engaging in other
persistent courses of conduct in each such state, and/or deriving substantial
revenue from the marketing of LCD panels or the products in which they are
used in each such state.

9.     The conspiracy described herein affected adversely every person nationwide and in each of the states identified in this Complaint who indirectly bought defendants' LCD panels. Defendants' conspiracy has resulted in an adverse monetary effect on indirect-purchasers in each state identified herein.

10.     Prices of LCD panels in each state can be manipulated by conspirators within that state, outside of it, or both. Without enforcing the antitrust and/or consumer protection laws of each of the states identified herein, companies that break the law will go unpunished. Defendants knew that commerce in each of the states identified herein would be adversely affected by implementing their conspiracy.

### III.    <u>DEFINITIONS</u>

11.     As used herein, the phrase "LCD" means the LCD display technology that involves sandwiching liquid crystal between two glass plates.

12.     As used herein, the phrase "LCD panel" refers to the particular kinds of LCD panels that are used in LCD products.

13.     As used herein, the phrase "LCD products" means the following products of which

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   LCD panels are a component: televisions, computer monitors, and laptop computers.

2        14.     As used herein, the term "OEM" means any original equipment manufacturer.

3        15.     As used herein, the term "ODM" means any original design manufacturer.

4        16.     As used herein, the term "Class Period" refers to the time period beginning January

5   1, 1996 and continuing at least until December 31, 2006.

6   ## IV.     THE PARTIES

7   **A.    The Plaintiffs**

8        17.     During the Class Period, the following named Plaintiffs indirectly purchased LCD

9   panels from one or more of the defendants named herein for end use and not for resale.

10       18.     Plaintiff Robert Harmon, a resident of Arkansas, indirectly purchased LCD panels

11  when he purchased computer monitors and was injured as a result of defendants' illegal conduct.

12       19.     Plaintiff Scott Friedson, a resident of Arizona, indirectly purchased an LCD panel

13  when he purchased a television, and was injured as a result of defendants' illegal conduct.

14       20.     Plaintiff Timothy Lauricel, a resident of Arizona, indirectly purchased LCD panels

15  when he purchased a computer monitor and a laptop and was injured as a result of defendants'

16  illegal conduct.

17       21.     Plaintiff Joe Solo, a resident of California, indirectly purchased LCD panels when

18  he purchased computer monitors, laptops, and a television, and was injured as a result of

19  defendants' illegal conduct.

20       22.     Plaintiff Lisa Blackwell, a resident of California, indirectly purchased LCD panels

21  when she purchased a laptop computer, a mobile phone, a television, and computer monitors, and

22  was injured as a result of defendants' illegal conduct.

23       23.     Plaintiff Byron Ho, a resident of California, indirectly purchased an LCD panel

24  when he purchased two computer monitors and a laptop, and was injured as a result of defendants'

25  illegal conduct

26       24.     Plaintiff Frederick Rozo, a resident of California, indirectly purchased an LCD

27  panel when he purchased a laptop and a computer monitor, and was injured as a result of

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

defendants' illegal conduct.

25.     Plaintiff EMW, Inc., a business located in California, indirectly purchased LCD panels when it purchased two computer monitors, and was injured as a result of defendants' illegal conduct.

26.     Plaintiff Robert Kerson, a resident of California, indirectly purchased an LCD panel when he purchased a television, and was injured as a result of the defendants' illegal conduct.

27.     Plaintiff Steven Martel, a resident of California, indirectly purchased an LCD panel when he purchased a television, and was injured as a result of defendants' illegal conduct.

28.     Plaintiff Gail E. Feser, a resident of Washington D.C., indirectly purchased LCD panels when she purchased a computer monitor and a laptop, and was injured as a result of defendants' illegal conduct.

29.     Plaintiff David Walker, a resident of Washington D.C., indirectly purchased LCD panels when he purchased a computer monitor and a laptop, and was injured as a result of defendants' illegal conduct.

30.     Plaintiff Mauricio DeFrancisco, a resident of Florida, indirectly purchased LCD panels when he purchased two televisions and a laptop computer, and was injured as a result of defendants' illegal conduct.

31.     Plaintiff Scott Eisler, a resident of Florida, indirectly purchased LCD panels when he purchased a computer monitor and a television, and was injured as a result of defendants' illegal conduct.

32.     Plaintiff Robin Feins, a resident of Florida, indirectly purchased LCD panels when she purchased two televisions, and was injured as a result of defendants' illegal conduct.

33.     Plaintiff Janet Figueroa, a resident of Florida, indirectly purchased LCD panels when she purchased a computer monitor and a television, and was injured as a result of defendants' illegal conduct.

34.     Plaintiff Gail Awakuni, a resident of Hawaii, indirectly purchased LCD panels when she purchased a laptop computer and a computer monitor, and was injured as a result of

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

defendants' illegal conduct.

35.     Plaintiff John Okita, a resident of Hawaii, indirectly purchased LCD panels when he purchased a laptop computer and a computer desktop, and was injured as a result of defendants' illegal conduct.

36.     Plaintiff Fred Waki, a resident of Hawaii, indirectly purchased an LCD panel when he purchased a television, and was injured as a result of defendants' illegal conduct.

37.     Plaintiff Ben Northway, a resident of Iowa, indirectly purchased an LCD panel when he purchased a computer monitor, and was injured as a result of the defendants' illegal conduct.

38.     Plaintiff Peter Coyle, a resident of Kansas, indirectly purchased LCD panels when he purchased a laptop computer, a computer monitor, and a television, and was injured as a result of defendants' illegal conduct.

39.     Plaintiff Rex Getz, a resident of Kansas, indirectly purchased an LCD panel when he purchased a television, and was injured as a result of defendants' illegal conduct.

40.     Plaintiff Kou Srimoungchanh, a resident of Kansas, indirectly purchased LCD panels when he purchased computer monitors, televisions, and laptop computers, and was injured as a result of defendants' illegal conduct.

41.     Plaintiff Michael Ayers, a resident of Massachusetts, indirectly purchased LCD panels when he purchased a laptop computer, and was injured as a result of defendants' illegal conduct.

42.     Plaintiff Christopher Murphy, a resident of Massachusetts, indirectly purchased LCD panels when he purchased two televisions and a laptop computer, and was injured as a result of defendants' illegal conduct.

43.     Plaintiff Patricia Ronco, a resident of Maine, indirectly purchased an LCD panel when she purchased a television, and was injured as a result of defendants' illegal conduct.

44.     Plaintiff Gladys Baker, a resident of Michigan, indirectly purchased an LCD panel when she purchased a laptop computer, and was injured as a result of defendants' illegal conduct.

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

45.     Plaintiff Judy Griffith, a resident of Michigan, indirectly purchased LCD panels when she purchased a laptop computer, and was injured as a result of the defendants' illegal conduct.

46.     Plaintiff Ling-Hung Jou, a resident of Michigan, indirectly purchased an LCD panel when he purchased a television, and was injured as a result of defendants' illegal conduct.

47.     Plaintiff Martha Mulvey, a resident of Minnesota, indirectly purchased LCD panels when she purchased a computer monitor, and was injured as a result of defendants' illegal conduct.

48.     Plaintiff William Fisher, a resident of North Carolina, indirectly purchased an LCD panel when he purchased a television, and was injured as a result of defendants' illegal conduct.

49.     Plaintiff Donna Jeanne Flanagan, a resident of North Carolina, indirectly purchased LCD panels when she purchased a computer monitor, and was injured as a result of defendants' illegal conduct.

50.     Plaintiff Bob George, a resident of North Dakota, indirectly purchased LCD panels when he purchased two televisions, and was injured as a result of defendants' illegal conduct.

51.     Plaintiff Thomas Clark, a resident of New Mexico, indirectly purchased LCD panels when he purchased a television and a laptop computer, and was injured as a result of defendants' illegal conduct.

52.     Plaintiff John David Kittleson, a resident of New Mexico, indirectly purchased LCD panels when he purchased multiple televisions, and was injured as a result of defendants' illegal conduct.

53.     Plaintiff Walden Minoli, a resident of New Mexico, indirectly purchased LCD panels when he purchased two televisions, and was injured as a result of defendants' illegal conduct.

54.     Plaintiff Marcia Weingarten, a resident of New Mexico, indirectly purchased LCD panels when she purchased two digital camcorders and two computer monitors, and was injured as a result of defendants' illegal conduct.

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

55.     Plaintiff Richard Granich, a resident of Nevada, indirectly purchased LCD panels when he purchased a computer monitor and a laptop computer, and was injured as a result of defendants' illegal conduct.

56.     Plaintiff Allen Kelley, a resident of Nevada, indirectly purchased an LCD panel when he purchased a computer monitor, and was injured as a result of defendants' illegal conduct.

57.     Plaintiff Tom DiMatteo, a resident of New York, indirectly purchased an LCD panel when he purchased a computer monitor, and was injured as a result of defendants' illegal conduct.

58.     Plaintiff Erin Drew, a resident of New York, indirectly purchased an LCD panel when she purchased a computer monitor, and was injured as a result of defendants' illegal conduct.

59.     Plaintiff Chris Ferencsik, a resident of New York, indirectly purchased an LCD panel when he purchased a television, and was injured as a result of defendants' illegal conduct.

60.     Plaintiff Oscar Cintron, a resident of Puerto Rico, indirectly purchased LCD panels when he purchased a laptop computer and a television, and was injured as a result of defendants' illegal conduct.

61.     Plaintiff Carman Pellitteri, a resident of South Carolina, indirectly purchased an LCD panel when he purchased a television, and was injured as a result of defendants' illegal conduct.

62.     Plaintiff Lynn Sweatman, a resident of South Carolina, indirectly purchased LCD panels when she purchased a computer monitor and a television, and was injured as a result of defendants' illegal conduct.

63.     Plaintiff Christopher Bessette, a resident of South Dakota, indirectly purchased LCD panels when he purchased a computer monitor and a television, and was injured as a result of defendants' illegal conduct.

64.     Plaintiff Chad Hansen, a resident of South Dakota, indirectly purchased LCD panels when he purchased a television and a computer monitor, and was injured as a result of

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

defendants' illegal conduct.

65.    Plaintiff Scott Beall, a resident of Tennessee, indirectly purchased LCD panels when he purchased a computer monitor and a television, and was injured as a result of defendants' illegal conduct.

66.    Plaintiff Dena Williams, a resident of Tennessee, indirectly purchased an LCD panel when she purchased a computer monitor, and was injured as a result of defendants' illegal conduct.

67.    Plaintiff Ann Scott, a resident of Tennessee, indirectly purchased LCD panels when she purchased a laptop computer, two computer monitors, and a mobile phone, and was injured as a result of defendants' illegal conduct.

68.    Plaintiff Robert Watson, a resident of Vermont, indirectly purchased LCD panels when he purchased a laptop computer.

69.    Plaintiff Shawn Stern, a resident of Virginia, indirectly purchased an LCD panel when he purchased a television, and was injured as a result of defendants' illegal conduct.

70.    Plaintiff Joe Kovacevich, a resident of Wisconsin, indirectly purchased LCD panels when he purchased a computer monitor and a television, and was injured as a result of defendants' illegal conduct.

71.    Plaintiffs Jai and Amy Paguirigan, citizens of Wisconsin, indirectly purchased an LCD panel when they purchased a computer monitor, and were injured as a result of defendants' illegal conduct.

72.    Plaintiff John Matrich, a resident of West Virginia, indirectly purchased an LCD panel when he purchased a computer monitor, and was injured as a result of defendants' illegal conduct.

73.    Plaintiffs and the members of the Indirect-Purchaser Class were injured in their businesses or property as a result of defendants' illegal price-fixing agreement because they paid more for LCD products than they would have absent such illegal conduct.

**B.    The Defendants**

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

74.     AU Optronics Corporation, one of the largest manufacturers of LCD panels, with its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

75.     AU Optronics Corporation America, Inc., a wholly owned and controlled subsidiary of defendant AU Optronics Corporation, with its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas and facilities located in San Diego and Cupertino, California, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

76.     Defendants AU Optronics Corporation and AU Optronics Corporation America, Inc. are referred to collectively herein as "AU Optronics."

77.     Chi Mei Corporation, another of the largest manufacturers of LCD panels, with its corporate headquarters at No. 11-2, Jen Te 4th St., Jen Te Village, Jen Te, Tainan 717, Taiwan, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

78.     Chi Mei Optoelectronics Corporation, another of the largest manufacturers of LCD panels and a wholly-owned subsidiary of Chi Mei Corporation, with its global headquarters at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

79.     Chi Mei Optoelectronics USA, Inc., *fka* International Display Technolgy USA, Inc., a wholly owned and controlled subsidiary of Chi Mei Corporation, with its corporate headquarters at 101 Metro Drive Suite 510, San Jose, California, is hereby named as a defendant. During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

80.     CMO Japan Co., Ltd., *fka* International Display Technology, Ltd., a subsidiary of Chi Mei Corporation, with its principal place of business located at Nansei Yaesu Bldg. 3F, 2-2-10

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   Yaesu, Chuo-Ku, Tokyo 104-0028, Japan, is hereby named as a defendant.  During the Class

2   Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers

3   throughout the United States.

4          81.    Defendants Chi Mei Corporation, Chi Mei Optoelectronics Corporation, Chi Mei

5   Optoelectronics USA, Inc., and CMO Japan Co., Ltd., are referred to collectively herein as "Chi

6   Mei."

7          82.    Chunghwa Picture Tubes Ltd. ("Chunghwa"), a leading manufacturer of LCD

8   products, with its global headquarters at 1127 Hopin Rd., Padeh City, Taoyuan, Taiwan, is hereby

9   named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold

10  and/or distributed LCD panels to customers throughout the United States.

11         83.    Epson Electronics America, Inc., with its principal place of business is located 2580

12  Orchard Parkway, San Jose, CA 95131, is hereby named as a defendant.  During the Class Period,

13  said defendant manufactured, marketed, sold and/or distributed LCD panels to customers

14  throughout the United States.

15         84.    HannStar Display Corporation ("HannStar"), with its headquarters at No. 480,

16  Rueiguang Road, 12th Floor, Neihu Chiu, Taipei 114, Taiwan, is hereby named as a defendant.

17  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD

18  panels to customers throughout the United States.

19         85.    Hitachi, Ltd., with its headquarters at 6-6 marunouchi 1-chome, Chiyoda-ku,

20  Tokyo, 100-8280, Japan, is hereby named as a defendant.  During the Class Period, said defendant

21  manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United

22  States.

23         86.    Hitachi Displays, Ltd., with its principal place of business located at AKS Bldg. 5F,

24  6-2 Kanda Neribei-cho 3,Chiyoda-ku,Tokyo,101-0022, Japan, is hereby named as a defendant.

25  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD

26  panels to customers throughout the United States.

27         87.    Hitachi Electronic Devices (USA), Inc., a wholly owned and controlled subsidiary

28

1   of defendant Hitachi Ltd., with its principal place of business located at 575 Mauldin Road,

2   Greenville, South Carolina 29607, is hereby named as a defendant.  During the Class Period, said

3   defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout

4   the United States.

5          88.     IPS Alpha Technology, Ltd., a wholly owned subsidiary of Hitachi, Ltd. which was

6   created as a joint venture of Hitachi, Ltd., Toshiba Corporation and Matsushita Electric Industrial

7   Co., with its principal place of business at 3732 Hayano, Moara-shi, Chiba 297-00037, Japan, is

8   hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed,

9   sold and/or distributed LCD panels to customers throughout the United States.

10         89.     Defendants Hitachi Displays Ltd., Hitachi America Ltd., Hitachi Electronic

11  Devices (USA), Inc. and IPS Alpha Technology, Ltd. are referred to collectively herein as

12  "Hitachi."

13         90.     LG Philips LCD Co., Ltd., a leading manufacturer of LCD panels and a joint

14  venture created in 1999 by Philips Electronics NV and LG LCD, which maintains offices within

15  this District in San Jose, California, and which has its principal place of business located at 20

16  Yoido-dong, Youngdungpo-gu, Seoul, 150-721, Republic of Korea, is hereby named as a

17  defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or

18  distributed LCD panels to customers throughout the United States.

19         91.     LG Philips LCD America, Inc., with its principal place of business located at 150

20  East Brokaw Rd., San Jose, CA 95112, is hereby named as a defendant.  During the Class Period,

21  said defendant manufactured, marketed, sold and/or distributed LCD panels to customers

22  throughout the United States.

23         92.     Defendant LG Philips LCD Co., Ltd. and LG Philips LCD America, Inc. are

24  referred to collectively herein as "LG Philips."

25         93.     NEC Electronics America, Inc. is a wholly owned and controlled subsidiary of

26  NEC Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara,

27  California and its manufacturing plant in Roseville, California, is hereby named as a defendant.

28

During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

94.     NEC LCD Technologies, Ltd., a wholly owned and controlled subsidiary of NEC Corporation, with its principal place of business located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa, 211-8666, Japan, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

95.     Defendants NEC Electronics America, Inc., and NEC LCD Technologies, Ltd. are referred to collectively herein as "NEC."

96.     Samsung Electronics Co., Ltd., with its principal place of business at Samsung Main Building, 250-2 ga, Taepyung-ro Chung-gu, Seoul, Republic of Korea, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

97.     Samsung Semiconductor, Inc., a wholly-owned and controlled subsidiary of Samsung Electronics Co., Ltd., with its principal place of business at 3655 North First Street, San Jose, California 95134, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

98.     Defendants Samsung Electronics Co., Ltd. and Samsung Semiconductor, Inc. are referred to collectively herein as "Samsung."

99.     Sharp Corporation, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

100.    Sharp Electronics Corporation, a wholly owned and controlled subsidiary of Sharp Corporation with its principal place of business at Sharp Plaza, Mahwah, New Jersey, 07430, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed,

sold and/or distributed LCD panels to customers throughout the United States.

101.    Defendants Sharp Corporation and Sharp Electronics Corporation are referred to collectively herein as "Sharp."

102.    Toshiba Corporation, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo, 105-8001, Japan, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

103.    Toshiba Matsushita Display Technology Co., Ltd., with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo, 108-0075, Japan, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

104.    Toshiba America Electronic Components, Inc., a wholly owned and controlled subsidiary of defendant Toshiba Corporation with its corporate headquarters at 19900 Macarthur Blvd., Ste. 400, Irvine, CA 92612, is hereby named as a defendant.  During the Class Period, said defendant manufactured, marketed, sold and/or distributed LCD panels to customers throughout the United States.

105.    Defendants Toshiba Corporation, Toshiba Matsushita Display Technology Co., Ltd., and Toshiba America Electronic Components, Inc. are referred to collectively herein as "Toshiba."

**C.      Co-Conspirators**

106.    Various persons and entities, whose identities are at this time unknown to plaintiffs, participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof.  When plaintiffs learn the identities of such co-conspirators, plaintiffs will seek leave to amend this complaint to add  such co-conspirators as defendants.

107.    The acts charged in this Complaint have been done by defendants and their co-conspirators, or were authorized, ordered, or done by their respective officers, agents, employees, or representatives while actively engaged in the management of each defendant's business or

1    affairs.

2        108.    Each of the defendants named herein acted as the agent or joint venturer of or for

3    the other defendants with respect to the acts, violations and common course of conduct alleged

4    herein.  Each defendant that is a subsidiary of a foreign parent acts as the United States agent for

5    LCD panels made by its parent company.

6                    **V.      NATURE OF TRADE AND COMMERCE**

7        **A.      LCD Panels.**

8        109.    LCD is a type of display technology utilized in products including TVs, computer

9    monitors, laptops, mobile phones, digital cameras, and numerous other electronic products.  LCD

10   panels are the dominant form of display screen in the TV, computer monitor, and laptop industries.

11    Computer monitors now comprise approximately 50% of revenues for the large LCD products

12   market, with TVs and laptop computers accounting for approximately 27% and 21% of revenues,

13   respectively.  All other LCD products combined accounted for between 2-5% of LCD panel

14   revenues during the Class Period.

15       110.    LCD technology offers benefits over both traditional cathode-ray tube (CRT)

16   technology and the other flat screen technology, commonly called "plasma."  LCD is thin and light

17   and uses low power.  Thus, unlike CRTs, which are heavy and bulky, LCD panels can fit into a

18   laptop and permit mobility.  Because a CRT is so bulky, CRTs have never been used in laptop

19   computers.  For TVs and monitors, LCD panels use less space than traditional CRT technology

20   can be mounted on a wall because of their light weight, and offer superior viewing angles.

21       111.    The other flat panel technology, plasma, is not practical for use in laptops.

22   Because plasma has a high power requirement, it "runs hot" and cannot be operated by battery

23   power.  In addition, because of problems called "burn-in" and the fragility of the plasma panel

24   itself, plasma has not been used in the laptop market.  Thus, normally only LCD panels are used to

25   make laptops.

26       112.    LCD technology dominates the flat panel market.  It has virtually 100% market

27   share for laptops and flat panel computer monitors, and at least 80% market share for flat panel

28

1  TVs.

2  **B.**   **Manufacturing An LCD panel.**

3  113.   LCD technology was first invented in the 1960s and thereafter developed for

4  commercial use in laptop computers by 1991.  LCD uses liquid crystal to control the passage of

5  light.  More specifically, an LCD panel is made of two glass sheets sandwiching a layer of liquid

6  crystal.  The front glass sheet is fitted with a color filter, while the back glass substrate has

7  transistors fabricated on it.  When voltage is applied to a transistor, the liquid crystal is bent,

8  allowing light to pass through to form a pixel.  The front glass sheet contains a color filter, which

9  gives each pixel its own color.  The combination of these pixels in different colors forms the image

10  on the panel.



19  114.   There are significant manufacturing and technological barriers to entry in the LCD

20  products market.  A state-of-the-art fabrication plant can cost upwards of $2 billion, and changing

21  technology requires constant research and development investment.  The most expensive material

22  used to make an LCD panel is the glass.  In industry language, glass sizes advance in what are

23  called "generations." These generation sizes have developed at a rapid pace, continuing to expand

24  in size.

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

115.   Generally, materials make up approximately 66% of the cost of LCD panels.

116.   LCD panels are manufactured by defendants in large fabrication plants called "fabs."

117.   Since 2000, glass substrate size for LCD panels has approximately doubled every 1.5 years. Large-generation glass offers great economies of scale: larger sheets allow display manufacturers to produce more, and larger, panels from a single substrate more efficiently.

