Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Matthew R. Schultz (220641)
Qianwei Fu (242669)
ZELLE HOFMANN VOELBEL MASON
& GETTE LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:    (415) 693-0700
Facsimile:    (415) 693-0770
fscarpulla@zelle.com

Joseph M. Alioto (42680)
Theresa D. Moore (99978)
THE ALIOTO LAW FIRM
555 California Street, 31st Floor
San Francisco, CA 94104
Telephone:    (415) 434-8900
Facsimile:    (415) 434-9200
sexton@aliotolaw.com

*Interim Co-Lead Counsel for Indirect-Purchaser
Plaintiffs and Class Members*

(Additional Counsel Listed on Signature Page)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>All Indirect-Purchaser Actions.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Master File No. C07-1827 SI<br><br>MDL No. 1827<br><br>CLASS ACTION<br><br>**INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT**<br><br>Date:  April 30, 2008<br>Time:  2:00 p.m.<br>Place: 450 Golden Gate Avenue<br>          Courtroom 10, 19th Floor<br>Judge: Hon. Susan Illston |

1

**<u>TABLE OF CONTENTS</u>**

2  I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT.................................1

3  II.     APPLICABLE LEGAL STANDARDS.................................................................3

4  III.    ARGUMENT...............................................................................................4

5          A.    Plaintiffs' Antitrust Claims Satisfy *Twombly*.............................................4

6                1.    Defendants' Joint Twombly Motion Should Be Denied...........................4

7                2.    Defendants' Separate *Twombly* Motions Should Be Denied....................9

8          B.    The Complaint Cannot Be Dismissed On *AGC* Grounds............................10

9                1.    Plaintiffs Have Alleged "Antitrust Injury" Under State Law...................11

10                     a.    Plaintiffs Allege That Defendants *Are* Participants in The "LCD
                             Products Market," And This Market *Was* Harmed by Their Illegal
11                           Conduct, So Their Argument Fails Out of the Gate....................12

12                     b.    Defendants' Proposed "Antitrust Injury" Is Contrary To The Intent Of
                             The Repealer States' Legislatures.......................................13
13
14                     c.    Numerous Courts Have Rejected Defendants' Proposed "Market
                             Participant" Requirement for State-Law Antitrust Claims.............16

15                     d.    Defendants Offer No Persuasive Arguments Or Authorities For
                             Applying A Market-Participant Standing Requirement To State Law
16                           Indirect-Purchaser Actions..............................................18

17                     e.    Even Federal Law Does Not Impose A Bright-Line Requirement That
                             Plaintiffs Be "Participants" In The Same "Market" As Defendants In
18                           Order To Suffer An "Antitrust Injury."................................21

19                2.    Plaintiffs' Injury Is Sufficiently "Direct" to Satisfy AGC.....................25

20         C.    Plaintiffs Have Standing For Their Claims For Injunctive Relief Under Section 16 Of
                 The Clayton Act.........................................................................28
21
22         D.    The Plaintiffs' Claims For Unjust Enrichment Should Be Allowed To Go
                 Forward....................................................................................29

23         E.    The Complaint Alleges Unconscionable And/Or Deceptive Conduct Sufficient To
                 State A Claim Under The Consumer Protection Laws Of Arkansas, D.C., Maine,
24               Nebraska, New Mexico, New York, Rhode Island And West Virginia.................30

25                1.    Arkansas Code §§ 4-88-101 *et seq*...............................................31

26                2.    D.C. Code §§ 28-3901 *et seq*....................................................32

27                3.    Maine Rev. Stat. §§ 207 *et seq*..................................................32

28                4.    Nebraska Rev. Stat. §§ 59-1601 *et seq*..........................................33

i

5.      New Mexico Stat. §§ 57-12-1 *et seq*.................................................33

6.      New York Gen. Bus. Law § 349...................................................34

7.      Rhode Island Gen. Laws §§ 6-13.1-1 *et seq*............................................35

8.      West Virginia Code §§ 46A-6-101 *et seq*...........................................36

F.      Plaintiffs' Claims Include Claims On Behalf Of Business EntitiesExcept For West Virginia.........................................................................42

G.      The Complaint Alleges Fraudulent Concealment Sufficient To Toll The Applicable Statutes Of Limitations................................................................37

H.      If Necessary, Leave To Amend And For Discovery Is Appropriate...................41

IV.     CONCLUSION..........................................................................................42

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>

*Agron, Inc. v. Lin*
     2004 WL 555377 ................................................................................................ 12, 41

*Allwaste, Inc. v. Hecht*
     65 F.3d 1523 (9th Cir.1995) ................................................................................... 41

*American Ad Management, Inc. v. General Television Company of California,*
     190 F.3d 1051 (9th Cir. 1999) .......................................................................... 16, 23

*American Needle, Inc. v. New Orleans LA Saints*
     385 F. Supp. 2d 727 (N.D. Ill. 2005) ............................................................... 22, 24

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*
     459 U.S. 519 (1983).......................................................................................... *passim*

*Atlantic Richfield Co. v. USA Petroleum Co.*
     495 U.S. 328 (1990)) ............................................................................................. 11

*Bell Atlantic Corp. v. Twombly*
     127 S.Ct. 1953 (2007)...................................................................................... *passim*

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*
     182 F.3d 1096 (9th Cir. 1999) .............................................................................. 23

*Blue Shield of Virginia v. McCready*
     457 U.S. 465 (1982)........................................................................... 22, 23, 24, 28

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*
     429 U.S. 477, 477 (1977)) ......................................................................... 11, 22, 28

*California v. ARC America Corp.*
     490 U.S. 93 (1989)................................................................................................. 15

*Chicago Professional Sports Ltd. P'ship v. NBA*
     961 F.2d 667 (7th Cir. 1992) ................................................................................ 22

*Conmar Corp. v. Mitsui & Co.*
     858 F.2d 449 (9th Cir. 1988) .......................................................................... 39, 40

*Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.*
     710 F.2d 752 (11th Cir. 1983) .............................................................................. 21

*D.R. Ward Construction Co. v. Rohn & Haas Co.*
     470 F. Supp. 2d 485 (E.D. Pa. 2006).............................................................. *passim*

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

*EEOC v. Concentra Health Services*
    496 F.3d 773 (7th Cir. 2007) ......................................................................... 4

*Emerson Electric Co. v. Le Carbone Lorraine, S.A.*
    500 F. Supp. 2d 437 (D.N.J. 2007) ............................................................... 39

*Eminence Capital, LLC. v. Aspen, Inc.*
    316 F.3d 1048 (9th Cir. 2003) ...................................................................... 41

*Erickson v. Pardus*
    127 S.Ct. 2197 (2007) ............................................................................... 3, 4

*Excellus Health Plan, Inc. v. Tran.*
    287 F. Supp. 2d 167 (W.D.N.Y. 2003) .......................................................... 35

*Federal Trade Comm'n v. Mylan Labs., Inc.*
    62 F. Supp. 2d 25, *on recons.* 99 F. Supp. 2d 1, 10 (D.D.C. 1999) ............... 36

*Frye v. American General Finance, Inc.*
    307 F. Supp. 2d 836, 841 (S.D. Miss. 2004) ................................................. 38

*FTC v. Superior Court Trial Lawyers Ass'n*
    493 U.S. 411 (1990) ..................................................................................... 32

*Genesco Entertainment Div. of Lymutt Indus. v. Koch*
    593 F. Supp. 743 (S.D.N.Y. 1984) ................................................................ 34

*Glen Holly Entertainment, Inc. v. Tektronix Inc.*
    352 F.3d 367 (9th Cir. 2003) ................................................... 11, 13, 22, 24

*Hebert v. Fliegel*
    813 F.2d 999 (9th Cir. 1987) ....................................................................... 15

*High Tech. Careers v. San Jose Mercury News*
    996 F.2d 987 (9th Cir. 1993) ....................................................................... 12

*Ho v. Visa U.S.A., Inc.*
    793 N.Y.S.3d 8 (N.Y. App. Div.) ................................................................... 19

*Hyland v. Homeservices of America*
    2007 WL 2407233 (W.D. Ky. Aug. 17, 2007) ..................................... 5, 6, 7, 8

*Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*
    253 F. Supp. 2d 262 (D. Conn. 2003) ................................................... 13, 26

*Illinois Brick Co. v. Illinois*
    431 U.S. 720 (1977) .............................................................................. passim

iv

*In re Abbott Labs. Norvir Antitrust Litig.*
   2007 WL 1689899 (N.D. Cal. June 11, 2007) .................................................. 29

*In re Bath & Kitchen Fixtures Antitrust Litig.*
   2006 WL 2038605 (E.D. Pa. July 19, 2006) .................................................. 8

*In re Bulk Extruded Graphite Products Antitrust Litigation,*
   2007 WL 1062979 (D.N.J. 2007) .................................................. 39

*In re Cardizem CD Antitrust Litig.*
   105 F. Supp. 2d 618 (E.D. Mich. 2000) .................................................. 25

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................. *passim*

*In re Elevator Antitrust Litigation*
   502 F.3d 47 (2d Cir. 2007) .................................................. 6, 8

*In re Graphics Processing Units Antitrust Litig.*
   2007 WL 3342602 (N.D. Cal. Nov. 7, 2007) .................................................. 7

*In Re Graphics Processing Units Antitrust Litig.*
   527 F. Supp. 2d 1011 (N.D. Cal. Sept. 27, 2007) .................................................. *passim*

*In re Intel Corp. Microprocessor Antitrust Litig.*
   2007 WL 2028113 (D. Del. July 12, 2007) .................................................. 33

*In re Intel Corp. Microprocessor Antitrust Litig.,*
   496 F. Supp. 2d 404 (D. Del. July 12, 2007) .................................................. 2, 17, 27

*In re K-Dur Antitrust Litig.*
   338 F. Supp. 2d 517 (D.N.J. 2004) .................................................. 29, 30

*In re Late Fee and Over-Limit Fee Litig.*
   528 F. Supp. 2d 953 (N.D. Cal. 2007) .................................................. 6

*In re Linerboard Antitrust Litig.*
   305 F.3d 145 (3d Cir. 2002) .................................................. 26

*In re Live Concert Antitrust Litig.*
   247 F.R.D. 98 (C.D. Cal. 2007) .................................................. 12

*In re Lorazepam & Clorazepate Antitrust Litig.*
   295 F. Supp. 2d 30 (D.D.C. 2003) .................................................. 25, 30

*In re Lupron Marketing and Sales Practices Litigation*
   2004 WL 2070883 (D. Mass. Sept. 16, 2004) .................................................. 38, 40

v

*In re Mercedes-Benz Antitrust Litig.*
 157 F. Supp. 2d 355 (D.N.J. 2001) ...................................................... 11, 24

*In re Microsoft Corp. Antitrust Litigation*
 No. 2005 WL 1398643 (D. Md. Jun 10, 2005) .................................... 21

*In re Monosodium Glutamate Antitrust Litigation*
 2003 WL 297287 (D. Minn. Feb. 6, 2003) ......................................... 39

*In re MTBE*
 175 F. Supp. 2d 593 (S.D.N.Y. 2001) ................................................ 35

*In re Napster, Inc. Copyright Litigation*
 354 F. Supp. 2d 1113 (N.D. Cal. 2005) ............................................. 15

*In re New Motor Vehicles Canadian Export Antitrust Litig.*
 243 F.R.D. 20 (D. Me. 2007) ............................................................ 33

*In re New Motor Vehicles Canadian Export Antitrust Litig.*
 350 F. Supp. 2d 160 (D. Me. 2004) ............................................ *passim*

*In re OSB Antitrust Litigation*
 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) ................................... 5, 6

*In re Pharmaceutical Industry Average Wholesale Price Litigation*
 233 F.R.D. 229 (D. Mass. 2006) ..................................................... 33, 36

*In re Static Access Memory (SRAM) Anitrust Litig.*
 2008 WL 426522 (N.D. Cal. Feb. 14, 2008) ................................ *passim*

*In re Sugar Indus. Antitrust Litig.*
 579 F.2d 13 (3d Cir. 1978) ............................................................... 26

*In re Tableware Antitrust Litig.*
 363 F. Supp. 2d 1203 (N.D. Cal. 2005) ............................................. 8

*In re Travel Agent Comm'n Antitrust Litig.*
 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007) ................................... 6

*In re Vitamins Antitrust Litigation*
 2000 WL 1475705 (D.D.C. May 9, 2000) ...................................... 25, 39

*In re Warfarin Sodium Antitrust Litig.*
 214 F.3d 395 (3d Cir. 2000) ............................................................ 26, 28

*Intel x86 Microprocessors Cases*
 No. J.C.C.P. No. 4443 (Cal. Super. Ct. May 15, 2007) ..................... 18

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

*Kelly v. Provident Life & Acc. Ins.*
    2007 WL 2389870 (9th Cir. Aug. 20, 2007).................................................................. 4

*Kendall v. Visa U.S.A., Inc.*
    ___ F.3d ___, 2008 WL 613924 (9th Cir. March 7, 2008)................................... 7, 41

*Kendall v. Visa U.S.A., Inc.*
    2005 WL 2216941 (N.D. Cal. July 25, 2005).................................................................. 7

*King & King Enterprises v. Champlin Petroleum Co.*
    657 F.2d 1147 (10th Cir. 1981) ........................................................................................ 39

*Kirkpatrick v. John Hancock Mut. Life Ins. Co.*
    1996 Minn. App. LEXIS 1044 (Minn. Ct. App. Sept. 3, 1996)............................... 40

*Knevelbaard Dairies v. Kraft Foods, Inc.*
    232 F.3d 979 (9th Cir. 2000) ........................................................................ 13, 23, 26

*Lopez v. Smith*
    203 F.3d 1122 (9th Cir. 2000) ........................................................................................ 41

*Los Angeles Memorial Coliseum Comm'n v. National Football League*
    791 F.2d 1356 (9th Cir. 1986) ........................................................................................ 23

*Medalie v. FSC Securities Corp.*
    87 F. Supp. 2d 1295 (D.C. Fla. 2000)............................................................................. 21

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
    269 F. Supp. 2d 1213 (C.D. Cal. 2003) ......................................................................... 15

*Microsoft I-V Cases*
    2000-2 Trade Cas. (CCH) ¶73,013 (Cal. Super. Ct. Aug. 29, 2000)..................... 21

*Moniz v. Bayer Corp.*
    484 F. Supp. 2d 228 (D. Mass. 2007) ............................................................................ 18

*Murphy v. Erwin-Wasey, Inc.*
    460 F.2d 661 (1st Cir. 1972) ............................................................................................ 11

*Muzzey v. Avery Dennison Corp.*
    No. CI 05-126 (Neb. Dist. Ct. Jan. 17, 2006) ............................................................. 26

*Nagrampa v. MailCoups, Inc.*
    469 F.3d 1257 (9th Cir. 2006) ........................................................................................ 37

*Netbula LLC v. Distinct Corp.*
    212 F.R.D. 534 (N.D. Cal. 2003) .................................................................................... 41

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

*New York v. Feldman*
    210 F. Supp. 2d 294 (S.D.N.Y. 2002).................................................................. 34, 35

*New York Citizens Committee on Cable TV v. Manhattan Cable TV, Inc.*
    651 F. Supp. 802 (S.D.N.Y. 1986) ....................................................................... 22

*New York Jets LLC v. Cablevision Sys. Corp.*
    2005 WL 2649330 (S.D.N.Y. Oct 17, 2005) ......................................................... 35

*Novell Inc. v. Microsoft Corp.*
    505 F.3d 302 (4th Cir. 2007), *cert. denied*, 76 USLW 3406 (March 17, 2008) ............. *passim*

*Ostrofe v. H.S. Crocker Co.*
    740 F.2d 739 (9th Cir.1984) ................................................................................ 23

*Pace Electronics, Inc. v. Cannon Computer Systems, Inc.*
    213 F.3d 118 (3d Cir. 2000).................................................................................. 11

*Perez-Trujillo v. Volvo Car Corp.*
    137 F.3d 50 (1st Cir. 1998)................................................................................... 11

*Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*
    1986 WL 957 (S.D.W.V. May 13, 1986)............................................................... 38

*Pooler v. R.J. Reynolds Tobacco Co.*
    2001 WL 403167 (Nev. Dist. Ct. April 4, 2001) ................................................... 38

*Powers v. Lycoming Engines*
    245 F.R.D. 226 (E.D. Pa. 2007) ........................................................................... 30

*Rios v. State Farm Fire and Cas. Co.*
    469 F. Supp. 2d 727 (S.D. Iowa 2007) ................................................................ 30

*SAS v. Puerto Rico Tel. Co.*
    48 F.3d 39 (1st Cir 1995)............................................................................... 22, 24

*Schoenbaum v. E.I. DuPont De Nemours and Co.*
    517 F. Supp. 2d 1125 (E.D. Mo. 2007).................................................................. 33

*Schumacher v. Tyson Fresh Meats, Inc.*
    221 F.R.D. 605 (D.S.D. 2004) .............................................................................. 29

*Singer v. AT&T Corp.*
    185 F.R.D. 681 (S.D. Fla. 1998)........................................................................... 29

*Skaff v. Meredien North America Beverly Hills, LLC*
    506 F.3d 832 (9th Cir. 2007) ......................................................................... 2, 3, 4

*Takahashi v. Loomis Armored Car Serv.*
  625 F.2d 314 (9th Cir. 1980) .................................................................. 11

*Through Owen v. U.S.*
  713 F.2d 1461 (9th Cir. 1983) ............................................................... 21

*Weber v. Department of Veterans Affairs*
  512 F.3d 1178 (9th Cir. 2008) ................................................................. 4

*Westways World Travel, Inc. v. AMR Corp.*
  218 F.R.D. 223 (C.D. Cal. 2003) .......................................................... 29

**State Cases**

*A&M Supply Co. v. Microsoft Corp.*
  654 N.W.2d 572 (Mich. App. 2002) ...................................................... 27

*Arthur v. Microsoft Corp.*
  676 N.W.2d 29 (Neb. 2004) ............................................................ 21, 33

*Baker v. Beech Air-Craft Corp.*
  39 Cal. App. 3d 315 (1974) ............................................................. 37, 40

*Beckler v. Visa U.S.A., Inc.*
  2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004) ........................... 19, 20

*Boyle v. Giral*
  820 A.2d 561 (D.C. 2003) ..................................................................... 15

*Bricker v. Putnam*
  512 A.2d 1094 (N.H. 1986) ................................................................... 38

*Bunker's Glass Co. v. Pilkington, PLC*
  75 P.3d 99 (Ariz. 2003) .................................................................... 15, 19

*Calhoun v. Calhoun*
  197 S.E.2d 83 (N.C. Ct. App. 1973) ...................................................... 38

*Cellular Plus, Inc. v. Superior Court*
  14 Cal. App. 4th 1224 (1993) .......................................................... 13, 16

*Christy v. Miulli*
  692 N.W.2d 694 (Iowa 2005) .......................................................... 38, 40

*Cianci v. Superior Court*
  40 Cal. 3d 903 (1985) ........................................................................... 13

*Comes v. Microsoft Corp.*
  646 N.W.2d 440 (Iowa 2002) ............................................... 14, 19, 20, 21

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

*Continental Potash, Inc. v. Freeport McMoran, Inc.*
    858 P.2d 66 (N.M. 1993) ........................................................................ 40

*Cox v. Microsoft Corp.*
    778 N.Y.S. 2d 147 (N.Y. App. Div. 1st Dep't 2004) ................................ 35

*Cruz v. NYNEX Info. Res.*
    703 N.Y.S. 2d 103 (N.Y. App. Div. 1st Dep't 2000) ................................ 35

*Delanno, Inc. v. Peace*
    237 S.W.3d 81 (Ark. 2006) ...................................................................... 37

*District Cablevision Ltd. Partnership v. Bassin*
    828 A.2d 714 (D.C. 2003) ................................................................. 32, 35

*Elkins v. Microsoft Corp.*
    817 A.2d 9 (Vt. 2002) .............................................................................. 21

*Fine v. Checcio*
    870 A.2d 850 (Pa. 2005) ..................................................................... 38, 40

*Fred Ezra Co. v. Psychiatric Inst. of Wash. D.C.*
    687 A.2d 587 (D.C. 1996) ........................................................................ 40

*Freeman Inds. LLC v. Eastman Chem. Co.*
    172 S.W.3d 512 (Tenn. 2005) ................................................................... 18

*Freeman v. San Diego Ass'n of Realtors*
    77 Cal. App. 4th 171 (1999) ..................................................................... 13

*Friedman v. Microsoft Corp.*
    CV2000-000722 (Maricopa Cty. Super. Ct.) .......................................... 15

*Friends Univ. v. W.R. Grace & Co.*
    608 P.2d 936 (Kan. 2007) ........................................................................ 38

*Garcia ex. rel. Garcia v. La Farge*
    893 P.2d 428 (N.M. 1995) ....................................................................... 38

*Goda v. Abbott Labs., Inc.*
    1997 WL 156541 (D.C. Super. Feb. 3, 1997) ......................................... 14

*Gordo v. Microsoft Corp.*
    2001 WL 3664322 (Minn. Dist. Ct. March 30, 2001) ............................ 15

*Goshen v. Mut. Life Ins. Co. of N.Y.*
    98 N.Y.2d 314 (N.Y. 2002) ..................................................................... 34

x

*Hannah Min. Co. v. InterNorth, Inc.*
    379 N.W.2d 663 (Minn. Ct. App. 1986).................................................................. 38

*Hickson v. Saig*
    828 S.W.2d 840 (Ark. 1992)................................................................................... 40

*Holder v. Archer Daniels Midland Co.*
    1998 WL 1469620 (D.C. Super Nov. 4, 1998)..................................... 13, 14, 15, 18

*Hyde v. Abbott Labs.*
    473 S.E.2d 680 (N.C. Ct. App. 1996)..................................................................... 14

*In re Fla. Microsoft Antitrust Litig.*
    2002 WL 31423620 (Fla. Cir. Ct. Aug. 26, 2002)................................................. 21

*Kamp v. Texaco, Inc.*
    46 Cal. 3d 1147 (1988) .......................................................................................... 13

*Kanne v. Visa U.S.A., Inc.*
    723 N.W.2d 293 (Neb. 2006)............................................................................ 19, 20

*Knowles v. Visa U.S.A., Inc.*
    2004 WL 2475284 (Maine Super. Oct. 20, 2004) ............................................. 19, 20

*Lorix v. Crompton Corp.*
    736 N.W.2d 619 (Minn. 2007)......................................................................... *passim*

*McNaughton v. Rockford State Bank*
    246 N.W. 84 (Mich. 1933)...................................................................................... 38

*Meyers v. Bayer AG*
    735 N.W.2d 448 (Wis. 2007).................................................................................. 18

*Muller v. Thaut*
    430 N.W.2d 884 (Neb. 1988).................................................................................. 38

*Nardone v. Reynolds*
    333 So.2d 25 (Fla. 1976)........................................................................................ 38

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*
    85 N.Y.2d 20 (N.Y. 1995) ................................................................................. 34, 35

*Patten v. Standard Oil of La.*
    55 S.W.2d 759 (Tenn. 1933)................................................................................... 40

*Martin v. Howard*
    784 A.2d 291 (R.I. 2001)........................................................................................ 38

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

*Riggs Nat'l Bank of Washington D.C. v. D.C.*
  581 A.2d 1229 (D.C. 1990) ............................................................... 34

*Rodrigue v. Valco Enterprises, Inc.*
  726 A.2d 6164 (Vt. 1999) ................................................................ 38

*Shadrick v. Coker*
  963 S.W.2d 726 (Tenn. 1998) .......................................................... 38

*Southard v. Visa U.S.A., Inc.*
  734 N.W.2d 192 (Iowa 2007) ........................................................... 20

*Stark v. Visa U.S.A., Inc.*
  2004 WL 1879003 (Mich. Cir. Ct., July 23, 2004) ........................... 19

*State v. R & A Inv. Co.*
  985 S.W.2d 299 (Ark. 1999) ............................................................ 34

*State by Humphrey v. Philip Morris, Inc.*
  551 N.W.2d 490 (Minn. 1997) ......................................................... 13

*Strang v. Visa U.S.A., Inc.*
  2005 WL 1403769 (Wis. Cir. Feb. 8, 2005) ..................................... 19

*Strassburg v. Citizens Bank*
  581 N.W.2d 510 (S.D. 1998) ...................................................... 38, 40

*Szukalski v. Crompton Corp.*
  726 N.W.2d 304 (Wis. Ct. App. 2006) ............................................. 18

*Taylor v. Phillip Morris Inc.*
  2001 WL 1710710 (Me. Super. Ct. May 29, 2001) ...................... 38, 40

*Tungate v. Maclean-Stevens Studios, Inc.*
  714 A.2d 792 (Me. 1998) ........................................................... 32, 33

*Union Carbide Corporation v. Superior Court*
  36 Cal. 3d 15 (1984) ....................................................................... 13

*Weaver v. Cabot Co.*
  2004 WL 3406119 (N.C. Super. Mar. 26, 2004) .......................... 19, 27

*Wrobel v. Avery Dennison Corp.*
  No. 05CV526 (Kansas Dist. Ct. Feb. 1, 2006) ................................. 26

**Federal Statutes**

S. Rep. No. 109-14 (2005), reprinted in 2005 U.S.C.C.A.N. 3 ......................... 13

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

**State Statutes**

Arizona Sess. Law Serv. Ch. 50 § 1 ........................................................................... 15

Arkansas Code §§ 4-88-101, *et seq* ........................................................................... 31

District of Columbia Code §§ 28-3901 ...................................................................... 32

District of Columbia Sess. Law Serv. Ch. 15-205 ..................................................... 15

Kansas Stat. Ann., §§ 50-101 *et seq* ......................................................................... 37

Maine Rev. Stat. §§ 207, *et seq* .......................................................................... 32, 33

Minnesota Sess. Law Serv. Ch. 268 ........................................................................... 15

Nebraska Rev. Stat. § 87-302(14)(c) .......................................................................... 33

Nebraska Rev. Stat. §§ 59-1601, *et seq* .................................................................... 33

New Mexico Stat. §§ 57-12-1, *et seq* ................................................................... 33, 34

New York Gen. Bus. Law § 349 ............................................................................ 34, 35

North Dakota Cent. Code § 28-01-24 ......................................................................... 38

Pennsylvania Const. Stat. § 201-2(2) .......................................................................... 37

Pennsylvania Const. Stat. § 201-9.2 ............................................................................ 37

Rhode Island Gen. Laws. §§ 6-13.1-1, *et seq.* ..................................................... 35, 36

West Virginia Code §§ 46A-6-101, *et seq* ................................................................. 37

**Federal Rules**

Federal Rule of Civil Procedure 8(a)(1)-(2) .................................................................. 4

Federal Rule of Civil Procedure 15(a)............................................................................41

*///*

*///*

*///*

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

**Other Authorities**

Michael V. Gisser, *Indirect Purchaser Suits Under State Antitrust Laws:  A Detour Around The Illinois Brick Wall*, 34 Stan. L. Rev. 203 (1981) ................................................................. 14

Daniel Karon, *Undoing the Otherwise Perfect Crime*, 108 W. Va. L. Rev. 395 (2005) .............. 29, 30

WEBSTER'S NEW WORLD DICTIONARY (2nd College Ed. 1978)................................................3

Charles Alan Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1202, at 89 (3 ed. 2004)..........4

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

# I
## INTRODUCTION
## AND
## SUMMARY OF THE ARGUMENT

This motion to dismiss was filed by a group of Defendants who are currently under investigation by the United States Department of Justice ("DOJ"), the Korea Fair Trade Commission ("KFTC"), the European Commission ("EC"), and the Japanese Fair Trade Commission ("JFTC"). Indirect-Purchaser Plaintiffs' Consolidated Amended Complaint, ¶¶ 175-179 ("Complaint"). At least one Defendant is a DOJ "amnesty applicant" under the DOJ's Corporate Leniency Policy and has admitted to the conspiracy to fix prices in the LCD market. *Id.* ¶ 180. Many Defendants are also the subjects of other DOJ investigations into alleged anticompetitive conduct in the memory-chip and electronic-components industries, and have been named as defendants in other antitrust class actions filed in this District with respect to such products.[1] Indeed, the DOJ successfully obtained a stay of discovery, in effect since September 25, 2007, based largely on evidence it presented, and concerns it expressed, in a declaration it provided to this Court under seal, contending that the secrecy of its criminal investigation of these Defendants, and the identity of cooperating witnesses, would be compromised if civil discovery were allowed. This Court agreed:

> The government has sufficiently demonstrated that production of documents produced to the grand jury would reveal the nature, scope and direction of the ongoing criminal investigation, as well as the identities of others who may be providing evidence to the grand jury or the government, and the identities of potential witnesses and targets.

Stay Order, 1:21-23, 2:4-8.

Notwithstanding these investigations, an amnesty applicant, and the evidence already placed in this record by the DOJ, these same Defendants – including the amnesty applicant – come before this Court and claim that the alleged conspiracy is not "plausible." To the contrary, even if the facts already known to this Court were not enough to justify Plaintiffs' allegations, nevertheless the

---

[1] *See, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* Case No. M-02-0486 (N.D. Cal.); *In re Static Access Memory (SRAM) Antitrust Litig.,* Case No. M:07-CV-01819-CW (N.D. Cal.); *In re Flash Memory Antitrust Litig.* Case No. C:07-0086 SBA (N.D. Cal.); and *In re Cathode Ray Tube (CRT) Antitrust Litig.,* Case No. CV-07-5944-SC (N.D. Cal.).

1

Complaint would pass *Twombly* muster.[2]  Among other things, Plaintiffs have pleaded numerous facts, including specific meetings and incriminating statements made by the Defendants' officers and directors (Complaint ¶¶ 137 -174; 226-235), that establish a "reasonable expectation that discovery will reveal evidence of an illegal agreement" – which is all the Supreme Court requires.  *Twombly,* 127 S.Ct., at 1965, and *see infra* Part III.A – B.

Furthermore, contrary to Defendants' assertions, the Complaint's allegations amply demonstrate "antitrust standing" under *AGC*[3] for those limited claims to which that case is even applicable.  Defendants ignore recent decisions by the Fourth Circuit in *Novell Inc. v. Microsoft Corp.,* 505 F.3d 302 (4th Cir. 2007), *cert. denied,* 76 USLW 3406 (March 17, 2008) ("*Novell*"); by the Minnesota Supreme Court in *Lorix v. Crompton Corp.,* 736 N.W.2d 619 (Minn. 2007) ("*Lorix*"); by Judge Davis in *D.R. Ward Construction Co. v. Rohn & Haas Co.,* 470 F. Supp. 2d 485 (E.D. Pa. 2006) ("*D.R. Ward*"); by Judge Farnan, Jr. in *In re Intel Corp. Microprocessor Antitrust Litig.,* 496 F. Supp. 2d 404 (D. Del. July 12, 2007) ("*Intel*"); and by Judge Alsup in *In Re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011 (N.D. Cal. Sept. 27, 2007) ("*GPU*"), – just a few of the courts that have rejected Defendants' proposed bright-line test for "antitrust standing."  *See infra,* Part III.C.

In addition, the Complaint sufficiently alleges causes of action for common law unjust enrichment (*see infra,* Part III.D) and violations of certain states' consumer protection laws (*see infra,* Parts III.E).  Defendants' arguments that the alleged conspiracy does not give rise to unjust enrichment, or constitute "deceptive or unconscionable conduct," are contrary to state and federal authorities on both counts, including several recent post-CAFA federal court decisions.

Finally, the Complaint's allegations toll the applicable statutes of limitations during the Class Period.  Defendants' contentions to the contrary make no sense.  On the one hand, Defendants claim the facts set forth in the Complaint are insufficient under *Twombly* to render the alleged conspiracy

---

[2] *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1953 (2007) ("*Twombly*").  As explained more fully below, *Twombly* did not raise the pleading standards for antitrust class actions, as Defendants contend.  *See, e.g., Skaff v. Meredien North America Beverly Hills, LLC,* 506 F.3d 832, 839 (9th Cir. 2007).  *See infra* Part II.

[3] *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519 (1983) ("*AGC*").

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

"plausible."  Then – when it suits their purposes to do so – Defendants contend those same facts  (in fact, only a portion of them) were sufficient to put Plaintiffs on "notice" of the conspiracy and that their failure to file this Complaint earlier bars certain of the claims on statute of limitations grounds. Defendants cannot have it both ways.  Moreover, courts have held government investigations, and even publicly-announced settlements are insufficient to create "notice" for limitations purposes.  Yet Defendants' "notice" argument rests entirely on things that happened *before* the government investigations here even occurred.  None is sufficient to give rise to "notice," and, even if they could, "notice" is a question of fact that cannot properly be resolved on the pleadings.  *See infra*, Part III.F.

Accordingly, Defendants' joint motion to dismiss (and the related joinders) should be denied.

## II
## APPLICABLE LEGAL STANDARDS

Rule 8(a)(2) requires that a complaint contain " … a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts need not be pleaded; all that the Rule requires is to "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 127 S.Ct. at 1965; *see also Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).

In *Twombly*, the Supreme Court was careful to point out that its opinion did not change the Rule 8 pleading standards:   "We do not require heightened fact pleading of specifics …."  *Twombly*, 127 S.Ct., at 1965.  To underscore this point, in *Erickson,* the Supreme Court, citing *Twombly*, held: "Specific facts are not necessary, the statement [of a claim] need only give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Erickson*, 127 S.Ct. at 2200 (internal quotations omitted); *see also Skaff v. Meredien North America Beverly Hills, LLC*, 506 F.3d 832, 842 (9th Cir. 2007) ("[T]he Supreme Court has repeatedly instructed us not to impose such heightened standards in the absence of an explicit requirement in a statute or federal rule.").  Thus, to satisfy *Twombly,* a plaintiff need allege only "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 127 S.Ct. at 1965.

"Plausible" does not mean "probable"; it means "seemingly true – but which may or may not be so."  WEBSTER'S NEW WORLD DICTIONARY (2nd College Ed. 1978).  "Of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 127 S.Ct., at 1965.  Thus, a complaint

3

1   need plead only "enough factual matter (taken as true) to suggest that an agreement was made,"

2   which "simply calls for enough facts to raise a reasonable expectation that discovery will reveal

3   evidence of illegal agreement." *Id.* As the Seventh Circuit recently held, *Twombly* recognizes "two

4   easy-to-clear hurdles" under Rule 8: (i) plaintiffs must provide fair notice to defendants of their

5   claims; and (ii) plausibly suggest that they have a right to relief, which rises above a "speculative

6   level." *EEOC v. Concentra Health Services*, 496 F.3d 773, 776 (7th Cir. 2007); *see also Twombly*, at

7   1964-65, 1973 n. 14.[4] As the Ninth Circuit recently stated in a post-*Twombly* opinion:

> Federal Rule of Civil Procedure 8(a)(1)-(2) requires only that a complaint contain "a
> short and plain statement of the grounds upon which the court's jurisdiction depends"
> and "a short and plain statement of the claim showing that the pleader is entitled to
> relief." When enacted, Rule 8 eliminated the archaic system of fact pleading found in
> the state codes of pleading applied by the federal courts under the 1872 Conformity
> Act. Today, "[t]he only function left to be performed by the pleadings alone is that of
> notice." Rule 8's concluding admonishment that '[a]ll pleadings shall be so
> construed as to do substantial justice' confirms the liberality with which we should
> judge whether a complaint gives the defendant sufficient notice of the court's
> jurisdiction.

*Skaff*, 506 F.3d, at 839, (quoting and citing Charles Alan Wright, *et al.*, FEDERAL PRACTICE AND

PROCEDURE § 1202, at 89 (3 ed. 2004), *Twombly*, and *Erickson*).

## III
## ARGUMENT

**A.     Plaintiffs' Antitrust Claims Satisfy *Twombly*.**

**1.     Defendants' Joint *Twombly* Motion Should Be Denied.**

The *LCD* Complaint is replete with specific and detailed facts showing that the price-fixing

conspiracy alleged is "plausible"; it rises far above the "labels and conclusions, and a formulaic

recitation of the elements of a cause of action" criticized in *Twombly*, where the plaintiffs'

allegations were limited *solely* to an "allegation of parallel conduct and a bare assertion of a

conspiracy." *Id.* at 1966. In fact, the *Twombly* plaintiffs did not make "any independent allegation

of actual agreement among the [defendants]." *Id.*, at 1970. The only "facts" supporting the *Twombly*

---

[4] *See also Weber v. Department of Veterans Affairs*, 512 F.3d 1178, 1181 (9th Cir. 2008) ("To avoid
a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must
plead 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Twombly*); *Kelly
v. Provident Life & Acc. Ins.,* 2007 WL 2389870, at *1 (9th Cir. Aug. 20, 2007) (unpublished
decision) ([D]ismissal of a claim is appropriate only where the complaint lacks a cognizable theory,
and plaintiff is not required to plead specific facts in detail, just sufficiently to identify the grounds
for alleging that the legal theory applies.") (citing *Twombly*).

allegations was the "belief" that a conspiracy existed, based on a lack of competition, the absence of which was consistent with the Bell Telephone defendants' history and self-interest. *Id.*

Here, in contrast, the Complaint alleges an actual anticompetitive agreement among Defendants, including:

- cross-licensing and other cooperative agreements among *competitors*, the effects of which are to "lessen competition and/or tend to create a monopoly, and were used as part and parcel of the [price-fixing] conspiracy and in furtherance of it" (Complaint, ¶¶ 121-123);
- while production costs were decreasing for each of the Defendants, their LCD prices were increasing (*Id*, ¶¶ 147-154);
- numerous public statements by Defendants' top executives inviting collusion to increase prices of LCDs (*id.,* ¶¶ 155-157), after which LCD prices increased (*id.,* ¶¶ 158-160);
- statements by officers and executives of certain Defendants that a price-fixing agreement had been reached (*id.,* ¶¶ 161-170);
- Defendants' attendance at tradeshows at which LCD pricing, supply-and-demand, and other topics were discussed (*id.,* ¶¶ 171-174);
- a criminal grand jury investigation into Defendants' price-fixing conduct including a complete stay of all merits discovery supported by sealed DOJ affidavits (*id.,* ¶¶ 175-180); and
- at least one "amnesty applicant" is cooperating with the DOJ's investigation, and *admitting to participating in the price-fixing conspiracy.* (*id.* ¶ 180)

*None* of these types of specific price-fixing allegations was present in *Twombly.* Rather, the allegations here are more analogous to those in the post-*Twombly* decision *Hyland v. Homeservices of America,* 2007 WL 2407233 (W.D. Ky. Aug. 17, 2007), where the plaintiffs alleged that the defendants conspired to fix the prices of brokerage fees, and which included:

> references to the enforcement actions brought by the Department of Justice; alleged admissions of price-fixing by real estate brokers; an exchange of price-information and catalogues between the parties; price increases while the Defendants' costs and non-real estate broker fees declined; allegations of improper franchising; and references to Kentucky regulations that the Defendants helped to implement through the Kentucky Real Estate Commission (the anti-rebate rule).

2007 WL 2407233, at *3. The court held the plaintiffs alleged "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* (quoting *Twombly*).

The Plaintiffs' allegations here also go well beyond those held to satisfy *Twombly* in *In re OSB Antitrust Litigation,* 2007 WL 2253419, at *3-4 (E.D. Pa. Aug. 3, 2007) ("*OSB*"), where

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

the plaintiffs alleged that the defendants – nine major manufacturers of oriented strand board

("OSB") – "tacitly agreed to raise OSB prices and so revitalize the stagnating OSB market":

> Defendants took the following concerted actions to reduce the supply of OSB (and so drive up the price): (1) kept OSB from the market through mill shutdowns; (2) delayed or canceled the construction of new OSB mills; (3) bought OSB from competitors instead of manufacturing it themselves (which they could have done at a lower cost); and (4) maintained low operating rates at mills.

These allegations were sufficient because the plaintiffs "set out in some detail an alleged

nationwide scheme," and *Twombly* "does not . . . require Plaintiffs to prove their allegations

before taking discovery." *Id.* at *5. Similarly here, Plaintiffs allege an agreement to raise LCD

panel prices, facilitated by keeping LCD panels from the market through Defendants'

underutilization of manufacturing plants, "signaling" public statements, meetings during industry

events, and agreements to purchase LCD panels from one another. Complaint ¶¶ 137 – 174. As

in *OSB*, such allegations are "certainly 'enough to raise a right to relief above the speculative

level.'" 2007 WL 2253419, at *5 (quoting *Twombly*).

Most recent of the post-*Twombly* antitrust decisions from this District is the *SRAM* opinion

by Judge Wilken denying defendants' 12(b)(6) motion and holding that plaintiffs pleaded "sufficient

facts plausibly to suggest a § 1 price-fixing conspiracy," where the complaint alleged "that

Defendants had an ongoing agreement to exchange price information and intended that this

exchange would lead to price stabilization or increases," and that the SRAM market was one in

which such information exchanges would lead to price stabilization or increases." *In re Static*

*Access Memory Antitrust Litig.* ("*SRAM*"), 2008 WL 426522, at *6 (N.D. Cal. Feb. 14, 2008).

Ignoring *Hyland, OSB* and *SRAM,* Defendants rely on decisions that are distinguishable.

*In re Elevator Antitrust Litigation*, 502 F.3d 47 (2d Cir. 2007) involved conclusory allegations of

"basically every type of conspiratorial activity that one could imagine," and was "nothing more

than a list of theoretical possibilities, which one could postulate without knowing any facts

whatsoever." *Id.* at 50-51. *In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953 (N.D.

Cal. 2007) involved allegations of conspiracy based solely on all defendants raising their rates at

the same time, immediately after a government agency issued a regulation allowing them to do so.

528 F. Supp. 2d at 965. *In re Travel Agent Comm'n Antitrust Litig.*, 2007 WL 3171675 (N.D.

Ohio Oct. 29, 2007) involved conspiracy allegations based on one defendant changing its rates

6

1    "and others follow[ing]." *Id.* at *7-10. The first *GPU* Complaint contained allegations of a non-

2    traditional, complex conspiracy to "slow the pace at which [the defendants] released GPU

3    products" over a four-year period, which Judge Alsup held insufficient. *GPU*, 527 F. Supp. 2d at

4    1021, 1024-25. Judge Alsup subsequently ruled, however, that the amended *GPU* complaint

5    satisfied *Twombly*. *See In re Graphics Processing Units Antitrust Litig.*, 2007 WL 3342602 (N.D.

6    Cal. Nov. 7, 2007).

7          Another distinguishable case is *Kendall v. Visa U.S.A., Inc.*, ___ F.3d ___, 2008 WL 613924

8    (9th Cir. March 7, 2008), decided after the *LCD* Defendants' motions to dismiss were filed. After

9    plaintiffs there repeatedly failed to file an adequate complaint after leave to amend and discovery

10   was granted so that the plaintiffs could plead conspiratorial facts, the District Court granted the

11   defendants' 12(b)(6) motion without leave to amend. *See Kendall v. Visa U.S.A., Inc.*, 2005 WL

12   2216941, at *2 n.1 (N.D. Cal. July 25, 2005) (noting plaintiff's complaint "represents the fifth

13   attempt to allege sufficient facts to support claims against the Defendant Banks"). The Ninth Circuit

14   affirmed, holding that the *Kendall* plaintiffs made only a "bare allegation of conspiracy,"

15   specifically: that the banks (i) "participate[d] in the management of and ha[d] a propriety interest in'

16   the [MasterCard and VISA] consortiums" and (ii) each "agreed" to fees fixed by the consortiums by

17   "actively participat[ing] in an individual capacity in the alleged scheme." *Kendall*, ___ F.3d. ___,

18   2008 WL 613924, at *2-6 (also noting District Court had "allowed appellants to conduct discovery

19   so they would have the facts they needed to plead an antitrust violation in their amended complaint,"

20   that the Plaintiffs "do not contend on appeal they needed further discovery to plead their case.").

21   *Kendall* thus involved a pleading with mere "conclusory statements," all of which could have been

22   made without any knowledge of facts specific to the case at issue. *See id.*

23         The overriding question is whether a complaint alleges enough to make the claims

24   "plausible" and not "speculative." *See Hyland*, 2007 WL 2407233, at *3 ("*Twombly* does not

25   require a 'heightened' pleading standard, but instead looks at *what* information is provided by a

26   plaintiff, not the *amount*."). Plaintiffs here allege that the prices of LCD panels were fixed at

27   supra-competitive levels during the class period, and they provide Defendants with detailed

28   allegations of the facts to support such allegations. That Plaintiffs have not referred to "any

---

7

1   specific product" or "prices in any specific product market," does not require dismissal.  As the

2   *Hypodermic* Court held, *Twombly* does not require such particularized allegations, "particularly

3   given the fact that Plaintiffs have not yet had the benefit of discovery."  *Id.*

4          In addition, plaintiffs' allegations concerning the ongoing DOJ and grand jury investigation

5   also make the conspiracy claims "plausible."  *See* Hyland, 2007 WL 2407233, at *3.[5]

6   Defendants' suggestion that they should carry "no weight" should be rejected.  In order for the

7   DOJ to institute a grand jury investigation, the Antitrust Division must believe that a crime has

8   been committed and prepare a detailed memo to that effect.  *See* Pl.'s Request For Judicial Notice

9   ("RJN") Ex. 31 (*Antitrust Grand Jury Practice Manual*, Vol. 1, Ch. I.B.1 (1991)).  Then, the

10  request for a grand jury must be approved by the Assistant Attorney General for the Antitrust

11  Division based on the same standard of a-crime-having-been-committed.  *Id*.  That the DOJ's

12  investigation is a criminal proceeding is relevant to the "plausibility" of the price-fixing allegation

13  in the Complaint, because the current DOJ policy is to proceed by criminal investigation and

14  prosecution in cases involving horizontal, *per se* unlawful agreements such as, *inter alia,* price

15  fixing, bid rigging and horizontal customer and territorial allocations.  *See* RJN Ex. 32 (*Antitrust*

16  *Division Manual*, Ch. III.C.5. (3d ed. 1998, rev.)).[6]

17  _____

18  [5] Other courts have also recognized that a DOJ investigation can be a factor to be considered.  *See In re Bath & Kitchen Fixtures Antitrust Litig.*, 2006 WL 2038605, at *7 (E.D. Pa. July 19, 2006)

19  (discussing alleged DOJ investigation, but noting that the only subpoena at issue involved a different product than the one the plaintiffs alleged was price-fixed); *In re Elevator Antitrust*

20  *Litigation*, 502 F.3d at 51-52 (discussing alleged EU investigation, but noting the plaintiffs had not alleged any "linkage between such foreign conduct and conduct here."); *In re Tableware*

21  *Antitrust Litig.*, 363 F. Supp. 2d 1203, 1205 (N.D. Cal. 2005) (recognizing that "[a] plaintiff may surely rely on governmental investigations," but "must also . . . undertake his own reasonable

22  inquiry and frame his complaint with allegations of his own design.").

    [6] In addition, the Complaint also alleges investigations by the JFTC, the KFTC, and the EU into

23  anticompetitive activity among Defendants.  Complaint ¶175.  Similar to DOJ grand jury practice, each of these governmental authorities must have a factual basis for exercising its investigatory

24  powers.  For example, the JFTC must have "a fact involving [a] violation" before it may investigate.  RJN Ex. 34 (Japan's Act on Prohibition of Private Monopolization and Maintenance

25  of Fair Trade (translated), Ch. 8, II, Art. 45, (1)-(3)).  Similarly, the KFTC must "deem[] that a suspicion of violating [the Fair Trade Act] exists," and the EU Commission needs "circumstances

26  [that] suggest that competition may be restricted or distorted within the common market" in order to conduct an inquiry.  RJN Ex. 35 (Korea's Monopoly Regulation and Fair Trade Act

27  (translated), Ch. 10, Art. 48, (1)) at 62; Ex. 36 (EU Council Reg. (EC) No 1/2003, Ch. V, Art. 17, 1.) at 13.  These investigations provide even further grounds to make Plaintiffs' allegations of

28  an unlawful conspiracy "plausible."

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

Finally, the Complaint alleges that at least one Defendant has applied to the DOJ's Corporate Leniency Policy, which means that at least one of the Defendants has confessed to the existence, scope and extent of the conspiracy. *See* RJN, Ex. 33 and Complaint ¶ 180. This policy applies to "corporations reporting their illegal antitrust activity," and requires applicants "report the wrongdoing with candor and completeness." RJN Ex 33, (US DOJ "Corporate Leniency Policy" (1993)) at 2, 3. Allegations that one or more of the participants have confessed to the conspiracy go far beyond establishing that the conspiracy is "plausible." Because an amnesty applicant must admit the existence of the conspiracy and its participation in the conspiracy, allegations that there is an amnesty applicant constitute *direct* evidence of the violation, equivalent to a confession or a video recording. Where there is direct evidence of conspiracy, *Twombly* does not even apply, because there can be no concern that the plaintiff is relying on ambiguous circumstantial evidence, such as parallel conduct, to prove agreement. Based on the amnesty applicant, alone the Court must deny Defendants' motion.

Taken together, the conspiracy allegations here are more than sufficient to demonstrate that Plaintiffs have "a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly,* 127 S.Ct. at 1965. Accordingly, Defendants' joint motion to dismiss the Complaint on *Twombly* grounds should be denied.

### 2. Defendants' Separate *Twombly* Motions Should Be Denied.

"Antitrust conspiracy allegations need not be detailed defendant-by-defendant." *OSB,* 2007 WL 2253419, at 5 (and cases cited therein). Nonetheless, several Defendants[7] have filed separate motions, each on the ground that the Complaint fails to allege "specific facts" detailing how each participated in the conspiracy. These motions should fail because pleading particular acts by each defendant in a conspiracy is not required under Rule 8.

This principle was most recently affirmed in the *SRAM* litigation, where individual defendants filed separate motions to dismiss the plaintiffs' complaint, arguing that because the *SRAM* plaintiffs had failed to plead specific acts against each of them, they should be dismissed.

---

[7] Namely, Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Electronics Devices (USA), Ltd., IPS Alpha Technology, Ltd., NEC Electronics America, Inc., NEC LCD Technologies, Ltd., Toshiba Corp.,

1   The Court rejected this argument because it "rel[ies] upon the standard for a motion for summary

2   judgment." *SRAM*, 2008 WL 426522, at *6. "Although Plaintiffs will need to provide evidence

3   of each Defendant's participation in any conspiracy, they now only need to make allegations that

4   plausibly suggest that each Defendant participated in the alleged conspiracy." *Id.* Thus, the

5   *SRAM* Court refused to conduct an individualized inquiry for each defendant, and held that

6   plaintiffs need plead only "that Defendants had an ongoing agreement to exchange price

7   information and intended that this exchange would lead to price stabilization and increases," and

8   that "the [relevant] market was one in which such information exchanges would lead to price

9   stabilization and increases." *Id.*

10          Plaintiffs here have pleaded precisely that. The Complaint details Defendants' various

11   information exchanges with respect to both price and supply that had the express purpose of

12   stabilizing and raising prices, agreements resulting from express invitations to collude on price

13   and supply, and directly resulting price stabilization and increases of LCD panels and products.

14   *See, e.g.,* Complaint ¶ 155-71. Therefore, Defendants' separate motions to dismiss should be

15   denied.

16          **B.      The Complaint Cannot Be Dismissed On *AGC* Grounds.**

17          To the extent any of the state-law claims so require, the Complaint alleges facts satisfying

18   each of the *AGC* factors.[8] Defendants' arguments that this Court should dismiss Plaintiffs' claims

19   under the laws of sixteen states (collectively, "Repealer States")[9] are based on proposed bright-

20   line rules for antitrust standing that have been rejected repeatedly by state and federal courts, and

21

22

23   _____

24   Toshiba Matsushita Display Technology Co., Ltd, Toshiba America Electronic Components, Inc.,
     and Toshiba America Information Systems, Inc.

25   [8] These are: (1) the specific intent of the alleged conspirators; (2) the nature of the plaintiff's
     claimed injury; (3) the directness of the injury; (4) the character of the damages, including the risk

26   of duplicative recovery, the complexity of apportionment, and their speculative character; and (5)
     the existence of other, more appropriate plaintiffs.

27   [9] Defendants limit their motion to Plaintiffs' claims under the antitrust statutes of Arizona,
     California, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada, New Mexico, North

28   Carolina, North Dakota, South Dakota, West Virginia, and Wisconsin, and the consumer protection
     laws of Nebraska, New York, and North Carolina.

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

should be rejected here, as well.  In a transparent effort to avoid state court rulings that have soundly rejected their proposed tests for "antitrust standing," however, Defendants do not seek dismissal of Plaintiffs' claims under the antitrust laws of jurisdictions such as the District of Columbia, Minnesota, or Tennessee.  Defendants offer no principled reason why these persuasive decisions should not apply with equal force in the Repealer States, where the state's highest court has not considered and ruled on the *AGC* issue.  To the contrary, in light of the thorough consideration that states such as Minnesota have given to the question of whether to apply *AGC*, this Court should presume that in the absence of contrary authority from their highest courts, each of the Repealer States would follow Minnesota in rejecting *AGC* as applicable to indirect-purchaser standing.[10]

### 1.    Plaintiffs Have Alleged "Antitrust Injury" Under State Law.

"Antitrust injury" is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 352 F.3d 367, 371 (9th Cir. 2003) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 477 (1977)).  "In applying the antitrust injury requirement, the Supreme Court has inquired whether the injury alleged by the plaintiff 'resembles any of the potential dangers' which led the Court to label the defendants' alleged conduct violative of the antitrust laws in the first instance." *Pace Electronics, Inc. v. Cannon Computer Systems, Inc.*, 213 F.3d 118, 120 (3d Cir. 2000) (quoting *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)).  Here, Plaintiffs have alleged a *per se* antitrust violation (horizontal price-fixing) which caused them to pay higher prices for Defendants' products.  "It is difficult to imagine a more

---

[10] *See, e.g.*, *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980) (looking to decisions from other states construing a similar provision in workmen's compensation statute, holding "[i]n the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case. In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions.") (internal citations omitted); *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 663 (1st Cir. 1972) (where the state's highest court has not delineated the full reach of the state's long-arm statute, looking to "opinions of courts in other states interpreting similar statutes"); *Perez-Trujillo v. Volvo Car Corp.*, 137 F.3d 50, 55 (1st Cir. 1998) (holding federal courts sitting in diversity look to "analogous state court decisions, persuasive adjudications by courts of [the] states, learned treatises, and public policy considerations identified in state decisional law") (internal quotations omitted).

1   formidable demonstration of antitrust injury."  *In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp.

2   2d 355, 364 (D.N.J. 2001).  It is certainly sufficient to state a claim under the Repealer States'

3   antitrust laws.

4        Although Defendants contend that Plaintiffs have failed to state an "antitrust injury" because

5   they do not allege that they are "participants" in the "LCD-panel market," the Repealer States do not

6   impose such a test for indirect-purchaser claims.  Moreover, federal courts do not impose such a

7   requirement on indirect-purchasers seeking to enjoin a Sherman Act violation.  In any event, the

8   issue turns on factual questions that cannot be decided on a pleading motion.

9         a.      **Plaintiffs Allege That Defendants *Are* Participants In The "LCD**

10                **Products Market," And This Market *Was* Harmed By Their Illegal Conduct, So Their Argument Fails Out Of The Gate.**

11       As an initial matter, Defendants *are* "participants" in the same "market" as Plaintiffs because

12  they not only make LCD panels, but they also manufacture and sell televisions, computer monitors,

13  and laptops made with LCD panels.  Complaint ¶ 131.  Moreover, Plaintiffs specifically allege that

14  the "markets" for LCD panels used for flat-screen televisions, computer monitors, and laptops and

15  these products themselves are inseparable, function essentially as one, and would not exist without

16  the other, and that LCD panels constituted up to 70% of the cost of the end-products in question.

17  Complaint ¶¶ 129-136.  Plaintiffs thus allege facts demonstrating that the price increases for LCD

18  panels used for flat-screen televisions, computer monitors, and laptops had an immediate,

19  foreseeable, and necessary effect on the price of these products.  Complaint ¶¶ 182-198.

20  Defendants' contention that they do not "participate" in the market for LCD televisions and monitors

21  or laptops, or that the market for LCD televisions, monitors, and laptops was not "restrained" by

22  their illegal conduct, is directly contradicted by the detailed allegations in the Complaint.  Their

23  *AGC* argument fails for that reason alone.[11]

24

25  ──────────────────

26  [11] It is also well-established that when evaluating antitrust standing based on the pleadings, "the

27  court cannot determine, at this stage of the litigation, whether or not [plaintiff's] allegation regarding the relevant market is accurate.  Rather, it must accept [plaintiff's] definition as

28  alleged."  *Agron, Inc. v. Lin*, 2004 WL 555377 at *8 (C.D. Cal. March 16, 2004) (granting plaintiff's motion for leave to amend the complaint).  *See also High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9ᵗʰ Cir. 1993) ("defining the relevant market is a factual

b.      **Defendants' Proposed "Antitrust Injury" Is Contrary To The Intent Of The Repealer States' Legislatures.**

Defendants' *AGC* argument fails for other important reasons as well.  It rests *entirely* on the false assumption that the *AGC* requirements – created by federal courts construing the scope of the Clayton Act's treble-damage provision – should be applied in the same manner to the Repealer States' antitrust and/or consumer protection damage statutes.  As Defendants' own authorities recognize, this assumption is simply incorrect.[12]  "Antitrust injury" is a doctrine of *statutory construction. See Glen Holly Entertainment, Inc.*, 352 F.3d at 371. "This inquiry forces the Court to connect the alleged injury to the purposes of the antitrust laws." *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F. Supp. 2d 262, 272 (D. Conn. 2003) (internal quotations omitted). "Antitrust injury" under *state* law thus depends on the intent of the *state* legislature.[13]

The intent of the Repealer States' legislatures was to protect the kind of indirect-purchasers who are plaintiffs in this action.  In *Union Carbide Corporation v. Superior Court,* 36 Cal. 3d 15, 20 (1984), the California Supreme Court so stated:

> "California's 1978 amendment to section 16750 in effect incorporates into the Cartwright Act the view of the dissenting opinion in *Illinois Brick* (431 U.S. at 748) that indirect purchasers are persons 'injured' by illegal overcharges passed on to them in the chain of distribution."

*See also Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 991 (9th Cir. 2000) (noting the legislature amended the act "following the Supreme Court's decision in [*Illinois Brick*],

_____

inquiry for the jury."); *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 130 (C.D. Cal. 2007) (refusing to resolve dispute over market definition on motion for class certification).

[12] *See Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 991 (9th Cir. 2000) (cited by Defendants, holding "'the more restrictive definition of 'antitrust injury' under federal law does not apply" to the Cartwright Act.'") (quoting *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1234 (1993) (holding scope of "antitrust injury" under California Cartwright Act "broader" than federal law); *State ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal. 3d 1147, 1164 (1988) (judicial interpretation of the Sherman Act "is not directly probative of the Cartwright Act's drafters' intent"); *Cianci v. Superior Court*, 40 Cal. 3d 903, 920 (1985) ("the Cartwright Act is broader in range and deeper in reach than the Sherman Act . . . ."); *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 183 n. 9 (1999) ([f]ederal precedents must be used with caution because the[antitrust] acts, although similar, are not coextensive.").

[13] *See D.R. Ward Const.*, 470 F. Supp. 2d at 495-96 (intent of state law controls standing issue); *Holder v. Archer Daniels Midland Co.*, 1998 WL 1469620, at *2 (D.C. Super Nov. 4, 1998) ("core of the standing issue" controlled by intent behind state law); *See also* S. REP. NO. 109-14, at 61 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 57 ("[C]lass action decisions rendered in federal court should be the same as if they were decided in state court-under the Erie doctrine, federal courts must apply state substantive law in diversity cases.").

which limited the ability of indirect purchasers to recover damages under the Sherman and Clayton Acts."); *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490, 497 (Minn. 1997) (holding "the legislative history of this amendment [a 1984 amendment allowing indirect purchaser suits in Minnesota antitrust statute] indicated that it was a direct response to the *Illinois Brick* decision"); *Holder v. Archer Daniels Midland Co.*, 1998 WL 1469620, at *3 (D.C. Super Nov. 4, 1998) ("Justice Brennan's dissent provides a useful backdrop for analyzing the Council's intent in passing [D.C. Code] Section 4509(a)"); *Goda v. Abbott Labs., Inc.*, 1997 WL 156541 at *2 (D.C. Super. Feb. 3, 1997) (Justice Brennan's dissent influenced legislative enactment); *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 443 n.2, 450 (Iowa 2002) (discussing Justice Brennan's dissent, holding that Iowa's law allows indirect purchaser suits); *Hyde v. Abbott Labs.*, 473 S.E.2d 680 (N.C. Ct. App. 1996) (same). The *Illinois Brick* dissent addressed indirect-purchasers who purchased the price-fixed products, concrete bricks, after the product passed through "two separate levels of distribution" in which masonry contractors incorporated them into masonry structures, and general contractors incorporated them into buildings and sold them (as part of the buildings) to the indirect-purchaser plaintiffs. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 726 (1977). Here, there is no principled difference between the *Illinois Brick* plaintiffs that the state legislatures sought to protect and the Plaintiffs: cement bricks were ½ of 1% of the cost of indirect-purchaser plaintiffs' buildings (*Illinois Brick*, 431 U.S. at 727 n.6); LCD panels are much more substantial and dominant costs of the products at issue, *e.g.*, 60% to 70 % of a flat-screen television. Complaint ¶ 182. Defendants' proposed bright-line test would lead to the absurd result that *Illinois Brick* repealer statutes would not provide a damage remedy to the plaintiffs in *Illinois Brick*. This cannot be the law.

In fact, nearly every indirect-purchaser class certified in the last thirty years has involved claims by end-buyers who purchased "component" products through a manufacturing or distribution chain, and who did not participate directly at the same level in which the defendants' overcharges were first imposed.[14] This comports with the commercial reality that "[t]he typical product passes

---

[14] In addition to the numerous published opinions in such cases cited throughout this motion, opinions in additional such cases are attached as exhibits 1 through 23 to the RJN.

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

through a 'chain of distribution' – a series of sales transactions – before reaching its ultimate consumer." Michael V. Gisser, *Indirect Purchaser Suits Under State Antitrust Laws: A Detour Around The Illinois Brick Wall*, 34 Stan. L. Rev. 203, 204 (1981). The Repealer States have consistently allowed such actions.[15] Artificial restrictions should not now be imposed by federal courts where none existed before. *See, e.g., Hebert v. Fliegel*, 813 F.2d 999, 1000-02 (9th Cir. 1987) (adopting the "common sense construction placed on [the statute] by the lower courts" in light of prior courts' interpretations for over ten years, and finding it "particularly significant" that Oregon legislature did not choose to amend the statute to signal disagreement with the courts' holdings); *Bunker's Glass Co. v. Pilkington, PLC,* 75 P.3d 99, 113 (Ariz. 2003); *GPU*, 527 F. Supp. 2d, at 1025-1026.

The Repealer States' adoption of an anti-*Illinois Brick* policy reflects their decision that consumers at the end of such manufacturing or distribution chains should be allowed to seek damages, since they often "suffer[ ] the greatest, if not the most direct, injury of the price-fixing conspiracy." *D.R. Ward,* 470 F. Supp. 2d at 503. A requirement that "indirect" purchasers must be "direct" participants in a defendant's market would run counter to both the plain language and the intent of the Repealer States' substantive laws.

Thus, for example, courts have repeatedly recognized that an indirect-purchaser of goods or services is a "participant" in the relevant market and thus suffers a cognizable antitrust injury. *See, e.g., In re Napster, Inc. Copyright Litigation,* 354 F. Supp. 2d 1113, 1125 (N.D. Cal. 2005) ("[U]nder California law, an indirect purchaser of goods or services is deemed to participate as a customer in the relevant market and thus may suffer a cognizable antitrust injury."); *Metro-*

---

[15] *See, e.g., California v. ARC America Corp.,* 490 U.S. 93, 97-98 (1989) (allowing Arizona Attorney General to sue under Arizona law on behalf of Arizona as an indirect purchaser); "Minute Entry" (November 14, 2000) in *Friedman v. Microsoft Corp.*, CV2000-000722 (Maricopa Cty. Super. Ct.) (involving Microsoft software) (RJN Ex. 11); 2001 Ariz. Sess. Law Serv. Ch. 50 § 1 (West) (amending A.R.S. § 40-286 regarding exemption for public service corporations). *See also Holder,* 1998 WL 1469620, at *2-3 (holding consumers which purchased products with high fructose corn syrup stated a claim under D.C. Antitrust Act); *Boyle v. Giral,* 820 A.2d 561, 564-56 (D.C. 2003) (in antitrust action by indirect purchasers of products containing vitamins noting that the District of Columbia had intervened as *parens patriae* for District consumer residents) *with* 2004 D.C. Sess. Law Serv. Ch. 15-205 (West) (amending DC Code § 28-4516). *See also* Gordo v. Microsoft Corp., 2001 WL 3664322, at *10-11 (Minn. Dist. Ct. March 30, 2001) (involving Microsoft software); 2004 Minn. Sess. Law Serv. Ch. 268 (West) (amending M.S.A. § 62E.10).

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1  *Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 269 F. Supp. 2d 1213, 1224 (C.D. Cal. 2003)

2  ("Under California law, an indirect purchaser participates (indirectly) as a customer in the relevant

3  market, and thus may suffer a cognizable antitrust injury."), *aff'd,* 380 F.3d 1154 (9th Cir. 2004),

4  *cert. granted,* 543 U.S. 1032 (2004), *rev'd on other grounds,* 545 U.S.913 (2005); *Cellular Plus,*

5  *Inc.,* 14 Cal. App. 4th, at 1234 (holding consumers "clearly" alleged antitrust injury because they

6  were "injured indirectly by the alleged wholesale price fixing"); *American Ad Management, Inc. v.*

7  *General Television Company of California*, 190 F.3d 1051, 1057 (9th Cir. 1999) (listing "indirect

8  purchasers" as an example of those that can suffer antitrust injury and noting "[i]t is well established

9  that the antitrust laws are . . . intended to preserve competition for the benefit of consumers").

**c.    Numerous Courts Have Rejected Defendants' Proposed "Market Participant" Requirement For State-Law Antitrust Claims.**

10

11

12  Numerous state and federal courts have rejected Defendants' proposed test for antitrust

13  standing.  Most notably, in *Lorix,* the Minnesota Supreme Court held that an indirect purchaser of

14  rubber chemicals used in the process of manufacturing tires, but not a component part of the tires

15  themselves, sufficiently alleged antitrust standing, even though the purchaser (like the Plaintiffs

16  here) made purchases at a distribution level different from the one in which defendants were selling

17  the price-fixed product.  The Court rejected *AGC* as applicable to standing under Minnesota's

18  repealer statute as well as any "rigid market-participant requirement," and held that *AGC* does not

19  "foreclose antitrust claims in Minnesota for indirect purchasers of goods manufactured with price-

20  fixed components."  *Lorix,* 736 N.W. 2d at 629-630.

21  The Minnesota Supreme Court found:  "The injury alleged – overcharge – is exactly the sort

22  that would be expected to flow from the violation …" and that "an end user, Lorix is the party most

23  likely to be injured by an anticompetitive overcharge because she is the only party in the chain of

24  purchase who cannot pass on part or all of that overcharge." *Id.* At 631.  Thus, the Minnesota

25  Supreme Court rejected the market-participant requirement for standing because "none of the *AGC*

26  factors was intended to be determinative," which is exactly what a market-participant rule would do,

27  making Minnesota standing more restrictive than federal standing, and frustrating the legislative

28  intent behind the repealer statute.  *Id.* at 627.  That Court therefore concluded:  "we believe

application of the *AGC* factors in Minnesota would contravene the plain language of the stature and

16

1    in some cases thwart the intent of the legislature by barring indirect purchaser suits for the reasons

2    articulated in *Illinois Brick.*" *Id* at 629. The reasoning of the Minnesota Supreme Court is thorough,

3    thoughtful, and compelling. As such, the *Lorix* decision ought to stand as the presumed template for

4    what the highest courts of other repealer states will rule.

5       In *GPU,* which also soundly rejected Defendants' proposed "market-participant" test, Judge

6    Alsup held that the claims of indirect purchasers of graphics computer chips could go forward, even

7    though the purchasers (like the plaintiffs here) bought the price-fixed product (GPU chips) as a

8    component of another product (*i.e.*, video games, for example), at a distribution level different from

9    the one in which defendants sold the price-fixed product. Judge Alsup concluded:

> Standing under each state's antitrust statute is a matter of that state's law. It would be
> wrong for a district judge, in *ipse dixit* style, to bypass all state legislatures and all
> state appellate courts and to pronounce a blanket and nationwide revision of all state
> antitrust laws. The rule urged by the defense may (or may not) be sound policy but
> that is a matter for the state policy makers to decide, not for a federal judge to impose
> by fiat.

14   *GPU,* 527 F. Supp. 2d, at 1026.

15       The District Court in *D.R. Ward* likewise rejected Defendants' proposed test for antitrust

16    injury, allowing claims of indirect purchasers of plastic additives to go forward. *See* 470 F. Supp. 2d

17    at 491. That Court held that the *AGC* factors did not apply, and even if they did, a bright-line

18    "market-participant" requirement was inappropriate. The court concluded that "if plaintiffs can

19    show that the unlawful increase in the price of plastics additives affected the cost of the products

20    they purchased, regardless of whether plaintiffs participated in the immediate market for plastics

21    additives or the secondary market for products with plastics additives, the [Repealer States' antitrust

22    laws] would appear to contemplate recovery." *Id.,* at 502-503.

23       Likewise, in *Intel,* the District court held that the claims of indirect purchasers of computers

24    containing a monopoly-priced Intel computer chip could go forward because "[i]njury in the form of

25    higher prices to consumers is within the type of injury that the antitrust laws are designed to

26    prevent." 496 F. Supp. 2d at 410.

27

28

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

So too, numerous other courts have affirmed standing in similar cases without the kind of bright-line "market-participant" requirement the Defendants urge this Court to adopt. [16] The same result is mandated here.

> **d.      Defendants Offer No Persuasive Arguments Or Authorities For Applying A Market-Participant Standing Requirement To State Law Indirect-Purchaser Actions.**

Defendants (ignoring all of the cases cited above) contend that because the issue of *AGC* and the *Illinois Brick* bar on indirect purchasers are "analytically distinct" and "independent," it should make no difference that the state statutes at issue were all intended to allow indirect purchasers the right to recover damages for price-fixing conspiracies of the kind at issue here. *See* Def. Mot. at 10. The *AGC* opinion itself refutes this simplistic argument: "In *Illinois Brick* … we held that treble damages could not be recovered by indirect purchasers …. *The same concerns* should guide us in determining whether the Union is a proper plaintiff under § 4 of the Clayton Act." *Illinois Brick*, 459 U.S. at 455, (emphasis added). As the Minnesota Supreme Court succinctly stated: "We do not believe that the legislature repudiated *Illinois Brick* and invited indirect purchaser suits only for courts to dismiss those suits on the pleadings based on the very concerns that motivated *Illinois Brick*." *Lorix*, 736 N.W.2d at 629. *See also D.R. Ward*, 470 F. Supp. 2d at 499 (holding "imposing a strict standing requirement would undermine many of the goals that the TTPA sought to achieve,

---

[16] *See Freeman Inds. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 520 (Tenn. 2005) (holding indirect-purchasers of products containing price-fixed food additives had standing, because their "statutes reflect a clear intent to protect and afford a remedy to ultimate consumers" and denying standing "would leave such victims of illegal activity with no redress, a result that hardly comports with notions of fair play."); *Holder*, 1998 WL 1469620, at *3 (holding that indirect purchasers of grocery items that contained the price-fixed items high fructose corn syrup and citric acid had standing); *Moniz v. Bayer Corp.*, 484 F. Supp. 2d 228, 229 (D. Mass. 2007) (holding state legislature did not intend to create a distinction between component and non-component products: "as far as [the state law] is concerned, this is a distinction without a difference because the effect is exactly the same:  price-fixing by an up-stream manufacturer results in an unfairly inflated price for the consumer product to the plaintiff's detriment."); *Intel x86 Microprocessors Cases*, No. J.C.C.P. No. 4443 (Cal. Super. Ct. May 15, 2007) (RJN Ex. 14) (refusing to dismiss on *AGC* grounds claims brought by California consumers who purchased computers containing Intel microprocessors allegedly subject to an illegal overcharge); *Szukalski v. Crompton Corp.*, 726 N.W.2d 304 (Wis. Ct. App. 2006) (holding purchasers of tires made with price-fixed rubber chemicals alleged standing under *AGC*, finding that "our supreme court has directed us to construe the standing requirement narrowly.  While the injury alleged by [plaintiffs] was certainly indirect, we are satisfied that the injury alleged does meet the threshold standard of standing."), *abrogated on other (pro-plaintiff) grounds, Meyers v. Bayer AG*, 735 N.W.2d 448 (Wis. 2007) (finding that the Wisconsin antitrust statute is not limited to intrastate conduct only).

1  including affording a remedy to indirect purchasers, that class of persons the Tennessee Supreme

2  Court has deemed the 'real victims' of antitrust conduct").[17]

3          Defendants incorrectly claim that courts "regularly" dismiss indirect-purchaser suits for lack

4  of standing, citing as their sole authority for this proposition two North Carolina trial court decisions

5  involving rubber chemicals – now contradicted by the Minnesota Supreme Court's *Lorix* opinion[18]

6  and decisions involving credit card overcharges where the plaintiffs claimed they paid more for

7  grocery products because VISA charged the store a higher than competitive merchant fee.[19] But the

8  case Defendants rely on most is Judge Hamilton's decisions in *In re Dynamic Random Access*

9  *Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007), which was largely based

10  on these two decisions.  These few authorities are unpersuasive. The "rubber chemicals" and "credit

11  card" cases Defendants cite were decided prior to the *Lorix* decision, and their continued validity is

12  questionable.  More fundamentally, the plaintiffs in those cases were not even real "indirect

13  purchasers" of the price-fixed products.  Rather, they purchased *entirely different products* – tires

14  made with rubber chemicals that became indistinguishable from the tire or consumer goods sold by a

---

[17] Defendants also contend that because courts in the Repealer States sometimes look to federal jurisprudence for guidance, their (incorrect, in any event) interpretation of *AGC* should apply.  Def. Mot. at 11.  As numerous courts have recognized, however, the fact that a state seeks to "harmonize" its antitrust law with federal law does not translate to federal law restrictions on standing, because the goal of harmonizing state and federal antitrust law applies not to the issue of who could sue, but to what conduct would violate the law, so that 'businesses would know what is "acceptable conduct." *Lorix*, 736 N.W. at 626 (holding "[t]he desire for harmony between federal and state antitrust law relates more to prohibited conduct than to who can bring a lawsuit.); *D.R. Ward*, 470 F. Supp. 2d at 500 (same); *Bunker's Glass Co.*, 75 P.3d at 103-05 (holding goal of harmonization with federal law "appears to be uniformity in the standard of conduct required, not necessarily in procedural matters such as who may bring an action for injuries caused by violations of the standard of conduct."); *Comes v. Microsoft Corp.*, 646 N.W. 2d 440, 446 (Iowa 2002) (goal of harmonization is to "apply a uniform standard of conduct . . . To achieve this uniformity or predictability, we are not required to define who may sue in our state courts in the same way federal courts have defined who may maintain an action in federal court.").

[18] *See Crouch v. Crompton Corp.*, 2004 WL 2414027 (N.C. Super Ct., Oct. 8, 2004); *Weaver v. Cabot Co.*, 2004 WL 3406119 (N.C. Super. Mar. 26, 2004),

[19] *See Knowles v. Visa U.S.A., Inc.*, 2004 WL 2475284 (Maine Super. Oct. 20, 2004); *Stark v. Visa U.S.A., Inc.*, 2004 WL 1879003, at *2-4 (Mich. Cir. Ct., July 23, 2004); *Beckler v. Visa U.S.A., Inc.*, 2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004); *Strang v. Visa U.S.A., Inc.*, 2005 WL 1403769 (Wis. Cir. Feb. 8, 2005); *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293, 298-99 (Neb. 2006); *Ho v. Visa U.S.A., Inc.*, 793 N.Y.S.3d 708 (N.Y. App. Div.), *appeal den.* 883 N.E.2d 708 (N.Y. 2005)

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

merchant who paid supra-competitive credit card fees.[20]  *None* involved antitrust claims by indirect purchasers of horizontally price-fixed products; *none* involved a physically-discrete price-fixed product incorporated into the finished goods and resold as a key component in a downstream market; and *none* involved a product that was traceable down the chain of distribution.  This is especially true of the "credit card" cases, where the plaintiffs:

> did not purchase, directly or indirectly, any product or service provided by or manufactured with components from Visa or MasterCard.  Rather, they alleged that the overcharges forced upon merchants by Visa and MasterCard were passed on to consumers in the form of higher prices on essentially every good sold in the state of Minnesota, even those purchased with cash.  Thus, the market affected by the anticompetitive conduct was in essence the market for all goods bought and sold in Minnesota.

*Lorix,* 736 N.W.2d at 632.[21]

Moreover, in *Crouch* (cited by Defendants), the Court repeatedly indicated that claims like those made by Plaintiffs here *would* state a claim for antitrust injury.  Indeed, the *Crouch* court provided an example of a case in which antitrust injury would exist:  "Where a component, *such as a computer chip*, is price fixed, and its costs passed through directly to purchasers of the product in which it is incorporated."  *Crouch,* 2004 WL 2414027, at *23 (emphasis added).

---

[20] *See Kanne,* 723 N.W.2d at 298-99 (plaintiffs not "consumers of [debit processing services," and "do not allege that they were injured directly, or even indirectly, by purchasing debit processing services *in a chain of distribution.*"); *Crouch,* 2004 WL 2414027, at *21-22 (price-fixed product in rubber chemicals case was product "used in the manufacturing process" to create entirely different product purchased by plaintiffs); *Crouch,* 2004 WL 2414027, at *26 (plaintiff in credit card case "simply made purchases of consumer goods" and was "non-purchaser"); *Beckler,* 2004 WL 2115144 at *10 ("Plaintiff asserts he paid overcharges on every single purchase that he made for several years from merchants who accepted Visa or MasterCard cards. However, there is nothing about the debit network systems of Visa or MasterCard that contributes in any way to the production of the consumer goods for which Plaintiff contends he paid inflated prices."); *Knowles,* 2004 WL 2475284, at *6 (noting "monumental uncertainty and complexity" because overcharge allegedly passed on to every purchase of every product sold to consumers).

[21] The Iowa Supreme Court's consecutive standing decisions in *Comes* and *Southard* illustrates the distinction between an indirect-purchaser of a price-fixed component (Plaintiffs here) and a non-purchaser who is merely a consumer in the general economy (the plaintiffs in the credit card cases cited by Defendants).  In *Comes,* in 2002, the Iowa Supreme Court found that an indirect purchaser of Microsoft's operating system contained in her computer had standing under the Iowa antitrust statute.  *See Comes v. Microsoft Corp.,* 646 N.W.2d 440 (Iowa 2002).  Five years later, plaintiffs in the *Visa* case, *Southard v. Visa U.S.A., Inc.,* 734 N.W.2d 192 (Iowa 2007), claimed that they, like the *Comes* plaintiffs, should also have standing to sue.  The Iowa Supreme Court explained that these plaintiffs lacked antitrust standing because "they did not purchase, directly or indirectly, the product that is the subject of anticompetitive activity by Visa and MasterCard—debit processing services.  It is clear from the petition that the plaintiffs are nonpurchasers."  *Southard,* 734 N.W.2d at 197.

This leaves the ruling in *DRAM*. It cannot be reconciled with the Minnesota Supreme Court's recent decision in *Lorix*, or the recent decisions in *D.R. Ward, Intel*, or the Fourth Circuit's *Novell* decision.[22] It was not followed in *GPU*. The California Attorney General has called it an incorrect statement of California law.[23] Two well-known antitrust scholars – Professor Warren S. Grimes and Professor Thomas E. Kauper – have condemned its reasoning.[24] Nor does it square with the many state-court decisions denying motions to dismiss antitrust and consumer protection claims by indirect purchasers of the Microsoft Windows operating system ("OS") as part of a computer purchase,[25] or certifying statewide classes of such purchasers.[26] It should not be followed here.

> **e.** **Even Federal Law Does Not Impose A Bright-Line Requirement That Plaintiffs Be "Participants" In The Same "Market" As Defendants In Order To Suffer An "Antitrust Injury."**

Defendants' arguments also fail purely as a matter of federal law. In *Novell*, the Fourth Circuit rejected the exact rule Defendants ask this Court to adopt.[27] There, Novell, a competitor in the software application market, brought federal antitrust claims against Microsoft, a participant

---

[22] A recent decision of the highest court in one of the Repealer States directly contradicting the *DRAM* decision is obviously an important factor in evaluating it. *See, e.g., Medalie v. FSC Securities Corp.*, 87 F. Supp. 2d 1295, 1302 (D.C. Fla. 2000) ("A federal court must reevaluate prior federal decisions predicting state law in light of the more recently handed down state court decision where a state court has made a subsequent pronouncement of state law.") (citing *Owen by and Through Owen v. U.S.*, 713 F.2d 1461 (9th Cir. 1983)).

[23] "State of California's *Amicus* Brief," pp. 3-9 (July 5, 2007) in *DRAM* (RJN Ex. 24). The Court in DRAM denied the state's motion to file this amicus brief, but the brief remains part of the docket in that case and is cited to show the position taken by the California Attorney General.

[24] "RJN Ex. 25 ("Declaration of Warren S. Grimes and Thomas E. Kauper In Support of Petro Computer Plaintiff's Motion for Leave to File Proposed Second Amended Class Action Compl." filed June 29, 2007 in *DRAM*).

[25] *See, e.g., Comes*, 646 N.W.2d at 450; *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 33-39 (Neb. 2004); *Elkins v. Microsoft Corp.*, 817 A.2d 9, 16-19 (Vt. 2002).

[26] *See e.g., Microsoft I-V Cases, 2000-2* Trade Cas. (CCH) ¶73,013 (Cal. Super. Ct. Aug. 29, 2000) (RJN Ex. 4); *Kelley v. Microsoft Corp.*, No. C 07-475 MJP (W.D. Wa. Feb. 22, 2008) (RJN Ex. 26); *In re Fla. Microsoft Antitrust Litig.*, 2002 WL 31423620 (Fla. Cir. Ct. Aug. 26, 2002).

[27] Other courts have also rejected the bright-line "market participant" test advocated by Defendants. *See, e.g., In re Microsoft Corp. Antitrust Litigation*, No. 2005 WL 1398643, at *2 (D. Md. Jun 10, 2005) (rejecting argument that there is a "black-letter rule that only competitors or consumers in a relevant market have standing to sue for harm caused by anti-competitive behavior in that market," holding that "[t]he Supreme Court has not established a litmus test for antitrust standing based upon a plaintiff's status."); *Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.*, 710 F.2d 752, 764-65 (11th Cir. 1983) (holding foreseeable injury directly caused by defendant in "related market" created antitrust injury).

1  in the PC operating system market, alleging that Microsoft's monopolistic acts in the latter market

2  harmed competition in the former market.  Microsoft sought dismissal under "a bright-line rule

3  that only consumers or competitors in the relevant market have antitrust standing to bring private

4  treble-damages claims under § 4."  *Novell,* 505 F.3d at 311.  The Fourth Circuit rejected this

5  argument, holding "[t]he Supreme Court has rejected the utility of the very type of bright-line

6  approach on which Microsoft seeks to rely: 'The infinite variety of claims that may arise make it

7  virtually impossible to announce a black-letter rule that will dictate the result in every case.'"  *See*

8  *id.* at 311-12 (quoting *AGC*).  The Fourth Circuit concluded that even though Novell participated

9  in a market distinct from Microsoft's, nonetheless it had alleged an "antitrust injury" under *AGC*.

10 *See id.* at 316.

11      *Novell* is just one of many opinions in which courts have recognized that when determining

12 whether an "antitrust injury" exists – defined as "the kind of injury the antitrust laws were

13 designed to prevent"(*Brunswick*) – they are not limited to injuries only in the market where a

14 defendant sells the product.[28]  Rather, courts have repeatedly recognized injuries resulting to

15 plaintiffs in other markets, where these injuries are the foreseeable, intended consequence of the

16 defendants' illegal actions, and flow from that which makes defendants' actions unlawful.  *See,*

17 *e.g., Blue Shield of Virginia v. McCready,* 457 U.S. 465, 480 (1982) ("As a consumer of

18 psychotherapy services entitled to benefits under the Blue Shield plan, we think it's clear that

19 McCready was within that are of the economy . . . endangered by [that] breakdown of competitive

20 conditions. . . . [A]n increase in price resulting from a dampening of competitive market forces is

21 assuredly one type of injury for which § 4 potentially offers to redress . . . .").[29]

22 _____

23 [28] The "relevant market" is commonly referred to as the market "where trade is allegedly restrained."
   *Glen Holly,* 352 F.3d at 372.  Being a consumer in such a market is sufficient to state an antitrust
24 injury where the result is higher prices.  *See Glen Holly,* 352 F.3d at 372 ("Consumers in the market
   where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury.")
25 (quoting *SAS v. Puerto Rico Tel. Co.,* 48 F.3d 39, 44-45 (1st Cir. 1995) ("[t]he presumptively proper
   plaintiff is a customer who obtains services in the threatened market.")).
26
   [29] This is especially true where the harm in the other market is experienced by consumers.  *See, e.g.,*
27 *American Needle, Inc. v. New Orleans LA Saints*, 385 F. Supp. 2d 727, 731 (N.D. Ill. 2005) (holding
   the fact that the alleged restriction to competition occurred further up the distribution chain "does not
28 preclude the court from considering how the alleged [anticompetitive conduct] affects the consumers
   of the [end products] – 'the consumers that antitrust laws are supposed to protect.'") (quoting
   *Chicago Professional Sports Ltd. P'ship v. NBA*, 961 F.2d 667, 670 (7th Cir. 1992)); *New York*

22

Defendants cite several decisions that reference the "relevant market" in their discussion of "antitrust injury." Mot. at 12-14. Yet, as the Fourth Circuit in *Novell* and the Minnesota Supreme Court in *Lorix* each recently recognized, such language does not create a *per se* requirement of participation in the same "market" as defendants. *See Novell, ,* 505 F.3d at 311-12; *Lorix,* 732 N.W.2d at 630. The Ninth Circuit has also held that such "bright line" rules are inappropriate:

> The Supreme Court has never imposed a 'consumer or competitor' test but has instead held the antitrust laws are not so limited. The Supreme Court's only suggestion of such a restriction is a passing comment in *Associated General* that the plaintiff union was 'neither a consumer nor a competitor' in the relevant market. The Court did not find that fact in any way dispositive, however, and concluded the antitrust injury of unions required case-by-case consideration. *See id.* The previous year, in *Blue Shield v. McCready* the Court stated § 4 'does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers.... The Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated.'

*American Ad Mgmt., Inc.,* 190 F.3d at 1057-1058 (internal citations omitted). *See also Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) ("It is not the status as a consumer or competitor that confers antitrust standing, but the relationship between the defendants['] alleged unlawful conduct and the resulting harm to plaintiff.").[30] Thus, in *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 791 F.2d 1356, 1363 (9th Cir. 1986), the Ninth Circuit held that the LA Coliseum had standing to contest the franchise requirements of the NFL because of its "indispensable and intimate connection with professional football and football teams." *Id.* at 1365. Obviously, a stadium is not "interchangeable" with a football team, as Defendants' proposed standing test would require.

In fact, it is well established that "[m]arket definition generally is not required in *per se* cases." ABA Section of Antitrust Law, 1 *Antitrust Law Developments* at 550 (5th ed. 2007)

---

*Citizens Committee on Cable TV v. Manhattan Cable TV, Inc.* ("*New York Citizens*")*,* 651 F. Supp. 802, 812-13 (S.D.N.Y. 1986) ("The fact that plaintiff is not a participant in the programmers-operators market does not deny it standing, where an impact on prices paid by the ultimate consumer is clearly foreseeable.").

[30] *See also Ostrofe v. H.S. Crocker Co.,* 740, 746 F.2d 739 (9th Cir.1984) (rejecting "wooden" application of antitrust standing, holding "[a]lthough Ostrofe was not a competitor or consumer in the labels market, the injury he sustained was such an integral part of the scheme to eliminate

23

1  (collecting cases). *See also Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104 (9th

2  Cir. 1999) (cited by Defendants, holding "*[e]xcept when alleging a per se antitrust violation,*

3  Plaintiffs must identify the relevant geographic and product markets in which Plaintiffs and

4  Defendants compete....") (emphasis added).[31]  Defendants ask this Court to adopt a bright-line test

5  under which a plaintiff who does not need to establish a "relevant market" would nonetheless have

6  to prove "participation" in one.  This is not the law.

7          Moreover, the "relevant market" is not necessarily restricted to the market in which

8  defendants are directly "participating."  Rather, it is the market "where trade is allegedly restrained."

9  *Glen Holly*, 352 F.3d at 372.  Being a consumer in this market is sufficient to state an antitrust injury

10  where the result is higher prices.  *See Glen Holly*, 352 F.3d at 372 ("Consumers in the market where

11  trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury.")

12  (quoting *SAS v. Puerto Rico Tel. Co.*, 48 F.3d 39, 44-45 (1st Cir 1995) ("[t]he presumptively proper

13  plaintiff is a customer who obtains services in the threatened market.")); *Blue Shield of Virginia v.*

14  *McCready*, 457 U.S. 456, 480 (19820 ("As a consumer of psychotherapy services entitled to benefits

15  under the Blue Shield plan, we think it's clear that McCready was within that area of the economy

16  ... endangered by [that] breakdown of competitive conditions ....  [A]n increase in price resulting

17  from a dampening of competitive market forces is assuredly one type of injury for which § 4

18  potentially offers to redress ....)".

19          Put differently, a plaintiff can suffer an "antitrust injury" even if he or she is not a participant

20  in the same "market" as the defendants.  See *Novell*, 505 F.3d at 311; *New York Citizens*, 651 F.

21  Supp. at 812-13; *American Needle, Inc.*, 385 F. Supp. 2d at 731.  What matters is whether the harm

22  in the "market" at issue results from the defendants' antitrust violation, and flows from that which

23  makes the defendants' antitrust violation illegal.  *See, e.g., New York Citizens*, 651 F. Supp. at 812-

24  83.  Plaintiffs here have alleged this:  that as the direct and foreseeable result of Defendants'

25  horizontal price-fixing conspiracy, they were forced to pay more for LCD products than they would

26  _____

27  competition in that market as to constitute 'antitrust injury' as that concept is developed in *Blue*
   *Shield*.").

28

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

have otherwise paid.  Numerous courts have held that such an injuries to such consumers are more than sufficient to establish antitrust injury.  *See, e.g., In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d at 364; *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 30, 39 (D.D.C. 2003) (finding antitrust injury for insurance companies that ultimately paid for purchases of drugs subject of illegal overcharges); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 651 (E.D. Mich. 2000) (holding that plaintiffs' injuries "coincide precisely with the rationale for finding a violation of the antitrust laws in the first place," since "the very purpose of antitrust law is to ensure that the benefits of competition flow to purchasers of goods affected by the violation … .").

### 2.    Plaintiffs' Injury Is Sufficiently "Direct" to Satisfy *AGC.*

Plaintiffs have also included allegations that satisfy the "directness" and "non-speculative" *AGC* factors.  Unlike the present case, *AGC* involved a plaintiff who could not articulate how it had been injured.  Here, Plaintiffs have done so in detail.  The Complaint alleges that the costs of LCD panels are traceable in prices of LCD products.  Complaint ¶¶ 199-215.  It explains that LCD panels make up a 60 to 70 percent of the cost of an LCD television or computer monitor (*id.* ¶ 182); that the distribution chain for LCD panels is short – usually, LCD products are sold either directly to end users by direct purchasers such as OEMs, or through an intermediary retailer (*id.* ¶¶ 188- 191); and that a significant percentage of LCD products were sold by the first purchaser of LCD panels (Dell, Gateway, Compaq and Apple, for example) directly to class members (*id.* ¶ 205).  The Complaint also alleges very competitive intermediate markets in the distribution chain and other factors that demonstrate pass-through of an overcharge.  *See id.* at ¶¶ 195; 188-207.  It further alleges that this overcharge can be proved and measured using well-established economic theories and models.  *Id.* ¶¶ 208-215.  In sum, because LCD panels are physically traceable, the distribution chain is short, and LCD panels are a key component in LCD products, Plaintiffs' allegations satisfy the "direct" and "non-speculative" elements of *AGC.*

Defendants contend that Plaintiffs' claims are "too indirect" and "speculative" because there are "many different links" in the distribution channels, and that "many factors" affected the price of

---

[31] *See also In re Vitamins Antitrust Litigation*, 2000 WL 1475705, at *9 (D.D.C. May 9, 2000) (denying motions to dismiss, holding "[a]lleging a per se violation [of antitrust laws] obviates the need to define a relevant market.").

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

LCD Panels. Mot. at 16. This argument rests on factual allegations that cannot be used to support a 12(b)(6) motion to dismiss, and are directly contradicted by the allegations in the Complaint (which must be taken as true). *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 398 (3d Cir. 2000) (reversing district court's finding of no antitrust standing for indirect purchasers, because district court improperly relied upon facts outside the pleadings "gleaned from counsel's argument and its own experience" such as the "sheer variety" of intermediate purchasers that "most likely absorbed some or all of [the] overcharge").[32]

Even if Defendants' vague suggestions of the number of "different links" or "factors" could be considered, they would fail to establish that Plaintiffs' claims are too "remote" or "speculative." The ability of purchasers to trace overcharges for components through a distribution chain has been repeatedly recognized by federal courts. *See, e.g., In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir. 1978) (plaintiffs who bought candy containing the price-fixed produce, sugar, had standing because "just as the sugar sweetened the candy, the price-fixing enhanced the profits of the candy manufacturers."); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 159 (3d Cir. 2002) (holding plaintiffs that purchased corrugated sheets or boxes from defendants that fixed linerboard prices had standing, even though "linerboard was a mere ingredient" in the cardboard boxes purchased by plaintiffs). In *Knevelbaard Dairies,* the Ninth Circuit rejected an argument similar to the one urged by Defendants here: that the milk prices at issue might have been lower due to independent factors other than price fixing of cheese. *See,* 232 F.3d at 991. ("Whether experts will be able to measure the difference between the allegedly restrained price for milk and the price that would have prevailed but for the antitrust violation remains to be seen; in deciding a Rule 12(b)(6) motion we are dealing only with the Complaint's allegations, which in this instance do not make the claim speculative.").

---

[32] *See Knevelbaard*, 232 F.3d at 991 (holding "disputed claims of causation and injury cannot be decided on a Rule 12(b)(6) motion"); *D.R. Ward*, 470 F. Supp. 2d at 502-03 (holding "although facts external to the Complaint, such as the percentage of plastic additives in the products plaintiffs purchased, carry the potential to impact the causation analysis, these facts are irrelevant to the resolution of defendants' motion to dismiss, which relies entirely upon what the Complaint states."); *Ice Cream Liquidation, Inc.*, 253 F. Supp. 2d at 274 (rejecting "speculative damages" antitrust standing argument, noting "[t]he difficulty we have with defendants' argument is that it arises in the context of a motion to dismiss"); *Wrobel v. Avery Dennison Corp.*, No. 05CV526, slip op. at 10 (Kansas Dist. Ct. Feb. 1, 2006) ("insufficient information" to apply the *AGC* test at the pleading stage) (RJN Ex. 20); *Muzzey v. Avery Dennison Corp.*, No. CI 05-126, slip op. at 4 (Neb. Dist. Ct.

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

1   Defendants' arguments also ignore that Plaintiffs are indirect purchasers suing for damages

2   only under state laws.  Repealer States allow these claims based on a policy decision that consumers

3   at the end of manufacturing and distribution chains often "suffer[ ] the greatest, if not the most

4   direct, injury of the price-fixing conspiracy." *D.R. Ward,* 470 F. Supp. 2d at 503.  Thus, numerous

5   courts have refused to find "remoteness" or "speculativeness" at the pleading stage in cases

6   involving price-fixed components or ingredients of a product.  In *DR Ward,* the district court

7   rejected an argument that the indirect purchasers of plastic additives were too "remote" or their

8   claims too "speculative" because the price-fixed product was one of many components in the

9   ultimate products plaintiffs purchased.  *Id.*[33]  In *Intel,* Judge Farnan found that the plaintiffs, who

10  alleged that Intel's anticompetitive acts had resulted in overcharges for a computer chip which was

11  passed on to them when they purchased computers, had adequately pleaded "but for" causation, and

12  held that it would be inappropriate to decide "complex and intensely factual" injury issues without

13  "a more fully developed factual record." *Intel*, 496 F. Supp. 2d at 410.  And in *Lorix,* the Minnesota

14  Supreme Court rejected an argument that claims of an indirect purchaser of rubber chemicals were

15  too  "remote" or "speculative" because the chemicals constituted a small percentage of the cost of

16  the tires purchased by plaintiffs at a different distribution level.  *Lorix*, 736 N.W. 2d at 633-35.

17      In light of this overwhelming authority, Defendants' few authorities for their "remoteness"

18  and "speculative" arguments are telling.  *A&M Supply Co. v. Microsoft Corp.*, 654 N.W.2d 572

19  (Mich. App. 2002) involved the appeal of a class certification order and a "battle of the experts," not

20  a motion to dismiss.  *Weaver v. Cabot Co.,* 2004 WL 3406119 (N.C. Super. Mar. 26, 2004) is not

21  instructive.  The two-page, unpublished trial court opinion lacks any factual analysis or citation to

22  authority, and has been extensively criticized by both the California Attorney General and several

23  antitrust scholars.  *See* RJN Ex. 24-25.  *Crouch* actually supports the Plaintiffs' position:  the

---

25  Jan. 17, 2006) (indirect standing satisfied by notice pleading; plaintiffs were not required to plead
    facts and particulars of proof) (RJN Ex. 21).
26  [33] *See D.R. Ward,* 470 F. Supp. 2d at 503 (holding "the discovery process is necessary to develop an
    array of factual issues that bear upon the directness of the plaintiffs' injury, such as plaintiffs'
27  positioning within the chain of distribution of plastics additives, the structure of the distribution
    chain, the degree to which the artificially increased portion of the price of plastics additives was
28  passed along the distribution chain or absorbed by more direct purchasers, and the impact of intra-
    and extra-market factors on the price of products containing plastics additives.").

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

defendant there allegedly overcharged for various rubber chemicals which constituted only 1% of the end products' value, were completely absorbed and altered during the manufacturing process, and used in various ways, creating "inherent" problems in determining pass-through of the overcharges between the two markets. *Id.* at *21. Here, however, the LCD Panels constitute up to 70% of the cost of the products at issue, and are neither absorbed nor altered when placed in the products at issue.

## C.   Plaintiffs Have Standing For Their Claims For Injunctive Relief Under Section 16 Of The Clayton Act.

Defendants argue for dismissal of Plaintiffs' claims for injunctive relief under Section 16 of the Clayton Act for lack of an "antitrust injury." Mot. at 12, 15. This argument has no merit. The requirements for "antitrust standing" for claims for injunctive relief pursuant to Section 16 of the Clayton Act are less restrictive than those for treble damages under Section 4 of that Act. Injunctive relief poses no threat of "duplicative recoveries" – one of the *AGC* inquiries. With respect to the alleged "injury," the plaintiff must be "a foreseeable victim of the antitrust violation." *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 400 (3rd Cir. 2000) (citing *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 475 (1982)). With respect to its connection to the violation, the loss alleged must be "the type of loss that the claimed violations … would be likely to cause." *Id.* (quoting *Mcready*, 457 U.S. at 479 (quoting *Brunswick Corp.*, 429 U.S. 477, 489)).

Plaintiffs meet all of the *AGC* requirements. The fact that Plaintiffs are indirect purchasers cannot matter. The Third Circuit stated in *Warfarin*, at 399-401, that consumers of the drug were "foreseeable and necessary victims" of the antitrust violation and that "the high prices paid by consumers for Coumadin clearly resulted in … the type of loss that the claimed violations were likely to cause." The Court also noted that the consumers were the "target of DuPont's antitrust violation," because "[r]egardless of the existence of the various links of the middlemen, if there were no ultimate consumers of Coumadin, prices charged for the drug by DuPont to distributors, pharmacies, etc. would be irrelevant." The Third Circuit concluded that "[i]t is difficult to imagine a more formidable demonstration of antitrust injury."

The same result is appropriate here. As in *Warfarin,* Defendants' conspiracy to raise and maintain the prices of LCD panels caused immediate, foreseeable effects on the prices Plaintiffs paid

28

1   for LCD products, such as televisions, computer monitors and laptops.  As in *Warfarin,* these

2   increased prices were necessary for Defendants' conspiracy to succeed.  Compl. ¶¶ 128 - 134; 188 -

3   198.  As in *Warfarin,* if there were no ultimate consumers of LCD products, prices charged for LCD

4   panels by Defendants would be irrelevant: they would be useless.  Plaintiffs have thus alleged facts

5   sufficient to establish "antitrust injury" under section 16.

6   **D.      The Plaintiffs' Claims For Unjust Enrichment Should Be Allowed To Go Forward.**

7          Defendants contend that the unjust enrichment claim must be dismissed because of a failure

8   to identify which states' laws give rise to Plaintiffs' claims.  Defendants also assert that a nationwide

9   claim under a single state's unjust enrichment law would be inappropriate.  Mot. at 19-22.   In light

10  of Judge Wilken's recent ruling in *SRAM,* (2008 WL 426522, at *12 (dismissing unjust enrichment

11  with leave to amend to specify specific states' unjust enrichment laws)), Plaintiffs agree that the

12  Complaint must be more specific and, therefore, ask leave to amend the Complaint to identify under

13  which states' unjust enrichment laws Plaintiffs will proceed.

14         Defendants also contend that too much variation exists among states' unjust enrichment laws

15  to permit class certification.  Numerous cases, however, have disagreed, and held that unjust

16  enrichment claims do not vary significantly.  *See, e.g., Schumacher v. Tyson Fresh Meats, Inc.,* 221

17  F.R.D. 605, 612 (D.S.D. 2004) ("In looking at claims for unjust enrichment, we must keep in mind

18  that the very nature of such claims requires a focus on the gains of the defendants, not the losses of

19  the plaintiffs.  That is a universal thread throughout all common law causes of action for unjust

20  enrichment.").[34]  The most recent is *In re Abbott Labs. Norvir Antitrust Litig.* ("*Norvir*"), 2007 WL

21  1689899 (N.D. Cal. June 11, 2007), where the Court certified a nationwide class for unjust

22  enrichment by indirect-purchaser plaintiffs (with the exception of Ohio and Indiana).  The Court

23  held that these states' laws could be asserted as a class, because "Common to all class members and

24

25

---

26  [34] *See also K-Dur Antitrust Litig.,* 338 F. Supp. 2d 517, 544-46 (D.N.J. 2004) (refusing to dismiss
    unjust enrichment claims for fifty states, District of Columbia and Puerto Rico); *Westways World*
27  *Travel, Inc. v. AMR Corp.,* 218 F.R.D. 223, 239-40 (C.D. Cal. 2003) (the determination of
    defendant's liability on the unjust enrichment claim can be made from common class-wide proof);
28  *Singer v. AT&T Corp.,* 185 F.R.D. 681, 692 (S.D. Fla. 1998) (stating that unjust enrichment is one of
    those "universally recognized causes of action that are materially the same throughout the United
    States"); Daniel Karon, *Undoing the Otherwise Perfect Crime,* 108 W. Va. L. Rev. 395 (2005).

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1   provable on a class-wide basis is whether Defendant unjustly acquired additional revenue or profits

2   by virtue of an anti-competitive premium . . . ." 2007 WL 1689899, at *9.[35]

3       In any event, such issues are more appropriately raised at the time certification is considered,

4   or at least after Plaintiffs have amended the Complaint consistent with Judge Wilken's ruling in

5   *SRAM. See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004) ("To the extent that

6   Defendant moves to dismiss Plaintiffs' claims of unjust enrichment on the basis that certain

7   individual states impose additional requirements . . . the Court likewise determines that it is

8   premature to consider these requirements on a state by state basis, at this time.").[36]

9   **E.    The Complaint Alleges Unconscionable And/Or Deceptive Conduct Sufficient To State A Claim Under The Consumer Protection Laws Of Arkansas, D.C., Maine, Nebraska, New Mexico, New York, Rhode Island And West Virginia.**

10

11      Defendants argue broadly that Plaintiffs' claims under all of the above states' consumer

12  protection statutes fail as a matter of law because it "cannot be the law" that these statutes

13

14

15

16

---

17  [35] Defendants also appear to suggest the Court should dismiss Plaintiffs' unjust enrichment claims because the parties did not deal "directly." Lack of directness is typically not a valid defense to such a cause of action, however. *See* Karon*,* at 421-28 (collecting state authorities demonstrating that "directness" or privity is not a valid defense to an unjust enrichment claim); *In re K-Dur Antitrust Litig.,* 338 F. Supp. 2d at 544 ("Defendant's argument fails because a benefit conferred need not mirror the actual loss of the plaintiff . . . . The critical inquiry is whether the plaintiff's detriment and the defendant's benefit are *related to, and flow from*, the challenged conduct."); *In re Lorazepam & Clorazepate Antitrust Litigation*, 295 F. Supp. 2d at 50-52 ("A plaintiff alleging an unjust enrichment may be seeking to recover a benefit which he gave directly to the Defendant, *or* one which was transferred to the Defendant by a third party"). In fact, one of Defendants' principal cases, *Powers v. Lycoming Engines*, 245 F.R.D. 226 (E.D. Pa. 2007), held the "directness defense" applied only to claims under Florida, Ohio, and Idaho law, (*id.* at 232 n.19); that "[i]n contrast, nine other states [Illinois, Iowa, Kansas, Maryland, Massachusetts, Michigan, New York, Pennsylvania, and Tennessee] have explicitly determined that an indirect benefit is enough" (*id.* at 232 n.20); and that "[t]he remaining states' laws [Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Indiana, Kentucky, Louisiana, Maine, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming] have either implicitly accepted unjust enrichment claims based on an indirect benefit or have not addressed the issue. *Id.* at 232.

[36] *See also Rios v. State Farm Fire and Cas. Co.*, 469 F. Supp. 2d 727, 740-42 (S.D. Iowa 2007) (denying motion to strike and dismiss nationwide class allegations on breach of contract and unjust enrichment claims as premature).

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

1   encompass "price-fixing." Def. Mot. at 26.[37] The actual text of these statutes, the cases interpreting

2   them, and the allegations of the Complaint demonstrates that these arguments are without merit.

3           1.      **Arkansas Code §§ 4-88-101** *et seq.*

4           The Arkansas Deceptive Trade Practices Act ("ADTPA") forbids certain enumerated

5   "[d]eceptive and unconscionable trade practices," as well as "any other unconscionable, false, or

6   deceptive act or practice in business, commerce, or trade." Ark. Code. Ann. §4-88-107(a). The

7   ADTPA also prohibits "[t]he act, use, or employment by any person of any deception, fraud, or false

8   pretense [and] … [t]he concealment, suppression, or omission of any material fact with the intent

9   that others rely upon the concealment, suppression, or omission." *Id.* §44-88-108. In *In re New*

10  *Motor Vehicles Canadian Export Antitrust Litig.* ("*NMV*") 350 F. Supp. 2d 160 (D. Me. 2004), the

11  court held that the ADTPA applied to the defendants' anticompetitive conduct that resulted in higher

12  car prices. The court held that the term "unconscionable" may be broadly defined and concluded that

13  "the plaintiffs' allegations of a conspiracy to keep Canadian cars out of the United States market are

14  sufficient to state a claim of an unconscionable practice under the ADTPA." 350 F. Supp. 2d at 178.

15          Here, Plaintiffs allege that Defendants' anticompetitive conduct constituted deceptive and

16  unconscionable conduct in violation of the ADTPA's "catch-all provision," 4-88-107(10),[38] to the

17  detriment of the Arkansas class. Compl., ¶ 270(d, e). The Complaint alleges that Defendants

18  "deliberately failed to disclose material facts" about their anticompetitive actions to the Arkansas

19  indirect purchaser class; that they owed a duty to disclose such facts; and that they "breached that

20  duty by their silence," since the class members typically lacked sophistication. *Id.* ¶ 270(b). The

21  Complaint alleges that Defendants misrepresented that LCD prices were "competitive and fair," and

22  thus misled consumers into believing that these prices were the result of "a free and fair market."

23

24

---

25  [37] Plaintiffs do not oppose dismissal of their claims under the Kansas Consumer Protection Act.
    Also, in light of Judge Alsup's recent ruling in *GPU* (*see* 527 F. Supp. 2d at 1026-27) (dismissing
26  with leave to amend claims under law in states in which no named plaintiff resides), Plaintiffs
    agree to dismissal of their claims under Mississippi, Nebraska, New Hampshire, Pennsylvania and
27  Rhode Island state law), and seek leave to amend to add a class representative for these states.

28  [38] ADTPA §4-88-107(a)(10) states, in pertinent part, that "[d]eceptive and unconscionable trade
    practices made unlawful and prohibited by this chapter include, but are not limited to, . . . [e]ngaging
    in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade."

31

1   *Id.*, ¶ 270(b, e).  These antitrust allegations specifically identify the offending conduct, and, as in

2   *NMV*, are sufficient to state a claim of unconscionable practices under the ADTPA.

### 2.   D.C. Code §§ 28-3901 *et seq.*

4   Defendants contend that the District of Columbia's Consumer Protection Practices Act

5   ("DCCPPA") requires that unconscionable and deceptive conduct be subject to a heightened

6   pleading standard.  Mot. at 28.  Judge Hornby rejected a similar argument in *NMV* with respect to

7   the consumer protection laws of Arkansas, New Mexico, and the District of Columbia.  Citing

8   *District Cablevision Ltd. Partnership v. Bassin*, 828 A.2d 714, 722-25 (D.C. 2003), which held that

9   the main purpose of the DCCPPA was "to assure that a just mechanism exists to remedy *all*

10  improper trade practices," and that "[t]rade practices that violate other laws" also fell within its

11  purview, Judge Hornby held: "the alleged antitrust violation may violate the DCCPPA without being

12  a deceptive practice, the criterion that triggers the Rule 9(b) pleading requirements."  350 F. Supp.

13  2d at 182-83, n.36. Consistent with the policy to protect consumers from a broad spectrum of

14  deceptive trade practices, Defendants' conduct alleged in the Complaint falls within the CPPA.

### 3.   Maine Rev. Stat. §§ 207 *et seq.*

16  Maine's Unfair Trade Practices Act ("UTPA") forbids "[u]nfair methods of competition and

17  unfair or deceptive acts or practices in the conduct of any trade or commerce."  Me. Rev. Stat. Ann.

18  tit. 5, § 207.  It also contains a provision (§ 207(1)) directing the courts to interpret it in harmony

19  with the FTC Act, and Maine Courts look to federal precedent in interpreting it.  *Tungate v.*

20  *Maclean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998).  The alleged price-fixing conspiracy,

21  which is a *per se* violation of the Sherman Act, thus also violates Maine's prohibition on "unfair

22  methods of competition."  *See FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 422 (1990)

23  (violations of Sherman Act also violate Section 5 of the FTC Act); *NMV*, 350 F. Supp. 2d at 187

24  (denying motion to dismiss MUTPA on same grounds).

25  Defendants mistakenly rely on *Tungate* for the proposition that plaintiffs cannot recover

26  under the MUTPA unless the price at issue has "the effect of deceiving the consumer."  Mot. at 24-

27  25, n.25.  That identical argument was also rejected by Judge Hornby in *NMV*, in which he noted

28  that *Tungate* involved only the portion of the statute relating to unfair or deceptive acts.  *NMV*, 350

F. Supp. 2d at 187 n.40.  MUTPA, however, also prohibits "unfair methods of competition" (5 Me.

32

Rev. Stat. Ann. §207), "which was not implicated in *Tungate*. *Tungate's* standards for establishing deception are therefore not pertinent." *Id*. Accordingly, Defendants' arguments as to the MUTPA fail.

### 4.    Nebraska Rev. Stat. §§ 59-1601 *et seq.*

The Nebraska Consumer Protection Act ("CPA") includes both antitrust and consumer protection aspects. *See* Neb. Rev. Stat. §59-1602 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful … Any contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce shall be unlawful.").[39]  Its purpose is to protect consumers from unlawful practices in the conduct of any trade or commerce directly or indirectly affecting the people of Nebraska. *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 36-38 (Neb. 2004).  Nebraska courts specifically recognize that it is intended to protect Nebraska consumers from price-fixing conspiracies. *Id.*; *see also In re Pharmaceutical Industry Average Wholesale Price Litigation*, 233 F.R.D. 229, 230 (D. Mass. 2006) (certifying Nebraska subclass under Nebraska CPA); *In re New Motor Vehicles Canadian Export antitrust Litig. ("NMV II")*, 243 F.R.D. 20, 22-23 (D. Me. 2007) (same).[40]  Plaintiffs have therefore stated a cognizable claim under the CPA.

### 5.    New Mexico Stat. §§ 57-12-1 *et seq.*

The New Mexico Unfair Practices Act ("NMUP") prohibits both "unfair or deceptive trade practices" and  "unconscionable trade practices in the conduct of any trade or commerce." N.M. Stat. Ann. §57-12-3.  Price-fixing constitutes "unconscionable" conduct under the statute. *See NMV*, 350 F. Supp. 2d at 196; *In re Intel Corp. Microprocessor Antitrust Litig.*, 2007 WL 2028113 (D. Del. July 12, 2007), at *12.  Here, Plaintiffs allege a conspiracy that resulted in significant artificial increases in the price of LCDs, conduct that "results in a gross disparity between the value received

---

[39] Plaintiffs inadvertently failed to identify the Nebraska Consumer Protection Act as the basis of their state law claim (*see* Compl. ¶ 278) and will amend to correct this error if the Court requires.

[40] Defendants' reliance on *Schoenbaum v. E.I. DuPont De Nemours And Co.*, 517 F. Supp. 2d 1125 (E.D. Mo. 2007) is unavailing.  *Schoenbaum* addressed plaintiff's claims under Nebraska's Uniform Deceptive Trade Practices Act ("NUDTPA").  *Id.* at 1154.  NUDTPA explicitly states that "[t]his section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this state."  Neb. Rev. Stat. §87-302(14)(c).  For that reason, the *Schoenbaum* court specifically stated that plaintiffs' claims under the Nebraska Consumer Protection Act were not at issue.  *Id.* at 1154 n.26.

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

by a person and the price paid" (N.M. Stat. §57-12-2(E)(2)), as well as deceptive conduct by Defendants.  Plaintiffs have sufficiently stated a cause of action under the NMUP.

*In re Graphics Processing Units*, 2007 U.S. Dist. LEXIS 76601 ("*GPU*"), on which defendants rely, is inapposite.  There, the two cases relied upon by Judge Alsup concerned unconscionability only in the context of a contractual relationship, not in the context of a conspiracy to fix prices.[41]  In *NMV*, however, Judge Hornby specifically rejected defendants' attempt to limit unconscionability to the contractual context, and instead relied on "NMUPA's definition of 'unconscionable [N.M. Stat. Ann. § 57-2-12E]'" to apply the statute to a consumer claim against a price fixing conspiracy.  *NMV*, 350 F. Supp. 2d at 196 n.57.  Plaintiffs in *GPU* also did not plead disparity in the value of products represented and the value of the products received, as Plaintiffs have in paragraphs 280(b) and (c) of the Complaint.  Thus, as in *NMV*, the allegations of the Complaint adequately allege a claim under the NMUPA.

### 6.    New York Gen. Bus. Law § 349

A *prima facie* case under GBL § 349 requires only "a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (N.Y. 2002).  To determine whether conduct is deceptive or misleading, courts are directed to look to the FTC Act's definition of "deceptive practice." *See Genesco Entertainment Div. of Lymutt Indus. v. Koch*, 593 F. Supp. 743, 751-52 (S.D.N.Y. 1984).  Since "[i]t is well-established that the government may use the FTC Act [the federal consumer protection act] to enforce antitrust laws, . . . antitrust violations . . . constitute the kind of deceptive acts and practices contemplated by section 349." *New York v. Feldman*, 210 F. Supp. 2d 294, 302 (S.D.N.Y. 2002) ("*Feldman*") (citations omitted).

Defendants incorrectly assert that the Plaintiffs do not allege any deception directed at them. *See* Mot. at 28.  To sustain a GBL § 349 claim, a plaintiff must "charge conduct of the defendant that is consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,

---

[41] *See State v. R & A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999) (to plead unconscionability properly, there must be gross inequality of bargaining power between the parties to the contract and the aggrieved party must be aware of the contract provision in question); *Riggs Nat'l Bank of Washington D.C. v. D.C.*, 581 A.2d 1229, 1251 (D.C. 1990) ("to establish unconscionability, . .

34

85 N.Y.2d 20, 25 (N.Y. 1995).  To do so, a plaintiff need only "demonstrate that the acts or practices have a broader impact on consumers at large." *Id.*  The "threshold test" of determining whether certain acts are "consumer-oriented" is met by a showing that the acts or practices alleged "affect . . . the public interest in New York," are not "unique" to plaintiff and defendant, and do not constitute a "single-shot transaction." *In re MTBE,* 175 F. Supp. 2d 593, 631 (S.D.N.Y. 2001); *Oswego*, 85 N.Y.2d at 26-27.  Conduct that has "a broader impact on consumers at large ... or [may] potentially affect similarly situated consumers" falls well within the "statutory ambit" of GBL § 349 and justifies its application.  *Cruz v. NYNEX Info. Res.,* 703 N.Y.S. 2d 103 (N.Y. App. Div. 1st Dep't 2000).  Thus, courts have repeatedly held that antitrust claims are viable under GBL § 349.  *See, e.g., Cox v. Microsoft Corp.,* 778 N.Y.S. 2d 147 (N.Y. App. Div. 1st Dep't 2004) (rejecting defendant's argument that plaintiff must personally have been "exposed and deceived by" defendant's conduct in order to have a viable claim under §349, and holding that it was sufficient to allege that plaintiff was injured by paying "artificially inflated prices" as a result of deceptive conduct); *Excellus Health Plan, Inc. v. Tran,* 287 F. Supp. 2d 167, 179-80 (W.D.N.Y. 2003) (group boycott claims cognizable under § 349); *Feldman,* 210 F. Supp. 2d at 302 (collusive activity in violation of § 2 of the Sherman Act); *New York Jets LLC v. Cablevision Sys. Corp.*, 2005 WL 2649330, at *11 (S.D.N.Y. Oct 17, 2005) (monopolistic practices).  Recent authority in this District confirms this.  *See GPU,* 527 F. Supp. 2d at 1030 (motion to dismiss GBL § 349 claim denied in a computer component price-fixing case where plaintiffs alleged "deceptive acts to conceal agreement to fix prices"); *DRAM,* 516 F. Supp. 2d at 1117 (§ 349 claims "may be predicated on allegations of antitrust violations").

Here, the Complaint has amply alleged a price-fixing scheme that resulted in consumers paying inflated prices for LCD panels and LCD products.  It further alleges that Defendants' practices have been deceptive to Plaintiffs and have affected the broad public interest in New York.  *See* Compl., ¶¶152, 228-235, 281.   Plaintiffs have thus stated a claim under GBL § 349.

### 7.    Rhode Island Gen. Laws §§ 6-13.1-1 *et seq.*

Defendants move to dismiss Plaintiffs' claims under Rhode Island's Unfair Trade Practices and Consumer Protection Act ("UTPCPA"), R.I. Gen. Laws §6-13.1-1, *et seq.* on the ground that

---

. [plaintiff must prove] one of the parties lacked a meaningful choice but also that the terms of the

35

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

1   Plaintiffs failed to plead deceptive acts falling within the Act's nineteen specifically enumerated

2   prohibited practices.  In addition to the enumerated practices, however, a catch-all provision

3   prohibits "[e]ngaging in any other conduct that similarly creates a likelihood of confusion or of

4   misunderstanding" and "[e]ngaging in any act or practice that is unfair or deceptive to the

5   consumer."  R.I. Gen. Laws §6-13.1-1(xii), (xiii).  This broad language easily includes the unfair and

6   deceptive conduct alleged in the Complaint.  *See In re Pharmaceutical Indus. Average Wholesale*

7   *Price Litig.*, 233 F.R.D. 229, 230-31 (D. Mass. 2006) (certifying consumer co-payor class for claims

8   under R.I. Gen. Laws §6-13.1-1).

9           Defendants' few authorities do not support dismissal.  In *NMV*, the motor vehicle sales at

10  issue in that case were regulated by various state governmental bodies and therefore were expressly

11  exempt from the UTPCPA.  *NMV*, 350 F. Supp. 2d at 201-202.  In *DRAM*, "the complaint did not

12  allege conduct on defendants' part that created a 'likelihood of confusion' or that is otherwise unfair

13  or deceptive" (*DRAM*, 516 F. Supp. 2d at 1116).  Here, however, the Complaint specifically sets

14  forth the false and misleading representations.  Complaint ¶ 284 (c), (f).  And in *SRAM*, the court

15  dismissed the UTPCPA claim due to the lack of conduct that created "a likelihood of confusion or

16  misunderstanding for [the] indirect purchasers" (2008 WL 426522, at * 11), whereas, here, the

17  Complaint satisfies the "unfair or deceptive conduct" prong of the catch-all provision.

18          **8.     West Virginia Code §§ 46A-6-101** *et seq.*

19          West Virginia's consumer protection statute is to be "liberally construed" to foster "fair and

20  honest competition."  W.Va. Code §46A-6-101(1).   While Judge Hamilton in *DRAM* construed the

21  statute as not covering antitrust claims (*see* 516 F. Supp. 2d at 1118-19) there is contrary, more

22  persuasive authority in other districts.  *See, e.g., Federal Trade Comm'n v. Mylan Labs., Inc.*, 62 F.

23  Supp. 2d 25 (D.D.C.), *on recons.*, 99 F. Supp. 2d 1, 10 (D.D.C. 1999) (permitting West Virginia

24  attorney general to proceed under state's consumer protection statute for antitrust violations on

25  behalf of both direct and indirect purchasers); *In re Pharmaceutical Industry Average Wholesale*

26  *Price Litig.*, 233 F.R.D. 229, 231 (D. Mass. 2006) (allowing antitrust claims to stand and certifying

27

28  _____

    contract are unreasonably favorable to the other party.").

class under the West Virginia statute).  The Court here should "liberally construe" §46A-6-101, *et seq.* as the West Virginia legislature intended, and allow plaintiffs' claims to go forward.

### F.     Plaintiffs' Claims Include Claims On Behalf Of Business Entities, Except For West Virginia.

Defendants also contend Plaintiffs' consumer protection claims under the laws of Kansas, Pennsylvania, Rhode Island, and West Virginia fall short because these statutes provide standing to only natural persons, as opposed to "business entities." Mot. at 29-30. [42]  This is incorrect. The definition of *person* under the law of these states includes business entities,[43] except for West Virginia. Plaintiffs ask leave to amend to limit that state's class to "natural persons."

### G.     The Complaint Alleges Fraudulent Concealment Sufficient To Toll The Applicable Statutes Of Limitations

Under the laws of all of the states at issue, fraudulent concealment tolls the statute of limitations until the plaintiff knows, or should have known, of the wrongful conduct that forms the basis for plaintiff's claim.[44]  The Complaint alleges numerous acts of fraudulent concealment by

---

[42] Defendants also assert that Plaintiffs' claims under the consumer protection statutes of Kansas and West Virginia are deficient because Plaintiffs failed to allege their purchasers were primarily for "personal, family or household purposes."  A complaint does not fail simply because it does not state all elements necessary for recovery.  *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1270 n.3 (9th Cir. 2006).  Plaintiffs have alleged that Defendants caused damages to indirect purchasers of LCDs for end use and not for resale.  *See* Compl. ¶¶17, 216, 284.  These allegations are more than sufficient, but if they fall short, Plaintiffs respectfully request that leave to amend be granted.

[43] **Kansas.**  While Plaintiffs withdraw their claim under the Kansas Consumer Protection Act, they continue to assert their claims under the Kansas Antitrust Act, Kansas Stat. Ann., §§ 50-101 *et seq.*  Section 50-148 of the Act defines "person" as including "individuals, corporations, limited liability companies, general partnerships, limited partnerships, firms, companies, voluntary associations and other associations or business entities, existing under or authorized by the state of Kansas, or the laws of any other state, territory, or foreign country."  **Pennsylvania.** Pennsylvania law is not confined to natural persons.  *See* 73 Pa. Const. Stat. §201-9.2 (providing private actions can be brought by "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes[.]").  The term "person" is defined as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities."  73 Pa. Const. Stat. §201-2(2).  **Rhode Island.**  Rhode Island Gen. Laws §6-13.1-5.2(a) provides that "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss ... may bring an action..."  Section 6-13.1-1(3) defines "person" to include "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity."

[44]**Arkansas:** *Delanno, Inc. v. Peace,* 237 S.W.3d 81, 85 (Ark. 2006) ("Next, if fraudulent concealment is found, the appellant must additionally prove that the fraud would not have been detected by the exercise of reasonable diligence.") (emphasis added); **California:** *Baker v. Beech*

37

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1   Defendants [45] tolling the statutes of limitations for Plaintiffs' state antitrust and state consumer fraud

2   claims under the laws of twenty-six different states from 1996 to 2002.[46] Significantly, Defendants

3

---

4   *Air-Craft Corp.*, 39 Cal. App. 3d 315, 319 (1974) ("Appellants have pleaded facts indicating fraudulent concealment of the true facts by [defendant], when the fraud was discovered, the

5   circumstances under which it was discovered by appellants and their lack of means for earlier discovery."); **D.C.:** *In re Vitamins Antitrust Litigation*, 2006 U.S. App. LEXIS 31401, at *1517

6   (D.C. Cir. May 15, 2006) (focus is on whether plaintiff possessed knowledge or through the exercise of due diligence should have acquired information, to put her on notice of her claim); **Florida:**

7   *Nardone v. Reynolds*, 333 So.2d 25, 34 (Fla. 1976) (fraudulent concealment will toll the statute of limitations "until the facts of such fraudulent concealment can be discovered through reasonable

8   diligence."; **Iowa:** *Christy v. Miulli*, 692 N.W.2d 694, 701-02 (Iowa 2005) (same); **Kansas:** *Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936, 995 (Kan. 2007) (plaintiff must "explain why due

9   diligence did not lead or could not have lead to discover of the facts and the cause of action.") (emphasis added); **Maine:** *Taylor v. Phillip Morris Inc.*, 2001 WL 1710710, * at 4 (Me. Super. Ct.

10  May 29, 2001) (same); **Massachusetts:** *In re Lupron Marketing and Sales Practices Litigation*, 2004 WL 2070883, at *6 (D. Mass. Sept. 16, 2004) (same); **Michigan:** *McNaughton v. Rockford*

11  *State Bank*, 246 N.W. 84, 86 (Mich. 1933) ("[I]t must appear that the fraud not only was not discovered, but could not have been discovered with reasonable diligence, until within the statutory

12  period before the action was begun."); **Minnesota:** *Hannah Min. Co. v. InterNorth, Inc.*, 379 N.W.2d 663, 667 (Minn. Ct. App. 1986) (same); **Mississippi:** *Frye v. American General Finance,*

13  *Inc.*, 307 F. Supp. 2d 836, 841 (S.D. Miss. 2004) (statutes of limitations "begin to run at the time the fraud is discovered or at such time as the fraudulent concealment 'with reasonable diligence might

14  have been first known or discovered.'") (citing Miss. Code. Ann. § 15-1-67); **Nebraska:** *Muller v. Thaut*, 430 N.W.2d 884, 892 (Neb. 1988) ("Where there has been fraudulent concealment from a

15  plaintiff, the statute is suspended only until his rights are discovered or until they could have been discovered by the exercise of due diligence.") (citation omitted); **Nevada:** *Pooler v. R.J. Reynolds*

16  *Tobacco Co.*, 2001 WL 403167, at *2 (Nev. Dist. Ct. April 4, 2001) (same); **New Hampshire:** *Bricker v. Putnam*, 512 A.2d 1094, 1096 (N.H. 1986) (same); **New Mexico:** *Garcia ex. rel. Garcia*

17  *v. La Farge*, 893 P.2d 428, 432 (N.M. 1995) (same); **N. Carolina:** *Calhoun v. Calhoun*, 197 S.E.2d 83, 85 (N.C. Ct. App. 1973) (same); **N. Dakota:** N.D. Cent. Code § 28-01-24 (same); **Pennsylvania:**

18  *Fine v. Checcio*, 870 A.2d 850, 861 (Pa. 2005) (same); **Rhode Island:** *Martin v. Howard*, 784 A.2d 291, 300 (R.I. 2001) (same); **S. Dakota:** *Strassburg v. Citizens Bank*, 581 N.W.2d 510, 515 (S.D.

19  1998) ("Statutes of limitations begin to run when plaintiffs first become aware of facts prompting a reasonably prudent person to seek information about the problem and its cause."); **Tennessee:**

20  *Shadrick v. Coker*, 963 S.W.2d 726, 734 (Tenn. 1998) ("However, we are not persuaded that these facts necessarily compel a reasonable person to conclude that [plaintiff] knew or reasonably should

21  have known [of his cause of action]."; **Vermont:** *Rodrigue v. Valco Enterprises, Inc.*, 726 A.2d 61, 64 (Vt. 1999) (noting that limitations period is tolled until a plaintiff knows or by the exercise of due

22  diligence could have known, that hey may have had a cause of action); **W. Virginia:** *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 1986 WL 957, at *9 (S.D.W.V. May 13, 1986) (same);

23  **Wisconsin:** *Hansen v. A.H. Robins, Inc.*, 335 N.W.2d at 581 (same).

24  [45] Plaintiffs allege that Defendants' price-fixing conspiracy began as early as 1996, but that due to Defendants' fraudulent concealment, Plaintiffs were unable to discover the existence of the

25  conspiracy until 2006, when the investigation by the DOJ and other government agencies became public. Plaintiffs here plead that they "did not discover and could not have discovered, through

26  the exercise of reasonable diligence, the existence of the conspiracy alleged herein until after December 2006." Compl. ¶ 226. Plaintiffs support this allegation with detailed allegations of

27  defendants' affirmative acts concealing their price-fixing conspiracy, including: (1) secret discussions about price and output (*id.* ¶ 228); (2) an agreement not to discuss publicly the

28  existence or nature of their price-fixing agreement (*id.* ¶ 228); and (3) numerous pretextual and false justifications disseminated to consumers regarding defendants' price increases (*id.* ¶¶ 229-234.).

---

38

1   do not contest the sufficiency of these detailed allegations of affirmative acts by Defendants

2   fraudulently to conceal the existence of their price-fixing conspiracy.  Rather, they contend that

3   Plaintiffs – individual, indirect-purchasers of LCD products – were put on "constructive notice" of

4   their conspiracy by reason of general electronics industry market trends and related industry reports,

5   available as early as 1996, and should have pleaded allegations showing why they should not be

6   charged with this knowledge.  This argument has no merit.

7   First, courts have found much more conspicuous information inadequate to place a plaintiff

8   on notice of a potential claim.  *See e.g., In re Bulk Extruded Graphite Products Antitrust Litigation*,

9   2007 WL 1062979, at *4 (D.N.J. 2007) (finding public information relating to antitrust

10  investigations and settlements in the graphite electrode industry was insufficient to put plaintiff on

11  notice of claim in bulk extruded graphite industry); *In re Monosodium Glutamate Antitrust*

12  *Litigation*, 2003 WL 297287, at *4 (D. Minn. Feb. 6, 2003) ("fact that government was investigating

13  alleged conspiracies into some food additives does not, as a matter of law, mean that any purchaser

14  of any food additive is on notice for a potential conspiracy in the sale of the product he or she

15  purchases.").[47]  If government investigations and public settlements do not create notice, the facts

16  Defendants point to certainly do not.

17  Second, Defendants' contention that plaintiffs are required to allege that they "diligently tried

18  to uncover the pertinent facts underlying their claim" is incorrect.  Any requirement to plead due

19  diligence under these statutes arises only under circumstances that should have put the plaintiffs on

20  notice of their claim.  *See, e.g., Conmar Corp. v. Mitsui & Co.*, 858 F.2d 449, 504 (9th Cir. 1988)

21

22  _____

[46] Plaintiffs acknowledge fraudulent that concealment does not exist under the laws of Puerto Rico.

23  [47] *See also In re Vitamins Antitrust Litigation*, 2000 WL 1475705 (D.D.C. May 9, 2000) (rejecting
24  defendants' claim that market trends put plaintiffs on notice of defendants' alleged price-fixing and
    holding that plaintiffs adequately alleged fraudulent concealment under federal and California
25  law); *King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147, 1156 (10th Cir. 1981)
    ("Mere knowledge that [defendant] was raising and lowering prices does not provide knowledge
26  that [defendant] was agreeing with other members of the gasoline industry to fix prices . . .The
    evidence pertaining to price fixing points to concealment of those activities."); *Rubber Chemicals*,,
27  504 F. Supp. 2d at 788 ("[P]laintiffs are not under a duty to continually scout around to uncover
    claims which they have no reason to suspect they might have."); *Emerson Electric Co. v. Le*
28  *Carbone Lorraine, S.A.*, 500 F. Supp. 2d 437, 449 (D.N.J. 2007) (finding "storm warnings" of
    separate conspiracy should not have triggered heightened obligation on plaintiffs' part to investigate
    whether similar conspiracy existed in the electrical carbon products industry).

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1  (The requirement for diligence is only meaningful, however, when facts exist that would excite the

2  inquiry of a reasonable person.").[48]  As discussed, this is not the case here.

3      Third, even if Defendants' "notice" argument could raise an issue of notice (it does not), the

4  question of when a plaintiff is put on notice of a potential cause of action, triggering an obligation of

5  diligent investigation, is a fact-intensive inquiry inappropriate at this stage of these proceedings.

6  *See, e.g., Conmar Corp.*, 858 F.2d at 789 ("[M]any courts have noted, in the antitrust conspiracy

7  context, it is generally inappropriate to resolve the fact-intensive allegations of fraudulent

8  concealment at the motion to dismiss stage, particularly where the proof relating to the extent of the

9  fraudulent concealment is alleged to be largely in the hands of the alleged conspirators.").[49]

10

11

12

---

13  [48] The two cases cited by Defendants are distinguishable; in each case, the court held that the
   plaintiffs had failed sufficiently to allege affirmative acts by the defendants fraudulently concealing
14  their violations.  *See Taylor v. Philip Morris Inc.*, 2001 WL 1710710, at *5 (Me. Super. May 29,
   2001) ("In the present case, Plaintiffs have not plead [sic] with sufficient particularity the details of
15  the Defendants[sic] concealing acts."); *Patten v. Standard Oil of La.*, 55 S.W.2d 759, 761 (Tenn.
   1933) ("As a general rule to constitute fraud by concealment or suppression of the truth there must
16  be something more than mere silence, or a mere failure to disclose known facts.  There must be a
   concealment, and the silence must amount to fraud.").

17  [49] *See also Hickson v. Saig*, 828 S.W.2d 840, 842 (Ark. 1992) ("Thus there is a genuine issue of
   material fact as to whether the newspaper article should have put appellant on sufficient notice to
18  require her to investigate and determine the truth, and that issue is for the trier of fact."); *Baker v.
   Beech Air-Craft Corp.*, 39 Cal. App. 3d 315, 321 (1974) ("Whether a party has notice of
19  'circumstances sufficient to put a prudent man upon inquiry as to a particular fact,' and whether 'by
   prosecuting such inquiry, he might have learned such fact' when facts are susceptible to opposing
20  inferences are themselves questions of fact to be determined by the jury or the trial court."); *Christy*,
   692 N.W.2d at 703 ("A person is on inquiry notice for purposes of the discovery rule when he gains
21  information sufficient to alert a reasonable person of the need to investigate.") (citation omitted);
   *Fine v. Checcio*, 870 A.2d 850, 858 (Penn. 2005) ("[R]easonable diligence is not an absolute
22  standard, but what is expected from a party who has been given reason to inform himself of the facts
   upon which his right to recovery is premised . . . There must be some reason to awaken inquiry and
23  direct diligence in the channel in which it would be successful.  This is what is meant by reasonable
   diligence."); *Fred Ezra Co. v. Psychiatric Inst. of Wash. D.C.*, 687 A.2d 587, 593 (D.C. 1996)
24  (noting that it is "crystal clear" that whether a plaintiff had inquiry notice sufficient to trigger a need
   for reasonable diligence, is a "fact-laden" inquiry"); *Christy*, 692 N.W.2d at 704 (reversing grant of
25  summary judgment on defendant's statute of limitations defense and finding that genuine issue of
   material fact existed regarding whether plaintiff had knowledge of facts and circumstances prior to
26  running of statute of limitations that put her on notice of defendant's fraud); *In re Lupron Marketing
   and Sales Practices Litigation*, 2004 WL 2070883, *6 (D. Mass. Sept. 16, 2004) (noting that a
27  fraudulent concealment claim is "intensely factual"); *Kirkpatrick v. John Hancock Mut. Life Ins. Co.*,
   1996 Minn. App. LEXIS 1044, *6 (Minn. Ct. App. Sept. 3, 1996) (same); *Continental Potash, Inc. v.
28  Freeport McMoran, Inc.*, 858 P.2d 66, 74 (N.M. 1993) (same); *Fine v. Checcio*, 870 A.2d 850, 858
   (Penn. 2005) (same); *Strassburg v. Citizens State Bank*, 581 N.W.2d 510, 513 (S.D. 1998) (same).

40

**H.      If Necessary, Leave To Amend And For Discovery Is Appropriate.**

Should the Court grant Defendants' motions in whole or in part, leave to amend the

Complaint is appropriate,[50] as is an opportunity for at least some merits discovery.  In *Kendall*, the

District Court "allowed appellants to conduct discovery so that they would have the facts they

needed to plead an antitrust complaint."  2008 WL 613924, at *2.  In In re Static Access Memory

(SRAM) Antitrust Litig., 2008 WL 426522 (N.D. Cal. Feb. 14, 2008) the District Court allowed

discovery of documents provided to the DOJ for purposes of the grand jury investigation and all

documents already produced in a related case involving many of the same defendants.  2008 WL

426522, at *2.  And in *In re DRAM*, the District Court granted Plaintiffs leave to amend based on

facts Plaintiffs had developed during discovery.  *See* RJN Ex. 27 (Aug. 17, 2007 "Order Granting

Motion For Leave To File Second Amended Complaint" in *DRAM*).  Each of these decisions

conforms with the well-recognized principle that "in antitrust cases, where the proof is largely in the

hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for

discovery should be granted very sparingly."  *Agron, Inc.*, 2004 WL 555377, at *5 (quoting *Hospital

Building Co.*, 425 U.S. at 746) (internal quotation marks and citation omitted)).

*Twombly* does not present any obstacle to allowing discovery.  In *GPU*, Judge Alsup flatly

rejected any such argument.  *See* RJN Ex. 28 (July 24, 2007 Pretrial Order No. 4 in *GPU*) ("This

court does not read *Twombly* to erect an automatic, blanket prohibition on any and all discovery

before an antitrust plaintiff's complaint survives a motion to dismiss.").[51]  In SRAM, Judge Wilken

rejecting an argument that *Twombly* prevented discovery, allowed discovery and ruled:  "I don't read

*Bell v. Twombly* to outlaw discovery prior to the pleadings being settled.  There will be limits on

discovery, which we will talk about shortly, but I am not going to order no discovery based on that

---

[50] *See* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires.");
*Eminence Capital, LLC. v. Aspen, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("This policy is to be
applied with extreme liberality."); *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1530 (9th Cir.1995) (denial
of leave "strictly review[d] . . . in light of the strong policy permitting amendment"); *Lopez v. Smith*,
203 F.3d 1122, 1130 (9th Cir. 2000) (leave must be granted "if it appears at all possible" to state a
claim) (en banc); *Netbula LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003) (denial of
leave "rare").

[51] While Judge Alsup ultimately denied discovery prior to the motions to dismiss, he did so on the
grounds that "adjudicating the motions to dismiss will shed light on the best course for discovery,"
not on any blanket rule barring it.  *See* RJN Ex. 28 at 7-8.

---

41

1    case or anything else." RJN Ex. 29 at 7 (Transcript of *SRAM* June 1, 2007 Case Management

2    Conference); *see also id.* Ex. 30 at 2 (June 21, 2007 Suppl. Case Mangt. Order No. 1 in *In re SRAM*).

3    Here, the result should be the same, especially inasmuch as Defendants are the subject of a pending

4    grand jury proceeding, an amnesty applicant has approached the DOJ to confess the conspiracy, and

5    only the Plaintiffs have been kept in the dark about the particulars of Defendants' violations.  If the

6    Court is inclined to grant Defendants' motion on *Twombly* grounds, Plaintiffs respectfully suggest

7    that plaintiffs also be allowed discovery.

## IX
## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motions to dismiss the

Complaint.

Dated:  March 20, 2008            By: */s/Francis O. Scarpulla* _____

Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Matthew R. Schultz (220641)
Qianwei Fu (242669)
ZELLE HOFMANN VOELBEL MASON
    & GETTE LLP
44 Montgomery Street, Suite 3400
San Francisco, CA  94104
Telephone:    (415) 693-0700
Facsimile:    (415) 693-0770
fscarpulla@zelle.com

Joseph M. Alioto (42680)
Theresa D. Moore (99978)
ALIOTO LAW FIRM
555 California Street, Suite 3160
San Francisco, CA 94104
Telephone:    (415) 434-8900
Facsimile:    (415-434-9200
josephalioto@mac.com
esexton@alioto.law.com

*Interim Co-Lead Counsel for Indirect-Purchaser
Plaintiffs and Class Members*

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

Dated:  March 20, 2008

By:  _/s/Daniel R. Shulman_

Daniel R. Shulman
Jeremy L. Johnson
Gray Plant Mooty Mooty & Bennett, PA
500 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:     (612) 632-3335
Facsimile:      (612) 632-4335
daniel.shulman@gpmlaw.com
jeremy.johnson@gpmlaw.com

Jack W. Lee
B. Mark Fong
Brad Yamauchi
MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108-4903
Telephone:     (415) 788-9000
Facsimile:      (415) 398-3887
jlee@minamitamaki.com
mfong@minamitamaki.com

_Liaison Counsel for Indirect-Purchaser Plaintiffs and_
_Class Members_

| | |
|---|---|
| Josef D. Cooper<br>Tracy R. Kirkham<br>Cooper & Kirkham, P.C.<br>655 Montgomery Street, 17th Floor<br>San Francisco, CA 94111<br>Telephone:     (415) 788-3030<br>Facsimile:      (415) 882-7040<br>jdc@coopkirk.com | Daniel E. Gustafson<br>Renae D. Steiner<br>Brian Williams<br>Jason S. Kilene<br>Gustafson Gluek PLLC<br>650 Northstar East<br>608 Second Avenue South<br>Minneapolis, MN 55402<br>Telephone:     (612) 333-8844<br>Facsimile:      (612) 339-6622<br>dgustafson@gustafsongluek.com<br>rsteiner@gustafsongluek.com |
| Christopher Lovell<br>Imtiaz A. Siddiqui<br>Lovell Stewart Halebian LLP<br>500 Fifth Avenue, 58th Floor<br>New York, NY  10110<br>Telephone:     (212) 608-1900<br>Facsimile:      (212) 719-4677<br>clovell@lshllp.com | James McManis<br>Colleen Duffy Smith<br>Marwa Elzankaly<br>McManis Faulkner & Morgan<br>50 West San Fernando Street, 10th Floor<br>San Jose, CA 95113<br>Telephone:     (408) 279-8700<br>Facsimile:      (408) 279-3244<br>jmcmanis@mfmlaw.com<br>melzankaly@mfmlaw.com |

Allan Steyer
Jill Manning
Bryan M. Kreft
Steyer Lowenthal Boodrookas Alvarez &
Smith, LLP
One California Street, Third Floor
San Francisco, CA  94111
Telephone:      (415) 421-3400
Facsimile:      (415) 421-2234
asteyer@steyerlaw.com
jmanning@steyerlaw.com

Thomas V. Girardi
Girardi & Keese
1126 Wilshire Boulevard
Los Angeles, CA  90017-1904
Telephone:      (213) 977-0211
Facsimile:      (213) 481-1554
tgirardi@girardikeese.com

Henry A. Cirillo
Thomas P. Dove
The Furth Firm
225 Bush Street, 15th Floor
San Francisco, CA 94104-4249
Telephone:      (415) 433-2070
Facsimile:      (415) 982-2076
hcirillo@furth.com
tdove@furth.com

Michael J. Flannery
James J. Rosemergy
Carey & Danis, LLC
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO  63105
Telephone:      (314) 725-7700
Facsimile:      (314) 721-0905
mflannery@careydanis.com

G. Mark Albright
Albright Stoddard Warnick & Albright
Quail Park I, Building D-4
801 South Rancho Drive
Las Vegas, NV 89106-3854
Telephone:      (702) 384-7111
Facsimile:      (702) 384-0605
gma@albrightstoddard.com

Joseph M. Weiler
Darin M. Conklin
Alderson Alderson Weiler Conklin
      Burghart & Crow, L.L.C.
2101 SW 21st Street
Topeka, KS 66604
Telephone:      (785) 232-0753
Facsimile:      (785) 232-1866
jweiler@aldersonlaw.com
dconklin@aldersonlaw.com

C. Donald Amamgbo
Amamgbo & Associates, PLC
7901 Oakport Street, Suite 4900
Oakland, CA  94621
Telephone:      (510) 615-6000
Facsimile:      (510) 615-6025
donald@amamgbolaw.com

Lori E. Andrus
Micha Star Liberty
Jennie Lee Anderson
Andrus Liberty & Anderson LLP
1438 Market Street
San Francisco, CA 94102
Telephone:      (415) 896-1000
Facsimile:      (415) 896-2249
lori@libertylaw.com

Neil Overholtz
Douglass Kreis
Justin Witkin
Aylstock, Witkin, Kreis & Overholtz, PLC
803 North Palafox Street
Pensacola, FL 32501
Telephone:      (850) 916-7450
Facsimile:      (850) 916-7449
noverholtz@awr.law.com

Gordon Ball
Ball & Scott
Suite 750, Bank of America Center
550 Main Street
Knoxville, TN 37902
Telephone:      (865) 525-7028
Facsimile:      (865) 525-4679
gball@ballandscott.com

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

| | |
|---|---|
| Eric J. Pickar | Brian Barry, Esq. |
| Gregory J. Erlandson | Law Offices of Brian Barry |
| Bangs McCullen Butler Foye | 1801 Avenue of the Stars, Suite 307 |
|    & Simmons, LLP | Los Angeles, CA  90067 |
| 333 West Boulevard, Suite 400 | Telephone:   (310) 788-0831 |
| P.O. Box 2670 | Facsimile:   (310) 788-0841 |
| Rapid City, SD 57709-2670 | bribarry1@yahoo.com |
| Telephone:   (605) 343-1040 | |
| Facsimile:   (605) 343-1503 | |
| gerlandson@bangsmccullen.com | |

Michael S. Bearse
Law Offices of Michael S. Bearse, PC
226 South Main Street
Providence, RI  02930
Telephone:     (401) 331-7720
Facsimile:      (401) 453-2549
msbearse@comcast.net

John H. Boone
Law Offices of John H. Boone
555 California Street, Suite 3160
San Francisco, CA  94104
Telephone:     (415) 434-8900
Facsimile:      (415) 434-9200
jboone@dc.rr.com

Andrew S. Friedman
Bonnett, Fairbourn, Friedman & Balint,
P.C.
2901 North Central Avenue, Suite 1000
Phoenix, AZ 85012-3311
Telephone:     (602) 274-1100
Facsimile:      (602) 274-1199
afriedman@bffb.com

Michael L. Belancio
Bower Belancio, LLC
800 West 47th Street, Suite 215
Kansas City, MO 64112
Telephone:     (816) 960-4911
Facsimile:      (816) 960-3711
mbelancio@bblawkc.com

C. Dewey Branstetter, Jr.
J. Gerard Stranch, IV
Branstetter, Stranch & Jennings, PLLC
227 Second Avenue North
Nashville, TN 37201
Telephone:     (615) 254-8801
Facsimile:      (615) 250-3937
cdbjr@braanstetterlaw.com
gstranch@branstetterlaw.com

Thomas H. Brill
Law Office of Thomas H. Brill
6552 Sagamore Road
Mission Hills, KS 66208
Telephone:     (913) 677-2004
Facsimile:      (913) 677-2152
brillkc@aol.com

Louis F. Burke
Louis F. Burke, PC
460 Park Avenue, 21st Floor
New York, NY 10022
Telephone:     (212) 682-1700
Facsimile:      (212) 808-4280
lburke@lfblaw.com

John M. Dillon
Caruso & Dillon PC
100 Mamaroneck Avenue
Mamaroneck, NY 10543
Telephone:     (914) 698-6392
Facsimile:      (914) 698-2038
john.dillon@dillonlaw.com

Steven N. Berk
Chavez & Gertler, LLP
1225 15th Street, NW
Washington, D.C. 20005
Telephone:     (202) 232-7550
Facsimile:     (202) 232-7556
steven@chavezgertler.com

Richard L. Coffman
The Coffman Law Firm
1240 Orleans Street, Suite 200
Beaumont, TX 77701
Telephone:     (409) 832-4767
Facsimile:     (866) 835-8250
rc@cofflaw.com

Dario De Ghetaldi
Corey Luzaich Pliska deGhetaldi Nastari
LLP
700 El Camino Real
P.O. Box 669
Millbrae, CA 94030
Telephone:     (650) 871-5666
Facsimile:     (650) 871-4144
deg@coreylaw.com

Clint Sargent
Danforth & Meierhenry
315 South Phillips Avenue
Sioux Falls, SD 57104
Telephone:     (605) 336-3075
Facsimile:     (605) 336-2593
clint@meierhenrylaw.com

Joseph G. Sauder
Benjamin F. Johns
James R. Malone, Jr.
Chimicles & Tikellis, LLP
361 West Lancaster Avenue
Haverford, PA 19041
Telephone:     (610) 642-8500
bfj@chimicles.com
jamesmalone@chimicles.com

Irwin B. Levin
Scott D. Gilchrist
Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone:     (317) 636-6481
Facsimile:     (317) 636-2593
ilevin@cohenandmalad.com

Roger M. Schrimp
Clinton P. Walker
Fred Silva
Kathy Lee Monday
Damrell Nelson Schrimp Pallios
    Pacher & Silva
1601 I Street, Fifth Floor
Modesto, CA 95354
Telephone:     (209) 526-3500
Facsimile:     (209) 526-3534
rschrimp@damrell.com
cwalker@damrell.com

Joseph F. Devereux, Jr.
Devereux Murphy LLC
The Plaza at Clayton
190 Carondelet, Suite 1100
St. Louis, MO 63105
Telephone:     (314) 721-1516
Facsimile:     (314) 721-4434
jfdevereux@devereuxmurphy.com

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

1
2
3
4
5
6

James M. Dombrowski
Attorney at Law
P.O. Box 751027
Petaluma, CA 94975
Telephone: (707) 762-7807
Facsimile: (707) 769-0419
jdomski@aol.com

Wyatt B. Durrette, Jr.
Christopher G. Hill
Christine A. Williams
Durrette Bradshaw, PLC
600 East Main Street, 20th Floor
Richmond, VA 23219-2430
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
wdurrette@durrettebradshaw.com
chill@durrettebradshaw.com
cwilliams@durrettebradshaw.com

7
8
9
10
11

Chief Nnamdi A. Ekenna
The Ekenna Law Firm
4311 Wilshire Boulevard, Suite 612-B
Los Angeles, CA 90010-3717
Telephone: (323) 954-1000
Facsimile: (323) 954-1001
chiefekenna@aol.com

Scott E. Poynter
Christopher D. Jennings
Emerson Poynter, LLP
500 President Clinton Avenue, Suite 305
Little Rock, AR 72201
Telephone: (501) 907-2555
Facsimile: (501) 907-2556
spoynter@emersonpoynter.com

12
13
14
15
16

John G. Emerson
Emerson Poynter, LLP
830 Apollo Lane
Houston, TX 77058
Telephone: (281) 488-8854
Facsimile: (281) 488-8867
gemerson@emersonpoynter.com

Gregg Vance Fallick
Attorney at Law
Albuquerque Plaza, Suite 1560
201 Third Street, N.W.
Albuquerque, NM 87102
Telephone: (505) 842-6000
Facsimile: (505) 842-6001
gvf@fallicklaw.com

17
18
19
20
21

Adam Stein
Ferguson Stein Chambers Gresham
    & Sumter, PA
312 West Franklin Street
Chapel Hill, NC 27516
Telephone: (919) 933-5300
Facsimile: (919) 933-6182
astein@fergusonstein.com

Mark D. Stuffs
Fillmore Spencer, LLC
3301 North University Avenue
Provo, UT 84604
Telephone: (801) 426-8200
Facsimile: (801) 426-8208
mstubbs@fslaw.com

22
23
24
25

Russell F. Brasso
Foreman & Brasso
930 Montgomery Street, Suite 600
San Francisco, CA 94133
Telephone: (415) 433-3475
Facsimile: (415) 781-8030
brasso@foremanandbrasso.com

William F. Patterson, Jr.
Forman Rossabi Black, P.A.
3623 North Elm Street, Suite 200
Greensboro, NC 27455
Telephone: (336) 378-1899
Facsimile: (336) 378-1850
wfp@frb-law.com

26
27
28

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

1 | Michael G. Simon
M. Eric Frankovitch
2 | Frankovitch Anetakis Colantonio & Simon
337 Penco Road
3 | Weirton, WV 26062
Telephone: (304) 723-4400
4 | Facsimile: (304) 723-5892
msimon@facslaw.com
5 |

6 | Daniel A. Freedman
Joseph Goldberg
7 | Matthew L. Garcia
Freedman Boyd Daniels Hollander
8 | Goldberg & Ives, PA
20 First Plaza, Suite 700
9 | Albuquerque, NM 87102
Telephone: (505) 842-9960
10 | Facsimile: (505) 842-0761
jg@fbdlaw.com
11 |

12 | Carl L. Solomon
Gergel, Nickles & Solomon, P.A.
13 | P.O. Box 1866
1519 Richland Street
14 | Columbia, SC 29202-1866
Telephone: (803) 779-8080
15 | Facsimile: (803) 256-1816
csolomon@gnslaw.com
16 |

17 | Kenneth G. Gilman
Daniel D'Angelo
18 | Gilman and Pastor, LLP
225 Franklin Street, 16th Floor
19 | Boston, MA 02110
Telephone: (617) 742-9700
20 | Facsimile: (617) 742-9701
kgilman@gilmanpastor.com
21 |

22 | B.J. Wade
Glassman Edwards Wade & Wyatt, PC
23 | 26 North Second Street
Memphis, TN 38103
24 | Telephone: (901) 527-4675
Facsimile: (901) 521-0940
25 | bwade@gewwlaw.com

Paul M. Weiss
William M. Sweetnam
Freed & Weiss, LLC
111 West Washington Street, Suite 1331
Chicago, IL 60602
Telephone: (312) 220-0000
Facsimile: (312) 220-7777
paul@freedweiss.com

Charles R. Watkins
John R. Wylie
Futterman Howard Watkins Wylie
& Ashley, Chtd.
122 South Michigan Avenue, Suite 1850
Chicago, IL 60603
Telephone: (312) 427-3600
Facsimile: (312) 427-1850
cwatkins@futtermanhoward.com
jwylie@futtermanhoward.com

Robert J. Gralewski
Gergosian & Gralewski, LLP
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 230-0104
Facsimile: (619) 230-0124
bob@gralewski.com

Susan G. Kupfer
Glancy Binkow & Goldberg, LLP
One Embarcadero Center, Suite 760
San Francisco, CA 94111
Telephone: (415) 972-8160
Facsimile: (415) 972-8166
skupfer@glancylaw.com

Steven E. Grubb
Goldberg Katzman, P.C.
320 Market Street, P.O. Box 1268
Harrisburg, PA 17108-1268
Telephone: (717) 234-4161
Facsimile: (717) 234-6808
seg@goldbergkatzman.com

26

27

28

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

1  Mark Goldman
   Daniel K. Karon
2  Goldman Scarlato & Karon
   101 W. Elm Street, Suite 360
3  Conschohocken, PA 19428
   Telephone:    (484) 342-0700
4  Facsimile:    (484) 342-0701
   karon@gsk-law.com
5
6

7  Terry Gross
   Adam Belsky
8  Gross & Belsky, LLP
   180 Montgomery Street, Suite 2200
9  San Francisco, CA 94104
   Telephone:    (415) 544-0200
10 Facsimile:    (415) 544-0201
11 terry@grossbelsky.com
   adam@grossbelsky.com
12

13 J. Robert Keena
   Barton C. Gernander
14 Hellmuth & Johnson, PLLC
   10400 Viking Drive, Suite 500
15 Eden Prairie, MN 55344
   Telephone:   (952) 941-4005
16 Facsimile:    (952) 941-2337
   jkeena@jhlawfirm.com
17 bgernander@hjlawfirm.com
18

19 Dennis J. Stewart
   Jennifer A. Kagan
20 Hulett Harper Stewart LLP
   550 West C Street, Suite 1600
21 San Diego, CA 92101
   Telephone:    (619) 338-1133
22 Facsimile:    (619) 338-1139
   dstewart@hulettharper.com
23 jenni@hulettharper.com

24 Edward Bearman
   JG Law Firm
25 780 Ridge Lake Boulevard, Suite 202
   Memphis, TN 38120
26 Telephone:    (901) 682-3450
   Facsimile:    (901) 682-3590
27 ebearman@jglawfirm.com
28

Robert S. Green
Elizabeth C. Guarnieri
Brian S. Umpierre
Green Welling, LLP
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone:    (415) 477-6700
Facsimile:    (415) 477-6710
rsg@classcounsel.com
ecg@classcounsel.com

Jeffrey A. Bartos
Soye Kim
Guerrieri Edmond Clayman & Bartos, P.C.
1625 Massachusetts Avenue, NW, Suite 700
Washington, DC 20036
Telephone:    (202) 624-7400
Facsimile:    (202) 624-7420
jbartos@geclaw.com
skim@geclaw.com

Steven K. Hisaka
Gail Y. Cosgrove
Kunio Kuwabe
Hisaka Yoshida & Cosgrove
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 3000
Honolulu, HI 96813
Telephone:    (808) 523-0451
Facsimile:    (808) 524-0422
shisaka@objectionsustained.com

Glenn Carl James
James Law Offices
PMB 501, 1353 Rd. 19
Guaynabo, PR 00966-2700
Telephone:    (787) 763-2888
Facsimile:    (787) 763-2881
jameslawoffices@centennialpr.net

Daniel J. Mulligan
Larry W. Gabriel
Jenkins Mulligan & Gabriel, LLP
660 Market Street, 3rd Floor
San Francisco, CA 94104
Telephone:    (415) 982-8500
Facsimile:    (415) 982-8515
dan@jmglawoffices.com
lgabriel@jmglawoffices.com

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

Steven C. Lausell
Jose R. Gonzalez
Jimenez, Graffam & Lausell
P.O. Box 366104
San Juan, PR 00936-6104
Telephone:      (787) 767-1030
Facsimile:      (787) 751-4068
slausell@jgl.com
jgonzalez@jgl.com


Dennis J. Johnson
Johnson & Perkinson
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone:      (802) 862-0030
Facsimile:      (802) 862-0060
djohnson@jpclasslaw.com
email@jpclasslaw.com


Lynn Lincoln Sarko
Mark A. Griffin
John H. Bright
Raymond J. Farrow
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone:      (206) 623-1900
Facsimile:      (206) 623-3384
lsarko@kellerrohrback.com
mgriffin@kellerrohrback.com
jbright@kellerrohrback.com
rfarrow@kellerrohrback.com


Kelly Kenny
Attorney at Law
P.O. Box 528
San Mateo, CA 94401
Telephone:      (650) 558-9041
Facsimile:      (650) 558-9041
kellykenny2@sbcglobal.net

Michael Stoker
Brian Weber
Johns Flaherty & Collins, SC
Exchange Building, Suite 600
205 Fifth Avenue, South
LaCrosse, WI 54602
Telephone:      (608) 784-5678
Facsimile:      (608) 785-0557
michael@johnsflaherty.com
brian@johnsflaherty.com


Sherman Kassof
Law Offices of Sherman Kassof
954 Risa Road, Suite B
Lafayette, CA 94549
Telephone:      (510) 652-2554
Facsimile:      (510) 652-9308
heevay@att.net


Garret Kendrick
Kendrick & Nutley
1055 East Colorado Blvd., 5th Floor
Pasadena, CA 91104
Telephone:      (626) 204-4060
Facsimile:      (626) 204-4061
jgk@private-ag.com


Thomas D. Kershaw, Jr.
Thomas D. Kershaw, Jr., PC
184 Gooding Street, West
P.O. Box 2497
Twin Falls, ID 83303
Telephone:      (208) 734-9622
Facsimile:      (208) 734-6944
tkershaw@sunvalley.net

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

1   Daniel Hume
    David E. Kovel
2   Beverly Tse
    Kirby McInerney & Squire, LLP
3   830 Third Avenue, 10th Floor
    New York, NY  10022
4   Telephone:     (212) 371-6600
5   Facsimile:     (212) 751-2540
    dhume@kmslaw.com
6

7   Susan LaCava
    Susan LaCava, SC
8   23 North Pinckney Street
    Madison, WI  53703
9   Telephone:     (608) 258-1335
    Facsimile:     (608) 258-1669
10  sl@susanlacava.com

11

12  Justin E. LaVan
    LaMarca & Landry, PC
13  1820 NW 118th Street, Suite 200
    Des Moines, IA 50325
14  Telephone:     (515) 225-2600
    Facsimile:     (515) 225-8581
15  justin@lamarcalandry.com

16  Angela K. Drake
    Lowther Johnson
17  901 St. Louis Street, 20th Floor
    Springfield, MO 65806
18  Telephone:     (417) 866-7777
    Facsimile:     (417) 866-1752
19  adrake@lowtherjohnson.com

20

21  Lee Albert
    Amir Stark
22  Mager & Goldstein, LLP
    1818 Market Street, Suite 3710
23  Philadelphia, PA  19103
    Telephone:     (215) 640-3280
24  Facsimile:     (215) 640-3281
    lalbert@magergoldstein.com
25  astark@magergoldstein.com

Mary G. Kirkpatrick
Kirkpatrick & Goldsborough, PLLC
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
Telephone:     (802) 651-0960
Facsimile:     (802) 651-0964
mkirkpatrick@vtlawfirm.com


Kevin J. O'Connor
Adam C. Briggs
LaFollette Godfrey & Kahn, SC
One East Main Street
P.O. Box 2719
Madison, WI 53701-2719
Telephone:     (608) 284-2600
koconnor@gklaw.com


Samuel W. Lanham, Jr.
Lanham & Blackwell, P.A.
470 Evergreen Woods
Bangor, ME 04401
Telephone:     (207) 942-2898
Facsimile:     (207) 941-8818
slanham@lanhamblackwell.com

Jayne A. Goldstein
Mager & Goldstein, LLP
1640 Town Center Circle, Suite 216
Weston, FL  33326
Telephone:     (954) 515-0123
Facsimile:     (954) 515-0124
jgoldstein@magergoldstein.com


Stanley S. Mallison
Hector R. Martinez
Law Offices of Mallison & Martinez
1042 Brown Avenue, Suite A
Lafayette, CA  94549
Telephone:     (925) 283-3842
Facsimile:     (925) 283-3426
hectorm@mallisonlaw.com

26

27

28

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

Donna F. Solen
Gary E. Mason
The Mason Law Firm, LLP
1225 19th Street, NW, Suite 500
Washington, DC 20036
Telephone:      (202) 429-2290
Facsimile:      (202) 429-2294
dsolen@masonlawfirmdc.com


Robert G. Methvin, Jr.
Philip W. McCallum
James Terrell
McCallum, Methvin & Terrell, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:      (205) 939-3006
Facsimile:      (205) 939-0399
rgm@mmlaw.net
pwm@mmlaw.net
jterrell@mmlaw.net


Floyd M. Melton, III
Melton Law Firm
107½ East Market
P.O. Box 534
Greenwood, MS 38935-0534
Telephone:      (662) 453-8016
Facsimile:      (662) 453-0145
fmmiii@bellsouth.net

Pete S. Michaels
Deborah G. Evans
Jennifer R. Seltenrich
Michaels & Ward, LLP
12 Post Office Square, 4th Floor
Boston, MA 02109
Telephone:      (617) 350-4040
Facsimile:      (617) 350-4050
psm@michaelsward.com
dge@michaelsward.com
jrs@michaelsward.com

Gary D. McAllister
Eric I. Unrein
Jamie Goldstein
Thomas A. Kelliher
Gary D. McAllister & Associates, LLC
120 North LaSalle Street, Suite 2800
Chicago, IL  60602
Telephone:      (312) 345-0611
Facsimile:      (312) 345-0612
gdm@gdmlawfirm.com


John Gressette Felder, Jr.
Chad A. McGowan
McGowan Hood Felder and Johnson
1405 Calhoun Street
Columbia, SC 29201
Telephone:      (803) 779-0100
Facsimile:      (803) 787-0750
cmcgowan@mcgowanhood.com


Gil D. Messina
Messina Law Firm, PC
961 Holmdel Road
Holmdel, NJ  07733
Telephone:      (732) 332-9300
Facsimile:      (732) 332-9301
gmessina@messinalawfirm.com

Greg A. Lewen
James Fox Miller
Miller, Schwartz & Miller, P.A.
2435 Hollywood Boulevard
Hollywood, FL 33020
Telephone:      (954) 924-0300
Facsimile:      (954) 924-0311
glewen@msmlawyers.com
jmiller@msmlawyers.com

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

Daniel J. Mogin
Chad M. McManamy
Noah D. Sacks
Brian A. Barnhorst
The Mogin Law Firm, PC
110 Juniper Street
San Deigo, CA 92101
Telephone:    (619) 687-6611
Facsimile:    (619) 687-6610
dan@moginlaw.com

Michael S. Montgomery
Montgomery Goff & Bullis, P.C.
4802 Amber Valley Parkway
P.O. Box 9199
Fargo, ND 58106-9199
Telephone:    (701) 281-8001
Facsimile:    (701) 281-8007
mike@bullislaw.com

Rodney C. Olsen
Morrison, Frost, Olsen & Irvine, LLP
323 Poyntz, Suite 204
Manhattan, KS 66502
Telephone:    (785) 776-9208
Facsimile:    (785) 776-9212
olsen@mfoilaw.com

Gilmur R. Murray
Derek G. Howard
Murray & Howard, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Telephone:    (510) 444-2660
Facsimile:    (510) 444-2522
gmurray@murrayhowardlaw.com
dhoward@murrayhowardlaw.com

Krishna B. Narine
Law Offices of Krishna B. Narine
2600 Philmont Avenue, Suite 324
Huntingdon Valley, PA 19006
Telephone:    (215) 914-2460
Facsimile:    (215) 914-2462
knarine@kbnlaw.com

Andrew C. Skinner
Nichols & Skinner, LC
115 East Washington Street
P.O. Box 487
Charles Town, WV 25414-0487
Telephone:    (304) 725-7029
Facsimile:    (304) 725-4082
ac@nicholsandskinner.com

Lawrence D. Nwajei
Law Offices of Lawrence D. Nwajei
5850 Canoga Avenue, Suite 400
Woodland Hills, CA 91367
Telephone:    (818) 710-2775
Facsimile:    (818) 914-4851
ldnwajei@aol.com

Lawrence G. Papale
Law Offices of Lawrence G. Papale
1308 Main Street, Suite 117
St. Helena, CA 94574
Telephone:    (707) 963-1704
Facsimile:    (707) 963-0706
lgpapale@papalelaw.com

William H. Parish
Parish & Small
1919 Grand Canal Boulevard, Suite A-5
Stockton, CA 95207-8114
Telephone:    (209) 952-1992
Facsimile:    (209) 952-0250
whparish@parishsmall.com

Joseph M. Patane
Law Office of Joseph M. Patane
2280 Union Street
San Francisco, CA 94123
Telephone:    (415) 563-7200
Facsimile:    (415) 346-0679
jpatane@tatp.com

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

Jeffery Kenneth Perkins
Law Offices of Jeffery K. Perkins
1275 Columbus Avenue, Suite 208
San Francisco, CA 94133
Telephone:    (415) 474-3833
jefferykperkins@aol.com

Michael L. Roberts
Richard Quintus
Roberts Law Firm, PA
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223
Telephone:    (501) 821-5575
Facsimile:    (501) 821-4474
robertslawfirm@aristotle.net

Cory M. Jones
Royal Jones Miles Dunkley & Wilson
2920 North Green Valley Parkway, Suite 424
Henderson, NV 89014
Telephone:    (702) 471-6777
Facsimile:    (702) 531-6777
cjones@royaljoneslaw.com

Terry Rose Saunders
Thomas A. Doyle
Saunders & Doyle
20 South Clark Street, Suite 1728
Chicago, IL 60603
Telephone:    (312) 551-0051
Facsimile:    (312) 551-4467

Robert C. Schubert
Willem F. Jonckheer
Peter E. Borkon
Aaron H. Darsky
Schubert & Reed LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone:    (415) 788-4220
Facsimile:    (415) 788-0161
rschubert@schubert-reed.com
wjonckheer@schubert-reed.com

Garrett D. Blanchfield, Jr.
Reinhardt Wendorf & Blanchfield
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone:    (651) 287-2100
Facsimile:    (651) 287-2103
g.blanchfield@rwblawfirm.com

Dianne M. Nast
RodaNast, PC
801 Estelle Drive
Lancaster, PA 17601
Telephone:    (717) 892-3000
Facsimile:    (717) 892-1200
dnast@rodanast.com

Andrew A. Nickelhoff
Marshall J. Widick
Sachs Waldman, PC
1000 Farmer Street
Detroit, MI 48226
Telephone:    (313) 965-3464
(313) 965-4602
anickelhoff@sachswaldman.com

Alexander M. Schack
Law Offices of Alexander M. Schack
11440 West Bernardo Court, Suite 300
San Diego, CA 92127
Telephone:    (858) 485-6535
Facsimile:    (858) 485-0608
amslawoffice@aol.com

Jonathan Shub
Seeger Weiss, LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone:    (215) 564-2300
Facsimile:    (215) 851-8029
jshub@seegerweiss.com

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

1   Christopher A. Seeger
    TerriAnne Benedetto
2   Seeger Weiss, LLP
    One William Street
3   New York, NY  10004
    Telephone:      (212) 584-0700
4   Facsimile:      (212) 584-0799
    cseeger@seegerweiss.com
5   tbenedetto@seegerweiss.com
6
    Isaac L. Diel
7   Sharp McQueen
    6900 College Boulevard, Suite 285
8   Overland Park, KS 66211
    Telephone:      (913) 661-9931
9   Facsimile:      (913) 661-9935
    dslawkc@aol.com
10
11  Natalie Finkelman Bennett
    Nathan Zipperian
12  Shepherd Finkelman Miller & Shah, LLC
    35 East State Street
13  Media, PA  19063
    Telephone:      (610) 891-9880
14  Facsimile:      (610) 891-9883
    nfinkelman@classactioncounsel.com
15
16  W.H. Bundy, Jr.
    Smith Bundy Bybee & Barnett, P.C.
17  Building F, Suite 100
    1037 Chuck Dawley Boulevard
18  Mount Pleasant, SC 29464
    Telephone:      (843) 881-1623
19  Facsimile:      (843) 881-4406
    whbesq@s3blaw.com
20

Steven J. Serratore
Scott Ames
Serratore Ames LLP
9595 Wilshire Boulevard, Suite 201
Beverly Hills, CA 90212
Telephone:      (310) 205-2460
Facsimile:      (310) 205-2464
steve@serratoreames.com

Douglas P. Dehler
Shepherd Finkelman Miller & Shah, LLC
111 East Wisconsin Avenue, Suite 1750
Milwaukee, WI  53202
Telephone:      (415) 226-9900
Facsimile:      (415) 226-9905
ddehler@classactioncounsel.com

Jordan M. Lewis
Siegel Brill Greupner Duffy & Foster, P.A.
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401
Telephone:      (612) 337-6100
Facsimile:      (612) 339-6591
jordanlewis@sbgdf.com

Bruce Spiva
Kathleen Hartnett
Spiva & Hartnett, LLP
1776 Massachusetts Avenue, NW, Suite 600
Washington, D.C.  20036
Telephone:      (202) 785-0601
Facsimile:      (202) 785-0697
bspiva@spivahartnett.com
khartnett@spivahartnett.com

21

22

23

24

25

26

27

28

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS CONSOLIDATED AMENDED COMPLAINT

Jared Stamell
Stamell & Schager, LLP
One Liberty Plaza, 35th Floor
New York, NY  10006
Telephone:      (212) 566-4047

David Boies, III
Timothy D. Battin
Ian Otto
Nate Cihlar
Straus & Boies, LLP

4041 University Drive, 5th Floor
Fairfax, VA 22030
Telephone:      (703) 764-8700
Facsimile:      (703) 764-8704
dboies@straus-boies.com
tbattin@straus-boies.com
iotto@straus-boies.com
ncihlar@straus-boies.com

Kenneth G. Walsh
Straus & Boies, LLP
Two Depot Plaza
Bedford Hills, NY  10507
Telephone:      (914) 244-3200
Facsimile:      (914) 244-3260
kwalsh@straus-boies.com

Mark J. Schirmer
Straus & Boies, LLP
1661 International Place Drive, Suite 400
Memphis, TN 38120
Telephone:      (901) 818-3146
Facsimile:      (901) 818-3147
mschirmer@straus-boies.com

J. Preston Strom, Jr.
Mario A. Pacella
Strom Law Firm, LLC
2110 Beltline Boulevard, Suite A
Columbia, SC 29204
Telephone:      (803) 252-4800
Facsimile:      (803) 252-4801
petestrom@stromlaw.com
mpacella@stromlaw.com

Shawn A. Taylor
Taylor Law Firm, PLLC
120 Capitol Street
P.O. Box 2132
Charleston, WV 25328
Telephone:      (304) 345-5959
Facsimile:      (304) 345-0270
judge@shawtaylor.com

Reginald Terrell
The Terrell Law Group
223 25th Street
Richmond, CA  94804
Telephone:      (510) 237-9700
Facsimile:      (510) 237-4616
reggiet2@aol.com

LeRoy D. Percy
Grady F. Tollison, Jr.
Tollison Law Firm, P.A.
100 Courthouse Square
P.O. Box 1216
Oxford, MS 38655
Telephone:      (662) 234-7070
Facsimile:      (662) 234-7095
gray@tollisonlaw.com
roy@tollisonlaw.com

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

| | |
|---|---|
| 1 | |

Thomas E. Towe
Towe Ball Enright Mackey & Sommerfeld
P.O. Box 30457
Billings, MT 59107
Telephone:     (406) 248-7337
Facsimile:     (406) 248-2647
towe@tbems.com

Mario N. Alioto
Lauren C. Russell
Trump Alioto Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
Telephone:     (415) 563-7200
Facsimile:     (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

Kenneth Leo Valinoti
Valinoti & Dito LLP
180 Montgomery Street, Suite 940
San Francisco, CA 94104-4223
Telephone:     (415) 986-1338
Facsimile:     (415) 986-1231
kvalinoti@valinoti-dito.com

George O. West, III
Law Offices of George O. West, III
6787 West Tropicana Avenue, Suite 263
Las Vegas, NV 89103
Telephone:     (702) 248-1076
Facsimile:     (702) 953-2286
gowesq@cox.net

Edward J. Westlow
Law Offices of Edward J. Westlow
600 East Main Street, 20th Floor
Richmond, VA 23219-2430
Telephone: (804) 780-0305
Facsimile:     (804) 780-0306
ewestlow@durrettebradshaw.com

Kenneth A. Wexler
Wexler Toriseva Wallace, LLP
One LaSalle Street, Suite 2000
Chicago, IL 60602
(312) 346-2222
(312) 346-0022
kaw@wtwlaw.com

Joe R. Whatley, Jr.
Whatley Drake & Kallas
1540 Broadway, 37th Floor
New York, NY 10036
Telephone:     (212) 447-7070
Facsimile:     (212) 447-7077
jwhatley@whatleydrake.com

S. Thomas Wienner
Wienner & Gould, P.C.
950 West University Drive, Suite 350
Rochester, MI 48307
Telephone:     (248) 841-9400
Facsimile:     (248) 652-2729
twienner@wiennergould.com

Lingel H. Winters, Esq.
Law Offices of Lingel H. Winters, APC
The Alcoa Building, Suite 400
One Maritime Plaza
San Francisco, CA 94111
Telephone:     (415) 398-2941
Facsimile:     (415) 393-9887
sawmill2@aol.com

Marc Aaron Wites
Wites & Kapetan
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone:     (954) 570-8989
Facsimile:     (954) 354-0205
mwites@wklawyers.com

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT

1    James F. Wyatt, III
     Wyatt & Blake, LLP
2    435 East Morehead Street
     Charlotte, NC 28202-2609
3    Telephone:      (704) 331-0767
     Facsimile:      (704) 331-0773
4    jwyatt@wyattlaw.net

     Patrick D. Allen
     Michael S. Jahner
     Yenson, Lynn, Allen & Wosick, P.C.
     4908 Alameda Boulevard NE
     Albuquerque, NM 87113-1736
     Telephone:      (505) 266-3995
     Facsimile:      (505) 268-6694
     pallen@ylawfirm.com
     mjahner@ylawfirm.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDIRECT-PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS CONSOLIDATED AMENDED COMPLAINT