1  KEVIN C. McCANN (SB# 120874)
   kevinmccann@paulhastings.com
2  SEAN UNGER (SB# 231694)
   seanunger@paulhastings.com
3  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   55 Second Street
4  Twenty-Fourth Floor
   San Francisco, CA  94105-3441
5  Telephone:  (415) 856-7000
   Facsimile:  (415) 856-7100
6
   Attorneys for Defendant
7  Epson Electronics America, Inc.

8                         UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                            SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  IN RE:  TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M: 07-1827 SI<br>MDL No. 1827 |
| 13  This Documents Relates To:<br><br>14  ALL DIRECT PURCHASER ACTIONS | **REPLY BRIEF BY EPSON ELECTRONICS AMERICA, INC. IN SUPPORT OF ITS SEPARATE MOTION TO DISMISS** |
| | Date:    April 30, 2008<br>Time:    2:00 pm<br>Court:   Hon. Susan Y. Illston |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

DISCUSSION ....................................................................................................................... 1

    A.    The Complaint Nowhere Alleges that Epson Electronics America, Inc. Joined or Participated in Any Conspiracy To Restrain Trade in Any Market. ........................................................................................................... 1

    B.    By Overreaching in Alleging a Single Conspiracy Spanning Multiple Separate Product Markets, the Direct-Purchaser Plaintiffs Obliterate Any Prospect of Stating a Plausible Claim Against EEA. .............................................. 3

        1.    Direct Purchasers Say They Are Alleging a Single Conspiracy Encompassing All Categories of TFT-LCD Panels and Products Containing Them. ................................................................................. 3

        2.    Any Such Conspiracy Would Span Multiple Separate Product Markets. ................................................................................................ 4

        3.    The Direct Purchasers Cannot Plausibly Allege that EEA Joined or Participated in Any Conspiracy To Restrain Trade in Markets in which It Has Never Participated. .............................................................. 5

CONCLUSION ..................................................................................................................... 6

**INTRODUCTION**

While joining in the defendants' joint motions to dismiss, Epson Electronics America, Inc. ("EEA") also separately moved to dismiss both the Indirect-Purchaser Plaintiffs' Consolidated [Amended] Complaint and the Direct-Purchaser Plaintiffs' Consolidated Amended Complaint ("DP-CAC") on the grounds that neither complaint stated any plausible claim of conspiracy against EEA, a company that, since April 2005, has resold raw, small TFT-LCD panels.

Acknowledging that their complaint did not state a claim of conspiracy in markets involving small TFT-LCD panels, the Indirect Purchasers did not oppose EEA's motion, and have instead already dismissed EEA voluntarily.

The Direct Purchasers are more stubborn. But while they feverishly fan the cold embers of their complaint hoping that a plausible claim against some defendant might emerge, they do nothing that might even begin to kindle a claim against EEA. There is little wonder in that. Even when embellished by the arguments in the Direct Purchasers' opposition brief, there is simply nothing about EEA in their complaint that might satisfy the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Like the Indirect Purchasers' complaint, the Direct Purchasers' complaint ought be dismissed as against EEA.

**DISCUSSION**

**A.  The Complaint Nowhere Alleges that Epson Electronics America, Inc. Joined or Participated in Any Conspiracy To Restrain Trade in Any Market.**

Beyond introducing EEA as a company that sold TFT-LCD panels (DP-CAC ¶ 35), the Direct Purchasers' complaint only mentions EEA once more, in the context of an elliptical reference to a press report about the existence of an investigation of the TFT-LCD industry in Japan (DP-CAC ¶ 172). Nowhere in the DP-CAC is there <u>any</u> allegation that EEA joined or participated in any conspiracy, much less enough <u>factual</u> matter <u>plausibly</u> to suggest that EEA did so.

As *Twombly* has now made abundantly clear, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." 127 S.Ct. at 1974. Plaintiffs must include <u>factual</u> allegations about <u>each</u> of the parties they name as a defendant that plausibly provide grounds for a claim for relief against that defendant. "Plaintiffs

cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to [the moving defendant]." *Jung v. Ass'n of Am. Med. Colleges*, 300 F.Supp.2d 119, 163 (D.D.C. 2004) (granting Rule 12(b)(6) motion to dismiss). Plaintiffs cannot survive by pleading "in entirely general terms without any specification of any particular activities by any particular defendant[.]" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (affirming grant of Rule 12(b)(6) motion to dismiss). And as recently explained by the Ninth Circuit, "[T]he district court was not required to accept appellants' conclusion that [certain named defendants] were co-conspirators of [other named defendants] without any evidentiary facts to support such conclusion." *Kendall v. Visa U.S.A., Inc.*, __ F.3d __, 2008 WL 613924 at *6 (9th Cir. 2008).

Despite efforts to obfuscate by citing cases decided before the Supreme Court's *Twombly* opinion, Direct Purchasers ultimately concede that this is the law. (DP Opp. at 23.) Amid numerous obsolete citations to pleading cases decided in the 1980s and 1990s, Direct Purchasers quote from the post-*Twombly* opinion in *In re OSB Antitrust Litig.*, 2007 WL 2253419 at *5 (E.D. Pa. 2007), "[T]he plaintiff must allege that each individual defendant joined the conspiracy and played some role in it." Their candor is only momentary, however. Direct Purchasers quickly attempt to bury this concession in a series of inapposite citations to cases discussing the standard for proof of conspiracy on motions for summary judgment and the standard of proof that might support vicarious liability for parties that properly have been alleged and proven to have joined and participated in a conspiracy. (*See* DP Opp. at 23-24, citing *In re Flat Glass*, 385 F.3d 350, 363 (3d Cir. 2004); *In re Bulk Popcorn Antitrust Litig.*, 783 F.Supp. 1194, 1197 (D. Minn. 1991); and *Beltz Travel Service v. Int'l Air Travel Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980).) Such cases are entirely beside the point, where plaintiffs have not even pleaded facts plausibly suggesting that EEA joined and participated in any conspiracy in the first place.

Another example is Direct Purchasers' citation to the recent opinion *In re Rubber Chemicals*, 504 F.Supp.2d 777 (N.D. Cal. 2007). Direct Purchasers mischaracterize Judge Jenkins' discussion at page 790 of that opinion, with respect to allegations against individual defendant Peter D. Welch, as follows: "([A]llegations of defendant's involvement in agreement to implement price

increases and other allegations of 'general participation' in alleged conspiracy were sufficient to state an antitrust claim.)" What Judge Jenkins actually said was (504 F.Supp. at 790):

> "First, Plaintiffs' allegations against Welch are <u>specific</u> and <u>substantial</u> enough to state a cognizable claim. <u>Plaintiffs allege far more than that Welch merely met with competitors—they specifically allege his involvement in agreeing to implement price increases</u>. (Amended Complaint ¶¶ 66(a), 66(h), 66(j) & 66(l).) More, the complaint adequately alleges Welch's general participation in the allege conspiracy to fix rubber chemical prices. (Amended Complaint ¶¶ 25, 59-63.)" [Emphasis added.]

This describes a standard of pleading that the Direct Purchasers do not even pretend to satisfy with respect to EEA. While Direct Purchasers argue that they have provided "factual context" to nudge their allegations from the conceivable to the plausible, none of the context of the DP-CAC plausibly relates to markets involving small TFT-LCD panels.

To have stated an antitrust claim against EEA, the plaintiffs should have set forth factual averments about EEA's conduct plausibly suggesting that it agreed to join and participate in the alleged conspiracy to restrain trade. But nowhere in the DP-CAC have the Direct Purchasers said a single thing about EEA that might support even an inference that it joined or participated in any conspiracy. One must assume this failure properly arises from the absence of a basis under Rule 11 for any such allegation. Contrary to Direct Purchasers' assertion that EEA or any defendant in this action is seeking a "free pass" (DP Opp. at 3), EEA seeks only a factually based, plausible statement of a claim. EEA seeks to require that Direct Purchasers, like any plaintiff, refrain from firing a half-cocked complaint and subjecting EEA to burdensome litigation without a properly articulated basis.

**B.  By Overreaching in Alleging a Single Conspiracy Spanning Multiple Separate Product Markets, the Direct-Purchaser Plaintiffs Obliterate Any Prospect of Stating a Plausible Claim Against EEA.**

An appreciation of the astounding scope of the conspiracy that Direct Plaintiffs say they have undertaken to prove, makes it all the more clear that Direct Purchasers have not pled, and cannot plead, facts plausibly suggesting that EEA joined or participated in any such thing.

**1.  Direct Purchasers Say They Are Alleging a Single Conspiracy Encompassing All Categories of TFT-LCD Panels and Products Containing Them.**

Direct Purchasers contend that there exists a single conspiracy to restrain trade in, across, and among the numerous markets for raw TFT-LCD panels and the numerous markets for products

containing TFT-LCD panels.  (DP-CAC ¶¶ 191, 1.)  Lest there be any doubt about the full extent of the expansive, single conspiracy that is being alleged, Direct Purchasers also say in their Opposition brief that "Plaintiffs allege a single conspiracy to set prices for all categories of TFT-LCDs, including 'small' TFT-LCDs as well as 'large' ones." [Emphasis added.]  (DP Opp. at 24.)  Direct Purchasers take this position, despite the fact that, beyond acknowledging the existence of separate and distinct end-use markets for "small" TFT-LCD display panels and "large-area" TFT-LCD display panels (DP-CAC ¶¶ 85, 86), they say nothing more in their complaint about any conspiracy in any market involving small TFT-LCD panels or products containing them.  The absence of any allegation explaining why, in these circumstances, such a single, expansive conspiracy would make any economic sense, or how such a thing could ever be organized or sustained, provides reason enough, alone, to dismiss the DP-CAC for failure to state a claim to relief that is plausible on its face.

**2.     Any Such Conspiracy Would Span Multiple Separate Product Markets.**

In paragraphs 85 and 86 of the DP-CAC Direct Purchasers acknowledge some of the distinctions among the numerous markets in which "small" TFT-LCD display panels and "large-area" TFT-LCD display panels are traded, including the many separate and distinct end-use markets into which they are sold.  Undeterred by their own averments, however, Direct Purchasers now argue that the fact that small TFT-LCD panels and large TFT-LCD panels are traded in a variety of distinct and separate markets is "contrary to the allegations of the complaint." (DP Opp. at 24.)  Of course, nothing about these circumstances is contrary to the allegations of the complaint. The DP-CAC recognizes the fact that there are multiple markets in which TFT-LCD panels are traded. (DP-CAC ¶¶ 85, 86.)  But more importantly, even under Rule 12(b)(6) plaintiffs are not permitted to pretend that things are contrary to reality simply by refusing to mention them in their complaint in hope of withstanding a motion to dismiss.  It is to prevent such evasive pleading that the Court is permitted to take judicial notice of facts that are not subject to reasonable dispute, regardless of what the plaintiffs might say in their complaint.  Fed.R.Evid. 201; *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

While the full contours and boundaries of each of the product markets implicated by Direct Purchasers' allegations may have to await a complete record, it is not subject to reasonable dispute

that there are multiple separate product markets in which "small" TFT-LCD display panels and "large-area" TFT-LCD display panels are traded. The Court may take judicial notice of that circumstance now. Any allegation of a single conspiracy spanning all "TFT-LCD Products," as defined by Direct Plaintiffs, would therefore encompass multiple separate product markets. No contrary interpretation would be tenable, much less plausible.

### 3. The Direct Purchasers Cannot Plausibly Allege that EEA Joined or Participated in Any Conspiracy To Restrain Trade in Markets in which It Has Never Participated.

Direct Purchasers' allegation of a single conspiracy spanning multiple separate product markets obliterates any prospect of them stating a plausible claim against EEA. By so overreaching in asserting the existence of a single, all-encompassing conspiracy in, across, and among the numerous markets for raw TFT-LCD panels of all sizes and specifications and the numerous markets for products of all sorts containing TFT-LCD panels, Direct Purchasers have staked out a position in which it is inconceivable that EEA, who only sold raw, small TFT-LCD panels, could ever plausibly have joined or participated in such a conspiracy. Again blindly denying that which is indisputable, Direct Purchasers argue that the fact that EEA sells only small TFT-LCD panels is also something that they left out of their complaint and that should not be considered on this motion. In doing this, however, Direct Purchasers pretend ignorance of the very grounds upon which the Indirect-Purchaser plaintiffs have now dismissed their claims against EEA. Rule 12(b)(6) does not permit Direct Plaintiffs to ignore reality by planting their heads in the sand in this way, nor, as *Twombly* shows, does Rule 8 (or Rule 11 for that matter) provide plaintiffs a blank check to plead what they will.

Direct Purchasers cannot plausibly allege that EEA joined or participated in a conspiracy to restrain trade in markets in which it does not participate. As defined by Direct Purchasers, "TFT-LCD Products" encompasses at least four, separate, broad categories of markets.[1] At a minimum, it

---

[1] In all likelihood, upon complete analysis, this artificial construct would be understood to encompass dozens of separate product markets distinguished both by the absence of supply side substitution possibilities and by the unique technological and cost constraints of the applications for which TFT-LCD panels are demanded. Nonetheless, it is already clear that Direct Purchasers' allegation of a single conspiracy encompassing all such markets is unsupported by any factual averments in the DP-CAC, much less sufficient factual matter plausibly to suggest that any such thing has existed.

would encompass the separate and distinct categories of markets involving 1) raw, large TFT-LCD panels, 2) appliances containing large TFT-LCD panels, 3) raw, small TFT-LCD panels, and 4) appliances containing small TFT-LCD panels. EEA only resells raw, small TFT-LCD panels. EEA cannot be compared with companies that manufacture and sell large TFT-LCD panels, or vertically integrated manufacturers of appliances containing TFT-LCD panels of any size or specification.

Competition occurs within markets. Restraints on competition must also occur within markets. As explained in *Twombly*, the sufficiency of a complaint turns on how the alleged conduct is "viewed in light of common economic experience." 127 S.Ct. at 1971. An enterprise would have no plausible reason or means to join or participate in a conspiracy to restrain trade in markets in which it does not participate. Direct Purchasers cannot plausibly suggest, therefore, that EEA would have joined or participated in any alleged restraint in the separate categories of markets involving large TFT-LCD panels, appliances containing large TFT-LCD panels, or even appliances containing small TFT-LCD panels. Nothing could be done by EEA to support any such conspiracy, and EEA would gain nothing by participating in any such thing. Any allegation suggesting that EEA might have behaved in such a way could never be plausible, and, therefore, could never support a claim under the standard of *Twombly*.

## CONCLUSION

For these reasons, and for all the reasons set forth in the memoranda submitted on behalf of all defendants to dismiss the DP-CAC and the IP-CAC, we respectfully submit that the claims against EEA in the Direct Purchasers' complaint ought, like the claims in the Indirect Purchasers' complaint, be dismissed. Nowhere in the DP-CAC is there any allegation that EEA joined or participated in any conspiracy, much less enough factual matter plausibly to suggest that EEA joined or participated in the fantastically broad, single conspiracy that Direct Purchasers hypothesize.

DATED: April 3, 2008
KEVIN C. McCANN
SEAN UNGER
PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: /s/ Kevin C. McCann
Kevin C. McCann

Attorneys for Defendant
Epson Electronics America, Inc.

LEGAL_US_W # 58569831