1  SHEPPARD MULLIN RICHTER & HAMPTON LLP
    A Limited Liability partnership
2    Including Professional Corporations
   GARY L. HALLING, Cal. Bar No. 66087
3  JAMES L. McGINNIS, Cal. Bar No. 95788
   MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
4  TYLER M. CUNNINGHAM, Cal. Bar No. 243694
   Four Embarcadero Center, 17th Floor
5  San Francisco, CA  94111-4109
   Telephone:    (415) 434-9100
6  Facsimile:    (415) 434-3947
   E-mail:       ghalling@sheppardmullin.com
7                jmcginnis@sheppardmullin.com
                 mscarborough@sheppardmullin.com
8                tcunningham@sheppardmullin.com

9  Attorneys for Defendant
   SAMSUNG SEMICONDUCTOR, INC.
10
   **[Additional moving defendants and
11  counsel listed on signature pages]**

12

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                   SAN FRANCISCO DIVISION

16

17  In re: TFT-LCD (FLAT PANEL)          Master File No. M-07-1827 SI
    ANTITRUST LITIGATION                 MDL No. 1827
18  _____
19  This Document Relates To:           **DEFENDANTS' REPLY MEMORANDUM
                                        IN SUPPORT OF JOINT MOTION TO
20     ALL INDIRECT ACTIONS             DISMISS INDIRECT-PURCHASER
                                        PLAINTIFFS' CONSOLIDATED
21                                      AMENDED COMPLAINT**

22                                      Date:      April 30, 2008
                                        Time:      2:00 p.m.
23                                      Place:     Courtroom 10, 19th Floor
                                        Judge:     Hon. Susan Illston
24

25

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 3

I.    Indirect Plaintiffs' Opposition Confirms That The IP-CAC Fails To Allege Facts Sufficient To State A Plausible Eleven-Year Price-Fixing Conspiracy ............................. 3

II.   Indirect Plaintiffs Have Failed To Sufficiently Allege Antitrust Standing. ...................... 8

    A.   *AGC* Is the Applicable Test for Antitrust Standing. ................................... 8

        1.   *AGC* Requires Balancing on a Case by Case Basis. .................... 8

        2.   The *Per Se* Standard Does Not Apply to Determine Indirect Plaintiffs' Market Participation. .......................................... 10

    B.   Repealer States that are the Subject of this Motion Endorse *AGC*. ...................... 10

        1.   The Identified Repealer States Apply the *AGC* Factors. ...................... 11

        2.   *Lorix* is the Law of Only Minnesota and Does Not Control Standing. ....... 14

        3.   *DRAM I* and *DRAM II* Were Properly Decided and Should Control. ......... 15

    C.   The *AGC* Factors Apply to Indirect Purchaser Actions Brought Under the Cartwright Act, and the IP-CAC's Cartwright Claim Must Be Dismissed. ............ 16

        1.   The Cartwright Act Does Not Automatically Grant All Indirect Purchasers Standing. ............................................................. 16

        2.   The *AGC* Factors are the Appropriate Means to Determine Antitrust Standing in California. ...................................................... 17

    D.   The IP-CAC Fails to Satisfy *AGC*. ................................................. 18

        1.   Whether the Nature of the Injury Is the Type Antitrust Laws Were Intended to Forestall. ....................................................... 19

        2.   The Directness of the Injury. .................................................. 20

        3.   The Speculative Measure of the Harm. ......................................... 20

        4.   The Risk of Duplicative Recovery. ............................................ 21

        5.   The Complexity in Apportioning Damages. .................................... 22

    E.   Indirect Plaintiffs Do Not Have Standing for Injunctive Relief. ....................... 23

III.    Indirect Plaintiffs Concede That Their Nationwide Unjust Enrichment Claim Must Be Dismissed. ............................................................................................................ 24

IV.    Indirect Plaintiffs Concede That Their Claims Under Mississippi, Nebraska, New Hampshire, Pennsylvania And Rhode Island Law Must Be Dismissed Because No Named Plaintiff Resides In Those States. ........................................................................ 24

V.    Indirect Plaintiffs' Pennsylvania Antitrust Claim Should Be Dismissed Without Leave To Amend. .......................................................................................................... 24

VI.    Indirect Plaintiffs' Claims Under The Consumer Protection Laws Of Arkansas, D.C., Kansas, Maine, Nebraska, New Mexico, New York, Pennsylvania, Rhode Island And West Virginia Fail Because Indirect Plaintiffs Have Not Pleaded Actionable Unconscionable Or Deceptive Conduct. ........................................................ 25

        A.    Ark. Code Ann. § 4-88-101, et seq. ........................................................ 27

        B.    D.C. Code § 28-3904. ............................................................................. 27

        C.    Kan. Stat. Ann. § 50-623, et seq. ............................................................ 28

        D.    Maine Rev. Stat. § 207, et seq. ............................................................... 28

        E.    Nebraska Rev. Stat. § 59-1601, et seq. ................................................... 28

        F.    New Mexico Stat. § 57-12-1, et seq. ...................................................... 29

        G.    New York Gen. Bus. Law § 349 ............................................................. 29

        H.    Rhode Island Gen. Laws § 6-13.1-1, et seq. .......................................... 31

        I.    West Virginia Code § 46A-6-101, et seq. ............................................... 32

VII.   Indirect Plaintiffs' Kansas, Pennsylvania, Rhode Island And West Virginia Consumer Protection Claims Should Be Dismissed Because They Are Not Restricted To Purchases for Personal Use. .......................................................................... 32

VIII.  Each State's Statute Of Limitations Restricts Indirect Plaintiffs' State Law Claims, And They Have Not Pleaded Diligence Required To Toll Those Limitations Periods. ....................................................................................................................... 32

        CONCLUSION ....................................................................................................... 35

W02-WEST:FMI\400772313.6
MDL No. 1827
DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

## TABLE OF AUTHORITIES

Page

FEDERAL CASES

*American Ad Mgmt., Inc. v. General Tel. Co.,*
190 F.3d 1051 (9th Cir. 1999)................................................................................ 19, 20

*Arista Records LLC v. Lime Group LLC,*
532 F.Supp.2d 556 (S.D.N.Y. 2007)................................................................................ 4

*Associated General Contractors of California v. California*
*State Council of Carpenters,* 459 U.S. 519 (1983) ................................................. 8, 10, 20, 21

*In re Auto. Refinishing Paint Antitrust Litig.,*
515 F.Supp.2d 544 (E.D. Pa. 2007) ................................................................................30-31

*Beckler v. Visa U.S.A., Inc.,*
No. Civ. 09-04-C-00030, 2004 WL 2475100 (N.D. Dist. 2004)........................................... 13

*Bell Atlantic Corp. v. Twombly,*
550 U.S. ___, 127 S. Ct. 1955 (2007) ................................................................................ 3, 5, 6

*Bhan v. NME Hospitals, Inc.,*
772 F.2d 1467 (9th Cir. 1985) ................................................................................ 19

*Big Bear Lodging Ass'n. v. Snow Summit, Inc.,*
182 F.3d 1096 (9th Cir. 1999)................................................................................ 10, 17

*Blue Shield v. McCready,*
457 U.S. 465 (1982) ................................................................................ 19

*In re Bulk Extruded Graphite Prods. Antitrust Litig.,*
No. 02-6030, 2007 WL 1062979 (D.N.J. 2007) ................................................................................ 34

*California v. ARC America Corp.,*
490 U.S. 93 (1989) ................................................................................ 21

*Conmar Corp. v. Mitsui & Co (U.S.A.), Inc.,*
858 F.2d 499 (9th Cir. 1988)................................................................................ 33

*Copperweld Corp. v. Independence Tube Corp.,*
467 U.S. 752 (1984) ................................................................................ 4

*D.R. Ward Construction Co. v. Rohn & Haas Co.,*
470 F.Supp.2d 485 (E.D. Pa. 2006) ................................................................................ 12, 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
516 F.Supp.2d 1072 (N.D. Cal. 2007) ("*DRAM I*") ........................................................*passim*

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
No. M 02-1486 PJH, 2008 WL 281109 (N.D. Cal. 2008) ("*DRAM II*")..................... 10, 15, 17

*Eagle v. StarKist Foods, Inc.,*
812 F.2d 538 (9th Cir. 1987)................................................................................ 21

*In re Elevator Antitrust Litig.,*
502 F.3d 47 (2d Cir. 2007)................................................................................ 7

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.,*
500 F.Supp.2d 437 (D.N.J. 2007) ................................................................................ 34

*Erie R.R. Co. v. Tompkins,*
  34 U.S. 64 (1938) ............................................................................................ 33

*Excellus Health Plan, Inc. v. Tran,*
  287 F.Supp.2d 167 (W.D.N.Y. 2003) ............................................................. 31

*Genesco Entertainment v. Koch,*
  593 F.Supp. 743 (S.D.N.Y. 1984) ................................................................... 30

*In re Graphics Processing Units Antitrust Litig.,*
  527 F.Supp.2d 1011 (N.D. Cal. 2007) ("*GPU*") ....................................*passim*

*Illinois Brick Co. v. Illinois,*
  431 U.S. 720 (1977) ................................................................. 9, 11-13, 16-17

*In re Intel Corp. Microprocessor Antitrust Litig.,*
  496 F.Supp.2d 404 (D. Del. 2007) ............................................................ 12, 29

*Kendall v. Visa U.S.A., Inc.,*
  2008 WL 613924 (9th Cir. March 7, 2008) ............................................ 1, 3, 6

*King & King Enterprises v. Champlin Petroleum Co.,*
  657 F.2d 1147 (10th Cir. 1981) ...................................................................... 34

*Knevelbaard Diaries v. Kraft Foods, Inc.*
  232 F.3d 979 (9th Cir. 2000) ................................................................... 10, 17-18

*Leider v. Ralfe,*
  387 F.Supp.2d 283 (S.D.N.Y. 2005) ............................................................... 30

*Lepp v. Gonzales,*
  2005 U.S. Dist. LEXIS 41525 (N.D. Cal. 2005) ........................................ 24-25

*In re Lorazepam,*
  295 F.Supp.2d 30 (D.D.C. 2003) ..................................................................... 11

*MGM Studios, Inc. v. Grokster, Ltd.,*
  269 F.Supp.2d 1213 (C.D. Cal 2003) ......................................................... 17, 21

*In re MTBE Prod. Liab. Litig.,*
  175 F.Supp.2d 593 (S.D.N.Y. 2001) ............................................................... 30

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ......................................................................................... 28

*McCarthy v. Recordex Service, Inc.,*
  80 F.3d 842 (3d Cir. 1996) .............................................................................. 23

*Michelson v. Merrill Lynch Pierce Fenner,*
  669 F.Supp. 1244 (S.D.N.Y. 1987) ................................................................. 29

*In re Monosodium Glutamate Antitrust Litig.,*
  No. 00-MDL-1328, 2003 WL 297287 (D. Minn. Feb. 6, 2003) ...................... 34

*In re New Motor Vehicles Canadian Export Antitrust Litig.*
  350 F.Supp.2d 160 (D. Me. 2004) ....................................................... 25, 29, 31

*Novell, Inc. v. Microsoft Corp.,*
  505 F.3d 302 (4th Cir. 2007) .................................................................. 9, 19, 21

*Ogle v. Salamatof Native Ass'n, Inc.,*
  906 F.Supp. 1321 (D. Alaska 1995) ................................................................ 33

-iv-

*Orr v. Beamon,*
    77 F.Supp.2d 1208 (D. Kan. 1999) ................................................................. 13

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.,*
    890 F.2d 139 (9th Cir. 1989) ......................................................................... 20

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
    2008 WL 426522 (N.D. Cal. Feb. 14, 2008) .......................................... 7, 25, 26, 31

*Tanaka v. Univ. of S. Cal.,*
    252 F.3d 1059 (9th Cir. 2001) ....................................................................... 10

*Townshend v. Rockwell Int'l Corp.,*
    2000 U.S. Dist. LEXIS 5070 (N.D. Cal. 2000) ................................................ 5

*In re Vitamins Antitrust Litig.,* No. MISC 99-197,
    2000 WL 1475705 (D.D.C. May 9, 2000) ...................................................... 33

*Wade v. Danek Med., Inc.,*
    182 F.3d 281 (4th Cir. 1999) ......................................................................... 33

*In re Warfarin Sodium Antitrust Litigation,*
    214 F.3d 395 (3d Cir. 2000) ......................................................................... 23

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    395 U.S. 100 (1969) ..................................................................................... 23


STATE CASES

*Arthur v. Microsoft Corp.,*
    676 N.W.2d 29 (Neb. 2004) .......................................................................... 13

*Bunker's Glass Co. v. Pilkington, PLC,*
    75 P.3d 99 (Ariz. 2003) .............................................................................. 11-12

*Cellular Plus, Inc. v. Superior Court,*
    14 Cal.App.4th 1224 (1993) ..................................................................... 17, 19

*Comes v. Microsoft Corp.,*
    646 N.W.2d 440 (Iowa 2002) ........................................................................ 12

*Consiglio-Tseffos v. Visa U.S.A., Inc .,*
    No. CV 2003-020170 2004 WL 3030043 (Ariz. Super. Dec. 8, 2004) ................. 12

*Cornelison v. Visa U.S.A., Inc.,*
    No. 03-1350 (S.D. Circuit Ct. Sept. 28, 2004) (RJN Exh. C) ............................ 11

*Cox v. Microsoft,*
    8 A.D.3d 39 (N.Y. App. Div. 2004) ................................................................ 31

*Crouch v. Crompton Corp.,*
    No. 02 CVS 4375, 03 CVS 2514, 2004 WL 2414027
    (N.C. Super. Ct. Oct. 28, 2004) ........................................................ 13, 20, 21, 23

*Cruz v. NYNEX Info. Res.,*
    263 A.D.2d 285 (N.Y. App. Div. 2000) .......................................................... 30

*Delanno, Inc. v. Peace,*
    237 S.W.3d 81 (Ark. 2006) ........................................................................... 34

-v-

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

*ERI Max Entm't v. Streisand,*
690 A.2d 1351 (R.I. 1997) ................................................................................ 31, 32

*Franklin Bank, N.A. v. Bowling,*
74 P.3d 308 (Colo. 2003) ......................................................................................... 33

*Friedman v. Microsoft,*
CV 2000-000722 (Ariz. Super. Ct. Nov. 14, 2000) (IP RJN Exh. 11) ................... 12

*Friends Univ. v. W.R. Grace & Co.,*
608 P.2d 936 (Kan. 1980) ........................................................................................ 34

*Goshen v. Mut. Life Ins. Co. of N.Y.,*
98 N.Y.2d 314 (2002) .............................................................................................. 30

*Harrah's Vicksburg Corp. v. Pennebaker,*
812 So. 2d 163 (Miss. 2001) .................................................................................... 11

*Ho v. Visa U.S.A., Inc.,*
787 N.Y.S.2d 677 (N.Y.Sup.Ct. 2004) .................................................................... 11

*Kanne v. Visa U.S.A. Inc.,*
723 N.W.2d 293 (Neb. 2006) ............................................................................ 13, 29

*Knowles v. Visa U.S.A., Inc.,*
No. Civ. A. CV-03-707, 2004 WL 2475284
(Me. Super. Oct. 20, 2004) ....................................................................................... 13

*Little Rock Elec. Contractors v. Entergy Corp.,*
87 S.W.3d 842 (Ark. Ct. App. 2002) ....................................................................... 27

*Lorix v. Crompton Corp.,*
736 N.W.2d 619 (Minn. 2007) ........................................................... 10, 14, 18, 20

*Luscher v. Bayer AG,*
No. CV-2004-014835 (Ariz. Super. Ct. Maricopa Cty. Sept. 14, 2004)................. 12

*Mills v. Forestex Co.,*
108 Cal.App.4th 625 (2003)...................................................................................... 34

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
85 N.Y.2d 20 (1995) ................................................................................................ 30

*Putter v. North Shore Univ. Hosp.,*
858 N.E.2d 1140 (N.Y. 2006) ..............................................................................34-35

*Saxer v. Philip Morris, Inc.,*
54 Cal.App.3d 7 (1975).............................................................................................. 18

*Southard v. Visa U.S.A., Inc.,*
734 N.W.2d 192 (Iowa 2007) ................................................................................... 12

*St. Patrick's Home for the Aged & Infirm v. Laticrete Int'l, Inc.,*
264 A.D. 652 (N.Y. App. Div. 1999)........................................................................ 29

*Stark v. Visa,*
2004 WL 1879003 (Mich. Cir. Ct. 2004).................................................................. 11

*State v. R & A Inv. Co.,*
985 S.W.2d 299 (Ark. 1999) ..................................................................................... 25

-vi-

*Strang v. Visa USA, Inc.,*
   No. 03 CV 011323, 2005 WL. 1403769 (Wis. Cir. Feb. 8, 2005) ........................................ 14

*Tungate v. Maclean-Stevens Studios, Inc.,*
   714 A.2d 792 (Me. 1998) ........................................................................................................ 28

*Union Carbide Corp. v. Superior Court,*
   36 Cal.3d 15 (1984) .........................................................................................................9-10, 18

*Valley Forge Towers v. Ron-Ike F. Ins.,*
   574 A.2d 641 (Pa. Super. 1990) ............................................................................................ 32

*Vinci v. Waste Mgmt., Inc.,*
   36 Cal.App.4th 1811 (1995) ..............................................................................................17-18

*Weaver v. Cabot Corp.,*
   2004 WL 3406119 (N.C. Sup. 2004) ..................................................................................... 20

*In re Wholesale Electricity Antitrust Cases I & II,*
   147 Cal.App.4th 1293 (2007) ................................................................................................ 18

*Wrobel v. Avery Dennison Corp.,*
   No. 05CV1296 (Kansas Dist. Ct. Feb. 1, 2006) (IP RJN Exh. 20) ........................................ 13

## STATE STATUTES

### *Arizona*

1974 Ariz. Sess. Laws, ch. 26,
   § 1 Section 44-1412......................................................................................................... 11

### *Arkansas*

Ark. Code Ann.
   § 4-88-101, et seq. ....................................................................................................... 27
   § 4-88-107(a) ................................................................................................................ 27

### *District of Columbia*

D.C. Code
   § 28-3904........................................................................................................................ 27

### *Kansas*

Kan. Stat. Ann.
   § 50-623, et seq. ........................................................................................................... 28

### *Maine*

Maine Rev. Stat.
   § 207, et seq.................................................................................................................... 28
   § 207(1) ......................................................................................................................... 28

### *Nebraska*

Nebraska Rev. Stat.
   § 59-1601, et seq. ......................................................................................................... 28

*Nevada*

Nev. Rev. Stat.
    § 598 ................................................................................................................ 11

*New Mexico*

New Mexico Stat.
    § 57-1-15 ......................................................................................................... 11
    § 57-12-1, et seq. ............................................................................................ 29

*New York*

New York Gen. Bus. Law.
    § 349 .......................................................................................................... 29-31

*Rhode Island*

Rhode Island Gen. Laws
    § 6-13.1-1, et seq. ......................................................................................... 31

*West Virginia*

West Virginia Code
    § 46A-6-101, et seq. ..................................................................................... 32
    § 46A-6-102(7). ............................................................................................. 32
    § 47-18-16 (1978). ........................................................................................ 11

MISCELLANEOUS

ABA Section of Antitrust Law, Black's Law Dictionary, p. 1274 (8th ed. 2005)
    1 *Antitrust Law Developments*, 549-54 (6th ed. 2007) ..............................8-10

Black's Law Dictionary (8th ed. 2005)............................................................25-26

Fed. Trade Comm'n & U.S. Dep't of Justice,
    *Antitrust Guidelines for Collaborations Among Competitors* § 2.1 (2000) ............................ 4

-viii-

## INTRODUCTION

In their Opposition ("IP Opp."), Indirect Plaintiffs have failed to show why their consolidated complaint ("IP-CAC") does not fail as a matter of law on numerous grounds. For the reasons set forth in Defendants' moving papers and reply briefs,[1] the IP-CAC should be dismissed.

*First*, Indirect Plaintiffs' Opposition fundamentally fails to confront the pleading deficiencies of the IP-CAC under *Twombly* and the Ninth Circuit's opinion in *Kendall v. Visa U.S.A., Inc.*, 2008 WL 613924 (9th Cir. Mar. 7, 2008). Indirect Plaintiffs' Opposition cites no details of any purported agreement, but merely a few stray conclusory statements addressed in Defendants' opening briefs and ignores the "evidentiary facts" actually alleged in the IP-CAC that contradict rather than admit the alleged conspiracy. It identifies no parallel conduct, and, most significantly, no conduct more consistent with collusion than independent action, as *Twombly* requires. Instead, it seeks to hide behind suggestions that the existence of investigations somehow exempt Indirect Plaintiffs from the requirements of *Twombly*, despite the rulings of this District to the contrary.

*Second*, Indirect Plaintiffs do not have standing to sue under the state antitrust and consumer protection laws identified by Defendants. Indirect Plaintiffs are not participants in the allegedly restrained markets for TFT-LCD panels, and therefore, their purported injuries are not of the type antitrust laws were intended to prevent. Indirect Plaintiffs allege they are purchasers of three different types of finished goods – televisions, notebook computers, and monitors – of which TFT-LCD panels are just one of many components. Indirect Plaintiffs' conclusory allegations of pass-on are implausible in view of the many tiers of markets for manufacturing, distribution, and resale for each of the finished goods and render speculative the payment of any overcharge by the Indirect Plaintiffs. Those market conditions demonstrate that there are more "direct" indirect

---

[1] To avoid repetition, Defendants incorporated by reference in their joint motion to dismiss the IP-CAC ("MTD IP-CAC") all arguments and authorities from their joint motion to dismiss the Direct Plaintiffs' consolidated complaint ("MTD DP-CC"). Defendants likewise incorporate by this reference all arguments and authorities from their reply in support of the joint motion to dismiss the DP-CC ("Reply i/s/o MTD DP-CC").

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

purchasers of TFT-LCD panels who would have an incentive to sue, and any potential damages Indirect Plaintiffs allege are too attenuated, speculative, and duplicative to confer standing.

*Third*, Indirect Plaintiffs concede that their nationwide class claim under "common law principles of unjust enrichment" is inadequate and must be dismissed.  Moreover, as Defendants demonstrated in their moving papers, due to the widely varying and often conflicting unjust enrichment law of the fifty states, Indirect Plaintiffs cannot sue under the common law of any one state on behalf of a nationwide class, and, thus, they should not be given leave to do so.

*Fourth*, Indirect Plaintiffs' Opposition concedes or fails to rebut numerous additional, independent deficiencies in the IP-CAC's state antitrust and consumer protection claims:  (a) Indirect Plaintiffs concede that several of these claims fail because no named plaintiff resides in these states; (b) Pennsylvania has no antitrust statute and recognizes no common law right to sue for antitrust violations, and Indirect Plaintiffs have not even attempted to show otherwise; (c) the IP-CAC's vague and conclusory allegations of deceptive and/or unconscionable conduct are inadequate to state a claim under the consumer protection statutes of ten states; and (d) notwithstanding Indirect Plaintiffs' erroneous arguments to the contrary, they cannot bring claims on behalf of businesses that purportedly purchased TFT-LCD products under state regimes that limit such claims to those involving purchases for "personal, family or household use."

*Fifth*, Indirect Plaintiffs cannot evade each individual state's statute of limitations.  Under *Erie*, state – not federal – law applies to the issue of tolling.  Twenty-three of the relevant jurisdictions require that a plaintiff on mere inquiry notice must have diligently investigated his or her claim to assert fraudulent concealment and toll the statute of limitations; four other jurisdictions refuse to toll claims when a plaintiff has constructive notice of his or her claim.  The IP-CAC relies on "facts" readily available to Indirect Plaintiffs throughout the alleged class period and asserts that these "facts" sufficiently state a claim under *Twombly* – it cannot also be true that the same publicly available information failed to put them on constructive notice or even arouse a suspicion to put them on inquiry notice.  Where the allegations Indirect Plaintiffs rely on were gleaned from public sources available throughout the period at issue, tolling must be denied as a matter of law.

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

**ARGUMENT**

**I.**   **Indirect Plaintiffs' Opposition Confirms That The IP-CAC Fails To Allege Facts Sufficient To State A Plausible Eleven-Year Price-Fixing Conspiracy.**

Instead of acknowledging and addressing the factual deficiencies in the IP-CAC detailed in Defendants' opening briefs (*see* MTD IP-CAC at 3-9; MTD DP-CC at 4-23), and the revised pleading standards for Section 1 conspiracy claims established by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), Indirect Plaintiffs' *Twombly* arguments barely mention Defendants' opening briefs or the allegations of their own complaint.  Instead, they reiterate vague and conclusory allegations and stray statements that are entirely consistent with conduct of individual companies acting in their own independent economic interests absent the alleged conspiracy, and incorrectly assert that "*Twombly* did not raise the pleading standards for antitrust cases."  IP Opp. at 2 n.2.  However, as addressed in the Reply i/s/o MTD DP-CC, the Ninth Circuit in *Kendall v. Visa U.S.A., Inc.*, 2008 WL 613924, at *4 & n.5 (9th Cir. Mar. 7, 2008), consistent with other courts, confirmed that, at least for antitrust complaints, *Twombly* does change the pleading burdens.  The allegations of the IP-CAC, like those of the DP-CC, do not meet those burdens.

Indirect Plaintiffs' Opposition simply avoids responding to the points addressed in Defendants' opening briefs and the standards imposed by the Supreme Court in *Twombly*, the Ninth Circuit in *Kendall*, and courts around the nation in other post-*Twombly* motion to dismiss rulings.  Indirect Purchasers do not dispute that their complaint sets forth even fewer supporting allegations than the Direct Purchasers' complaint.  *See* MTD IP-CAC at 3-4.  As set forth in the Reply i/s/o MTD DP-CC regarding application of the proper standard under *Twombly*, the overlapping allegations upon which both sets of plaintiffs rely do not state a plausible conspiracy.

In their Opposition, Indirect Plaintiffs fail to address Defendants' showing that the allegations of the IP-CAC are either deficient or go so far as to contradict the alleged conspiracy in many ways, including because:

- the IP-CAC does not describe the economic conditions of the various panel markets over the eleven year putative class period, the pricing structure for TFT-LCD panels in those markets, or how the purported conspiracy affected any specific prices (MTD IP-CAC at 4);

-3-

- the IP-CAC contains no specific price allegations for any panel manufacturer or model at any time, and no allegations of parallel conduct (*id*.);

- the IP-CAC contains average industry-wide prices only for one product for one three-month period over the eleven-year putative class period, and that allegation does not in any way suggest improper or collusive conduct (*id*. & n.5);

- while it asserts unidentified upward pricing trends, the IP-CAC alleges only two, or at most three, brief periods of rising prices over the eleven-year putative class period and concedes that prices for TFT-LCD panels fell substantially and steadily throughout the putative class period even though demand increased exponentially during that same period (*id*. at 5);

- although the IP-CAC alleges a conspiracy to restrict output, it admits that Defendants invested billions of dollars to increase supply and reduce prices by developing at least eight generations of fabrication plants, and that new entrants further increased capacity (*id*.);

- the IP-CAC itself provides explanations of intermittent periods of tight supply that have nothing whatsoever to do with any illegal conspiracy, including surging demand for larger displays, the expense of retrofitting old lines to produce panel sizes newly in demand, and the inefficiency of fabrication plants not designed for the panel sizes in demand (*id*. at 6-7);

- the statements upon which the IP-CAC relies to suggest an eleven-year conspiracy expressly reference not conspiracies, but rather "fierce competition" and "price fluctuations" in the marketplace (*id*. at 8); and

- as to most, if not all, Defendants, there are no allegations whatsoever of statements or even parallel conduct in the IP-CAC, and at most the IP-CAC alleges mere opportunities to conspire (*id*. at 9 & n.14).

Instead of addressing the substance of these points, Indirect Plaintiffs' Opposition merely references a few conclusory summations of multiple paragraphs of the IP-CAC. *See* IP Opp. at 5. These points are addressed below.

*First*, Indirect Plaintiffs reference cross-licensing and other cooperative agreements. *See* IP-CAC ¶¶ 121-123. As noted in the MTD DP-CC at 21 & n.19, such allegations amount to nothing more than an opportunity to conspire and do not suggest an inference of the conspiracy alleged. *See*, *e.g.*, *Arista Records LLC v. Lime Group LLC*, 532 F.Supp.2d 556 (S.D.N.Y. 2007). Moreover, the IP-CAC itself admits the pro-competitive nature of such arrangements because they increase manufacturing efficiency by allowing "different manufacturers with different generation fabs . . . to make only the most efficient size panels for that fab." IP-CAC ¶ 120. *See also Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984) ("joint ventures . . . hold the promise of increasing a firm's efficiency

1   and enabling it to compete more effectively"); Fed. Trade Comm'n & U.S. Dep't of Justice,

2   *Antitrust Guidelines for Collaborations Among Competitors* § 2.1 (2000) (recognizing potential

3   pro-competitive benefits of joint ventures, including ability "to offer goods and services that are

4   cheaper, more valuable to consumers or brought to the market faster than would be possible absent

5   collaboration"); *Townshend v. Rockwell Int'l Corp.*, 2000 U.S. Dist. LEXIS 5070, at *25 (N.D.

6   Cal. 2000) ("[g]enerally, cross-licensing is considered a pro-competitive practice").

7        *Second*, Indirect Plaintiffs assert that the IP-CAC alleges that "while production

8   costs were decreasing for each of the Defendants, their LCD prices were increasing," citing IP-

9   CAC ¶¶ 147-154.  But the IP-CAC makes no allegations whatsoever as to any individual

10  Defendant's costs or prices.  Moreover, it acknowledges that over virtually the entire eleven-year

11  putative class period prices were not *increasing*, they were *decreasing* – based on huge

12  investments in new capacity by those supposedly conspiring to reduce capacity and new entrants

13  to the markets – and even though demand for TFT-LCDs was exploding.  *See* MTD IP-CAC at 4-

14  5; MTD DP-CC at 11-12.  Although the IP-CAC alleges a few very brief periods of price

15  increases and makes the conclusory assertion that these purported "economic aberration[s]" were

16  "the intended and necessary result of defendants' conspiracy to raise, fix, maintain, or stabilize the

17  prices of LCD panels," Indirect Plaintiffs' Opposition does not even attempt to dispute that the IP-

18  CAC itself alleges several benign bases for these natural cyclical ups and downs.  *See* MTD IP-

19  CAC at 4-5 & nn.5-6; MTD DP-CC at 12-18.  Even apart from the failure to allege parallel

20  conduct by any, let alone all, of the Defendants, *Twombly* does not allow an inference of

21  conspiracy based upon such vague allegations equally explainable by market forces in the absence

22  of a conspiracy.  *See Twombly*, 127 S. Ct. at 1964.

23        *Third*, Indirect Plaintiffs assert that the IP-CAC alleges public statements by certain

24  Defendants' executives either purportedly inviting collusion to increase prices, citing IP-CAC ¶¶

25  158-160, or suggesting the existence of a price fixing agreement, citing IP-CAC ¶¶ 161-170.

26  However, Indirect Plaintiffs' Opposition makes no attempt to address Defendants' showing that the

27  cited statements (allegedly made very late in the putative eleven-year class period) do not

28  reference any price fixing agreement existing for eight or nine years as alleged in the IP-CAC, but

1   rather refer to "fierce competition" and "price fluctuations" that existed in the markets.  MTD IP-

2   CAC at 8-9 & nn.10-13;[2] MTD DP-CC at 18-20.  What Indirect Plaintiffs attempt, in their

3   Opposition at 5, to stretch into "statements that a price fixing agreement had been reached"

4   amount to no such thing.  *See* IP-CAC ¶¶ 161-170.  At most, these paragraphs reference varying

5   reactions by a few of the many Defendants to oversupply and fluctuations in demand in the

6   markets, and conduct in each individual party's own economic interest absent a conspiracy.  *See*

7   MTD DP-CC at 18-20.  As the Court explained in *Twombly*, even if any such conduct could be

8   construed as parallel conduct, no inference of a conspiracy could be drawn from it.  *See Twombly*,

9   127 S. Ct. at 1964; Reply i/s/o MTD DP-CC, Section II.C.

10          *Fourth*, Indirect Plaintiffs' Opposition at 5 references certain Defendants'

11   attendance at trade shows at which Plaintiffs contend TFT-LCD pricing, supply-and-demand, and

12   other topics were discussed, citing IP-CAC ¶¶ 171-174.  As discussed in the opening briefs, mere

13   attendance at trade shows is not a basis upon which to infer an agreement, and does not render

14   conclusory allegations of conspiracy plausible.  *See, e.g.*, MTD DP-CC at 21 & n.18; *Twombly*,

15   127 S. Ct. at 1966, 1971 n.12; *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d

16   1011, 1023 (N.D. Cal. Sept. 27, 2007) *("GPU")*.

17          *Fifth*, Indirect Plaintiffs reference investigations and an allegation that at least one

18   amnesty applicant is cooperating with the DOJ's investigation, citing IP-CAC ¶¶ 175-180.

19   Indirect Plaintiffs' Opposition at 8-9 attempts to suggest that the existence of such investigations

20   allows this Court to ignore or modify the pleading requirements established by the Supreme Court

21   in *Twombly*.  Indirect Plaintiffs omit any discussion of the contrary conclusions, and law of this

22   Court, as expressed by Judge Alsup in *GPU* and Judge Wilken in *SRAM*.  As explained by Judge

23   Alsup, the existence of such an investigation "carries no weight in pleading an antitrust conspiracy

24   claim":

25

26   [2]        As noted in MTD IP-CAC at 8 & n.11, Indirect Plaintiffs failed to comply with the Court's
            Order that they produce documentation from which they purportedly quote these
27          statements.  Despite requests by Defendants, Indirect Plaintiffs still have not produced
            those documents referred to in paragraphs 155 to 170.
28

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1       It is unknown whether the investigation will result in indictments or
nothing at all.  Because of the grand jury's secrecy requirement, the
2       scope of the investigation is pure speculation.  It may be broader or
narrower than the allegations at issue.  Moreover, if the Department
3       of Justice made a decision *not* to prosecute, that decision would not
be binding on plaintiffs.  The grand jury investigation is a non-
4       factor.

5  *GPU*, 527 F.Supp.2d at 1024 (emphasis in original).  Judge Wilken concurred in the *SRAM* case,

6  reaching the conclusion that "the existence of the investigation does not support Plaintiffs' antitrust

7  conspiracy claims."  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2008 WL

8  426522, at *5 (N.D. Cal. Feb. 14, 2008).[3]

9       As to the discussion of various cases in Indirect Plaintiffs' Opposition at 5-8,

10  Defendants refer the Court to their Reply i/s/o MTD DP-CC, Sections I & II.  The facts alleged in

11  the IP-CAC discussed above and in the opening briefs, like the facts alleged in the DP-CC, fail to

12  allege a plausible conspiracy under the applicable standards established in *Twombly*, *Kendall*, and

13  various cases following the *Twombly* standards.

14       Finally, citing *SRAM*, and attempting to compare the IP-CAC to the completely

15  different allegations of specific exchanges of price information in the *SRAM* complaint, Indirect

16  Plaintiffs suggest in their Opposition at page 10 that the IP-CAC adequately alleges that each

17  Defendant joined into the conspiracy alleged and that ¶¶ 155-71 of the IP-CAC "detail[]

18  Defendants' various information exchanges with respect to both price and supply."  However, as

19  discussed in the opening briefs and the Reply i/s/o MTD DP-CC, no information exchanges such

20  as those alleged in *SRAM* are alleged in either the DP-CC or the IP-CAC.  Any generalized

21  suggestions of exchange of information do not suffice.  *See In re Elevator Antitrust Litig.*, 502

22  F.3d 47, 50-51 & n.5 (2d Cir. 2007).

23       The IP-CAC therefore should be dismissed as to each and every Defendant.

24

25

26

27

---

[3]     As to other cases and rebuttal of cases cited by Plaintiffs, *see* MTD DP-CC at 22-23 and
28  Reply i/s/o MTD DP-CC, Section II.C.

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

**II.      Indirect Plaintiffs Have Failed To Sufficiently Allege Antitrust Standing.**

Indirect Plaintiffs' mischaracterization of Defendants' standing argument does not cure the IP-CAC's fatal inadequacies.  The state law governing the various claims Defendants have moved to dismiss does in fact apply the standing analysis established in *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 537-45 (1983) ("*AGC*").[4]   Because Indirect Plaintiffs are not participants in the allegedly restrained markets for TFT-LCD panels, because their conclusory allegations of limited participation in a generic market for finished goods containing TFT-LCD panels do not satisfy *AGC*, and because any potential harm to Indirect Plaintiffs is too attenuated and inadequately pled, the IP-CAC must be dismissed.

**A.      *AGC* Is the Applicable Test for Antitrust Standing.**

Indirect Plaintiffs repeatedly mischaracterize Defendants' standing argument and do not even attempt to show how their purported claims satisfy the controlling *AGC* factors for standing.  Instead, Indirect Plaintiffs repeatedly assert they have alleged "a *per se* antitrust violation (horizontal price fixing)" (IP Opp. at 11), and, thus, evidently need not plead either any relevant market definition requirements or that they participate in the same market as Defendants. *Id.* at 23-24.  But that is not the law in the relevant states, and Indirect Plaintiffs "cannot satisfy antitrust standing requirements by simply invoking their status as indirect purchasers."  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F.Supp.2d 1072, 1089 (N.D. Cal. 2007) ("*DRAM I*").

**1.      *AGC* Requires Balancing on a Case by Case Basis.**

Indirect Plaintiffs wrongly claim that Defendants' standing argument effectively seeks a bright-line rule that would essentially bar all indirect purchaser claims and even preclude state *Illinois Brick* repealer statutes from providing "a damage remedy to the plaintiffs in *Illinois*

---

[4]      Defendants seek dismissal on standing grounds of Indirect Plaintiffs' (a) antitrust claims under the laws of Arizona, California, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, West Virginia and Wisconsin; and (b) consumer protection claims under the laws of Nebraska, New York and North Carolina.  *See* IP-CAC ¶¶ 247-48, 250-53, 255-60, 263, 266-67, 278, 281-82.

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   *Brick*."  IP Opp. at 14.  Merely requiring a purported indirect purchaser to satisfy the fundamental

2   *AGC* standing principles would do no such thing.  Moreover, *Illinois Brick* involved – and the

3   *Illinois Brick* repealer statutes are directed at – a factual situation very different than Indirect

4   Plaintiffs allege here.  Unlike here, the plaintiffs in *Illinois Brick* were "indirect purchasers"

5   participating in the market directly affected by the alleged conspiracy – *i.e.*, they purchased the

6   exact same concrete block as the direct purchasers, not some different finished product in a

7   collateral market that merely contained the concrete block as a component element.  *Illinois Brick*

8   *Co. v. Illinois*, 431 U.S. 720, 726-27 (1977).  They contracted with general contractors to build

9   facilities using these concrete blocks (*id*.), whereas Indirect Plaintiffs here bought pre-made

10  finished goods with TFT-LCD panels from retailers and others.[5]  More important, the *Illinois*

11  *Brick* plaintiffs specifically alleged that they paid "more than $3 million higher by reason of this

12  price-fixing conspiracy."  *Id.*  By contrast, Indirect Plaintiffs did not participate in the same

13  markets as those that purchased the allegedly restrained TFT-LCD panels, which are mere

14  components in varying finished goods, and they have been unable to allege any increased prices

15  they paid associated with the purported anti-competitive conduct.

16          Indirect Plaintiffs also wrongly assert that the Fourth Circuit rejected Defendants'

17  argument in *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007).  IP Opp. at 22-24.  On

18  the contrary, the Fourth Circuit actually applied *AGC*, and in that case found Novell had standing,

19  in part because – unlike here – Microsoft had directly aimed its anticompetitive conduct in the

20  operating systems market at the markets for office-productivity applications in which Novell

21  participated.  *Id.* at 315-19.[6]  Moreover, the Fourth Circuit expressly held "[t]hat a plaintiff's status

22

23  [5]     Similarly, the *Union Carbide* plaintiffs indirectly purchased the natural gas through
        distributors, and it was not incorporated into another product, unlike here.  *Union Carbide*
24      *Corp. v. Superior Court*, 36 Cal.3d 15, 19 (1984).

25  [6]     Applying *AGC*'s five factors, the court determined:  (1) the injury alleged is "an injury to
        *competition* that the antitrust laws were intended to forestall" because "Microsoft
26      specifically targeted [Novell's] products for destruction as a means to damage competition
        in the operating-systems market"; (2) analysis of the causal link between Microsoft's
27      antitrust activities and the decline in market share for Novell's office-productivity
        applications was "straightforward"; (3) "Microsoft's withholding of information from
28      Novell's software developers . . . clearly has no more direct victim than Novell; (4) Novell
        was "the most direct victim with incentive to serve as a private attorney general"; and (5)

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   as a consumer or a competitor in the restrained market is *relevant* to the issue of antitrust

2   standing."  *Id.* at 312.

3      **2.**  **The *Per Se* Standard Does Not Apply to Determine Indirect Plaintiffs'**

4        **Market Participation.**

5       Indirect Plaintiffs next assert "'[m]arket definition generally is not required in *per*

6   *se* cases,'" and wrongly suggest that they need not allege their own participation in the TFT-LCD

7   panel market.  IP Opp. at 23-24 (quoting ABA Section of Antitrust Law, 1 *Antitrust Law*

8   *Developments*, 550 (6th ed. 2007)).  But even plaintiffs asserting a purported *per se* violation still

9   must demonstrate that they have "antitrust standing" under *AGC.  Knevelbaard Diaries v. Kraft*

10  *Foods, Inc.* 232 F.3d 979, 986-87 (9th Cir. 2000) (applying the *per se* rule regarding defendants'

11  market power while still requiring plaintiffs to satisfy *AGC* standing); *Big Bear Lodging Ass'n v.*

12  *Snow Summit, Inc.*, 182 F.3d 1096, 1102 (9th Cir. 1999) (dismissing some *per se* antitrust claims

13  for lack of standing due to failure to allege antitrust injury).  As the Supreme Court itself has made

14  clear, that a plaintiff's purported claim is "encompassed by the Clayton Act does not end the

15  inquiry."  *AGC*, 459 U.S. at 537.

16     **B.**  **Repealer States that are the Subject of this Motion Endorse *AGC*.**

17      Indirect Plaintiffs also have failed to show that a simple allegation of horizontal

18  price-fixing is sufficient to plead antitrust standing for indirect purchasers under the repealer

19  states' antitrust laws.  IP Opp. at 11-12.  Although they urge this Court to follow the Minnesota

20  Supreme Court's purported rejection of the *AGC* standing doctrine in *Lorix v. Crompton Corp.*,

21  736 N.W.2d 619 (Minn. 2007), they mischaracterize the Minnesota court's holding and nowhere

22  explain why the courts in the relevant jurisdictions here would follow that decision. IP Opp. at 16-

23  21.  Finally, they neither effectively challenge nor distinguish this District's reasoned application

24  of *AGC* in *DRAM I* and *DRAM II*.[7]  *Id.* at 18-21.

25  _____

26      because Microsoft's conduct was "*directly* aimed at Novell, there is little risk that any
    damages Novell might prove would need to be allocated or apportioned among any more-
    directly injured parties."  *Id.* at 316-19.

27  [7] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH,

28    2008 WL 281109 (N.D. Cal. 2008) ("*DRAM II*").

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1.   **The Identified Repealer States Apply the *AGC* Factors.**

Courts have consistently recognized that "Plaintiffs cannot satisfy antitrust standing requirements by simply invoking their status as indirect purchasers."  *DRAM I*, 516 F.Supp.2d at 1089.  Indirect Plaintiffs fail to cite any authority in opposition to the application of *AGC* in the seven states that look to federal law to interpret their antitrust or consumer protection statutes: Michigan,[8] Mississippi,[9] Nevada,[10] New Mexico,[11] New York,[12] South Dakota,[13] and West Virginia.[14] So, too, the nine other states would apply the *AGC* factors to resolve plaintiffs' standing:

(a)   **Arizona** – Arizona's statutory harmonization provision urges courts applying the Arizona Uniform State Antitrust Act to "use as a guide interpretations given by the federal courts to comparable federal antitrust statutes," and thus strongly suggests Arizona law follows the *AGC* standing doctrine. 1974 Ariz. Sess. Laws, ch. 26, § 1 Section 44-1412.  While it

---

[8]   *Stark v. Visa U.S.A., Inc.*, No. 03-055030-C2, 2004 WL 1879003 at *2-*4 (Mich.Cir.Ct. 2004) ("[T]his court agrees with Defendants that it does not necessarily follow that Michigan's repeal of the *Illinois Brick* rule also eliminated the *Associated General Contractors* standing requirement.").

[9]   *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So.2d 163, 171-74 (Miss. 2001) (demonstrating that Mississippi courts are guided by federal law in interpreting their antitrust statutes through the application of the *Noerr-Pennington* doctrine to Mississippi state law).

[10]   Nev. Rev. Stat. § 598A.050 ("The provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes.").

[11]   N.M. Stat Ann. § 57-1-15 ("[t]he Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws.").

[12]   *Ho v. Visa U.S.A., Inc.*, 787 N.Y.S.2d 677 (N.Y.Sup.Ct. 2004), *aff'd*, 793 N.Y.S.2d 8 (N.Y.App.Div. 2005), *appeal den.*, 883 N.E.2d 708 (N.Y. 2005) (applying the *AGC* factors to deny plaintiffs standing while distinguishing the position of plaintiffs in *In re Lorazepam*, 295 F.Supp.2d 30, 37 (D.D.C. 2003), where "the aim of the manufacturers' preclusive conduct was to charge the elevated prices of which the plaintiffs complained."). *See* IP Opp. at 25.

[13]   *Cornelison v. Visa U.S.A., Inc.*, No. 03-1350 at 54 (S.D. Cir. Ct. Sept. 28, 2004) ("The Court relies on significant portions of *Associated General Contractors* in applying several of the factors, specifically factors one and five.  The Court finds that the Plaintiffs lack standing as they are not alleging injury as consumers in the relevant market.") (Def. RJN Ex. C).

[14]   W. Va. Code § 47-18-16 (1978) ("This article shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes.").

-11-

1    is true the Arizona Supreme Court interpreted Arizona law as permitting indirect purchaser actions

2    in *Bunker's Glass Co. v. Pilkington, PLC*, 75 P.3d 99 (Ariz. 2003), it neither addressed *AGC*

3    standing in that decision nor held that Arizona law would also recognize the claims of purported

4    indirect purchasers who did *not* participate in the same market affected by the alleged conspiracy.

5    Moreover, several lower Arizona courts have applied the *AGC* standing analysis in indirect

6    purchaser cases notwithstanding *Pilkington*.  For example, in *Consiglio-Tseffos v. Visa U.S.A.,*

7    *Inc.*, the court cited *AGC* and found plaintiff credit-card holders lacked standing because, while

8    they might be "indirect victims," they were not indirect purchasers of the actual affected services,

9    and, thus, had no claims even under *Pilkington*.  2004 WL 3030043, at *1 (Ariz. Super. Ct. Dec 8,

10   2004); *see also Luscher v. Bayer AG*, No. CV-2004-014835 (Ariz. Super. Ct. Maricopa Cty. Sept.

11   14, 2004) (cited in *D.R. Ward Construction Co. v. Rohm & Haas Co.*, 470 F.Supp.2d 485, 497-98

12   (E.D. Pa. 2006))**.**[15]  Thus, the weight of authority clearly demonstrates that an *AGC* standing

13   analysis applies in Arizona.[16]

14           **(b)**    **California** – The *AGC* factors apply to Cartwright Act claims, as discussed

15   in Section II.C, *infra*.

16           **(c)**    **Iowa** – The Iowa Supreme Court stated:  "We think the *AGC* test is more

17   reflective of the legal context within which the Iowa legislature enacted Iowa's competition law

18   [than the "target area" test].  Therefore, we apply the *AGC* factors to determine whether the

19   plaintiffs may recover under Iowa law."[17]

20

21

---

22   [15]     Indirect Plaintiffs' RJN Exhibit 11, *Friedman v. Microsoft*, CV 2000-000722 (Ariz. Super.
         Ct. Nov. 14, 2000), is a 3 page minute order that provides no further insight:  "The Court

23        will not give an appellate-type ruling, as I would only be repeating what is set forth in the
         moving papers."

24   [16]     Although one Pennsylvania district court has predicted that the Arizona Supreme Court
         would reject *AGC*'s standing approach, *see D.R. Ward Construction Co.*, 470 F.Supp.2d at

25        497-98, the decision has been strongly criticized as "inconsistent with the prevailing
         approach to this question by courts applying the laws of states that have rejected the

26        *Illinois Brick* prohibition on indirect purchaser suits."  *In re Intel Corp. Microprocessor
         Antitrust Litigation*, 496 F.Supp.2d 404, 409 (D. Del. 2007).

27   [17]     *Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 198 (Iowa 2007).  *Southard* post-dates

28        *Comes v. Microsoft Corp.*, 646 N.W.2d 440 (Iowa 2002), cited by Indirect Plaintiffs.

-12-

(d)   **Kansas** – The *Wrobel* court:  "[T]he *AGC* standing test may be applied to this action even though the KRTA specifically contemplates indirect purchaser suits."[18]

(e)   **Maine** – Follows four of five *AGC* factors because "*Associated General Contractors* has remained the template for determining standing under federal antitrust laws for the past 20 years."[19]

(f)   **Nebraska** – The Nebraska Supreme Court has applied *AGC* to its state antitrust statute, observing:  "The Eighth Circuit Court of Appeals and other federal courts have routinely applied the standing factors identified in *Associated General Contractors* to dismiss claims based on derivative or remote injuries under federal antitrust law."[20]

(g)   **North Carolina** – The *Crouch* court found:  "[N]orth Carolina courts would apply a multifactor test to determine standing in indirect purchaser cases.  The requirements would recognize indirect purchaser standing, but engraft upon the statute the requirements of standing enunciated in *AGC*, modified to recognize the right to recover for injury created by the statute for indirect purchasers."[21]

(h)   **North Dakota** – The *Beckler* court held:  "Plaintiffs' alleged injuries do not satisfy antitrust standing principles identified in *Associated General Contractors*."[22]

---

[18]   *Wrobel v. Avery Dennison Corp.* No. 05CV1296 at 1, 6-7 (Kansas Dist. Ct. Feb. 1, 2006) (denying defendants' motion to dismiss because of Kansas' liberal notice pleading standards, not because *AGC* was inapplicable) (IP RJN Exh. 20); *see also*, *Orr v. Beamon*, 77 F.Supp.2d 1208, 1211-12 (D. Kan. 1999) ("[S]tanding under the Kansas antitrust statutes requires an antitrust injury similar to that required under the Sherman and Clayton Acts . . .  [T]he court finds such [federal antitrust] cases sufficiently persuasive to guide its decision with regard to standing under Kansas law.").

[19]   *Knowles v. Visa USA, Inc.*, No. Civ.A. CV-03-707, 2004 WL 2475284, at *1, *5-6 (Me Super. Oct. 20, 2004) (holding that *ACG* applies except to the extent that the "remoteness of the asserted injury" factor is inconsistent with Maine's *Illinois Brick* repealer.).

[20]   *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 298-301 (Neb. 2006) (applying *AGC* to conclude that appellants lack standing under the Junkin Act and distinguishing *Arthur v. Microsoft Corp.*, 676 N.W.2d 29 (Neb. 2004), relied on by Indirect Plaintiffs in challenging *DRAM I*).

[21]   *Crouch v. Crompton Corp.*, Nos. 02 CVS 4375, 03 CVS 2514, 2004 WL 2414027, at *1, *18 (N.C. Super. Oct. 24, 2004).

[22]   *Beckler v. Visa U.S.A., Inc.*, No. Civ. 09-04-C-00030, 2004 WL 2475100, at *1, *4 (N.D. Dist. Sept. 21, 2004) (holding that plaintiffs lack standing to pursue their claims under the North Dakota Uniform State Antitrust Act because their alleged injuries are too remote from the alleged restraint of trade in debit card services for merchants).

-13-

(i)     **Wisconsin** – The *Strang* court held:  "[O]ur appellate courts would look to these [*AGC*] factors for guidance in assessing an indirect or remote purchaser's standing."[23]

## 2.     *Lorix* is the Law of Only Minnesota and Does Not Control Standing.

In response, Indirect Plaintiffs can cite only *Lorix v. Crompton Corp.*, 736 N.W. 2d 619 (Minn. 2007), but their reliance on that ruling is misplaced.  In fact, *Lorix* recognized *AGC*'s adoption in numerous jurisdictions and adopted *AGC* factor (4), concerning the speculative nature of damages as relevant to the issue of standing under the Minnesota antitrust statute at issue in that case.  *Id*. at 628-29.  *Lorix* also clarified that, contrary to the "apparently limitless language" of the Minnesota statute, standing "must be defined by some prudential limits informed by forseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law."  *Id*. at 631.[24]  Thus, Indirect Plaintiffs' claim of automatic standing here would even be rejected by the *Lorix* court.  Most importantly, there is no reason to conclude that this decision on Minnesota law predicts standing decisions in the identified states better than the Supreme Court's long-standing *AGC* decision and the many lower courts that have specifically examined the laws of those states and applied *AGC*.

Ironically, while urging a blanket rule to apply *Lorix*, Indirect Plaintiffs cite Judge Alsup's admonition:  "[i]t would be wrong for a district judge, in *ipse dixit* style, to bypass all state legislatures and all state appellate courts and to pronounce a blanket and nationwide revision of all state antitrust laws."  *GPU*, 527 F.Supp.2d at 1026.  Judge Alsup continued:  "This order's rejection of the blanket nationwide proposal is without prejudice to a later state-by-state analysis

---

[23]     *Strang v. Visa USA, Inc.*, No. 03 CV 011323, 2005 WL 1403769 *1, *3 (Wis. Cir. Feb. 8, 2005) (noting that "[n]umerous state courts have analyzed these factors and concluded that injuries identical to those claimed by Ms. Strang are too remote and speculative and granted motions to dismiss for lack of standing.").

[24]     Lorix's "relatively focused" claim was "limited to purchasers of tires manufactured with price-fixed chemicals" (*id*. at 632), not all products manufactured with price-fixed chemicals – and not disparate products like TVs, notebooks, and monitors manufactured with LCD panels, as asserted here.  The *Lorix* court further noted that Lorix may not be able to prove her damages, or they may be minimal, and "[i]f her claims are purely speculative or unmanageably complex, they will be barred at the summary judgment stage."  *Id*. at 635.  The court also expected Lorix to face a challenge meeting the class certification requirements.  *Id*.

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   of the extent to which *Associated General Contractors* has actually been adopted by state

2   officials." *Id*.[25]  As discussed above, a state-by-state analysis of the enumerated states shows that

3   the 16 identified states would apply the *AGC* factors to resolve standing.

### 3.     *DRAM I* and *DRAM II* Were Properly Decided and Should Control.

5           This District's decisions in *DRAM I* and *DRAM II* should guide here.  Certain

6   plaintiffs in *DRAM I* and *DRAM II* were indirect purchasers of the finished goods of "computers

7   and other electronic equipment" containing DRAM.  *DRAM I*, 516 F.Supp.2d at 1082-83; *DRAM*

8   *II*, 2008 WL 281109, at *1.  Judge Hamilton rejected the DRAM plaintiffs' position that their

9   indirect purchaser status alone satisfied the standing requirements, found that the relevant states

10  would apply the *AGC* factors, and dismissed those claims.  *DRAM I*, 516 F.Supp.2d at 1084-93.

11  Moreover, in *DRAM II*, even after plaintiffs were permitted to supplement their allegations, Judge

12  Hamilton found the amended complaint still "failed to adequately allege antitrust standing for

13  plaintiffs' claims based on purchases of DRAM as a component in computers."  *DRAM II*, 2008

14  WL 281109, at *9.  Finding that "[t]he most critical *AGC* factor before the court is that of antitrust

15  injury," the court dismissed the claims again.  *Id*. at *4.

16          The desktop and laptop computers containing DRAM are a significantly less

17  diverse group of finished products than the televisions, laptop computers, and monitors Indirect

18  Plaintiffs have sued on here.  As Indirect Plaintiffs allege, TFT-LCD panels make up different,

19  variable percentages of the retail price for televisions, laptop computers, and monitors.  IP-CAC ¶

20  182.  The finished goods are assembled in different ways and contain different components in

21  addition to TFT-LCD panels.  IP-CAC ¶¶ 184-86.  And the mechanisms for distribution and resale

22  also vary.  IP-CAC ¶¶ 188-91.  Thus Indirect Plaintiffs' own allegations demonstrate not only that

23  the allegedly purchased products contain "numerous other components, all of which *collectively*

24  determine the final price actually paid by plaintiffs for the final product," *DRAM I*, 516 F.Supp.2d

---

26  [25]      In dismissing plaintiffs' allegations of a price-fixing conspiracy as "insufficient to state a
        claim under Rule 8(a)(2)," Judge Alsup also noted that the different ways in which
27      plaintiffs and putative class members' purchased their computers "has serious implications
        for the question of whether overcharges were passed on to the consumer."  *Id*. at 1025 &
28      1026 n.7.

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
                                                  PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

at 1092, but also that televisions, laptop computers, and monitors are each members of their own distinct markets, separate and apart from the allegedly infringed-upon market for TFT-LCD panels.  As such, there is no standing.

**C.**      **The *AGC* Factors Apply to Indirect Purchaser Actions Brought Under the Cartwright Act, and the IP-CAC's Cartwright Claim Must Be Dismissed.**

The State of California's Amicus Brief in Opposition to Defendants' Joint Motion to Dismiss Indirect Purchaser Plaintiffs' Consolidated Amended Complaint ("Amicus Brief") claims that California law rejects the *AGC* factors and would find standing in a "component-cost pass-on" case.  Yet the Amicus Brief admits that "no California court" has adopted this rule for "component-cost pass-on" cases.  Amicus Br. at 1.  Whether or not there could ever be a theoretical "component-cost pass-on" case in which standing could be found, this is not such a case.  The California courts would apply *AGC*'s factors to analyze Indirect Plaintiffs' standing, and those factors dictate there is no antitrust standing here.

**1.**      **The Cartwright Act Does Not Automatically Grant All Indirect Purchasers Standing.**

The Attorney General misunderstands Defendants' antitrust standing argument.  Defendants argue only that *these* Indirect Plaintiffs lack standing because they do not allege they participated in the allegedly restrained market for TFT-LCD panels or suffered the type of injury antitrust laws are designed to prevent, not that *all* indirect purchasers lack standing under the Cartwright Act.[26]  Moreover, the allegations here concerning the complex chain of manufacturing, distribution, marketing, and resale of the various finished products containing TFT-LCD panels contradict Indirect Plaintiffs' conclusory allegations of pass-on, rendering their damages inherently speculative and complex.

The 1978 amendment to the Cartwright Act repealing *Illinois Brick*'s application to indirect purchaser actions did not do away with the separate antitrust standing requirement.  In

---

[26]      *See* MTD IP-CAC, and Section II.D., *infra*.

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1  fact, the related legislative history shows that the drafters did "not address the potential procedural

2  and evidentiary difficulties foreshadowed in the majority opinion [of *Illinois Brick*]."[27]

3       California courts have recognized that federal antitrust decisions are helpful in

4  interpreting the Cartwright Act.  "[B]ecause the Cartwright Act has objectives identical to the

5  federal antitrust acts, the California courts look to cases construing the federal antitrust laws for

6  guidance in interpreting the Cartwright Act."  *Vinci v. Waste Mgmt., Inc.*, 36 Cal.App.4th 1811,

7  1814, n.1 (1995).[28]  Although the Ninth Circuit has stated, "California law affords standing more

8  liberally than does federal law," *Knevelbaard Dairies*, 232 F.3d at 987, the statement simply

9  recognizes that California law recognizes both actual indirect purchasers as well as direct

10  purchasers may have standing to pursue claims under the Cartwright Act.  *See, e.g.*, *MGM Studios,*

11  *Inc.*, 269 F.Supp.2d at 1224; *Cellular Plus, Inc. v. Superior Court*, 14 Cal.App.4th 1224, 1233-34

12  (1993).  As discussed below, California courts' consistent application of the *AGC* factors

13  demonstrates that indirect purchasers are not automatically granted standing.[29]

14       **2.    The *AGC* Factors are the Appropriate Means to Determine Antitrust**

15            **Standing in California.**

16       The California state courts have applied the *AGC* factors.  For example, in *Vinci*,

17  the Court of Appeal applied *AGC* in a Cartwright Act action brought by an employee against his

18  employer and held the plaintiff did not satisfy the second *AGC* factor that the injury be a type

19

---

20  [27]  *See, e.g.*, Bill Digest Prepared by the Assembly Committee on the Judiciary, March 20, 2008 Decl. of Sangeetha M. Raghunathan i/s/o State of Cal.'s Req. for Judicial Notice of

21  Documents ("Raghunathan Decl."), Ex. A.

22  [28]  *See also MGM Studios, Inc. v. Grokster, Ltd.*, 269 F.Supp.2d 1213, 1224-25 (C.D. Cal 2003) ("Moreover, while the scope of actionable injury is slightly different under the

23  Cartwright Act [because it allows standing for indirect purchasers], the standing analysis is nonetheless informed by many of the same factors considered [in the court's earlier

24  discussion of *AGC* as applied to Sherman Act claims].");  *Big Bear Lodging Ass'n*, 182 F.3d at 1101 n.2 ("California's Cartwright Act is patterned after the Sherman Act.  California

25  courts look to federal case law interpreting the Sherman Act for guidance in interpreting the Cartwright Act.") (citation omitted).

26  [29]  *See DRAM I*, 516 F.Supp.2d at 1087 ("while the Cartwright Act directly contradicts federal law insofar as indirect purchaser standing is generally concerned, it does not follow from

27  this . . . that indirect purchaser status is itself sufficient under California law to establish antitrust standing . . .");  *Knevelbaard Dairies*, 232 F.3d at 987 ("Antitrust standing is

28  required under the Cartwright Act.").

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1   which antitrust laws were designed to redress.  *Vinci*, 36 Cal.App.4th at 1816.  Likewise, the Court

2   of Appeal in *In re Wholesale Electricity Antitrust Cases I & II*, 147 Cal.App.4th 1293 (2007),

3   applied the *AGC* factors in determining whether the plaintiff had alleged a sufficient antitrust

4   injury to support standing under the Cartwright Act before concluding federal law preempted

5   recovery.  *Id.* at 1309-11, 1315-16.[30]

6          The Attorney General's reliance on *Saxer v. Philip Morris, Inc.*, 54 Cal.App.3d 7,

7   26 (1975), is misplaced because it predates *AGC* (and even *Illinois Brick*) and used a general tort

8   test for standing without the benefit of considering the Supreme Court's analysis of specific

9   standing factors applicable to antitrust claims.[31]  Similarly, the Attorney General's request that the

10  Court follow the out-of-state decisions in *Lorix* and *D.R. Ward* that do not even address California

11  law is unpersuasive.  This Court should follow the Ninth Circuit in *Knevelbaard* and the *DRAM I*

12  and *DRAM II* decisions and find that California courts would apply the *AGC* factors in analyzing

13  Indirect Plaintiffs' standing under the Cartwright Act.

14          **D.      The IP-CAC Fails to Satisfy _AGC._**

15          Indirect Plaintiffs' unsupported argument that they are participants in the allegedly

16  restrained market and their conclusory assertion of injury from Defendants' supposed

17  conspiratorial antitrust conduct does not save their inadequately pled standing allegations in the

18  IP-CAC.

19

20  ───────────────

21  [30]   The Attorney General cites *Union Carbide Corp.*, 36 Cal.3d at 21, to assert that *AGC* factors (3) through (5) should not bar antitrust standing in indirect purchaser cases. Amicus Br. at 20-21.  While the court in *Union Carbide* discussed the purpose of the repealer amendment, it did not analyze antitrust standing requirements, but instead denied petitioners' request that the court order the mandatory joinder of all parties in the chain of distribution in order to avoid multiple liability.  *Union Carbide*, 36 Cal.3d at 21-22.

24  [31]   A single sentence in the legislative history states that the repealer amendment is a "little more than a codification" of *Saxer* (Governor's Office Enrolled Bill Report, Raghunathan Decl., Ex. D), but it does not follow that it was also a codification of the "target area" test. Also, this quote is not legislative history reflecting the intent of the Legislature, but instead is legal analysis by the Governor's staff recommending his signature on the bill passed by the Legislature.  Moreover, *Saxer* was not an indirect purchaser case.  It involved a home-purchaser alleging Cartwright Act claims against corporations selling the homes, installing carpeting, and providing financing and escrow services in the plaintiff's subdivision. *Saxer*, 54 Cal.App.3d at 26.

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1.   **Whether the Nature of the Injury Is the Type Antitrust Laws Were**
**Intended to Forestall.**

This inquiry requires that the "injured party be a participant in the same market as the alleged malefactors." *American Ad Mgmt., Inc. v. General Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999) (quoting *Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985)).[32]   Indirect Plaintiffs' participation in the markets for finished laptops, monitors, or televisions (*see* IP-CAC ¶¶ 18-72) is not the same thing as participation in the allegedly restrained market for raw TFT-LCD panels.  Indeed, the markets for finished products like LCD televisions and laptop computers are many times removed from the allegedly restrained markets for raw TFT-LCD panels.  Moreover, Indirect Plaintiffs do not and cannot allege that there is "reasonable interchangeability of use" or positive "cross-elasticity of demand" between those finished products and raw TFT-LCD panels. *See Bhan*, 772 F.2d at 1470-71.[33]  These finished goods have their own differing distribution chains that may involve the company that buys a panel and incorporates it into a finished product, the company that buys and resells the product under its brand name, the company that distributes the product at a wholesale level, and the company that sells the product at the retail level before a product ever makes it to an Indirect Plaintiff.  *See* IP-CAC ¶¶ 188-91.  Thus, the Indirect Plaintiffs have not adequately pled that they participated in the allegedly restrained markets and fail to satisfy the first *AGC* factor.

---

[32]   Alternatively, *Blue Shield v. McCready*, 457 U.S. 465, 483 (1982), authorizes what *American Ad Management* has characterized as "a narrow exception to the market participant requirement for parties whose injuries are 'inextricably intertwined' with the injuries of market participants." *American Ad Management*, 190 F.3d at 1057 n.5. McCready was a patient whose submitted claims for treatment were denied specifically because of the anti-competitive conduct.  As such, her injury was "inextricably intertwined" with the injury the conspirators sought to inflict. *McCready*, 457 U.S. at 483. Because Indirect Plaintiffs allege horizontal price fixing in the market for LCD panels (IP Opp. at 11), they are subject to the market participation test, not *McCready*.  *See American Ad Management*, 190 F.3d at 1057.

[33]   Contrary to the Attorney General's assertion (Amicus Br. at 14), *Cellular Plus* does not prohibit California courts from imposing a market participation requirement. *Cellular Plus* only clarified that that California antitrust protection is not limited to only purchasers or competitors; it did not discuss the requirement of general market participation. *Cellular Plus*, 14 Cal.App.4th at 1232-35; *see Novell*, 505 F.3d at 311-19 (declining to adopt a bright-line consumer or competitor rule for antitrust standing but affirming *AGC* and the relevance of market analysis to antitrust standing issues).

-19-

2.      **The Directness of the Injury.**

"[D]irectness in the antitrust context means close in the chain of causation." *American Ad Management*, 190 F.3d at 1058 (quoting *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 147 (9th Cir. 1989), and *AGC*, 459 U.S. at 540). "The nature of the item can influence the directness of the impact on the price of the end product at retail." *Crouch*, 2004 WL 2414027, at *24.

Here, Indirect Plaintiffs allege many steps necessary to produce a finished good that contains a TFT-LCD panel *after* the TFT-LCD panel manufacturing and distribution process is complete. *See, e.g.*, IP-CAC ¶¶ 182-87. The finished product is then distributed through extended distribution chains that vary by the type of product. *See, e.g.*, IP-CAC ¶¶ 188-91. These chains can include the company that buys a panel and incorporates it into a finished product, the company that buys and resells the product under its brand name, the company that distributes the product at a wholesale level, and the company that sells the product a retail level. *Id.* These companies are each potential indirect purchasers of TFT-LCD panels, and they are each more directly connected to the alleged conspiracy than Indirect Plaintiffs. The potential injury to an Indirect Plaintiff as the purchaser of a laptop, who purchased from a retailer, who purchased from a distributor, who purchased from the company holding the brand name, who purchased from a laptop manufacturer, who bought the original raw panel in question is not sufficiently direct to warrant standing.

3.      **The Speculative Measure of the Harm.**

Even states like Minnesota that have not applied *AGC* still recognize that there must be some limitation as to who can bring an antitrust action to avoid the danger of speculative damages. *See Lorix*, 736 N.W.2d at 628 (clarifying that the danger of speculative damages known as *AGC* factor (4) is relevant to standing analysis under Minnesota antitrust law). "[P]laintiffs who are in secondary markets in which they purchase the price-fixed product as a component, would need to allege that the secondary market sellers themselves were in an oligopoly and fixing prices, in order to demonstrate non-speculative damages." *DRAM I*, 516 F.Supp.2d at 1092 (citing *Weaver v. Cabot Corp.*, 2004 WL 3406119, at *1 (N.C. Sup. 2004)).

-20-

Indirect Plaintiffs make no such allegations to plead standing. In fact, they allege that the downstream markets "are all subject to vigorous price competition." IP-CAC ¶ 195. And they recognize the cost of an TFT-LCD panel in a particular product varies considerably by product: "[t]he cost of an LCD panel in an LCD TV is 60-70% of the retail price; in a laptop is 10% of the retail price; and in a computer monitor is 70-80% of the retail price." IP-CAC ¶ 197. Moreover, the Indirect Plaintiffs' conclusory allegations of pass through (*see* IP-CAC ¶¶ 181-215), only emphasize the complexity of the manufacturing, distribution, retail, and marketing channels, which vary by product and necessarily impact the price of the finished goods. Here, "not only would Plaintiff be required to show the underlying complicated damage to merchants, but also how these damages got passed on in each and every consumer transaction by the merchant." *Crouch*, 2004 WL 2414027 at *26.[34] This speculative nature of any alleged harm purportedly passed on to Indirect Plaintiffs weighs against standing.

### 4. The Risk of Duplicative Recovery.

"The risk to be avoided under [the duplicative recovery factor] is that potential plaintiffs may be in a 'position to assert conflicting claims to a common fund . . . thereby creating the danger of multiple liability for the fund.'" *Eagle v. StarKist Foods, Inc.*, 812 F.2d 538, 542 (9th Cir. 1987) (ellipses in original) (quoting *AGC*, 459 U.S. at 544).[35] "[C]ompensating only direct victims avoids duplicative recoveries." *Novell*, 505 F.3d at 318. And "courts must be cognizant that the problems between direct and indirect purchaser cases replicate themselves in state indirect purchaser cases where there are multiple levels in the distribution chain and multiple distribution chains." *Crouch*, 2004 WL 2414027 at *19.

---

[34] The *Crouch* court further found "that a determination would have to be made for every product since price elasticity varies between products." *Crouch*, 2004 WL 2414027 at *26. "This fact alone would render class certification impossible since each customer would have different damages depending on each individual purchase they made." *Id.* at *26 n.44.

[35] This factor applies to Cartwright Act claims as well. *See MGM Studios*, 269 F.Supp.2d at 1224-25 ("while the scope of actionable injury is slightly different under the Cartwright Act, the standing analysis is nonetheless informed by many of the same factors considered" by *AGC*). Moreover, *California v. ARC America Corp.*, 490 U.S. 93, 105 (1989), did not eliminate duplicative recovery as a factor from consideration, as it only clarified that federal policy against multiple liability did not preempt repealer statutes. Amicus Br. at 22-23.

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    Here, there are plainly far more "direct victims" than Indirect Plaintiffs: as the IP-

2 CAC alleges there are (i) companies that buy panels and incorporate them into finished

3 products, (ii) companies that buy and resell products under their brands, (iii) companies that

4 distribute products at a wholesale level, and (iv) companies that sell products at the retail level.

5 Indirect Plaintiffs' allegations of additional components added to the TFT-LCD panels and

6 multiple distribution chains with multiple levels compound the danger of duplication, (IP-CAC ¶¶

7 184-86, 188-91), as does Indirect Plaintiffs' failure to include any allegations that their class

8 members purchased finished goods in a common manner that would render any potential pass-on

9 cost of the TFT-LCD panel component "directly traceable and/or distinguishable."[36]  Direct

10 Plaintiffs and Indirect Plaintiffs vying for a common fund under these circumstances greatly

11 increases the risk of duplicative recovery and weighs against standing.

12    **5.    The Complexity in Apportioning Damages.**

13    None of Indirect Plaintiffs' allegations satisfy the fifth *AGC* factor and courts'

14 concerns regarding the complexity of apportioning damages.  Indirect Plaintiffs acknowledge that

15 the percentage costs of an TFT-LCD panel in a finished good vary considerably without

16 explaining the cause for the variance.  IP-CAC ¶ 197.  Their allegations of pass through are

17 similarly inadequate and do not allege how each purported overcharge is passed through or can be

18 traced in light of the myriad added components and multiple distribution channels.  *See* IP-CAC

19 ¶¶ 181-215.

20    Indirect Plaintiffs attempt to mask these inadequacies by offering an incomplete

21 and misleading quotation of economic theory from an antitrust textbook.  *See* IP-CAC ¶ 208

22 (alleging that "[t]heoretically, one can calculate the percentage of any overcharge" (quoting

23 *Federal Antitrust Policy, The Law of Competition and Its Practice*, (1994) at 564)).  But the very

24

25

---

26 [36]    *DRAM I*, 516 F.Supp.2d at 1092; *see also GPU*, 527 F.Supp.2d at 1026 n.7 (noting that
plaintiffs or putative class members' failure to purchase their computers containing GPU in
27 the same way "has serious implications for the question of whether or not overcharges
were passed on to the consumer.")
28

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

next sentence in the textbook, which Indirect Plaintiffs omitted from the IP-CAC, underscores the complexity of the task and fatally undermines Indirect Plaintiffs' argument:

> However, the computation [of any overcharge] requires knowledge of the prevailing elasticities of supply and demand, and obtaining that information is beyond the technical competence of courts.

Exh. 3 to Reply Declaration of Tyler M. Cunningham; *see also Crouch*, 2004 WL 2414027, at *22 (describing the multi-tiered regression analysis necessary to calculate such attenuated damages that presents a "Herculean task", "would not be free from speculation", and "raises a greater risk of double recovery").  Indirect Plaintiffs are not in the markets for TFT-LCD panels, they are consumers of widely varying products containing TFT-LCD panels bought at the retail level.  Any potential damage claim they allege is not only "beyond the technical competence of the courts," it is entirely too attenuated and speculative to warrant standing.

**E.**     **Indirect Plaintiffs Do Not Have Standing for Injunctive Relief.**

The standing requirements under section 16 of the Clayton Act are not as demanding as those under section 4, but they do require "a showing that there is 'a significant threat of injury from [a] . . . violation of antitrust laws . . . .'"  *In re Warfarin Sodium Antitrust Litigation*, 214 F.3d 395, 399 (3d Cir. 2000) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969).  Indirect Plaintiffs must allege:  "(1) threatened loss or injury cognizable in equity; (2) proximately resulting from the alleged antitrust injury."  *In re Warfarin*, 214 F.3d at 400 (citing *McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 856 (3d Cir. 1996)).

As with the *AGC* analysis, the allegations of the IP-CAC are again inadequate.  It is unclear what loss or injury may even be cognizable in equity because Indirect Plaintiffs are not participants in the allegedly restrained market for TFT-LCD panels.  And despite their conclusory allegations of pass-on, Indirect Plaintiffs fail to allege any specific injury proximately resulting from any purported anticompetitive conduct that might be traced through the complicated, multi-tiered distribution chains in the distinct markets for televisions, laptop computers, and monitors. As such, the Indirect Plaintiffs have failed to allege antitrust standing under section 16 of the Clayton Act.

-23-

**III.**      **Indirect Plaintiffs Concede That Their Nationwide Unjust Enrichment Claim Must Be Dismissed.**

Indirect Plaintiffs concede that their second claim for relief should be dismissed for failure to identify the specific state common laws of unjust enrichment under which they purport to sue. IP Opp. at 29. If Indirect Plaintiffs are granted leave to amend the IP-CAC to allege state-specific class claims under the unjust enrichment laws of particular states, Defendants reserve the right to move to dismiss those claims, as appropriate. However, as Defendants demonstrated in their moving papers at pages 19-22, due to the widely varying and often conflicting unjust enrichment law of the fifty states, Indirect Plaintiffs cannot sue under the common law of any one state on behalf of a nationwide class, and the Court should not grant leave for such futile pleading.

**IV.**      **Indirect Plaintiffs Concede That Their Claims Under Mississippi, Nebraska, New Hampshire, Pennsylvania And Rhode Island Law Must Be Dismissed Because No Named Plaintiff Resides In Those States.**

Indirect Plaintiffs concede that they cannot maintain any claims under the laws of those states where no named plaintiff resides. IP Opp. at 31 n.37 ("Plaintiffs agree to dismissal of their claims under Mississippi, Nebraska, New Hampshire, Pennsylvania and Rhode Island state law"). While Indirect Plaintiffs have requested leave to amend to add class representatives from these states, such leave should be denied if the Court finds that any attempt to amend claims in these states would be futile for any of the independent reasons set forth in Defendants' motion to dismiss.

**V.**      **Indirect Plaintiffs' Pennsylvania Antitrust Claim Should Be Dismissed Without Leave To Amend.**

Indirect Plaintiffs make no attempt to dispute Defendants' showing that there is no private right of action for antitrust damages under Pennsylvania law. Abandoned by Indirect Plaintiffs, the IP-CAC's Third Claim for Relief for violation of "Pennsylvania common law" should be dismissed without leave to amend. *See, e.g., Lepp v. Gonzales*, 2005 U.S. Dist. LEXIS 41525, at *11-12 (N.D. Cal. 2005) (dismissing claims with prejudice claims where plaintiff's

-24-

1  opposition failed to address defendant's argument in its motion to dismiss) ("the court cannot

2  create an opposition for a . . . plaintiff.").

3  **VI.**   **Indirect Plaintiffs' Claims Under The Consumer Protection Laws Of Arkansas, D.C.,**

4  **Kansas, Maine, Nebraska, New Mexico, New York, Pennsylvania, Rhode Island And**

5  **West Virginia Fail Because Indirect Plaintiffs Have Not Pleaded Actionable**

6  **Unconscionable Or Deceptive Conduct.**

7  Indirect Plaintiffs make no serious effort to address several recent opinions from

8  this District holding that many of the consumer protection statutes they purport to invoke simply

9  do not apply to the sort of price-fixing claims alleged in the IP-CAC.  *See DRAM I*, 516 F.Supp.2d

10 1072, 1113-19 (N.D. Cal. 2007) (dismissing claims under New York, Rhode Island and West

11 Virginia consumer protection statutes); *GPU*, 527 F.Supp.2d 1011, 1029-31 (N.D. Cal. 2007)

12 (dismissing claims under Arkansas, District of Columbia, Kansas, Maine, New Mexico, Rhode

13 Island and West Virginia consumer protection statutes); *SRAM*, 2008 WL 426522, at *10-12

14 (dismissing claims under New York and Rhode Island consumer protection statutes).

15 Instead, Indirect Plaintiffs rely on cases that have very different facts, or contain

16 little or no analysis of the statute at issue.  The case upon which Indirect Plaintiffs rely most

17 heavily, *In re New Motor Vehicles Canadian Export Antitrust Litig.* ("*NMV*"), explicitly rejects

18 their deception theory.  350 F.Supp.2d 160, 176-78 & n.22 (D. Me. 2004) (allegation that

19 defendants failed to inform consumers of anticompetitive conspiracy does not state cause of action

20 under consumer protection laws prohibiting deceptive conduct).

21 The statutes identified by Defendants require that Indirect Plaintiffs plead and

22 prove unconscionable or deceptive conduct.  MTD IP-CAC at 24-25.  Indirect Plaintiffs'

23 arguments that they have alleged "unconscionable" conduct stretch that term beyond recognition.

24 Unconscionability refers to the terms of or circumstances surrounding an agreement between

25 contracting parties.  *See State v. R & A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999) ("Two

26 important considerations are whether there is a gross inequality of bargaining power between the

27 parties to the contract and whether the aggrieved party was made aware of and comprehended the

28 provision in question.") (internal quotation omitted); Black's Law Dictionary, p. 1274 (8th ed.

-25-

2005) (unconscionability assessed by referring to contract terms).  Judge Alsup recently rejected similar price-fixing claims lacking these attributes.  *GPU*, 527 F.Supp.2d at 1030 (dismissing consumer protection claims where plaintiffs "have not . . . pleaded the kind of grossly unequal bargaining power prohibited by these statutes"); *id.* at 1029 ("pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high.").  Indirect Plaintiffs do not allege that they contracted, bargained, or had any direct dealings, with Defendants.

Nor have Indirect Plaintiffs sufficiently alleged deceptive conduct.  The IP-CAC provides no details of any misleading statement made to Indirect Plaintiffs.  Indirect Plaintiffs allege generally that defendants failed to disclose "material facts . . . concerning Defendants' unlawful activities."  *E.g.*, IP-CAC ¶ 270.  Thus, Indirect Plaintiffs would hold Defendants liable for failing to broadcast unspecified "material facts" to parties with whom they had no direct dealings.  Alternatively, Indirect Plaintiffs point to paragraphs in their complaint alleging that "Defendants misrepresented to all consumers . . . that Defendants' LCD prices were competitive and fair."  *E.g.*, IP-CAC ¶ 270a.  But Defendants charged prices for TFT-LCD *panels*.[37]  Any representation about those prices would be directed to direct purchasers.  Indirect Plaintiffs do not explain how consumers they purport to represent could be deceived by alleged misrepresentations concerning prices they did not pay.  *See SRAM*, 2008 WL 426522, at *10-11.

As detailed more fully below, Indirect Plaintiffs' Fourth Claim for Relief under the consumer protection statutes of Arkansas, the District of Columbia, Kansas, Maine, Nebraska, New Mexico, New York, Pennsylvania, Rhode Island and West Virginia should be dismissed without leave to amend.

---

[37]    The IP-CAC attempts to blur the distinction between TFT-LCD panels and finished products containing those panels by alleging that Defendants artificially inflated the price of "LCD" and made representations about the prices for "LCD".  *E.g.*, IP-CAC ¶ 270.  The IP-CAC defines "LCD" as "LCD display technology that involves sandwiching liquid crystal between two glass plates."  *Id.* ¶ 11.  But elsewhere, the IP-CAC makes clear that defendants are accused only of making and inflating the price of TFT-LCD *panels* (*id.* ¶¶ 1, 2, 8, 9, 10, 137, 142-144, 151-152, 160) and that Indirect Plaintiffs claim to have purchased only *products that contain* those panels.  *Id.* ¶¶ 18-73, 136, 181.

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1    **A.      Ark. Code Ann. § 4-88-101, et seq.**

2                    Indirect Plaintiffs cite no language in the statute, or any holding by an Arkansas

3    court, that suggests that the statute reaches the price-fixing conduct alleged here.  Instead, they

4    allege that Defendants had a duty to disclose "material facts" to Arkansan consumers who

5    purchased products containing TFT-LCD panels, and that Defendants breached this duty by

6    remaining silent.[38]  IP Opp. at 31.  Of course, the statute imposes no such duty.  *See* Ark. Code

7    Ann. § 4-88-107(a); *Little Rock Elec. Contractors v. Entergy Corp.*, 87 S.W.3d 842, 846 (Ark. Ct.

8    App. 2002) (no liability under Arkansas statute where defendant was not a party to an agreement

9    with plaintiff and "never made any communications" to plaintiff).

10   **B.      D.C. Code § 28-3904**

11                   Indirect Plaintiffs claim to sue for "unlawful trade practices" under this statute.  IP-

12   CAC ¶ 272b; IP Opp. at 32.  That phrase is the title of a statute that lists 33 specific, prohibited

13   acts.  Indirect Plaintiffs do not specify which portion of the statute Defendants allegedly violated.

14   In fact, *none* of the claims alleged by the District of Columbia Plaintiffs describes conduct

15   prohibited by the statute.  *Compare* IP-CAC ¶ 272 *with* D.C. Code § 28-3904.

16                   Indirect Plaintiffs nonetheless assert that an antitrust violation may constitute a

17   violation of the D.C. statute.  But they point to no language in the statute so holding, or any

18   decisions from D.C. courts holding that the statute applies to anticompetitive activity.  To the

19   extent that Indirect Plaintiffs base their claim on a misrepresentation theory,[39] the problems

20   identified above are magnified by the Act's requirement that plaintiffs plead any misstatement with

21   particularity.  *See* MTD IP-CAC at 29.  The IP-CAC falls far short of this standard; the paragraphs

22   describing the claims of the D.C. Plaintiffs allege misrepresentation in the vaguest of terms.  *See*

23   IP-CAC ¶ 272d ("Defendants have engaged in unfair competition or unfair or deceptive acts . . .").

24

---

25   [38]    The IP-CAC alleges that this duty to disclose arises due to "the relative lack of
         sophistication of the average, non-business consumer."  IP-CAC ¶ 270b.  By the IP-CAC's
26       own terms, then, Defendants owe no such duty to Plaintiffs that are business entities.

27   [39]    Indirect Plaintiffs paradoxically assert that an antitrust violation may violate the D.C.
         statute "without being a deceptive practice" to further the statute's purpose "to protect
28       consumers from . . . deceptive trade practices."  IP Opp. at 32.

-27-

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

**C.     Kan. Stat. Ann. § 50-623, et seq.**

Indirect Plaintiffs concede that they have failed to plead a cause of action under this statute.  IP Opp. at 31 n.37.  This claim should be dismissed without leave to amend.

**D.     Maine Rev. Stat. § 207, et seq.**

Indirect Plaintiffs claim that *Tungate v. Maclean-Stevens Studios, Inc.*, 714 A.2d 792 (Me. 1998), is somehow inapposite because that case involved "unfair . . . acts" while this case purportedly involves "unfair methods of competition."  IP Opp. at 32.  But the Maine Supreme Judicial Court did not make so fine a distinction.  *Tungate*, 714 A.2d at 797 ("In pricing cases *under the Act* the inquiry is whether the price has the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase.") (emphasis added).  The *Tungate* case plainly concerned unfair methods of competition:  the case focused on defendants' pricing activity*, which is "the very essence of competition."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986).  In *Tungate*, as here, plaintiff consumer challenged defendants' prices as unfair, and claimed that defendants failed to disclose material information concerning its price.  Indirect Plaintiffs provide no reasoned basis for distinguishing *Tungate*.  Neither is the express holding of Maine's highest court undone by the statute's language that "courts will be guided by the interpretations given . . . of the Federal Trade Commission Act."  Me. Rev. Stat. Ann. tit. 5, § 207(1); Ind. Opp. at 32.  Indeed, the *Tungate* court acknowledged this language and cited federal decisions under the FTC Act to support its holding.  *Tungate,* 714 A.2d at 797.  The Maine high court's decision in *Tungate* – holding that a plaintiff cannot recover under the Maine statute for unfair competition related to pricing unless the price deceived plaintiff or caused him to buy something he would not otherwise purchase – requires dismissal without leave to amend.

**E.     Nebraska Rev. Stat. § 59-1601, et seq.**

In their opposition, Indirect Plaintiffs identify, for the first time, the Nebraska consumer protection statute under which they purport to sue.  But Indirect Plaintiffs lack standing to bring a claim under this statute for the same reasons they lack standing to sue under the state's antitrust Junkin Act.  *See supra* at Section II; MTD IP-CAC at 9-18.  Under both statutes,

-28-

1    Nebraska courts determine standing with reference to the *AGC* factors.  *Kanne*, 723 N.W.2d at

2    301.  This claim should be dismissed without leave to amend.

3    **F.      New Mexico Stat. § 57-12-1, et seq.**

4              Indirect Plaintiffs have not adequately alleged unconscionable conduct under the

5    New Mexico statute.  The cases they cite are inapposite.  Plaintiffs in *NMV* pled that they paid

6    30 percent more for cars than they would have absent defendants' conduct, which allowed the

7    court to determine that they had alleged a "gross disparity" between value received and price paid.

8    *NMV*, 350 F.Supp.2d at 196.  Here, Indirect Plaintiffs make no such specific allegations, and

9    merely parrot the language of the statute.  *See* IP-CAC ¶ 280b.  The other case upon which

10   Indirect Plaintiffs rely, *In re Intel Corp. Microprocessor Antitrust Litig.*, involved claims of

11   discriminatory rebates, below-cost pricing and retaliation against customers.  496 F.Supp.2d 404,

12   418 (D. Del. July 12, 2007).  In contrast, Indirect Plaintiffs allege a price-fixing conspiracy on a

13   component part based on purchases of consumer electronic devices containing that part.  These are

14   precisely the allegations that Judge Alsup found inadequate to state a cause of action under the

15   New Mexico statute.  *GPU*, 527 F.Supp.2d at 1029.  The only deceptive acts alleged by the New

16   Mexico Plaintiffs are claims that defendants "took efforts to conceal their agreements . . ."  IP-

17   CAC ¶ 280a.  But, according to the IP-CAC, those alleged agreements involved a component part

18   that Defendants sold to manufacturers, not these Indirect Plaintiffs.  Defendants point to no New

19   Mexico law that imposes a duty to disclose such information.  In addition, this allegation also fails

20   because it is impermissibly vague.  *See Michelson v. Merrill Lynch Pierce Fenner*, 669 F.Supp.

21   1244, 1256 (S.D.N.Y. 1987) (dismissing claim under New Mexico statute where the complaint

22   "provides no clue as to the way in which defendants' acts are claimed to have violated the

23   statute").

24   **G.      New York Gen. Bus. Law § 349**

25             New York's consumer protection statute requires plaintiffs to plead material

26   misrepresentations directed at consumers that cause plaintiffs' injuries.  *St. Patrick's Home for the*

27   *Aged & Infirm v. Laticrete Int'l, Inc.*, 264 A.D. 652, 655 (N.Y. App. Div. 1999).  The deceptive act

28   must be "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Id.*

-29-

Indirect Plaintiffs allege no representation to them at all, let alone a representation likely to mislead a reasonable consumer.  They point to several paragraphs in the IP-CAC alleging that Defendants attempted to conceal an alleged agreement to fix the prices of TFT-LCD *panels*, or made statements explaining the economics behind a rise in prices for TFT-LCD *panels*.  IP-CAC ¶¶ 152, 228-235, 281.  They do not explain how such statements or omissions could reasonably mislead consumers buying TFT-LCD *finished products*.  Even assuming that the alleged statements were directed to purchasers of TFT-LCD panels, "when the conduct at issue is between two companies and does not involve the ultimate consumer, it cannot be the basis of a claim under § 349."  *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F.Supp.2d 544, 552 (E.D. Pa. 2007) (emphasis added) (dismissing indirect purchasers' claims under § 349 premised on allegations that defendants fixed prices charged to distributors).  Nearly all of the cases Indirect Plaintiffs cite to support this theory involve allegations of specific deceptive statements directed at defendants' customers.[40]

Alternatively, Indirect Plaintiffs appear to argue that any antitrust claim must also state a cause of action under the New York consumer protection statute.  Not so.  "[A]nticompetitive conduct that is not premised on consumer deception is not within the ambit of the statute."  *Leider v. Ralfe*, 387 F.Supp.2d 283, 293-295 (S.D.N.Y. 2005) (dismissing § 349 claims in price-fixing case where plaintiffs alleged defendants "distorted public perception" in advertisements for the allegedly price-fixed product and omitted material facts concerning the alleged conspiracy); *see also id.* at 296-97 (rejecting argument that market manipulation is "deceptive unto itself" because "[i]f plaintiffs were correct, then every antitrust plaintiff could

---

[40]     *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 321-323 (2002) (alleging specific statements made by insurance sales agents and DSL Internet advertisements received by plaintiffs); *Genesco Entertainment v. Koch*, 593 F.Supp. 743, 747 (S.D.N.Y. 1984) (alleging misstatements made by defendant city during lease negotiations with plaintiff); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24-25 (1995) (alleging specific statements and documents exchanged between defendant bank and plaintiff fund); *Cruz v. NYNEX Info. Res.*, 263 A.D.2d 285, 287-288 (N.Y. App. Div. 2000) (alleged misstatement reprinted verbatim from terms and conditions of contract between plaintiff businesses and defendant); *In re MTBE Prod. Liab. Litig.*, 175 F.Supp.2d 593, 631 (S.D.N.Y. 2001) (alleging defendants distributed pamphlets to mislead consumers of gasoline, a group that includes plaintiffs).

simply tack on a false advertising claim in every case where the defendant advertised its products, as surely many have."); *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F.Supp.2d at 554-55 (dismissing § 349 claim in price-fixing suit because statute "requires more than allegations of anticompetitive conduct") (listing New York and federal cases).  Many citations that Indirect Plaintiffs list to support this argument are misleading.[41]  Only one of these opinions, *GPU*, found that indirect purchasers alleging price-fixing in a component market also stated a cause of action under the New York statute.  But Judge Alsup did not explain how deceptive statements regarding the price of a component could reasonably mislead purchasers of a finished product.  Judge Wilken provided a more nuanced analysis of this issue in *SRAM*, and granted defendants' motion to dismiss plaintiffs' New York consumer protection claim.  *SRAM*, 2008 WL 426522, at *10-11.

**H.      Rhode Island Gen. Laws § 6-13.1-1, et seq.**

Indirect Plaintiffs have alleged no conduct that "reasonably tend[s] to confuse and mislead the general public into purchasing [defendants'] product."  *ERI Max Entm't v. Streisand*, 690 A.2d 1351, 1353-54 (R.I. 1997).  Indirect Plaintiffs do not claim to have purchased TFT-LCD panels, the products at issue here.  Moreover, they allege only that Defendants "failed to disclose material facts" concerning the price for "LCD" and that Defendants "misrepresented to all consumers . . . that Defendants' LCD prices were competitive and fair."  IP-CAC ¶ 284c.  These are substantially the same allegations that Judge Wilken found lacking in *SRAM*.  2008 WL 426522, at *11-12 (dismissing claim under Rhode Island statute for failure to plead "any conduct that creates a likelihood of confusion or misunderstanding for indirect purchasers"); *see also NMV*, 350 F.Supp.2d at 177 n.22; *DRAM*, 516 F.Supp.2d at 1115; *GPU*, 527 F.Supp.2d at 1030-1031.

---

[41]      Indirect Plaintiffs claim the court in *Cox v. Microsoft*, 8 A.D.3d 39 (N.Y. App. Div. 2004), rejected the argument that plaintiff must have been "exposed and deceived by" defendant's conduct (IP Opp. at 35), but neither that argument nor the quoted language appear in that opinion.  Indirect Plaintiffs cite *Excellus Health Plan, Inc. v. Tran*, 287 F.Supp.2d 167, 179-80 (W.D.N.Y. 2003), for the proposition that "group boycott claims [are] cognizable under § 349", but defendants in that case asserted a § 349 counterclaim based on facts different from those that supported plaintiffs' group boycott claim.  Finally, Indirect Plaintiffs' citation to *DRAM*, 516 F.Supp.2d at 1117, is misleading as that opinion actually dismisses plaintiffs' claim under the New York consumer protection statute.

1    **I.      West Virginia Code § 46A-6-101, et seq.**

2           West Virginia's Consumer Credit and Protection Statute enumerates the practices

3    and conduct that constitute unfair competition and unfair or deceptive acts.  *See* W.Va. Code §

4    46A-6-102(7).  "[N]othing on the list targets what might be called traditional antitrust conduct –

5    e.g., price-fixing and market allocation."  *DRAM I*, 516 F.Supp.2d at 1118.  For this reason, both

6    Judge Hamilton and Judge Alsup recently dismissed claims under this act based on similar facts.

7    *Id*; *GPU*, 527 F.Supp.2d at 1030 ("price fixing is not among" prohibited acts).  The cases cited by

8    Indirect Plaintiffs provide minimal, if any, analysis of the statute.  They are therefore not more

9    persuasive than the opinions from this District, or the plain language of the statute.

10   **VII.    Indirect Plaintiffs' Kansas, Pennsylvania, Rhode Island And West Virginia Consumer**

11   **        Protection Claims Should Be Dismissed Because They Are Not Restricted To**

12   **        Purchases for Personal Use.**

13          Indirect Plaintiffs have withdrawn their claim under the Kansas Consumer

14   Protection Act, and concede that they may seek relief under West Virginia law only on behalf of

15   natural persons.  IP Opp. at 37 & n.43.  But Indirect Plaintiffs argue that because business entities

16   may be considered "persons" under Pennsylvania and Rhode Island law, those entities can

17   somehow purchase TFT-LCD products "primarily for personal, family or household purposes"  *Id.*

18   This is absurd on its face and incorrect as a matter of law.  *See Valley Forge Towers v. Ron-Ike F.*

19   *Ins.*, 574 A.2d 641, 647 (Pa. Super. 1990) (listing cases "correctly" deciding that Pennsylvania

20   statute "preclude[s] a cause of action by one business against another business"); *ERI Max*

21   *Entertainment, Inc.*, 690 A.2d at 1354 (business "plainly does not have standing" to sue under

22   Rhode Island statute).

23   **VIII.   Each State's Statute Of Limitations Restricts Indirect Plaintiffs' State Law Claims,**

24   **        And They Have Not Pleaded Diligence Required To Toll Those Limitations Periods.**

25          In addition to their other pleading failures, Indirect Plaintiffs cannot avoid

26   application of the various state statutes of limitations.  As set forth in Defendants' initial brief,

27   twenty-three states impose an affirmative duty of diligence when there is sufficient information

28

-32-

1  available to arouse plaintiff's suspicion.[42]  MTD IP-CAC at 32-33.  In four other states, a plaintiff

2  cannot toll the statute of limitations by claiming fraudulent concealment if she had actual or

3  constructive notice of her claim.  MTD IP-CAC at 34.  Indirect Plaintiffs do not deny that they did

4  not diligently try to uncover the facts underlying their claim.  *See* IP Opp. 37-40.  Neither do they

5  deny that the "facts" alleged in the IP-CAC were publicly available throughout the period of the

6  alleged conspiracy.  *Id.*  Indirect Plaintiffs cannot reasonably contend that the same facts that they

7  now argue are more than sufficient to allege a conspiracy under the exacting standards of *Twombly*

8  did not put them on constructive notice, or even arouse their suspicion.

9         Indirect Plaintiffs seek to obscure the IP-CAC's deficiencies by ignoring the state-

10  by-state analysis required by *Erie R.R. Co. v. Tompkins,* 34 U.S. 64 (1938), and instead citing

11  inapplicable federal precedent.[43]  *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 288-89 (4th Cir.

12  1999).  Because fraudulent concealment is a question of state law, *Conmar Corp. v. Mitsui & Co*

13  *(U.S.A.), Inc.*, 858 F.2d 499 (9th Cir. 1988), does not control Indirect Plaintiffs' claims.  Even if

14  *Conmar* controlled, however, the public information available to Indirect Plaintiffs was sufficient

15  to meet notice standards under that case.  *See* Reply i/s/o MTD DP-CC, Section IV.

16         Indirect Plaintiffs also conflate inquiry notice and constructive notice.  A plaintiff is

17  on constructive notice if such facts exist that she should have been aware of her claim.  Inquiry

18  notice is a lower threshold, requiring only that there was enough information that a plaintiff should

19  have been suspicious and looked into whether or not she had a claim.  *Cf. Franklin Bank, N.A. v.*

20  *Bowling*, 74 P.3d 308, 313 (Colo. 2003) (examining "three forms of notice:" actual, constructive,

21  and inquiry); *accord Ogle v. Salamatof Native Ass'n, Inc.*, 906 F.Supp. 1321, 1326 (D. Alaska

22  1995).  If a plaintiff is on inquiry notice and fails to investigate diligently, tolling is denied.

---

23  [42]  Defendants' MTD IP-CAC mistakenly listed North Carolina, rather than New York, as one

24       of the Due Diligence Jurisdictions.  *See In re Vitamins Antitrust Litig.*, No. MISC 99-197,
        2000 WL 1475705, at *7 (D.D.C. May 9, 2000) (noting, under New York law, antitrust

25       plaintiffs must allege "plaintiffs' continuing ignorance was not attributable to the lack of
        diligence on their part").

26  [43]  In fact, Indirect Plaintiffs fail to cite any authority supporting their contention that

27       fraudulent concealment tolls the statue of limitations in Arizona, Hawaii, and New York,
        and admit that, contrary to the position in the IP-CAC, fraudulent concealment does not

28       exist in Puerto Rico.  IP Opp. at 37-39, nn.44 & 46.

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

Indirect Plaintiffs cannot meet either standard.  They cannot reasonably contend that the facts alleged based on information readily available to them throughout the alleged class period are sufficient to state claims under Section One of the Sherman Act, 21 state antitrust laws, and 17 state consumer protection laws, yet insufficient to put them on constructive notice.  Even more so, Indirect Plaintiffs cannot reasonably assert these same publicly available facts, which they now claim were "unprecedented" and clearly evidence a "conspiracy," were insufficient to have aroused suspicion and put them on inquiry notice.

While Indirect Plaintiffs argue that "courts have found much more conspicuous information inadequate to place a plaintiff on notice of a potential claim" (IP Opp. at 39), the six cases they cite (none of which are state law cases) do not support this assertion.  In three of these cases, the allegedly conspicuous information concerned an entirely different product than the product at issue in the suit where tolling was sought.  Obviously, such information could not provide "notice of the potential for a conspiracy in the sale of the *product he or she purchases*."  *In re Monosodium Glutamate Antitrust Litig.*, No. 00-MDL-1328, 2003 WL 297287, at *4 (D. Minn. Feb. 6, 2003) (emphasis added); *see also In re Bulk Extruded Graphite Prods. Antitrust Litig.*, No. 02-6030, 2007 WL 1062979, at *4 (D.N.J. Apr. 4, 2007) (involving government investigations into products that were not the subject of the lawsuit); *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 500 F.Supp.2d 437, 449 (D.N.J. 2007) (same).  And none of the cases cited by Indirect Plaintiffs involve complaints, such as the IP-CAC, based on information available publicly throughout the alleged conspiracy period.

Where, as here, the alleged "facts" upon which plaintiffs base their claim were publicly available throughout the period at issue, tolling should be denied as a matter of law.[44]  *See Delanno, Inc. v. Peace*, 237 S.W.3d 81, 85 (Ark. 2006); *Mills v. Forestex Co.*, 108 Cal.App.4th 625, 652 (2003); *Putter v. North Shore Univ. Hosp.*, 858 N.E.2d 1140, 1143 (N.Y. 2006); *see also Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936, 940 (Kan. 1980) (affirming dismissal based on

---

[44]     One of the cases cited by Indirect Plaintiffs explicitly recognizes that fraudulent concealment may be determined as a matter of law.  *King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147, 1155 (10th Cir. 1981).

1  plaintiff's "own delay and inactivity"); *Putter*, 858 N.E.2d at 1143 (holding that plaintiffs'

2  "inaction" compelled dismissal).

### CONCLUSION

4          For all the foregoing reasons, the Indirect-Purchaser Plaintiffs' Consolidated

5  Amended Complaint should be dismissed.

6

7  DATED:  April 3, 2008

8                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

9

10                                 By        */s/ Michael W. Scarborough*
                                             GARY L. HALLING
11                                           JAMES L. McGINNIS
                                             MICHAEL W. SCARBOROUGH
12
                                             Attorney for Defendant
13                                           SAMSUNG SEMICONDUCTOR, INC.

14

15                              SEDGWICK, DETERT, MORAN & ARNOLD LLP

16                                 By:  */s/ Christopher A. Nedeau*

17                                        Christopher A. Nedeau

18                                 Christopher A. Nedeau (State Bar No. 81297)
                                   One Market Plaza
19                                 Steuart Tower, 8th Floor
                                   San Francisco, CA 94105
20                                 Tel:      (415) 781-7900
                                   Fax:      (415) 781-2635
21
                                   *Attorneys for Defendant AU Optronics Corporation*
22                                 *America*

23

24

25

26

27

28

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

1

2

WILMER CUTLER PICKERING HALE AND DORR
LLP

3

By:  /s/ Steven F. Cherry

4

Steven F. Cherry

5

Steven F. Cherry (pro hac vice)
1875 Pennsylvania Avenue NW
Washington, DC 20006

6

Tel:        (202) 663-6000
Fax:       (202) 663-6363

7

8

*Attorneys for Defendants Chi Mei Optoelectronics
USA, Inc. and CMO Japan Co., Ltd.*

9

MORGAN, LEWIS & BOCKIUS LLP

10

By:  /s/ Kent M. Roger

11

Kent M. Roger

12

Kent M. Roger (State Bar No. 95987)
One Market

13

Spear Street Tower
San Francisco, CA 94105

14

Tel.:       (415) 442-1140
Fax:       (415) 442-1001

15

16

*Attorneys for Defendants Hitachi Electronic Devices
(USA), Inc., Hitachi, Ltd., Hitachi Displays, Ltd., and
IPS Alpha Technology, Ltd.*

17

18

CLEARY GOTTLIEB STEEN & HAMILTON LLP

19

By:  /s/ Michael R. Lazerwitz

20

Michael R. Lazerwitz

21

Michael R. Lazerwitz (pro hac vice)
2000 Pennsylvania Avenue NW

22

Washington, DC 20006
Tel.:       (202) 974-1500

23

Fax:       (202) 974-1999

24

*Attorneys for Defendants LG.Philips LCD America, Inc.
and LG.Philips LCD Co., Ltd.*

25

26

27

28

-36-

DEFENDANTS' REPLY I/S/O JOINT MOTION TO DISMISS INDIRECT
PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

DUANE MORRIS LLP

By:  /s/ George D. Niespolo

George D. Niespolo

George D. Niespolo (State Bar No. 72107)
One Market Street
Spear Tower, 20th Floor
San Francisco, CA 94105
Tel.:        (415) 957-3013
Fax:        (415) 957-3001

*Attorneys for Defendants NEC Electronics America, Inc.
and NEC LCD Technologies, Ltd.*

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:  /s/ Albert J. Boro, Jr.

Albert J. Boro, Jr.

Albert J. Boro, Jr. (State Bar No. 126657)
50 Fremont Street
San Francisco, CA  94105
Tel.:        (415) 983-1000
Fax:        (415) 983-1200

*Attorneys for Defendants Sharp Corporation and Sharp
Electronics Corporation*

WHITE & CASE LLP

By:  /s/ Wayne A. Cross

Wayne A. Cross

Wayne A. Cross (pro hac vice)
1155 Avenue of the Americas
New York, NY 10036
Tel:        (212) 819-8200
Fax:        (212) 354-8113

*Attorneys for Defendants Toshiba America Electronic
Components, Inc., Toshiba Corporation and Toshiba
Matsushita Display Technology Co., Ltd.*

With the Reservation of All Rights and Defenses

        Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of
this document has been obtained from Christopher A. Nedeau; Steven F. Cherry; Kent M. Roger;
Michael R. Lazerwitz; George D. Niespolo; Albert Boro; and Wayne Cross.

-37-