Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Judith A. Zahid (215418)
Patrick B. Clayton (240191)
Qianwei Fu (242669)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:    (415) 693-0700
Facsimile:    (415) 693-0770
fscarpulla@zelle.com
ccorbitt@zelle.com

Joseph M Alioto (42980)
Theresa D. Moore (99978)
THE ALIOTO FIRM
555 California Street, 31st Floor
San Francisco, CA  94104
Telephone:    (415) 434-8900
Facsimile:    (415) 434-9200

*Interim Co-Lead Counsel for Indirect-Purchaser*
*Plaintiffs and Class Members*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. C07-1827-SI |
| | MDL No. 1827 |
| This Document Relates to: | **REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| All Indirect Purchaser Actions | Hearing Date:  October 1, 2009 Time:  4:00 p.m. Courtroom: 10, 19th Floor Judge:  Honorable Susan Illston |

## [REDACTED PUBLIC VERSION]

**TABLE OF CONTENTS**

I.     INTRODUCTION............................................................................. 1

II.    THE APPLICABLE STANDARDS....................................................... 3

III.   RULE 23(B)(3) CLASSES SHOULD BE CERTIFIED BECAUSE COMMON
       ISSUES OF LAW AND FACT PREDOMINATE............................................ 7

       A.   Plaintiffs Have Shown Common Issues Predominate As To The Antitrust
            Violation ...................................................................................... 7

            1.   The Single Conspiracy Alleged By Plaintiffs Will Be Proven With
                 Common Evidence of Defendants' Conduct ................................... 7

            2.   The Applicability, If Any, Of The FTAIA Will Be Resolved With
                 Common Evidence Of Defendants' Conduct.................................. 9

       B.   Plaintiffs Have Met Their Burden of Proof In Establishing Common Impact
            On Indirect Purchasers Through Common Evidence............................... 12

            1.   Dr. Netz Has Satisfactorily Demonstrated That Impact and Measure of
                 Damages Can Be Established with Common Proof......................... 14

            2.   The Alleged Divergent Market Conditions Are No Impediment To
                 Assessing Pass-Through With Use Of Predominately Generalized
                 Proof........................................................................................ 20

                 a.   Distribution Chain Complexity And Product Differentiation .... 21

                 b.   Variations In Price Levels And Negotiations ....................... 25

                 c.   Change In The LCD Market Over Time............................. 26

            3.   State Substantive Laws Regarding Inference Of Impact Apply........... 27

       C.   Plaintiffs Have Adequately Shown That Damages Can Be Measured Through
            Common Proof................................................................................ 32

IV.    THE PROPOSED CLASSES ARE ASCERTAINABLE UNDER RULE 23(A) ....... 34

V.     THE INJUNCTIVE CLAIMS UNDER THE SHERMAN ACT SHOULD BE
       CERTIFIED FOR CLASSWIDE TREATMENT UNDER RULE 23(B)(2)............. 39

VI.    NAMED PLAINTIFFS BAKER, FISHER, GRIFFITH, HANSEN, JOU,
       MURPHY, MULVEY, NORTHWAY, PAGUIRIGAN, SRIMOUNGCHANH,
       AND WATSON ARE ADEQUATE AND TYPICAL CLASS
       REPRESENTATIVES........................................................................ 42

A.   Class Period Redefined In Plaintiffs' Class Certification Motion Covers Plaintiffs Griffith And Hansen's Purchases ........................................... 42

B.   Plaintiff Srimoungchanh Personally Purchased the Products At Issue ........... 43

C.   Plaintiff Baker's Purchase Of Panel Made By A Co-Conspirator Is A Qualifying Purchase ................................................................. 44

D.   Plaintiffs Mulvey, Murphy, Northway, And Watson Can Adequately Represent The Class ................................................................. 45

VII.   CONCLUSION ................................................................. 47

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

# TABLE OF AUTHORITIES

**Federal Cases**

*Abrams v. Interco Inc.,*
    719 F.2d 23 (2d Cir. 1983) ................................................................. 34

*Advanced Micro Devices Inc. v. Intel Corp.,*
    452 F. Supp. 2d 555 (D. Del. 2006) ....................................................... 10

*Affholder, Inc. v. Southern Rock, Inc.,*
    746 F.2d 305 (5th Cir. 1984) ............................................................... 28

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare,*
    247 F.R.D. 156 (C.D. Cal. 2007) .......................................................... 34

*Arnold v. United Artists Theatre Circuit, Inc.,*
    158 F.R.D. 439 (N.D. Cal. 1994) .......................................................... 41

*Bates v. Dow Agrosciences LLC,*
    544 U.S. 431 (2005) ......................................................................... 10

*Bates v. United Parcel Service, Inc.,*
    511 F.3d 974 (9th Cir. 2007) ............................................................... 40

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ................................................................ 5

*Blue Cross & Blue Shield of Wisconsin v. Marshfield Clinic,*
    152 F.3d 588 (7th Cir. 1988) ............................................................... 39

*Bullock v. Board of Educ. of Montgomery County,*
    210 F.R.D. 556 (D. Md. 2002) ............................................................. 37

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ......................................................................... 41

*California v. ARC America Corp.,*
    490 U.S. 93 (1989) .......................................................................... 10

*California v. Infineon Techs. AG,*
    2008 WL 4155665 (N.D. Cal. Sept. 5, 2008) ............................................ 26

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
    479 U.S. 104 (1986) .................................................................. 39

*Carpet Group Int'l v. Oriental Rug Importers Ass'n Inc.,*
    227 F.3d 62 (3d Cir. 2000) ........................................................ 11

*Carrier v. American Bankers Life Assur. Co. of Florida,*
    2008 WL 312657 (D.N.H. Feb. 1, 2008) ........................................ 34

*City of St. Paul v. FMC Corp.,*
    1990 WL 259683 (D. Minn. Nov. 14, 1990) .................................. 26

*Cole v. Chevron USA, Inc.,*
    554 F. Supp. 2d 655 (S.D. Miss. 2007) ........................................ 28

*Computer Econ., Inc. v. Gartner Group, Inc.,*
    50 F. Supp. 2d 980 (S.D. Cal. 1999) ........................................... 28

*Continental Ore Co. v. Union Carbide & Carbon Co.,*
    370 U.S. 690 (1962) .................................................................. 8

*Conwood Company, L.P. v. United States Tobacco Company,*
    290 F.3d 768 (6th Cir. 2002) .................................................... 15

*Cordes & Co. Fin. Servs. Inc. v. A.G. Edwards & Sons Inc.,*
    502 F.3d 91 (2d Cir. 2007) ....................................................... 7

*Datagate Inc. v. Hewlett-Packard Co.,*
    941 F.2d 864 (9th Cir. 1991) .................................................... 39

*Davis v. Hutchins,*
    321 F.3d 641 (7th Cir. 2003) .................................................... 42

*Dick v. New York Life Ins. Co.,*
    359 U.S. 437 (1959) ................................................................ 27

*Dunnigan v. Metropolitan Life Ins. Co.,*
    214 F.R.D. 125 (S.D.N.Y. 2003) ................................................ 37

*F. Hoffman La Roche Ltd. v. Empagran S.A.,*
    542 U.S. 155 (2004) ................................................................ 11

*Graphic Prods. Distrib., Inc. v. Itek Corp.,*
    717 F.2d 1560 (11th Cir. 1983) ................................................. 32

*Greenspan v. Brassler,*
   78 F.R.D. 130 (S.D.N.Y. 1978)...................................................................... 43

*Harmsen v. Smith,*
   693 F.2d 932 (9th Cir. 1982)........................................................................ 9

*In re Aluminum Phosphide Antitrust Litig.,*
   160 F.R.D. 609 (D. Kan. 1995) .................................................................. 10

*In re Bulk (Extruded) Graphite Prods. Antitrust Litig.,*
   2006 WL 891362 (D.N.J. Apr. 4, 2006) ................................................ 12, 14

*In re Cardizem CD Antitrust Litig.,*
   200 F.R.D. 297 (E.D. Mich. 2001) ............................................................ 25

*In re Cardizem CD Antitrust Litig.,* ("*Cardizem II*")
   200 F.R.D. 326 (E.D. Mich. 2001) ...................................................12, 17, 45

*In re Commercial Tissue Prods. Antitrust Litig.,*
   183 F.R.D. 589 (N.D. Fla. 1998) ............................................................... 25

*In re Corrugated Container Antitrust Litig.,*
   80 F.R.D. 244 (S.D. Tex. 1978) .................................................................. 7

*In re Domestic Air Transp. Antitrust Litig.,*
   137 F.R.D. 677 (N.D. Ga. 1991).............................................................. 43

*In re EPDM Antitrust Litig.,*
   256 F.R.D. 82 (D. Conn. 2009) ............................................................ 12-13

*In re Folding Carton Antitrust Litig.,*
   75 F.R.D. 727 (N.D. Ill. 1977)............................................................ 10, 21

*In re Folding Carton Antitrust Litig.,*
   88 F.R.D. 211 (N.D. Ill. 1980)................................................................. 34

*In re Fresh Del Monte Pineapples Antitrust Litig.,*
   2008 WL 5661873 (S.D.N.Y. Feb. 20, 2008) ............................................. 27

*In re Frontier Ins. Group, Inc. Sec. Litig.,*
   172 F.R.D. 31 (E.D.N.Y. 1997) ................................................................ 46

*In re Graphics Processing Units (GPUs) Antitrust Litig.,*
   253 F.R.D. 478 (N.D. Cal. 2008)......................................................... 24, 25

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

*In re Greenwich Pharms. Sec. Litig.*,
  1993 WL 436031 (E.D. Pa. Oct. 25, 1993)........................................................... 46

*In re Hotel Tel. Charges*,
  500 F.2d 86 (9th Cir. 1974) ............................................................................... 34

*In re Indus. Diamonds Antitrust Litig.*,
  167 F.R.D. 374 (S.D.N.Y 1996) ................................................................... 24, 25

*In re Ins. Brokerage Antitrust Litig.*,
  __F.3d__, 2009 WL 2855855 (3d Cir. Sept. 8, 2009)......................................... 4, 5

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  476 F. Supp. 2d 452 (D. Del. 2007) ................................................................. 10

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  496 F. Supp. 2d 404 (D. Del. 2007) ........................................................... 28, 32

*In re Linerboard Antitrust Litig.*,
  305 F.3d 145 (3d Cir. 2002).............................................................................. 14

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  202 F.R.D. 12 (D.D.C. 2001) ........................................................................... 38

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
  710 F. Supp. 152 (E.D. Pa. 1989)....................................................................... 9

*In re Marine Hose Antitrust Litig.*,
  No. 08-MDL-1888, 2009 U.S. Dist. LEXIS 71020 (S.D. Fla. July 31, 2009) ............... 9

*In re Methionine Antitrust Litig.*,
  2003 WL 22048232 (N.D. Cal. Aug. 26, 2003)................................................... 22

*In re Methionine Antitrust Litig.*,
  204 F.R.D. 161 (N.D. Cal. 2001)....................................................................... 22

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*,
  209 F.R.D. 185 (S.D.N.Y. 2007) ....................................................................... 34

*In re NASDAQ Market Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................... *passim*

*In re New Motor Vehicles Canadian Export Antitrust Litig*,
  235 F.R.D. 127 (D. Me. 2006), *rev'd on other grounds*, 522 F.3d 6 (1st Cir. 2008) ........... 28

*In re Nissan Motor Corp. Antitrust Litig.,*
   430 F. Supp. 231 (S.D. Fla. 1977).................................................................. 44

*In re Oriented Strand Board(OSB) Antitrust Litig.,*
   2007 WL 2253418 (E.D. Pa. Aug. 3, 2007)........................................................ 35

*In re Polypropylene Antitrust Litig.,*
   178 F.R.D. 603 (N.D. Ga. 1997)..................................................................... 9

*In re Potash Antitrust Litig.,*
   159 F.R.D. 682 (D. Minn. 1995).............................................................. 32, 34

*In re Propylene Carpet Antitrust Litig.,*
   996 F. Supp. 18 (N.D. Ga. 1997) ........................................................... 15, 16

*In re Relafen Antitrust Litig.,*
   221 F.R.D. 260 (D. Mass. 2004).................................................................. 27

*In re Rubber Chems. Antitrust Litig.,*
   232 F.R.D. 346 (N.D. Cal. 2005)................................................................. 14

*In re Select Comfort Corp. Sec. Litig.,*
   202 F.R.D. 598 (D. Minn. 2001).................................................................. 20

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
   2008 WL 4447592 (N.D. Cal. Sept. 29, 2008).......................................... 7, 14, 32

*In re Sugar Indus. Antitrust Litig.,*
   73 F.R.D. 322 (E.D. Pa. 1976)............................................................... 8, 33

*In re Terazosin Hydrochloride Antitrust Litig.,*
   220 F.R.D. 672 (S.D. Fla. 2004).................................................................. 26

*In re Visa Check/MasterMoney Antitrust Litig.,*
   280 F.3d 124 (2d Cir. 2001)....................................................................... 34

*In re Vitamins Antitrust Litig.,*
   2000 WL 1475705 (D.D.C. May 9, 2007).......................................................... 9

*In re Vitamins Antitrust Litig.,*
   209 F.R.D. 251 (D.D.C. 2002).................................................................. 8, 34

*Irwin v. Mascott,*
   2001 U.S. Dist. LEXIS 3285 (N.D. Cal. Feb. 27, 2001) ........................................ 10

*Japan Line Ltd. v. County of Los Angeles,*
    441 U.S. 434 (1979) .................................................................................................... 10

*Johnston v. Pierce Packing Co.,*
    550 F.2d 474 (9th Cir. 1977) ..................................................................................... 27

*Jones v. Nat'l Sec. Fire & Cas. Co.,*
    2006 WL 3228409 (W.D. La. Nov. 3, 2006) ........................................................ 38-39

*Jordan v. Paul Fin., LLC,*
    2009 WL 192888 (N.D. Cal., Jan. 27, 2009) ........................................................... 43

*Kesler v. Ikea U.S. Inc.,*
    2008 WL 413268 (C.D. Cal. Feb. 4, 2008) .............................................................. 38

*Kohen v. Pacific Inv. Mgmt. Co. LLC,*
    571 F.3d 672 (7th Cir. 2009) ...................................................................... 5, 18, 35, 37

*Kruman v. Christie's Int'l,*
    284 F.3d 384 (2d Cir. 2002) ....................................................................................... 10

*Lewis v. Goldsmith,*
    95 F.R.D. 15 (D.N.J. 1982) ......................................................................................... 46

*Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ...................................................................................................... 40

*Lucas Auto Eng'g Inc. v. Bridgestone/Firestone Inc.,*
    140 F.3d 1228 (9th Cir. 1998) .................................................................................... 39

*Mazur v. eBay, Inc.,*
    257 F.R.D. 563 (N.D. Cal. 2009) .......................................................................... 37, 38

*Meijer Inc. v. Abbott Labs.,*
    2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) .......................................................... 46

*Meijer Inc. v. Warner Chilcott Holdings Co. III, Ltd.,*
    246 F.R.D. 293 (D.D.C. 2007) ................................................................................... 32

*Metallgesellschaft AG v. Sumitomo Corp.,*
    325 F.3d 836 (7th Cir. 2003) ...................................................................................... 12

*Moeller v. Taco Bell Corp.,*
    220 F.R.D. 604 (N.D. Cal. 2004) ............................................................................... 43

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION – Master File No. C07-1827-SI

*Mularkey v. Holsum Bakery Inc.,*
  120 F.R.D. 118 (D. Ariz. 1988)................................................................................. 7

*O'Connor v. Boeing N. Am., Inc.,*
  184 F.R.D. 311 (C.D. Cal. 1998) ..................................................................... 37, 38

*Papst Motoren GMbH v. Kanematsu-Goshu (U.S.A.) Inc.,*
  629 F. Supp. 864 (S.D.N.Y. 1986) ...................................................................... 11

*Peoples v. Wendover Funding, Inc.,*
  179 F.R.D. 492 (D. Md. 1998)............................................................................ 37

*Petroleum Prods. Antitrust Litig.,*
  497 F. Supp. 218 (C.D. Cal. 1980) .................................................................... 39

*Pierce v. Novastar Mortgage Inc.,*
  489 F. Supp. 2d 1206 (W.D. Wash. 2007)........................................................ 43

*Pitt v. City of Portsmouth, Va.,*
  221 F.R.D. 438 (E.D. Va. 2004)........................................................................ 20

*Presidio Golf Club of San Francisco, Inc. v. Nat'l Linen Supply Corp.,*
  No. C 71-431 SW, 1976 WL 1359 (N.D. Cal. Dec. 30, 1976) ........................ 18

*Quintero v. Mulberry Thai Silks, Inc.,*
  2008 WL 4666395 (N.D. Cal. Oct. 22, 2008)................................................... 38

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993)............................................................................... 42

*Sadler v. Midland Credit Mgmt. Inc.,*
  2009 WL 901479 (N.D. Ill. Mar. 31, 2009)...................................................... 37

*Shelter Realty Corp. v. Allied Maintenance Corp.,*
  75 F.R.D. 34 (S.D.N.Y. 1977) .......................................................................... 21

*Shin v. Cobb County Bd. of Educ.,*
  248 F.3d 1061 (11th Cir. 2001)......................................................................... 20

*Sollenbarger v. Mountain States Tel. & Tel. Co.,*
  121 F.R.D. 417 (D.N.M. 1988) ......................................................................... 34

*Somers v. Apple,*
  2009 WL 2137148 (N.D. Cal. July 17, 2009) ............................................. 22, 23

*S. Carolina Nat'l Bank v. Stone,*
 139 F.R.D. 325 (D.S.C. 1991) ........................................................ 33

*State of Ala. v. Blue Bird Body Co., Inc.,*
 573 F.2d 309 (5th Cir. 1978)........................................................... 8

*Stoffels v. SBC Comms. Inc.,*
 238 F.R.D. 446 (W.D. Tex. 2006)................................................... 38

*Susman v. Lincoln Am. Corp.,*
 561 F.2d 86 (7th Cir. 1977) ........................................................... 45

*Tableware Antitrust Litig.,*
 241 F.R.D. 644 (N.D. Cal. 2007)................................................... 38

*Tanzer v. Sharon Tell Corp.,*
 1979 WL 1226 (S.D.N.Y. June 22, 1979) ...................................... 45

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,*
 209 F.R.D. 159 (C.D. Cal. 2002)........................................... 7, 8, 34

*Trabert & Hoeffer, Inc. v. Piaget Watch Corp.,*
 633 F.2d 477 (7th Cir. 1980)......................................................... 41

*United Phosphorous Ltd. v. Angus Chem. Co.,*
 131 F. Supp. 2d 452 (N.D. Ill. 2001).............................................. 11

*United States v. Krasn,*
 614 F.2d 1229 (9th Cir. 1980) ...................................................... 40

*United States v. Loya,*
 807 F.2d 1483 (9th Cir. 1987) ...................................................... 40

*United States v. McCombs,*
 30 F.3d 310 (2d Cir. 1994)............................................................ 27

*United States v. Oregon State Med. Soc'y*
 343 U.S. 326 (1952) ..................................................................... 40

*United States v. Sax,*
 39 F.3d 1380 (7th Cir. 1994)......................................................... 41

*United States v. U.S. Gypsum Co.,*
 438 U.S. 422 (1978) ..................................................................... 40

1

2

*Walgreen Co. v. Sara Creek Prop. Co.*,
    966 F.2d 273 (7th Cir. 1992).............................................................. 39

3

4

*Whiteway v. FedEx Kinko's Office and Print Servs.*,
    2006 WL 2642528 (N.D. Cal. Sep. 14, 2006).............................. 34, 38

5

*Windham v. Am. Brands, Inc.*,
    565 F.2d 59 (4th Cir. 1977) ........................................................... 34

6

7

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    __F.3d__, 2009 WL 2634770 (9th Cir. Aug. 28, 2009).....................3, 5, 31

8

9

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969) ....................................................................... 30

**State Cases**

10

11

*Amarel v. Connell*,
    202 Cal. App. 3d 137 (1988) ........................................................... 10

12

13

*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*,
    191 Cal. App. 3d 1341 (1987)......................................21, 28, 29, 31

14

15

*Bruno v. Superior Ct.*,
    127 Cal. App. 3d 120 (1981) .....................................18, 20, 32

16

17

*Corbett v. Superior Court*,
    101 Cal. App. 4th 649 (2002) ......................................................... 32

18

19

*Execu-Tech Bus. Sys., Inc. v. Appleton Papers Inc.*,
    743 So.2d 19 (Fla. Ct. App. 1999)..................................................... 30

20

21

*Fuller v. Pac. Med. Collections, Inc.*,
    891 P. 2d 300 (Haw. Ct. App.1995)................................................... 31

22

*Gordon v. Microsoft Corp.*,
    No. MC 00-5994, 2003 WL 23105550 (D. Minn. Ct. Dec. 15, 2003)............... 17

23

24

25

*Gordon v. Microsoft Corp.*, ("*Gordon II*")
    No. MC 00-5994, 2001 WL 366432 (D. Minn. Ct. Mar. 30, 2001) *review denied*, 645 N.W.2d
    393 (Minn. 2002), *opinion on remand*, 2003 WL 23105552 (D. Minn. Mar. 14, 2003).. 22, 26,
    30

26

27

*Howe v. Microsoft Corp.*,
    656 N.W.2d 285 (N.D. 2003)............................................................4

28

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

*In re Cipro Cases I & II,*
　　121 Cal. App. 4th 402 (2004) ................................................................. *passim*

*In re Fla. Microsoft Antitrust Litig.,*
　　No. 99-27240, 2002 WL 31423620 (Fla. Ct. App. Aug. 26, 2002) ........................... 22, 30

*In re South Dakota Microsoft Antitrust Litig.,*
　　657 N.W.2d 668 (S.D. 2003) ...................................................................... 19

*Klussman v. Cross Country Bank,*
　　134 Cal. App. 4th 1283 (2005) .................................................................... 4

*Mack v. Bristol Myers Squibb,*
　　673 So.2d 100 (Fla. Ct. App. 1996) ............................................................... 4

*McCarter v. Abbott Labs.,*
　　1993 WL 13011463 (Ala. Cir. Ct. Apr. 9, 1993) .................................................. 27

*Microsoft I-V Cases,*
　　2002-2 Trade Cas. (CCH) ¶ 73,013 (Cal. Super. Ct. Aug. 29, 2000) ........................... 18

*Romero v. Philip Morris, Inc.,*
　　109 P.3d 768 (N.M. Ct. App. 2005) .......................................................... 25, 26

*Rosack v. Volvo of Am. Corp.,*
　　131 Cal. App. 3d 741 (1982) ................................................................ 18, 21

*Sherwood v. Microsoft Corp.,*
　　No. 99C-3562, 2003 WL 21780975 (Tenn. Ct. App. July 31, 2003) ............................. 19

*State of California v. Levi Strauss & Co.,*
　　41 Cal.3d 460 (1986) ............................................................................. 4

*Union Carbide Corp. v. Superior Court,*
　　36 Cal.3d 15 (1984) ............................................................................. 31

**Federal Statutes**

15 U.S.C. § 6a ................................................................................. 9, 11

15 U.S.C. § 26 ................................................................................... 39

119 Stat. 4, Pub. L. 109-2, 28 U.S.C. §1332(d) .................................................... 4

**State Statutes**

Cal. Bus. & Prof. Code § 16760(d) ................................................................................ 18, 19

Haw. Rev. Stat. § 480-2 ............................................................................................. 3

Haw. Rev. Stat. § 480-13(c)......................................................................................... 31

**Federal Rules**

Fed. R. Civ. P. 23 ....................................................................................... *passim*

**State Rules**

N.D. R. Civ. P. 23 ................................................................................................. 4

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

1

## I.     INTRODUCTION

2      The opposition filed by Defendants attempts a remarkable feat: it acknowledges, as it must,

3  that these Defendants broke U.S. antitrust law by fixing prices for LCD panels bought by American

4  consumers. ("*Acts in furtherance of this conspiracy were carried out within the Northern District of*

5  *California. TFT-LCD that were the subjects of the conspiracy were sold by one or more of the*

6  *conspirators to customers in this District.*")[1]

7      The Defendants' opposition then suggests that a clever parsing of the Foreign Trade Antitrust

8  Improvements Act, or statements by a Justice Department lawyer concerning the number of

9  conspiracies, or the purported complexity in proving consumer injury, should defeat class

10  certification. For Defendants, this is of course a convenient flip-flop from the fact that the already-

11  convicted Defendants avoided restitutionary penalties for their criminal price-fixing conduct by

12  pointing to the civil class actions pending against them. ("*In light of the civil class action cases filed*

13  *against the defendants . . . which potentially provide for a recovery of a multiple of actual damages,*

14  *the United States agrees that it will not seek a restitution order for the offense charged in the*

15  *Information.*")[2]

16      Sidestepping full liability on the criminal side by promising to make it up on the civil side

17  class actions, and thereafter denying class-wide civil liability altogether, is too clever by half. ("*The*

18  *participants in the LCD conspiracy committed a serious fraud upon American consumers by fixing*

19  *the prices of a product that is in almost every American home.*")[3]

20

21

22

23  ----

[1] Plea Agreement, *United States v. LG Display Co. Ltd.*, ¶ 4 (e); Supplemental Declaration of Judith
24  A. Zahid In Support Of Indirect-Purchaser Plaintiffs' Class Certification Motion ("Zahid Supp.
Decl.") Ex. 1. *See also* Plea Agreement, *United States v. Sharp Corp.*, ¶ 4 (g); Plea Agreement,
25  *United States v. Hitachi Displays Ltd.*, ¶ 4 (e), Zahid Supp. Decl. Exs. 2-3.

26  [2] Plea Agreement, *United States v. LG Display Co. Ltd.*, ¶ 12; *see also* Plea Agreement, *United
States v. Sharp Corp.*, ¶ 12; Plea Agreement, *United States v. Hitachi Displays Ltd.*, ¶ 12.

27  [3] Department of Justice Press Release, "Korean Executive Agrees to Plead Guilty and Serve One
Year In Prison for Participation in LCD Price-Fixing Conspiracy" (April 27, 2009); Zahid Supp.
28  Decl. Ex. 4.

1

1    At a minimum, the convicted felons LG Display Co., Sharp Corp., Hitachi Displays Ltd., and

2    Epson Imaging Devices Corp.[4] should be foreclosed from staking out positions in this civil case that

3    flatly contradict the terms of the guilty pleas entered under oath and accepted by this Court.  ("*THE*

4    *COURT:  You have requested that there be no restitution because it is anticipated that the MDL*

5    *proceedings, and possibly other civil proceedings out there, will on their own provide recourse to*

6    *the victims of these activities independent of restitution from the Government.  And on that basis, I*

7    *will agree not to impose restitution.*")[5]

8    When the opposition is stripped of its many pages of rhetoric, what remains is the standard

9    knee-jerk defense to class certification:  citation to an opposition economist's report attacking the

10   results of the plaintiff economist's report, and speculation about the plaintiffs' ability to prevail on

11   their claims at trial.  Though these arguments are clothed under Rule 23, they are nothing more than

12   an attempt to advance the merits phase of this case to class certification.  This Court, like all other

13   courts of the Ninth Circuit, should reject this invitation.

14   Instead, the inquiry here turns on whether Indirect-Purchaser Plaintiffs ("Plaintiffs") have

15   satisfied the elements of Rule 23:

16   *Numerosity*:    unchallenged and satisfied.

17   *Commonality*:   unchallenged and satisfied.

18   *Typicality*:  satisfied with qualifying class representatives whose claims are typical of the

19   class members.

20   *Adequacy*:  satisfied with competent class representatives who are free of disabling conflicts,

21   and whose claims will be ably prosecuted by the interim co-lead counsel, whose adequacy is not

22   challenged.

23   *Appropriateness of Injunctive Relief*:  demonstrated by the threat of continuing violations of

24   the nation's competition laws by convicted conspirators who have broken the laws before and offer

25

26   [4] Epson Imaging Devices Corp., a named co-conspirator in the Indirect-Purchaser Plaintiffs'
     operative complaint. is not currently named as a Defendant.

27   [5] *United States v. Sharp Corp.* Sentencing Hearing Transcript (Dec. 16, 2008) 23:11-16; Zahid Supp.
     Decl. Ex. 5.

28

no assurances of their compliance with such laws in the future.

*Ascertainability of Class Members*:  encompassing only those consumers who have been harmed by the alleged price-fixing conspiracy, the class definitions here are more than adequate, especially in light of the fact that class membership can be easily determined.

*Predominance*:  amply satisfied due to the existence of class-wide issues relating to the existence of the conspiracy, the impact of that conspiracy on class members as articulated in workable economic models, and the damages to class members caused by that conspiracy through reliable means.

*Superiority*:  demonstrated by Plaintiffs' opening brief, the proposed classes here are manageable and superiority is unchallenged by Defendants, who do not suggest that any other forum or mechanism exists that would better address the claims of those consumers injured by the conduct alleged here.

For all of these reasons, as explained below and in Plaintiffs' opening brief, the motion should be granted.

## II.   THE APPLICABLE STANDARDS

On this motion, the Court should be guided by the recent Ninth Circuit reversal of the district court's denial of certification to a consumer class under the Hawaii consumer protection statute. *Yokoyama v. Midland Nat. Life Ins. Co.*, __F.3d__, 2009 WL 2634770 (9th Cir. Aug. 28, 2009).  The same statute is at issue here (Haw. Rev. Stat. § 480-2, *see* Pls.' Mot. at 33), and is representative of the other state-law claims asserted under the Indirect-Purchaser State-Wide Classes.  In *Yokoyama*, the district court failed, under Rule 23, to follow the binding state court precedent establishing a preference for consumer protection claims to proceed on a class action basis:  "Hawaii's state courts have made clear that Hawaii's consumer protection laws are flexible and may be enforced through the class action mechanism.  Accordingly, this class should have been certified."  2009 WL 2634770 at *6.

*Yokoyama* was bound by the fact that "Hawaii's consumer protection laws expressly consider class actions to be appropriate enforcement mechanisms . . . [and] Hawaii's courts recognize that its

consumer protection laws can be enforced through class actions." *Id.* at *5.  Likewise, this Court,

consistent with the *Erie* doctrine, in exercising jurisdiction over state law claims under CAFA,[6]

must follow the binding pronouncements from the courts of those various states favoring class action

treatment for the claims at issue here.  Plaintiffs' opening brief collects that authority, which applies

across the board.  *See* Pls.' Mot. at 26-48.  By way of brief examples:

- **California**:  "The right to seek classwide redress is more than a mere procedural device in California," *Klussman v. Cross Country Bank*, 134 Cal.App.4th 1283, 1296 (2005); it is the express public policy of California courts to encourage use of the class action device "for the protection of consumers against exploitative business practices." *State of California v. Levi Strauss & Co.*, 41 Cal.3d 460, 471 (1986).

- **Florida**:  "[W]e read [the Florida Deceptive and Unfair Trade Practices Act] as a clear statement of legislative policy to protect consumers through the authorization of such indirect purchaser actions." *Mack v. Bristol Myers Squibb*, 673 So.2d 100, 108 (Fla. 1st DCA 1996).

- **North Dakota**:  "We have consistently construed N.D.R.Civ.P. 23 to provide an open and receptive attitude toward class actions . . . we are guided by the broad and liberal public policy in favor of class actions in this state." *Howe v. Microsoft Corp.*, 656 N.W.2d 285, 288 (N.D. 2003).

Defendants never substantively discuss Plaintiffs' state law authority in support of

certification of the Indirect-Purchaser State-Wide Classes, which, in light of *Yokoyama*, further

confirms that this Court should apply these presumptions in favor of class certification to the instant

motion.

Of particular relevance to the question of "predominance" of common issues in an antitrust

class action is the Third Circuit's recent decision in *In re Ins. Brokerage Antitrust Litig.*, __F.3d__,

2009 WL 2855855 (3rd Cir. Sept. 8, 2009), affirming the district court's certification of settlement

classes under Rule 23.  There, the court stated that, for an antitrust claim, "common questions

abound with respect to whether defendants engaged in illegal, concerted action" because the focus is,

---

[6] Class Action Fairness Act ("CAFA"), 119 Stat. 4, Pub. L. 109-2, as codified, 28 U.S.C. § 1332 (d).

1  necessarily, "on the conduct of the defendants." *Id.* at *19. Turning to antitrust impact and

2  damages, the court explained that "although the fourth element [of an antitrust claim] focuses on

3  whether the plaintiffs were injured by the defendants' conduct, it may still involve common

4  questions of law and fact if proof of injury can be established on a class-wide basis…. [W]e are

5  satisfied that the element of antitrust injury – that is, the fact of damages – is susceptible of common

6  proof, even if the amount of damages that each plaintiff suffered could not be established by

7  common proof." *Id.* at *19-20; *accord Yokoyama*, 2009 WL 2634770 at *6 ("In this circuit,

8  however, damage calculations alone cannot defeat certification. We have said that '[t]he amount of

9  damages is invariably an individual question and does not defeat class action treatment.'" (citing

10  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975))).

11  Moreover, the cardinal rule that class certification cannot be converted into a decision on the

12  merits was reaffirmed most recently by Judge Richard Posner of the Seventh Circuit. *Kohen v.*

13  *Pacific Inv. Management Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009), affirmed certification over

14  objections that the district court failed to reach the question of damages to class members: "PIMCO

15  argues that before certifying a class the district judge was required to determine which class

16  members had suffered damages. But putting the cart before the horse in that way would vitiate the

17  economies of class action procedure; in effect the trial would precede certification." The

18  defendant's argument, identical to the one made by Defendants here, that no class could be certified

19  without verifying the injury to all class members was soundly rejected: "What is true is that a class

20  will often include persons who have not been injured by the defendant's conduct; indeed this is

21  almost inevitable because at the outset of the case many members of the class be unknown, or if they

22  are known still the facts bearing on their claims may be unknown. Such a possibility or indeed

23  inevitability does not preclude class certification . . ." *Id.* at 677.

24  These recent, on-point appellate decisions confirm that the Court must view this Rule 23

25  motion in light of the relevant state law favoring class certification, the continuing viability of class

26  action treatment for antitrust claims, and the requirement that class certification decisions be kept

27  separate from an adjudication of the merits of Plaintiffs' claims. With this legal framework set, the

28  facts of this case fill in the details of Defendants' conduct towards the class members.

- The cartel was effective at raising prices—Defendants themselves congratulated themselves on the success of their conspiracy:

  ○ ████████████████████████████████████████████, CORRECTED CPT0004015.01E - CPT0004015.02E. Declaration of Judith A. Zahid in Support of Indirect-Purchaser Plaintiffs' Motion for Class Certification ("Zahid Supp. Decl.") Ex. 8.

  ○ ████████████████████████████████, CORRECTED CPT0004020.01E - CPT0004022E, p. 1 of Translation.  Zahid Supp. Decl. Ex. 9.

  ○ ████████████████, GRN000010 - GRN000021, at 000010. Zahid Supp. Decl. Ex. 10.

  ○ ████████████████████████████████ CORRECTED CPT0004008.01E-4011E at 4008.02E [translated].  Zahid Supp. Decl. Ex. 11.

- The cartel affected the prices of finished LCD Products incorporating the LCD Panels:

  ○ ████████████████████████████████ Declaration of Chien-Ming ("Milton") Kuan ¶¶2-3.

  ○ ████████████████████████████████ SECm00226720. Zahid Supp. Decl. Ex. 12.

- The cartel monitored the pass-through effect of the LCD Panel price-fix:

  ○ ████████████████ GRNE-B-0369742 - GRNE-B-0369750 at GRNE-B-0369747. Zahid Supp. Decl. Ex.13.

  ○ ████████████████████████████ (Deutsche Bank October 22, 2003 report).  GRNE-P-0012042 - GRNE-P-0012060 at GRNE-P-0012052.  Zahid Supp. Decl. Ex. 14.

  ○ ████████████████████████ SECm00992549 - SECm00992561 at SECm0092550.  Zahid Supp. Decl. Ex. 15.

6

Thus, certification of proposed classes is appropriate here.

## III.   RULE 23(B)(3) CLASSES SHOULD BE CERTIFIED BECAUSE COMMON ISSUES OF LAW AND FACT PREDOMINATE

### A.   Plaintiffs Have Shown Common Issues Predominate As To The Antitrust Violation

The central issue in this price-fixing conspiracy case, by its very nature, deals with common legal and factual questions about the existence, scope and effect of the alleged conspiracy. The overriding need to prove an antitrust conspiracy and anticompetitive prices in the TFT-LCD market satisfies the predominance requirement. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("In price-fixing cases, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present.").

#### 1.   The Single Conspiracy Alleged By Plaintiffs Will Be Proven With Common Evidence of Defendants' Conduct

Defendants argue that the *liability evidence* of their alleged horizontal price-fixing conspiracy will not be susceptible of common proof. This argument fails for at least three reasons. First, proof of an antitrust price-fixing conspiracy is a class-wide issue, because it is the defendants' conduct that defines the alleged conspiracy. *See, e.g., In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D. Tex. 1978) ("Whether the proof ultimately adduced will establish the existence of a national conspiracy among the defendants is not in issue here; it is not the court's function to weigh this evidence for its truth but merely to ascertain whether it is of a type suitable for classwide use. The court is persuaded that the conspiracy issue . . . is susceptible of generalized proof, since it deals primarily with what the defendants themselves did and said.").[7] Here,

---

[7] *Accord In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *5 (N.D. Cal. Sep. 29, 2008) ("whether a conspiracy exists is a common question that predominates over other issues in this case and has the effect of satisfying the first prerequisite of FRCP 23(b)(3)." (internal quotation and citation omitted)); *Mularkey v. Holsum Bakery Inc.*, 120 F.R.D. 118, 122 (D. Ariz. 1988); *Cordes & Co. Financial Services Inc. v. A.G. Edwards & Sons Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) ("Cordes and Creditors Trust's allegations of the existence of a price-fixing conspiracy are susceptible to common proof"); Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1781 ("In short, whether a conspiracy exists is a common question that is thought to predominate over the other issues in the case and has the effect of satisfying the first prerequisite in Rule 23(b)(3).").

Plaintiffs' conspiracy allegations, supported by evidence gathered to date, present exactly the kind of issue that is well suited for class-wide treatment. *See* Pls.' Mot. at 6-8 (describing single conspiracy allegation and citing documents).[8]

Second, Defendants' attempt to recast the allegations of a single conspiracy in Plaintiffs' complaint is improper. Plaintiffs have alleged, and this Court has sustained, a single unified conspiracy among all Defendants spanning the entire class period. *See In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 265 (D.D.C. 2002) ("[Defendants] claim there were multiple conspiracies, if any existed at all. The defendants improperly re-characterize the plaintiffs' allegations. The plaintiffs have not alleged multiple conspiracies—they have alleged a single price fixing conspiracy….").[9]

Like many other defendants facing significant liability due to a price-fixing conspiracy, Defendants now seek to divide the alleged conspiracy into smaller pieces. This tactic has been rejected by other courts, and should be rejected here as well. "The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts but only by looking at it as a whole." *Continental Ore Co. v. Union Carbide & Carbon Co.*, 370 U.S. 690, 699 (1962). "This principle should not to be discarded in the context of a class determination. Defendants' liability to the potential class members is not to be determined by dismembering the conspiracy." *In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 348 (E.D. Pa. 1976); *accord In re Vitamins*, 209 F.R.D. at 265. Defendants' opposition does not provide any evidence that is inconsistent with—let alone forecloses the possibility of—a single conspiracy. Whether there was one conspiracy or multiple conspiracies is itself a class-wide issue. Accordingly, Defendants' speculation about the possibility of multiple conspiracies is inadequate to refute Plaintiffs' showing

---

[8] *See also* Declaration of Yin-Hua ("Asuka") Hsu.

[9] Defendants cite *State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309 (5th Cir. 1978), but that case does not hold that a defendant can recast a conspiracy claim into one that is easier to defend. That case reversed the certification of a single, nationwide class because "it does appear from the limited record before us that the plaintiffs plan to proceed state by state and prove by varying evidence fifty different price-fixing conspiracies." *Id.* at 323. By contrast, Plaintiffs have pled and moved to certify classes based on a single alleged conspiracy to fix prices for LCD panels.

that the existence of the alleged conspiracy creates a common question that predominates over individual questions.

Third, Defendants' suggestion that varying details in the *criminal* convictions of many of the Defendants can be used to defeat or narrow *civil* liability is wrong. Plaintiffs' claims against Defendants are not circumscribed by the prosecutorial decisions made by the government in its criminal investigation into the TFT-LCD industry. *See, e.g., In re Vitamins Antitrust Litig.*, 2000 WL 1475705, at *18, No. Misc. 99-197 (D.D.C. May 9, 2000) ("the criminal guilty pleas do not establish boundaries for this civil litigation").[10]  Several Defendants (and a named co-conspirator) here have made binding admissions before this Court that, at least since 2001, they violated United States antitrust laws by fixing LCD panel prices. These Defendants' criminal admissions cannot shield them from civil liability for anticompetitive conduct spanning a longer period of time, whether by virtue of the "late joinder" rule for conspiracies, or by evidence of their own conduct under the civil action standard of proof. *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 710 F.Supp. 152, 153 (E.D. Pa. 1989) ("one who joins an existing conspiracy is equally liable with the other conspirators for all damages occasioned by the conspiracy, including damages caused before joinder."); *Harmsen v. Smith*, 693 F.2d 932, 942 (9th Cir. 1982) (same).

### 2.     The Applicability, If Any, Of The FTAIA Will Be Resolved With Common Evidence Of Defendants' Conduct

As a further attempt to manufacture individualized issues, Defendants contend that the Court's subject matter jurisdiction over the claims asserted in the Indirect-Purchaser State-Wide Classes cannot be determined on a class-wide basis. Specifically, the opposition suggests that because some class members bought LCD panels that took different paths into the United States, the Foreign Trade Antitrust Improvements Act ("FTAIA"), 15 U.S.C. § 6a, creates issues requiring individual and not class-wide treatment.

---

[10] *Accord In re Marine Hose Antitrust Litig.*, No. 08-MDL-1888, 2009 U.S. Dist. LEXIS 71020 (S.D. Fla. July 31, 2009) (certifying class running from 1985 to 2007 where related criminal conviction covered conduct from 1999 to 2007); *see also In re Polypropylene Antitrust Litig.*, 178 F.R.D. 603, 620 (N.D. Ga. 1997) ("the Court is aware of no authority that requires a civil antitrust plaintiff to plead only the facts of a prior criminal indictment. To the contrary, several cases flatly

Defendants never clearly explain why application of the FTAIA to the claims of the Indirect-Purchaser State-Wide Classes would involve individualized questions of fact or law. Defendants' own chart, purportedly listing the percentage of panels sold from 2001-06 with a "ship to" address outside of the U.S., reveals that "almost all" (Def. Opp. at 13) of the class members' purchases of LCD panels would be subject to the threatened FTAIA defense. *See* Chart, Def. Opp. at 13 (listing non-U.S. "ship to" percentages as 100%, 99%, 98%, 96%, 93% or 91%). Thus, even under Defendants' own flawed reasoning, the applicability of the FTAIA can be decided for "almost all" class members here in one fell swoop. *See Kruman v. Christie's Int'l*, 284 F.3d 384, 398 (2nd Cir. 2002) (the FTAIA "clearly reveals that its focus is not on the plaintiff's injury but on the defendant's conduct, which is regulated by the Sherman Act.").

Even if the FTAIA were applicable and relevant to the claims at issue here, Defendants would have to show that, despite expressing exclusive applicability to the Sherman Act, the statute should be read to also extend, impliedly, to the traditional state regulations at issue here.[11] *See California v. ARC America Corp.*, 490 U.S. 93, 101 (1989) ("Given the long history of state common-law and statutory remedies against monopolies and unfair business practices, it is plain that this is an area traditionally regulated by the States."); *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) ("In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.'" (citations omitted)).[12]

---

reject this theory." (citing *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 615-16 (D. Kan. 1995); *In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727 (N.D. Ill. 1977))).

[11] Neither of the two reported cases to touch this question offer any guidance to this Court. *Amarel v. Connell*, 202 Cal.App.3d 137, 150 (1988), held that the question could not be resolved on a demurrer. *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F.Supp.2d 452 (D. Del. 2007), granted a motion to dismiss certain state-law monopoly claims under the FTAIA to the same extent granted in a parallel motion to dismiss federal monopoly claims under the FTAIA. The claims in the parallel motion were based upon the lost sales of foreign-manufactured microprocessors to *foreign* customers. *Id.* at 457-58 (citing *Advanced Micro Devices Inc. v. Intel Corp.*, 452 F.Supp.2d 555 (D. Del. 2006)). The procedural posture and differences in substantive allegations make this non-binding decision unpersuasive here.

[12] *Japan Line Ltd. v. County of Los Angeles*, 441 U.S. 434 (1979), a maritime taxation case, provides no substitute for the kind of close statutory preemption analysis that Defendants omitted. Citing to this case implies, without support, that the *ad valorem* property tax held unconstitutional for the risk

10

1    If and when Defendants bring a procedurally proper motion raising an FTAIA-based

2    challenge to the claims asserted in the Indirect-Purchaser State-Wide Classes, Defendants will have

3    to overcome several significant obstacles before usurping, under the guise of the FTAIA, the

4    substantive laws of 23 sovereign jurisdictions.  The FTAIA is irrelevant with respect to "import trade

5    or import commerce."[13]   *See* 15 U.S.C. § 6a; *F. Hoffman La Roche Ltd. v. Empagran S.A.*, 542 U.S.

6    155, 161-62 (2004).  This exception applies where a defendant is engaged generally in foreign

7    manufacture and import, without regard to the volume of those imports.  *Carpet Group Int'l v.*

8    *Oriental Rug Importers Ass'n Inc.*, 227 F.3d 62, 72 (3d Cir. 2000).  Here, *every* Defendant (except,

9    perhaps, Defendant Chunghwa) shipped *some* panels directly to the U.S.  *See* Chart, Def. Opp. at 13.

10   Neither the statute nor the case law requires more to trigger the "import trade or import commerce"

11   exception and render the FTAIA irrelevant.

12      Even if the claims in the Indirect-Purchaser State-Wide Classes were found to be subject to

13   the FTAIA's "domestic effects" test, the egregious facts of this case would easily meet the test.[14]   In

14   the words of the U.S. Justice Department, "[t]he participants in the LCD conspiracy committed a

15   serious fraud upon American consumers by fixing the prices of a product that is in almost every

16   American home."[15]   The "direct, substantial and reasonably foreseeable" (15 U.S.C. § 6a(1)) effect

17   of Defendants' alleged price-fixing conspiracy was the payment, by U.S. consumers, of higher prices

18

19

20   of double-taxation there is akin to enforcing the antitrust and consumer protection laws.  The
     analogy is inapposite.

21
22   [13] By its express terms, the FTAIA provides that the Sherman Act does not reach "conduct involving
     trade or commerce (other than import trade or import commerce) with foreign nations" unless such

23   trade or commerce has a "direct, substantial and reasonably foreseeable effect" on U.S. trade or
     commerce (often referred to as the "domestic effects test").  *Id.*

24   [14] The "domestic effects" cases cited by Defendants bear no resemblance to this case.  *United*
     *Phosphorous Ltd. v. Angus Chem. Co.*, 131 F.Supp.2d 452 (N.D. Ill. 2001) concerned claims about

25   prospective chemical manufacturing opportunities allegedly thwarted; the court held no actual effect
     on the plaintiff had obtained.  *Papst Motoren GMbH v. Kanematsu-Goshu* (*U.S.A.*) *Inc.*, 629 F.Supp.

26   864, 869 (S.D.N.Y. 1986) involved a Japanese corporation's claims for conduct occurring solely in
     Japan, to the detriment of sales in Japan.

27   [15] Department of Justice Press Release, "Korean Executive Agrees to Plead Guilty and Serve One
     Year in Prison for Participation in LCD Price-Fixing Conspiracy" (April 27, 2009); Zahid Supp.

28   Decl Ex. 4.

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

for LCD Products.[16]   *See Metallgesellschaft AG v. Sumitomo Corp.*, 325 F.3d 836, 842 (7th Cir. 2003).  Accordingly, inasmuch as it is relevant for purposes of this motion, Plaintiffs meet any "domestic effects" requirement under the FTAIA, and do so based on common evidence applicable to the classes as a whole.

**B.    Plaintiffs Have Met Their Burden of Proof In Establishing Common Impact On Indirect Purchasers Through Common Evidence**

With respect to showing impact of the price-fixing conspiracy on members of the Indirect-Purchaser State-Wide Classes, the task before this Court is straightforward:  "The operative question here is not whether the plaintiffs can establish class-wide impact, but whether class-wide impact may be proven by evidence common to all class members."  *In re Bulk (Extruded) Graphite Products Antitrust Litig.*, 2006 WL 891362 at *10 (D.N.J. Apr. 4, 2006); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 340 (E.D. Mich. 2001) ("*Cardizem II*") ("To show impact is susceptible to class-wide proof, Plaintiffs are not required to show that the fact of injury actually exists for each class member.").

Here, Plaintiffs propose methods to show impact upon the class members by proof that is common to all of the classes.  As demonstrated in Plaintiffs' supporting papers, the generalized evidence that will be presented on the antitrust impact issue includes qualitative economic opinions, the structure of the market, the characteristics of the industry, the homogeneity of the product, and the competitive nature of the distribution channels.  Declaration of Janet S. Netz, Ph.D. ("Netz Decl.") at 32-90; *see also* exhibits submitted with Plaintiffs' moving papers, attached to Zahid Supp. Decl.

The methodologies for quantifying overcharges to the direct-purchaser, and for quantifying the magnitude of pass-through to the class members, utilize sound, reliable, and widely-accepted economic analysis.  *See* generally Netz Decl. at Section VII.  While Defendants are free to rebut the findings of Plaintiffs' methods, the time for doing so is at trial.  What Defendants have failed to do, however, is show that the economic analyses proposed by Plaintiffs are *not* workable.  *See In re*

---

[16] For a collection of Defendants' documents illustrating the primacy of the U.S. market to their business activities, see Zahid Supp. Decl. Exs. 22-52.

*EPDM Antitrust Litigation*, 256 F.R.D. 82, 100 (D. Conn. 2009) ("The real question before this court is whether the plaintiffs have established a *workable* multiple regression equation, not whether plaintiffs' model actually *works*, because the issue at class certification is not which expert is the most credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that there is a way to prove a class-wide measure of damages through generalized proof." (emphasis in original)).

Defendants challenge Plaintiffs' showing of impact on grounds that: (1) Dr. Netz has presented insufficient classwide formulas for assessing impact on the class members; and (2) Plaintiffs' impact analysis does not account for allegedly divergent distribution chains, pricing, sales, products and class members. Both of these arguments are without merit.

The basis for Defendants' challenges to Plaintiffs' ability to show impact using predominantly generalized proof is the Expert Report of Edward A. Snyder, Ph.D. ("Snyder Rpt."). Dean Snyder's disagreements with Dr. Netz are primarily focused on the merits of whether Plaintiffs can ultimately prove antitrust impact and damages. Similar arguments by Snyder were soundly rejected in *In re EPDM*, 256 F.R.D. at 94-95 ("Snyder's disagreements with Asher are primarily focused on the merits of whether the plaintiffs can ultimately demonstrate the three necessary elements of an antitrust claim on the merits. That is not the issue for this motion for class certification. I need only determine that the plaintiffs have demonstrated that the issue of antitrust impact is susceptible to proof applicable to the whole class."). Dean Snyder's analysis is further undermined by: (1) his failure to review Defendants' documents that were made available to him (Snyder Rpt. Appendix C, at 2; Snyder Tr. 38:6-40:3, 51:7-53:2 (Zahid Supp. Decl. Ex. 52)); (2) his reliance on observations from a very small, cherry-picked portion of data (Rebuttal Declaration of Janet S. Netz, Ph.D. ("Netz Rebuttal" at 4, 46-57, 69-70, 80); (3) his lack of understanding of the overcharge methods that Plaintiffs propose (*id.* at 66-68); and (4) his obliviousness to the overwhelming majority of antitrust economics literature and the voluminous documentary evidence from industry participants (*id.* at 67-68, 70, 85, 86). None of the criticisms directed by Dean Snyder against Plaintiffs' expert, Dr. Netz, have caused her to modify her conclusions. *See id.* at 4, 7-8, 13, 24, 26, 30, 41, 46, 51, 63, 68, 87.

Regardless of Defendants' attempt to misdirect this Court to minutiae and away from the big picture, the economic evidence is the same for all class members. Thus, this same economic evidence would be offered by the proposed class representatives and by every single individual class member to prove impact and the amount of damages if their claims were tried separately. Accordingly, the proof is common to all class members.

### 1.     Dr. Netz Has Satisfactorily Demonstrated That Impact and Measure of Damages Can Be Established with Common Proof

Notwithstanding Defendants' attempts to confuse and complicate, the existence of the alleged horizontal price-fixing conspiracy is the *overriding* predominant issue in this class action, and impact on indirect purchasers where a price-fixing is established is presumed under California and the other states' laws (*see, infra*, Section III.B.3.). However, Plaintiffs have not rested on this presumption, but also have demonstrated through the work of Dr. Netz that impact and a reasonable measure of damages can be shown at trial by proof common to all members of the class. As this court evaluates Dr. Netz' work, it is appropriate to note that this is not the trial, where each conflicting assertion and view point must be resolved. At the class certification stage, Plaintiffs need only make a "threshold" showing that predominantly common proof will be used to establish that class members were injured, and "it is not necessary for Plaintiffs to show that every single class member was injured by the alleged price-fixing conspiracy." *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 353 (N.D. Cal. 2005). "Plaintiffs need only advance a plausible methodology to demonstrate that antitrust injury can be proven on a class-wide basis." *SRAM*, 2008 WL 4447592, at *5 (quotations omitted). Dr. Netz' work more than meets this modest requirement.

Regression analysis, the principal technique Dr. Netz employed, has long been accepted by courts as a valid scientific method for estimating overcharges in price-fixing cases. Courts routinely recognize that econometrics are useful and reliable for assessing impact and damages to class members. *See, e.g., In re Bulk [Extruded] Graphite Prods.*, 2006 WL 891362, at *15 (recognizing multiple regression analysis as "widely accepted" and "recognized by the Third Circuit as a means of proving impact and estimating damages.") (citing *In re Linerboard Antitrust Litigation*, 305 F.3d 145, 153-54 (3d Cir. 2002)); *Conwood Company, L.P. v. United States Tobacco Company*, 290 F.3d

14

768, 793 (6th Cir. 2002) (rejecting a Daubert challenge to the plaintiff's antitrust expert, noting that regression analysis is a "generally accepted method[] for proving antitrust damages."); *In re Propylene Carpet Antitrust Litig.*, 996 F.Supp. 18, 26 (N.D. Ga. 1997) (recognizing the value of using regression analysis in antitrust cases).

Dr. Netz used a sound methodology to determine whether the prices for LCD panels were related via a "price structure" and concluded that they were.  Netz Decl. at VI.C.  The existence of a price structure is evidence that Defendants' price-fixing conspiracy artificially inflated the prices paid by direct purchasers.  The reason being, that a price structure indicates that prices for different products and to different direct purchasers are related by market forces, and an impact on one means an impact on all.  Netz Rebuttal at 30.  Dean Snyder agrees with this concept.  *See* Zahid Supp. Decl. at Ex. 52 attaching Snyder Tr. 166:4-167:22.

Dr. Netz reached this conclusion after conducting a hedonic regression analysis that showed the majority of price variation at the direct level is explained by common factors.  Netz Decl. at 67-68.  She also calculated tens of thousands of price correlations that show that prices for LCD panels move together across different applications, different sizes, different resolutions, different customers, different models, and different manufacturers.  *See* Netz Decl. Ex. 32.

Dr. Netz' regression analysis is based in large part on extensive data representing individual sales and purchase transactions, including third-party data collected from OEMs, distributors and retailers.  Armed with this arsenal of data, Dr. Netz conducted 53 different pass-through studies:  5 complete pass-through studies that measure pass-through from Defendants down the channels of distribution to the end user; and 48 partial pass-through studies that measure pass-through in different segments of the distribution channel.  Netz Rebuttal at 70-86.  Dr. Netz ran separate regression analyses for each of the three LCD products at issue, which took into account panel size, panel manufacturer and resolution, when that data was available.  *See* Netz Decl., Section VIII.A.2.

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

1   For the majority of the pass-through studies presented by Dr. Netz, the results are based on data
2   representing individual transactions.  *See id.* at 68-86.[17]

3        Dr. Netz' Rebuttal Declaration provides a detailed response to each and every criticism that
4   defendants and their expert, Dean Snyder, have leveled at her work.  She explains how her analysis
5   of Dean Snyder's conclusions and her re-evaluation of her own methodolgy in light of his differing
6   opinion has reinforced her findings that the alleged price-fixing conspiracy had a common impact on
7   indirect purchaser class members, and most importantly, that the analysis used to make this
8   determination "involves an examination of the conduct of Defendants and of the characteristics of
9   the industry, not of individual class members."  *Id.* at 2.

10       The structure of Dr. Netz' analysis is straightforward and uncomplicated.  It involves using
11  both data obtained from Defendants and from public sources to first answer "three questions, the
12  sum of which lead to common impact on class members:  (1) Was the cartel as alleged effective at
13  increasing the price of LCD panels?  (2) Was this impact common to all direct purchasers of LCD
14  panels?  (3) Was the overcharge imposed on direct purchasers passed through to end-users (class
15  member) that purchased products containing LCD panels (monitors, notebooks, and TVs) such that
16  the impact was common to all indirect purchasers?"  *Id.*  Her work demonstrated that the answer to
17  all three questions was yes, from which she "concluded that there was common impact to class
18  members."  *Id.*

19       Dr. Netz then considered whether damages to class members could be quantified "using
20  common evidence on a formulaic basis."  *Id.* at 3.  Looking at proof of overcharges to direct
21  purchasers of LCD panels and the pass-through of those overcharges to consumers, she proffers
22  three methods that can be used with common evidence to calculate classwide overcharges.  *Id.* at 4.

23       Plaintiffs will not attempt a lengthy summary of Dr. Netz' Rebuttal Declaration in this
24  Memorandum.  Neither will Plaintiffs engage in a lengthy critique of Dean Snyder's opinion that

25  _____

26  [17] Defendants contend that Dean Snyder's analyses of different data sets using Dr. Netz'
    methodology yielded different pass-through rates.  However, a closer look at the process shows that
27  Dean Snyder's analyses are based upon only a small portion of the data (some of which is wrong)
    from which he then draws class-wide conclusions.  Dr. Netz explains why Dean Snyder's results are
28  invalid in her Rebuttal at pages 68-86.

demonstrating that Defendants' conspiracy resulted in overcharges that were passed-through to

consumers is tantamount to impossible. The Court is respectfully referred to Dr. Netz' Rebuttal

Declaration for this discussion. However, Plaintiffs will make a few legal and factual observations

about Defendants' principal criticisms of Dr. Netz' regressions-- that her use of average prices,

publicly available data, her treatment of certain variables and the periods she selected as competitive

benchmarks are fatal flaws which undermine the validity of her analysis.

**Averages**. Defendants assert that Dr. Netz use of average data results in "regressions [that]

further mask relevant differences in the individual transactional data." Def. Opp. at 37.[18] While Dr.

Netz addresses this criticism as a matter of economics, Plaintiffs note that it has also been addressed

and has been repeatedly rejected as a matter of law. The court in *Gordon v. Microsoft Corp.*, No.

MC 00-5994, 2003 WL 23105550, at *3 (Minn. Dist. Ct. Dec. 15, 2003) ("*Gordon II*") explained

this point:

> The damages question for trial is presumably not about whether a specific
> Microsoft price increase found its way through the distribution chain and
> resulted in an increase in the price paid by a specific class member.
> Rather, the question is how a series of Microsoft price increases, and/or a
> series of Microsoft failures to reduce prices, impacted the price each
> consumer paid. The question of what would have happened but for
> Microsoft's monopoly overcharge is a hypothetical, and a hypothetical
> question generally cannot be answered by historical data about what
> actually happened, but must often be answered by general principles about
> what generally tends to happen. Thus, average pass through rates appear
> reasonable and even necessary to prove damages here.

As the court in *Gordon II* noted, this view is consistent with federal decisions applying Rule

23. *See, e.g., Cardizem II*, 200 F.R.D. at 345; *In re NASDAQ Market Makers Antitrust Litig.*, 169

F.R.D. 493, 506 (S.D.N.Y. 1996); *Presidio Golf Club of San Francisco, Inc. v. National Linen*

---

[18] Interestingly, Dean Snyder uses average prices in his own analysis, across the very same dimensions (models, customers, time periods) that he criticizes Dr. Netz for doing. Netz Rebuttal at 74. Dean Snyder is able to render opinions regarding pass-through from his use of average prices, but inconsistently claims that Dr. Netz' opinions based on average data are flawed. *See id.* at 71-73. Six of Dean Snyder's exhibits use this *exact* type of averaging of transactional data to make claims about the LCD industry. *Id.* at 43 (citing to Snyder Rpt. Exs. 17-19, 21.1, 21.2, 24). Most of these exhibits employ the same level of aggregation that Dean Snyder criticizes Dr. Netz for using in her correlations: the transactional prices each customer paid for a single product model, averaged over a particular month. *Id.* at 43. Likewise, Defendants themselves routinely used average selling prices (ASPs) of LCD panels to make pricing decisions. *See id.* at 73-74, fn. 302-303.

1   *Supply Corp.*, No. C 71-431 SW, 1976 WL 1359, at *5 (N.D. Cal. Dec. 30, 1976).  It is also

2   supported by other state Microsoft cases.[19]

3         Defendants erroneously assert that a regression analysis that relies on averages can not

4   support class certification because it can not demonstrate that each and every person within the class

5   definition paid an illegal overcharge.  This misconstrues the legal requirement for common proof of

6   impact.  It has long been the law that "[t]he fact that certain members of the class may not have been

7   injured at all does not defeat class certification."  *Rosack v. Volvo of America Corp.*, 131 Cal.App.3d

8   741, 754 (Cal. App. Ct. May 18, 1982).

9         As noted above, this concept was recently reaffirmed by the Seventh Circuit in *Kohen v.*

10  *Pacific Investment Management Company LLC and PIMCO Funds, supra,* 571 F.3d at 677: "What

11  is true is that a class will often include persons who have not been injured by the defendant's

12  conduct. . . ... Such a possibility or indeed inevitability does not preclude class certification,

13  [citations omitted]."

14        Further, the instant cases arise under state antitrust laws, whose substantive provisions

15  obviate even the theoretical need to determine the damages of any individual class member.  The

16  antitrust laws at issue provide that damages may be calculated on an aggregate basis.  *See e.g.*, Cal.

17  Bus. & Prof. Code § 16760(d) (aggregate calculation of damages under Cartwright Act expressly

18  permitted); *Bruno v. Super Ct.*, 127 Cal.App.3d 120, 129 n.4 (1981) ("In many cases, such an

19  aggregate calculation will be far more accurate than summing all individual claims.").

20        **Third-Party Data**.  Dr. Netz made appropriate use of the DisplaySearch data—which, in this

21  situation, were "more" and not "less" reliable than the data sets produced in the on-going discovery.

22  Moreover, there is substantial evidence demonstrating how each and every Defendant regularly

23  relies on DisplaySearch data in the normal course of its business.  Netz Rebuttal fn.165.  Further,

24  Defendants' criticism of Dr. Netz for using DisplaySearch data instead of Defendants' allegedly

25  "more precise" transactional data (Def. Opp. at 39)  ignores the fact that one of the main reasons Dr.

26

27  [19] *See, e.g., Microsoft I-V Cases*, J.C.C.P. No. 4106, 2000-2 Trade Cas. (CCH) ¶ 73,013 at 88,563-64 (Cal. Super. Ct. Aug. 29, 2000); *In re South Dakota Microsoft Antitrust Litig.*, 657 N.W.2d 668, 674

28

Netz had to rely on the third-party data was Defendants' failure to provide Plaintiffs with timely answers to their data interpretation questions.[20]

**Variables**.  Defendants' argument that Dr. Netz uses different variables for different regressions is partly incorrect and wholly irrelevant.  While it is correct that Dr. Netz' regressions used somewhat different control variables, the variables measure the same determinants of price in each case—cost of producing the product and characteristics of the product.  Some variables simply cannot be included in every regression for technical reasons; regression analysis does not permit the inclusion of a variable if all observations have (or do not have) that particular characteristic.  Dr. Netz explains that "[t]he available data determine which attributes I can control for in my regressions, and including these additional regressors does not affect the interpretation of the pass-through coefficient, nor does it constitute a different method."  *See* Netz Rebuttal at 84.  Dr. Netz included additional variables to control for different product attributes that may have an impact on the price level whenever there was sufficient available data.  *See id.* at 84-85; *Netz* Decl. at Section VIII.A.2.  By calculating pass-through separately for different product types, Dr. Netz was able to provide the pass-through rates by product type and reseller.  *See* Netz Rebuttal at 83-86.  Finally, there is no requirement that pass-through be estimated for every reseller.  The use of a representative sample is accepted econometric practice, and can be used to prove pass-through for a group of similar resellers.

**Competitive Benchmarks**.  Defendants' criticism of Dr. Netz' use of competitive benchmark periods to calculate overcharges to direct purchasers – "the before-and-after method" – is that her selection of data, while consistent with the class definition in this motion, is "inconsistent

---

(S.D. 2003); *Sherwood v. Microsoft Corp.*, No. 99C-3562 (Tenn. Cir. Ct), 2003 WL 21780975, at *18 (Tenn. Ct. App. July 31, 2003).

[20]  At the time Dr. Netz submitted her original Declaration, there were significant outstanding questions that were still unanswered by the majority of Defendants.  Netz Rebuttal at 37-40, 45.  Indeed, despite Plaintiffs' best efforts to obtain this information, several Defendants either have yet to provide answers to out-standing data questions or they just answered days ago.  *Id.*  AUO withheld its complete and corrected data set until it was too late to be of use to Dr. Netz in her initial report, even though Plaintiffs had been discussing deficiencies in its data with AUO for six months, and a corrected data set was provided to Dean Snyder more than two months before it was produced to Plaintiffs.  *See* Zahid Supp. Decl. Ex. 7

19

1  with plaintiffs' allegations [in the Second Amended Complaint]." Def. Opp. at 41.[21]   This is not a

2  claim of a substantive deficiency in Dr. Netz' expert opinion, but rather a tweak at Plaintiffs'

3  counsel: "Plaintiffs cannot contend that Dr. Netz' regression analyses are reliable and

4  simultaneously allege that the 'competitive period[s]' on which she relies were not, in fact,

5  competitive." Id.[22]

6       Dr. Netz selected two periods as competitive benchmarks, 1996 through 1998 and 2007 to

7  the present, for reasons that are empirically sound.  The evidence supporting Plaintiffs' motion for

8  certification of the damages class indicates that Defendants' price-fixing agreement may not have

9  begun to affect prices until 1999, hence the class requested begins with purchases made on January

10  1, 1999.  The Department of Justice's investigation into LCD price-fixing became public at the end

11  of 2006, which should have had a chilling effect on Defendants' illegal activities.  Moreover, to the

12  extent that either of these possible benchmark periods was not competitive, either because the

13  conspiracy was effective prior to 1999 or because its effects may have lingered after the proposed

14  class period, this would mean that the prices in those periods were actually higher than competitive

15  prices would have been.  Thus, the overcharge estimates would understate (to Defendants' benefit)

16  the overcharges that actually occurred.  Netz Rebuttal at 63-66.

17       **2.    The Alleged Divergent Market Conditions Are No Impediment To Assessing Pass-Through With Use Of Predominately Generalized Proof**

18       This Court should reject Defendants' attempt to obscure their wrongful conduct by

19  describing the purportedly divergent distribution chains, pricing levels, and sales practices.

20  Defendants devote most of their briefing to arguing that the divergent market conditions

21  predominate over common issues, precluding certification under Rule 23(b)(3).  Their arguments

22  regarding common proof of impact depend upon a series of legal and factual assertions that are

23

---

24  [21] Defendants' reference (at 40:20-41:2) to Plaintiffs' counsel's refusal to comment on any potential

25  further amendment to the Second Amended Complaint during colloquy at Dr. Netz' deposition is
   irrelevant.  It is well settled that a complaint may be conformed to proof at any time before or after

26  trial.  Rule 15, F.R.Civ.P.

27  [22] Plaintiffs' class period may ultimately differ from what they alleged in their complaint. *Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 443 (E.D. Va. 2004); *In re Select Comfort Corp. Securities Litigation*, 202 F.R.D. 598, 604 (D. Minn. 2001); *Shin v. Cobb County Bd. of Educ.*,

28  248 F.3d 1061, 1065 (11th Cir. 2001).

1    either untrue or wildly overstated.  Those propositions are that: (1) the complexity of the distribution

2    chain and product differentiation preclude common proof of impact (Def. Opp. at 26, 30); (2)

3    variations in price levels and in price negotiations preclude common proof of impact (*id.* at 29, 32-

4    33); and (3) the changes in the LCD industry and distribution channels over the class period preclude

5    common proof of impact (*id.* at 30).

6                    a.      **Distribution Chain Complexity And Product Differentiation**

7            "'[C]ontentions of infinite diversity of product, marketing practices, and pricing have been

8    made in numerous cases and rejected.'" *Rosack*, 131 Cal.App.3d at 753 (1982) (quoting *In re*

9    *Folding Carton*, 75 F.R.D. at 734*).*  Courts readily look past "surface distinctions" in "marketing

10   mechanisms" in certifying indirect purchaser classes; "'[i]dentical products, uniform prices, and

11   unitary distribution patterns are not indispensable for class certification in this context.'" *B.W.I.*

12   *Custom Kitchen v. Owens-Illinois, Inc.*, 191 Cal.App.3d 1341, 1350-51 (1987) (quoting *Shelter*

13   *Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 37 (S.D.N.Y. 1977)).  As noted in *B.W.I.*,

14   these principles have been applied to markets "characterized by individually negotiated prices,

15   varying profit margins, and intense competition."  191 Cal.App.3d at 1351. *See In re Cipro Cases I &*

16   *II*, 121 Cal.App.4th 402, 413 (2004).  Microsoft unsuccessfully raised these arguments in opposition

17   to class certification in California and numerous other state indirect purchaser suits, with respect to a

18   distribution system similar to the one here involving computer manufacturers, distributors and

19   retailers.[23]

20           Defendants and their expert obfuscate the true manner in which LCD panels flow from

21   Defendants to class members.  Def. Opp. at 23-28; Snyder Rpt. Exhs. 20.1-20.3.  By dissecting the

22   distribution chain into unnecessary channels and steps, Defendants attempt to portray an overly

23   complex distribution channel.  Defendants make false distinctions between firms having the same

24   functions in the distribution channel whereas Defendants themselves and intermediary firms do not

25

26

27

28

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

make such distinctions in the real world.  Netz Rebuttal at 54-57.  Other than grossly exaggerating the number of steps in the distribution channel, Defendants have offered no economic explanation why the number of steps precludes a classwide determination of pass-through.  In fact, Dr. Netz has put forth feasible methodology to show that the channel-length pass-through rate is greater than 100% regardless of the path or the number of steps the panel went through from Defendants to class members.  Netz Decl. at 104-112; Netz Rebuttal at 57-59.  Therefore, these false distinctions are meaningless to the analysis of whether there is a classwide impact.

*In re Methionine Antitrust Litig.*, 204 F.R.D. 161 (N.D. Cal. 2001) ("*Methionine I*"), cited by Defendants, is readily distinguishable.  Def. Opp. at 23.  The class of indirect purchasers in that case included "indirect purchasers who are resellers at various levels in the distribution chain *and* indirect purchasers who are ultimate consumers (emphasis added)," in contrast to Plaintiffs' proposed nationwide and state classes of end users only.  204 F.R.D. at 162.  Defendants' reliance on *In re Methionine Antitrust Litig.*, 2003 WL 22048232 (N.D. Cal. Aug. 26, 2003) ("*Methionine II*") is equally unavailing.  There, the court granted defendants' motion to decertify the class because plaintiffs' expert's proposed method was "so insubstantial as to amount to no method at all."  2003 WL 22048232, at *5.  Rather than basing its reasoning on the complex characteristics of the methionine market, as Defendants suggest, the court clearly identified plaintiffs' expert's failure to propose an adequate methodology as the primary basis for its decision.  *Id.* at *4-5.

Defendants erroneously contend that Dr. Netz' methodology for determining class-wide proof of impact is "similar" to that of the plaintiff's expert in *Somers v. Apple*, 2009 WL 2137148 (N.D. Cal. July 17, 2009).  In *Somers*, the court concluded that the plaintiff failed to meet her burden of establishing a reliable method for proving common impact because of the failures of its expert, who: "has done nothing more than make a vague five-paragraph long collection of proposals for accomplishing what the Court sees as a daunting task"; whose testimony was "limited to making

---

[23] *See, e.g., Microsoft I-V Cases*, 2000-2 Trade Cas. (CCH) ¶ 73,013 at 88,561, Ex. 9 to plaintiffs' previously-submitted "Request for Judicial Notice" ("RJN"); *In re Fla. Microsoft Antitrust Litig.*, No. 99-27340, 2002 WL 31423620, at *13-15 (Fla. Cir. Ct. Aug. 26, 2002); *Gordon v. Microsoft Corp.*, No. 00-5994, 2001 WL 366432, at *12 (Minn. Dist. Ct. Mar. 30, 2001), *review denied*, 645 N.W.2d 393 (Minn. 2002), *opinion on remand*, 2003 WL 23105552 (Minn. Dist. Ct. Mar. 14, 2003)

1    unspecified proposals as to how he might be able to prove damages"; who "proffered no specific

2    economic model and has examined no set of data, and has never accomplished what he purports to

3    accomplish in an indirect purchaser antitrust class action"; and who did not address "how his method

4    would address the problem of overcharge pass-through from iPod resellers to members of the

5    putative class." 2009 WL 2137148, at *7.  In stark contrast to the *Somers* plaintiff's expert, Dr. Netz

6    has (1) submitted a comprehensive expert report of her analysis of the relevant LCD market; (2)

7    opined on the feasibility of calculating the overcharge to indirect purchasers of LCD products; (3)

8    proposed several specific methodologies for determining class-wide impact and damages; and (4)

9    conducted 53 separate pass-through analyses measuring pass through from Defendants to the class

10   members, as well as within discrete portions of the distribution channel, using individual

11   transactional sales and purchase data obtained from Defendants and third parties; and (5) examined a

12   wide range of data produced in this litigation to perform regression analyses.

13          Defendants also ask this Court to ignore the overwhelming evidence of product homogeneity.

14   In doing so, Defendants grossly exaggerate the level of product differences and conflate the distinct

15   concepts of customization and product differentiation.  Def. Opp. at 31-32.  As Dr. Netz states,

16   products may be customized to buyers' specifications and still be homogeneous.  Netz Rebuttal at

17   15-16.  Not only do Defendants' own records and business practices show that they themselves have

18   treated LCD panels as essentially interchangeable commodities, Defendants acted in concert to

19   standardize key characteristics of LCD panels, in order to enhance panel fungibility.[24]

20

21

22   ("*Gordon I*").

23   [24] *See* Netz Decl. at 11 and nn.38-39; *see also* Declaration of Morgan Tai ¶ 5

24

25

26

27

28

1      Defendants' reliance on *In re Graphics Processing Units (GPUs) Antitrust Litig.*, 253 F.R.D.

2   478 (N.D. Cal. 2008), is also misplaced.  Their warning that the Court would be obliged to analyze

3   "for each purchase all the individual pricing decisions by every reseller at each level of the

4   distribution chain" is not well taken in light of the unique factual circumstances of GPUs.  Judge

5   Alsup noted the "highly heterogeneous" nature of the market for GPU products:  "Hundreds if not

6   thousands of GPU products were sold during the limitations period.  As stated, each graphics

7   product varied not only as to performance level but also as to its ultimate application.  Many of the

8   graphics products sold were particularly customized to the needs of a specific purchaser, meaning

9   they could not be interchanged with any other GPU product sold by defendants.…  In short, these

10  products were *not* fungible commodities."  253 F.R.D. at 49 (emphasis in original).  In contrast,

11  LCD panels are highly fungible, often interchangeable, and largely homogeneous.  Moreover, Dr.

12  Netz has thoroughly explained the applicability of her proposed regressions on a class-wide basis,

13  and has applied data produced in this case to formulate those analyses.[25]  Another significant

14  distinction between *LCDs* and *GPUs*, is the fact that the court there elected to disregard the

15  *Microsoft* class certification cases—despite acknowledging that the *Microsoft* cases "dealt with a

16  market not unlike the one at issue," and that the "vast majority" of state courts with jurisdiction over

17  the *Microsoft* cases certified the indirect-purchaser classes.  *GPUs*, 253 F.R.D. at 500.  The court

---

19  [25] Defendants cite *In re Industrial Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y 1996) for the
    proposition that individual issues regarding impact predominate because the defendants did not use
20  price lists for their products. In *Industrial Diamonds*, the court held that plaintiffs had established
    predominance with respect to those products which had list prices, and those products whose
21  individually-negotiated prices were related to list prices. *Id.* at 383-84. However, the court found
    predominance lacking with regard to the products whose prices, the parties agreed, were individually
22  negotiated without regard to list prices. *Id.* at 384.

23  Unlike the plaintiffs in *Industrial Diamonds*, plaintiffs in the instant case do not agree that
    defendants' prices were unrelated to list prices. On the contrary, plaintiffs contend that defendants
24  did maintain price lists for their products, which either set the prices for panels or formed the basis
    for price negotiations.  According to Dr. Netz, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Netz Decl. at 63-65.  *See also NASDAQ* 169 F.R.D. at
27  523 ("Proof of a conspiracy to establish a 'base' price would establish at least the fact of [class-
    wide] damage, even if the extent of the actual damages suffered by the plaintiffs would vary.")
28  (citation omitted).

considered the *Microsoft* litigation to be "*sui generis*" because the prior government adjudication against Microsoft constituted "extrinsic evidence of harm," while in *GPUs*, the government ended its investigation without returning any indictments. *Id.* Certainly, here, in light of the criminal guilty pleas (Microsoft never pleaded guilty to a criminal violation) and the government's ongoing investigation, there is no question that the *Microsoft* cases are persuasive authority on class certification of the state-law damages classes.

### b.     Variations In Price Levels And Negotiations

Defendants' arguments that class member negotiating ability and value added to LCD products as they move through the distribution chain require individualized proof of impact lack merit. Def. Opp. at 29, 32-33. The fact that identical products might have been sold for different prices does not defeat class certification because pass-through is consistent with price variation across firms and/or products, and discounts or sales pricing. Netz Decl. Section VI.D.2; Netz Rebuttal at 59-62. As explained in *In re Commercial Tissue Prods. Antitrust Litig.*, 183 F.R.D. 589, 595 (N.D. Fla. 1998) (citations omitted):

> First, many cases have held that even if there is considerable individual variety in pricing because of individual price negotiations, class plaintiffs may succeed in proving classwide impact by showing that the minimum baseline for beginning negotiations, or the range of prices which resulted from negotiation, was artificially raised (or slowed in its descent) by the collusive actions of the defendants. In the instant case, as in the *Corrugated Carton*, *NASDAQ*, *Plywood*, *Glassine* and *Small Bags* cases, the plaintiffs allege that any individual price negotiations for commercial tissue products began from price lists or guidelines which plaintiffs allege were artificially and unlawfully inflated by the conspiracy. Thus defendants' argument that diversity of pricing destroys predominance is unavailing.

*Accord, e.g., In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 319 (E.D. Mich. 2001) ("*Cardizem I*") (a case brought under, *inter alia*, Michigan law); *Industrial Diamonds Antitrust Litig.*, 167 F.R.D. at 378; *NASDAQ.*, 169 F.R.D. at 523 ("[n]either a variety of prices nor negotiated prices is an impediment to class certification if it appears that plaintiffs may be able to prove at trial that . . . the price range was affected generally.").

The result is the same in indirect-purchaser class actions in state court. Illustrative in this respect is *Romero v. Philip Morris, Inc.*, 137 N.M. 229, 109 P.3d 768 (N.M.App. 2005), where the

25

1  defendants showed different pricing strategies among cigarette retailers, different prices paid for

2  cigarettes by class representatives, and "retail price data collected from a sample of twenty-five

3  stores between 1996 and 2000 show[ing] that retail cigarette prices for the same brand varied as

4  much as seventy-five percent from one New Mexico retail outlet to another." *Id.* at 235, 109 P.3d at

5  774. The court nonetheless affirmed certification of an indirect purchaser class. *Id.* at 256, 109 P.3d

6  at 795.

7         Here, regardless of variations in prices paid by class members, Dr. Netz' analysis clearly

8  demonstrates that the overall price for LCD panels increased as a result of Defendants' alleged

9  illegal conduct.[26] Even assuming, *arguendo*, that the price differentials will necessarily result in

10  individualized inquiries, such individualized examinations "will relate to the quantum of damages,

11  not the fact of injury." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 697 (S.D. Fla. 2004)

12  (quoting *Cardizem I*, 200 F.R.D. at 307).[27]

13         Defendants cite *City of St. Paul v. FMC Corp.*, 1990 WL 259683 (D. Minn. Nov. 14, 1990)

14  to argue that "[a]s intermediaries add value to a product, it becomes increasingly difficult to

15  determine whether a price change is attributable to an alleged overcharge for the original product or

16  to differences in value intermediaries added later." Def. Opp. at 32. There, the court concluded that

17  certification of the indirect purchaser class was inappropriate "[b]ecause substantial value is added to

18  the chlorine at various points in the chain of distribution." The same is not true for LCD panels that

19  are ultimately incorporated into LCD products as a primary or significant cost component and the

20  panels retain their value through the course of distribution. 1990 WL 259683, at \*2; *see also*

21  *Gordon I*, 2001 WL 366432 at \*10.

22                    **c.    Change In The LCD Market Over Time**

23

24  [26] *See* Netz Decl. at 61-65 (Section VI-C-1-b): "Negotiations started from a common basis") and
   n.180; 66 (Section VI-C-2: "A price structure exists") and nn.191-93; Netz Rebuttal at 58-59.

25  [27] Defendants cite *California v. Infineon Techs. AG*, 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008).
   However, the *Infineon* court's concerns centered on the difficulties raised by the proposed class,

26  which comprised indirect and direct purchasers. The court denied certification of the class because,
   notwithstanding the presence of these "widely divergent factors," plaintiff's expert failed to explain

27  "how his proposed methodologies would trace any pass-through to these ultimate class members
   with recourse to common proof." *Id.* at \*10.

28

Defendants' assertion that Plaintiffs' proposed methodology for establishing common proof of class-wide impact fails to "account for changes in the LCD markets over time" is incorrect and unsupported by their authorities. Def. Opp. At 30.[28] *In re Fresh Del Monte Pineapples Antitrust Litig.*, 2008 WL 5661873 (S.D.N.Y. Feb. 20, 2008), the court denied certification, in part, based on its finding that plaintiffs' expert failed to present a reliable methodology for determining class-wide damages because plaintiffs "declined to offer evidence" to support any such methodology, and because plaintiff's expert's damages report assumed a uniform pass-through rate with respect to overcharges to indirect purchasers. 2008 WL 5661873, at *5-6. In contrast, Dr. Netz evaluated whether cartel members had sufficient control of the market to successfully increase panel prices above competitive levels by examining the portion of the market controlled by cartel members over time (Netz Decl. 21-22, 35; Netz Rebuttal at 8-9), and by examining the extent to which alternative technologies were available as substitutes to direct purchasers (Netz Decl. 35; Netz Rebuttal at 9-11). Dr. Netz considered whether the characteristics of the industry facilitated the formation and operation of a cartel (Netz Decl. 37-51; Netz Rebuttal at 11-23). After thorough evaluations and careful analyses, Dr. Netz concluded that Defendants' cartel was effective at increasing the prices of LCD panels above competitive levels throughout the class period. This determination, along with the rest of her analyses, led her to conclude that there was common impact to class members.

### 3.     State Substantive Laws Regarding Inference Of Impact Apply

Defendants argue that no inference of common impact is appropriate because the inference is procedural, not substantive, and therefore governed by federal rather than state law. Defendants are wrong and, not surprisingly, do not cite a single case supporting their position

"Under the *Erie* rule, presumptions (and their effects) and burden of proof are 'substantive'" *Dick v. New York Life Ins. Co.*, 359 U.S. 437, 446-47 (1959); *Johnston v. Pierce Packing Co.*, 550 F.2d 474, 476, n.1 (9th Cir. 1977); *U.S. v. McCombs*, 30 F.3d 310, 323-24 (2d Cir. 1994).

---

[28] The Alabama State court's decision in *McCarter v. Abbott Labs.*, 1993 WL 13011463 (Ala. Cir. Ct. Apr. 9, 1993),cited by the Defendants, is not relevant or controlling on the point for which it is cited as the Plaintiffs have not asked this Court to certify an Alabama state class. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276 (D. Mass. 2004) (court must examine plaintiffs' claims under governing state law).

1    ("Presumptions and other matters related to the burden of proof are considered matters of substantive

2    law, governed by the law of the jurisdiction whose substantive law applies to the merits of the

3    question in issue.") *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F.Supp.2d 980, 990 (S.D.

4    Cal. 1999).

5         That rule applies to the inference of common impact applicable to state antitrust claims.  As

6    Judge Hornby held in *In re New Motor Vehicles Canadian Export Antitrust Litig*, 235 F.R.D. 127

7    (D. Me. 2006), *rev'd on other grounds*, 522 F.3d 6 (1st Cir. 2008): "California substantive antitrust

8    law permits an inference of antitrust impact, even as to indirect purchasers, from the existence of the

9    conspiracy." *Id.* at 133.  While reversing on other grounds, the First Circuit stated that the inference

10   of common impact is substantive and therefore governed by state law.  *In re New Motor Vehicles*

11   *Canadian Export Antitrust Litig.*, 522 F.3d at 22 & n.12 (recognizing that "what level of proof of

12   consumer impact each state required and what inferences were acceptable to show impact" were

13   "issues of state substantive law.")[29]   Defendants cite no contrary authority.[30]

14        Defendants erroneously assert that the inference of class-wide impact under California law

15   "applies only if the product reaches the end-user unchanged from its original sale."  Def. Opp. at 35.

16   Defendants' assertion is not supported by the two cases they cite:  *Cipro* and *B.W.I.*  *B.W.I*.'s

17   holding that the inference of common impact applied to Cartwright Act indirect purchaser cases was

18   not limited to cases where the product was unchanged.  "[W]hen a conspiracy to fix prices has been

19

20   [29] The state law inference of common impact applies specifically to antitrust actions, which dispels
     any doubt that it is substantive. *See Cole v. Chevron USA, Inc.*, 554 F.Supp.2d 655, 670-71 (S.D.
21   Miss. 2007) ("Where, as here, the state rule at issue is limited to a particular substantive area of law,
     the case is especially strong for applying the state rule."); *In re Intel Corp. Microprocessor Antitrust*
22   *Litig.*, 496 F.Supp.2d 404, 416 (D. Del. 2007) ("[A] contrary result would alter the character of this
     litigation and provide a result that is at odds with the result that would be reached by the respective
23   state courts had this action been brought in those jurisdictions.").

24   [30] Defendants' carefully edited quotation from *Affholder, Inc. v. Southern Rock, Inc.*, 746 F.2d 305
     (5th Cir. 1984) is not persuasive.  *Affholder* addressed the far different situation where state law is
25   directly contrary to one of the Federal Rules of Civil Procedure: "When a situation is covered by one
     of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided
26   *Erie* choice .  .  .  the court need not consider whether *Erie* commands the enforcement of an
     allegedly substantive state rule seemingly in conflict with the federal procedural rule." *Id.* at 307-08.
27   Here no Federal Rule covers the substantive issue of inference of common impact in antitrust cases.
     Moreover, California law is fully consistent with federal law on this issue. *See B.W.I*, 191
28   Cal.App.3d at 1350-51.

proven and plaintiffs have established they purchased the price fixed goods or services, the jury can infer plaintiffs were damaged." 191 Cal.App.3d at 1351. In fact, the inference has been broadly applied in antitrust cases with markets "characterized by individually negotiated prices, varying profit margins, and intense competition." *Id.*

*Cipro* also did not limit the inference to cases where the product is sold unchanged. *Cipro*, like *B.W.I.*, recognized the broad applicability of the inference and held that "injury to the class may be assumed when a horizontal market wide restraint of trade is alleged." 121 Cal.App.4th at 413. As *Cipro* explained, this inference "is ordinarily a permissible assumption in cases where consumers have purchased products in an anticompetitive market, even if some consumers did not actually have to pay the overcharge because of their individual circumstances." *Id.* (citing *B.W.I.*, 191 Cal.App.3d at 1350-53).

*Cipro* distinguished two cases declining to apply the inference of common impact: "*Global Minerals* and *J.P. Morgan* declined to apply this assumption to the particular facts of those cases, because of the unique peculiarities of the copper market and the dual roles played by members of the class as both buyers and sellers." 121 Cal.App.4th at 416. The inference did not apply in *Global Minerals* and *J.P. Morgan* because those cases were brought on behalf of copper purchasers and "there was no showing that changes in COMEX [copper future] prices necessarily caused changes in the physical or cash copper markets." *Id.* at 415.

Here, as in *B.W.I.* and *Cipro*, the effects of the price-fixing are not obscured by any difference between the price-fixed product and the product purchased by the class members. The class members here purchased LCD panels which are the "the price fixed goods or services," as identifiable, discrete physical objects that do not change form or become an indistinguishable part of the TVs, computer monitors, and laptops. *B.W.I.*, 191 Cal.App.3d at 351. Moreover, as in *Cipro*, the extensive evidence and comprehensive expert testimony clearly establishes that Defendants' horizontal restraints caused higher prices to end-users.[31]

---

[31] *Cipro* distinguished the *Global Minerals* and *J.P. Morgan* cases based on myriad "unique peculiarities" including 1) the classes in those cases included both end-users and resellers; 2) there was no showing that alleged price-fixing in the market for copper futures affected prices in the

29

1    Defendants' argument that Minnesota does not recognize the inference of impact is also

2    incorrect.   In *Gordon I*, the court held that "in the absence of more precise proof, the factfinder may

3    conclude as a matter of just and reasonable inference from the proof of defendants' wrongful acts

4    and their tendency to injure ... that defendants' wrongful acts had caused damage to the plaintiffs."

5    2001 WL 366432, at *11 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100,

6    123-24 (1969)).   *Gordon I* thus clearly involved an inference of common impact and damage, not

7    merely the amount of damages.   As *Gordon I* recognized, this inference effectuates the intent of the

8    Minnesota Legislature in enacting a repealer antitrust statute by establishing a standard of proof that

9    indirect purchasers can meet.   *Id.* at *4.   In applying the inference, *Gordon I* relied on expert

10   testimony, similar to Plaintiffs' expert's here, that the structure of the market was such that

11   overcharges would be passed on to indirect purchasers.   *Id.* at *8-10.

12   Defendants' attempt to distinguish *Florida Microsoft* fails for similar reasons.   In *Florida*

13   *Microsoft*, the inference of impact was appropriate because it was supported by expert testimony

14   setting forth "reasonable methods, based on standard economic principles, for establishing with

15   common evidence that each class member was impacted to some extent by Microsoft's alleged

16   behavior."   2002 WL 31423620 at *14.   Here, as in *Florida Microsoft*, Plaintiffs do not ask the Court

17   to merely assume impact in a vacuum but instead present sound expert economist methodologies

18   through which impact can be proved by common evidence in a market conducive to passing through

19   antitrust overcharges.[32]

---

22   market for copper; 3) the classes were vague and overbroad;  4) differences in state law prevented
     certification of a nationwide class including both repealer and non-repealer states and 5) plaintiffs'
23   economist experts merely "assumed causation of injury for purposes of his analysis."  121
     Cal.App.4th at 415-16.  Here as in *Cipro*, none of those factors could prevent application of the
     inference of class-wide impact or the predominance of common issues.

24   [32] *Florida Microsoft* cited but reached contrary result from *Execu-Tech Business Systems, Inc. v.*
25   *Appleton Papers Inc.*, 743 So.2d 19 (Fla. App. 1999), relied upon by Defendants, where the plaintiff
     offered no expert testimony of any "reasonable methodology for generalized proof of class wide
26   impact and damages."  *Id.* at 22.  *Relafen*, also cited by Defendants, confirms the distinction between
     *Florida Microsoft*, where the inference was applied, and *Execu-Tech*, where it was not.  The plaintiff
27   in *Execu-Tech* failed to offer any viable methodology for common proof.  *Execu-Tech* is inapposite
     to this case where Plaintiffs have offered sound methodologies for showing impact by common
28   evidence presented by Dr. Netz.

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

1    Application of state substantive law in motions for class certification of state law claims is

2    even more critical since CAFA was enacted because state antitrust and unfair competition claims are

3    now litigated almost exclusively in federal court.  The Ninth Circuit's recent decision in *Yokoyama*

4    *v. Midland Nat. Life Ins. Co.*, ___ F.3d___, 2009 WL 2634770 (9th Cir. Aug. 28, 2009) underscores

5    the importance of a state's policy of favoring class action enforcement of statutory claims in

6    deciding class certification under Rule 23.  In *Yokoyama*, the Ninth Circuit reversed denial of

7    certification of a state unfair competition claim where the district court failed to apply the state

8    substantive rule allowing deception to be proved on an objective class-wide basis.  As the Ninth

9    Circuit noted, these state law substantive standards had to be honored in order to effectuate the intent

10   of the state legislature favoring class certification of consumer protection claims:

> Hawaii's consumer protection laws expressly consider class actions to be
> appropriate enforcement mechanisms. Haw.Rev.Stat. § 480 13(c) ("The
> remedies provided in subsections (a) and (b) shall be applied in class
> action and de facto class action lawsuits or proceedings, including actions
> brought on behalf of direct or indirect purchasers...."). Hawaii's courts
> recognize that its consumer protection laws can be enforced through class
> actions. *See Fuller v. Pac. Med. Collections, Inc.*, 78 Hawai'i 213, 891
> P.2d 300, 309 (Haw.App.1995). Retaining the class action feature likely
> helps bolster the "flexibility" of the consumer protection laws.

16   *Id.* at *5

17       Here, similarly, proper application by federal courts of state substantive law governing the

18   inference of antitrust impact and damages effectuates the state policy favoring class action

19   enforcement of state antitrust laws.  The antitrust statutes enacted by the Indirect Purchaser States

20   represent "a legislative mandate to avoid interpreting procedural requirements in such a way as

21   would thwart the legislative intent ... to retain the availability of indirect purchaser suits as a viable

22   and effective means of enforcing [state] antitrust laws."  *B.W.I.*, 191 Cal.App.3d at 1355 (quoting

23   *Union Carbide Corp. v. Superior Court*, 36 Cal.3d 15, 21-22 (1984)).  Here, as is most often the

24   case, indirect purchaser claims are only viable and effective if class certification is granted.

25   Application of the substantive state law inference of common impact effectuates this legislative

26   intent of viable enforcement of state antitrust and unfair competition claims.

27       The viability of a state law class action should not depend on the federal forum because it

28   would "provide a result that is at odds with the result that would be reached by the respective state

31

courts had this action been brought in those jurisdictions." *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F.Supp.2d 404, 416 (D. Del. 2007).

### C. Plaintiffs Have Adequately Shown That Damages Can Be Measured Through Common Proof

As discussed in Section III.B, *supra*, Plaintiffs have met their burden of proof in establishing that impact can be shown using predominately common proof. "Once an antitrust violation and its causal relation to plaintiffs' injury have been established, the burden of proving the amount of damages is much less severe." *Graphic Products Distributors, Inc. v. Itek Corp.*, 717 F.2d 1560, 1579 (11th Cir. 1983); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 697 (D. Minn. 1995). The fact that the damage calculation may involve individual analysis is not by itself sufficient to preclude certification when liability can be determined on a class-wide basis. *See SRAM,* 2008 WL 4447592, at *6. At the class certification stage, a plaintiff need only offer a method for calculating aggregate damages for overcharges paid by the class members; damages need not be calculated at the class member level. *See Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 312-13 (D.D.C. 2007) (recognizing that aggregate class damage is a feasible approach and has been widely used in antitrust, securities, and other class actions) (citing *NASDAQ*, 169 F.R.D. at 524-26). Further, California law unequivocally provides that class certification is proper without proof that each class member was overcharged or the amount of the overcharge. *See, e.g., Bruno, 1*27 Cal.App.3d at 129 n.4 ("In many cases such an aggregate calculation will be far more accurate than summing all individual claims"); *Cipro*, 121 Cal.App.4th at 413 (class certification was appropriate where "some consumers did not actually have to pay the overcharge because of their individual circumstances.") (citations omitted).

Yet, Defendants chose to ignore these legal principles, and argue that Dr. Netz must be proposing a "fluid recovery" formula for damages. Def. Opp. at 42-43. Even so, fluid recovery is permitted under the laws of California. For the California state-wide damages class, the total overcharge can be placed in a fluid recovery fund and, after payment to those class members who prove their individual claims, the residue can be distributed as authorized by statute. *See Corbett v. Superior Court*, 101 Cal.App.4th 649, 667-68 (2002); Code Civ. Proc. § 384. Regardless,

32

1    Defendants' argument is unpersuasive at this juncture.  As is appropriate for class certification under

2    the case law cited above, Dr. Netz' methodology adequately calculates the total damages on a

3    formulaic basis.  In fact, Dr. Netz explained several mainstream methodologies that can be utilized

4    to measure the portion of the overcharges that is passed through to end-purchasers.  Netz Decl. at

5    102-114.  Her analysis evidences the feasibility of calculating the overcharge and estimating pass-

6    through, which permits formulaic calculation of damages with reasonable certainty.  *Id.* at 115-117.

7            The Defendants appear to be arguing that the case would be unmanageable as a class action

8    because eventually class members would have to submit individual damages claims.  Def. Opp. at

9    41-45.  But courts manage that process in class actions all the time.  *See, e.g., South Carolina Nat.*

10   *Bank v. Stone*, 139 F.R.D. 325, 331 (D.S.C. 1991) ("The only individual issue present in this case is

11   the computation of each class member's damages, which are easily computed by having the class

12   members supply the necessary purchase and sale information on a proof of claim form.").

13           Moreover, because manageability is subsumed within the superiority requirement of Rule

14   23(b)(3), manageability difficulties cannot defeat certification unless there is another more

15   manageable method of litigating the claims is available.  *In re NASDAQ*, 169 F.R.D. at 528

16   ("difficulties in management are of significance only if they make the class action a less 'fair and

17   efficient' method of adjudication than other available techniques."); *In re Sugar Indus.*, 73 F.R.D. at

18   358 ("Manageability problems are significant only if they create a situation that is less fair and

19   efficient than other available techniques . . .").  Defendants fail to argue that there is any more

20   manageable method for adjudicating the class members' claims than a class action.  Indeed, class

21   litigation is the only viable method adjudicating these claims.  Without class certification, a majority

22   of class members would likely abandon their claims even though Defendants' liability in fixing the

23   LCD prices can clearly be proven.

24

25

26

27

28

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

1    Here, because Plaintiffs have established that common issues of antitrust impact will

2    predominate and presented expert methodology for proving damages through common evidence,

3    damage issues "will not create manageability problems." *In re Vitamins*, 209 F.R.D. at 270.[33]

4    **IV.    THE PROPOSED CLASSES ARE ASCERTAINABLE UNDER RULE 23(A)**

5        In arguing that the Classes are not ascertainable, Defendants misstate the law and ignore the

6    fact that, as part of the claims process, it will be relatively simple to determine whether a claimant

7    purchased an LCD product containing a panel made by one of the Defendants.  The Classes are

8    defined using objective criteria, which is the primary requirement for ascertainability.[34]  *Whiteway v.*

9    *FedEx Kinko's Office and Print Services*, 2006 WL 2642528, at *3 (N.D. Cal. Sep. 14, 2006) ("An

10   identifiable class exists if its members can be ascertained by reference to objective criteria.");

11   *Carrier v. American Bankers Life Assur. Co. of Florida*, 2008 WL 312657, at *5-6 (D.N.H. Feb. 1,

12   2008) (certification has only been denied based on ascertainability where definition was subjective

13   or indefinite); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litig.*, 209 F.R.D. 185,

14   337 (S.D.N.Y. 2007).

15       Where, as here, the class is objectively defined, identification of the class members is a

16   matter for the claims process, not class certification.  As Judge Posner recently stated:

17           What is true is that a class will often include persons who have not been
             injured by the defendant's conduct; indeed this is almost inevitable

18

19   [33] The cases Defendants cite do not support Defendants' argument.  Defendants rely on *Windham v.*
     *American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977) and *Abrams v. Interco Inc.*, 719 F.2d 23 (2d
20   Cir. 1983)—older cases that have been widely and soundly distinguished on grounds applicable
     here. *See Potash*, 159 F.R.D. at 696 n.17 (distinguishing *Windham*); *In re Folding Carton Antitrust*
21   *Litig.*, 88 F.R.D. 211, 217 (N.D. Ill. 1980) (same); *In re Visa Check/MasterMoney Antitrust Litig.*,
     280 F.3d 124, 141 (2d Cir. 2001) (distinguishing *Abrams* and holding that "failure to certify an
22   action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored....").
     *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare*, 247 F.R.D. 156 (C.D. Cal. 2007) and *In re*
23   *Hotel Telephone Charges*, 500 F.2d 86 (9th Cir. 1974) also do not help Defendants.  *Allied*
     *Orthopedic Appliances, Inc.* did not involve a horizontal price-fixing conspiracy.  *Hotel Telephone* is
24   inapposite because it involved a suit against over 600 defendants with extreme manageability
     difficulties not present here.  *See, e.g., Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D.
25   417, 435 (D.N.M. 1988) (declining to follow *Hotel Telephone* because it involved "virtually every
     manageability question possible").
26   [34] ████████████████████████████████████████████████████████████████
     ████████████████████████████████████████████████████████████████████  Netz Rebuttal
27   at 88, fn. 356.  Each product either has one of Defendants' LCD panels or it does not; the definition
     is not subjective.
28

                                                    34

because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification, despite statements in some cases that it must be reasonably clear at the outset that all class members were injured by the defendant's conduct.

*Kohen,* 571 F.3d at 677 (internal citations omitted). *See also In re OSB Antitrust Litig.,* 2007 WL 2253418, at *9 (E.D. Pa. Aug. 3, 2007) ("Because the proposed class *need only be ascertainable by some objective criteria, not actually ascertained, challenges to individual claims based on class membership may be resolved at the claims phase of the litigation.*") (emphasis added).

Defendants do not dispute that the Classes here are defined using purely objective criteria. Moreover, Defendants make no showing that identifying class members during the claims process would be administratively unfeasible.[35] Determination of class membership using information submitted by class members with their claims will be straightforward and objective.

Whether a claimant is a class member will be determined by whether the product she bought contains an LCD panel made by a Defendant, a determination that can be readily made based on the model number or serial number of the product submitted by each claimant.[36] Typically, this determination can be made based on the model number alone because most models contain panels made by a single manufacturer.[37] Defendants rely exclusively on data showing that certain OEMs

---

[35] Defendants cite only to the Snyder declaration which states: "I am not aware of any sources of information available to end users which consistently identify the entity that manufactured the LCD panel contained in the finished product." Snyder Rpt. ¶ 35. Dean Snyder's ignorance is meaningless, however, because he is an economist who has no expertise on this issue.

[36] Ascertainability does not require determining which Defendant made the panel since each Defendant is liable for the overcharges by each other Defendant. *In re NASDAQ Market Makers Antitrust Litig.,* 169 F.R.D. 493, 506 (S.D.N.Y. 1996) (rejecting challenge to ascertainability and certifying antitrust class where claimants may be required to make evidentiary submissions with their claim to determine whether they used a non-defendant broker).

[37] For example, TFT Central (available at http://www.tftcentral.co.uk/panelsearch.htm) lists 1,945 monitor models. It has panel manufacturer information for 829 monitors. Of the panels for which they have manufacturer information, only 60 indicate that the given monitor model was manufactured using a variety of panels (that is, for 769 of the 829 panels, knowing the monitor model is sufficient to identify the panel manufacturer). Importantly, of the 60 monitors indicating a variety of panels were used for the model, only 4 used panels from a combination of defendants and non-defendants. Thus, for 825 of the 829 panels for which TFT Central has manufacturer data, knowing the monitor brand and model is sufficient to ascertain class membership.

35

1   bought panels from different manufacturers without any evidence that panels from different

2   manufacturers were used in the same models of LCD products. Even for the very few models using

3   panels from different panel manufacturers, however, the model number will determine class

4   membership unless the model used both Defendant and non-Defendant panels.[38]

5          Defendants grossly exaggerate the difficulty of determining whether a model with more than

6   one source of panels includes a panel made by one of the Defendants. Defendants' suggestion that

7   determining panel origin would be complex and require tracing the product through the entire chain

8   of distribution is erroneous.[39] The OEMs maintain records identifying the panel source by model

9   and serial number for service and warranty purposes and to enable tracking of common mode

10  failures. For example, Defendants rely heavily on data about Dell notebooks as an example of

11  unascertainable products. Dell's website, however, allows a consumer to identify the maker of the

12  panel in her laptop simply by inputting the service tag number displayed on the notebook itself.[40]

13  Owners of Lenovo notebooks can also use the company website to look up the panel maker.[41]

14  Defendants also rely on data showing that Samsung used multiple panel sources for LCD televisions.

15

16

---

17  [38] *See* Declaration of Fu-Chia ("Morgan") Tai ¶¶5, 8



22  [39] *See* Def. Opp. at 52:17-53:2. OEMs maintain records of panel sources by model number and
23  serial number. Thus, Defendants' assertion that variations in distribution channels will make class
    member identification harder is incorrect. Obtaining the necessary information from the OEMs will
24  not be difficult.

25  [40] *See* www.dell.com. Click on the "support" link. This takes you to
    http://support.dell.com/support/index.aspx?~ck=pn. Click on "system configuration." Enter the
26  "Service Tag" code for your Dell laptop. The original configuration of your laptop is displayed,
    showing all major components. The LCD panel size and manufacturer are listed.

27  [41] *See* http://www-307.ibm.com/pc/support/site.wss/warrantyLookup.do?type=8932&serial=
    l3m4722&warrantySubmit2.x=0&warrantySubmit2.y=0&template=%2Fresults%2FpartsLookupRes
28  ults.vm&country=897&iws=off.                   .

1    Models of Samsung LCD televisions with different panel sources, however, have a sticker showing

2    the "version number" which identifies the panel maker by alphabetic code.[42]

3        While it would be relatively easy for class members to determine the origin of the panel in

4    their notebooks and other LCD products, it will not be necessary to require them to determine

5    whether their products contain a panel made by one of the Defendants.  Plaintiffs will obtain

6    information from the OEMs identifying models using LCD panels made by non-Defendants and the

7    serial numbers of units with panels made by non-Defendants for the rare model that used panels

8    from both Defendants and non-Defendants. This information can be included in the Claims

9    Administrator's database.

10       As recognized in *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311 (C.D. Cal.

11   1998), a case cited by Defendants, "[a]s long as the general outlines of the membership of the class

12   are determinable at the outset of the litigation, a class will be deemed to exist." *Id.* at 319.  The

13   ascertainability test requires only that the court be able to ascertain the "general boundaries of the

14   proposed class" at the time of class certification." *Bullock v. Board of Educ. of Montgomery County*,

15   210 F.R.D. 556, 561 (D. Md. 2002).  The possibility that a class definition includes certain members

16   who were ultimately found to have not been injured by defendants' conduct does not preclude class

17   certification.  *See Kohen*, 571 F.3d at 677.

18       Even where identification of class members is burdensome or requires individual proof, an

19   objectively defined class is still ascertainable. *See, e.g., Dunnigan v. Metropolitan Life Ins. Co.*, 214

20   F.R.D. 125, 136 (S.D.N.Y. 2003) (The fact that identification of class members "may be slow and

21   burdensome cannot defeat the ascertainability requirement.").[43]  Defendants' reliance on *Mazur v.*

22

---

23   [42] *See* http://www.avsforum.com/avs-vb/showthread.php?t=1097915&page=26. The panel makers
     for LCD televisions can also generally be determined from the service manual or parts listing. *See,*
24   *e.g.* , http://samsungparts.com, http://www.eserviceinfo.com/equipment_mfg/Vizio_2.html;
     http://www.eserviceinfo.com/download.php?fileid=33223;
25   http://www.eserviceinfo.com/download.php?fileid=34657.

26   [43] *See also Sadler v. Midland Credit Management, Inc.*, 2009 WL 901479 (N.D. Ill. Mar. 31, 2009)
     (ascertainability requirement met where class was objectively defined although identification of
27   class members would require "administratively burdensome" review of records); *Peoples v.
     Wendover Funding, Inc.*, 179 F.R.D. 492, 496 (D. Md. 1998) ("Defendant argues the class is not
28   'administratively ascertainable' because the Court would have to undertake an individualized inquiry
     as to the existence of each member's forbearance agreement. These arguments fail to justify denial

37

1   *eBay Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009) is misplaced.  In *Mazur*, the court rejected a class

2   defined as 1) all persons who won certain eBay auctions; and (2) all persons who would have won

3   auctions but for a shill bidder entering the highest bid.  Judge Patel held that the first subgroup *was*

4   *ascertainable* because it was objectively defined and likely identifiable through business records, but

5   that it was overbroad because it included unharmed winners of auctions with no floor price and non-

6   consumers who could not recover.  *Id.* at 567.[44]  The second group—those who would have won the

7   auctions but for shill bidders—was not ascertainable because no one could predict who would have

8   won an auction had it not been fixed and "plaintiffs were unable to devise any sort of objective

9   system for screening out such persons from the auctions themselves." *Id.* at 567-68.

10      *Tableware Antitrust Litig.*, 241 F.R.D. 644, 650 (N.D. Cal. 2007) also does not support

11   Defendants' position.  There, Judge Walker held that an antitrust class was sufficiently ascertainable

12   despite defendants' assertion that certain class members were not entitled to damages:

13          A class definition is "definite enough" to satisfy FRCP 23(a)(1) if it "is
            administratively feasible for the court to ascertain whether an individual is
14          a member." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311,
            319 (C.D.Cal.1998). Yet defendants' complaint regarding casual
15          tableware does not even concern administrative feasibility; it deals with
            the provability of damages. As such, this theory is appropriately presented
16          in a motion for summary judgment or directed verdict, not one for class
            certification.

17   *Id.* Here, as in *Tableware*, the class is objectively defined and it is administratively feasible to

18   identify its members.  As in *Tableware*, Defendants' arguments against ascertainability go to

19   proving entitlement to damages which cannot defeat class certification.[45]  Accordingly, Defendants'

20

21   _____

22   of class certification."); *Stoffels v. SBC Communications, Inc.*, 238 F.R.D. 446, 451 (W.D. Tex.
     2006) (class defined based on objective criteria ascertainable although class members would need to
23   be identified in part through data obtained from third-party); *In re Lorazepam & Clorazepate
     Antitrust Litig.*, 202 F.R.D. 12, 22-25 (D.D.C. 2001) (the complexities of the pharmaceutical market
     did not make purchasers of drugs in antitrust case unascertainable).

24   [44] *Accord Kesler v. Ikea U.S. Inc.*, 2008 WL 413268, at *3 (C.D. Cal. Feb. 4, 2008) (holding that a
25   class was ascertainable even though "each putative class member's right to recovery depends on the
     fact that he or she is a 'consumer' for the purposes of the FCRA").

26   [45] Defendants also cite *Whiteway*, 2006 WL 2642528, at * 3, in which Judge Armstrong held that a
27   class of employees denied overtime wages was sufficiently ascertainable because they could be
     identified by analyzing various employment records.  *Id.  See also Quintero v. Mulberry Thai Silks*,
     Inc., 2008 WL 4666395, at *2 (N.D. Cal. Oct. 22, 2008) (Judge Patel held that a class including
28   former employees was ascertainable).  *Jones v. National Sec. Fire & Cas. Co.*, 2006 WL 3228409

38

argument that certification should be denied because class membership is not sufficiently

ascertainable is unsupported by the law and the facts and should be rejected.

## V. THE INJUNCTIVE CLAIMS UNDER THE SHERMAN ACT SHOULD BE CERTIFIED FOR CLASSWIDE TREATMENT UNDER RULE 23(B)(2)

Defendants make two arguments that this case cannot be certified for injunctive relief under

the Sherman Act. Def. Opp. at 53-56. Neither argument, however, can prevail.

First, Defendants argue that the Nationwide Class cannot be certified because injunctive

relief is "secondary" to the damages for that class (Def. Opp. at 54). The Record belies that

argument. The Nationwide Class's claims involve only injunctive relief, pled solely under the

Sherman Act, with no claim for damages for that Nationwide Class. *See* Indirect Purchaser

Plaintiffs' Second Consolidated Amended Complaint, at 61-62. The reason is simple: under the

*Illinois Brick* doctrine, indirect-purchaser plaintiffs can sue for injunctive relief under the Sherman

Act, but they cannot sue for damages.[46] Indeed, an injunction is especially important under the

Sherman Act precisely because indirect purchasers have no damage remedy under that statute; that

is, when damages are not available, injunctive relief may be the best way for a court to remedy

wrongful conduct. *Walgreen Co. v. Sara Creek Property Co.*, 966 F.2d 273, 276-78 (7th Cir. 1992);

*see also Blue Cross & Blue Shield of Wisconsin v. Marshfield Clinic*, 152 F.3d 588, 594 (7th Cir.

1988).

Second, Defendants, ignoring the proper legal standard, assert that the Plaintiffs have made

no showing of ongoing conduct that would require an injunction (Def. Opp. at 54-55). Under the

Sherman Act, an injunction will issue upon showing of a "threat" of injury. 15 U.S.C. § 26; *Cargill,

Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986); and *Datagate Inc. v. Hewlett-Packard Co.*,

941 F.2d 864, 870 (9th Cir. 1991). Given the nature of the conspiracy charged here—a multi-

---

(W.D. La. Nov. 3, 2006) also does not help Defendants. *Jones* did not involve class certification but was a motion to strike the alleged class definition. The class of injured property owners damaged by Hurricane Katrina in that case was not objectively defined and was over-inclusive with respect to liability. *See id.* at *4.

[46] *Lucas Auto Eng'g Inc. v. Bridgestone/Firestone Inc.*, 140 F.3d 1228, 1235-37 (9th Cir. 1998); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 497 F.Supp. 218, 228-29 (C.D. Cal. 1980).

1   company cartel, operating in a market with high barriers to entry (Netz Decl. at 37-51), causing

2   injury to "millions of American consumers" (*see* Remarks Prepared for Delivery by Assistant

3   Attorney General Thomas O. Barnett at A Press Conference (Nov. 12, 2008); Zahid Supp. Decl. Ex.

4   6), using frequent clandestine meetings, and employing sophisticated monitoring devices to ensure

5   compliance—the evidence at trial will show a threat that the Defendants could very quickly resume

6   their unlawful pricing activities, even on short notice.  *See* collections of documents submitted under

7   seal in support of Plaintiffs' Motion for Class Certification; *Los Angeles v. Lyons*, 461 U.S. 95, 102

8   (1983)("Past wrongs [are] evidence bearing on whether there is a real and immediate threat of

9   repeated injury"); *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  That

10  same threat of injury can be proved (or disproved) on a class-wide basis.

11      The fact that the government's antitrust investigation of the LCD industry came to light in

12  December 2006 and the temporal scope of its investigation by no means defeat the likelihood of

13  future resumption of Defendants' past practices. [47]  "When defendants are shown to have settled into

14  a continuing practice or entered into a conspiracy violative of anti-trust laws, courts will not assume

15  that it has been abandoned without clear proof.  .  .  .  It is the duty of the courts to beware of efforts

16  to defeat injunctive relief by protestations of repentance and reform, especially when abandonment

17  seems timed to anticipate suit, and there is probability of resumption."  *United States v. Oregon State*

18  *Med'l Society*, 343 U.S. 326, 333 (1952); *U.S. v. Krasn*, 614 F.2d 1229, 1236 (9th Cir. 1980) (once

19  existence of conspiracy shown, participation presumed to continue until last overt act unless

20  defendant produces affirmative evidence of withdrawal).

21      Plaintiffs have developed significant evidence on the existence of a long-lasting conspiracy

22  in the LCD industry that goes as far back as the 1990s.  Notably, since June 2002, a number of the

23  Defendants and/or their corporate parents or subsidiaries have been repeatedly investigated by the

24

25  [47] Defendants appear to be arguing that some, or all, of them withdrew from the conspiracy after
    December 2006 (Def. Opp. at 56), but none of the Defendants set forth a valid withdrawal defense
26  under *United States v. U.S. Gypsum Co.*, 438 U.S. 422 (1978). *Gypsum* requires a withdrawing
    defendant to report the conspiracy to the authorities or announce his withdrawal to his co-
27  conspirators.  438 U.S. at 463-65. *See also United States v. Loya*, 807 F.2d 1483, 1493 (9th Cir.
    1987). Moreover, a class claim under Rule 23(b)(2) cannot be mooted as easily as the Defendants

28

1   Department of Justice for price-fixing in other closely-related industries; some Defendants have pled
2   guilty and paid large fines as a result of the government's DRAM investigation.  The criminal
3   enforcement appears not to have enough deterrence to keep these Defendants from price-fixing LCD
4   products, given the lucrative illegal profits they are able to reap.  There are no affirmative acts of
5   renunciation which would foreclose the threat of future harm to class members, who continue to
6   purchase LCD products every day.  *United States v. Sax*, 39 F.3d 1380, 1386 (7th Cir. 1994)
7   ("merely ceasing participation in the conspiracy, even for extended periods of time, is not enough to
8   evidence withdrawal.").  Even assuming the Defendants abandoned anticompetitive conduct after
9   2006, there is still a dangerous possibility of resumption.

10          It is well settled that once a Sherman Act violation is proven, the district court "has the duty
11   to compel action by the conspirators that will, so far as practicable, cure the ill effects of the illegal
12   conduct, and assure the public freedom from its continuance.  Such action is not limited to
13   prohibition of the proven means by which the evil was accomplished, but may range broadly through
14   practices connected with acts actually found to be illegal. …[Equitable Relief] to be effective must
15   go beyond the narrow limits of the proven violation."  *Trabert & Hoeffer, Inc. v. Piaget Watch*
16   *Corp.*, 633 F.2d 477, 485 (7th Cir. 1980) (quoting *U.S. v. Ward Baking Co.*, 376 U.S. 327, 330
17   (1964)).  Unless Defendants are enjoined from engaging in the specific anticompetitive business
18   practices, they could simply resume their price-fixing scheme through methods more subtle and
19   more difficult to detect.  As a result, class members would continue to pay supra-competitive prices
20   for LCD products.

21          Given that Plaintiffs are already seeking an injunction under the Sherman Act on their own
22   behalf, and that such an injunction would necessarily impact the entire Nationwide Class, class-wide
23   treatment under Rule 23(b)(2) is "peculiarly appropriate."[48]  Accordingly, the Nationwide Class's
24   injunction claim should be certified.

25
26
27   suppose.  *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 455-56 (N.D. Cal. 1994).
28   [48] *See Califano v. Yamasaki*, 442 U.S. 682, 700 (1979).

1

VI.  **NAMED PLAINTIFFS BAKER, FISHER, GRIFFITH, HANSEN, JOU, MURPHY, MULVEY, NORTHWAY, PAGUIRIGAN, SRIMOUNGCHANH, AND WATSON ARE ADEQUATE AND TYPICAL CLASS REPRESENTATIVES**

2

3      Defendants argue that the named plaintiffs identified above are not typical of and/or are not

4  adequate representatives for class members either because they are subject to unique standing

5  defenses or because they have close familial or business relationships with their counsel.  Def. Opp.

6  at 58-64.  Defendants rely on snippets of deposition testimony and offer an incomplete and

7  inaccurate record in challenging these plaintiffs.  The record, however, is replete with examples

8  contradicting Defendants' assertion that these plaintiffs are inadequate and atypical.[49]

9      A.  **Class Period Redefined In Plaintiffs' Class Certification Motion Covers Plaintiffs Griffith And Hansen's Purchases**[50]

10

11      Plaintiffs in their Motion for Class Certification defined a shorter Class Period than the

12  duration of the conspiracy alleged in the Second Consolidated Amended Complaint and extend the

13  period to end December 31, 2006.  Defendants' argument that such modification is improper is

    groundless.

14

15      Courts routinely allow plaintiffs to modify proposed class definitions and are "not bound by

16  the class definition proposed in the complaint."  *Robidoux v. Celani*, 987 F.2d 931, 937 (2nd Cir.

17  1993); *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) ("A district court has broad discretion to

18  certify a class and may modify a proposed class definition if modification will render the definition

19  adequate.").  This rule recognizes the necessity to modify the class definition after further discovery

20  or other events which alter the parameters of the class because the class certification is usually made

21  early in the case.  *Irwin v. Mascott*, 2001 U.S. Dist. LEXIS 3285, at *13 (N.D. Cal. Feb. 27, 2001);

22

23  _____

    [49] To the extent that the named plaintiffs cannot represent the class of the particular states, Plaintiffs
24  respectfully seek leave to file an amended complaint to replace these representatives.  For the states
    where the only named plaintiffs are challenged here (i.e., Iowa, Massachusetts, Michigan,
25  Minnesota, and Vermont), Plaintiffs are ready to come forward with new qualifying class
    representatives if the Court finds it necessary to substitute these challenged plaintiffs.

26  [50] Plaintiffs concede that Mr. Fisher made his purchase on February 10, 2007, outside the redefined
    class period for state claim claims (January 1, 1999 to December 31, 2006).

27  [51] Plaintiffs concede that Mr. Fisher made his purchase on February 10, 2007, outside the redefined
    class period for state claim claims (January 1, 1999 to December 31, 2006).
28

42

1    *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 683 n.5 (N.D. Ga. 1991).[52]  In their

2    motion for class certification, Plaintiffs revised the class period for damage claims to end on

3    December 31, 2006, and for injunctive claims to the present.  Therefore, Mr. Griffith and Mr.

4    Hansen made qualifying purchases within the redefined class period.[53]

5    ### B.    Plaintiff Srimoungchanh Personally Purchased the Products At Issue

6         Contrary to Defendants' assertion, Mr. Srimoungchanh testified that he owns First Secure

7    Data, a sole proprietorship (Srim. Tr. 74:20-25: "It's not a corporation. … It's a sole proprietor.").

8    Zahid Supp. Decl., Ex. 53.  As such, Mr. Srimoungchanh is the owner of these business's assets,

9    including the LCD products he purchased.  Regarding Mr. Srimoungchanh's other LCD products, he

10   testified that he personally made these purchases although his wife's name appears on the receipts

11   ((1) Sony Vaio laptop: wife paid out of the couple's joint account (Srim. Tr. 149:23-150:06 ("When

12   we go shopping she's the one that controls the money to pay, to make purchase and I make the

13   payment … Yes.  That's also a shared account;" and (2) Sony LCD TV: the store's database

14

15

---

16   [52] *Pierce v. Novastar Mortg. Inc.*, 489 F.Supp.2d 1206, 1215 (W.D. Wash. 2007) is distinguishable.
     Def. Opp. at 60 n.52.  The court in *Pierce* declined to consider whether to redefine the class because
17   plaintiffs raised the request for the first time in their reply to the summary judgment motion.  489
     F.Supp.2d at 1215.  Similarly, in *Jordan v. Paul Financial, LLC*, 2009 WL 192888, at *6 (N.D.Cal.,
18   Jan. 27, 2009), the plaintiff sought to radically redefine the class definition in his reply brief and this
     Court ruled that he may seek leave to file an amended complaint.  Here, Plaintiffs modified the class
19   period in their motion, giving Defendants adequate notice.

20   [53] Defendants also challenge the status of Ms. Baker, Ms. Jou, and Mr. Paguirigan because they do
     not satisfy the residency requirement of the proposed class definition.  Def. Opp. at 62.  Indirect
21   purchasers who purchased the price-fixed LCD products as residents of the respective states during
     the class period should not be precluded from recovery, regardless of whether they moved to a
22   different state thereafter or worked abroad for ten months on a temporary work assignment (Jou Tr.
     10:1-11:15; Zahid Supp. Decl., Ex.. 54)..  As such, Plaintiffs should be allowed (and respectfully ask
23   the Court's permission if so requires) to modify the class definition to include "All persons and
     entities in [Indirect Purchaser State] who, from January 1, 1999 to December 31, 2006, as residents
24   of [Indirect Purchaser State], purchased LCD panels incorporated in televisions, monitors, and/or
     laptop computers in [Indirect Purchaser State] indirectly from one or more of the named Defendants
25   for their own use and not for resale. …"  Defendants' comment on Ms. Baker's and Mr. Paguirigan's
     unfamiliarity with the complaint does not make them inadequate.  Def. Opp. at 62, 64, nn. 56-57.
26   While a class representative must be familiar with the basics of, and "understand the gravamen" of,
     her claims, it is not necessary that she be "intimately familiar with every factual and legal issue in
27   the case."  *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004).  Thus, a class
     representative "will be deemed inadequate only if she is 'startlingly unfamiliar' with the case."  *Id.*
28   (quoting *Greenspan v. Brassler*, 78 F.R.D. 130, 133-34 (S.D.N.Y. 1978)).

---

43

associated the couple's phone number with wife's name (Srim. Tr. 171:17-172:6)).  Zahid Supp. Decl., Ex. 53.

### C. Plaintiff Baker's Purchase Of Panel Made By A Co-Conspirator Is A Qualifying Purchase

Defendants challenge Mr. Baker's purchase as non-qualifying because he purchased a Dell computer containing a Quanta Display panel in November 2003, well before AUO acquired Quanta Display ("QDI") in October 2006.  Def. Opp. at 61.  Defendants' arguments are unavailing for two reasons.  First, QDI is a co-conspirator which participated in the illegal price-fixing agreements.  Documentary evidence demonstrates that QDI's anticompetitive contacts with competitors dated at least as far back as 2002.  Prior to AUO's acquisition, QDI attended multiple group and bilateral meetings with the named Defendants.[54]  Case law clearly holds that each conspirator is jointly liable for everything done during the period of the conspiracy's existence.  Regardless of whether QDI was named in the Complaint, Defendants are jointly liable for all damages that the conspiracy caused, regardless of when a particular co-conspirator became a member or the extent of its participation.  *In re Nissan Motor Corp. Antitrust Litig.*, 430 F.Supp. 231, 232 (S.D. Fla. 1977) (citing *Dextone Co. v. Building Trades Council of Westchester County*, 60 F.2d 47 (2d Cir. 1932)).  Second, as the surviving company, AUO assumed all rights and obligations of QDI, the dissolved company, including QDI's liability for illegal overcharges.  *See* Form 6-K, at 6 (filed June 15, 2006 by AU

---

[54] *See* Zahid Supp. Decl., Exs. 16-20 [GRNE0059163



; SECm00400093-95

; GRN000022-24 [uncertified translation]

;

GRNE0230663-69 and GRNE0230693-700

44

Optronics Corp.).  Therefore, AUO is liable as a successor corporation for the antitrust violations of QDI.[55]

### D.    Plaintiffs Mulvey, Murphy, Northway, And Watson Can Adequately Represent The Class

Defendants argue that the above-mentioned four Plaintiffs' business and family relationships with counsel compromise their ability to represent the class.  Def. Opp. at 62-64.  A familial or business relationship with class counsel, without more, however, is not necessarily disqualifying.  In cases where such relationships were held inappropriate, there exists an eminent concern that the financial interests of the class representative in sharing counsel's fees—as affected by the relationship with counsel—conflict with those of the class and that the representative may allow settlement on terms less favorable to the class as a whole.  *See Susman v. Lincoln American Corp.*, 561 F.2d 86, 91-95 (7th Cir. 1977); *see also Tanzer v. Sharon Tell Corp.*, 1979 WL 1226, at *17 (S.D.N.Y. June 22, 1979) (noting that "close relationship" is generally not a *per se* obstacle to certification and that court must evaluate the circumstances of each case) (citing *Susman*).

None of the factors that counseled against adequate representation in those cases exist here. *Cardizem II* is instructive.  In *Cardizem II*, the court held that "the mere fact that [named plaintiff]'s son is employed as an associate with liaison counsel . . . is insufficient to create a conflict of interest and thus render him an inadequate class representative," because "as the courts routinely observe, a named plaintiff will not be disqualified simply because of a close or familial relationship with one of the attorneys representing the class . . . . [T]here must be some evidence that the relationship at issue is likely to create a conflict of interest or otherwise comprise the ability to vigorously prosecute the action on behalf of the class."  200 F.R.D. at 337.  In particular, the court noted that "only Co-Lead Counsel have strategic and settlement authority in this case," and "that the courts have the power to review settlement agreements for fairness will further protect any potential conflict that may arise in that context."  *Id.* at 338.

---

[55] To the extent the Court finds that the class definition in the Motion for Class Certification is insufficient to include purchases from QDI, Plaintiffs respectfully seek permission to revise the class to include "LCD panels incorporated in televisions, monitors, and/or notebook computers, from one or more of the named Defendants and Quanta Display, Inc."

Here, like *Cardizem II*, none of these Plaintiffs stand to benefit from the potential fees that counsel may receive; none of these Plaintiffs or their counsel have strategic or settlement authority (none of the four challenged class representatives have any relationship with lead counsel in this case); and nothing suggests an appearance of collusion or impropriety. *Lewis v. Goldsmith*, 95 F.R.D. 15, 20-21 (D.N.J. 1982) (no impropriety where plaintiff represented by uncle and had worked two summers for uncle's law firm). Moreover, there are over 30 other named Plaintiffs, each represented by their individual counsel, none of whom has any such relationships with their counsel.[56] Defendants could not present evidence which calls into question these class representatives' loyalty to other members of the class. In fact, these Plaintiffs are engaged, able, and interested representatives. They have searched for products and documents, provided answers to written discovery, given deposition testimonies, and followed progress of this litigation through communication with counsel, all which demonstrate willingness to carry out the duties of class representatives. The testimonies of these Plaintiffs clearly demonstrate their ability to serve as class representatives. *See* Appendix A; Zahid Supp. Decl., Exh. 55-58.

Defendants' mere speculation of a conflict of interest, without more, is insufficient to defeat class certification; the conflict must be actual, not hypothetical. *Meijer Inc. v. Abbott Laboratories,* 2008 WL 4065839, at *5 (N.D. Cal. Aug. 27, 2008); *see also Goldsmith*, 95 F.R.D. at 20 ("it would seem a bit anomalous that an individual whose uncle has developed a reputation as a competent securities lawyer should be prohibited from turning to his uncle for assistance if he has a legitimate claim"); *In re Greenwich Pharmaceuticals Securities Litig.*, 1993 WL 436031, at *2 (E.D. Pa. Oct. 25, 1993) (certifying class representatives whose son was attorney at class counsel firm because "[t]here is no indication that [representative] has relied or will heavily rely on his son nor that he stands to benefit from fees his son may receive"). Thus, these plaintiffs should remain the class representatives for the states they are representing.

---

[56] *In re Frontier Ins. Group, Inc. Securities Litig.*, 172 F.R.D. 31, 43-44 (E.D.N.Y. 1997) (certifying niece of class counsel as representative because concerns about "independence from class counsel are mitigated by the fact that there are six other named plaintiffs in this action, none of whom has any familial relationship with counsel" and because defendants adduced "no evidence that [representative] will share in the attorney's fees recovered by class counsel")

1  VII.   **CONCLUSION**

2        For the foregoing reasons, and for the reasons stated in Plaintiffs' opening brief, Plaintiffs

3  submit that they have met all requirements for class certification.  Plaintiffs respectfully request that

4  the Court grant their motion for class certification.

5  Dated:  September 17, 2009                       Respectfully submitted,

6

7                                    _____/s/ Craig C. Corbitt_____
                                          Craig C. Corbitt

8                                    Francis O. Scarpulla (41059)
                                     Craig C. Corbitt (83251)
9                                    Judith A. Zahid (215418)
                                     Patrick B. Clayton (240191)
10                                   Qianwei Fu (242669)
                                     ZELLE HOFMANN VOELBEL & MASON LLP
11                                   44 Montgomery Street, Suite 3400
                                     San Francisco, CA 94104
12                                   Telephone:    (415) 693-0700
                                     Facsimile:    (415) 693-0770
13                                   fscarpulla@zelle.com
                                     ccorbitt@zelle.com
14
                                     Joseph M Alioto (42980)
15                                   Theresa D. Moore (99978)
                                     THE ALIOTO FIRM
16                                   555 California Street, 31st Floor
                                     San Francisco, CA  94104
17                                   Telephone:    (415) 434-8900
                                     Facsimile:    (415) 434-9200
18
                                     *Interim Co-Lead Counsel for Indirect-Purchaser*
19                                   *Plaintiffs and Class Members*

20

21  Allan Steyer                      Terry Rose Saunders
    Jill Manning                      Thomas A. Doyle
22  Steyer Lowenthal Boodrookas Alvarez &   Saunders & Doyle
       Smith, LLP                     20 South Clark Street, Suite 1720
23  One California Street, Third Floor   Chicago, IL  60603
    San Francisco, CA  94111          Telephone:    (312) 551-0051
24  Telephone:    (415) 421-3400      Facsimile:    (312) 551-4467
    Facsimile:    (415) 421-2234      tadoyle@saundersdoyle.com
25  asteyer@steyerlaw.com
    jmanning@steyerlaw.com
26

27

28

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

1  Josef D. Cooper                          Daniel R. Shulman
2  Tracy R. Kirkham                         Jeremy L. Johnson
   Cooper & Kirkham, P.C.                   Gray Plant Mooty & Bennett, PA
3  357 Tehama Street, Second Floor          500 IDS Center
   San Francisco, CA  94103                 80 South Eighth Street
4  Telephone:    (415) 788-3030             Minneapolis, MN  55402
5  Facsimile:    (415) 882-7040             Telephone:    (612) 632-3335
   jdc@coopkirk.com                         Facsimile:    (612) 632-4335
6                                           daniel.shulman@gpmlaw.com
                                            jeremy.johnson@gpmlaw.com
7
   Christopher Lovell                       David A. Freedman
8  Lovell Stewart Halebian LLP              Joseph Goldberg
   61 Broadway, Suite 501                   Freedman Boyd Daniels Hollander
9  New York, NY 10006                         Goldberg & Ives, PA
   Telephone:    (212) 608-1900             20 First Plaza, Suite 700
10 Facsimile:    (212) 719-4677             Albuquerque, NM  87102
11 clovell@lshllp.com                       Telephone:    (505) 842-9960
                                            Facsimile:    (505) 842-0761
12                                          daf@fbdlaw.com
                                            jg@fbdlaw.com
13
   Jack W. Lee                              Thomas V. Girardi
14 B. Mark Fong                             Girardi & Keese
15 Brad Yamauchi                            1126 Wilshire Boulevard
   Minami Tamaki, LLP                       Los Angeles, CA  90017-1904
16 360 Post Street, 8th Floor               Telephone:    (213) 977-0211
   San Francisco, CA  94108-4903            Facsimile:    (213) 481-1554
17 Telephone:    (415) 788-9000             tgirardi@girardikeese.com
18 Facsimile:    (415) 398-3887
   jlee@minamitamaki.com
19 mfong@minamitamaki.com

20 G. Mark Albright                         Joseph M. Weiler
   Albright Stoddard Warnick & Albright     Darin M. Conklin
21 Quail Park I, Building D-4               Alderson Alderson Weiler Conklin
   801 South Rancho Drive                     Burghart & Crow, L.L.C.
22 Las Vegas, NV 89106-3854                 2101 SW 21st Street
   Telephone:    (702) 384-7111             Topeka, KS 66604
23 Facsimile:    (702) 384-0605             Telephone:    (785) 232-0753
24 gma@albrightstoddard.com                 Facsimile:    (785) 232-1866
                                            jweiler@aldersonlaw.com
25                                          dconklin@aldersonlaw.com

26

27

28

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

C. Donald Amamgbo
Amamgbo & Associates, PLC
7901 Oakport Street, Suite 4900
Oakland, CA  94621
Telephone:      (510) 615-6000
Facsimile:      (510) 615-6025
donald@amamgbolaw.com

Lori E. Andrus
Jennie Lee Anderson
Andrus Anderson LLP
155 Montgomery Street, 9th Floor
San Francisco, CA 94104
Telephone:      (415) 986-1400
Facsimile:      (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com

Neil Overholtz
Douglass Kreis
Justin Witkin
Aylstock, Witkin, Kreis & Overholtz, PLC
4400 Bayou Boulevard, Suite 58
Pensacola, FL 32503
Telephone:      (850) 916-7450
Facsimile:      (850) 916-7449
noverholtz@awr.law.com

Gordon Ball
Ball & Scott
Suite 750, Bank of America Center
550 Main Street
Knoxville, TN 37902
Telephone:      (865) 525-7028
Facsimile:      (865) 525-4679
gball@ballandscott.com

Eric J. Pickar
Gregory J. Erlandson
Bangs McCullen Butler Foye &
   Simmons, LLP
333 West Boulevard, Suite 400
P.O. Box 2670
Rapid City, SD 57709-2670
Telephone:      (605) 343-1040
Facsimile:      (605) 343-1503
gerlandson@bangsmccullen.com

Brian Barry, Esq.
Law Offices of Brian Barry
1801 Avenue of the Stars, Suite 307
Los Angeles, CA  90067
Telephone:      (310) 788-0831
Facsimile:      (310) 788-0841
bribarry1@yahoo.com

Michael S. Bearse
Law Offices of Michael S. Bearse, PC
226 South Main Street
Providence, RI  02930
Telephone:      (401) 331-7720
Facsimile:      (401) 453-2549
msbearse@comcast.net

Andrew S. Friedman
Bonnett, Fairbourn, Friedman & Balint, P.C.
2901 North Central Avenue, Suite 1000
Phoenix, AZ 85012-3311
Telephone:      (602) 274-1100
Facsimile:      (602) 274-1199
afriedman@bffb.com

John H. Boone
Law Offices of John H. Boone
555 California Street, Suite 3160
San Francisco, CA  94104
Telephone:      (415) 434-8900
Facsimile:      (415) 434-9200
jboone@dc.rr.com

Michael L. Belancio
Bower Belancio, LLC
800 West 47th Street, Suite 215
Kansas City, MO 64112
Telephone:      (816) 960-4911
Facsimile:      (816) 960-3711
mbelancio@bblawkc.com

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

1    C. Dewey Branstetter, Jr.
2    J. Gerard Stranch, IV
     Branstetter, Stranch & Jennings, PLLC
3    227 Second Avenue North
     Nashville, TN 37201
4    Telephone:     (615) 254-8801
     Facsimile:     (615) 250-3937
5    cdbjr@braanstetterlaw.com
     gstranch@branstetterlaw.com
6

Thomas H. Brill
Law Office of Thomas H. Brill
6552 Sagamore Road
Mission Hills, KS 66208
Telephone:     (913) 677-2004
Facsimile:     (913) 677-2152
brillkc@aol.com

7    Louis F. Burke
     Louis F. Burke, PC
8    460 Park Avenue, 21st Floor
     New York, NY 10022
9    Telephone:     (212) 682-1700
     Facsimile:     (212) 808-4280
10   lburke@lfblaw.com
11

Michael J. Flannery
James J. Rosemergy
Carey & Danis, LLC
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105
Telephone:     (314) 725-7700
Facsimile:     (314) 721-0905
mflannery@careydanis.com

12   John M. Dillon
     Caruso & Dillon PC
13   100 Mamaroneck Avenue
     Mamaroneck, NY 10543
14   Telephone:     (914) 698-6392
     Facsimile:     (914) 698-2038
15   john.dillon@dillonlaw.com
16

Steven N. Berk
Chavez & Gertler, LLP
1225 15th Street, NW
Washington, D.C. 20005
Telephone:     (202) 232-7550
Facsimile:     (202) 232-7556
steven@chavezgertler.com

17   Joseph G. Sauder
     Benjamin F. Johns
18   James R. Malone, Jr.
     Chimicles & Tikellis, LLP
19   361 West Lancaster Avenue
     Haverford, PA 19041
20   Telephone:     (610) 642-8500
     bfj@chimicles.com
21   jamesmalone@chimicles.com
22

Richard L. Coffman
The Coffman Law Firm
1240 Orleans Street, Suite 200
Beaumont, TX 77701
Telephone:     (409) 832-4767
Facsimile:     (866) 835-8250
rc@cofflaw.com

23   Irwin B. Levin
     Scott D. Gilchrist
24   Cohen & Malad, LLP
     One Indiana Square, Suite 1400
25   Indianapolis, IN 46204
     Telephone:     (317) 636-6481
26   Facsimile:     (317) 636-2593
     ilevin@cohenandmalad.com
27
28

Dario De Ghetaldi
Corey Luzaich Pliska deGhetaldi Nastari LLP
700 El Camino Real
P.O. Box 669
Millbrae, CA 94030
Telephone:     (650) 871-5666
Facsimile:     (650) 871-4144
deg@coreylaw.com

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION – Master File No. C07-1827-SI

Roger M. Schrimp
Clinton P. Walker
Fred Silva
Kathy Lee Monday
Damrell Nelson Schrimp Pallios
Pacher & Silva
1601 I Street, Fifth Floor
Modesto, CA  95354
Telephone:      (209) 526-3500
Facsimile:       (209) 526-3534
rschrimp@damrell.com
cwalker@damrell.com

Joseph F. Devereux, Jr.
Devereux Murphy LLC
The Plaza at Clayton
190 Carondelet, Suite 1100
St. Louis, MO 63105
Telephone:      (314) 721-1516
Facsimile:       (314) 721-4434
jfdevereux@devereuxmurphy.com

Wyatt B. Durrette, Jr.
Christopher G. Hill
Christine A. Williams
Edward J. Westlow
Durrette Bradshaw, PLC
600 East Main Street, 20th Floor
Richmond, VA 23219-2430
Telephone:      (804) 775-6900
Facsimile:       (804) 775-6911
wdurrette@durrettebradshaw.com
chill@durrettebradshaw.com
cwilliams@durrettebradshaw.com
ewestlow@durrettebradshaw.com

John G. Emerson
Emerson Poynter, LLP
830 Apollo Lane
Houston, TX  77058
Telephone:      (281) 488-8854
Facsimile:       (281) 488-8867
gemerson@emersonpoynter.com

Clint Sargent
Danforth & Meierhenry
315 South Phillips Avenue
Sioux Falls, SD 57104
Telephone:      (605) 336-3075
Facsimile:       (605) 336-2593
clint@meierhenrylaw.com

James M. Dombrowski
Attorney at Law
P.O. Box 751027
Petaluma, CA  94975
Telephone:      (707) 762-7807
Facsimile:       (707) 769-0419
jdomski@aol.com

Chief Nnamdi A. Ekenna
The Ekenna Law Firm
4311 Wilshire Boulevard, Suite 612-B
Los Angeles, CA 90010-3717
Telephone:      (323) 954-1000
Facsimile:       (323) 954-1001
chiefekenna@aol.com

Scott E. Poynter
Christopher D. Jennings
Emerson Poynter, LLP
500 President Clinton Avenue, Suite 305
Little Rock, AR  72201
Telephone:      (501) 907-2555
Facsimile:       (501) 907-2556
spoynter@emersonpoynter.com

51

1
Gregg Vance Fallick
Attorney at Law
2
Albuquerque Plaza, Suite 1560
201 Third Street, N.W.
3
Albuquerque, NM 87102
Telephone:   (505) 842-6000
4
Facsimile:   (505) 842-6001
5
gvf@fallicklaw.com

6
Russell F. Brasso
7
Foreman & Brasso
930 Montgomery Street, Suite 600
8
San Francisco, CA 94133
Telephone:   (415) 433-3475
9
Facsimile:   (415) 781-8030
brasso@foremanandbrasso.com
10

11
Michael G. Simon
M. Eric Frankovitch
12
Frankovitch Anetakis Colantonio & Simon
337 Penco Road
13
Weirton, WV  26062
Telephone:   (304) 723-4400
14
Facsimile:   (304) 723-5892
15
msimon@facslaw.com

16
Charles R. Watkins
John R. Wylie
17
Futterman Howard Watkins Wylie &
   Ashley, Chtd.
18
122 South Michigan Avenue, Suite 1850
19
Chicago, IL  60603
Telephone:   (312) 427-3600
20
Facsimile:   (312) 427-1850
cwatkins@futtermanhoward.com
21
jwylie@futtermanhoward.com

22
Robert J. Gralewski
23
Gergosian & Gralewski, LLP
550 West C Street, Suite 1600
24
San Diego, CA  92101
Telephone:   (619) 230-0104
25
Facsimile:   (619) 230-0124
26
bob@gralewski.com

27

28

Adam Stein
Ferguson Stein Chambers Gresham
& Sumter, PA
312 West Franklin Street
Chapel Hill, NC 27516
Telephone:   (919) 933-5300
Facsimile:   (919) 933-6182
astein@fergusonstein.com

Keith T. Black
Forman Rossabi Black, P.A.
3623 North Elm Street, Suite 200
Greensboro, NC 27455
Telephone:   (336) 378-1899
Facsimile:   (336) 378-1850
wfp@frb-law.com

Paul M. Weiss
William M. Sweetnam
Freed & Weiss, LLC
111 West Washington Street, Suite 1331
Chicago, IL  60602
Telephone:   (312) 220-0000
Facsimile:   (312) 220-7777
paul@freedweiss.com

Carl L. Solomon
Gergel, Nickles & Solomon, P.A
P.O. Box 1866
1519 Richland Street
Columbia, SC 29202-1866
Telephone:   (803) 779-8080
Facsimile:   (803) 256-1816
csolomon@gnslaw.com

Kenneth G. Gilman
Daniel D'Angelo
Gilman and Pastor, LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
Telephone:   (617) 742-9700
Facsimile:   (617) 742-9701
kgilman@gilmanpastor.com

Susan G. Kupfer
Sylvie K. Kern
Glancy Binkow & Goldberg, LLP
One Embarcadero Center, Suite 760
San Francisco, CA 94111
Telephone:      (415) 972-8160
Facsimile:      (415) 972-8166
skupfer@glancylaw.com
skern@glancylaw.com

B.J. Wade
Glassman Edwards Wade & Wyatt, PC
26 North Second Street
Memphis, TN 38103
Telephone:      (901) 527-4675
Facsimile:      (901) 521-0940
bwade@gewwlaw.com

Steven E. Grubb
Goldberg Katzman, P.C.
320 Market Street, P.O. Box 1268
Harrisburg, PA 17108-1268
Telephone:      (717) 234-4161
Facsimile:      (717) 234-6808
seg@goldbergkatzman.com

Mark Goldman
Daniel K. Karon
Goldman Scarlato & Karon
101 W. Elm Street, Suite 360
Conschohocken, PA 19428
Telephone:      (484) 342-0700
Facsimile:      (484) 342-0701
karon@gsk-law.com

Robert S. Green
Elizabeth C. Guarnieri
Brian S. Umpierre
Green Welling, LLP
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone:      (415) 477-6700
Facsimile:      (415) 477-6710
rsg@classcounsel.com
ecg@classcounsel.com

Terry Gross
Adam Belsky
Gross & Belsky, LLP
180 Montgomery Street, Suite 2200
San Francisco, CA 94104
Telephone:      (415) 544-0200
Facsimile:      (415) 544-0201
terry@grossbelsky.com
adam@grossbelsky.com

Jeffrey A. Bartos
Soye Kim
Guerrieri Edmond Clayman & Bartos, P.C.
1625 Massachusetts Avenue, NW,
Suite 700
Washington, DC 20036
Telephone:      (202) 624-7400
Facsimile:      (202) 624-7420
jbartos@geclaw.com
skim@geclaw.com

Daniel E. Gustafson
Brian Williams
Jason S. Kilene
Gustafson Gluek PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone:      (612) 333-8844
Facsimile:      (612) 339-6622
dgustafson@gustafsongluek.com

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION – Master File No. C07-1827-SI

| | | |
|---|---|---|
| 1 | Steven K. Hisaka | J. Robert Keena |
| | Gail Y. Cosgrove | Barton C. Gernander |
| 2 | Kunio Kuwabe | Hellmuth & Johnson, PLLC |
| | Hisaka Yoshida & Cosgrove | 10400 Viking Drive, Suite 500 |
| 3 | Pacific Guardian Center, Mauka Tower | Eden Prairie, MN 55344 |
| 4 | 737 Bishop Street, Suite 3000 | Telephone: (952) 941-4005 |
| | Honolulu, HI 96813 | Facsimile: (952) 941-2337 |
| 5 | Telephone: (808) 523-0451 | jkeena@jhlawfirm.com |
| | Facsimile: (808) 524-0422 | bgernander@hjlawfirm.com |
| 6 | shisaka@objectionsustained.com | |
| | gcosgrove@objectionsustained.com | |
| 7 | kkuwabe@objectionsustained.com | |
| 8 | | |
| | Dennis J. Stewart | Glenn Carl James |
| 9 | Jennifer A. Kagan | James Law Offices |
| | Hulett Harper Stewart LLP | PMB 501, 1353 Rd. 19 |
| 10 | 550 West C Street, Suite 1600 | Guaynabo, PR 00966-2700 |
| 11 | San Diego, CA 92101 | Telephone: (787) 763-2888 |
| | Telephone: (619) 338-1133 | Facsimile: (787) 763-2881 |
| 12 | Facsimile: (619) 338-1139 | jameslawoffices@centennialpr.net |
| | dstewart@hulettharper.com | |
| 13 | jenni@hulettharper.com | |
| 14 | | |
| | Daniel J. Mulligan | Edward Bearman |
| 15 | Larry W. Gabriel | JG Law Firm |
| | Jenkins Mulligan & Gabriel, LLP | 780 Ridge Lake Boulevard, Suite 202 |
| 16 | 660 Market Street, 3rd Floor | Memphis, TN 38120 |
| 17 | San Francisco, CA 94104 | Telephone: (901) 682-3450 |
| | Telephone: (415) 982-8500 | Facsimile: (901) 682-3590 |
| 18 | Facsimile: (415) 982-8515 | ebearman@jglawfirm.com |
| | dan@jmglawoffices.com | |
| 19 | lgabriel@jmglawoffices.com | |
| 20 | Steven C. Lausell | Michael Stoker |
| | Jose R. Gonzalez | Brian Weber |
| 21 | Jimenez, Graffam & Lausell | Johns Flaherty & Collins, SC |
| 22 | P.O. Box 366104 | Exchange Building, Suite 600 |
| | San Juan, PR 00936-6104 | 205 Fifth Avenue, South |
| 23 | Telephone: (787) 767-1030 | LaCrosse, WI 54602 |
| | Facsimile: (787) 751-4068 | Telephone: (608) 784-5678 |
| 24 | slausell@jgl.com | Facsimile: (608) 785-0557 |
| | jgonzalez@jgl.com | michael@johnsflaherty.com |
| 25 | manager@jgl.com | brian@johnsflaherty.com |
| 26 | | |
| 27 | | |
| 28 | | |

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION – Master File No. C07-1827-SI

Dennis J. Johnson
Johnson & Perkinson
1690 Williston Road
P.O. Box 2305
South Burlington, VT  05403
Telephone:      (802) 862-0030
Facsimile:       (802) 862-0060
djohnson@jpclasslaw.com
email@jpclasslaw.com

Lynn Lincoln Sarko
Mark A. Griffin
Raymond J. Farrow
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone:   (206) 623-1900
Facsimile:       (206) 623-3384
lsarko@kellerrohrback.com
mgriffin@kellerrohrback.com
rfarrow@kellerrohrback.com

Kelly Kenny
Attorney at Law
P.O. Box 528
San Mateo, CA 94401
Telephone:      (650) 558-9041
Facsimile:       (650) 558-9041
kellykenny2@sbcglobal.net

Thomas D. Kershaw, Jr.
Thomas D. Kershaw, Jr., PC
184 Gooding Street, West
P.O. Box 2497
Twin Falls, ID 83303
Telephone:      (208) 734-9622
Facsimile:       (208) 734-6944
tkershaw@sunvalley.net

Daniel Hume
David E. Kovel
Beverly Tse
Kirby McInerney & Squire, LLP
830 Third Avenue, 10th Floor
New York, NY  10022
Telephone:      (212) 371-6600
Facsimile:       (212) 751-2540
dhume@kmslaw.com

Mary G. Kirkpatrick
Kirkpatrick & Goldsborough, PLLC
1233 Shelburne Road, Suite E-1
South Burlington, VT 05403
Telephone:      (802) 651-0960
Facsimile:       (802) 651-0964
mkirkpatrick@vtlawfirm.com

Susan LaCava
Susan LaCava, SC
23 North Pinckney Street
Madison, WI  53703
Telephone:      (608) 258-1335
Facsimile:       (608) 258-1669
sl@susanlacava.com

Kevin J. O'Connor
Adam C. Briggs
LaFollette Godfrey & Kahn, SC
One East Main Street
P.O. Box 2719
Madison, WI 53701-2719
Telephone:      (608) 284-2600
koconnor@gklaw.com

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

Justin E. LaVan
LaMarca & Landry, PC
1820 NW 118th Street, Suite 200
Des Moines, IA 50325
Telephone:      (515) 225-2600
Facsimile:      (515) 225-8581
justin@lamarcalandry.com

Micha Star Liberty
Liberty Law Office
1438 Market Street
San Francisco, CA  94102
Telephone:   (415) 896-1000
Facsimile:      (415) 896-2249
micha@libertylaw.com

Jayne A. Goldstein
Mager & Goldstein, LLP
1640 Town Center Circle, Suite 216
Weston, FL  33326
Telephone:      (954) 515-0123
Facsimile:      (954) 515-0124
jgoldstein@magergoldstein.com

Stanley S. Mallison
Hector R. Martinez
Law Offices of Mallison & Martinez
1042 Brown Avenue, Suite A
Lafayette, CA  94549
Telephone:      (925) 283-3842
Facsimile:      (925) 283-3426
hectorm@mallisonlaw.com

Samuel W. Lanham, Jr.
Lanham & Blackwell, P.A.
470 Evergreen Woods
Bangor, ME 04401
Telephone:      (207) 942-2898
Facsimile:      (207) 941-8818
slanham@lanhamblackwell.com

Angela K. Drake
Lowther Johnson
901 St. Louis Street, 20th Floor
Springfield, MO 65806
Telephone:      (417) 866-7777
Facsimile:      (417) 866-1752
adrake@lowtherjohnson.com

Lee Albert
Amir Stark
Mager & Goldstein, LLP
1818 Market Street, Suite 3710
Philadelphia, PA  19103
Telephone:      (215) 640-3280
Facsimile:      (215) 640-3281
lalbert@magergoldstein.com
astark@magergoldstein.com

Donna F. Solen
Gary E. Mason
The Mason Law Firm, LLP
1225 19th Street, NW, Suite 500
Washington, DC 20036
Telephone:      (202) 429-2290
Facsimile:      (202) 429-2294
dsolen@masonlawfirmdc.com

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

Gary D. McAllister
Eric I. Unrein
Jamie Goldstein
Thomas A. Kelliher
Gary D. McAllister & Associates, LLC
120 North LaSalle Street, Suite 2800
Chicago, IL 60602
Telephone:      (312) 345-0611
Facsimile:      (312) 345-0612
gdm@gdmlawfirm.com

Robert G. Methvin, Jr.
Philip W. McCallum
James Terrell
McCallum, Methvin & Terrell, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:      (205) 939-3006
Facsimile:      (205) 939-0399
rgm@mmlaw.net
pwm@mmlaw.net
jterrell@mmlaw.net

John Gressette Felder, Jr.
Chad A. McGowan
McGowan Hood Felder and Johnson
1405 Calhoun Street
Columbia, SC 29201
Telephone:      (803) 779-0100
Facsimile:      (803) 787-0750
cmcgowan@mcgowanhood.com

James McManis
Colleen Duffy Smith
Marwa Elzankaly
McManis Faulkner & Morgan
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone:      (408) 279-8700
Facsimile:      (408) 279-3244
jmcmanis@mfmlaw.com
melzankaly@mfmlaw.com

Floyd M. Melton, III
Melton Law Firm
107½ East Market
P.O. Box 534
Greenwood, MS 38935-0534
Telephone:      (662) 453-8016
Facsimile:      (662) 453-0145
fmmiii@bellsouth.net

Gil D. Messina
Messina Law Firm, PC
961 Holmdel Road
Holmdel, NJ 07733
Telephone:      (732) 332-9300
Facsimile:      (732) 332-9301
gmessina@messinalawfirm.com

Pete S. Michaels
Deborah G. Evans
Jennifer R. Seltenrich
Michaels & Ward, LLP
12 Post Office Square, 4th Floor
Boston, MA 02109
Telephone:      (617) 350-4040
Facsimile:      (617) 350-4050
psm@michaelsward.com
dge@michaelsward.com
jrs@michaelsward.com

Greg A. Lewen
James Fox Miller
Miller, Schwartz & Miller, P.A.
2435 Hollywood Boulevard
Hollywood, FL 33020
Telephone:      (954) 924-0300
Facsimile:      (954) 924-0311
glewen@msmlawyers.com
jmiller@msmlawyers.com

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION – Master File No. C07-1827-SI

Daniel J. Mogin
Chad M. McManamy
Noah D. Sacks
Brian A. Barnhorst
The Mogin Law Firm, PC
110 Juniper Street
San Deigo, CA 92101
Telephone:      (619) 687-6611
Facsimile:      (619) 687-6610
dan@moginlaw.com

Michael S. Montgomery
Montgomery Goff & Bullis, P.C.
4802 Amber Valley Parkway
P.O. Box 9199
Fargo, ND 58106-9199
Telephone:      (701) 281-8001
Facsimile:      (701) 281-8007
mike@bullislaw.com

Rodney C. Olsen
Morrison, Frost, Olsen & Irvine, LLP
323 Poyntz, Suite 204
Manhattan, KS 66502
Telephone:    (785) 776-9208
Facsimile:      (785) 776-9212
olsen@mfoilaw.com

Gilmur R. Murray
Derek G. Howard
Murray & Howard, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Telephone:      (510) 444-2660
Facsimile:      (510) 444-2522
gmurray@murrayhowardlaw.com
dhoward@murrayhowardlaw.com

Krishna B. Narine
Law Offices of Krishna B. Narine
7893 Montgomery Avenue, Suite 300
Elkins Park, PA 19027
Telephone:      (215) 782-3240
Facsimile:      (215) 782-3241
knarine@kbnlaw.com

Andrew C. Skinner
Nichols & Skinner, LC
115 East Washington Street
P.O. Box 487
Charles Town, WV 25414-0487
Telephone:      (304) 725-7029
Facsimile:      (304) 725-4082
ac@nicholsandskinner.com

Lawrence D. Nwajei
Law Offices of Lawrence D. Nwajei
5850 Canoga Avenue, Suite 400
Woodland Hills, CA 91367
Telephone:      (818) 710-2775
Facsimile:      (818) 914-4851
ldnwajei@aol.com

Lawrence G. Papale
Law Offices of Lawrence G. Papale
1308 Main Street, Suite 117
St. Helena, CA 94574
Telephone:      (707) 963-1704
Facsimile:      (707) 963-0706
lgpapale@papalelaw.com

William H. Parish
Parish & Small
1919 Grand Canal Boulevard, Suite A-5
Stockton, CA 95207-8114
Telephone:      (209) 952-1992
Facsimile:      (209) 952-0250
whparish@parishsmall.com

Joseph M. Patane
Law Office of Joseph M. Patane
2280 Union Street
San Francisco, CA 94123
Telephone:      (415) 563-7200
Facsimile:      (415) 346-0679
jpatane@tatp.com

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION – Master File No. C07-1827-SI

Jeffery Kenneth Perkins
Law Offices of Jeffery K. Perkins
1275 Columbus Avenue, Suite 208
San Francisco, CA 94133
Telephone:     (415) 474-3833
jefferykperkins@aol.com

Garrett D. Blanchfield, Jr.
Reinhardt Wendorf & Blanchfield
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone:     (651) 287-2100
Facsimile:     (651) 287-2103
g.blanchfield@rwblawfirm.com

Michael L. Roberts
Richard Quintus
Roberts Law Firm, PA
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223
Telephone:     (501) 821-5575
Facsimile:     (501) 821-4474
robertslawfirm@aristotle.net

Dianne M. Nast
Rodanast, PC
801 Estelle Drive
Lancaster, PA 17601
Telephone:     (717) 892-3000
Facsimile:     (717) 892-1200
dnast@rodanast.com

Cory M. Jones
Royal Jones Miles Dunkley & Wilson
2920 North Green Valley Parkway, Suite 424
Henderson, NV 89014
Telephone:     (702) 471-6777
Facsimile:     (702) 531-6777
cjones@royaljoneslaw.com

Andrew A. Nickelhoff
Marshall J. Widick
Sachs Waldman, PC
1000 Farmer Street
Detroit, MI 48226
Telephone:     (313) 965-3464
Facsimile:     (313) 965-4602
anickelhoff@sachswaldman.com

Alexander M. Schack
Law Offices of Alexander M. Schack
11440 West Bernardo Court, Suite 300
San Diego, CA 92127
Telephone:     (858) 485-6535
Facsimile:     (858) 485-0608
amslawoffice@aol.com

Robert C. Schubert
Kimberly A. Kralowec
Schubert Jonckheer Kolbe & Kralowec LL
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone:     (415) 788-4220
Facsimile:     (415) 788-0161
rschubert@schubertlawfirm.com
kkralowec@schubertlawfirmcom

Christopher A. Seeger
TerriAnne Benedetto
Seeger Weiss, LLP
One William Street
New York, NY 10004
Telephone:     (212) 584-0700
Facsimile:     (212) 584-0799
cseeger@seegerweiss.com
tbenedetto@seegerweiss.com

Jonathan Shub
Seeger Weiss, LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone:     (215) 564-2300
Facsimile:     (215) 851-8029
jshub@seegerweiss.com

Steven J. Serratore
Scott Ames
Serratore Ames LLP
9595 Wilshire Boulevard, Suite 201
Beverly Hills, CA 90212
Telephone:      (310) 205-2460
Facsimile:      (310) 205-2464
steve@serratoreames.com

Isaac L. Diel
Sharp McQueen
6900 College Boulevard, Suite 285
Overland Park, KS 66211
Telephone:      (913) 661-9931
Facsimile:      (913) 661-9935
dslawkc@aol.com

Douglas P. Dehler
Shepherd Finkelman Miller & Shah, LLC
111 East Wisconsin Avenue, Suite 1750
Milwaukee, WI 53202
Telephone:      (414) 226-9900
Facsimile:      (414) 226-9905
ddehler@classactioncounsel.com

W.H. Bundy, Jr.
Smith Bundy Bybee & Barnett, P.C.
Building F, Suite 100
1037 Chuck Dawley Boulevard
Mount Pleasant, SC 29464
Telephone:      (843) 881-1623
Facsimile:      (843) 881-4406
whbesq@s3blaw.com

Jared Stamell
Stamell & Schager, LLP
One Liberty Plaza, 35th Floor
New, NY 10006
Telephone:      (212) 566-4047

Glenn J. Shaull
The Highland Building
2201 Arlington Avenue, South
Birmingham, AL 35205
Telephone:      (205) 933-8501
Facsimile:      (205) 933-8560
gjslaw@bellsouth.net

Natalie Finkelman Bennett
Nathan Zipperian
Shepherd Finkelman Miller & Shah, LLC
35 East State Street
Media, PA 19063
Telephone:      (610) 891-9880
Facsimile:      (610) 891-9883

Jordan M. Lewis
Siegel Brill Greupner Duffy & Foster, P.A.
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55401
Telephone:      (612) 337-6100
Facsimile:      (612) 339-6591
jordanlewis@sbgdf.com

Bruce Spiva
Kathleen Hartnett
Spiva & Hartnett, LLP
1776 Massachusetts Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone:      (202) 785-0601
Facsimile:      (202) 785-0697
bspiva@spivahartnett.com
khartnett@spivahartnett.com

Kenneth G. Walsh
Straus & Boies, LLP
Two Depot Plaza
Bedford Hills, NY 10507
Telephone:      (914) 244-3200
Facsimile:      (914) 244-3260
kwalsh@straus-boies.com

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION – Master File No. C07-1827-SI

Mark J. Schirmer
Straus & Boies, LLP
1661 International Place Drive, Suite 400
Memphis, TN 38120
Telephone:     (901) 818-3146
Facsimile:     (901) 818-3147
mschirmer@straus-boies.com

David Boies, III
Timothy D. Battin
Ian Otto
Nate Cihlar
Straus & Boies, LLP
4041 University Drive, 5th Floor
Fairfax, VA 22030
Telephone:     (703) 764-8700
Facsimile:     (703) 764-8704
dboies@straus-boies.com
tbattin@straus-boies.com
iotto@straus-boies.com

J. Preston Strom, Jr.
Mario A. Pacella
Strom Law Firm, LLC
2110 Beltline Boulevard, Suite A
Columbia, SC 29204
Telephone:     (803) 252-4800
Facsimile:     (803) 252-4801
petestrom@stromlaw.com
mpacella@stromlaw.com

Shawn A. Taylor
Taylor Law Firm, PLLC
120 Capitol Street
P.O. Box 2132
Charleston, WV 25328
Telephone:     (304) 345-5959
Facsimile:     (304) 345-0270
judge@shawtaylor.com

Reginald Terrell
The Terrell Law Group
223 25th Street
Richmond, CA  94804
Telephone:     (510) 237-9700
Facsimile:     (510) 237-4616
reggiet2@aol.com

Jason J. Thompson
J. Thompson & Associates PLC
26000 West 12 Mile Road
Southfield, MI 48034
Telephone:     (248) 436-8448
Facsimile:     (248) 436-8453
jthompson@jta-law.com

LeRoy D. Percy
Grady F. Tollison, Jr.
Tollison Law Firm, P.A.
100 Courthouse Square
P.O. Box 1216
Oxford, MS 38655
Telephone:     (662) 234-7070
Facsimile:     (662) 234-7095
gray@tollisonlaw.com
roy@tollisonlaw.com

Thomas E. Towe
Towe Ball Enright Mackey & Sommerfeld
P.O. Box 30457
Billings, MT 59107
Telephone:     (406) 248-7337
Facsimile:     (406) 248-2647
towe@tbems.com

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mario N. Alioto
Lauren C. Russell
Trump Alioto Trump & Prescott, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:      (415) 563-7200
Facsimile:      (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

Kenneth Leo Valinoti
Valinoti & Dito LLP
180 Montgomery Street, Suite 940
San Francisco, CA 94104-4223
Telephone:      (415) 986-1338
Facsimile:      (415) 986-1231
kvalinoti@valinoti-dito.com

George O. West, III
Law Offices of George O. West, III
6787 West Tropicana Avenue, Suite 263
Las Vegas, NV 89103
Telephone:      (702) 248-1076
Facsimile:      (702) 953-2286
gowesq@cox.net

Kenneth A. Wexler
Wexler Toriseva Wallace, LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone:      (312) 346-2222
Facsimile:      (312) 346-0022
kaw@wtwlaw.com

Joe R. Whatley, Jr.
Whatley Drake & Kallas
1540 Broadway, 37th Floor
New York, NY 10036
Telephone:      (212) 447-7070
Facsimile:      (212) 447-7077
jwhatley@whatleydrake.com

S. Thomas Wienner
Wienner & Gould, P.C.
950 West University Drive, Suite 350
Rochester, MI 48307
Telephone:      (248) 841-9400
Facsimile:      (248) 652-2729
twienner@wiennergould.com

Lingel H. Winters, Esq.
Law Offices of Lingel H. Winters, APC
The Alcoa Building, Suite 400
One Maritime Plaza
San Francisco, CA 94111
Telephone:      (415) 398-2941
Facsimile:      (415) 393-9887
sawmill2@aol.com

Marc Aaron Wites
Wites & Kapetan
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone:      (954) 570-8989
Facsimile:      (954) 354-0205
mwites@wklawyers.com

James F. Wyatt, III
Wyatt & Blake, LLP
435 East Morehead Street
Charlotte, NC  28202-2609
Telephone:      (704) 331-0767
Facsimile:      (704) 331-0773
jwyatt@wyattlaw.net

Patrick D. Allen
Michael S. Jahner
Yenson, Lynn, Allen & Wosick, P.C.
4908 Alameda Boulevard NE
Albuquerque, NM 87113-1736
Telephone:      (505) 266-3995
Facsimile:      (505) 268-6694
pallen@ylawfirm.com
mjahner@ylawfirm.com

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –  Master File No. C07-1827-SI

Timothy J. Becker
Brian C. Gudmundson
Zimmerman Reed
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402
Telephone:      (612) 341-0400
tjb@zimmreed.com
bcg@zimmreed.com

#3218839v1

REPLY BRIEF IN SUPPORT OF INDIRECT-PURCHASER PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION –   Master File No. C07-1827-SI

# Appendix A

| PLAINTIFF NAME | DEPOSITION TESTIMONY |
|---|---|
| Ben Northway<br>(Iowa) | Mr. Ben Northway's ability to serve as a class representative is demonstrated by his clear understanding of both the nature of this case and of his duties as a class representative. He understands his responsibility to the class he seeks to represent, including: 1) that he is representing the interests of a larger class of similarly situated Iowa consumers, and not merely his own individual interests (Northway Tr. 37:1-15, 39:18-21, 43:25, 44:1-11; Zahid Supp. Decl., Ex. 55); 2) this action is not based on his own individual recovery, but instead is being prosecuted for the benefit of many (*Id.* at 39:18-25, 40:1-16, 44:8-11); and 3) his service as a class representative is performed without any expectation of personal gain (*Id.* at 44:12-19, 45:1-10). He has reviewed the complaints filed in this matter, has consulted with his attorneys in order to remain informed of how the case proceeds, and has demonstrated an adept understanding of the claims and issues raised in this lawsuit. *Id.* at 34:2-7, 35:10-21, 36:6-25, 37:1-8, 41:2-3, 15-22, 42:13-15, 120:18-25, 121:1-25, 122:1-5, 123:21-25, 124:1-4. As if to further underscore how inaccurate Defendants' claims are, Mr. Northway is not dependent on this employer for his entire income, but instead earns additional personal income as an independent IT Consultant. *Id.* at 46:21-25, 47:1-11. |
| Robert Watson<br>(Vermont) | Mr. Robert Watson, contrary to Defendants' assertion, does not derive a substantial amount of his income from his class counsel (Watson Tr. 20:8-11, 101:11-14; Zahid Supp. Decl., Ex. 56); nor is he currently seeking to be a class representative in any other action (*Id.* at 24:9-14, 26:1-3). Mr. Watson has earned between $1000 and $2000 by providing landscaping services for his counsel over the last three years. *Id.* at 18:10-15. The twenty to twenty-five dollars Watson earned every few weeks for maintaining his counsel's lawn during the short Vermont summer is not an amount that undermines Watson's independence. *Id.* at 100: 23-101:7, 116:16-20, 117:3-7. Watson has not received any extra compensation or anything of value that he has not earned at fair market rates. He has not billed any hours he did not work, and has not been promised anything in return for his actions on behalf of the class. *Id.* at 17:4-9, 116:10-15, 117:12-19, 118:15-18. Defendants conveniently ignore that Watson has demonstrated being an exemplary class representative by: producing responsive documents; appearing for his deposition; knowing the duties expected of a class representative; and diligently performing those duties. *Id.* at 8:15-24, 26:12-20, 33:13-25, 34:1-7, 35: 9-17, 36: 4-7. The limited business relationship with his counsel for lawn maintenance is not a significant enough relationship to influence his independence or to bias his decisions to the detriment of the class. |

| | |
|---|---|
| Christopher Murphy (Massachusetts) | Mr. Christopher Murphy volunteered to serve as a class representative and views such service as matter of civic duty.  Murphy Tr. 68:10-14; Zahid Supp. Decl., Ex. 57.  Mr. Murphy consulted with his attorneys in this matter in a manner one would expect of a competent class representative. *Id*. at 75:15-25.  In addition to reviewing the complaints prior to their filing (*Id*. at 72:23-25, 73:10-12),  Mr. Murphy assumed a proactive approach in the development of those complaints, spending several hours working with counsel to prepare the same and offering his own input and commentary on the claims alleged therein.  *Id*. at 71:12-23, 73:13-17).  Similarly, Mr. Murphy has also demonstrated the knowledge expected of a competent and informed class representative.  *Id*. at 65:5-17, 67:9-25; 68: 1-8, 18-25. |
| Martha Mulvey (Minnesota) | Ms. Martha Mulvey has demonstrated a clear understanding of her responsibilities as a class representative.  Ms. Mulvey has actively monitored the status of the case and has frequently communicated with her attorneys regarding the same.  Mulvey Tr. 38:7-12, 39:21-25, 40:1-3; Zahid Supp. Decl., Ex. 58.   The record demonstrates her understanding of her obligation to remain informed of the case, her responsibility to represent the interests of the Minnesota class, and that her suit is not based solely on her own recovery.  *Id*. at 23:22-25, 24:7-10, 31:14-25, 32:1-2, 34:18-20, 36:3-25, 37:1, 44:20-23).  Ms. Mulvey has read each of the complaints filed in this matter prior to their filing and reviewed those complaints for their substantive allegations.  *Id*. at 41:10-11, 42:5-10, 85:24-25, 86:1-11, 88:6-7, 90:9-11, 90:20-25, 91:1-22, 93:5-10.  While Ms. Mulvey may not have recalled the minutia of the complaints filed in this matter to the satisfaction of Defense counsel, she has demonstrated a sufficient understanding of the substantive allegations in those complaints.  *Id*. at 93:17-19, 98:11-15, 99:19-21, 102:10-19, 114:4-5, 115:6-8. |