Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Judith A. Zahid (215418)
Patrick B. Clayton (240191)
Qianwei Fu (242669)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:     (415) 693-0700
Facsimile:     (415) 693-0770
fscarpulla@zelle.com
ccorbitt@zelle.com

Joseph M Alioto (42980)
Theresa D. Moore (99978)
THE ALIOTO FIRM
555 California Street, 31st Floor
San Francisco, CA  94104
Telephone:     (415) 434-8900
Facsimile:     (415) 434-9200

*Interim Co-Lead Counsel for Indirect-Purchaser
Plaintiffs and Class Members*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. C07-1827-SI |
| | MDL No. 1827 |
| This Document Relates to: | **INDIRECT-PURCHASER PLAINTIFFS' REQUEST FOR LEAVE TO FILE STATEMENT OF RECENT DECISION** |
| All Indirect-Purchaser Actions | |

1    Pursuant to Civil Local Rule 7-3(d), Indirect-Purchaser Plaintiffs hereby request leave to file

2  the Statement of Recent Decision attached hereto as Exhibit 1.  The Statement advises the Court of

3  the recent order of the Supreme Court of Vermont reversing and remanding a lower state court's

4  denial of class certification of an indirect-purchaser class in *Wright v. Honeywell International, Inc.*,

5  No. 2008-423, 2009 Vt. LEXIS 146, 2009 VT 123 (Dec. 10, 2009).

6  Dated:  December 16, 2009                       Respectfully submitted,

7                                                                   */s/Craig C. Corbitt*

8
                                                              Francis O. Scarpulla (41059)
9                                                             Craig C. Corbitt (83251)
                                                              Judith A. Zahid (215418)
10                                                           Patrick B. Clayton (240191)
                                                              Qianwei Fu (242669)
11                                                           ZELLE HOFMANN VOELBEL & MASON LLP
                                                              44 Montgomery Street, Suite 3400
12                                                           San Francisco, CA 94104
                                                              Telephone:     (415) 693-0700
13                                                           Facsimile:      (415) 693-0770

14
                                                              Joseph M Alioto (42980)
15                                                           Theresa D. Moore (99978)
                                                              THE ALIOTO FIRM
16                                                           555 California Street, 31st Floor
                                                              San Francisco, CA  94104
17                                                           Telephone:     (415) 434-8900
                                                              Facsimile:      (415) 434-9200

18
                                                              *Interim Co-Lead Counsel for Indirect-Purchaser*
19                                                           *Plaintiffs and Class Members*

20
     **IT IS SO ORDERED:**
21

22

23                                                           _____
                                                              Hon. Susan Illston
24                                                           United States District Judge

25

26  #3219840v1

27

28

INDIRECT-PURCHASER PLAINTIFFS' REQUEST FOR LEAVE TO FILE STATEMENT OF RECENT DECISION
Master File No. C07-1827-SI

# EXHIBIT 1

Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Judith A. Zahid (215418)
Patrick B. Clayton (240191)
Qianwei Fu (242669)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:    (415) 693-0700
Facsimile:    (415) 693-0770
fscarpulla@zelle.com
ccorbitt@zelle.com

Joseph M Alioto (42980)
Theresa D. Moore (99978)
THE ALIOTO FIRM
555 California Street, 31st Floor
San Francisco, CA  94104
Telephone:    (415) 434-8900
Facsimile:    (415) 434-9200

*Interim Co-Lead Counsel for Indirect-Purchaser
Plaintiffs and Class Members*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. C07-1827-SI |
| | MDL No. 1827 |
| This Document Relates to: | **INDIRECT-PURCHASER PLAINTIFFS' STATEMENT OF RECENT DECISION** |
| All Indirect-Purchaser Actions | |

1    Pursuant to Civil Local Rule 7-3(d), Indirect-Purchaser Plaintiffs submit this Statement of

2  Recent Decision to advise the Court of the recent order of the Supreme Court of Vermont in *Wright*

3  *v. Honeywell International, Inc.*, No. 2008-423, 2009 Vt. LEXIS 146, 2009 VT 123 (Dec. 10, 2009),

4  a copy of which is attached.

5  Dated:  December 16, 2009                Respectfully submitted,

6                                          */s/Craig C. Corbitt*

7
                                          Francis O. Scarpulla (41059)
8                                          Craig C. Corbitt (83251)
                                          Judith A. Zahid (215418)
9                                          Patrick B. Clayton (240191)
                                          Qianwei Fu (242669)
10                                         ZELLE HOFMANN VOELBEL & MASON LLP
                                          44 Montgomery Street, Suite 3400
11                                         San Francisco, CA 94104
                                          Telephone:    (415) 693-0700
12                                         Facsimile:    (415) 693-0770

13                                         Joseph M Alioto (42980)
                                          Theresa D. Moore (99978)
14                                         THE ALIOTO FIRM
                                          555 California Street, 31st Floor
15                                         San Francisco, CA  94104
                                          Telephone:    (415) 434-8900
16                                         Facsimile:    (415) 434-9200

17                                         *Interim Co-Lead Counsel for Indirect-Purchaser*
                                          *Plaintiffs and Class Members*
18

19

20

21

22  #3219850v1

23

24

25

26

27

28

INDIRECT-PURCHASER PLAINTIFFS' STATEMENT OF RECENT DECISION – Master File No. C07-1827-SI



®

LEXSEE 2009 VT 123



Analysis
As of: Dec 15, 2009

**Alfred T. Wright, on Behalf of Himself and Others Similarly Situated v. Honeywell International, Inc.**

**No. 08-423**

**SUPREME COURT OF VERMONT**

***2009 VT 123*; *2009 Vt. LEXIS 146***

**December 10, 2009, Filed**

**NOTICE:**

THIS OPINION IS SUBJECT TO MOTIONS FOR REARGUMENT UNDER V.R.A.P. 40 AS WELL AS FORMAL REVISION BEFORE PUBLICATION IN THE VERMONT REPORTS.

**PRIOR HISTORY:** [**1]

On Appeal from Orange Superior Court. Theresa S. DiMauro, J.
*Eco Mfg. LLC v. Honeywell Int'l, Inc., 357 F.3d 649, 2003 U.S. App. LEXIS 26430 (7th Cir. Ind., 2003)*
*Daniels v. Cook Broadcasting Co., 357 F.2d 649, 1966 U.S. App. LEXIS 7142 (10th Cir. Kan., 1966)*

**DISPOSITION:** Reversed and remanded.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff consumer filed an action under the Vermont Consumer Fraud Act, *Vt. Stat. Ann. tit. 9, § 2453*, against defendant manufacturer in which plaintiff alleged that defendant created an unlawful monopoly that resulted in overcharges to

consumers for the company's round thermostat. The Orange Superior Court (Vermont) denied plaintiff's motion for class certification under Vt. R. Civ. P. 23. Plaintiff filed an interlocutory appeal.

**OVERVIEW:** The court first held that the trial court applied too rigorous a standard in denying class certification. Its analysis went too far both by essentially requiring plaintiff's expert to prove plaintiff's case at the certification stage and by moving from the fact of injury to the amount of damages, which courts and commentators had uniformly recognized could be proved in class actions on an individualized basis if necessary. Plaintiff's expert proposed to demonstrate through various methodologies and further discovery that direct customers paid monopolistic overcharges and that those overcharges were passed on through the various intermediary distribution channels to the proposed class of end users. The methodologies employed accepted economic theories and were potentially viable. Furthermore, the trial court's speculative considerations that there was no feasible plan for identifying class members and that allowing a novel or permissive method for identifying class members created the potential for

fraud should not have precluded certifying the class under Rule 23(b)(3) before plaintiff had had an opportunity to propose methods for identifying class members.

**OUTCOME:** The court reversed the order. It remanded the case for further proceedings.

**LexisNexis(R) Headnotes**

*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation*
[HN1] The Vermont Consumer Fraud Act, which is to be liberally construed to protect the public and encourage fair and honest competition, prohibits unfair methods of competition or deceptive practices in commerce. *Vt. Stat. Ann. tit. 9, § 2453(a).* A person who sustains injury or damages as a result of any fraudulent representations or practices prohibited by *§ 2453* may sue for equitable relief and to recover damages. *Vt. Stat. Ann. tit. 9, § 2461(b)*; *Vt. Stat. Ann. tit. 9, § 2465(a)* (any person sustaining damages or injury from antitrust violation prohibited by *§ 2453* may recover the amount of his or her damages).

*Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices > State Regulation*
*Antitrust & Trade Law > Private Actions > Purchasers > Indirect Purchasers*
[HN2] While recognizing that the United States Supreme Court has barred indirect consumers from claiming antitrust violations under federal law, the Vermont Supreme Court has nonetheless held that a class of indirect purchasers can bring private antitrust cases and recover damages under *Vt. Stat. Ann. tit. 9, § 2461(b)*, part of the Vermont Consumer Fraud Act.

*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN3] Regarding class certification, the basic prerequisites require that (1) the class is numerous enough that joinder of all of its members is impracticable; (2) questions of law or fact are common to the class; (3) the representative parties are making claims and defenses that are typical of the class; and (4) the representative parties will adequately protect the interests of the class. Vt. R. Civ. P. 23(a).

*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN4] Beyond the prerequisites of Vt. R. Civ. P. 23(a), class actions are maintainable only if at least one of the more onerous conditions set forth in Rule 23(b) is satisfied. As is often the situation in a request for class certification, this case comes down to whether "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3). The rule also lists several factors for the court to consider in determining whether Rule 23(b)(3) is satisfied, including the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(D).

*Civil Procedure > Class Actions > Appellate Review*
*Civil Procedure > Class Actions > Judicial Discretion*
*Governments > Courts > Rule Application & Interpretation*
[HN5] As a general rule, class actions are of limited and special application and are not to be casually authorized. A trial court has discretion in determining whether to certify a class. An appellate court will affirm the trial court's denial of a motion for class certification provided that the trial court applied the correct legal standards, which are reviewed de novo, and did not abuse its discretion in applying those standards. To the extent that the Vermont rule mirrors the comparable federal rule, Vermont courts look to federal precedent to aid its interpretation of the Vermont rule.

*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN6] While it is not proper to reach the merits of a claim when determining class certification, this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Vt. R. Civ. P. 23 class action requirements.

*Civil Procedure > Class Actions > Appellate Review*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN7] Intertwined with the scope of review on appeal is the question of how far a trial court should go in testing

legal and factual premises at the class certification stage. The court must evaluate the plaintiff's evidence to assure that the Vt. R. Civ. P. 23 criteria have been met, but without turning the class-certification proceeding into a premature and unwieldy trial on the merits. In short, the difficult task of determining whether to certify a class stems not only from the different legal approaches taken in various courts as to how relaxed the predominance standards may be, but also in no small part from the use of economic experts.

***Civil Procedure > Class Actions > Prerequisites > General Overview***
[HN8] To certify a class, the trial court must find that the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Vt. R. Civ. P. 23(b)(3).

***Antitrust & Trade Law > Private Actions > General Overview***
[HN9] Typically, a plaintiff presenting an antitrust claim must prove (1) a violation of the antitrust laws, (2) an injury or impact suffered as a result of that violation, and (3) an estimated measure of damages.

***Antitrust & Trade Law > Private Actions > Injuries & Remedies > General Overview***
***Civil Procedure > Class Actions > Prerequisites > General Overview***
[HN10] There is a consensus among courts and commentators that the need to determine individualized damages in antitrust cases does not preclude class certification.

***Antitrust & Trade Law > Private Actions > General Overview***
***Civil Procedure > Class Actions > Prerequisites > Commonality***
[HN11] In antitrust class actions, common issues do not predominate if the fact of antitrust violation and the fact of antitrust impact cannot be established through common proof. Proof of "impact" is not only essential to demonstrating defendants' liability under the antitrust laws, it is also the key element in determining whether common issues will predominate.

***Antitrust & Trade Law > Private Actions > Purchasers > Indirect Purchasers***
[HN12] The Vermont Supreme Court, along with the vast majority of other state courts, has declined to adopt the United States Supreme Court's reasoning that to allow indirect purchaser lawsuits would unnecessarily complicate matters given the economic uncertainties and complexities involved in proving pass-on. Thus, courts must be analytically careful when looking at federal antitrust class action cases because they do not involve actions by indirect (consumer) purchasers.

***Antitrust & Trade Law > Private Actions > Injuries & Remedies > General Overview***
***Civil Procedure > Class Actions > Certification***
[HN13] Damages methodologies in antitrust cases have been held sufficient to meet the required threshold and permit class certification if they are not so insubstantial and illusory as to amount to no method at all. Rather than resolve the complexities introduced by dueling economic experts, many courts at the certification stage have held that as long as there is a threshold showing that proof at trial will be sufficiently generalized and common to the class, it is for the jury to determine whether the plaintiffs' expert is correct in his assessment of injury.

***Antitrust & Trade Law > Private Actions > Injuries & Remedies > General Overview***
***Antitrust & Trade Law > Private Actions > Purchasers > Indirect Purchasers***
***Civil Procedure > Class Actions > General Overview***
[HN14] Class damages in an antitrust case may be proved in the aggregate or through generalized evidence. The fact of injury may be shown through generalized evidence, even if some members of the proposed class of indirect purchasers did not pay overcharges because of their individual circumstances, such as individually negotiated prices, varying profit margins, and intense competition.

***Antitrust & Trade Law > Private Actions > Purchasers > Indirect Purchasers***
***Civil Procedure > Class Actions > Certification***
[HN15] It is one thing at the class certification stage to allow certification based on what appear to be logically probative general methodologies, and another thing to prove at trial that a high percentage of indirect purchasers were injured by their purchases of products in an

anticompetitive market.

*Civil Procedure > Class Actions > Prerequisites > General Overview*
*Civil Procedure > Class Actions > Prerequisites > Commonality*

[HN16] As a general rule, if common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Vt. R. Civ. P. 23(b)(3) is satisfied. Further, most courts agree, as a general proposition, that from a manageability perspective, a class action is a superior procedure to handle thousands of class members' small claims when common issues of fact and law predominate and common methods of proving those claims exist.

*Civil Procedure > Class Actions > Prerequisites > General Overview*

[HN17] The guiding principle for Vt. R. Civ. P. 23(b)(3) certification is that the interests of the parties can best be served by settling their differences in one single action.

*Antitrust & Trade Law > Private Actions > Purchasers > Indirect Purchasers*
*Civil Procedure > Class Actions > Prerequisites > General Overview*

[HN18] Indirect purchasers may claim antitrust violations under the Vermont Consumer Fraud Act. Class actions play a significant role in obtaining remedies for small claim holders against defendants who violate antitrust laws. Although trial courts must assure that questions common to the putative class predominate and that a class action would be superior to independent actions, they must not rigidly apply Vt. R. Civ. P. 23 so as to prematurely determine the merits of the case and deny a class of indirect consumers, who as a practical matter cannot obtain relief for alleged antitrust violations in separate proceedings, the opportunity to present their case to a jury. Otherwise, legitimate plaintiffs may be left without a remedy, and defendants may secure unlawful gains without the risk of being sued or prosecuted.

**SUMMARY:**

**Appeal** by plaintiff from denial of motion for class certification in Vermont Consumer Fraud case. Orange Superior Court, *DiMauro*, J., presiding. *Reversed and remanded*.

**HEADNOTES**

VERMONT OFFICIAL REPORTS HEADNOTES

**1. Commerce--Consumer Protection Laws--Practice and Procedure** While recognizing that the United States Supreme Court has barred indirect consumers from claiming antitrust violations under federal law, the Vermont Supreme Court has nonetheless held that a class of indirect purchasers can bring private antitrust cases and recover damages under the Vermont Consumer Fraud Act. *9 V.S.A. § 2461(b)*.

**2. Parties--Class Actions--Prerequisites** Regarding class certification, the basic prerequisites require that (1) the class is numerous enough that joinder of all of its members is impracticable; (2) questions of law or fact are common to the class; (3) the representative parties are making claims and defenses that are typical of the class; and (4) the representative parties will adequately protect the interests of the class. V.R.C.P. 23(a).

**3. Parties--Class Actions--Prerequisites** Beyond the basic prerequisites, class actions are maintainable only if at least one of the more onerous conditions set forth in the rule governing class actions is satisfied. V.R.C.P. 23(b).

**4. Parties--Class Actions--Generally** As a general rule, class actions are of limited and special application and are not to be casually authorized. The superior court has discretion in determining whether to certify a class. To the extent that the Vermont rule mirrors the comparable federal rule, the court looks to federal precedent to aid its interpretation of the Vermont rule. V.R.C.P. 23.

**5. Parties--Class Actions--Prerequisites** While it is not proper to reach the merits of a claim when determining class certification, this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the class action requirements. V.R.C.P. 23.

**6. Parties--Class Actions--Procedure** Intertwined with the scope of review on appeal is the question of how far a trial court should go in testing legal and factual premises at the class certification stage. The court must evaluate a plaintiff's evidence to assure that the criteria of the certification rule have been met, but without turning the

class-certification proceeding into a premature and unwieldy trial on the merits. In short, the difficult task of determining whether to certify a class stems not only from the different legal approaches taken in various courts as to how relaxed the predominance standards may be, but also in no small part from the use of economic experts. V.R.C.P. 23.

**7.        Commerce--Particular        Subjects--Unfair Competition** Typically, a plaintiff presenting an antitrust claim must prove (1) a violation of the antitrust laws, (2) an injury or impact suffered as a result of that violation, and (3) an estimated measure of damages.

**8.    Parties--Class    Actions--Damages** There is a consensus among courts and commentators that the need to determine individualized damages in antitrust cases does not preclude class certification.

**9. Parties--Class Actions--Common Questions of Law or Fact** In antitrust class actions, common issues do not predominate if the fact of antitrust violation and the fact of antitrust impact cannot be established through common proof. Proof of "impact" is not only essential to demonstrating defendants' liability under the antitrust laws, it is also the key element in determining whether common issues will predominate.

**10.        Commerce--Consumer        Protection Laws--Generally** The Vermont Supreme Court, along with the vast majority of other state courts, has declined to adopt the United States Supreme Court's reasoning that to allow indirect purchaser lawsuits would unnecessarily complicate matters given the economic uncertainties and complexities involved in proving pass-on. Thus, courts must be analytically careful when looking at federal antitrust class action cases because they do not involve actions by indirect (consumer) purchasers.

**11.    Parties--Class    Actions--Damages** Damages methodologies in antitrust cases have been held sufficient to meet the required threshold and permit class certification if they are not so insubstantial and illusory as to amount to no method at all. Rather than resolve the complexities introduced by dueling economic experts, many courts at the certification stage have held that as long as there is a threshold showing that proof at trial will be sufficiently generalized and common to the class, it is for the jury to determine whether plaintiffs' expert is correct in his assessment of injury.

**12. Parties--Class Actions--Damages** Class damages may be proved in the aggregate or through generalized evidence. The fact of injury may be shown through generalized evidence, even if some members of the proposed class of indirect purchasers did not pay overcharges because of their individual circumstances, such as individually negotiated prices, varying profit margins, and intense competition.

**13. Parties--Class Actions--Particular Cases** Plaintiff's expert conceded on cross-examination that it was possible in principle for some putative class members to have paid the same price in the monopolized world as they would have paid in the but-for world, and further that it was plausible to assume that the expert's damage equation would show that less than 100 percent of any proved overcharge to direct customers was passed on to end users. Neither of these concessions required the trial court to deny class certification. V.R.C.P. 23.

**14. Parties--Class Actions--Particular Cases** The trial court's analysis went too far both by essentially requiring plaintiff's expert to prove plaintiff's case at the certification stage and by moving from fact of injury to amount of damages, which courts and commentators have uniformly recognized can be proved in class actions on an individualized basis if necessary. Plaintiff's expert proposed to demonstrate through various methodologies and further discovery that direct customers paid monopolistic overcharges and that those overcharges were passed on through the various intermediary distribution channels to the proposed class of end users. The methodologies employed accepted economic theories and were potentially viable. V.R.C.P. 23.

**15.        Commerce--Consumer        Protection Laws--Generally** In an antitrust case, it is one thing at the class certification stage to allow certification based on what appear to be logically probative general methodologies, and another thing to prove at trial that a high percentage of indirect purchasers were injured by their purchases of products in an anticompetitive market.

**16.    Parties--Class    Actions--Particular    Cases** Essentially, the court ruled that (1) there was no feasible plan for identifying class members, given that most end users were not likely to have receipts; and (2) allowing a novel or permissive method for identifying class members created the potential for fraud. These speculative considerations should not have precluded certifying the class before plaintiff had had an

opportunity to propose methods for identifying class members. V.R.C.P. 23.

**17. Parties--Class Actions--Superiority** As a general rule, if common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of the class certification rule is satisfied. Further, most courts agree, as a general proposition, that from a manageability perspective, a class action is a superior procedure to handle thousands of class members' small claims when common issues of fact and law predominate and common methods of proving those claims exist. V.R.C.P. 23(b)(3).

**18. Parties--Class Actions--Superiority** The guiding principle for certification based on superiority to other available methods is that the interests of the parties can best be served by settling their differences in one single action. V.R.C.P. 23(b)(3).

**19. Parties--Class Actions--Generally** Indirect purchasers may claim antitrust violations under the Consumer Fraud Act. Class actions play a significant role in obtaining remedies for small claim holders against defendants who violate antitrust laws. *9 V.S.A. § 2453*; V.R.C.P. 23.

**20. Parties--Class Actions--Procedure** Although trial courts must assure that questions common to the putative class predominate and that a class action would be superior to independent actions, they must not rigidly apply the class certification rule so as to prematurely determine the merits of the case and deny a class of indirect consumers, who as a practical matter cannot obtain relief for alleged antitrust violations in separate proceedings, the opportunity to present their case to a jury. Otherwise, legitimate plaintiffs may be left without a remedy, and defendants may secure unlawful gains without the risk of being sued or prosecuted. *9 V.S.A. § 2453*; V.R.C.P. 23.

**COUNSEL:** *Christine M. Craig* and *D. Michael Noonan* of Shaheen & Gordon, P.A., Dover New Hampshire, and *Jill Abrams* of Abbey Spanier Rodd & Abrams, LLP, New York, New York, for Plaintiff-Appellant.

*Karen McAndrew* of Dinse, Knapp & McAndrew, P.C., Burlington, and *Richard G. Parker, Ian Simmons*, and *Alexander Okuliar* of O'Melveny & Myers LLP, Washington, DC, for Defendant-Appellee.

**JUDGES:** Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

**OPINION BY:** REIBER

**OPINION**

[*P1] **Reiber, C.J.** In this interlocutory appeal, plaintiff challenges the superior court's decision denying his motion for class certification with respect to his lawsuit claiming that defendant Honeywell International, Inc. violated the Vermont *Consumer Fraud Act* (CFA) by engaging in deceptive tactics to create an unlawful monopoly that resulted in overcharges to consumers for the company's round thermostat. We reverse the superior court's decision insofar as plaintiff has made a sufficient showing at this juncture of the proceedings to demonstrate that questions of law and fact common to the class will predominate and that a class action will be a superior method for resolving [**2] the controversy.

[*P2] In late 2004, plaintiff filed a one-count complaint alleging that Honeywell created an unlawful monopoly on round thermostats by engaging in deceptive tactics that violated the CFA, *9 V.S.A. § 2453* (prohibiting unfair or deceptive acts or practices in commerce). The complaint followed a federal court decision denying Honeywell's motion for a preliminary injunction to prevent a competitor from manufacturing and selling a round thermostat. See *Eco Mfg. LLC v. Honeywell Int'l, Inc., 295 F. Supp. 2d 854 (S.D. Ind. 2003), aff'd, 357 F.3d 649 (7th Cir. 2004)*. In determining that Honeywell was unlikely to prevail in its trademark infringement lawsuit against its competitor, the federal district court found that the competitor had come forward with substantial evidence showing that Honeywell made factually false statements in seeking and procuring trademark protection in the mid-1980's for its round thermostat. *Eco Mfg., 295 F. Supp. 2d at 877-78*. Although the federal district court concluded, based on the limited record before it, that the competitor had not yet shown by clear and convincing evidence that Honeywell had obtained its trademark through fraud, it also preliminarily [**3] concluded that Honeywell did not have valid trademark rights and thus would not be able to prevent its competitor from manufacturing and selling a round thermostat. *Id. at 881-82*.

[*P3] Following plaintiff's filing of his 2004 complaint, the matter was removed to federal court on federal question jurisdiction and consolidated with

similar actions against Honeywell from other states. The state actions were then transferred to another federal court, which found an inadequate basis for removal and therefore remanded each action to its respective state court without reaching a decision on pending state law claims. *In re Circular Thermostat*, No. MDL CO5-01673WHA, 2005 WL 2043022, at *1 (N.D. Cal. Aug. 24, 2005). Back in Vermont superior court, plaintiff alleged, among other things, that: (1) Honeywell had a utility patent from 1946 to 1963 and a design patent from 1956 to 1979 based on the round thermostat's functional and safety advantages; (2) in anticipation of the expiration of its design patent, in 1968 Honeywell applied for trademark protection based on the round shape of the thermostat; (3) the trademark application was initially denied because a utilitarian/functional design feature cannot [**4] be trademarked; (4) Honeywell appealed to the Trademark Trial and Appeal Board (TTAB) and lost; (5) Honeywell drove a series of would-be competitors from the market by falsely claiming to hold trademark rights and threatening sham litigation based on that false assertion; (6) Honeywell again applied for trademark protection in 1986; (7) this time Honeywell prevailed on an appeal to the TTAB by falsely alleging that no competitors had produced round thermostats in the past sixteen years even though Honeywell had not had any patent or trademark protection during that period; and (8) Honeywell obtained trademark protection in 1988 by engaging in these unfair and deceptive practices.

[*P4] In addition to alleging violations of the CFA, plaintiff sought to certify a CFA class composed of "[a]ll similarly situated consumer purchasers residing in the State of Vermont (excluding governmental entities, Defendants, and subsidiaries and affiliates of Defendants) who indirectly purchased from the Defendants, for their own use and not for resale, round thermostats between June 30, 1986 and the present." Thus, plaintiff sought to bring an indirect purchaser class action under the CFA.

[*P5] In a May 15, 2008 [**5] decision, the superior court denied Honeywell's motion for summary judgment, in which Honeywell claimed that plaintiff's action was barred by the applicable statute of limitations and that plaintiff would be unable to prove any injury, as required by the CFA. At the same time, the court denied plaintiff's motion for class certification, concluding that (1) plaintiff's expert did not offer a viable methodology to show either class-wide impact resulting from

Honeywell's alleged deceptive conduct or how the conduct affected members of the class differently, and thus plaintiff failed to demonstrate that questions of law or fact common to the proposed class would predominate; and (2) plaintiff failed to present a feasible plan for identifying potential class members, and thus could not demonstrate that the proposed class action was administratively manageable and superior to individual actions.

[*P6] Upon plaintiff's motion, we granted plaintiff permission to file an interlocutory appeal of the superior court's decision denying class certification. On appeal, plaintiff argues that the superior court erred: (1) by not applying the proper standard for determining whether to grant his motion for [**6] class certification; (2) by weighing the evidence and looking beyond the legal adequacy of his proposed methods of proof; (3) by not presuming that overcharges to direct customers of Honeywell were passed onto the indirect consumers that make up the proposed class; (4) by conflating the concepts of fact of damages and proof of damages in determining that common questions of law and fact would not predominate; and (5) by concluding that a class action was not the superior method for resolving the dispute.

[1] [*P7] Before taking up these claims of error, we first examine the applicable law on consumer fraud actions and motions for class certification. [HN1] The CFA, which is to be liberally construed to protect the public and encourage fair and honest competition, *State v. Custom Pools* , 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), prohibits unfair methods of competition or deceptive practices in commerce. 9 V.S.A. § 2453(a). A person who sustains injury or damages as a result of any fraudulent representations or practices prohibited by § 2453 may sue for equitable relief and to recover damages. *Id*. § 2461(b); see also *id*. § 2465(a) (any person sustaining damages or injury from antitrust violation prohibited [**7] by § 2453 may recover "the amount of his or her damages"). In *Elkins v. Microsoft Corp., 174 Vt. 328, 341, 817 A.2d 9, 20 (2002)*, [HN2] while recognizing that the United States Supreme Court had barred indirect consumers from claiming antitrust violations under federal law, *Illinois Brick Co. v. Illinois, 431 U.S. 720, 746, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977)*, we nonetheless held that a class of indirect purchasers could bring private antitrust cases and recover damages under *§ 2461(b)* of the CFA.

2009 VT 123, *P7; 2009 Vt. LEXIS 146, **7

**[2]** [*P8] [HN3] Regarding class certification, the basic prerequisites require that: (1) the class is numerous enough that joinder of all of its members is impracticable; (2) questions of law or fact are common to the class; (3) the representative parties are making claims and defenses that are typical of the class; and (4) the representative parties will adequately protect the interests of the class. V.R.C.P. 23(a). In this case, the superior court concluded that the proposed class satisfied each of these four prerequisites, and Honeywell does not challenge that conclusion.

**[3]** [*P9] [HN4] Beyond these prerequisites, class actions are maintainable only if at least one of the more onerous conditions set forth in Rule 23(b) is satisfied. Neither the parties [**8] nor the superior court identified Rule 23(b)(1) or (2) as a stumbling block to class certification. Hence, as is often the situation in a request for class certification, this case comes down to whether "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." V.R.C.P. 23(b)(3). The rule also lists several factors for the court to consider in determining whether Rule 23(b)(3) is satisfied, including "the difficulties likely to be encountered in the management of a class action." *Id.* V.R.C.P. 23(b)(3)(D).

**[4]** [*P10] [HN5] As a general rule, class actions are of limited and special application and are not to be casually authorized. *Salatino v. Chase*, 2007 VT 81, ¶ 11, *182 Vt. 267, 939 A.2d 482.* The superior court has discretion in determining whether to certify a class. We will affirm the court's denial of a motion for class certification provided that the court applied the correct legal standards, which we review de novo, and did not abuse its discretion in applying those standards. *Id.* ¶ 6; [**9] see also *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 36, *181 Vt. 309, 917 A.2d 508.* To the extent that the Vermont rule mirrors the comparable federal rule, we "look to federal precedent to aid our interpretation of our rule." *Salatino, 182 Vt. 267, 2007 VT 81, ¶ 7, 939 A.2d 482.*

[*P11] On appeal, plaintiff first argues that the superior court erred in ruling on his motion for class certification by applying a rigorous federal standard that is incompatible with *Alger*, in which we stated that "the

certification decision must be made wholly apart from a consideration of the merits of the case using the standards set out under Rule 23(a) & (b)." *181 Vt. 309, 2006 VT 115, ¶ 41, 917 A.2d 508.* According to plaintiff, the "wholly apart" standard adopted in *Alger* is harmonious not only with this Court's policy of liberally construing the remedial CFA, but also with the standard adopted by other state courts that have rejected *Illinois Brick* and allowed indirect purchaser class actions.

[*P12] Plaintiff reads too much into the quoted statement in *Alger. Alger* was not a consumer-fraud action, and the CFA's remedial nature has nothing to do with the standard that trial courts generally apply in considering motions for class certifications. The isolated statement [**10] in *Alger* that plaintiff relies upon is not part of a detailed analysis of the proper standard for considering certification motions, but rather is a cautionary statement reminding the trial court that its task is to examine the Rule 23 criteria rather than weigh the merits of the case. Indeed, courts have recognized that

> **[5]** [HN6] while it is not proper to reach the merits of a claim when determining class certification, "this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements."

*In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 684 (N.D. Ga. 1991) (quoting *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984)); accord *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 695 (S.D. Fla. 1992) (noting that principle cautioning trial court not to consider merits of case in determining whether to certify class "should not be invoked so rigidly so as to artificially limit a trial court's examination of the factors necessary to make a reasoned determination of whether Rule 23 has been satisfied").

[*P13] That [**11] is not to say there is widespread agreement on the extent to which trial courts may delve into the merits of a case in considering the Rule 23 criteria. To the contrary, federal and state courts continue to debate the extent to which an examination of the Rule 23 criteria may immerse a trial court into the merits of a case. More particularly, the debate often

focuses on the extent to which trial courts must test expert methodologies aimed at satisfying the Rule 23 criteria. Cases in the Second Circuit Court of Appeals are illustrative of this debate. In *Caridad v. Metro-North Commuter Railroad, 191 F.3d 283, 293 (2d Cir. 1999)*, the court reversed the denial of class certification and remanded the matter for further consideration of the Rule 23 criteria after concluding that the trial court had improperly weighed the parties' expert evidence and credited defendant's expert evidence over that of the plaintiffs. In a later case in which it upheld class certification, the Second Circuit acknowledged that a trial court must conduct a rigorous analysis of whether the Rule 23 criteria are met, but cautioned that the trial court "may not weigh conflicting expert evidence or engage in 'statistical [**12] dueling' of experts." *In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 135 (2d Cir. 2001)*. According to the *Visa* court, "[t]he question for the district court at the class certification stage is whether plaintiffs' expert evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive." *Id.*; see also *Domestic Air Transp., 137 F.R.D. at 693* (noting that plaintiffs' burden is to present "a likely method for determining class damages," not to prove that the method "will work with certainty at this time").

[*P14] The Second Circuit later backtracked from some of its earlier statements, concluding that a trial court must resolve underlying factual disputes relevant to any of the Rule 23 criteria, even if there is an overlap between a Rule 23 requirement and a merits issue. *In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006)* (*IPO*). The court explicitly disavowed both the "some showing" standard for resolving motions for class certification, as well as the notion "that an expert's testimony may establish a component of a Rule 23 requirement simply by being not fatally [**13] flawed." *Id. at 42*. In the case before us, the superior court stated that it would apply the less intrusive standard set forth in *Caridad* and *Visa* because, in its view, the overlap between the merits issues and the Rule 23 criteria is so slight that it is unnecessary to engage in the factfinding authorized by *IPO*. According to the superior court, the above questions that have bedeviled other courts do not come into play in this case because plaintiff's certification motion depends exclusively on the legal adequacy of his expert's methods of proof.

[6] [*P15] We are not so confident that we can avoid the above-noted quagmire in this case by labeling examination of the experts' dueling opinions as a legal question completely separate from the merits of the case or the resolution of factual disputes. There is little doubt that [HN7] "[i]ntertwined with the scope of our review on appeal is the question of how far a [trial] court should go in testing legal and factual premises at the class certification stage." *In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 17 (1st Cir. 2008)*. The court must evaluate plaintiff's evidence to assure that the Rule 23 criteria have been met, but without [**14] turning the class-certification proceeding into a premature and unwieldy trial on the merits. *Id* . In short, "[t]he difficult task of determining whether to certify a class stems not only from the different legal approaches taken in various courts as to how relaxed the predominance standards may be, but also in no small part from the use of economic experts." *Romero v. Philip Morris Inc., 2005 NMCA 35, ¶ 46, 137 N.M. 229, 109 P.3d 768*.

[*P16] This discussion brings us to plaintiff's second claim of error -- that the superior court erred by weighing his expert evidence and looking beyond the legal adequacy of the methods of proof in denying class certification based on its conclusion that common issues would not predominate. According to plaintiff, despite the court's statement that it need not delve into the merits of the dispute, the superior court effectively required him to prove his case at the class certification stage of the proceedings. In plaintiff's view, the superior court's responsibility at this stage of the litigation was limited to determining whether his evidence would use generalized proof common to the class, thereby demonstrating that issues of law and fact common to the class would predominate. [**15] We agree with plaintiff that the trial court applied too rigorous a standard in denying the class certification.

[7, 8] [*P17] As noted, [HN8] to certify a class, the trial court must find that "the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." V.R.C.P. 23(b)(3). Plaintiff is claiming an antitrust violation under the CFA. [HN9] Typically, a plaintiff presenting an antitrust claim must prove (1) a violation of the antitrust laws (in this case, the CFA), (2) an injury or impact suffered as a result of that violation, and (3) an estimated

measure of damages. *Sullivan v. Nat'l Football League,* *34 F.3d 1091, 1103 (1st Cir. 1994).* It is undisputed that questions common to the class predominate in this case as to whether Honeywell violated the CFA's antitrust provisions by engaging in unfair and deceptive tactics. As for the third element, [HN10] there is a consensus among courts and commentators that the need to determine individualized damages in antitrust cases does not preclude class certification. See *Visa, 280 F.3d at 139* ("Common [**16] issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."); *In re Methionine Antitrust Litig., 204 F.R.D. 161, 163 (N.D. Cal. 2001)* (noting uniformity of courts holding that necessity of individual determinations as to damages "is not a sufficient reason for denying class certification"); *Reit, 144 F.R.D. at 699* ("[T]he courts have held that individualized determinations of damages do not defeat class certification."); *In re Cipro Cases I and II, 121 Cal. App. 4th 402, 17 Cal. Rptr. 3d 1, 6 (Ct. App. 2004)* ("State and federal courts alike have recognized that common issues usually predominate in cases where the defendants are alleged to have engaged in collusive, anticompetitive conduct resulting in artificially high market-wide prices for a product. In such cases, the existence of the conspiracy and its legality generally present common questions of law and fact that predominate over any questions affecting only individual class members."); see also 7AA C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1778, at 124-25 (3d ed. 2005) (noting that in antitrust actions "the courts generally hold that if defendant's activities [**17] present a 'common course of conduct' so that the issue of statutory liability is common to the class, the fact that damages ... may vary for each party does not require that the class action be terminated as being beyond the scope of Rule 23(b)(3)"); 6 A. Conte & H. Newberg, Newberg on Class Actions § 18.27, at 91 (4th ed. 2002) ("A particularly significant aspect of the Rule 23(b)(3) approach is the recognition that individual damage questions do not preclude a Rule 23(b)(3) class action when the issue of liability is common to the class.").

**[9]** [*P18] The second element, then, is the key -- has plaintiff made a sufficient showing that issues of law and fact common to the class will predominate with respect to the fact of impact or injury to the members of the proposed class? See *New Motor Vehicles, 522 F.3d at 20* ([HN11] "In antitrust class actions, common issues do not predominate if the fact of antitrust violation and the

fact of antitrust impact cannot be established through common proof."); *Domestic Air Transp., 137 F.R.D. at 689* ("Proof of 'impact' is not only essential to demonstrating defendants' liability under the antitrust laws, it is also the key element in determining whether common issues [**18] will predominate."). More specifically, the key to this case, as evidenced by the superior court's decision, is whether plaintiff's offer of proof demonstrated that monopolistic overcharges were passed on to, and thus injured, members of the proposed class -- the end users of the product.

[*P19] After recognizing that plaintiff's expert, Dr. Roger Noll, is a thoroughly qualified expert in antitrust economics, the superior court found fatal flaws in the expert's methodology for finding evidence of damages common to the proposed class of indirect consumers. The court acknowledged plaintiff's claims that the expert's methodology would allow him to estimate the initial monopoly overcharge to direct customers and demonstrate that the initial overcharge would be passed on from the direct purchasers to the end users to some degree unless there existed a perfect substitute for the product that did not increase in price. Apparently accepting the first point as potentially provable and focusing on the second point, the court stated that it "is true in the aggregate as a matter of economic theory, but does not necessarily hold in any individual transaction ... [or] any set of transactions which differ [**19] systematically." The court further stated that plaintiff had failed to offer any evidence that (1) direct purchasers -- hardware stores, heating system vendors, and contractors, for example -- "were similarly situated to pass on any monopoly overcharge built into their wholesale costs," or (2) Honeywell exerted "vertical price control" to enforce a set retail pricing through the various intermediary distribution channels. In the court's view, plaintiff's methodology offered nothing more than a "black box, into which go concededly-different monopoly overcharges and out of which is assumed to come the same consumer impact across the class." Hence, the court concluded that it could not "apportion monopoly CFA damages between the direct purchasers and indirect purchasers without very highly individualized questions examining the market circumstances of each intermediary."

[*P20] The superior court noted that plaintiff's expert relied on Honeywell's general guidelines estimating presumed markups by intermediaries in

various distribution channels, and had further assumed that further discovery would uncover the basis for those estimates. But the court rejected the notion that further discovery would [**20] support the expert's methodology, stating that the litigation had begun in 2004 and that plaintiff should have, at the class certification stage, "actual, concrete data from which to confirm or disconfirm whether the assumptions made by the defendant in pricing its goods are at all predictive of actual pass-on of any monopoly overcharge by intermediaries." According to the court, even if it assumed that Honeywell imposed reasonably consistent monopoly prices on direct customers, plaintiff failed to produce any evidence that Honeywell controlled the ultimate retail price or dictated to direct purchasers "what portion of the monopoly overcharge they should bear and what portion they should pass on to indirect purchasers."

[*P21] Ultimately, the superior court determined that plaintiff had not presented a methodology for proving damages common to the class of indirect consumers that could account for the multiple and varied intermediary distribution channels in the thermostat market. Citing uncontroverted evidence suggesting that markups through distribution channels were neither uniform nor dependent on the number of intermediaries, the court concluded that no ascertainable aggregate damage [**21] amount could be justly allocated among the class and between the class and non-class intermediaries.

[*P22] Upon review of the record and relevant case law, we conclude that the superior court demanded too much of plaintiff at this stage of the litigation and that plaintiff provided potentially viable methodologies to demonstrate proof of injury in fact common to the proposed class. As noted, neither the superior court at trial, nor Honeywell on appeal, seriously questioned plaintiff's proposed methodology for demonstrating that Honeywell's allegedly deceptive tactics resulted in monopolistic overcharges to the direct purchasers of its round thermostat. Plaintiff's expert proposed to show that, as the result of Honeywell's monopolistic activities, the company's price/cost margins for round thermostats exceeded the price/cost margins on other types of its thermostats that were subject to competition. To be sure, defendant's expert challenged certain premises underlying this methodology, and the superior court expressed some skepticism as to whether plaintiff could prove the overcharge through this or other suggested

methodologies. For the most part, however, Honeywell conceded, and the superior [**22] court presumed, that plaintiff had proposed at least a potentially viable methodology to estimate monopolistic overcharges to direct customers.

[*P23] Thus, the principal basis for Honeywell's opposition to the proposed class, as well as the superior court's ultimate refusal to certify the class, was plaintiff's proffered methodology for showing proof common to the class that the monopolistic overcharges were passed on from the various intermediary distribution channels to the ultimate end users making up the proposed class. Plaintiff's expert testified that: (1) economic theory assumes under normal circumstances that an increase in price will be passed on to end users, as long as there is no perfect substitute product that did not increase in price and none of the intermediaries are selling at a loss; (2) the magnitude of the pass-through depends on production technologies, costs, and the state of competition among downstream industries, which in principle could lead to differences in the damages suffered by end users depending on the distribution channel from which they acquired the product; (3) the standard approach to accommodate this possibility is to undertake a statistical analysis [**23] of the relationship between the prices charged to end users and the distribution channels through which the product was acquired; and (4) this method should produce valid estimates of damages absent price discrimination. The expert further testified that such an analysis might not be necessary in this case because Honeywell's own documents estimated the markups through each distribution channel and demonstrated that its pricing to direct customers was designed so that all end users would pay similar prices over all distribution channels. The expert stated that once the basis for Honeywell's markup estimates could be confirmed through further discovery, one could determine the damages to end users through those estimates.

[*P24] As discussed above, the superior court determined that these methodologies were far too simplistic to account for the multiple and diverse distribution channels in the thermostat industry. The superior court also noted that, notwithstanding Honeywell's goal of having all end users pay roughly the same price for its product, the evidence demonstrated that, in fact, end users paid widely varying prices for round thermostats both among and within each of the

multiple [**24] distribution channels. Plaintiff argues, however, that focusing on the differences in prices paid by end users is a red herring insofar as the methodology proposed by his expert uses cost/price margins, rather than prices, in estimating damages. According to plaintiff, once the estimate of overcharge to direct customers is computed, the overcharge to end users can be computed, not by comparing prices, but by comparing price/cost margins through the various distribution channels. Cf. *In re Commercial Tissue Prods.*, 183 F.R.D. 589, 595 (N.D. Fla. 1998) ("[M]any cases have held that even if there is considerable individual variety in pricing because of individual price negotiations, class plaintiffs may succeed in proving classwide impact by showing that the minimum baseline for beginning negotiations, or the range of prices which resulted from negotiation, was artificially raised (or slowed in its descent) by the collusive actions of the defendants."); *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*, 191 Cal. App. 3d 1341, 235 Cal. Rptr. 228, 235-36 (Ct. App. 1987) ("[C]ourts have assumed consumers were injured when they purchased products in an anti-competitive market, even though the price and terms of the [**25] sale for the price-fixed product are individually negotiated.").

[10] [*P25] In examining the difficult question of whether the superior court expected too much from plaintiff at this stage of the litigation and effectively ruled on the merits of his proposed methodology for demonstrating proof of injury common to the class, we must keep in mind that [HN12] this Court, along with the vast majority of other state courts, has declined to adopt the United States Supreme Court's "reasoning that to allow indirect purchaser lawsuits would unnecessarily complicate matters given 'the economic uncertainties and complexities involved in proving pass-on.'" *Romero, 2005-NMCA-035, ¶ 4* (quoting *Illinois Brick, 431 U.S. at 726 n.3*, which held that indirect purchasers had no standing to sue manufacturers under federal antitrust law for overcharges allegedly passed on to them); see *Elkins, 174 Vt. at 341, 817 A.2d at 20* (allowing indirect consumer to claim antitrust violations under the CFA); K. O'Connor, *Is the Illinois Brick Wall Crumbling?*, 15 Antitrust 34, at 34-35, nn.3-4 (2001) (listing thirty-six states that provide for some right of action on behalf of some or all indirect purchasers). Thus, as the *Romero* court [**26] stated, "we must be analytically careful when looking at federal antitrust class action cases because they do not involve actions by indirect (consumer) purchasers." *2005-NMCA-035, ¶ 35*; cf.

*Execu-Tech Bus. Sys., Inc. v. Appleton Papers Inc.*, 743 So. 2d 19, 22 (Fla. Dist. Ct. App. 1999) (declining to presume pass-through of overcharges "in indirect purchaser cases due to the evidentiary complexities and uncertainties noted in *Illinois Brick*").

[11] [*P26] With that in mind, and based on the record before us, we conclude that plaintiff has presented "common, generalized, logically probative methodologies to prove antitrust injury to class members, methodologies that are at the very least superficially acceptable to meet the predominance threshold." *Romero, 2005-NMCA-035, ¶ 90* (granting class certification to indirect purchasers of cigarettes). [HN13] Damages methodologies in antitrust cases "have been held sufficient to meet the required threshold and permit class certification if they are 'not so insubstantial and illusory as to amount to no method at all.'" *Id. P44* (quoting *In re Potash Antitrust Litig., 159 F.R.D. 682, 697 (D. Minn. 1995)*). Rather than resolve the complexities introduced by dueling economic [**27] experts, many courts at the certification stage have held that, as long as there is a threshold showing that proof at trial will be sufficiently generalized and common to the class, "it is for the jury to determine whether Plaintiffs' expert is correct in his assessment of injury." *Romero, 2005-NMCA-035, ¶ 48*; accord *Visa, 280 F.3d at 135* (stating that trial court "must ensure that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law," and emphasizing that trial court's role at certification stage is not to weigh dueling expert testimony to determine whether it "will ultimately be persuasive," but rather to examine whether plaintiffs' expert evidence is sufficient to show common questions of fact); *Domestic Air Transp., 137 F.R.D. at 693* (stating that trial court's role is not to resolve whether methods of plaintiff's expert "will work with certainty," but rather to rule whether plaintiffs met their burden of presenting "a likely method for determining class damages"); see also *Cipro, 17 Cal. Rptr. 3d at 7* ("The class certification stage is not the proper forum in which to resolve such a dispute between experts.").

[12, 13] [*P27] It is well settled that [**28] [HN14] "class damages may be proven in the aggregate," or through generalized evidence. *Romero, 2005-NMCA-035, ¶ 64* (citing courts and commentators); accord 3 Conte & Newberg, *supra*, § 10:2, at 477-79 (discussing general applicability of aggregate class damages); see also *In re Relafen Antitrust Litig., 221 F.R.D. 260, 276 (D. Mass. 2004)* (citing several courts

that found or presumed class-wide injury based on generalized evidence). Honeywell does not appear to seriously dispute that some monopolistic overcharge, assuming its existence, was likely to have been passed on in many -- if not most -- cases through the various distribution channels. Rather, the company points to testimony in which plaintiff's expert conceded on cross-examination that it was possible in principle for some putative class members to have paid the same price in the monopolized world as they would have paid in the but-for world, and further that it was plausible to assume that the expert's damage equation would show that less than 100% of any proven overcharge to direct customers was passed on to end users. Neither of these concessions required the superior court to deny class certification. Cf. *B.W.I. Custom Kitchen, 235 Cal. Rptr. at 236* [**29] ("Even if it were shown that certain class members escaped having to pay any of the overcharge due to their superior market positions, the fact remains that in the vast majority of cases at least a portion of the illegal overcharge was passed on by the independent distributors to class members in the form of higher prices."); *Romero, 2005-NMCA-035, ¶ 13* (in upholding certification of class, court relied in part on expert's estimate that ninety percent of retail prices of cigarette brands moved with manufacturers' prices). Fact of injury may be shown through generalized evidence, even if some members of the proposed class of indirect purchasers did not pay overcharges because of their individual circumstances, such as "individually negotiated prices, varying profit margins, and intense competition." *Cipro, 17 Cal. Rptr. 3d at 8.* *

---

\* The cases that Honeywell and the superior court rely on in support of the notion that the multiple and varied intermediaries in this case make it too complex to come up with a methodology capable of determining whether overcharges were passed on to end users are distinguishable. For the most part, those cases involve situations in which the proposed [**30] class was made up of both end users and intermediaries and/or the product involved, unlike the thermostats in this case, was incorporated into various other products that proceeded through diverse distribution channels. E.g., *Methionine, 204 F.R.D. at 165-66* (finding issues common to class did not predominate where proffered methodology proposed single pass-through rate of overcharges for all direct and indirect resellers

making up class and where liquid product was added to other products sold through various distribution channels, but noting that if product had remained largely unchanged in form from manufacturer to indirect purchaser, assessing whether manufacturer's overcharges were passed on would be less difficult); see also *Cipro, 17 Cal. Rptr. 3d at 10* (distinguishing *Global Minerals & Metals Corp. v. Superior Court, 113 Cal. App. 4th 836, 7 Cal. Rptr. 3d 28 (Ct. App. 2003)* and *J.P. Morgan & Co., Inc. v. Superior Court, 113 Cal. App. 4th 195, 6 Cal. Rptr. 3d 214 (Ct. App. 2003)*, insofar as those cases involved a product that "was substantially altered or added to by a middleman, thereby obscuring the effects of any price-fixing").

**[14]** **[\*P28]** In sum, the superior court's analysis went too far both by essentially requiring plaintiff's [**31] expert to prove plaintiff's case at the certification stage and by moving from fact of injury to amount of damages, which courts and commentators have uniformly recognized can be proved in class actions on an individualized basis if necessary. Plaintiff's expert proposes to demonstrate through various methodologies and further discovery that direct customers paid monopolistic overcharges and that those overcharges were passed on through the various intermediary distribution channels to the proposed class of end users. The methodologies employ accepted economic theories and are potentially viable. Plaintiff still has, of course, the formidable task of convincing a jury that his theories demonstrate the existence in fact of overcharges in this case and that it is reasonable to assume that those overcharges were passed on to consumers. The jury may not assume an antitrust impact to end users merely from the existence of a proven conspiracy or some impact to direct customers, but may, based on plaintiff's proposed methodologies, conclude that it is reasonable to assume the pass-through of monopolistic overcharges to end users. Ultimately, it is the jury's responsibility to determine whether [**32] plaintiff may prevail based on his proposed methodologies.

**[\*P29]** We caution, as did the court in *Romero*, that

> **[15]** [HN15] it is one thing at the class certification stage to allow certification based on what appear to be logically probative general methodologies, and

another thing to prove at trial that a high percentage of indirect purchasers were injured by their purchases of products in an anti-competitive market. Once past certification, Defendants will still be permitted to attack Plaintiffs' methodologies at trial as to scientific reliability and as to sufficiency of proof of antitrust injury.

*2005-NMCA-035, ¶ 93*. Moreover, our decision today does not prevent the superior court from decertifying the class at a later time -- for example, following the completion of discovery, if the court concludes that no reasonable jury could possibly determine that monopolistic overcharges passed through to end users. Nor does our decision preclude the court from certifying sub-classes to account for the various distribution channels.

**[16, 17]** [*P30] Before concluding, we must address the superior court's further determination that a class action would not be "superior to other available methods for the fair and efficient adjudication [**33] of the controversy." V.R.C.P. 23(b)(3). Essentially, the court ruled that: (1) there is no feasible plan for identifying class members, given that most end users are not likely to have receipts; and (2) allowing a novel or permissive method for identifying class members creates the potential for fraud. These speculative considerations should not preclude certifying the class before plaintiff has had an opportunity to propose methods for identifying class members. [HN16] As a general rule, "if common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." 7AA C. Wright, A. Miller & M. Kane, *supra*, § 1781, at 254-55. Further, most courts agree, "as a general proposition, that from a manageability perspective, a

class action is a superior procedure to handle thousands of class members' small claims when common issues of fact and law predominate and common methods of proving those claims exist." *Romero, 2005-NMCA-035, ¶ 52*; see also *Visa, 280 F.3d at 140* (stating that failure to certify class solely on grounds of unmanageability is disfavored and should be exception rather than rule); *Domestic Air Transp., 137 F.R.D. at 693-94* [**34] (stating that class action is only fair method for adjudicating small claims of many class members). Nothing in the record at this point indicates that it would be impossible for plaintiff to identify class members or that the court would be unable to supervise the legitimacy of class members.

**[18-20]** [*P31] [HN17] "The guiding principle for [Rule 23](b)(3) certification is that the interests of the parties can best be served by settling their differences in one single action." *Commercial Tissue Prods., 183 F.R.D. at 595*. This Court has held that [HN18] indirect purchasers may claim antitrust violations under the CFA. "[C]lass actions play a significant role in obtaining remedies for small claim holders against defendants who violate antitrust laws." *Romero, 2005-NMCA-035, ¶ 36*. Although trial courts must assure that questions common to the putative class predominate and that a class action would be superior to independent actions, they must not rigidly apply Rule 23 so as to prematurely determine the merits of the case and deny a class of indirect consumers, who as a practical matter cannot obtain relief for alleged antitrust violations in separate proceedings, the opportunity to present their case to a jury. [**35] Otherwise, legitimate plaintiffs may be left without a remedy, and defendants may secure unlawful gains without the risk of being sued or prosecuted. In this case, we conclude that the superior court erred by not certifying the proposed class.

*Reversed and remanded*.