1  Bruce L. Simon (Bar No. 96241)
      bsimon@pswplaw.com
2  PEARSON, SIMON, WARSHAW & PENNY, LLP
   44 Montgomery Street, Suite 2450
3  San Francisco, CA 94104
   Telephone: (415) 433-9000
4  Facsimile: (415) 433-9008

5  Richard M. Heimann (Bar No. 63607)
      rheimann@lchb.com
6  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 30th Floor
7  San Francisco, CA 94111
   Telephone: (415) 956-1000
8  Facsimile: (415) 956-1008

9  *Interim Co-Lead Counsel for the Direct Purchaser
   Plaintiffs*

10

11              **UNITED STATES DISTRICT COURT**

12      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

13

| 14 | IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. M07-1827 SI |
|---|---|---|
| 15 | | MDL No. 1827 |
| 16 | This Document Relates to: | **DIRECT PURCHASER PLAINTIFFS'** |
| 17 | ALL DIRECT PURCHASER ACTIONS | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF** |
| 18 | | **CLASS SETTLEMENT WITH DEFENDANT CHUNGHWA PICTURE** |
| 19 | | **TUBES, LTD.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 20 | | |
| 21 | | Date: February 5, 2010 Time: 9:00 a.m. Ctrm: 10, 19th Floor |
| 22 | | |
| 23 | | The Honorable Susan Illston |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

    I.     INTRODUCTION ..................................................................................... 2

    II.    PROCEDURAL HISTORY ....................................................................... 3

    III.   TERMS OF THE SETTLEMENT ............................................................ 4

          A.    Proposed Class Definition .......................................................... 4

          B.    Consideration ............................................................................. 4

          C.    Release ....................................................................................... 5

    IV.   LEGAL ARGUMENT ............................................................................... 5

          A.    Class Action Settlement Procedure ............................................ 5

          B.    Standards For Settlement Approval ............................................ 6

          C.    The Proposed Settlement Is Within The Range Of Reasonableness .......... 7

          D.    The Proposed Settlement Class Satisfies Rule 23(a) ................. 8

               1.    The Class Is So Numerous that Joinder Is Impracticable ............... 9

               2.    The Case Involves Questions of Law and Fact Common to the Class ....... 9

               3.    Plaintiffs' Claims Are Typical of the Claims of the Class ............ 11

               4.    Plaintiffs Will Fairly and Adequately Represent the Interests of the Class ........ 12

          E.    The Proposed Settlement Class Satisfies Rule 23(b)(3) ............ 13

                1.    Common Questions of Law and Fact Predominate Over Individual Questions ....... 13

               2.    Class Adjudication is the Superior Method of Adjudicating this Case ....... 15

          F.    Interim Co-Lead Counsel Should be Appointed As Settlement Class Counsel ....... 15

    V.    PROPOSED PLAN OF NOTICE ............................................................ 16

    VI.   PROPOSED PLAN OF ALLOCATION .................................................. 18

    VII.  ATTORNEYS' FEES AND COSTS ....................................................... 18

    VIII. THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE ....... 19

    IX.   CONCLUSION ....................................................................................... 19

**CASES**

*Amchem Prods. Inc. v. Windsor,*
　521 U.S. 591 (1997) ..................................................................................... 8, 9, 13, 16

*Armstrong v. Davis,*
　275 F.3d 849 (9th Cir. 2001) ............................................................................... 11

*Blackie v. Barrack,*
　524 F.2d 891 (9th Cir. 1975) ............................................................................... 10

*Breeden v. Benchmark Lending Group, Inc.,*
　229 F.R.D. 623 (N.D. Cal. 2005) ........................................................................... 9

*Churchill Village, LLC v. General Elec.,*
　361 F.3d 566 (9th Cir. 2004) ................................................................................. 6

*Class Plaintiffs v. City of Seattle,*
　955 F.2d 1268 (9th Cir. 1992) ............................................................................ 6, 7

*Haley v. Medtronic, Inc.,*
　169 F.R.D. 643 (C.D. Cal. 1996) ........................................................................... 9

*Hanlon v. Chrysler Corp.,*
　150 F.3d 1011 (9th Cir. 1988) ......................................................................... 7, 9, 11

*Harris v. Palm Springs Alpine Estates, Inc.,*
　329 F.2d 909 (9th Cir. 1964) ................................................................................. 9

*In re Airline Ticket Comm'n Antitrust Litig.,*
　953 F. Supp. 280 (D. Minn. 1997) ....................................................................... 18

*In re Brand Name Prescription Drugs Antitrust Litig.,*
　Case No. 94 C 897, 1994 WL 663590 (N.D. Ill. Nov. 18, 1994) ........................... 15

*In re Bulk (Extruded) Graphite Prods. Antitrust Litig.,*
　Case No. Civ. 02-6030 (WHW), 2006 WL 891362 (D.N.J. April 4, 2006) .............. 11

*In re Cal. Micro Devices Sec. Litig.,*
　965 F. Supp. 1327 (N.D. Cal. 1997) ...................................................................... 18

*In re Catfish Antitrust Litig.,*
　826 F. Supp. 1019 (N.D. Miss. 1993) .................................................................... 11

*In re Citric Acid Antitrust Litig.,*
　145 F. Supp. 2d 1152 (N.D. Cal. 2001) ................................................................. 18

*In re Citric Acid Antitrust Litig.,*
　Case No. 95-1092, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) .............................. 11

Page

*In re Corrugated Container Antitrust Litig*.,
80 F.R.D. 244, (S.D. Tex. 1978) ... 14

*In re Corrugated Container Antitrust Litig*.,
Case No. M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ... 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
Case No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ... 10, 11, 17

*In re Flat Glass Antitrust Litig*.,
191 F.R.D. 472 (W.D. Pa. 1999) ... 10

*In re Linerboard Antitrust Litig*.,
321 F. Supp. 2d 619 (E.D. Pa. 2004) ... 8

*In re Master Key Antitrust Litig*.,
528 F.2d 5 (2d Cir. 1975) ... 14

*In re Mid-Atlantic Toyota Antitrust Litig*.,
564 F. Supp. 1379 (D. Md. 1983) ... 8

*In re NASDAQ Market Makers Antitrust Litigation*,
176 F.R.D. 99 (S.D.N.Y. 1997) ... 6

*In re Oracle Sec. Litig*.,
1994 WL 502054 (N.D. Cal. June 18, 1994) ... 18

*In re Pacific Enter. Sec. Litig*.,
47 F.3d 373 (9th Cir. 1995) ... 6

*In re Plastic Tableware Antitrust Litig*.,
Case No. 94-CV-3564, 1995 WL 723175 (E.D. Pa. Oct. 25, 1995) ... 8

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
Case No. 3:03-MDL-1556, 2007 WL 4140666 (M.D. Pa. Nov. 19, 2007) ... 11

*In re Rubber Chem. Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) ... 11, 13

*In re Static Random Access Memory* (*SRAM) Antitrust Litig*.,
Case No. C 07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ... 14, 15

*In re Sugar Industry Antitrust Litig*.,
MDL Dkt No. 201, 1976 WL 1374 (N.D. Cal. May 21, 1976) ... 13

*In re Tableware Antitrust Litig*.,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ... 17

*In re Warfarin Sodium Antitrust Litig*.,
391 F.3d 516 (3d Cir. 2004) ... 13

*In re: TFT-LCD (Flat Panel) Antitrust Litigation,*
618 F. Supp. 2d 1194 (N.D. Cal. 2009) ................................................................ 2

*Lerwill v. Inflight Motion Pictures, Inc.,*
582 F.2d 507 (9th Cir. 1978).............................................................................. 12

*Mendoza v. United States,*
623 F.2d 1338 (9th Cir. 1980) ............................................................................ 17

*Newby v. Enron Corp.,*
394 F.3d 296 (5th Cir. 2004) .............................................................................. 18

*Officers for Justice v. Civil Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv.*
*Comm'n,* 459 U.S. 1217 (1983) ............................................................................. 6

*Reiter v. Sonotome Corp.,*
442 U.S. 330 (1979) ........................................................................................... 14

*Slaven v. BP America, Inc.,*
190 F.R.D. 649 (C.D. Cal. 2000) ......................................................................... 9

*Valentino v. Carter-Wallace, Inc.,*
97 F.3d 1227 (9th Cir. 1996)............................................................................... 15

*Van Bronkhorst v. Safeco Corp.,*
529 F.2d 943 (9th Cir. 1976) ................................................................................ 6

*Zenith Radio Corp. v. Hazeltine Research Inc.,*
395 U.S. 100 (1969) ........................................................................................... 14

**STATUTES**

Sherman Act
Section 1 ............................................................................................................ 10

**RULES**

Federal Rules of Civil Procedure
Rule 23 ....................................................................................................... passim
Rule 23(a) ............................................................................................... 9, 12, 13
Rule 23(a)(1) ......................................................................................................... 9
Rule 23(a)(2) ......................................................................................................... 9
Rule 23(a)(3) ....................................................................................................... 11
Rule 23(b)(3) .............................................................................................. 9, 13, 15
Rule 23(c)(1)(B) .................................................................................................. 15
Rule 23(c)(2)(B) ............................................................................................ 16, 17
Rule 23(e)........................................................................................................... 5, 6
Rule 23(e)(1) ....................................................................................................... 16
Rule 23(g) ........................................................................................................... 16

Rule 23(g)(1)(A) ................................................................................................... 16


**TREATISES**

4 *Newberg on Class Actions*
  § 8.32 ............................................................................................................... 16
  §§ 11.22, *et seq.* (4th ed. 2002) ....................................................................... 5
  § 11.25 ............................................................................................................... 7
  § 11.41 (4th ed. 2002) ....................................................................................... 7
  § 11:53 ............................................................................................................ 16

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and
  Procedure: Civil Procedure*
  § 1781 (3d ed. 2004) ....................................................................................... 15

*Manual for Complex Litigation (Fourth)*
  § 21.62 ............................................................................................................... 7
  § 21.632 (2004) ............................................................................................. 7, 8
  § 21.651 ............................................................................................................ 18

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 5, 2010, at 9:00 a.m., in the Courtroom of the Honorable Susan Illston, United States District Judge for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, California, the direct purchaser plaintiffs will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1.      Certifying a settlement class;

2.      Appointing plaintiffs' counsel as Class Counsel;

3.      Appointing the named plaintiffs as  Class Representatives;

4.      Preliminarily approving the partial class action settlement;

5.      Directing distribution of notice of the settlement to the class and providing class members with the opportunity to opt out of or object to the settlement; and

6.      Setting a schedule for the final settlement approval process.

The grounds for this motion are that the proposed class settlement is fair, reasonable, and adequate, and that the proposed class satisfies the certification requirements for a settlement class. This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declaration of Eric B. Fastiff, the LCD Direct-Purchaser Class Settlement Agreement, any papers filed in reply, the argument of counsel, and all papers and records on file in this matter.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, direct purchaser plaintiffs ("plaintiffs") hereby move this Court for an order preliminarily approving a class settlement reached with defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa"). Under the settlement, Chunghwa will cooperate with plaintiffs and pay $10 million in exchange for a release of the class members' claims. According to Chunghwa's documents and representations made during settlement discussions, this amount represents 200% of Chunghwa's sales of TFT-LCDs that were billed to customers located in the United States during the class period. Additionally, Chunghwa's sales remain in the case for purposes of computing plaintiffs' treble damages claim against the non-settling defendants.

Equally important is Chunghwa's agreement to cooperate with plaintiffs in the prosecution of this action by providing information relating to the existence, scope, and implementation of the conspiracy. Chunghwa's cooperation has proven useful, as cooperation from the amnesty defendant, pursuant to ACPERA, has not been forthcoming. *See In re: TFT-LCD (Flat Panel) Antitrust Litigation*, 618 F. Supp. 2d 1194, 1195 (N.D. Cal. 2009) (noting that the amnesty applicant has not provided any cooperation, or even revealed its identity).

The question at the preliminary approval stage is not whether the settlement is fair, reasonable and adequate. Rather, the question is whether the settlement is within the range of possible approval to justify sending and publishing notice of the settlement to class members and scheduling final approval proceedings. The settlement here was reached after extensive arm's-length negotiations between experienced and informed counsel, and easily meets the standards for preliminary approval. Accordingly, plaintiffs seek an order: (1) granting preliminary approval of the class settlement with defendant Chunghwa; and (2) certifying a class for settlement purposes.

Lastly, plaintiffs anticipate making an interim request of up to $2 million for reimbursement of certain litigation costs, and a stipend for future costs, from the Chunghwa settlement. Plaintiffs also reserve the right to request an interim fee award at such time the notice is sent to class members.

## II.    PROCEDURAL HISTORY

This multidistrict litigation arises from a conspiracy to fix the prices of Thin Film Transistor-Liquid Crystal Display ("TFT-LCD") products.  *See* Declaration of Eric B. Fastiff in Support of Motion for Preliminary Approval of Class Settlement with Defendant Chunghwa Picture Tubes, Ltd. ("Fastiff Decl."), ¶ 2.  The first cases were filed in December 2006.  *Id.*  The Judicial Panel on Multidistrict Litigation transferred this proceeding to this Court in April 2007.

Plaintiffs' counsel commenced settlement negotiations with Chunghwa's counsel in May 2008.  *Id.*, ¶ 5.  These negotiations consisted of multiple telephonic and face-to-face conferences conducted on an arm's-length and non-collusive basis among counsel who are experienced in antitrust law and class actions.[1]  *Id.*  On October 16, 2008, plaintiffs and Chunghwa reached agreement on the principal terms of settlement, which were memorialized in a letter.  *Id.*  The terms of the settlement were vigorously negotiated.  *Id.*  Pursuant to the agreement, Chunghwa's counsel provided plaintiffs' counsel with an oral proffer of how the TFT-LCD conspiracy operated.  *Id.*  Plaintiffs and Chunghwa formalized their settlement agreement on February 12, 2009 by signing the LCD Direct-Purchaser Class Settlement Agreement (the "Agreement") (attached to the Fastiff Decl. as Exhibit A).

While the other defendants' motions to dismiss were litigated, plaintiffs propounded and responded to written discovery.  Plaintiffs also met and conferred with each defendant about discovery issues, litigated discovery motions, and successfully opposed a writ petition filed in the Ninth Circuit Court of Appeals by the Toshiba defendants.  Plaintiffs also obtained information and documents from third-party sources and consulted with experts.

On January 9, 2009, upon the expiration of a limited stay of discovery sought by the Department of Justice, defendants began producing documents to plaintiffs, which defendants had produced to the grand jury.  *Id.*, ¶ 3.  To date, plaintiffs have received more than 4 million documents, totaling over 21 million pages from defendants, which they have loaded onto an

---

[1] Gary Spratling and Joel Sanders of Gibson, Dunn & Crutcher LLP represent Chunghwa in this action.  Fastiff Decl., ¶ 5.

electronic database. *Id.* A team of plaintiffs' counsel have reviewed and continue to review these documents, both for issues related to class certification and defendants' liability. *Id.* In addition, plaintiffs' counsel have deposed defendants' corporate designees on class certification topics. *Id.* All of the named plaintiffs have given deposition testimony as well. *See id.*, ¶ 4. On September 17, 2009, plaintiffs commenced merits depositions.

Plaintiffs filed their motion for class certification on April 3, 2009. Plaintiffs' motion for class certification is under submission.

## III.    TERMS OF THE SETTLEMENT

### A.    Proposed Class Definition

The proposed settlement class is:

> All persons and entities who, between January 1, 1996 and December 11, 2006, directly purchased a TFT-LCD Product in the United States from any defendant or any subsidiary or affiliate thereof, or any co-conspirator listed in the Notice. Excluded from the Class are defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

The Agreement defines "TFT-LCD products" to mean TFT-LCD panels and products containing TFT-LCD panels. Agreement, ¶ 2.

### B.    Consideration

The terms of the proposed class settlement are set forth fully in the Agreement. Chunghwa has agreed to pay $10 million in exchange for its dismissal with prejudice and a release of claims. Agreement, ¶ 16. This money has already been deposited into an escrow account and is earning interest for the benefit of class members. Fastiff Decl., ¶ 10. Importantly, the Agreement requires Chunghwa to continue to assist plaintiffs in the prosecution of their case against the remaining defendants. Agreement, ¶ 24. Chunghwa has already completed its production of documents in response to plaintiffs' written requests, including conspiracy and transactional documents. Chunghwa has also agreed to make its employees, including those currently incarcerated, available for depositions and trial. *Id.*

**C.**     **Release**

Upon final approval of the settlement, plaintiffs and class members will release all claims they have against Chunghwa "concerning the manufacture, supply, distribution, sale or pricing of TFT-LCD products up to the date of execution" of the Agreement.  *Id*., ¶ 13.  However, the release does not include claims  arising from the sale of finished TFT-LCD products by other defendants, or their co-conspirators, which contain Chunghwa's TFT-LCD panels.  *Id*., ¶ 13.  Further, the release does not include claims for product defect, personal injury, or breach of contract.  *Id*., ¶¶ 13, 15.

**IV.     LEGAL ARGUMENT**

**A.**     **Class Action Settlement Procedure**

A class action may not be dismissed, compromised, or settled without the approval of the Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for approval of class action settlements.  The Rule 23(e) settlement approval procedure describes three distinct steps:

1.     Certification of a settlement class and preliminary approval of the proposed settlement;

2.     Dissemination of notice of the settlement to all affected class members; and

3.     A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* 4 *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*") (describing class action settlement procedure).

By way of this motion, the parties request that the Court take the first step in the settlement approval process and certify a settlement class and preliminarily approve the proposed Settlement.  Plaintiffs further request that the Court appoint Interim Plaintiffs' Co-Lead Counsel as Class Counsel and the named plaintiffs as Class Representatives.

## B. Standards For Settlement Approval

Rule 23(e) requires court approval of any settlement of claims brought on a class basis. "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it is within "the range of reasonableness," and thus whether notice to the Class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Market Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Application of these factors here support an order granting the motion for preliminary approval.

The approval of a proposed settlement of a class action is a matter of discretion for the trial court. *Churchill Village, L.L.C.*, 361 F.3d at 575. In exercising that discretion, however, courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983). Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement,

taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (quotations omitted).

To grant preliminary approval of this class action settlement, the Court need only find that the settlement falls within "the range of reasonableness." *Newberg* § 11.25. The *Manual for Complex Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632. The *Manual* summarizes the preliminary approval criteria as follows:

> Fairness calls for a comparative analysis of the treatment of the class members vis-à-vis each other and vis-à-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted to what class members might have obtained without using the class action process.

*Manual* § 21.62. A proposed Settlement may be finally approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276. While consideration of the requirements for *final* approval is unnecessary at this stage, all of the relevant factors weigh in favor of the Settlement proposed here.[2] As shown below, the proposed Settlement is fair, reasonable and adequate. Therefore, the Court should allow notice of it to be disseminated to the Class.

**C.    The Proposed Settlement Is Within The Range Of Reasonableness**

Plaintiffs' proposed settlement with Chunghwa meets the standards for preliminary approval. First, this settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel. *Newberg* § 11.41. Second, the consideration agreed to—a $10 million cash payment that is already earning interest—is substantial, particularly in light of the volume of Chunghwa's sales in the United States. Unlike

---

[2] Plaintiffs will address in detail each of the factors required for final settlement approval in their Motion for Final Approval of the Settlement, to be submitted following the issuance of Notice to the Class.

some of the other defendants in this case, Chunghwa is not a vertically integrated single-entity, and does not sell finished products itself directly in the United States. The $10 million payment represents approximately 200% of Chunghwa's sales to class members during the Class Period. Fastiff Decl., ¶ 6. This recovery compares favorably to settlements approved in other price-fixing cases. *See, e.g., In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (granting final approval to settlement where recovery was 1.62% of sales); *In re Plastic Tableware Antitrust Litig.*, Case No. 94-CV-3564, 1995 WL 723175, at *1 (E.D. Pa. Oct. 25, 1995) (granting final approval to settlement where recovery was 3.5% of sales). Third, because the non-settling defendants remain jointly and severally liable for all damages caused by the conspiracy, including damages from Chunghwa's sales, this settlement does not reduce the total amount of damages recoverable from the non-settling defendants in this litigation. *See In re Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981).

Fourth, the settlement calls for Chunghwa to cooperate with plaintiffs in the prosecution of this case. This is a valuable benefit because it will save time, reduce costs, and provide access to information and documents regarding the TFT-LCD conspiracy that might otherwise not be available to plaintiffs. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to consider in approving a settlement"). No other defendant has provided a detailed oral proffer as Chunghwa did. For all the aforementioned reasons, the proposed settlement is fair, reasonable, and adequate.

### D. The Proposed Settlement Class Satisfies Rule 23(a)

Before granting preliminary approval of a settlement, the Court must determine that the proposed settlement presents a proper class for settlement purposes. *See Manual* § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class. All criteria for certification of a class for litigation purposes, except manageability, apply to

certification for settlement purposes. *Amchem Prods.*, 521 U.S. at 620. Courts routinely and properly certify classes for settlement purposes only. *Id*. at 619-29.

Certification is appropriate where the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. In addition, certification of a class action for damages requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed settlement here satisfies each of these criteria.

### 1. The Class Is So Numerous that Joinder Is Impracticable

The first requirement for maintaining a class action under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23 does not require that class actions involve any specific number of putative class members. Here, defendants' customer lists show there are thousands of persons and entities that purchased TFT-LCD products from defendants, their affiliates, and co-conspirators. These thousands of class members are geographically dispersed across the country making joinder impractical. Therefore, numerosity in this case is easily established. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964); *Breeden v. Benchmark Lending Group, Inc*., 229 F.R.D. 623 (N.D. Cal. 2005) (certifying class with 236 members).

### 2. The Case Involves Questions of Law and Fact Common to the Class

The second prerequisite to class certification is the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has made it clear that the commonality requirement is to be "construed permissively." *Hanlon*, 150 F.3d at 1019. Courts have held that a single common issue of law or fact is sufficient to satisfy the commonality requirement. *Slaven v. BP America, Inc.,* 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996). Commonality can be established by showing "that the class is united by a common interest." *Blackie v. Barrack*, 524 F.2d 891, 901

(9th Cir. 1975). "Slight differences in class members' positions" will not defeat commonality. *Blackie*, 524 F.2d. at 902.

Here, all class members share numerous common questions of law and fact that go to the central issue in this matter—that is, whether the plaintiffs paid more for TFT–LCD products than they would have, absent the alleged price-fixing conspiracy. These common questions of law and fact predominate over any individual plaintiff differences. The overarching and unifying allegations in this action are that Chunghwa and other TFT-LCD manufacturers operated a global cartel to fix the prices of TFT-LCD products sold in the United States. These allegations give rise to numerous questions of law and fact common to the class, such as:

1.      whether defendants engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of TFT-LCD products sold in the United States;

2.      whether the contract, combination, and/or conspiracy violated Section 1 of the Sherman Act;

3.      the duration of the illegal contract, combination, and/or conspiracy;

4.      whether defendants' conduct caused the prices of TFT-LCD products sold in the United States to be set at artificially high, or non-competitive, levels; and

5.      whether class members were injured by defendants' conduct, and if so, the appropriate class-wide measure of damages.

These questions all revolve around the existence, scope, effectiveness, and implementation of defendants' conspiracy, and are central to each class member's claims. Similar common questions have been routinely found to satisfy the commonality requirement in other antitrust class actions. *See, e.g., In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 479 (W.D. Pa. 1999) ("[g]iven plaintiffs' allegation of a § 1 conspiracy, the existence, scope and efficacy of the alleged conspiracy are certainly questions that are common to all class members."); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* Case No. M 02-1486 PJH, 2006 WL 1530166, at \*\*3-4 (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist."); *In re Rubber*

*Chem. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005). Thus, the proposed settlement class satisfies the commonality requirement of class certification.

### 3. Plaintiffs' Claims Are Typical of the Claims of the Class

The "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. In this case, the claims of the representative plaintiffs are typical of the claims of the class members because they all purchased TFT-LCD products sold by defendants at allegedly supra-competitive levels because of the price-fixing conspiracy. Similarly, differences that may exist in the amount of injury suffered by each class member do not render plaintiffs' claims atypical. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

As with commonality, typicality is easily satisfied in price-fixing cases because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993); *In re Citric Acid Antitrust Litig.*, Case No. 95-1092, 1996 WL 655791, at * 3 (N.D. Cal. Oct. 2, 1996). Furthermore, courts have rejected the argument that factual differences among individual transactions undermine typicality, so long as the damages of plaintiffs and the class arise from the purchase of products affected by the conspiracy. *See DRAM*, *supra*, at *4-6; *In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, Case No. Civ. 02-6030 (WHW), 2006 WL 891362, at *5 (D.N.J. April 4, 2006); *In re Pressure Sensitive Labelstock Antitrust Litig.*, Case No. 3:03-MDL-1556, 2007 WL 4140666, at *10 (M.D. Pa. Nov. 19, 2007) ("Typicality is usually satisfied in a horizontal antitrust conspiracy case, even though a plaintiff may have purchased differed product types or quantities or received different prices, or a plaintiff purchased from one defendant but not another.").

In this case, the claims of the representative plaintiffs arise from the same price-fixing conspiracy that give rise to the claims of the class. Plaintiffs assert the same legal claims on

behalf of themselves and the proposed class, namely, that they purchased TFT-LCD products at supracompetitive prices as a result of the antitrust conspiracy between Chunghwa and other leading TFT-LCD manufacturers. Defendants' price-fixing scheme is the basis for the claims of every named plaintiff and class member who purchased the price-fixed products directly from defendants or their co-conspirators and affiliates. Therefore, plaintiffs' claims are typical of the claims of the other class members, and certification is appropriate.

### 4. Plaintiffs Will Fairly and Adequately Represent the Interests of the Class

The final requirement of Rule 23(a) is that the representative plaintiffs fairly and adequately represent the interests of the class. A representative plaintiff is an adequate representative of the class if he or she: (1) does not have any interests that are antagonistic to or in conflict with the interests of the class; and (2) is represented by "qualified counsel" who will vigorously prosecute the interests of the class. *Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978).

Here, the interests of the representative plaintiffs are not antagonistic to the class because they are all similarly interested in obtaining prompt and valuable relief from defendants. There is no question that plaintiffs have a genuine interest in the litigation and understand the allegations in this case. They have reviewed the pleadings in this case, responded to written discovery, produced documents requested, and given deposition testimony. Fastiff Decl., ¶ 7. The interests of plaintiffs and class members are aligned because they all suffered similar injury in the form of higher TFT-LCD product prices because of the conspiracy, and they all seek the same relief. By proving their own claims, plaintiffs will necessarily be proving the claims of their fellow class members.

Additionally, plaintiffs are represented by counsel who are highly qualified in class action litigation and have competently and aggressively prosecuted this complex case. Plaintiffs' counsel, Bruce Simon of Pearson, Simon, Warshaw & Penny, LLP ("PSWP") and Richard Heimann of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), were appointed by the Court as Interim Lead Class Counsel on July 13, 2007. *See* Pretrial Order No. 3, Order Appointing

1  Interim Lead Class Counsel, No. M07-1827 SI, Docket No. 224.  Since that time, Mr. Simon,

2  Mr. Heimann, and their respective firms have competently undertaken the responsibilities

3  assigned to them by the Court and have directed the efforts of other plaintiffs' counsel in

4  vigorously prosecuting this action.  *See* Section IV(F), *infra* (further discussing the qualifications

5  and work performed by Interim Co-Lead Counsel).

6         **E.        The Proposed Settlement Class Satisfies Rule 23(b)(3)**

7         Once the four prerequisites of Rule 23(a) are met, as they are here, plaintiffs are entitled to

8  proceed with a class action under Rule 23(b)(3) if "the court finds that questions of law or fact

9  common to class members predominate over any questions affecting only individual members,

10  and that a class action is superior to other available methods for fairly and efficiently adjudicating

11  the controversy."

12             **1.        Common Questions of Law and Fact Predominate Over Individual
                            Questions**

13

14         In determining whether common questions of law or fact predominate, the Court must

15  determine if the various claims of the members of the proposed class are sufficiently cohesive to

16  justify adjudicating them in a single judicial forum.  *See Amchem Prods.*, 521 U.S. at 625; *Rubber*

17  *Chemicals*, 232 F.R.D. at 352.  "Predominance is a test readily met in certain cases alleging

18  consumer or securities fraud or violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at

19  625; *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004).  That is

20  because in antitrust cases, the focus of the court is "principally on issues of liability." *In re Sugar*

21  *Industry Antitrust Litig.*, MDL Dkt No. 201, 1976 WL 1374, at *22 (N.D. Cal. May 21, 1976).

22         Here, the existence of a TFT-LCD conspiracy and defendants' acts in furtherance of the

23  conspiracy are the predominant questions.  To demonstrate that the TFT-LCD price-fixing

24  conspiracy existed, plaintiffs will necessarily focus on the conduct of the defendants, rather than

25  the conduct of individual class members.  Specifically, defendants entered into and implemented

26  a conspiracy to set the prices of LCD-TFT products at supra competitive levels through a series of

27  high level meetings and agreements during the class period, which has already resulted in

28  numerous guilty pleas by defendants' agents and employees.  Proof of how defendants

implemented and enforced their conspiracy will be common for all class members, because it will be predicated on establishing the existence of defendants' antitrust conspiracy to fix the price of TFT-LCD products. *See In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D. Tex. 1978) ("The court is persuaded that the conspiracy issues—whether price information was exchanged; if it was, with what intent; whether action was taken by the defendants based upon such exchanges, etc.—is susceptible of generalized proof, since it deals primarily with what the defendants themselves did and said.").

Likewise, antitrust injury, particularly in a price-fixing case, is an issue common to the class because it is readily determined based on a common evidentiary showing. The relevant legal standard in establishing an antitrust injury is demonstrating that plaintiffs suffered some harm to business or property as a result of defendants' unlawful conduct. *Reiter v. Sonotome Corp.*, 442 U.S. 330, 337-41 (1979); *Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100, 126 (1969); *In re Static Random Access Memory* (*SRAM*) *Antitrust Litig.*, Case No. C 07-01819 CW, 2008 WL 4447592, at *5 (N.D. Cal. Sept. 29, 2008). "If [plaintiffs] establish at the trial for liability that the defendants engaged in an unlawful national conspiracy which had the effect of stabilizing prices above competitive levels, and further establish that [plaintiffs] were consumers of that product, we would think that the jury could reasonably conclude that [defendants'] conduct caused injury to each [plaintiff]." *In re Master Key Antitrust Litig.*, 528 F.2d 5, 12 n.11 (2d Cir. 1975).

In this case, plaintiffs' common proof of the existence of an antitrust conspiracy affecting the TFT-LCD industry will establish liability on a class-wide basis. As plaintiffs have already set forth in their motion for class certification and the documents submitted in support thereof, they possess the means and methodology to prove that defendants' antitrust conspiracy artificially raised and stabilized the prices of TFT-LCD products. Accordingly, defendants' anticompetitive conduct has resulted in antitrust injuries being suffered by plaintiffs and the other purchasers of TFT-LCD products. Therefore, liability and damages in this case will both be proven on a common basis, and common issues predominate.

### 2. **Class Adjudication is the Superior Method of Adjudicating this Case**

The superiority prong of Rule 23(b)(3) requires balancing the merits of a class action with available alternate methods of adjudication. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "[I]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004). That is because in price-fixing cases, "the damages of individual direct purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *SRAM,* 2008 WL 4447592, at *7.

In this case, a class action is superior to individual litigation because it would be a waste of judicial resources to require numerous separate trials relating to the same legal dispute. *See In re Brand Name Prescription Drugs Antitrust Litig.*, Case No. 94 C 897, 1994 WL 663590, at *6 (N.D. Ill. Nov. 18, 1994) ("We fail to see the logic in defendants' contention that 50,000 individual actions are less complex than a single action.") As noted by Judge Wilken in *SRAM*, the damages alleged by individual members of the class are relatively small, and the expense and burden of individual litigation would make it impracticable for them to seek redress individually. *SRAM,* 2008 WL 4447592, at *7. Moreover, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. Finally, separate adjudication of claims creates a risk of inconsistent rulings, which further favors class treatment. Therefore, a class action is the superior method of adjudicating the claims raised in this case.

### F. **Interim Co-Lead Counsel Should be Appointed As Settlement Class Counsel**

"An order certifying a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). In appointing class counsel, courts must consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of

852950.1   MASTER FILE NO. M07-1827 SI; MDL NO. 1827

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEF. CHUNGHWA PICTURE TUBES, LTD.; MPA ISO

claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

On July 13, 2007, after considering competing motions, the Court appointed Mr. Simon of PSWP and Mr. Heimann of LCHB as interim co-lead class counsel. In doing so, the Court made the following findings:

> each of the foregoing firms and individuals has demonstrated substantial effort in identifying and investigating potential claims in this action, is experienced in litigating and trying complex antitrust class actions, has extensive knowledge of the applicable law, and has the appropriate resources to properly represent the class. These firms have also demonstrated an ability to work with other firms, including the various other firms representing clients in these cases, in an expeditious and cooperative manner.

Pretrial Order No. 3, Order Appointing Interim Lead Class Counsel, No. M07-1827, SI, Docket No. 224, 1:22-2:2. The work done by interim co-lead class counsel since their appointment provides a substantial basis for the Court's earlier finding that counsel satisfy each applicable criterion under Rule 23(g), and are well qualified to serve as class counsel. Accordingly, interim co-lead class counsel should be appointed as class counsel for purposes of the settlement.

## V.     PROPOSED PLAN OF NOTICE

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice of a proposed settlement must inform class members of the following:  (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *See Newberg* § 8.32. The notice must also indicate an opportunity to opt-out, that the judgment will bind all class counsel who do not opt-out, and that any member who does not opt-out may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B).

The form of notice is "adequate if it may be understood by the average class member." *Newberg* § 11.53. Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods.*, 521 U.S. at 617. Publication notice is an acceptable method

of providing notice where the identity of specific class members is not reasonably available. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citing *Manual* § 21.311).

Plaintiffs propose that the notice plan adopted and approved by the Court include: (1) direct notice given by mail or email to each class member who can be identified by reasonable effort;[3] (2) a summary notice published in the national edition of *The Wall Street Journal*; and (3) the posting of both forms of notice on a public website maintained by the notice provider. This is the same plan of notice that Judge Hamilton approved in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, which resulted in over $325 million in settlements with ten defendants. Fastiff Decl., ¶ 8.

The content of the proposed Class Notice, which consists of a summary notice and a long form notice, fully complies with due process and Rule 23. (The proposed summary and long form notices are attached hereto as Exhibits A and B.) It provides the definition of the class, describes the nature of the action, including the class claims, explains the procedure for making comments and objections. The Class Notice describes the terms of the Settlements with Chunghwa, and informs class members that there is no plan of distribution at this time. The Class Notice provides specifics regarding the date, time, and place of the final approval hearing, and informs class members that they may enter an appearance through counsel. The Class Notice also informs class members how to exercise their rights and make informed decisions regarding the proposed Settlement, and tells them that if they do not opt out, the judgment will be binding upon them. The Class Notice further informs the class about the payment of Plaintiffs' attorneys' fees and costs. Courts have approved Class Notice even when they have provided only general information about a settlement. *See, e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" satisfies standards).

---

[3] The settlement requires Chunghwa to provide the names and addresses of putative class members, to the extent reasonably available in the company's sales database. Agreement, ¶ 9. In addition, plaintiffs have requested from the non-settling defendants a list of all of their customers who are potential class members. Such lists will facilitate the dissemination of "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## VI.  PROPOSED PLAN OF ALLOCATION

A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements. *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). Here, plaintiffs propose that settlement funds be allocated based on the dollar value of each class member's TFT-LCD product purchases in proportion to the total claims filed. Such *pro rata* distributions are "cost-effective, simple and fundamentally fair." *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997). The value of computing a more precise allocation would be outweighed by the administrative expense in doing so. Thus, the allocation plan is fair, reasonable, and adequate.

Plaintiffs propose that distribution of settlement funds be deferred until the termination of the case, when there might be additional funds to distribute, because piecemeal distribution of each settlement is expensive, time-consuming, and likely to cause confusion to class members. Until that time, the settlement funds will accrue interest for the benefit of the class. Deferring allocation of settlement funds is a common practice in cases where claims against other defendants remain. *See Manual* § 21.651.

## VII.  ATTORNEYS' FEES AND COSTS

The Agreement states that Class Counsel may apply to the Court for reimbursement of litigation expenses incurred and to be incurred, out of the settlement fund, and Chunghwa has agreed not to oppose any such request. Agreement, ¶ 23. Prior to the final approval hearing, plaintiffs and their counsel will move for the creation of a litigation expense fund in the amount of $2 million for the payment of litigation expenses that have been incurred, and will be incurred, in prosecuting this case. Of course, any unused portion of that fund will be dispensed to the class. Such litigation expense funds have been established and approved in other class actions. *See, e.g.*, *Newby v. Enron Corp.*, 394 F.3d 296, 303 (5th Cir. 2004) (affirming approval of class settlement where $15 million of settlement proceeds were used to create a litigation expense fund); *In re Cal. Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving

class counsel's request for a $1.5 million litigation fund "[b]ecause the remainder of the case appears to have potential value for the class"). Plaintiffs' request for a litigation expense fund is explained in the proposed Class Notice.

## VIII. THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement. At that hearing, proponents of the settlement may explain and describe its terms and conditions and offer argument in support of settlement approval and members of the settlement class, or their counsel, may be heard in support of or in opposition to the settlement. Plaintiffs propose the following schedule for final approval of the settlement:

| | Date | Action |
|---|---|---|
| 1. | Within 20 days after Preliminary Approval is Granted | Class Counsel shall provide a computerized list of potential class members, previously obtained from Defendants, to Claims Administrator |
| 2. | Within 30 days after preliminary approval is granted | Mailing and publication of Class Notice |
| 3. | 60 days after the mailing of notice | Last day for settlement class members to opt-out of the settlement and any class member to file objections to the settlement |
| 4. | 60 days after Chunghwa receives list of opt-outs | Last day for Chunghwa to rescind settlement |
| 5. | 15 days after last day for Defendant to Rescind Settlement | Final Settlement Approval Hearing/Fairness Hearing |

## IX. CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court: (1) grant preliminary approval of the class settlement with defendant Chunghwa Picture Tubes, Ltd.; (2) certify the proposed settlement class; and (3) establish a deadline for class members to exclude themselves from the settlement, a deadline to submit any objections to the settlement, and a final approval hearing date.

852950.1                                              MASTER FILE NO. M07-1827 SI; MDL NO. 1827

| | |
|---|---|
| 1 | Dated: December 30, 2009 | PEARSON, SIMON, WARSHAW & PENNY, LLP |

Dated: December 30, 2009          PEARSON, SIMON, WARSHAW & PENNY, LLP

By:  _____ /s/ *Bruce L. Simon* _____
                    Bruce L. Simon

Daniel L. Warshaw
Jonathan M. Watkins
Jessica L. Grant
Esther L. Klisura
Bobby Pouya
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:     (415) 433-9000
Facsimile:      (415) 433-9008

*Interim Co-Lead Counsel for the Direct Purchaser
Plaintiffs and the Proposed Class*

Dated: December 30, 2009          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:  _____ /s/ Richard M. Heimann _____
                    Richard M. Heimann

Joseph R. Saveri
Michele C. Jackson
Eric B. Fastiff
Brendan P. Glackin
Jordan Elias
Andrew S. Kingsdale
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:     (415) 956-1000
Facsimile:      (415) 956-1008

*Interim Co-Lead Counsel for the Direct Purchaser
Plaintiffs and the Proposed Class*

Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of this document has been obtained from Richard M. Heimann.

Daniel C. Girard
Elizabeth C. Pritzker
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone:     (415) 981-4800
Facsimile:      (415) 981-4846

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs
and the Proposed Class*

H. Laddie Montague
Ruthanne Gordon
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:    (215) 875-3000
Facsimile:    (215) 875-4604

Joseph J. Tabacco, Jr.
Christopher T. Heffelfinger
BERMAN DEVALERIO PEASE & TABACCO, PC
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone:    (415) 433-3200
Facsimile:    (415) 433-6382

Manuel Juan Dominguez
BERMAN DEVALERIO PEASE & TABACCO, PC
222 Lakeview Avenue, Suite 900
West Palm Beach, FL 33401
Telephone:    (561) 835-9400
Facsimile:    (561) 835-0322

Anthony J. Bolognese
BOLOGNESE & ASSOCIATES, LLC
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103
Telephone:    (215) 814-6750
Facsimile:    (215) 814-6764

Peter S. Pearlmann
Jeffrey W. Herrmann
COHN LIFLAND PEARLMAN HERRMANN
   & KNOPF LLP
Park 80 Plaza West-One
Saddle Brook, NJ 07663
Telephone:    (201) 845-9600
Facsimile:    (201) 845-9423

Kevin B. Love
CRIDEN & LOVE, P.A.
7301 Southwest 57th Court, Suite 515
South Miami, FL 33143
Telephone:    (305) 357-9000
Facsimile:    (305) 357-9050

Steven A. Kanner
Douglas A. Millen
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone:    (224) 632-4500
Facsimile:    (224) 632-4519

Stephen M. Garcia
GARCIA LAW FIRM
One World Trade Center, Suite 1950
Long Beach, CA 90831
Telephone:     (562) 216-5270
Facsimile:      (562) 216-5271

Anthony D. Shapiro
George W. Sampson
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone:     (206) 623-7292
Facsimile:      (206) 623-0594

Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:     (415) 633-1908

Vincent J. Esades
HEINS MILLS & OLSON PLC
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:     (612) 338-4605
Facsimile:      (612) 338-4692

Robert N. Kaplan
Linda P. Nussbaum
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:     (212) 687-1980
Facsimile:      (212) 687-7714

Joseph C. Kohn
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone:     (215) 238-1700
Facsimile:      (215) 238-1968

Howard J. Sedran
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone:     (215) 592-1500
Facsimile:      (215) 592-4663

W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN, PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:     (612) 339-6900
Facsimile:      (612) 339-0981

Steven J. Greenfogel
MEREDITH COHEN GREENFOGEL
   & SKIRNICK, P.C.
Architects Building
117 South 17th Street, 22nd Floor
Philadelphia, PA 19103
Telephone:     (215) 564-5182
Facsimile:      (215) 569-0958

Harry Schulman
THE MILLS LAW FIRM
145 Marina Boulevard
San Rafael, CA 94901
Telephone:     (415) 455-1326
Facsimile:      (415) 455-1327

James Quadra
Sylvia Sokol
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street
Mills Tower, Suite 2100
San Francisco, CA 94104
Telephone:     (415) 362-3599
Facsimile:      (415) 362-2006

Gregory L. Russell
PETERSON RUSSELL KELLY PLLC
1850 Skyline Tower
10900 NE Fourth Street
Bellevue, WA 98004-8341
Telephone:     (425) 462-4700
Facsimile:      (425) 451-0714

P. John Brady
Daniel D. Owen
POLSINELLI SHUGHART, PC
Twelve Wyandotte Plaza
120 West 12th Street, Suite 1600
Kansas City, MO 64105
Telephone:     (816) 421-3355
Facsimile:      (816) 374-0509

Garrett D. Blanchfield
REINHARDT WENDORF & BLANCHFIELD
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone:     (651) 287-2100
Facsimile:     (651) 287-2103

Guido Saveri
R. Alexander Saveri
Cadio Zirpoli
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:     (415) 217-6810
Facsimile:     (415) 217-6813

Eugene A. Spector
SPECTOR ROSEMAN & KODROFF PC
1818 Market Street, Suite 2500
Philadelphia, PA 19102
Telephone:     (215) 496-0300
Facsimile:     (215) 496-6611

*Counsel for Direct Purchaser Plaintiffs and the Proposed Class*

# EXHIBIT A

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. M07-1827 SI |
| | MDL No. 1827 |
| This Document Relates to: | **SUMMARY NOTICE OF PENDENCY OF CLASS ACTION AND PARTIAL CLASS ACTION SETTLEMENT** |
| ALL DIRECT PURCHASER ACTIONS | |

TO:    All persons and entities who, between January 1, 1996 and December 11, 2006, directly purchased a Thin Film Transistor-Liquid Crystal Display (TFT-LCD) Product in the United States from any of the defendants listed below, or a subsidiary or affiliate thereof[1]

A class action is pending in the above Court against certain manufacturers of TFT-LCDs. The plaintiffs allege that, beginning at least as early as January 1, 1996 and continuing to December 11, 2006, the defendants engaged in an unlawful conspiracy to fix, raise, maintain or stabilize the prices of Thin Film Transistor-Liquid Crystal Display panels, as well as products containing such panels ("TFT-LCDs") in violation of federal antitrust laws. Plaintiffs allege that, as a result of the unlawful conspiracy, they and other members of the class paid more for TFT-LCDs than they would

---

[1]      Defendants are: AU Optronics Corporation, AU Optronics Corporation America, Chi Mei Corporation, Chi Mei Optoelectronics Corporation, Chi Mei Optoelectronics USA, Inc., Chunghwa Picture Tubes, Ltd., CMO Japan Co., Ltd., Epson Electronics America, Inc., Epson Imaging Devices Corporation, HannStar Display Corporation, Hitachi Displays, Ltd., Hitachi Electronic Devices (USA), Inc., Hitachi, Ltd., LG Display America, Inc., LG Display Co., Ltd., Mitsui & Co. (Taiwan), Inc., Nexgen Mediatech, Inc., Nexgen Mediatech USA, Inc., Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., Samsung Semiconductor, Inc., Sanyo Consumer Electronics Co., Ltd., Sharp Corporation, Sharp Electronics Corporation, Tatung Company of America, Inc., Toshiba America Electronic Components, Inc., Toshiba America Information Systems, Inc., Toshiba Corporation, and Toshiba Matsushita Display Technology Co., Ltd.

have paid absent the conspiracy.  The defendants deny all of plaintiffs' allegations and have asserted numerous affirmative defenses.

On Month 00, 2010, the Court appointed the plaintiffs and Class Counsel to represent the interests of the class, and ordered this Notice to inform class members of their rights.

In addition, this Notice is to inform class members of a partial class settlement for ten million U.S. dollars ($10,000,000) reached with defendant Chunghwa Picture Tubes, Ltd. ("Settling Defendant"), including their right to share in that settlement in exchange for a release of claims.

The litigated class and the settlement class include all persons and entities who, during the period January 1, 1996 and December 11, 2006, purchased TFT-LCDs in the United States directly from the defendants or their subsidiaries or affiliates.  Excluded from the class are defendants and their parents, subsidiaries and affiliates, all governmental entities, co-conspirators, and any judge or justice assigned to hear any aspect of this case.

The Court will hold a Fairness Hearing on Month 00, 2010 at _____m. at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94104, in Courtroom 10.  At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate, and whether, therefore, this litigation should be dismissed with prejudice against the Settling Defendant.

This is the first settlement reached in this litigation, and the litigation will continue against the non-settling defendants.  The Settling Defendant has already deposited ten million U.S. dollars ($10,000,000) into an  interest bearing accounts for the benefit of the settlement class.  If the Court approves the settlement and it becomes effective, class members will be able to share in the settlement proceeds after payment of costs of notice and settlement administration, and litigation expenses.  Class Counsel are not requesting attorneys' fees at this time.  However, they will be requesting that two million dollars ($2,000,000) of the Settlement Fund be set aside for the payment of litigation expenses that have been incurred, and will be incurred, in prosecuting this case.  The settlement funds will be distributed at a later date, and therefore no claim forms are to be submitted at this time.

You do not need to do anything to remain in the class. Members of the class will be entitled to receive money from the settlement fund when it is ultimately distributed. At final approval, Class Counsel will ask the Court to approve a plan of allocation and distribution of the net settlement fund on a *pro rata* basis among settlement class members based on the dollar amount each settlement class member paid to defendants for direct purchases of TFT-LCDs from the defendants between January 1, 1996 and December 11, 2006. If you do not exclude yourself from the class, you will be entitled to file a claim to share in the net settlement fund. However, if you want to exclude yourself from the class, you must do so by Month 00, 2010. If you do not timely exclude yourself from the Class but want to object to the settlement, you must file a written objection by Month 00, 2010.

A more detailed description of this class action and the proposed settlement is contained in the Notice of Pendency of Class Action and Partial Class Action Settlement (the "Notice"). The Notice has been mailed to identifiable class members. If you are a class member and have not received a Notice, you may obtain a copy free of charge by writing to: [Class Administrator]. The Notice and settlement agreement are also available online at: www._____.com.

Questions about the class action or settlement should be directed to the following Class Counsel:

Bruce L. Simon
PEARSON, SIMON, WARSHAW &
PENNY, LLP
44 Montgomery Street, Suite 2450
San Francisco, California 94104

Richard M. Heimann
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California 94111

**PLEASE DO NOT TELEPHONE OR SEND INQUIRIES TO THE COURT.**

Dated:  Month 00, 2010                    BY ORDER OF THE DISTRICT COURT

# EXHIBIT B

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. M07-1827 SI |
| | MDL No. 1827 |
| This Document Relates to: | **NOTICE OF PENDENCY OF CLASS ACTION AND PARTIAL CLASS ACTION SETTLEMENT** |
| ALL DIRECT PURCHASER ACTIONS | |

TO:    All persons and entities who, between January 1, 1996 and December 11, 2006, directly purchased a Thin Film Transistor-Liquid Crystal Display (TFT-LCD) Product in the United States from any of the following defendants, or a subsidiary or affiliate thereof:

> AU Optronics Corporation
> AU Optronics Corporation America
> Chi Mei Corporation
> Chi Mei Optoelectronics Corporation
> Chi Mei Optoelectronics USA, Inc.
> Chunghwa Picture Tubes, Ltd.
> CMO Japan Co., Ltd.
> Epson Electronics America, Inc.
> Epson Imaging Devices Corporation
> HannStar Display Corporation
> Hitachi Displays, Ltd.
> Hitachi Electronic Devices (USA), Inc.
> Hitachi, Ltd.
> LG Display America, Inc. (formerly known as LG.Philips LCD America, Inc.)
> LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.)
> Mitsui & Co. (Taiwan), Ltd.
> Nexgen Mediatech, Inc.
> Nexgen Mediatech USA, Inc.
> Samsung Electronics America, Inc.
> Samsung Electronics Co., Ltd.
> Samsung Semiconductor, Inc.
> Sanyo Consumer Electronics Co., Ltd.
> Sharp Corporation
> Sharp Electronics Corporation
> Tatung Company of America, Inc.
> Toshiba America Electronic Components, Inc.
> Toshiba America Information Systems, Inc.
> Toshiba Corporation
> Toshiba Matsushita Display Technology Co., Ltd.

**Please read this entire notice carefully. It affects your rights, including your right to share in a partial class action settlement for ten million U.S. dollars ($10,000,000). A federal court authorized this notice. This is not a solicitation from a lawyer.**

This notice is given pursuant to Rule 23 of the Federal Rules of Procedure and Order of the United States District Court for the Northern District of California ("Court"). A class action lawsuit brought by, and on behalf of, direct purchasers of Thin Film Transistor-Liquid Crystal Display panels and products containing those panels (referred to collectively herein as "TFT-LCDs") is currently pending. Plaintiffs allege violations of federal antitrust laws in connection with the sale of TFT-LCDs. On Month 00, 2010, the Court certified a litigated class and ordered that the case may proceed as a class action.

On Month 00, 2010, the Court provisionally approved a partial class settlement with defendant Chunghwa Picture Tubes, Ltd. ("Settling Defendant"). This notice is being sent to inform you of the proposed settlement and your rights with respect thereto. A Fairness Hearing will be held on Month 00, 2010 at _____m. at 450 Golden Gate Avenue, San Francisco, California 94102, to determine whether the proposed settlement is fair, adequate and reasonable to the class and whether this litigation should be dismissed with prejudice against the Settling Defendant.

## I.     THE CLASS

The litigated class and the settlement class include all persons and entities who, during the period January 1, 1996 and December 11, 2006 (the "Class Period"), purchased TFT-LCDs in the United States directly from a defendant or subsidiary or affiliate of a defendant. Excluded from the class are defendants and their parents, subsidiaries and affiliates, all governmental entities, co-conspirators, and any judge or justice assigned to hear any aspect of this case.

If you are a member of the class, you do not have to take any action at this time. Your rights as a class member are being represented by the plaintiffs and Class Counsel, and you will be entitled, at a later date, to submit a claim form to share in the proceeds of the settlement.

## II. THE CLASS ACTION

Plaintiffs A.M. Photo & Imaging Center, Inc., CMP Consulting Services, Inc., Crago, Inc., Home Technologies Bellevue LLC, Nathan Muchnick, Inc., Omnis Computer Supplies, Inc., Orion Home Systems, LLC, Royal Data Services, Inc., Texas Digital Systems, Inc., Univisions-Crimson Holding, Inc., and Weber's World Company ("Plaintiffs") have filed a class action lawsuit against defendants AU Optronics Corporation, AU Optronics Corporation America, Chi Mei Corporation, Chi Mei Optoelectronics Corporation, Chi Mei Optoelectronics USA, Inc., Chunghwa Picture Tubes, Ltd., CMO Japan Co., Ltd., Epson Electronics America, Inc., Epson Imaging Devices Corporation, HannStar Display Corporation, Hitachi Displays, Ltd., Hitachi Electronic Devices (USA), Inc., Hitachi, Ltd., LG Display America, Inc., LG Display Co., Ltd., Mitsui & Co. (Taiwan), Ltd., Nexgen Mediatech, Inc., Nexgen Mediatech USA, Inc., Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., Samsung Semiconductor, Inc., Sanyo Consumer Electronics Co., Ltd., Sharp Corporation, Sharp Electronics Corporation, Tatung Company of America, Inc., Toshiba America Electronic Components, Inc., Toshiba America Information Systems, Inc., Toshiba Corporation, and Toshiba Matsushita Display Technology Co., Ltd. ("Defendants").

The lawsuit alleges that, beginning at least as early as January 1, 1996 and continuing to December 11, 2006, the Defendants engaged in an unlawful conspiracy to fix, raise, maintain or stabilize the prices of TFT-LCDs in violation of federal antitrust laws. Plaintiffs allege that, as a result of the unlawful conspiracy, they and other members of the class paid more for TFT-LCDs than they would have paid absent the conspiracy. The Defendants deny all of Plaintiffs' allegations and have asserted numerous affirmative defenses. Defendants Chi Mei Optoelectronics, Chunghwa Picture Tubes, Ltd., Hitachi Displays, Ltd., LG Display America, Inc., LG Display Co., Ltd. and Sharp Corporation have pleaded guilty, or agreed to plead guilty, to criminal violations of the antitrust laws in connection with TFT-LCDs.

On Month 00, 2010, the Court approved appointment of the Plaintiffs and Class Counsel to represent the interests of the class, and ordered that this Notice be provided to members of the class.

## III.    THE PROPOSED SETTLEMENT

**This is only a summary of the settlement.  The Settlement Agreement is on file with the Clerk of the Court and is also available online at: www._____.com.**

The settlement represents a compromise of disputed claims.  It does not mean that liability or damages would have been found against the Settling Defendant.  The Settling Defendant continues to deny any and all wrongdoing or liability.

The settlement requires the payment of ten million U.S. dollars ($10,000,000) in cash.  The Settling Defendant has already deposited this amount into an interest bearing account for the benefit of Settlement Class members.  The Settlement Agreement requires Settling Defendant to cooperate with Plaintiffs in the ongoing prosecution of the litigation against the non-settling Defendants.

If the settlement is approved by the Court and becomes effective, each class member that does not timely and validly exclude itself from the class (the "Releasors") shall have completely released, acquitted, and forever discharged the Settling Defendant from any claims, demands, actions, suits, causes of action, whether class, individual or otherwise in nature (whether or not a Releasor objects to the settlement or makes a claim upon the settlement fund) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen, and unforeseen, suspected or unsuspected injuries, damages, and the consequences thereof in any way arising out of or resulting from conduct concerning the manufacture, supply, distribution, sale or pricing of TFT-LCDs up to February 12, 2009.  However, the release shall not affect the rights of class members to pursue: (1) claims for product defect, personal injury, or breach of contract against the Settling Defendant; or (2) claims against the Settling Defendant based on indirect purchases of TFT-LCDs; or (3) claims against the Settling Defendant based on purchases of TFT-LCDs outside of the United States.

The release and dismissal of claims against the Settling Defendant will have no effect upon any claims that class members may have against the non-settling Defendants.  This is first settlement reached in this litigation, and the litigation will continue against the non-settling Defendants.

## IV.     THE PARTIES' REASONS FOR SETTLEMENT

As part of this litigation, Class Counsel have conducted extensive formal discovery into the claims of the members of the class and the defenses that might be asserted thereto.  This investigation has included discovery and analysis of millions of pages of Defendants' documents and records, depositions of certain of Defendants' officers and employees, consultation with experts, and legal research and analysis.  Based on this investigation, Class Counsel believe that the settlement is fair, reasonable and adequate.  Class Counsel believe the settlement is in the best interests of the class considering the expense of continued litigation against the Settling Defendant, the uncertainty and the risks associated with continued litigation, and the difficulties and delays inherent in such actions.

The Settling Defendant has denied any wrongdoing or legal liability arising out of any of the conduct alleged in the class action or that the Class has suffered any damage by reason of the alleged wrongdoing.  Nevertheless, in light of the uncertainty and risk in any litigation, the Settling Defendant has determined that it is desirable and beneficial that the litigation be settled in the manner and upon the terms and conditions set forth in the parties' Settlement Agreement.

## V.     YOUR SHARE OF THE SETTLEMENT

The Settling Defendant has already deposited ten million U.S. dollars ($10,000,000) into an interest bearing accounts for the benefit of the class.  If the Court approves the settlement and it becomes effective, class members will be able to share in the settlement proceeds after payment of costs of notice and settlement administration, and litigation expenses.  Class Counsel are not requesting attorneys' fees at this time.  However, they will be requesting that two million dollars ($2,000,000) of the settlement fund be set aside for the payment of litigation expenses that have been incurred, and will be incurred, in prosecuting this case.  The settlement funds will be distributed at a later date, and therefore no claim forms are to be submitted at this time.

At final approval, Class Counsel and Plaintiffs will ask the Court to approve a plan of allocation and distribution of the net settlement fund on a *pro rata* basis among class members based on the dollar amount each class member paid to Defendants for direct purchases of TFT-LCDs from

the Defendants during the Class Period.  If you do not exclude yourself from the class, you will be entitled to file a claim to share in the net settlement fund.

You should retain all documents that substantiate your purchases of TFT-LCDs during the Class Period from each of the Defendants.  If you change your address, or if this Notice was not mailed to your correct address, you should immediately provide your correct address to _____.

## VI.     RIGHT TO EXCLUDE YOURSELF FROM THE CLASS

To exclude yourself from the class, you must send a letter by mail saying that you want to be excluded from In re TFT-LCD (Flat Panel) Antitrust Litigation.  The letter must clearly state the name and address of the person or entity who wishes to be excluded from the class, as well as all trade names or business names and addresses used by such person or entity, and must be signed by the person or entity seeking exclusion.  The letter must be postmarked no later than **Month 00, 2010** to:

CLASS ADMINISTRATOR

Name
Street address
City, State, Zip

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  You will not be legally bound by anything that happens in this lawsuit.  You may be able to sue (or continue to sue) Defendants in the future.

## VII.     RIGHT TO OBJECT TO THE SETTLEMENT AND
## APPEAR AT THE FAIRNESS HEARING

If you are a class member, you can object to the settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it.  The Court will consider your views.  To object, you must send a letter saying that you object to *In re TFT-LCD (Flat Panel) Antitrust Litigation*.  The letter must clearly state the name and address of the person or entity who objects to the settlement, as well as all trade names or business names and addresses used by such

person or entity, must state the basis for objecting, and must be signed by the person or entity seeking exclusion.  The objection must be mailed to the following addresses and postmarked no later than **Month 00, 2010**:

<u>CLERK OF THE COURT</u>

Clerk of the Court
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco,  California 94102

<u>CLASS ADMINISTRATOR</u>

Name
Street address
City, State, Zip

<u>CLASS COUNSEL</u>

Bruce L. Simon
PEARSON, SIMON, WARSHAW &
PENNY, LLP
44 Montgomery Street, Suite 2450
San Francisco, California 94104

Richard M. Heimann
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, California 94111

<u>COUNSEL FOR SETTLING DEFENDANT</u>

Gary Spratling
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-2933

The Court will hold a Fairness Hearing on Month 00, 2010 at _____m. at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94104, in Courtroom 10.  At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  After the hearing, the Court will decide whether to approve the settlement.  You do not have to attend the Fairness Hearing.  However, you are welcome to come at your own expense.  If you wish to speak at the hearing, you must send a letter saying that it is your "Notice of Intention to Appear in *In re TFT-*

*LCD (Flat Panel) Antitrust Litigation*." The Notice of Intention to Appear must be postmarked no later than **Month 00, 2010** and be sent to the Clerk of the Court, Class Administrator, Class Counsel, and Counsel for Settling Defendant at the addresses listed above.

## VIII. ADDITIONAL INFORMATION

This notice is only a summary of the settlement and related matters. For more detailed information about this litigation, you can inspect the pleadings, the orders of the Court, and other papers filed in the action at the Office of the Clerk of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102 during regular business hours. In addition, the Settlement Agreement is available online at www._____.com.

Any questions about this notice and the settlement agreement should be directed to Class Counsel at the addresses listed above or to the Class Administrator by calling toll-free (8xx) xxx-xxxx. Questions should not be directed to Counsel for the Settling Defendant, the Court, or the Clerk of the Court.

Dated: Month 00, 2010                                    BY ORDER OF THE DISTRICT COURT