Blake L. Harrop
Senior Assistant Attorney General
Antitrust Bureau
Office of the Illinois Attorney General
100 W. Randolph Street
Chicago, Illinois 60601
(312) 814-1004 (phone)
(312) 814-4209 (fax)
bharrop@atg.state.il.us

*Counsel for Intervener, the State of Illinois*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **In Re TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION** ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No.:   M-07-1827 SI<br>MDL No. 1827<br><br>**State of Illinois' and State of Washington's Brief in Further Support of Their Motions to Modify December 7, 2007 Protective Order** |
| This document relates to:<br><br>ALL ACTIONS. | Date: April 30, 2010<br>Time: 9:00 a.m. |

The States' motions present one straightforward question. Do the protective order and sealing orders entered in the civil cases in these proceedings preclude discovery of some of the covered materials in parallel civil state court proceedings? The motions have been opposed by AUO, CMO, Hannstar and Toshiba, who have tried to complicate this issue. They filed a motion of their own, attempted to resurrect already rejected issues of state law, and attempted to adopt as their own the issue of a stay that they never sought, and now they seek to confuse

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

these civil issues with matters of criminal procedure. As a result, eleven briefs were filed in the Special Master proceedings on this question. This brief will not repeat in full the arguments in those briefs. Rather, the focus needs to return to that one question this Court must resolve.

FACTS

The state court procedures that led to the States' motions are set out in full in the briefs filed with the States' initial motion.[1] The procedural history before the special master was set forth in the Objections By The State Of Washington And The State Of Illinois To The Special Master's Report And Recommendation On Motions Seeking Clarification Or Modification Of Protective Order, Dated March 11, 2010.[2]

In brief summary, a multistate working group that includes Illinois and Washington has been investigating allegations of price-fixing of LCD panels and products containing those panels and the effects of such price-fixing on the citizens and government entities of those states. This investigation has employed civil subpoenas and investigative demands. One of the objecting defendants, AU America ("AUA"), objected to these investigative demands, resulting in state court enforcement actions. In the state court proceedings, AUA relied on the arguments about limitations of state law and Attorney General authority that it would later raise again before the Special Master and apparently wishes to raise yet again with this Court. These arguments have failed in every forum to date.

AUA then stated, citing the Court's Protective Order, that it would not produce documents in its possession that it had acquired from other Defendants, unless the other Defendants agreed. AUO (AUA's parent), Toshiba, Hannstar and CMO have all objected to

---

[1]  ECF 1469 and 1486.
[2]  ECF 1612.

1    AUA producing these documents in response to the lawfully issued investigative demands.

2    They then entered the state court proceedings to repeat the arguments made by AUA. In

3    Washington, the argument failed and AUA has been ordered to make full production.[3] In

4    Illinois, the state court accepted the objecting defendant's arguments that the confidentiality

5    provisions of the Protective Order trumped Section 8's provision of the Order allowing

6    discovery. That court has delayed proceedings awaiting clarification from this Court.

7

8    The States intervened in these proceedings to clarify that the intent and effect of the

9    Protective Order permits the parties in this litigation to respond to state investigative demands

10   and state court orders. This Court assigned the States' motions to the Special Master, who took

11   full briefing on this issue as well as a related AUO motion. AUO's motion sought to have the

12   Protective Order rewritten to match the arguments it was making in the state courts. After

13   reading the briefs, the Special Master held oral argument at which she concluded that the order

14   does not and should not preclude such document production. However, *sua sponte*, the Special

15   Master suggested staying these defendants' obligation to produce materials in those

16   proceedings until all appeals were exhausted – a period of many months, if not years. As agreed

17   at the hearing, the States prepared a draft order. In the letter transmitting the draft order, the

18   States notified the Special Master that this Court had issued an order on the Grand Jury

19   subpoenas and also requested that the stay provision of the draft order not be entered because it

20

21

22

23   [3] There were two proceedings in Washington. In the first, the State moved to enforce its CID to AU. The court denied AU's objections and ordered full compliance with the CID. The second proceedings was a motion to quash a CID issued to the indirect purchaser plaintiffs. The petition was brought by AU, Toshiba, Hannstar and CMO. The court denied their objections and dismissed the petition. These Defendants have appealed that ruling. However, by law in Washington a trial court order is not stayed pending appeal absent an express supersedeas order. No such order has been sought or issued.

24

25

26

1    would violate the Anti-Injunction Act. The Special Master responded stating that she intended

2    to honor the States' request but would allow objection by the following Monday. Near the close

3    of business on that Monday, she issued the order as described. AU emailed the Special Master

4    after the order issued, asking if she was aware of this Court's grand jury order and stating that it

5    addressed these protective order issues. In response, the Special Master withdrew her order.

6    Two weeks later, she issued a report and recommendation reaffirming her view that the

7    Protective Order was not intended to preclude the relevant state discovery, but suggesting this

8    Court resolve the issue after additional briefing and argument.

9

10                                    ARGUMENT

11           There should no longer be room for doubt as to the answer to the one question before

12   this Court. As the Special Master stated in the oral argument, repeated in her issued and then

13   withdrawn order, and then stated again in her final report and recommendation, the Protective

14   Order "does not and was not intended to interfere with any lawfully issued State subpoena or

15   civil investigative demand." That finding reflects the plain meaning of Section 8 of the

16   Protective Order. This Court should adopt the Report and Recommendation on that point.

17           Defendants repeat a host of state law arguments previously asserted without success in

18   the state courts and before the Special Master. These arguments are without merit for two

19   reasons. First, as explained in more detail in the briefs filed in front of the Special Master, as

20   well as numerous briefs filed in the state court proceedings, these defendants' assertions about

21   state law issues are simply wrong, and have failed in every forum to date. The only issue on

22   which these defendants have had any success in the state courts is their assertion that this

23   Court's Protective Order prevents them from producing materials in other proceedings.

24

25

26

1   Second, these arguments are irrelevant to the issue of the meaning of this Court's

2   Protective Order. The meaning of this Court's Order is not dependent on the powers granted the

3   Attorney General of a particular State, nor on any other issue of state law. Disputes over the

4   scope and substance of state investigative subpoenas must be addressed in the state courts. This

5   is the plain meaning of Section 8 of the Protective Order. Nothing in that order imposes a duty

6   on this Court to act as a state appellate court to resolve state law discovery issues. Indeed,

7   issues of comity should caution this Court against doing so.

8   

9   Eight briefs[4] were filed before the Special Master heard oral argument on these issues.

10  In none of those briefs did any party request a stay from this Court of any portion of the

11  pending state court proceedings. That is hardly surprising since the Anti-Injunction Act clearly

12  prohibits such a stay. 228 U.S.C. § 2283. Nevertheless, after the Special Master raised that

13  issue *sua sponte* and then rejected it when reminded of the Anti-Injunction Act prohibition,

14  these defendants attempt to resurrect it as a complicating issue.

15  

16  As noted in the letter briefs filed in the Special Master proceedings, it is not. These

17  defendants' did not deny that the Anti-Injunction Act generally would prohibit an injunction

18  against the state court proceedings. Nor could they deny that addressing the injunction to the

19  parties is equally prohibited.[5].Instead, they raised three arguments, each of which is addressed

20  

21  

22  

23  

24  [4] Three other letter briefs were filed on the Anti-Injunction Act issue after the hearing.
    [5] Declaration Of Brady R. Johnson In Support Of The Objections By The States Of

25  Washington And Illinois To The Special Master's Report And Recommendation On Motions
    Seeking Clarification Or Modification Of Protective Order, Dated March 11, 2010 ( "Johnson

26  Decl."), Exs. 5 & 10.

1   in more detail in the letter brief filed with the Special Master.[6].First, they assert that there are

2   no pending state court proceedings. This assertion is clearly wrong as demonstrated by AU's

3   need to request that this Court partially stay the *pending state court proceedings* until all the

4   state court appeals processes in those *pending state court proceedings* are completed. Second,

5   they assert the stay would have a minimum effect on the state court proceedings because it

6   would only deny the States some of the requested documents. But there is no *de minimis*

7   exception to the Anti-Injunction Act.[7]. Third, AU asserts that a stay is necessary to aid this

8   Court's jurisdiction and avoid disrupting these proceedings. However, AU can offer no reason

9   why the state ordered production of documents would disrupt these proceedings. Indeed, AU

10  can offer no reason why this Court should usurp the role of the state appellate courts and stay

11  the lower court orders during the pendency of appeals.

12          Having no basis to avoid the Special Master's findings, AU made one last ditch effort

13  and wrote to the Special Master after issuance of her initial order that:

16          Judge Illston has entered an order which does address the possession, custody and
            control issues discussed at the February 10 hearing before Your Honor. We think that it
17          is important for Your Honor to consider Judge Illston's Order prior to issuing a
            Recommendation on matters relating to the Attorneys General.[8]

19          As the Court's very helpful Statement of Reasoning Involved in Court's Order of

20  February 11, 2010 ("Statement") makes clear, that is not correct. Nowhere in that analysis does

21  _____

22  [6]  Declaration Of Brady R. Johnson In Support Of The State Of Illinois' And State Of
     Washington's Brief In Further Support Of Their Motions To Modify December 7, 2007
23  Protective Order, Ex. 6.
     [7]  AUO has argued that the state investigations are not hampered because the states have
24  received large volumes of other documents. This disingenuous argument begs the question of
     the states' authority to obtain *all* materials relevant to their investigations from any entities
25  holding such materials. There is no support for the novel idea that partial response to an
     investigative demand somehow constitutes a complete response.
26  [8]  Johnson Decl., Ex. 8.

1   this Court suggest its Protective Order changed the standard civil law analysis of possession,

2   custody and control. Indeed, the Protective Order is irrelevant to the analysis in the Statement.

3   If the grand jury subpoenas are valid, the Protective Order would have no effect on a party's

4   duty to comply. *In Re Grand Jury Subpoena Served On Meserve, Mumper & Hughes.  United*

5   *States v. Janet Greeson's A Place For Us, Inc., et al.*, 62 F.3d 1222 (9th Cir. 1995). Rather, the

6   issues this Court had to address in its supervisory role over the grand jury proceedings was "the

7   grand jury's authority to subpoena foreign evidence that would otherwise be outside its

8   subpoena power" and whether the copying of such documents by the U.S. Department of

9   Justice "might ultimately jeopardize the criminal proceedings."[9] (Statement at 3-4.).Here this

10  Court is not the one charged with supervising document production in the state court

11  proceedings – that role belongs to the state courts where those proceedings are pending. This

12  Court need only decide whether its Protective Order makes those state court determinations of

13  the state law issues irrelevant, something that order clearly should not do,[10] and which the

14  Special Master repeatedly found it does not do.

15       Nor should this Court use its Protective Order as a vehicle for in effect replacing state

16  civil law procedures with federal criminal law procedures. The Court should decide this

17  question as a matter of civil law. As a matter of civil law, two principles are clear: protective

18  orders in one case should not limit discovery in another and one side should not have access to

19  unprivileged documents while similar access is denied to the other. The criminal law issues that

---

[9]Since neither state court investigation is a criminal investigation, and both states' laws
preclude the use of civil process to obtain materials for criminal cases that would not otherwise
be available, neither issue is relevant to the current motions. The latter issue is totally irrelevant
to objecting defendant CMO since it has already pled guilty in the criminal proceedings.
[10]  Johnson Decl. Ex. 2, 10-13; Ex. 3, 5-6.

1   drove the grand jury subpoena decision should have no more bearing on the state court civil

2   procedures than on the federal civil procedures in this MDL action – where these very same

3   documents have already been produced to all of the civil litigants.

### CONCLUSION

6   These defendants' creative lawyering has caused confusion about the purpose and effect

7   of this Court's Protective Order. It is within this Court's power to put an end to that confusion

8   by clarifying that the Protective Order and, by extension, this Court's civil sealing orders do not

9   prohibit these defendants from producing materials otherwise properly sought under state

10  subpoenas or civil investigative demands. We respectfully request the Court do so quickly by

11  entering the proposed order filed with the States' motions and attached hereto.

12  Dated: April 2, 2010                         Respectfully submitted,

                                                  The State of Illinois,
14                                                by Lisa Madigan,
                                                  Attorney General of Illinois

16                                                By: _____/s/_____

17                                                Blake L. Harrop
                                                  Senior Assistant Attorney General
18                                                Antitrust Bureau
19                                                Office of the Illinois Attorney General
                                                  100 W. Randolph Street
20                                                Chicago, Illinois 60601
                                                  (312) 814-1004

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The State of Washington
by Rob McKenna
Attorney General of Washington

By: _____/s/_____
Brady R. Johnson
Senior Counsel, Assistant Attorney General
Washington State Attorney General
Antitrust Division
800 Fifth Avenue
S. 2000, MS TB-14
Seattle, WA 98104
(206) 389-2848