**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL. No. 1827 |
| This Order Relates To:<br>NOKIA CORPORATION and NOKIA INC.,<br>　　　　Plaintiffs,<br>　v.<br>AU OPTRONICS CORP., *et al.*,<br>　　　　Defendants. | No. C 09-5609 SI<br>**ORDER GRANTING PLAINTIFFS' MOTION TO SERVE DEFENDANTS CHUNGHWA PICTURE TUBES AND TATUNG COMPANY THROUGH THEIR U.S. COUNSEL** |

　　Plaintiffs Nokia Corporation and Nokia, Inc. have filed a motion to serve two foreign defendants, Chunghwa Picture Tubes and Tatung Company, through their U.S. counsel pursuant to Federal Rule of Civil Procedure 4(f)(3). The parties stipulated to submit the motion without oral argument. For the reasons set forth below, the Court GRANTS the motion.

**BACKGROUND**

　　On November 25, 2009, plaintiffs Nokia Corporation and Nokia Inc. filed an individual complaint in this Court against numerous domestic and foreign defendants, including Chunghwa Picture Tubes ("Chunghwa") and Tatung Company ("Tatung"), for violations of state and federal antitrust laws. Pursuant to the Judicial Panel on Multidistrict Litigation's April 20, 2007 transfer order consolidating pretrial proceedings for a number of actions and this Court's July 3, 2007 related case pretrial order #1, the Clerk of this Court designated both of these cases as related to MDL No. 1827, M 07-1827.

Chunghwa and Tatung are foreign corporations with headquarters in Taiwan. Taiwan is not a signatory to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), and thus service cannot be effected on these defendants pursuant to the Hague Convention. On November 30, 2009, plaintiffs sent all defendants, including Chunghwa and Tatung,[1] requests to waive service of summons. In a stipulation filed on February 26, 2010, 21 defendants, including Tatung's domestic subsidiary, Tatung Company of America, stipulated to the waiver of service of process of the complaint. Neither Chunghwa nor Tatung joined in the stipulation, thus prompting the instant motion. Plaintiffs have not attempted to initiate service on Chunghwa and Tatung through the letter rogatory process.

## DISCUSSION

Plaintiffs have moved to serve Chunghwa and Tatung through their U.S. counsel pursuant to Federal Rule of Civil Procedure 4(f)(3). Rule 4(f)(3) permits service in a place not within any judicial district of the United States, "by . . . means not prohibited by international agreement as may be directed by the court." Fed. R. Civ. P. 4(f)(3).[2] Defendants argue that before plaintiffs can seek to serve them through their U.S. counsel, plaintiffs must first attempt to personally serve Chunghwa and Tatung via the letter rogatory process at their Taiwan addresses.

Plaintiffs contend that service through defendants' U.S. counsel is appropriate because of the substantial difficulty, time and expense that plaintiffs would face in serving the foreign defendants in Taiwan. Plaintiffs have submitted a declaration from Valarie Williams, counsel for plaintiffs. Ms. Williams states that APS International, Inc. has provided her law firm with an estimate of the cost of obtaining Chinese translations of plaintiffs' complaint and other documents, and of the cost of effecting service of process on Chunghwa and Tatung pursuant to letters rogatory. Williams Decl. ¶ 16. Ms.

---

[1] As discussed *infra*, prior to Nokia filing its complaint, Tatung had not been named as a defendant in the MDL. Because Tatung's U.S. subsidiary, Tatung Company of America, was previously named as a defendant in the MDL, counsel for Nokia forwarded the service documents to lead counsel for Tatung Company of America and requested that counsel for the subsidiary waive service on behalf of Tatung.

[2] Federal Rule of Civil Procedure 4(h)(2) authorizes service of process on a foreign business entity in a manner prescribed by Rule 4(f) for individuals.

2

Williams states that according to the APS estimate, "Nokia will incur a charge of $5,915.00 for translating Nokia's Complaint and the other documents associated with the Nokia Action into Chinese. APS also estimates that Nokia will incur charges of $2,476.40 each for processing the letters rogatory for Chunghwa and Tatung and for paying the fees required by the U.S. Department of State for service on those entities." *Id*. ¶ 18, Ex. E (estimate). In addition, Ms. Williams states that according to the APS estimate, "service of Nokia's Complaint and other documents associated with the Nokia Action by the letter rogatory process could take six (6) to twelve (12) months to complete." *Id*. ¶ 19.

Plaintiffs also assert that service through defendants' U.S. counsel comports with due process because defendants have notice of Nokia's claims. Plaintiffs note that Chunghwa has been represented in the MDL by the law firm of Gibson, Dunn & Crutcher LLP since June 2008. Since that time, Gibson Dunn has repeatedly appeared as counsel for Chunghwa and has answered complaints, provided declarations, joined defendants' motions to dismiss, and negotiated settlements with the direct purchaser plaintiffs and the indirect purchaser plaintiffs. *Id*. ¶ 8(a). Tatung Company of America has been represented in the MDL by the law firm of Baker & McKenzie LLP since January 2008. Since that time, Baker has repeatedly appeared as counsel for Tatung Company of America and has filed motions to dismiss, filed declarations, answered complaints, opposed class certification, and attended depositions on behalf of Tatung Company of America. *Id*. ¶ 8(b).

While both defendants assert that service through their counsel would violate due process, Tatung argues that it is even more unfair to authorize such service with respect to it since Tatung is not a defendant in the MDL, and was only first sued in this action. Plaintiffs respond that the interrelationship between Tatung, Tatung Company of America, and Chunghwa shows that service on U.S. counsel for those entities is reasonably calculated to apprise Tatung of plaintiffs' claims. Plaintiffs note that in the MDL, Tatung Company of America has admitted that Tatung owns 50% of its stock, as well as 30% of the stock of Chunghwa. *See* Docket Nos. 509 & 775 in M 07-1827. The other half of Tatung Company of America is owned by Lun Kuan Lin, the daughter of Tatung's former Chairman, T.S. Lin. Compl. ¶ 40. Plaintiffs have submitted the deposition testimony of Chien Hon "Frank" Lin, Chairman and President of Chunghwa. Reply Williams Decl. Ex. A. In his deposition, Mr. Lin states that his brother W.S. Lin, who serves as Chairman and CEO of Tatung, asked him to move into the

3

position of Chairman and President of Chunghwa. *Id.* at 78:18-79:4. Mr. Lin also testified that Tatung is the main shareholder of Chunghwa, and that there are no other shareholders that hold a significant interest in that company. *Id.* at 79:18-23. Mr. Lin also testified that Tatung has the authority to make hiring and commercial decisions for Chunghwa. *Id.* at 79:6-17. Tatung also shares board of director representatives with Chunghwa. Compl. ¶ 38. In addition, plaintiffs note that Tatung, Tatung Company of America, and Chunghwa are all represented by Baker & McKenzie.

The Court finds that it is appropriate to order service on defendants through their U.S. counsel. The Ninth Circuit has rejected the argument that "Rule 4(f) should be read to create a hierarchy of preferred methods of service of process. [Appellant]'s interpretation would require that a party attempt service of process by those methods enumerated in Rule 4(f)(2), including diplomatic channels and letters rogatory, before petitioning the court for alternative relief under Rule 4(f)(3). We find no support for [this] position. No such requirement is found in the Rule's text, implied by its structure, or even hinted at in the advisory committee notes." *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). The Ninth Circuit concluded "that service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Id.* at 1515 (internal citation omitted).

Plaintiffs need not first attempt to personally serve defendants before they may reasonably conclude that service by letters rogatory is more expensive and time-consuming than serving defendant's counsel. As plaintiffs note, earlier in the MDL the direct purchaser plaintiffs spent many months attempting to effect service on some Taiwanese defendants through the letter rogatory process, and this process proved time-consuming, expensive, and burdensome. *See* Docket No. 725 (Order Re: Defendant Nexgen Mediatech Inc.'s Motion to Dismiss for Insufficient Service of Process; Quashing Service; and Granting Direct Purchaser Plaintiffs' Motion to Serve Nexgen Through its Counsel under Fed.R.Civ.P. 4(f)(3)).[3] In light of the availability of alternative, speedier relief under Rule 4(f)(3), the

---

[3] In that order, the Court held that the record did not demonstrate that defendant Nexgen Mediatech, Inc., a Taiwanese corporation, had been properly served by the letter rogatory method, and granted the direct purchaser plaintiffs' request to serve Nexgen through its U.S. counsel. In three other individual cases related to the MDL, the Court granted the plaintiffs' motions to serve Taiwanese defendants, including Chunghwa, through their U.S. counsel. *See ATS Claim, LLC v. Epson Elecs. Am.*

4

Court finds that there is no reason to require service through letters rogatory in the instant action, particularly given the stage of the litigation in the MDL and the significant discovery that is already underway in those proceedings.

The Court also finds that service on defendants through their U.S. counsel comports with due process. Service under Rule 4(f)(3) must "comport with constitutional notions of due process," meaning that service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Properties*, 284 F.3d at 1016-17 (internal quotation and citation omitted). Here, the record shows that Chunghwa, Tatung Company of America, and Tatung have substantial common ownership, shared management, and collective legal representation. Under these circumstances, the Court finds it reasonable to infer that Chunghwa and Tatung have sufficient notice of this case and that service of defendants through their U.S. counsel will comport with due process. *See FMAC Loan Receivables*, 228 F.R.D. at 534 (stating that the numerous motions filed by defendant's attorney makes it "abundantly clear" that defendant has been in constant communication with his attorney); *see also In re Cathode Ray Tubes (CRT) Antitrust Litig.*, MDL No. 1917, No. 07-5944 SC, 2008 WL 4104341, at *1 (N.D. Cal. Sept. 3, 2008) (authorizing service on foreign defendants through U.S. subsidiaries and domestic counsel); *In re LDK Solar Sec. Litig.*, C No. 07-5182 WHA, 2008 WL 2415186 at *2 (N.D. Cal. June 12, 2008) (authorizing service on foreign corporation and foreign individuals on corporation's domestic subsidiary, and noting "[s]ignificantly, FRCP 4(f)(3) stands independently of FRCP 4(f)(1); it is not necessary for plaintiffs to first attempt service through 'internationally agreed means' before turning to 'any other means not prohibited by international agreement.'").

Defendants rely on *Forum Financial Group v. President & Fellows of Harvard College*, 199 F.R.D. 22 (D. Me. 2001), which was cited in *Rio Properties* as an example of a case in which service had been authorized on a foreign defendant through its U.S. counsel. In *Forum Financial*, the foreign defendant had, *inter alia*, "actively evaded" service and was living under an assumed name. *Id*. at 23-24. Defendants suggest that *Rio Properties* is limited to cases involving facts similar to *Forum

*Inc., et al.*, C 09-1115 (Docket No. 70), *AT&T Mobility LLC v. AU Optronics et al.*, C 09-4997 SI (Docket No. 42), and *Motorola Inc. v. AU Optronics et al.*, C 09-5840 SI (Docket No. 33).

5

**United States District Court**
For the Northern District of California

Case 3:07-md-01827-SI   Document 1779   Filed 05/28/10   Page 6 of 6

*Financial.* However, there is nothing in *Rio Properties* limiting its holding in the manner suggested by defendants; to the contrary, *Rio Properties* held that district courts have "sound discretion" to determine when the "particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)" and noted that "trial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Id.* at 1016. In *Rio Properties*, the court held that service on the defendant's attorney was appropriate there because the attorney had been specifically consulted regarding the lawsuit and it "seemed clear" that the attorney was in contact with the client. *Id.* at 1017; *see also FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534-35 (E.D. Va. 2005).

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion to serve Chunghwa Picture Tubes Ltd. and Tatung Company through their U.S. counsel pursuant to Federal Rule of Civil Procedure 4(f)(3). (Docket No. 11 in C 09-5609 SI and Docket No. 1637 in M 07-1827 SI).

**IT IS SO ORDERED.**

Dated: May 28, 2010

_____
SUSAN ILLSTON
United States District Judge

6