United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br>_____/ | No.  M 07-1827 SI<br>MDL. No. 1827 |
| This Order Relates To: | No. C 09-4997 SI |
| AT&T MOBILITY LLC, *et al.*,<br><br>        Plaintiffs,<br>  v.<br>AU OPTRONICS CORP., *et al.*,<br><br>        Defendants.<br>_____/ | **ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISMISS AND GRANTING PLAINTIFFS LEAVE TO AMEND** |

On June 23, 2010, the Court held a hearing on defendants' joint motion to dismiss the complaint. For the reasons set forth below, the Court GRANTS defendants' joint motion to dismiss and GRANTS plaintiffs leave to amend the complaint.

**BACKGROUND**

On October 20, 2009, plaintiffs[1] filed an individual complaint in this Court against numerous domestic and foreign defendants for violations of state and federal antitrust laws. Pursuant to the Judicial Panel on Multidistrict Litigation's April 20, 2007 transfer order consolidating pretrial proceedings for a number of actions and this Court's July 3, 2007 related case pretrial order #1, the

---

[1] Plaintiffs are AT&T Mobility LLC; AT&T Corp.; AT&T Services, Inc.; Bellsouth Telecommunications, Inc.; Pacific Bell Telephone Company; AT&T Operations, Inc.; AT&T Datacomm, Inc.; and Southwestern Bell Telephone Company.

Clerk of this Court designated this case as related to MDL No. 1827, M 07-1827.

The amended complaint, filed on January 29, 2010, alleges a global price-fixing conspiracy by suppliers of liquid crystal display (LCD) panels[2] used in mobile wireless handsets, two-way radios, computer monitors, televisions and other electronic products. Amended Compl. ¶¶ 1-6. Plaintiff AT&T Mobility is a provider of mobile wireless telecommunications services and sells mobile handsets to its customers. *Id.* ¶ 5. Plaintiff AT&T[3] is a provider of voice and data communications services, including traditional and long-distance services, internet access services, private enterprise network services, and other telecommunications services. *Id.* ¶ 6. The amended complaint alleges that during the conspiracy period (1996-2006), AT&T Mobility purchased more than 300 million mobile wireless handsets for resale to its customers, and that "as a result of defendants' conspiracy to fix the price of LCD Panels, the prices of these handsets containing LCD Panels were also were artificially inflated." *Id.* ¶ 5. In addition, plaintiffs allege that defendants' conspiracy raised the price of LCD panels incorporated into products such as desktop computers and notebook computers that AT&T Mobility and AT&T purchased for their own internal use between 1996 and 2006. *Id.* ¶¶ 5-6. Plaintiffs' claims are based on both their direct purchases of products from defendants, as well as indirect purchases through original equipment manufacturers (OEMs).

Plaintiffs' first claim for relief seeks treble damages and injunctive relief under Section 1 of the Sherman Act, and Sections 4 and 16 of the Clayton Act. Plaintiffs' second claim for relief seeks treble damages under California's Cartwright Act. "In the alternative" to the federal and Cartwright Act claims, plaintiffs' third claim for relief alleges claims under California's Unfair Competition law, as well as the antitrust, consumer protection, unfair trade and deceptive practices laws of twenty other states, the District of Columbia, and Puerto Rico. *Id.* ¶ 190.

## LEGAL STANDARD

---

[2] As discussed *infra*, the amended complaint defines "LCD panels" as including three different types of panels using three different technologies: thin film transistor (TFT) panels, color super-twist nematic (CSTN) panels, and monochrome super-twist nematic (MSTN) panels. *Id.* ¶ 16.

[3] With the exception of AT&T Mobility, the amended complaint refers to all of the other plaintiffs collectively as "AT&T." *Id.* ¶ 26.

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.    Contacts with states/due process**

Defendants move to dismiss all of plaintiffs' state law claims on the ground that the complaint does not allege sufficient contacts between the respective states and plaintiffs' claims to satisfy Due Process. In particular, defendants argue that plaintiffs' failure to allege that they bought the products at issue in California, or any of the other states whose laws they seek to invoke, requires dismissal of the state law claims. Defendants rely on several cases in which courts have dismissed state antitrust claims, either for lack of standing or on due process grounds, where the plaintiffs did not allege that they purchased price-fixed products in those states. *See, e.g.*, *Pecover v. Electronic Arts Inc.*, 633 F. Supp.

3

2d 976, 984 (N.D. Cal. 2009) (dismissing antitrust claims under laws of 18 states in which plaintiffs did not purchase products); *In re Graphics Processing Units Antitrust Litig. ("GPU")*, 527 F. Supp. 2d 1011, 1027-29 (N.D. Cal. 2007) (dismissing for lack of standing antitrust claims under laws of states in which plaintiffs did not purchase products, and striking all references to a nationwide class under California law because extraterritorial application of California law would violate due process). Defendants also argue that plaintiffs do not explain why or under what circumstances the Court would apply, "in the alternative" to California law, the laws of the numerous other states to any of the claims alleged in the amended complaint.

To decide whether the application of a particular State's law comports with the Due Process Clause, the Court must examine "the contacts of the State, whose law [is to be] applied, with the parties *and* with the occurrence or transaction giving rise to the litigation." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981) (emphasis added); *see also Phillips Petroleum v. Shutts*, 472 U.S. 797, 821-22 (1985) (Due Process requires a "significant contact or significant aggregation of contacts" between the plaintiff's claims and the state at issue). In a price-fixing case, the relevant "occurrence or transaction" is the plaintiff's purchase of an allegedly price-fixed good. *See GPU*, 527 F. Supp. 2d at 1028-29.

With regard to California, plaintiffs contend that the application of California law comports with Due Process because defendants did business in California, certain defendants maintained offices and/or sales agents in California, and because one of the AT&T plaintiffs is headquartered in California. However, these allegations do not provide a link between plaintiffs' claims that they purchased price-fixed products and California. Plaintiffs also rely on various defendants' plea agreements, which state that "acts in furtherance of this conspiracy were carried out in the Northern District of California." The plea agreements state that the "acts in furtherance" of the conspiracy were sales of TFT-LCD panels and products to customers within the Northern District. *See, e.g.*, Plea Agreement at 4, *United States v. LG Display Co.*, (Docket No. 14 in CR 08-803). However, the fact that some defendants have admitted to selling price-fixed goods to customers in this District does not establish the requisite connection with California because those plea agreements do not state, nor have plaintiffs alleged, that any defendants sold products to any of the plaintiffs in California.

In addition, plaintiffs argue that there is a sufficient nexus between their claims and all of the

4

various state laws because plaintiffs conduct a substantial amount of business in each of the states. Again, however, the fact that plaintiffs have a presence in the various states does not establish a link between plaintiffs' antitrust claims and the States. Plaintiffs also argue that they expect that defendants will assert, as a defense under the various state laws, that plaintiffs passed-on the alleged overcharges when AT&T sold the finished products to end consumers. Plaintiffs do not cite any authority for the proposition that Due Process can be satisfied by on the location of a plaintiff's resale of a product.

The Court agrees that in order to invoke the various state laws at issue, plaintiffs must be able to allege that " the occurrence or transaction giving rise to the litigation" – plaintiffs' purchases of allegedly price-fixed goods – occurred in the various states. *Allstate Ins. Co.*, 449 U.S. at 308. The Court GRANTS defendants' motion to dismiss all of the state law claims and GRANTS plaintiffs leave to amend the complaint to allege each plaintiffs' contacts with each State – here, purchases of price-fixed goods – in order to satisfy Due Process. Because Due Process requires the court to apply "an individualized choice of law analysis to each plaintiff's claims," *Georgene v. Amchem Prods.*, 83 F.3d 610, 627 (3d Cir. 1996), the amended complaint shall contain plaintiff-specific allegations. In addition, if plaintiffs decide to plead claims "in the alternative" in the amended complaint, plaintiffs shall explain under what circumstances plaintiffs would pursue the alternative claims.[4]

## II.   Allegations regarding non-TFT technology

The amended complaint alleges that the conspiracy had the effect of "raising, fixing, maintaining, and/or stabilizing the prices of" LCD panels that utilized three different technologies: TFT panels, color super-twist nematic ("CSTN") panels, and monochrome super-twist nematic ("MSTN") panels. Compl. ¶¶ 16, 154. The amended complaint's factual allegations regarding a price-fixing conspiracy all relate to TFT-LCD panels, and there are no allegations specifically regarding price-fixing

---

[4] Relying on this Court's earlier decision in the MDL class actions, defendants have also separately moved to dismiss plaintiffs' indirect purchaser claims under Puerto Rico's antitrust statute. In the MDL, the Court held that indirect purchasers do not have standing under Puerto Rico's antitrust statute because that statute is to be construed in harmony with federal antitrust law, and there has been no repeal of *Illinois Brick* in Puerto Rico. Plaintiffs' opposition concedes that dismissal of their Puerto Rico indirect purchaser claims is appropriate. Accordingly, the Court GRANTS defendants' motion to dismiss plaintiffs' indirect purchaser claims under the Puerto Rico antitrust statute.

STN-LCD panels.

Defendants contend that plaintiffs have not alleged any facts to support their assertion that the alleged conspiracy encompassed LCD panels using CSTN or MSTN technology. These two super-twist nematic panel technologies (also referred to as "STN" or "passive matrix") are older technologies with slower response times than TFT-LCD panels (referred to as "active matrix"). Defendants contend that plaintiffs do not support their broader conspiracy claims with any factual allegations that are separately and specifically directed to STN panels. Defendants also note that neither the class cases nor the DOJ's investigation into the LCD industry have alleged any price-fixing conspiracy related to STN LCD panels.

Plaintiffs respond that the complaint satisfies *Twombly* because in light of the admitted conspiracy to fix the price of TFT-LCD panels, it is plausible that defendants also conspired to fix the prices of STN-LCD panels because these panels are close substitutes for TFT-LCD panels. Plaintiffs have also cited information, not contained in the complaint, in support of their assertion that STN-LCD panels are close substitutes for TFT-LCD panels. *See* Opposition at 10:7-17; Murray Decl. Ex. 7. Plaintiffs rely on cases in which courts have held that an admitted conspiracy to fix the price of one product makes plausible the allegation that the same defendants also conspired to fix the product of a related product. *See, e.g., In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 661 (7th Cir. 2002); *In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008); *In re Chocolate Confectionary Antitrust Litig.* 602 F. Supp. 2d 538, 576-77 (M.D. Pa. 2009). However, as defendants note, in these cases there were specific factual allegations to support the conspiracy claims with respect to the specific products or markets at issue, in addition to allegations concerning guilty pleas with respect to the other products or markets. For example, in *SRAM* the complaint contained allegations about the susceptibility of the SRAM market to collusion, as well as specific communications between the defendants about the price and demand for SRAM. 580 F. Supp. 2d at 902. Judge Wilken held that the plaintiffs could rely on the guilty pleas entered by numerous defendants in the DRAM litigation because "the same actors associated with certain Defendants were responsible for marketing both SRAM and DRAM." *Id*. at 903. However, Judge Wilken also noted that "[a]lthough the allegations regarding the DRAM guilty pleas are not sufficient to support Plaintiffs' claims standing on their own, they do

6

support an inference of a conspiracy in the SRAM industry." *Id.*; *see also In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d at 661 (reversing summary judgment in favor of defendants where plaintiffs adduced evidence of agreement to fix prices of high fructose corn syrup, as well as admission by one defendant that it fixed prices on two related products during overlapping time period); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 551-52, 557 (allegations of price-fixing in Canadian chocolate market supported allegations of price-fixing in U.S. chocolate market where plaintiffs alleged specific anticompetitive conduct in U.S. as well as integration of the two markets).

"To state a claim under Section 1 of the Sherman Act, . . . claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which if true, will prove" a conspiracy. *Kendall v. VISA U.S.A. Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). Here, the amended complaint does not contain any specific factual allegations that defendants conspired to fix prices of STN-LCD panels, and the Court cannot infer the existence of such an expanded conspiracy based solely on allegations of price-fixing in the TFT-LCD market. The Court GRANTS defendants' motion to dismiss and GRANTS plaintiffs leave to amend.[5]

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' joint motion to dismiss and GRANTS plaintiffs leave to amend the complaint. (Docket No. 35 in C 09-4997 SI, and Docket No. 1558 in M 07-1827 SI). The amended complaint shall be filed no later than **July 23, 2010.**

**IT IS SO ORDERED.**

Dated: June 28, 2010

SUSAN ILLSTON
United States District Judge

---

[5] Plaintiffs' opposition asserts that newly discovered evidence "confirms the validity of their STN allegations." Opposition at 12:20. Defendants dispute the significance of the deposition and email excerpts cited by plaintiffs in their opposition. The Court makes no finding at this time about whether the evidence described in plaintiffs' opposition would support allegations of a conspiracy to fix prices of STN-LCD panels.