IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL. No. 1827 |
| This Order Relates To:<br><br>NOKIA CORPORATION and NOKIA, INC.,<br><br>Plaintiffs,<br>v.<br><br>AU OPTRONICS CORPORATION, *et al.*,<br><br>Defendants. | No. C 09-5609 SI<br><br>**ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISMISS AND GRANTING PHILIPS ELECTRONICS NORTH AMERICA CORPORATION'S MOTION TO DISMISS; GRANTING PLAINTIFFS LEAVE TO AMEND** |

On June 23, 2010, the Court held a hearing on defendants' joint motion to dismiss the complaint, and on Philips Electronics North America Corporation's motion to dismiss the complaint. For the reasons set forth below, the Court GRANTS defendants' motions and GRANTS plaintiffs leave to amend the complaint.

**BACKGROUND**

On November 25, 2009, plaintiffs Nokia Corporation and Nokia, Inc. filed an individual complaint against numerous domestic and foreign defendants for violations of state and federal antitrust laws. Pursuant to the Judicial Panel on Multidistrict Litigation's April 20, 2007 transfer order consolidating pretrial proceedings for a number of actions and this Court's July 3, 2007 related case pretrial order #1, the case was designated as related to MDL No. 1827, M 07-1827.

The complaint alleges a global price-fixing conspiracy by suppliers of liquid crystal display

(LCD) panels. Nokia Corporation is incorporated under the laws of Finland. Compl. ¶ 30. Nokia, Inc., is an American subsidiary of Nokia Corporation. *Id.* ¶ 31. Nokia Corporation is a "global leader in the design, manufacture, and supply of mobile wireless handsets." *Id.* ¶ 30. The complaint alleges that during the conspiracy period (1996-2006), "LCDs used in mobile wireless handsets included at least four different passive and active matrix technologies: thin film transistor panels ('TFT panels'), color super-twist nematic panels ('CSTN panels'), film super-twist nematic panels ('FSTN panels'), and monochrome super-twist nematic panels ('MSTN panels'). Defendants' and their co-conspirators' price-fixing conspiracy alleged herein had the effect of raising, fixing, maintaining, and/or stabilizing the prices of LCDs using TFT, CSTN, FSTN, and MSTN technologies." *Id.* ¶ 24.

Plaintiffs' first claim for relief seeks treble damages and injunctive relief under Section 1 of the Sherman Act, and Sections 4 and 16 of the Clayton Act. The second claim for relief seeks treble damages under California's Cartwright Act. "In the alternative," to the federal and Cartwright Act claims, the third claim for relief alleges claims under California's Unfair Competition Law, as well as the antitrust, consumer protection, unfair trade and deceptive practices laws of twenty-one other states and the District of Columbia. *Id.* ¶ 171.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-78 (1994) (citation omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Publishing Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

## II. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

## I. Defendants' joint motion to dismiss

### A. Foreign Trade Antitrust Improvements Act (FTAIA)

Defendants contend that the Court lacks subject matter jurisdiction over plaintiffs' claims to the extent they are based on foreign purchases of LCD panels and products. The Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA"), amends the Sherman Act and "excludes from [its] reach much anti-competitive conduct that causes only foreign injury." *F. Hoffman-LaRoche, Ltd. v. Empagran (Empagran I)*, 542 U.S. 155, 158 (2004). The FTAIA establishes a general rule that the

Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations." 15 U.S.C. § 6a.

In response, plaintiffs' opposition states, "Nokia is only claiming damages for domestic purchases and purchases of products imported directly into the United States by Defendants and their co-conspirators. Nokia does not concede that the [FTAIA] would bar it from bringing claims for additional purchases related to LCDs and LCD Products purchased from Defendants by subsidiaries or outsourced manufacturers and subsequently imported into the United States. Nokia, however, has elected not to pursue those claims in this action." Opposition at 1 n.3.

Notwithstanding this statement, defendants contend that the complaint is still deficient because only Nokia Inc. alleges that it made purchases from defendants in interstate or U.S. import commerce, and there are no allegations that Nokia Corporation of Finland made any such purchases. Defendants note that aside from certain allegations specific to Nokia Inc., the complaint makes allegations about "Nokia," which the complaint defines as including "collectively and/or individually" Nokia Inc., Nokia Corporation, and all of their respective subsidiaries, assigns, affiliates, or related companies. *See* Compl. ¶ 1. At the hearing, plaintiffs' counsel asserted that Nokia Corporation has made purchases of LCDs from defendants in interstate or U.S. import commerce, although plaintiffs' counsel conceded that the complaint does not contain any such allegations specific to Nokia Corporation.

The Court finds that, as reframed in plaintiffs' opposition, plaintiffs' claims are not barred by the FTAIA because plaintiffs are seeking damages only for domestic purchases and purchases of products directly imported by defendants or their co-conspirators into the United States. However, the Court agrees with defendants that Nokia Corporation must allege information about its purchases, and that the complaint must differentiate between the two plaintiffs. Accordingly, the Court GRANTS defendants' motion to dismiss and GRANTS plaintiffs leave to amend to allege where each plaintiffs' purchases occurred.

### B. Contacts with states/due process

Defendants move to dismiss all of plaintiffs' state law claims on the ground that the complaint does not allege sufficient contacts between the respective states and plaintiffs' claims to satisfy Due

4

Process. In particular, defendants argue that plaintiffs' failure to allege that they bought the products at issue in California, or any of the other states whose laws they seek to invoke, requires dismissal of the state law claims. Defendants rely on several cases in which courts have dismissed state antitrust claims, either for lack of standing or on due process grounds, where the plaintiffs did not allege that they purchased price-fixed products in those states. *See, e.g., Pecover v. Electronic Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009) (dismissing antitrust claims under laws of 18 states in which plaintiffs did not purchase products); *In re Graphics Processing Units Antitrust Litig.* ("*GPU*"), 527 F. Supp. 2d 1011, 1027-29 (N.D. Cal. 2007) (dismissing for lack of standing antitrust claims under laws of states in which plaintiffs did not purchase products, and striking all references to a nationwide class under California law because extraterritorial application of California law would violate due process). Defendants also argue that plaintiffs do not explain why or under what circumstances the Court would apply, "in the alternative" to federal law and the Cartwright Act, the laws of the numerous other states to any of the claims alleged in the amended complaint.

To decide whether the application of a particular State's law comports with the Due Process Clause, the Court must examine "the contacts of the State, whose law [is to be] applied, with the parties and with the occurrence or transaction giving rise to the litigation." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981) (emphasis added); *see also Phillips Petroleum v. Shutts*, 472 U.S. 797, 821-22 (1985) (Due Process requires a "significant contact or significant aggregation of contacts" between the plaintiff's claims and the state at issue). In a price-fixing case, the relevant "occurrence or transaction" is the plaintiff's purchase of an allegedly price-fixed good. *See GPU*, 527 F. Supp. 2d at 1028-29.

Plaintiffs contend that there are significant contacts between Nokia's claims and California, including defendants' unlawful conduct in the state, the transaction of business in the state, and the sale of products in the state. Plaintiffs note that defendants did business in California, and certain defendants maintained offices and/or sales agents in California. However, these allegations do not provide a link between plaintiffs' claims that they purchased price-fixed products and California. Plaintiffs also rely on various defendants' plea agreements, which state that "acts in furtherance of this conspiracy were carried out in the Northern District of California." The plea agreements state that the "acts in furtherance" of the conspiracy were sales of TFT-LCD panels and products to customers within the

5

Northern District. *See, e.g.*, Plea Agreement at 4, *United States v. LG Display Co.*, (Docket No. 14 in CR 08-803). However, the fact that some defendants have admitted to selling price-fixed goods to customers in this District does not establish the requisite connection with California because those plea agreements do not state, nor have plaintiffs alleged, that any defendants sold products to plaintiffs in California. In addition, plaintiffs argue that there is a sufficient nexus between their claims and all of the various state laws because Nokia conducts a substantial amount of business in each of the states. Again, however, the fact that Nokia has a presence in the various states does not establish a link between plaintiffs' antitrust claims and the States.

The Court agrees that in order to invoke the various state laws at issue, plaintiffs must be able to allege that " the occurrence or transaction giving rise to the litigation" – the purchases of allegedly price-fixed goods – occurred in the various states. *Allstate Ins. Co.*, 449 U.S. at 308. Under plaintiffs' theory, Nokia could invoke California law – or any of the other state statutes alleged in the complaint – even if none of plaintiffs' purchases of price-fixed goods occurred in those states, simply because Nokia and defendants have a presence in the states at issue, and/or because defendants sold price-fixed good to other consumers in those states. However, such contacts do not provide a necessary link between plaintiffs' *claims* and the states whose laws plaintiffs seek to invoke. The Court GRANTS defendants' motion to dismiss all of the state law claims and GRANTS plaintiffs leave to amend the complaint to allege contacts with each State – here, purchases of price-fixed goods – in order to satisfy Due Process. In addition, if plaintiffs decide to plead claims "in the alternative" in the amended complaint, plaintiffs must explain under what circumstances they would pursue the alternative claims.

### C.     Allegations regarding non-TFT technology

The amended complaint alleges that the conspiracy had the effect of "raising, fixing, maintaining, and/or stabilizing the prices of LCDs using TFT, CSTN, FSTN, and MSTN technologies." Compl. ¶ 24. The amended complaint's factual allegations regarding a price-fixing conspiracy all relate to TFT-LCD panels, and there are no allegations specifically regarding price-fixing CSTN, FSTN, or MSTN-LCD panels.

Defendants contend that plaintiffs have not alleged any facts to support their assertion that the

alleged conspiracy encompassed LCD panels using CSTN, FSTN or MSTN technology. These technologies are older technologies with slower response times than TFT-LCD panels (referred to as "active matrix"). Defendants contend that plaintiffs do not support their broader conspiracy claims with any factual allegations that are separately and specifically directed to STN panels. Defendants also note that neither the class cases nor the DOJ's investigation into the LCD industry have alleged any price-fixing conspiracy related to STN LCD panels.

In response, plaintiffs contend that the complaint satisfies *Twombly* because in light of the admitted conspiracy to fix the price of TFT-LCD panels, it is plausible that defendants also conspired to fix the prices of STN-LCD panels because these panels are close substitutes for TFT-LCD panels. Plaintiffs also rely on cases in which courts have held that an admitted conspiracy to fix the price of one product makes plausible the allegation that the same defendants also conspired to fix the price of a related product. *See, e.g.*, *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 661 (7th Cir. 2002); *In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008); *In re Chocolate Confectionary Antitrust Litig.* 602 F. Supp. 2d 538, 576-77 (M.D. Pa. 2009). However, as defendants note, in these cases there were specific factual allegations to support the conspiracy claims with respect to the specific products or markets at issue, in addition to allegations concerning guilty pleas with respect to the other products or markets. For example, in *SRAM* the complaint contained allegations about the susceptibility of the SRAM market to collusion, as well as specific communications between the defendants about the price and demand for SRAM. 580 F. Supp. 2d at 902. Judge Wilken held that the plaintiffs could rely on the guilty pleas entered by numerous defendants in the DRAM litigation because "the same actors associated with certain Defendants were responsible for marketing both SRAM and DRAM." *Id*. at 903. However, Judge Wilken also noted that "[a]lthough the allegations regarding the DRAM guilty pleas are not sufficient to support Plaintiffs' claims standing on their own, they do support an inference of a conspiracy in the SRAM industry." *Id*.; *see also In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d at 661 (reversing summary judgment in favor of defendants where plaintiffs adduced evidence of agreement to fix prices of high fructose corn syrup, as well as admission by one defendant that it fixed prices on two related products during overlapping time period); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 551-52, 557 (allegations of

7

price-fixing in Canadian chocolate market supported allegations of price-fixing in U.S. chocolate market where plaintiffs alleged specific anticompetitive conduct in U.S. as well as integration of the two markets).

Similarly, plaintiffs assert that their allegations of a price-fixing conspiracy involving STN LCDs are made plausible by the fact that a number of defendants are being investigated by the DOJ and foreign antitrust authorities for participating in a global conspiracy to fix the prices of cathode ray tubes. Again, however, the fact that some defendants are under investigation for anticompetitive conduct in the cathode ray tube market does not, on its own, state a claim for price-fixing STN LCDs. "To state a claim under Section 1 of the Sherman Act, . . . claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which if true, will prove" a conspiracy. *Kendall v. VISA U.S.A. Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). Here, the amended complaint does not contain any specific factual allegations that defendants conspired to fix prices of STN-LCD panels, and the Court cannot infer the existence of such an expanded conspiracy based solely on allegations of price-fixing in the TFT-LCD market, or any other non-STN market. The Court GRANTS defendants' motion to dismiss and GRANTS plaintiffs leave to amend.

## II. Philips Electronics North America Corporation's motion to dismiss

Defendant Philips Electronics North America Corporation (PENAC) moves to dismiss the complaint for failure to state a claim. PENAC contends that the complaint does not allege any substantive conduct on the part of PENAC showing that PENAC participated in the alleged price-fixing conspiracy.

The complaint alleges that PENAC "is a wholly owned subsidiary of Philips International B.V., which in turn is a wholly-owned subsidiary of Royal Philips Electronics N.V." Compl. ¶ 53. The complaint alleges that Royal Philips Electronics N.V. ("Royal Philips") is a Dutch holding company incorporated in the Netherlands, and that it is a co-conspirator in the alleged price-fixing conspiracy. *Id*. ¶ 69. The only specific allegations regarding PENAC in the complaint are the following:

> During the Conspiracy Period, Nokia purchased LCDs from Royal Philips Electronics N.V. and Philips Electronics North America Corporation themselves or via their subsidiaries. Philips Electronics North America Corporation also manufactured, sold,

8

> and/or distributed LCDs to other purchasers through the United States and elsewhere during the Conspiracy Period. [PENAC] participated in the conspiracy through the actions of its officers, employees and representatives acting with actual or apparent authority.

*Id*. ¶ 53. The complaint also alleges that "Philips" has acknowledged receiving a Statement of Objections from the European Commission concerning its alleged participation in a conspiracy in violation of Article 81 of the EC Treaty and Article 53 of the Agreement on the European Economic Area. *Id*. ¶ 139. According to PENAC, it was Royal Philips, and not PENAC, that received the Statement of Objections. *See* Cullen Decl. Ex. B.

PENAC contends that these allegations are insufficient to state a claim because there are no allegations of any anticompetitive conduct by PENAC. PENAC contends that the complaint simply asserts, without any factual particulars, that PENAC "participated in the conspiracy," and that the only "facts" in support of that allegation are that PENAC manufactured, sold and distributed LCDs. PENAC argues that under *Twombly*, allegations of such plainly legal conduct are insufficient to state an antitrust claim against PENAC. PENAC notes that *Twombly* requires "more than labels and conclusions," and that the complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 555, 556; *see also Kendall*, 518 F.3d at 1047 (citing *Twombly* for the proposition that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to plead an antitrust violation). PENAC also notes that it has not been named as a defendant in any of the other actions in this MDL.

Plaintiffs contend that they have stated a claim against PENAC because the complaint alleges that (1) PENAC, along with Royal Philips and Royal Philips' joint venture LG Display, entered into an agreement with the other defendants to fix prices of LCDs; (2) PENAC "participated in the conspiracy through the actions of its officers, employees, and representatives acting with actual or apparent authority" and "implemented and policed the[] illegitimate agreements to fix prices and limit output for LCDs through numerous meetings," Compl. ¶¶ 53, 82; (3) PENAC acted as U.S. sales agent for Royal Philips; (4) Royal Philips has admitted receiving a Statement of Objections from the EC and held, during the conspiracy period, a controlling interest in its joint venture LG Display; and (5) LG Display has pled guilty to participating in the LCD price-fixing conspiracy.

9

The Court agrees with PENAC that the complaint falls short of alleging PENAC's role in the alleged conspiracy. Plaintiffs assert that paragraphs 3, 4, 5, 10, 50, 52, 53, 68, 69, 82, 87, 88, 105 and 142 support their allegations regarding PENAC's involvement in the conspiracy. However, only paragraph 53, quoted above, mentions PENAC; all of the other cited paragraphs contain allegations about other defendants, Royal Philips, and/or "defendants." Thus, the only specific allegations in the complaint regarding PENAC simply allege PENAC's corporate status, that Nokia purchased LCDs from PENAC or via PENAC's subsidiaries, that PENAC "manufactured, sold, and/or distributed LCDs to other purchasers through the United States and elsewhere," and that PENAC "participated in the conspiracy through the actions of its officers, employees, and representatives acting with actual or apparent authority." *Id*. ¶ 53. There is nothing in paragraph 53 or elsewhere alleging *how* PENAC participated in the conspiracy. Similarly, allegations and assertions about Royal Philips and LG Display are insufficient to state a claim against PENAC unless the complaint alleges a specific connection between PENAC and the alleged conspiracy.[1] While the complaint need not include elaborate detail about PENAC's role, the complaint "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 311-12 (D.N.J. 2004). Contrary to PENAC's assertions, the Court did not hold otherwise in the MDL class cases, and held in those cases that while detailed defendant by defendant pleading was not required by *Twombly*, an antitrust plaintiff must specifically plead how each individual defendant joined the alleged price-fixing conspiracy.

Accordingly, the Court GRANTS PENAC's motion to dismiss and GRANTS plaintiffs leave to amend.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' motions to dismiss and GRANTS plaintiffs leave to amend the complaint. (Docket No. 15 in C 09-5840 SI, and Docket Nos.

---

[1] PENAC notes that plaintiffs' opposition includes assertions about other entities, such as Philips Mobile Display Systems (PMDS) that do not appear in the complaint.

10

1687 and 1695 in M 07-1827 SI). The amended complaint shall be filed no later than **July 23, 2010.**

**IT IS SO ORDERED.**

Dated: June 29, 2010

SUSAN ILLSTON
United States District Judge