IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br><br>MDL. No. 1827 |
| This Order Relates To: | |
| AT&T MOBILITY LLC, *et al.*,<br><br>    Plaintiffs,<br>v.<br><br>AU OPTRONICS CORP., *et al.*,<br><br>    Defendants.<br>                                      / | No. C 09-4997 SI; No. C 09-5840 SI<br><br><br><br>**ORDER DENYING TATUNG COMPANY OF AMERICA'S MOTIONS TO DISMISS** |
| MOTOROLA, INC,<br><br>    Plaintiff,<br>v.<br><br>AU OPTRONICS CORPORATION, *et al.*,<br><br>    Defendants.<br>                                      / | |

      On June 23, 2010, the Court held a hearing on Tatung Company of America's motion to dismiss the complaints in these cases. For the reasons set forth below, the Court DENIES the motions.

**BACKGROUND**

      On October 20, 2009, plaintiff Motorola, Inc. ("Motorola") filed an individual complaint in the Northern District of Illinois against numerous domestic and foreign defendants for violations of state

and federal antitrust laws. Pursuant to the Judicial Panel on Multidistrict Litigation's April 20, 2007 transfer order consolidating pretrial proceedings for a number of actions and this Court's July 3, 2007 related case pretrial order #1, the case was designated as related to MDL No. 1827, M 07-1827 and transferred to this Court. Also on October 20, 2009, the AT&T plaintiffs[1] filed an individual complaint in this Court against numerous domestic and foreign defendants for violations of state and federal antitrust laws. Pursuant to the Judicial Panel on Multidistrict Litigation's April 20, 2007 transfer order consolidating pretrial proceedings for a number of actions and this Court's July 3, 2007 related case pretrial order #1, the Clerk of this Court designated this case as related to MDL No. 1827, M 07-1827.

The Motorola and AT&T complaints allege a global price-fixing conspiracy by suppliers of liquid crystal display (LCD) panels used in a range of electronic products, including mobile wireless handsets, two-way radios, computer monitors, and televisions. Motorola is a provider of mobile wireless telecommunications services and sells mobile wireless devices and two-way radios; both of these products incorporate LCD panels. Motorola Amended Compl. ¶¶ 23, 25. Motorola brings suit based on its own purchases of LCD panels and products, as well as purchases made by a number of Motorola subsidiaries that have assigned their claims to Motorola. *Id*. ¶ 24.

Plaintiff AT&T Mobility is a provider of mobile wireless telecommunications services and sells mobile handsets to its customers. AT&T Amended Compl. ¶ 5. Plaintiff AT&T[2] is a provider of voice and data communications services, including traditional and long-distance services, internet access services, private enterprise network services, and other telecommunications services. *Id*. ¶ 6. The amended complaint alleges that AT&T Mobility purchased more than 300 million mobile wireless handsets for resale to its customers, and that "as a result of defendants' conspiracy to fix the price of LCD Panels, the prices of these handsets containing LCD Panels were also were artificially inflated." *Id*. ¶ 5. In addition, the AT&T plaintiffs allege that defendants' conspiracy raised the price of LCD panels incorporated into products such as desktop computers and notebook computers that AT&T

---

[1] Plaintiffs are AT&T Mobility LLC; AT&T Corp.; AT&T Services, Inc.; Bellsouth Telecommunications, Inc.; Pacific Bell Telephone Company; AT&T Operations, Inc.; AT&T Datacomm, Inc.; and Southwestern Bell Telephone Company.

[2] With the exception of AT&T Mobility, the amended complaint refers to all of the other plaintiffs collectively as "AT&T." *Id*. ¶ 26.

Mobility and AT&T purchased for their own internal use between 1996 and 2006. *Id*. ¶¶ 5-6.

## LEGAL STANDARDS

### I.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-78 (1994) (citation omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Publishing Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

### II.  Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions

of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

Tatung Company of America ("TUS") moves to dismiss the complaints filed by AT&T and Motorola on three grounds. First, TUS contends that plaintiffs have failed to allege that they are direct purchasers with respect to TUS, and thus plaintiffs are barred from asserting their Sherman Act claims against TUS. Second, TUS contends that plaintiffs have failed to state a federal antitrust claim against TUS under the federal pleading standard mandated by *Twombly*, 550 U.S. 544 (2007). Third, TUS moves to dismiss the state law claims to the extent those claims are predicated on the federal claims, and because plaintiffs have failed to state a claim under the various state statutes alleged in the complaints.

## I.   Federal claims

TUS contends that plaintiffs' federal antitrust claims are barred under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). TUS argues that it is not an LCD manufacturer, that TUS is itself a direct purchaser of finished products containing LCDs or a direct or an indirect purchaser of LCDs themselves, and thus that TUS's customers are indirect purchasers who may not sue for damages under *Illinois Brick*. In support, TUS relies on the same declarations and evidence submitted in connection with TUS's motion to dismiss the direct purchaser plaintiffs' first amended consolidated complaint in the MDL, as well as a new declaration from TUS executive Mr. Chen.[3] TUS argues that the evidence it has submitted shows that TUS, Chunghwa Picture Tubes, and Tatung Company of Taiwan are distinct

---

[3] The declarations are found at Docket Nos. 471, 472, 856 Ex. C, 1560 Ex. A, and 1561 Ex. A).

4

corporate entities, and that there is no factual basis for Sherman Act liability against TUS. TUS's arguments in this regard are largely identical to the arguments previously asserted in connection with its motion to dismiss the direct purchaser consolidated class complaint, as well as TUS's motion for reconsideration. The primary difference between the instant motion and those other motions is the addition of Mr. Chen's most recent declaration, which states that "TUS does not now nor has it ever manufactured handsets or handheld devices containing LCD panels, including cell phones and PDAs," and "TUS does not now nor has it ever sold handsets or handheld devices containing LCD panels, including cell phones and PDAs." Feb. 19, 2010 Chen Decl. ¶¶ 2-3.

In response, plaintiffs argue that TUS and defendant Chunghwa Picture Tubes, Ltd. ("CPT") are considered a single entity for purposes of the antitrust laws in view of their close affiliation and alleged common ownership. Plaintiffs rely on *Royal Printing Company v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), in which the Ninth Circuit held that "*Illinois Brick* does not bar an indirect purchaser's suit where the direct purchaser is a division or subsidiary of a co-conspirator." *Id.* at 326. The court explained that *Illinois Brick*'s rationale of preventing potentially duplicative recoveries from both direct and indirect purchasers does not apply where the direct purchaser is an affiliate of the corporation accused of an antitrust violation. *Id.*; *see also Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1145-46 (9th Cir. 2003) (applying *Royal Printing* and holding that "indirect purchasers can sue for damages if there is no realistic possibility that the direct purchaser will sue its supplier over the antitrust violation"). Plaintiffs rely on the same evidence and arguments submitted by the direct purchaser class plaintiffs in opposition to TUS's earlier motions raising the same contentions.

For the reasons set forth in the Court's March 3, 2009 and March 28, 2010 orders, the Court holds that, at this stage of the litigation, TUS has not shown that it is not a proper defendant under *Royal Printing*. The Court recognizes that the factual record is disputed as to the degree of control exercised by Chunghwa and/or Tatung Company of Taiwan over TUS, as well as the nature of the corporate affiliation between Chunghwa and TUS. As stated in the March 28, 2010 order, the Court finds it unnecessary to resolve these factual disputes at this time, as the record is not fully developed and there is a sufficient basis in the record to allow the cases to proceed against TUS. TUS may renew its

arguments upon a fuller factual record in a motion for summary judgment.[4] With regard to the new declaration by Mr. Chen, even if it is true that TUS has never manufactured or sold handsets or handset devices, TUS could still be liable for purchases made to AT&T for products other than handsets or handset devices, and TUS could still be liable to both sets of plaintiffs based on the complaints' allegations that TUS joined in the LCD price-fixing cartel. *See Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632 (7th Cir. 2002) ("Nothing in *Illinois Brick* displaces the rule of joint and several liability, under which each member of a conspiracy is liable for all damages caused by the conspiracy's entire complaint.").

TUS also argues that the complaints' allegations of a conspiracy involving TUS do not meet the pleading standard set forth by *Twombly*. TUS argues that "other than their conclusory and incorrect allegations of control," plaintiffs have failed to plausibly allege that TUS joined the alleged conspiracy and played a role in it. The Court disagrees, and finds that the allegations are sufficient under *Twombly*. The complaints allege that TUS sold and distributed LCD products manufactured by Chunghwa throughout the United States; contains allegations about the Tatung corporate family and ownership of Chunghwa and TUS; and alleges that subsidiaries such as TUS "played a significant role in the conspiracy" and were "active, knowing participants in the conspiracy." *See, e.g.*, AT&T Amended Compl. ¶¶ 43-45, 86-87, 118; Motorola Amended Compl. ¶¶ 10, 38-40, 116. The Court previously held similar allegations in the direct purchaser class complaint adequately alleged TUS's role in the alleged conspiracy.

## II. State law claims

TUS also moves to dismiss plaintiffs' state law claims on numerous grounds. By orders filed on June 28, 2010, the Court granted defendants' joint motion to dismiss the state law claims. Accordingly, the Court finds it unnecessary to address the separate arguments raised by TUS with respect to the state law claims. If plaintiffs allege state law claims against TUS in the amended

---

[4] Contrary to TUS's assertions, plaintiffs have submitted more than marketing statements in support of their allegations regarding the close corporate affiliation between Chunghwa and TUS, and thus regardless of whether such statements could provide a basis for denying TUS's jurisdictional challenge, there is other evidence in support of plaintiffs' allegations of control.

complaints, TUS may renew these contentions.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court DENIES the motions to dismiss filed by Tatung Company of America. (Docket Nos. 1560 and 1561 in C 07-1827; Docket No. 36 in C 09-4997; and Docket No. 27 in C 09-5840).

**IT IS SO ORDERED.**

Dated: July 19, 2010

SUSAN ILLSTON
United States District Judge