1  Martin Quinn
2  JAMS
   Two Embarcadero Center, Suite 1500
3  San Francisco, CA 94111
   Telephone: (415) 982-5267
4  Fax: (415) 982-5287

5  SPECIAL MASTER

6

7

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                       SAN FRANCISCO DIVISION
11

12

13                                          | **CASE NO. M:07-cv-01827-si**
   IN RE: TFT-LCD (FLAT PANEL)
14 ANTITRUST LITIGATON                      | **MDL No. 1819**

15                                          | **SPECIAL MASTER'S ORDER RE
                                              DEFENDANTS' MOTION TO**
16                                          | **COMPEL DIRECT PURCHASER
                                              PLAINTIFFS TO PRODUCE**
17                                          | **DOCUMENTS RELATING TO
                                              DOWNSTREAM SALES (Hrg. 10/13/10)**
18

19 This Order Relates to:

20     ALL CASES

21

22

23

24      The motion by defendants to compel Direct Purchaser Plaintiffs ("DPP's) to produce

25 documents relating to their sales of TFT-LCD Panels and Products to their customers in response

26 to Request No. 3 in defendants' First Set of Requests for Production of Documents dated July 22,

27 2008, was heard on October 13, 2010.  Counsel for all affected parties were present or attended

28 by telephone.  Having considered all the evidence and argument submitted by the parties, I now

   make the following Order.

Background Facts and Contentions

Request No. 3 demands that each DPP produce essentially every document relating in any way to every sale of a TFT-LCD panel or finished product.  It seeks documents evidencing date and place of sale, identity of buyer, type of panel or product sold, quantity and the list and net price of each sale, manufacturer of each item sold, taxes, duties and freight charges paid, terms and conditions of every sale, copies of all receipts and purchase orders, copies of all instruction manuals – and so on.  To describe the request as comprehensive would be an understatement.

DPP's objected that discovery of data regarding downstream sales – that is, resales by antitrust plaintiffs to their own customers – is barred by applicable U.S. Supreme Court authority.  *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 493-494 (1968).  DPP's argue that such data is irrelevant to their claims of price-fixing against the flat panel manufacturers in this case, because whether a direct purchaser passes alleged overcharges along to its own customers is considered irrelevant to its claim for damages against the price-fixer.  DPP's also argue that the request is unduly burdensome since it requires retrieval and analysis of many thousands of hard-copy and electronic documents many years old.  They note that this disproportionate burden has led courts to conclude that requiring production of downstream sales data would chill the bringing of antitrust cases.[1]

Defendants acknowledge that downstream sales data would be irrelevant to the DPP case, but maintain that it is relevant to the Indirect Purchaser Plaintiffs' class action against them.  Although the Direct Purchaser Plaintiffs are not parties to the IPP case, defendants argue that the DPP's are third parties in possession of information relevant to the IPP case who may be subpoenaed to produce relevant responsive documents like any other third party.

The Court previously addressed this issue in Special Master Smith's Order of 1/13/09, Dkt. No. 787, in which defendants' request for downstream sales data was basically denied except for some limited information about each plaintiff's general sales practices.  The Special Master noted that downstream sales discovery was "disfavored" and that the information

---

[1]*Meijer, Inc. v. Abbott Laboratories*, 251 F.R.D. 431, 434 (N.D. Cal. 2008) ["[T]he Supreme Court has cautioned that the effectiveness  of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities and the massive discovery that such an inquiry would entail."]

requested – presumably the same information requested in this motion – was "overbroad and unreasonably burdensome."

The parties met-and-conferred to no avail. This motion was filed on September 23, 2010.

<u>Analysis</u>

The opening issue is why the Court should depart from Special Master Smith's prior ruling. Defendants argue that the circumstances have changed. The 2009 Order was issued in the context of class certification, and the Court was unpersuaded that this discovery was relevant or useful to certification.[2] This case and the IPP class action are now past the certification stage. Defendants argue that their need for downstream sales data in the IPP case is more pressing now than it was about two years ago. Defendants note that the Indirect Purchaser Plaintiffs are now contending that 100% of the alleged overcharges resulting from illegal price-fixing were passed on to them as the ultimate buyers of the panels and products. Therefore, defendants want evidence to dispute that contention, and thus to reduce the damages the IPP's may recover. One source of such evidence would be the downstream sales effected by the DPP's in this case.

So far, defendants' argument is flawless. Downstream sales data may be more relevant to damages in the IPP case than it was to certification. And surely the sales data of the DPP's is one source of evidence as to whether alleged overcharges were passed on to the IPP's. But it is not the only source. Defendants have already obtained sales data from other companies, and are continuing to do so. They have served about 70 subpoenas on non-parties for sales data for use in the IPP case, although they complain that much of this data will come from large retailers such as Costco, and will thus not be sufficiently representative on which to base an expert conclusion. In contrast, the eleven representative DPP's from whom this discovery is sought are relatively small Mom-and-Pop companies. Defendants argue that these other 70 non-parties have not flatly objected to producing this data, and ask why DPP's should escape an equivalent burden simply because they happen to be parties in a companion case.

I conclude there are three good reasons why defendants' arguments ought not to prevail: case law is squarely against their position; there is no compelling justification for undoing

---

[2] Special Master Smith's Order did not refer to certification, but I accept for purposes of argument that it was issued in that broad context.

Special Master Smith's prior order; and defendants have not demonstrated any need to obtain this extraordinarily burdensome discovery from these eleven plaintiffs.

Case Law  All parties appear to agree, at least for purposes of this motion, that downstream sales data is irrelevant, and perhaps inadmissible, in the Direct Purchaser case pursuant to *Hanover Shoe, ibid.* and *Illinois Brick Co.* v. Illinois, 431 U.S. 720, 724-25 (1977). Following this rule, many courts have barred discovery of downstream sales data. *E.g., In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 300-01 (D.D.C. 2000); *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004). These rulings have been based both on the lack of relevance of such data and the concern that requiring such intrusive and burdensome discovery would deter parties from filing antitrust cases and thus undermine the enforcement of antitrust laws.

Even where, as here, there are companion indirect purchaser claims, courts have refused to require production of downstream sales data.  *In re Vitamins Antitrust Litig., supra at 301* ["(T)he proposition that there are indirect purchasers in this case who may assert claims for damages other than direct overcharges is not sufficient to carry defendants' burden of showing this information ought to be produced by the direct purchasers."] ;*In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at *6 (E.D. Pa. Apr. 8, 2008).

Defendants cite only one case that allowed discovery of downstream data, *In re Urethane Antitrust Litig..237 F.R.D. 454 (D. Kan. 2006).*  In *Urethane* a magistrate judge did require production of downstream sales data because he found it relevant to class certification issues, and distinguished *Vitamins* as not dealing with certification. Of course, this discovery here is not sought for certification purposes. Moreover, with all respect to the Kansas court, the great weight of authority is to the contrary.

Special Master Smith's Order  The very same issues – relevance to the indirect purchaser case, fairness of putting the DPP's in the same position as other purchasers in the marketplace who are producing sales data in response to subpoenas – were argued to Special Master Smith. Defendants have not convincingly shown any change in circumstances that should lead me to reach a different conclusion.

Burden Compared to Benefit:  Defendants concede that they have served 70 subpoenas on other sellers of TFT-LCD panels or products in the marketplace.  But they contend rather

unconvincingly that the rest of the nationwide marketplace is not sufficient – they need the data from these eleven Direct Purchaser Plaintiffs. Defendants do not dispute that production of this data for these eleven small companies will be quite burdensome. But they ask: if these 70-plus non-parties are undergoing the burden of producing this data, so far without complaint, why should DPP's, who have volunteered to be representative plaintiffs and are well-represented by counsel, escape a comparable burden? This is clearly a fair question. The response is that the Federal Rules require a court to limit discovery when the burden of producing it is disproportionate to the benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii). If, as I conclude, the potential usefulness of downstream sales data from these eleven companies is slight given the availability of data from other marketplace sellers, and the burden on them to produce it is great, the Court should restrict the requested production. The fact that many subpoenaed parties find it in their best interest to produce data rather than fight about it ultimately has little impact on this Court's obligation to adhere to the principle of proportionality in discovery.

<u>Order</u>

Good cause appearing, it is ORDERED that defendants' motion to compel is DENIED.

Dated: November 5, 2010

_____/ s /_____
Martin Quinn
Special Master