1    PILLSBURY WINTHROP SHAW PITTMAN LLP
     JOHN M. GRENFELL  (CA State Bar No. 88500)
2    john.grenfell@pillsburylaw.com
     JACOB R. SORENSEN  (CA State Bar No. 209134)
3    jake.sorensen@pillsburylaw.com
     FUSAE NARA (*pro hac vice*)
4    fusae.nara@pillsburylaw.com
     ANDREW D. LANPHERE  (CA State Bar No. 191479)
5    andrew.lanphere@pillsburylaw.com
     50 Fremont Street
6    San Francisco, CA  94105
     Telephone: (415) 983-1000
7    Facsimile: (415) 983-1200

8    Attorneys for Defendants
     SHARP CORPORATION and
9    SHARP ELECTRONICS CORPORATION

10   [Additional defendants and counsel listed on signature page]

11                    UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13                         SAN FRANCISCO DIVISION

14   _____

15   IN RE: TFT-LCD (FLAT PANEL)              Master File No. 3:07-md-1827 SI
     ANTITRUST LITIGATION
16   _____         MDL File No. 1827

17   This Document Relates To:
18   No. CV-10-5212 SI                        **DEFENDANTS' OPPOSITION TO
                                              MOTION TO REMAND ACTION
19   THE PEOPLE OF THE STATE OF               TO STATE COURT**
     CALIFORNIA, ex rel. EDMUND G.
20   BROWN, JR., Attorney General of the State  Date: February 9, 2011
     of California, as parens patriae on behalf of
21   natural persons residing in the state, *et al.*,  Time: 4:00 p.m.

22                              Plaintiffs,   Courtroom: 10

23   v.                                       Honorable Susan Illston

24   AU OPTRONICS CORPORATION, *et al.*,

25                              Defendants.

26   _____

27

28

DEFENDANTS' OPPOSITION TO
                                                 MOTION TO REMAND
                                                 Case No. 3:07-md-1827 SI

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................... 1

II.   PROCEDURAL HISTORY ........................................................................ 2

      A.    The State's Complaint. ................................................................. 2

      B.    Defendants' Removal. .................................................................. 3

III.  ARGUMENT .............................................................................................. 4

      A.    The Real Parties in Interest for the State's *Parens Patriae* Claims
            are California Residents. ............................................................. 4

            1.    CAFA Requires Consideration of *All* Real Parties in
                  Interest in the Action. ..................................................... 4

            2.    Individual California Purchasers of LCD Products are Real
                  Parties in Interest for the State's *Parens Patriae* Claims. ................. 7

            3.    *Parens patriae* Actions are not Categorically Excluded
                  from CAFA's Reach. ......................................................... 10

      B.    The State's Action is in Substance a CAFA "Class Action." ....................... 11

            1.    CAFA Requires the Court to Look Past the State's
                  Labeling of this Action as *Parens Patriae* and Consider the
                  Essential Nature of the Action. ......................................... 11

            2.    Both CAFA and the Cartwright Act Encourage
                  Consolidation of the State's Action With the MDL. ........................ 13

      C.    CAFA'S Jurisdictional Minimum is Satisfied. .................................... 14

      D.    The Court Should Exercise Supplemental Jurisdiction Over the
            State's Non-*Parens Patriae* Claims. ............................................ 15

IV.   CONCLUSION ......................................................................................... 16

1                          TABLE OF AUTHORITIES

2                                                                    Page

                                    Cases
3

*Abrego Abrego v. Dow Chemical Co.*,
4        443 F.3d 676 (9th Cir. 2006) ............................................... 12

5   *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
         458 U.S. 592 (1982) .......................................................... 8
6

*Brady v. Mercedes-Benz USA, Inc.*,
7        243 F. Supp. 2d 1004 (N.D. Cal. 2002) ................................. 15

8   *California Dep't of Water Resources v. Powerex Corp.*,
         533 F.3d 1087 (9th Cir. 2008) ........................................... 15
9

*California v. Infineon Techs. AG*,
10       531 F. Supp. 2d 1124 (N.D. Cal. 2007) ................................. 8

11  *Clayworth v. Pfizer Inc.*,
         49 Cal. 4th 758 (2010) ....................................................... 6
12

*Connecticut v. Levi Strauss & Co.*,
13       471 F. Supp. 363 (D. Conn. 1979) ........................................ 9

14  *Connecticut v. Moody's Corp.*,
         664 F. Supp. 2d 196 (D. Conn. 2009) ............................... 9, 11
15

*Dep't of Fair Empl. & Housing v. Corrections Corp. of Am.*,
16       No. CV F 09-1388 LJO, 2009 WL 4730908
         (E.D. Cal. Dec. 7, 2009) ..................................................... 5
17

*Executive Software North America, Inc. v. U.S. Dist. Court*
18       *for Cent. Dist. of California*,
         24 F.3d 1545 (9th Cir. 1994) ............................................. 15
19

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
20       545 U.S. 546 (2005) .......................................................... 16

21  *Freeman v. Blue Ridge Paper Products, Inc.*,
         551 F.3d 405 (6th Cir. 2008) ......................................... 12, 13
22

*Garcia v. United States*,
23       469 U.S. 70 (1984) ............................................................ 10

24  *Harvey v. Blockbuster, Inc.*,
         384 F. Supp. 2d 749 (D.N.J. 2005) ................................... 9, 11
25

*Hertzberg v. Dignity Partners, Inc.*,
26       191 F.3d 1076 (9th Cir. 1999) ............................................ 10

27  *Hood ex rel. Mississippi v. Microsoft Corp.*,
         428 F. Supp. 2d 537 (S.D. Miss. 2006) ................................. 5
28

*Hood v. F. Hoffman-Laroche, Ltd.,*
 639 F. Supp. 2d 25 (D.D.C. 2009)....................................................................... 9

*Illinois v. SDS West Corp.*
 640 F. Supp. 2d 1047 (C.D. Ill. 2009) ......................................................... 5, 6, 7

*In re Kelly,*
 841 F.2d 908 (9th Cir. 1988) ............................................................................ 10

*Kansas ex rel. Stovall v. Home Cable Inc.,*
 35 F. Supp. 2d 783 (D. Kan. 1998) .................................................................... 5

*Lewis v. Verizon Communications, Inc.,*
 627 F.3d 395 (9th Cir. 2010) ............................................................................ 15

*Louisiana ex rel. Caldwell v. Allstate Ins. Co.,*
 536 F. 3d 418 (5th Cir. 2008) ..................................................................... passim

*Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.,*
 686 F. Supp. 2d 942 (E.D. Mo. 2010) ........................................................... 9, 10

*Missouri ex rel. Webster v. Best Buy Co., Inc.,*
 715 F. Supp. 1455 (E.D. Mo. 1989) ............................................................... 5, 6

*Moor v. County of Alameda,*
 411 U.S. 693 (1973) ........................................................................................... 4

*Navarro Sav. Ass'n v. Lee,*
 446 U.S. 458 (1980) ........................................................................................... 4

*New York by Abrams v. General Motors Corp.,*
 547 F. Supp. 703 (S.D.N.Y. 1982) .................................................................. 5, 6

*Pennsylvania v. Mid-Atlantic Toyota Distribs., Inc.,*
 704 F. 2d 125 (4th Cir. 1983) ............................................................................ 8

*People of California v. Universal Syndications, Inc.,*
 No. C 09-1186 JF, 2009 WL 1689651
 (N.D. Cal. June 16, 2009)................................................................................... 5

*People of California v. Universal Syndications, Inc.,*
 No. C 09-1186, 2009 WL 1689651
 (N.D. Cal. June 16, 2009)................................................................................... 6

*Szehinskyj v. Attorney General,*
 432 F. 3d 253 (3d Cir. 2005) ........................................................................... 10

*West Virginia ex rel. McGraw v. Comcast Corp.,*
 705 F. Supp. 2d 441 (E.D. Pa. 2010).......................................................... passim

*West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.,*
 No. 2:09-1000, 2010 WL 3743876
 (S.D.W.Va. Sept. 21, 2010)........................................................................... 9, 10

*Wisconsin v. Abbott Labs.*,
   341 F. Supp. 2d 1057 (W.D. Wisc. 2004) .............................................................. 5

<u>Statutes and Codes</u>

California Business & Professions Code
   Section 16260(a)(2) ...................................................................................................... 3
   Section 16760 ........................................................................................................... 8, 13
   Section 16760(a)(1) ................................................................................................. 3, 14
   Section 16760(b)(1) ................................................................................................. 1, 12
   Section 16760(b)(2) ................................................................................................. 1, 12
   Section 16760(b)(3) ................................................................................................. 1, 12
   Section 16760(c) ...................................................................................................... 1, 12
   Section 16760(e) ............................................................................................................ 3
   Section 16760(e)(1)-(2) ............................................................................................... 13
   Section 16790 ................................................................................................................. 3
   Section 17200 ............................................................................................................... 10

California Code of Civil Procedure
   Section 1300 ................................................................................................................. 13

United States Code
   Title 15, Section 15c ...................................................................................................... 8
   Title 28, Section 1332(a) ...................................................................................... 5, 7, 9
   Title 28, Section 1332(d) ......................................................................................... 1, 7
   Title 28, Section 1332(d)(1)(B) ............................................................................ 3, 11
   Title 28, Section 1332(d)(2) ............................................................................. 3, 5, 14
   Title 28, Section 1332(d)(2)(A) ................................................................................... 4
   Title 28, Section 1332(d)(2)(C) ................................................................................... 4
   Title 28, Section 1332(d)(5)(B) ................................................................................... 3
   Title 28, Section 1367 ................................................................................................. 15
   Title 28, Section 1453 ................................................................................................... 1

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
   Rule 23.................................................................................................... 1, 3, 11, 13

- iv -

1   **I.      INTRODUCTION**

2           This action by the State of California ("the State") raises exactly the same price-

3   fixing claims as dozens of other actions already consolidated in this Court as MDL No.

4   1827.  In two of those pending actions, this Court has certified plaintiff classes that include

5   most of the same California residents whom the State seeks to represent here.

6           The State filed this action in the California Superior Court in San Francisco.

7   Defendants timely removed under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) and

8   1453 ("CAFA").  In now moving to remand, the State asks the Court to disregard the

9   elephant in the room:  its *parens patriae* claim for treble damages on behalf of all natural

10  persons in California who purchased televisions, computer monitors, notebook computers,

11  or cell phones containing thin film transistor liquid crystal display ("LCD") panels

12  manufactured by Defendants over an eleven-year period.  Those individuals, rather than the

13  State, are the real parties in interest for purposes of this damages claim.  Moreover, the

14  State seeks damages on behalf of these individuals under a California statute that contains

15  procedural requirements substantially similar to Federal Rule of Civil Procedure 23.  Like

16  Rule 23, the California Cartwright Act:

17          •       requires the State to provide notice to the "natural persons" it claims to

18                  represent (Cal. Bus. & Prof. Code § 16760(b)(1));

19          •       requires that those persons be given an opportunity to opt out (*id.*

20                  § 16760(b)(2));

21          •       provides that those persons who do not opt out will be bound by the

22                  judgment in the *parens patriae* action (*id.* § 16760(b)(3)); and

23          •       prohibits dismissal or settlement without approval of the court and notice to

24                  the affected persons (*id.* § 16760(c)).

25          For these reasons, the State has initiated a class action within the meaning of CAFA,

26  and its remand motion should be denied.

27

28

1    II.      **PROCEDURAL HISTORY**

2           **A.      The State's Complaint.**

3           The Complaint seeks relief for (1) the State itself, "in a proprietary capacity;"

4    (2) the University of California and thirty named municipal entities; and (3) "natural

5    persons residing in [California] who are consumers that purchased LCD panels, or LCD

6    products separately or as part of other LCD products."  Compl. ¶¶ 2, 10.  "LCD products"

7    are defined as "TVs, computer monitors, laptop computers, and cell phones" containing an

8    LCD panel.  *Id.* ¶ 8.  The Complaint covers a period of eleven years (1996-2006).  *Id.* ¶ 74.

9           The State thus seeks to represent all "natural persons" who are members of the

10   California class of *indirect* purchasers (the "IPP California class") previously certified by

11   this Court.[1]  The State also seeks to represent natural persons who purchased LCD panels

12   designed for use in the four categories of "LCD products."  See Compl. ¶¶ 7-8, 10.  Those

13   persons, to the extent they purchased directly from Defendants, Defendants' affiliates, or

14   alleged co-conspirators between 1999 and 2006, would be members of the *direct* purchaser

15   class previously certified by this Court.[2]  In addition to these members of the existing

16   classes, the State seeks to represent individual California residents who purchased:  (1) cell

17

18

19

20   _____

21   [1]   *See* Order Granting Indirect Purchaser Plaintiffs' Motion for Class Certification, filed
         March 28, 2010 (Dkt. No. 1642) ("IPP Class Cert. Order"), at 36.  Whereas the State's
22       *parens patriae* claim is on behalf of "natural persons," the IPP California class consists
         of "persons and entities" that purchased "for their own use and not for resale."  Thus,
23       California "entities" that purchased LCD products for their own use, and otherwise meet
         the class definition, would be members of the IPP California class but would not be
24       represented by the State.  All "persons" belonging to the IPP California class, however,
         would also be represented by the State.

25   [2]   *See* Order Granting in Part and Denying in Part Direct Purchaser Plaintiffs' Motion for
         Class Certification, filed March 28, 2010 (Dkt. No. 1641), at 34.  Indeed, the same would
26       be true of individual Californians who purchased televisions, computer monitors, or
         notebook computers directly from Defendants during the class period.  *Id.*  Both the DPP
27       class representatives and the State would be pursuing treble damages claims, based on
         the same alleged facts, on behalf of those individuals.

28

1   phones incorporating Defendants' LCD panels; and (2) any of the foregoing LCD panels or

2   products during the years 1996-1998.[3]

3       According to the Complaint, all such natural persons "were injured in their business

4   and property in that they paid more for LCD panels and LCD products than they would

5   have paid in the absence of defendants' unlawful conduct."  Compl. ¶ 189; *see also id.* ¶¶ 2,

6   72-73, 113, 169-170.  The State seeks to recover these damages, trebled, under the

7   Cartwright Act.  *Id.*  It is this damages claim, denominated "Count Three" of the First

8   Cause of Action, that the State asserts as *parens patriae* under Section 16790 of the

9   California Business and Professions Code.[4]  *Id.*

10      **B.    Defendants' Removal.**

11      Defendants removed this action on November 17, 2010.  The grounds for removal

12  were that CAFA gives the federal courts jurisdiction over certain "civil action[s] filed under

13  rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial

14  procedure authorizing an action to be brought by 1 or more representative persons as a class

15  action."  Notice of Removal ("NR") ¶ 17 (citing 28 U.S.C. § 1332(d)(1)(B)).  Such federal

16  jurisdiction exists, and removal is authorized, where the action involves monetary claims of

17  100 or more persons, an aggregate amount in controversy of at least $5,000,000, and

18  plaintiffs that are at least minimally diverse from defendants.  NR ¶ 22 (citing 28 U.S.C.

19  §§ 1332(d)(2), 1332(d)(5)(B)).  As discussed below, all of these criteria are satisfied here.

20

21

22

23  _____

24  [3]  The IPP California class does not include purchasers of cell phones, and the class period
    begins on January 1, 1999.  IPP Class Cert. Order at 36.

25  [4]  Section 16760(a)(1) provides that the State "may bring a civil action in the name of the
    people of the State of California, as parens patriae on behalf of natural persons residing
26  in the state, . . . to secure monetary relief as provided in this section for injury sustained
    by those natural persons to their property by reason of any violation of this chapter."
27  The remedies include treble damages, which are initially paid to the State (§ 16260(a)(2))
    but then must be distributed to the persons injured (§ 16760(e)).

28

1    **III.    ARGUMENT**

2        **A.    The Real Parties in Interest for the State's *Parens Patriae* Claims are**
             **California Residents.**

3

4        The State argues that, because it is not a "citizen" for diversity purposes, and

5    because it supposedly is the real party interested in the *parens patriae* claim, even the

6    "minimal diversity" required by CAFA is lacking.[5]  The State is mistaken.

7

         1.    CAFA Requires Consideration of *All* Real Parties in Interest in the Action.

8

9        As the State says, "'[t]here is no question that [it] is not a 'citizen' for purposes of

10   diversity jurisdiction.'"  Mot. at 3 (citation omitted).[6]  But there is equally no question that,

11   insofar as the State is representing the interests of private parties, the latter are the "real

12   parties in interest" and their citizenship determines the existence (or not) of minimal

13   diversity.  *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).  That the State may

14   be the real party in interest for *some of the claims* in the Complaint—such as the claims for

15   injunctive relief, penalties, and proprietary damages—is irrelevant to the jurisdictional

16   inquiry under CAFA; the question is whether California residents are real parties in interest

17   for the claims the State is pursuing on a representative basis.  *See West Virginia ex rel.*

18   *McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 447 (E.D. Pa. 2010) ("*Comcast*")

19   (denying remand where individuals were real parties in interest for state's damages claims,

20   although state was real party in interest for injunction and penalties claims); *see also*

21

22   _____

23   [5]  Notice of Mot. and Mot. to Remand Action to State Court, filed December 17, 2010
         (Dkt. No. 10) ("Mot."), at 3-5, 13-17.  As relevant here, "minimal diversity" means that
24       "any member of a class of plaintiffs is a citizen of a State different from any defendant"
         or "any member of a class of plaintiffs is a citizen of a State and any defendant is a
25       foreign state or a citizen or subject of a foreign state." 28 U.S.C. § 1332(d)(2)(A), (C).
         There is no dispute that this criterion is met if the "natural persons" represented by the
26       State, as opposed to the State itself, are the "plaintiffs" for purposes of the *parens patriae*
         claim.

27   [6]  On the other hand, the municipal entities named as plaintiffs *are* "citizens" of California.
         *See Moor v. County of Alameda*, 411 U.S. 693, 717-21 (1973).

28

1    *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F. 3d 418, 424 (5th Cir. 2008)

2    ("*Caldwell*") (same).

3         The State argues for a "whole complaint" approach under which the Court would

4    look at the Complaint as a whole and, if the State has a "substantial interest" in any claim,

5    end its inquiry there. *See* Mot. at 14-15.  In support of this position, the State relies on a

6    series of cases which address only the traditional diversity statute, 28 U.S.C. § 1332(a), and

7    not CAFA.  In those cases, complete diversity is required (*i.e.*, each plaintiff must have

8    different citizenship from each defendant), and the presence of a non-"citizen" plaintiff

9    destroys such diversity.  *See, e.g., Hood ex rel. Mississippi v. Microsoft Corp.,* 428 F. Supp.

10   2d 537, 542-46 (S.D. Miss. 2006) (in a traditional diversity context, although individual

11   citizens were real parties in interest, the requisite complete diversity was lacking because

12   the state was also a real party in interest).[7]  Because the present action was removed under

13   CAFA, however, the presence of *any* real parties in interest other than the State creates the

14   minimal diversity required by § 1332(d)(2).  *See Comcast*, 705 F. Supp. 2d at 447, 449-50

15   (minimal diversity satisfied where individuals were real parties in interest for state's

16   damages claims, although state was real party in interest for injunction and penalties

17   claims).

18        As the *Comcast* court explained, the "whole complaint" approach would disserve

19   Congress's purpose of expanding federal jurisdiction over class actions through CAFA,

20   which requires that courts "carefully examine actions removed under CAFA to ensure that

21   legitimate removal requests are not thwarted by jurisdictional gamesmanship." *Comcast*,

22   705 F. Supp. 2d at 447.  In the CAFA context,

23   _____

24   [7]  To the same effect, *see Dep't of Fair Empl. & Housing v. Corrections Corp. of Am.,* No.
     CV F 09-1388 LJO, 2009 WL 4730908, at *3 (E.D. Cal. Dec. 7, 2009); *People of
25   California v. Universal Syndications, Inc.,* No. C 09-1186 JF, 2009 WL 1689651, at *3-5
     (N.D. Cal. June 16, 2009); *Illinois v. SDS West Corp.,* 640 F. Supp. 2d 1047, 1049-53
26   (C.D. Ill. 2009); *Wisconsin v. Abbott Labs.,* 341 F. Supp. 2d 1057, 1060-63 (W.D. Wisc.
     2004); *Kansas ex rel. Stovall v. Home Cable Inc.,* 35 F. Supp. 2d 783, 785-86 (D. Kan.
27   1998); *Missouri ex rel. Webster v. Best Buy Co., Inc.,* 715 F. Supp. 1455, 1457-58 (E.D.
     Mo. 1989); *New York by Abrams v. General Motors Corp.,* 547 F. Supp. 703, 704-07
     (S.D.N.Y. 1982).

28

1    [t]he claim-by-claim approach does a better job of unearthing a state's real
     interest in a suit because, unlike the wholesale approach, it does not blur the
2    lines between those claims for which a state has a well-recognized interest,
     and those claims for which a state's interest is negligible.  The claim-by-
3    claim approach prevents a state from wearing two hats in an attempt to
     disguise itself as the real party in interest for claims for which the true real
4    parties in interest are individual consumers.

5    *Id.* at 449; *see also Caldwell,* 536 F. 3d at 424.  Thus, the traditional diversity cases relied

6    on by the State are inapposite in the CAFA context.  *Comcast,* 705 F. Supp. 2d at 448-49.[8]

7           Even under the "whole complaint" approach advocated by the State, courts consider

8    the relative importance of the claims.  *See, e.g.*, *People of California v. Universal*

9    *Syndications, Inc.*, No. C 09-1186, 2009 WL 1689651, *5 (N.D. Cal. June 16, 2009) (state

10   could be considered real party in interest where "the potential civil penalties appear to

11   outweigh any restitution, as each individual penalty is an order of magnitude greater than

12   the individual purchase price of Defendants' product").[9]  Here, the *parens patriae* claims

13   are by far the biggest and most significant part of the State's Complaint.  The State suggests

14   that "[t]he actual recovery for consumers under [its] *parens* claim would likely be minor, as

15   . . . any recovery for individual consumers would be offset from any recovery obtained in

16   the federal class action."  Mot. at 16.  First, the State presents no authority for the notion

17   that potential future offsets can be considered as a basis for discounting the value of the

18   claims asserted in its complaint.  Second, if the State means that any award to California

19   consumers will be reduced by amounts awarded to purchasers further up the chain of

20   distribution (*see Clayworth v. Pfizer Inc.*, 49 Cal. 4th 758, 787 (2010)), it ignores the

21   _____

22   [8]  Indeed, the State itself violates the "whole complaint" approach by ignoring the 30
     municipal plaintiffs, which clearly have California citizenship, in its diversity analysis.
23   *See supra* note 6.  We agree that the citizenship of those plaintiffs is not relevant to the
     *parens patriae* claim, which is not asserted on their behalf.  But neither is the non-
24   citizenship of the State itself relevant, since the *parens patriae* claim is not asserted on
     the State's behalf.

25   [9]  *See also Illinois v. SDS West Corp.,* 640 F. Supp. 2d at 1052-53 ("the bulk of the relief
     (the injunctive relief and civil fines) inures solely to the State of Illinois," whereas the
26   requested relief for individual consumers was "subsidiary"); *Missouri ex rel. Webster v.*
     *Best Buy Co., Inc.,* 715 F. Supp. at 1457 ("The main focus of the case is in obtaining
27   injunctive relief"); *New York by Abrams v. General Motors Corp.,* 547 F. Supp. at 706-
     07 ("focus" and "primary purpose" of action was to obtain injunctive relief).

28

1    allegations of its own Complaint that "*[a]ll* supracompetitive overcharges are *always*

2    passed through to the indirect purchaser" (Compl. ¶ 127 (emphasis added)) – *i.e.*, to the

3    consumers whom the State seeks to represent.[10]  Finally, having relied on a hypothetical

4    offset argument, the State inconsistently argues that the injunctive class certified in the IPP

5    action should be ignored in evaluating the significance of the State's own claim for

6    injunctive relief.  Mot. at 16, n.7 ("'[t]his Court need not determine whether injunctive

7    relief will ultimately be warranted; it is enough that the Attorney General is authorized to

8    seek this remedy and has made numerous allegations supporting its imposition'" (quoting

9    *Illinois v. SDS West,* 640 F. Supp. 2d at 1052-53 n.3).[11]  The "essential nature" of this

10   action is, in fact, to recover treble damages based on purchases made by private individuals

11   resident in California.

12        The State also argues that CAFA's minimal diversity standard should not apply

13   where a state is a party, because that would "change a rule that 'has been around for a long

14   time' . . . ."  Mot. at 10.  But the rule to which the State refers—that a "State is not a

15   'citizen' for purposes of diversity jurisdiction" (*id.* (citation omitted))—was not changed by

16   CAFA.  As explained above, the application of that rule to the traditional diversity statute,

17   Section 1332(a), likewise was left unchanged.  Under the minimal diversity standard

18   created by the plain language of Section 1332(d), however, the State's presence as a party is

19   irrelevant if there is at least one diverse real party in interest.

20        2.    <u>Individual California Purchasers of LCD Products are Real Parties in Interest
             for the State's *Parens Patriae* Claims.</u>

21

22        The State's claim for damages on behalf of individual California purchasers does

23   not involve a quasi-sovereign interest and, therefore, the individual purchasers – not the

24   State – are the real parties in interest in the *parens patriae* claims.  A state is the real party

---

25   [10]  On the other hand, if the State means that the "natural persons" it seeks to represent will

26        themselves recover their alleged damages as members of the IPP California class, it fails
          to explain why it should be allowed to maintain a duplicative action in a different court.

27   [11]  As it happens, the practical impact of the State's requests for injunctive relief is minor,

28        but for a different reason:  the State does not allege a threat of continuing injury.

1   in interest in a common law *parens patriae* suit only where it has a quasi-sovereign interest

2   in bringing the claim.  *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S.

3   592 (1982).  A quasi-sovereign interest exists where a claim is brought to protect "the

4   health and well-being . . . of [the state's] residents *in general*."  *Id.* at 607 (emphasis added).

5   Where, in contrast, a state seeks to recover money damages for individual residents, those

6   individuals, rather than the state, are the real parties in interest for such claims.  "[N]o state

7   has a legitimate quasi-sovereign interest in seeing that consumers or any other group of

8   persons receive a given sum of money."  *Pennsylvania v. Mid-Atlantic Toyota Distribs.*,

9   *Inc.,* 704 F. 2d 125, 129, n. 12 (4th Cir. 1983); *see also California v. Infineon Techs. AG*,

10  531 F. Supp. 2d 1124, 1169 (N.D. Cal. 2007) ("[T]he common law right of the states to sue

11  as parens patriae on behalf of the general welfare of their people, has not traditionally

12  included suits for monetary damages").  This is particularly true where private actions to

13  recover damages for these same individuals are already underway.  *See Comcast,* 705 F.

14  Supp. 2d at 450 ("abundance of [private actions seeking damages] suggests that the State's

15  inherent *parens patriae* prerogative to 'prevent . . . injury to those who cannot protect

16  themselves' is not implicated by the pursuit of treble and compensatory damages.").

17       Accordingly, the State's claim for damages on behalf of individuals does not

18  involve a quasi-sovereign interest that would support a common law *parens patriae* action.

19  The State derives *standing* to bring such third-party claims from the Cartwright Act (Cal.

20  Bus. & Prof. Code § 16760) and the federal Hart-Scott-Rodino Antitrust Improvements Act

21  (15 U.S.C. § 15c).  Those statutes, however, do not affect the real party in interest analysis.

22      [W]hile real party in interest status is coextensive with common law *parens*
        *patriae* authority, a statute may provide a broader right of action than the

23      common law.  In that situation, a state could have statutory *parens patriae*
        authority to bring an action without having common law *parens patriae*

24      authority to bring the action (*i.e.*, without being a real party in interest).
        . . . Thus, even if [state antitrust law] provides the State Attorney General

25      with a broader source of standing than the common law to bring a *parens*
        *patriae* action in state court, that has no impact on my real-party-in-interest

26      analysis regarding the treble damages claim.

27  *Comcast*, 705 F. Supp. 2d at 452; *see also Mid-Atlantic Toyota Distribs.*, 704 F.2d at 130-

28  31.

- 8 -

1    Therefore, in analogous cases where states have sought to recover damages based

2    on overcharges paid by a subset of residents, courts have held that the individual residents

3    are the real parties in interest.  *See Caldwell*, 536 F.3d at 426 ("as far as the State's request

4    for treble damages is concerned, the policyholders are the real parties in interest");

5    *Comcast*, 705 F. Supp. 2d at 450 (where state alleged that "[state] consumers of . . . cable

6    services have incurred damages" the court held that "the true real parties in interest for a

7    treble damages claim are the allegedly injured consumers"); *see also Hood v. F. Hoffman-*

8    *Laroche, Ltd.*, 639 F. Supp. 2d 25, 31-32 (D.D.C. 2009) (holding that individual citizens

9    were "the real parties in interest for any compensatory damages sought" on their behalf

10   under state antitrust law, but remanding because removal was under § 1332(a), and state's

11   status as real party in interest for other claims destroyed complete diversity).

12    The State relies chiefly on *Connecticut v. Moody's Corp.*, 664 F. Supp. 2d 196 (D.

13   Conn. 2009) and *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749 (D.N.J. 2005).  In neither

14   of those cases, however, did the plaintiff states seek remedies on behalf of private parties.

15   In *Blockbuster*, New Jersey appears to have sought only injunctive relief and civil penalties.

16   *See* 384 F. Supp. 2d at 751, 754, 755-56.  And in *Moody's*, Connecticut sought only

17   equitable relief (including restitution) on behalf of itself and its agencies and municipalities

18   that issued bonds.  *See* 664 F. Supp. 2d at 197-98.  This would be comparable to California

19   dropping its claims on behalf of natural persons and seeking relief only for itself and the 31

20   named plaintiffs in the present case.  The *Moody's* court specifically distinguished antitrust

21   cases where the state "'claims refunds to be distributed to identifiable purchasers,'" in

22   which cases "the citizen status of the purchasers rather than the sovereign status of their

23   benefactor controls for diversity purposes."  *Id.* at 200 (quoting *Connecticut v. Levi*

24   *Strauss & Co.*, 471 F. Supp. 363, 371 (D. Conn. 1979)).[12]  Here, the State explicitly

25

---

26   [12] The State also cites *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, No. 2:09-
          1000, 2010 WL 3743876 (S.D.W.Va. Sept. 21, 2010) and *Missouri ex rel. Koster v.*
27        *Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d 942 (E.D. Mo. 2010).  Those were
          actions for equitable relief under state consumer protection laws (similar to Cal. Bus. &
28                                                                                (continued…)

- 9 -                    DEFENDANTS' OPPOSITION TO
                                                                             MOTION TO REMAND
                                                                             Case No. 3:07-md-1827 SI

1   acknowledges that any damages recovered pursuant to its *parens patriae* claim will be

2   distributed to ensure "that each [consumer] receive his or her share of those funds."  Mot. at

3   12.

4        **B.**    ***Parens patriae* Actions are not Categorically Excluded from CAFA's Reach.**

5

6        The State argues that  "CAFA's legislative history demonstrates that it was not

7   intended to apply to *parens patriae* actions."  Mot. at 7-11.  In fact, Congress considered

8   and rejected a provision that would have explicitly prevented removal of "[a]ny action

9   brought by or on behalf of the Attorney General of any State."  S. Amend. No. 5 to S. 5,

10  109th Cong. (1st Sess., 2005).  *See Caldwell*, 536 F.3d at 424.  Thus, *parens patriae* suits

11  are not categorically exempt from CAFA.

12       The State cites floor statements by two senators to argue, in essence, that CAFA

13  should be interpreted as though the rejected amendment had been adopted.  Mot. at 7-8.

14  First, such statements cannot be used to override the plain text of the statute and the formal

15  legislative history such as the Senate Report.  *See Hertzberg v. Dignity Partners, Inc.*, 191

16  F.3d 1076, 1082 (9th Cir. 1999) ("This circuit relies on official committee reports when

17  considering legislative history, not stray comments by individuals or other materials

18  unrelated to the statutory language or the committee reports.") (citing *In re Kelly*, 841 F.2d

19  908, 912 n. 3 (9th Cir. 1988) and *Garcia v. United States*, 469 U.S. 70, 76 (1984)); *see also*

20  *Szehinskyj v. Attorney General,* 432 F. 3d 253, 256 (3d Cir. 2005) ("The law is what

21  Congress enacts, not what its members say on the floor").  Second, the same senators who

22  suggested that the amendment was unnecessary also expressed concern that it would open a

23  "loophole" for "manipulat[ion]."  *See Caldwell,* 536 F. 3d at 424.  Third, the statements in

24  question, even if given full weight, refer only to the traditional, common law authority of

(…continued)

25      Prof. Code § 17200).  *See Comcast,* 705 F. Supp. 2d at 454 (explaining that the Missouri statute in *Portfolio Recovery Associates* did not provide for treble damages or include

26      class action-like procedural protections).  The *CVS* court noted that removal was based on a paragraph of the complaint seeking civil penalties that "enure[d] to the state alone"

27      (2010 WL 3743876, at *7, 10), and remanded partly because "[t]he Attorney General does not seek treble damages . . . as in *Caldwell*" (*id.* at *17).

28

1   state attorneys general to bring *parens patriae* actions to vindicate quasi-sovereign

2   interests; they do not refer to statutory actions to recover damages on behalf of private

3   citizens.  Thus, where courts that have relied on these statements in interpreting CAFA, the

4   state was seeking only relief on its own behalf or on behalf of public agencies.  *Harvey,* 384

5   F. Supp. 2d at 752-54; *Moody's,* 664 F. Supp. 2d at 202.  In sum, as aptly observed in

6   *Comcast*:

> Neither the failure of the amendment nor the conflicting and contradictory
> debate statements made by key Senators provide a solid framework upon
> which it is safe to rely.  Instead, they explain why "even the most ardent
> academic defenders of the use of legislative history in statutory
> interpretation are quick to disavow cherry-picking from floor speakers."  I
> will not attempt to unravel the debate over the failed amendment; instead, I
> will proceed under the Senate Report's charges that the definition of a class
> action be "interpreted liberally."

12   705 F. Supp. 2d at 448 n.6 (citations omitted) .

13   **C.      The State's Action is in Substance a CAFA "Class Action."**

14         The State' argues that "the Complaint does not constitute a 'class action' as defined

15   in CAFA."  Mot. at 11.  Here too, the State is mistaken.

16         1.      <u>CAFA Requires the Court to Look Past the State's Labeling of this Action as
          *Parens Patriae* and Consider the Essential Nature of the Action.</u>

17         CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal

18   Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an

19   action to be brought by 1 or more representative persons as a class action."  *See* 28 U.S.C.

20   § 1332(d)(1)(B)).  The Senate Judiciary Committee Report on CAFA states:

> *[T]he definition of "class action" is to be interpreted liberally.*  Its
> application should not be confined solely to lawsuits that are labeled "class
> actions" by the named plaintiff or the state rulemaking authority.  Generally
> speaking, lawsuits that resemble a purported class action should be
> considered class action for the purpose of applying these provisions.

25   S. Rep. No. 109-14, at 35 (emphasis added) (quoted in *Caldwell,* 536 F. 3d at 424).[13]

26   ────────────────

27   [13]  In *Abrego Abrego v. Dow Chemical Co.*, the Ninth Circuit considered a statement
      elsewhere in the Senate Report that plaintiffs seeking remand of purported class actions

28                                                                                      (continued…)

1   In evaluating its jurisdiction under CAFA, this Court must "look to the substance of

2   the action and not only at the labels that the parties may attach." *Caldwell,* 536 F.3d at 424.

3   The need to focus on substance rather than labels is particularly important in the context of

4   CAFA, which "was clearly designed to prevent plaintiffs from artificially structuring their

5   suits to avoid federal jurisdiction." *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d

6   405, 407 (6th Cir. 2008).

7   The State's *parens patriae* claims do not merely "resemble" a class action; they

8   parallel, and largely overlap with, the class action claims that are currently being pursued in

9   the MDL.  Moreover, the statutory authorization for the State's claims incorporates

10  essential elements of class action law:

11  •   Notice to the represented "persons":  "In any action brought under this
    section, the Attorney General shall . . . cause notice thereof to be given by
12  publication," and "further notice to the person or persons" may be required
    to satisfy due process.  Cal. Bus. & Prof. Code § 16760(b)(1).
13

14  •   An opportunity to opt out:  "Any person on whose behalf an action is
    brought . . . may elect to exclude from adjudication the portion of the claim
15  for monetary relief attributable to him or her . . . ."  *Id.* § 16760(b)(2).

16  •   Represented persons who do not opt out are bound:  "The final judgment . . .
    shall be res judicata as to any claim under this section by any person on
17  behalf of whom the action was brought and who fails to [exclude himself or
    herself]."  *Id.* § 16760(b)(3).
18

19  •   Court approval of dismissal or settlement:  The action "shall not be
    dismissed or compromised without the approval of the court, and notice of
20  any proposed dismissal or compromise shall be given in any manner as the
    court directs."  *Id.* § 16760(c).
21

22

_____

23  (…continued)
    "should bear the burden of demonstrating that the removal was improvident (i.e., that the
24  applicable jurisdictional requirements are not satisfied)."  443 F.3d 676, 683 (9th Cir.
    2006).  The court noted that this statement was "unfettered to any statutory language,"
25  because CAFA "is entirely silent as to the burden of proof on removal."  *Id.* at 683, 685-
    86.  Accordingly, the Senate Report did not support a conclusion that CAFA was
26  intended to alter "the longstanding rule that the party seeking federal jurisdiction bears
    the burden of establishing that jurisdiction."  *Id.* at 686.  In contrast, the Senate Report's
27  statement that the CAFA definition of "class action" should be "interpreted liberally"
    does shed light on express statutory language.
28

1         The *Comcast* court found that analogous "baseline requirements" in the West

2    Virginia Antitrust Act made actions under that statute "class actions" within the definition

3    of CAFA.  *See* 705 F. Supp. 2d at 453-454.  Section 16760 also requires the State to obtain

4    approval from the Court before distributing any damages awarded, and requires that "to the

5    extent possible, . . . each person be afforded a reasonable opportunity to secure his or her

6    appropriate portion of the monetary relief" after payment of attorneys' fees.  Cal. Bus. &

7    Prof. Code § 16760(e)(1)-(2).[14]  Although the requirements of Section 16760 are not

8    identical to those of Rule 23, CAFA does not require a perfect match.  *See Comcast*, 705 F.

9    Supp. 2d at 453-454 ("[w]hile it is true that the WVAA does not match federal Rule 23

10   perfectly, CAFA does not require such exactitude").[15]  Thus, the State's *parens patriae*

11   claim is brought under a "similar State statute or rule of judicial procedure authorizing an

12   action to be brought by 1 or more representative persons as a class action" for purposes of

13   CAFA class-action jurisdiction.

14         2.     <u>Both CAFA and the Cartwright Act Encourage Consolidation of the State's</u>

15               <u>Action With the MDL.</u>

16         The Congressional purpose in passing CAFA includes "'creating efficiencies in the

17   judicial system by allowing overlapping and "copycat" cases to be consolidated in a single

18   federal court.'"  *Freeman*, 551 F.3d at 408 (quoting S. Rep. No. 109-14, at 4).  The State's

19   action here is such a "copycat" case.  As the State admitted in its Notice of Related Case

20   filed in state court, its action "involves the same parties and is based on the same or similar

21   claims" as the MDL, and it "arises from the same or substantially identical transactions,

22   incidents, or events requiring the determination of the same or substantially identical

---

23

24   [14] The State emphasizes that unclaimed proceeds may escheat to the State, Mot. at 17, but that could occur in any case.  *See* Cal. Code Civ. Proc. § 1300.

25

26   [15] The State argues that it can recover damages as *parens patriae* for "the harm to the general economy occasioned by the reduction in the production and sale of LCD-containing products due to the actions of defendants, i.e., the so-called 'deadweight loss.'"  Mot. at 17.  However, the Complaint does not seek deadweight loss as a damage, only damages from paying supracompetitive prices.  Compl. ¶¶ 10, 73.  Further, the State fails to cite, and Defendants have been unable to locate, a single case awarding such recovery.

27

28

1    questions of law or fact."  *See* NR Ex. B.  The State makes no attempt to deny this

2    similarity in its remand motion.

3         Moreover, as the State recognizes, its damages claims on behalf of individuals

4    create the risk of duplicative recovery with the class plaintiffs.  The Cartwright Act requires

5    that the court "exclude from the amount of monetary relief awarded in [a *parens patriae*]

6    action any amount of monetary relief . . . which duplicates amounts which have been

7    awarded for the same injury."  Cal. Bus. & Prof. Code § 16760(a)(1).  The only feasible

8    way to coordinate the overlapping claims asserted by the MDL class plaintiffs and the State

9    is for this action to proceed as part of the MDL.

10        **D.    CAFA'S Jurisdictional Minimum is Satisfied.**

11        The State claims that defendants "have provided no evidence" to show that the

12   amount in controversy exceeds the $5 million jurisdictional minimum required by CAFA.

13   28 U.S.C. § 1332(d)(2).  Tellingly, the State does not even argue – let alone offer any proof

14   – that its *parens patriae* claims amount to less than $5,000,000.  Given the nature of the

15   State's allegations, there can be no question that the amount in controversy easily exceeds

16   that sum.

17        Again, the state seeks treble damages for alleged overcharges on every "LCD

18   product" (*i.e.*, every television, monitor, notebook computer, or cell phone containing a

19   TFT-LCD panel) manufactured by Defendants and purchased by any natural person

20   residing in California over an 11-year period.  Compl. ¶¶ 2, 8, 10, 74.  This demand

21   encompasses a volume of commerce measured in the hundreds of millions, and likely

22   billions, of dollars.  *See* Declaration of Robert Van Eck, filed herewith (sales of finished

23   products to natural persons residing in California by a single defendant, and limited to the

24   period 2000-2006, total over $119 million).  Moreover, the Complaint alleges that all

25   overcharges at any level of the chain of distribution "were *always* passed through to the

26

27

28

1   indirect purchaser," Compl. ¶ 127 (emphasis added), and seeks treble damages based on

2   these alleged overcharges.[16]

3       Where the plaintiff does not "attempt[] to demonstrate, or even argue, that the

4   claimed damages are less than" the jurisdictional minimum, a showing that the plaintiff's

5   allegations encompass a volume of commerce in excess of the jurisdictional minimum is

6   sufficient. *See Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

7   Of course, since "[t]he amount in controversy is simply an estimate of the total amount in

8   dispute, not a prospective assessment of defendant's liability," defendants "need not

9   concede liability for the entire amount" (or indeed any portion of it) to satisfy the

10  jurisdictional requirement. *Id.*

11      **E.**    **The Court Should Exercise Supplemental Jurisdiction Over the State's**
                **Non-*Parens Patriae* Claims.**

12

13      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the State's

14  claims for injunctive relief, civil penalties, unjust enrichment, and treble damages on behalf

15  of the State and the other named plaintiffs. The State does not argue that any of the

16  grounds listed in Section 1367(c) for "declin[ing] to exercise supplemental jurisdiction" is

17  applicable here.[17] *See Executive Software North America, Inc. v. U.S. Dist. Court for Cent.*

18  *Dist. of California*, 24 F.3d 1545, 1555–1556 (9th Cir. 1994), *overruled on other grounds*

19  *by California Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008)

20  ("a court can decline to assert supplemental jurisdiction over a pendent claim only if one of

21  the four categories specifically enumerated in section 1367(c) applies"). None of the

22

23     [16] In determining the amount in controversy, a court may consider requests for attorneys

24        fees and treble damages. *See, e.g., Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d
          1004, 1009 (N.D. Cal. 2002) ("The amount in controversy for diversity jurisdiction may

25        include punitive damages if recoverable under state law").

26     [17] Those grounds are: (1) "a novel or complex issue of State law;" (2) a state-law claim
          that "substantially predominates" over the claims within the district court's original
          jurisdiction; (3) the dismissal of the claims within the district court's original

27        jurisdiction; or (4) "other compelling reasons" in "exceptional circumstances." 28
          U.S.C. § 1367.

28

1    grounds articulated in Section 1367(c) apply here.[18]  Conversely, judicial economy and

2    fairness to the parties weigh strongly in favor of exercising supplemental jurisdiction.

3    **IV.       CONCLUSION**

4           For the foregoing reasons, defendants respectfully request that the Court deny the

5    State's remand motion.

6

7    Dated: January 19, 2011.

8                                              PILLSBURY WINTHROP SHAW PITTMAN LLP

9

10                                             By:  /s/ John M. Grenfell_____

11                                                   John M. Grenfell

12                                             JOHN M. GRENFELL (State Bar No. 88500)
                                               JACOB R. SORENSEN  (State Bar No. 209134)
13                                             FUSAE NARA (*pro hac vice*)
                                               ANDREW D. LANPHERE  (State Bar No. 191479)
14                                             *john.grenfell@pillsburylaw.com*
                                               *jake.sorensen@pillsburylaw.com*
15                                             *fusae.nara@pillsburylaw.com*
                                               *andrew.lanphere@pillsburylaw.com*
16
                                               50 Fremont Street
17                                             San Francisco, CA  94105
                                               Tel:  (415) 983-1000
18                                             Fax:  (415) 983-1200

19                                             Attorneys for Defendants SHARP CORPORATION and
                                               SHARP ELECTRONICS CORPORATION
20

21

22

23

24   _____

25   [18] The State cites *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546 (2005), for
          the proposition that "in the context of CAFA, a district court may decline to exercise
26   supplemental jurisdiction, particularly as to parties (i.e., the State) for whom there is no
     diversity."  Mot. at 21.  In fact, the Supreme Court's one-paragraph discussion of CAFA
27   simply concludes that the statute "has no bearing on our analysis of these cases" because
     it was not retroactive.  545 U.S. at 571-72.
28

WILMER CUTLER PICKERING HALE AND
DORR LLP

By: /s/ Nathan L. Walker
            Nathan L. Walker

NATHAN L. WALKER (State Bar No. 206128)
950 Page Mill Road
Palo Alto, CA 94304
Tel:  (650) 858-6000
Fax:  (650) 858-6100
*Nathan.Walker@wilmerhale.com*

STEVEN F. CHERRY
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Phone:  (202) 663-6000
Fax:  (202) 663-6363

Attorneys for Defendants CHIMEI INNOLUX
CORP., CHI MEI OPTOELECTRONICS CORP.
USA, INC., and CMO JAPAN CO., LTD.


MORRISON & FOERSTER LLP

By: /s/ Stephen P. Freccero
            Stephen P. Freccero

MELVIN R. GOLDMAN (State Bar No. 34097)
STEPHEN P. FRECCERO (State Bar No. 131093)
DEREK F. FORAN (State Bar No. 224569)
425 Market Street
San Francisco, California  94105-2482
(415) 268-7000 (Phone)
(415) 268-7522  (Facsimile)
*MGoldman@mofo.com*
*SFreccero@mofo.com*
*DForan@mofo.com*

Attorneys for Defendants EPSON IMAGING
DEVICES CORPORATION and EPSON
ELECTRONICS AMERICA, INC.

1                               MORGAN LEWIS & BOCKIUS LLP

2                               By:  /s/ Kent M. Roger
                                           Kent M. Roger

3

4                               KENT M. ROGER (State Bar No. 95987)
                               MICHELLE KIM-SZROM (State Bar No. 252901)
                               One Market, Spear Street Tower

5                               San Francisco, CA 94105-1126
                               (415) 442-1000 (Phone)

6                               (415) 442-1001 (Facsimile)
                               *kroger@morganlewis.com*

7                               *mkim-szrom@morganlewis.com*

8                               Attorneys for Defendants HITACHI, LTD.,
                               HITACHI DISPLAYS, LTD. and HITACHI

9                               ELECTRONIC DEVICES (USA), INC.

10

11

                               COVINGTON & BURLING LLP

12

                               By:  /s/ Simon J. Frankel

13                                         Simon J. Frankel

14                               SIMON J. FRANKEL (CA Bar No. 171552)
                               JEFFREY M. DAVIDSON (CA Bar No. 248620)

15                               1 Front Street, 35th Floor
                               San Francisco CA 94109

16                               (415) 591-7021 (Phone)
                               (415) 955-6521 (Facsimile)

17                               *sfrankel@cov.com*
                               *jdavidson@cov.com*

18                               Attorneys for Defendants SAMSUNG

19                               ELECTRONICS CO., LTD.; SAMSUNG
                               SEMICONDUCTOR, INC.; and SAMSUNG

20                               ELECTRONICS AMERICA, INC.

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WHITE & CASE LLP

By:  /s/ Christopher M. Curran
          Christopher M. Curran

BIJAL V. VAKIL (State Bar No. 192878)
3000 El Camino Real
5 Palo Alto Square, 9th Floor
Palo Alto, CA  94306
(650) 213-0300 (Phone)
(650) 213-8158 (Facsimile)
*bvakil@whitecase.com*

CHRISTOPHER M. CURRAN
JOHN H. CHUNG
KRISTEN J. MCAHREN
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200 (Phone)
(212) 354-8113 (Facsimile)
*ccurran@whitecase.com*
*jchung@whitecase.com*
*kmcahren@whitecase.com*

Attorneys for Defendants TOSHIBA CORPORATION;
TOSHIBA MOBILE DISPLAY CO., LTD.; TOSHIBA
AMERICA ELECTRONIC COMPONENTS, INC.; and
TOSHIBA AMERICA INFORMATION SYSTEMS,
INC.

DEFENDANTS' OPPOSITION TO
MOTION TO REMAND
Case No. 3:07-md-1827 SI