**Calvert, Jennifer L.**

| | |
|---|---|
| **Subject:** | FW: Re TFT-LCD (Flat Panel) Antitrust Litigation, No. M:07-1827 SI: letter from the Director-General of DG Competition of the European Commission |
| **Attachments:** | Letter to Judge Illston - signed - redacted.pdf |

---

**From**: Dirk.VAN-ERPS@ec.europa.eu [mailto:Dirk.VAN-ERPS@ec.europa.eu]
**Sent**: Tuesday, February 15, 2011 08:24 AM
**To**: Roger, Kent M.; Everett, Jr., John Clayton
**Subject**: Re TFT-LCD (Flat Panel) Antitrust Litigation, No. M:07-1827 SI: letter from the Director-General of DG Competition of the European Commission

Dear Sirs,

Please find attached a **redacted version of the** letter of the Director General of the Directorate General for Competition of the European Commission to Judge Illston to present the view of the services of the European Commission on the Order of Special Master Martin Quinn concerning an in camera review of Hitachi's communication submitted to or received from the Commission.

At the same time, I have emailed directly to Judge Illston's Court Deputy, Mrs Forakis, the letter containing our views under seal on "the Commission's antitrust investigation in the sector for TFT-LCD panels". This concerns page 2 of the letter.

I would be grateful if you could pass on this letter via the appropriate communication channel to Judge Illston.

Yours faithfully,

For the Director General,

Dirk Van Erps
Head of Unit Cartels II
DG Competition
European Commission

Redacted version:

<<Letter to Judge Illston - signed - redacted.pdf>>



EUROPEAN COMMISSION
DG Competition

Director General

Brussels, **1 5 FEV. 2011**  D/ 2011/015984
COMP/G-2/DVE-mvk

**Honorable Susan Y. Illston**
United States District Court
450 Golden Gate Avenue
Courtroom 10, 19th Floor
San Francisco, CA 94102

**In Re TFT-LCD (Flat Panel) Antitrust Litigation, No. M: 07-1827 SI**

Dear Judge Ilston,

I am writing you concerning the Special Master's Order of 22 December 2010 in the TFT-LCD (flat panel) antitrust litigation.

The Special Master has ordered Hitachi to deliver *in camera* all communications it has submitted to or received from the Directorate-General for Competition ("*DG Competition*") of the European Commission ("*Commission*") in connection with any investigation of Hitachi for involvement in a cartel concerning price-fixing of LCD panels.

With this letter, I would like to clarify the position of DG Competition with respect to the discovery order. In particular, I would like to make clear why the production of the abovementioned communications would jeopardize the interests and impair the effectiveness of the Commission's current and future investigations.

The information contained in the following section is highly confidential, which is why it is submitted under seal. The remaining sections of this letter do not contain confidential information.

**The Commission's antitrust investigation in the sector for TFT-LCD panels**

Submitted under seal

# Civil litigation in foreign jurisdictions and the confidentiality of EU antitrust investigations[1]

The Commission is the institution of the European Union that is entrusted with the task of ensuring the application of the Treaties.[2] In particular, the Commission has to ensure the application of the competition (antitrust) rules laid down in the Treaty for the Functioning of the European Union (TFEU).[3] This task is carried out through DG Competition.

The Commission has three principal means of obtaining evidence of antitrust infringements. First, the Commission may conduct inspections of investigated undertakings at the latter's business premises or, under certain circumstances, at other premises, during which business records may be copied.[4] It may also take statements from persons who consent to be interviewed.[5] Second, the Commission may send requests for information to investigated undertakings or third parties.[6] Third, the Commission may obtain evidence through voluntary submissions of undertakings who submit information under the Commission's leniency program.[7] The materials gathered by the Commission in the course of its investigation become part of the "*administrative file*". As concerns secret cartels, the Commission's most important investigative tool is the Leniency Programme, which has proven to be a highly successful instrument for detecting cartels in Europe.

---

[1] This section only provides a brief overview. A more detailed discussion regarding the balance between public enforcement interests in the European Union and the interests of private litigants in foreign jurisdictions, can be found in the Submission of the Directorate-General for Competition to the Antitrust Modernization Commission, available at: http://govinfo.library.unt.edu/amc/public_studies_fr28902/international_pdf/060406_DGComp_Intl.pdf, and in chapter 7.1 of the Commission Staff Working Paper, "*Report on the Functioning of Regulation 1/2003*", (SEC(2009)574), available at: http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=SEC:2009:0574:FIN:EN:PDF.

[2] Article 17 of the Treaty on European Union OJ C 83, 30 March 2010, p. 13

[3] Articles 101 and102 of the Treaty on the Functioning of the European Union [OJ C 83, 30 March 2010, p. 47]. See also Council Regulation No 1/2003 [OJ L 1, 4 January 2003, p. 1] and Commission Regulation No 773/2004 [ OJ L 123, 27 April 2004, p. 18] as last amended by Regulation (EC) No 622/2008 (OJ L 171, 1.7.2008, p. 3).

[4] Articles 20 and 21 of Regulation 1/2003.

[5] Article 19 of Regulation 1/2003.

[6] Article 18 of Regulation 1/2003.

[7] Commission Notice on Immunity from fines and reduction of fines in cartel cases ("*Leniency Notice*") (OJ 2006, C 298, p. 17), available at: http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:C:2006:298:0017:0022:EN:PDF.

Where the Commission has gathered sufficient evidence of a suspected infringement, it issues a *"statement of objections"*, which contains the provisional charges held against undertakings suspected of taking part in an infringement and enables them to exercise their rights of defense. In order to fully exercise their rights of defense, the parties to an investigation are granted access to the Commission's administrative file. If the allegations are confirmed, the Commission adopts a decision finding the infringement and, possibly, imposing fines or other remedial action.

Recently, the Commission has introduced a settlement procedure, which allows undertakings to acknowledge their participation in a cartel, for which they may obtain a specific additional reduction of the fine of 10%.[8] In the settlement procedure, once undertakings have introduced a formal proposal of settlement, the Commission will issue a simplified statement of objections and decision.

The information obtained pursuant to the Commission's investigative powers can be used only for the purpose for which it was acquired.[9] Even though this information can be exchanged with the competition authorities of the Member States of the European Union, neither the Commission nor the Member States' authorities and their staff may disclose it.[10] Only the Commission's final decision is made public.[11] The Commission publishes its decisions in a non-confidential version of which business secrets and other confidential information, including information that the Commission regards as confidential to safeguard the integrity of its investigations, have been omitted.

The materials in the administrative file, as well as the statement of objections and the replies to the statement of objections submitted by undertakings, are protected by the rules of professional secrecy. They cannot be disclosed to third parties. Only the undertakings to which a statement of objections has been addressed have the right to access the documents in the Commission's

---

[8] Article 10a of Regulation 773/2004. See also [OJ C 167, 2 July 2008, p. 1], available at: http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:C:2008:167:0001:0006:EN:PDF.

[9] Article 28 of Regulation 1/2003.

[10] Article 339 of the Treaty on the Functioning of the European Union. See also Article 28 of Regulation 1/2003.

[11] Article 30 of Regulation 1/2003.

administrative file for the exercise of their rights of defense.[12] According to the EU legal framework, documents obtained by those undertakings through access to the file shall be used only for the purposes of judicial or administrative proceedings for the application of the competition rules of the Treaty.[13] Any breach of the obligation not to use information obtained through access to file for any other purpose may be held against the undertakings in the determination of the fine.[14]

The confidentiality of all information related to ongoing antitrust investigation is necessary to ensure the effectiveness of the Commission's actions in the area of antitrust enforcement. This holds true in particular when an investigation is ongoing, since the disclosure of materials in the administrative file could reveal the Commission's investigating strategy and the names of the undertakings under investigation. The undertakings under investigation might also learn which evidence is already on the file and which information – if any – the Commission has obtained so far through its leniency program.

Moreover, safeguarding the confidentiality of the administrative file is important in order to respect the rights of the undertakings under investigation, in particular the protection, which they derive from the presumption of innocence. As long as the Commission's investigation is in process, the undertakings under investigation cannot be considered as having infringed antitrust rules. In addition, the statement of objections, which sets out the Commission's provisional

---

[12] Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty, Articles 53, 54 and 57 of the EEA Agreement and Council Regulation (EC) No 139/2004 ("*Access to the File Notice*") (OJ 2005, C 325, p. 7), available at: http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:C:2005:325:0007:0015:EN:PDF. The addressees of a statement of objections also have access to the corporate statements submitted in the framework of the leniency program, albeit under very strict conditions of secrecy on the Commission's premises. See point 7 of the Leniency Notice.

[13] Article 15(4) of Regulation 773/2004.

[14] Pursuant to the Guidelines on the method of setting fines, *(See* the Guidelines on the method of setting fines imposed pursuant to Article 23(2)(a) of Regulation No 1/2003, OJ C 210, 1.09.2006, p. 2, at ¶ 28) refusal to cooperate with or obstruction of the Commission in carrying out its investigations may be considered as an aggravating circumstance for the calculation of a fine. If any such use is made after the adoption of a decision imposing fnes, the Commission may, in any legal proceedings before the Union Courts, ask the Courts to increase the fine in respect of the responsible party (see Point 48 of the Access to the File Notice. the 2006 Leniency Notice at point 34; and Article 23 of Council Regulation (EC) No 1/2003 in cartel cases, OJ C 167, 2.7.2008, p. 1 ("Settlement Procedure Notice"), at ¶¶ 35-40.) Furthermore, as indicated in point 48 of the "Access to the Commission file Notice", "*should the information be used for a different purpose, at any point in time, with the involvement of an outside counsel, the Commission may report the incident to the bar of that counsel, with a view to disciplinary action*".

conclusions from the investigation, merely represents an intermediate step towards a formal finding of an infringement.[15]

Even after an investigation has been completed and finally closed, the information submitted to the Commission by the undertakings may still contain business secret or otherwise be of confidential nature. Disclosure of such materials in the administrative file can undermine the general efficacy of the Commission's antitrust enforcement. The corporate statements specifically prepared for submission under the leniency program are given a high degree of protection against disclosure both during and after the investigation. The leniency program is the most effective tool at the Commission's disposal for the detection of cartels. Its success is crucially dependent on the willingness of companies to provide comprehensive and candid information. This willingness could disappear if potential leniency applicants would know that their corporate statements could become discoverable in civil litigation. The discoverability of corporate leniency statements in civil litigation could lead to the incongruous result that a cartel member that has chosen to cooperate with the Commission could wind up being in a worse position – with regard to civil claims – than those cartel members that have refused to cooperate. As the Commission explains in its Leniency Notice:

*"[U]ndertakings may provide the Commission with voluntary presentations of their knowledge of a cartel and their role therein prepared specially to be submitted under this leniency programme. These initiatives have proved to be useful for the effective investigation and termination of cartel infringements and they should not be discouraged by discovery orders issued in civil litigation. Potential leniency applicants might be dissuaded from cooperating with the Commission under this Notice if this could impair their position in civil proceedings, as compared to companies who do not cooperate. Such undesirable effect would significantly harm the public interest in ensuring effective public enforcement of [Article 101 TFEU] in cartel cases and thus its subsequent or parallel effective private enforcement."* [16]

---

[15] Because of its preparatory nature, a statement of objections cannot be challenged in court. Only the Commission's final decision is a legally binding and challengeable act.

[16] Point 6 of the Leniency Notice.

The same protection is granted to the settlement submissions that undertakings submit in the course of the settlement procedure.

As regards other documents, such as requests for information and replies thereto, the effectiveness of the Commission's investigation relies on its powers of investigation, including the power to request information from parties to the investigation and third parties, covering business secrets and other information that companies often want to keep confidential. Even when the Commission compels undertakings to cooperate in its investigation, the assurance of confidentiality makes their participation more complete and open. In case of unauthorized disclosure, not only the on-going investigation would be hampered, but also it would negatively affect the effectiveness of the Commission's investigations in the future.

Therefore, the Commission protects certain categories of documents against disclosure even after the investigation is formally or informally closed[17].

I would like to emphasize that it is not the Commission's intention to hinder civil antitrust litigation. On the contrary, the Commission encourages private damages actions for breach of antitrust rules and considers that the objectives of public enforcement and compensation for damages are not opposed, but rather juxtaposed.[18] In practice, the investigation and punishment of cartels by the Commission often constitutes the grounds for private damages claims. The Commission is able to detect cartels to a large extent because of the appeal of its leniency program.[19] Therefore, the disincentives that may arise through the possibility of discovery of corporate leniency statements is likely to eventually harm the realization of public and private enforcement alike.

The abovementioned considerations regarding the need to protect the confidentiality of the Commission's administrative file have received recognition in United States courts, for instance

---

[17] See Commission's amicus curiae to US courts in the *Flat Glass* and *Visa/Master Card* cases.

[18] See, for instance, the Commission's White paper on damages actions for breach of the EC antitrust rules (SEC (2008) 404-406, 2.4.2008) and the consultation document *"Towards a coherent European approach to collective redress"* (SEC (2011) 173, 4.2.2011), available at http://ec.europa.eu/competition/antitrust/actionsdamages/index.html.

[19] Between January 2009 and December 2010, the Commission adopted final decisions in 13 cartel cases. In 12 of these cases, the investigation was prompted by one or more leniency applications.

in the following cases: *Methionine*,[20] *Rubber Chemicals*,[21] *Flat Glass*,[22] and *Payment Card Interchange*.[23] In this last case, where the Commission formally intervened as *amicus curiae* in order to claim confidentiality of the Statement of Objections and recordings of the Oral Hearing, the US District Court concluded that: "*The Commission has established that confidentiality plays a significant role in assisting the effective enforcement of European antitrust law. Most importantly, confidentiality encourages third parties to cooperate with the Commission's investigations.*[24]".

As you can understand, it is not possible for the Commission to intervene as amicus curiae in various jurisdictions around the world where disclosure of documents from its investigative file is often requested. For this reason, it has explained its position in the relevant public fora, for instance with its submission to the United States Antitrust Modernization Commission in 2006 and in its Report on the functioning of Regulation 1/2003[25], highlighting again the impact of

---

[20] United States District Court for the Northern District of California, In Re: Methionine Antitrust Litigation, case No. C-99-3491 CRB MDL no. 1311.

[21] United States District Court for the Northern District of California, In Re: Rubber Chemicals Antitrust Litigation, Case No. C04-1648 MJJ (BZ).

[22] United States District Court for the Western District of Pennsylvania, In Re: Flat Glass Antitrust Litigation, (II) Civil Action No 08-mc-180 MDL No. 1942.

[23] United States District Court for Eastern District of New York, In Re: Payment Card Interchange Memorandum Fee and Merchant Discount, 05-Md-1720.

[24] United States District Court, Eastern District Of New York: In Re Payment Card Interchange Memorandum Fee And Merchant Discount, 05-Md-1720, " The Commission relies on information provided by complainants and other third parties, including business secrets and other information that the third parties often want to keep confidential. The confidentiality the Commission promises is particularly important in encouraging voluntary cooperation by third parties. However, even when the Commission compels third parties' participation, the assurance of confidentiality tends to make their participation fuller and more open. Moreover, the confidentiality of the investigative and adjudicative process is also important to encourage candor by the targets of the investigation. That the proceedings are secret encourages free and open participation by the parties under investigation, which in turn serves the Commission's interest in detecting and punishing violations of its laws. The Commission's interests would be significantly undermined if its confidentiality rules were disregarded by American courts in this case and others like it."

[25] *See* Submission by the Directorate General for Competition of the European Commission, Philip Lowe, Dir. Gen., to the Antitrust Modernization Commission, COMP A/4 D(2006) 83, at 1 (Apr. 4, 2006), available at http://govinfo.library.unt.edu/amc/public_studies_fr28902/international_pdf/060406_DGComp_Intl.pdf . There is also the more recent Commission staff working paper accompanying the Communication from the Commission to the European Parliament and Council - Report on the functioning of Regulation 1/2003

discovery rules in antitrust civil damages actions in the United States on the Commission's antitrust enforcement.

**Conclusion**

It is respectfully submitted that the production *in camera* of all communications Hitachi has submitted to or received from DG Competition in connection with any investigation of Hitachi for involvement in a cartel concerning price-fixing of TFT-LCD panels would jeopardize the interests and impair the effectiveness of the Commission's power of investigation in this case and in future cases.

I hope these submissions are helpful to you. If it is considered necessary and appropriate, the Commission may seek leave from the Court to intervene as *amicus curiae*. In the meantime, I remain at your disposal if you have any further questions.

Yours sincerely

Alexander Italianer

---

{COM(2009)206 final}, SEC/2009/0574 final, available at http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:52009SC0574:EN:NOT