IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION _____/ | No. M 07-1827 SI<br><br>MDL. No. 1827 |
| This Order Relates to:<br><br>ALL CASES<br>_____/ | **ORDER RE: HITACHI'S OBJECTION TO SPECIAL MASTER'S ORDER RE: IN CAMERA REVIEW** |

Currently before the Court is the question of Hitachi's Objections to the Special Master's December 22, 2010 Order re: In Camera Review. (Docket No. 2244). In that Order, the Special Master addressed plaintiffs' motion to compel production of documents pertaining to investigations of Hitachi by the European Commission (EC) and the Japan Fair Trade Commission (JFTC). The Special Master applied the factors required by *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.* (*Aerospatiale*), 482 U.S. 522 (1987), namely: (1) the importance to the litigation of the information requested; (2) the specificity of the request; (3) whether the information originated in the United States; (4) whether alternative means exist to obtain the information; and most importantly, (5) whether the interests of the United States in enforcing its antitrust laws outweigh the interests of the foreign regulators in maintaining confidentiality. *See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). The Special Master also specifically considered the objections submitted by representatives of the EC and the JFTC. The Special Master recognized their strong preference for maintaining the confidentiality of all documents regarding their investigations, but likewise recognized that those interests do not automatically settle the issue of disclosure.

The Special Master found that he was unable to fully engage in the balancing required by

*Aerospatiale* for two reasons: First, the Special Master lacked knowledge of critical facts, including what specific documents were at issue, whether Hitachi sought leniency from the EC or JFTC, and whether any proceedings were still ongoing against Hitachi in the EC or Japan. Second, the Special Master could not ascertain how relevant the withheld documents were to plaintiffs' case. The Special Master, therefore, ordered that the documents be produced for *in camera* review.

Hitachi objects to the Special Master's order requiring *in camera* review, arguing that *in camera* review is unnecessary to decide whether the documents should be released, that *in camera* review would undermine antitrust enforcement in the United States and throughout the world, and that *in camera* review would violate Japanese and European law. The EC and JFTC have provided this Court with new submissions reiterating their concerns, in addition to the submissions that were made to the Special Master.

The EC's submission provides the Court with additional information regarding the EC's antitrust investigation in the sector for TFT-LCD panels. That portion of the EC's submission has been submitted *ex parte* and filed under seal.[1] The EC also reiterates their objections to the *release* of documents concerning the EC's investigation. The EC, however, does not address whether disclosure of the documents at issue for *in camera* review would violate European law, and does not specifically address or object to the process of *in camera* review to aid the Special Master's *Aerospatiale* balancing, other than one unsupported sentence in their conclusion that, "the production *in camera* of all communications" at issue "would jeopardize the interests and impair the effectiveness of the Commission's power of investigation in this case and future cases." Docket No. 2450, at 10.

The JFTC's submission does not provide any new information regarding the status of the JFTC's investigation of Hitachi. The submission also reiterates JFTC's objection to release of information regarding their investigation. The JFTC's submission, however, is ambiguous as to whether disclosure of the documents to the Special Master would itself violate the JFTC's prohibition on disclosing to a third party the fact that an entity has applied for leniency. *See* Docket No. 2392 at pg. 14-16. The

---

[1] This information will be made available for the Special Master's review – with the Special Master being bound by the same rules of confidentiality as this Court – as it is should be considered in the balancing of the *Aerospatiale* factors.

2

JFTC's submission seems to reason that because *in camera* review is a process by which individual documents are identified for potential admissibility or disclosure, and that process could somehow inform a third party "absent just cause" of the applicant's request for leniency, *in camera* review of the documents should not be allowed. *Id*. at 14-15. The JFTC does not appear to assert that the process of *in camera* review by a Court or its designee would, itself, violate the prohibition on disclosing to a third party a request for leniency and even if it would, does not address whether an order from a United States Court requiring *in camera* review would provide "just cause." With respect to non-leniency documents, the JFTC argues that because in camera review is a procedure by which documents are reviewed for their possibility of disclosure, the *in camera* review itself would impair the effectiveness of the JFTC's investigations.

Having considered Hitachi's objections, as well as the additional submissions of the EC and JFTC, the Court OVERRULES Hitachi's objections to *in camera* review.

Hitachi initially argues that the *in camera* review procedure is unnecessary because the Special Master did not give sufficient deference to the concerns of the EC and JFTC over disclosure, particularly disclosure of leniency materials. Hitachi's argument is based on the false premise that if a foreign regulator makes a strong statement opposing disclosure, the analysis ends. While the fifth *Aerospatiale* factor – whether the interests of the United States in enforcing its antitrust laws outweigh the interests of foreign regulators in maintaining confidentiality – is the most important factor in the balancing test, it is not the only one. Moreover, the *Aerospatiale* factors must be evaluated in light of the specific issues at play in each case – the relevance of the information sought, what other sources of information are available, what stage the foreign or domestic regulatory investigations are at, etc. If, as Hitachi assumes, the fifth factor trumped all others, none of the other *Aerospatiale* factors would be necessary. This is why, even assuming leniency materials are included in documents at issue, the Special Master will still be required to review the relevancy of the materials against the need for confidentiality and protecting international comity to determine whether any documents should be released.

Hitachi also argues that the *in camera* review is unnecessary because plaintiffs have access to significant information regarding Hitachi's actions through depositions and other document productions, making the withheld information not "directly relevant" under *Aerospatiale*. However, as the Special

3

Master noted in ordering *in camera* review, he cannot determine how relevant the documents at issue are without reviewing them.[2] In particular, plaintiffs argue that their need for the withheld documents is based in large part on the fact that at least five former "high level" Hitachi employees have died, retired or will assert their Fifth Amendment rights and refuse to testify. Oppo. at 6. Hitachi counters that plaintiffs have other individuals who they could depose, but Hitachi remains silent on whether the specific documents at issue bear any relevance to the actions of the individuals identified by plaintiffs. If the withheld documents did not bear upon these individuals' conduct, Hitachi could certainly say so, but it has not. Hitachi's argument that plaintiffs have access to four million pages of documents, sixty-six interrogatory answers, and responses to requests for admissions and, therefore, do not need access to the documents at issue, is likewise not persuasive. If the information being withheld is duplicative of information already produced, Hitachi should affirmatively say so (and demonstrate the same to the Special Master), instead of repeatedly asserting that plaintiffs "have sufficient access to multiple sources of information regarding the scope of any conspiratorial conduct apart from the requested documents exchanged with foreign regulators." Objections at 15.

Hitachi's argument that the *in camera* review ordered by the Special Master would be unrealistic, because the Special Master could not possibly compare the contents of the withheld documents to the contents of all other sources of information already provided by Hitachi to plaintiffs, is not well taken. *See* Objections at 17-18. Part of the goal of the *in camera* review is to determine how relevant the withheld documents are to plaintiffs' case, *i.e.*, whether the documents disclose conduct of the five high level employees identified by plaintiffs, whether the documents address the conspiracy alleged in this case. *Cf. In re Rubber Chemicals Antitrust Litigation*, 486 F. Supp. 2d 1078, 1083 & n.4 (N.D. Cal. 2007) (in conducting *in camera* review of materials regarding foreign regulator's investigation, court concluded materials not relevant because they did not reference conduct at issue in that case).

---

[2] As the Special Master noted, a major factor in each of the district court cases addressing production of foreign regulatory materials, is whether other comparable material and information is available to plaintiffs from other sources. *See* Special Master Order at 13-14.

4

Finally, as noted above, neither the EC nor the JFTC's submissions support Hitachi's position that *in camera* review would violate European or Japanese laws, or place Hitachi's leniency application – assuming it is a leniency applicant – in jeopardy. *Compare* Objections at 20 ("production of leniency documents to the Special Master even under in camera review may jeopardize the leniency position of the applicant"); *with* EC Submission (Docket No. 2450) and JFTC Submission (Docket No. 2392). With respect to non-leniency documents, the EC does not provide any support for its one sentence assertion that *in camera* review – as opposed to production of the documents – would impair the effectiveness of its current and future investigations. Similarly, the JFTC's position that because *in camera* review could possibly lead to eventual disclosure of the documents, *in camera* review would undermine the effectiveness of its investigations, is unsupported. Finally, even if the EC and JFTC had supported their assertions that *in camera* review, in this case, would undermine their investigatory and enforcement efforts, their positions ignore the fact that the protection of the materials at issue is *not* absolute. Instead, it is subject to the *Aerospatiale* balancing test. The Court is by no means denigrating the serious concerns raised by potential disclosure of documents regarding foreign regulatory agencies' investigations. However, this Court is bound by the United States Supreme Court's adoption of a balancing test for courts to apply in this situation, a test that focuses on the unique facts of the specific case before it.

In conclusion, it bears reemphasizing that the Special Master has not determined, and the Court is not ordering, that any of the documents at issue be produced to plaintiffs. The Special Master may find - after conducting the *in camera* review, reviewing the new submissions from the EC and JFTC, and balancing the *Aerospatiale* factors in light of the contents and relevancy of the documents – that the documents should not be produced or that only a subset should be produced. At that time, the parties may file objections and ask this Court to review the manner in which the Special Master applied the *Aerospatiale* factors with respect to the specific documents at issue.

**IT IS SO ORDERED.**

Dated: February 22, 2011

SUSAN ILLSTON
United States District Judge

5