IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br>_____/<br>This Order Relates To:<br>STATE OF FLORIDA,<br>      Plaintiff,<br>  v.<br>AU OPTRONICS CORP., *et al.,*<br>      Defendants.<br>_____/ | M 07-1827 SI<br>MDL. No. 1827<br>No. C 10-3517 SI<br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

On February 18, 2011, the Court heard argument on defendants' motion to dismiss plaintiff's complaint. For the reasons set forth in this order, defendants' motion is GRANTED IN PART and DENIED IN PART. The amended complaint shall be filed no later than **April 15, 2011**.

**BACKGROUND**

On August 11, 2010, plaintiff State of Florida ("Florida"), through its Office of the Attorney General and Department of Legal Affairs, filed in this Court an individual complaint against numerous domestic and foreign defendants for violations of state and federal antitrust laws and state unfair trade practices law. Pursuant to this Court's July 3, 2007 related case pretrial order #1, the case was designated as related to MDL No. 1827, M 07-1827.

The complaint alleges a global price-fixing conspiracy by suppliers of thin-film transistor liquid crystal display ("TFT-LCD") panels. Florida alleges that defendants "conspired to suppress and eliminate competition by fixing the prices of TFT-LCD Panels, and . . . by agreeing to limit the production of TFT-LCD Panels" in violation of Section 1 of the Sherman Act, the Florida Antitrust Act ("FAA"), and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Compl. ¶¶ 2, 5-6. Florida asserts these claims: (1) as direct purchasers under the Sherman Act based upon assignments "from a person that purchased TFT-LCD Products directly from a defendant" (*Id*. ¶ 9); (2) as an enforcement authority and as direct purchasers under the FAA based upon claimed assignments from "a person that purchased TFT-LCD Panels or TFT-LCD Products directly from a defendant" (*Id*. ¶¶ 10, 124); and (3) as an enforcement authority and for actual damages based on direct and indirect purchases under the FDUTPA "on behalf of one or more consumers and governmental entities in Florida" (*Id*. ¶ 11).

Defendants move to dismiss the complaint on four grounds. First, defendants contend that Florida must identify the assignors of the claims Florida purports to have authority to bring under federal and state antitrust laws. Second, defendants argue that Florida's claims are deficient because Florida does not identify the "governmental entities" and "consumers" on whose behalf Florida brings claims under the FDUTPA. Third, defendants move to dismiss on Due Process grounds the FAA claims for failure to allege that the relevant purchases were made in Florida. Fourth, defendants move to dismiss the FDUTPA claims for failure to allege that the relevant purchases were made in Florida.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative

2

level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff''s allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.     Identity of Assignors**

The complaint alleges that the "State of Florida, Department of Management Services, Procurement Division ("DMS"), requires vendors contracting through DMS for provision of products and/or services to Florida agencies, political subdivisions, universities, and community colleges to assign claims those vendors may accrue relating to violations of federal and/or state antitrust laws to the State of Florida when the claims relate to purchases by Florida governmental entities. As a result of this assignment, the State of Florida has contractual agreements with certain retailers or makers of TFT-LCD Products assigning any accrued claims relating to violations of federal and/or state antitrust laws to the State of Florida, when the claims relate to purchases by Florida governmental entities." Compl. ¶¶ 107-08. Under the Sherman Act and Florida Antitrust Act claims, the complaint alleges that "[t]he State of Florida and its units of government have been assigned the rights giving rise to this action from a person that purchased TFT-LCD Panels or TFT-LCD Products directly from a defendant." *Id*. ¶¶ 118(a), 124(a).

Defendants move to dismiss the complaint because it does not identify the assignors, nor does it allege any facts to demonstrate that the assignors would be entitled to relief. Defendants contend that

3

they need additional information about the assignments because the assignments may be invalid or subject to arbitration, and because Florida's claims may overlap to a significant degree with the claims asserted by other plaintiffs in the MDL.

Citing *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517 (D.N.J. 2004), Florida argues that it need not identify assignors in its complaint. In *K-Dur*, the Commonwealth of Pennsylvania asserted claims "on behalf of the Commonwealth's general economy, as *parens patriae* on behalf of natural persons in the Commonwealth, and in its proprietary capacity on behalf of departments, bureaus, and agencies of the Commonwealth, who purchased K-Dur products." *K-Dur*, 338 F. Supp. 2d. at 523. The defendants argued "that the assigned claims . . . are deficient because they all have failed to allege payment of consideration for the assignments, and with respect to the Commonwealth, have failed to identify the identity of the assignors who allegedly assigned their claims." *Id*. at 539. The court held that "[t]he gravamen of Defendants' contention is that the 'assignee' Plaintiffs should have pled additional facts to show that their asserted claims were validly assigned" and characterized these arguments "as raising an issue of the Plaintiffs' capacity to sue." *Id*. at 540. The court denied the defendants' motion to dismiss, holding that "[a] complaint will not be dismissed for lack of pleading a party's capacity to sue except where lack of capacity affirmatively appears on the face of the complaint, or where an opposing party has made a specific negative averment in a responsive pleading." *Id*. (citations omitted).

Given the complexity of this MDL and the fact that the assigned claims overlap to some degree with claims alleged by other plaintiffs in this MDL,[1] the Court finds it appropriate to require Florida to identify the assignors and GRANTS defendants' motion to this extent. Here, unlike *K-Dur*, defendants' challenge to the complaint is not solely related to capacity to sue. The balance of the information sought by defendants, such as information about the contracts, is not required as a pleading matter and can be explored in discovery.

**II.     Identity of Governmental Entities and Individuals**

---

[1] Plaintiffs provided the names of seventeen assignors in their opposition to the motion to dismiss; this sampling of assignors reveals the names of several named parties in the MDL.

4

Defendants contend that the complaint does not clearly state whether the FDUTPA claim is being brought on behalf of only natural persons, or also on behalf of "consumers," which is a broader category than natural persons that includes "any commercial entity, however denominated." Fla. Stat. § 501.203. Defendants note that while the first paragraph of the complaint states "[t]he State of Florida brings this action against the Defendants under the Sherman Act, the Clayton Act, the Florida Antitrust Act, and the Florida Deceptive and Unfair Trade Practices Act on behalf of itself and its governmental entities, and on behalf of natural persons," Compl. ¶ 1, under the FDUTPA claim the complaint also mentions "consumers." *Id*. ¶ 126. However, as Florida notes, the FDUTPA portion of the complaint seeks relief on behalf of "individuals resident in the state of Florida," and thus it is clear that while the term "consumer" is defined broadly in the relevant Florida statutes, in the context of the complaint, Florida is only seeking relief for those consumers who are "individuals resident in the state of Florida."

Defendants also contend that because the complaint does not identify the governmental entities on whose behalf the complaint is brought, defendants do not have adequate notice of the nature of these claims. Defendants argue that they cannot determine details about the purchasing agreements or the scope of the governmental entities' claims from the complaint.

Florida responds that the Department of Legal Affairs of Florida has the authority to bring an action on behalf of "consumers of governmental entities for the actual damages caused by an act or practice in violation of [the FDUTPA]." Fla. Stat. § 501.207(1)(c); *see also* Compl. ¶¶ 11, 126. Florida also states that "[w]hen the Defendants filed the Motion, Defendants knew that Florida had agreed to provide all of them with assignments, purchase contracts, and transactional data relating to the governmental entities' purchases that would provide the Defendants the information they claim to require before answering the Complaint." Opp'n at 17:2-7; *see also* Weilhammer Decl.

The relevant question at this stage of the proceedings is whether the complaint "answer[s] the basic questions: who, did what, to whom (or with whom), where, and when." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). This complaint meets this standard because Florida has the authority to bring this action on behalf of governmental entities. The complaint is sufficient as a pleading matter and the information that defendants seek regarding the specific nature of the purchasing

5

1 agreements or the scope of the claims can be sought in discovery.

## III. Due Process Objections to Florida Antitrust Act Claim

Defendants contends that the claims alleged under Florida Antitrust Act should be dismissed on due process grounds for failure to allege that the relevant purchases of TFT-LCD panels and TFT-LCD products were made in Florida. Defendants argue that the Due Process Clause prohibits application of a state law unless that State has a "significant contact or significant aggregation of contacts" with "the parties and the occurrence or transaction" giving rise to the litigation." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981). Defendants contend that in price-fixing cases, the relevant "occurrence or transaction" is the plaintiff's purchase of an allegedly price-fixed good, and thus that a plaintiff may only maintain an action under state antitrust law for purchases made within the relevant state.

Florida asserts that "[p]resumably, due to Defendants' citation to *Allstate*[], a choice-of-law Fourteenth Amendment case, the Motion is asking the Court to perform a choice-of-law analysis to Florida's complaint under the Due Process Clause of the Fourteenth Amendment . . . ." Opp'n at 7:8-12. Florida argues that defendants' motion fails to address the threshold question under a conflict-of-law analysis, namely why application of the Florida Antitrust Act conflicts in any material way with any other law that could apply.

Plaintiff's reliance on these cases is misplaced. In *Shutts* and *Mattel*, defendants had enough information to properly assert choice-of-law arguments. *See*, *e.g.*, *Shutts*, 472 U.S. at 816 ("Petitioner claims that Kansas law conflicts with that of a number of States connected to this litigation, especially Texas and Oklahoma"); *Mattel*, 558 F. Supp. 2d at 1119 ("Plaintiffs have adequately alleged that Mattel and Fisher-Price's conduct occurred, if at all, in-or had strong connections to-California."). Here, the Court cannot reach the question of choice-of-law without first determining where the relevant purchases were made.

To decide whether the application of a particular State's law comports with the Due Process clause, the Court must examine "the contacts of the State, whose law [is to be] applied, with the parties and with the occurrence or transaction giving rise to the litigation." *Hague*, 449 U.S. at 308; *see also Shutts*, 472 U.S. at 821-22 (Due Process requires a "significant contact or significant aggregation of

6

contacts" between the plaintiff's claims and the state at issue). Courts have held that in a price-fixing case, the relevant "occurrence or transaction" is the plaintiff's purchase of an allegedly price-fixed good. *See In re Graphics Processing Units Litigation ("GPU")*, 527 F. Supp. 2d 1011, 1028-29 (N.D. Cal. 2007).

Florida argues that its claims under the FAA are brought in its capacity as the "enforcement authority" of the FAA which gives it broad authority to bring claims for civil penalties and equitable remedies. Therefore, plaintiff argues, it does not have to show that the relevant purchases were made in Florida because "[s]uch a bright-line, non-context specific application of the Due Process clause would have the preclusive effect of barring all state enforcement authorities from applying state antitrust law when they did not act as a plaintiff 'purchaser.'" Opp'n at 11:20-22. Plaintiff contends that it need not provide information that the products at issue were purchased in Florida because the state antitrust claim is brought in part under its "enforcement authority," as opposed to as an assignee/direct purchaser.

Defendants respond that defendants only seek to dismiss on Due Process grounds the direct purchaser damages claims purportedly assigned to Florida, and thus Florida's arguments about its role as the "enforcement authority" of the FAA are irrelevant to the instant motion. Florida recognizes that recent trial court decisions, including decisions by this Court in this MDL, have held that Due Process requires a plaintiff seeking to bring claims under a state's antitrust law to demonstrate that the purchases giving rise to those claims occurred within that state. *See Pecover v. Electronic Arts, Inc.*, 633 F. Supp. 2d 976 (N.D. Cal. 2009); *GPU*, 527 F. Supp. 2d 1011; *In re Relafen Antitrust Litigation*, 221 F.R.D. 260 (D. Mass. 2004).[2]

Consistent with this Court's prior decisions, the Court holds that notwithstanding plaintiff's role as an enforcement authority, in order to bring the assigned direct purchaser claims under the FAA, Florida must allege that the purchases were made in Florida.[3] Therefore, to the extent that Florida

---

[2] On March 4, 2011, the Court granted plaintiff AT&T Mobility's motion to certify under 28 U.S.C. § 1292 this Court's November 12, 2010 order dismissing in part plaintiffs' second amended complaint. Docket No. 2522. The question certified for interlocutory review is whether AT&T can allege California Cartwright Act claims based on purchases that occurred outside of California.

[3] If the assigned claims were made pursuant to contracts with choice-of-law provisions, a different analysis may be appropriate.

7

1 alleges damages claims under the FAA as an assignee of direct purchasers, the Court GRANTS
2 defendants' motion and GRANTS plaintiff leave to amend.

### IV.  Location of purchases for FDUTPA Claim

Defendants contend that Florida's claims under the FDUTPA should be dismissed because the complaint does not allege that the purchases occurred within Florida.  Defendants argue that the case law establishes that under the FDUTPA, at least some of the alleged injuries must take place within the state. *See Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 227-28 (S.D. Fla. 2002); *see also Millennium Commc'ns & Fulfilmment, Inc. v. Office of Atty General*, 761 So.2d 1256, 1262 (Fla. App. 3d Dist. 2000).  Florida responds that the complaint "limits its FDUTPA count to 'individuals resident in the State of Florida'" and that "[t]o the extent there is a possibility residents did not purchase in the State of Florida, Florida is not pursuing those claims."  Opp'n at 17 (quoting Compl. ¶ 128).

The Court finds that the complaint sufficiently alleges that the FDUTPA claim is based on purchases that took place in Florida.  *See* Compl. ¶¶ 126, 128.  Accordingly, the Court DENIES defendants' motion to dismiss plaintiff's FDUTPA claim on these grounds.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  (Docket No. 11 in C 10-3517 SI and Docket No.2209 in M 07-1827 SI).  Plaintiff is granted leave to amend the dismissed claims.  The amended complaint shall be filed no later than **April 15, 2011**.

**IT IS SO ORDERED.**

Dated: March 24, 2011

SUSAN ILLSTON
United States District Judge

8