IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To: | No. C 10-3619 SI |
| STATES OF MISSOURI, ARKANSAS, MICHIGAN, WEST VIRGINIA, AND WISCONSIN,<br><br>  Plaintiffs,<br> v.<br><br>AU OPTRONICS CORPORATION, *et al.*,<br><br>  Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

On February 18, 2011, the Court heard argument on defendants' motion to dismiss plaintiffs' complaint. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS in part and DENIES in part defendants' motion to dismiss.

**BACKGROUND**

On August 17, 2010, plaintiff States of Missouri, Arkansas, Michigan, West Virginia, and Wisconsin (collectively "plaintiffs" or the "States"), through their individual Attorneys General, filed in this Court a joint complaint against numerous domestic and foreign defendants for violations of state and federal antitrust laws and state unfair trade practices law. Pursuant to this Court's July 3, 2007 pretrial order No. 1, the case was designated as related to MDL No. 1827, M 07-1827.

The complaint alleges a global price-fixing conspiracy by suppliers of thin-film transistor liquid crystal display ("TFT-LCD") panels. Plaintiffs allege that "[a] conspiracy to suppress and eliminate

competition among manufacturers of TFT-LCD Panels by fixing prices and limiting the production of the panels existed from at least 1999 through at least 2006 (the 'Conspiracy Period')." Compl. ¶ 4. Plaintiffs allege that defendants violated the Sherman and Clayton Acts as well as numerous state antitrust, consumer protection, and trade laws. Plaintiffs assert these claims "on behalf of themselves, their governmental entities, and/or other purchasers residing therein, and their general economies." *Id.* ¶ 10.

Defendants move to dismiss the complaint on five grounds: (1) the four states that assert claims on behalf of state or local governmental entities fail to adequately identify those entities; (2) disgorgement is not available as a remedy under either federal or state law; (3) Michigan and Wisconsin failed to adequately plead the identity of the assignors or which purchases took place in each state; (4) Arkansas' state deceptive trade practices claim is barred, as are any of Arkansas' state unfair practices claims that are based on indirect purchases made prior to April 8, 2003; and (5) Missouri's state merchandising practices claim is not pled with adequate particularity and fails to allege a statutory element.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief may be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions

1    of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

2    If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The
3    Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request
4    to amend the pleading was made, unless it determines that the pleading could not possibly be cured by
5    the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal
6    quotation marks omitted).

**DISCUSSION**

**I.     Identification of unnamed state or local government entities**

Michigan, Missouri, West Virginia and Wisconsin bring Sherman Act and state law claims on behalf of a variety of unnamed state entities, including state agencies, schools and municipalities. *See e.g.*, Compl. ¶ 133 (Missouri alleging claims on behalf of "itself, its political subdivision and public agencies, and all other political subdivisions, school districts and municipalities"); *Id*. ¶¶ 16, 128 (Michigan suing on behalf of "itself and its State Agencies"). Defendants move to dismiss these claims on the ground that they fail to provide fair notice of the States' claims as required by Rule 8(a). Defendants argue that the complaint's failure to identify the state entities creates four potential forms of prejudice: (1) defendants are unable to identify relevant sales of LCD products and panels; (2) defendants cannot determine whether they have contractual defenses against the state entities' claims; (3) the failure to identify the entities muddies the question of precisely which entities will be bound by the judgment in this case; and (4) defendants are unable to determine whether the States have the legal right to represent the entities.

The States argue that they are not required to specifically identify the state entities in the complaint, and that defendants can admit or deny the allegations in the complaint without additional information about the state entities. The States assert that they all have "automatic" authority under state law to bring claims on behalf of local and State entities, thus distinguishing the case cited by defendants, *New York v. Cedar Park Concrete Corporation*, 665 F. Supp. 238, 241 (S.D.N.Y. 1987) (dismissing complaint with leave to amend where complaint did not allege compliance with statute providing that State of New York could only bring suit on behalf of state entities if the entities expressly

requested such representation).[1]  In addition, the States assert that "all or nearly all of the identities of the state agencies and other governmental entities for which damages are sought by the States have already been disclosed."  Combined Opp'n at 2:7-9.

The relevant question at this stage of the proceedings is whether the complaint "answer[s] the basic questions: who, did what, to whom (or with whom), where, and when." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).  This complaint meets this standard because the States have the authority to bring this action on behalf of governmental entities.  The complaint is sufficient as a pleading matter and the information that defendants seek regarding the specific nature of the purchasing agreements or the scope of the claims can be sought in discovery.

The Court DENIES defendants' joint motion to dismiss Michigan, Missouri, West Virginia and Wisconsin's claims under Rule 8(a).

## II. Disgorgement

Count I of the complaint alleges violations of federal antitrust law, and seeks an injunction and "other equitable relief, including disgorgement."  Compl. ¶ 115.  Defendants move to strike the request for disgorgement, contending that disgorgement is not authorized by the Clayton Act.  Defendants argue that the Clayton Act authorizes money "damages" as well as "injunctive relief . . . against threatened loss or damage," 15 U.S.C. §§ 15(a), 15c(a), 26, and that disgorgement qualifies as neither.  Defendants also argue that permitting the States to seek disgorgement based on indirect purchases under the Clayton Act would contravene *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

Defendants also move to strike the requests for disgorgement under the state antitrust statutes.  In the complaint, Missouri requests "other equitable relief, including disgorgement," under the Missouri Antitrust Act.  Compl. ¶ 136.  Defendants contend that disgorgement is not an available remedy under the Missouri antitrust statute because that statute provides that it "shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes."  Mo. Rev. Stat. § 41.031.

---

[1] *State of Alaska v. Chevron Chemical Company*, 669 F.2d 1299 (9th Cir. 1982), also cited by defendants, does not address the sufficiency of the pleadings, but rather whether the State of Alaska had standing to sue.

4

In response to defendants' motion, plaintiffs state that they "hereby withdraw their request for relief under the disgorgement theories set forth in the complaint. The Plaintiff States continue to pursue monetary relief in the form of damages and/or restitution." Combined Opp'n at 4:3-5. Accordingly, the Court GRANTS defendants' motion to strike the requests for disgorgement.[2]

## III.   Identity of assignors in direct and indirect purchaser antitrust claims

The complaint alleges that Michigan and Wisconsin bring federal and state antitrust claims as assignees of direct and indirect purchasers. The assigned claims arise from purchases made by contractors who in turn sold the goods to the States. The assignments derive from Michigan and Wisconsin policies that require vendors who sell goods or services to either State to assign antitrust claims to the respective State. Defendants move to dismiss these claims because they neither identify the assignors of plaintiffs' claims, nor allege sufficient facts to demonstrate that the assignors would be entitled to relief. Defendants contend that they need to know the identities of the assignors, information regarding the purchase contracts that gave rise to the assignment, and information regarding whether the relevant purchases were made in Michigan and Wisconsin. Defendants claim that they contacted the Michigan and Wisconsin Attorneys General and requested information regarding the identity of the assignors and copies of the purchase contract, but that those requests were denied.

Citing *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517 (D.N.J. 2004), the States argue that they need not identify assignors in the complaint. In *K-Dur*, the Commonwealth of Pennsylvania asserted claims "on behalf of the Commonwealth's general economy, as *parens patriae* on behalf of natural persons in the Commonwealth, and in its proprietary capacity on behalf of departments, bureaus, and agencies of the Commonwealth, who purchased K-Dur products." *K-Dur*, 338 F. Supp. 2d. at 523.

---

[2] In their reply, defendants assert that to the extent plaintiffs seek restitution under the Clayton Act, that request should also be stricken because restitution is unavailable under federal antitrust law for the same reasons that disgorgement is unavailable. *See In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976). The complaint does not actually seek restitution under federal law. However, the Court agrees that such a request would be barred. *See id.* Similarly, defendants' reply argues that restitution is not available under the state antitrust statutes, and that those requests must be stricken because the state antitrust statutes must be interpreted in harmony with the Sherman Act. Plaintiffs did not address this issue in their papers. If, in the amended complaint, the States wish to seek restitution under the state antitrust statutes, the amended complaint shall cite authority showing that such a remedy is available under those statutes.

5

The defendants argued "that the assigned claims . . . are deficient because they all have failed to allege payment of consideration for the assignments, and with respect to the Commonwealth, have failed to identify the identity of the assignors who allegedly assigned their claims." *Id.* at 539. The court held that "[t]he gravamen of Defendants' contention is that the 'assignee' Plaintiffs should have pled additional facts to show that their asserted claims were validly assigned" and characterized these arguments "as raising an issue of the Plaintiffs' capacity to sue." *Id.* at 540. The court denied the defendants' motion to dismiss, holding that "[a] complaint will not be dismissed for lack of pleading a party's capacity to sue except where lack of capacity affirmatively appears on the face of the complaint, or where an opposing party has made a specific negative averment in a responsive pleading." *Id.* (citations omitted).

Given the complexity of this MDL and the fact that the assigned claims overlap to some degree with claims alleged by other plaintiffs in this MDL, the Court finds it appropriate to require the States to identify the assignors and GRANTS defendants' motion to this extent and GRANTS plaintiffs leave to amend. Here, unlike *K-Dur*, defendants' challenge to the complaint is not solely related to capacity to sue. The balance of the information sought by defendants, such as information about the contracts, is not required as a pleading matter and can be explored in discovery.[3]

**IV.  State law deceptive and unfair trade practice claims**

   **A.  Arkansas Deceptive Trade Practices Act**

Arkansas has alleged a claim under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-75-309. The ADTPA prohibits ten specific practices, as well as "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code

---

[3] Defendants also argue insofar as the States assert assigned claims under their state antitrust claims, the States must allege that the assigned purchases took place within Michigan and Wisconsin. The States respond that this allegation has been made in the complaint: "In the States of Michigan and Wisconsin, state entities bought TFT-LCD products . . . ." Compl. ¶ 104. However, this allegation speaks only to the States' purchases, not the original purchases that give rise to the assigned claims. This Court has previously held that in order to invoke the various state antitrust laws at issue, plaintiffs must be able to allege that the occurrence or transaction giving rise to the litigation – plaintiffs' purchases of allegedly price-fixed goods – occurred in the various states. Consistent with this Court's prior decisions, the Court holds that in order to bring the assigned claims under the state antitrust laws, Michigan and Wisconsin must allege that the purchases were made in Michigan and Wisconsin.

6

1 Ann. § 4-88-107(a)(10). Arkansas alleges that defendants' price-fixing conduct constitutes an "unconscionable" act in business, commerce or trade under the ADTPA, giving rise to a claim for restitution. Compl. ¶¶ 124, 126.

Defendants move to dismiss this claim, contending that the ADTPA does not apply to price-fixing. Defendants note that this Court previously dismissed the indirect purchaser plaintiffs' attempt to state a claim on behalf of Arkansas consumers under the ADTPA. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1125 (N.D. Cal. 2008). In that order, the Court noted the absence of any Arkansas authority interpreting the ADTPA to apply to price-fixing, and in the absence of any such authority, the Court declined to adopt the plaintiffs' expansive interpretation of the statute.

Defendants also note that Arkansas has alleged a separate price-fixing claim under the Arkansas Unfair Practices Act, Ark. Code Ann. § 44-75-201 *et seq.* ("AUPA"), which codified Arkansas antitrust law. Defendants argue that nothing in the general language of the ADTPA indicates that the statute was intended to apply to price-fixing, which is specifically addressed by the AUPA, and that interpreting the ADTPA to encompass such claims would be contrary to the implied intent of the Arkansas legislature.

Arkansas acknowledges that no Arkansas state or federal court has held that the ADTPA applies to price-fixing. However, Arkansas asserts that "few antitrust cases are litigated in Arkansas, and there is scant Arkansas authority on many topics within the antitrust arena." Arkansas Opp'n at 9:3-5. Arkansas argues that the Court should be guided by Arkansas courts' liberal construction of the ADTPA. The Arkansas Supreme Court has affirmed a lower court's finding that an unconscionable act is "an act that 'affronts the sense of justice, decency, or reasonableness,' " including acts "violative of public policy or a statute." *Baptist Health v. Murphy*, 226 S.W.3d 800, 811 & n.6 (Ark. 2006) (holding that a hospital's policy of denying privileges to physicians holding ownership interests in competing hospitals was properly determined by the trial court to be unconscionable under the ADTPA); *see also State ex rel. Bryant v. R & A Investment Co.*, 985 S.W.2d 299, 302 (Ark. 1999) (holding that the ADTPA's catch-all provision on unconscionable practices "illustrates that liberal construction" of the statute "is appropriate").

Arkansas has also cited several district court decisions from outside of Arkansas, including Judge Hamilton's decision in *In re Dynamic Random Access Memory Antitrust Litig.* and Judge Armstrong's

7

decision in *In re Flash Memory Antitrust Litig.*, which have held that the ADTPA applies to price-fixing claims. *See In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072, 1108-09 (N.D. Cal. 2007); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1156-57 (N.D. Cal. 2009).

In response, defendants have cited several other district court decisions from outside of Arkansas, including Judge Wilken's decision in *In re Static Random Access Memory Antitrust Litig.* and Judge Alsup's decision in *In re Graphics Processing Units Antitrust Litig.*, holding that the ADTPA does not apply to price-fixing claims. *See In re Static Random Access Memory Antitrust Litig. (SRAM)*, No. 07-md-0819 CW, 2010 WL 5094298 (N.D. Cal. Dec. 8, 2010); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007).

In light of this split among federal authorities, and the lack of any cases from Arkansas state or federal courts recognizing a price-fixing claim under the ADTPA, this Court declines to reconsider its previous holding.[4] Accordingly, the Court GRANTS defendants' motion to dismiss Arkansas' claim under the ADTPA.

### B. Arkansas Unfair Practices Act

Arkansas alleges a claim under the AUPA in its role as *parens patriae*, on behalf of both direct and indirect purchasers residing in Arkansas. Defendants move to dismiss the AUPA claims to the extent they are based on conduct that took place prior to April 8, 2003, the date on which Arkansas' *Illinois Brick* repealer statute, Arkansas Code Annotated section 4-75-315 ("section 4-75-315"), was enacted. Defendants cite *City of Cave Springs v. City of Rogers*, 37 S.W.3d 607 (Ark. 2001), for the proposition that "[t]he general rule is that all legislation is presumed to apply prospectively unless the legislature expressly declares, or necessarily implies by the language used, an intent to give a statute retroactive effect." *Id*. at 612. Defendants argue that section 4-75-315 does not contain any such language, and thus that the statute only applies to claims relating to conduct that took place after April

---

[4] Arkansas asserts that "[t]his Court can confidently predict that the Arkansas Supreme Court would hold that the ADTPA prohibits price fixing." However, "In assessing how a state's highest court would resolve a state law question – absent controlling state authority – federal courts look to existing state law without predicting potential changes in that law." *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F. 3d 931, 939 (9th Cir. 2001).

8

8, 2003.[5]

Arkansas argues that although section 4-75-315 does not contain any language that "expressly declares, or necessarily implies" that the section was intended to apply retrospectively, another section of the AUPA does contain such language. Arkansas cites Arkansas Code Annotated section 4-75-320(c), which reads: "This section is not intended to allow for the commencement of any action by the Attorney General under the provisions of this subchapter for events occurring prior to the enactment of this section of which the Attorney General had actual knowledge." Arkansas argues that it is clear that the Arkansas General Assembly intended for Section 4-75-315 to apply retroactively when that provision is read in tandem with Section 4-75-320(c). Arkansas relies on *California v. Infineon Technologies AG*, 531 F. Supp. 2d 1124 (N.D. Cal. 2007), where Judge Hamilton held,

> [T]he 2003 version of the Arkansas antitrust statute – including its amendments – does not explicitly apply only to violations occurring after its enactment. Rather, the Arkansas statute elsewhere merely indicates that it does not "allow for the commencement of any action by the Attorney General under the provisions of [the Act] for events occurring prior to [April 8, 2003] of which the Attorney General had actual knowledge." *See* Ark. Code Ann. § 4-75-320(c). Thus, as plaintiffs argue, a fair reading of the amended statute is that it applies to actions commenced by the Attorney General that allege conduct occurring prior to April 8, 2003, but only where the Attorney General had no actual knowledge of the conduct at the time.

531 F. Supp. 2d at 1143.

Defendants, in turn, direct the Court to *In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 26 (D. Mass. 2004), and *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline PLC*, 737 F. Supp. 2d 380, 429-30 (E.D. Pa. 2010). In *Relafen*, the court held that section 4-75-315 "effectuate[d] a change in [state] law" and "increase[d] a party's liability for past conduct." *Relafen*, 225 F.R.D. at 26 (internal citations omitted). The court held that giving section 4-75-315 retroactive application would violate "[e]lementary considerations of fairness, which dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Id.* (internal quotations

---

[5] The AUPA consists of Arkansas Code Annotated sections 4-75-201 through 4-75-320. The *Illinois Brick* repealer statute, a subsection of the AUPA, was drafted in response to the Supreme Court's ruling in *Illinois Brick* and was designed to permit both direct and indirect purchasers to bring suit under Oregon's antitrust laws. Ark. Code Ann. § 4-75-315; *see also* 2003 Arkansas Laws Act 1172 (H.B. 2720), AR LEGIS 1172 (2003) (explaining that the 2003 amendments to the AUPA were enacted because the Arkansas Attorney General was "unable to adequately protect the consumers . . . for harm they have suffered as indirect purchasers.").

9

omitted). With regard to section 4-75-320(c), the *Relafen* court stated that it "[d]ecline[d] to apply the statutes [retroactively] absent a clearer expression of retroactive reach." *Id*. The *Sheet Metal Workers* court adopted the reasoning of *Relafen* without a separate analysis of section 4-75-320(c). *See Sheet Metal Workers*, 737 F. Supp. 2d at 429-30.

This Court applies the Arkansas rules of statutory construction when interpreting Arkansas statutes. *See In re Anderson*, 824 F.2d 754, 756 (9th Cir. 1987). Under Arkansas law, the Court is required to "construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible." *Barclay v. First Paris Holding Co.*, 42 S.W.3d 496, 500 (Ark. 2001). Applying these principles, the Court agrees with Judge Hamilton's interpretation that section 4-75-320(c) makes section 4-75-315 retroactive. The Court finds that Section 4-75-320(c) "necessarily implies that by the language used," an intent to give section 4-75-315 retroactive application. Defendants' interpretation of section 4-75-320(c) does not give meaning to the language precluding the Attorney General from maintaining a lawsuit for events occurring prior to April 2003 if the Attorney General had actual knowledge of those events. Accordingly, this Court finds that Arkansas' claims based on conduct that occurred prior to April 8, 2003 are governed by section 4-75-315 provided Arkansas alleges that the Attorney General was unaware of the relevant alleged conduct, which Arkansas has done. *See* Compl. ¶ 120. Accordingly, the Court DENIES this aspect of defendants' motion to dismiss the complaint.[6]

### C.  Missouri Merchandising Practices Act

Missouri alleges a claim under the Missouri Merchandising Practices Act ("MMPA"). As relevant here, the MMPA prohibits

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri . . . .

---

[6] Arkansas also argues that the presumption against retroactivity does not apply where a statute's effect is remedial, and that this statute is in fact remedial. Because the Court finds that section 4-75-320(c) permits retroactive application of section 4-75-315, it does not address Arkansas' argument regarding the statute's remedial nature.

10

Mo. Rev. Stat. § 407.020.1.

The complaint alleges, in relevant part:

> From at least 1999 until the present, Defendants . . . have engaged in the act, use and employment of deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and the concealment, suppression, and omission of material facts in connection with the advertisement, offering for sale, and sale of merchandise, all in violation of [the MMPA], to wit:
>
> a)   Engaging in deception . . . that tended to create false impressions as to the value . . . of TFT-LCD panels . . . ;
>
> b)   Engaging in misrepresentation . . . and in half-truths . . . by stating as reasons for price increases and the absence of price reductions in TFT-LCD panels assertions which were not in accord with the facts . . . ;
>
> c)   Engaging in concealment, suppression or omission of material facts . . . ;
>
> d)   Engaging in unfair practices . . . by participating in agreements to restrain trade . . . which agreements offend public policy . . . [and] are unethical, oppressive, and unscrupulous . . . ;
>
> e)   Engaging in unfair practices . . . by participating in agreements to restrain trade . . . which agreements violate [state and federal laws] . . . intended to protect the public . . . ; and
>
> f)   Engaging in unfair practices . . . by violating the duty of good faith by failing to adhere to honesty in fact and observing reasonable commercial standards of fair dealing . . . .

Compl. ¶ 143. The next paragraph of the complaint alleges, "While unnecessary for establishing civil liability under the Merchandising Practices Act, the foregoing acts and practices were done knowingly and with the intent to defraud, and in a manner to avoid detection by purchasers of TFT-LCD panels and products within Missouri and caused the State of Missouri and resident purchasers to pay supra-competitive, artificially inflated prices for TFT-LCD products and to be deprived of free, open and fair competition in the sale of TFT-LCD panels." *Id*. ¶ 144.

### 1.    Rule 9(b)

Defendants move to dismiss Missouri's claim under the MMPA on the ground that the claim is not pled with particularity as required by Rule 9(b). Defendants argue that Missouri's MMPA claim alleges fraud, and therefore it must plead the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation, and what was obtained or given thereby.

Missouri argues that fraud is not an element of a claim under the MMPA, and thus that Missouri is not required to plead its MMPA claim with particularity under Rule 9(b). Missouri cites a number of cases for the assertion that the MMPA prohibits a variety of actions that are not by their nature fraudulent, and that "[i]t is not necessary to prove the elements of common law fraud in order to establish a violation of the MMPA." *Zmuda v. Chesterfield Valley Power Sports, Inc.*, 267 S.W.3d 712, 176 (Mo. App. E.D. 2008); *Ullrich v. CADCO, Inc.*, 244 S.W.3d 772, 777 (Mo. App. E.D. 2008) ("[A] claim alleging violations of the MMPA does not necessarily need to be stated with the same particularity as a claim of common law fraud or mistake."); *see also State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo. App. E.D. 1988). Missouri argues that fraud is not essential to any of the six MMPA claims alleged in Paragraph 143(a)-(f), and that Missouri therefore was not required to allege its MMPA claims with particularity. Alternatively, Missouri asserts that even if the allegations contained in Paragraph 143(a)-(c) – the three specific allegations addressed in defendants' motion – allege fraud, those allegations satisfy Rule 9(b).

"In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). In contrast, "a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id*. at 1104.

Here, although Missouri asserts that it is not relying on fraud as a basis of its MMPA claim, Paragraph 144 of the complaint alleges that "[w]hile unnecessary for establishing civil liability under the [MMPA], the foregoing acts and practices were done knowingly and with the intent to defraud . . . ." The "foregoing acts and practices" are all of the specific violations of the MMPA alleged in Paragraph 143. Thus, although Missouri characterizes its MMPA claim as not being based on fraud or alleging a unified course of fraudulent conduct, the allegations of Paragraph 144 suggest otherwise. The

12

Court will GRANT Missouri leave to amend the MMPA claim to clarify the nature of its allegations.

### 2. Geographic nexus with Missouri

Defendants also move to dismiss the MMPA claim on the ground that the complaint fails to allege a sufficient geographic nexus with Missouri. Defendants argue that the complaint is deficient because Missouri does not allege that any defendant sold any merchandise in Missouri trade or commerce, nor does Missouri allege that defendants made any misleading statements in, from, or to Missouri.

The MMPA prohibits deceptive or unfair practices "in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri." Mo. Rev. Stat. § 407.020.1. The MMPA broadly defines "trade or commerce" as,

> [T]he advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated. The terms "trade" and "commerce" include any trade or commerce directly or indirectly affecting the people of this state.

Mo. Rev. Stat. § 407.010(7).

Missouri has alleged that defendants' actions "fail[ed] to adhere to honesty in fact and . . . reasonable commercial standards of fair dealing in connection with the sale of TFT-LCD panels and products to purchasers within the State of Missouri" and thereby "caused the State of Missouri and resident purchasers to pay supra-competitive, artificially inflated prices for TFT-LCD products . . . ." Compl. ¶¶ 143(f)-144. The Court finds that these allegations are sufficient as a pleading matter. Defendants have not cited any cases holding that in order to state a claim under the MMPA, a plaintiff must allege that the defendant's conduct occurred in Missouri. Rather, courts have applied the MMPA where the defendant's conduct causes *injury* to Missouri residents. *See State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 800 (Mo. W.D. 2008) ("In our view, the definition of trade or commerce in the second sentence of section 407.010(7) simply makes clear the intent of the General Assembly that the terms should be understood to include, but not necessarily be limited to, economic activity which has a direct or indirect effect on the people of this state."); *cf. Gibbons v. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007) (privity not required under the MMPA and therefore consumer who indirectly purchased product

13

could sue wholesaler). Accordingly, the Court DENIES defendant's motion to dismiss Missouri's MMPA claim on this ground.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. (Docket No. 2172 in M 07-1827 and Docket No. 20 in C 10-3619). The amended complaint must be filed by **April 29, 2011**.

**IT IS SO ORDERED.**

Dated: April 11, 2011

SUSAN ILLSTON
United States District Judge