R. SCOTT PALMER (Scott.Palmer@myfloridalegal.com)
LIZABETH A. BRADY (Liz.Brady@myfloridalegal.com)
NICHOLAS J. WEILHAMMER (Nicholas.Weilhammer@myfloridalegal.com)
ELI FRIEDMAN (Eli.Friedman@myfloridalegal.com)
*Pro Hac Vice*
Office of the Attorney General
State of Florida
PL-01, The Capitol
Tallahassee, FL 32399-1050
Tel:    (850) 414-3300
Fax:    (850) 488-9134

Attorneys for Plaintiff State of Florida

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. 3:07-md-1827 SI MDL No. 1827 |
| This Document Relates To: | **AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES, INJUNCTIVE RELIEF** |
| Case No. 2010-CV-3517 SI | |
| STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, | **DEMAND FOR JURY TRIAL** |
| Plaintiff, | Judge: Susan Illston |
| v. | |
| AU OPTRONICS CORPORATION, AU OPTRONICS CORPORATION AMERICA, CHIMEI INNOLUX CORP., CMO JAPAN CO., LTD., CHI MEI OPTOELECTRONICS USA, INC., HANNSTAR DISPLAY CORPORATION, HITACHI LTD., HITACHI DISPLAYS, LTD., HITACHI ELECTRONIC DEVICES (USA), INC., LG DISPLAY CO., LTD., LG DISPLAY AMERICA INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SHARP CORPORATION, SHARP ELECTRONICS CORPORATION, TOSHIBA | |

CORPORATION, TOSHIBA MOBILE DISPLAY TECHNOLOGY CO., LTD., TOSHIBA AMERICA INFORMATION SYSTEMS, INC., TOSHIBA AMERICA ELECTRONICS COMPONENTS, INC.,

Defendants.

Plaintiff, the State of Florida, through the Attorney General and the Department of Legal Affairs, files this Amended Complaint against Defendants AU Optronics Corporation, AU Optronics Corporation America, Chimei Innolux Corp., CMO Japan Co., Ltd., Chi Mei Optoelectronics USA, Inc., HannStar Display Corporation, Hitachi Ltd., Hitachi Displays, Ltd., Hitachi Electronic Devices (USA), Inc., LG Display Co., Ltd., LG Display America Inc., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Sharp Corporation, Sharp Electronics Corporation, Toshiba Corporation, Toshiba Mobile Display Technology Co., Ltd., Toshiba America Information Systems, Inc., and Toshiba America Electronics Components, Inc. (collectively "Defendants"), and alleges:

## **NATURE OF THE ACTION**

1. The State of Florida brings this action against the Defendants under the Sherman Act, the Clayton Act, the Florida Antitrust Act, and the Florida Deceptive and Unfair Trade Practices Act on behalf of itself and its governmental entities, and on behalf of natural persons in Florida. The State of Florida demands trial by jury of all issues stated herein.

2. Defendants conspired to suppress and eliminate competition by fixing the prices of TFT-LCD Panels, and to suppress and eliminate competition by agreeing to limit the production of TFT-LCD Panels.

3. Defendants' conspiracy affected billions of dollars of commerce, and damaged virtually every consumer in the United States.

AMENDED COMPLAINT – STATE OF FLORIDA

4.   The Attorney General of Florida has reviewed this matter and determined that an enforcement action serves the public interest.

## JURISDICTION AND VENUE

5.   Count One alleges violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.  It is filed under Section 4 of the Clayton Act, 15 U.S.C. § 15 (suits by persons injured), and Section 16 of the Clayton Act, 15 U.S.C. § 26 (injunctive relief).  This Court has original jurisdiction over the federal antitrust claim pursuant to Title 28, United States Code Sections 1331 (federal question) and 1337 (original jurisdiction of proceeding under an Act of Congress regulating commerce or protecting trade and commerce against restraints).

6.   Counts Two and Three arise under the Florida Antitrust Act, Section 542.15 *et seq.,* Florida Statutes, and the Florida Deceptive and Unfair Trade Practices Act, Section 501.201 *et seq.*, Florida Statutes, respectively.  This Court has subject matter jurisdiction over the state claims pursuant to Title 28, United States Code Section 1367 (supplemental jurisdiction) because these claims are so related to the federal claim that they form part of the same case or controversy that would ordinarily be tried in one judicial proceeding.  The exercise of supplemental jurisdiction avoids unnecessary duplication and multiplicity of actions and is in the interests of judicial economy, convenience, and fairness.

7.   Venue is proper in the United States District Court, Northern District of California under Title 15, United States Code Section 22 (commerce and trade venue) and Title 28, United States Code Section 1391 (general venue).  Each Defendant is an alien corporation or resides, transacts business, committed an illegal or tortious act, or is found in this district, and a substantial part of the events giving rise to the claims arose in this district.

## DEFINITIONS

AMENDED COMPLAINT – STATE OF FLORIDA

8.  As used herein,

    a.  "TFT-LCD Panels" means thin-film transistor liquid crystal display panels.

    b.  "TFT-LCD Products" means the products that contain TFT-LCD Panels, such as desktop monitors, notebook computers, televisions, medical equipment and other applications.

    c.  "OEM" means original equipment manufacturers.  OEMs produce TFT-LCD Products that are sold under a brand name.

    d.  "ODM" means original design manufacturers.  ODMs design and produce TFT-LCD Products, which are sold under a brand name of their customers.

    e.  "Integrators" are systems integrators.  Integrators assemble and produce unbranded desktop monitors and notebooks from their various components.

    f.  "EMS" means electronics manufacturing services.  EMSs manufacture components and TFT-LCD Products based upon the needs of their customers.

## PARTIES

### A.  Plaintiff

9.  The State of Florida and its governmental entities are assigned the rights giving rise to this action from a person that purchased TFT-LCD Products directly from a defendant, such as a retailer or a maker of TFT-LCD Products, and is authorized to file Count I under 15 U.S.C. §§ 15 and 26.

10. The Attorney General of Florida is chief legal officer of Florida, and is the enforcement authority of Chapter 542, Florida Statutes, and is authorized to file Count II seeking the full range of relief afforded by Chapter 542, Florida Statutes.

AMENDED COMPLAINT – STATE OF FLORIDA

11. The Department of Legal Affairs of Florida is the enforcing authority for violations of Chapter 501, Florida Statutes, and has authority to file Count III to enjoin any person who has violated the Florida Deceptive and Unfair Trade Practices Act, and for actual damages on behalf of one or more consumers and governmental entities in Florida, including direct and indirect purchases.

### B.  Defendants

12. AU Optronics Corporation ("AUO") is a Taiwanese corporation that maintains its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan.  AUO was formed as the result of a merger between Acer Display Technology Inc. ("Acer") and Unipac Optoelectronics ("Unipac") in 2001.  Prior to 2001, Acer and Unipac manufactured TFT-LCD Panels.  AUO is the third largest manufacturer of TFT-LCD Panels by revenue. AUO merged with Quanta Display, a manufacturer of TFT-LCD Panels, in October, 2006. AUO manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

13. AU Optronics Corporation America ("AUOA") is a Texas corporation that maintains its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas  77070, and is a wholly-owned subsidiary of AUO.  AUOA sold or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period manufactured by AUO to consumers in Florida.

14. Chimei Innolux Corp., formerly known as Chi Mei Optoelectronics Corporation ("CMO"), is a Taiwanese corporation that maintains its corporate headquarters at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County 74147, Taiwan. CMO manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

AMENDED COMPLAINT – STATE OF FLORIDA

15. CMO Japan Co., Ltd. ("CMO Japan"), is a Japanese corporation that maintains its corporate headquarters at Nansei-Yaesu Bldg. 4F, 2-2-10 Yaesu, Chuo-ku, Tokyo 104-0028, Japan. CMO Japan was formerly known as International Display Technology (IDTech). CMO Japan manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

16. Chi Mei Optoelectronics USA, Inc. ("CMO-USA") is a California corporation that maintains its corporate headquarters at 101 Metro Drive Suite 510, San Jose, California 95110. CMO-USA sold or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period manufactured by CMO Japan to consumers in Florida.

17. HannStar Display Corporation ("HannStar") is a Taiwanese company that maintains its corporate headquarters at No. 480 Rueiguang Road, 12th Floor, Neihu Chiu, Taipei 114, Taiwan. HannStar sells desktop monitors under the brand name Hanns.G and televisions under the brand name HANNspree. LG Display Co., Ltd. owns part of HannStar. HannStar manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

18. Hitachi Ltd. is a Japanese company that that maintains its corporate headquarters at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280, Japan. Hitachi Ltd. manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

19. Hitachi Displays, Ltd. ("Hitachi") is a Japanese company that maintains its corporate headquarters at 3300, Hayano, Mobara-shi, Chiba-ken 297-8622, Japan. Prior to 2002, Hitachi Displays, Ltd. was a division of Hitachi Ltd. Hitachi Displays, Ltd. has

manufactured TFT-LCD Panels since 1998 for desktop monitors, notebook computers, televisions, and other applications during the relevant period to consumers in Florida.

20. Hitachi Electronic Devices (USA), Inc. is a Delaware corporation that maintains its corporate headquarters at 208 Fairforest Way, Greenville, South Carolina 29607. Hitachi Electronic Devices (USA), Inc. sold or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period manufactured by Hitachi and Hitachi Ltd. to consumers in Florida.

21. LG Display Co., Ltd. ("LG Display") is a Korean corporation that maintains its corporate headquarters 20 Yeouido-dong, Yeoungdeungpo-gu, Seoul, 150-721, Republic of Korea. LG Display was formerly known as LG. Philips LCD Co., Ltd., a joint venture between LG Electronics and Philips Electronics. LG Display manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

22. LG Display America Inc. is a California corporation that maintains its corporate headquarters at 150 East Brokaw Road, San Jose, California 95112. LG Display America Inc. was formerly known as LG Philips LCD America, Inc. LG Display America Inc. sold or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period manufactured by LG Display to consumers in Florida.

23. Samsung Electronics Co., Ltd. ("SEC") is a Korean corporation that maintains its executive offices at Samsung Electronics Building, 1320-10, Seocho 2-dong, Seocho-gu, Seoul, Korea. SEC manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

24. Samsung Electronics America, Inc. ("SEA") is a New Jersey corporation that maintains offices at 105 Challenger Road, Ridgefield Park, New Jersey 07660. SEA is a wholly-owned

AMENDED COMPLAINT – STATE OF FLORIDA

subsidiary of SEC.  SEA sold or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period manufactured by SEC to consumers in Florida.

25. Samsung Semiconductor, Inc. ("SSI") is a California corporation that maintains offices at 3655 North First Street, San Jose, California, 95134.  SSI is a wholly-owned subsidiary of SEC.  SSI sold or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period manufactured by SEC to consumers in Florida.

26. Sharp Corporation ("Sharp") is a Japanese company that maintains its corporate headquarters at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan.  Sharp manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

27. Sharp Electronics Corporation is an American company that maintains its corporate headquarters at Sharp Plaza, Mahwah, New Jersey, 07430.  Sharp Electronics Corporation sold or distributed TFT-LCD Panels or TFT-LCD Products manufactured by Sharp to consumers in Florida during the relevant period to consumers in Florida.

28. Toshiba Corporation ("Toshiba") is a Japanese company that maintains its corporate headquarters at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.  Toshiba manufactured TFT-LCD Panels during the relevant period through its joint venture with IBM, Display Technologies, Inc., until 2001.  Toshiba also manufactures TFT-LCD Panels through its joint venture IPS Alpha Technology.  Toshiba manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

29. Toshiba Mobile Display Technology Co., Ltd. ("Toshiba Mobile"), formerly known as Toshiba Matsushita Display Technology Co., is a Japanese company that maintains its

AMENDED COMPLAINT – STATE OF FLORIDA

corporate headquarters at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan.  Toshiba Mobile has manufactured TFT-LCD Panels since 2002 for notebook computers and televisions.  Toshiba Mobile manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

30. Toshiba America Information Systems, Inc. ("TAIS") is a California corporation that maintains its corporate headquarters at 9740 Irvine Boulevard, Irvine, California  92618.  TAIS sold or distributed TFT-LCD Panels or TFT-LCD Products manufactured by Toshiba to consumers in Florida.

31. Toshiba America Electronics Components, Inc. ("TAEC") is a California corporation that maintains its corporate headquarters at 19900 MacArthur Boulevard, Suite 400, Irvine, California  92612.  TAEC sold or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period manufactured by Toshiba to consumers in Florida.

## CO-CONSPIRATORS AND AGENTS

32. Chunghwa Picture Tubes Ltd. ("Chunghwa") is a Taiwanese company that maintains its corporate headquarters at 1127 Heping Road, Bade City, Taoyuan, Taiwan.  Chunghwa manufactures desktop monitors and televisions under the brand name Tatung.  Since 1999, Chunghwa manufactured, marketed, sold and/or distributed TFT-LCD Panels or TFT-LCD Products during the relevant period to consumers in Florida.

33. Epson Imaging Devices Corporation ("Epson") is a Japanese corporation that maintains its corporate headquarters at 3-101 Minami-Yoshikata, Tottori-Shi, Tottori-ken, 680-8577 Japan.  Epson is a wholly-owned subsidiary of Seiko Epson Corporation and was formerly known as Sanyo Epson Imaging Devices Corporation ("Sanyo"), a joint venture between Seiko Epson Corporation ("Seiko") and Sanyo Electric Co., Ltd ("Sanyo Electric"), created

AMENDED COMPLAINT – STATE OF FLORIDA

in 2004.  Prior to forming Sanyo, Seiko and Sanyo Electric manufactured TFT-LCD Panels since 1996.

34. Epson Electronics America, Inc. ("EEA") is a California corporation that maintains its corporate headquarters at 2580 Orchard Parkway, San Jose, California.

35. Other co-conspirators whose identities are known to the State of Florida include Hydis Technologies Co., Ltd., formerly known as BOE Hydis Technology Co., Ltd. ("Hydis"), a Korean company, and Mitsubishi Electric Corporation, a Japanese corporation.

36. Various other persons, presently unknown to the State of Florida, participated as co-conspirators with the Defendants in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof.

37.  The acts charged in this Complaint have been performed by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

38.  Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

39.  Each Defendant that is a subsidiary of a foreign parent acts as a United States agent for TFT-LCD Panels or TFT-LCD Products made by its parent company.

## TRADE AND COMMERCE

40.  Throughout the period of time covered by this Complaint, Defendants and their co-conspirators engaged in the business of manufacturing, marketing and selling TFT-LCD Panels and TFT-LCD Products in a continuous and uninterrupted flow of interstate and foreign trade and commerce to consumers located in Florida and the United States.  The

AMENDED COMPLAINT – STATE OF FLORIDA

activities complained of herein were within the flow of and substantially affected interstate trade and commerce, as well as trade and commerce within the State of Florida.

41.   The price-fixing activities of Defendants and their co-conspirators involved United States import trade or commerce.

42.   Defendants' conduct had a direct, substantial, and reasonably foreseeable effect on domestic interstate commerce within the United States, including Florida.  These effects proximately caused the domestic injuries alleged in this complaint in that governmental purchasers, consumers, and other end-payors paid more for TFT-LCD Products than they would have absent the conspiracy.

43.   Defendants' conspiracy specifically targeted the United States market. The United States has been and remains one of Defendants' most important markets for the ultimate consumption of TFT-LCD Panels and TFT-LCD Products, and accounts for a significant portion of Defendants' revenue.

44.   Most of the Defendants and/or their affiliates maintained corporate offices in the United States.  Most of the Defendants had marketing, sales, and account management personnel specifically designated or designed to handle United States customer accounts and the United States market for TFT-LCD Panels and TFT-LCD Products.  For example, most of the Defendants, if not all, sponsored advertising within the United States for the purpose of maintaining and increasing those TFT-LCD product sales and provided other marketing support.

45.   Defendants sold billions of dollars of price-fixed TFT-LCD Panels to United States-based OEMs and OEMs which sold TFT-LCD Products directly into the United States.  Those OEMs manufactured millions of TFT-LCD Products destined for sale in the United States.

AMENDED COMPLAINT – STATE OF FLORIDA

46.  In furtherance of the conspiracy, Defendants regularly monitored "street prices" or retail prices of TFT-LCD Products, including those in the United States, to ensure that the cartel had set profit-maximizing prices for TFT-LCD Panels.

47.  Defendants' price-fixing activities directly and substantially affected the price of TFT-LCD Panels and TFT-LCD Products purchased in the United States, including Florida. Defendants intentionally sent price-fixed TFT-LCD Panels into a stream of commerce destined for the United States with the expectation of producing a substantial adverse effect in the United States, and within Florida, in the form of inflated prices for TFT-LCD Panels and TFT-LCD Products.  The artificial inflation of prices for TFT-LCD Products was a foreseeable and immediate consequence of Defendants' illegal activities.  Accordingly, Defendants' unlawful conduct directly and substantially affected the price of TFT-LCD Products and unreasonably restrained commerce within Florida.

48.  Defendants' conspiracy also affected the activities of the Defendants, which in turn had a substantial effect on interstate commerce, as well as trade and commerce within the State of Florida.

## FACTUAL BACKGROUND

### A.  TFT-LCD Panels

49. TFT-LCD Panels are made by sandwiching liquid crystal compound between two pieces of glass called substrates.  The resulting screen contains hundreds of thousands of electrically charged dots, called pixels, which form an image.  The panel is then combined with a backlight unit, a driver, and other equipment to create a "module" allowing the panel to operate and be integrated into a TFT-LCD Product, such as a desktop monitor, a notebook computer, or television.

AMENDED COMPLAINT – STATE OF FLORIDA

50. The market for TFT-LCD Panels exists to serve the TFT-LCD Products market; therefore, the markets for raw panels and the products in which they are placed are inseparable, as the demand for TFT-LCD Products is directly correlated to the demand for TFT-LCD Panels.

51. TFT-LCD Panels have advantages over older technology using cathode ray tubes ("CRT") because TFT-LCD Panels are smaller, lighter and consumer less power. This makes them useful for desktop monitors, notebook computer screens, and televisions.

52. The TFT-LCD Panel industry is highly concentrated and thus conducive to collusion. Throughout the relevant period, Defendants and their co-conspirators collectively controlled a significant share of the market for TFT-LCD Panels, both globally and throughout the United States.

53. The TFT-LCD Panel industry is characterized by very high barriers to entry. New fabrication plants, or "fabs," cost billions of dollars to build and rapidly evolving technology and intellectual property requirements require constant research, development and investment. Thus, firms cannot enter the market for the production and sale of TFT-LCD Panels without an enormous capital investment.

54. TFT-LCD Panels, regardless of which product they are being used for, are manufactured to a specific size regardless of manufacturer. The manufacture of standard panel sizes for TFT-LCD Products across the industry facilitates price transparency in the market for TFT-LCD Panels and enables manufacturers to monitor and analyze TFT-LCD Panel prices.

55. Additional opportunities for collusive activity are presented by the many joint ventures, cross-licenses, and other cooperative arrangements in the TFT-LCD Panel industry. Using the otherwise legitimate cover of such arrangements, Defendants implemented and policed

their illegal agreements to fix prices and limit output for TFT-LCD Panels through the numerous meetings described hereinafter.

56. There were many opportunities for Defendants to discuss and exchange competitively sensitive information through common membership in trade associations, interrelated business arrangements such as joint ventures, allegiances between companies in certain countries, and relationships between the executives of certain companies. Communication between the conspirators was facilitated by the use of meetings, telephone calls, e-mails, and instant messages. Defendants took advantage of these opportunities to discuss and agree upon their pricing of TFT-LCD Panels and monitor each other's compliance with their continuing agreement.

**B. Distribution of TFT-LCD Panels**

57. Defendants are American and foreign companies that manufactured, sold and/or distributed TFT-LCD Panels and Products to customers throughout the United States during the relevant period.

58. TFT-LCD Panels have no independent utility: the only value for TFT-LCD Panels is as the largest, main component of TFT-LCD Products.

59. Because TFT-LCD Panels are distinguishable components of TFT-LCD Products, TFT-LCD Panels can be traced through the supply chain.

60. Changes in the price of TFT-LCD Panels impact prices paid by consumer of TFT-LCD Products.

61. The cost of TFT-LCD Panels is traceable in prices of TFT-LCD Products.

62. Defendants sell TFT-LCD Panels to OEMs, ODMs, EMSs, or to Integrators for TFT-LCD Products such as desktop monitors and notebook computers.

AMENDED COMPLAINT – STATE OF FLORIDA

63. The distribution chain for TFT-LCD Panels is short in that TFT-LCD Products are either sold directly to end users by direct purchasers, such as OEMs, or through an intermediary retailer.

64. A large percentage of TFT-LCD Products were sold by the first purchaser of TFT-LCD Panels (such as Dell, Inc.) directly to consumers.

65. The State of Florida and its consumers have participated in the market for TFT-LCD Panels by purchasing TFT-LCD Products.

66. While the State of Florida and its units of government continue to investigate and assess the impact from Defendants' conspiracy, the State of Florida and its units of government have purchased millions of dollars worth of TFT-LCD Products during the relevant period.

67. OEMs incorporated the TFT-LCD Panels into TFT-LCD Products. These purchasers paid supra-competitive prices for TFT-LCD Products as result of the Defendants' unlawful conduct.

68. Overcharges for TFT-LCD Panels are passed on to consumers, and such overcharges can be traced through the relatively short distribution chain.

## DEFENDANTS' ANTICOMPETITIVE CONDUCT

69. Beginning on at least January 1, 1998 and continuing until at least December 11, 2006, the Defendants and their co-conspirators entered into an ongoing actual, express agreement to artificially inflate the price of TFT-LCD Panels and to artificially limit the supply of TFT-LCD Panels.

70. The conspiracy was organized at the highest level of the Defendant organizations and carried out by both executives and subordinate employees.

AMENDED COMPLAINT – STATE OF FLORIDA

71. Conduct that is contrary to the Defendants' self interest, such as monthly price increases of 5% that would normally result in lost sales and a reduction of market share, were possible because of the conspiracy to fix prices and output of TFT-LCD Panels.

72. Throughout the conspiracy, cartel members did not distinguish between corporate entities when referring to the conspiracy.  As a result, co-conspirators used shorthand notations to denote the entire corporate family.  For example, in discussing the success of the price-fixing conspiracy, "A" would be used by the conspiring Defendants to refer to the corporate family of AUO.

73. The conspiracy was carried out by subsidiaries and distributors within a corporate family, and individual participants entered into an ongoing agreement on behalf of a corporate family.

74.   Each Defendant joined and participated in the conspiracy.

75.   The conspiracy was effectuated by various forms of communication, including bilateral meetings, group meetings, and meetings referred to by Defendants as "Crystal Meetings." There were three types of Crystal Meetings:  top level or CEO meetings; management level or commercial/operational meetings; and working level meetings.

### A. Bilateral Meetings and Communications

76. The Defendants had bilateral communications in 1998, which provided the foundation for larger meetings among top executives of the cartel, such as the Crystal Meetings.

77. Bilateral communications continued after the Crystal Meetings began, and they supplemented the ongoing agreement reached at the Crystal Meetings, as the Defendants related sensitive business information regarding future pricing, shipments, and output.

78. Bilateral communications corrected misunderstandings about target prices fixed by the cartel.

AMENDED COMPLAINT – STATE OF FLORIDA

79. Bilateral communications were also effective and efficient in fixing the price for particular-sized TFT-LCD Panels that were not manufactured by certain Defendants.  For example, LG Display and AUO found it more efficient to fix the price of TFT-LCD Panels for 32" televisions over a breakfast meeting rather than wait for a meeting of all cartel members.  This side agreement would serve to reinforce the larger, continuing conspiracy among the Defendants to limit the supply of TFT-LCD Panels and to fix their prices.

80. Bilateral communications were also effective and efficient in fixing the price for particular-sized TFT-LCD Panels for particular customers.  Discussions included prices and available production facilities.  The information obtained through bilateral communications was passed on to superior officers and taken into account in determining prices to be offered to the customer.  This side agreement would also serve to reinforce the larger, continuing conspiracy among the Defendants to limit the supply of TFT-LCD Panels and to fix their prices.

81. Specific examples since 1998 of the systematic, bilateral communications include, but are not limited to, the following:

**Sharp and Samsung**

a. On or about November 30, 1998, a manager for SSI, Reuben Chang, spoke with a representative from Sharp.  Sharp communicated information to SSI relating to pricing and market conditions in the TFT-LCD industry for the next twelve months.

b. Sharp confirmed it would raise the price of TFT-LCD Panels and confirmed seeing a 25% price increase for the Japanese TFT-LCD manufacturers as reported in the Nikkei Industrial Daily (now the Nikkei Business Daily), an industry newspaper.

AMENDED COMPLAINT – STATE OF FLORIDA

c.  Chang conveyed this agreement directly to at least one high-level executive of SEC in Korea.

d.  Samsung's corporate family implemented the agreement by raising prices throughout 1999.

e.  On or about January 26, 2000, the Director of Marketing for SSI, Carl Steudle, spoke with the Vice-President of Sales for Sharp.

f.  Sharp communicated information to Samsung relating to its volume, output and pricing of TFT-LCD Panels.

g.  Sharp agreed with Samsung to raise the price of their 15" TFT-LCD panels to a minimum of $660/unit for the second quarter of 2000, up from a range of $640 to $647/unit for the first quarter of 2000.

h.  Steudle immediately conveyed this agreement directly to high-level Samsung executives in Korea.

### Hitachi and Samsung

i.  On or before November 30, 1998, a manager for SSI, Reuben Chang, spoke with a representative from Hitachi.

j.  Hitachi communicated information to Samsung relating to pricing and model designs for its TFT-LCD Panels.

k.  Hitachi agreed it would increase prices on TFT-LCD Panels starting the week of November 30, 1998.

l.  Samsung implemented the agreement by raising prices throughout 1999.

AMENDED COMPLAINT – STATE OF FLORIDA

m.  Hitachi and Samsung had additional bilateral meetings regarding Dell Incorporated (Dell), one of the largest suppliers of notebook and desktop computers in the United States and purchases a variety of TFT-LCD products.

n.  As a large purchaser of TFT-LCD products, Dell is responsible for a large portion of sales revenue for manufacturers of TFT-LCD products, including Samsung and Hitachi.

o.  On or about April 12, 2001, Dell communicated to Samsung its cost targets and that Dell needed to reduce costs for the second quarter of 2001.  Dell also informed Samsung that Dell's purchases depended on the responses of Dell's suppliers of TFT-LCD panels, which included Hitachi and Samsung.  This communication was quickly passed along to high-level executives for Samsung, including the Vice-President for Samsung, who oversaw Samsung's LCD Sales and Marketing Team.

p.  Almost immediately, a representative from Samsung communicated with a representative from Hitachi regarding Dell's cost-cutting initiative.

q.  Samsung and Hitachi agreed to cooperate with each other and submit similar higher prices to Dell.

**Sanyo Electric and Samsung**

r.  On or about December 15, 1999, the Director of Marketing for SSI, Carl Steudle, met with the national sales manager for Sanyo Electric.

s.  Sanyo Electric stated its proposal that Sanyo Electric and Samsung both increase their prices for TFT-LCD panels for February, 2000.  Sanyo Electric stated why such a price increase would be successful to their mutual customers at that time.

AMENDED COMPLAINT – STATE OF FLORIDA

t.  The Director of Marketing for SSI immediately conveyed this proposal to high-level Samsung executives in Korea.

**LG Display and Samsung**

u.  Samsung and its Taiwanese competitors discussed in April 30, 2001 their future pricing strategy for the followings month.  To ensure that the price-fixing of TFT-LCD Panels was successful, Samsung obtained and confirmed cooperation of the price-fixing agreement with its Korean competitor, LG Display.  Targets of this specific price-fixing side agreement included IBM and Apple.

**Epson and Unknown Defendants**

v.  Epson conspired to suppress and eliminate competition with other Defendants by fixing the prices of TFT-LCD Panels sold to Motorola, Inc. for use in Razr mobile phones, from at least as early as the fall of 2005, continuing until at least the middle of 2006.

w.  To further the conspiracy, Epson's officers and employees engaged in bilateral telephone discussions and attended meetings in Japan with other Defendants, and agreed to fix prices for certain TFT-LCD Panels.

x.  Epson pleaded guilty to criminal charges brought by the United States for its price-fixing conspiracy of TFT-LCD Panels.  The United States did not seek restitution from Epson in light of the civil actions filed in the United States District Court, Northern District of California, and the potential for recovery of a multiple of actual damages.

AMENDED COMPLAINT – STATE OF FLORIDA

**Hitachi and Unknown Defendants**

y.   Hitachi conspired to suppress and eliminate competition with other Defendants by fixing the prices of TFT-LCD Panels sold to Dell Inc. or its subsidiaries for use in desktop monitors and notebook computers, from at least as early as April 1, 2001, continuing until at least March 31, 2004.

z.   To further the conspiracy, Hitachi's officers and employees engaged in communications and attended bilateral meetings with other Defendants, and agreed to fix prices for certain TFT-LCD Panels.

aa.  Hitachi pleaded guilty to criminal charges brought by the United States for its price-fixing conspiracy of TFT-LCD Panels.  The United States did not seek restitution in light of the civil actions filed in the United States District Court, Northern District of California, and the potential for recovery of a multiple of actual damages.

bb.  The United States has indicted at least one employee of Hitachi Displays Ltd., Sakae Someya, for his role in fixing prices for TFT-LCD Panels sold to Dell or its subsidiaries from on or about January 1, 2001 until on or about December 31, 2004.

**Sharp and Unknown Defendants**

cc.  Sharp conspired with other Defendants to suppress and eliminate competition by fixing the prices of TFT-LCD Panels sold to Dell for use in computer monitors and laptops, from on or about April 1, 2001 to on or about December 1, 2006.  To further this conspiracy, Sharp engaged in communications and attended bilateral meetings with other Defendants, and agreed to fix prices of TFT-LCD Panels.

dd.  Sharp conspired with other Defendants to suppress and eliminate competition by fixing the prices of TFT-LCD Panels sold to Apple Computer, Inc. ("Apple") for use

in iPod portable music players, from on or about September 1, 2005 to on or about December 1, 2006.  To further this conspiracy, Sharp engaged in communications and attended bilateral meetings with other Defendants, and agreed to fix prices of TFT-LCD Panels.

ee.   Sharp conspired with other Defendants to suppress and eliminate competition by fixing the prices of TFT-LCD Panels sold to Motorola, Inc. ("Motorola") for use in Razr mobile phones, from the fall of 2005 to the middle of 2006.  To further this conspiracy, Sharp engaged in communications and attended bilateral meetings with other Defendants, and agreed to fix prices of TFT-LCD Panels.

### Samsung and other Defendants

ff.   Handwritten notes obtained from Samsung reveal copious exchanges of future prices in 2005 between the defendants, including strategies to not engage in price battles, and the need for alliances between competitors.

### CRYSTAL MEETINGS

82. The Defendants held Crystal Meetings at secret locations, and discussed price forecasts, volume allocation, and supply and demand for TFT-LCD Panels.

83. At the meetings, the Defendants agreed to fix the price of TFT-LCD Panels and reduce the output of TFT-LCD Panels.  The Defendants exchanged information on prior producer shipments, customer demand, capacity utilization, and prices.  This information was exchanged in ways designed to enable the participants to agree on what the price should be for each television, monitor, and notebook TFT-LCD Panel.

84. Defendants reached agreements at Crystal Meetings to establish target, floor prices, and ranges.  Participants reached agreements to specific or a range of TFT-LCD Panel prices for

the following month.  Higher quality TFT-LCD Panels (grade A) were the main focus of these agreements.  Participants also agreed on prices for lower-level TFT-LCD Panels set at a uniform discount from grade A TFT-LCD Panels. Participants would also agree to prices for specific to individual customers.

85. Defendants agreed at Crystal Meetings to reach out to Defendants that were absent from the Crystal Meetings.  If a Defendant was absent from a Crystal Meeting, the participants would relate the terms of the agreements to the Defendant to secure their participation.

86. Defendants reached agreements at Crystal Meetings to coordinate the timing of price increases.

87. Defendants reached agreements at Crystal Meetings regarding supply and demand of TFT-LCD Panels.

88. Defendants exchanged information on product line utilization, optimization of line loading rates and production capacity for purposes of communicating what the Defendants should do in carrying out their conspiracy.

89. The participants discussed specific prices and price ranges because the TFT-LCD Panels were not homogenous.

90. Such collusion is possible and extremely successful because of the nature of the TFT-LCD Panel industry, which has high concentration, barriers to entry, standardized products, cooperative arrangements, information exchanges, and blatant nature of the terms of the conspiracy.

91. Known attendees and participants at Crystal meetings include Chunghwa, CMO, AUO, HannStar, Samsung, Sharp, Hitachi, BOE Hydis and LG Display.

92. When the Defendants decided to cease holding large meetings as a result of concerns regarding antitrust liability, they continued to have frequent bilateral meetings.

93. Defendants would hold bilateral meetings on the same date at the same time, then would rotate and meet with another competitor round-robin style until each competitor met with the other.

94. The subject matter discussed at these meetings was the same as the group meetings.

95. If a defendant missed a meeting, it would contact a competitor to obtain updates.

96. Examples of specific agreements reached at the Crystal Meetings include, but are not limited to, the following:

### AUO and AUOA

a.  AUO conspired with other Defendants to suppress and eliminate competition by fixing the prices of TFT-LCD Panels sold in the United States from at least as early as September 14, 2001, continuing until at least December 1, 2006.

b.  AUOA conspired with other Defendants to suppress and eliminate competition by fixing the prices of TFT-LCD Panels sold in the United States from at least as early as 2003, continuing until at least December 1, 2006.

c.  To further the conspiracy, AUO and AUOA, through their officers and employees such as Hsuan Bin Chen (President of AUO), Hui Hsiung (Executive Vice President of AUO), Lai-Juh Chen (Director of Desktop (Monitor) Display Business Group for AUO), Shiu Lung Leung (Senior Manager of Desktop (Monitor) Display Business Group of AUO), Borlong Bai (Senior Manager of the Notebook Display Business Group and Director of the Notebook Display Business Group of AUO), and Tsannrong Lee (Senior Manager of IT Display, Senior Manager of Desktop Display,

Director of Desktop Display, and Director of Notebook Display Business Groups of AUO), engaged in communications and attended meetings, including Crystal Meetings, with other Defendants, and agreed to fix prices for certain TFT-LCD Panels.

d. The United States indicted Hsuan Bin Chen for his role in fixing prices for TFT-LCD Panels from on or about October 19, 2001 until on or about December 1, 2006.

e. The United States indicted Hui Hsiung for his role in fixing prices for TFT-LCD Panels from on or about October 19, 2001 until on or about December 1, 2006.

f. The United States indicted Lai-Juh Chen for his role in fixing prices for TFT-LCD Panels from on or about February 13, 2003 until on or about November 1, 2005.

g. The United States indicted Shiu Lung Leung for his role in fixing prices for TFT-LCD Panels from on or about May 15, 2002 until on or about December 1, 2006.

h. The United States indicted Borlong Bai for his role in fixing prices for TFT-LCD Panels from on or about March 20, 2003 until on or about December 1, 2006.

i. The United States indicted Tsannrong Lee for his role in fixing prices for TFT-LCD Panels from on or about January 11, 2002 until on or about December 1, 2006.

**Chi Mei Optoelectronics Corporation (CMO)**

j. CMO conspired with other Defendants to suppress and eliminate competition by fixing the prices of TFT-LCD Panels sold in the United States from at least as early as September 14, 2001, continuing until at least December 1, 2006.

k. To further the conspiracy, CMO, through officers and employees such as Jau-Yang "J.Y." Ho, Chu-Hsiang "James" Yang, Wen-Hung "Amigo" Huang, and Chen-Lung

AMENDED COMPLAINT – STATE OF FLORIDA

1    Kuo engaged in communications and attended meetings, including Crystal Meetings,

2    with other Defendants and agreed to fix prices for certain TFT-LCD Panels.

3  l.  CMO pleaded guilty to criminal charges brought by the United States for its price-

4    fixing conspiracy of TFT-LCD Panels from September 14, 2001 to December 1,

5    2006.  The United States did not seek restitution from CMO in light of the civil

6    actions filed in the United States District Court, Northern District of California, and

7    the potential for recovery of a multiple of actual damages.

8

9  m.  Jau-Yang "J.Y." Ho pleaded guilty to criminal charges brought by the United States

10    for his role in the price-fixing conspiracy of TFT-LCD Panels.  The United States did

11    not seek restitution from Jau-Yang "J.Y." Ho in light of the civil actions filed against

12    Chunghwa in the United States District Court, Northern District of California, and the

13    potential for recovery of a multiple of actual damages.

14

15  n.  Chu-Hsiang "James" Yang pleaded guilty to criminal charges brought by the United

16    States for his role in the price-fixing conspiracy of TFT-LCD Panels.  The United

17    States did not seek restitution from Chu-Hsiang "James" Yang in light of the civil

18    actions filed against Chunghwa in the United States District Court, Northern District

19    of California, and the potential for recovery of a multiple of actual damages.

20

21  o.  Wen-Hung "Amigo" Huang pleaded guilty to criminal charges brought by the United

22    States for his role in the price-fixing conspiracy of TFT-LCD Panels.

23

24  p.  Chen-Lung Kuo pleaded guilty to criminal charges brought by the United States for

25    his role in the price-fixing conspiracy of TFT-LCD Panels.

26

27

28

AMENDED COMPLAINT – STATE OF FLORIDA

**Chunghwa**

q.   Chunghwa conspired with other Defendants to suppress and eliminate competition by fixing the prices of TFT-LCD Panels sold in the United States from at least as early as September 14, 2001, continuing until at least December 1, 2006.

r.   To further the conspiracy, Chunghwa, through officers and employees such as Hsueh-Lung "Brian" Lee, Chih-Chun "C.C." Liu, Chieng-Hon "Frank" Lin and others, engaged in communications and attended meetings, including Crystal Meetings, with other Defendants and agreed to fix prices for TFT-LCD Panels.

s.   Chunghwa pleaded guilty to criminal charges brought by the United States for its price-fixing conspiracy of TFT-LCD Panels.  The United States did not seek restitution from Chunghwa in light of the civil actions filed in the United States District Court, Northern District of California, and the potential for recovery of a multiple of actual damages.

t.   Hsueh-Lung "Brian" Lee pleaded guilty to criminal charges brought by the United States for his role in the price-fixing conspiracy of TFT-LCD Panels.  The United States did not seek restitution from Hsueh-Lung "Brian" Lee in light of the civil actions filed against Chunghwa in the United States District Court, Northern District of California, and the potential for recovery of a multiple of actual damages.

u.   Chih-Chun "C.C." Liu pleaded guilty to criminal charges brought by the United States for its price-fixing conspiracy of TFT-LCD Panels.  The United States did not seek restitution from Chih-Chun "C.C." Liu in light of the civil actions filed against Chunghwa in the United States District Court, Northern District of California, and the potential for recovery of a multiple of actual damages.

AMENDED COMPLAINT – STATE OF FLORIDA

v. Chieng-Hon "Frank" Lin pleaded guilty to criminal charges brought by the United States for its price-fixing conspiracy of TFT-LCD Panels. The United States did not seek restitution from Chieng-Hon "Frank" Lin in light of the civil actions filed against Chunghwa in the United States District Court, Northern District of California, and the potential for recovery of a multiple of actual damages.

w. The United States indicted the former Chairman and Chief Executive Officer for Chunghwa, Cheng Yuan Lin, for his role in fixing prices for TFT-LCD Panels from on or about September 14, 2001 until on or about April 7, 2003.

x. The United States indicted the former Assistant Vice President of Sales and Marketing for Chunghwa, Wen Jun Cheng, for his role in fixing prices for TFT-LCD Panels from on or about October 5, 2001 until on or about September 24, 2004.

**HannStar**

y. HannStar conspired with other Defendants to suppress and eliminate competition by fixing the prices of TFT-LCD Panels sold in the United States from at least as early as September 14, 2001, continuing until at least January 31, 2006.

z. To further the conspiracy, HannStar, through their officers and employees, engaged in communications and attended meetings, including Crystal Meetings, with other Defendants, and agreed to fix prices for certain TFT-LCD Panels.

aa. HannStar pleaded guilty to criminal charges brought by the United States for its price-fixing conspiracy of TFT-LCD Panels.

bb. The United States did not seek restitution from HannStar in light of the civil actions filed in the United States District Court, Northern District of California, and the potential for recovery of a multiple of actual damages.

AMENDED COMPLAINT – STATE OF FLORIDA

## **LG Display, LG Display America, Inc.**

cc. LG Display and LG Display America, Inc. conspired with other Defendants to suppress and eliminate competition by fixing the prices of TFT-LCD Panels sold in the United States from at least as early as September 21, 2001, continuing until at least June 1, 2006.

dd. To further the conspiracy, LG Display and LG Display America, Inc., through their officers and employees such as Chang Suk Chung and Bock Kwon, engaged in communications and attended meetings, including Crystal Meetings, with other Defendants, and agreed to fix prices for certain TFT-LCD Panels.

ee.  LG Display and LG Display America, Inc. pleaded guilty to criminal charges brought by the United States for its price-fixing conspiracy of TFT-LCD Panels.  The United States did not seek restitution from LG Display and LG Display America, Inc. in light of the civil actions filed in the United States District Court, Northern District of California, and the potential for recovery of a multiple of actual damages.

ff.  Chang Suk Chung pleaded guilty to criminal charges brought by the United States for his role in fixing prices for TFT-LCD Panels from on or about September 21, 2001 until on or about June 1, 2006.  The United States did not seek restitution from Chang Suk Chung in light of the civil actions filed against LG Display in the United States District Court, Northern District of California, and the potential for recovery of a multiple of actual damages.

gg. Bock Kwon pleaded guilty to criminal charges brought by the United States for his role in fixing prices for TFT-LCD Panels from on or about September 21, 2001 until on or about June 1, 2006.  The United States did not seek restitution from Bock Kwon

AMENDED COMPLAINT – STATE OF FLORIDA

in light of the civil actions filed against LG Display in the United States District Court, Northern District of California, and the potential for recovery of a multiple of actual damages.

hh. The United States indicted the former Executive Vice President and Chief Sales Officer for LG. Philips LCD Co., Ltd., Duk Mo Koo, for his role in fixing prices for TFT-LCD Panels from on or about December 11, 2001 until on or about December 1, 2005.

### Maintaining and Strengthening the Conspiracy

97. After the Defendants met to fix the price of TFT-LCD Panels, the degree of success of the target prices for particular sizes of TFT-LCD Panels was reported to the cartel, including whether any members were not meeting the target price set by the cartel.  These regular reports emphasized the need to continue to conspire to fix the price and output of TFT-LCD Panels to avoid price competition.  Defendants contacted each other via telephone to protect themselves against purchasers that tried achieve a price lower than what the cartel had fixed for TFT-LCD Panels.

98. While many defendants have pleaded guilty to this conspiracy, many defendants have not been charged, admitted their lawlessness, or affirmatively disavowed the conspiracy.

99. For the defendants that have pleaded guilty, their illegal conduct extends beyond the terms of their guilty pleas.

100.    Defendants maintain that for certain targets of their conspiracy, such as finished TFT-LCD Products that incorporate TFT-LCD Panels the Defendants initially sold overseas, federal courts in the United States have no subject matter jurisdiction over their conduct, leaving consumers in Florida and the rest of the United States without recourse.

AMENDED COMPLAINT – STATE OF FLORIDA

101.     Unless permanently restrained and enjoined, Defendants will continue to engage in

conduct that restricts competition for TFT-LCD Panels and TFT-LCD Products.

## MARKET CONDITIONS ILLUSTRATE DEFENDANTS' CONSPIRACY

102.     In addition to the direct evidence of a continuing agreement to fix the prices and output of

TFT-LCD Panels, the State of Florida makes the following plausible inferences regarding the

existence, duration, and scope of the conspiracy:

    a.    Throughout the relevant period, Defendants gave pretextual reasons for increasing

the price or output restrictions of TFT-LCD Panels, such as by attributing prices to

higher supply or input costs.

    b.   The complex and unusual pricing practices by Defendants in 1998 cannot be

explained by the forces of supply and demand.

    c.   During the relevant period, the market for TFT-LCD Products was marked by

unnatural and sustained price stability and price increases, despite the entrance of new

manufacturing Defendants and advances in manufacturing technology.

    d.   Defendants manipulated the capacity of various generations of fabrication plans, as

well as the timing of bringing new capacity on line.

    e.   After receiving invitations to fix prices, Defendants agreed by giving responsive

assurances and by their conduct.

    f.   Defendants exchanged copious amounts of sensitive competitive information,

including pricing information, production capacity and output.

## FRAUDULENT CONCEALMENT

103.     Defendants have fraudulently concealed the existence of conspiracy alleged in this

Complaint.

104.    The State of Florida has exercised due diligence to learn of its legal rights and, despite

such diligence, failed to uncover the existence of the violations alleged below until after the

investigation by the Department of Justice was disclosed publicly in December, 2006.

105.    Defendants effectively, affirmatively, and fraudulently concealed the existence of the

violations alleged below through the following actions, among others:

a.  by engaging in a conspiracy through secret discussions and meetings regarding

pricing and output that did not give rise to fact that would put the State of Florida on

inquiry notice that the Defendants conspired to fix prices for TFT-LCD Panels.  To

hide their meetings, Defendants agreed to stay at separate hotels in case a customer

recognized them;

b.  by agreeing to not publicly discuss the nature of their price-fixing agreement;

c.  by agreeing to increase security and limit written communication regarding their

ongoing price-fixing agreement to avoid detection and prosecution under the antitrust

laws.  Lower-level employees were not invited to meetings because the employees

might later change jobs and disclose the conspiracy;

d.  by agreeing to disseminate numerous false and specific pretextual reasons for the

inflated prices of TFT-LCD Panels, such as increased demand, undercapitalization

leading to insufficient capacity, undersupply due to demand for larger panels,

shortages due to late expansion of production lines, and rapid demand growth;

e.  by avoiding reference to the conspiracy in documents and confining information

concerning the conspiracy to a small number of key officers and employees of the

Defendants;

AMENDED COMPLAINT – STATE OF FLORIDA

f.    by engaging in a successful, illegal price-fixing conspiracy that by its nature was

inherently self-concealing.

106. The State of Florida has exercised due diligence by promptly investigating the facts giving

rise to the claims asserted herein upon having reasonable suspicion of the existence of

Defendants' conspiracy to the extent permitted by law.

## ASSIGNMENT

107.    The State of Florida, Department of Management Services, Procurement Division

("DMS"), requires vendors contracting through DMS for provision of products and/or

services to Florida agencies, political subdivisions, universities, and community colleges to

assign claims those vendors may accrue relating to violations of federal and/or state antitrust

laws to the State of Florida when the claims relate to purchases by Florida governmental

entities.

108.    As a result of this requirement, the State of Florida has contractual agreements with

certain retailers or makers of TFT-LCD Products assigning any accrued claims relating to

violations of federal and/or state antitrust laws to the State of Florida, when the claims relate

to purchases by Florida governmental entities.

109.    The retailers or makers of TFT-LCD Products sold to Florida governmental entities

commonly purchased TFT-LCD Panels and/or TFT-LCD Products directly from Defendants.

110.    The retailers or makers of TFT-LCD Products paid higher-than-competitive prices for

TFT-LCD Panels and Products as a result of Defendants' unlawful conduct.

111.    The retailers or makers of TFT-LCD Products ("Assignors"), pursuant to DMS bid

documents, contracts and/or purchasing agreements, assign to the State of Florida all of their

accrued claims for violations of federal and/or state antitrust laws relating to the TFT-LCD

Panels or TFT-LCD Products that the retailers or makers of TFT-LCD Products purchased and then resold to Florida governmental entities.

112.    The Assignors are the following:

      a.   Acer America/Acer America Corporation

      b.   Apple Computer, Inc.

      c.   Compaq Computer Corporation

      d.   Dell Marketing, L.P.

      e.   Digital Equipment Corporation

      f.   Executive Source, Inc.

      g.   Gateway 2000 Major Accounts, Inc.

      h.   Gateway Companies, Inc.

      i.   Hewlett-Packard Company

      j.   International Business Machines/IBM Corporation

      k.   Lenovo (United States), Inc.

      l.   Micron Government Computer Systems, LLC.

113.    With the assignment of these claims, the State of Florida received all right, title, and interest that the Assignors had in federal and/or state antitrust claims against Defendants.

114.    Florida is unaware of any purchases made by the Assignors within the State of Florida.

## VIOLATIONS ALLEGED

### COUNT I

**(Illegal Restraint of Trade under Section One of the Sherman Act)**

115. The State of Florida incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

AMENDED COMPLAINT – STATE OF FLORIDA

116. This is an action that alleges a violation of Section One of the Sherman Act, 15 U.S.C. § 1.

117. Defendants knowingly – that is, voluntarily and intentionally - entered into a continuing

agreement, understanding and conspiracy to fix, control, raise, maintain, and stabilize the

prices charged for TFT-LCD Panels during the relevant period, continuing through the filing

of this Complaint.

118. Defendants knowingly – that is, voluntarily and intentionally - entered into a continuing

agreement, understanding and conspiracy to limit the production of TFT-LCD Panels during

the relevant period, continuing through the filing of this Complaint.

119. The agreement caused the State of Florida to suffer a continuing injury to its property for

the following reasons:

    a.  The State of Florida and its units of government have been assigned the rights giving

        rise to this action from a person that purchased TFT-LCD Panels or TFT-LCD

        Products directly from a defendant.

    b. Price competition in the sale of TFT-LCD Panels and TFT-LCD Products has been

        restrained, suppressed, and/or eliminated throughout Florida and the United States;

    c. Purchasers of TFT-LCD Panels and TFT-LCD Products have been deprived of the

        benefits of competition.

    d. The conspiracy has made express or tacit collusion more likely.

    e. The conspiracy has raised barriers to entry.

## COUNT II

### (Illegal Restraint of Trade under the Florida Antitrust Act)

120. The State of Florida incorporates and re-alleges, as though fully set forth herein, each and

every allegation set forth in the paragraphs 1 through 113 of this Complaint.

AMENDED COMPLAINT – STATE OF FLORIDA

121. This is an action that alleges a violation of Section 542.18, Florida Statutes.

122. Defendants knowingly – that is, voluntarily and intentionally - entered into a continuing

agreement, understanding and conspiracy to fix, control, raise, maintain, and stabilize the

prices charged for TFT-LCD Panels during the relevant period, continuing through the filing

of this Complaint.

123. Defendants knowingly – that is, voluntarily and intentionally - entered into a continuing

agreement, understanding and conspiracy to limit the production of TFT-LCD Panels during

the relevant period, continuing through the filing of this Complaint.

124. The sale of TFT-LCD Panels and TFT-LCD Products involves trade or commerce within

the meaning of the Florida Antitrust Act.

125. The agreement caused the State of Florida to suffer a continuing injury to its property for

the following reasons:

    a. Price competition in the sale of TFT-LCD Panels and TFT-LCD Products has been

        restrained, suppressed, and/or eliminated throughout Florida and the United States;

    b. Purchasers of TFT-LCD Panels and TFT-LCD Products have been deprived of the

        benefits of competition.

    c. The conspiracy has made express or tacit collusion more likely.

    d. The conspiracy has raised barriers to entry.

## COUNT III

### (Unfair Trade Practice under FDUTPA)

126. The State of Florida incorporates and re-alleges, as though fully set forth herein, each and

every allegation set forth in the paragraphs 1 through 113 of this Complaint.

127. This is an action that alleges a violation of Section 501.204, Florida Statutes, for all direct

and indirect purchases of TFT-LCD Panels and TFT-LCD Products by governmental entities and consumers in the State of Florida pursuant to Section 501.207(1)(c), Florida Statutes.

128. The sale of TFT-LCD Panels and TFT-LCD Products involves trade or commerce within the meaning of the FDUTPA.

129. Defendants' actions offend established public policy and are immoral, unethical, oppressive, unscrupulous or substantially injurious to governmental entities and individuals resident in the State of Florida.  Thus, Defendants' unfair methods of competition and unconscionable acts and practices in the conduct of trade and commerce violate Section 501.204, Florida Statutes.

## PRAYER FOR RELIEF

130.    Accordingly, the State of Florida requests that this Court:

  a.    Adjudge and decree that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. §1;

  b.    Adjudge and decree that Defendants violated Section 542.18, Florida Statutes;

  c.    Adjudge and decree that Defendants violated Section 501.204, Florida Statutes;

  d.    Enjoin and restrain, pursuant to federal and state law, Defendants, their affiliates, assignees, subsidiaries, successors, and transferees, and their officers, directors, partners, agents and employees, and all other persons acting or claiming to act on their behalf or in concert with them, from continuing to engage in any anticompetitive conduct and from adopting in the future any practice, plan, program, or device having a similar purpose or effect to the anticompetitive actions set forth above;

  e.    Award to the State of Florida any other equitable relief as the Court finds appropriate to redress Defendants' violations of federal or state law to restore competition;

AMENDED COMPLAINT – STATE OF FLORIDA

f.   Award to the State of Florida treble damages for overcharges paid by or assigned to the State of Florida and its units of government for purchases of TFT-LCD Panels or TFT-LCD Products;

g.   Award to the State of Florida any other statutory damages, restitution or equitable disgorgement for the benefit of the state and its consumers as appropriate;

h.   Award to the State of Florida the maximum civil penalties under Sections 542.21, Florida Statutes, for each contract, combination, or conspiracy in restraint of trade or commerce;

i.   Award to the State of Florida the maximum civil penalties under Sections 501.2075 or 501.2077, Florida Statutes, for each violation of FDUTPA;

j.   Award to the State of Florida its costs, including reasonable attorneys' fees; and as may be appropriate under state law, expert witness fees and investigation costs; and

k.   Order any other relief that this Court deems proper.

## DEMAND FOR JURY TRIAL

131.   The State of Florida demands a trial by jury of all issues so triable in this cause.

Dated: April 13, 2011                                  Respectfully submitted,

The State of Florida


s/ Nicholas J. Weilhammer
Pamela Jo Bondi
Attorney General of Florida
STATE OF FLORIDA
Patricia A. Conners
Associate Deputy Attorney General
R. SCOTT PALMER (Scott.Palmer@myfloridalegal.com)
LIZABETH A. BRADY (Liz.Brady@myfloridalegal.com)
NICHOLAS J. WEILHAMMER (Nicholas.Weilhammer@myfloridalegal.com)
ELI FRIEDMAN (Eli.Friedman@myfloridalegal.com)
*Pro Hac Vice*

AMENDED COMPLAINT – STATE OF FLORIDA

1

Office of the Attorney General
State of Florida

2

PL-01, The Capitol

3

Tallahassee, FL 32399-1050
Tel:     (850) 414-3300

4

Fax:     (850) 488-9134

5

Attorneys for Plaintiff State of Florida

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28