IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION _____/ This Order Relates To: ALL DIRECT PURCHASER ACTIONS _____/ | No. M 07-1827 SI MDL No. 1827 **ORDER** |

On May 5, 2011, the Court held a hearing on defendants' motion to stay. For the reasons set forth below, the motion is DENIED.

**BACKGROUND**

This multidistrict litigation stems from allegations of a global price-fixing conspiracy in the market for Thin Film Transistor Liquid Crystal Display ("TFT-LCD") panels. TFT-LCD panels are used in a number of products, including but not limited to computer monitors, laptop computers, televisions, and a number of other products. TFT-LCD panels are sold in a variety of sizes, and vary across a number of technical dimensions. TFT-LCD panels have no independent utility, but have value only as components of other products. When a TFT-LCD panel is incorporated into a finished product, the panel is not modified, and remains a discrete, physical object within the finished product. TFT-LCD panels are purchased by many different types and sizes of customers through different manufacturing and distribution channels.

Defendants collectively dominated the market for TFT-LCD panels and products during the relevant time period. Together, defendants controlled between 82% and 95% of the market between 1996 and 2006. During this period, the TFT-LCD industry experienced significant consolidation,

including the creation of defendant AU Optronics in 2001 through the merger of Acer Display and Unipac Electronics; the creation of defendant Toshiba Matsushita in 2002; Fujitsu Ltd.'s transfer of its TFT-LCD business to defendant Sharp in 2005; the formation of defendant IPS Alpha in 2005 by defendants Toshiba and Hitachi and named co-conspirator Panasonic; and defendant AU Optronics' acquisition in 2006 of Quanta Display, which resulted in AU Optronics becoming the third-largest manufacturer of TFT-LCD panels and products. The TFT-LCD industry is also marked by a number of cross-licensing agreements, joint ventures, and other cooperative arrangements which plaintiffs allege facilitate collusion. (Second Amended Direct Purchaser Consol. Compl. ¶ 92, Ex. A (diagram illustrating industry licensing arrangements).)

In or around 2006, the Antitrust Division of the Department of Justice began investigating an alleged global conspiracy to fix prices of TFT-LCD panels by a number of the defendants. The investigation is ongoing. To date, seven corporate defendants in this action have pled guilty to Sherman Act violations related to suppressing and eliminating competition by fixing the prices of TFT-LCD panels. Those defendants are Sharp Corporation (CR 08-802 SI); LG Display Co. Ltd. and LG Display America, Inc. (CR 08-803 SI); Chunghwa Picture Tubes, Ltd. (CR 08-804 SI); Hitachi Displays Ltd. (CR 09-247 SI); Epson Imaging Devices Corporation (CR 09-854 SI); and Chi Mei Optoelectronics Corporation (CR 09-1166 SI).

On November 5, 2007, the direct purchaser plaintiffs ("DPPs") filed a consolidated class action complaint on behalf of all persons and entities that purchased TFT-LCD panels or a product containing a TFT-LCD panel in the United States from the named defendants, any subsidiaries or affiliates thereof, or any co-conspirators identified in the complaint. On February 19, 2008, defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12 on a variety of grounds. (Docket No. 484.) Defendants' motion did not assert that any claim brought by the DPPs was subject to an arbitration provision or forum-selection clause. (*Id.*) Defendants' motion was granted in part and denied in part, and the DPPs filed a consolidated amended complaint on December 5, 2008. (Docket No. 748.) Defendants again filed several motions to dismiss the amended complaint, but did not assert that the action should be stayed or dismissed pursuant to any arbitration provision or forum-selection clause. (*See* Docket Nos. 769, 771, 775, 777, 778, 779.) On March 3, 2009, the DPPs filed a second amended

consolidated complaint. (Docket No. 874.) Various defendants answered the second amended consolidated complaint, and certain defendants asserted as an affirmative defense the potential existence of arbitration agreements and forum-selection clauses. (*See, e.g.*, Docket Nos. 900, 901, 902.) Nonetheless, no defendant moved to stay the litigation pursuant to any arbitration agreement with the DPPs. In December 2009, the DPPs filed a third amended complaint. Again, certain defendants asserted general affirmative defenses involving arbitration agreements and forum-selection clauses.

On April 6, 2009, the DPPs moved to certify a class consisting of "all persons and entities who, during the period January 1, 1996 through December 11, 2006, directly purchased a TFT-LCD panel or product containing a TFT-LCD panel in the United States from any defendant or any subsidiary or affiliate thereof, or any co-conspirator." (Docket No. 933 at 2.) On July 1, 2009, defendants filed a joint opposition to the DPPs' motion for class certification, but did not raise arbitration or forum-selection agreements with any member of the putative class (i.e., direct purchasers of TFT-LCD panels). (Docket No. 1112.) On March 28, 2010, the court granted in part the DPPs' motion for class certification. (Docket No. 1641.)

## DISCUSSION

### I. Motion To Stay Claims Subject To Arbitration

Various defendants move to stay the claims of those DPP class members that entered into arbitration agreements with one or more of the defendants.[1] (Motion at 1.) Defendants argue that certain members of the DPP class agreed to arbitrate all claims with one or more of the defendants pursuant to general sales agreements but, nonetheless, did not exclude themselves from the class during the opt-out period. (Motion at 2.) Defendants contend that they were not aware of the composition of the DPP class until the expiration of the exclusion period on January 31, 2011 and that their motion does not target any of the named plaintiffs in the DPP action. (*Id.*) In response, plaintiffs argue that defendants waived any right to arbitration by failing to raise the issue at an earlier stage of the litigation

---

[1] Moving defendants include the Chi Mei Corp., AU Optronics Corp., HannStar Display Corp., Hitachi, Ltd., Mitsui & Co., Samsung Electronics Co., Ltd., Sanyo Consumer El3ectronics Co., Ltd., Sharp Corp. and Toshiba Corp. groups.

3

1 and that plaintiffs would suffer prejudice if defendants' motion were granted. (Opposition at 2-8.)
2 Plaintiffs also argue that — to the extent defendants have not waived their rights to arbitration — the
3 claims at issue are outside the scope of the asserted arbitration clauses, plaintiffs are not required to
4 arbitrate claims against defendants with whom they did not sign an arbitration clause, and defendants
5 may not compel arbitration based on contracts with absent class members. (Opposition at 8-16.)

### A. Waiver

The Court first turns to plaintiffs' argument that defendants have waived any right to arbitration that might exist between defendants and certain members of the DPP class. The Federal Arbitration Act favors the enforcement of private arbitration agreements. 9 U.S.C. § 2. Nonetheless, courts may refuse to enforce an arbitration agreement on the ground that the party seeking enforcement has waived any such right. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758-59 (9th Cir. 1988); *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 587 (7th Cir. 1992). "A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990). "The party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (citing *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)); *see also Van Ness*, 862 F.2d at 758-59 ("Waiver of the right to arbitration is disfavored because it is a contractual right."). Defendants do not contest their knowledge of the arbitration clauses at issue. The Court therefore turns to the second element of the waiver analysis: whether defendants acted in a manner that is inconsistent with an existing right to arbitrate.

Plaintiffs argue that defendants demonstrated their intent to litigate in court rather than seek arbitration by, among other things, filing two motions to dismiss, opposing class certification without raising arbitration and engaging in extensive discovery. (Opposition at 6-7.) Plaintiffs cite authority from the Fifth Circuit holding that a party waives the right to arbitrate "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (noting that three

4

1 factors of particular relevance are whether discovery has occurred, the time and expense incurred in
2 defending against a motion for summary judgment, and a party's failure to timely assert its right to
3 arbitrate). That court also held that "[a] party waives arbitration by seeking a decision on the merits
4 before attempting to arbitrate." *Id.* at 480-81 (citing *Miller Brewing Co. v. Ft. Worth Distributing Co.*,
5 781 F.2d 494, 498 (5th Cir. 1986)). Although the standard appears slightly less clear in the Ninth
6 Circuit, courts have held that a defendant's "extended silence and much-delayed demand for arbitration
7 indicates a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable
8 claims'" that is "inconsistent with the agreement to arbitrate those claims." *Van Ness*, 862 F.2d at 759;
9 *see also Lyzwa v. Chu*, 1998 WL 326768 at *3 (N.D. Cal. 1998) (finding that the defendant's "delayed
10 request for arbitration until the eve of trial is . . . inconsistent with its right to arbitration"). A defendant
11 can also engage in acts inconsistent with the right to arbitrate "by taking advantage of the judicial
12 discovery procedures not available in arbitration," however "[t]he noticing of a deposition does not rise
13 to judicial litigation on the merits and it is not grounds for waiver." *Irwin v. UBS Painewebber, Inc.*,
14 324 F. Supp. 2d 1103, 1110 (C.D. Cal. 2004).

15 In this case, the Court agrees that defendants have engaged in conduct that is inconsistent with
16 their professed intention to assert arbitration rights in this case. Defendants failed to so much as
17 mention the arbitration clauses at issue in their multiple motions to dismiss. Perhaps more importantly,
18 defendants did not raise the arbitration clauses in their joint opposition to class certification, despite the
19 fact that the existence of such agreements with some members of the putative class but not others is a
20 quintessential individualized issue that bears on the propriety of class certification.[2] The fact that
21 defendants deliberately chose to raise a multitude of other purportedly individualized issues in
22 opposition to class certification but *not* the arbitration clauses now at issue is inconsistent with their
23 current assertion of the right to arbitrate.

24 These inconsistencies are further underscored by the fact that defendants are not moving to
25 compel arbitration against one of the named plaintiffs, Univision-Crimson Holdings. Plaintiffs state that
26 in March 2009 they produced various documents to defendants, including agreements containing

---

[2] The Court expresses no view on whether such issues would or would not have impacted its class certification decision.

5

1  arbitration provisions between defendants and Univision-Crimson Holdings. (Opp. at 16 n.16.) Despite
2  possessing the agreements for nearly two years — during which time defendants filed an opposition to
3  class certification that raised a multitude of supposedly individualized issues among the named
4  plaintiffs — defendants elected not to mention the arbitration clause or move to compel arbitration with
5  Univision-Crimson Holdings. Nor do the defendants seek to compel arbitration with Univision-Crimson
6  Holdings in the current motion, despite asserting various other arbitration clauses and relying
7  extensively on the "federal policy" in favor of arbitration. Put simply, defendants' previous conduct in
8  this litigation evinces either previous indifference to the arbitration clauses they now seek to assert or,
9  possibly, a strategic decision to delay their enforcement.

10  Nevertheless, and although the issue is extremely close, the Court does not find that defendants'
11  actions waived the right to arbitrate with unnamed members of the DPP class. Critically, defendants
12  seek to enforce arbitration agreements only against unnamed class members and do not seek to enforce
13  any arbitration agreement against the named plaintiffs. (Reply at 5-6, 9 n.7.) It does not appear to the
14  Court that defendants could have moved to compel arbitration against such entities prior to the
15  certification of a class in this case because, as defendants point out, "putative class members are not
16  parties to an action prior to class certification." *See Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091
17  (S.D. Cal. 2004). Although the identities of the named plaintiffs have been known since the filing of
18  their individual lawsuits in 2007, the composition of the DPP class was not set until the expiration of
19  the opt-out period on January 31, 2011. Defendants' failure to raise arbitration against absent members
20  of the DPP class prior to that time, although puzzling for the reasons discussed above, was not so
21  inconsistent with their present assertion of the right that waiver must be found. Accordingly, the Court
22  finds that defendants have not waived their right to arbitrate against unnamed members of the DPP
23  class.[3]

---

27  [3] Because the Court finds that plaintiffs have not met their burden to show that defendants acted inconsistently with the right to arbitrate being asserted, the Court need not consider whether plaintiffs
28  suffered prejudice as a result of any such inconsistent acts.

6

### B. Motion to Stay

Defendants request that the Court stay all claims asserted by members of the DPP class that entered into an arbitration agreement with one or more of the defendants. (Motion at 8.) Defendants state that they have not yet identified all such contracts and that a protocol should be established by which members of the DPP class that are subject to arbitration can be identified and excised from the litigation. (*Id.* at 8-9.) Plaintiffs respond that assertion of the arbitration agreements against individual class members is improper and that the antitrust causes of action asserted by the DPPs do not fall within the scope of the arbitration agreements. Additionally, plaintiffs argue that even if an arbitration agreement between one class member and one defendant were enforceable, such a class member cannot be forced to arbitrate against other defendants with which they have no arbitration agreement. (Opposition at 10-16.) In a footnote, plaintiffs also argue that it would be inappropriate to stay the case to allow defendants to identify contracts with arbitration agreements because defendants have had years to do so. (*Id.* at 16 n.16.)

The Court finds that the majority of these issues are premature. For example, although defendants have supplied the Court with certain of the arbitration clauses that they apparently intend to enforce (*see* Sorensen Decl., Exs. A-J), defendants have not, in fact, moved to compel arbitration nor have they provided the Court with all other arbitration clauses that they will ultimately assert. The Court therefore cannot render any determination regarding whether the claims in this litigation do or do not fall within the scope of each such clause.

Nor can the Court determine whether an as yet unidentified DPP class member should or should not be required to arbitrate its claims against all defendants, as opposed to only the defendant with which it entered into an arbitration agreement. Defendants invoke the principle of equitable estoppel to argue that signatory plaintiffs must arbitrate their claims against even nonsignatory defendants. The authority defendants cite holds that whether estoppel applies turns on the nature of the agreement, its relationship to the claims raised in the litigation and the relationships between the parties. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004) (noting that whether estoppel applies may depend on the degree to which the merits are bound up with the contract and whether there is "tight relatedness of the parties, contracts and controversies"); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d

7

942, 947-48 (11th Cir. 1999). Estoppel does not apply unless "the totality of the evidence supports an objective intention to agree to arbitrate." *Ross v. American Exp. Co.*, 547 F.3d 137, 148 (2d Cir 2008). As courts recognize, there is a "black letter rule that the obligation to arbitrate depends on consent," and cases that rely on estoppel to compel arbitration with nonsignatories "simply extend its contours somewhat by establishing that the consent need not always be expressed in a formal contract made with the party demanding arbitration." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361-62 (2d Cir. 2008). In circumstances that appear strikingly similar to this case, the Second Circuit in *Ross* reversed a finding of estoppel where the nonsignatory defendant asserting an arbitration clause in a cardholder agreement was "a complete stranger to the plaintiffs' cardholder agreements; it did not sign them, it is not mentioned in them, and it performs no function whatsoever relating to their operation." *Id.* The court ruled that absent some affiliation between the nonsignatory and signatory defendants above and beyond the alleged antitrust conspiracy, the court could not find that the plaintiffs intended to arbitrate any dispute with the nonsignatory defendant. *See Ross*, 547 F.3d at 146-48. These cases recognize that a nonsignatory defendant faces a heavy burden to show that the signatory plaintiff intended to submit to arbitration, notwithstanding the absence of a formal agreement. If defendants intend to seek arbitration against absent DPP class members, they must present each contract along with evidence sufficient to demonstrate such intent.

Therefore, as an initial step, defendants must locate and identify every arbitration agreement that they intend to assert against unnamed members of the DPP class. Defendants are ordered to produce a comprehensive list of class members against which defendants will move to compel arbitration ("Arbitration List"). That list shall identify, by bates number, the specific contract that will form the basis of defendants' motion.

On or before June 3, 2011, defendants shall file (if they desire) an omnibus motion to compel arbitration regarding each plaintiff listed. In connection with their motion, defendants shall file and serve both the Arbitration List and copies of the individual contracts. The failure to include an arbitration agreement in the aforementioned motion shall constitute waiver of the right to arbitrate the claims asserted on behalf of the DPP class. Finally, the Court agrees that it would be inappropriate to stay the entire litigation while defendants attempt to locate these contracts, all of which are presumably

8

1  in defendants' possession. Accordingly, the Court DENIES defendants' motion to stay.

## II. Motion To Dismiss Claims Subject To Forum-Selection Clauses

Defendants move to dismiss the claims of certain members of the DPP class that entered into forum-selection clauses with one or more of the defendants. (Motion at 6.) Defendants argue that various DPP class members signed contracts specifying courts in Asia and Europe as the venue for any judicial proceeding, and that all claims by such parties must be dismissed. (*Id.* at 6-8.) In response, plaintiffs argue that defendants' failure to raise this argument in their first responsive pleading waived any venue objection. (Opposition at 16-18.) Moreover, plaintiffs argue that the forum-selection clauses are permissive and not mandatory, the antitrust claims at issue are outside the scope of such clauses, and giving favor to such clauses would fragment the case. (*Id.* at 18-23.)

A motion to dismiss pursuant to a forum-selection clause is properly addressed under Federal Rule of Civil Procedure 12(b)(3). *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). "Analysis under Rule 12(b)(3) . . . permits the district court to consider facts outside of the pleadings, and is consistent with the Supreme Court standard for resolving forum selection clause cases." *Id.* Rule 12(g)(2) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(1) states that a party waives certain claims — including an improper venue claim — by "omitting it from a motion in the circumstances described in Rule 12(g)(2)" or by failing to either make a motion under Rule 12 or include the defense in a responsive pleading. Reading these rules together, the Ninth Circuit has held that "[d]efects in personal jurisdiction, venue, or services of process are waived unless asserted in a party's initial pleading." *Hill v. Blind Industries and Services of Maryland*, 179 F.3d 754, 757 (9th Cir. 1999); *Fallbrook Public Utility Dist. v. U.S. Dist. Court*, 202 F.2d 942, 944 (1953) (holding that a timely objection to venue "is one interposed no later than the first pleading or motion by a party"); *c.f. Plunkett v. Valhalla Investment Services, Inc.*, 409 F. Supp. 2d 39, 41 (D. Mass. 2006) ("Failure to raise in the initial response results in permanent waiver of the defense, leading Rule 12(h) to be dubbed the 'raise or waive' rule.").

In this case, on February 19, 2008 defendants filed a joint motion to dismiss the consolidated

9

1 complaint pursuant to Rule 12(b)(6) but failed to raise any argument regarding improper venue. (Docket
2 No. 484.) After plaintiffs filed their first amended complaint, defendants again moved to dismiss the
3 complaint pursuant to Rule 12(b)(6) and, again, did not raise any argument regarding improper venue.
4 (Docket No. 779.) By filing such motions without objecting to the current venue, defendants waived
5 the defense. *See* Fed. R. Civ. P. 12(g)(2), 12(h)(1). Accordingly, the Court DENIES defendants'
6 motion to dismiss claims by DPP class members based on improper forum or venue.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to stay and motion to dismiss. (Docket No. 2548).

**IT IS SO ORDERED.**

Dated: May 9, 2011

SUSAN ILLSTON
United States District Judge