IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION_____/ | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To:<br>STATE OF NEW YORK,<br><br>    Plaintiff,<br><br>  v.<br><br>AU OPTRONICS CORPORATION, *et al.*,<br><br>    Defendants._____/ | No. C 11-00711 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

On July 29, 2011, the Court held a hearing on defendants' motion to dismiss the State of New York's amended complaint. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART defendants' motion.

**BACKGROUND**

On August 6, 2010, the State of New York ("State") filed a complaint in the Supreme Court of New York against numerous domestic and foreign defendants for violations of federal and state antitrust laws. Following removal to the Southern District of New York, the Judicial Panel on Multidistrict Litigation transferred the action to this Court.

The State filed its amended complaint with this Court on March 15, 2011. The amended complaint alleges a global price-fixing conspiracy by suppliers of liquid crystal display ("LCD") panels

between 1996 and the end of 2006. Am. Compl. ¶ 3. The State "sues on behalf of: (a) New York consumers pursuant to the State's *parens patriae* authority, (b) the State itself, including all of its branches, departments, agencies or other parts thereof; and (c) non-State public entities which purchased TFT-LCD panels as components of computer or other electronic equipment." *Id.* at ¶ 17. The State also brings assigned claims from four of its vendors – original equipment manufacturers ("OEMs") Dell, Hewlett Packard ("HP"), IBM, and Lenovo – based on an assignment clause in the State's purchase agreements with each vendor. *See id.* at ¶ 123. The State seeks civil penalties, treble damages, disgorgement, restitution, attorneys fees, and injunctive relief.

On May 5, 2011, defendants filed a motion under Rule 12(b)(6) to dismiss the State's complaint in part, or in the alternative to stay the State's *parens patriae* claims.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

## DISCUSSION

Defendants' motion seeks to dismiss four aspects of the State's complaint: (1) the State's claims that were assigned to it by third-party OEMs; (2) the State's indirect purchaser claims; (3) the State's Executive Law claim; and (4) the State's request for civil penalties.

## I.  Assigned Claims Under the Donnelly Act

The State's complaint includes federal and state-law antitrust claims that four OEM companies – Dell, HP, IBM, and Lenovo[1] – assigned to the State. The State alleges that "as an owner of direct and/or indirect Assigned Claims, [the State] is entitled to recover treble damages, based on the injury suffered directly or indirectly by the State's Assignors as a result of Defendants' illegal conduct." Am. Compl. ¶ 141. The "Centralized Contracts" between the State and the four OEM companies included the following clause:

> ASSIGNMENT OF CLAIM. Contractor hereby assigns to the State any and all of its claims for overcharges associated with this contract which may arise under the antitrust laws of the United States, 15 U.S.C. Section 1, et seq. and the antitrust laws of the State of New York, G.B.L. Section 340, et seq.

*Id.* ¶ 123. Defendants argue that the assigned claims brought under New York law must be dismissed.

### A.  Due Process

First, defendants move to dismiss all of the assigned claims that the State filed under New York's Donnelly Act, N.Y. Gen. Bus. Law §§ 340-347, claiming that application of New York law would violate due process.

In order to bring its antitrust claims under New York law, the State must show that defendants had "a significant contact or significant aggregation of contacts, creating state interests, such that choice

---

[1] The State originally named these companies and more in its amended complaint, Am. Compl. ¶ 124, but ultimately agreed to pursue only claims regarding these four. Stipulation and Order, Master Docket No. 2730 (May 5, 2011), at 2:6-8.

3

of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981). The State may show the existence of such contacts if the OEMs made purchases giving rise to the cause of action in New York. *See Pecover v. Elec. Arts, Inc.*, 633 F. Supp. 2d 976, 984-85 (N.D. Cal. 2009); *see also In re Graphics Processing Unit Antitrust Litigation*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007) (finding that courts should apply law of state where injury occurred in antitrust cases); *In re Relafen Antitrust Litigation*, 221 F.R.D. 260 (D. Mass. 2004) (same). Alternatively, as this Court noted in its order dismissing the State of Florida's complaint, the State could show "sufficient contacts" where its "assigned claims were made pursuant to contracts [between OEMs and defendants] with choice-of-law provisions" that elect to submit to New York's laws. *See* Order Granting In Part and Denying In Part Defendants' Motion to Dismiss, Master Docket No. 2585, at 7 n.3 (Mar. 24, 2011). When a contract contains such a choice-of-law provision, it would be "neither arbitrary nor fundamentally unfair" to bind parties to the laws of a state to which they agreed to submit themselves. *See Pecover v. Elec. Arts, Inc*, 2010 U.S. Dist. LEXIS 140632, at *52 (N.D. Cal., Dec. 21, 2010) (finding that where Electronic Arts' "retail contracts contain California choice of law provisions . . . [Electronic Arts] cannot claim that application of California law . . . was unexpected, and thus 'arbitrary or unfair'" (internal citation omitted)).

Defendants contend that the State has not alleged that the OEM companies made their purchases in New York, nor has it alleged that defendants have sufficient contacts with the New York to be subject to New York law.[2] *See* Pl.'s Opp'n to Defs.' Joint Mot. to Dismiss, 6:15-18 (arguing merely that "some direct purchases underlying New York's Assigned claims may have been made in New York"). The State counters that defendants have "significant contacts" with New York where their Master Purchase Agreements ("MPAs") with the OEMs contain a New York choice-of-law selection.[3] Pl.'s Opp'n, 5:15-

---

[2] The State maintains that it requires discovery to determine whether any OEMs made direct purchases from any defendants in New York. However, under *Ashcroft v. Iqbal*, plaintiff cannot rely on the "sheer possibility" that purchases were made in New York. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To survive a 12(b)(6) motion to dismiss, the State must at least allege that purchases *did* take place in New York. *See id.*

[3] Defendants request judicial notice of sixteen documents, including several MPAs between various defendants and the four OEM companies that the State claims assigned it the power to sue for any antitrust violation connected with the purchases. Defs.' Request for Judicial Notice, 1-2. Though

16.

Of the thirteen choice-of-law provisions found within the MPAs defendants submitted, nine[4] of them select New York law. *See* Ioannou Decl., Exh. B. Because it would not be "fundamentally unfair" to expect defendants to submit to the laws of the state they selected in choice-of-law clauses, those defendants that selected New York law established "significant contacts," satisfying due process. *See Pecover*, 2010 U.S. Dist. LEXIS 140632 at 52.

As to the assigned claims that do not involve MPAs with New York choice-of-law provisions, the Court finds they must be dismissed.[5] In support of these remaining assigned claims, the State merely challenges the validity and application of the provisions that select non-New York law. The State's argument, however, does not address the relevant due process question. The scope, validity, and application of the non-New York selections are not relevant to whether defendants may be sued under New York law *at all* if they never made "significant contacts" with New York.

Accordingly, the Court finds that at least from a due process perspective, the State's assigned claims may proceed to the extent defendants elected New York law in their MPAs. However, due process does not allow those same claims to proceed where the MPAs reveal that the OEMs and defendants did not select New York in their choice-of-law provisions.

### B.  Anti-Assignment Clauses

Defendants next argue that the assigned claims must be dismissed because many MPAs contain

---

courts generally may not consider material beyond the pleadings when considering a motion to dismiss, they "may consider documents on which the complaint 'necessarily relies' and whose 'authenticity . . . is not contested.'" *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). The State nominally objects to defendants' request for judicial notice of the MPAs, in part because they are incomplete. However, since the State relies on them to establish jurisdiction, *see*, *e.g.*, Pl.'s Opp'n, 6:3-14, the Court GRANTS defendants' request for judicial notice of the documents.

[4] Only MPAs between the following OEM companies and defendants reveal a New York choice-of-law selection: (1) Dell and Samsung, effective 3/2/2001; (2) Dell and Samsung, 10/15/1999; (3) IBM and Samsung, 1/1/1996; (4) IBM and LG, 12/1/2001; (5) Dell and LG, 3/4/2003; (6) Dell and Hitachi, 7/12/2000; (7) IBM and Hitachi; (8) Dell and Sharp, 12/5/2000; and (9) Dell and International Display Technology, 7/23/2003.

[5] For example, Dell and HP selected Texas and California law respectively in some of their MPAs.

5

anti-assignment clauses, prohibiting the OEMs from assigning their antitrust claims. The State and defendants point to fourteen MPAs that contain anti-assignment clauses. *See* Ioannou Decl., Exh., B.

The applicability of an anti-assignment clause must be judged according to the language of the clause. "Unless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition." Restatement of Contracts (Second) § 322 (1981). In *Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*, the Eight Circuit found that where a health benefits plan prohibited the assignment of "rights and benefits" under the plan, the anti-assignment provision "did not prohibit assignment of causes of action arising after the denial of benefits." *Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994), *abrogated on other grounds*, *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F3d 966 (2002) (*en banc*).

Here, the anti-assignment clauses are limited to each party's rights and obligations under the contracts. In a representative example, the anti-assignment clause of one of IBM's MPAs with LG reads: "[n]either party will assign their rights or delegate or subcontract their duties under this Agreement to third parties or Affiliates . . . ." Berger Decl., Exh. 1, § 14.2.[6] As the State argues, litigation over antitrust claims cannot be seen as a "right or duty" contemplated by the contract. The State has not brought the assigned claims based on any substantive right or duty found in the contract itself. Rather, the State's claims are analogous to those in the *Lutheran Medical Center* case where an anti-assignment provision concerning purely *contractual* rights and obligations "did not prohibit assignment of causes of action" that arose outside the scope of those contractual rights and obligations. *See Lutheran Medical Ctr.*, 25 F.3d at 619. Since neither party has shown "circumstances [that] indicate" that the parties intended the anti-assignment provisions to cover territory beyond the rights and obligations set forth in the sales contract, the anti-assignment clauses cannot be a basis for dismissing any of the State's assigned claims.

---

[6] Another anti-assignment clause from an MPA between Dell and LG reads: "[t]his Agreement may not be assigned by either party in whole or in part . . . without the express written permission of the other party." Berger Decl., Exh.,§ 17.9.

### C. Forum Selection Clauses

Finally, Defendants argue that this Court should dismiss all of the State's assigned claims where the MPAs contain forum selection clauses that select a mandatory forum other than New York. The Court need not address this issue because each MPA that selects a forum other than New York also has a choice-of-law clause selecting non-New York law. Thus, all claims involving MPAs that select non-New York forums have already been dismissed.

## II. Indirect Purchaser Claims

Defendants also move to dismiss the indirect-purchaser claims brought by the State in a representative capacity. Defendants seek to dismiss both claims brought on behalf of governmental entities other than the State of New York, and New York's *parens patriae* claims.

### A. Claims on Behalf of Governmental Entities Other Than the State of New York

The State's complaint purports to sue on behalf of "non-State public entities which purchased TFT-LCD panels as components of computer or other electronic equipment." Am. Compl. ¶17. Defendants argue that since the State failed to allege that public agencies requested or otherwise authorized the Attorney General to sue on their behalf, the State's indirect purchaser claims on behalf of governmental entities other than the State of New York must be dismissed.[7]

Section 342-b of the Donnelly Act reads:

> [T]he attorney general may also bring action on behalf of any political subdivision or public authority of the state upon the request of such political subdivision or public authority . . . .

N.Y. Gen. Bus. Law § 342-b. If a plaintiff fails to "allege either that the government entities in question requested that plaintiff bring suit on their behalf, or to name or identify the government entities in question . . . plaintiff's representative claim on behalf of those government entities must be dismissed insofar as the Donnelly Act is concerned." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2517851, at *6 (N.D. Cal., Aug. 31, 2007).

---

[7] The State has withdrawn its indirect purchaser claims under the Donnelly Act to the extent those claims arose before December 23, 1998. Pl.'s Opp'n, 17 n.11.

7

The State does not allege, nor does it provide evidence in its briefing materials, that any of the subordinate governmental entities it purports to represent have requested such representation. Instead, the State claims it satisfied the representation request requirement by giving state government entities "due notice" of its plans to sue on their behalf. The State claims that this process is permitted by § 342-b, which provides that "[i]n any class action the attorney general may bring on behalf of these or other subordinate governmental entities . . . due notice thereof" may satisfy the request requirement. N.Y. Gen. Bus. Law § 342-b. However, the State cannot succeed in substituting "due notice" directed at the government entities for a request for representation from those entities because the lawsuit is not class action. This provision of § 342-b does not apply here. Therefore, the Court DISMISSES the State's Donnelly Act claims brought on behalf of subordinate government entities.

### B. *Parens Patriae* Claims

In its amended complaint, the State brings claims "pursuant to its *parens patriae* authority under the Donnelly Act." Am. Compl. ¶150. The State seeks to recover treble damages on behalf of New York consumers. *Id.* Defendants move to dismiss the State's *parens patriae* claims, arguing that the Donnelly Act does not permit such claims.

The availability of *parens patriae* damages claims under the Donnelly Act is somewhat unclear. The Donnelly Act authorizes the New York Attorney General to seek injunctive relief "in behalf of the people of the state," but only authorizes the Attorney General to seek damages on behalf of the State and other public authorities. *See* N.Y. Gen. Bus. Law §§ 342-a, 342-b. In *DRAM*, the court found this distinction convincing. It held that the Donnelly Act "unambiguously limits . . . actions [for damages] to those 'on behalf of any political subdivision or public authority of the state.'" *DRAM*, 2007 WL 2517851 at *8. From this, the *DRAM* court found that

> Presumably, the legislature knew how to include language granting the Attorney General the right to sue "in behalf of the people of the state" in the Act's damages relief provision, as it did so with respect to the provisions allowing actions for injunctive relief and civil penalties. Accordingly, the court concludes that the legislature's failure to include similar language in the provision authorizing damages suits was deliberate. As such, plaintiff may not assert a claim for monetary damages under the Act on behalf of natural persons.

*Id.*

8

A recent New York appellate decision, however, held that *parens patriae* actions could proceed under the Donnelly Act. *New York v. Liberty Mutual Ins. Co.*, 861 N.Y.S.2d 294 (1st Dept. 2009) ("The State has inherent authority to act in a *parens patriae* capacity when it suffers an injury to a quasi-sovereign interest."). Thus, the State argues that this Court should reject the *DRAM* court's analysis and follow *Liberty Mutual*.

Although the decision is close, the Court declines to follow *Liberty Mutual*. The discussion in *Liberty Mutual* is exceedingly brief. It does not refer to the *DRAM* decision or otherwise address the arguments raised in *DRAM*. Further, although *Liberty Mutual* permitted a *parens patriae* claim to go forward, the decision does not discuss what relief would be available in such an action.

In light of the brevity of the *Liberty Mutual* decision, the Court finds *DRAM*'s reasoning persuasive. The Court's decision is also influenced by the fact that New York indirect purchasers are already represented in a separate class action lawsuit against the defendants. Thus, the State's interest in protecting its citizens from anti-competitive practices is not as compelling as it may have been in *Liberty Mutual*.

Accordingly, the Court DISMISSES the State's *parens patriae* claims for damages under the Donnelly Act.[8]

### III.   Executive Law Claims

Defendants move to dismiss all of the State's antitrust claims brought under New York Executive Law § 63(12). Section 63(12) prohibits, in relevant part, "repeated fraudulent or illegal acts . . . in the carrying on, conducting or transaction of business activity." Defendants claim that the Donnelly Act is the "comprehensive statutory scheme" for state antitrust claims, and that the State may not bring both Donnelly Act claims and § 63(12) claims for the same antitrust injury. Defs.' Mot. to Dismiss, 16:22-25, 17:1-3.

In support of their argument, defendants rely only on an unpublished opinion from a New York trial court: *New York v. Daicel Chemical Industries, Ltd.* In *Daicel*, the New York Attorney General

---

[8] The Court, therefore, need not address defendants' request that the Court stay the *parens patriae* claims.

9

1 sued a chemical manufacturing company for antitrust violations under the Donnelly Act and Executive
2 Law § 63(12). *New York v. Daicel Chem. Indus., Ltd.*, 2005 NY Slip Op 30193U, at 2 (Sup. Ct. Aug.
3 9, 2005). The court determined that based on the facts, the "State AG [could] not obtain any relief for
4 this injury under New York State's antitrust laws." *Id.* at 22. Accordingly, the court decided not to
5 allow a simultaneous § 63(12) claim, at least in part, because the State alleged "an otherwise
6 uncompensable injury." *Id*. In this case, in contrast, defendants do not dispute that at least some of the
7 States' antitrust allegations may survive 12(b)(6) dismissal. Thus, *Daicel* is not persuasive.

8 Moreover, there are cases where plaintiffs have brought Donnelly Act and § 63(12) antitrust
9 claims simultaneously. *See, e.g.*, *DRAM*, 2007 WL 2517851, at *11-12. Indeed, the Southern District
10 of New York has found that the "argument that only the Donnelly Act should be used to address
11 antitrust violations . . . lacks support," and that "the New York Attorney General has often used section
12 63(12) to remedy antitrust violations." *New York v. Feldman*, 210 F. Supp. 2d 294, 300 (S.D.N.Y.
13 2002). Accordingly the Court DENIES defendants' motion to dismiss the State's New York Executive
14 Law § 63(12) claims.

### IV. Civil Penalties

17 Finally, defendants argue that the State may not pursue both treble damages and civil penalties
18 under the Donnelly Act. Am. Compl. ¶¶ 150-51. In relevant part, the statute provides that "[i]n lieu of
19 any penalty otherwise prescribed for a violation of a provision of this article and in addition to an action
20 pursuant to section three hundred forty-two of this article, the attorney-general may . . . recover a
21 penalty [of up to $1,000,000 per corporate defendant]." N.Y. Gen. Bus. Law., § 342-a; *see also* N.Y.
22 Gen. Bus. Law § 341. Defendants claim that treble damages constitute a "penalty" within the meaning
23 of this section, and that the State may only seek them "in lieu of" the $1,000,000 civil penalty.

24 The New York Court of Appeals has recently held that the "Donnelly Act['s] threefold damages
25 should be regarded as a penalty . . . ." *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 214 (2007). While
26 *Sperry* reached this holding in the context of a class action statute, the Court sees no reason why its
27 holding should not apply here. *See* N.Y. C.P.L.R. 901(b) ("Unless a statute creating or imposing a
28 penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action,

an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."). The *Sperry* court found that "[t]he antitrust treble damages statute . . . does not state that such damages are compensatory. Nor does its legislative history clearly indicate a compensatory purpose." *Sperry*, 8 N.Y.3d at 214. The State has not convincingly explained why treble damages constitute a penalty in a class action but not in other contexts. Further, none of the cases the State has cited involved plaintiffs who successfully sought both treble damages and civil penalties under the Donnelly Act. *Cf. New York v. Hendrickson Bros.*, 840 F.2d 1065 (2d Cir. 1988) (awarding civil penalties under Donnelly Act but treble damages under Sherman Act); .

Since the New York Court of Appeals decision suggests that treble damages constitute a penalty, and since civil penalties may only be pursued "in lieu of any penalty otherwise prescribed [in the Act]," the State may not pursue both remedies under the Donnelly Act. Accordingly, the Court GRANTS defendants' motion as to this issue.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. (Docket No. 66 in 11-0711; Docket No. 2718 in 07-1827).

**IT IS SO ORDERED.**

Dated: August 9, 2011

SUSAN ILLSTON
United States District Judge