IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates to:<br>All Indirect-Purchaser Plaintiff Class Actions / | **ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' OBJECTION TO SPECIAL MASTER'S DENIAL OF MOTION TO DEEM SHARP CORPORATION TO HAVE ADMITTED REQUESTS FOR ADMISSION** |

On June 14, 2011, the Special Master issued an order denying the indirect purchaser plaintiffs' ("IPPs") motion to deem defendant Sharp Corporation to have admitted 16 of IPPs' requests for admission ("RFA"). *See* Special Master's Order Re: Motion of Indirect Purchaser Plaintiffs to Deem Sharp Corporation to Have Admitted Requests for Admission, Master Docket No. 2917 (June 14, 2011). IPPs now object to the Special Master's order. Having considered the papers of the parties, and for good cause appearing, the Court hereby GRANTS plaintiffs' objection.

**BACKGROUND**

On December 16, 2008, Sharp pled guilty in this Court to three counts of price-fixing in violation of the Sherman Act, 15 U.S.C. § 1. Sharp entered its guilty plea pursuant to a negotiated plea agreement that its Board of Directors approved on November 11, 2008. *See* Declaration of Daniel R. Shulman in Support of IPP's Objection ("Shulman Decl."), Exh. A ("Plea Agreement"). The fourth paragraph of the plea agreement set forth the factual basis for Sharp's guilty plea. It stated that, between April 1, 2001, and December 1, 2006, Sharp

participated in a conspiracy with other major TFT-LCD producers, the primary purpose of which was to fix the price of TFT-LCD sold to [Dell, Apple, and Motorola] for use in [computer monitors, laptops, iPods, and Razr mobile phones]. In furtherance of the conspiracy, [Sharp], through its officers and employees, engaged in bilateral telephone discussions and attended bilateral meetings with representatives of other major TFT-LCD producers. During these discussions and meetings, agreements were reached to fix the price of TFT-LCD sold to [Dell, Apple, and Motorola].

Plea Agreement at ¶4(c), (d), (e).

In light of Sharp's guilty plea, IPPs served on Sharp 19 requests for admission, all of which tracked the language in the plea agreement's fourth paragraph. *See*, *e.g.*, Shulman Decl., Exh. D (requesting that Sharp admit that it "participated in a conspiracy with other major TFT-LCD producers, the primary purpose of which was to fix the price of TFT-LCD sold to Dell for use in computer monitors and laptops"). Sharp, however, admitted only two of these RFAs, neither of which implicated Sharp in the conspiracy. *See* Shulman Decl., Exh. E (admitting to a definition of "TFT-LCD" and admitting that Sharp sold TFT-LCD panels in the United States). In response to the rest of the RFAs, Sharp admitted only that "in its November 14, 2008, Plea Agreement with the United States, [Sharp] agreed that, had *United States v. Sharp Corporation*, No. CR 08 0802 SI gone to trial, the United States would have presented sufficient evidence to prove this asserted fact. Otherwise, [Sharp] denies this Request." Shulman Decl., Exh. E at 6.

Dissatisfied with these responses, IPPs filed a motion with the Special Master. IPPs argued that Sharp's RFA responses were made in bad faith, and sought an order deeming Sharp to have admitted the RFAs. The Special Master appeared to agree with IPPs that Sharp's answers were not made in good faith. Special Master's Order Re: Motion of Indirect Purchaser Plaintiffs (1) to Compel Hitachi to Further Respond to Interrogatories, and (2) to Compel Sharp to Admit Requests for Admission and Respond Further to Fifth Set of Interrogatories, Master Docket No. 2579 (March 22, 2011), at 7 ("I simply cannot find any basis for Sharp in good faith to have qualified its responses given that it has repeatedly and under oath admitted the very facts it now purports to partially deny."); *see also id.* at 5-6 (detailing the three occasions on which a Sharp representative had admitted to the facts in the plea agreement). Rather than evaluate the substance of Sharp's answers, however, the Special Master focused on the form of Sharp's response, faulting Sharp for providing answers that did not directly respond to IPPs' RFAs. *Id.* at 6 ("[F]or the rest of the Requests Sharp did not respond with an admission

2

or denial <u>to the substance of the matter requested</u> as required by Rule 36." (emphasis in original)); *see also id.* ("But Sharp was not asked what the Government could prove. Sharp was asked what it admitted to in its Plea Agreement."). Because he considered deeming the RFAs admitted to be a "drastic remedy," the Special Master "afford[ed] Sharp the opportunity to serve amended responses that squarely admit[ted] or den[ied] the facts contained in each request." *Id.* at 7-8.

One week later, Sharp amended its RFA responses, this time admitting one further RFA about the volume of its sales in the United States, but denying in full the remainder. Shulman Decl., Exh. H. IPPs again moved the Special Master to deem the RFAs admitted. This time, however, the Special Master denied their motion. After a detailed analysis, the Special Master concluded that the substance of an RFA response may not be examined prior to trial. Rather, the only mechanism to challenge a factually unsupported RFA response was to move for costs after trial. Order, at 4-5; *see also* Fed. R. Civ. P. 37(c)(2) ("If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof."). Thus, because Sharp's responses "specifically denied" the RFAs, technically complying with the form requirements of Rule 36(a)(4), the Special Master concluded that IPPs had no recourse for any bad faith on Sharp's part.

Ten days after the Special Master entered his order, IPPs filed this objection.

## LEGAL STANDARD

The Special Master's Order concerns a question of law, which this Court reviews *de novo*. *See* Order Appointing Martin Quinn as Special Master (April 12, 2010), Master Docket No. 1679, at ¶18; Fed. R. Civ. P. 53(f)(3)-(5).

## DISCUSSION

As they did before the Special Master, IPPs argue that Sharp acted in bad faith by denying the RFAs. They contend that Sharp's bad faith distinguishes this case from the authorities the Special Master's order relied on, and assert that this Court has the power remedy Sharp's misconduct by

deeming the RFAs admitted. IPPs also request fees and costs associated with bringing their motion.

The Court agrees with IPPs that Sharp's RFA responses were made in bad faith. In its plea agreement, Sharp agreed to make a "factual admission of guilt." Plea Agreement at ¶3. At the change of plea hearing, Sharp appeared before this Court through its corporate representative, Kazutoshi Goto, and did exactly that. *See* Shulman Decl., Exh. A (authorizing Goto to "represent Sharp Corporation before any court or governmental agency in order to make statements and confirmations in accordance with the Plea Agreement"). After listening to the government read aloud the factual basis for the guilty plea from fourth paragraph of the plea agreement, the Court asked Mr. Goto if the charges were true:

> THE COURT: Mr. Goto, did you hear what Mr. Ward just said?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Are those things true?
>
> THE DEFENDANT: Yes, it's true.
>
> THE COURT: Have you studied the information that is included in paragraph 4 of this plea agreement?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: That's on pages 3 and 4 and 5 of the document. Are all of those things true?
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: All right. Tell me in your own words what the company did that makes it guilty of this offense.
>
> . . .
>
> THE DEFENDANT: As set forth in paragraph 4 of the plea agreement, Sharp participated in three separate conspiracies involving the specified sales of TFT-LCD panels to Dell, Apple, and Motorola. These are during the limited timeframes set forth in paragraph 4.
>
> THE COURT: And what was the purpose of the conspiracies?
>
> THE DEFENDANT: To fix pricing.

Shulman Decl., Exh. B at 18-19.[1]

---

[1] IPPs' counsel covered the same ground at Mr. Goto's deposition, reading from paragraph 4 of Sharp's plea agreement and asking if the facts were true. Mr. Goto replied "Yes, they are true" to these questions. Shulman Decl., Exh. C at 27-28.

4

Sharp contends that it did not admit the truth of the allegations against it at the change of plea hearing. Instead, it claims that it only admitted that the government had enough evidence to establish those facts at trial. It maintains that its original answer – "to admit what the Plea Agreement admitted, and otherwise to deny the RFAs" – was the "most appropriate response." Sharp's Opp'n at 8 n.7.[2]

Sharp's argument, however, is directly contradicted by the admissions it made to this Court. Sharp did not admit merely that the government had enough evidence to prove its case. It did not enter a plea of *nolo contendere* or otherwise maintain its innocence. Rather, consistent with its agreement to "make a factual admission of guilt," Sharp, through its designated representative, admitted the charges in full. Had Sharp made any other statement at the hearing, including the argument Sharp makes now, the guilty plea may have been rejected. Sharp's answers were not "appropriate"; to the contrary, they reflect a bad faith refusal to acknowledge its sworn admissions to this Court.

Having concluded that Sharp's RFA responses were made in bad faith, the Court also agrees with IPPs that it is appropriate to deem the RFAs admitted. Were this a routine discovery matter, it is clear that such a remedy would be unavailable to plaintiffs. As the Special Master found, a Court is ordinarily limited to reviewing the form of an RFA response, and not its substance. The advisory committee notes to Rule 37 make this clear: "Rule 36 does not provide for a pretrial hearing on whether the response is warranted by the evidence thus far accumulated. Instead, Rule 37(c) is intended to provide posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial." Fed. R. Civ. P. 37, adv. comm. notes (1970). The major treatises are also in accord with this position. *See Schwarzer, et al.*, *Federal Civil Procedure Before Trial*, ¶ 11:2074 (2011) ("If the request is completely denied, a motion to

---

[2]Sharp also relies on section 5(a) of the Clayton Act, which provides:

> A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 4A, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto . . . .

15 U.S.C. § 16(a). Sharp claims that the IPPs' RFAs constitute an attempt to make an end-run around this provision. The above statute, however, sets forth the effect of a "final judgment." IPPs do not rely on the judgment of conviction; they rely on Sharp's admissions to this Court.

5

determine the sufficiency of the denial is improper."); 7 *Moore's Federal Practice* § 36.12 (2011) ("Rule 36 does not authorize the court to make determinations on the accuracy of responses before trial."); *Wright, et al.*, *8B Federal Practice and Procedure* § 2263 (3d ed. 2010) ("If a responding party files a response that contains the proper detail . . . the propounding party may not challenge the denial on the ground that it is unsupported by the evidence."); *see also* Fed. R. Civ. P. 36, adv. comm. notes (1970) ("Rule 36 does not lack a sanction for false answers; Rule 37(c) furnishes an appropriate deterrent.").

Thus, were this a usual case, it would be inappropriate for the Court to weigh deposition testimony or interrogatory responses to determine whether a factual basis exists for the RFA responses. Here, however, IPPs do not rely on Sharp's discovery responses; rather, then rely on Sharp's representations to this Court. Sharp's clear admissions and this Court's involvement make this case an exception to the ordinary rule.

The Ninth Circuit has concluded that it is appropriate on rare occasions for a court to look beyond the form of a party's RFA response. In *Asea, Inc. v. Southern Pac. Trans. Co.*, 669 F.2d 1242 (9th Cir. 1981), the defendant answered the plaintiff's RFAs with the following response: "Answering party cannot admit or deny. Said party has made reasonable inquiry. Information known or readily obtainable to this date is not complete. Investigation continues." *Id.* at 1244. After it came to light that the defendant was actually in possession of evidence that would have let it provide a more complete response, the district court deemed the RFAs admitted. *Id.* at 1245.

On appeal, the defendant argued that the district court's action was improper. It claimed that it had complied with the technical requirements of Rule 36. *See* Fed. R. Civ. P. 36(a)(4) ("The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."). Thus, the defendant contended that the plaintiff's only recourse was to move for an award of expenses after trial under Rule 37(c). *Id.* at 1245-46.

The Ninth Circuit rejected the defendant's argument. It acknowledged that "[t]he language of Rule 36(a) would indeed permit [defendant's] construction" that "a mere statement that the answering party has made a reasonable inquiry . . . suffice[s]." *Id.* at 1246; *see also id.* (citing sources supporting

6

position that "Rule 36 requires only that the party state that he has taken these steps" and that the appropriate sanction "lies in the award of costs after trial"). The Ninth Circuit declined, however, to condone such "[c]allous disregard of discovery responsibilities." *Id.* at 1246.

> We are not persuaded that an answer to a request for admission necessarily complies with Rule 36(a) merely because it includes a statement that the party has made reasonable inquiry and that the information necessary to admit or deny the matter is not readily obtainable by him. The discovery process is subject to the overriding limitation of good faith. Callous disregard of discovery responsibilities cannot be condoned. . . . In our view, permitting a party to avoid admitting or denying a proper request for admission simply by tracking the language of Rule 36(a) would encourage additional abuse of the discovery process. Instead of making an evasive or meritless denial, which clearly would result in the matter being deemed admitted, a party could comply with the Rule merely by having his attorney submit the language of the Rule in response to the request. Since a district court may order that a matter is admitted only if an answer does not "comply" with the requirements of the Rule, it could be argued that the only sanction for a party's willful disregard of its obligation to make reasonable inquiry would be an award of the expenses of proving the matter at trial pursuant to Rule 37(c). Without disparaging the deterrent effect of such a sanction, we believe that restricting the district court's discretion in this manner would reduce a litigant's obligation to make "reasonable inquiry" into a mere semantic exercise, and thus severely undermine the policy embodied in Rule 36(a) of limiting the issues before trial.

*Id.* at 1246-47. Accordingly, the Ninth Circuit held that "[t]he general power of the district court to control the discovery process allows for the severe sanction of ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a)." *Id.* at 1247.

Here, there can be no doubt that Sharp has "intentionally disregarded the obligations imposed by Rule 36(a)." It admitted to this Court the precise conduct addressed by IPPs' RFAs, and now it seeks to pretend that those admissions never occurred. Its position that it may so blatantly contradict its admission of guilt would turn the requirements of Rule 36 into nothing more than a "semantic exercise." The Court cannot allow Sharp to abide by its sworn admissions only when it finds those admissions convenient. Having admitted the truth of the charges against it to gain the benefit of its plea agreement – a plea agreement that this Court approved – Sharp may not now recast its guilty plea as something other than what it was.

Sharp's denial of the RFAs in the face of its guilty plea is inconsistent with the "overriding limitation of good faith" that governs the discovery process. Allowing Sharp's RFA answers to stand would not only undermine the purpose of Rule 36, it would reward its bad-faith behavior. Sharp was

7

given the opportunity to fix its evasive answer; it may not use that opportunity to provide an even more evasive one. Accordingly, the Court agrees with IPPs that the RFAs it served on Sharp should be deemed admitted.

Finally, IPPs request that Sharp pay the fees and costs associated with its motion. The Court agrees that an award of fees and costs is warranted. *See* Fed. R. Civ. P. 36(a)(6) (stating that Rule 37(a)(5) applies to motions challenging the sufficiency of an RFA answer); Fed. R. Civ. P. 37(a)(5) (mandating an award of fees and costs when a motion is granted, absent circumstances not applicable here).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court GRANTS IPP's objection to the Special Master's order. IPPs' RFAs are deemed ADMITTED. (Master Docket No. 2985.)

The Court also GRANTS IPP's request for fees and costs associated with its motion. Counsel shall confer concerning the amount of fees and costs incurred; if they are unable to agree, the IPPs shall submit a declaration setting out their fees and costs no later than August 30, 2011.

**IT IS SO ORDERED.**

Dated: August 12, 2011

SUSAN ILLSTON
United States District Judge

8