Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Judith A. Zahid (215418)
Patrick B. Clayton (240191)
Qianwei Fu (242669)
Heather T. Rankie (268002)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
*fscarpulla@zelle.com*

Joseph M. Alioto (42680)
Theresa D. Moore (99978)
ALIOTO LAW FIRM
225 Bush Street, 16th Floor
San Francisco, CA 94104-1534
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
*josephalioto@mac.com*

*Co-Lead Class Counsel for Indirect-Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. 3:07-MD-1827 SI<br>MDL No. 1827 |
| This Document Relates to:<br><br>All Indirect-Purchaser Actions | **INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW**<br><br>Date: September 22, 2011<br>Time: 9:00 a.m.<br>Place: Courtroom 10, 19th Floor<br>Judge: Hon. Susan Illston |

# TABLE OF CONTENTS

I.  LEGAL STANDARD FOR SUMMARY JUDGMENT ................................................................1

II. TRIABLE ISSUES OF MATERIAL FACT EXIST FOR THE CLAIMS ARISING
    UNDER FIVE STATES' CONSUMER PROTECTION STATUTES ................................1

    A.  New Mexico ....................................................................................................................1

    B.  New York .........................................................................................................................3

    C.  Vermont ...........................................................................................................................7

    D.  Rhode Island ...................................................................................................................8

        1.  Plaintiffs' Claims Are Subject To The Statute ...............................................8

        2.  Defendants' "Materiality" Argument Is Unsupported ................................10

        3.  Plaintiffs Purchased LCD Products For Personal, Family, or Household Use ...........11

    E.  Missouri .........................................................................................................................11

III. SUMMARY JUDGMENT SHOULD BE DENIED ON THE UNJUST ENRICHMENT
     CLAIMS ...............................................................................................................................12

    A.  Unjust Enrichment Does Not Require a Direct Benefit ..........................................12

        1.  Mississippi ........................................................................................................13

        2.  New York ...........................................................................................................14

        3.  Maine .................................................................................................................16

        4.  Rhode Island .....................................................................................................17

        5.  District of Columbia .........................................................................................17

        6.  Kansas ................................................................................................................18

        7.  West Virginia .....................................................................................................19

        8.  Hawaii, Missouri, New Mexico, South Dakota and Wisconsin .................20

            a.  Hawaii ...................................................................................................20

            b.  Missouri ................................................................................................20

            c.  Wisconsin ..............................................................................................21

            d.  New Mexico and South Dakota Rely on the Restatement of the Law of
                Restitution Which Does Not Require a Direct Benefit .....................21

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL
SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW – CASE NO. 3:07-MD-1827 SI

B. Defendants are Not Entitled to Summary Judgment on the Unjust Enrichment Claims on the Grounds of an Adequate Remedy at Law ........................................................... 22

C. Defendants are Not Entitled to Summary Judgment on the Rhode Island and Missouri Unjust Enrichment Claims ............................................................................................. 23

    1. Missouri ........................................................................................................................ 24

    2. Rhode Island ................................................................................................................. 24

IV. CONCLUSION ................................................................................................................... 25

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW – CASE NO. 3:07-MD-1827 SI

# TABLE OF AUTHORITIES

**Federal Cases**

*Arnold & Associates, Inc. v. Misys Healthcare Systems*,
275 F.Supp.2d 1013 (D.Ariz. 2003) ............................................... 23

*Benefit Trust Life Insurance Co. v. Union National Bank*,
776 F.2d 1174 (3d Cir. 1985) ........................................................ 13

*Bildstein v. MasterCard Int'l, Inc.*,
No. 03-CV-9826I, 2005 WL 1324972 (S.D.N.Y. June 7, 2005) ............ 15

*Burns v. Delaware Charter Guarantee & Trust Co.*,
No. 10 Civ. 4534, 2011 WL 2314835 (S.D.N.Y. June 8, 2011) ............ 14

*Combined Energies v. CCI, Inc.*,
628 F. Supp. 2d 226 (D. Me. 2009) ................................................ 16

*Connelly Containers, Inc. v. Bernard*,
717 F. Supp. 202 (S.D.N.Y. 1989) ................................................. 15

*Ellis v. Cohen & Slamowitz LLP*,
701 F. Supp. 2d 215 (N.D.N.Y. 2010) .............................................. 5

*Fordice Construction Company v. Central States Dredging Company*,
631 F.Supp.1536 (S.D. Miss. 1986) ................................................ 14

*Garrett v. Cassity*,
No. 4:09CV01252 ERW, 2011 WL 3235633 (E.D. Mo. July 28, 2011) .......... 20

*Gonzales v. Pepsico, Inc.*,
489 F. Supp. 2d 1233 (D. Kan. 2007) ............................................. 19

*In re Aftermarket Filters Antitrust Litig.*,
No. 08 C 4883, 2009 U.S. Dist. LEXIS 104114 (N.D. Ill. Nov. 5, 2009) ........ 3

*In re Automotive Refinishing Paint Antitrust Litig.*,
515 F.Supp.2d 544 (E.D. Pa. 2007) ................................................ 6

*In re Cardizem CD Antitrust Litig.*,
105 F. Supp. 2d 618 (E.D. Mich. 2000) .................................... *passim*

*In re Chocolate Confectionary Antitrust Litig.*,
602 F. Supp. 2d 538 (M.D. Pa. 2009) ....................................... *passim*

*In re Chocolate Confectionary Antitrust Litig.*,
749 F. Supp. 2d 224 (M.D. Pa. 2010) ............................................. 15

*In re Dynamic Random Access Memory ("DRAM I") Antitrust Litig.*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ......................................... 2, 4

*In re Dynamic Random Access Memory ("DRAM II") Antitrust Litig.*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) ......................................... 4, 11

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................ 4

*In re Hydroxycut Marketing & Sales Practices Litig.*,
   No. 09MD2087-BTM (AJB), 2010 WL 2839480 (S.D. Cal June 20, 2010) ........................ 5

*In re K-Dur Antitrust Litig.*,
   338 F. Supp. 2d 517 (D.N.J. 2004) ...................................................... 13, 23

*In re K-Dur Antitrust Litig.*,
   No. 01-1652 (JAG), 2008 WL 2660781 (D.N.J. Mar. 4, 2008) .............................. 19

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   295 F. Supp. 2d 30 (D.D.C. 2003) ........................................................ 18

*In re MetLife Demutualization Litig.*,
   624 F. Supp. 2d 232 (E.D.N.Y. 2009) ...................................................... 5

*In re Microsoft Antitrust Litig.*,
   261 F. Supp. 2d 366 (D. Md. 2003) ....................................................... 8

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004) .................................................... 3, 6, 9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   738 F. Supp. 2d 227 (D. Mass. 2010) ..................................................... 2

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. M:07-cv-01819 CW, 2008 WL 2610549 (N.D. Cal. June 27, 2008) .................... 4, 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F.Supp.2d 1109 (N.D. Cal. 2008) ................................................ *passim*

*Johnson v. Ross*,
   No. 10-1046, 2011 WL 1042246 (4th Cir. Mar. 23, 2010) ................................ 19

*Leider v. Ralfe*,
   387 F. Supp. 2d 283 (S.D.N.Y. 2005) ..................................................... 6

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir. 2008) ............................................................. 5

*Minebea Co., Ltd. v. Papst*,
   444 F. Supp. 2d 68 (D.D.C. 2006) ....................................................... 17

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,
   182 F.3d 157 (2d Cir. 1999) ............................................................. 1

*New York Jets LLC v. Cablevision Sys. Corp.*,
   No. 05 Civ. 2875 (HB), 2005 WL 2649330 (S.D.N.Y. Oct. 17, 2005) ...................... 6

*New York v. Feldman*,
   210 F. Supp. 2d 294 (S.D.N.Y. 2002) ..................................................... 6

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL
SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW – CASE NO. 3:07-MD-1827 SI

*Ovella v. B & C Const. and Equip., LLC*,
    No. 1:10CV285 LG-RHW, 2011 WL 2912865 (S.D. Miss. July 18, 2011) .......................... 14

*Real v. Driscoll Strawberry Associates*,
    603 F.2d 748 (9th Cir. 1979) ................................................................................................. 1

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline*,
    737 F. Supp. 2d 380 (E.D. Pa. 2010) ................................................................................... 12

*Spires v. Hospital Corp. of Am.*,
    289 F. App'x 269 (10th Cir. 2008) ....................................................................................... 19

*Taylor v. United Management, Inc.*,
    51 F. Supp. 2d 1212 (D.N.M. 1999) ...................................................................................... 3

*True v. Conagra Foods, Inc.*,
    No. 07-00770-CV-W-DW, 2011 WL 176037 (W.D. Mo. Jan. 4, 2011) ................................ 17

*United States v. Honeywell Int'l Inc.*,
    No. 08-961 (RWR), 2011 WL 2672624 (D.D.C. July 8, 2011).............................................. 18

## State Cases

*ACLU/E. Mo. Fund v. Miller*,
    803 S.W.2d 592 (Mo. 1991) .................................................................................................. 21

*Alessi v. Bowen Court Condominium*,
    No. 03-0235, 2010 R.I. Super. LEXIS 50 (Mar. 10, 2010) ............................................. 16, 17

*Ames v. Oceanside Welding & Towing*,
    767 A.2d 677 (R.I. 2001) ........................................................................................................ 9

*Chavers v. Fleet Bank (RI), N.A.*,
    844 A.2d 666 (R.I. 2004) ...................................................................................................... 10

*Cox v. Microsoft Corp.*,
    778 N.Y.S.2d 147 (N.Y. 2004) .......................................................................................... 6, 15

*Dunlap v. Hinkle*,
    317 S.E.2d 508 (W. Va. 1984) .............................................................................................. 19

*Durette v. Aloha Plastic Recycling Inc.*,
    100 P.3d 60 (Haw. 2004) ...................................................................................................... 20

*Duvall v. Silvers*,
    998 S.W.2d 821 (Mo. App. 1999) ......................................................................................... 24

*Erslon v. Vee-Jay Cement Contracting Co.*,
    728 S.W.2d 711 (Mo. App. 1987) ......................................................................................... 20

*Gale v. I.B.M. Corp.*,
    781 N.Y.S.2d 45 (N.Y. 2004) ................................................................................................. 5

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL
SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW – CASE NO. 3:07-MD-1827 SI

*Gibbons v. J. Nuckolls, Inc.*,
    216 S.W.3d 667 (Mo. 2007) ............................................................ 24

*Hill v. Stowers*,
    680 S.E.2d 66 (W. Va. 2009) ......................................................... 19

*Hofeldt v. Mehling*,
    658 N.W.2d 783 (S.D. 2003) ......................................................... 22

*J.W. Thompson Co. v. Welles Prods. Corp.*,
    758 P.2d 738 (Kan. 1988) .............................................................. 18

*Jordan v. Nissan N. Am., Inc.*,
    176 Vt. 465 (2004) ........................................................................... 7

*Lang McLaughry Spera Real Estate, LLC v. Hinsdale*,
    No. 10-103, 2011 WL 1347032 (Vt. Apr. 7, 2011) .......................... 7

*Lynch v. Conley*,
    853 A.2d 1212 (R.I. 2004) .......................................................... 9, 10

*Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*,
    557 N.W.2d 67 (Wis. 1996) .......................................................... 21

*Ontiveros Insulation Co., Inc. v. Sanchez*,
    3 P.3d 695 (N.M. App. 2000) ........................................................ 21

*Opelika Production Credit Ass'n, Inc. v. Lamb*,
    361 So.2d 95 (1978) ....................................................................... 22

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    647 N.E.2d 741 (N.Y. 1995) ............................................................ 5

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
    868 So.2d 331 (Miss. 2004) ...................................................... 13, 14

*Platz Associates v. Finley*,
    973 A.2d 743 (Me. 2009) ............................................................... 16

*Prudential Ins. Co. v. Couch*,
    376 S.E.2d 104 (W. Va. 1988) ....................................................... 19

*R & B Electric. Co., Inc. v. Amco Construction Co., Inc.*,
    471 A.2d 1351 (R.I. 1984) ............................................................. 17

*Ramirez-Eames v. Hover*,
    775 P.2d 722 (N.M. 1989) ............................................................... 3

*Rivers v. Amato*,
    No. CIV. A. CV-00-131, 2001 WL 1736498 (Me. Super. June 22, 2001) .......................... 16

*Siena v. Microsoft Corp.*,
    796 A.2d 461 (R.I. 2002) ................................................................. 9

*Sperry v. Crompton Corp.*,
    863 N.E.2d 1012 (N.Y. 2007) .................................................................. 15

*State ex rel. Spitzer v. Daicel Chemical Industries, Ltd.*,
    840 N.Y.S.2d 8 (2007) .............................................................................. 15

*State ex rel. Stratton v. Gurley Motor Co.*,
    105 N.M. 803 (N.M. 1987) .......................................................................... 2

*State v. Piedmont Funding Corp.*,
    382 A.2d 819 (R.I. 1978) ............................................................................. 9

*Stutman v. Chem. Bank*,
    95 N.Y. 2d 24 (2000) ................................................................................... 5

*Title Partners Agency, LLC v. Devisees of Law Will & Testament of M. Sharon Dorsey*,
    334 S.W.3d 584 (Mo. App. 2011) ............................................................. 20

*Wright v. Honeywell Int'l*,
    No. 201-11-04, 2008 WL 7541741 (Vt. Super. May 15, 2008),
    *rev'd on other grounds*, 989 A. 2d 539 (Vt. 2009) ............................... 6, 8

*Wyatt v. Petrila*,
    752 S.W. 2d 683 (Tex. App. 1988) .............................................................. 3

## **State Statutes**

N.M. Stat. § 57-12-2(E) ..................................................................................... 2

N.Y. Gen. Bus Law 349 ........................................................................... 3, 4, 5, 6

R.I. Gen. Laws § 6-13-1 ............................................................................... 8, 10

R.I. Gen. Laws §§ 31-5.1-1 to -21 .................................................................... 9

Vt. Stat. tit. 9, § 2451 ........................................................................................ 6

## **Federal Rules**

Fed. R. Civ. P. 56(a) .......................................................................................... 1

Fed. R. Civ. P. 8(d)(2) ..................................................................................... 22

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL
SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW – CASE NO. 3:07-MD-1827 SI

1    Indirect-Purchaser Plaintiffs ("Plaintiffs") oppose Defendants' Joint Motion for Partial

2    Summary Judgment Based on Various Issues of State Law (Dkt. # 3205).  As demonstrated

3    below, Defendants fail to meet the heavy burden of showing the absence of any triable issues of

4    material fact, and therefore are not entitled to summary judgment.  Accordingly, the motion

5    should be denied.

6    **I.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

7          Summary judgment may only be entered if there is no genuine dispute as to any material

8    fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Because

9    summary judgment is a "drastic device," cutting off a party's right to present its case to a jury,

10   the moving party bears a "heavy burden" of demonstrating the absence of any triable issue of

11   material fact.  *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d

12   Cir. 1999); *see also Real v. Driscoll Strawberry Associates*, 603 F.2d 748, 753 (9th Cir. 1979).

13   In determining whether summary judgment should be granted, the facts and inferences must be

14   viewed in the light most favorable to the nonmoving party.  *Driscoll*, 603 F.3d at 753.

15   **II.   TRIABLE ISSUES OF MATERIAL FACT EXIST FOR THE CLAIMS ARISING
         UNDER FIVE STATES' CONSUMER PROTECTION STATUTES**
16

17         Defendants seek summary judgment on Plaintiffs' consumer protection claims arising

18   under the laws of New Mexico, New York, Vermont, Rhode Island, and Missouri.  Because

19   Defendants fail to meet their burden as the party seeking summary judgment, the motion should

20   be denied.

21         **A.    New Mexico**

22         Defendants incorrectly argue that no jury could reasonably find a "gross disparity" exists

23   between the price class members paid for LCD Products and the value received and that,

24   therefore, Plaintiffs' claim under the New Mexico Unfair Practices Act ("NMUPA") fails.

25   Defs' Mot. at 3-4.  This argument not only ignores the evidence, but also misconstrues the statute

26   and case law.

27

28

The NMUPA prohibits "unconscionable trade practices" that either: (i) take advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (ii) result in a gross disparity between the value received by a person and the price paid." N.M. Stat. § 57-12-2(E). The NMUPA "is primarily remedial in nature, and courts construe its provisions broadly to facilitate this purpose." *In re Chocolate Antitrust Litig.*, 602 F. Supp. 2d 538, 585 (M.D. Pa. 2009) ("*Chocolate*") (citing *State ex rel. Stratton v. Gurley Motor Co.*, 105 N.M. 803, 737 (N.M. 1987)). In price-fixing actions under the NMUPA in particular, there is "a compelling trend favorable to consumer protection claims…." *Chocolate*, 602 F. Supp. 2d at 585 n.60 (citing, *inter alia*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1109 (N.D. Cal. 2007) ("*DRAM I*")).

A reasonable jury could find Defendants' conduct unconscionable under the first prong of the NMUPA because they took advantage of the relative lack of sophistication of consumers and their own dominant power in the LCD industry. The facts demonstrate that consumers' lack of knowledge of how the panel prices were artificially inflated by Defendants was essential to success of the decade-long conspiracy, during which time millions of consumers paid supra-competitive prices for LCD televisions, computer monitors and laptops. *See, e.g.*, Thomas Clark (New Mexico Plaintiff) Depo. Tr. at 48:5-14; 83:1-11; 90:12-19; 98:19-24 (attached as Exhibit 18 to Declaration of Patrick B. Clayton ("Clayton Decl.")); Marcia Weingarten (New Mexico Plaintiff) Depo. Tr. at 61:1-11; 97:18-98:1 (Clayton Decl. Ex. 19). Thus, summary judgment should be denied.[1]

Plaintiffs also prevail under the second prong of the NMUPA. Conservative overcharge estimates by Plaintiffs' experts, Drs. Netz and Comanor, show that class members on average

---

[1]    *See In re Pharm. Indus. Average Wholesale Price Litig.*, 738 F. Supp. 2d 227, 239 (D. Mass. 2010) ("lack of knowledge [regarding how the prices for their drugs were being determined and fabricated] was an essential aspect of its scheme to market its drugs to doctors on the basis of their profitability. In so doing, J&J exploited sick patients' ignorance not only to inflate the price of its drugs to higher levels, but also to alter doctors' medical recommendations. A reasonable jury could find this conduct unconscionable.").

paid at least 8.9% (Comanor Supp. Report at 3; Berger Decl. Ex. A) or 12.1% (Netz Decl.)[2] more than they would have but for the price-fixing conspiracy. A reasonable jury could very well find that this constitutes a "gross disparity". *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 196 (D. Me. 2004) ("*NMV*") (finding allegations plaintiffs paid 10 to 30 percent more for new motor vehicles in the United States than in Canada sufficient to satisfy the NMUPA's "gross disparity" requirement); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 U.S. Dist. LEXIS 104114, *37 (N.D. Ill. Nov. 5, 2009) ("In the instant case plaintiffs plead that they paid 'supra-competitive' prices for the filters they received."); *Chocolate*, 602 F. Supp. 2d at 585 n.60 (finding allegations that consumers paid more than they would have absent the conspiracy sufficient under the NMUPA).

The cases cited by Defendants do not involve price-fixing conspiracies and, contrary to Defendants' assertion, do not set forth any bright-line rule of what difference between value received and price paid constitutes a "gross disparity." Defs' Mot. at 4. In *Taylor v. United Management, Inc.*, 51 F. Supp. 2d 1212, 1217 (D.N.M. 1999), the court compared the $4600 paid to the defendant and the $4000 value received by the plaintiff when she traded in a car and concluded that a $600 profit was not excessive. Defendants' logical leap that *Taylor* somehow creates a bright-line rule that overcharges in a price-fixing conspiracy must exceed 15 percent (based upon their comparison of value received and the defendant's profit in *Taylor*) is unfounded. Here, the secret overcharge was in addition to Defendants' reasonable profits.[3]

### B. New York

Defendants contend that they are entitled to summary judgment on Plaintiffs' claim under New York's General Business Law § 349 on the grounds that Plaintiffs have failed to show that

---

[2] Netz Decl. in Support of IPPs' Opp. to Defs' Joint Mot. for Summ. J. on Plaintiff Luber's Claims (Dkt. #3172-1, at 2).

[3] *Wyatt v. Petrila*, 752 S.W. 2d 683, 686 (Tex. App. 1988), involved the sale of an "as is" home under Texas law, and is not a NMUPA case. *Ramirez-Eames v. Hover*, 775 P.2d 722 (N.M. 1989), addressed claims arising from a residential rental agreement, which bear no resemblance to consumer price-fixing claims under the NMUPA.

Defendant committed material deceptive conduct.  This Court rejected an almost identical

argument in denying Defendants' motion to dismiss the GBL § 349 claim:

> [T]he complaint alleges a price-fixing scheme that resulted in New York consumers
> paying inflated prices for LCD panels and products, and that defendants took efforts
> to conceal their agreements from the New York plaintiffs and the indirect class. The
> Court finds that these allegations are similar to those that Judge Hamilton found
> sufficient in *DRAM II*, 536 F.Supp.2d at 1143-44, and for the same reasons set forth
> in that order, the Court DENIES defendants' motion. *See id.* at 1143. ("[P]laintiffs
> need only allege-and ultimately show-that defendants' acts or practices have a
> broader impact on consumers at large.")

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F.Supp.2d 1109, 1128 (N.D. Cal. 2008).[4]

Defendants' current argument – that price-fixing is not materially deceptive conduct under GBL

§ 349 – is the same argument that this Court has already rejected, and which, likewise, Judge

Wilken rejected in *SRAM*, and Judge Hamilton rejected in *DRAM II*.[5]

 Defendants' claim that they are entitled to summary judgment on this issue based on

"evidence developed during discovery" also rings hollow.  First, Plaintiffs' testimony that they

did not observe Defendants' affirmative misrepresentations is of no moment.  As this Court has

already recognized, Defendants price-fixing scheme was materially deceptive not because of

affirmative misrepresentations but because "defendants took efforts to conceal their agreements

from the New York plaintiffs and the indirect class."  *TFT-LCD*, 586 F.Supp.2d at 1128.[6]

---

[4]      *See also In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1030
(N.D. Cal. 2007); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. M:07-cv-
01819 CW, 2008 WL 2610549, *2 (N.D. Cal. June 27, 2008);  *DRAM I*, 516 F. Supp. 2d at
1113-14 ("a claim under New York's General Business Law § 349 may be predicated on
allegations of antitrust violations.").

[5]      Defendants' prior motion to dismiss the GBL § 349 claim was not limited to the issue of
whether Defendants' conduct was "consumer-oriented," as Defendants now suggest.  To the
contrary, Defendants unsuccessfully sought dismissal on the grounds that the allegations of
concealed price-fixing "did not allege 'deceptive conduct' within the meaning of these statutes"
including GBL § 349.  *See* Dkt. # 469 at 26:4-5.  Defendants' current argument – that price-
fixing is not materially deceptive conduct under GBL § 349 – is precisely the same argument.

[6]      The discovery responses and deposition testimony from the New York Plaintiffs cited by
Defendants refer only to Defendants' affirmative misrepresentations and do not address their
material omissions and concealment of the price-fixing conspiracy.  Plaintiffs' deposition

Second, Defendants conflate with reliance by arguing that they are entitled to summary judgment unless Plaintiffs relied upon Defendants' misrepresentations. That argument fails because "reliance is not an element of a section 349 claim." *Stutman v. Chem. Bank*, 95 N.Y. 2d 24, 30 (2000); *see also Ellis v. Cohen & Slamowitz LLP*, 701 F. Supp. 2d 215, 224 (N.D.N.Y. 2010).

Materiality under GBL § 349 is judged by the objective standard of whether the conduct was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (N.Y. 1995). "The standard for obtaining summary judgment on materiality claims is extraordinarily high....It is a question normally reserved for the trier of fact." *In re MetLife Demutualization Litig.*, 624 F. Supp. 2d 232, 263 (E.D.N.Y. 2009). Only if the established omissions are so obviously important or unimportant to a reasonable person "that reasonable minds cannot differ on the question of materiality is the ultimate issue of materiality appropriately resolved as a matter of law by summary judgment." *Id*. (internal citations omitted); *see also Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 885 (9th Cir. 2008).

Defendants' reliance on *Gale v. I.B.M. Corp.*, 781 N.Y.S.2d 45 (N.Y. 2004) and *In re Hydroxycut Marketing & Sales Practices Litig.*, No. 09MD2087-BTM (AJB), 2010 WL 2839480 (S.D. Cal June 20, 2010), is misplaced, as both of these cases addressed causation rather than materiality. Here, Plaintiffs' evidence demonstrates Defendants' deceptive price-fixing caused injury to the New York Plaintiffs as the result of the inflated prices they paid. Evidence of Defendants' concealment of the price-fixing conspiracy is also causally linked to the injury because if the price-fixing were not concealed, supra-competitive prices could not have been charged. *See* Clayton Decl. Exs. 1 – 12 (sampling of Defendants' documents and deposition testimony reflecting some of the efforts undertaken to conceal the fact of their anticompetitive

testimony about the importance of price in their purchasing decisions supports the materiality of Defendants' deceptive concealment of their price-fixing conspiracy. *See* Tom DiMatteo (New York Plaintiff) Depo. Tr. at 62:17-63:15; 64:2-20 (Clayton Decl. Ex. 20); Chris Ferencsik (New York Plaintiff) Depo Tr. at 68:6-69:3 (Clayton Ex. 26).

conduct); Exs. 13 – 17 (collecting a sample of documents and deposition testimony showing Defendants' awareness of the impact of their anticompetitive conduct on pricing of LCD products).  *See also Stutman*, 95 N.Y.2d at 30 (causation does not require reliance).

Thus, the New York cases that have addressed the issue have consistently recognized the inherently deceptive and injurious nature of price-fixing conspiracies in holding that concealment of a price-fixing conspiracy is materially deceptive under the objective standard of GBL § 349.  *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 148 (N.Y. 2004); *New York v. Feldman*, 210 F. Supp. 2d 294, 300-01 (S.D.N.Y. 2002) (collusive activity under section 2 of the Sherman Act qualifies as deceptive activity under § 349); *New York Jets LLC v. Cablevision Sys. Corp.*, No. 05 Civ. 2875 (HB), 2005 WL 2649330, *11 (S.D.N.Y. Oct. 17, 2005) (anticompetitive conduct violating section 2 qualifies as deceptive business practice under New York consumer protection statute).

Defendants remaining citations are distinguishable. In *Leider v. Ralfe*, 387 F. Supp. 2d 283 (S.D.N.Y. 2005), the court recognized that price-fixing constitutes material deceptive conduct under *Cox* and *Feldman* but distinguished the monopolistic conduct of the DeBeers diamond cartel as "not secretive" because "De Beers' monopolistic practices were public knowledge."  *Id*. at 296.  *NMV* is inapposite for the same reason.  There, the conspiracy and the price differential caused by the group boycott were not "hidden from, or unknown to, consumers."  350 F. Supp. 2d at 176.  In stark contrast to *Leider* and *NMV*, this case involves deceptive concealment under GBL § 349 because "defendants took efforts to conceal their [price-fixing] agreements from the New York plaintiffs."  *TFT-LCD*, 586 F. Supp. 2d at 1128.[7]

---

[7]    *In re Automotive Refinishing Paint Antitrust Litig.*, 515 F.Supp.2d 544 (E.D. Pa. 2007), which Defendants also cite, recognized that a price-fixing scheme is deceptive under the GBL where it involves "secret agreements ... to inhibit competition" as in *Cox* or secret bidding sessions prior to public auctions at which the defendants agreed to "skew prices and deprive the public of a competitive marketplace" as in *Feldman*. *Id*. at 554-559.  The secretive Crystal meetings and concealment of the conspiracy in this case are like the deceptive conduct in *Cox* and *Feldman* and render *Automotive Refinishing* inapposite.

6

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW – CASE NO. 3:07-MD-1827 SI

### C. Vermont

The Vermont Consumer Fraud Act ("VCFA") prohibits unfair methods of competition and unfair or deceptive acts or practices. Vt. Stat. tit. 9, § 2451. The VCFA is "remedial in nature" and therefore "is to be liberally construed to protect the public and encourage fair and honest competition." *Wright v. Honeywell*, 989 A.2d 539, 543 (Vt. 2009).

Defendants do not challenge Plaintiffs' claims under the unfair competition prong. Instead, their argument focuses on reliance – incorrectly contending that Plaintiffs must show that "(i) any alleged omission was material to their decisions to purchase; (ii) they relied on the alleged omission; or (iii) they were injured by any such reliance." Defs' Mot. at 8. In fact, the VCFA imposes no actual reliance requirement. Instead, a VCFA claimant need only show that: (1) there was a representation, practice, or omission likely to mislead the consumer; (2) the consumer interpreted the message reasonably under the circumstances; and (3) the misleading effects were "material, that is, likely to affect the consumer's conduct or decision with regard to a product . . . We evaluate these elements under an objective standard." *Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, No. 10-103, 2011 WL 1347032, ¶ 32 (Vt. Apr. 7, 2011).[8] *See also Jordan v. Nissan N. Am., Inc.*, 176 Vt. 465, 468 (2004).

Here, a jury could reasonably conclude that evidence of secret meetings, concealment of the conspiracy and the impact the conspiracy had on pricing had the capacity or tendency to deceive. *See* Clayton Decl. Exs. 1 – 17. A jury could also find that a reasonable consumer would conclude that the price of the an LCD product was the result of a competitive market, not an illegal price-fixing cartel, and that the existence of an illegal price-fixing conspiracy that resulted in inflated prices for the LCD products was information that a reasonable purchaser would find important when purchasing an LCD product. *See* Robert S. Watson (Vermont

---

[8] *Lang* involved a dispute arising from a commission split in the sale of a business. Applying the reasonable person standard, the court found that there was no evidence that the commission split affected the price for which the business was sold or that plaintiffs suffered damage. Thus, the alleged misrepresentation was not material to a reasonable consumer. *Lang*, 2011 WL 1347032 ¶ 35.

Plaintiff) Depo. Tr. at 71:4-17("Q: Okay. So did you consider this be to be a fair price for the laptop at the time that you purchased it? A. At the time, yes. Q. And do you believe that it was -- it's a fair price now? A. No. Q. And why do you not believe it's a fair price? A. I believe I paid too much. Q. And how did you pay too much? A. The price was raised above what it should have been by the price fixing."); 99:1-97:25 ("A. Did I take any steps to? Q. To discover whether there was a conspiracy regarding LCD panels. A. I was unable to, because it was covered up… how am I to discover a conspiracy that's covered up…I stayed current with…computer prices and so forth, but I'm not able to discover something that's covered up….") (Clayton Decl. Ex. 21).

Defendants' reliance on *Wright v. Honeywell Int'l*, No. 201-11-04, 2008 WL 7541741 (Vt. Super. May 15, 2008), *rev'd on other grounds*, 989 A. 2d 539 (Vt. 2009) is misplaced. Not only is that case not binding, but *Wright* weighs against granting summary judgment here. The dicta Defendants cite was in the context of the court's analysis of whether a showing of damages was required under the VCFA. Ultimately, the court concluded that while allegations of monopolistic pricing alone were insufficient to show injury, summary judgment must be denied because plaintiff's evidence, including expert testimony, raised issues of material fact as to whether and by how much he was injured by the inflated prices. Similarly unpersuasive is Defendants' reliance on *In re Microsoft Antitrust Litig.*, 261 F. Supp. 2d 366, 367-68 (D. Md. 2003). As in *Wright*, the *Microsoft* court was concerned with damages, rejecting an argument that any "distortion of consumer choice" would entitle consumers to recover all consideration paid. By contrast, here, Plaintiffs present expert opinion regarding actual damages that raise material issues of disputed fact. *See* Netz Decl. (Dkt. # 3172-1); Comanor Supp. Report (Berger Decl. Ex. A).

### D. Rhode Island

#### 1. Plaintiffs' Claims Are Subject To The Statute

The Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13-1, et seq. ("UTPCPA"), provides that "[u]nfair methods of competition and unfair or

deceptive acts or practices means any one or more" of the 20 prohibited practices. *TFT-LCD*, 586 F. Supp. 2d at 1129 (citing R.I. Gen. Laws § 6-13.1-1, *et seq.*). To determine whether a practice is "unfair" under the UTPCPA, courts consider whether it (1) affronts public policy, as delineated by the common law, statutes and other established concepts of fairness; (2) is immoral, unethical oppressive or unscrupulous; and (3) causes substantial injury to consumers. *Chocolate*, 602 F. Supp. 2d at 585 (quoting *Ames v. Oceanside Welding & Towing*, 767 A.2d 677, 681 (R.I. 2001)). As this Court has found, "[t]hese factors encompass price fixing injuries, and consumers subject to collusive pricing possess a cognizable claim under the RIUTPCPA." *TFT-LCD*, 586 F.Supp.2d at 1129-30.

Despite this, Defendants now argue that Plaintiffs' claims fall outside the reach of the UTPCPA based upon the statute's exemption of claims brought under laws expressly administered by "the department of business regulation of other regulatory body acting under statutory authority acting under statutory authority." Defs' Mot. at 10. Defendants' argument is unsupported. None of the cases Defendants cite are applicable in that each involved conduct that was governed by a statute specifically regulating an industry or product that was also subject to a regulatory agency charged with administering those statutes.[9]

---

[9]     In *NMV*, 350 F. Supp. 2d at 201-02, the court found that that claims relating to an alleged conspiracy to prevent less expensive vehicles from Canada from entering the U.S. market were expressly governed by a separate statute: the "Regulation of Business Practices Among Motor Vehicle Manufacturers, Distributors, and Dealers." *Id.* (citing R.I. Gen. Laws §§ 31-5.1-1 to -21). Because the Rhode Island Department of Administration was specifically charged with enforcing that statue, the claims fell within the UTPCA's exemption.

Similarly, *Lynch v. Conley*, 853 A.2d 1212 (R.I. 2004), involved an action by the state Attorney General against a landowner based on defendant's sale of property without disclosing the existence of lead paint contamination in violation of the Rhode Island Lead Poisoning Prevention Act and Rhode Island Department of Health Rules and Regulations for Lead Poisoning Prevention. The action was exempt from the UTPCA because the "entire [lead paint] scheme is under the aegis of the Department of Health…." *Id.* at 1214.

In *State v. Piedmont Funding Corp.*, 382 A.2d 819, 822 (R.I. 1978), the court found that the sale of insurance policies and securities was a licensed activity specifically regulated by the state Department of Business Regulation and the Securities & Exchange Commission under

Here, there is no regulatory body charged with regulating the sale of LCD products. The fact that law enforcement agencies such as the United States Department of Justice or the State Attorney General also have the ability to bring an action under the federal antitrust laws does not transform them into regulatory agencies. Indeed, *Lynch v. Conley*, 853 A.2d 1212 (R.I. 2004), stands for the proposition that lawsuits brought by governmental enforcement agencies are equally subject to exemption where a regulatory administrative scheme governs the specific conduct and industry. Equally unpersuasive is Defendants' reference to the Federal Trade Commission ("FTC") – there is no statutory scheme specifically governing the sale of LCD products over which the FTC has been given regulatory authority and, therefore, no exemption applies.

### 2. Defendants' "Materiality" Argument Is Unsupported

Despite overwhelming authority to the contrary, Defendants incorrectly argue that materiality is a required element of the UTPCPA and, further, that such materiality must be judged from the subjective standpoint of the named plaintiff. As a preliminary matter, Defendants' conduct violates multiple subsections of the UTPCPA, including but not limited to subsection (xiii), which prohibits "[e]ngaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding" and subsection (xii), which prohibits "[e]ngaging in any act or practice that is unfair or deceptive to the consumer," neither of which mentions any requirement of materiality. R.I. Gen. Laws § 6-13.1-1(6)(xii), (xiii). While subsection (xiv) prohibits "methods, acts or practices, which mislead or deceive members of the

---

statutes that specifically governed such sales and that, therefore, the exemption applied. *Id.* (citing G.L. 1956 §§ 27-29-4, 7-11-501).

*Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666, 672 (R.I. 2004), involved claims against a national bank, regulated by the Office of the Comptroller of the Currency ("OCC"), regarding credit card solicitations. *Siena v. Microsoft Corp.*, 796 A.2d 461, 464-65 (R.I. 2002) is also inapplicable. There, indirect purchase plaintiffs brought claims under the state's Antitrust Act, which limits standing to direct purchasers or the Attorney General as *parens patriae*. Here, plaintiffs' claims are brought under the UTPCPA exclusively.

public in a material respect", *id*. § 6-13.1-1(6)(xiv), Defendants cite no authority for their position that Plaintiffs must demonstrate that the omitted information was a "significant factor" in the Rhode Island Plaintiff's LCD product purchase to prevail. Defs' Mot. at 11. To the contrary, this Court has repeatedly held that an objective standard applies. *TFT- LCD*, 586 F. Supp. 2d at 1109; *SRAM*, 2008 WL 2610549 at *4 (holding that the UTPCPA applies if consumers were misled to believe they were paying a fair price for SRAM or that SRAM price increases were for valid business reasons); *DRAM II*, 536 F. Supp. 2d at 1145.

Here, a jury could reasonably conclude that Defendants' price-fixing activities and concealment thereof were likely to confuse consumers. *See* Clayton Decl. Exs. 1 – 17; *see also Chocolate*, 602 F. Supp. 2d. at 587 (holding that allegations that defendants secretly conspired to fix prices and caused consumers to believe the prices were the result of fair competition were sufficient to state a claim under the UTPCPA).

### 3. Plaintiffs Purchased LCD Products For Personal, Family, or Household Use

Citing no authority, Defendants next argue that Plaintiffs' UTPCPA claim fails because the class may include individuals who did not purchase the LCD panels for "personal, family, or household purposes." Defs' Mot. at 12. However, the evidence shows that that the named Plaintiff did purchase the LCD products for personal, family or household purposes. *See* Robert Mastronardi (Rhode Island Plaintiff) Depo. Tr. at 22:3-5 ("Q: And was the purpose of this computer to replace the office computer? A. This was personal.") (Clayton Decl. Ex. 22). Nothing more is required. Any unnamed Rhode Island class members who may not be entitled to recover because they did not purchase for personal, family or household purposes can be screened out during the claims process.

### E. Missouri

Defendants' argument that the Plaintiffs' claims under the Missouri Merchandizing Practice Act fail because the class definition may include purchasers who did not buy LCD products for "personal, family or household use" fails for the reasons set forth immediately

above. The Missouri Plaintiff testified that he purchased LCD products for household and primarily personal use. *See* Benjamin L. Luber (Missouri Plaintiff) Depo. Tr. at 52:21-24; 56:1-4 60:12-19; 70:5-20 (Clayton Decl. Ex. 23). Defendants are not entitled to summary judgment based on unfounded speculation that some Missouri residents may not meet the certified class definition.

## III. SUMMARY JUDGMENT SHOULD BE DENIED ON THE UNJUST ENRICHMENT CLAIMS

Defendants' motion for summary judgment on Plaintiffs' unjust enrichment claims under the laws of thirteen states[10] and the District of Columbia finds no support in the facts or law. Accordingly, the motion should be denied.

### A. Unjust Enrichment Does Not Require a Direct Benefit

In denying Defendants' motion to dismiss the unjust enrichment claim under Michigan law, this Court rejected the same direct benefit argument that Defendants repeat here:

> [A] party can bring an unjust enrichment claim against a defendant even in the absence of privity or a contract between the parties. *In re Cardizem* is the most factually apposite. In that antitrust case, the indirect purchaser plaintiffs "alleged that they conferred a benefit, in the form of overpayments and increased profits, on Defendants, that Defendants accepted that benefit and that it would be unjust under the alleged circumstances for Defendants to retain that benefit." 105 F.Supp.2d at 671. The court rejected the defendants' "narrow" argument that a direct benefit was required under Michigan law. "Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct." *Id.* Here, plaintiffs' allegations are similar to those alleged in *In re Cardizem*. The Court finds that plaintiffs have stated a claim for unjust enrichment under Michigan law, and DENIES defendants' motion to dismiss this claim."

*TFT-LCD*, 599 F. Supp. 2d 1179, 1189-90 (N.D. Cal. 2009).

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000), addressed unjust enrichment claims under Alabama, California, District of Columbia, Illinois, Michigan, Minnesota, New York, North Carolina, Tennessee and Wisconsin law but its reasoning applies to

---

[10] Hawaii, Iowa, Kansas, Maine, Mississippi, Missouri, New Mexico, New York, Rhode Island, South Dakota, Vermont, West Virginia, and Wisconsin.

all the states where Defendants argue that a direct benefit is required.  Indeed, *Cardizem* has been followed in numerous indirect purchaser antitrust cases.  *See, e.g.*, *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline*, 737 F. Supp. 2d 380, 428 (E.D. Pa. 2010) ("Many courts in addition to this one have ruled that a direct relationship between an antitrust plaintiff and defendant is not necessary to assert an unjust enrichment claim."); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) ("Defendants' related argument that an unjust enrichment claim requires an allegation that Plaintiffs dealt directly with Defendants, is also without merit.").  In fact, one court has noted, in *Benefit Trust Life Insurance Co. v. Union National Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985), that "**the essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties.**" (emphasis added).

As demonstrated below, Defendants' narrow construction of unjust enrichment law as requiring a direct benefit is not supported by the case law.  Here, as in *Cardizem* and it progeny, Plaintiffs' detriment in overpaying for LCD products and the benefit Defendant received therefrom are "related and flow from the challenged conduct."  *TFT-LCD*, 599 F. Supp. 2d at 1190 (quoting *Cardizem*, 105 F. Supp. 2d at 671).  No direct relationship between Plaintiffs and Defendants is necessary for the unjust enrichment claims.  The undisputed facts show that Plaintiffs conferred a benefit on Defendants by purchasing products containing TFT-LCD panels manufactured by Defendants.  *See* Clayton Decl. Exs. 24 & 25 (supplemental interrogatory responses detailing Plaintiffs' purchases).  The evidence further shows that the prices paid by the Plaintiffs for the products containing TFT-LCD panels were higher than they would have been but for the Defendants' illegal price-fixing conspiracy, and that Defendants were aware that their conspiracy resulted in higher prices for products containing TFT-LCD panels sold in the United States.  Netz Decl. (Dkt. # 3172-1) at 2; Comanor Supp. Report (Berger Decl. Ex. A); Clayton Decl. Exs. 13 – 17.  Therefore, Plaintiffs may seek restitution under the laws of unjust enrichment.   Accordingly, Defendants' motion must be denied.

### 1.    Mississippi

Like Michigan unjust enrichment law, there is also no Mississippi authority requiring a

direct benefit. Defendants reliance on *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d

331 (Miss. 2004) is misplaced. That decision affirmed dismissal of an action alleging that a

tobacco company was unjustly enriched by an asbestos manufacturer because cigarettes

allegedly contributed to lung disease in individuals to whom the asbestos manufacturer provided

compensation. Payment of compensation to asbestos victims provided no monetary benefit,

direct or otherwise to the tobacco company. *Owens Corning*, however, does not support

Defendants' assertion that Mississippi requires a direct relationship between the parties:

> Mississippi law provides that, in an action for unjust enrichment, the plaintiff need
> only allege and show that the defendant holds money which in equity and good
> conscience belongs to the plaintiff.

868 So.2d at 342 (quoting *Fordice Construction Company v. Central States Dredging Company*,

631 F.Supp. 1536, 1538-39 (S.D. Miss. 1986)); *see also Ovella v. B & C Const. and Equip.,*

*LLC,* No. 1:10CV285 LG-RHW, 2011 WL 2912865 (S.D. Miss. July 18, 2011).

    *Fordice Construction Company*, quoted by *Owens Corning*, held that an unsuccessful

bidder could assert an unjust enrichment claim against the winning bidder whose bid violated the

Small Business Act, although the benefit the successful bidder obtained came indirectly from the

government not from the plaintiff. 631 F.Supp. at 1539.[11] Accordingly, Defendants' direct

benefit argument has no merit under Mississippi law.

## 2. New York

    Defendants' argument that the New York Plaintiffs have no claim for unjust enrichment

because they had no direct relationship with Defendants also fails. As recently held in *Burns v.*

*Delaware Charter Guarantee & Trust Co.*, No. 10 Civ. 4534, 2011 WL 2314835, *11 (S.D.N.Y.

---

[11]    *Owens* did not disagree with *Fordice*'s holding that no direct benefit is required under
Mississippi unjust enrichment law but instead found that *Fordice* did not apply because plaintiff
could not "prove that Tobacco Defendants were liable for injuries suffered by the asbestos
claimants, for which the claimants have been compensated by Owens Corning." 868 So. 2d at
342. The part of the *Owens* opinion Defendants cite addresses the test for proximate causation.
*See id*. at 339. Here, the causal link between the overcharges paid by Plaintiffs and Defendants'
monetary unjust enrichment is beyond dispute, because the overcharges to Plaintiffs flowed from
Defendants' price-fixing.

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL
SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW – CASE NO. 3:07-MD-1827 SI

June 8, 2011):  "[u]njust enrichment does not require a direct relationship between the parties."

The court in *Chocolate* reached the same conclusion in an indirect purchaser antitrust case:

> Defendants argue that the IEU plaintiffs' equitable claim warrants dismissal because the second amended complaint does not allege "direct dealings" or "an actual, substantive relationship" between defendants and the IEU plaintiffs.  (*See* Doc. 671–3 at 33.)  Such allegations are simply not required by New York law.  The IEU plaintiffs have averred that a monetary benefit was indirectly conferred on defendants by virtue of their collusive market behavior.  These allegations—construed in the light most favorable to the complainants—characterize defendants as indirect recipients of a benefit which they otherwise would have been without; this is sufficient to state a claim for equitable relief under New York law.

749 F.Supp.2d at 241.

 *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (2004), also an indirect purchaser antitrust case, held that "plaintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment[.]" *See also Bildstein v. MasterCard Int'l, Inc.*, No. 03-CV-9826I, 2005 WL 1324972, *5 (S.D.N.Y. June 7, 2005); *Connelly Containers, Inc. v. Bernard*, 717 F. Supp. 202, 210 (S.D.N.Y. 1989) ("It is not necessary in order for plaintiff to prevail, to show that it paid the money, which it seeks to recover, directly to the buyer.").

 *State ex rel. Spitzer v. Daicel Chemical Industries, Ltd.*, 840 N.Y.S.2d 8 (2007) and *Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007) do not support Defendants' argument. In *Daicel*, the court acknowledged that "privity is not required for an unjust enrichment claim" but dismissed a claim alleging unjust enrichment from the sale of a chemical additive used to process food products as too attenuated from injuries alleged by purchasers of the food products. 840 N.Y.S.2d at 12.  Similarly, in *Sperry*, the court held that the connection between automobile purchasers  and the producers of chemicals used in the process of making the rubber used in the tires was too attenuated to support an unjust enrichment claim.  863 N.E.2d at 1018.  Here, the relationship between Defendants' price-fixing and the overcharges to Plaintiffs, however, is not attenuated.  This Court has already rejected a very similar argument in this case that "any potential harm to indirect plaintiffs is too attenuated" in holding that plaintiffs had, indeed, alleged antitrust standing.  *TFT-LCD*, 586 F. Supp. 2d at 1120.

1   Unlike the chemical used to process one of the ingredients of the tires in *Sperry*, LCD

2   panels are "identifiable, discrete physical objects that do not change form or become an

3   indistinguishable part of the TVs, computer monitors, laptops, or other products in which they

4   are contained," *Id*. at 1123.  Moreover, LCD panels account for up to 70% of the cost of an LCD

5   television or computer monitor and are traceable in prices of LCD products.  *Id*. at 1124.  Thus,

6   Defendants' argument that plaintiffs' injury is too attenuated to support an unjust enrichment

7   claim under New York law fails for the same reasons as its earlier argument against antitrust

8   standing.

9           **3.      Maine**

10          Defendants also fail to cite any authority supporting their argument that Maine unjust

11   enrichment law precludes recovery by purchasers who do not purchase directly from the

12   wrongdoers.  Defendants' reliance on *Platz Associates v. Finley*, 973 A.2d 743 (Me. 2009) and

13   *Rivers v. Amato*, No. CIV. A. CV-00-131, 2001 WL 1736498 (Me. Super. June 22, 2001) is

14   misplaced.  In *Platz*, the plaintiff alleged that he conferred a benefit by providing defendant with

15   architectural plans, but failed to show that defendant "actually received and retained the

16   architectural plans, and thus fail to demonstrate the central element of unjust enrichment, a

17   benefit conferred."  973 A.2d at 751.[12]  *Rivers* was a non-authoritative trial court order in a case

18   which rejected an unjust enrichment claim because it was speculative whether plaintiff conferred

19   any benefit on defendant, and defendant was not aware of any benefit conferred on him by

20   plaintiff.  2001 WL 1736498 at *4.  Nothing in *Platz*, *Rivers*, or any other Maine decision

21   supports Defendants' argument that unjust enrichment requires privity.  Accordingly,

22   Defendants' direct benefit argument has no merit under Maine law.

23

24

25  [12]     *Platz* was distinguished in *Combined Energies v. CCI, Inc.*, 628 F. Supp. 2d 226, 234-35
26  (D. Me. 2009), which held that unjust enrichment did not require a voluntarily conferred benefit
    and denied summary judgment on an unjust enrichment claim arising from defendants hiring of
27  plaintiffs' employees, although no direct benefit was conferred.

28

### 4.      Rhode Island

The two Rhode Island cases Defendants cite do not support their argument that unjust enrichment requires direct dealings between Plaintiffs and Defendants.  In *Alessi v. Bowen Court Condominium*, No. 03-0235, 2010 R.I. Super. LEXIS 50 at *4 (Mar. 10, 2010), the court upheld an unjust enrichment claim based on an indirect benefit to defendant and identified the elements of an unjust enrichment claim as follows:

> (1) that the plaintiff conferred a benefit upon the defendant, (2) that the defendant appreciated such benefit, and (3) that there was acceptance of such benefit in circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof.

The *Alessi* court held that defendant was liable for unjust enrichment as the result of the plaintiff's mistaken payment of property taxes, even though the plaintiff paid the property taxes to the municipality, not to defendant and the benefit to the defendant was indirect.  *Id*. at *6-12. The court found no unjust enrichment from plaintiff's payment of the purchase price for the property, because that payment conferred no benefit on defendant at all.  *Id*. at *13.

*R & B Electric. Co., Inc. v. Amco Construction Co., Inc.*, 471 A.2d 1351 (R.I. 1984) also held that an unjust enrichment claim requires only that "a benefit must be conferred upon the defendant by the plaintiff" not that a direct benefit be conferred.  *Id*. at 1355.  The court found that the plaintiff had no unjust enrichment claim against the owners of the defunct construction company because they retained no benefit since the property was lost in foreclosure.  "It cannot therefore be said that defendants have retained any benefit conferred upon them by R & B." *Id*. at 1356.  Unlike *Alessi* and *R&B Electric*, Plaintiffs here conferred a benefit on Defendants. Thus, both cases cited by Defendants are contrary to Defendants' argument that Rhode Island unjust enrichment law requires a direct benefit.

### 5.      District of Columbia

Unjust enrichment under District of Columbia law is "founded on the principle that no one ought unjustly to enrich himself at the expense of another, and the gist of the action is that

17

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW – CASE NO. 3:07-MD-1827 SI

the defendant has received money which in equity and good conscience should be paid to the plaintiff." *Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68, 186 (D.D.C. 2006).

Defendants rely on dicta in *True v. Conagra Foods, Inc.*, No. 07-00770-CV-W-DW, 2011 WL 176037 (W.D. Mo. Jan. 4, 2011) stating that "at least 11 states and the District of Columbia impose a 'direct benefit' requirement." Courts in the District of Columbia do not agree. In *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 51 (D.D.C. 2003), the court refused to dismiss a claim for unjust enrichment brought by a group of plaintiffs against drug manufacturers for payments made to reimburse subscribers for prescriptions. The court held that the theory of unjust enrichment could apply to indirect payments because plaintiffs had properly alleged defendants' enrichment to the plaintiffs' own detriment. *Id.*

More recently, in *United States v. Honeywell Int'l Inc.*, No. 08-961 (RWR), 2011 WL 2672624 at *9 (D.D.C. July 8, 2011) the court refused to dismiss a claim for unjust enrichment where the government alleged that "Honeywell 'received money, ... indirectly, to which they were not entitled.'" Plaintiffs here, like the government in *Honeywell* and the plaintiffs in *Lorazepam*, paid more for LCD products due to Defendants' illegal price-fixing conspiracy, and, as a result, Defendants received money to which they were not entitled.

**6.    Kansas**

A claim for unjust enrichment under Kansas state law requires: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *J.W. Thompson Co. v. Welles Prods. Corp.*, 758 P.2d 738, 745 (Kan. 1988).

Kansas courts specifically have held that a claim for unjust enrichment may be based on a benefit conferred indirectly.

> Defendants argue that plaintiffs do not state a claim for unjust enrichment because they do not allege that they made a purchase directly from defendants, and therefore do not allege that they conferred a benefit upon defendants. A claim for unjust enrichment under Kansas law, however, does not depend on privity. [citations omitted]. Because a benefit may be conferred indirectly, the Court cannot conclude

that plaintiffs did not confer a benefit on defendants when they purchased defendants' beverage products through local retailers.

*Gonzales v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1249 (D. Kan. 2007).  *See also In re K-Dur Antitrust Litig.*, No. 01-1652 (JAG), 2008 WL 2660781 (D.N.J. Mar. 4, 2008) (denying summary judgment on indirect purchaser claim for unjust enrichment under Kansas law).[13]

### 7.    West Virginia

Under West Virginia law, a claim of unjust enrichment requires a benefit conferred but does not require that the benefit be direct.   "A person may be unjustly enriched not only where he receives money or property, but also where he otherwise receives a benefit.  He receives a benefit ... where he is saved expense or loss." *Prudential Ins. Co. v. Couch*, 376 S.E.2d 104, 109 (W. Va. 1988).  In *Dunlap v. Hinkle*, 317 S.E.2d 508, 512 (W. Va. 1984), the court held that privity is not an element of a claim for unjust enrichment:

> Recovery of damages based upon the theories of quasi contract or unjust enrichment does not necessitate a finding of privity of contract between the parties.  *See generally Restatement (Second) of Contracts* § 4(b) (1981); 17 C.J.S. Contracts § 6 (Supp.1983). "Quasi contractual obligations are imposed by the law for the purpose of bringing about justice without reference to the intention of the parties." 1 W. Jaeger, Williston on Contracts § 3A (3d ed. Supp.1983).

None of the cases cited by Defendants support their argument.  In *Johnson v. Ross*, No. 10-1046, 2011 WL 1042246 at *4 (4th Cir. Mar. 23, 2010), the court specifically declined to decide whether  a West Virginia unjust enrichment claim required a direct benefit, because doing so was not necessary to the court's decision.  In *Hill v. Stowers*, 680 S.E.2d 66, 70 (W. Va. 2009), the court upheld the dismissal of the plaintiff's unjust enrichment claim on the ground that plaintiff conferred no benefit, not that the benefit was indirect.  Defendants' direct benefit argument therefore fails under West Virginia law as well.

---

[13]       *Spires v. Hospital Corp. of Am.*, 289 F. App'x 269 (10th Cir. 2008), which Defendants cite, is not on point.  *Spires* dismissed plaintiffs' claim for unjust enrichment on the ground that the plaintiffs failed to show a benefit conferred on the parent corporation HCA, and that "we were unable to find any Kansas cases discussing unjust enrichment against parent corporations in the context of veil-piercing."  Here, Plaintiffs' claims are not based on a veil-piercing theory.

### 8. Hawaii, Missouri, New Mexico, South Dakota and Wisconsin

Defendants contend incorrectly that there is no authority supporting Plaintiffs' claims for indirect unjust enrichment in Hawaii, New Mexico, South Dakota, and Wisconsin. In fact, there is authority clearly supporting Plaintiffs' claims for unjust enrichment in these states. Moreover, New Mexico and South Dakota courts rely on the Restatement of the Law of Restitution. Courts interpreting the Restatement allow unjust enrichment claims under facts similar to those here.

#### a. Hawaii

In *Durette v. Aloha Plastic Recycling Inc.*, 100 P.3d 60, 72 (Haw. 2004), the Hawaii Supreme Court reversed summary judgment on an unjust enrichment claim, explaining:

> Unjust enrichment, as a claim for relief, is not clearly defined in either the Hawai'i Revised Statutes or our jurisprudence … One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust. And it is axiomatic that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other. We realize unjust enrichment is a broad and imprecise term defying definition. But in deciding whether there should be restitution here, we are guided by the underlying conception of restitution, the prevention of injustice. [Citations omitted.]'"

Thus, under Hawaii law, unjust enrichment is a "broad" term and courts should be guided by the "underlying conception of restitution, the prevention of injustice." Here, the evidence shows that allowing Defendants to retain the benefit of their illegal price-fixing conspiracy would be unjust. *See* Clayton Decl. Exs. 13 – 17. Accordingly, summary judgment should also be denied on the Hawaii unjust enrichment claim.

#### b. Missouri

Under Missouri law, a claim for unjust enrichment lies "where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust." *Erslon v. Vee–Jay Cement Contracting Co.*, 728 S.W.2d 711, 713 (Mo. App. 1987). In *Garrett v. Cassity*, No. 4:09CV01252 ERW, 2011 WL 3235633 at *9 (E.D. Mo. July 28, 2011), the court, applying Missouri law, rejected the same argument Defendants make here:

> Likewise, there is no requirement for an unjust enrichment claim that the plaintiff conferred a benefit directly on the defendant; Title Partners states solely that the

enrichment must be "at the expense of the plaintiff,"…and that is the situation contemplated by Plaintiff's factual allegations.

The same analysis applies here.[14]  There is no dispute that Plaintiffs conferred a benefit on Defendants.  *See* Clayton Decl. Ex. 25 at 1:21 – 2:3 (Missouri Plaintiff's discovery response detailing LCD product purchase).

### c.     Wisconsin

Under Wisconsin law, a claim for unjust enrichment is "grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust."  *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67 (Wis. 1996).  At least one federal court applying Wisconsin law rejected the same argument Defendants make here:

> Likewise unpersuasive are Defendants' arguments that Plaintiff must allege, as an essential element of their unjust enrichment claims, facts showing that they directly conferred a benefit on both HMRI and Andrx and facts showing that privity exists between Plaintiffs and Defendants.  The decisions Defendants rely upon do not support the argument that either privity or a directly conferred benefit is an essential element of an unjust enrichment claim under the state common laws at issue here.

*Cardizem*, 105 F. Supp. 2d at 670.  Defendants fail to cite any case under Wisconsin law (or New Mexico or South Dakota, discussed below), holding that a direct benefit is a requirement of an unjust enrichment claim.

### d.     New Mexico and South Dakota Rely on the Restatement of the Law of Restitution Which Does Not Require a Direct Benefit

Courts interpreting New Mexico and South Dakota unjust enrichment laws rely on the Restatement of the Law of Restitution.  In *Ontiveros Insulation Co., Inc. v. Sanchez*, 3 P.3d 695, 698 (N.M. App. 2000), the court cited the Restatement of the Law of Restitution , in its analysis

---

[14]     Defendants' citation to *ACLU/E. Mo. Fund v. Miller*, 803 S.W.2d 592 (Mo. 1991) does not support a different result.  There, the court did not hold that a plaintiff must confer a direct benefit on the defendant.  Rather, the court dismissed the plaintiffs' claim because plaintiff "conferred no benefit on Miller."  *Id*. at 595.

that a claim for unjust enrichment under New Mexico law requires that: "(1) another has been

knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain

the benefit would be unjust."  *See also Hofeldt v. Mehling*, 658 N.W.2d. 783, 788 (S.D. 2003)

("The Restatement of Restitution declares that '[a] person who has been unjustly enriched at the

expense of another is required to make restitution to the other.' Restatement of Restitution § 1

(1937). The comment to this section explains that '[a] person is enriched if he has received a

benefit. A person is unjustly enriched if the retention of the benefit would be unjust.'").

There is no language in the Restatement that supports limiting the law of unjust

enrichment to a benefit that flows directly from one party to the next, and courts interpreting the

Restatement have rejected soundly the same argument:

> Contrary to Defendants' argument, there is no additional requirement that a benefit
> flow solely from Plaintiffs to Defendants.  The courts do not define "benefit" as
> narrowly as Defendants urge.  As the Alabama Supreme Court observed,
> "[w]henever one person adds to the other's advantage in any form, whether by
> increasing his holdings or saving him from expense or loss, he has conferred a
> benefit upon the other."  *Opelika Production Credit Ass'n, Inc. v. Lamb*, 361 So.2d
> 95, 99 (1978) (citing Restatement, Restitution, § 1(b); Sullivan, "The Concept of
> Benefit in the Law of Quasi-Contract," 64 Geo. L.J. 1 (1975)).  Whether or not the
> benefit is directly conferred on the defendant is not the critical inquiry; rather, the
> plaintiff must show that his detriment and the defendant's benefit are related and
> flow from the challenged conduct. *Id.*

*Cardizem,* 105 F. Supp. 2d at 671.  The evidence cited herein clearly meets this test.

### B. Defendants are Not Entitled to Summary Judgment on the Unjust Enrichment Claims on the Grounds of an Adequate Remedy at Law

Defendants also argue that they are entitled to summary judgment on Plaintiffs' unjust

enrichment claims under Hawaii, Kansas, Maine, New Mexico, Rhode Island, South Dakota,

Vermont, and Iowa law because equitable remedies, including unjust enrichment, will not be

granted where an adequate remedy at law exists.  Defendants are wrong.  Federal statutory and

case law allow plaintiffs to plead alternative theories of recovery.

The Federal Rules of Civil Procedure provide that: "[a] party may set out 2 or more

statements of a claim or defense alternatively or hypothetically, either in a single count or

defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if

any one of them is sufficient. ... A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2), (3). Moreover, in *K-Dur*, the court rejected the defendants' argument that equitable remedies are not available where an adequate remedy at law exists:

> Plaintiffs, however, are clearly permitted to plead alternative theories of recovery. Consequently, it would be premature at this stage of the proceedings to dismiss the Indirect Purchasers' and the Commonwealth's unjust enrichment claims on this basis.

338 F. Supp. 2d at 544. Defendants' argument that the absence in the complaint of the words "in the alternative" is fatally defective and warrants granting summary adjudication of plaintiffs' unjust enrichment claims is unfounded. The same argument was rejected by the court in *Arnold & Associates Inc. v. Misys Healthcare Systems*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003): "Despite Defendant's contentions, Plaintiff is correct in noting that there are no requirements to include the magic words 'in the alternative' in making alternative claims."

### C.  Defendants are Not Entitled to Summary Judgment on the Rhode Island and Missouri Unjust Enrichment Claims

Contrary to Defendants' argument, allowing Plaintiffs' Rhode Island and Missouri unjust enrichment claims to proceed would not amount to an "end run" around the limitations of those states' antitrust laws. This argument was squarely rejected by the court in *Cardizem*, 105 F. Supp. 2d at 669:

> The first of Defendants' arguments…confuses Plaintiffs' right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws. The authority Defendants rely upon fails to support their position that the success of Plaintiffs' common law unjust enrichment claims necessarily depends upon the success of their statutory claims. To the contrary, the courts often award equitable remedies under common law claims for unjust enrichment in circumstances where claims based upon contract or other state law violations prove unsuccessful.

Defendants are similarly confused here. Nothing in Missouri or Rhode Island law prohibits indirect purchaser plaintiffs from seeking recovery for unjust enrichment.

### 1.     Missouri

Defendants made the same argument in their Motion for Summary Judgment on Plaintiff Benjamin Larry Luber's Claims.  *See* Dkt. # 3048, at 10-11.   Filing a second summary judgment motion on the same issue violates this Court's Standing Order No. 5.  Not only is Defendants' motion procedurally improper, it misstates Missouri law.  Although the Missouri court's decision in *Duvall v. Silvers*, 998 S.W.2d 821 (Mo. App. 1999) precluded indirect purchasers from bringing a claim under Missouri's antitrust laws, the Missouri Supreme Court has clarified that the limitations on the state antitrust laws do not limit recovery by indirect purchasers under other laws.  *See Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. 2007).  Construing the Missouri Merchandising Practices Act, the court ruled that "[t]he statute's broad language of 'any person who has suffered any ascertainable loss' contemplates that other parties, besides the direct purchaser or contracting party, who suffer damages resulting from the violator's prohibited conduct" are entitled to sue under the MMPA.  *Id*. at 669.   Therefore, Missouri courts do not interpret the limitations on the state antitrust law as a bar to claims for relief by indirect purchasers under other laws.

### 2.     Rhode Island

Defendants cite no authority from Rhode Island for the premise that indirect purchasers are limited to seeking relief under Rhode Island's antitrust law and Rhode Island indirect purchasers have been allowed to seek relief for antitrust violations under other state laws.  In *Chocolate*, 602 F. Supp. 2d at 586, the court denied defendants' motion to dismiss indirect purchasers' claim under the RIUTPCPA, finding that the law prohibits "price-fixing injuries, and consumers subject to collusive pricing possess a cognizable claim under the RIUTPCPA."  If indirect purchasers may seek relief under the RUTPCPA without running afoul of Rhode Island's antitrust law, logic dictates that they may also seek relief for unjust enrichment.

///

///

///

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL
SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW – CASE NO. 3:07-MD-1827 SI

## IV. CONCLUSION

For the forgoing reasons, Plaintiffs respectfully submit that Defendants' motion must be denied.

Dated: August 17, 2011

By: */s/ Francis O. Scarpulla*
Francis O. Scarpulla

Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Judith A. Zahid (215418)
Patrick B. Clayton (240191)
Qianwei Fu (242669)
Heather T. Rankie (268002)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
*fscarpulla@zelle.com*

Joseph M. Alioto (42680)
Theresa D. Moore (99978)
ALIOTO LAW FIRM
225 Bush Street, 16th Floor
San Francisco, CA 94104-1534
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
*josephalioto@mac.com*

*Co-Lead Class Counsel for Indirect-Purchaser Plaintiffs*

Allan Steyer (100318)
D. Scott Macrae (104663)
Jill Manning (178849)
STEYER LOWENTHAL BOODROOKAS
  ALVAREZ & SMITH LLP
One California Street, Third Floor
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234

Jennie Lee Anderson (203586)
ANDRUS ANDERSON LLP
155 Montgomery Street, 9th Floor
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474

*Counsel for Indirect-Purchaser Plaintiffs*

3225314v2

INDIRECT-PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL
SUMMARY JUDGMENT BASED ON VARIOUS ISSUES OF STATE LAW – CASE NO. 3:07-MD-1827 SI