1

2

3

4

5           IN THE UNITED STATES DISTRICT COURT

6           FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   IN RE: TFT-LCD (FLAT PANEL) ANTITRUST          No. M 07-1827 SI
    LITIGATION                                     MDL No. 1827
9   _____/
                                                   No. C 10-4945 SI
10  This Order Relates To:
                                                   **ORDER GRANTING IN PART**
11  TARGET CORPORATION, *et al.*,                  **DEFENDANTS' MOTION TO DISMISS**
                                                   **TARGET'S FIRST AMENDED**
12              Plaintiffs,                        **COMPLAINT**

13      v.

14  AU OPTRONICS CORPORATION, *et al.*,

15              Defendants.
    _____/
16

17          Now before the Court is defendants' joint motion to dismiss the first amended complaint

18  ("FAC") of plaintiffs Target Corporation; Sears, Roebuck and Co.; Kmart Corporation; Old Comp Inc.;

19  Good Guys, Inc.; Radioshack Corporation; and Newegg Inc. (collectively, "Target"). Pursuant to Civil

20  Local Rule 7-1(b), the Court finds this matter suitable for decision without oral argument and therefore

21  VACATES the hearing currently scheduled for August 26, 2011. Having considered the arguments

22  presented in the moving papers, the Court hereby GRANTS IN PART defendants' motion.

23

24                                   **BACKGROUND**

25          Target filed this antitrust action in 2010, seeking to "recover the damages [it] incurred as a result

26  of a long-running conspiracy by manufacturers of liquid crystal display panels ('LCD Panels')." FAC

27  at ¶1. The FAC alleges that "[d]efendants and their co-conspirators formed an international cartel

28  illegally to restrict competition in the United States in the market for LCD Panels." *Id.* at ¶2. The FAC

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    includes claims under the Sherman Act, 15 U.S.C. § 1, and under the laws of a number of different

2    states. FAC at ¶¶218-55.  It names as defendants entities from nine corporate families:  AU Optronics[1]

3    ("AUO"); Chi Mei[2]; Chunghwa Pictures Tubes[3]; Epson[4]; Hannstar[5]; LG[6]; Samsung[7]; Sharp[8]; and

4    Toshiba[9].

5            On July 5, 2011, defendants filed a joint motion to dismiss Target's FAC.  Defendants' motion

6    takes issue with three aspects of the FAC.  First, defendants claim that the FAC impermissibly relies on

7    group pleading and fails to describe each defendant's role in the conspiracy.  Second, defendants argue

8    that the FAC does not adequately identify the purchases of LCD panels that Target made directly from

9    defendants.  Third, defendants assert that Target may not recover under the antitrust laws of New York,

10   Nebraska, and Nevada for LCD purchases it made before those states granted standing to indirect

11   purchasers.

12

13                                          **LEGAL STANDARD**

14           Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint that

15   fails to state a claim upon which relief may be granted.  To survive a Rule 12(b)(6) motion to dismiss,

16   the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

17

18   _____

19           [1]AU Optronics Corporation and AU Optronics Corporation America.

20           [2]Chi Mei Corporation, Chi Mei Optoelectronics Corporation, Chi Mei Optoelectronics USA, Inc., CMO Japan Co. Ltd., Nexgen Mediatech, Inc., and Nexgen Mediatech USA, Inc.

21           [3]Chunghwa Pictures Tubes Ltd. and Tatung Company of America, Inc.

22           [4]Epson Imaging Devices Corporation and Epson Electronics America, Inc.

23           [5]Hannstar Display Corporation.

24           [6]LG Display Co. Ltd. and LG Display America, Inc.

25           [7]Samsung Electronics Co., Ltd., Samsung Semiconductor, Inc., and Samsung Electronics
26   America, Inc.

27           [8]Sharp Corporation and Sharp Electronics Corporation.

28           [9]Toshiba Corporation, Toshiba America Electronics Components, Inc., Toshiba Mobile Display Technology Co., Ltd, and Toshiba America Information Systems, Inc..

**United States District Court**
For the Northern District of California

1    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff

2    to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."

3    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  While courts do not require "heightened fact pleading

4    of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative

5    level."  *Twombly*, 550 U.S. at 544, 555.

6         In deciding whether the plaintiff has stated a claim upon which relief may be granted, the Court

7    must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the

8    plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the

9    Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions

10   of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

11

12                                          **DISCUSSION**

13        As mentioned above, defendants' motion challenges only three aspects of Target's complaint:

14   (1) Target's use of "group pleading"; (2) Target's allegations of direct-purchaser claims; and (3)

15   Target's attempt to recover under the antitrust laws of New York, Nevada, and Nebraska for the full

16   time period of the alleged conspiracy.

17

18   **I.    Adequacy of Group Pleading**

19        Defendants claim that Target's FAC should be dismissed because it does not allege facts

20   particular to each defendant.  They argue that the FAC "lump[s] together two dozen parent and

21   subsidiary companies" in an attempt to "bring the entire corporate family into the case as one

22   amalgamated defendant."  Motion at 7; *see also*, *e.g.*, FAC at ¶46 ("Defendants AU Optronics

23   Corporation and AU Optronics Corporation America, Inc. are referred to collectively herein as 'AU

24   Optronics.'"); FAC at ¶¶ 53 (same for Chi Mei entities), 56 (Chunghwa), 59 (Epson), 63 (LG), 67

25   (Samsung), 70 (Sharp), 75 (Toshiba).

26        This Court has previously evaluated similar "group pleading" allegations in this multi-district

27   litigation.  In *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009),  the

28   Court found that the direct-purchaser plaintiffs and the indirect-purchaser plaintiffs had both stated valid

1   claims against defendants, despite their use of group pleading.  *Id.* at 1184.

2           Target's FAC, filed well after the Court issued the above order, bears a predictable resemblance

3   to the direct- and indirect-purchaser complaints.  The FAC alleges that the alleged conspiracy was

4   organized at the highest level of the defendant organizations and carried out by both executives and

5   subordinate employees.  FAC at ¶104; *see also In re TFT LCD (Flat Panel) Antitrust Litig.*, 599 F.

6   Supp. 2d at 1184-85.  It alleges that the conspiracy was implemented by subsidiaries and distributors

7   within a corporate family, and that "individual participants entered into agreements on behalf of, and

8   reported these meetings and discussions to, their respective corporate families."  FAC at ¶156; *In re TFT*

9   *LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d at 1184-85.  Target also alleges that "the individual

10  participants in conspiratorial meetings and discussions did not always know the corporate affiliation of

11  their counterparts, nor did they distinguish between the entities within a corporate family."  FAC at

12  ¶156; *In re TFT LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d at 1184-85.  In addition, Target's

13  FAC contains a detailed description of actions taken in furtherance of the conspiracy both by defendants

14  and their American subsidiaries.  *See* FAC at ¶¶103-124, 125-34.

15          The Court finds that the allegations in Target's FAC are sufficient to put the defendants on notice

16  of the charges against them.  Accordingly, it DENIES defendants' motion to dismiss based on Target's

17  use of group pleading.

18

19  **II.     Federal Claims**

20          Defendants also argue that Target's claims for damages under federal law should be dismissed.

21  They assert that Target lacks standing to pursue its federal claims because federal law does not allow

22  indirect purchasers to recover damages.  *See Illinois Brick Co. v. United States*, 431 U.S. 720 (1977).

23  Target does not contest this point, but asserts that it brings "federal antitrust claims for [its] purchases

24  of finished products containing price-fixed LCD panels directly from Defendants and their corporate

25  affiliates."  Pl. Opp'n at 9; *see also* FAC at ¶200 ("In some cases, Plaintiffs purchased LCD Products

26  directly from defendants at prices that were artificially inflated as a result of the conspiracy . . . .").

27          Defendants seek dismissal of Target's direct-purchaser claims as well, arguing that Target's FAC

28  does not provide adequate detail about its direct purchases.  Reply at 6 ("Plaintiffs fail to identify . . .

4

United States District Court
For the Northern District of California

1  the 'Defendants and their corporate affiliates' from which they directly purchased finished

2  products . . . ."). Defendants did not raise this argument until their reply brief; it is therefore waived.

3  In any event, Target's complaint alleges that it made direct purchases from one or more of the

4  defendants. That is sufficient to satisfy the notice-pleading requirements of the federal rules. The

5  details defendants seek are best left to the discovery process.

6

7  **III.    Retroactive Effect of *Illinois Brick* Repealer Statutes**

8      Finally, defendants move to dismiss in part Target's antitrust claims under the laws of New

9  York, Nebraska, and Nevada. Defendants claim that these states did not allow indirect-purchasers to

10 bring suit until the states amended their antitrust laws. Defendants argue that the amendments were not

11 made retroactive, and that therefore Target may not recover for any damages sustained prior to their

12 enactment.

13

14     **A.    New York**

15     New York's legislature amended the Donnelly Act to permit claims by indirect purchasers on

16 December 23, 1998. *See* N.Y. Gen. Bus. Law § 340(6). Courts have held that the amendment was not

17 retroactive, and plaintiffs do not assert otherwise. *See*, *e.g.*, *In re Vitamins Antitrust Litig.*, 2000 WL

18 1511376, at *5 (D.D.C., Oct. 6, 2000); *Lennon v. Philip Morris Cos.*, 734 N.Y.S.2d 374, 382 (Sup. Ct.

19 2001) ("[C]ourts interpreting provisions of the General Business Law have rejected retroactive

20 application of amendments creating new private rights of action."). Accordingly, Target's Donnelly Act

21 claims are DISMISSED to the extent they arose before December 23, 1998.

22

23     **B.    Nebraska**

24     Prior to July 20, 2002, Nebraska's Junkin Act allowed "[a]ny person who shall be injured in his

25 business or property" by an antitrust violation to bring a suit for damages. Neb. Rev. Stat. § 59-821

26 (2000). On July 20, 2002, the Nebraska legislature amended the Junkin Act to permit suit "whether such

27 injured person dealt directly or indirectly with the defendant." 2002 Neb. Laws L.B. 1278; *see also*

28 Neb. Rev. Stat. § 59-821 (2011).        Defendants argue that the amendment does not apply retroactively,

**United States District Court**
For the Northern District of California

1   and that this Court should therefore dismiss any claims that arise from purchases made before July 20,

2   2002. Nebraska courts generally do not give retroactive effect to substantive statutes "unless the

3   Legislature has clearly expressed an intention that the new statute is to be applied retroactively."

4   *Soukop v. ConAgra, Inc.*, 653 N.W.2d 655, 657 (Neb. 2002).[10]

5          The Court disagrees with defendants' interpretation of the Nebraska statute, and concludes that,

6   even prior to the 2002 amendment, indirect-purchaser suits were permitted under Nebraska law. In

7   *Arthur v. Microsoft Corp.*, 676 N.W.2d 29 (Neb. 2004), the Nebraska Supreme Court considered

8   whether indirect purchasers could bring suit under Nebraska's Consumer Protection Act, a closely

9   related statute to the Junkin Act. The court concluded that indirect purchasers had standing to sue,

10  rejecting the argument that the Consumer Protection Act should be harmonized with the Supreme

11  Court's *Illinois Brick* decision. *Id.* at 597-98 ("Giving the language of the Act its plain and ordinary

12  meaning while construing its provisions in pari materia to determine the intent of the Legislature, we

13  conclude that the Act allows any person who is injured by a violation of §§ 59-1602 to 59-1606 which

14  directly or indirectly affects the people of Nebraska to bring a civil action to recover damages."); *see*

15  *also id.* at 594 (stating that a state-law provision requiring harmonization with federal law "does not

16  require us to hold that indirect purchasers have no standing under the Act if to do so would not support

17  the Act's purpose"). In reaching this conclusion, the Nebraska Supreme Court relied heavily on an Iowa

18  Supreme Court decision that allowed indirect purchasers to bring suit under Iowa's antitrust laws. *Id.*

19  at 597 ("The [Iowa] court concluded that . . . the harmonization provision of Iowa law was not aimed

20  at defining who can sue under state antitrust law, but was designed to achieve uniform application of

21  the state and federal laws prohibiting monopolistic practices.").

22         In light of *Arthur*, the Court concludes that the Nebraska Supreme Court would likely hold that

23  the Junkin Act permitted indirect-purchaser suits even before the 2002 amendment. Accordingly,

24  defendants' motion to dismiss is DENIED with respect to the Nebraska claims.

25

26         [10] In a different MDL pending in this District, the question whether the Junkin Act amendment
    was retroactive was raised by defendants. The Court in that case did not discuss the issue, but appears
27  to have concluded that the amendment did not have retroactive effect. *See In re Cathode Ray Tube
    (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010) (dismissing claims under Nebraska
    law based on sales made prior to July 20, 2002).

28

**United States District Court**
For the Northern District of California

**C.     Nevada**

Finally, defendants argue that Target's claims under Nevada's Unfair Trade Practices Act ("UTPA") must also be dismissed in part.  Prior to October 1, 1999, the UTPA permitted suit by "any person injured in his business or property."  Nev. Rev. Stat. § 598.210 (1998).  Effective October 1, 1999, the UTPA was amended to permit suit by "any person injured or damaged directly or indirectly in his business or property."  Nev. Rev. §598A.210 (2011).  Two courts have determined that the 1999 amendment was a "clarification" to Nevada's antitrust law that did not amount to a substantive change in the law.  *See Pooler v. R.J. Reynolds Tobacco Co.*, 2001 WL 403167, at *1 (Nev. Dist. Ct., Apr. 4, 2001); *In re Static Random Access Memory (SRAM) Antitrust Litigation*, 2010 WL 5094289 at *5 (N.D. Cal., Dec. 8, 2010).  Other courts have reached the opposite conclusion.  *See*, *e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010).

The Court agrees with defendants that, prior to the 1999 amendment, Nevada law did not allow indirect purchasers to recover for antitrust violations.  The UTPA provides that it "shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes."  Nev. Rev. Stat. § 598A.050.  Given this directive, the Court concludes that the Nevada Supreme Court would have interpreted the UTPA "in harmony" with the *Illinois Brick* decision.  Absent a more definitive statement from Nevada's appellate courts, the Court will abide by the plain language of this provision.  Accordingly, the Court GRANTS defendants' motion to dismiss plaintiffs' Nevada claims that are based on purchases that occurred before October 1, 1999.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion to dismiss plaintiffs' first amended complaint.  Docket No. 45 in 10-4945; Docket No. 3027 in 07-1827.

**IT IS SO ORDERED.**

Dated: August 24, 2011

SUSAN ILLSTON
United States District Judge

7