Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Judith A. Zahid (215418)
Patrick B. Clayton (240191)
Qianwei Fu (242669)
Heather T. Rankie (268002)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:     (415) 693-0700
Facsimile:     (415) 693-0770
*fscarpulla@zelle.com*
*ccorbitt@zelle.com*

Joseph M Alioto (42980)
Theresa D. Moore (99978)
THE ALIOTO FIRM
225 California Street, 16th Floor
San Francisco, CA  94104
Telephone:     (415) 434-8900
Facsimile:     (415) 434-9200

*Co-Lead Class Counsel for Indirect-Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. C07-1827-SI |
| | MDL No. 1827 |
| This Document Relates to: | **INDIRECT-PURCHASER PLAINTIFFS' REQUEST FOR LEAVE TO FILE STATEMENT OF RECENT DECISION** |
| All Indirect-Purchaser Actions | |

1        Pursuant to Civil Local Rule 7-3(d), Indirect-Purchaser Plaintiffs hereby request leave to file

2   the Statement of Recent Decision attached hereto as Exhibit 1.  The Statement advises the Court of

3   the recent opinion of the United States Court of Appeals for the Third Circuit, discussing the Foreign

4   Trade Antitrust Improvements Act of 1982, 15 U.S.C. §6a.

5   Dated:  August 18, 2011                      Respectfully submitted,

6                                         */s/ Daniel R. Shulmana*

7                                         Daniel R. Shulman (MN 100651)
GRAY, PLANT, MOOTY, MOOTY

8                                        & BENNETT, P.A.
500 IDS Center

9                                        80 South Eighth Street
Minneapolis, MN  55402

10                                       Telephone:    (612) 632-3335
Facsimile:    (612) 632-4335

11                                       *daniel.shulman@gpmlaw.com*

12                                       Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)

13                                       Judith A. Zahid (215418)
Patrick B. Clayton (240191)

14                                       Qianwei Fu (242669)
Heather T. Rankie (268002)

15                                       ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400

16                                       San Francisco, CA 94104
Telephone:    (415) 693-0700

17                                       Facsimile:    (415) 693-0770

18                                       *fscarpulla@zelle.com*
*ccorbitt@zelle.com*

19                                       Joseph M Alioto (42980)
Theresa D. Moore (99978)

20                                       THE ALIOTO FIRM
225 California Street, 16th Floor

21                                       San Francisco, CA  94104
Telephone:    (415) 434-8900

22                                       Facsimile:    (415) 434-9200

23                                       *Co-Lead Class Counsel for Indirect-Purchaser
Plaintiffs*

24

25  **IT IS SO ORDERED:**

26      8/25/11

27                                       Hon. Susan Illston
United States District Judge

28  #3225339v1
GP:3028022 v1

---

1

**INDIRECT-PURCHASER PLAINTIFFS' REQUEST FOR LEAVE TO FILE STATEMENT OF RECENT DECISION**
Master File No. C07-1827-SI

# EXHIBIT 1

1   Francis O. Scarpulla (41059)
    Craig C. Corbitt (83251)
2   Judith A. Zahid (215418)
    Patrick B. Clayton (240191)
3   Qianwei Fu (242669)
    Heather T. Rankie (268002)
4   ZELLE HOFMANN VOELBEL & MASON LLP
    44 Montgomery Street, Suite 3400
5   San Francisco, CA 94104
    Telephone:    (415) 693-0700
6   Facsimile:    (415) 693-0770
    *fscarpulla@zelle.com*
7   *ccorbitt@zelle.com*

8   Joseph M Alioto (42980)
    Theresa D. Moore (99978)
9   THE ALIOTO FIRM
    225 California Street, 16th Floor
10  San Francisco, CA  94104
    Telephone:    (415) 434-8900
11  Facsimile:    (415) 434-9200

12  *Co-Lead Class Counsel for Indirect-Purchaser Plaintiffs*

13
                    **UNITED STATES DISTRICT COURT**
14
                   **NORTHERN DISTRICT OF CALIFORNIA**
15
                        **SAN FRANCISCO DIVISION**
16

17  IN RE TFT-LCD (FLAT PANEL)          Master File No. M:07-1827-SI
    ANTITRUST LITIGATION
18                                      MDL No. 1827

19  _____
                                        **INDIRECT-PURCHASER PLAINTIFFS'**
20  This Document Relates to:           **STATEMENT OF RECENT DECISION**

21  All Indirect-Purchaser Actions

22

23

24

25

26

27

28

1       Pursuant to Civil Local Rule 7-3(d), Indirect-Purchaser Plaintiffs submit this Statement of

2   Recent Decision to advise the Court that the United States Court of Appeals for the Third Circuit

3   issued an opinion in *Animal Science Products Inc. v. China Minmetals Corp. et al.*, No. 10-2288, a

4   copy of which is attached.  The opinion discusses the Foreign Trade Antitrust Improvements Act of

5   1982, 15 U.S.C. §6a.

6   Dated:  August 18, 2011                        Respectfully submitted,

7                                      */s/ Daniel R. Shulmana*

8                                  Daniel R. Shulman (MN 100651)
                               GRAY, PLANT, MOOTY, MOOTY

9                                 & BENNETT, P.A.
                              500 IDS Center

10                                80 South Eighth Street
                              Minneapolis, MN  55402

11                                Telephone:     (612) 632-3335
                              Facsimile:      (612) 632-4335

12                                *daniel.shulman@gpmlaw.com*

13                                Francis O. Scarpulla (41059)
                              Craig C. Corbitt (83251)

14                                Judith A. Zahid (215418)
                              Patrick B. Clayton (240191)

15                                Qianwei Fu (242669)
                              Heather T. Rankie (268002)

16                                ZELLE HOFMANN VOELBEL & MASON LLP
                              44 Montgomery Street, Suite 3400

17                                San Francisco, CA 94104
                              Telephone:     (415) 693-0700

18                                Facsimile:      (415) 693-0770
                              *fscarpulla@zelle.com*

19                                *ccorbitt@zelle.com*

20                                Joseph M Alioto (42980)
                              Theresa D. Moore (99978)

21                                THE ALIOTO FIRM
                              225 California Street, 16th Floor

22                                San Francisco, CA  94104
                              Telephone:     (415) 434-8900

23                                Facsimile:      (415) 434-9200

24                                *Co-Lead Class Counsel for Indirect-Purchaser*
                              *Plaintiffs*

25

26  #3225338v1
    GP:3028020 v1

27

28

INDIRECT-PURCHASER PLAINTIFFS' STATEMENT OF RECENT DECISION – Case No. M:07-1827-SI

# EXHIBIT A

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 10-2288

———————

ANIMAL SCIENCE PRODUCTS, INC.,
Appellant

v.

CHINA MINMETALS CORPORATION; CHINA
NATIONAL CO, LTD.; XIYANG GROUP; XIYANG
(PACIFIC) IMPORT & EXPORT LTD. COMPANY;
XIYANG REFRACTORY MATERIALS LTD COMPANY;
XIYANG FIREPROOF MATERIALS LTD COMPANY;
SINOSTEEL CORPORATION; SINOSTEEL TRADING
COMPANY; LIAONING JIAYI METALS & MINERALS
CO., LTD; LIAONING FOREIGN TRADE GENERAL
CORPORATION; LIAONING JINDING MAGNESITE
GROUP; DALIAN GOLDEN SUN IMPORT & EXPORT
CORP.; HAICHENG HOUYING CORP. LTD;
HAICHENG HUAYU GROUP IMPORT & EXPORT CO.
LTD. (HUAZIYU); HAICHENG PAILOU MAGNESITE
ORE CO. LTD.; YINGKOU HUACHEN (GROUP) CO
LTD.

———————

On Appeal from the United States District Court
for the District of New Jersey
(Civ. No. 05-cv-04376)
District Judge: Hon. Garrett E. Brown, Jr.

Argued January 24, 2011

Before: FUENTES, CHAGARES, <u>Circuit Judges</u>, and
POLLAK,[*] <u>District Judge</u>.

(Filed: August 17, 2011)

William A. Isaacson (Argued)
Jennifer Milici
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue NW, Suite 800
Washington, D.C. 20015

David S. Stone
Robert A. Magnanini
Amy Walker Wagner
Stone & Magnanini LLP
150 John F. Kennedy Parkway
Fourth Floor
Short Hills, New Jersey 07078

---

[*] The Honorable Louis H. Pollak, Senior District Judge,
United States District Court for the Eastern District of
Pennsylvania, sitting by designation.

2

Richard E. Donovan
Kelley Drye & Warren LLP
200 Kimball Drive
Parsippany, New Jersey 07054

Counsel for Plaintiffs-Appellants Animal Science Products,
Inc. and Resco Products, Inc.

Jonathan S. Caplan (Argued)
Timothy J. Helwick
Mark A. Baghdassarian
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, New York 10036

Counsel for Defendants-Appellees Sinosteel Corporation,
Sinosteel Trading Company, Liaoning Jiayi Metals &
Minerals Co., Ltd.

Michael L. Weiner (Argued)
Shepard Goldfein
Thomas Pak
Sean M. Tepe
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036

Counsel for Defendants-Appellees China Minmetals
Corporation and China National Minerals Co., Ltd.

_____

OPINION

_____

3

CHAGARES, Circuit Judge.

Plaintiffs Animal Science Products, Inc. and Resco Products, Inc. appeal the District Court's dismissal of their First Amended Complaint, in part without prejudice, on the basis that it lacked subject matter jurisdiction under the Foreign Trade Antitrust Improvements Act of 1982 (the "FTAIA"), 15 U.S.C. § 6a.  For the reasons that follow, we will vacate and remand.

I.

The plaintiffs are domestic purchasers of "magnesite."[1] The plaintiffs allege, on behalf of a putative class, that the defendants – Chinese producers and exporters of magnesite – engaged in a conspiracy since at least April 2000 to fix the price of magnesite that is exported to and sold in the United States.  The plaintiffs allege that this conspiracy has impacted hundreds of millions of dollars of United States commerce. Based on these allegations, the plaintiffs assert federal claims pursuant to the Clayton Act, 15 U.S.C. §§ 4, 16, predicated on the defendants' alleged violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

The plaintiffs first initiated this action by filing a complaint on September 7, 2005.  That complaint named seventeen Chinese business entities as defendants.  Only five

---

[1]  Magnesite is mined from magnesium deposits and used, among other things, to melt steel, make cement, and clean wastewater.

4

of those defendants are parties to this appeal, however, and
these defendants are divided into two groups: (1) the China
Minmetals defendants and (2) the Sinosteel defendants.[2]
After two years of litigation surrounding service of process
issues, the plaintiffs moved for a default judgment on
December 14, 2007. The China Minmetals defendants and
the Sinosteel defendants responded, and moved to compel
arbitration of the dispute in China pursuant to arbitration
clauses contained in several of the magnesite sales contracts.

In an opinion dated December 30, 2008, the District
Court dismissed all pending motions and dismissed the
plaintiffs' complaint on the ground that it lacked subject
matter jurisdiction to adjudicate the dispute pursuant to the
FTAIA, a basis raised sua sponte by the District Court. See
Animal Science Prods., Inc. v. China Nat'l Metals &
Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842 (D.N.J.
2008).[3] The dismissal was without prejudice, and the District
Court granted the plaintiffs leave to amend their complaint.
The District Court instructed that

> in the event Plaintiffs file an amended
> complaint, Plaintiffs must incorporate in their

---

[2]    The China Minmetals defendants consist of China
Minmetals Corporation and China National Minerals Co.,
Ltd.    The Sinosteel defendants consist of Sinosteel
Corporation, Sinosteel Trading Company, and Liaoning Jiayi
Metals & Minerals Co., Ltd.    Each group of defendants
submitted its own brief on appeal.

[3]  In the alternative, the District Court held that the plaintiffs
failed to state a claim upon which relief can be granted.

5

> submission evidentiary proof allowing the [District] Court to conduct a <u>factual determination</u> (in contrast with the facial analysis conducted herein) and to conclusively satisfy itself as to presence or lack of subject matter jurisdiction over this action.

<u>Id.</u> at 881 (emphasis in original).

On March 30, 2009, the plaintiffs filed their First Amended Complaint and, as instructed, included evidentiary proof with their allegations. The China Minmetals defendants and the Sinosteel defendants subsequently moved to dismiss on the basis that the District Court lacked subject matter jurisdiction or should otherwise abstain from resolving this dispute. In a remarkably comprehensive opinion dated April 1, 2010, the District Court engaged in extensive fact-finding and held that the FTAIA deprived it of subject matter jurisdiction. <u>See</u> <u>Animal Science Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.</u>, 702 F. Supp. 2d 320 (D.N.J. 2010). The District Court thoroughly discussed the FTAIA's two exceptions but ultimately determined that the plaintiffs failed to demonstrate that either exception was applicable to this case. The District Court thus granted the defendants' motion and dismissed the plaintiffs' First Amended Complaint.[4]   Although the dismissal was partly

---

[4] The District Court's April 1, 2010 opinion also: (1) denied with prejudice the defendants' abstention defense under the act-of-state doctrine; (2) denied without prejudice the defendants' defense pursuant to the Foreign Sovereign Immunities Act, with leave to renew at a later motion to dismiss; and (3) reserved a decision on the defendants'

6

without prejudice, the plaintiffs declined the District Court's invitation to amend their complaint for a second time and filed a timely notice of appeal.[5]

## II.

This appeal involves interpreting the FTAIA, a statute that this Court has described as being "inelegantly phrased" and using "rather convoluted language." Turicentro, S.A. v. Am. Airlines Inc., 303 F.3d 293, 300 (3d Cir. 2002) (quotation marks omitted). To wit, the FTAIA provides, in relevant part, that:

> [The Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless –
>
> > (1) such conduct has a direct, substantial, and reasonably foreseeable effect –
> >
> > > (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or

---

abstention defense under the foreign sovereign compulsion doctrine.

[5] We have appellate jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

7

(B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and

(2) such effect gives rise to a claim under the provisions of [the Sherman Act], other than this section.

If [the Sherman Act] appl[ies] to such conduct only because of the operation of paragraph (1)(B), then [the Sherman Act] shall apply to such conduct only for injury to export business in the United States.

15 U.S.C. § 6a.

Parsing this text reveals that the FTAIA first limits the reach of the U.S. antitrust laws by articulating a general rule that the Sherman Act "shall not apply to conduct involving trade or commerce . . . with foreign nations." The FTAIA then creates two distinct exceptions that restore the authority of the Sherman Act. First, the FTAIA provides that it does not apply (and thus that the Sherman Act does apply) if the defendants were involved in "import trade or import commerce" (the "import trade or commerce" exception). Second, the FTAIA's bar is inapplicable if the defendants' "conduct has a direct, substantial, and reasonably foreseeable effect" on domestic commerce, import commerce, or certain export commerce and that conduct "gives rise" to a Sherman Act claim (the "effects" exception). See generally Turicentro, 303 F.3d at 298-306 (discussing the FTAIA, the import trade

or commerce exception, and the effects exceptions); <u>Carpet Group Int'l v. Oriental Rug Importers Ass'n</u>, 227 F.3d 62, 71-73 (3d Cir. 2000) (discussing the FTAIA and the import trade or commerce exception).

As noted above, the District Court construed the FTAIA as imposing a jurisdictional restriction, and, after engaging in fact-finding, determined that neither of the FTAIA's two exceptions applied.  For the reasons stated below, we hold that the FTAIA imposes a substantive merits limitation rather than a jurisdictional bar.  We will therefore vacate the District Court's opinion and remand for proceedings consistent with this holding.

A.

"Jurisdiction, it has been observed, is a word of many, too many, meanings." <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 90 (1998) (quoting <u>United States v. Vanness</u>, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)) (quotation marks omitted).  In recent years, the Supreme Court has been especially critical of courts' "profligate" and "less than meticulous" use of the term.  <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 510, 511 (2006).  Thus, for example, in <u>Kontrick v. Ryan</u>, 540 U.S. 443, 447 (2004), and <u>Eberhart v. United States</u>, 546 U.S. 12, 13 (2005) (per curiam), the Supreme Court clarified that time limitations set forth in the Federal Rules of Bankruptcy Procedure and the Federal Rules of Criminal Procedure, respectively, were not jurisdictional in nature.  And more recently, in <u>Morrison v. National Australia Bank Ltd.</u>, 130 S. Ct. 2869, 2877 (2010), the Supreme Court overturned lower court precedent and held that the extraterritorial reach of § 10(b) of the Securities Exchange

9

Act of 1934 presents a merits issue, rather than a question of subject matter jurisdiction.

Courts have been particularly "less than meticulous" in distinguishing between substantive merits and jurisdiction – that is, in differentiating between statutory elements that serve as a predicate to establishing a successful federal claim for relief on the merits, and statutory elements that define a federal court's adjudicative authority.  As a result, judicial opinions "'often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim.'"  Arbaugh, 546 U.S. at 511 (quoting Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 361 (2d Cir. 2000)).  The Supreme Court has "described such unrefined dispositions as 'drive-by jurisdictional rulings' that should be accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim in suit."  Id. (quoting Steel Co., 523 U.S. at 91).

In order to clarify the difference between statutory elements that create a "jurisdictional" bar and those that create a "substantive merits" limitation, it is necessary to demarcate two sources of congressional authority:  the constitutional authority to set forth the elements of a successful claim for relief and the constitutional authority to delineate the subject matter jurisdiction of the lower courts.  The former is sometimes referred to as Congress's "legislative jurisdiction," while the latter has been labeled "judicial jurisdiction."  Cf. Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 898 (3d Cir. 1987) (noting that "it is important to distinguish elements of a claim that relate to

Congress's jurisdiction, i.e., its constitutional authority to act, from issues that relate to the jurisdiction of the courts").

In the antitrust context, Congress has the power to create and define the essential elements of a plaintiff's claim to antitrust relief pursuant to the Commerce Clause of the U.S. Constitution, which bestows upon Congress the ability "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. Congress also possesses the authority, pursuant to Article III of the U.S. Constitution, to define the lower federal courts' jurisdiction to adjudicate disputes. Sheldon v. Sill, 49 U.S. (8 How.) 441, 449 (1850). Indeed, absent congressional action, the lower federal courts lack jurisdiction to adjudicate any claims. See Bowles v. Russell, 551 U.S. 205, 212 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."). Generally speaking, Congress has provided courts with jurisdiction to adjudicate antitrust claims through the passage of 28 U.S.C. § 1331, which vests district courts with subject matter jurisdiction over cases "arising under" federal statutes, and 28 U.S.C. § 1337(a), which provides district courts with jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

The threshold question presented by this appeal requires us to distinguish between these two sources of congressional authority. Specifically, we must determine whether, in enacting the FTAIA, Congress legislated pursuant to its Commerce Clause authority to articulate substantive elements that a plaintiff must satisfy to assert a meritorious claim for antitrust relief or whether Congress acted pursuant

11

to its Article III powers to define the jurisdiction of the federal courts. In Turicentro, 303 F.3d at 300-02, and Carpet Group, 227 F.3d at 69-73, this Court presumed that the latter interpretation was correct, and thus analyzed the FTAIA as if it imposed a jurisdictional limitation on a court's ability to hear Sherman Act claims. Understandably, the District Court in this case adhered to this precedent. In light of the Supreme Court's subsequent decision in Arbaugh, 546 U.S. 500, and other recent cases, however, we will now overturn this aspect of our Turicentro and Carpet Group decisions and hold that the FTAIA constitutes a substantive merits limitation rather than a jurisdictional limitation.[6]

In Arbaugh, the Supreme Court articulated a "readily administrable bright line," "clearly states" rule to determine

---

[6] "While a panel of our Court is bound by the precedential decisions of earlier panels, that rule does not apply 'when the prior decisions conflict with a Supreme Court decision.'" Virgin Islands v. Martinez, 620 F.3d 321, 327 (3d Cir. 2010) (quoting United States v. Tann, 577 F.3d 533, 541 (3d Cir. 2009)) (alterations omitted); see also United States v. Singletary, 268 F.3d 196, 202 (3d Cir. 2001). It is worth noting that this is not the first time that we have overruled an earlier decision's characterization of a statutory limitation as being "jurisdictional" in light of the Supreme Court's Arbaugh decision. See Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66, 580 F.3d 185, 189-90 (3d Cir. 2009) (overruling earlier Third Circuit precedent and holding "that the existence of a union contract is not a jurisdictional requirement under section 301" of the Labor Management Relations Act).

whether a statutory limitation sets forth a jurisdictional requirement or a substantive merits element:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

Arbaugh, 546 U.S. at 515-16 (footnote and citation omitted). Arbaugh concerned Title VII's "employee-numerosity requirement" – the restriction that Title VII only applies if an employer has fifteen or more employees. The Supreme Court, applying the "clearly states" rule just articulated, noted that the "employee-numerosity requirement" appears in a provision of Title VII that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts" and thus unanimously determined that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." Id. at 515, 516 (quotation marks omitted); see also Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1244-47 (2010) (applying Arbaugh's "clearly states" rule to determine that the Copyright Act's registration requirement is not jurisdictional).

A review of the FTAIA's statutory text compels the same conclusion in this case. The FTAIA neither speaks in jurisdictional terms nor refers in any way to the jurisdiction of the district courts. Cf. Boyd v. AWB Ltd., 544 F. Supp. 2d

236, 243 n.6 (S.D.N.Y. 2008) (remarking that "nothing in the statutory language of the FTAIA indicates that its limitations are jurisdictional"). Indeed, the statutory text is wholly silent in regard to the jurisdiction of the federal courts.[7] The FTAIA reads only that the Sherman Act "shall not apply" if certain conditions are met. Assessed through the lens of <u>Arbaugh</u>'s "clearly states" test, the FTAIA's language must be interpreted as imposing a substantive merits limitation rather than a jurisdictional bar. Or, in the terminology set forth above, in enacting the FTAIA, Congress exercised its Commerce Clause authority to delineate the elements of a successful antitrust claim rather than its Article III authority to limit the jurisdiction of the federal courts. We therefore overrule our earlier precedent that construed the FTAIA as imposing a jurisdictional limitation on the application of the Sherman Act.[8]

---

[7]   Admittedly, the additional limitations imposed by the FTAIA may function to define the outer reach of congressional power over foreign behavior by requiring a nexus between the alleged anticompetitive behavior and the United States. In this regard, however, we agree with Justice Scalia that "the extraterritorial reach of the Sherman Act . . . has nothing to do with the jurisdiction of the courts. It is a question of substantive law turning on whether, in enacting the Sherman Act, Congress asserted regulatory power over the challenged conduct." <u>Hartford Fire Ins. Co. v. California</u>, 509 U.S. 764, 813 (1993) (Scalia, J., dissenting).

[8]   In reaching this conclusion, we disagree with the Court of Appeals for the Seventh Circuit's decision in <u>United Phosphorus, Ltd. v. Angus Chemical Co.</u>, 322 F.3d 942 (7th Cir. 2003) (en banc), which deemed the FTAIA's limitations

14

to be jurisdictional in nature. <u>United Phosphorus</u>, however, was decided before the Supreme Court issued its opinion in <u>Arbaugh</u>. Indeed, the holding in <u>Arbaugh</u> largely mirrors the reasoning of Judge Diane Wood's dissent in that case. She argued that there was no "hint that the Congress was attempting to strip federal courts of their" jurisdiction in the FTAIA, and that "[l]anguage like that of the FTAIA, stating that a law does not 'apply' in certain circumstances, cannot be equated to language stating that the courts do not have fundamental competence to consider defined categories of cases." <u>Id.</u> at 954, 955 (Wood, J., dissenting). For the reasons stated in the text, we concur with Judge Wood's analysis.

     We also agree with Judge Wood's conclusion that "a review of the history of the application of the antitrust laws to persons and conduct beyond the borders of the United States also leads to [this] result." <u>Id.</u> at 959. For this reason, the Supreme Court's opinion in <u>Bowles v. Russell</u>, 551 U.S. 205 (2007), is distinguishable. The Supreme Court in <u>Bowles</u> determined that 28 U.S.C. § 2107, which requires parties in a civil action to file a notice of appeal within thirty days of the judgment being appealed, was jurisdictional in nature notwithstanding the absence of text that clearly labeled the statutory limitation as such. In <u>Reed Elsevier</u>, the Supreme Court clarified that "<u>Bowles</u> stands for the proposition that context, including this Court's interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional." <u>Reed Elsevier</u>, 130 S. Ct. at 1247-48. Judge Wood's analysis in <u>United Phosphorus</u> suggests that the relevant context here supports the interpretation compelled by the statutory text: the FTAIA's limitations should not rank as jurisdictional.

B.

On remand, the District Court may entertain renewed
motions to dismiss pursuant to the FTAIA's statutory
limitations. For the reasons just stated, however, those
motions must be decided pursuant to the procedural
framework that governs a motion to dismiss for failure to
state a claim pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure, rather than a motion to dismiss for lack of
subject matter jurisdiction pursuant to Rule 12(b)(1).[9] Of
course the District Court is under no obligation to resolve the

---

[9] We catalogue just two of the significant differences
between these two motions and how they may apply on
remand in this case: First, the burden in a Rule 12(b)(1)
motion rests with the plaintiff, who must establish that there
is subject matter jurisdiction; by contrast, the defendant
carries the burden in a Rule 12(b)(6) motion. Accordingly,
the burden on remand would no longer rest with the plaintiffs,
but with the defendants. Second, while a court generally
looks only to the face of the plaintiff's complaint, must accept
all alleged facts to be true, and is not permitted to make
independent findings of fact when deciding a Rule 12(b)(6)
motion, a court may examine evidence and resolve factual
disputes on a Rule 12(b)(1) motion. Cf. Growth Horizons,
Inc. v. Del. Cnty., Pa., 983 F.2d 1277, 1281 n.4 (3d Cir. 1993)
(noting that "it is true that a court can find facts under Rule
12(b)(1) but not under Rule 12(b)(6)"). It would therefore be
inappropriate for the District Court, on remand, to assess
independently the credibility of allegations asserted by
plaintiff's expert witness.

FTAIA issue.  Unmoored from the question of subject matter jurisdiction, the FTAIA becomes just one additional merits issue.  In that regard, we note that while the District Court must still ascertain the propriety of exercising subject matter jurisdiction over this dispute, the District Court may exercise its discretion ultimately to resolve this matter through other means, for example, by deciding the defendants' original motions to compel arbitration.  In light of the tremendous effort put forth by the District Court on the FTAIA issue, however, and for the sake of efficiency, we offer two brief instructions if the District Court addresses the FTAIA question again on remand.

First, the District Court correctly discerned that the import trade or commerce exception "must be given a relatively strict construction."  Carpet Group, 227 F.3d at 72.  The District Court erred, however, in holding that this "strict construction" requires that the defendants function as the physical importers of goods.  See Animal Science, 702 F. Supp. 2d at 369 n.52 ("Simply put, the FTAIA is wholly inapplicable to Plaintiffs' claims if  – and only if – Defendants were, in fact, im porters." (emphasis in original)).  Functioning as a physical importer may satisfy the import trade or commerce exception, but it is not a necessary prerequisite.[10]  Rather, the relevant inquiry is whether the defendants' alleged anticompetitive behavior "was directed at an import market."  Turicentro, 303 F.3d at 303 (quoting Kruman v. Christie's Int'l PLC, 284 F.3d 384, 395 (2d Cir.

_____

[10]  Indeed, we implied as much when we held in Turicentro that the defendants in that case "cannot be labeled 'importers.'  Nor have they engaged in "import trade or commerce."  Turicentro, 303 F.3d at 303 (emphasis added).

2002)) (quotation marks omitted).  Or, to phrase it slightly differently, the import trade or commerce exception requires that the defendants' conduct target import goods or services.

We held that this requirement was not satisfied in Turicentro.  Turicentro involved a group of foreign travel agents who sued various U.S. airline companies, alleging that they conspired to fix commission rates paid to foreign travel agents.  Based on these facts, we reasoned that:

> The alleged conspiracy in this case was directed at commission rates paid to foreign travel agents based outside the United States.  That some of the services plaintiffs offered were purchased by United States customers is not dispositive under this inquiry.  Defendants were allegedly involved only in unlawfully setting extra-territorial commission rates.  Their actions did not directly increase or reduce imports into the United States.

Turicentro, 303 F.3d at 303.  The conspiracy in Turicentro thus targeted a foreign market:  fixing commission rates paid to foreign travel agents.  Any subsequent "importing" of these rates into the United States occurred as a result of the plaintiffs' own activities, as it was the plaintiff travel agents (and not the defendant airline companies) who sold services with allegedly fixed rates to U.S. customers.

By contrast, we held that the import trade or commerce exception did apply in Carpet Group, deeming it sufficient that the plaintiffs "charge[d] that defendants engaged in a course of activity designed to ensure that only United States

18

importers, and not United States retailers, could bring oriental rugs manufactured abroad into the stream of American commerce." Carpet Group, 227 F.3d at 72.  In that case, the defendants' conduct targeted the U.S. import market in various ways:

> [The] defendants took steps to:  (1) prevent foreign manufacturers from selling to United States retailers, (2) prevent at least one American retailer from purchasing rugs directly from foreign manufacturers, (3) prevent foreign governments and trade associations from sponsoring trade fairs at which retailers could purchase directly from foreign manufacturers, and (4) prevent an American rug retailers' trade association from sponsoring the trade fairs.

Id. at 73.

On remand, therefore, if the District Court addresses the applicability of the import trade or commerce exception, the District Court should assess whether the plaintiffs adequately allege that the defendants' conduct is directed at a U.S. import market and not solely whether the defendants physically imported goods into the United States.[11]

---

[11]   We note further that the District Court held that, in an antitrust case involving the shipment of goods into the United States from abroad, the port of first destination of goods sold by a seller located abroad to a domestic buyer is not determinative of whether the defendant was an "importer." See Animal Science, 702 F. Supp. 2d at 372.  This opinion has made clear that the import exception is not limited to

Second, the FTAIA's effects exception does not contain a "subjective intent" requirement.  The plaintiffs noted that certain language utilized by the District Court appeared to require that the plaintiffs demonstrate that the defendants subjectively intended to impact U.S. commerce.  See Animal Science, 702 F. Supp. 2d at 338 (interpreting "substantial" to mean whether the "defendants' conduct was actually 'intended/consciously meant'[] to produce a consequence in the United States"); id. at 349 (using the phrase "intent-to-affect").  It is not apparent whether the District Court's conclusions relied on these passing references.  In any event, we clarify that the FTAIA's "reasonably foreseeable" language imposes an objective standard:  the requisite "direct" and "substantial" effect must have been "foreseeable" to an objectively reasonable person.  The text of the statute – "reasonably foreseeable" – makes plain that an objective standard applies.[12]  Accordingly, if the

---

importers, but also applies if the defendants' conduct is directed at an import market.  Because we consider the delivery location of goods sold by a foreign seller to be relevant to whether that seller's actions were directed at a United States import market, rather than some foreign market, the District Court should, if it considers the import exception on remand, give weight to any well-pled allegations that the defendants in this action made direct sales of magnesite for delivery in the United States during the time period of the alleged conspiracy.

[12]  The District Court's "intent-to-affect" test led it to adopt a second holding:  that the plaintiffs must show that U.S. purchasers were uniquely charged higher prices.  See Animal Science, 702 F. Supp. 2d at 349 (suggesting that plaintiffs

20

District Court assesses the FTAIA's effects exception on remand, the relevant inquiry is whether the alleged domestic effect would have been evident to a reasonable person making practical business judgments.

### III.

For the reasons stated above, we will vacate and remand.

---

"cannot show an 'intent-to-affect' even by the entire Chinese magnesite industry unless [they] provide facts showing that Chinese domestic purchases and all foreign non-American purchasers were charged lower prices"). At the motion to dismiss stage, however, the effects test may be satisfied by allegations that the domestic injury is direct, substantial, and reasonably foreseeable, without regard to whether United States consumers are alone in suffering that injury. See F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 159 (2004) ("[T]his case involves vitamin sellers around the world that agreed to fix prices, leading to higher vitamin prices in the United States and independently leading to higher vitamin prices in other countries such as Ecuador. We conclude that, in this scenario, a purchaser in the United States could bring a Sherman Act claim under the FTAIA based on domestic injury.").