IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To: | No. C 10-0117 SI |
| ELECTROGRAPH SYSTEMS, INC., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>EPSON IMAGING DEVICES CORP., *et al.*,<br><br>    Defendants. | **ORDER GRANTING DEFENDANT MITSUI TAIWAN'S MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR DISMISSAL** |

On August 26, 2011, the Court heard argument on defendant Mitsui & Co. (Taiwan), Ltd.'s ("Mitsui Taiwan") motion for judgment on the pleadings and for dismissal. Having considered the arguments of the parties and the papers submitted, and for good cause appearing, the Court hereby GRANTS defendant's motion.

**BACKGROUND**

Plaintiffs Electrograph Systems, Inc. and Electrograph Technologies Corp. (collectively, "Electrograph") filed this action in November 2009, seeking to recover for a "long-running conspiracy . . . to fix, raise, stabilize, and maintain prices for Thin-Film Transistor Liquid Crystal Display ("TFT-LCD") panels." Compl. at ¶1. Electrograph's complaint alleges that "[d]efendants and their co-conspirators formed an international cartel" to fix prices of TFT-LCD panels. *Id.* The complaint names as defendants entities from eleven corporate families: Epson, Hitachi, Sharp, Toshiba, Sanyo, LG,

1 Samsung, AU Optronics, Chi Mei, Chunghwa Picture Tubes, and Hannstar. Complaint at ¶¶29-65. In
2 addition, the complaint names as a defendant Mitsui & Co. (Taiwan), Ltd. ("Mitsui Taiwan"). *Id.* at
3 ¶66. According to the complaint, Mitsui Taiwan is "a wholly-owned subsidiary" of co-conspirator
4 Mitsui & Co., Ltd. ("Mitsui"), a Japanese company headquartered in Japan. *Id.*; *see also* Declaration
5 of Philip J. Iovieno in Support of Electrograph's Opposition ("Iovieno Decl."), Exh. 1. The complaint
6 alleges that Mitsui Taiwan "manufactured, sold and distributed TFT-LCD Products to customers
7 throughout the United States and elsewhere." *Id.*

8 On June 9, 2011, Mitsui Taiwan filed a motion for judgment on the pleadings and for dismissal
9 of Electrograph's complaint. Mitsui Taiwan asserts that, contrary to Electrograph's allegations, it has
10 never manufactured LCD panels. Instead, it claims that it is a "trading company that buys and sells
11 various products primarily in Asia." Motion at 2. Mitsui Taiwan argues that it "is headquartered in and
12 organized under the laws of Taiwan, has no physical presence in the United States, and lacks the
13 'minimum contacts' with the United States necessary to justify haling [it] before this Court." *Id.* Thus,
14 it seeks its dismissal from this lawsuit for lack of personal jurisdiction. Alternatively, Mitsui Taiwan
15 asserts that this Court lacks subject matter jurisdiction over Electrograph's claims against it.

**LEGAL STANDARD**

18 Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough
19 not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The legal
20 standard for Rule 12(c) is virtually identical to the standard for a motion to dismiss under Rule 12(b)(6).
21 *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

22 For a motion under either rule, the question presented is not whether the plaintiff will prevail in
23 the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer*
24 *v. Rhodes*, 416 U.S. 232, 236 (1974). In answering this question, the Court must assume that the
25 plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher*
26 *v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

27 While Rule 12(c) of the Federal Rules of Civil Procedure does not expressly provide for partial
28 judgment on the pleadings, neither does it bar them; it is common to apply Rule 12(c) to individual

2

causes of action. *See Moran v. Peralta Community College Dist.*, 825 F. Supp. 891, 893 (N.D. Cal. 1993). When a court finds the pleadings deficient, it must then decide whether to grant leave to amend. In general, leave to amend is only denied if it is clear that amendment would be futile and "that the deficiencies of the complaint could not be cured by amendment." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam).

## DISCUSSION

As mentioned above, Mitsui Taiwan moves for dismissal on the grounds that this Court lacks both personal jurisdiction and subject matter jurisdiction.

**I.   Personal Jurisdiction**

Mitsui Taiwan argues that the Due Process Clause of the United States Constitution forbids it from being subjected to this Court's jurisdiction. In order for a court to exercise jurisdiction over a non-resident defendant, the defendant must have the requisite minimum contacts with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In this instance, the relevant forum for this minimum contacts analysis is the United States. *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1415-16 (9th Cir. 1989).

There are two forms of personal jurisdiction: "specific" and "general." "A court may exercise specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). "Alternatively, a defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contacts with the forum." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984)).

The plaintiff has the burden of establishing the district court's personal jurisdiction over a defendant. *Doe I v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (per curiam). However, a district court should not act on the defendant's motion to dismiss without first holding an evidentiary hearing.

3

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). Therefore, the plaintiff need only make a *prima facie* showing of jurisdiction to avoid the defendant's motion to dismiss. *Id.*; *cf. Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Unless directly contravened, a plaintiff's version of the facts is taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Unocal*, 248 F.3d at 922 (quoting *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (holding that "[b]ecause the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [plaintiff's] version of events for purposes of this appeal").

Mitsui Taiwan argues that this Court may not exercise either general or specific jurisdiction over it. It argues that general jurisdiction is lacking because it has virtually no contacts with the United States. According to an affidavit from Makoto Ichikawa, the General Manager of Mitsui Taiwan, Mitsui Taiwan is headquartered in and organized under the laws of Taiwan, has no presence in the United States, and has never sold or distributed TFT-LCD panels anywhere in the United States. *Id.* at ¶2-6; *see also id.* at ¶6 (stating that Mitsui Taiwan's "sales of TFT-LCD panels and products have been limited to Taiwan and few other countries outside North America."); *id.* at ¶9 ("[Mitsui Taiwan's] only sales in the United States have been of products not related to TFT-LCD products[,] occurred in a single year from 2002 to 2006 [and] constituted less than 1 percent of [Mitsui Taiwan's] income for that year . . . ."). Similarly, Mitsui Taiwan argues that its lack of contacts is fatal to any claim of specific jurisdiction. It argues that it has never "purposefully availed" itself of the privilege of conducting TFT-LCD business in the United States, and that Electrograph's claims therefore cannot "arise out of" any U.S.-related activities. *See* Ichikawa Decl., ¶7 (stating that Mitsui Taiwan has never "billed or invoiced," "negotiated," "received revenue," "shipped," or otherwise "entered into any agreements for the sale or distribution of TFT-LCD panels or products in the United States"); *id.* at ¶10 ("[Mitsui Taiwan] has never had any meetings or discussions with any other defendant or alleged coconspirator in the United States regarding any issue related to TFT-LCD panels or products.").

Electrograph does not dispute any of the facts asserted in this declaration, and thus apparently

4

concedes that, standing alone, Mitsui Taiwan is not subject to the personal jurisdiction of this Court. Electrograph nonetheless argues that this Court may exercise jurisdiction over Mitsui Taiwan because it is a member of the Mitsui corporate enterprise, which Electrograph refers to as a "single integrated entity." *See* Opp'n at 5. This enterprise consists of the Japanese parent, Mitsui, and its wholly owned subsidiaries Mitsui Taiwan and Mitsui USA. Compl. at ¶ 66; Iovieno Decl., Exh. 1.[1] Electrograph argues that the Court may impute the collective contacts that Mitsui and Mitsui USA have with the United States to Mitsui Taiwan. *See* Opp'n at 11 ("Mitsui Taiwan does not and cannot in good faith contest that the Court has jurisdiction over Mitsui. Given that Mitsui acts as a single integrated entity . . . the Court may exercise personal jurisdiction over Mitsui Taiwan.").

On occasion, courts have exercised personal jurisdiction over a foreign corporation based upon its close relationship with a United States affiliate. Usually this occurs in the context of a foreign parent and its American subsidiary. The general rule is that "[t]he existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Unocal*, 248 F.3d at 925. The Ninth Circuit, however, recognizes two exceptions to this general rule: the "alter ego" exception and the "agency" exception. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir. 2011).

The alter ego exception "is predicated upon a showing of parental control over the subsidiary" and requires:

> (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice. The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.

*Id.* (quoting *Unocal*, 248 F.3d at 926). The agency exception "is predicated upon a showing of the special importance of the services performed by the subsidiary" and is satisfied by:

> a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.

*Id.* (quoting *Unocal*, 248 F.3d at 928); *see also Unocal*, 248 F.3d at 926 ("Nonetheless, if the parent and

---

[1] The Court GRANTS Electrograph's unopposed request for judicial notice.

subsidiary are not really separate entities, or one acts as an agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation." (internal quotation marks omitted)).

Although these cases generally involve parent-subsidiary relationships, on occasion courts have applied their principles to broader corporate relationships. This Court, for example, previously found specific personal jurisdiction over a foreign parent corporation and its foreign subsidiaries based upon their close relationship to an American company, as well as the foreign corporations' direct involvement in the events leading to the litigation. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 812 (N.D. Cal. 2004) ("Unilever's own literature explains that the companies within the group act as 'a single entity with a single management team,' that they co-operate in all areas, and – of signal importance – that they exchange all relevant business information.").

Although there is some support for Electrograph's "single integrated entity" theory of jurisdiction, the Court finds that the exercise of jurisdiction would not be appropriate here. The primary problem with Electrograph's theory is that no "single integrated entity" allegations appear in its complaint. Rather, the complaint's allegations about the Mitsui corporate family are limited to the allegations (1) that Mitsui Taiwan is a subsidiary of Mitsui, compl. at ¶66; (2) that Mitsui Taiwan attended a series of bilateral meetings with LCD manufacturers, where it "acted as an agent of Sanyo Consumer and reached agreements with other competitors about prices for TFT-LCD Products sold in the United States and elsewhere," compl. at ¶126; and (3) that Mitsui "had at least one bilateral meeting" in 2001 where it acted as "an agent for defendant Epson Japan," compl. at ¶129. The complaint does not treat the Mitsui corporate family as a "single integrated entity." Indeed, the complaint does not even mention Mitsui USA.

Electrograph argues that its complaint reflects its theory of jurisdiction in a provision that states: "[w]hen Plaintiffs refer to a corporate family or companies by a single name in their allegations of participation in the conspiracy, it is to be understood that the Plaintiffs are alleging that one or more employees or agents of entities within the corporate family engaged in conspiratorial meetings on behalf of every company in that family." Compl. at ¶ 134. Given the extremely limited references to Mitsui and Mitsui Taiwan in the complaint, however, this general provision cannot save Electrograph's

6

allegations.

In light of the dearth of allegations regarding Mitsui's corporate structure, Electrograph has provided the Court with a number of items of extrinsic evidence purporting to establish that Mitsui acts as a "single integrated entity." The evidence it has provided, however, is inadequate to support this theory. To begin with, little of this information concerns Mitsui's relationship with Mitsui Taiwan; the bulk of it relates to Mitsui USA. *See*, *e.g.*, Iovieno Decl., Exh. 1 at 55 (stating that Mitsui USA carries out business activities "in collaboration with the operating segments of the head office in Japan"); Exh. 2 at 6 (Mitsui USA "has significant transactions with Mitsui Japan and its subsidiaries and affiliates"); Exh. 2 at 24 (noting overlap between management personnel of Mitsui and Mitsui USA).

The evidence Electrograph has provided that relates to Mitsui Taiwan is not convincing evidence of a "single integrated enterprise." For example, Electrograph points to Mitsui's SEC filings, which identify Mitsui Taiwan and Mitsui USA as "overseas offices." They also state that Mitsui's subsidiaries "provide market information to each other and cooperate in developing various business opportunities." Iovieno Decl., Exh. 1 at 22; *see also id.* at 60 ("We are a global general trading company and we conduct our business with our subsidiaries and associated companies."). The Ninth Circuit has made clear, however, that "references [in public filings] to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship." *Unocal*, 248 F.3d at 928. Other items Electrograph has provided are consistent with its single integrated entity theory, but do little to establish that Mitsui actually operated in an integrated fashion. *See* Iovieno Decl, Exh. 12 (contract between High Tech Computer Corporation ("HTC") and Mitsui in which HTC agrees to purchase LCD modules "from the Seller (or any of the Seller or its subsidiary including [Mitsui Taiwan]) . . . ."); Exh. 13 (Sanyo presentation touting its "World Wide Sales & Support Network" and identifying Mitsui, Mitsui USA, and Mitsui Taiwan as parts of that network).

By far the most compelling evidence that Electrograph has provided is evidence that both Mitsui Taiwan and Mitsui USA participated in the conspiracy. For example, Electrograph relies on one document produced in this litigation by Chunghwa memorializing a meeting with Mitsui Taiwan. The document suggests that Mitsui Taiwan shared customer and pricing information with Chunghwa. *Id.*, Exh. 14; *see also id.*, Exh. 10 at ¶2 ("Between 2001 and 2004, [Chunghwa] employees met and

1 exchanged information with employees of . . . Mitsui Busan (the Taiwanese agent for Sanyo Epson)."). 2 Other evidence produced in discovery suggests that Mitsui USA held discussions with a Samsung representative in the United States. *Id.*, Exh. 9 (stating that Samsung representative discussed "pricing, volume, current status, as far as shipments, things of that nature . . . ."). Such evidence may suggest that the Mitsui entities participated in the conspiracy as a single unit, but it is entirely speculative to conclude that Mitsui Taiwan and Mitsui USA acted in a coordinated manner. There is no evidence that the Mitsui entities worked together, as opposed to independently carrying out duties requested by Sanyo. *Cf. Concat* (finding that personal jurisdiction existed over foreign subsidiary in part because patent at issue originated from foreign subsidiary).

The Court finds that Electrograph has failed to plead or otherwise make out a prima facie case of personal jurisdiction over Mitsui Taiwan. Accordingly, it GRANTS Mitsui Taiwan's motion to dismiss for lack of personal jurisdiction. The Court also GRANTS Electrograph leave to amend its complaint to set forth its theory of jurisdiction over Mitsui Taiwan. Its amended complaint must be filed by **September 23, 2011**.

## II.    Subject Matter Jurisdiction

Mitsui Taiwan next moves to dismiss the complaint for lack of subject matter jurisdiction.[2] It claims that the Foreign Trade Antitrust Improvements Act of 1984 ("FTAIA") bars Electrograph's claims against Mitsui Taiwan. The FTAIA sets forth a "general rule placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach. It then brings such conduct back within the Sherman Act's reach *provided that* the conduct *both* (1) sufficiently affects American commerce, *i.e.*, it has a 'direct, substantial, and reasonably foreseeable effect" on American domestic, import, or (certain) export commerce, *and* (2) has an effect of a kind that antitrust law considers harmful, *i.e.*, the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'" *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,

---

[2] Although the Court concludes that it lacks personal jurisdiction over Mitsui Taiwan, it reaches the question of subject matter jurisdiction to ensure that Electrograph's request to amend its complaint would not be futile. *See Broughton*, 622 F.2d at 460 (holding that leave to amend should be granted unless amendment would be futile and "the deficiencies of the complaint could not be cured by amendment.").

8

542 U.S. 155, 162 (2004) (quoting 15 U.S.C. § 6a(1), (2)) (emphasis in original). Mitsui Taiwan claims that its conduct was entirely foreign in nature and therefore cannot fall under this "domestic injury" exception to the FTAIA. The Court disagrees.

Electrograph asserts claims against Mitsui Taiwan based on its alleged role as agent for Sanyo in the antitrust conspiracy. For example, the complaint alleges that Mitsui Taiwan "participated in multiple bilateral meetings . . . and agreed on prices and supply levels for TFT-LCD Products. . . . At that and other meetings [Mitsui Taiwan] acted as an agent of Sanyo Consumer and reached agreements with other competitors about prices for TFT-LCD Products sold in the United States and elsewhere." Complaint at ¶ 126.

Given that Sanyo's conduct is alleged to have caused domestic injury, Electrograph's claims fall within the domestic-injury exception to the FTAIA. Because jurisdiction exists over those claims, Mitsui may be held liable for its participation on Sanyo's behalf.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for judgment on the pleadings and for dismissal. Plaintiffs may file an amended complaint by **September 23, 2011**. Docket No. 70 in 10-0117; Docket No. 2892 in 07-1827.

**IT IS SO ORDERED.**

Dated: August 29, 2011

SUSAN ILLSTON
United States District Judge