BRUCE L. SIMON (Bar No. 96241)
  bsimon@pswplaw.com
**PEARSON, SIMON, WARSHAW & PENNY, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008

RICHARD M. HEIMANN (Bar No. 63607)
  rheimann@lchb.com
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 30th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile:  (415) 956-1008

*Co-Lead Counsel for the Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. MDL 3:07-md-1827 SI |
| | **CLASS ACTION** |
| This Document Relates to: | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| ALL DIRECT PURCHASER ACTIONS | |

Date:     October 4, 2011
Time:     4:00 p.m.
Place:    Courtroom 10, 19th Floor
          The Honorable Susan Illston

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 4, 2011, at 4:00 p.m., in the Courtroom of the

Honorable Susan Illston, United States District Judge for the Northern District of California,

located at 450 Golden Gate Avenue, San Francisco, California, the Direct Purchaser Class

830996.1

MDL 3:07-md-1827 SI

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   Plaintiffs will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e),

2   for entry of an Order:

3             1.      Preliminarily approving the settlements with the Chimei, HannStar,

4                     Hitachi, LG Display, Mitsui, Samsung, Sanyo, and Sharp Defendants;

5             2.      Directing distribution of notice of the settlements to the Class;

6             3.      Approving the proposed claim form and preliminarily approving the

7                     proposed Plan of Allocation;  and,

8             4.      Setting a schedule for the final settlement approval process.

9        The grounds for this motion are that the proposed Class settlements are within the range of

10   being finally approved as fair, reasonable, and adequate.

11       This motion is based on this Notice of Motion and Motion, the supporting Memorandum of

12   Points and Authorities, the accompanying Declaration of Bruce L. Simon, the LCD Direct-

13   Purchaser Class Settlement Agreements, any papers filed in reply, the argument of counsel, and all

14   papers and records on file in this matter.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I.      INTRODUCTION....................................................................................................1

II.     PROCEDURAL HISTORY .....................................................................................2

III.    SUMMARY OF SETTLEMENT NEGOTIATIONS ..............................................4

        A.      Settlement Discussions With Chimei. ..........................................................5

        B.      Settlement Discussions With HannStar. .......................................................5

        C.      Settlement Discussions With Hitachi. ..........................................................6

        D.      Settlement Discussions With LG Display. ...................................................6

        E.      Settlement Discussions With Mitsui. ...........................................................6

        F.      Settlement Discussions With Samsung. ........................................................7

        G.      Settlement Discussions With Sanyo...............................................................7

        H.      Settlement Discussions With Sharp. .............................................................7

IV.     TERMS OF THE SETTLEMENT ..........................................................................8

        A.      Consideration. ..............................................................................................8

        B.      Release. .........................................................................................................9

V.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS ...............9

        A.      Class Action Settlement Procedure. .............................................................9

        B.      Standards For Settlement Approval. ...........................................................10

        C.      The Proposed Settlements Are Within The Range Of Reasonableness. .................11

VI.     PROPOSED PLAN OF NOTICE ..........................................................................15

        A.      The Notice Plan Is The Same One Used To Notify The Class Of The Chunghwa And Epson Settlements And The Certified Classes...............................16

        B.      The Form Of Notice Should Be Approved. ................................................17

        C.      The Class Members Should Not Be Given Another Opportunity To Opt Out...................................................................................................17

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

VII.     PROPOSED PLAN OF ALLOCATION ..................................................................19

VIII.    ATTORNEYS' FEES AND COSTS ......................................................................21

IX.      THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE...............22

X.       CONCLUSION ...................................................................................................22

ii                                    MDL 3:07-md-1827 SI

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Amchem Products v. Windsor,*
   521 U.S. 591 (1997) ...................................................................................................17

*In re Automotive Refinishing Paint Antitrust Litigation,*
   MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004)...................................14

*Churchill Village, L.L.C. v. General Electric,*
   361 F.3d 566 (9th Cir. 2004).....................................................................................10

*In re Citric Acid Antitrust Litigation,*
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ....................................................................19

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992)..............................................................................10, 11

*In re Corrugated Container Antitrust Litigation, Case No. M.D.L. 310,*
   1981 WL 2093 (S.D. Tex. June 4, 1981) ..................................................................15

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006)......................................................................................19

*Fisher Brothers v. Mueller Brass Co.,*
   630 F. Supp. 493 (E.D. Pa. 1985) .............................................................................15

*Fisher Brothers v. Phelps Dodge Industries, Inc.,*
   604 F. Supp. 466 (E.D. Pa. 1985) ............................................................................15

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1988)...................................................................................11

*Kincade v. General Tire & Rubber Co.,*
   635 F.2d 501 (5th Cir. 1981).....................................................................................19

*Klein v. O'Neal, Inc.,*
   705 F. Supp. 2d 632 (N.D. Tex. 2010)......................................................................19

*In re Linerboard Antitrust  Litigation,*
   321 F. Supp. 2d 619 (E.D. Pa. 2004) ........................................................................14

*In re Lloyds' America Trust Fund Litigation,*
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................................20

*McElmurry v. U.S. Bank National Association,*
   495 F.3d 1136 (9th Cir. 2007)...................................................................................18

*In re Mercury Interactive Corp. Sec. Litigation,*
   618 F.3d 988 (9th Cir. 2010)......................................................................................22

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*In re Mid-Atlantic Toyota Antitrust Litigation,*
  564 F. Supp. 1379 (D. Md. 1983) ................................................................15

*In re NASDAQ Market Makers Antitrust Litigation,*
  176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................10

*In re Plastic Tableware Antitrust Litigation,*
  Case No. 94-CV-3564, 1995 WL 723175 (E.D. Pa. Oct. 25, 1995) ..........................14

*Officers for Justice v. Civil Serv. Commission,*
  88 F.2d 615 (9th Cir. 1982), ............................................................10, 18, 19

*In re Pacific Enterprise Sec. Litigation,*
  7 F.3d 373 (9th Cir. 1995) .........................................................................10

*In re Paine Webber Ltd. Partnership Litigation,*
  171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................20

*In re Rubber Chemicals Antitrust Litigation,*
  32 F.R.D. 346 (N.D. Cal. 2005) ..................................................................15

*In re Shopping Carts Antitrust Litigation,*
  983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ......................................................14

*In re Tableware Antitrust Litigation,*
  84 F. Supp. 2d 1078 (N.D. Cal. 2007) .........................................................17

*Van Bronkhorst v. Safeco Corp.,*
  29 F.2d 943 (9th Cir. 1976) ......................................................................10

*In re Vitamins Antitrust Litigation,*
  000 WL 1737867 (D.D.C. Mar. 31, 2000) ....................................................20

### Docketed Cases

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation (N.D. Cal.),*
  Case No. M-02-1486-PJH (JCS) ..........................................................14, 18, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Direct Purchaser Class Plaintiffs ("Plaintiffs") move this Court for an order preliminarily approving Class settlements reached with Defendants Chimei Innolux Corporation, Chi Mei Corporation, Chi Mei Optoelectronics Corporation, CMO Japan Co., Ltd., Chi Mei Optoelectronics USA, Inc., Nexgen Mediatech, Inc., and Nexgen Mediatech USA, Inc. ("Chimei"); HannStar Display Corporation ("HannStar"); Hitachi, Ltd., Hitachi Displays, Ltd., and Hitachi Electronic Devices (USA), Inc. ("Hitachi"); LG Display Co. Ltd. and LG Display America, Inc. ("LG Display"); Mitsui & Co. (Taiwan), Ltd. ("Mitsui"); Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Semiconductor, Inc. ("Samsung"); Sanyo Consumer Electronics Co., Ltd. ("Sanyo"); and Sharp Electronics Corporation and Sharp Corporation ("Sharp") (collectively the "Settling Defendants"). The Settling Defendants are paying a total of $388,022,242 and will provide cooperation in exchange for a release of the Class Members' claims.  Moreover, the Settling Defendants' sales remain in the case for purposes of computing Plaintiffs' treble damages claim against the non-settling defendants (the AUO and Toshiba Defendants).

The Settling Defendants also agree as part of their settlement consideration to cooperate with Plaintiffs by providing certain information, including, depending on each settlement agreement's terms, information and witnesses to authenticate documents, and testimony relating to the existence, scope, and implementation of the alleged conspiracy.  The two defendants that settled previously, Chunghwa and Epson, provided cooperation as part of their settlement consideration.  This cooperation has proved very valuable in understanding the nature of the alleged conspiracy and the agreements reached to maintain and, at times to increase, TFT-LCD prices and to restrict production.  Plaintiffs anticipate that the cooperation of the Settling Defendants will be useful in trying the case against the non-settling defendants.

The question at the preliminary approval stage is whether a settlement is within the range of possible approval to justify sending and publishing notice to the class and scheduling final

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   approval proceedings, and not whether the settlement is fair, reasonable, and adequate.  The

2   settlements here were reached after extensive arm's-length negotiations between experienced and

3   informed counsel, and easily meet the standard for preliminary approval.

4           Plaintiffs also respectfully request that the Court approve the proposed forms of notice and

5   claim form submitted herewith, allow no further opt outs from the proposed settlements, and

6   preliminarily approve the plan of allocation.

7   **II.      <u>PROCEDURAL HISTORY</u>**

8           This multidistrict litigation arises from a conspiracy to fix the prices of Thin Film

9   Transistor-Liquid Crystal Display ("TFT-LCD") products.  *See* Declaration of Bruce L. Simon in

10  Support of Motion for Preliminary Approval of Class Settlement with Defendants Chimei,

11  Hannstar, Hitachi, LG Display, Mitsui, Samsung, Sanyo, and Sharp ("Simon Decl."), ¶ 3.  The

12  first cases were filed in December 2006.  *Id.*  The Judicial Panel on Multidistrict Litigation in

13  April 2007 granted a motion for pretrial coordination pursuant to 28 U.S.C. § 1407 and transferred

14  all actions to this Court.  483 F. Supp. 2d 1353 (J.P.M.L. 2007).

15          Because of the criminal investigation by the U.S. Department of Justice ("DOJ"), this

16  Court on September 25, 2007, partially stayed discovery.  2007 WL 2782951 (N.D. Cal. Sept. 25,

17  2007).  Plaintiffs were not allowed access to the documents the Defendants had produced to the

18  DOJ, to take any depositions, exchange initial disclosures, or propound any discovery requests

19  regarding the conspiracy's operations, participants, and effects.  Plaintiffs were only permitted to

20  propound limited interrogatories to determine the amount of Defendants' sales and to identify their

21  officers and executives.  Simon Decl., ¶ 3.  On May 27, 2008, the Court continued the stay of

22  merits document discovery until January 9, 2009.  (Doc. No. 631.)

23          Defendants moved to dismiss the complaint, twice jointly and several times separately.

24  Simon Decl., ¶ 4.  The Court granted and denied in part the first wave of motions.  586 F. Supp. 2d

25  1109 (N.D. Cal. 2008).  After Plaintiffs re-pled certain aspects of their claims, the Court denied in

26  total the second wave.  599 F. Supp. 2d 1179 (N.D. Cal. 2009).

27          While the Defendants' motions to dismiss were litigated, Plaintiffs propounded and

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  responded to written discovery.  Plaintiffs also met and conferred with each Defendant about

2  discovery issues, litigated discovery motions, and successfully opposed a writ petition by the

3  Toshiba Defendants filed with the Ninth Circuit Court of Appeals.  Plaintiffs also obtained

4  information and documents from third-parties and consulted with experts.  Simon Decl., ¶ 5.

5  On January 9, 2009, upon the expiration of the discovery stay, Defendants began

6  producing documents to Plaintiffs they had produced to the DOJ and/or the grand jury.  *Id.*, ¶ 6.

7  The Defendants' document productions have taken place on a rolling basis.  Many of the

8  documents are in Korean, Japanese, and Chinese, and have been loaded into a database, translated,

9  and analyzed.  In addition to the review of documents produced to the grand jury, Plaintiffs

10  propounded separate production requests and interrogatories to all Defendants.  To date, Plaintiffs

11  have received from Defendants more than 7.8 million documents, totaling over 40 million pages,

12  which they have loaded onto the electronic database.  *Id.*  A team of Plaintiffs' counsel continue to

13  review these documents.

14  On September 17, 2009, Plaintiffs commenced merits depositions.  To date, Plaintiffs have

15  taken more than 70 depositions of Defendants' employees, officers, and corporate designees.  *Id.*,

16  ¶ 7.  With respect to the Settling Defendants, Plaintiffs have taken 56 depositions of their

17  witnesses and reviewed millions of pages of the documents they produced.  *Id.*

18  Plaintiffs filed their motion for class certification on April 3, 2009.  On March 28, 2010,

19  the Court certified the two Direct Purchaser classes, one for panel purchasers and the other for

20  finished product (televisions, notebooks, and monitors) purchasers.  267 F.R.D. 291 (N.D. Cal.

21  2010)  On June 17, 2010, the Ninth Circuit denied Defendants' Federal Rule of Civil Procedure

22  23(f) petition to appeal.  Simon Decl., ¶ 8.

23  Plaintiffs and Defendants are still in the process of exchanging expert reports.  The initial

24  round of reports, served by Plaintiffs on May 25, 2011, were written by Dr. Edward Leamer,

25  Dr. Kenneth Flamm, and Dr. Adam Fontecchio.  All three of Plaintiffs' experts have been

26  deposed (Dr. Flamm was deposed on June 24, 2011; Dr. Leamer's was deposed on July 8, 2011;

27  Dr. Fontecchio was deposed on August 3, 2011).  On July 22, 2011, two of Defendants' experts,

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  Dr. Dennis Carlton and Dean Edward Snyder, served their separate rebuttal reports.  On July 27,

2  2011, Defendants' expert Kenneth Werner served his rebuttal report.  On July 28, 2011,

3  Defendants' expert Dr. Barry Harris served his rebuttal report.   Dean Snyder was deposed on

4  August 8, 2011, Dr. Carlton was deposed on August 17, 2011, Mr. Werner was deposed on

5  August 18, 2011, and Dr. Harris was deposed on August 19, 2011.  Plaintiffs' experts' reply

6  reports were served on August 29, 2011.  Defendants' experts may serve sur-rebuttal reports by

7  September 9, 2011 that respond to any argument or modeling newly advanced for the first time by

8  Plaintiffs in their reply reports.  If Plaintiffs' reply reports contain extensive new modeling and

9  formulas, Defendants shall notify the Special Master and request an extension until September 13,

10  2011 to serve sur-rebuttal reports.  *Id.*, ¶ 9.

11      The trial is scheduled to begin on February 13, 2012.  A criminal trial against non-settling

12  defendant AUO and its executives will begin on November 14, 2011.

13      This is the third motion for preliminary settlement approval that Direct Purchaser Class

14  Plaintiffs have filed.  A joint Notice was published and mailed to notify Class members of those

15  two prior settlements and the certified litigation classes, and the opt-out period expired on

16  January 4, 2011.  *Id.*, ¶ 10.  The Court, on February 18, 2011, granted final approval to the

17  settlements entered into with the Epson and Chunghwa defendants.  (Doc. Nos. 2475 and 2476.)

18  **III.   SUMMARY OF SETTLEMENT NEGOTIATIONS**

19      Settlement discussions began as early as March of 2009, as described below.  Nine months

20  later, settlement discussions involving a mediator commenced pursuant to the Court's order that

21  the first mediation session be completed by February 14, 2011.  (*See* Order Re:  Pretrial and Trial

22  Schedule, Doc. No. 2165.)  There was a preliminary mediation session in San Francisco,

23  conducted by Professor Eric D. Green on January 13, 2011.  Professor Green has taught

24  negotiation, mediation, complex ADR processes, resolution of mass torts, and evidence at Boston

25  University School of Law.  He is Co-Founder and Principal of Resolutions LLC, a mediation,

26  arbitration, and ADR provider in Boston.  Professor Green is one of the most highly respected and

27  competent mediators in the country.  A copy of Professor Green's resume is attached as Exhibit A

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   to the Simon Declaration.

2       All Defendants and all Plaintiffs—including Indirect Purchaser Class Plaintiffs and Direct

3   Action Plaintiffs—attended the initial mediation session.  The next sessions took place on

4   February 15 and 16, 2011 in San Francisco.  Thereafter, in March of 2011, a series of mediations

5   occurred between Plaintiffs and specific Defendants, as described below.  Simon Decl., ¶ 11.

6       The settlement negotiations consisted of mediation sessions and multiple telephonic and

7   face-to-face conferences as well as email messages on an arm's-length and non-collusive basis

8   among counsel who are experienced in antitrust law and class actions.  *Id.*, ¶ 12.  Part of the

9   mediation process included the exchange of commerce information about panels and finished

10  products in an effort to have an agreed upon basis for negotiations.  In some instances, these

11  commerce numbers were relatively close and in other situations, they were far apart.  Moreover,

12  counsel were assisted in this process by the mediator, who was effective in assisting the parties in

13  coming to fair and equitable resolutions despite the positions taken by counsel and their clients.

14  *Id.*

15      **A.**    <u>**Settlement Discussions With Chimei.**</u>

16      Settlement negotiations with Chimei's counsel, Christopher Hockett of Davis Polk &

17  Wardwell LLP, occurred at a mediation session on May 18, 2011.  The terms of the settlement

18  were vigorously negotiated and settlement was reached with the assistance of the mediator.  *Id.*, ¶

19  13.  Plaintiffs and Chimei formalized their settlement agreement on July 15, 2011 by signing the

20  TFT-LCD Direct Purchaser Class Chimei Settlement Agreement (the "Chimei Agreement")

21  (attached to the Simon Decl. as Exhibit B).

22      **B.**    <u>**Settlement Discussions With HannStar.**</u>

23      Plaintiffs' counsel commenced settlement negotiations with HannStar's counsel, Hugh

24  Bangasser and Ramona Emerson of K&L Gates, LLP, on February 15 and 16, 2011 at a mediation

25  session in San Francisco.  *Id.*, ¶ 14.  The negotiations occurred through several telephone calls and

26  e-mail messages conducted through the mediator over a number of months.  On June 3, 2011,

27  Plaintiffs and HannStar reached agreement on the principal settlement terms.  *Id.*  Those terms

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   were vigorously negotiated with the mediator's assistance.  *Id.*  Plaintiffs and HannStar formalized

2   their settlement agreement on August 10, 2011 by signing the TFT-LCD Direct Purchaser Class

3   Settlement Agreement (the "HannStar Agreement") (attached to the Simon Decl. as Exhibit C).

4           **C.**     **Settlement Discussions With Hitachi.**

5          Plaintiffs' counsel commenced settlement negotiations with the Hitachi's counsel, Kent

6   Roger of Morgan, Lewis & Bockius, LLP, during a meeting in San Francisco on March 20, 2009.

7   *Id.*, ¶ 15.  On June 3, 2010, counsel for Plaintiffs and Hitachi met again in San Francisco.  In

8   February, 2011 mediation sessions began with the assistance of Professor Green.  Through the

9   continued use of the mediator, on May 22, 2011, Plaintiffs and Hitachi reached an agreement on

10  the principal settlement terms, which were confirmed in a Memorandum of Understanding.  *Id.*

11  The terms of the settlement were vigorously negotiated and it took over two months to reach an

12  agreement.  *Id.*  Plaintiffs and Hitachi signed the TFT-LCD Direct Purchaser Class Settlement

13  Agreement (the "Hitachi Agreement") (attached to the Simon Decl. as Exhibit D) on August 3,

14  2011.

15          **D.**     **Settlement Discussions With LG Display.**

16         Plaintiffs' counsel commenced settlement negotiations with counsel for LG Display,

17  Michael Lazerwitz of Cleary, Gottlieb, Steen & Hamilton LLP, in November of 2009.  *Id.*, ¶ 16.

18  The first mediation session with Professor Green was on February 15 and 16, 2011.  For the next

19  two months Professor Green worked with the parties through multiple telephone calls and e-mails.

20  On April 5, 2011, Plaintiffs and LG Display reached agreement on the principal terms of

21  settlement, subject to the approval of LG Display's Board of Directors.  *Id.*  The terms of the

22  settlement were vigorously negotiated; it took almost a year and a half for the parties to reach an

23  agreement.  *Id.*  Plaintiffs and LG Display formalized their settlement agreement on June 13, 2011

24  by signing the TFT-LCD Direct Purchaser Class—LG Display Settlement Agreement (the "LG

25  Display Agreement") (attached to the Simon Decl. as Exhibit E).

26          **E.**     **Settlement Discussions With Mitsui.**

27         Plaintiffs' counsel commenced settlement negotiations with Mitsui's counsel, Ernest

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    Vargo and Paul Eyre of Baker Hostetler, in February of 2011.  *Id.*, ¶ 17.  On February 22, 2011,

2    Plaintiffs and Mitsui reached agreement on the principal terms of settlement.  *Id.*  The terms of the

3    settlement were vigorously negotiated by counsel via telephone and required the assistance of the

4    mediator.  *Id.*  Plaintiffs and Mitsui formalized their settlement agreement on August 10, 2011 by

5    signing the TFT-LCD Direct Purchaser Class Settlement Agreement (the "Mitsui Agreement")

6    (attached to the Simon Decl. as Exhibit F).

7             **F.      Settlement Discussions With Samsung.**

8             Plaintiffs' counsel commenced settlement negotiations with the Samsung's counsel, Robert

9    Wick of Covington & Burling, LLP, in March of 2011.  *Id.*, ¶ 18.  There was an initial mediation

10   session with Samsung on March 3-4, 2011 in San Francisco.  On April 11, 2011, Plaintiffs and

11   Samsung reached agreement on the principal terms of a settlement at a subsequent mediation

12   session.  *Id.*  The terms of the settlement were reached after negotiations that were facilitated by

13   the mediator.  *Id.*  Plaintiffs and Samsung formalized their settlement agreement on August 10,

14   2011 by signing the TFT-LCD Direct Purchaser Class—Samsung Settlement Agreement (the

15   "Samsung Agreement") (attached to the Simon Decl. as Exhibit G).

16            **G.      Settlement Discussions With Sanyo.**

17            Plaintiffs' counsel commenced settlement negotiations through Professor Green with

18   counsel for Sanyo, Nick Verwolf and Allison Davis, of Davis Wright Tremaine LLP, in February

19   of 2011.  *Id.*, ¶ 19.  With the assistance of Professor Green, on March 31, 2011, Plaintiffs and

20   Sanyo reached agreement on the principal terms of settlement.  *Id.*  Plaintiffs and Sanyo

21   formalized their settlement agreement on August 10, 2011 by signing the TFT-LCD Direct

22   Purchaser Class Settlement Agreement (the "Sanyo Agreement") (attached to the Simon Decl. as

23   Exhibit H).

24            **H.      Settlement Discussions With Sharp.**

25            Plaintiffs' counsel commenced settlement negotiations with Sharp's counsel, Richard

26   Taffet of Bingham McCutchen LLP, in June, 2010.  *Id.*, ¶ 20.  Counsel for Plaintiffs and Sharp

27   met in San Francisco on June 3, 2010 to discuss settlement.  There was a subsequent mediation

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   session with Sharp on March 5 and 6, 2011 in San Francisco.  Plaintiffs and Sharp reached an

2   agreement on June 29, 2011, during a mediation session which took place in Boston,

3   Massachusetts.  Thus, the settlement negotiations with Sharp lasted well over a year and were

4   vigorously negotiated.  *Id.*  Plaintiffs and Sharp formalized their settlement agreement on August

5   1, 2011 by signing the TFT-LCD Direct Purchaser Class—Sharp Entities Settlement Agreement

6   (the "Sharp Agreement") (attached to the Simon Decl. as Exhibit I).

7   **IV.**   **TERMS OF THE SETTLEMENT**

8      **A.**   **Consideration.**

9         The terms of the proposed class settlements are set forth fully in the separate settlement

10  agreements.  (Simon Decl., Exhs. B-I.)  Settling Defendants have agreed to pay the following

11  amounts in exchange for dismissals with prejudice and a release of claims:

12       Chimei:        $78,000,000    (Simon Decl., Exh. B, ¶ 7)

13       HannStar:      $14,900,000    (Simon Decl., Exh. C, ¶ 7)

14       Hitachi:       $28,000,000    (Simon Decl., Exh. D, ¶ 7)

15       LG Display:    $75,000,000    (Simon Decl., Exh. E, ¶ 6)

16       Mitsui:           $950,000    (Simon Decl., Exh. F, ¶ 7)

17       Samsung:       $82,672,242    (Simon Decl., Exh. G, ¶ 7)

18       Sanyo:          $3,500,000    (Simon Decl., Exh. H, ¶ 6)

19       Sharp:         $105,000,000   (Simon Decl., Exh. I, ¶ 7)

20       Total:         $388,022,242

21         Importantly, the settlements require every Settling Defendant to continue to assist

22  Plaintiffs in the prosecution of the case against the remaining Defendants.  *See, e.g.*, Simon Decl.,

23  Exhs. C, D, F, G, H and I.[1]  That cooperation includes, *inter alia*, authenticating documents and

24  producing witnesses for trial, depositions, and/or interviews.

25  _____

26  [1] *See, e.g.*, HannStar Agreement, Exh. C at ¶ 25; Hitachi Agreement, Exh. D at ¶¶ 25-28; Mitsui
    Agreement, Exh. F at ¶¶ 25-27; Samsung Agreement, Exh. G at ¶¶ 25-27; Sanyo Agreement, Exh.
27  H at ¶ 24; and, Sharp Agreement, Exh. I at ¶ 25.

28

_____
NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

B.    **Release.**

Upon final approval of the settlements, Plaintiffs and class members will release all claims they have against the Settling Defendants "concerning the manufacture, supply, distribution, sale or pricing of TFT-LCD products up to the date of execution" of the Agreements.  *Id.*, at ¶ 14 of Exhs. B, C, D, F and I; and, at ¶ 13 of Exhs. E and H.  However, the release does not include claims arising from the sale of TFT-LCD panels or finished products by other defendants, or their co-conspirators, including those that contain the Settling Defendants' TFT-LCD panels.  *Id.* Further, the release does not include claims for product defects, personal injury, or breach of contract.  *Id.*, at ¶ 16 of Exhs. B, C, D, F, G; and, at ¶ 15 of Exhs. E and H.

V.    **THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS**

A.    **Class Action Settlement Procedure.**

A class action may not be dismissed, compromised, or settled without the approval of the Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for class action settlement approval.  The Rule 23(e) settlement approval procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlements;

2.    Dissemination of notice of the settlements to all affected class members; and

3.    A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlements, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlements.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* 4 Newberg on Class Actions §§ 11.22, et seq. (4th ed.  2002) ("Newberg").

By way of this motion, the parties request that the Court take the first step in the settlement approval process and preliminarily approve the proposed settlements.  As the Court previously

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  certified the classes which are now being settled, and appointed representative plaintiffs and class

2  counsel, it need not certify settlement classes or make any appointments.

3  **B.      Standards For Settlement Approval.**

4      Rule 23(e) requires court approval of any settlement of claims brought on a class basis.

5  "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in

6  class action suits which are now an ever increasing burden to so many federal courts and which

7  frequently present serious problems of management and expense." *Van Bronkhorst v. Safeco*

8  *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); see also *Churchill Village, L.L.C. v. General Elec.*,

9  361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

10  1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The purpose of the

11  Court's preliminary evaluation of the proposed settlement is to determine whether it is within "the

12  range of reasonableness," and thus whether notice to the Class of the terms and conditions of the

13  settlement, and the scheduling of a formal fairness hearing, are worthwhile.  Preliminary approval

14  should be granted where "the proposed settlement appears to be the product of serious, informed,

15  non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

16  treatment to class representatives or segments of the class and falls within the range of possible

17  approval." *In re NASDAQ Market Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y.

18  1997).  Application of these factors here support an order granting the motion for preliminary

19  approval.

20      The approval of a proposed settlement of a class action is a matter of discretion for the trial

21  court.  *Churchill Village, supra*, 361 F.3d at 575.  In exercising that discretion, however, courts

22  recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a

23  settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits."

24  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub*

25  *nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983).  Furthermore, courts must give "proper

26  deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a

27  private consensual agreement negotiated between the parties to a lawsuit must be limited to the

28

1  extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

2  overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a

3  whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d

4  1011, 1027 (9th Cir. 1988) (quotations omitted).

5       To grant preliminary approval of this class action settlement, the Court need only find that

6  the settlement falls within "the range of reasonableness." *Newberg* § 11.25. *The Manual for*

7  *Complex Litigation* (Fourth) (2004) ("*Manual*") characterizes the preliminary approval stage as an

8  "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of

9  written submissions and informal presentation from the settling parties. *Manual* § 21.632. The

10  *Manual* summarizes the preliminary approval criteria as follows:

11       Fairness calls for a comparative analysis of the treatment of the class
         members vis-à-vis each other and vis-à-vis similar individuals with

12       similar claims who are not in the class. Reasonableness depends on
         an analysis of the class allegations and claims and the

13       responsiveness of the settlement to those claims. Adequacy of the
         settlement involves a comparison of the relief granted to what class

14       members might have obtained without using the class action
         process.

15

16  *Manual* § 21.62. A proposed settlement may be finally approved by the trial court if it is

17  determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at

18  1276. While consideration of the requirements for *final* approval is unnecessary at this stage, all

19  of the relevant factors weigh in favor of the settlements proposed here.[2] Therefore, the Court

20  should allow notice of the settlements to be disseminated to the Class.

21       **C.    The Proposed Settlements Are Within The Range Of Reasonableness.**

22       The proposed settlements meet the standards for preliminary approval. These settlements

23  are entitled to "an initial presumption of fairness" because they are the result of arm's-length

24  negotiations among experienced counsel. *Newberg* § 11.41. The monetary consideration,

25  _____

26  [2] Plaintiffs will address in detail each of the factors required for final settlement approval in their
    Motion for Final Approval of the Settlement, to be submitted following the issuance of notice to

27  the class.

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   $388,022,242 in cash, is substantial, particularly in light of the volume of Settling Defendants'

2   sales in the United States, and the cooperation is important.

3        As described above, at the time of the mediations which led to these settlements,

4   Defendants and Plaintiffs exchanged commerce information about panels and finished products

5   which was often divergent.  For most of the Settling Defendants, settlement negotiations were

6   preceded by attempting to reconcile the differences.  There were also differences related to what

7   percentage of the finished product sales were attributable to the value of the panel contained

8   therein.  In some instances, Plaintiffs and Defendants were able to reconcile the baseline

9   commerce numbers for settlement negotiations.  In other instances, the difference was, at least,

10   quantifiable so that it could be taken into account during the negotiations.  Simon Decl., ¶ 31.

11        Again, as described in the procedural history section above, subsequent to the completion

12   of the settlements at issue, the parties served expert reports.  The report of Plaintiffs' damage

13   expert, Dr. Edward Leamer of UCLA, was served on May 25, 2011, and the various defense

14   reports were served in late July, 2011.  Dr. Leamer served a reply report on August 29, 2011.

15   Dr. Leamer's reports were based on the data produced and/or obtained in the litigation.  The

16   defense experts have argued that there are little or no damages, and have excluded from their

17   analysis certain commerce than was conceded by the Settling Defendants in the negotiations.  In

18   analyzing the fairness of these settlements, the Court should consider that the Defendants are

19   adamant that the subject conspiracy was ineffective and unsuccessful, and that the damages are

20   very low, if non-existent.

21        In order to provide the Court with an understanding of the settlement amounts, the volume

22   of commerce that was used for settlement purposes for each Settling Defendant is set forth below.

23   The volume of commerce for the Settling Defendants is a subject of dispute between the parties

24   and there were, in some instances, ranges in the parties' respective volume of commerce numbers.

25   However, for purposes of settlement, the parties, in general, attempted to arrive at a volume of

26   commerce number that was within the ranges of the respective parties.  Moreover, of the

27   commerce for all Defendants, including Non-Settling Defendants, almost 90% of the panel and

28

12              MDL 3:07-md-1827 SI

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  over half of the finished product commerce opted out.[3]  In addition, by virtue of the class

2  definitions, both panel sales between Defendants and internal transfers are also excluded.  Lastly,

3  Defendants may have viewed what they paid in settlement as a percentage of the volume of

4  commerce from the standpoint of their exposure to joint and several liability, the evidence of their

5  participation in the alleged conspiracy and other factors that were not necessarily communicated to

6  Plaintiffs.

7  • The $78,000,000 settlement amount from Chimei is compared to a commerce

8    number of $464 million that was used for settlement purposes.  That settlement

9    represents 17% of the volume of commerce.  Simon Decl., ¶ 22.

10  • The $14,900,000 settlement amount from HannStar is compared to a commerce

11    number of $27.5 million that was used by Plaintiffs for settlement purposes.  That

12    settlement represents 54% of that volume of commerce.  *Id.*, ¶ 23.

13  • The $28,000,000 settlement amount from Hitachi is compared to a commerce

14    number of $167 million that was used for settlement purposes.  That settlement

15    represents 16% of the volume of commerce.  *Id.*, ¶ 24.

16  • The $75,000,000 settlement amount from LG Display is compared a commerce

17    number of $200 million that was used for settlement purposes.  That settlement

18    represents 37% of the volume of commerce.  *Id.*, ¶ 25.

19  • The settlement amount for Mitsui is $950,000.  Mitsui data did not show any sales

20    to Class members during the Class Period**.**  *Id.*, ¶ 26.

21  • The $82,672,242 settlement amount from Samsung is compared to a commerce

22    number of $900 million that was used for settlement purposes.  That settlement

23    represents 9% of the volume of commerce.  *Id.*, ¶ 27.

24  • The Settlement amount from Sanyo is $3,500,000. The LCD assets of Sanyo CE

25    were contributed to a joint venture between SANYO Electric Co., Ltd. and Seiko

26  _____

27  [3] For certain Defendants, the opt out percentages are higher.

28

13                                    MDL 3:07-md-1827 SI

Epson Imaging Devices ("SEID") effective October 1, 2004.  The joint venture was controlled by SEID (an Epson affiliate).  Epson subsequently purchased the remaining interests of the joint venture in December 2006.  All of the data and sales records pertaining to the LCD business were also transferred to Epson in October 2004.  Additionally, Sanyo CE sold most of its panels through trading companies in Japan.  *Id.*, ¶ 28.

- The $105,000,000 settlement amount from Sharp is compared to a commerce number of $950 million which was used for settlement purposes.  That settlement represents 11% of the volume of commerce.  *Id.*, ¶ 29.

- The total average volume of commerce being settled as between Settling Defendants and Plaintiffs is $2,708,500,000.  The total settlements of $388,022,242 represents 14% of that amount.  *Id.*, ¶ 30.[4]

These recoveries compare favorably to settlements approved in other price-fixing cases. *See, e.g.*, *In Re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, No. M-02-1486 PJH, slip. op. (N.D. Cal. Nov. 1, 2006) (approving settlements of 10.53% to 13.96% of sales); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (recovery represented approximately 2% of sales); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (granting final approval to settlement where recovery was 1.62% of sales); *In re Plastic Tableware Antitrust Litig.*, Case No. 94-CV-3564, 1995 WL 723175, at *1 (E.D. Pa. Oct. 25, 1995) (granting final approval to settlement where recovery was 3.5% of sales); *In re Shopping Carts Antitrust Litig.*, 1983 WL 1950, at *9

_____

[4] As set forth above, if the volume of commerce is viewed in the context of the Plaintiffs' and Defendants' expert reports, it is apparent that there are still significant disputes about the amount of commerce and damages.  Using an average volume of commerce from the relevant expert reports, and doing the same percentage calculation as set forth above, the total settlements are just over 18% of that average commerce.  Simon Decl., ¶ 30.  Because the expert reports have been designated "Highly Confidential" under the Protective Order, these numbers are generally stated. If the Court would like more specific numbers, they would have to be submitted for *in camera* review or under seal.  *Id.*

1   (S.D.N.Y. Nov. 18, 1983) (3% of sales); *Fisher Bros. v. Phelps Dodge Industries, Inc.*,

2   604 F.Supp. 466, 451 (E.D. Pa. 1985) (3% of sales); *Fisher Bros. v. Mueller Brass Co.*,

3   630 F.Supp. 493, 499 (E.D. Pa. 1985) (recoveries equal to 0.1%, 0.2%, 0.3%, 0.65%, 0.88%, and

4   2.4% of defendants' total sales).  Additionally, in *In re Rubber Chemicals Antitrust Litigation*, 232

5   F.R.D. 346 (N.D. Cal. 2005), a horizontal price fixing case in which some of the defendants had

6   entered guilty pleas in a related criminal proceeding, the Court, in the course of granting final

7   approval of the settlement, characterized a settlement representing 4% of the defendants' sales as

8   an "excellent recovery."

9           These settlements preserve Plaintiff's right to litigate against the non-settling defendants

10  for the entire amount of Plaintiff's damages based on joint and several liability.  *See In re*

11  *Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 WL 2093, at *17 (S.D. Tex.

12  June 4, 1981); Simon Decl., Exhs. B-I (Released claims do not preclude Plaintiffs from pursuing

13  any and all claims against other defendants except settling defendant).[5]

14          Finally, the settlements call for all of the Settling Defendants to cooperate with Plaintiffs.

15  This is a valuable benefit because it will save time, reduce costs, and provide access to

16  information, witnesses, and documents regarding the TFT-LCD conspiracy that might otherwise

17  not be available to Plaintiffs.  *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379,

18  1386 (D. Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor

19  for a court to consider in approving a settlement").  For all the aforementioned reasons, the

20  proposed settlements are within the range of obtaining final approval as fair, reasonable, and

21  adequate.

22  **VI.    PROPOSED PLAN OF NOTICE**

23          Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class

24

25  _____
    [5] *See, e.g.,* Chimei Agreement, Exh. B at ¶14; HannStar Agreement, Exh. C at ¶ 14; Hitachi
26  Agreement, Exh. D at ¶ 14; LG Display Agreement, Exh. E at ¶ 13; Mitsui Agreement, Exh. F at
    ¶ 14; Samsung Agreement, Exh. G at ¶14; Sanyo Agreement, Exh. H at ¶ 13; and, Sharp
27  Agreement, Exh. I at ¶ 14.

28

1  members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

2  Notice of a proposed settlement must inform class members of the following:  (1) the nature of the

3  pending litigation; (2) the general terms of the proposed settlement; (3) that complete information

4  is available from the court files; and (4) that any class member may appear and be heard at the

5  fairness hearing.  *See Newberg* § 8.32.  The notice must also indicate that the court will exclude

6  from the class any member who requests exclusion, that the judgment will bind all class members

7  who do not opt-out, and that any member who does not opt-out may appear through counsel.  Fed.

8  R. Civ. P. 23(c)(2)(B).

9      **A.**    <u>**The Notice Plan Is The Same One Used To Notify The Class Of The**</u>

10 <u>**Chunghwa And Epson Settlements And The Certified Classes.**</u>

11     Plaintiffs propose that the notice plan adopted and approved by the Court include:

12         1.    direct notice given by mail or email to each class member identified by

13 reasonable effort;

14         2.    a summary notice published in the national edition of The Wall Street

15 Journal; and,

16         3.    the posting of both forms of notice on a public website maintained by the

17 notice provider.

18     A formal fairness hearing, also called the final approval hearing, at which class members

19 may be heard regarding the settlements, and at which counsel may introduce evidence and present

20 argument concerning the fairness, adequacy, and reasonableness of the settlements.

21     This is the same plan of notice that the Court approved for notifying the Classes of the

22 class certification and settlements with Epson and Chunghwa.  Simon Decl., ¶ 34.  Moreover,

23 Plaintiffs now have a list of class members used for the previous notice which should make

24 dissemination of the notice easier this time.  Furthermore, many class members registered on-line

25 with the Claims Administrator, allowing email notification.

26     The content of the proposed Class Notice, which consists of a summary notice and a long

27 form notice, fully complies with due process and Rule 23.  (The proposed summary and long form

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   notices are attached to the Simon Decl. as Exhibits J and K.)  It provides the definition of the

2   class, describes the nature of the settlements, explains the procedure for making comments and

3   objections, and contains contact information to pose any questions.  The Class Notice describes

4   the terms of the settlements with the Settling Defendants, and informs class members of the

5   proposed plan of distribution.  The Class Notice provides the date, time, and place of the final

6   approval hearing, and informs class members that they may enter an appearance through counsel.

7   The Class Notice also informs class members how to exercise their rights, including to comment

8   on or object to the settlements, and make informed decisions regarding the proposed settlement,

9   and that the judgment will be binding upon them.  The Class Notice further informs the class

10  about the request for payment of Plaintiffs' attorneys' fees and costs.  Finally, the Class Notice

11  advises class members regarding the dismissal without prejudice of Tatung Corporation of

12  America, Inc. in case any class members choose to pursue claims against that defendant

13  individually.

14          **B.      The Form Of Notice Should Be Approved.**

15          The form of notice is "adequate if it may be understood by the average class member."

16  *Newberg* § 11.53.  Notice to the class must be "the best notice practicable under the

17  circumstances, including individual notice to all members who can be identified through

18  reasonable effort."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).  Publication notice is

19  an acceptable method of providing notice where the identity of specific class members is not

20  reasonably available.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

21  2007) (citing *Manual* § 21.311).  The Notice here, which is modeled on the previously-approved

22  Notice, is understandable.  Notice having already been sent once, the Class members' addresses

23  are as updated and verified as possible.

24          **C.      The Class Members Should Not Be Given Another Opportunity To Opt Out.**

25          There is no need for another opt-out period.  Fed. R. Civ. P. 23(e) states that "[t]he claims,

26  issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only

27  with the court's approval."  Subsection (e)(4) states "[i]f the class action was previously certified

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   under Rule 23(b)(3), the court *may* refuse to approve a settlement unless it affords a new

2   opportunity to request exclusion to individual class members who had an earlier opportunity to

3   request exclusion but did not do so."  Fed. R. Civ. P. 23(e)(4) (emphasis added).  However,

4   Rule 23(e)(4)'s plain language is permissive and courts have regularly found that class members

5   do not have to be afforded successive opportunities to opt out of settlements if they have had a

6   previous chance to opt out but not done so.  *See* Class Notices of Class Action Settlements issued

7   in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* (N.D. Cal.) Case No. M-

8   02-1486-PJH (JCS)) (Simon Decl., ¶ 35, Exhs. L, M, and N) (right to opt out in first notice, but no

9   right to opt out of two subsequent settlements.)

10   "In a class action, once the district court certifies a class under Rule 23, all class members

11   are bound by the judgment unless they opt out of the suit."  *McElmurry v. U.S. Bank Nat. Ass'n,*

12   495 F.3d 1136, 1139 (9th Cir. 2007).  Once a court has conducted a fairness hearing and entered a

13   judgment approving a settlement agreement, any class members, who did not opt out by the initial

14   opt out date, are legally bound to the terms of the settlement.  Fed. R. Civ. P. 23(e)(2).  Of course,

15   "[a]ny class member may object to the proposal if it requires court approval under this subdivision

16   (e)."  Fed. R. Civ. P. 23(e)(5).

17   The Ninth Circuit has held that an objection based on the settlement agreement not

18   allowing class members a second chance to opt out is insufficient to disrupt the settlement.  In

19   *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, the Ninth Circuit

20   held, that neither Rule 23(b)(3) nor due process required a second opt out period.  688 F.2d 615

21   (9th Cir. 1982).

22
23   . . . we have found no authority of any kind suggesting that due
     process requires that members of a Rule 23(b)(3) class be given a
     second chance to opt out.  We think it does not.  [Objector's]rights
24   are protected by the mechanism provided in the rule:  approval by
     the district court after notice to the class and a fairness hearing at
25   which dissenters can voice their objections, and the availability of
     review on appeal.  Moreover, to hold that due process requires a
26   second opportunity to opt out after the terms of the settlement have
     been disclosed to the class would impede the settlement process so
27   favored in the law.  "(A)llowing objectors to opt out would
     discourage settlements because class action defendants would not be
28   inclined to settle where the result would likely be a settlement

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1
2
3

applicable only to class members with questionable claims, with those having stronger claims opting out to pursue their individual claims separately." *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981).

4   *Officers for Justice, supra,* 688 F.2d at 635. Aside from disrupting the ability of parties to settle,

5   requiring successive opt out periods for each settlement would undermine the finality of class

6   certification.

7
8
9
10
11
12
13
14

Neither due process nor Rule 23(e)(3) requires, however, a second opt-out period whenever the final terms change after the initial opt-out period. Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached. As the Advisory Committee Notes make clear, 'Rule 23(e)(3) authorizes the court to refuse to approve a settlement unless the settlement affords a new opportunity to elect exclusion in a case that settles after a certification decision . . . .' Adv. Comm. 2003 Notes to Fed.R.Civ.P. 23(e)(3). However, the court is under no obligation to do so: The decision whether to approve a settlement that does not allow a new opportunity to elect exclusion is confided to the court's discretion.

15   *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (citations and quotation omitted).

16   Therefore, although a judge may consider whether fairness merits allowing class members

17   a second chance to opt out, neither the court nor the settling parties are required to provide such an

18   opportunity. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 663 (N.D. Tex. 2010), judgment

19   entered (June 18, 2010), as modified (June 14, 2010) ("Under Rule 23(e)(4), the decision whether

20   to allow a second opt out is left to the court's discretion.") (citation and quotation omitted).

21   Because the class members here were previously given an opportunity to opt out, the Court should

22   not allow an additional opportunity.

23   **VII.   PROPOSED PLAN OF ALLOCATION**

24   A plan of allocation of class settlement funds is subject to the "fair, reasonable and

25   adequate" standard that applies to approval of class settlements. *In re Citric Acid Antitrust Litig.*,

26   145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). A plan of allocation that compensates class

27   members based on the type and extent of their injuries is generally considered reasonable. Here,

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   the distribution will be on a *pro rata* basis, with no class members being favored over others.

2       This type of distribution has frequently been determined to be fair, adequate, and

3   reasonable.  *See DRAM, supra* (Doc. No. 2093, p. 2) (Oct. 27, 2010) (Order Approving Pro Rata

4   Distribution); *In re Vitamins Antitrust Litig.*, 2000 WL 1737867 at *6 (D.D.C. Mar. 31, 2000)

5   ("Settlement distributions, such as this one, that apportions funds according to the relative amount

6   of damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re*

7   *Lloyds' Am. Trust Fund Litig.*, 2002 WL 31663577 at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata*

8   allocations provided in the Stipulation are not only reasonable and rational, but appear to the

9   fairest method of allocating the settlement benefits."); *In re Paine Webber Partnership Litigation*,

10  171 F.R.D. 104 at 135 (S.D.N.Y. 1997) ("pro rata distribution of the Settlement on the basis of

11  Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a

12  costly, speculative and bootless comparison of the merits of the Class Members' claims").

13      The proposed plan of allocation here divides the settlement fund so that 50% of the fund

14  will be distributed to members of the Panel Class and 50% of the fund will be distributed to

15  members of the Finished Product Class.  The mix of finished products and panel commerce left in

16  the case after opt-outs is different for each defendant.  Some defendants, like LG Display, only

17  sold panels, and others sold both.  After reviewing the relevant commerce, in recognition of joint

18  and several liability, and after weighing the litigation risks associated with each sub-class, the

19  most equitable allocation is that the sub-classes share equally on a *pro rata* basis.  Simon Decl.,

20  ¶ 36.

21      For each TFT-LCD finished product (monitors, notebook computers, and televisions),

22  claimants will be paid based on the value of the panel in the finished product.  The total panel

23  value is divided by the total finished product revenue for each product type for each Defendant

24  during the class period.  This ratio is an estimate of TFT-LCD panel value as a percentage of the

25  Defendants' finished product sales.  The percentages of estimated panel value in a finished

26  product are 75% for monitors, 15% for notebook computers, and 47% for televisions.  In other

27  words, a panel claimant will be paid *pro rata* in proportion to its claim as compared to the other

28

1    panel claimants from 50% of the settlement proceeds.  A finished product claimant will be paid

2    *pro rata* from the other 50% of the settlement proceeds, based on the percentage of panel value

3    attributable to the product in the claim.  *Id.*, ¶ 37.[6]  The proposed Claim Form is attached to the

4    Simon Declaration as Exhibit O.

5        In summary, class members will submit their purchase information for both panels and

6    finished products.  The panel purchase prices, based on prices paid, will be divided *pro rata*.  For

7    finished products, the claims administrator will apply the percentages set forth above (as

8    potentially refined by further analysis during the claims administration period), and then calculate

9    class members' *pro rata* distribution based on those percentages.  *Id.*, ¶ 38.

10       This proposed plan of allocation is based on an analysis of an expert who estimated the

11   percentage value of TFT-LCD panels in Defendants' sales on TFT-LCD monitors, notebook

12   computers, and TFT-LCD televisions to the class members.  He utilized a dataset created from the

13   sales transaction data produced by Defendants in this case.  The dataset was created using

14   Defendants' worldwide TFT-LCD panel sales data and U.S. finished product sales data, as well as

15   other information collected from Defendants.  Simon Decl., ¶ 39.

16   **VIII.   ATTORNEYS' FEES AND COSTS**

17       The Agreements state that Class Counsel may apply to the Court for an award of attorneys'

18   fees, reimbursement of costs, and payment of incentive awards to class representatives, out of the

19   settlement fund, and Settling Defendants have agreed not to oppose any such request.  Prior to the

20   final approval hearing, plaintiffs and their counsel will move for an award of attorneys' fees to be

21   paid from the Settlement Fund in an amount not to exceed one-third (33.33%) of the Settlement

22   Fund's total value.  Additionally, the motion will ask for an award of fees as not to exceed one-

23   third of the $17,000,000 settlement fund from the previous settlements with the Chunghwa and

24

25   ───────────────

26   [6] The Chunghwa settlement includes purchases from July 1, 1996 through December 11, 2006 for
     panels and any product containing a TFT-LCD panel. Claims associated with these purchases will
     be addressed in the claim administration process and may be subject to a further allocation
27   depending on the amount of claims submitted.

28

1   Epson Defendants, pursuant to the prior notice sent to class members (dated October 6, 2010).

2   The proposed notice will explain the forthcoming motion for attorneys' fees and reimbursement of

3   costs so that class members will be aware of the proposed requests.  The motion for attorneys' fees

4   and reimbursement of costs will be filed a reasonable time before the date for objections.  *See In*

5   *re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (Plaintiffs must have

6   adequate time to review motion for attorneys' fees before deadline for objections).

7   **IX.**     **THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE**

8          The last step in the settlement approval process is the final approval hearing, at which the

9   Court may hear all evidence and argument necessary to evaluate the proposed settlements.  At that

10  hearing, proponents of the settlements may explain and describe their terms and conditions and

11  offer argument in support of settlement approval.  Members of the settlement class, or their

12  counsel, may be heard in support of or in opposition to the settlement.  Plaintiffs propose the

13  following schedule for final approval of the settlement:

| Date | Action |
|------|--------|
| 1.   Within 30 days after preliminary approval is granted | Mailing and publication of Class Notice |
| 2.   45 days after Notice published | Deadline to comment on or object to settlement |
| 3.   75 days after Notice published | Final Settlement Approval Hearing/Fairness Hearing |

19          This proposed schedule compares favorably to the schedule approved by the Court

20  previously when it preliminarily approved the Chunghwa and Epson settlements.

21      Notice:                                           November 5, 2010

22      Deadline to opt-out and/or object:    January 4, 2011 (60 days)

23      Hearing:                                          February 17, 2011 (104 days)

24          The Court should therefore approve the proposed schedule.

25  **X.**     **CONCLUSION**

26          Based on the foregoing, Plaintiffs respectfully request that the Court grant preliminary

27  approval of the class settlements with defendants Chimei, HannStar, Hitachi, LG Display, Mitsui,

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   Samsung, Sanyo, and Sharp; approve the proposed long and short form notices; establish a

2   deadline for class members to submit any objections to the settlement; approve the proposed claim

3   form; preliminarily approve the plan of allocation; and, set a final approval hearing date.

4

5                                           Respectfully submitted,

6   DATED: August 30, 2011                  **PEARSON, SIMON, WARSHAW & PENNY, LLP**

7

8                                           By:   ____/s/____Bruce L. Simon_____
                                                        BRUCE L. SIMON

9
10                                          *Co-Lead Counsel for the Direct Purchaser Class*
                                            *Plaintiffs*

11  DATED: August 30, 2011                  **LIEFF, CABRASER, HEIMANN &**
                                            **BERNSTEIN, LLP**

12

13                                          By:   ____/s/____Richard M. Heimann_____
                                                        RICHARD M. HEIMANN

14
15                                          *Co-Lead Counsel for the Direct Purchaser Class*
                                            *Plainiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS WITH
DEFENDANTS CHIMEI, HANNSTAR, HITACHI, LG DISPLAY, MITSUI, SAMSUNG, SANYO AND SHARP;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF