IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To: | No. C 10-5458 SI |
| SB LIQUIDATION TRUST,<br><br>    Plaintiff,<br><br>  v.<br><br>AU OPTRONICS CORPORATION, *et al.*,<br><br>    Defendants. / | **ORDER GRANTING IN PART LG DISPLAY CO., LTD.'S AND LG DISPLAY AMERICA, INC.'S MOTION TO COMPEL ARBITRATION** |

On September 16, 2011, the Court heard argument on a motion to compel arbitration filed by defendants LG Display Co., Ltd. and LG Display America, Inc. (collectively, "LG"). Having considered the moving papers and the arguments of the parties, and for good cause appearing, the Court hereby GRANTS IN PART LG's motion.

**BACKGROUND**

Plaintiff SB Liquidation Trust is the "successor-in-interest to Syntax-Brillian Corporation, Syntax Groups Corporation, and Syntax-Brillian SPE, Inc." (collectively, "Syntax"). First Am. Compl. ("FAC") at 1. Syntax filed for Chapter 11 bankruptcy on July 11, 2008. FAC at ¶5. Prior to filing for bankruptcy, Syntax developed, marketed, and distributed consumer electronics, including "LCD televisions marketed under the brand name 'Olevia.'" FAC at ¶2. On December 1, 2010, Syntax filed this action, seeking to recover for a "long-running and largely-admitted conspiracy among suppliers of

liquid crystal display panels ("LCD Panels") and related products ("LCD Products"). FAC at ¶1. LG's complaint includes claims under the Sherman Act, the Cartwright Act, and under California's consumer protection and unfair competition laws. FAC at ¶¶214-40.

Defendant LG Display Co. is a manufacturer of LCD panels headquartered in Seoul, Korea. FAC at ¶35. Defendant LG Display America, its American subsidiary, is located in San Jose, California. FAC at ¶36. On July 1, 2011, both entities filed a motion to compel arbitration of Syntax's claims.[1] They argue that the sales contracts they had in place with Syntax contained valid, enforceable arbitration clauses that mandate arbitration of Syntax's claims against them.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

International commercial arbitration agreements involving a United States corporation are governed by Chapter 2 of the FAA, which codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"). 9 U.S.C. § 206. A district court may compel arbitration not only in its own district but also in a foreign location if the proposed arbitration is governed by the Convention. *Id.* Arbitration agreements governed by the New York Convention are also governed by Chapter 1 of the FAA to the extent that the FAA and the Convention are not in conflict. 9 U.S.C. § 208.

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts are required to

---

[1] LG originally filed a largely identical motion to compel arbitration on May 12, 2011. That motion was withdrawn, however, to permit Syntax to file an amended complaint.

2

rigorously enforce agreements to arbitrate. *See Hall Street Assoc.*, 552 U.S. at 582. Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). The federal policy favoring enforcement of arbitration agreements "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

The Ninth Circuit has held that, in determining whether to issue an order compelling arbitration under the New York Convention, the Court may not review the merits of the dispute but must limit its inquiry to determining whether:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland America Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009) (citation omitted). "If these questions are answered in the affirmative, a court is required to order arbitration unless the court finds the agreement to be null and void, inoperative, or incapable of being performed." *Prograph Intern. Inc. v. Barhydt*, 928 F. Supp. 983, 988 (N.D. Cal. 1996) (citation omitted); *see also* 9 U.S.C. § 4.

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, the strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt*, 489 U.S. at 474. This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 831 (2d Cir. 1988) (stating that the purpose of the FAA "was to make arbitration agreements as enforceable as other contracts, but not more so" (internal quotation marks omitted)). Additional grounds for declining to enforce an arbitration agreement include unconscionability and party waiver. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010) (unconscionability); *Moses*, 460 U.S. at 24-25 (waiver).

3

**DISCUSSION**

LG's motion is based upon four contracts it signed with Syntax: (1) a "Marketing Development Agreement" dated January 1, 2005; (2) a "Strategic Supply Agreement" dated March 9, 2006; (3) a "Long Term Agreement" ("LTA") dated December 13, 2006; and (4) an LTA dated January 16, 2008.[2] *See* Declaration of Lee F. Berger in Support of LG Display Co., Ltd.'s and LG Display America, Inc.'s Motion to Compel Arbitration ("Berger Decl."), Exhs. A-D. Each of these contracts contains an arbitration provision, which LG contends require arbitration of Syntax's claims. *See* Berger Decl., Exh. A at ¶ 7.8 (requiring arbitration in Hong Kong); Berger Decl., Exh. B at ¶14.3 (requiring arbitration in "country of respondent"); Berger Decl., Exh. C at ¶ 14.3 (same); Berger Decl., Exh. D at ¶15.3 (requiring arbitration in Singapore).

As an initial matter, the Court finds that the arbitration clause found in the 2005 Marketing Agreement does not apply to this dispute. Although the agreement mentions the business relationship between Syntax and LG under "Recitals," the agreement did not govern the sales of any LCD panels. *See* Berger Decl., Exh. A at ¶2 ("WHEREAS, Synatx will cause DigiMedia to exclusively purchase 32 inch or larger LCD panels from the Supplier."). Rather, the agreement established a "marketing development fund . . . for the purpose of promoting [Syntax's] LCD TV products using [LG] LCD panels." Berger Decl., Exh. A at ¶3. The Court agrees with Syntax that the present dispute does not "relate to" this marketing agreement and is therefore not subject to arbitration under that agreement's arbitration clause. *See* Berger Decl., Exh. A at ¶7.8 ("All disputes arising out of, relating to or in connection with this Agreement shall be resolved by binding arbitration . . . .").

As for the remaining three agreements, LG's motion is based primarily on the 2008 LTA, which LG contends governs all of its transactions with Syntax. The arbitration provision in that contract reads:

> Any and all disputes, controversies, differences or claims arising out of, relating to or in connection with this Agreement shall be finally decided by binding arbitration in Singapore before a panel of three arbitrators. The arbitration shall be administered by the International Court of Arbitration of the International Chamber of Commerce ("ICC") under its Rules of Arbitration as in effect at the time of the arbitration, except as may be modified herein by agreement of the Parties and shall be conducted in the

---

[2] LG requests that the Court take judicial notice of these agreements. Syntax does not appear to object to this request in connection with the motion to compel arbitration. Accordingly, the Court GRANTS LG's request for judicial notice.

4

English language. BUYER on the one hand, and SELLER, on the other, shall each nominate an arbitrator. The two (2) arbitrators nominated in accordance with the above provisions shall nominate the third arbitrator, who shall act as chairperson of the arbitration panel. The award rendered by three arbitrators shall be final and binding upon the Parties hereto.

Berger Decl., Exh. D at ¶15.3.[3]

This Court has previously addressed the scope of other arbitration clauses in this MDL. *See* Order Granting AU Optronics Corporation's Motion to Compel Arbitration, Master Docket No. 3034, at 6-9 (July 6, 2011) ("Nokia Arbitration Order"); Order Granting in Part Defendants' Joint Motion to Compel Arbitration, Master Docket No. 3518 (September 9, 2011) ("Costco Arbitration Order"). The arbitration clauses in those cases used language similar to that used by the arbitration clauses at issue in this case. Nokia Arbitration Order at 4 (covering "any disputes related to" the purchasing agreement Nokia had with its suppliers); Costco Arbitration Order at 5 (covering disputes that "arise out of or relate to the Agreement Documents or their subject matter"). Given the clauses' broad language, the Court found that the plaintiffs' antitrust claims fell within their scope. *See*, *e.g.*, Nokia Arbitration Order at 7 ("Under the Ninth Circuit's reasoning, the language 'related to' must be read broadly, to encompass any matter that touches the contractual relationship between the parties.").

Like the above arbitration clauses, the Syntax clauses subject to arbitration any claim "relating to" or "arising in connection with" the agreements. Accordingly, to the extent the arbitration clauses apply to this case, Syntax's state and federal antitrust claims are likewise subject to arbitration.

Syntax raises a number of arguments as to why the arbitration clauses are inapplicable here. The Court considers each of these issues in turn.

### I. LG's Ability to Seek Arbitration

Syntax argues that both LG Display and LG Display America are limited in their ability to seek arbitration because neither is a party to all of the contracts at issue.

---

[3]The other agreements contain similar clauses. *See* Berger Decl., Exh. B at ¶14.3 ("All disputes arising in connection with this Agreement shall be finally settled by arbitration . . . ."); Exh. C. At ¶14.3 (same).

5

### A. LG Display

Syntax argues that LG Display Co. may not enforce the arbitration clauses in the supply agreement or the LTAs because it is not a party to those agreements. This argument arises from the agreements' apparently erroneous reference to "LG.Philips LPL Co., Ltd." in the contracts' preamble. Berger Decl., Exh. B at 1 ("This Purchase Agreement (this "Agreement") is made and entered into this (9th) day of March, 2006, by and between SYNTAX-BRILLIAN Corporation . . . and LG.Philips LPL Co., Ltd. . . ."); Berger Decl., Exh. C at 1 (same); Berger Decl., Exh. D at 1 (same). Despite these references to "LG.Philips LPL Co., Ltd.," the signature blocks indicate that the contracts were executed by "LG.Philips LCD Co., Inc." Berger Decl., Exh. B at 6; Berger Decl., Exh. C at 7; Berger Decl., Exh. D at 7. Further, the agreements' notice provisions provide that all notices shall be sent to "LG.Philips LCD Co., Inc." Berger Decl., Exh. B at 4; Berger Decl., Exh. C at 4; Berger Decl., Exh. D at 4.

The Court rejects Syntax's argument that LG Display Co. is not a party to these agreements. Rather, it appears that "LG.Philips LPL Co." is a misnomer for LG Display Co. Indeed, defendants have provided a declaration from Kwang Jim Kim stating that he "directly assisted in negotiating, drafting, and implementing the three agreements . . . [and] [a]ny reference to 'LG.Philips LPL Co., Ltd.' is an obvious mistaken reference to LG.Philips LCD Co., Ltd." Declaration of Lee F. Berger in Support of LG Display Co., Ltd.'s and LG Display America, Inc.'s Request for Judicial Notice ("Berger Notice Decl."), Exh. A at ¶¶2, 5. Mr. Kim also states that "there is no such entity as LG.Philips LPL Co., Ltd. related to LG Display Co., Ltd." Berger Notice Decl., Exh. A at ¶5.

Although Syntax objects to this evidence, it has provided no evidence of its own to demonstrate that it signed a contract with a company known as LG.Philips LPL Co. Rather, its objection is based entirely on speculation. Given Mr. Kim's statement that there is no such entity as LG.Philips LPL Co., Ltd., as well as the other indicia that the LG Display Co. was a signatory to the contract, the Court finds that LG Display Co. is a party to the three sales agreements.

### B. LG Display America

Next, Syntax argues that LG Display America may not move to compel arbitration because it is not a party to any of the four contracts LG has produced. Based on the fact that LD Display America

6

is not a named party to the agreements, Syntax relies on a "third-party rights" provision that reads as follows:

> No Third Party Rights. This Agreement shall not (directly, indirectly, contingently or otherwise) confer or be construed as conferring any rights or benefits on any Person that is not named a Party or a permitted transferee of a Party hereunder, nor shall this Agreement (directly, indirectly, contingently or otherwise) be deemed to create third party beneficiary rights.

Berger Decl., Exh. B at ¶14.7; *see also* Berger Decl., Exh. C at ¶14.7; Berger Decl., Exh. D at ¶15.7.

While true that LG Display America is not a signatory to any of the contracts, the supply agreement and the LTAs expressly contemplate that LG Display America will perform portions of the contracts on behalf of LG Display.[4] Berger Decl., Exh. B, at 1 ("LPL is willing to supply the Products to SYNTAX through LG.Philips LCD Taiwan ("LPLT") or LG Philips LCD America ("LPLA"), LPL's subsidiaries, under the terms and conditions of this Agreement . . ."); Berger Decl., Exh. C at 1 (same); Berger Decl., Exh. D at 1 (same). The Court agrees with LG that, in these circumstances, the claims against LG Display and LG Display America are "inherently inseparable," and are therefore equally subject to arbitration. *See Fujian Pacific Elec. Co. Ltd. v. Bechtel Power Corp.*, 2004 WL 2645974, at *6 (N.D. Cal., Nov. 19, 2004) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." (quoting *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A*, 863 F.2d 315, 321-22 (4th Cir.1988))); *see also id.* ("Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."); *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (stating that a nonsignatory may enforce an arbitration clause where there is a "close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and . . . the claims [are] intertwined with the underlying contractual obligations").

At the hearing on LG's motion, Syntax argued that LG Display America should not be allowed to take advantage of the arbitration provision. It argues that the above cases relied on the doctrine of

---

[4]These contracts refer to "LG Philips LCD America." Syntax has not argued that this is a different entity than LG Display America.

7

equitable estoppel, and that this Court should refuse to rely on that doctrine because of LG Display America's "unclean hands" as an admitted price fixer. The facts of the case Sytax relies on, however, are a far cry from the circumstances here. In *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038 (N.D. Cal. 2006), KPMG attempted to enforce an arbitration clause that was contained in a fraudulent contract. *Id.* at 1053 ("What defendants ask this court to do – enforce an arbitration clause in a fraudulent contract, not signed by defendants, involving a phantom, now-defunct company, and bearing only an incidental relationship to the dispute at the heart of this lawsuit – would make a mockery of this court's equitable powers."). While LG Display America has admitted to breaking the law, it has not done anything that would call into question the contract executed between LG and Syntax. Accordingly, the Court finds that LG Display America may enforce the arbitration provision.

## II.   Retroactivity of Arbitration Provisions

Next, LG argues that the 2008 arbitration provision governs the terms of arbitration for all sales it made to Syntax. LG asserts that the 2008 LTA superseded all prior contracts, based upon a clause in that contract that reads: "This Agreement supercedes, cancels, and [annuls] all contracts, undertakings, or agreements of prior dates relating to the subject matter of this Agreement." Berger Decl., Exh. D at ¶ 15.10. Syntax claims that this is nothing more than a "boilerplate integration clause" that does not have the effect LG ascribes to it. It argues that the parties "entered into three, fixed-term supply agreements: (I) one for the period from March 9, 2006 to December 31, 2006; (ii) one for the period from January 1, 2007 to December 31, 2007; and (iii) one for the period from January 1, 2008 to December 31, 2008." Opp'n at 13. It claims that the integration clause does not affect these fixed-term agreements.

Courts have split on this question. In *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369 (6th Cir. 1999), the Sixth Circuit reversed a district court that had used a similar clause to retroactively apply an arbitration clause to earlier contracts. Stating that the "universally understood purpose" of the clause was to "signal to the courts that the parties agree that the contract is to be considered completely integrated," the court found that the parties did not intend for the clause to have such a retroactive effect. *Id.* at 372; *see also id.* at 374 ("Had the parties intended to apply the new ADR

8

1 processes to disputes arising under the previous contracts, we believe they would have done so
2 explicitly.").

3 In *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999), the Ninth Circuit reached the
4 opposite conclusion, finding that a merger clause incorporated prior agreements into the scope of a later
5 contract. *Id.* at 723 ("Thus any obligation of Autoliv under the 1993 nondisclosure agreement and
6 January 1994 letter of intent was incorporated into the 1995 Agreement under the merger clause, and
7 is subject to the arbitration clause."); *see also AZ Holding, L.L.C. v. Frederick*, 2010 U.S. Dist. LEXIS
8 15135, at *28 (D. Ariz., Feb. 10, 2010).

9 The Court agrees with Syntax that the integration clause does not affect the prior agreements.
10 In *Simula*, the contracts at issue were a nondisclosure agreement and a letter of intent. These
11 preliminary agreements were intended to structure the parties' relationship, and led to the later creation
12 of more comprehensive contracts. *Cf. Simula*, 175 F.3d at 718 ("In January 1994, Autoliv and Simula
13 signed a letter of intent outlining the proposed relationship between them."); *id.* ("In January 1995,
14 Simula and Autoliv entered into three related agreements including: (1) a Joint Development and
15 Cooperation Agreement; (2) a Licensing Agreement; and (3) a Frame Supply Agreement.").

16 Here, however, the structure of the agreements suggests that each contract governed a discrete
17 series of transactions; each has an explicit start point and end point, with no overlap between them.
18 Given this structure, the Court sees nothing to indicate that the parties intended the integration clause
19 to reach prior, fully performed contracts. *Cf.* Nokia Arbitration Order at 8-9 ("The PPA includes a term
20 specifically stating that the agreement as a whole applies retroactively.").

## III. Unconscionability

Syntax also argues that the arbitration clauses are not enforceable because they are unconscionable. It claims that the clauses "deprive it of its statutory remedies" and "do not provide for necessary discovery." Opp'n at 18.

### A. Statutory Damages

Syntax's argument that the clauses deprive it of its statutory remedies refers to the cap on

9

liability established by the contracts. *See* Berger Decl., Exh. B at ¶13 ("In no event shall LPL's liability for any breach or alleged breach of this Agreement exceed the total purchase price for Products sold."); Berger Decl., Exh. C at ¶13 (same); Berger Decl., Exh. D at ¶14 ("In no event shall LPL's liability for any breach or alleged breach of this Agreement exceed twenty percent (20%) of the total purchase price for Products sold."). Setting aside the question whether Syntax's claims are for "breach or alleged breach" of the contracts, this Court has held that any limit on statutory damages is unenforceable. *See* Costco Arbitration Order at 9-10. The fact that arbitration may proceed under the law of another jurisdiction, however, is not sufficient to render the entire clause unenforceable. *See Simula*, 175 F.3d at 723 ("We require 'this representative of the American business community to honor its bargain,' and hold that the antitrust claims are fully arbitrable." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 640 (1985)).

**B.     Discovery**

Syntax also argues that the arbitration clauses are unconscionable because they do not provide for adequate discovery. Syntax does not point to any explicit limits on discovery contained in the arbitration clauses themselves. *Cf. Openshaw v. FedEx Ground Package System, Inc.*, 731 F. Supp. 2d 987, 995 (C.D. Cal. 2010) (finding arbitration provision unconscionable due to limits on discovery contained in provision). Rather, it claims that the rules of the International Chamber of Commerce ("ICC"), the arbitral body identified in the contracts, do not allow for necessary discovery.

The Supreme Court has explicitly found antitrust claims to be arbitrable. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985). The Court reached this conclusion despite knowing that "the factfinding process in arbitration usually is not equivalent to judicial factfinding. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." *Id. at* 648 n.14 (Stevens, J., dissenting).

Numerous courts have found arbitration to be appropriate under the ICC rules. *See*, *e.g.*, *Simula*, 175 F.3d at 726 (affirming district court's order compelling arbitration under ICC rules); Nokia

Arbitration Order at 4 (compelling arbitration under ICC rules). The Court rejects Syntax's assertion that those rules are unconscionable as a matter of law.

### IV.     Waiver

Finally, Syntax argues that LG has waived its right to compel arbitration. "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Syntax argues that LG waived its right to arbitrate by (1) serving 35 document requests upon Syntax; (2) receiving over 47,000 pages of documents from Syntax in response to LG's document requests; (3) serving a 23-topic Rule 30(b)(6) deposition notice; (4) deposing Syntax's corporate representative for an entire day; and (5) serving deposition subpoenas on four of Syntax's former employees. Opp'n at 22-23.

In response, LG indicates that it served its document requests and 30(b)(6) deposition notice as part of third-party discovery in the indirect-purchaser action, simultaneously noticing them in this action as well. Berger Decl., ¶2. LG also notes that the depositions of the four former SB employees have yet to take place.

Although a somewhat close question based upon LG's active role in seeking discovery from Syntax, the Court finds that LG has not waived its right to compel arbitration. As LG indicates, the discovery it has sought was relevant to LG's need to defend itself in another proceeding in this MDL, so that it was not necessarily inconsistent with its decision to compel arbitration. Further, LG first filed its motion to compel arbitration just six months after Syntax filed its complaint. Given these circumstances, the Court cannot find that LG waived this right.

///

11

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART LG's motion to compel arbitration. Syntax must arbitrate any purchases made under the 2006 strategic supply agreement and the 2006 and 2008 LTAs. Docket No. 3018 in 07-1827; Docket No. 22 in 10-5458.

**IT IS SO ORDERED.**

Dated: September 19, 2011

SUSAN ILLSTON
United States District Judge