1
2
3
4
5            IN THE UNITED STATES DISTRICT COURT
6           FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8 IN RE: TFT-LCD (FLAT PANEL) ANTITRUST    No. M 07-1827 SI
LITIGATION
9 ——————————————————————/    MDL. No. 1827

10                               **ORDER DENYING LG DISPLAY CO.,**
11 This Order Relates to:                     **LTD.'S AND LG DISPLAY AMERICA,**
                                         **INC.'S MOTION FOR PARTIAL**
12       All Indirect-Purchaser Plaintiff Class       **SUMMARY JUDGMENT ON**
      Actions                                  **WITHDRAWAL**
13 ——————————————————————/

14
15       On September 22, 2011, the Court heard argument on LG Display Co., Ltd.'s and LG Display
16 America, Inc.'s (collectively, "LG") motion for partial summary judgment on the issue of withdrawal.
17 Having considered the moving papers and the arguments of the parties, and for good cause appearing,
the Court hereby DENIES LG's motion.
18

19
20                                   **BACKGROUND**
21       This antitrust class action stems from allegations of a global price-fixing conspiracy in the
22 market for thin-film transistor liquid-crystal display ("TFT-LCD") panels. Plaintiffs, indirect purchasers
of products containing TFT-LCD panels, claim that "[d]efendants and their co-conspirators formed an
23 international cartel illegally to restrict competition in the LCD panel market, specifically targeting and
24 severely injuring indirect-purchaser consumers and affecting billions of dollars of commerce throughout
25 the United States." Third Consolidated Amended Complaint ("TAC"), ¶2.
26       Defendant LG Display Co. is a manufacturer of LCD panels headquartered in Seoul, Korea.
27 TAC at ¶70. Defendant LG Display America, its American subsidiary, is located in San Jose,
28

**United States District Court**
For the Northern District of California

California.  TAC at ¶71.  On July 22, 2011, LG Display Co. and LG Display America filed a motion for summary judgment on the issue of withdrawal.  LG claims that it effectively withdrew from the conspiracy on July 13, 2006, "when it reported itself and others to the Department of Justice ('DOJ') and began acting upon the DOJ's instruction."  Motion at 1; *see also* Plea Agreement  at ¶4, Case No. 08-cr-0803-SI, Docket No. 14 (December 17, 2008) (limiting LG's guilty plea to conduct that occurred before June 1, 2006).

LG has provided two pieces of evidence in support of its claim that it withdrew from the conspiracy.  First, it has provided a letter from Michael L. Scott, an Assistant United States Attorney with the DOJ's Antitrust Division.  Mr. Scott's letter states that

> On July 13, 2006, LG Display approached the government to report its participation in anticompetitive conduct in the TFT-LCD industry.  As part of LG Display's cooperation in the investigation, the government requested that LG Display limit knowledge of the fact of the investigation and LG Display's cooperation in the investigation to only a small number of senior-level managers at LG Display and in-house LG Display counsel. The government also requested that LG Display not issue any company-wide directives or announcements to LG Display employees regarding the investigation or in any other ways take action that would notify LG Display employees of the investigation.

Declaration of Michael R. Lazerwitz in Support of LG Display's Motion for Partial Summary Judgment on Withdrawal ("Lazerwitz Decl."), Exh. A.

LG has also provided a declaration from Bang Soo Lee, "Senior Vice President of Business Support Center at LG Display Co., Ltd."  Lazerwitz Decl., Exh. B at ¶1.  Mr. Lee states that, "[i]n accordance with the DOJ's instruction, after self-reporting on July 13, 2006, LG Display did not instruct its employees to stop communicating with competitors.  But to the extent that employees continued to communicate with competitors after July 13, 2006, LG Display did not enter into any agreements to fix prices resulting from these communications."  *Id.* at ¶3.[1]

LG claims that these two items of evidence establish that it withdrew from the conspiracy

---

[1]Mr. Lee was deposed on September 8, 2011.  *See* Indirect-Purchaser Plaintiffs' Evidentiary Objections to Bang Soo Lee Declaration, Exh. A ("Lee Depo.").  Based on the answers he provided at his deposition, plaintiffs have objected to the use of his declaration.  They argue that Mr. Lee's deposition testimony indicates that he lacks any personal knowledge about LG's contacts with DOJ. *See* Lee Depo. at 26 (testifying that he did not "go to the Department of Justice" or "talk to any attorney from the Department of Justice"); *see also* Lee Depo. at 30 (testifying that he does not know "[w]ho went to DOJ" or "what the person said to the DOJ"); Lee Depo. at 31 (testifying that he did not "know what the DOJ said to the LG representative).  Further, Mr. Lee's testimony appears to contradict LG's assertion that the government told it to continue meeting with its competitors.  *See* Lee Depo. at 51-52.

United States District Court
For the Northern District of California

1   effective July 13, 2006.  It therefore seeks to curtail its liability for any actions taken in furtherance of

2   the conspiracy after that date.

3

4                                          **LEGAL STANDARD**

5          Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and

6   any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

7   to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of

8   demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

9   323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving

10  party will have the burden of proof at trial.  The moving party need only demonstrate to the Court that

11  there is an absence of evidence to support the non-moving party's case.  *Id.* at 325.

12         Once the moving party has met its burden, the burden shifts to the non-moving party to "set out

13  'specific facts showing a genuine issue for trial.'"  *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)).  To

14  carry this burden, the non-moving party must "do more than simply show that there is some

15  metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

16  475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence ... will be insufficient; there

17  must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v.*

18  *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

19         In deciding a summary judgment motion, the Court must view the evidence in the light most

20  favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id.* at 255.

21  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from

22  the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment."  *Id.*

23  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

24  genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d

25  730, 738 (9th Cir.1979).  The evidence the parties present must be admissible.  Fed. R. Civ. P. 56(c)).

26

27                                          **DISCUSSION**

28         LG claims that its communication with DOJ constituted a withdrawal from the conspiracy, and

**United States District Court**
For the Northern District of California

3

**United States District Court**
For the Northern District of California

1    that it is therefore insulated from liability for any damages caused by actions taken in furtherance of

2    conspiracy after July 13, 2006.

3        It is well-established that once a defendant joins a conspiracy it is jointly and severally liable for

4    any actions taken in furtherance of the conspiracy. *See*, *e.g.*, *Texas Industries, Inc. v. Radcliff Materials,*

5    *Inc.*, 451 U.S. 630, 646 (1981); *Paper Systems Inc. v. Nippon Paper Industries Co., Ltd.*, 281 F.3d 629,

6    633 (7th Cir. 2002) ("Joint and several liability is [a] vital instrument for maximizing deterrence.").

7    This liability continues until the objectives of the conspiracy are completed, or the defendant withdraws

8    from the conspiracy. *See Krause v. Perryman*, 827 F.2d 346, 350-51 (8th Cir. 1987) (affirming

9    summary judgment for defendant because he had "withdrawn from the alleged conspiracy prior to the

10   events that resulted in [the plaintiffs'] alleged injuries"); *In re Brand Name Prescription Drugs Antitrust*

11   *Litig*, 123 F.3d 599, 616 (7th Cir. 1997); *In re Potash Antitrust Litig.*, 954 F. Supp. 1334, 1339, 1390-91

12   (D. Minn. 1997) (granting summary judgment to antitrust defendant who withdrew from conspiracy),

13   *aff'd sub nom Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028 (8th Cir. 2000);

14   *see also United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992) ("[A] defendant cannot be held

15   liable for substantive offenses committed before joining or after withdrawing from a conspiracy.").

16        When a defendant chooses to withdraw from a conspiracy, it may effectuate that withdrawal in

17   many ways. *Cf. United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464-65 (1978) (finding jury

18   instruction on withdrawal inadequate where it "limited the jury's consideration to only two

19   circumscribed and arguably impractical methods of demonstrating withdrawal from the conspiracy");

20   *see also Lothian*, 976 F.2d at 1261 ("To withdraw from a conspiracy a defendant must either disavow

21   the unlawful goal of the conspiracy, affirmatively act to defeat the purpose of the conspiracy, or take

22   'definite, decisive, and positive' steps to show that the [defendant's] disassociation from the conspiracy

23   is sufficient." (internal quotation marks omitted)).  At a minimum, it is clear that "[a]ffirmative acts

24   inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to

25   reach co-conspirators [are] sufficient to establish withdrawal or abandonment." *U.S. Gypsum*, 438 U.S.

26   at 464-65.

27        In addition, numerous courts have stated that reporting the conspiracy to law enforcement or

28   otherwise "making a clean breast to authorities" is sufficient to constitute withdrawal. *See*, *e.g.*, *United*

4

*States v. Greenfield*, 44 F.3d 1141, 1149-50 (2d Cir. 1995) ("[T]hough the cessation of conspiratorial activity is generally considered insufficient to demonstrate a withdrawal from a conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators is sufficient to establish withdrawal." (internal quotation marks omitted)); *United States v. Finestone*, 816 F.2d 583, 589 (11th Cir. 1987) ("To establish that he withdrew from a conspiracy, the defendant must prove that he undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives, and either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to law enforcement authorities."); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d at 616 ("To terminate one's liability for the continuing illegal acts of a conspiracy that one had joined, a withdrawing member must either report the conspiracy to the authorities or announce his withdrawal to his coconspirators.").

While the Court agrees with LG that reporting a conspiracy to the authorities can be a means of withdrawing from the conspiracy, it finds that summary judgment is inappropriate at this time. Those courts that have considered "making a clean breast to authorities" to be a means of withdrawal have also noted that withdrawal is an affirmative defense on which defendants bear the burden of proof. *See United States v. Lash*, 937 F.2d 1077, 1083 (6th Cir. 1991) ("Defendants have the burden of proving withdrawal because it is an affirmative defense."); *Greenfield*, 44 F.3d at 1150 ("Unless a conspirator produces affirmative evidence of withdrawal, his participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators."); *Finestone*, 816 F.2d at 589 ("Withdrawal, however, is an affirmative defense, which the defendant has the burden of proving."); *but see Lothian*, 976 F.2d at 1261 (holding, in criminal context, that "because due process requires that the government prove each element of the offense beyond a reasonable doubt, once the defendant introduces sufficient evidence to make a prima facie case of withdrawal, the burden shifts to the government to prove beyond a reasonable doubt that the defendant did not withdraw."). Because LG bears the burden of proof on this issue, it must meet a high standard to obtain summary judgment. *See Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) ("When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that 'the evidence is so powerful that no reasonable jury would be free

5

to disbelieve it.'" (quoting 11-56 Moore's Federal Practice-Civil § 56.13)).

The Court finds that the DOJ letter and the Lee declaration are insufficient to meet this burden. In reaching this conclusion, the Court is mindful of the fact that plaintiffs have been denied discovery into both defendants' communications with the DOJ and the government's investigation into LG's conduct. *See, e.g.*, Order Re: Stay of Discovery, Master Docket No. 631, at 3-4 (May 27, 2008) ("The stay order shall continue to prohibit all discovery . . . that refer[s], reflect[s] or relate[s] to any party's or witness' communications with the United States or with the grand jury . . . ."). While the DOJ letter may indicate that LG withdrew from the conspiracy, it is an extremely limited piece of information on which to base such a finding. Given that plaintiffs have had no means of exploring this information, the Court cannot justify removing this issue from the jury's consideration on such a scant record.

Further, plaintiffs have produced some evidence showing that LG's behavior did not change following its purported withdrawal from the conspiracy. Dr. Janet S. Netz, plaintiffs' economic expert, examined LG's pricing and concluded that "LG's prices relative to its co-conspirators' prices have the same relationship before and after LG notified the DOJ." Declaration of Janet S. Netz, Ph.D., Esq. In Support of Indirect Purchaser Plaintiffs' Opposition, ¶7. While LG asserts that it continued its pricing policies at the behest of the federal government, neither the DOJ letter nor Lee's deposition testimony confirms this assertion.

Given LG's minimal showing in support of its motion, the Court finds that a material issue of fact continues to exist on the extent of LG's withdrawal. Accordingly, its motion for partial summary judgment is DENIED.


## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES LG's motion for partial summary judgment on withdrawal. Docket No. 3170 in 07-1827.

**IT IS SO ORDERED.**


Dated: September 26, 2011

SUSAN ILLSTON
United States District Judge