William A. Isaacson (admitted *pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email:  wisaacson@bsfllp.com

Philip J. Iovieno (admitted *pro hac vice*)
Anne M. Nardacci (admitted *pro hac vice*)
Luke Nikas (admitted *pro hac vice*)
Christopher V. Fenlon (admitted *pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
10 North Pearl Street, 4th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:   (518) 434-0665
Email:  piovieno@bsfllp.com
        anardacci@bsfllp.com
        lnikas@bsfllp.com
        cfenlon@bsfllp.com

Counsel for Plaintiffs
Electrograph Systems, Inc. and Electrograph Technologies Corp.

[Additional counsel listed in signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. 3:11-cv-03342-SI |
| This Document Relates To Individual Case No. 3:11-cv-03342-SI (N.D. Cal.) | Master File No. 3:07-md-01827-SI (N.D. Cal.) MDL No. 1827 |
| ELECTROGRAPH SYSTEMS, INC.; ELECTROGRAPH TECHNOLOGIES CORP., | **ELECTROGRAPH SYSTEMS, INC.'S AND ELECTROGRAPH TECHNOLOGIES CORP.'S OPPOSITION TO NEC DEFENDANTS' MOTION TO DISMISS** |
| Plaintiffs, | |
| vs. | |
| NEC CORPORATION; NEC CORPORATION OF AMERICA; NEC DISPLAY SOLUTIONS OF AMERICA, INC.; NEC ELECTRONICS AMERICA, INC.; NEC LCD TECHNOLOGIES, LTD., | Date:          **October 28, 2011** Time:          **9:00 a.m.** Courtroom:     **10, 19th Floor** Judge:         **The Hon. Susan Illston** |
| Defendants. | **REDACTED – PUBLIC VERSION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

QUESTIONS PRESENTED ............................................................................................... 1

PRELIMINARY STATEMENT .......................................................................................... 2

STATEMENT OF FACTS .................................................................................................. 4

    A.    Relevant Procedural History .............................................................................. 4

    B.    Electrograph's Complaint Specifically Details the Evidence of NEC's
        Active Participation in the Conspiracy .............................................................. 6

    C.    Plaintiffs' Alleged Contracts With NEC ........................................................... 9

ARGUMENT ....................................................................................................................... 9

    I.    PLAINTIFFS MORE THAN SUFFICIENTLY ALLEGE NEC'S
        PARTICIPATION IN THE CONSPIRACY .......................................................... 9

        A.    Plaintiffs' Detailed Allegations Regarding NEC's Participation in
            the Conspiracy Far Surpass the Plausibility Standard Articulated by
            This Court ................................................................................................. 9

        B.    Plaintiffs' Allegations Satisfy the Specific Standard This Court Set
            Forth Concerning Group Pleading ............................................................ 12

    II.    THE PARTIES' CONTRACTS DO NOT SUPPORT
        NEC'S MOTION TO DISMISS ........................................................................... 16

        A.    The Court May Not Consider the Contracts NEC Relies Upon ............... 16

        B.    The Choice of Law Clause Does Not Apply ............................................ 17

            i.    Illinois Law Does Not Apply ...................................................... 17

            ii.    Plaintiffs' New York and California Claims Do Not Violate
                Due Process ................................................................................. 19

        C.    The Plaintiffs' Claims Are Not Time-Barred .......................................... 18

            i.    Plaintiffs' Indirect Purchaser Claims Are Not Time-Barred ........ 19

            ii.    Plaintiffs' Sherman Act Claim is Not Time-Barred .................... 22

        D.    The Forum-Selection Clause Does Not Apply ........................................ 22

1

2

E.      The Jury Trial Waiver Does Not Apply  ...................................................24

CONCLUSION………………………………………………………………………..25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                    Page(s)

*Adelphia Recovery Trust v. Bank of Am., N.A.*, No. 05 Civ. 9050 (LMM),
    2009 WL 2031855 (S.D.N.Y. July 8, 2009) ................................................................. 25

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ................................................... 19

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 521 F. Supp. 2d 1031
    (N.D. Cal. 2007) ......................................................................................................... 25

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) ................................................................... 11

*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959) ............................................... 25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................... 12, 13, 16

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360 (9th Cir. 1980) ........ 12

*BP Prods. N. Am., Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253
    (S.D. Fla. 2006) .......................................................................................................... 24

*Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009) .................. 1, 4

*Curwood Inc. v. Prodo-Pak Corp.*, 2008 WL 644884 (E.D. Wis. March 7, 2008) ......... 23, 24

*Farmland Indus., Inc. v. Frazier Parrott Commodities, Inc.*, 806 F.2d 848
    (8th Cir. 1986) ............................................................................................................ 23

*Frigate Ltd. v. Damia*, 2007 WL 127996 (N.D. Cal. Jan. 12, 2007) ............................. 24

*Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) ................................................ 20

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............... 12

*In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004) ............................... 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2009 WL 533130
    (N.D. Cal. Mar. 3, 2009) ............................................................................................ 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 1264230
    (N.D. Cal. Mar. 28, 2010) .......................................................................................... 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2836955
    (N.D. Cal. July 19, 2010) ............................................................. 13, 14, 15, 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2629728
    (N.D. Cal. June 29, 2010) ("Nokia") ......................................................................... 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1100133
  (N.D. Cal. March 24, 2011) ................................................................. 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435
  (N.D. Cal. Sept. 15, 2011) ................................................................. 13, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 941285
  (N.D. Cal. Mar. 16, 2011) ................................................. 1, 4, 17, 19, 22, 23, 24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109
  (N.D. Cal. 2008) ................................................................. 10, 13, 19, 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179
  (N.D. Cal. 2009) ................................................................. 10, 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI
  (N.D. Cal. April 2, 2011) (Dkt. No. 2619) ............................................. 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI
  (N.D. Cal. Sept. 19, 2011) (Dkt. No. 3614) ........................................ 1, 3, 13, 16

*Leh v. Gen. Petroleum Corp.*, 382 U.S. 54 (1965) ..................................... 21

*Luis Acosta, Inc. v. Citibank, N.A.*, 920 F. Supp. 15 (D. P.R. 1996) ............... 25

*Mayes v. AT&T Info. Sys., Inc.*, 867 F.2d 1172 (8th Cir. 1989) ..................... 21

*NL Indus., Inc. v. Kaplan*, 792 F.2d 896 (9th Cir. 1986) ........................... 10, 12

*Okura & Co. (Am.), Inc. v. The Careau Group*, 783 F. Supp. 482 (C.D. Cal. 1991) .... 25

*Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) ...... 4

*Pegasus Transp., Inc. v. Lynden Air Freight, Inc.,* 152 F.R.D. 574 (N.D. Ill. 1993) ...... 24

*People ex rel. Cuomo v. Liberty Mut. Ins. Co.*, 52 A.D.3d 378 (1st Dep't 2008) ........ 19

*Pradier v. Elespuru*, 641 F.2d 808 (9th Cir. 1981) .................................... 24

*Regents of Univ. of Cal. v. Superior Court*, 85 Cal.Rptr.2d 257 (Cal. 1999) .......... 19

*U.S. v. Dist. Council of N.Y. City*, 832 F. Supp. 644 (S.D.N.Y. 1993) ............... 12

*U.S. v. Katz*, 494 F. Supp. 2d 641 (S.D. Ohio 2006) .................................. 21

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) .......................... 10

*Vision Tech. Design & Mfg., Inc. v. Gen. Wire Spring Co.*, 2007 WL 2069945

(E.D. Cal. July 17, 2007) ................................................................................... 24

*William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659 (9th Cir. 2009) ............................ 15

Federal Rules

Fed. R. Civ. P. 8 .................................................................................................... 15

Statutes

N.Y. Gen. Bus. L. § 342-c ...................................................................................... 20

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

3

## QUESTIONS PRESENTED

4

     1.    Should the Court deny NEC's motion to dismiss under *Twombly* because

5

Electrograph's specific allegations of NEC's active participation in the LCD conspiracy, which are

6

significantly more detailed than similar allegations this Court has repeatedly found to be sufficient

7

to survive a motion to dismiss, demonstrate a plausible basis for a claim for relief?

8

     2.    Should the Court refuse to consider any of the contractual provisions upon which

9

NEC relies in its Rule 12(b)(6) motion, as the Court did in *In re TFT-LCD (Flat Panel) Antitrust*

10

*Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Sept. 19, 2011) (Dkt. No. 3614) ("*SB Liquidation*

11

*Trust*"), because these contracts are not subject to judicial notice, and Plaintiffs' Complaint in no

12

way references or relies upon these contracts?

13

     3.    Should the Court refuse to apply any of the contractual provisions upon which NEC

14

relies to Plaintiffs' claims against NEC entities with whom Plaintiffs never contracted, because it

15

is settled Ninth Circuit law that "contracts do not bind non-parties," *Comedy Club, Inc. v. Improv*

16

*W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009)?

17

     4.    Should the Court refuse to apply the Illinois choice-of-law provisions contained in

18

the parties' contracts to Plaintiffs' indirect-purchaser claims under New York and California law,

19

because, as this Court recognized in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL

20

941285, at *9 (N.D. Cal. Mar. 16, 2011) ("*Dell*"), Plaintiffs' indirect-purchaser claims are not

21

based upon purchases from NEC and therefore do not arise from the parties' contracts?

22

     5.    Should the Court deny NEC's motion to dismiss Plaintiffs' claims as untimely,

23

because Plaintiffs' claims were tolled by the conspirators' fraudulent concealment of the

24

conspiracy, the filing of the direct and indirect purchasers' class action complaints, the filing of the

25

DOJ action, and the pendency of Plaintiffs' motion to amend their complaint to add the NEC

26

entities as Defendants?

27

     6.    Should the Court refuse to transfer or dismiss Plaintiffs' Complaint based on the

28

forum-selection clause contained in the parties' contracts, because a majority, if not all, of

Plaintiffs' claims fall outside of this clause, and enforcing the clause would therefore deprive the

Plaintiffs of their right to choose the forum in which those claims will be tried?

7.     Should the Court refuse to strike Plaintiffs' demand for a jury trial based on the jury-waiver provision contained in the parties' contracts, because Plaintiffs' claims are too intertwined to be tried separately, and striking Plaintiffs' demand for a jury trial would deprive the Plaintiffs of their constitutional right to try the claims not covered by the contracts to a jury?

## PRELIMINARY STATEMENT

The discovery taken by both the Direct Purchaser and Indirect Purchaser Plaintiff ("DPP" and "IPP," respectively) classes and the Direct Action Plaintiffs has thus far uncovered substantial and direct evidence that NEC actively participated in the LCD conspiracy from its beginnings through 2006.  This evidence, which was obtained from multiple sources, including admissions made by NEC's co-conspirators such as Samsung, shows that NEC both participated in several conspiratorial meetings *and* reached agreements on price at these meetings.  Electrograph's Complaint details the LCD conspiracy and contains multiple allegations regarding this and other evidence of NEC's participation in the conspiracy.

In addition to Plaintiffs' specific allegations concerning NEC's participation in the global LCD conspiracy, the Complaint directly quotes from the deposition of Samsung witness H.B. Suh, in which he testified that he had multiple conspiratorial meetings with representatives from NEC, that at these meetings the parties discussed prices and reached "understandings" on the prices each would charge, and that Mr. Suh reported these "understandings" on the prices NEC would charge to Samsung's headquarters.  It is noteworthy that Mr. Suh was a core participant in the LCD conspiracy on behalf of Samsung and was assigned by the companies attending the Crystal Meetings to meet with the Japanese LCD panel manufacturers and coordinate their participation in the conspiracy.  In fact, the testimony Mr. Suh gave with respect to NEC's active participation in the LCD conspiracy is similar to his testimony about his conspiratorial meetings with the other Japanese LCD panel manufacturers, including Sharp, Toshiba, Hitachi, and Sanyo.

Beyond Mr. Suh's testimony, Electrograph's Complaint also details the admissions made by Samsung, as a party defendant, in its interrogatory responses to the DPP and IPP classes.

1 ████████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████████

3 █████████████████████████████████   ████████████████████████████

4 ████████████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████████████

6 █████████████████████████████████████████

7       These allegations alone far surpass the pleading standard set down by this Court in

8 applying *Twombly*.  And there are several more. ████████████████████████████████████

9 ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████

15       It is against this backdrop that NEC moves to dismiss Electrograph's Complaint.  But

16 NEC's motion relies upon arguments that either mischaracterize the allegations in Electrograph's

17 Complaint, or misapply this Court's decisions concerning *Twombly* and group pleading.  These

18 arguments should be rejected because they are factually without merit and contrary to controlling

19 law, including this Court's decisions in the LCD MDL.

20       NEC also attempts to rely upon several contracts between some (but not all) of the NEC

21 Defendants and some (but not all) of the Plaintiffs' predecessor entities in an attempt to somehow

22 limit its exposure for participating in the LCD conspiracy.  The Court should reject these

23 arguments as well.

24       *First*, the contracts NEC relies upon are outside the pleadings and cannot be considered on

25 a motion to dismiss, because Plaintiffs do not assert any claims against NEC for breach of contract

26 or otherwise refer to these contracts.  This Court, in *SB Liquidation Trust*, No. 3:07-md-01827-SI

27 (N.D. Cal. Sept. 19, 2011) (Dkt. No. 3614), has already denied a substantively indistinguishable

28 motion to dismiss on this exact basis.

*Second*, it is axiomatic that none of the contractual provisions can be applied with regard to NEC entities that were not parties to the agreements.  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009); *Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1165 (9th Cir. 1996) ("A choice-of-law clause, like an arbitration clause, is a contractual right and generally may not be invoked by one who is not a party to the contract in which it appears.") (internal citations omitted).  Thus, Defendants' arguments are inapplicable to NEC Corporation; NEC Electronics America, Inc; and NEC LCD Technologies, Ltd.

*Third*, as this Court ruled in *Dell*, 2011 WL 941285, at *9 (N.D. Cal. Mar. 16, 2011), the contractual provisions NEC relies upon do not apply to any of Plaintiffs' indirect purchaser claims, because these claims are not based upon purchases from NEC and therefore do not arise out of the parties' contracts.

*Fourth*, the contractual provisions NEC relies upon do not apply to any of Plaintiffs' Sherman Act claims to the extent those claims seek to impose joint and several liability upon NEC based on Plaintiffs' purchases from co-conspirators with whom NEC conspired, because these claims are not based upon purchases from NEC and therefore do not arise out of the parties' contracts.

*Fifth*, all of Plaintiffs' claims are timely.  Indeed, even assuming NEC's argument that the contractual statute of limitations provision applies to Plaintiffs' claims (which it does not), NEC completely ignores several irrefutable bases for tolling the limitations period which govern Plaintiffs' claims.

*Finally*, NEC's reliance on the forum-selection and jury waiver clauses is nothing more than an unjustified attempt to force Plaintiffs to litigate all of their claims before an Illinois court, despite the fact that Plaintiffs never agreed to do so with respect to any of their indirect purchaser claims or, at a minimum, a substantial portion of their Sherman Act claim.  Courts have repeatedly refused to enforce forum-selection and jury-waiver clauses in precisely these circumstances.

## STATEMENT OF FACTS

### A.    RELEVANT PROCEDURAL HISTORY

On December 12, 2006, the United States Department of Justice ("DOJ") announced that it

had launched an investigation into anti-competitive activity among manufacturers of LCD panels, including NEC.  Compl. ¶ 107-09.[1]

On December 14 and 16, 2006, class action complaints were filed on behalf of indirect and direct purchasers, respectively, which included Electrograph within their class definitions.  *Audio Video Artistry v. Samsung Electronics Co. Ltd.*, No. 3:07-cv-02325-SI (N.D. Cal. May 1, 2007) (Dkt. No. 1) (defining putative class as "[a]ll persons within the United States who indirectly purchased LCD products" and asserting claims under California and New York law); *Nathan Mutchnick, Inc. v. Sharp Corporation, et al.*, No. 3:07-cv-02326-SI (N.D. Cal. May 1, 2007) (Dkt. No. 1) (defining putative class as "All individuals and entities who, . . purchased Thin Film Transistor Liquid Crystal Display (TFT-LCD) in the United States directly from the defendants or their subsidiaries").[2]  Nearly a year later, on November 5, 2007, the DPPs' Consolidated Complaint and the IPPs' Consolidated Amended Complaint were filed, with the latter no longer including Plaintiffs in its operative class definition.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Nov. 5, 2007) (Dkt. Nos. 366 and 367).  Both consolidated complaints included NEC LCD Technologies, Ltd. and NEC Electronics America, Inc. as named defendants.  *Id.*

On November 12, 2008, the DOJ announced that it had reached plea agreements with three LCD panel manufacturers in which those companies would plead guilty and pay nearly $600 million in criminal fines for their roles in the LCD conspiracy.  Compl. ¶ 110.

On November 6, 2009, Plaintiffs filed a complaint in the Eastern District of New York identifying twenty-nine defendants and fourteen co-conspirators – including co-conspirator NEC

---

[1] In its own public filings, NEC has acknowledged that it was an "object of" that investigation since its inception in December 2006, *see* NEC Corp., Report of Foreign Private Issuer (Form 6-K) (Dec. 22, 2006), available at http://www.sec.gov/Archives/edgar/data/72127/000119312508117067/d6k.htm, and NEC has continued to acknowledge that it is "subject to" the DOJ investigation to this day, *see* NEC Corp. Earnings Release (May 2011) at 25, available at http://www.nec.co.jp/ir/en/library/er.html.

[2] Many of the early class action complaints included certain NEC entities among the named defendants. *See, e.g., Ho v. LG Philips LCD Co., Ltd., et al.*, Case No. 3:07-cv-00708-SI (N.D. Cal.) (Dkt. No. 1) (indirect); *Hee v. LG Philips LCD Co., Ltd., et al.*, Case No. 3:07-cv-00722-SI (N.D. Cal.) (Dkt. No. 1) (indirect); *Nathan Mutchnick, Inc. v. Sharp Corporation, et al.*, No. 3:07-cv-02326-SI (N.D. Cal.) (Dkt. No. 1) (direct); *Orion Home Systems, LLC v. Samsung Electronics Co., Ltd.*, et al., Case No. 3:07-cv-00045-SI (Dkt. No.1) (direct).

LCD Technologies, Ltd. – as participants in the LCD conspiracy. *Electrograph Sys., Inc. v. Epson Imaging Devices Corp.*, No. 2:09-cv-04845-DRH (E.D.N.Y. Nov. 6, 2009) (Dkt. No. 1). A year later, on December 9, 2010, Electrograph moved to amend its complaint to add NEC LCD Technologies, Ltd. as a named defendant. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Dec. 9, 2010) (Dkt. No. 2199). On April 2, 2011, this Court denied that motion on the grounds that Plaintiffs should file a separate action against NLT, rather than an amended complaint, because "plaintiffs will be able to pursue their claims against NLT and will not be prejudiced by the denial of the instant motion" and "[a] separate action against NLT also will not require any modification of the pretrial schedule currently in place." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. April 2, 2011) (Dkt. No. 2619).

Thus, on April 5, 2011, Electrograph filed a complaint in the Eastern District of New York against NEC Corporation, NEC Corporation of America, NEC Display Solutions of America, Inc., NEC Electronics America, Inc., and NEC LCD Technologies, Ltd., and the case was transferred to this Court as part of the LCD MDL. *Electrograph Sys., Inc. v. NEC Corp.*, No. 2:11-cv-01690-ADS-WDW (E.D.N.Y. April 5, 2011) (Dkt. No. 1), (E.D.N.Y. June 29, 2011) (Dkt. No. 10).

**B. ELECTROGRAPH'S COMPLAINT SPECIFICALLY DETAILS THE EVIDENCE OF NEC'S ACTIVE PARTICIPATION IN THE CONSPIRACY**

Electrograph's Complaint against NEC consists of seventy-four pages and two hundred forty-three paragraphs, which describe in painstaking detail the nature, scope, and concealment of the global LCD conspiracy, as well as NEC's specific and active participation in it.

For example, *the Complaint alleges that NEC participated in the conspiracy*:

- "Defendant NEC joined the Conspiracy by participating in multi-lateral meetings and bilateral meetings and discussions with, among others, Samsung, Toshiba, Hitachi, Sharp, and LG to share information and reach agreement on prices for LCD Products beginning as early as 1998. In these discussions with its competitors and fellow conspirators, NEC exchanged price and supply information and also agreed on prices, price increases, and production limits and quotas for LCD panels." *Id.* ¶ 84.

- "Deposition testimony from NEC's and co-conspirators confirms NEC's participation in the conspiracy during the Relevant Period including communications with co-conspirators and competitors to discuss and agree on prices for LCD Products. Specific examples are set forth in Appendix A to this Complaint." *Id.* ¶ 85.



ELECTROGRAPH'S OPPOSITION TO
NEC'S MOTION TO DISMISS

Case No. 3:11-cv-03342-SI
Master File No. 3:07-md-01827-SI

In addition to these detailed allegations concerning NEC's participation in the conspiracy, the Plaintiffs have also made clear that their allegations apply to all of the NEC entities named in the Complaint; that when NEC's employees or agents engaged in conspiratorial meetings, they did so on behalf of every NEC entity; that NEC employees reported their conspiratorial agreements to the entire NEC corporate family; that all of the NEC entities were parties to the conspiratorial agreements; and that all of the NEC entities were active, knowing participants in the conspiracy. *E.g.,* Compl. ¶¶ 18, 103.

Plaintiffs have also alleged that NEC participated in the cartel's extensive efforts to conceal the conspiracy.  Among several other allegations of concealment, the Plaintiffs have alleged that "the participants agreed on what pretexts they would cite when questioned about rising prices. The participants also agreed to lie to the media and report that their fabs were operating at full capacity even when they were not, in order to create the appearance of a supply shortage." *Id.* ¶ 187; *see also id.* at ¶¶ 184-86, 195.  For example, "in early 1999, Omid Milani, a marketing manager for NEC, stated that 'demand by far is outstripping our supply capability' and predicted that 'prices will continue to increase until a reasonable balance is achieved.'" *Id.* ¶ 189.  Plaintiffs therefore allege that Defendants' fraudulent concealment of the conspiracy, as well as several other mechanisms, have tolled the applicable statute of limitations. *Id.* at ¶¶ 195-98.

### C.    PLAINTIFFS' ALLEGED CONTRACTS WITH NEC

The contracts relied upon by the Defendants are between certain of the Plaintiffs' predecessor entities and NEC-Mitsubishi Electronics Display of America, Inc. and NEC Technologies, Inc., which are predecessors to two of the five NEC entities who are defendants in this action. The former is now defendant NEC Display Solutions of America, Inc., and the latter first merged into NEC Solutions (America), Inc., which later merged into defendant NEC Corporation of America. There are no contracts cited regarding the remaining NEC defendants. These contracts contain the following clauses at issue here:

- Limitations on Liability: "NECTECH and DISTRIBUTOR may not institute any action in any form arising out of this Agreement more than eighteen (18) months after the cause of action had arisen. . ." (Declaration of Dylan Dunavan in Support of Motion to Dismiss ("Dunavan Decl."), Exhs. A-F § 7.2.)

- Choice of Law: "This Agreement shall be governed and construed in all respects in accordance with the laws of the state of Illinois." (*Id.* § 13.)

- Forum Selection: "If, during the term of this Agreement or at any time after its termination, either NECTECH or Distributor commences a suit, action, or other legal proceedings against the other arising out of or in connection with this Agreement, the breach thereof, or its termination, whether or not other parties are also named therein, the forum for the same, including, but not limited to, the forum of the trial, shall take place in accordance with this Section. Any action brought by either party against the other . . . shall be brought exclusively in the appropriate state or federal courts located in the State of Illinois." (*Id.* § 12.1.)

- Waiver of Jury Trial: "The parties mutually acknowledge and agree that any controversy relating in any manner to this agreement, any breach of this agreement or its termination may involve difficult or complex issues which may better be understood by a judge rather than a jury. Accordingly, the parties hereby knowingly, voluntarily and intentionally waive their rights to a jury trial in connection with any such litigation and consent to a trial before a judge, sitting without a jury." (*Id.* § 12.3.)

## ARGUMENT

### I.    PLAINTIFFS MORE THAN SUFFICIENTLY ALLEGE NEC'S PARTICIPATION IN THE CONSPIRACY

#### A.    Plaintiffs' Detailed Allegations Regarding NEC's Participation in the Conspiracy Far Surpass the Plausibility Standard Articulated by this Court

Plaintiffs have made multiple allegations concerning NEC's participation in the LCD conspiracy. Defendants argue, however, that none of these individual allegations, standing alone, states a plausible claim that NEC participated in the conspiracy. Defendants mischaracterize the substantial factual allegations and evidence compiled against it, and this Court has already rejected

their legal arguments in the other actions in the LCD MDL.

This Court has already addressed the sufficiency of allegations substantially similar to those contained in Plaintiffs' Complaint.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008) ("*Class I*").  In August 2008, when NEC was a defendant in the class complaints, this Court held:

> The complaint alleges that beginning in 1996 . . . the TFT-LCD product market has been 'characterized by unnatural and sustained price stability as well as certain periods of substantial increases in prices,' as well as a compression of price ranges for TFT-LCD products, which is inconsistent with natural market forces.  Plaintiffs allege that defendants controlled prices by, inter alia, manipulating the capacity of various generations of fabrication plaints, as well as the timing of bringing new capacity on line.  Allegations of such unusual pricing practices state a cause of action under *Twombly*.  Citing a number of public statements by defendants, the complaint also alleges specific instances of invitations to agree and subsequent agreements. . . .  In addition the complaint alleges that defendants offered pretextual reasons for price increases or output restrictions, which also supports an inference of concerted action.

*Id.  See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009) ("*Class II*") ("neither *Twombly* nor the Court's prior order requires elaborate fact pleading"); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (on motion to dismiss, court must draw all reasonable inferences in favor of the plaintiff); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986) (on motion to dismiss, the court must accept all allegations in the complaint as true).

Not only does Plaintiffs' Complaint contain each of these allegations, which the Court has already found to be sufficient to state a claim, but the Complaint also alleges that:



NEC's challenge to the sufficiency of these allegations rests on a divide and conquer approach. That is, it analyzes each one separately and asserts that each is alone insufficient and thus the whole is insufficient.  Putting aside NEC's strained arguments with respect to each individual allegation, the law is clear that the allegations must be viewed as a whole, and Plaintiffs are entitled to all reasonable inferences.

[3] NEC devotes one sentence of its brief arguing that antitrust plaintiffs must specifically allege that each agreement reached by defendants as part of a global price-fixing conspiracy meets one of the FTAIA's exceptions.  NEC fails to cite a single decision in support of its argument.  In any event, Plaintiffs' Complaint is clearly sufficient to trigger the FTAIA's exceptions.

In sum, NEC's arguments rest entirely on the theory that it is appropriate for this Court to rule upon the meaning of the evidence that underlies Plaintiffs' allegations, or that the Court need not presume the truth of the Plaintiffs' allegations. This is obviously not the law. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In any event, Plaintiffs' allegations of NEC's participation in the conspiracy are far from opaque or isolated; they are also allegations made by NEC's own co-conspirators regarding NEC's specific role in the cartel. Taken as a whole, the allegations with respect to NEC's participation in the conspiracy are far more detailed than allegations that have already survived an identical motion to dismiss in this case. *See Class II*, 599 F. Supp. 2d 1179.

**B.    Plaintiffs' Allegations Satisfy the Specific Standard this Court Set Forth Concerning Group Pleading**

NEC contends that Electrograph's allegations are deficient under the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), because Electrograph's Complaint does not sufficiently allege each NEC entity's involvement in the LCD conspiracy. This Court has already rejected the *same* argument made by NEC's fellow conspirators about allegations that were substantially similar to Plaintiffs' allegations here.

Courts have consistently recognized that allegations of an antitrust conspiracy need not be detailed on a defendant-by-defendant basis. *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1142 n.7 (N.D. Cal. 2009); *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980). Instead, a complaint must merely set forth allegations about each defendant only "in a context that raises a suggestion of a preceding agreement." *Twombly*, 550 U.S. at 557; *Class I*, 586 F. Supp. 2d 1109, 1117.

Applying that standard, this Court has rejected several attempts by NEC's co-conspirators to dismiss complaints in related LCD litigations for purportedly failing to "adequately allege each defendant's role in the alleged conspiracy." *Class II*, 599 F. Supp. 2d at 1184. *E.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435, at *2 (N.D. Cal. Sept. 15, 2011) ("*Circuit City*") ("[T]he direct-action plaintiffs' complaints . . . contain adequate factual allegations to state a claim against defendants, despite their use of 'group pleading.'"); *SB Liquidation Trust*, No. 3:07-md-01827-SI (N.D. Cal. Sept. 19, 2011) (Dkt. No. 3614); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2836955 (N.D. Cal. July 19, 2010) ("*Tatung III*"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 1264230 (N.D. Cal. Mar. 28, 2010) ("*Tatung II*"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2009 WL 533130 (N.D. Cal. Mar. 3, 2009) ("*Tatung I*").

For example, this Court has explained:

> [T]he amended consolidated complaints more than adequately allege the involvement of each defendant and put defendants on notice of the claims against them. Contrary to defendants' suggestion, neither *Twombly* nor the Court's prior order requires elaborate fact pleading . . . . The amended complaints add detail about numerous illicit conspiratorial communications between and among defendants, and facts of the guilty pleas entered by four defendants . . . . The complaints contain additional specific information about the group and bilateral meetings by which the alleged price-fixing conspiracy was effectuated . . . . The complaint[s] also allege[] which types of meetings the defendants and coconspirators participated in, and in some instances include[] more detail such as the year of a meeting and other meeting participants.

*Class II*, 599 F. Supp. 2d at 1184.

The Court then rejected the defendants' contention that the class complaints "do not differentiate between related corporate entities," pointing to allegations that: (1) "the conspiracy was implemented by subsidiaries and distributors within a corporate family"; (2) "individual

participants entered into agreements on behalf of, and reported these meetings and discussions to, their respective corporate families"; and (3) "individual participants in conspiratorial meetings and discussions did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family." *Id.* at 1184-85.

Electrograph's Complaint describes NEC's price-fixing conspiracy in the same detail that this Court held to be sufficient in these prior decisions. Specifically:

| **Court-Approved Allegations:** | **Examples of Allegations in the Complaint:** |
|---|---|
| "[T]he conspiracy was implemented by subsidiaries and distributors within a corporate family," *Class II*, 599 F. Supp. 2d at 1184. | "When Plaintiff refers to a corporate family or companies by a single name in their allegations of participation in the Conspiracy, it is to be understood that the Plaintiff is alleging that one or more employees or agents of entities within the corporate family engaged in conspiratorial meetings on behalf of every company in that family." Compl. ¶ 103.<br><br>"Plaintiffs purchased LCD Products in the United States directly from the Conspirators, including, but not limited to, Defendants, and/or Defendants' subsidiaries and affiliates and/or any agents Defendants or Defendants' subsidiaries and affiliates controlled." Compl. ¶ 8.<br><br>"Each Defendant and co-conspirator that is a subsidiary of a foreign parent acts as the United States agent for LCD panels and/or LCD Products made by its parent company." Compl. ¶ 38. |
| "[I]ndividual participants entered into agreements on behalf of, and reported these meetings and discussions to, their respective corporate families," *Class II*, 599 F. Supp. 2d at 1184. | "The individual participants entered into agreements on behalf of, and reported these meetings and discussions to, their respective corporate families. As a result, the entire corporate family was represented in meetings and discussions by its agents and a party to the agreements reached in them." Compl. ¶ 103. |
| "[I]ndividual participants in conspiratorial meetings and discussions did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family," *Class II*, 599 F. Supp. 2d at 1184-85. | "[T]he individual participants in the conspiratorial meetings and discussions did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family." Compl. ¶ 103. |
| "[D]etailed description of the meetings that were held in furtherance of the price-fixing conspiracy, as well as a description of actions taken in furtherance of the conspiracy by | • The Complaint makes detailed allegations about each conspirator's participation in the conspiracy. Compl. ¶¶ 72-106. |

| | |
|---|---|
| defendants' American subsidiaries," *Circuit City*, 2011 WL 4345435, at *2. | • The Complaint provides a detailed description of NEC's participation in the conspiracy. Compl., Appx. A. |
| "[S]ubsidiaries such as [Tatung] played a significant role in the conspiracy"; they sold and distributed LCD products manufactured by their corporate family members. *Tatung III*, 2010 WL 2836955, at *4. | "[T]o the extent that subsidiaries within the corporate families distributed LCD Products to direct purchasers, these subsidiaries played a significant role in the Conspiracy because Defendants and their co-conspirators wished to ensure that the prices for such products paid by direct purchasers would not undercut the pricing agreements reached at these various meetings." Compl. ¶ 103. |
| Tatung and its corporate family members were "active, knowing participants in the conspiracy." *Tatung III*, 2010 WL 2836955, at *4. | "[A]ll entities within the corporate families were active, knowing participants in the Conspiracy." Compl. ¶ 103. |

NEC appears to suggest that this Court should ignore these earlier decisions and dismiss Electrograph's Complaint based upon its newly developed analysis in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2629728 (N.D. Cal. June 29, 2010) ("*Nokia*"). *See* NEC Br. at 15-16. But *Nokia* is not the watershed case NEC makes it out to be, because the Court there did nothing more than apply an established test to a complaint substantially less detailed than the complaint Electrograph has filed here.

The plaintiff in *Nokia* sued a defendant based on nothing more than its (unnamed) corporate affiliate "acknowledg[ing] receiving a Statement of Objections from the European Commission concerning its alleged participation in a conspiracy." *Id.* Applying the same standard it had applied in prior cases, the Court found this singular allegation to be insufficient to state a claim. The Court explained, although *Twombly* does not require "detailed defendant by defendant pleading," "[t]here is *nothing* in paragraph 53 or elsewhere alleging how [the *Nokia* defendant] participated in the conspiracy." *Id.* at *7 (emphasis added).

*Nokia* is clearly distinguishable. As demonstrated above, Electrograph alleges in detail how each conspirator, including each NEC Defendant, participated in the illegal cartel. These allegations are materially indistinguishable from the allegations this Court has previously found to be sufficient to state a claim, and the Court's analysis in *Nokia* in no way compels a different outcome. *See, e.g., Class II*, 599 F. Supp. 2d at 1184.

NEC also argues that an entirely different—and more burdensome—pleading standard

applies to claims against NEC because NEC has not been a defendant in this case for three years. NEC does not cite a single decision that supports this assertion. Of course, that is because *Twombly* embraces the notice pleading standard set forth in Fed. R. Civ. P. 8 and provides no support for NEC's argument. *See William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (recognizing that *Twombly* "reiterated that Federal Rule of Civil Procedure 8(a)(2) requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'") (quoting *Twombly*, 550 U.S. at 554-55); *see also Twombly*, 550 U.S. at 555 (stating that a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"); *id.* at 570 ("heightened fact pleading of specifics" is "not require[d]").

## II.   THE PARTIES' CONTRACTS DO NOT SUPPORT NEC'S MOTION TO DISMISS

NEC invokes four provisions in its contracts with certain of the Plaintiffs or their predecessors in an effort to dismiss this case. NEC argues that: (1) Plaintiffs' New York and California state law claims should be dismissed because the parties chose Illinois law for all claims arising out of their agreements; (2) all of Plaintiffs' claims are time-barred because Plaintiffs agreed that they would file their claims within 18 months after they arose, but Plaintiffs failed to do so; (3) Plaintiffs agreed to a forum-selection clause designating Illinois state or federal courts as the exclusive forum for all claims arising out of the parties' agreements; and (4) Plaintiffs waived their right to try their claims to a jury. NEC's arguments suffer from critical flaws.

### A.   The Court May Not Consider the Contracts NEC Relies Upon

NEC argues that several provisions in the parties' contracts require the Court to dismiss Plaintiffs' claims. This Court has already rejected the *same* argument, made by another group of defendants in this LCD MDL, because the plaintiff's claims did not explicitly reference or rely upon the contracts at issue. The same is true here.

In *SB Liquidation Trust*, No. 3:07-md-01827-SI (N.D. Cal. Sept. 19, 2011) (Dkt. No. 3614), a group of defendants in this LCD MDL moved to dismiss the plaintiff's complaint because a contract between the parties contained a Korean choice-of-law clause. *Id.* at 5. The plaintiff argued that the contract was outside the pleading and, therefore, could not be considered on the

Rule 12(b)(6) motion, because plaintiff did not assert any claims for breach of contract or otherwise refer to the contract. *Id.* This Court agreed with the plaintiff. The Court first concluded that it could not consider the contract on a motion to dismiss, because "the four corners of the complaint do not make explicit reference to the contract in order to establish plaintiff's claims for relief." *Id.* at 6; *see also id.* ("If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity . . . is not contested *and* the plaintiff's complaint necessarily relies on them.") (emphasis added). The Court then concluded that it could not take judicial notice of the contract because (1) even the defendant acknowledged "that there may be more contracts that the parties are not aware of"; and (2) the plaintiff was a bankruptcy trust and successor-in-interest to the party with whom the defendants contracted, "Syntax," so the plaintiff's "ability to identify the transactions between Syntax and [the defendants] may be constrained." *Id.* The Court therefore denied the defendants' motion. *Id.*

As in *SB Liquidation Trust*, Plaintiffs in no way reference or rely upon their contracts with NEC (as NEC admits, NEC Br. at 6); Plaintiffs contest the transactions to which these contracts apply, if any; Plaintiffs are successors-in-interest to several other companies with whom NEC allegedly contracted, so Plaintiffs' ability to identify the relevant transactions governed by the contracts with NEC may be constrained; and Defendants acknowledge that they have no record of contracts with certain of Plaintiffs' predecessors-in-interest (NEC Br. at 6 n.4), an issue on which Plaintiffs are entitled to discovery. *See* Plaintiffs' Opp. to NEC's Request for Judicial Notice. Thus, the Court may not consider these contracts on NEC's motion to dismiss, and NEC's effort to rely upon the parties' contracts as a basis for dismissal should be rejected in its entirety.

Even if the Court concludes otherwise, the Court should reject NEC's arguments as meritless for the reasons stated in the remaining sections of this memorandum of law.

**B.     The Choice of Law Clause Does Not Apply**

**i.     Illinois Law Does Not Apply**

NEC argues that the Court must dismiss Plaintiffs' New York and California state law claims because the parties' contracts contain an Illinois choice-of-law clause. (NEC Br. at 22.) Those clauses state that "[t]his Agreement shall be governed and construed in all respects in

accordance with the laws of the State of Illinois." (Dunavan Decl., Exh. A § 13.)  NEC rests its entire argument upon one authority, this Court's ruling in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 941285 (N.D. Cal. Mar. 16, 2011) ("*Dell*").  But NEC has misread this decision, which directly undermines NEC's motion to dismiss.

In *Dell*, defendants moved to dismiss Dell's state antitrust and unfair competition claims, arguing that the parties entered into purchase agreements containing choice-of-law clauses that required Dell to bring those claims under the laws of different states.  *Id.* at *2, *7.  In granting the defendants' motion, the Court explained that Dell's claims fell within the choice-of-law clauses only because "the MPAs form the basis of its purchase of the allegedly price-inflated TFT-LCD Products and . . . the state antitrust and unfair competition claims arose out of such purchases." *Id.* at *9.  Critically, however, the Court granted the defendants' motion to dismiss the state antitrust and unfair competition claims only "*to the extent* that those claims are based on purchases *from* those defendants." *Id.* (emphasis added).  In other words, Dell's state law claims fell outside the choice-of-law clauses, and therefore were not dismissed, to the extent the claims were based upon *indirect* purchases of price-fixed LCD Products, because the Court recognized that the parties' MPAs could not have "form[ed] the basis" of Dell's purchases from other entities.

This decision requires the denial of NEC's motion.  Plaintiffs assert claims against the NEC entities under New York and California law based on Plaintiffs' indirect purchases of price-inflated LCD Products, not based on purchases "from those defendants," *id. E.g.,* Compl. ¶¶ 8, 18.  The MPAs could not have "form[ed] the basis" of these indirect purchases, because these purchases were not made from NEC.  Thus, these claims fall outside of the choice-of-law clauses in the parties' agreements, and NEC's motion to dismiss these claims should be denied.

### ii.   Plaintiffs' New York and California Claims Do Not Violate Due Process

NEC argues that, to the extent Plaintiffs have properly asserted claims under New York and California law, Plaintiffs' claims violate the due process clause because Plaintiffs have not alleged that they purchased LCD Products in New York and California.  (NEC Br. at 22-23.)

NEC's assertion is false.  Plaintiffs have specifically alleged that they purchased LCD Products in New York and California. *See, e.g.,* Compl. ¶¶ 207, 225.  Plaintiffs' claims therefore

1

2

clearly satisfy the standard under the due process clause, as set forth by this Court in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1100133, at *5 (N.D. Cal. March 24, 2011).

3

### C.      The Plaintiffs' Claims are Not Time-Barred

4

5

6

7

8

The parties' agreement states that the Plaintiffs "may not institute any action in any form arising out of this Agreement more than eighteen (18) months after the causes of action has arisen . . . ." (Dunavan Exhs. A-F § 7.2.)  NEC asserts that the Plaintiffs' direct and indirect purchaser claims are time-barred under this provision because Plaintiffs failed to file their claims within 18 months after the claims arose.  (NEC Br. at 17-22.)  NEC is wrong again.

9

### i.      Plaintiffs' Indirect Purchaser Claims are Not Time-Barred

10

11

12

13

This contractual provision does not apply to any of the Plaintiffs' indirect purchaser claims, because, as explained above, those claims are not based on purchases from NEC and therefore do not in any way "aris[e] out of this Agreement."  *Dell*, 2011 WL 941285, at *9.  Even if this provision did apply, Plaintiffs' Complaint is timely.

14

15

16

17

18

*First*, Plaintiffs' New York and California claims were tolled until December 11, 2006, because NEC and its co-conspirators fraudulently concealed the existence of the LCD conspiracy.  *Class I*, 586 F. Supp. 2d 1109; *People ex rel. Cuomo v. Liberty Mut. Ins. Co.*, 52 A.D.3d 378, 379 (1st Dep't 2008); *Regents of Univ. of Cal. v. Superior Court*, 85 Cal.Rptr.2d 257, 271 (Cal. 1999) (internal quotation and citations omitted).

19

20

21

22

23

24

25

26

While NEC argues that Plaintiffs' allegations are insufficient to toll the statute of limitations based on fraudulent concealment, this Court has held in the related LCD class actions that the defendants' fraudulent concealment of the conspiracy tolled the plaintiffs' claims until the conspiracy was publicly disclosed because plaintiffs had alleged that "defendants concealed their price-fixing conspiracy through secret discussions about price and output, an agreement not to discuss publicly the nature of their price-fixing agreement, and numerous pretextual and false justifications disseminated to consumers regarding defendants' price increases."  *Class I*, 586 F. Supp. 2d at 1132.  *See also id.* at 1120.

27

28

The Plaintiffs have made precisely the same allegations of fraudulent concealment that this Court found sufficient when analyzing the DPPs' and IPPs' complaints.  *E.g.,* Compl. ¶¶ 184-88,

195.

*Second*, just days after this fraudulent concealment tolling ended, several class action complaints were filed (including against NEC) that included the New York and California indirect purchaser claims Plaintiffs have filed here, thereby tolling the statute of limitations once again. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.").  Specifically, on December 14, 2006, a class action complaint was filed asserting indirect purchaser claims on behalf of "All persons within the United States who indirectly purchased LCD products."  *Audio Video Artistry v. Samsung Elecs. Co. Ltd.*, Case No. 2:06-cv-32848 (W.D. Tenn.).

Although that class definition was narrowed to exclude Plaintiffs' claims on November 5, 2007, the DPP Consolidated Complaint was also filed on November 5, 2007, asserting direct purchaser claims on behalf of "all persons and entities who directly purchased a Thin Film Transistor Liquid Crystal Display ("TFT-LCD") panel, or a product containing a TFT-LCD panel."  DPPs' Consolidated Complaint, No. 3:07-md-01827-SI (Dkt. No. 366) (Nov. 5, 2007). This class action operated to toll Electrograph's New York and California claims under the cross-jurisdictional and equitable tolling doctrines until November 6, 2009, when Electrograph filed its complaint.  *Williams v. Dow Chem. Co.*, 2004 WL 1348932, at *12 (S.D.N.Y. June 16, 2004); *Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009); *see generally In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004).

*Third*, the statute of limitations on the Plaintiffs' New York claims was tolled again—and continued to be tolled until Plaintiffs' filed their complaint on April 5, 2011—on November 12, 2008, when the DOJ announced that it had reached agreements with three LCD panel manufacturers in which they would plead guilty and pay criminal fines for their roles in the LCD conspiracy.  This is so because Plaintiffs' Complaint is based in whole or in part on the unlawful conspiracy complained of in the DOJ's action.  N.Y. Gen. Bus. L. § 342-c.[4]  *Compare* Plea

---

[4] This provision states: "Whenever any civil or criminal proceeding is instituted by the federal government to prevent, restrain, or punish violations of the federal antitrust laws, the running of the period of limitations

Agreement of Sharp Corporation, No. 3:08-cr-00802-SI (Dkt. No. 9-2) (Dec. 8, 2008) ¶¶ 4(a), 4(c), *with* Compl. ¶¶ 1, 31, 37, 84.  NEC's argument that "it makes no sense" to toll the statute of limitations based on the DOJ's lawsuit because NEC was never a party in the criminal proceeding has already been specifically rejected by the United States Supreme Court.  *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 63 (1965).

*Finally*, the statute of limitations was tolled on all of Plaintiffs' claims from December 9, 2010 (MDL Dkt. No. 2199) until April 2, 2011 (MDL Dkt. No. 2619), during the pendency of Plaintiffs' motion to amend.  *Mayes v. AT&T Info. Sys., Inc.*, 867 F.2d 1172, 1173 (8th Cir. 1989); *U.S. v. Katz*, 494 F.Supp.2d 641 (S.D. Ohio 2006).

In sum, Plaintiffs' indirect purchaser claims were tolled during the following periods:

| New York indirect purchaser claims | • Until December 11, 2006, by virtue of the Defendants' fraudulent concealment.<br>• From December 14, 2006, until November 5, 2007, by virtue of the pending indirect purchaser class actions that asserted these claims.<br>• From November 5, 2007, to November 6, 2009, under the cross-jurisdictional tolling doctrine by virtue of the pending direct purchaser class actions.<br>• From November 12, 2008, until April 5, 2011, by virtue of the DOJ's still-pending action concerning the conspiracy.<br>• From December 9, 2010 until April 2, 2011, by virtue of the Plaintiffs' pending motion to amend. |
|---|---|
| California indirect purchaser claims | • Until December 11, 2006, by virtue of the Defendants' fraudulent concealment.<br>• From December 14, 2006, until November 5, 2007, by virtue of the pending indirect purchaser class actions that asserted these claims.<br>• From November 5, 2007, to November 6, 2009, under the cross-jurisdictional and equitable tolling doctrines by virtue of the pending direct purchaser class actions.<br>• From December 9, 2010 until April 2, 2011, by virtue of the Plaintiffs' pending motion to amend. |

in respect of every right of action arising under sections three hundred forty, three hundred forty-two and three hundred forty-two-a of this article, based in whole or in part on any matter complained of in the federal proceeding, shall be suspended during the pendency of said proceeding and for one year thereafter . . . ."

Thus, when Plaintiffs' filed their complaint against NEC, only three days had run on the statute of limitations governing Plaintiffs' New York claims, and only 12 months and 8 days had run on the statute of limitations governing Plaintiffs' California claims.  Thus, Plaintiffs' indirect purchaser claims were timely even if they were governed by an 18-month statute of limitations.

### ii.    Plaintiffs' Sherman Act Claim is Not Time-Barred

The 18-month statute of limitations period does not apply to Plaintiffs' direct purchaser claims under federal law to the extent those claims seek to hold NEC jointly and severally liable for purchases Plaintiffs made from other defendants in this LCD MDL.  *Dell*, 2011 WL 941285, at *9.  Once again, those claims are not based on Plaintiffs' purchases from NEC under the parties' contracts and, therefore, in no way arise out of the parties' agreements.  Rather, they are based on the well-settled principle that NEC is jointly and severally liable for *all* of the damages Plaintiffs suffered, trebled, when Plaintiffs purchased price-inflated LCD Products from the entities with whom NEC conspired.  *See Tatung III*, 2010 WL 2836955, at *3 (N.D. Cal. July 19, 2010).

Although NEC may (incorrectly) argue that Plaintiffs' Sherman Act claims against NEC arise out of the parties' agreements to the extent they are based on direct purchases *from NEC*, those claims are still timely.  As demonstrated above, Plaintiffs' Sherman Act claims were tolled:

- until December 11, 2006, by virtue of Defendants' fraudulent concealment of the conspiracy.  *Class I*, 586 F. Supp. 2d 1109;
- from December 14, 2006 through November 5, 2009, under *American Pipe* by virtue of the several class action complaints that were filed expressly including the Plaintiffs' direct purchaser claims;
- from November 6, 2008 through April 5, 2011, because the DOJ filed a still-pending action alleging an illegal conspiracy to fix the prices of LCDs, and the Plaintiffs' Complaint is based in whole or in part on the unlawful conspiracy complained of in DOJ's action; and
- from December 9, 2010 until April 2, 2011, by virtue of Plaintiffs' pending motion to amend.

Thus, only three days had run on the statute of limitations on Plaintiffs' Sherman Act claim by the time Plaintiff filed its complaint on April 5, 2011.  Plaintiffs' Sherman Act claim was therefore timely.

### D.    The Forum-Selection Clause Does Not Apply

NEC also argues that the parties' contracts contain forum-selection clauses that required

the Plaintiffs to file this lawsuit in the state or federal courts of Illinois.  (NEC Br. at 24-25.) Those clauses state that Plaintiffs must file in Illinois any action against NEC that "aris[es] out of or in connection with this Agreement, the breach thereof, or its termination . . . ."  (Dunavan, Exhs. A-F § 12.1).

The plain language of the parties' forum-selection clauses does not encompass the Plaintiffs' Sherman Act claim, to the extent that claim is based upon Plaintiffs' direct purchases from other defendants, or Plaintiffs' indirect purchaser claims under New York and California law, because those claims do not arise out of the parties' "Agreement, the breach thereof, or its termination," *id.* [5] *Dell*, 2011 WL 941285, at *9.

Nevertheless, NEC seeks to have *all* of the Plaintiffs' claims dismissed—even the direct and indirect purchaser claims that are clearly *not* subject to the parties' forum-selection clauses. Courts across the country have repeatedly refused to enforce forum-selection clauses in exactly these circumstances, *i.e.,* when doing so would either force a plaintiff to litigate its claims in two different courts or force a plaintiff to litigate claims in a forum it never chose.  For example, in *Farmland Indus., Inc. v. Frazier Parrott Commodities, Inc.*, 806 F.2d 848, 851 (8th Cir. 1986), the district court had denied the defendants' motion to dismiss under a forum-selection clause because "the suit was much broader than that contemplated by [the plaintiff] when it signed the agreement."  The defendants appealed, arguing that "even if [the court] find[s] the suit to be broader than the clause, the clause should still be enforced to the extent it applies."  *Id.* at 852.

The Eighth Circuit affirmed the district court's decision not to enforce the forum-selection clause.  The court first stated that the clause did not encompass all of the plaintiff's claims, so no basis existed for enforcing the clause as to those claims.  *Id.* at 852.  The court also explained that decisions in the arbitration context were inapplicable:

in the present case there is no mandatory federal statute.  Absent the strong policy of

---

[5] All of Plaintiffs' claims fall outside the contractual clauses upon which NEC relies.  If the Court concludes that all of Plaintiffs' claims fall within the forum-selection clauses, however, the Court should transfer this case to Illinois federal court after pretrial proceedings are completed.  Plaintiffs filed this lawsuit in New York because of their firm understanding that the forum-selection clauses in their contracts did not require them to file elsewhere, not because Plaintiffs were intentionally avoiding the Illinois courts. NEC's completely unsupported assertion that "Plaintiffs purposefully have avoided the Illinois courts" is false.  (NEC Br. at 25.)

1
2

> the Arbitration Act, we see no reason to require piecemeal resolution of this case. The district court found that under the circumstances enforcement of the forum selection clause would not be reasonable. We can not say that this was an abuse of discretion.

3   *Id.  See Curwood Inc. v. Prodo-Pak Corp.*, 2008 WL 644884, at *7 (E.D. Wis. March 7, 2008)

4   ("[T]he forum selection clause should not be enforced.  To do so would deprive [plaintiff] of its

5   right to choose the forum in which its claims that are not governed by the original contract will be

6   tried.") (quoting *Pegasus Transp., Inc. v. Lynden Air Freight, Inc.,* 152 F.R.D. 574, 577 (N.D. Ill.

7   1993)); *Vision Tech. Design & Mfg., Inc. v. Gen. Wire Spring Co.*, 2007 WL 2069945, at *8 (E.D.

8   Cal. July 17, 2007); *Frigate Ltd. v. Damia*, 2007 WL 127996, at *3 (N.D. Cal. Jan. 12, 2007); *BP*

9   *Prods. N. Am., Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253, 1257 (S.D. Fla. 2006).

10       These authorities make clear that the forum-selection clauses in the parties' agreements

11   should not be enforced.  As explained above, Plaintiffs' indirect purchaser claims, and, at a

12   minimum, a significant portion of their Sherman Act claim, fall outside of the clauses because they

13   are not based on purchases from NEC.  Thus, Plaintiffs cannot be forced to litigate these claims in

14   Illinois.  And even if the Court concludes that some of Plaintiffs' remaining claims fall within the

15   forum-selection clause, "enforcement of the clauses would result in burdensome piecemeal

16   litigation, which may result in inconsistent judgments," *BP Prods. N. Am., Inc.*, 464 F. Supp. 2d at

17   1257, and deprive Plaintiffs of their "right to choose the forum in which [their] claims that are not

18   governed by the original contract will be tried . . . .  [E]nforcement of the forum selection clause

19   would [therefore] be unreasonable." *Curwood Inc.*, 2008 WL 644884, at *7.

20       **E.       The Jury Trial Waiver Does Not Apply**

21       Finally, NEC argues that the Plaintiffs waived the right to a jury trial with respect to "any

22   controversy relating in any manner to this agreement, any breach of this agreement or its

23   termination," (Dunavan Decl., Exhs. A-F § 12.3).  NEC therefore claims that the Plaintiffs' request

24   for a jury trial should be stricken.  But this clause is unenforceable here.

25       Once again, the plain language of the contracts excludes the Plaintiffs' indirect purchaser

26   claims and Plaintiffs' Sherman Act claims (to the extent they are based on Plaintiffs' direct

27   purchases from other defendants), because those claims do not relate in any manner to the parties'

28   purchase agreement, any breach of the agreement, or its termination. *See Dell*, 2011 WL 941285,

at *9.  *See also Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981) ("Because the right to a jury trial is a fundamental right guaranteed to our citizenry by the Constitution, courts should indulge every reasonable presumption against waiver.").

Even if the Court concludes that the remaining portions of Plaintiffs' claims fall within the jury waiver, which it should not, those claims clearly arise out of the same nucleus of operative facts that underpins the rest of Plaintiffs' Complaint, NEC's participation in the LCD conspiracy. It is black-letter law that the Plaintiffs have a Seventh Amendment right to try both the factual and legal bases for these other claims to a jury.  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959); *see also id.* at 509 n.10 ("Since the issue of violation of the antitrust laws often turns on the reasonableness of a restraint on trade in light of all the facts, it is particularly undesirable to have some of the relevant considerations tried by one factfinder and some by another.").  Yet severing Plaintiffs' claims, which are too intertwined to be tried separately, may completely preclude the Plaintiffs from trying *any* of the facts supporting *any* of their claims to a jury.  In these circumstances, enforcing the jury-waiver clauses in the parties' contracts would not only be unreasonable—it would be unconstitutional.  *See Luis Acosta, Inc. v. Citibank, N.A.*, 920 F. Supp. 15, 19 (D. P.R. 1996) ("[T]he scope of the waiver clause is therefore limited to, at most, the factor's lien agreement, yet no single one of LAI's claims depends exclusively on this agreement. . . . The Court will therefore be unable to hold a bench trial on the factor's lien agreement in isolation from the other contracts. Since the Plaintiffs are entitled to a jury trial with regards to all such other matters and agreements, the entire trial must be held before a jury.").[6]

## **CONCLUSION**

For the foregoing reasons, Electrograph respectfully requests that NEC's motion to dismiss be denied in all respects.

---

[6]      Even if the Court concludes that Plaintiffs must try some but not all of their claims to a judge, the Plaintiffs still have a constitutional right to try their remaining claims to a jury.  Thus, at a minimum, NEC's motion to strike the Plaintiffs' demand for a jury trial of these claims should be denied.  *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 521 F. Supp. 2d 1031, 1044 (N.D. Cal. 2007); *Adelphia Recovery Trust v. Bank of Am., N.A.*, No. 05 Civ. 9050 (LMM), 2009 WL 2031855 (S.D.N.Y. July 8, 2009); *Okura & Co. (Am.), Inc. v. The Careau Group*, 783 F. Supp. 482, 491 n.3 (C.D. Cal. 1991).

1

Respectfully submitted,

2

3   DATED:  September 27, 2011                    _____/s/ William A. Isaacson_____
                                                  William A. Isaacson (admitted *pro hac vice*)
4                                                 BOIES, SCHILLER & FLEXNER LLP
                                                  5301 Wisconsin Ave. NW, Suite 800
5                                                 Washington, D.C.  20015
                                                  Telephone:  (202) 237-2727
6                                                 Facsimile:   (202) 237-6131
                                                  Email:  wisaacson@bsfllp.com
7
                                                  Philip J. Iovieno (admitted *pro hac vice*)
8                                                 Anne M. Nardacci (admitted *pro hac vice*)
                                                  Luke Nikas (admitted *pro hac vice*)
9                                                 Christopher V. Fenlon (admitted *pro hac vice*)
                                                  BOIES, SCHILLER & FLEXNER LLP
10                                                10 North Pearl Street, 4th Floor
                                                  Albany, NY  12207
11                                                Telephone:  (518) 434-0600
                                                  Facsimile:   (518) 434-0665
12                                                Email:  piovieno@bsfllp.com
                                                         anardacci@bsfllp.com
13                                                       lnikas@bsfllp.com
                                                         cfenlon@bsfllp.com
14
                                                  Laura J. McKay (SBN 230049)
15                                                BOIES, SCHILLER & FLEXNER LLP
                                                  1999 Harrison Street, Suite 900
16                                                Oakland, CA 94612
                                                  Telephone:  (510) 874-1000
17                                                Facsimile:  (510) 874-1460
                                                  Email:  lmckay@bsfllp.com
18
19                                                *Counsel for Plaintiffs*
                                                  *Electrograph Systems, Inc. and*
20                                                *Electrograph Technologies Corp.*

21

22

23

24

25

26

27

28