1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TFT-LCD (FLAT PANEL) ANTITRUST
LITIGATION
_____/

This Order Relates to:

    All Indirect-Purchaser Plaintiff Class
    Actions

_____/

No. M 07-1827 SI

MDL. No. 1827

**ORDER GRANTING IN PART
DEFENDANTS' JOINT MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
VARIOUS ISSUES OF STATE LAW**

On September 22, 2011, the Court heard argument on defendants' joint motion for partial summary judgment on various issues of state law. Having considered the moving papers and the arguments of the parties, and for good cause appearing, the Court hereby GRANTS IN PART defendants' motion.

## BACKGROUND

This antitrust class action stems from allegations of a global price-fixing conspiracy in the market for thin-film transistor liquid-crystal display ("TFT-LCD") panels. Plaintiffs, indirect purchasers of TFT-LCD panels, claim that "[d]efendants and their co-conspirators formed an international cartel illegally to restrict competition in the LCD panel market, specifically targeting and severely injuring indirect-purchaser consumers and affecting billions of dollars of commerce throughout the United States." Third Consolidated Amended Complaint ("TAC"), ¶2. Plaintiffs' TAC includes a claim under the Sherman Act, as well claims brought under the antitrust, unfair competition, and unjust enrichment laws of a number of states. TAC at ¶¶270-312.

On July 29, 2011, defendants filed a joint motion, seeking summary judgment on plaintiffs'

state-law unfair competition and unjust enrichment claims.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

## DISCUSSION

Defendants seek summary judgment on two broad categories of state-law claims: (1) state-law consumer protection claims; and (2) state-law unjust enrichment claims.

I.      **Consumer Protection Claims**

Defendants move for summary judgment on the consumer-protection claims plaintiffs have brought under the laws of New Mexico, New York, Vermont, Rhode Island, and Missouri.

A.      **New Mexico**

Plaintiffs' TAC includes a claim under the New Mexico Unfair Practices Act ("NMUPA"). The NMUPA forbids "unconscionable trade practices," which it defines as "an act or practice in connection with the sale . . . of any goods or services . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. §§ 57-12-2, 57-12-3. Plaintiffs' complaint invokes the second of these definitions. TAC at ¶308(b).

Defendants claim that plaintiffs cannot prove that a "gross disparity" existed between the price they paid for their LCD products and the value they received. They rely on a handful of cases in which courts found that price differences of up to 15% did not amount to gross disparities. *See Taylor v. United Management, Inc.*, 51 F. Supp. 2d 1212, 1217 (D.N.M.1999) (finding $600 difference between $4,000 dealership gave as trade-in value for car and $4,600 dealership later sold car for did not amount to "gross disparity"); *see also Wyatt v. Petrila*, 752 S.W.2d 683, 686 (Tex. App. 1988) (finding $625,000 purchase price of house worth $575,000 did not amount to gross disparity); *Holland Mortg. and Inv. Corp. v. Bone*, 751 S.W.2d 515, 521 (Tex. App. 1987) (finding $6,000 difference "between the value received and the consideration paid" for a house was "not a 'gross disparity' as a matter of law because it constitute[d] less than 7% of the $86,900 consideration paid").

Defendants argue that plaintiffs' evidence shows that the conspiracy only inflated the price of LCD panels by an average of either 8.9% or 12.1%. *See* Declaration of Lee F. Berger in Support of Defendants' Joint Motion for Partial Summary Judgment Based on Various Issues of State Law ("Berger Decl."), Exh. A (8.9%); Declaration of Janet S. Netz, Ph.D. in Support of Indirect-Purchaser Plaintiffs' Opposition to Defendants' Joint Motion for Summary Judgment on Plaintiff Benjamin Larry Luber's Claims, Master Docket No. 3172-1, at 2 n.5 (July 22, 2011) (12.1%). They assert that this is insufficient as a matter of law to constitute a gross disparity.

The Court disagrees.  None of the cases defendants rely on involved price-fixing or similar surreptitious activity.  Rather, they involved ordinary, arms-length transactions and thus were premised on nothing more than the terms of the bargains the plaintiffs had agreed to.  Here, in contrast, defendants secretly conspired to increase the prices of LCD panels to supra-competitive levels.  In such circumstances, plaintiffs have raised a genuine issue of fact regarding whether the 8.9% to 12.1% overcharge amounts to a gross disparity.  *See In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 586 n.60 (M.D. Pa. 2009) (noting "compelling trend favorable to consumer protection claims in price-fixing actions");  *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 171-72 (D. Me. 2004) (finding that allegations of a "gross disparity" were sufficient where plaintiff alleged vehicles were sold at prices "ten to thirty percent greater than prices for the same vehicles in Canada").

**B.    New York**

Defendants also move for summary judgment on plaintiffs' claims under section 349 of New York's General Business Law.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. L. § 349.  In order to prevail under section 349, plaintiffs must establish "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 586 F. Supp. 2d 1109, 1127 (N.D. Cal. 2008).  Defendants argue that plaintiffs were not aware of any of defendants' deceptive acts, and that plaintiffs therefore could not have been deceived by those acts.  *See* Berger Decl., Exh. B at 1 (admission of named-plaintiff DiMatteo that he was unaware of defendants' allegedly deceptive statements at the time he bought his monitor); Berger Decl., Exh. C at 2 (same for named-plaintiff Ferencsik).

This Court has already held that plaintiffs' allegations that defendants "took efforts to conceal their [price-fixing] agreements from the New York plaintiffs and the indirect class" were sufficient to state a claim under section 349.  *See Flat Panel*, 586 F. Supp. 2d at 1127-28 ("Defendants move to dismiss plaintiffs' claim under New York's General Business Law § 349 because the complaint does

United States District Court
For the Northern District of California

not specifically allege that defendants made any misrepresentations to the indirect plaintiffs."). Although couched in slightly different terms, defendants' summary judgment motion largely seeks to revisit this ruling.

The Court adheres to its earlier decision that plaintiffs' section 349 claim is viable. Contrary to defendants' argument, plaintiffs need not have been aware of defendants' deceptive conduct to recover under section 349. This is because "reliance is not an element of a section 349 claim." *Stutman v Chemical Bank*, 95 N.Y.2d 24, 29 (2000). All that plaintiffs must establish is that defendants committed "material deceptive acts" and "that the defendant[s'] 'material deceptive act' caused the[ir] injury." *Id.*

Courts have found that a defendant's affirmative steps to conceal its price-fixing activities can amount to material deceptive acts within the meaning of section 349. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1143-44 (N.D. Cal. 2008); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1030 (N.D. Cal. 2007); *cf. Leider v. Ralfe*, 387 F. Supp. 2d 283, 296 (S.D.N.Y. 2005) (rejecting section 349 claim because "De Beers' conduct, while certainly reprehensible, was not secretive"); *New Motor Vehicles*, 350 F. Supp. 2d at 197 (rejecting claim because price differential forming basis of section 349 claim was public knowledge). In this case, plaintiffs have introduced evidence that defendants took steps to ensure that their collusive activities remained hidden from consumers. *See* Clayton Decl., Exhs. 1-12 (examples of attempts to keep meetings secret). The Court agrees with plaintiffs that a reasonable jury could conclude that this conduct could deceive a consumer into believing that he was paying a competitive price for LCD products. Accordingly, the Court finds that a genuine issue of fact exists regarding whether defendants' secret, collusive activity violated section 349.

## C.     Vermont

Defendants also move for summary judgment on plaintiffs' claims under the Vermont Consumer Fraud Act ("VCFA"), which prohibits "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce . . . ." 9 V.S.A. § 2453(a). "To prevail on a [VCFA] claim, one must show that: (1) there was a representation, practice, or omission likely to mislead the consumer; (2) the consumer interpreted the message reasonably under the circumstances; and (3) the misleading

effects were material, that is, likely to affect the consumers conduct or decision with regard to a product." *Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, – A.3d –, 2011 WL 1347032, at *8 (Vt., April 7, 2011).

As above, defendants argue that they should be granted summary judgment on plaintiffs' VCFA claims because plaintiffs were not aware of any of defendants' allegedly deceptive acts. *See* Berger Decl., Exh. D at 2 (admission of named-plaintiff Watson that he was unaware of defendants' allegedly deceptive statements at the time he bought his laptop computer). VCFA violations, however, are evaluated under an objective standard. *Lang McLaughry*, 2011 WL 1347032 at *8. Thus, the question is whether defendants' omissions would have been material to a reasonable consumer. *Id.* at *9. The Court finds that plaintiffs have established that a genuine issue of fact exists concerning whether defendants' concealment of their price-fixing activities were "likely to affect the consumer's conduct or decision with regard to a product." *See Elkins v. Microsoft Corp.*, 817 A.2d 9, 13 (Vt. 2002) ("The Legislature clearly intended the VCFA to have as broad a reach as possible in order to best protect consumers against unfair trade practices.").

### D.   Rhode Island

The Rhode Island Unfair Trade Practices and Consumer Protection Act ("UTPCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." R.I. Gen. Laws § 6-13.1-2. This Court has already held that plaintiffs' complaint alleges a cognizable legal theory under the UTPCPA. *Flat Panel*, 586 F. Supp. 2d at 1129 (approving plaintiffs' theory that "consumers were misled or deceived to believe that they were paying a fair price for [LCD products] or the price increases for [LCD products] were for valid business reasons").

Defendants raise three arguments as to why summary judgment should be granted on this claim. First, defendants seek summary judgment on the ground that plaintiffs' claims are exempted from coverage under the UTPCPA. The UTPCPA contains an exclusionary provision that provides: "Nothing in this chapter shall apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States." R.I. Gen. Laws § 6-13.1-4. The Rhode Island Supreme Court has

held that this provision "exempt[s] from the Act all those activities and businesses which are subject to monitoring by state or federal regulatory bodies or officers." *State v. Piedmont Funding Corp.*, 382 A.2d 819, 822 (R.I. 1978).

Defendants argue that plaintiffs' antitrust claims fall within this statutory exemption because antitrust claims are "subject to regulation [by] the United States Department of Justice, the Federal Trade Commission and the Rhode Island State Attorney General . . . ." Motion at 10. The Court disagrees with defendants' argument. The focus of the UTPCPA's exemption is not the defendants' wrongful acts, otherwise every illegal practice would be subject to the regulation of DOJ or the Rhode Island Attorney General and exempted from UTPCPA. Rather, the proper inquiry is whether the specific "transactions which constitute the basis of th[e] complaint" are subject to regulation. *Piedmont Funding*, 382 A.2d at 822; *see also Lynch v. Conley*, 853 A.2d 1212, 1214 (R.I. 2004) ("[S]tep one of the exemption analysis requires the party claiming the exemption to demonstrate that the general activities complained of are subject to monitoring or regulation by a state or federal government agency."); *Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666, 672 (R.I. 2004) ("Under the first prong of the analysis, the question is whether the 'general activity in question,' in this case credit-card solicitations, is subject to control and monitoring by governmental agencies.").

Thus, in *Piedmont Funding*, the plaintiff's lawsuit was precluded because he alleged deceptive acts in the sale of insurance and securities, areas regulated by "the office of the insurance commissioner and the SEC respectively." *Piedmont Funding*, 382 A.2d at 822. Other cases have similarly limited the UTPCPA's exemption to the transactions on which the plaintiff's complaint was based. *See New Motor Vehicles*, 350 F. Supp. 2d at 201 (holding that claims based on deceptive practices in sales of automobiles were not cognizable because "[m]otor vehicle manufacturers, distributors and dealers are regulated by the State of Rhode Island pursuant to a separate statute"); *Lynch*, 853 A.2d at 1214 (excluding claim based upon inadequate lead-paint disclosure because "[l]ead paint disclosure in connection with the sale of residential real estate, already is comprehensively regulated by the state and federal government"); *Chavers*, 844 A.2d at 672 (finding claims of deceptive advertising in credit card solicitations exempted because "credit card solicitations by a national bank . . . are subject to monitoring, supervision and regulation by federal agencies").

United States District Court
For the Northern District of California

The Court concludes that the relevant "transactions which constitute the basis" of plaintiffs' complaint" are the sale and pricing of LCD products or consumer electronics. Defendants have identified no regulations governing such transactions. Accordingly, the Court rejects defendants' first basis for summary judgment.

Defendants' second argument is that their failure to disclose the alleged conspiracy was not material. Of the twenty separate definitions that the UTPCPA provides for "unfair methods of competition and unfair or deceptive acts or practices," one requires that the defendants "mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-13.1-1 ("Using any other methods, acts or practices which mislead or deceive members of the public in a material respect."). As above, defendants argue that plaintiffs were not aware of any statements made by the defendants, and that any deceptive conduct therefore could not have been material to plaintiffs' purchasing decisions. *Cf.* Berger Decl., Exh. F at 2 (testimony of Rhode Island named-plaintiff Mastronardi that he purchased his laptop computer without reviewing "marketing materials or brochures").

"A material effect is one which is likely to influence a consumer's conduct or purchase decision." *In re Int'l Harvester Co.*, 104 F.T.C. 949, 1042-43 (Dec. 21, 1984); *see also* R.I. Gen. Laws § 6-13.1-3 ("It is the intent of the legislature that in construing §§ 6-13.1-1 and 6-13.1-2 due consideration and great weight shall be given to the interpretations of the federal trade commission and the federal courts relating to § 5(a) of the Federal Trade Commission . . . ."). For the reasons stated above, the Court agrees with plaintiffs that the existence of a price-fixing conspiracy is "likely to influence" the average consumer. *Chocolate Confectionary*, 602 F. Supp. 2d at 587 (finding allegations sufficient where plaintiff alleged that "defendants conspired to raise prices in Rhode Island, that they issued misleading statements about the true reasons for these price increases, and that they caused Rhode Island consumers to believe that prices for chocolate candy were the result of fair competition in an open marketplace" (citations omitted)). Accordingly, the Court rejects defendants' second basis for summary judgment.

Finally, defendants seek summary judgment as to any plaintiff who did not purchase an LCD product "primarily for personal, family or household purposes." *See* R.I. Gen. Laws § 6-13.1-5.2(a). Although this Court has previously granted defendants' motion to dismiss plaintiffs' complaint to the

extent it sought claims that did not meet this criteria, the class definitions do not contain any such limitation. *Flat Panel*, 586 F. Supp. 2d at 1130. Accordingly, the Court GRANTS defendants' motion for summary judgment as to any purchases that were not "primarily for personal, family or household purposes." The Court will enter an order altering the Rhode Island class definition at the time it rules on defendants' pending motion to amend the class definitions.

### E. Missouri

Plaintiffs' TAC also includes a claim under the Missouri Merchandising Practices Act ("MMPA"). The MMPA limits private actions to "[a]ny person who purchases or leases merchandise primarily for personal, family, or household purposes." Mo. Rev. Stat. § 407.025.1. As above, defendants argue that the class definitions do not contain any "personal use" limitations. Plaintiffs do not contend that a plaintiff that purchased an LCD product for non-personal use may recover under the MMPA. Accordingly, the Court GRANTS defendants' motion to the extent plaintiffs seek to recover for purchases that were not personal. The Court will enter an order altering the Missouri class definition at the time it rules on defendants' pending motion to amend the class definitions.

## II. Unjust Enrichment Claims

Plaintiffs' TAC includes common-law unjust enrichment claims under the laws of twenty-two states, including the District of Columbia. TAC at ¶278. Defendants now seek summary judgment on plaintiffs' claims under the laws of fourteen states: the District of Columbia, Hawaii, Iowa, Kansas, Maine, Mississippi, Missouri, New Mexico, New York, Rhode Island, South Dakota, Vermont, West Virginia, and Wisconsin.

Defendants advance three theories in support of their motion. First, they claim that in twelve states plaintiffs did not confer a "direct benefit " on the defendants. Second, they claim that the unjust enrichment claims under the laws of eight states must be dismissed because plaintiffs have an adequate remedy at law. Finally, they argue that unjust enrichment may not be used to circumvent the statutory limitations on antitrust actions in Rhode Island and Missouri.

United States District Court
For the Northern District of California

**A.    Necessity of "Direct Benefit"**

Defendants argue that twelve states require a plaintiff to prove that he conferred a "direct benefit" on the defendant to establish a claim for unjust enrichment.  They argue that plaintiffs cannot meet this requirement because the named plaintiffs purchased LCD products from intermediaries – either retailers or manufacturers of televisions, computers, or other LCD products – and not directly from a defendant.

As a general matter, the Court is unconvinced by defendants' argument.  The Court recognizes that unjust enrichment law varies from state to state.  *See True v. Conagra Foods, Inc.*, 2011 WL 176037, at *9 (W.D. Mo., January 4, 2011) ("Courts have repeatedly recognized that the law of unjust enrichment varies materially from state to state." (internal quotation marks omitted)).  In general, however, unjust enrichment requires a plaintiff to show "the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant." Restatement (Third), Restitution § 1, cmt. a (2011); *see also*, *e.g.*, *Platz Associates v. Finley*, 973 A.2d 743, 750 (Me. 2009) ("A claim for unjust enrichment requires the complaining party to show that: (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.").

Unjust enrichment is an equitable remedy, and thus by its very nature is a flexible doctrine. Restatement (Third), Restitution, § 1, cmt. a (noting the "inherent flexibility of the concept of unjust enrichment").  As a cause of action based in equity, "the requirements of proof of unjust enrichment are neither technical nor complicated." *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d 331, 342 (Miss. 2004).  *Id.* ("[T]he plaintiff need only allege and show that the defendant holds money which in equity and good conscience belongs to the plaintiff . . . .").  Thus, by their very nature unjust enrichment claims are ill-suited for bright-line rules of the type defendants suggest.

In addition, defendants' focus on the lack of a "direct relation" between plaintiffs and defendants in misplaced.  Rather than looking at the relationship between the parties, courts typically focus on the relation between the plaintiffs' injury and the defendants' conduct.  *Owens Corning*, 868 So.2d at 339 (noting need for a "direct relation between the injury asserted and the injurious conduct alleged.").

United States District Court
For the Northern District of California

Thus, those cases in which courts have described unjust enrichment claims as too "indirect" to state claims for relief typically have involved tenuous connections between the plaintiff's injury and the defendant's gain. Frequently the defendant's benefit did not originate with the plaintiff. *See Owens Corning*, 868 So. 2d at 339; *Hill v. Stowers*, 680 S.E.2d 66, 75 (W. Va. 2009). In other cases the plaintiff's loss was not responsible for the defendant's gain or the defendant received no gain at all. *See Prudential Ins. Co. of America v. Couch*, 376 S.E.2d 104 (W. Va. 1988); *Rivers v. Amato*, 2001 WL 1736498 (Me. Super., June 22, 2001); *Alessi v. Bowen Court Condo.*, 2010 R.I. Super. LEXIS 50 (R.I. Super., March 10, 2010). In still other cases, courts have found the relationship too "attenuated." *See, e.g.*, *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 209 (N.Y. 2007) (rejecting indirect purchaser claims based upon price-fixing activities in chemicals used in rubber because the relationship was too "attenuated").

Here, in contrast, there is a direct relationship between the plaintiffs' expenses and the defendants' benefit. Under the theory of the case that plaintiffs have advanced, there are no intervening events that disrupt the flow of money from plaintiffs to defendants. Although termed "indirect," plaintiffs have provided evidence supporting their theory that the money they paid was "passed through" directly to defendants. In the Court's view, this is sufficient to satisfy the general common-law definition of unjust enrichment. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 599 F. Supp. 2d 1189-90 (N.D. Cal. 2009) ("Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct." (internal quotation marks omitted)). Unless a state court has explicitly held otherwise, the Court is inclined to allow plaintiffs' unjust enrichment claims to proceed.

       1.   <u>Mississippi</u>

In Mississippi, unjust enrichment "applies to situations where there is no legal contract but where the person sought to be charged is in possession of . . . property which in good conscience and justice he should not retain but should deliver to another . . . ." *Joel v. Joel*, 43 So. 3d 424, 432 (Miss. 2010). Defendants argue that Mississippi law requires a "direct relation between the injury asserted and the

injurious conduct alleged." *See Owens Corning*, 868 So. 2d at 339 ("[O]ne notion traditionally included in the concept of proximate causation is the requirement that there be some direct relation between the injury asserted and the injurious conduct alleged." (internal quotation marks omitted)).  Because the Mississippi class representative testified that she bought a personal computer, including an LCD monitor, from dell.com, defendants assert that summary judgment is appropriate on her unjust enrichment claim.  *See* Berger Decl., Exh. G at 72.

Defendants' reliance on *Owens Corning* is misplaced.  That case concerned proximate causation and did not establish a bar to all unjust enrichment claims where the plaintiff did not deal directly with the defendant.  The plaintiff in *Owens Corning* was an asbestos manufacturer that settled a large number of cases with individuals suffering from lung disease.  *Owens Corning*, 868 So. 2d at 335.  After reaching these settlements, the plaintiff brought suit against a number of tobacco companies, claiming that they were also responsible for the lung disease.  *Id.* at 335-337.  Its lawsuit included an unjust enrichment claim, based on the theory that "by effectively shifting liability for smoking related disease to [plaintiff], Tobacco Defendants have been unjustly enriched at [plaintiff's] expense."  *Id.* at 336-37.  Based on a Mississippi law that "preclude[d] all tobacco cases based on products liability," the Court rejected plaintiff's unjust enrichment claim.  *Id.* at 340.  It held that plaintiff could not establish proximate cause for its injuries because it could not establish the tobacco companies' liability for the lung disease.  *Id.* at 342 ("Owens Corning would have to prove that Tobacco Defendants were liable for injuries suffered by the asbestos claimants . . . .").

This case has no such problem with proximate causation.  Plaintiffs allege that defendants wrongfully overcharged electronics manufacturers for LCD panels, and that those overcharges were passed through to them when they purchased LCD products.  Although plaintiffs and defendants may not have interacted, this amounts to "a direct relation between the injury asserted and the injurious conduct alleged."  Accordingly, the Court DENIES defendants' motion for summary judgment on the Mississippi unjust enrichment claim.

### 2. New York

Defendants also seek summary judgment on plaintiffs' New York unjust enrichment claim.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  Defendants argue that indirect purchasers may not recover under New York law, relying primarily on

2  a 2007 case from the New York Court of Appeals, *Sperry v. Crompton Corp.*, 8 N.Y.3d 204 (N.Y.

3  2007). *Sperry* concerned a purported antitrust class action lawsuit against producers of

4  "rubber-processing chemicals that improve the durability, color control and heat resistance of rubber

5  products, including tires, belts, hoses and footwear." *Id.* at 209. In addition to seeking treble damages,

6  the lawsuit also included an unjust enrichment claim. *Id.* at 215. Acknowledging that "a plaintiff need

7  not be in privity with the defendant to state a claim for unjust enrichment," the court rejected the claim,

8  concluding that "the connection between the purchaser of tires and the producers of chemicals used in

9  the rubber-making process is simply too attenuated to support such a claim." *Id.* at 215-16; *see also*

10 *New York v. Daicel Chemical Industries, Ltd.*, 840 N.Y.S.2d 8, 12 (N.Y. App. 2007) ("While privity is

11 not required for an unjust enrichment claim, the end-users of the products, in whose interest plaintiff is

12 acting, are too attenuated from the producers of the chemicals which are among the ingredients of those

13 products.").

14       Although *Sperry* supports defendants' position, even after it was decided courts have continued

15 to allow unjust enrichment claims to proceed on behalf of indirect-purchasers of price-fixed products.

16 *See Chocolate Confectionary*, 749 F. Supp. 2d at 241 (finding sufficient allegations that "[t]he IEU

17 plaintiffs have averred that a monetary benefit was indirectly conferred on defendants by virtue of their

18 collusive market behavior."); *see also Burns v. Delaware Charter Guarantee & Trust Co.*, --- F. Supp.

19 2d ----, 2011 WL 2314835, at *2 (S.D.N.Y., June 8, 2011) ("Unjust enrichment does not require a direct

20 relationship between the parties."); *In re Canon Cameras Litig.*, 2006 WL 1751245, at *2 (S.D.N.Y.,

21 June 23, 2006) ("The cases on which defendant relies suggest, at most, only that some relationships may

22 be too attenuated to support an unjust enrichment claim."); *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147

23 (N.Y. App. 2004) (reversing district court's "holding that, as indirect purchasers of Microsoft's software

24 products, plaintiffs only indirectly bestowed a benefit upon Microsoft.").

25       In light of these cases, the court agrees with plaintiffs that the New York Court of Appeals'

26 decision was based upon the fact that rubber-processing chemicals did not represent a significant portion

27 of the rubber products that the plaintiffs purchased. Here, in contrast, plaintiffs claim that LCD panels

28 are "identifiable, discrete physical objects that do not change form or become an indistinguishable part

United States District Court
For the Northern District of California

of the TVs, computer monitors, laptops, or other products in which they are contained," and "[t]hus, LCD panels follow a traceable physical chain from the defendants to the OEMs to the purchasers of the finished products incorporating LCD panels." TAC at ¶¶199-200; *see also Flat Panel*, 586 F. Supp. 2d at 1123. Plaintiffs also allege that "LCD panels make up 60-70% of the cost of an LCD television or computer monitor." TAC at ¶182; *Flat Panel*, 586 F. Supp. 2d at 1124. In light of these allegations, which defendants have not challenged, the Court finds that the relationship between plaintiffs and defendants is not too attenuated to support plaintiffs' unjust enrichment claim. Accordingly, the Court DENIES defendants' motion as to the New York unjust enrichment claim.

### 3.    Maine

Under Maine law, "[a] claim for unjust enrichment requires the complaining party to show that: (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Platz*, 973 A.2d at 750. Defendants assert that Maine law precludes recovery by indirect purchasers and that summary judgment should therefore be granted on plaintiffs' Maine unjust enrichment claim. *See* Berger Decl., Exh. J at 29 (testimony of Maine class representative that she purchased television at Best Buy).

Defendants rely primarily on two cases in support of their argument: *Platz Associates v. Finley*, 973 A.2d 743 (Me. 2009), and *Rivers v. Amato*, 2001 WL 1736498 (Me. Super., June 22, 2001). Neither of these cases, however, sets forth a general rule that an unjust enrichment plaintiff must directly interact with the defendant. *Platz*, for example, involved an unjust enrichment claim brought by an architecture firm that had created "conceptual architectural drawings for a development project." *Platz*, 973 A.2d at 746. When the project fell through, the firm sued, claiming that the owner had been unjustly enriched by his receipt of the architectural plans. *Id.* at 751. The Maine Supreme Court reversed a grant of summary judgment in favor of the plaintiff because the plaintiff had introduced no evidence that the defendant had actually received the plans. *Id.* at 751 ("[T]he statements of material facts fail to demonstrate that Finley actually received and retained the architectural plans, and thus fail to demonstrate the central element of unjust enrichment, a benefit conferred.").

United States District Court
For the Northern District of California

Similarly, *Rivers* involved a plaintiff who had contracted to purchase a parcel of land sold by the defendants. *Rivers*, 2001 WL 1736498 at *1. After plaintiff consulted with a third-party developer, the developer approached the defendants, offering to purchase the land for more than plaintiff had contracted to purchase it for. *Id.* The defendants took developer's offer, repudiating their contract with the plaintiff. *Id.* The plaintiff sued the sellers for unjust enrichment, claiming that he had generated the developer's interest in the property, which resulted in defendants' receiving the benefit of a higher purchase price. *Id.* at *4. The court held that the plaintiff's benefit theory – that "through [plaintiff's] efforts, [the developer] conferred a benefit on [the seller]" – was too speculative to proceed. *Id.* at *4 ("No authority can be found for this "indirect benefit" theory, which is, in any case, based on speculation.").

Unlike either of these cases, plaintiffs have introduced evidence that defendants received a quantifiable benefit from plaintiffs' purchase of LCD products. Accordingly, defendant's motion is DENIED as to Maine law.

### 4.   Rhode Island

Under Rhode Island law, to prove unjust enrichment a plaintiff must show "(1) that the plaintiff conferred a benefit upon the defendant, (2) that the defendant appreciated such benefit, and (3) that there was acceptance of such benefit in circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof. *Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 1997).[1]  Again, defendants claim that plaintiffs' status as indirect purchasers is fatal to their unjust enrichment claim. *See* Berger Decl., Exh. F at 20, 22-23, 33.

Although defendants argue that a plaintiff must confer a "direct" benefit on a defendant, none of the cases defendants rely on establish that Rhode Island requires the benefit to be "direct." In *Alessi*

---

[1]Defendants also argue that "a plaintiff must show that he had a 'reasonable expectation of payment from the defendants' in return for the alleged benefit. " *See* Motion at 22 (quoting *Scully Signal Co. v. Joyal*, 881 F. Supp. 727, 745 (D.R.I. 1995)). This appears to be a misstatement of the law; the source cited by *Scully Signal* sets forth a different standard. *See Commercial Associates v. Tilcon Gammino, Inc.*, 998 F.2d 1092, 1100-01 (1st Cir. 1993) ("To recover on a theory of unjust enrichment under Rhode Island law, the plaintiff must show that it conferred a benefit on the defendant 'in such circumstances that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof.'").

United States District Court
For the Northern District of California

*v. Bowen Court Condo.*, 2010 R.I. Super. LEXIS 50 (R.I. Super., March 10, 2010), for example, the court dismissed the plaintiff's unjust enrichment claim because if found that no benefit had been conferred on the defendants. *Id.* at *12-*14 (holding that defendants were not unjustly enriched by plaintiff's purchase of a property because the property had been foreclosed upon and "[d]efendants did not hold a present interest in the property at the time of the Plaintiff's purchase"). Similarly, in *R & B Elec. Co., Inc. v. Amco Const. Co., Inc.*, 471 A.2d 1351 (R.I. 1984), the court also found that no benefit had been conferred on the defendants. *Id.* at 1356 ("Since they were unable to retain the benefit, we fail to see how defendants are unjustly enriched. And if defendants were enriched by R & B, they have not been enriched under circumstances that dictate that they ought equitably to be required to compensate plaintiff.").

Accordingly, defendant's motion is DENIED as to Rhode Island law.

### 5.    District of Columbia

To state a general claim for unjust enrichment under District of Columbia law, "a plaintiff must show that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Lozinsky v. Georgia Resources Management, LLC*, 734 F. Supp. 2d 150, 155 (D.D.C. 2010).

None of the cases defendants rely on establish that indirect purchasers are prohibited from maintaining causes of action for unjust enrichment. Defendants' most compelling case is *True v. Conagra Foods, Inc.*, 2011 WL 176037 (W.D. Mo., January 4, 2011), which involved an unjust enrichment claim brought by a purchaser of tainted pot pies. *Id.* at *1-2. The court rejected the unjust enrichment claim because the plaintiff was an indirect purchaser. *Id.* at *9 ("[T]here is no evidence that any Plaintiff purchased a pot pie directly from ConAgra; instead, the Plaintiffs indirectly conferred a benefit on ConAgra by purchasing the pot pies from a retailer."). The plaintiff in that case, however, had not contested this point. *Id.* at *9 ("ConAgra argues (without dispute from the Plaintiffs) that at least eleven states and the District of Columbia impose this "direct benefit" requirement.").

*Minebea Co., Ltd. v. Papst*, 444 F. Supp. 2d 68 (D.D.C. 2006), involved a patent dispute between two companies that had conducted a joint venture together. *Id.* at 77-78. The court concluded that the

16

circumstances of the case did not make the defendant's retention of the patents at issue "unjust." *Id.* at 187 ("Under these circumstances, the Court cannot conclude that it would be unjust for Papst Licensing to retain the United States patents at issue.").

Defendants cases do not establish that the District of Columbia requires a "direct relationship" between an unjust enrichment plaintiff and the defendant. Accordingly, defendant's motion is DENIED as to District of Columbia law.

#### 6.    Kansas

Under Kansas law, to recover for unjust enrichment a plaintiff must prove: "(1) a benefit which they conferred upon defendants; (2) defendants' appreciation or knowledge of the benefit; and (3) defendants' acceptance or retention of the benefit under circumstances which make it inequitable for defendants to retain the benefit without payment of its value."

Defendants rely on an unreported case from the Tenth Circuit to support their argument that Kansas law bars plaintiffs' unjust enrichment claim. *See Spires v. Hospital Corp. of America*, 289 Fed. Appx. 269, 273 (10th Cir. 2008) ("Plaintiffs have pointed to nothing in Kansas law that supports an indirect unjust enrichment claim against HCA for payments made to subsidiary hospitals."). The precise grounds for the holding in *Spires*, however, are unclear. *See id.* ("The district court dismissed the claim because Plaintiffs failed to allege that deceased family members had actually conferred a benefit on HCA, and that the unjust enrichment for acts constituting medical malpractice are displaced by Kansas's medical malpractice regime. We agree."). Other courts, in contrast, have explicitly endorsed indirect-purchaser unjust enrichment claims under Kansas law. *See Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1249 (D. Kan. 2007) ("Defendants argue that plaintiffs do not state a claim for unjust enrichment because they do not allege that they made a purchase directly from defendants, and therefore do not allege that they conferred a benefit upon defendants. A claim for unjust enrichment under Kansas law, however, does not depend on privity.").

Accordingly, defendant's motion is DENIED as to Kansas law.

17

7.   <u>West Virginia</u>

Under West Virginia law, "if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value." *Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880, 884-85 (W. Va. 2000). Defendants assert that West Virginia does not recognize indirect-purchaser unjust enrichment claims. None of the cases defendants cite, however, stand for the proposition that an indirect purchaser may not recover under an unjust enrichment theory. In *Johnson v. Ross*, 419 Fed. Appx. 357 (4th Cir. 2011), for example, the court expressly declined to reach the question. *Id.* at 362 ("We decline Plaintiffs' invitation to settle this state-law question, not least because doing so is unnecessary to reach our disposition."). In *Hill v. Stowers*, 680 S.E.2d 66, 75 (W. Va. 2009), the court rejected the plaintiff's unjust enrichment claim because the plaintiff had not conferred any benefit on the defendant. *Id.* at 75 ("Mr. Hill, however, was not the payor of the salary and benefits that Mr. Stowers received as circuit clerk."). Similarly, in *Prudential Ins. Co. of America v. Couch*, 376 S.E.2d 104 (W. Va. 1988), the court held that the defendant was not the recipient of any benefit originating from the plaintiff. *Id.* at 109 ("[Defendant] was not the payee on any of the checks, as they were paid to the health care providers who had rendered services to his injured son.").

Accordingly, defendant's motion is DENIED as to West Virginia law.

8.   <u>Hawaii, Missouri, New Mexico, South Dakota, and Wisconsin</u>

Defendants argue that the unjust enrichment claims under the laws of the above states should be dismissed because no case from any of these states has permitted an unjust enrichment claim to proceed based upon an indirect benefit. Motion at 18. Thus, defendants argue that "[i]n the absence of any supporting authority from state courts, the respective plaintiffs cannot expand their states' laws of unjust enrichment . . . ." As discussed above, however, the Court views the plaintiffs' theory of unjust enrichment as relatively straightforward: defendants' wrongful conduct led them to receive a benefit at plaintiffs' expense. In the absence of state law conclusively precluding such claims, the Court is inclined to let them proceed.

United States District Court
For the Northern District of California

**B.     Adequate Remedies at Law**

Defendants also move for summary judgment as to eight states – Hawaii, Kansas, Maine, New Mexico, Rhode Island, South Dakota, Vermont, and Iowa – claiming that "those states' common laws do not permit recovery in equity when an adequate remedy at law is available."  Motion at 20.  The Federal Rules of Civil Procedure typically allow a plaintiff to plead claims in the alternative.  *See* Fed. R. Civ. P. 8(d)(2), (3).  Defendants argue, however, that plaintiffs are prohibited from proceeding on their unjust enrichment claims once becomes clear that those claims are identical to plaintiffs' legal remedies.  *See*, *e.g.*, *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (granting summary judgment for defendant on plaintiff's Massachusetts-law unjust enrichment claims because its legal remedies "preclude a claim for unjust enrichment. The disposition of those claims is irrelevant. Their mere availability is a bar to a claim of unjust enrichment."); *Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1188 n.17 (D. Kan. 2011) (granting summary judgment for defendant because "[t]he pertinent inquiry is whether an adequate remedy is available, not whether that remedy is ultimately obtained").

The Court will allow plaintiffs to proceed on their unjust enrichment claims.  Although plaintiffs' claims are not explicitly pled in the alternative, all parties acknowledge that they are brought in the alternative to plaintiffs' antitrust and consumer protection claims.  Further, there is no evidence before the Court concerning the degree to which the remedies available under plaintiffs' unjust enrichment claims are identical to the legal remedies plaintiffs seek.  *See New Motor Vehicles*, 350 F. Supp. 2d at 212-13 (refusing to dismiss restitutionary relief as a means of remedying violations of state-law antitrust and consumer-protection statutes); TAC at 102 ¶G (requesting "restitution, including disgorgement of profits").  Plaintiffs, of course, may not recover under both theories.

Accordingly, the Court DENIES defendants' motion to dismiss plaintiffs' unjust enrichment claims under the laws of Hawaii, Kansas, Maine, New Mexico, Rhode Island, South Dakota, Vermont, and Iowa.

**C.     Missouri and Rhode Island - Bar to Indirect Purchaser Claims**

Finally, defendants argue that plaintiffs' unjust enrichment claims under Missouri and Rhode Island law should not be allowed to proceed because they would constitute an "end run" around those

states' limitations on indirect-purchaser antitrust actions.[2]  One Missouri appellate court has held that indirect purchasers may not bring suit under the that state's antitrust laws.  *Duvall v. Silvers, Asher, Sher & McLaren, M.D.'s*, 998 S.W.2d 821, 825 (Mo. App. 1999) ("If the harm to Duvall was only indirect, he does not have standing.").  The Rhode Island Supreme Court has also limited antitrust standing to direct purchasers.  *See Siena v. Microsoft Corp.*, 796 A.2d 461, 465 (R.I. 2002) ("We are of the opinion that under federal law and the Antitrust Act, standing to litigate antitrust violations rests with the direct purchaser or the Attorney General as *parens patriae*."); *see also New Motor Vehicles*, 350 F. Supp. 2d at 211-212 ("For those states that have maintained the *Illinois Brick* prohibition on indirect purchaser recovery, I conclude that it would subvert the statutory scheme to allow these same indirect purchasers to secure, for the statutory violation, restitutionary relief at common law (or in equity).").

This Court has previously addressed this issue in the context of unjust enrichment claims brought under the laws of other states:

> [P]laintiffs have not cited any authority from Arkansas, Virginia, Montana or Puerto Rico holding that an indirect purchaser plaintiff may bring an unjust enrichment claim when that same claim would be barred under state antitrust law.  In the absence of such authority, the Court declines to recognize such a claim because the Court agrees with defendants that permitting such claims would allow plaintiffs to circumvent limitations of state antitrust laws.

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1192 (N.D. Cal. 2009).  Defendants argue that the Court should follow its prior holding.

This Court's earlier decision, however, is distinguishable.  Although indirect purchasers may not bring antitrust claims under Rhode Island or Missouri law, both states permit them to bring unfair competition claims.  *See Chocolate Confectionary*, 602 F. Supp. 2d at 586-87 (finding that UTPCPA claims brought by indirect purchasers of chocolates stated a claim); *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, (Mo. 2007) ("The [MMPA's] plain language does not contemplate a direct contractual relationship between plaintiff and defendant, and Missouri courts have not imposed such a requirement through statutory construction.").  In light of the fact that plaintiffs may bring claims under these statutes for the same underlying conduct, the concerns at issue in this Court's prior order are inapplicable.

---

[2]Plaintiffs do not seek to recover under the antitrust laws of Missouri or Rhode Island.  Rather, they assert unfair competition and unjust enrichment claims under the laws of those states.

Accordingly, the Court DENIES defendants' request for summary judgment on plaintiffs' Missouri and Rhode Island unjust enrichment claims.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' joint motion for partial summary judgment on various issues of state law.  Docket No. 3205 in 07-1827.

**IT IS SO ORDERED.**

Dated: September 28, 2011

SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California

21