IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br>_____/<br>This Order Relates to:<br>Direct-Purchaser Plaintiff Class Action<br>_____/ | No. M 07-1827 SI<br>MDL. No. 1827<br>**ORDER DENYING TOSHIBA ENTITIES' MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER *ILLINOIS BRICK*** |

On November 4, 2011, the Court heard argument on the Toshiba[1] entities' motion for partial summary judgment under *Illinois Brick*. Toshiba claims the Direct-Purchaser Plaintiffs ("DPPs") were, in fact, indirect purchasers of the LCD panels contained in Toshiba-branded products. Thus, it claims that *Illinois Brick* bars DPPs' federal antitrust claims. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977) ("[W]e conclude that the legislative purpose in creating a group of 'private attorneys general' to enforce the antitrust laws under § 4 is better served by holding direct purchasers to be injured to the full extent of the overcharge paid by them than by attempting to apportion the overcharge among all that may have absorbed a part of it." (citation omitted)).

The crux of Toshiba's motion concerns the applicability of the Ninth Circuit's decision in *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323 (9th Cir. 1980). *Royal Printing* carved out a limited exception to *Illinois Brick's* ban on indirect purchaser antitrust suits. According to its holding, indirect purchasers may still bring such suits "where the direct purchaser is a division or subsidiary of a

---

[1] Toshiba Corporation, Toshiba Mobile Display Co., Ltd., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc.

1 co-conspirator." *Id.* at 326.

2 Toshiba claims that this *Royal Printing* exception only applies where two requirements are met: (1) a conspirator manufactured an input of a price-fixed product, and (2) the manufacturer owned or controlled the direct purchaser. Because, for much of the conspiracy period, the manufacturer of all Toshiba TFT-LCD panels had only an indirect corporate relationship to the exclusive distributor of Toshiba-branded products in the United States, Toshiba claims that the *Royal Printing* exception does not apply.[2] Motion at 9 ("TAIS is not a division or subsidiary of any alleged co-conspirator that manufactured TFT-LCDs, as required by *Illinois Brick*.").

Toshiba's argument rests on a misreading of *Royal Printing*. That case was not concerned with the relationship between the manufacturer of a price-fixed product and the direct purchaser; rather, it was concerned with the relationship between the *conspirator* and the direct purchaser. The Ninth Circuit could not have been clearer: "We hold that *Illinois Brick* does not bar an indirect purchaser's suit where the direct purchaser is a division or subsidiary of a co-conspirator." *Royal Printing*, 621 F.2d at 326.

Indeed, *Royal Printing* explicitly disclaimed any reliance on evidence that the "direct purchaser [was] owned or controlled by its customer." *Id.* at 326 n.4 ("Although the wholesalers here are owned or controlled by appellees, the wholesalers' pricing decisions are determined by market forces; therefore, [an exception suggested by footnote 16 of *Illinois Brick*] is inapplicable . . . ."). Instead, the Ninth Circuit's reasoning stemmed from its concern with the parent company's control over the litigation

---

[2]Beginning in 2002, the Toshiba parent company, Toshiba Corporation ("TSB"), ceased manufacturing TFT-LCD panels. At that time, TSB transferred its TFT-LCD related assets to Toshiba Matsushita Display Technology Co., Ltd. ("TMD"), a joint venture with Matsushita Electric Industrial Co., Ltd. During the class period, TSB owned a 60% share of TMD; Matsushita owned the remaining 40%.

During the class period, Toshiba America Information Systems, Inc. ("TAIS") operated as the exclusive distributor of Toshiba-branded notebooks and monitors in the United States, and, according to Toshiba, sold all Toshiba-branded products at issue in this litigation. TAIS is 100% owned by Toshiba America, Inc., which is 100% owned by TSB. Thus, although TSB and TMD are owned by the same ultimate parent, there is no vertical corporate relationship between them.

Toshiba also points out that a Toshiba-branded product did not necessarily include a Toshiba TFT-LCD panel. Both TSB and TAIS assembled Toshiba's TFT-LCD products, including notebook computers and monitors. These entities frequently purchased TFT-LCD panels from other manufacturers. In fact, Toshiba claims that 90% of the TFT-LCD products sold by TAIS during the class period contained another manufacturer's panel. *See* Chung Decl., ¶8.

2

decisions of its subsidiary. *Id.* at 326 ("Even if the pricing decisions of such a subsidiary or division are necessarily determined by market forces, its litigation decisions will usually be subject to parental control." (footnote omitted)); *see also Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1145-46 (9th Cir. 2003) ("[I]ndirect purchasers can sue for damages if there is no realistic possibility that the direct purchaser will sue its supplier over the antitrust violation."). Due to this control, the parent company will be unlikely to allow its subsidiary to file suit, "thwarting a vital part of the antitrust enforcement scheme and the expressed purpose of *Illinois Brick*." *Royal Printing*, 621 F.2d at 326; *see also id.* ("The co-conspirator parent will forbid its subsidiary or division to bring a lawsuit that would only reveal the parent's own participation in the conspiracy.").

As numerous courts have observed, accepting Toshiba's argument would create a serious hole in the coverage of the antitrust laws, giving would-be price fixers a road map for successful avoidance of the Sherman Act. Courts have understandably sought to avoid such a result. *See*, *e.g.*, *Freeman*, 322 F.3d at 1146 ("Were we to grant immunity from section 1 merely because defendants nominally sell services through another entity rather than to consumers directly, we would risk opening a major loophole for resale price maintenance and retailer collusion."); *In re Sugar Indus. Antitrust Litig.* ("We are also influenced by the realization that to deny recovery in this instance would leave a gaping hole in the administration of the antitrust laws."); *see also Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968) ("[T]he purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter any one contemplating business behavior in violation of the antitrust laws."); *Royal Printing*, 621 F.2d at 326 (noting risk of multiple recovery but accepting it because the "only alternative is to effectively immunize the transactions here from private antitrust liability, thus thwarting a vital part of the antitrust enforcement scheme and the expressed purpose of *Illinois Brick*." (footnote omitted)).

DPPs' evidence, set forth in its opposition to Toshiba's summary judgment motion on the issue of its participation in the conspiracy, is sufficient for a jury to find that Toshiba Corporation was involved in the conspiracy. Given this evidence that the parent company participated in the conspiracy, the Court finds that the *Royal Printing* exception applies.

Accordingly, the Court DENIES Toshiba's motion for partial summary judgment. Docket No. 3575.

**IT IS SO ORDERED.**

Dated: November 7, 2011

SUSAN ILLSTON
United States District Judge