118.   Today's eighth generation glass substrates have about four times the surface area of fourth generation substrates, which means they yield more (and larger) LCD panels. For instance, one eighth generation substrate can produce the panels needed for fifteen 32" LCD televisions. Larger sheets of glass reduce manufacturing costs.  For example, panel costs were approximately $20/inch for fourth generation fabs, falling to $10/inch for fifth generation fabs, and then falling another 80% to the eighth generation.

119.   There have been at least eight generations of LCD fabs, each requiring significant new investment.   Because building a new fabrication line or retrofitting the old line, is very expensive, and because the glass is nearly all sourced from the same supplier, Corning Incorporated, LCD panel manufacturers use standard sizes for their products.  Thus, for the major input cost, each has the same supplier.  A fab line that works with one size glass cannot switch over to another size without substantial retrofitting.

120.   Additionally, because the fabrication plants are most efficient when they cut standard sizes for panels, different manufacturers with different generation fabs seek to make only the most efficient size panels for that fab.  For example, a fab that makes 730 mm x 920mm glass sheets can cut that sheet to make exactly six 17" LCD panels.  A fab that uses 680mm x 880mm glass can cut exactly six 15" panels from that glass.  But a 730 mm x 920mm glass sheet can only yield two 17" panels, with the rest of the glass as waste.  Thus, when defendants need other panel sizes not efficiently made by their fabs, they cross-purchase from each other.  For example, Defendant LG Philips supplies certain size panels to other defendants, and, in turn, buys other size panels from Chunghwa, Chi Mei, and AU Optronics.  Hannstar and Chunghwa have an agreement

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

whereby Chunghwa supplies 17" panels to Hannstar and Hannstar supplies 19" panels to Chunghwa.  Samsung has a joint venture with Sony to supply each other with LCD panels, but Samsung also purchases panels from AU Optronics and Hannstar.  Hannstar makes panels for Hitachi and Panasonic.  Chunghwa makes panels for AU Optronics and Mitsubishi, and Chi Mei both make panels for Sharp and Toshiba, as well as Panasonic and Sanyo.

121.    These cross-licensing and cross-purchasing agreements provide opportunities for collusion and coordination among members, as well as a means of checking, agreeing on, and controlling prices and output, not only *a priori*, but *a posteriori* in order to detect cheating on agreements to limit output and fix prices.  Antitrust risk is also particularly acute when there are cooperative efforts to develop, design, implement, and license certain technologies, as exist in the LCD products market.

122.    There is a great deal of cross-licensing and there are many cooperative arrangements in the LCD products market, all of which create additional opportunities for collusive activity.  For example, defendants Samsung, and LG Philips recently agreed to an unprecedented level of cooperation in conducting their flat-panel display businesses. In addition, with respect to LCD products:

- Defendant Chi Mei has licensing arrangements with defendants Sharp, AU Optronics, Chunghwa, HannStar, and Hitachi.
- Defendant AU Optronics has licensing agreements with defendants Sharp and Samsung.
- Defendant Hitachi has a joint venture with, *inter alia,* Toshiba called IPS Alpha.
- Defendant Sharp makes LCD panels for defendant Toshiba.
- Defendant NEC has a joint venture with Mitsubishi.

123.    These combinations are between significantly large rivals and not trivial.  The effects of these combinations substantially lessen competition and/or tend to create a monopoly, and were used as part and parcel of the conspiracy and in furtherance of it.

**C.**    **The Size And Structure Of The Markets For LCD Panels And LCD Products.**

124.     The market for LCD panels is huge.  Manufacturers produced approximately 48.4 million LCDs for televisions in 2006, and flat-panel sales – most of those using LCD technology – reached approximately $US 88 billion in 2006 and $US 100 billion in 2007.

125.     The market for the manufacture and sale of LCD panels is conducive to the type of collusive activity alleged herein.  Throughout the Class Period, defendants collectively controlled a significant share of the market for LCD panels, both globally and in the United States.  Specifically, the top six companies (Samsung, LG Philips, Chi Mei, AU Optronics, Sharp and Chunghwa) currently control approximately 80% of the LCD panels market.  As such, the defendants' conspiracy to fix the price of LCD panels substantially affected interstate trade and commerce in the LCD products market.

126.     The LCD panels industry has experienced significant consolidation during the Class Period, as reflected by AU Optronics' acquisition of Quanta Display, the creation in 2001 of AU Optronics itself through the merger of Acer Display and Unipac Electronics, Fujitsu Limited's transfer of its LCD business to Sharp in 2005, the merger of the LCD operations of Toshiba and Matsushita into one entity, defendant Toshiba Matsushita Display Co., Ltd., in 2002, and the joint venture for the production of LCD panels for televisions by Hitachi, Toshiba, and Matsushita in 2004.

127.     A number of the defendants and/or their corporate parents or subsidiaries, including Samsung, Hitachi, NEC, Epson, Sharp, and Toshiba, have either pled guilty to, or are currently being investigated by the U.S. Department of Justice for entering into one or more price-fixing agreements in other closely-related industries similar to that alleged herein.  Such industries include dynamic random access memory ("DRAM") computer chips, static random access memory ("SRAM") computer chips, and NAND chips or flash memory ("Flash").  The DRAM, SRAM, and Flash industries are oligopoly industries dominated by many of the same defendants as in the LCD panel industry, which has a similar oligopoly structure.  The defendants' entry into express price-fixing agreements in other computer electronics markets demonstrates that the oligopoly structure of those industries has not in itself been sufficient to achieve price uniformity

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

and output controls, but that agreement among the market participants has been required to achieve price uniformity and output controls.  Such evidence tends to exclude the possibility that price uniformity in the LCD panel industry, which is similar to the DRAM, SRAM, and Flash industries and includes some of the same defendants is merely a result of normal market forces, rather than express agreement.

128.    Notably, LCD panels are the largest product by revenue for many of these defendants.  For example, in 2005, the LCD panel industry was nearly double the size of the DRAM market.

129.    Products using medium-size and large LCD panels, such as televisions, desktop monitors, and computers, in 2004, made up 90% of the revenues for LCD panel makers.

130.    Direct purchasers buy LCD panels in order to include them as components in TVs, computer monitors, laptops, and other electronic products.

131.    The largest direct purchasers of LCD panels are computer OEMs such as Dell, HP, Apple, and Gateway.  Significantly, a number of the defendants are also computer and/or television OEMs, such as Toshiba, Samsung, and NEC (computers) and Samsung, Sharp, and Toshiba (televisions).

132.    LCD panels have no independent utility, and have value only as components of other products, such as TVs, computer monitors, and laptops.  The demand for LCD panels thus directly derives from the demand for such products.

133.    The market for LCD panels and the market for the products into which they are placed are inextricably linked and intertwined because the LCD panel market exists to serve the LCD products markets.  The market for LCD panels and the markets for the products in which LCD panels are placed are, for all intents and purposes, inseparable in that one would not exist without the other.

134.    Plaintiffs and the indirect purchaser class members have participated in the market for LCD panels through their purchases of products containing such panels.  The defendants' unlawful conspiracy has inflated the prices at which plaintiffs and other indirect purchasers have

bought products made with LCD panels, and plaintiffs and the members of the indirect-purchaser classes alleged herein have been injured thereby and paid supracompetitive prices for LCD panels contained in such products.

135.    Plaintiffs and the indirect-purchaser class members participate in the market for products containing LCD panels.  To the extent plaintiffs and indirect purchasers bought LCD panels as part of an LCD product, defendants' unlawful conspiracy inflated the prices at which OEMs resold LCD panels in these products.

136.    Consumers, including plaintiffs, are injured by paying supracompetitive prices for products containing LCD panels.

## VI.    VIOLATIONS ALLEGED

137.    During the class period, defendants and their co-conspirators have agreed, combined, and conspired artificially to raise, maintain, and stabilize the prices at which LCD panels have been sold directly and indirectly in the United States at artificial levels.

138.    Since at least 1996, the LCD panel market has not behaved as would be expected of a competitive market free of collusion.  Rather, the behavior in this market strongly evidences that the defendants engaged in a significant price-fixing conspiracy that had the purpose and effect of unnaturally stabilizing and raising prices for LCD panels.

139.    After initially being introduced into a market, consumer electronics products and their component parts typically are characterized by steady downward pricing trends.  However, since at least 1996, the LCD panel market has been characterized by unnatural price stability and certain periods of substantial upward pricing trends.

140.    Moreover, since at least 1996, the LCD panel market has not followed the basic laws of supply and demand in a competitive market.  In a competitive market, price increases normally occur during shortage periods.  Since at least 1996, however, there have been significant price increases in the LCD panel market during periods of both oversupply and shortage.

141.    It is generally acknowledged that demand for consumer electronic products and their component parts increases steadily over time.  As would be expected, demand for LCD

panels and products made with them were steadily and substantially increasing throughout the Class Period.  For instance, a June 2006 forecast indicated that 2006 shipments of LCD panels used in televisions would reach 46.7 million units, a 74 % increase from 2005.  By 2009, sales of LCD televisions are expected to surpass sales of CRT televisions for the first time; and by 2010, LCD televisions will account for a majority of all televisions sold worldwide.

142.    Rather than competing for this increased demand, however, since at least 1996, defendants worked together to stabilize prices by agreeing to fix prices at artificially high levels and to restrict the supply of LCD panels through, among other things, decreasing their capacity utilization and refraining from expanding existing capacity.  Those Defendants which were not already manufacturing LCD panels in 1996 joined this conspiracy when they began manufacturing LCD panels.

143.    In 1996, the LCD panel market was experiencing excess supply and drastic price cuts.  Prices had already fallen 40 to 50 percent in 1995, and were projected to continue dropping due to lower manufacturing costs.  However, LCD panel prices began rising in 1996, allegedly due to insufficient production capacity.  In fact, defendants were fixing the prices.

144.    During this period, defendants located in Japan who were manufacturing LCD panels at the time began to partner with those located in Taiwan to trade technology and collaborate on supply.  Japanese engineers were lent to Taiwanese firms, and Taiwanese output was shipped to Japan.  This mutually beneficial relationship between purported competitors continued into 1999.

145.    The reverse in the downward spiral of LCD panel prices began in early 1996.  Defendats blamed the sudden increase in prices on an alleged inability to supply enough LCD panels to meet demand.  By May of 1996, an industry magazine was reporting that, "[f]lat-panel-display purchasers are riding a roller coaster of pricing in the display market, with no clear predictability anytime soon . . . . Perplexed purchasers trying to keep up with the gyrating market can take solace that even vendors are constantly being surprised by the sudden twists and turns."

146.    Soon thereafter, industry analysts began commenting on the unusual rise in TFT-

1    LCD panel prices, noting that this rise in prices was "quite rare in the electronics industry."

2    147.    1996 also brought the advent of third generation fabs.  Since 1996, as defendants

3    entered the LCD panel market, they have updated their production facilities for LCD panels in

4    order to keep pace with developing technology, which has resulted ultimately in at least eight

5    generations of LCD panels.  LG Electronics was scheduled to have its third generation fab online

6    by 1997, and Hyundai was scheduled to do so by early 1998.  Each new LCD panel generation

7    was produced from ever larger pieces of glass, so as to reduce the cost of the screens used in

8    televisions, computer monitors, and laptops.  Ever-increasing production capacity threatened to

9    outstrip demand for LCD panels, with the result that prices of LCD panels should have decreased

10   rapidly.  Instead, Defendants falsely claimed to be operating at full capacity and unable to meet

11   demand, despite the millions of units of over-capacity that had supposedly existed months earlier,

12   and prices surged upwards.  These price increases were also inconsistent with the fact that

13   production had become more efficient and cost effective.

14   148.    The artificially high costs of LCD panels during the Class Period are demonstrated

15   by, *inter alia*, the fact that costs were decreasing.  One of the most significant costs in producing

16   an LCD panel is the cost of its component parts.  Some of the major component parts for an LCD

17   panel include the backlight, color filter, PCB polarizer, and glass.  Indeed, for large area LCD

18   panels, the costs of these components comprise over two-thirds of the total cost of production.

19   During the Class Period, the costs of these components collectively and individually have been

20   generally declining, and in some periods at a substantial rate.  Thus, the gap between LCD panel

21   manufacturers' prices and their costs was unusually high during the Class Period.

22   149.    For example, during the end of 2001 and 2002, LCD panel prices increased

23   substantially while the costs to produce these panels remained flat or decreased.  Similarly, during

24   the end of 2003 to 2004, LCD panel prices again increased by a substantial amount, while costs

25   remained flat or decreased.  This economic aberration is the intended and necessary result of

26   defendants' conspiracy to raise, fix, maintain, or stabilize the prices of LCD panels.

27   150.    Additionally, defendants made repeated public statements admitting to or

28

24

referencing their agreement to fix LCD panel prices through supply manipulation.

151.    Thereafter, LCD panel prices increased for the first time in 2001 by more than 5% in October 2001.  These price increases continued until June of 2002, resulting in an approximately 35% increase in the average selling price of 15-inch LCD panels.

152.    These price increases were the result of defendants' agreement to fix, raise, and maintain LCD panel prices.  When asked why prices had increased, however, defendants repeatedly explained that the increases in LCD prices were due to increased demand and a "supply shortage."

153.    These price increases occurred as production costs declined due to lower prices for parts and components as well as improvements in manufacturing efficiency.  While the price of 15-inch LCD panels, for instance, shot up from US$190-200 in the third quarter of 2001 to US$250 in the first quarter of this year, current production costs remained at approximately US$200.  These decreasing costs should have led to lower prices and competition among defendants.  Instead, because defendants had entered into an agreement to fix, raise, and maintain LCD panels at artificially high levels, it resulted in extremely high profits.  For example, defendants AU Optronics Inc., Chi Mei Optoelectronics Corp., Chunghwa Picture Tubes Ltd., and HannStar Display Inc. posted higher pretax profits than expected in the first quarter of 2002. AU Optronics reported revenue of NT$19.7 billion in the first quarter, with pretax profit reaching about NT$2 billion. Chi Mei Optoelectronics reported pretax earnings of NT$800 million on revenue of about NT$8.8 billion at the same period.

154.    This increase in prices and revenue was unprecedented.  During the first six months of 2002, revenue for Taiwan's five major LCD panel manufacturers (defendants AU Optronics, Chi Mei, Chunghwa Picture Tubes Ltd., HannStar Display Inc., and Quanta Display Inc. (later purchased by AU Optronics) rose 184% from the same period in 2001.

155.    On or about January 20, 2003, Hsu Wen-lung, the Chairman of defendant Chi Mei Optoelectronics stated that "both Taiwanese and South Korean TFT-LCD panel makers should avoid the fierce price competition and build a money-making environment.  To this end, both sides

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    are recommended to exchange market information periodically."

2       156.    It was not necessary to specifically invite cooperation with the Japanese

3    manufacturers, as they already had close working relationships with their Taiwanese counterparts.

4    As noted earlier in the Complaint, Taiwan's LCD panel makers already had established ties with

5    their Japanese counterparts, including HannStar (with Hitachi), Chi Mei (with NEC), AU

6    Optronics (with Fujitsu), Quanta Display (with Sharp) and Chunghwa (with Mitsubishi).

7       157.    Again, on January 29, 2003, K.Y. Lee, the Chairman of defendants AU Optronics

8    publicly stated that "the local TFT-LCD industry should move to set up a reasonable and healthy

9    pricing strategy thus avoiding the price fluctuations."

10      158.    These public statements and the agreement among the defendants they reference

11   had their intended effect.  Soon after these public statements were made, the defendants instituted

12   a new round of LCD panel price increases.  Prior to January of 2003, LCD prices had been

13   declining.  Thereafter, however, they increased for five consecutive quarters in 2003 and 2004,

14   spiking significantly.  LCD panels used in laptops and computer monitors increased by as much as

15   21-28 percent during this time period.  Defendant AU Optronics reported that the price for certain

16   of its LCD panels increased 28 percent between the second quarter of 2003 and the second quarter

17   of 2004.  Similarly, defendant LG Philips reported that its pricing increased by 21 percent over the

18   same period.

19      159.    These prices resulted in similarly substantial increases in the profits reaped by the

20   LCD panel manufacturers.  For example, the eight largest LCD panel manufacturers reported a

21   collective profit increase of 740 percent between the second quarter of 2003 and the second

22   quarter of 2004.  These record profits resulted from defendants' collective action to fix, raise,

23   maintain or stabilize the price of LCD panels.

24      160.    These price increases were the direct result of defendants' agreement to fix, raise,

25   and maintain the price of LCD panels.  Defendants, however, repeatedly made public statements

26   explaining these price increases on other factors.  For example, at an August 2003 flat panel

27   industry conference sponsored by DisplaySearch, Dr. Hui Hsiung, executive vice president of

28

26

1   defendant AU Optronics, explained the recent increases in the price of LCD panels was due to

2   increased demand and supply shortage.  In March of 2004, Liu Chih-chun, vice president of

3   Chunghwa Picture Tubes Ltd., blamed the high prices during public statements on an inadequate

4   supply of key parts from upstream suppliers.

5       161.   In fact, while LCD panel prices were increasing in late 2003 and the first half of

6   2004, defendants AU Optronics, CMO, and HannStar were decreasing capacity utilization.  AU

7   Optronics delayed construction of a new generation plant to help prices increase.  Similarly, while

8   LCD panel prices were increasing in 2003 and 2004, LCD panel manufacturers' capacity growth

9   rate was decelerating.  Defendants' artificial supply restriction had the purposeful effect of fixing,

10  raising, maintaining, or stabilizing LCD panel prices at artificially high levels.

11      162.   Reducing production capacity is not something an LCD panel manufacturer would

12  do unless its competitors were doing so as well.  As AU Optronics executive Hsu Hsiung himself

13  would later note when discussing defendants' cuts in production capacity in public statements

14  made at a May 2006 annual international conference on Taiwan's flat panel display industry,

15  reducing production capacity pushes an LCD panel manufacturer's fixed production costs up, and

16  is not effective in fixing or maintaining the price of LCD panels unless the other defendants do so

17  as well.  Yet, as Mr. Hsiung himself noted in those public statements, an increase of 2 to 3 percent

18  of AU Optronics' fixed production costs was preferable to a drop of 15 to 20 percent in LCD panel

19  price.

20      163.   Defendants' public statements admitting to their agreement to fix, maintain, and

21  stabilize LCD panel prices continued.  In late 2004, panel makers in Taiwan were reported to

22  "agree the ultimate solution" to keep supply and demand in their favor was to "involve closer

23  cooperation."  For example, Chi Mei's Chairman, C.H. Lin, noted that mergers were not likely

24  because of the large size of the companies in the industry, but he encouraged "a new era of mutual

25  cooperation."  He noted that the Japanese companies Toshiba and Panasonic had done so, as had

26  Samsung and Sony.

27      164.   These public statements referenced an agreement among Defendants to fix prices,

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   and resulted in, among other things, a temporary halt in the expansion of production capacity

2   among defendants.  Because of this illegal agreement to fix, raise, and maintain LCD panel prices,

3   defendants were able to maintain LCD panel prices at artificially high levels in 2005.

4   165.   On a November 25, 2005 conference call with investors, Dr. Hui Hsiung, executive

5   vice president of defendant AU Optronics, admitted to conspiring with other LCD panel

6   manufacturers to artificially increase the LCD panel prices.  Discussing the "undersupply/

7   oversupply" of LCD panels, he noted "there's various actions we can take such as slightly reduce

8   the capacity loading or shift the product mix," but predicted that, with respect to supply levels,

9   "we will see some parity among different panel suppliers" in 2006."  In response to a question

10  about what AU Optronics would do if demand turned out to be weaker than expected, Dr. Hsiung

11  stated:

> Our policy, our strategy, has always been minimizing our inventory and that
> turned out to be quite successful in the past few years by keeping the
> inventory lower.  *And I think in the past we did have some problem
> convincing our competitors doing the same thing.  But in recent months,
> especially this year, actually, it did start to happen.*  I think that the industry
> understand [sic] the benefit of keeping capacity low.  Again, even if the
> scenario does happen that we have a 5% over capacity this is not the drastic
> action to reduce about 5% of the loading. . . . . So, we think the industry
> become [sic] more mature.  That is precisely what our competitors would
> do.

16  166.   Similarly, a November 3, 2005, Samsung presentation, available on its website,

17  stated that "it was possible to secure a reasonable amount of profit while following industry

18  leaders" during the Class Period.  This too constituted a public signal and invitation to the other

19  defendants to fix prices by restricting output.

21  167.   Thereafter, in the spring of 2006, at a conference of manufacturers of LCD panels

22  in Taiwan, Dr. Hsiung publicly stated that the defendants should collectively look at cutting back

23  on production from 100 percent to at least 85 percent.  Otherwise, Mr. Hsiung said, if supply

24  outpaced demand, manufacturers would be forced to cut prices.  This was an express invitation to

25  reduce output in order to raise, fix, stabilize, and peg the prices of LCD panels and LCD products.

26  168.   In June of 2006, Mr. Hsiung told the *Wall Street Journal* that AU Optronics had cut

27  production of LCD panels because of bloated inventories, a move that could bring more stability to

28

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    LCD panel prices by the third quarter if other companies followed suit.  Mr. Hsiung also told the

2    *Wall Street Journal*, "You have to have discipline every month to adjust inventory.  If others

3    follow, that will help prices stabilize by the third quarter."  Mr. Hsiung further said that buildup of

4    LCD panel inventories led to a bigger than expected decline in prices recently.  He urged other

5    LCD panel makers to stop building up inventory during periods of oversupply.  "Supply and

6    demand balance can be maintained during a period of overcapacity if 'fab' loading is reduced by

7    only 5 percent to 10 percent," he said, adding that a slight reduction would increase unit fixed

8    costs by only 2 percent to 3 percent.  Mr. Hsiung stated that AU Optronics was making efforts to

9    cut manufacturing costs to prevent margin erosion.  He added that further mergers and acquisitions

10   were needed in the LCD panels industry to help stabilize prices.  The foregoing statements were

11   reported by the *Wall Street Journal* on June 15, 2006, in an article entitled "AU Optronics Cuts

12   LCD Output in Bid to Stabilize Falling Prices."  When Mr. Hsiung made these statements to the

13   *Wall Street Journal*, he knew and intended that they would be publicly reported and would become

14   known to all of the defendants; and, in making these statement, he intended to send a signal and an

15   invitation to the other defendants to cut production in order to raise, fix, stabilize, and peg prices

16   of LCD panels and LCD products.

17       169.    Mr. Hsiung made his comments to the *Wall Street Journal* after defendant LG

18   Philips LCD publicly announced that it was lowering its outlook for the second quarter because of

19   high inventories of LCD panels.  The President of defendant LG Philips LCD, Ron Wirahadiraksa,

20   publicly stated on June 12, 2006, that the company would review its capacity plans for 2006.

21   These statements were also signals and an invitation to the other defendants to curtail production

22   of LCD panels and LCD products and thereby raise, fix, stabilize, and peg prices for LCD panels

23   and LCD products.

24       170.    Thereafter, Defendants announced plans to cut back production.  In the second half

25   of 2006, LG Philips announced plans to cut its capacity expansion by two thirds; AU Optronics

26   Corp announced plans to cut capital expanse by 30% to 40%; Chi Mei announced plans to delay

27   the mass-production date of its newest production plant; and HannStar adopted a "build to order"

28

29

mode.  These public statements and actions allowed defendants to continue to fix, maintain, and stabilize the price of LCD panels at artificially high levels.

171.  Defendants had ample opportunities for collusion when they met and discussed pricing at various industry trade shows where all major participants in the LCD products industry were present.  For example, on June 20 and June 21, 2001, a Market Seminar meeting was held at National Chiao Tung University, Hsinchu, Taiwan.  The meeting was co-sponsored by DisplaySearch and the industry trade group, Semiconductor Equipment and Materials Institute ("SEMI").  The agenda stated that "this year's seminar will be expanded to two days and cover all major FPD [flat panel display] applications including notebook PCs, desktop monitors, LCD TVs, mobile phones, PDAs and internet appliances.  Also covered will be the TFT LCD supply and demand, pricing, component shortages and the TFT LCD equipment and materials markets.  In addition to DisplaySearch analysts, leading executives from FPD producers, OEMs, brands and equipment and materials suppliers are expected to be present."

172.  Most, if not all, of the defendants were represented at this seminar at which discussions regarding LCD panel supply and pricing were held.

173.  The express invitations to collude referred to hereinabove were in fact accepted, agreed to, and acted upon by the defendants, who, during the Class Period, repeatedly and continuously jointly and collusively limited output of LCD panels in order to raise, fix, and stabilize prices of LCD panels and LCD products, each defendant knowing and understanding that the other defendants had agreed to do likewise and were doing likewise.

174.  Defendants, through their officers, directors and employees, effectuated a contract, combination, trust or conspiracy between themselves and their co-conspirators by, among other things:

  a.  Participating in meetings and conversations to discuss the prices and supply of LCD panels in the United States;

  b.  Agreeing to manipulate the prices and supply of LCD panels sold in the United States in a manner that deprived direct and indirect purchasers of

1  free and open competition;

2  c. Issuing price announcements and quotations in accordance with the

3  agreements reached; and

4  d. Selling LCD panels to various customers in the United States at fixed, non-

5  competitive prices.

6  **VII. THE GOVERNMENT INVESTIGATIONS OF PRICE-FIXING**

7  175. In December 2006, authorities in Japan, Korea, the European Union, and the United

8  States revealed the existence of a comprehensive investigation into anti-competitive activity

9  among LCD panel manufacturers. In a December 11, 2006, filing with the Securities and

10  Exchange Commission, defendant LG Philips disclosed that officials from the Korea Fair Trade

11  Commission and Japanese Fair Trade Commission had visited the company's Seoul and Tokyo

12  offices and that the United States Department of Justice had issued a subpoena to its San Jose

13  office.

14  176. On December 12, 2006, news reports indicated that in addition to LG Philips,

15  defendants Samsung, Sharp, Epson Electronics America, Inc. and AU Optronics were also under

16  investigation.

17  177. The U.S. Department of Justice ("DOJ") acknowledged that it was "investigating

18  the possibility of anticompetitive practices and is cooperating with foreign authorities."

19  178. The DOJ has intervened and filed documents under seal in this case. While

20  Plaintiffs and their counsel have been unable to review the documents the DOJ filed under seal,

21  based on information and belief, these documents describe the scope of the DOJ's investigation

22  into the conspiracy among defendants to fix the prices of LCD panels. These documents were

23  sufficient to convince the Court to issue an unprecedented stay of virtually all merits discovery in

24  this litigation for over six months. Based on information and belief, the DOJ has found sufficient

25  evidence of a conspiracy to fix the price of LCD panels among defendants to continue its

26  investigation and to seek an unprecedented stay of civil discovery in this case.

27  179. These government investigations have the potential to result in hundreds of millions

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   of dollars in fines.  "Min Chun Hong, an analyst at Goodmorning Shinhan Securities, stated that if

2   the companies [Samsung and LG Philips] were convicted, penalties could amount to about 200

3   billion won, or $216 million, each."

4       180.    At least one of the defendants has approached the Antitrust Division of the DOJ to

5   enter into a leniency agreement with respect to the defendants' conspiracy to fix prices of LCD

6   panels.  In order to enter into a leniency agreement under the Corporate Leniency Policy of the

7   Department of Justice, this defendant has reported the defendants' price-fixing conspiracy to the

8   Department of Justice and has confessed its own participation in the defendants' price-fixing

9   conspiracy.

10       **VIII.**   **THE PASS-THROUGH OF THE OVERCHARGES TO CONSUMERS**

11       181.    Defendants' conspiracy to raise, fix, or maintain the price of LCD panels at

12   artificial levels resulted in harm to Plaintiffs and the indirect-purchaser consumer class alleged

13   herein because it resulted in them paying higher prices for products containing LCD panels than

14   they would have in the absence of defendants' conspiracy.  The entire overcharge for LCD panels

15   at issue was passed on to plaintiffs and members of the indirect-purchaser class.

16       **A.**   **LCD Panels Make Up A High Percentage Of The Cost Of Products Containing**

17          **Such Panels.**

18       182.    When an LCD panel leaves a defendant's manufacturing plant, it requires minimal

19   additional labor or materials to make it into a TV or a computer monitor, or to install it into a

20   laptop computer.  The LCD panel itself typically accounts for 60-70% of the total retail price of a

21   TV (even more for panels exceeding 40"), while comprising between 70-80% of the retail price of

22   computer monitors.  LCD panels typically comprise roughly 10% of the retail cost of a laptop

23   computer.

24       183.    The only differences between a computer monitor and a TV are the other materials

25   added to make the finished products.  For example, an LCD TV will have internal speakers and a

26   TV tuner.  There is no technological difference between a computer monitor's LCD panel and the

27   LCD panel in a laptop.

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

184.    To turn an LCD panel into an LCD monitor, an assembler fits the panel with a backlight, plastic framing around the screen, and a power source.  It is then branded by the OEM as its monitor, and sold to the end user—either directly from the OEM's store (like Gateway or Apple), on its website (like Dell or Hewlett-Packard), in an electronics store (like Best Buy or Circuit City), or through a mass merchandiser (like Wal-Mart or Target).

185.    To turn an LCD panel into an LCD TV, an assembler fits the panel with a TV tuner, speakers, and a power source.

186.    To turn an LCD panel into a laptop, the panel is incorporated into a plastic frame, and a computer motherboard with its components is fitted into the bottom half of the frame.

187.    LCD panels are commodity products, with functionally equivalent products available from the defendants, which manufacture LCD panels pursuant to standard specifications and sizes.

**B.      The Price Of Products Containing LCD Panels Was Directly Dependent On The Price Of The Panels.**

188.    The indirect-purchaser buys products containing LCD panels through one of two distribution chains: either from the direct-purchaser OEM, or through a reseller such as a retailer.

189.    Computer and TV OEMs are not really "manufacturers" at all, but really are assemblers of components and purveyors of brand names.  For example, for computers, a company like HP or Apple does not make any of the parts that go into making an LCD monitor or laptop.  Rather, they purchase LCD panels from defendants, and hire contract assemblers to turn the panels into the finished computer products.  On information and belief, Computer and TV OEMs price their end-products on a "cost-plus" basis.  Thus, changes in the cost of LCDs have immediate effects on the cost of the finished products.

190.    On information and belief, there are two methods by which OEMs sell their branded LCD products to the retailer. The first method is to obtain pre-orders.  These OEMs obtain prior orders for their products before they have them manufactured.  Under this method, the TV or computer OEM obtains orders for its TVs, laptops, or computer monitors before it orders

any of the parts for those products.  It negotiates with retailers prices and quantities at which it will sell its finalized products to the retailers.  The OEM will base its sales price on the current prices of the other components, the assembly costs, delivery costs, and a profit margin.

191.    OEMs also sell their branded products to retailers by estimating the retail market for LCD products, and purchasing the LCD panels before the orders for the end product are obtained.  Because the OEM is not locked in to an agreed-upon price for its product, it can pass through the entire overcharge unencumbered by downstream contracts.

192.    In either case, because of the breadth of the price fixing conspiracy, the OEM is also not constrained by its competitors from passing on the overcharge.  Because each OEM's end-product competitors are also buying LCD panels at supracompetitive prices from conspiracy members, no OEM faces end-product price competition from an OEM who is not paying supracompetitive prices for its LCD panel inputs.  Thus, neither prior price commitments nor end-product price competition interfere with the overcharge being passed on down the supply chain.

193.    Thus, all supracompetitive overcharges are always passed through to the indirect-purchaser, end-user consumer plaintiff class members, which pay more for a product containing LCD panels than in a competitive market place.

194.    Thus, the price of products containing LCD panels is directly correlated to the price of LCD panels.  The margins for OEMs are sufficiently thin that price increases of LCD panels force OEMs to increase the prices of their products.

195.    OEMs and retailers of products containing LCD panels are all subject to vigorous price competition, whether selling TVs, computer monitors, or laptops.  The demand for LCD panels is ultimately determined by purchasers of products containing such panels.  The market for LCD panels and the market for products containing these panels are therefore inextricably linked and cannot be considered separately.  Defendants are well aware of this intimate relationship, and use forecasts of TVs, laptops, and computer monitors to predict sales of LCD panels.

196.    Because OEMs have thin net margins, they must pass on any increase in component costs, such that increases in the price of LCD panels lead to quick corresponding price increases at

34

1    the OEM level for products containing such panels.

2        197.    LCD panels are one of the most expensive components in products in which they

3    are incorporated.  As noted, the cost of an LCD panel in an LCD TV is 60-70% of the retail price;

4    in a laptop is10% of the retail price; and in a computer monitor is 70-80% of the retail price.

5        198.    The computer industry is highly competitive.  Computers are commodities, with

6    little or no brand loyalty, such that aggressive pricing causes consumers to switch preferences to

7    different brands.  Computer prices are closely based on production costs, which are in turn directly

8    determined by component costs, as assembly costs are minimal.  OEMs accordingly use

9    component costs, like the cost of LCD panels, as the starting point for all price calculations.  Thus,

10   computer prices closely track increases and decreases in component costs.

11   **C.**      **The Effect Of The Price Of LCD Panels On The Price Of Products Is**

12            **Discernable On A Classwide Basis.**

13       199.    Once an LCD panel leaves its place of manufacture, it remains essentially

14   unchanged as it moves through the distribution system. LCD panels are identifiable, discreet

15   physical objects that do not change form or become an indistinguishable part of the TVs, computer

16   monitors, laptops, or other products in which they are contained.  And a given LCD product

17   contains one and only one LCD panel.

18       200.    Thus, LCD panels follow a traceable physical chain from the defendants to the

19   OEMs to the purchasers of the finished products incorporating LCD panels.

20       201.    Moreover, just as LCD panels can be physically traced through the supply chain, so

21   can their price be traced to show that changes in the prices paid by direct purchasers of LCD

22   panels affect prices paid by indirect purchasers of products containing LCD panels.

23       202.    Because defendants control the market for LCD panels, there are virtually no

24   choices for persons and businesses that require products containing such panels other than buying

25   such products manufactured by a direct purchaser that paid supracompetitive prices for LCD

26   panels to defendants because of defendants' conspiracy alleged herein.

27       203.    When distribution markets are highly competitive, as they are in the case of

28

35

products containing LCD panels as components, all of the overcharge will be passed through to

ultimate consumers, such as the indirect-purchaser plaintiffs and class members.  In addition, most

of the defendants themselves manufacture, market, and distribute products including LCD panels,

such as televisions (e.g., Samsung and Sharp) and computer monitors (e.g. Samsung) and laptops

(e.g., Toshiba).  This means that these defendants will pass through to their customers 100% of the

supracompetitive price increases that result from the defendants' conspiracy, combination, and

agreement to fix, increase, and stabilize the prices for LCD panels.

204.    Hence, the inflated prices of products containing LCD panels resulting from

defendants' price-fixing conspiracy have been passed on to plaintiffs and the other class members

by direct-purchaser manufacturers, distributors, and retailers.

205.    During the Class Period, a number of large OEMs sold their products containing

LCD panels directly to end-buyers.  The OEM with the largest share of computer monitor and

laptop sales in the United States market, Dell, sold exclusively to end-buyers, as did Gateway.

During the Class Period, Compaq and Apple also sold large portions of their laptops and computer

monitors directly to the end-buyer.  Dell has a 35.4% market share for LCD monitors.

206.    Computer models sold by other OEMs to retailers were generally updated several

times a year, and the price was changed for each new model.  For example, for one large retailer,

more than 90 percent of the computers sold during 2000 were either new models or were sold at a

different price from the price in the previous month.  OEMs, retailers and distributors often use a

"standard markup" method to set prices, meaning that they add a standard percentage to their own

costs to determine selling prices.  Thus, changes in the price of LCD panels were passed on rapidly

rather than absorbed.

207.    In retailing, it is common to use a "markup rule".  The retail price is set as the

wholesale cost plus a percentage markup designed to recover non-product costs and to provide a

profit.  This system guarantees that increases in costs to the retailer will be passed on to end

buyers.  For example, CDW, a  large seller of LCD monitors and laptops, uses such a system, and

a declaration in the DRAM case from CDW's director of pricing details exactly how they

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   calculated selling prices:

2           In general, CDW employs a "building block" approach to setting its advertised
        prices.  The first building block is the Cost of Goods Sold (COGS), which
3       represents the price CDW paid to acquire the product…CDW… adds a series of
        positive markups to the cost to CDW to acquire a given product.  These markups
4       are in addition to the pass through effect of changes in the costs charged to CDW
        for that product by a given vendor.

5   208.    The economic and legal literature has recognized that unlawful overcharges in a

6   component normally result in higher prices for products containing that price-fixed component.

7   As Professor Herbert Hovenkamp, a noted antitrust scholar, has stated in his treatise, FEDERAL

8   ANTITRUST POLICY, THE LAW OF COMPETITITON AND ITS PRACTICE (1994) at 564:

9           A monopoly overcharge at the top of a distribution chain generally results in higher
        prices at every level below.  For example if production of aluminum is
10      monopolized or cartelized, fabricators of aluminum cookware will pay higher prices
        for aluminum.  In most cases they will absorb part of these increased costs
11      themselves and pass part along to cookware wholesalers.  The wholesalers will
        charge higher prices to the retail stores, and the stores will do it once again to retail
12      consumers.  Every person at every stage in the chain likely will be poorer as a result
        of the monopoly price at the top.

13

14          Theoretically, one can calculate the percentage of any overcharge that a firm at one
        distributional level will pass on to those at the next level.

15  209.    Similarly, two other antitrust scholars – Professors Robert G. Harris (Professor

16  Emeritus and former Chair of the Business and Public Policy Group at the Haas School of

17  Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor

18  of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of

19  Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly

20  overcharges is not the exception: it is the rule."

21  210.    As Professor Jeffrey K. McKie-Mason (Arthur W. Burks Professor for Information

22  and Computer Science and Professor of Economics and Public Policy at the University of

23  Michigan), an expert who presented evidence in a number of the indirect purchaser cases

24  involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case

25  granting class certification):

26          As is well known in economic theory and practice, at least some of the overcharge
        will be passed on by distributors to end consumers.  When the distribution markets
27      are highly competitive, as they are here, all or nearly the entire overcharge will be
        passed on through to ultimate consumers… Both of Microsoft's experts also agree

28
                                    37
────────────────────────────────────────
INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

upon the economic phenomenon of cost pass through, and how it works in competitive markets.  This general phenomenon of cost pass through is well established in antitrust laws and economics as well.

211.    Quantitative correlation analysis strongly suggest that the market for products containing LCD panels is inextricably linked to the market for LCD panels by virtue of the strong correlation between the price of LCD panels and the price of LCD monitors, TVs, and laptop computers.

212.    The purpose of the conspiratorial conduct of the defendants was to raise, fix or stabilize the price of LCD panels and, as a direct and foreseeable result, products containing such panels.  Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in dependent variable are explained by changes in a multitude of variables--- when all such variables may be changing simultaneously.  That analysis-called regression analysis- is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs.  Thus, it is possible to isolate and identify only the impact of an increase in the price of LCD panels on prices for products containing such panels even though such products contain a number of other components whose prices may be changing over time.  A regression model can explain how variation in the price of LCD panels affects changes in the price of products containing such panels.  In such models, rather than being treated as the dependent variable, the price of LCD panels is treated as an independent or explanatory variable.  The model can isolate how changes in the price of LCD panels impact the price of products containing such panels while holding controlling for the impact of other price-determining factors.

213.    Economic and legal literature recognizes that the more pricing decisions are based on cost, the easer it is to determine the pass-through rate.  The directness of affected costs refers to whether an overcharge affects a direct (*i.e.* variable) cost or an indirect (*i.e.*, overhead) cost.  Overcharges will be passed-through sooner and at a higher rate if the overcharge affects direct costs.  Here LCD panels are a direct (and substantial) cost of products containing such panels.

214.    Other factors that lead to the pass-through of overcharges include: (i) whether price

38

changes are frequent; (ii) the duration of the anti-competitive overcharge; (iii) whether pricing

decisions are based on cost; (iv) whether the overcharge affects variable, as opposed to overhead,

costs; (v) whether the resellers' production technology is uniform; (vi) whether the reseller supply

curve exhibits a high degree of elasticity; and (vii) whether the demand of the resellers is inelastic.

All of these factors were present in the LCD market during the Class Period.  The precise amount

of such an impact on the prices of products containing LCD panels can be measured and

quantified.  Commonly used and well-accepted economic models can be used to measure both the

extent and the amount of the supracompetitive charge passed-through the chain of distribution.

215.   Plaintiffs and other indirect purchasers have been forced to pay supracompetitive

prices for products containing LCD panels.  These inflated prices have been passed on to them by

direct purchaser manufacturers, distributors, and retailers.  Those overcharges have unjustly

enriched defendants.

## IX.   CLASS ACTION ALLEGATIONS

216.   Plaintiffs bring this action on their own behalf and as a class action pursuant to

Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following Class

(the "Nationwide Class"):

> All persons citizens and entities residing in the United States that,
> from January 1, 1996 through December 31, 2006, purchased in the
> United States, LCD Panels indirectly from the Defendants for their
> own use and not for resale.  Specifically excluded from this Class are
> the Defendants; the officers, directors or employees of any
> Defendant; any entity in which any Defendant has a controlling
> interest; and any affiliate, legal representative, heir or assign of any
> Defendant.  Also excluded are any federal, state or local
> governmental entities, any judicial officer presiding over this action
> and the members of his/her immediate family and judicial staff, and
> any juror assigned to this action

217.   Plaintiffs also bring this action on their own behalf and as a class action pursuant to

Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all

members of the following classes (collectively, the "Indirect Purchaser State Classes"):

> a.   **ARKANSAS**: All persons and entities in Arkansas who indirectly
>
> purchased LCD Panels manufactured and/or sold by one or more of the

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Arkansas Indirect Purchaser Class").

    b.    **ARIZONA:** All persons and entities in Arizona who indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Arizona Indirect Purchaser Class").

    c.    **CALIFORNIA:** All persons and entities in California who indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the

1  "California Indirect Purchaser Class").

2  d.  **DISTRICT OF COLUMBIA:** All persons and entities in the District of

3  Columbia who indirectly purchased LCD Panels manufactured and/or sold

4  by one or more of the Defendants during the Class Period.  Specifically

5  excluded from this Class are the Defendants; the officers, directors or

6  employees of any Defendant; any entity in which any Defendant has a

7  controlling interest; and any affiliate, legal representative, heir or assign of

8  any Defendant.  Also excluded are any federal, state or local governmental

9  entities, any judicial officer presiding over this action and the members of

10  his/her immediate family and judicial staff, and any juror assigned to this

11  action (the "District of Columbia Indirect Purchaser Class").

12  e.  **FLORIDA**: All persons and entities in Florida who indirectly purchased

13  LCD Panels manufactured and/or sold by one or more of the Defendants

14  during the Class Period.  Specifically excluded from this Class are the

15  Defendants; the officers, directors or employees of any Defendant; any

16  entity in which any Defendant has a controlling interest; and any affiliate,

17  legal representative, heir or assign of any Defendant.  Also excluded are any

18  federal, state or local governmental entities, any judicial officer presiding

19  over this action and the members of his/her immediate family and judicial

20  staff, and any juror assigned to this action (the "Florida Indirect Purchaser

21  Class").

22  f.  **HAWAII:** All persons and entities in Hawaii who indirectly purchased

23  LCD Panels manufactured and/or sold by one or more of the Defendants

24  during the Class Period.  Specifically excluded from this Class are the

25  Defendants; the officers, directors or employees of any Defendant; any

26  entity in which any Defendant has a controlling interest; and any affiliate,

27  legal representative, heir or assign of any Defendant.  Also excluded are any

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1  federal, state or local governmental entities, any judicial officer presiding

2  over this action and the members of his/her immediate family and judicial

3  staff, and any juror assigned to this action (the "Hawaii Indirect Purchaser

4  Class").

5  g.  **IOWA:** All persons and entities in Iowa who indirectly purchased LCD

6  Panels manufactured and/or sold by one or more of the Defendants during

7  the Class Period. Specifically excluded from this Class are the Defendants;

8  the officers, directors or employees of any Defendant; any entity in which

9  any Defendant has a controlling interest; and any affiliate, legal

10  representative, heir or assign of any Defendant. Also excluded are any

11  federal, state or local governmental entities, any judicial officer presiding

12  over this action and the members of his/her immediate family and judicial

13  staff, and any juror assigned to this action (the "Iowa Indirect Purchaser

14  Class").

15  h.  **KANSAS:** All persons and entities in Kansas who indirectly purchased

16  LCD Panels manufactured and/or sold by one or more of the Defendants

17  during the Class Period. Specifically excluded from this Class are the

18  Defendants; the officers, directors or employees of any Defendant; any

19  entity in which any Defendant has a controlling interest; and any affiliate,

20  legal representative, heir or assign of any Defendant. Also excluded are any

21  federal, state or local governmental entities, any judicial officer presiding

22  over this action and the members of his/her immediate family and judicial

23  staff, and any juror assigned to this action (the "Kansas Indirect Purchaser

24  Class").

25  i.  **MAINE:** All persons and entities in Maine who indirectly purchased LCD

26  Panels manufactured and/or sold by one or more of the Defendants during

27  the Class Period. Specifically excluded from this Class are the Defendants;

28

1    the officers, directors or employees of any Defendant; any entity in which

2    any Defendant has a controlling interest; and any affiliate, legal

3    representative, heir or assign of any Defendant.  Also excluded are any

4    federal, state or local governmental entities, any judicial officer presiding

5    over this action and the members of his/her immediate family and judicial

6    staff, and any juror assigned to this action (the "Maine Indirect Purchaser

7    Class").

8        j.    **MASSACHUSETTS:** All persons and entities in Massachusetts who

9    indirectly purchased LCD Panels manufactured and/or sold by one or more

10   of the Defendants during the Class Period.  Specifically excluded from this

11   Class are the Defendants; the officers, directors or employees of any

12   Defendant; any entity in which any Defendant has a controlling interest; and

13   any affiliate, legal representative, heir or assign of any Defendant.  Also

14   excluded are any federal, state or local governmental entities, any judicial

15   officer presiding over this action and the members of his/her immediate

16   family and judicial staff, and any juror assigned to this action (the

17   "Massachusetts Indirect Purchaser Class").

18       k.    **MICHIGAN:** All persons and entities in Michigan who indirectly

19   purchased LCD Panels manufactured and/or sold by one or more of the

20   Defendants during the Class Period.  Specifically excluded from this Class

21   are the Defendants; the officers, directors or employees of any Defendant;

22   any entity in which any Defendant has a controlling interest; and any

23   affiliate, legal representative, heir or assign of any Defendant.  Also

24   excluded are any federal, state or local governmental entities, any judicial

25   officer presiding over this action and the members of his/her immediate

26   family and judicial staff, and any juror assigned to this action (the

27   "Michigan Indirect Purchaser Class").

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

l.    **MINNESOTA:** All persons and entities in Minnesota who indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Minnesota Indirect Purchaser Class").

m.    **MISSISSIPPI:** All persons and entities in Mississippi who indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Mississippi Indirect Purchaser Class").

n.    **NEBRASKA:** All persons and entities in Nebraska who indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Nebraska Indirect Purchaser Class").

o.   **NEVADA:** All persons and entities in Nevada who indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Nevada Indirect Purchaser Class").

p.   **NEW HAMPSHIRE:** All persons and entities in New Hampshire who indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "New Hampshire Indirect Purchaser Class").

q.   **NEW MEXICO:** All persons and entities in New Mexico who indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant;

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

any entity in which any Defendant has a controlling interest; and any

affiliate, legal representative, heir or assign of any Defendant.  Also

excluded are any federal, state or local governmental entities, any judicial

officer presiding over this action and the members of his/her immediate

family and judicial staff, and any juror assigned to this action (the "New

Mexico Indirect Purchaser Class").

r.   **NEW YORK:** All persons and entities in New York who indirectly

purchased LCD Panels manufactured and/or sold by one or more of the

Defendants during the Class Period.  Specifically excluded from this Class

are the Defendants; the officers, directors or employees of any Defendant;

any entity in which any Defendant has a controlling interest; and any

affiliate, legal representative, heir or assign of any Defendant.  Also

excluded are any federal, state or local governmental entities, any judicial

officer presiding over this action and the members of his/her immediate

family and judicial staff, and any juror assigned to this action (the "New

York Indirect Purchaser Class").

s.   **NORTH CAROLINA:** All persons and entities in North Carolina who

indirectly purchased LCD Panels manufactured and/or sold by one or more

of the Defendants during the Class Period.  Specifically excluded from this

Class are the Defendants; the officers, directors or employees of any

Defendant; any entity in which any Defendant has a controlling interest; and

any affiliate, legal representative, heir or assign of any Defendant.  Also

excluded are any federal, state or local governmental entities, any judicial

officer presiding over this action and the members of his/her immediate

family and judicial staff, and any juror assigned to this action (the "North

Carolina Indirect Purchaser Class").

t.   **NORTH DAKOTA:** All persons and entities in North Dakota who

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "North Dakota Indirect Purchaser Class").

u.    **PENNSYLVANIA:** All persons and entities in Pennsylvania who indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Pennsylvania Indirect Purchaser Class").

v.    **PUERTO RICO:** All persons and entities in Puerto Rico who indirectly purchased LCD Panels manufactured and/or sold by one or more of the Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   family and judicial staff, and any juror assigned to this action (the "Puerto

2   Rico Indirect Purchaser Class").

3   w.   **RHODE ISLAND:** All persons and entities in Rhode Island who indirectly

4   purchased LCD Panels manufactured and/or sold by one or more of the

5   Defendants during the Class Period.  Specifically excluded from this Class

6   are the Defendants; the officers, directors or employees of any Defendant;

7   any entity in which any Defendant has a controlling interest; and any

8   affiliate, legal representative, heir or assign of any Defendant.  Also

9   excluded are any federal, state or local governmental entities, any judicial

10   officer presiding over this action and the members of his/her immediate

11   family and judicial staff, and any juror assigned to this action (the "Rhode

12   Island Indirect Purchaser Class").

13   x.   **SOUTH DAKOTA:** All persons and entities in South Dakota who

14   indirectly purchased LCD Panels manufactured and/or sold by one or more

15   of the Defendants during the Class Period.  Specifically excluded from this

16   Class are the Defendants; the officers, directors or employees of any

17   Defendant; any entity in which any Defendant has a controlling interest; and

18   any affiliate, legal representative, heir or assign of any Defendant.  Also

19   excluded are any federal, state or local governmental entities, any judicial

20   officer presiding over this action and the members of his/her immediate

21   family and judicial staff, and any juror assigned to this action (the "South

22   Dakota Indirect Purchaser Class").

23   y.   **TENNESSEE:** All persons and entities in Tennessee who indirectly

24   purchased LCD Panels manufactured and/or sold by one or more of the

25   Defendants during the Class Period.  Specifically excluded from this Class

26   are the Defendants; the officers, directors or employees of any Defendant;

27   any entity in which any Defendant has a controlling interest; and any

28

48

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    affiliate, legal representative, heir or assign of any Defendant.  Also

2    excluded are any federal, state or local governmental entities, any judicial

3    officer presiding over this action and the members of his/her immediate

4    family and judicial staff, and any juror assigned to this action (the

5    "Tennessee Indirect Purchaser Class").

6    z.    **VERMONT:** All persons and entities in Vermont who indirectly purchased

7    LCD Panels manufactured and/or sold by one or more of the Defendants

8    during the Class Period.  Specifically excluded from this Class are the

9    Defendants; the officers, directors or employees of any Defendant; any

10   entity in which any Defendant has a controlling interest; and any affiliate,

11   legal representative, heir or assign of any Defendant.  Also excluded are any

12   federal, state or local governmental entities, any judicial officer presiding

13   over this action and the members of his/her immediate family and judicial

14   staff, and any juror assigned to this action (the "Vermont Indirect Purchaser

15   Class").

16   aa.   **WEST VIRGINIA:** All persons and entities in West Virginia who

17   indirectly purchased LCD Panels manufactured and/or sold by one or more

18   of the Defendants during the Class Period.  Specifically excluded from this

19   Class are the Defendants; the officers, directors or employees of any

20   Defendant; any entity in which any Defendant has a controlling interest; and

21   any affiliate, legal representative, heir or assign of any Defendant.  Also

22   excluded are any federal, state or local governmental entities, any judicial

23   officer presiding over this action and the members of his/her immediate

24   family and judicial staff, and any juror assigned to this action (the "West

25   Virginia Indirect Purchaser Class").

26   bb.   **WISCONSIN:** All persons and entities in Wisconsin who indirectly

27   purchased LCD Panels manufactured and/or sold by one or more of the

28   49

Defendants during the Class Period.  Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Wisconsin Indirect Purchaser Class").

218.    Plaintiffs do not know the exact size of the Classes at the present time.  However, Plaintiffs believe that due to the nature of the trade and commerce involved, there are at least thousands in each separate state class, and hundreds of thousands of class members geographically dispersed throughout the United States, such that joinder of all class members would be impracticable.

219.    Plaintiffs' claims are typical of the claims of their respective Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the members of their respective Classes.  Plaintiffs have retained competent counsel experienced in class action and complex antitrust and consumer protection litigation.

220.    Common questions of law and fact exist, including:

    i.    Whether Defendants and their Co-Conspirators engaged in a contract, combination or conspiracy among themselves to fix, raise, maintain or stabilize the process of, or allocate the market of LCD Panels sold in the United States;

    ii.    The duration and extent of the contract, combination or conspiracy;

    iii.    Whether the Defendants and their Co-Conspirators were participants in the contracts, combinations or conspiracies alleged herein;

    iv.    Whether Defendants and their Co-Conspirators engaged in conduct

50

that violated Section 1 of the Sherman act;

    v.    Whether Defendants and their Co-Conspirators engaged in unlawful, unfair or deceptive contracts, combinations or conspiracies among themselves, express or implied, to fix, raise, maintain, or stabilize prices of LCD Panels sold in and/or distributed in the United States;

    vi.    Whether the Defendants and their Co-Conspirators engaged in conduct in violation of the antitrust, consumer protection, unfair trade, and/or deceptive trade practices laws of the various Indirect Purchaser States as alleged below;

    vii.    Whether the anticompetitive conduct of the Defendants and their Co-Conspirators caused prices of LCD Panels to be artificially inflated to non-competitive levels;

    viii.    Whether the Defendants and their Co-Conspirators unjustly enriched themselves as a result of their inequitable conduct at the expense of the members of the Classes;

    ix.    Whether Defendants and their Co-Conspirators fraudulently concealed the existence of their unlawful conduct;

    x.    Whether Plaintiffs and the Classes are entitled to injunctive relief; and

    xi.    Whether Plaintiffs and other members of the Indirect Purchaser Classes were injured by the conduct of Defendants and, if so, the appropriate measure of damages for each of the Classes.

221.    These and other questions of law and fact are common to the Classes and predominate over any questions affecting only individual class members, including legal and factual issues relating to liability, damages, and restitution.

222.    Class action treatment is a superior method for the fair and efficient adjudication of this controversy because:

51

a.     It will avoid a multiplicity of suits and consequent burden on the courts and Defendants;

b.     It would be virtually impossible for all members of the Classes to intervene as parties-plaintiff in this action;

c.     It will allow numerous individuals with claims too small to adjudicate on an individual basis because of the prohibitive cost of this litigation, to obtain redress for their economic injuries;

d.     It is appropriate for treatment on a fluid recovery basis, which obviate any manageability problems; and

e.     It will provide court oversight of the claims process, once Defendants' liability is adjudicated.

223.     The named plaintiffs will fairly and adequately protect the interests of the Class in that the named plaintiffs have no interests antagonistic to the interests of the other members of the Class and have retained counsel competent and experienced in the prosecution of class actions and antitrust cases to represent themselves and the Class.

224.     This case is also appropriate for certification as a class action because the defendants have acted and refused to act on grounds generally applicable to the Class, so that final injunctive relief will be appropriate with respect to the Class as a whole.

225.     The claims asserted herein are also appropriate for class certification under the laws of the state of California and of each of the other states under which claims are asserted.

## X.     **FRAUDULENT CONCEALMENT**

226.     Plaintiffs and members of the Classes alleged herein did not discover and could not have discovered, through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until after December of 2006, after the investigations by the DOJ and other antitrust regulators became public, because defendants and their co-conspirators actively and fraudulently concealed the existence of their contract, combination or conspiracy. Because defendants' agreement, understanding and conspiracy were kept secret, plaintiffs and Class members were

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    unaware of defendants' unlawful conduct alleged herein and did not know that they were paying

2    artificially high prices for LCD panels and the products in which they were used.

3          227.    The affirmative acts of the defendants alleged herein, including acts in furtherance

4    of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

5          228.    By its very nature, defendants' price-fixing conspiracy was inherently self-

6    concealing.  As alleged above, defendants had secret discussions about price and output.

7    Defendants agreed not to publicly discuss the existence or the nature of their agreement.

8          229.    Moreover, defendants repeatedly gave pretextual justifications for the inflated

9    prices of LCD panels in furtherance of the conspiracy.

10         230.    There have been a variety of other purportedly market-based explanations for price

11   increases.  The first was supply and demand.  In early 1999, Omid Milani, a marketing manager

12   for NEC, stated that "demand by far is outstripping our supply capability" and predicted that

13   "prices will continue to increase until a reasonable balance is achieved."  Boch Kwon, Vice

14   President of LG Philips' Sales Division, and Yoon-Woo Lee, President and CEO of Samsung's

15   Semiconductor Division, also falsely reported in 1999 that price increases were due to "acute"

16   shortages.

17         231.    Another false rationale provided by defendants was undercapitalization.  In 1999,

18   Joel Pollack, a marketing manager for Sharp, stated:

19                 Prices have dropped at a steady rate over the past couple of years to the point where
                   it was difficult to continue the necessary level of capitalization.  The [low prices]
20                 have starved the industry.

21         232.    A third rationale for the steep price hikes of 1999 was offered by Yoon-Woo Lee,

22   CEO of Samsung.  He claimed that the demand for larger panels was reducing the industry's

23   capacity because each display used more square inches of motherglass substrate.

24         233.    Increased demand was repeatedly cited by defendants throughout the Class Period.

25   On February 4, 2001, Bruce Berkoff, Executive Vice-President at LG Philips was quoted in

26   News.com as saying that price increases were due to shortages.  He claimed, "demand grew so fast

27   that the supply can't keep up."  Koo Duk-Mo, an executive at LG Philips, similarly predicted in

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1999 that prices would rise 10 to 15 percent due to increased demand for the holiday season. In 2005, Koo Duk-Mo of LG Philips stated "[w]e are seeing much stronger demand for large-size LCD TVs than expected, so LCD TV supply is likely to remain tight throughout the year."

234. Hsu Jen-Ting, a Vice-President at Chi Mei, and Chen Shuen-Bin, president of AU Optronics, offered another rationale for the 2001 price hike in an interview for the Taiwan Economic News in October 2001. They blamed "component shortages due to the late expansion of 5th generation production lines and new demand from the replacement of traditional cathode ray tubes with LCD monitors."

235. These explanations were all pretextual and each served to cover up the conspiracy. As a result of defendants' fraudulent concealment of their conspiracy, the running of any statue of limitations has been tolled with respect to any claims that plaintiffs and the Class members have as a result of the anticompetitive conduct alleged in this Complaint

## XI.   VIOLATIONS ALLEGED

### First Claim for Relief
### (Violation of Section 1 of the Sherman Act)

236. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

237. Beginning at a time currently unknown to plaintiffs, but at least as early as January 1, 1996, and continuing through December 31, 2006, the exact dates being unknown to plaintiffs, defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade artificially to fix, raise, stabilize, and peg prices for LCD panels and LCD products in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

238. In formulating and carrying out the alleged agreement, understanding, and conspiracy, the defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

a.      Fixing, raising, stabilizing, and pegging the price of LCD panels; and

b.      Allocating among themselves and collusively reducing the production of

LCD panels.

239.    The combination and conspiracy alleged herein has had the following effects, among others:

a.      Price competition in the sale of LCD panels has been restrained, suppressed, and/or eliminated in the United States;

b.      Prices for LCD panels sold by defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

c.      Those who purchased LCD panels directly or indirectly from defendants and their co-conspirators have been deprived of the benefits of free and open competition.

240.    Plaintiffs and other Nationwide Class members have been injured and will continue to be injured in their businesses and property by paying more for LCD panels purchased indirectly from the defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy, including paying more for TVs, laptops, and computer monitors, in which LCD panels are included, as a result of higher prices paid for LCD panels by the direct purchasers of such panels.

241.    Plaintiffs and the Nationwide Class are entitled to an injunction against defendants, preventing and restraining the violations alleged herein.

**Second Claim for Relief**

**(Unjust Enrichment and Disgorgement of Profits)**

242.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

243.    Defendants have been unjustly enriched through overpayments by plaintiffs and class members and the resulting profits.

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

244.   Under common law principles of unjust enrichment, defendants should not be permitted to retain the benefits conferred via overpayments by plaintiffs and class members.

245.   Plaintiffs and all members of the Nationwide Class seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which plaintiffs and class members may seek restitution.

**Third Claim for Relief**

**(Violation of State Antitrust and Unfair Competition Laws)**

246.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

247.   Plaintiffs Scott Friedson and Timothy Lauricella ("Arizona Plaintiffs") incorporate and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

a.   Defendants' combinations or conspiracies had the following effects: (1) LCD price competition was restrained, suppressed, and eliminated throughout Arizona; (2) LCD prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Arizona Plaintiffs and members of the Arizona Indirect Purchaser Class were deprived of free and open competition; and (4) Arizona Plaintiffs and members of the Arizona Indirect Purchaser Class paid supracompetitive, artificially inflated prices for LCD.

b.   During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

c.   As a direct and proximate result of Defendants' unlawful conduct, Arizona Plaintiffs and members of the Arizona Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.   By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Arizona Revised Stat. §§ 44-1401, *et seq.* Accordingly, Arizona Plaintiffs and the members of the Arizona Indirect

56

1    Purchaser Class seek all forms of relief available under Arizona Revised

2    Stat. §§ 44-1401, *et seq.*

3    248.    Plaintiffs Lisa Blackwell, Judd Eliasoph, Williams Henderson, Robert Kerson,

4 Steven Martel, Frederick Rozo, Byron Ho, and Joe Solo, (collectively "California plaintiffs")

5 incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the

6 preceding paragraphs of this Complaint.

7    a.    Defendants' contract, combination, trust or conspiracy was entered in,

8          carried out, effectuated and perfected mainly within the State of California,

9          and defendants' conduct within California injured all members of the Class

10         throughout the United States.  Therefore, this claim for relief under

11         California law is brought on behalf of the California Indirect Purchaser

12         Class.

13    b.    Beginning at a time currently unknown to California plaintiffs, but at least

14         as early as January 1, 1996, and continuing thereafter at least up to

15         December 31, 2006, defendants and their co-conspirators entered into and

16         engaged in a continuing unlawful trust in restraint of the trade and

17         commerce described above in violation of Section 16720, California

18         Business and Professions Code.  Defendants, and each of them, have acted

19         in violation of Section 16720 to fix, raise, stabilize, and maintain prices of,

20         and allocate markets for, LCD panels and LCD products at supracompetitive

21         levels.

22    c.    The aforesaid violations of Section 16720, California Business and

23         Professions Code, consisted, without limitation, of a continuing unlawful

24         trust and concert of action among the defendants and their co-conspirators,

25         the substantial terms of which were to fix, raise, maintain, and stabilize the

26         prices of, and to allocate markets for, LCD panels and LCD products.

27    d.    For the purpose of forming and effectuating the unlawful trust, the

28

1    defendants and their co-conspirators have done those things which they

2    combined and conspired to do, including but in any way limited to the acts,

3    practices and course of conduct set forth above and the following:  (1)

4    Fixing, raising, stabilizing, and pegging the price of LCD panels; and (2)

5    Allocating among themselves the production of LCD panels.

6    e.    The combination and conspiracy alleged herein has had, *inter alia*, the

7          following effects:  (1) Price competition in the sale of LCD panels and LCD

8          products has been restrained, suppressed, and/or eliminated in the State of

9          California; (2) Prices for LCD panels and LCD products sold by defendants

10         and their co-conspirators have been fixed, raised, stabilized, and pegged at

11         artificially high, non-competitive levels in the State of California and

12         throughout the United States; and (3) Those who purchased LCD panels and

13         LCD products directly or indirectly from defendants and their co-

14         conspirators have been deprived of the benefit of free and open competition.

15   f.    As a direct and proximate result of defendants' unlawful conduct, California

16         plaintiffs and the members of the California Indirect Purchaser Class have

17         been injured in their business and property in that they paid more for LCD

18         products than they otherwise would have paid in the absence of defendants'

19         unlawful conduct.  As a result of defendants' violation of Section 16720 of

20         the California Business and Professions Code, California plaintiffs and the

21         California Indirect Purchaser Class seek treble damages and their cost of

22         suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of

23         the California Business and Professions Code.

24   249.   Plaintiffs Gail Feser, Tim Gregory, and David Walker ("District of Columbia

25   Plaintiffs")  incorporate and reallege each and every allegation set forth in the preceding

26   paragraphs of this Complaint.

27   a.    Defendants' combinations or conspiracies had the following effects:  (1)

28

58

LCD price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) LCD prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) District of Columbia Plaintiffs and members of the District of Columbia Indirect Purchaser Class were deprived of free and open competition; and (4) District of Columbia Plaintiffs and members of the District of Columbia Indirect Purchaser Class paid supracompetitive, artificially inflated prices for LCD.

b.   During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

c.   As a direct and proximate result of Defendants' unlawful conduct, District of Columbia Plaintiffs and members of the District of Columbia Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4502, *et seq.* Accordingly, District of Columbia Plaintiffs and the members of the District of Columbia Indirect Purchaser Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4503, *et seq.*

250.   Plaintiff Ben Northway incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

a.   Defendants' combinations or conspiracies had the following effects: (1) LCD price competition was restrained, suppressed, and eliminated throughout Iowa; (2) LCD prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiff Northway and members of the Iowa Indirect Purchaser Class were deprived of free and open competition; and (4)Plaintiff Northway and members of the Iowa

1    Indirect Purchaser Class paid supracompetitive, artificially inflated prices

2    for LCD.

3        b.    During the Class Period, Defendants' illegal conduct substantially affected

4    Iowa commerce.

5        c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

6    Northway and members of the Iowa Indirect Purchaser Class have been

7    injured in their business and property and are threatened with further injury.

8        d.    By reason of the foregoing, defendants have entered into agreements in

9    restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly,

10    Plaintiff Northway and the members of the Iowa Indirect Purchaser Class

11    seek all forms of relief available under Iowa Code §§ 553.1.

12       251.    Plaintiffs Peter Coyle, Rex Getz, and Kou Srimoungchanh, ("Kansas Plaintiffs")

13    incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

14    Complaint.

15        a.    Defendants' combinations or conspiracies had the following effects:  (1)

16    LCD price competition was restrained, suppressed, and eliminated

17    throughout Kansas; (2) LCD prices were raised, fixed, maintained and

18    stabilized at artificially high levels throughout Kansas; (3) Kansas Plaintiffs

19    and members of the Kansas Indirect Purchaser Class were deprived of free

20    and open competition; and (4) Kansas Plaintiffs and members of the Kansas

21    Indirect Purchaser Class paid supracompetitive, artificially inflated prices

22    for LCD.

23        b.    During the Class Period, Defendants' illegal conduct substantially affected

24    Kansas commerce.

25        c.    As a direct and proximate result of Defendants' unlawful conduct, Kansas

26    Plaintiffs and members of the Kansas Indirect Purchaser Class have been

27    injured in their business and property and are threatened with further injury.

28    

60

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

d.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Kansas Plaintiffs and the members of the Kansas Indirect Purchaser Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

252.    Plaintiff Patricia Ronco incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

a.     Defendants' combinations or conspiracies had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout Maine; (2) LCD prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiff Ronco and members of the Maine Indirect Purchaser Class were deprived of free and open competition; and (4) Plaintiff Ronco and members of the Maine Indirect Purchaser Class paid supracompetitive, artificially inflated prices for LCD.

b.     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Ronco and members of the Maine Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiff Ronco and the members of the Maine Indirect Purchaser Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

253.    Plaintiffs Gladys Baker, Judy Griffith, and Ling-Hung Jou ("Michigan Plaintiffs") incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

1   Complaint.

2          a.      Defendants' combinations or conspiracies had the following effects:  (1)

3                  LCD price competition was restrained, suppressed, and eliminated

4                  throughout Michigan; (2) LCD prices were raised, fixed, maintained and

5                  stabilized at artificially high levels throughout Michigan; (3) Michigan

6                  Plaintiffs and members of the Michigan Indirect Purchaser Class were

7                  deprived of free and open competition; and (4) Michigan Plaintiffs and

8                  members of the Michigan Indirect Purchaser Class paid supracompetitive,

9                  artificially inflated prices for LCD.

10         b.      During the Class Period, Defendants' illegal conduct substantially affected

11                 Michigan commerce.

12         c.      As a direct and proximate result of Defendants' unlawful conduct, Michigan

13                 Plaintiffs and members of the Michigan Indirect Purchaser Class have been

14                 injured in their business and property and are threatened with further injury.

15         d.      By reason of the foregoing, defendants have entered into agreements in

16                 restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et*

17                 *seq.*  Accordingly, Michigan Plaintiffs and the members of the Michigan

18                 Indirect Purchaser Class seek all relief available under Michigan Comp.

19                 Laws Ann. §§ 445.73, *et seq.*

20         254.    Plaintiffs Martha Mulvey ("Minnesota Plaintiff") incorporate and reallege each and

21  every allegation set forth in the preceding paragraphs of this Complaint.

22         a.      Defendants' combinations or conspiracies had the following effects:  (1)

23                 LCD price competition was restrained, suppressed, and eliminated

24                 throughout Minnesota; (2) LCD prices were raised, fixed, maintained and

25                 stabilized at artificially high levels throughout Minnesota; c. Minnesota

26                 Plaintiff and members of the Minnesota Indirect Purchaser Class were

27                 deprived of free and open competition; and d. Minnesota Plaintiff and

28

1    members of the Minnesota Indirect Purchaser Class paid supracompetitive,

2    artificially inflated prices for LCD.

3    b.    During the Class Period, Defendants' illegal conduct substantially affected

4    Minnesota commerce.

5    c.    As a direct and proximate result of Defendants' unlawful conduct,

6    Minnesota Plaintiff and members of the Minnesota Indirect Purchaser Class

7    have been injured in their business and property and are threatened with

8    further injury.

9    d.    By reason of the foregoing, defendants have entered into agreements in

10    restraint of trade in violation of Minnesota Stat. §§ 325D.52, *et seq.*

11    Accordingly, Minnesota Plaintiff and the members of the Minnesota

12    Indirect Purchaser Class seek all relief available under Minnesota Stat. §§

13    325D.502, *et seq.*

14    255.    Plaintiffs and members of the Mississippi Indirect Purchaser Class incorporate and

15    reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

16    a.    Defendants' combinations or conspiracies had the following effects:  (1)

17    LCD price competition was restrained, suppressed, and eliminated

18    throughout Mississippi; (2) LCD prices were raised, fixed, maintained and

19    stabilized at artificially high levels throughout Mississippi; (3) members of

20    the Mississippi Indirect Purchaser Class were deprived of free and open

21    competition; and members of the Mississippi Indirect Purchaser Class paid

22    supracompetitive, artificially inflated prices for LCD.

23    b.    During the Class Period, Defendants' illegal conduct substantially affected

24    Mississippi commerce.

25    c.    As a direct and proximate result of Defendants' unlawful conduct, members

26    of the Mississippi Indirect Purchaser Class have been injured in their

27    business and property and are threatened with further injury.

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

d.      By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and all members of the Mississippi Indirect Purchaser Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

256.    Plaintiffs and the Nebraska Indirect Purchaser Class incorporate and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

a.      Defendants' combinations or conspiracies had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) LCD prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Nebraska Plaintiffs and members of the Nebraska Indirect Purchaser Class were deprived of free and open competition; and (4) Nebraska Plaintiffs and members of the Nebraska Indirect Purchaser Class paid supracompetitive, artificially inflated prices for LCD.

b.      During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Nebraska Plaintiffs and members of the Nebraska Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. §§ 59-801, *et seq.* Accordingly, Nebraska Plaintiffs and all members of the Nebraska Indirect Purchaser Class seek all relief available under Nebraska Rev. Stat. §§ 59-801, *et seq.*

257.    Plaintiffs Richard Granich, and Allen Kelley ("Nevada Plaintiffs") incorporate and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

64

a.    Defendants' combinations or conspiracies had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout Nevada; (2)LCD prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Nevada Plaintiffs and members of the Nevada Indirect Purchaser Class were deprived of free and open competition; and (4) Nevada Plaintiffs and members of the Nevada Indirect Purchaser Class paid supracompetitive, artificially inflated prices for LCD.

b.    During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Nevada Plaintiffs and members of the Nevada Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.* Accordingly, Nevada Plaintiffs and all members of the Nevada Indirect Purchaser Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

258.    Plaintiffs Thomas Clark, John David Kittleson, Walden Minoli, and Marcia Weingarten ("New Mexico Plaintiffs") incorporate and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

a.    Defendants' combinations or conspiracies had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) LCD prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) New Mexico Plaintiffs and members of the New Mexico Indirect Purchaser Class were deprived of free and open competition; and (4) New Mexico Plaintiffs

1     and members of the New Mexico Indirect Purchaser Class paid

2     supracompetitive, artificially inflated prices for LCD.

3     b.     During the Class Period, Defendants' illegal conduct substantially affected

4            New Mexico commerce.

5     c.     As a direct and proximate result of Defendants' unlawful conduct, New

6            Mexico Plaintiffs and members of the New Mexico Indirect Purchaser Class

7            have been injured in their business and property and are threatened with

8            further injury.

9     d.     By reason of the foregoing, defendants have entered into agreements in

10           restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

11           Accordingly, New Mexico Plaintiffs and all members of the New Mexico

12           Indirect Purchaser Class seek all relief available under New Mexico Stat.

13           Ann.§§ 57-1-1, *et seq.*

14     259.     Plaintiffs William Fisher and Donna Jeanne Flanagan, ("North Carolina Plaintiffs")

15 incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

16 Complaint.

17     a.     Defendants' combinations or conspiracies had the following effects:  (1)

18            LCD price competition was restrained, suppressed, and eliminated

19            throughout North Carolina; (2) LCD prices were raised, fixed, maintained

20            and stabilized at artificially high levels throughout North Carolina; (3)

21            North Carolina Plaintiffs and members of the North Carolina Indirect

22            Purchaser Class were deprived of free and open competition; and (4) North

23            Carolina Plaintiffs and members of the North Carolina Indirect Purchaser

24            Class paid supracompetitive, artificially inflated prices for LCD.

25     b.     During the Class Period, Defendants' illegal conduct substantially affected

26            North Carolina commerce.

27     c.     As a direct and proximate result of Defendants' unlawful conduct, North

28

66

1    Carolina Plaintiffs and members of the North Carolina Indirect Purchaser

2    Class have been injured in their business and property and are threatened

3    with further injury.

4    d.    By reason of the foregoing, defendants have entered into agreements in

5    restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.*

6    Accordingly, North Carolina Plaintiffs and all members of the North

7    Carolina Indirect Purchaser Class seek all relief available under North

8    Carolina Gen. Stat. §§ 75-1, *et. seq.*

9    260.    Plaintiff Bob George incorporates and realleges each and every allegation set forth

10   in the preceding paragraphs of this Complaint.

11   a.    Defendants' combinations or conspiracies had the following effects:  (1)

12   LCD price competition was restrained, suppressed, and eliminated

13   throughout North Dakota; (2) LCD prices were raised, fixed, maintained

14   and stabilized at artificially high levels throughout North Dakota; (3)

15   Plaintiff George and members of the North Dakota Indirect Purchaser Class

16   were deprived of free and open competition; and (4) Plaintiff George and

17   members of the North Dakota Indirect Purchaser Class paid

18   supracompetitive, artificially inflated prices for LCD.

19   b.    During the Class Period, Defendants' illegal conduct had a substantial effect

20   on North Dakota commerce.

21   c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

22   George and members of the North Dakota Indirect Purchaser Class have

23   been injured in their business and property and are threatened with further

24   injury.

25   d.    By reason of the foregoing, defendants have entered into agreements in

26   restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et*

27   *seq.*  Accordingly, Plaintiff Bob George and all members of the North

28

67

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1        Dakota Indirect Purchaser Class seek all relief available under North Dakota

2        Cent. Code §§ 51-08.1-01, *et seq.*

3     261.    Pennsylvania Plaintiffs and the members of the Pennsylvania Indirect Purchaser

4 Class incorporate and reallege each and every allegation set forth in the preceding paragraphs of

5 this Complaint

6        a.    Defendants' combinations or conspiracies had the following effects:  (1)

7        LCD price competition was restrained, suppressed, and eliminated

8        throughout Pennsylvania; (2) LCD prices were raised, fixed, maintained and

9        stabilized at artificially high levels throughout Pennsylvania; (3)

10        Pennsylvania Plaintiffs and members of the Pennsylvania Indirect Purchaser

11        Class were deprived of free and open competition; and (4) Pennsylvania

12        Plaintiffs and members of the Pennsylvania Indirect Purchaser Class paid

13        supracompetitive, artificially inflated prices for LCD.

14        b.    During the Class Period, Defendants' illegal conduct had a substantial effect

15        on Pennsylvania residents.

16        c.    As a direct and proximate result of Defendants' unlawful conduct,

17        Pennsylvania Plaintiffs  and members of the Pennsylvania Indirect

18        Purchaser Class have been injured in their business and property and are

19        threatened with further injury.

20        d.    By reason of the foregoing, defendants have entered into agreements in

21        restraint of trade in violation of Pennsylvania common law.  Accordingly,

22        Pennsylvania Plaintiffs and all members of the Pennsylvania Indirect

23        Purchaser Class seek all relief available under Pennsylvania common law.

24     262.    Plaintiff Oscar Cintron and the members of the Puerto Rico Indirect Purchaser

25 Class incorporate and reallege each and every allegation set forth in the preceding paragraphs of

26 this Complaint.

27        a.    Defendants' combinations or conspiracies had the following effects:  (1)

28

1           LCD price competition was restrained, suppressed, and eliminated

2           throughout Puerto Rico; (2) LCD prices were raised, fixed, maintained and

3           stabilized at artificially high levels throughout Puerto Rico; (3)Plaintiff

4           Cintron and members of the Puerto Rico Indirect Purchaser Class were

5           deprived of free and open competition; and (4) Plaintiff Cintron and

6           members of the Puerto Rico Indirect Purchaser Class paid supracompetitive,

7           artificially inflated prices for LCD.

8       b.    During the Class Period, Defendants' illegal conduct had a substantial effect

9           on Puerto Rico commerce.

10       c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

11           Cintron and members of the Puerto Rico Indirect Purchaser Class have been

12           injured in their business and property and are threatened with further injury.

13       d.    By reason of the foregoing, defendants have entered into agreements in

14           restraint of trade in violation of Puerto Rico 10 LPRA § 258 and 32 LPRA

15           §§ 5141.  Accordingly, Plaintiff Oscar Cintron and all members of the

16           Puerto Rico Indirect Purchaser Class seek all relief available under Puerto

17           Rico law.

18       263.    Plaintiffs Christopher Bessette and Chad Hansen ("South Dakota Plaintiffs")

19   incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

20   Complaint.

21       a.    Defendants' combinations or conspiracies had the following effects:  (1)

22           LCD price competition was restrained, suppressed, and eliminated

23           throughout South Dakota; (2) LCD prices were raised, fixed, maintained

24           and stabilized at artificially high levels throughout South Dakota; (3) South

25           Dakota Plaintiffs and members of the South Dakota Indirect Purchaser Class

26           were deprived of free and open competition; and (4) South Dakota Plaintiffs

27           and members of the South Dakota Indirect Purchaser Class paid

28           

1          supracompetitive, artificially inflated prices for LCD.

2        b.    During the Class Period, Defendants' illegal conduct had a substantial effect

3          on South Dakota commerce.

4        c.    As a direct and proximate result of Defendants' unlawful conduct, South

5          Dakota Plaintiffs and members of the South Dakota Indirect Purchaser Class

6          have been injured in their business and property and are threatened with

7          further injury.

8        d.    By reason of the foregoing, defendants have entered into agreements in

9          restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1,

10         *et seq.*  Accordingly, South Dakota Plaintiffs and all members of the South

11         Dakota Indirect Purchaser Class seek all relief available under South Dakota

12         Codified Laws Ann. §§ 37-1, *et seq.*

13     264.    Plaintiffs Scott Beall, Dena Williams, and Ann Scott ("Tennessee Plaintiffs")

14 incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

15 Complaint.

16        a.    Defendants' combinations or conspiracies had the following effects:  (1)

17          LCD price competition was restrained, suppressed, and eliminated

18          throughout Tennessee; (2) LCD prices were raised, fixed, maintained and

19          stabilized at artificially high levels throughout Tennessee; (3) Tennessee

20          Plaintiffs and members of the Tennessee Indirect Purchaser Class were

21          deprived of free and open competition; and (4) Tennessee Plaintiffs and

22          members of the Tennessee Indirect Purchaser Class paid supracompetitive,

23          artificially inflated prices for LCD.

24        b.    During the Class Period, Defendants' illegal conduct had a substantial effect

25          on Tennessee commerce as products containing LCD were sold in

26          Tennessee.

27        c.    As a direct and proximate result of Defendants' unlawful conduct,

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    Tennessee Plaintiffs and members of the Tennessee Indirect Purchaser Class

2    have been injured in their business and property and are threatened with

3    further injury.

4    d.    By reason of the foregoing, defendants have entered into agreements in

5    restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.*

6    Accordingly, Tennessee Plaintiffs and all members of the Tennessee

7    Indirect Purchaser Class seek all relief available under Tennessee Code

8    Ann. §§ 47-25-101, *et seq.*

9    265.    Plaintiff Robert Watson ("Vermont Plaintiff") and members of the Vermont

10   Indirect Purchaser Class incorporate and reallege each and every allegation set forth in the

11   preceding paragraphs of this Complaint.

12   a.    Defendants' combinations or conspiracies had the following effects:  (1)

13   LCD price competition was restrained, suppressed, and eliminated

14   throughout Vermont; (2) LCD prices were raised, fixed, maintained and

15   stabilized at artificially high levels throughout Vermont; (3) Vermont

16   Plaintiff and members of the Vermont Indirect Purchaser Class were

17   deprived of free and open competition; and (4) the Vermont Plaintiff and

18   members of the Vermont Indirect Purchaser Class paid supracompetitive,

19   artificially inflated prices for LCD.

20   b.    During the Class Period, Defendants' illegal conduct had a substantial effect

21   on Vermont commerce.

22   c.    As a direct and proximate result of Defendants' unlawful conduct, the

23   Vermont Plaintiff and members of the Vermont Indirect Purchaser Class

24   have been injured in their business and property and are threatened with

25   further injury.

26   a.    By reason of the foregoing, defendants have entered into agreements in

27   restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.*

28

71

1                            Accordingly, the Vermont Plaintiff and all members of the Vermont Indirect

2                            Purchaser Class seek all relief available under Vermont Stat. Ann. 9 §§

3                            2453, *et seq.*

4        266.    Plaintiffs John Matrich and Tara Perry ("West Virginia Plaintiffs") incorporate and

5  reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

6              a.      Defendants' combinations or conspiracies had the following effects:  (1)

7                      LCD price competition was restrained, suppressed, and eliminated

8                      throughout West Virginia; (2) LCD prices were raised, fixed, maintained

9                      and stabilized at artificially high levels throughout West Virginia; (3) West

10                      Virginia Plaintiffs and members of the West Virginia Indirect Purchaser

11                      Class were deprived of free and open competition; and (4) West Virginia

12                      Plaintiffs  and members of the West Virginia Indirect Purchaser Class paid

13                      supracompetitive, artificially inflated prices for LCD.

14              b.      During the Class Period, Defendants' illegal conduct had a substantial effect

15                      on West Virginia commerce.

16               c.      As a direct and proximate result of Defendants' unlawful conduct, West

17                      Virginia Plaintiffs and members of the West Virginia Indirect Purchaser

18                      Class have been injured in their business and property and are threatened

19                      with further injury.

20              d.      By reason of the foregoing, defendants have entered into agreements in

21                      restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.*

22                      Accordingly, West Virginia Plaintiffs and all members of the West Virginia

23                      Indirect Purchaser Class seek all relief available under West Virginia §§ 47-

24                      18-1, *et seq.*

25        267.    Plaintiffs Joe Kovacevich, Toomas Mitt, and Jai and Amy Paguirigan ("Wisconsin

26  Plaintiffs") incorporate and reallege each and every allegation set forth in the preceding

27  paragraphs of this Complaint.

28

a.   Defendants' combinations or conspiracies had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) LCD prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Wisconsin Plaintiffs and members of the Wisconsin Indirect Purchaser Class were deprived of free and open competition; and (4) Wisconsin Plaintiffs and members of the Wisconsin Indirect Purchaser Class paid supracompetitive, artificially inflated prices for LCD.

b.   During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c.   As a direct and proximate result of Defendants' unlawful conduct, Wisconsin Plaintiffs and members of the Wisconsin Indirect Purchaser Class have been injured in their business and property and are threatened with further injury.

d.   By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Wisconsin Plaintiffs and all members of the Wisconsin Indirect Purchaser Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

### Fourth Claim for Relief

### (Violation of State Consumer Protection And Unfair Competition Laws)

268.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

269.   Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

270.   Plaintiffs Robert Harmon ("Arkansas Plaintiff") and the members of the Arkansas

73

1  Indirect Purchaser Class incorporate and reallege each and every allegation set forth in the

2  preceding paragraphs of this Complaint.

3              a.       The acts and practices of Defendants, as set forth herein, constitute

4                       deceptive and unconscionable acts in the conduct of Defendants' business in

5                       violation of the ADTPA.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

b.    Defendants deliberately failed to disclose material facts to Arkansas Plaintiff and the members of the Arkansas Indirect Purchaser Class concerning Defendants' unlawful activities and artificially inflated prices for LCD. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' LCD prices were competitive and fair.

c.    Defendants' unlawful conduct had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) LCD prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Arkansas Plaintiff and members of the Arkansas Indirect Purchaser Class were deprived of free and open competition; and (4) Arkansas Plaintiff and members of the Arkansas Indirect Purchaser Class paid supra-competitive, artificially inflated prices for LCD.

d.    As a direct and proximate result of the Defendants' violations of law, Arkansas Plaintiff and members of the Arkansas Indirect Purchaser Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

e.    Defendants violated the ADTPA under its "catch-all provision," 4-88-107(10), by engaging in deceptive and unconscionable conduct as described herein.  Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of LCD, likely misled all consumers acting reasonably under the circumstances to believe that they were

75

1                              purchasing LCD at prices born by a free and fair market. Defendants'

2                              affirmative misrepresentations and omissions constitute information

3                              important to Arkansas Plaintiff and the members of the Arkansas Indirect

4                              Purchaser Class as they related to the cost of LCD they purchased

5         f.        Defendants have engaged in unfair competition or unfair or deceptive acts

6                              or practices in violation of Arkansas Code § 4-88-101, *et seq.*, and,

7                              accordingly, Arkansas Plaintiff and all members of the Arkansas Indirect

8                              Purchaser Class seek all relief available under that statute.

9     271.    California plaintiffs incorporate and reallege each and every allegation set forth in

10 the preceding paragraphs of this Complaint.

11         a.        Defendants' business acts and practices were centered in, carried out,

12                              effectuated, and perfected mainly within the State of California, and

13                              defendants' conduct injured all members of the California Indirect

14                              Purchaser Class.  Therefore, this claim for relief under California law is

15                              brought on behalf of the California Indirect Purchaser Class.

16         b.        Beginning on a date unknown to California plaintiffs, but at least as early as

17                              January 1, 2002, and continuing thereafter at least up through December 31,

18                              2006, defendants committed and continue to commit acts of unfair

19                              competition, as defined by Sections 17200, *et seq.* of the California

20                              Business and Professions Code, by engaging in the acts and practices

21                                specified above.

22         c.        This claim is instituted pursuant to Sections 17203 and 17204 of the

23                              California Business and Professions Code, to obtain restitution from these

24                              defendants for acts, as alleged herein, that violated Section 17200 of the

25                              California Business and Professions Code, commonly known as the Unfair

26                              Competition Law.

27         d.        The defendants' conduct as alleged herein violated Section 17200.  The

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

acts, omissions, misrepresentations, practices and non-disclosures of
defendants, as alleged herein, constituted a common, continuous, and
continuing course of conduct of unfair competition by means of unfair,
unlawful, and/or fraudulent business acts or practices within the meaning of
California Business and Professions Code, Section 17200, *et seq.*, including,
but not limited to, the following:  (1) the violations of Section 1 of the
Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*,
of the California Business and Professions Code, set forth above;

e. Defendants' acts, omissions, misrepresentations, practices, an non-
disclosures, as described above, whether or not in violation of Section
16720, *et seq.,* of the California Business and Professions Code, and
whether or not concerted or independent acts, are otherwise unfair,
unconscionable, unlawful or fraudulent;

f. Defendants' acts or practices are unfair to consumers of  LCD products in
the State of California within the meaning of Section 17200, California
Business and Professions Code; and

g. Defendants' acts and practices are fraudulent or deceptive within the
meaning of Section 17200 of the California Business and professions Code.

h. California plaintiffs and each of the California Indirect Purchaser Class
members are entitled to full restitution and/or disgorgement of all revenues,
earnings, profits, compensation, and benefits that may have been obtained
by defendants as a result of such business acts or practices.

i. The illegal conduct alleged herein is continuing and there is no indication
that defendants will not continue such activity into the future.

j. The unlawful and unfair business practices of defendants, and each of them,
as described above, have caused and continue to cause plaintiffs and the
members of the California Class to pay supracompetitive and artificially-

77

1   inflated prices for LCD products.  California plaintiffs  and the members of

2   the California Indirect Purchaser Class suffered injury in fact and lost

3   money or property as a result of such unfair competition.

4       k.  The conduct of defendants as alleged in this Complaint violates Section

5   17200 of the California Business and Professions Code.

6       l.  As alleged in this Complaint, defendants and their co-conspirators have

7   been unjustly enriched as a result of their wrongful conduct and by

8   defendants' unfair competition.  California plaintiffs and the members of the

9   California Indirect Purchaser Class are accordingly entitled to equitable

10   relief including restitution and/or disgorgement of all revenues, earnings,

11   profits, compensation, and benefits that may have been obtained by

12   defendants as a result of such business practices, pursuant to the California

13   Business and Professions Code, Sections 17203 and 17204.

14       272.  Plaintiffs Gail Feser, Tim Gregory, and David Walker ("District of Columbia

15   Plaintiffs") incorporate and reallege each and every allegation set forth in the preceding

16   paragraphs of this Complaint.

17       a.  Defendants agreed to, and did in fact, act in restraint of trade or commerce

18   by affecting, fixing, controlling and/or maintaining, at artificial and/or non-

19   competitive levels, the prices at which LCD was sold, distributed or

20   obtained in the District of Columbia.

21       b.  The foregoing conduct constitutes "unlawful trade practices," within the

22   meaning of D.C. Code § 28-3904.

23       c.  Defendants' unlawful conduct had the following effects:  (1) LCD price

24   competition was restrained, suppressed, and eliminated throughout the

25   District of Columbia; (2) LCD prices were raised, fixed, maintained, and

26   stabilized at artificially high levels  throughout the District of Columbia; (3)

27   District of Columbia Plaintiffs and members of the District of Columbia

28

1             Indirect Purchaser Class were deprived of free and open competition; and

2             (4) District of Columbia Plaintiffs and members of the District of Columbia

3             Indirect Purchaser Class paid supra-competitive, artificially inflated prices

4             for LCD.

5      d.     As a direct and proximate result of the Defendants' conduct, District of

6             Columbia Plaintiffs and members of the District of Columbia Indirect

7             Purchaser Class have been injured and are threatened with further injury.

8             Defendants have engaged in unfair competition or unfair or deceptive acts

9             or practices in violation of District of Columbia Code § 28-3901, *et seq. ,*

10            and, accordingly, District of Columbia Plaintiffs and all members of the

11            District of Columbia Indirect Purchaser Class seek all relief available under

12            that statute.

13     273.    Plaintiffs Mauricio DeFrancisco, Scott Eisler, Robin Feins, and Janet Figueroa

14 ("Florida Plaintiffs") incorporate and reallege each and every allegation set forth in the preceding

15 paragraphs of this Complaint.

16      a.     Defendants' unlawful conduct had the following effects:  (1) LCD price

17             competition was restrained, suppressed, and eliminated throughout Florida;

18             (2) LCD prices were raised, fixed, maintained, and stabilized at artificially

19             high levels throughout Florida; (3) Florida Plaintiffs and members of the

20             Florida Indirect Purchaser Class were deprived of free and open

21             competition; and (4) Florida Plaintiffs and members of the Florida Indirect

22             Purchaser Class paid supracompetitive, artificially inflated prices for LCD.

23      b.     During the Class Period, Defendants' illegal conduct substantially affected

24             Florida commerce and consumers.

25      c.     As a direct and proximate result of Defendants' unlawful conduct, Florida

26             Plaintiffs and members of the Florida Indirect Purchaser Class have been

27             injured and are threatened with further injury.

28

1    d.  Defendants have engaged in unfair competition or unfair or deceptive acts

2       or practices in violation of Florida Stat. § 501.201, *et seq.,* and, accordingly,

3       Florida Plaintiffs and all members of the Florida Indirect Purchaser Class

4       seek all relief available under that statute.

5   274.  Plaintiffs Gail Awakuni, and John Okita ("Hawaii Plaintiffs") incorporate and

6 reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

7    a.  Defendants' unlawful conduct had the following effects:  (1) LCD price

8       competition was restrained, suppressed, and eliminated throughout Hawaii;

9       (2) LCD prices were raised, fixed, maintained, and stabilized at artificially

10      high levels throughout Hawaii; (3) Hawaii Plaintiffs and members of the

11      Hawaii Indirect Purchaser Class were deprived of free and open

12      competition; and (4) Hawaii Plaintiffs and members of the Hawaii Indirect

13      Purchaser Class paid supracompetitive, artificially inflated prices for LCD.

14    b.  During the Class Period, Defendants' illegal conduct substantially affected

15       Hawaii commerce and consumers.

16    c.  As a direct and proximate result of Defendants' unlawful conduct, Hawaii

17       Plaintiffs and members of the Hawaii Indirect Purchaser Class have been

18       injured and are threatened with further injury.

19    d.  Defendants have engaged in unfair competition or unfair or deceptive acts

20       or practices in violation of Hawaii Rev. Stat. § 480, *et seq.,* and,

21       accordingly, Hawaii Plaintiffs and all members of the Hawaii Indirect

22       Purchaser Class seek all relief available under that statute.

23   275.  Plaintiffs Peter Coyle, Rex Getz, and Kou Srimoungchanh ("Kansas Plaintiffs")

24 incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

25 Complaint.

26    a.  The conduct of the Defendants described herein constitutes consumer-

27       oriented deceptive acts or practices within the meaning of Kansas law,

28

which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of Kansas in an honest marketplace in which economic activity is conducted in a competitive manner.

b. Defendants' unlawful conduct had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout Kansas; (2) LCD prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Kansas Plaintiffs and members of the Kansas Indirect Purchaser Class were deprived of free and open competition; and (4) Kansas Plaintiffs and members of the Kansas Indirect Purchaser Class paid supra-competitive, artificially inflated prices for LCD.

c. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce and consumers.

d. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed LCD in Kansas.

e. Kansas Plaintiffs and members of the Kansas Indirect Purchaser Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Stat. § 50-623, *et seq.,* and, accordingly, Kansas Plaintiffs and all members of the Kansas Indirect Purchaser Class seek all relief available under that statute.

276.   Plaintiff Patricia Ronco incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

a. Plaintiff Ronco and members of the Maine Indirect Purchaser Class purchased in the State of Maine and paid out-of-pocket for LCD, primarily for personal use.

1       b.     Defendants agreed to, and did in fact, act in restraint of trade by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which LCD was sold, distributed or obtained in Maine and took efforts to conceal their agreements from Plaintiff Ronco and members of the Maine Indirect Purchaser Class.

       c.     Defendants' unlawful conduct had the following effects: (1) LCD price competition was restrained, suppressed, and eliminated throughout Maine; (2) LCD prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3)Plaintiff Ronco and members of the Maine Indirect Purchaser Class were deprived of free and open competition; and (4) Plaintiff Ronco and members of the Maine Indirect Purchaser Class paid supracompetitive, artificially inflated prices for LCD.

       d.     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

       e.     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff Ronco and members of the Maine Indirect Purchaser Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Maine Rev. Stat. § 207, *et seq.,* and, accordingly, Plaintiff Patricia Ronco and all members of the Maine Indirect Purchaser Class seek all relief available under that statute.

277.    Massachusetts Plaintiffs Michael Ayers and Christopher Murphy ("Massachusetts Plaintiffs") and members of the Massachusetts Indirect Purchaser Class incorporate and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

       a.     Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

       b.     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling

82

and/or maintaining at artificial and non-competitive levels, the prices at which LCD was sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from the Massachusetts Plaintiffs and members of the Massachusetts Indirect Purchaser Class.

c.   Defendants' unlawful conduct had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) LCD prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Massachusetts Plaintiffs and members of the Massachusetts Indirect Purchaser Class were deprived of free and open competition; and (4) Massachusetts Plaintiffs and members of the Massachusetts Indirect Purchaser Class paid supra-competitive, artificially inflated prices for LCD.

d.   As a direct and proximate result of Defendants' unlawful conduct, Massachusetts Plaintiffs and members of the Massachusetts Indirect Purchaser Class were injured and are threatened with further injury.

e.   Each of the Defendants has been served with a demand letter in accordance with G.L. c. 93A, § 9, or such service of a demand letter was unnecessary due to the Defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth. More than thirty days has passed since such demand letters were served, and each Defendant served has failed to make a reasonable settlement offer.

f.   By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling the Massachusetts Plaintiffs and members of the Massachusetts Indirect Purchaser Class to multiple damages.

278.     Nebraska Plaintiffs and members of the Nebraska Indirect Purchaser Class incorporate and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

    a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Nebraska, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which LCD was sold, distributed, or obtained in Nebraska and took efforts to conceal their agreements from Nebraska Plaintiffs and members of the Nebraska Indirect Purchaser Class.

    b.   Defendants' unlawful conduct had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout Nebraska; (b) LCD prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (c) Nebraska Plaintiffs and members of the Nebraska Indirect Purchaser Class were deprived of free, fair and honest competition; and (d) Nebraska Plaintiffs and members of the Nebraska Indirect Purchaser Class paid supra-competitive, artificially inflated prices for LCD panels.

    c.   As a direct and proximate result of Defendants' unlawful conduct, Nebraska Plaintiffs and members of the Nebraska Indirect-Purchaser class were injured and are threatened with further injury.

279.     Plaintiffs and members of the New Hampshire Indirect Purchaser Class incorporate and reallege each and every allegation set for in the preceding paragraphs of this Complaint.

    a.   Defendants were engaged in trade or commerce as defined by § 358-A:1.

    b.   Defendants agreed to, and did in fact, act in an unfair method of competition and used unfair or deceptive acts and practices in the conduct of trade or commerce within New Hampshire, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which

1          LCD panels were sold, distributed, or obtained in New Hampshire.

2     c.   Defendants deliberately failed to disclose material facts to Plaintiffs and

3          members of the New Hampshire Indirect Purchaser Class concerning

4          Defendants' unlawful activities and artificially inflated prices for LCD

5          panels.  Defendants owed a duty to disclose such facts, and considering the

6          relative lack of sophistication of the average, non-business consumer,

7          Defendants breached that duty by their silence.  Defendants misrepresented

8          to all consumers during the Class Period that Defendants' LCD panel prices

9          were competitive and fair.

10    d.   Defendants' unlawful conduct had the following effects: a. LCD panel price

11         competition was restrained, suppressed, and eliminated throughout New

12         Hampshire; b. LCD panel prices were raised, fixed, maintained, and

13         stabilized at artificially high levels throughout New Hampshire; c. New

14         Hampshire Plaintiffs and members of the New Hampshire Indirect

15         Purchaser Class were deprived of free and open competition; and d. New

16         Hampshire Plaintiffs and members of the New Hampshire Indirect

17         Purchaser Class paid supra-competitive, artificially inflated prices for LCD

18         panels.

19    e.   As a direct and proximate result of the Defendants' violations of law, New

20         Hampshire Plaintiffs and members of the New Hampshire Indirect

21         Purchaser Class suffered an ascertainable loss of money or property as a

22         result of Defendants' use or employment of unfair and deceptive commercial

23         practices as set forth above. That loss was caused by Defendants' willful and

24         deceptive conduct, as described herein.

25    f.   Defendants' unfair method of competition and use of unfair or deceptive acts

26         and practices in the conduct of trade or commerce, including its affirmative

27         misrepresentations and omissions concerning the price of LCD panels,

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    likely misled all consumers acting reasonably under the circumstances to

2    believe that they were purchasing LCD panels at prices born by a free and

3    fair market.

4    g.    Defendants have knowingly engaged in unfair methods of competition or

5    unfair or deceptive acts or practices in the conduct of trade or commerce in

6    violation of N.H. REV. STAT. ANN. § 358-A:2, et seq., and, accordingly,

7    plaintiffs and all members of the New Hampshire Indirect Purchaser Class

8    seek all relief available under that statute.

9    280.    Plaintiffs Thomas Clark, John David Kittleson, Walden Minoli, and Marcia

10    Weingarten ("New Mexico Plaintiffs") incorporate and reallege each and every allegation set forth

11    in the preceding paragraphs of this Complaint.

12    a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce

13    by affecting, fixing, controlling and/or maintaining at non-competitive and

14    artificially inflated levels, the prices at which LCD was sold, distributed or

15    obtained in New Mexico and took efforts to conceal their agreements from

16    New Mexico Plaintiffs and members of the New Mexico Indirect Purchaser

17    Class.

18    b.    The aforementioned conduct on the part of the Defendants constituted

19    "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3,

20    in that such conduct, *inter alia*, resulted in a gross disparity between the

21    value received by New Mexico Plaintiffs and the members of the New

22    Mexico Indirect Purchaser Class and the prices paid by them for LCD as set

23    forth in N.M.S.A., § 57-12-2E.

24    c.    Defendants' unlawful conduct had the following effects:  (1) LCD price

25    competition was restrained, suppressed, and eliminated throughout New

26    Mexico; (2) LCD prices were raised, fixed, maintained, and stabilized at

27    artificially high levels throughout New Mexico; (3) New Mexico Plaintiffs

28

86

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1      and members of the New Mexico Indirect Purchaser Class were deprived of

2      free and open competition; and (4) New Mexico Plaintiffs and members of

3      the New Mexico Indirect Purchaser Class paid supra-competitive,

4      artificially inflated prices for LCD.

5      d.    During the Class Period, Defendants' illegal conduct substantially affected

6      New Mexico commerce and consumers.

7      e.    As a direct and proximate result of the unlawful conduct of the Defendants,

8      New Mexico Plaintiffs and members of the New Mexico Indirect Purchaser

9      Class have been injured and are threatened with further injury.

10      f.    Defendants have engaged in unfair competition or unfair or deceptive acts

11      or practices in violation of New Mexico Stat. § 57-12-1, *et seq.,* and,

12      accordingly, New Mexico plaintiffs and all members of the New Mexico

13      Indirect Purchaser Class seek all relief available under that statute.

14    281.    Plaintiffs Tom DiMatteo, Erin Drew, and Chris Ferencsik ("New York Plaintiffs")

15 incorporate and reallege each and every allegation set forth in the preceding paragraphs of this

16 Complaint.

17      a.    Defendants agree to, and did in fact, act in restraint of trade or commerce by

18      affecting, fixing, controlling and/or maintaining, at artificial and non-

19      competitive levels, the prices at which LCD was sold, distributed or

20      obtained in New York and took efforts to conceal their agreements from

21      New York Plaintiffs and the New York Indirect Purchaser Class.

22      b.    The conduct of the Defendants described herein constitutes consumer-

23      oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus.

24      Law § 349, which resulted in consumer injury and broad adverse impact on

25      the public at large, and harmed the public interest of New York State in an

26      honest marketplace in which economic activity is conducted in a

27      competitive manner.

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

c.    Defendants' unlawful conduct had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout New York; (2) LCD prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) New York Plaintiffs and members of the New York Indirect Purchaser Class were deprived of free and open competition; and (4) New York Plaintiffs and members of the New York Indirect Purchaser Class paid supra-competitive, artificially inflated prices for LCD.

d.    During the Class Period, Defendants' illegal conduct substantially affected New York commerce and consumers.

e.    During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed LCD in New York.

f.    New York Plaintiffs and members of the New York Indirect Purchaser Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Without prejudice to their contention that Defendants' unlawful conduct was willful and knowing, New York Plaintiffs and members of the New York Indirect Purchaser Class do not seek in this action to have those damages trebled pursuant to N.Y. Gen. Bus. Law § 349 (h).

282.    Plaintiffs William Fisher, and Donna Jeanne Flanagan ("North Carolina Plaintiffs") incorporate and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

a.    Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which LCD was sold, distributed or obtained in North Carolina and took efforts to conceal their agreements

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1        from Plaintiffs and the North Carolina Indirect Purchaser Class.

    b.  The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

    c.  Defendants' unlawful conduct had the following effects: (1) LCD price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) LCD prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) North Carolina Plaintiffs and members of the North Carolina Indirect Purchaser Class were deprived of free and open competition; and (4) North Carolina Plaintiffs and members of the North Carolina Indirect Purchaser Class paid supra-competitive, artificially inflated prices for LCD.

    d.  During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

    e.  During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed LCD in North Carolina.

    f.  North Carolina Plaintiffs and members of the North Carolina Indirect Purchaser Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.,* and, accordingly, North Carolina Plaintiffs and all members of the North Carolina Indirect Purchaser Class seek all relief available under

1    that statute.

2        283.    Pennsylvania Plaintiffs and the members of the Pennsylvania Indirect Purchaser

3    Class incorporate and reallege each and every allegation set forth in the preceding paragraphs of

4    this Complaint

5            a.    Defendants were engaged in trade and commerce as defined by the

6                UTPCPL, 73 P.S. § 201-1, *et seq.*

7            b.    Pennsylvania Plaintiffs and members of the Pennsylvania Indirect Purchaser

8                Class purchased LCD for personal, family, or household purposes.

9            c.    The acts and practices of Defendants, as set forth herein, constitute unfair

10               methods of competition and unfair or deceptive acts or practices in the

11               conduct of Defendants' business in violation of the UTPCPL, as aforesaid.

12           d.    Defendants agreed to, and did in fact, act in restraint of trade or commerce

13               in a market that includes Pennsylvania, by affecting, fixing, controlling,

14               and/or maintaining, at artificial and non-competitive levels, the prices at

15               which LCD was sold, distributed, or obtained in Pennsylvania.

16           e.    Defendants deliberately failed to disclose material facts to Pennsylvania

17               Plaintiffs and the members of the Pennsylvania Indirect Purchaser Class

18               concerning Defendants' unlawful activities and artificially inflated prices

19               for LCD. Defendants owed a duty to disclose such facts, and considering the

20               relative lack of sophistication of the average, non-business consumer,

21               Defendants breached that duty by their silence. Defendants misrepresented

22               to all consumers during the Class Period that Defendants' LCD prices were

23               competitive and fair.

24           f.    Defendants' unlawful conduct had the following effects:  (1) LCD price

25               competition was restrained, suppressed, and eliminated throughout

26               Pennsylvania; (2) LCD prices were raised, fixed, maintained, and stabilized

27               at artificially high levels throughout Pennsylvania; (3) Pennsylvania

28

90

Plaintiffs and members of the Pennsylvania Indirect Purchaser Class were deprived of free and open competition; and (4) Pennsylvania Plaintiffs and members of the Pennsylvania Indirect Purchaser Class paid supra-competitive, artificially inflated prices for LCD.

 g. As a direct and proximate result of the Defendants' violations of law, Pennsylvania Plaintiffs and members of the Pennsylvania Indirect Purchaser Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

 h. Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of LCD, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing LCD at prices born by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Pennsylvania Plaintiffs and the members of the Pennsylvania Indirect Purchaser Class as they related to the cost of LCD they purchased. Defendants violated the UTPCPL under its "catch-all provision," 73 P.S. § 201-2(4)(xxi), by engaging in deceptive conduct which created a likelihood of confusion or misunderstanding as alleged herein and Pennsylvania Plaintiffs seek all relief available thereunder.

284. Rhode Island Plaintiffs and the members of the Rhode Island Indirect Purchaser Class incorporate and reallege each and every allegation set forth in the preceding paragraphs of this Complaint.

 a. Rhode Island Plaintiffs and members of the Rhode Island Indirect Purchaser Class purchased LCD for personal, family, or household purposes.

 b. Defendants agreed to, and did in fact, act in restraint of trade or commerce

in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which LCD was sold, distributed, or obtained in Rhode Island.

c.   Defendants deliberately failed to disclose material facts to Rhode Island Plaintiffs and the members of the Rhode Island Indirect Purchaser Class concerning Defendants' unlawful activities and artificially inflated prices for LCD. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' LCD prices were competitive and fair.

d.   Defendants' unlawful conduct had the following effects:  (1) LCD price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) LCD prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Rhode Island Plaintiffs and members of the Rhode Island Indirect Purchaser Class were deprived of free and open competition; and (4) Rhode Island Plaintiffs and members of the Rhode Island Indirect Purchaser Class paid supra-competitive, artificially inflated prices for LCD.

e.   As a direct and proximate result of the Defendants' violations of law, Rhode Island Plaintiffs and members of the Rhode Island Indirect Purchaser Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

f.   Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of LCD, likely misled all consumers acting

1    reasonably under the circumstances to believe that they were purchasing

2    LCD at prices born by a free and fair market. Defendants' affirmative

3    misrepresentations and omissions constitute information important to Rhode

4    Island Plaintiffs and the members of the Rhode Island Indirect Purchaser

5    Class as they related to the cost of LCD they purchased.

6        g.    Defendants have engaged in unfair competition or unfair or deceptive acts

7    or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.,* and,

8    accordingly, Rhode Island plaintiffs and all members of the Rhode Island

9    Indirect Purchaser Class seek all relief available under that statute.

10    285.    The Vermont Plaintiff incorporates and realleges each and every allegation set forth

11    in the preceding paragraphs of this Complaint.

12        a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce

13    in a market that includes Vermont, by affecting, fixing, controlling, and/or

14    maintaining, at artificial and non-competitive levels, the prices at which

15    LCD was sold, distributed, or obtained in Vermont.

16        b.    Defendants deliberately failed to disclose material facts to the Vermont

17    Plaintiff and the members of the Vermont Indirect Purchaser Class

18    concerning Defendants' unlawful activities and artificially inflated prices

19    for LCD. Defendants owed a duty to disclose such facts, and considering the

20    relative lack of sophistication of the average, non-business consumer,

21    Defendants breached that duty by their silence. Defendants misrepresented

22    to all consumers during the Class Period that Defendants' LCD prices were

23    competitive and fair.

24        c.    Defendants' unlawful conduct had the following effects:  (1) LCD price

25    competition was restrained, suppressed, and eliminated throughout

26    Vermont; (2) LCD prices were raised, fixed, maintained, and stabilized at

27    artificially high levels throughout Vermont; (3) The Vermont Plaintiff and

28

93

1    all members of the Vermont Indirect Purchaser Class were deprived of free

2    and open competition; and (4) The Vermont Plaintiff and members of the

3    Vermont Indirect Purchaser Class paid supra-competitive, artificially

4    inflated prices for LCD.

5    d.    As a direct and proximate result of the Defendants' violations of law, the

6    Vermont Plaintiff and members of the Vermont Indirect Purchaser Class

7    suffered an ascertainable loss of money or property as a result of

8    Defendants' use or employment of unconscionable and deceptive

9    commercial practices as set forth above. That loss was caused by

10   Defendants' willful and deceptive conduct, as described herein.

11   e.    Defendants' deception, including its affirmative misrepresentations and

12   omissions concerning the price of LCD, likely misled all consumers acting

13   reasonably under the circumstances to believe that they were purchasing

14   LCD at prices born by a free and fair market. Defendants' misleading

15   conduct and unconscionable activities constitutes unfair competition or

16   unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et*

17   *seq.,* and, accordingly, the Vermont Plaintiff and all members of the

18   Vermont Indirect Purchaser Class seek all relief available under that statute.

19   286.   Plaintiffs John Matrich ("West Virginia Plaintiff") incorporates and realleges each

20   and every allegation set forth in the preceding paragraphs of this Complaint.

21   a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce

22   in a market that includes West Virginia, by affecting, fixing, controlling,

23   and/or maintaining, at artificial and non-competitive levels, the prices at

24   which LCD was sold, distributed, or obtained in West Virginia.

25   b.    Defendants deliberately failed to disclose and concealed material facts to

26   West Virginia Plaintiff and the members of the West Virginia Indirect

27   Purchaser Class concerning Defendants' unlawful activities and artificially

28

94

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

inflated prices for LCD. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence.

c. Defendants' unlawful conduct had the following effects: (1) LCD price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) LCD prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) West Virginia Plaintiff and members of the West Virginia Indirect Purchaser Class were deprived of free and open competition; and (4) West Virginia Plaintiff and members of the West Virginia Indirect Purchaser Class paid supra-competitive, artificially inflated prices for LCD.

d. As a direct and proximate result of the Defendants' violations of law, West Virginia Plaintiff and members of the West Virginal Indirect Purchaser Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

e. Defendants' deception, including its affirmative misrepresentations and omissions concerning the price of LCD, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing LCD at prices born by a free and fair market. Thus, Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, *et seq.,* and, accordingly, West Virginia Plaintiff and all members of the West Virginia Indirect Purchaser Class seek all relief available under that statute.

## XII.   PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray:

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

A.      That the Court determine that the Sherman Act, state antitrust law, and state consumer protection and unfair competition law claims alleged herein may be maintained as class actions under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, as informed by the respective state class action laws.

B.      That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

        1.      A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

        2.      Acts of unjust enrichment as set forth in the Second Claim for Relief herein;

        3.      An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust laws identified in the Third Claim for Relief herein; and

        4.      Violations of the state consumer protection and unfair competition laws identified in the Fourth Claim for Relief herein.

C.      That the plaintiffs and the Classes alleged herein recover damages, to the maximum extent allowed under such laws as provided by state antitrust laws, and that a joint and several judgment in favor of plaintiffs and the Class be entered against the defendants in an amount to be trebled to the extent permitted by such laws;

D.      That the plaintiffs and the Classes alleged herein recover damages, to the maximum extent allowed by state consumer protection laws, except that plaintiffs and the New York Indirect Purchaser Class do not seek in this action to have those damages trebled pursuant to N.Y. Gen. Bus. Law Sec. 349(h).

E.      That defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any

1   other contract, conspiracy or combination having a similar purpose or effect, and from adopting or

2   following any practice, plan, program, or device having a similar purpose or effect;

3         F.      That the Court enter an order of divestiture requiring defendants to rescind and/or

4   dissolve the cooperation agreements, joint ventures and/or cross-license agreements alleged herein

5   between and among them used to facilitate the conspiracy alleged herein;

6         G.     That plaintiffs and members of the Class be awarded restitution, including

7   disgorgement of profits obtained by defendants as a result of their acts of unfair competition and

8   acts of unjust enrichment;

9         H.     That plaintiffs and members of the Class be awarded pre- and post-judgment

10   interest as provided by law, and that such interest be awarded at the highest legal rate from and

11   after the date of service of the initial complaint in this action;

12         I.      That plaintiffs and members of the Class recover their costs of suit, including a

13   reasonable attorney's fee, as provided by law; and

14         J.      That plaintiffs and members of the Class have such other, further, and different

15   relief as the case may require and the Court may deem just and proper under the circumstances.

16   Dated: November 5, 2007          */s/Francis O. Scarpulla*

Francis O. Scarpulla (41059)
17   Craig C. Corbitt (83251)
Matthew R. Schultz (220641)
18   Qianwe Fu (242669)
ZELLE HOFMANN VOELBEL MASON &
19   GETTE LLP
44 Montgomery Street, Suite 3400
20   San Francisco, CA 94104
Telephone:    (415) 693-0700
21   Facsimile:    (415) 693-0770
fscarpulla@zelle.com
22

23   Joseph M. Alioto (42680)
Theresa D. Moore (99978)
24   ALIOTO LAW FIRM
555 California Street, Suite 3160
25   San Francisco, CA 94104
Telephone:    (415) 434-8900
26   Facsimile:    (415-434-9200
josephalioto@mac.com
27   esexton@alioto.law.com

28

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

*Interim Co-Lead Counsel for Indirect-Purchaser Plaintiffs and Class Members*

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Jack W. Lee
B. Mark Fong
Brad Yamauchi
Minami Tamaki, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108-4903
Telephone:      (415) 788-9000
Facsimile:      (415) 398-3887
jlee@minamitamaki.com
mfong@minamitamaki.com

*Liaison Counsel for Indirect-Purchaser
Plaintiffs and Class Members*

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

G. Mark Albright
Albright Stoddard Warnick & Albright
Quail Park I, Building D-4
801 South Rancho Drive
Las Vegas, NV 89106-3854
Telephone:      (702) 384-7111
Facsimile:      (702) 384-0605
gma@albrightstoddard.com

Joseph M. Weiler
Darin M. Conklin
Alderson Alderson Weiler Conklin
     Burghart & Crow, L.L.C.
2101 SW 21st Street
Topeka, KS 66604
Telephone:      (785) 232-0753
Facsimile:      (785) 232-1866
jweiler@aldersonlaw.com
dconklin@aldersonlaw.com

C. Donald Amamgbo
Amamgbo & Associates, PLC
7901 Oakport Street, Suite 4900
Oakland, CA 94621
Telephone:      (510) 615-6000
Facsimile:      (510) 615-6025
donald@amamgbolaw.com

Lori E. Andrus
Micha Star Liberty
Jennie Lee Anderson
Andrus Liberty & Anderson LLP
1438 Market Street
San Francisco, CA 94102
Telephone:      (415) 896-1000
Facsimile:      (415) 896-2249
lori@libertylaw.com

Neil Overholtz
Douglass Kreis
Justin Witkin
Aylstock, Witkin, Kreis & Overholtz, PLC
4400 Bayou Boulevard, Suite 58
Pensacola, FL 32503
Telephone:      (850) 916-7450
Facsimile:      (850) 916-7449
noverholtz@awr.law.com

Gordon Ball
Ball & Scott
Suite 750, Bank of America Center
550 Main Street
Knoxville, TN 37902
Telephone:      (865) 525-7028
Facsimile:      (865) 525-4679
gball@ballandscott.com

Eric J. Pickar
Gregory J. Erlandson
Bangs McCullen Butler Foye
    & Simmons, LLP
333 West Boulevard, Suite 400
P.O. Box 2670
Rapid City, SD 57709-2670
Telephone:    (605) 343-1040
Facsimile:    (605) 343-1503
gerlandson@bangsmccullen.com

Brian Barry, Esq.
Law Offices of Brian Barry
1801 Avenue of the Stars, Suite 307
Los Angeles, CA  90067
Telephone:    (310) 788-0831
Facsimile:    (310) 788-0841
bribarry1@yahoo.com

Michael S. Bearse
Law Offices of Michael S. Bearse, PC
226 South Main Street
Providence, RI  02930
Telephone:    (401) 331-7720
Facsimile:    (401) 453-2549
msbearse@comcast.net

John H. Boone
Law Offices of John H. Boone
555 California Street, Suite 3160
San Francisco, CA  94104
Telephone:    (415) 434-8900
Facsimile:    (415) 434-9200
jboone@dc.rr.com

Andrew S. Friedman
Bonnett, Fairbourn, Friedman & Balint, P.C.
2901 North Central Avenue, Suite 1000
Phoenix, AZ 85012-3311
Telephone:    (602) 274-1100
Facsimile:    (602) 274-1199
afriedman@bffb.com

Michael L. Belancio
Bower Belancio, LLC
800 West 47th Street, Suite 215
Kansas City, MO 64112
Telephone:    (816) 960-4911
Facsimile:    (816) 960-3711
mbelancio@bblawkc.com

C. Dewey Branstetter, Jr.
J. Gerard Stranch, IV
Branstetter, Stranch & Jennings, PLLC
227 Second Avenue North
Nashville, TN 37201
Telephone:    (615) 254-8801
Facsimile:    (615) 250-3937
cdbjr@braanstetterlaw.com
gstranch@branstetterlaw.com

Thomas H. Brill
Law Office of Thomas H. Brill
6552 Sagamore Road
Mission Hills, KS 66208
Telephone:    (913) 677-2004
Facsimile:    (913) 677-2152
brillkc@aol.com

Louis F. Burke
Louis F. Burke, PC
460 Park Avenue, 21st Floor
New York, NY 10022
Telephone:    (212) 682-1700
Facsimile:    (212) 808-4280
lburke@lfblaw.com

Michael J. Flannery
James J. Rosemergy
Carey & Danis, LLC
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO  63105
Telephone:    (314) 725-7700
Facsimile:    (314) 721-0905
mflannery@careydanis.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

John M. Dillon
Caruso & Dillon PC
100 Mamaroneck Avenue
Mamaroneck, NY 10543
Telephone:      (914) 698-6392
Facsimile:      (914) 698-2038
john.dillon@dillonlaw.com

Joseph G. Sauder
Benjamin F. Johns
James R. Malone, Jr.
Chimicles & Tikellis, LLP
361 West Lancaster Avenue
Haverford, PA  19041
Telephone:      (610) 642-8500
bfj@chimicles.com
jamesmalone@chimicles.com

Irwin B. Levin
Scott D. Gilchrist
Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone:      (317) 636-6481
Facsimile:      (317) 636-2593
ilevin@cohenandmalad.com

Dario De Ghetaldi
Corey Luzaich Pliska deGhetaldi Nastari
LLP
700 El Camino Real
P.O. Box 669
Millbrae, CA 94030
Telephone:      (650) 871-5666
Facsimile:      (650) 871-4144
deg@coreylaw.com

Steven N. Berk
Chavez & Gertler, LLP
1225 15th Street, NW
Washington, D.C.  20005
Telephone:      (202) 232-7550
Facsimile:      (202) 232-7556
steven@chavezgertler.com

Richard L. Coffman
The Coffman Law Firm
1240 Orleans Street, Suite 200
Beaumont, TX 77701
Telephone:      (409) 832-4767
Facsimile:      (866) 835-8250
rc@cofflaw.com

Josef D. Cooper
Tracy R. Kirkham
Cooper & Kirkham, P.C.
655 Montgomery Street, 17th Floor
San Francisco, CA 94111
Telephone:      (415) 788-3030
Facsimile:      (415) 882-7040
jdc@coopkirk.com

Roger M. Schrimp
Clinton P. Walker
Fred Silva
Kathy Lee Monday
Damrell Nelson Schrimp Pallios
        Pacher & Silva
1601 I Street, Fifth Floor
Modesto, CA  95354
Telephone:      (209) 526-3500
Facsimile:      (209) 526-3534
rschrimp@damrell.com
cwalker@damrell.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Clint Sargent
Danforth & Meierhenry
315 South Phillips Avenue
Sioux Falls, SD 57104
Telephone:      (605) 336-3075
Facsimile:      (605) 336-2593
clint@meierhenrylaw.com

James M. Dombrowski
Attorney at Law
P.O. Box 751027
Petaluma, CA  94975
Telephone:      (707) 762-7807
Facsimile:      (707) 769-0419
jdomski@aol.com

Chief Nnamdi A. Ekenna
The Ekenna Law Firm
4311 Wilshire Boulevard, Suite 612-B
Los Angeles, CA 90010-3717
Telephone:      (323) 954-1000
Facsimile:      (323) 954-1001
chiefekenna@aol.com

John G. Emerson
Emerson Poynter, LLP
830 Apollo Lane
Houston, TX  77058
Telephone:      (281) 488-8854
Facsimile:      (281) 488-8867
gemerson@emersonpoynter.com

Joseph F. Devereux, Jr.
Devereux Murphy LLC
The Plaza at Clayton
190 Carondelet, Suite 1100
St. Louis, MO 63105
Telephone:      (314) 721-1516
Facsimile:      (314) 721-4434
jfdevereux@devereuxmurphy.com

Wyatt B. Durrette, Jr.
Christopher G. Hill
Christine A. Williams
Edward J. Westlow
Durrette Bradshaw, PLC
600 East Main Street, 20th Floor
Richmond, VA 23219-2430
Telephone:      (804) 775-6900
Facsimile:      (804) 775-6911
wdurrette@durrettebradshaw.com
chill@durrettebradshaw.com
cwilliams@durrettebradshaw.com
ewestlow@durrettebradshaw.com

Scott E. Poynter
Christopher D. Jennings
Emerson Poynter, LLP
500 President Clinton Avenue, Suite 305
Little Rock, AR  72201
Telephone:      (501) 907-2555
Facsimile:      (501) 907-2556
spoynter@emersonpoynter.com

Gregg Vance Fallick
Attorney at Law
Albuquerque Plaza, Suite 1560
201 Third Street, N.W.
Albuquerque, NM 87102
Telephone:      (505) 842-6000
Facsimile:      (505) 842-6001
gvf@fallicklaw.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Adam Stein
Ferguson Stein Chambers Gresham
    & Sumter, PA
312 West Franklin Street
Chapel Hill, NC 27516
Telephone:       (919) 933-5300
Facsimile:       (919) 933-6182
astein@fergusonstein.com

William F. Patterson, Jr.
Forman Rossabi Black, P.A.
3623 North Elm Street, Suite 200
Greensboro, NC 27455
Telephone:       (336) 378-1899
Facsimile:       (336) 378-1850
wfp@frb-law.com

Paul M. Weiss
William M. Sweetnam
Freed & Weiss, LLC
111 West Washington Street, Suite 1331
Chicago, IL   60602
Telephone:       (312) 220-0000
Facsimile:       (312) 220-7777
paul@freedweiss.com

Henry A. Cirillo
Thomas P. Dove
Christopher L. Lebsock
Jon T. King
The Furth Firm
225 Bush Street, 15th Floor
San Francisco, CA 94104-4249
Telephone:       (415) 433-2070
Facsimile:       (415) 982-2076
hcirillo@furth.com
tdove@furth.com
clebsock@furth.com

Russell F. Brasso
Foreman & Brasso
930 Montgomery Street, Suite 600
San Francisco, CA 94133
Telephone:       (415) 433-3475
Facsimile:       (415) 781-8030
brasso@foremanandbrasso.com

Michael G. Simon
M. Eric Frankovitch
Frankovitch Anetakis Colantonio & Simon
337 Penco Road
Weirton, WV   26062
Telephone:       (304) 723-4400
Facsimile:       (304) 723-5892
msimon@facslaw.com

Daniel A. Freedman
Joseph Goldberg
Matthew L. Garcia
Freedman Boyd Daniels Hollander
    Goldberg & Ives, PA
20 First Plaza, Suite 700
Albuquerque, NM   87102
Telephone:       (505) 842-9960
Facsimile:       (505) 842-0761
jg@fbdlaw.com

Charles R. Watkins
John R. Wylie
Futterman Howard Watkins Wylie
    & Ashley, Chtd.
122 South Michigan Avenue, Suite 1850
Chicago, IL   60603
Telephone:       (312) 427-3600
Facsimile:       (312) 427-1850
cwatkins@futtermanhoward.com
jwylie@futtermanhoward.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Carl L. Solomon
Gergel, Nickles & Solomon, P.A.
P.O. Box 1866
1519 Richland Street
Columbia, SC 29202-1866
Telephone:      (803) 779-8080
Facsimile:      (803) 256-1816
csolomon@gnslaw.com

Robert J. Gralewski
Gergosian & Gralewski, LLP
550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:      (619) 230-0104
Facsimile:      (619) 230-0124
bob@gralewski.com

Kenneth G. Gilman
Daniel D'Angelo
Gilman and Pastor, LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
Telephone:      (617) 742-9700
Facsimile:      (617) 742-9701
kgilman@gilmanpastor.com

Thomas V. Girardi
Girardi & Keese
1126 Wilshire Boulevard
Los Angeles, CA  90017-1904
Telephone:      (213) 977-0211
Facsimile:      (213) 481-1554
tgirardi@girardikeese.com

Susan G. Kupfer
Sylvie K. Kern
Glancy Binkow & Goldberg, LLP
One Embarcadero Center, Suite 760
San Francisco, CA  94111
Telephone:      (415) 972-8160
Facsimile:      (415) 972-8166
skupfer@glancylaw.com
skern@glancylaw.com

B.J. Wade
Glassman Edwards Wade & Wyatt, PC
26 North Second Street
Memphis, TN  38103
Telephone:      (901) 527-4675
Facsimile:      (901) 521-0940
bwade@gewwlaw.com

Steven E. Grubb
Goldberg Katzman, P.C.
320 Market Street, P.O. Box 1268
Harrisburg, PA 17108-1268
Telephone:      (717) 234-4161
Facsimile:      (717) 234-6808
seg@goldbergkatzman.com

Mark Goldman
Daniel K. Karon
Goldman Scarlato & Karon
101 W. Elm Street, Suite 360
Conschohocken, PA 19428
Telephone:      (484) 342-0700
Facsimile:      (484) 342-0701
karon@gsk-law.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Daniel R. Shulman
Jeremy L. Johnson
Gray Plant Mooty Mooty & Bennett, PA
500 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:      (612) 632-3335
Facsimile:      (612) 632-4335
daniel.shulman@gpmlaw.com
jeremy.johnson@gpmlaw.com

Terry Gross
Adam Belsky
Gross & Belsky, LLP
180 Montgomery Street, Suite 2200
San Francisco, CA  94104
Telephone:      (415) 544-0200
Facsimile:      (415) 544-0201
terry@grossbelsky.com
adam@grossbelsky.com

Daniel E. Gustafson
Renae D. Steiner
Brian Williams
Jason S. Kilene
Gustafson Gluek PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone:     (612) 333-8844
Facsimile:      (612) 339-6622
dgustafson@gustafsongluek.com
rsteiner@gustafsongluek.com

Steven K. Hisaka
Gail Y. Cosgrove
Kunio Kuwabe
Hisaka Yoshida & Cosgrove
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 3000
Honolulu, HI 96813
Telephone:      (808) 523-0451
Facsimile:      (808) 524-0422
shisaka@objectionsustained.com
gcosgrove@objectionsustained.com
kkuwabe@objectionsustained.com

Robert S. Green
Elizabeth C. Guarnieri
Brian S. Umpierre
Green Welling, LLP
595 Market Street, Suite 2750
San Francisco, CA  94105
Telephone:      (415) 477-6700
Facsimile:      (415) 477-6710
rsg@classcounsel.com
ecg@classcounsel.com

Jeffrey A. Bartos
Soye Kim
Guerrieri Edmond Clayman & Bartos, P.C.
1625 Massachusetts Avenue, NW, Suite 700
Washington, DC 20036
Telephone:      (202) 624-7400
Facsimile:      (202) 624-7420
jbartos@geclaw.com
skim@geclaw.com

J. Robert Keena
Barton C. Gernander
Hellmuth & Johnson, PLLC
10400 Viking Drive, Suite 500
Eden Prairie, MN 55344
Telephone:      (952) 941-4005
Facsimile:      (952) 941-2337
jkeena@jhlawfirm.com
bgernander@hjlawfirm.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Dennis J. Stewart
Jennifer A. Kagan
Hulett Harper Stewart LLP
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone:      (619) 338-1133
Facsimile:      (619) 338-1139
dstewart@hulettharper.com
jenni@hulettharper.com

Glenn Carl James
James Law Offices
PMB 501, 1353 Rd. 19
Guaynabo, PR 00966-2700
Telephone:      (787) 763-2888
Facsimile:      (787) 763-2881
jameslawoffices@centennialpr.net

Edward Bearman
JG Law Firm
780 Ridge Lake Boulevard, Suite 202
Memphis, TN 38120
Telephone:      (901) 682-3450
Facsimile:      (901) 682-3590
ebearman@jglawfirm.com

Daniel J. Mulligan
Larry W. Gabriel
Jenkins Mulligan & Gabriel, LLP
660 Market Street, 3rd Floor
San Francisco, CA 94104
Telephone:      (415) 982-8500
Facsimile:      (415) 982-8515
dan@jmglawoffices.com
lgabriel@jmglawoffices.com

Steven C. Lausell
Jose R. Gonzalez
Jimenez, Graffam & Lausell
P.O. Box 366104
San Juan, PR 00936-6104
Telephone:      (787) 767-1030
Facsimile:      (787) 751-4068
slausell@jgl.com
jgonzalez@jgl.com
manager@jgl.com

Michael Stoker
Brian Weber
Johns Flaherty & Collins, SC
Exchange Building, Suite 600
205 Fifth Avenue, South
LaCrosse, WI  54602
Telephone:      (608) 784-5678
Facsimile:      (608) 785-0557
michael@johnsflaherty.com
brian@johnsflaherty.com

Dennis J. Johnson
Johnson & Perkinson
1690 Williston Road
P.O. Box 2305
South Burlington, VT  05403
Telephone:      (802) 862-0030
Facsimile:      (802) 862-0060
djohnson@jpclasslaw.com
email@jpclasslaw.com

Lynn Lincoln Sarko
Mark A. Griffin
John H. Bright
Raymond J. Farrow
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone:      (206) 623-1900
Facsimile:      (206) 623-3384
lsarko@kellerrohrback.com
mgriffin@kellerrohrback.com
jbright@kellerrohrback.com
rfarrow@kellerrohrback.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Kelly Kenny
Attorney at Law
P.O. Box 528
San Mateo, CA 94401
Telephone:       (650) 558-9041
Facsimile:       (650) 558-9041
kellykenny2@sbcglobal.net

Thomas D. Kershaw, Jr.
Thomas D. Kershaw, Jr., PC
184 Gooding Street, West
P.O. Box 2497
Twin Falls, ID 83303
Telephone:       (208) 734-9622
Facsimile:       (208) 734-6944
tkershaw@sunvalley.net

Daniel Hume
David E. Kovel
Beverly Tse
Kirby McInerney & Squire, LLP
830 Third Avenue, 10th Floor
New York, NY  10022
Telephone:       (212) 371-6600
Facsimile:       (212) 751-2540
dhume@kmslaw.com

Mary G. Kirkpatrick
Kirkpatrick & Goldsborough, PLLC
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
Telephone:       (802) 651-0960
Facsimile:       (802) 651-0964
mkirkpatrick@vtlawfirm.com

Susan LaCava
Susan LaCava, SC
23 North Pinckney Street
Madison, WI  53703
Telephone:       (608) 258-1335
Facsimile:       (608) 258-1669
sl@susanlacava.com

Kevin J. O'Connor
Adam C. Briggs
LaFollette Godfrey & Kahn, SC
One East Main Street
P.O. Box 2719
Madison, WI 53701-2719
Telephone:       (608) 284-2600
koconnor@gklaw.com

Justin E. LaVan
LaMarca & Landry, PC
1820 NW 118th Street, Suite 200
Des Moines, IA 50325
Telephone:       (515) 225-2600
Facsimile:       (515) 225-8581
justin@lamarcalandry.com

Samuel W. Lanham, Jr.
Lanham & Blackwell, P.A.
470 Evergreen Woods
Bangor, ME 04401
Telephone:       (207) 942-2898
Facsimile:       (207) 941-8818
slanham@lanhamblackwell.com

Christopher Lovell
Imtiaz A. Siddiqui
Lovell Stewart Halebian LLP
500 Fifth Avenue, 58th Floor
New York, NY  10110
Telephone:       (212) 608-1900
Facsimile:       (212) 719-4677
clovell@lshllp.com

Angela K. Drake
Lowther Johnson
901 St. Louis Street, 20th Floor
Springfield, MO 65806
Telephone:       (417) 866-7777
Facsimile:       (417) 866-1752
adrake@lowtherjohnson.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Jayne A. Goldstein
Mager & Goldstein, LLP
1640 Town Center Circle, Suite 216
Weston, FL  33326
Telephone:      (954) 515-0123
Facsimile:      (954) 515-0124
jgoldstein@magergoldstein.com

Lee Albert
Amir Stark
Mager & Goldstein, LLP
1818 Market Street, Suite 3710
Philadelphia, PA  19103
Telephone:      (215) 640-3280
Facsimile:      (215) 640-3281
lalbert@magergoldstein.com
astark@magergoldstein.com

Stanley S. Mallison
Hector R. Martinez
Law Offices of Mallison & Martinez
1042 Brown Avenue, Suite A
Lafayette, CA  94549
Telephone:      (925) 283-3842
Facsimile:      (925) 283-3426
hectorm@mallisonlaw.com

Donna F. Solen
Gary E. Mason
The Mason Law Firm, LLP
1225 19th Street, NW, Suite 500
Washington, DC 20036
Telephone:      (202) 429-2290
Facsimile:      (202) 429-2294
dsolen@masonlawfirmdc.com

Gary D. McAllister
Eric I. Unrein
Jamie Goldstein
Thomas A. Kelliher
Gary D. McAllister & Associates, LLC
120 North LaSalle Street, Suite 2800
Chicago, IL  60602
Telephone:      (312) 345-0611
Facsimile:      (312) 345-0612
gdm@gdmlawfirm.com

Robert G. Methvin, Jr.
Philip W. McCallum
James Terrell
McCallum, Methvin & Terrell, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:      (205) 939-3006
Facsimile:      (205) 939-0399
rgm@mmlaw.net
pwm@mmlaw.net
jterrell@mmlaw.net

John Gressette Felder, Jr.
Chad A. McGowan
McGowan Hood Felder and Johnson
1405 Calhoun Street
Columbia, SC 29201
Telephone:      (803) 779-0100
Facsimile:      (803) 787-0750
cmcgowan@mcgowanhood.com

James McManis
Colleen Duffy Smith
Marwa Elzankaly
McManis Faulkner & Morgan
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone:      (408) 279-8700
Facsimile:      (408) 279-3244
jmcmanis@mfmlaw.com
melzankaly@mfmlaw.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Floyd M. Melton, III
Melton Law Firm
107½ East Market
P.O. Box 534
Greenwood, MS 38935-0534
Telephone:      (662) 453-8016
Facsimile:      (662) 453-0145
fmmiii@bellsouth.net

Gil D. Messina
Messina Law Firm, PC
961 Holmdel Road
Holmdel, NJ  07733
Telephone:      (732) 332-9300
Facsimile:      (732) 332-9301
gmessina@messinalawfirm.com

Pete S. Michaels
Deborah G. Evans
Jennifer R. Seltenrich
Michaels & Ward, LLP
12 Post Office Square, 4th Floor
Boston, MA 02109
Telephone:      (617) 350-4040
Facsimile:      (617) 350-4050
psm@michaelsward.com
dge@michaelsward.com
jrs@michaelsward.com

Greg A. Lewen
James Fox Miller
Miller, Schwartz & Miller, P.A.
2435 Hollywood Boulevard
Hollywood, FL 33020
Telephone:      (954) 924-0300
Facsimile:      (954) 924-0311
glewen@msmlawyers.com
jmiller@msmlawyers.com

Daniel J. Mogin
Chad M. McManamy
Noah D. Sacks
Brian A. Barnhorst
The Mogin Law Firm, PC
110 Juniper Street
San Deigo, CA  92101
Telephone:      (619) 687-6611
Facsimile:      (619) 687-6610
dan@moginlaw.com

Michael S. Montgomery
Montgomery Goff & Bullis, P.C.
4802 Amber Valley Parkway
P.O. Box 9199
Fargo, ND 58106-9199
Telephone:      (701) 281-8001
Facsimile:      (701) 281-8007
mike@bullislaw.com

Rodney C. Olsen
Morrison, Frost, Olsen & Irvine, LLP
323 Poyntz, Suite 204
Manhattan, KS 66502
Telephone:      (785) 776-9208
Facsimile:      (785) 776-9212
olsen@mfoilaw.com

Gilmur R. Murray
Derek G. Howard
Murray & Howard, LLP
436 14th Street, Suite 1413
Oakland, CA  94612
Telephone:      (510) 444-2660
Facsimile:      (510) 444-2522
gmurray@murrayhowardlaw.com
dhoward@murrayhowardlaw.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Krishna B. Narine
Law Offices of Krishna B. Narine
7893 Montgomery Avenue, Suite 300
Elkins Park, PA 19027
Telephone:     (215) 782-3240
Facsimile:     (215) 782-3241
knarine@kbnlaw.com

Andrew C. Skinner
Nichols & Skinner, LC
115 East Washington Street
P.O. Box 487
Charles Town, WV  25414-0487
Telephone:     (304) 725-7029
Facsimile:     (304) 725-4082
ac@nicholsandskinner.com

Lawrence D. Nwajei
Law Offices of Lawrence D. Nwajei
5850 Canoga Avenue, Suite 400
Woodland Hills, CA  91367
Telephone:     (818) 710-2775
Facsimile:     (818) 914-4851
ldnwajei@aol.com

Lawrence G. Papale
Law Offices of Lawrence G. Papale
1308 Main Street, Suite 117
St. Helena, CA  94574
Telephone:     (707) 963-1704
Facsimile:     (707) 963-0706
lgpapale@papalelaw.com

William H. Parish
Parish & Small
1919 Grand Canal Boulevard, Suite A-5
Stockton, CA  95207-8114
Telephone:     (209) 952-1992
Facsimile:     (209) 952-0250
whparish@parishsmall.com

Joseph M. Patane
Law Office of Joseph M. Patane
2280 Union Street
San Francisco, CA  94123
Telephone:     (415) 563-7200
Facsimile:     (415) 346-0679
jpatane@tatp.com

Jeffery Kenneth Perkins
Law Offices of Jeffery K. Perkins
1275 Columbus Avenue, Suite 208
San Francisco, CA  94133
Telephone:     (415) 474-3833
jefferykperkins@aol.com

Garrett D. Blanchfield, Jr.
Reinhardt Wendorf & Blanchfield
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone:     (651) 287-2100
Facsimile:     (651) 287-2103
g.blanchfield@rwblawfirm.com

Michael L. Roberts
Richard Quintus
Roberts Law Firm, PA
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223
Telephone:     (501) 821-5575
Facsimile:     (501) 821-4474
robertslawfirm@aristotle.net

Dianne M. Nast
Rodanast, PC
801 Estelle Drive
Lancaster, PA  17601
Telephone:     (717) 892-3000
Facsimile:     (717) 892-1200
dnast@rodanast.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Cory M. Jones
Royal Jones Miles Dunkley & Wilson
2920 North Green Valley Parkway, Suite 424
Henderson, NV 89014
Telephone:      (702) 471-6777
Facsimile:      (702) 531-6777
cjones@royaljoneslaw.com

Andrew A. Nickelhoff
Marshall J. Widick
Sachs Waldman, PC
1000 Farmer Street
Detroit, MI  48226
Telephone:      (313) 965-3464
(313) 965-4602
anickelhoff@sachswaldman.com

Terry Rose Saunders
Thomas A. Doyle
Saunders & Doyle
20 South Clark Street, Suite 1728
Chicago, IL  60603
Telephone:      (312) 551-0051
Facsimile:      (312) 551-4467

Alexander M. Schack
Law Offices of Alexander M. Schack
11440 West Bernardo Court, Suite 300
San Diego, CA  92127
Telephone:      (858) 485-6535
Facsimile:      (858) 485-0608
amslawoffice@aol.com

Robert C. Schubert
Willem F. Jonckheer
Peter E. Borkon
Aaron H. Darsky
Schubert & Reed LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone:      (415) 788-4220
Facsimile:      (415) 788-0161
rschubert@schubert-reed.com
wjonckheer@schubert-reed.com

Jonathan Shub
Seeger Weiss, LLP
1515 Market Street, Suite 1380
Philadelphia, PA  19102
Telephone:      (215) 564-2300
Facsimile:      (215) 851-8029
jshub@seegerweiss.com

Christopher A. Seeger
TerriAnne Benedetto
Seeger Weiss, LLP
One William Street
New York, NY  10004
Telephone:      (212) 584-0700
Facsimile:      (212) 584-0799
cseeger@seegerweiss.com
tbenedetto@seegerweiss.com

Steven J. Serratore
Scott Ames
Serratore Ames LLP
9595 Wilshire Boulevard, Suite 201
Beverly Hills, CA 90212
Telephone:      (310) 205-2460
Facsimile:      (310) 205-2464
steve@serratoreames.com

Isaac L. Diel
Sharp McQueen
6900 College Boulevard, Suite 285
Overland Park, KS 66211
Telephone:      (913) 661-9931
Facsimile:      (913) 661-9935
dslawkc@aol.com

Glenn J. Shaull
The Highland Building
2201 Arlington Avenue, South
Birmingham, AL  35205
Telephone:      (205) 933-8501
Facsimile:      (205) 933-8560
gjslaw@bellsouth.net

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Douglas P. Dehler
Shepherd Finkelman Miller & Shah, LLC
111 East Wisconsin Avenue, Suite 1750
Milwaukee, WI  53202
Telephone:       (415) 226-9900
Facsimile:       (415) 226-9905
ddehler@classactioncounsel.com

Natalie Finkelman Bennett
Nathan Zipperian
Shepherd Finkelman Miller & Shah, LLC
35 East State Street
Media, PA  19063
Telephone:       (610) 891-9880
Facsimile:       (610) 891-9883

Jordan M. Lewis
Siegel Brill Greupner Duffy & Foster, P.A.
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401
Telephone:       (612) 337-6100
Facsimile:       (612) 339-6591
jordanlewis@sbgdf.com

W.H. Bundy, Jr.
Smith Bundy Bybee & Barnett, P.C.
Building F, Suite 100
1037 Chuck Dawley Boulevard
Mount Pleasant, SC 29464
Telephone:       (843) 881-1623
Facsimile:       (843) 881-4406
whbesq@s3blaw.com

Bruce Spiva
Kathleen Hartnett
Spiva & Hartnett, LLP
1776 Massachusetts Avenue, NW, Suite 600
Washington, D.C.  20036
Telephone:       (202) 785-0601
Facsimile:       (202) 785-0697
bspiva@spivahartnett.com
khartnett@spivahartnett.com

Jared Stamell
Stamell & Schager, LLP
One Liberty Plaza, 35th Floor
New, NY  10006
Telephone:       (212) 566-4047

Allan Steyer
Jill Manning
Bryan M. Kreft
Steyer Lowenthal Boodrookas Alvarez & Smith, LLP
One California Street, Third Floor
San Francisco, CA  94111
Telephone:       (415) 421-3400
Facsimile:       (415) 421-2234
asteyer@steyerlaw.com
jmanning@steyerlaw.com

David Boies, III
Timothy D. Battin
Ian Otto
Nate Cihlar
Straus & Boies, LLP
4041 University Drive, 5th Floor
Fairfax, VA 22030
Telephone:       (703) 764-8700
Facsimile:       (703) 764-8704
dboies@straus-boies.com
tbattin@straus-boies.com
iotto@straus-boies.com
ncihlar@straus-boies.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Kenneth G. Walsh
Straus & Boies, LLP
Two Depot Plaza
Bedford Hills, NY 10507
Telephone:    (914) 244-3200
Facsimile:    (914) 244-3260
kwalsh@straus-boies.com

Mark J. Schirmer
Straus & Boies, LLP
1661 International Place Drive, Suite 400
Memphis, TN 38120
Telephone:    (901) 818-3146
Facsimile:    (901) 818-3147
mschirmer@straus-boies.com

J. Preston Strom, Jr.
Mario A. Pacella
Strom Law Firm, LLC
2110 Beltline Boulevard, Suite A
Columbia, SC 29204
Telephone:    (803) 252-4800
Facsimile:    (803) 252-4801
petestrom@stromlaw.com
mpacella@stromlaw.com

Shawn A. Taylor
Taylor Law Firm, PLLC
120 Capitol Street
P.O. Box 2132
Charleston, WV 25328
Telephone:    (304) 345-5959
Facsimile:    (304) 345-0270
judge@shawtaylor.com

Reginald Terrell
The Terrell Law Group
223 25th Street
Richmond, CA 94804
Telephone:    (510) 237-9700
Facsimile:    (510) 237-4616
reggiet2@aol.com

Jason J. Thompson
J. Thompson & Associates PLC
26000 West 12 Mile Road
Southfield, MI 48034
Telephone:    (248) 436-8448
Facsimile:    (248) 436-8453
jthompson@jta-law.com

LeRoy D. Percy
Grady F. Tollison, Jr.
Tollison Law Firm, P.A.
100 Courthouse Square
P.O. Box 1216
Oxford, MS 38655
Telephone:    (662) 234-7070
Facsimile:    (662) 234-7095
gray@tollisonlaw.com
roy@tollisonlaw.com

Thomas E. Towe
Towe Ball Enright Mackey & Sommerfeld
P.O. Box 30457
Billings, MT 59107
Telephone:    (406) 248-7337
Facsimile:    (406) 248-2647
towe@tbems.com

Mario N. Alioto
Lauren C. Russell
Trump Alioto Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
Telephone:    (415) 563-7200
Facsimile:    (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

Kenneth Leo Valinoti
Valinoti & Dito LLP
180 Montgomery Street, Suite 940
San Francisco, CA 94104-4223
Telephone:    (415) 986-1338
Facsimile:    (415) 986-1231
kvalinoti@valinoti-dito.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

S. Thomas Wienner
Wienner & Gould, P.C.
950 West University Drive, Suite 350
Rochester, MI 48307
Telephone:      (248) 841-9400
Facsimile:      (248) 652-2729
twienner@wiennergould.com
Kenneth A. Wexler
Wexler Toriseva Wallace, LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
(312) 346-2222
(312) 346-0022
kaw@wtwlaw.com

Lingel H. Winters, Esq.
Law Offices of Lingel H. Winters, APC
The Alcoa Building, Suite 400
One Maritime Plaza
San Francisco, CA 94111
Telephone:      (415) 398-2941
Facsimile:      (415) 393-9887
sawmill2@aol.com

James F. Wyatt, III
Wyatt & Blake, LLP
435 East Morehead Street
Charlotte, NC  28202-2609
Telephone:      (704) 331-0767
Facsimile:      (704) 331-0773
jwyatt@wyattlaw.net

Timothy J. Becker
Brian C. Gudmundson
Zimmerman Reed
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
Telephone:      (612) 341-0400
tjb@zimmreed.com
bcg@zimmreed.com

George O. West, III
Law Offices of George O. West, III
6787 West Tropicana Avenue, Suite 263
Las Vegas, NV 89103
Telephone:      (702) 248-1076
Facsimile:      (702) 953-2286
gowesq@cox.net
Joe R. Whatley, Jr.
Whatley Drake & Kallas
1540 Broadway, 37th Floor
New York, NY 10036
Telephone:      (212) 447-7070
Facsimile:      (212) 447-7077
jwhatley@whatleydrake.com

Marc Aaron Wites
Wites & Kapetan
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone:      (954) 570-8989
Facsimile:      (954) 354-0205
mwites@wklawyers.com

Patrick D. Allen
Michael S. Jahner
Yenson, Lynn, Allen & Wosick, P.C.
4908 Alameda Boulevard NE
Albuquerque, NM 87113-1736
Telephone:      (505) 266-3995
Facsimile:      (505) 268-6694
pallen@ylawfirm.com
mjahner@ylawfirm.com

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1

## JURY TRIAL DEMAND

2          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by

3   jury for all issues so triable.

4   Dated:  November 5, 2007                         */s/Francis O. Scarpulla*

5                                                    Francis O. Scarpulla (41059)
                                                     Craig C. Corbitt (83251)
6                                                    Matthew R. Schultz (220641)
                                                     Qianwe Fu (242669)
7                                                    ZELLE HOFMANN VOELBEL MASON &
                                                     GETTE LLP
8                                                    44 Montgomery Street, Suite 3400
                                                     San Francisco, CA  94104
9                                                    Telephone:    (415) 693-0700
                                                     Facsimile:    (415) 693-0770
10                                                   fscarpulla@zelle.com

11                                                   Joseph M. Alioto (42680)
                                                     Theresa D. Moore (99978)
12                                                   ALIOTO LAW FIRM
                                                     555 California Street, Suite 3160
13                                                   San Francisco, CA 94104
                                                     Telephone:    (415) 434-8900
14                                                   Facsimile:    (415-434-9200
                                                     josephalioto@mac.com
15                                                   esexton@alioto.law.com

16                                                   *Interim Co-Lead Counsel for Indirect-*
                                                     *Purchaser Plaintiffs and Class Members*

17                                                   Jack W. Lee
                                                     B. Mark Fong
18                                                   Brad Yamauchi
                                                     Minami Tamaki, LLP
19                                                   360 Post Street, 8th Floor
                                                     San Francisco, CA  94108-4903
20                                                   Telephone:    (415) 788-9000
                                                     Facsimile:    (415) 398-3887
21                                                   jlee@minamitamaki.com
                                                     mfong@minamitamaki.com
22
                                                     *Liaison Counsel for Indirect-Purchaser*
23                                                   *Plaintiffs and Class Members*

24

25

26

27

28
                                          116
INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

# CERTIFICATE OF SERVICE

## IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION
### Master File No. M:07-cv-1827 SI
### MDL No. 1827

I, Monica J. Steele, certify and declare under penalty of perjury that I: am a citizen of the United States; am over the age of 18 years; am employed by Zelle, Hofmann, Voelbel, Mason & Gette LLP, at the address indicated, whose members are members of the State Bar of California and at least one of whose members is a member of the Bar of each Federal District Court within California; am not a party to or interested in the cause entitled upon the document to which this Proof of Service is affixed; and that I served a true and correct copy of the following document(s) in the manner indicated below:

**1.      INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

☐      by today depositing, at San Francisco, California, the said document(s) in the United States mail in a sealed envelope, with first-class postage thereon fully prepaid; (and/or)

☐      by facsimile transmission to the parties listed below;

☐      by overnight mail to the parties listed below;

☐      by today personally delivering the said document(s) to the person(s) indicated below in a manner provided by law, by handing them the documents or by leaving the said document(s) at the office(s) or usual place(s) of business, during usual business hours, of the said person(s) with a clerk or other person who was apparently in charge thereof and at least 18 years of age, whom I informed of the contents.

☐      (BY ELECTRONIC MAIL) I caused such document(s) to be emailed to the offices and/or to attorneys of offices of the above named addressee(s).

☒      **By USDC Live System-Document Filing System:** on all interested parties registered for e-filing.

Dated: November 5, 2007

Signed  _/s/Monica J. Steele_____
Monica J. Steele

#3171126v1

INDIRECT-PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT