1  Richard M. Heimann (State Bar No. 63607)
   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2  275 Battery Street, 29th Floor
   San Francisco, California 94111
3  Telephone: (415) 956-1000
   Facsimile:  (415) 956-1008
4
   *Co-Lead Counsel for the Direct Purchaser Plaintiffs*
5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. MDL 3:07-md-1827 SI |
|---|---|
| | CLASS ACTION |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS | **DECLARATION OF DOUGLAS J. MELTON IN RESPONSE TO BARRY HIMMELSTEIN'S OBJECTION TO SETTLEMENT**<br><br>Date:   December 19, 2011<br>Time:   4:00 p.m.<br>Crtrm.:  10, 19th Floor<br><br>The Honorable Susan Illston |

I, Douglas J. Melton, declare:

1.  I am a partner with the law firm of Long & Levit, LLP.  We are counsel to Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") with respect to the litigation and arbitration of its disputes with former LCHB partner Barry Himmelstein.  I make this Declaration based on my personal knowledge.  If called as a witness, I could and would competently testify to the matters stated herein.

2.  LCHB is engaged in litigation with Mr. Himmelstein arising from his prior relationship with the firm, which litigation has been ordered to arbitration pursuant to LCHB's

1  Partnership Agreement.  The issues in dispute in the *Himmelstein v. LCHB* arbitration are
2  unrelated to this *TFT-LCD* litigation.  Mr. Himmelstein is represented in the arbitration by Pierce
3  O'Donnell.

4        3.      At Pierce O'Donnell's request, I and my law partner, Kathleen Ewins, met with
5  Mr. O'Donnell and Mr. Himmelstein on Tuesday, November 22, 2011, ostensibly to discuss the
6  possible settlement of the claims pending in the arbitration proceedings.  At the outset of the
7  meeting, Mr. O'Donnell asked us to agree that statements made during the meeting would be
8  confidential settlement communications pursuant to applicable state and federal statutes.  We
9  agreed.

10        4.      During the course of that meeting, Mr. O'Donnell and Mr. Himmelstein presented
11  a draft "Objection to Direct Purchaser Class Settlements and Plaintiffs' Motions for Attorneys
12  Fees" in the *TFT-LCD* case (a true and correct copy of which is attached as Exhibit A), which
13  they threatened Mr. Himmelstein would file if LCHB did not accede to his settlement demand
14  that required LCHB to pay Mr. Himmelstein a very significant sum of money.  At the conclusion
15  of the meeting, Mr. O'Donnell stated that he and Mr. Himmelstein wanted to meet again on the
16  following Sunday or Monday - in advance of the deadline to file objections in the *TFT-LCD* case
17  - with an LCHB partner in attendance with authority to speak for the firm.

18        5.      A subsequent meeting took place on Monday morning, November 28, 2011, at
19  Long & Levit LLP's offices.  I attended the meeting along with LCHB partner Richard Heimann,
20  my partners Joseph McMonigle and Kathleen M. Ewins, and Mr. O'Donnell and Mr.
21  Himmelstein.  At the beginning of the meeting, Mr. McMonigle presented a written
22  confidentiality agreement, which he said was intended to cover both the prior meeting and the
23  current meeting (a true and correct copy of the executed confidentiality agreement is attached as
24  Exhibit B).  The agreement specified that the discussions would be confidential as provided for in
25  Federal Rule of Evidence Rule 408 and California Evidence Code Section 1152. All of the
26  attendees read and signed the agreement at that time.

27        6.      During the course of the second meeting, Mr. O'Donnell and Mr. Himmelstein
28  again threatened that if LCHB would not agree to a settlement of Mr. Himmelstein's claims

1  against LCHB that involved the payment of a very significant sum of money to Mr. Himmelstein,
2  he would file his threatened objection to the *TFT-LCD* settlement.
3      I declare under penalty of perjury under the laws of the United States of America that the
4  foregoing is true and correct.
5      Executed on December 5, 2011 at San Francisco, California.

                                        _____
                                        DOUGLAS J. MELTON

# EXHIBIT A

Barry Himmelstein (State Bar No. 157736)
HIMMELSTEIN LAW NETWORK
2000 Powell St., Suite 1605
Emeryville, CA 94608-1861
Telephone: (510) 450-0782
Facsimile: (510) 380-6147
Email: barry@himmellaw.com

*In Propria Persona*

**DRAFT**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION <br><br> This Document Relates to: <br> ALL DIRECT PURCHASER CLASS ACTIONS | Case No. MDL 3:07-md-1827 SI <br><br> **OBJECTION TO DIRECT PURCHASER CLASS SETTLEMENTS AND PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** <br><br> Date: December 19, 2011 <br> Time: 4:00 p.m. <br> Ctrm: 10, 19th Floor <br><br> Hon. Susan Illston |

## I. CLASS MEMBERSHIP

The undersigned is a member of the Litigation Product Class. Between January 1, 1999 and December 31, 2006, I purchased numerous notebook computers, computer monitors, and televisions containing TFT-LCD panels manufactured by defendants, including Sharp and Toshiba notebook computers; Hitachi, NEC, and Samsung computer monitors; and Samsung, Philips, and LG televisions. A number of these purchases were made directly from these manufacturers, via their respective websites (*e.g.*, Toshiba Direct). A copy of the class notice assigning me Claimant ID No. 0009449183 is attached hereto as Exhibit A.

## II. CLASS COUNSEL SHOULD NOT BE PAID $121.5 MILLION PRIOR TO FINALITY OF THE SETTLEMENT AND FEE AWARD WITHOUT POSTING A LETTER OF CREDIT OR OTHER ADEQUATE SECURITY

### A. A Description of "Quick Pay" Provisions

As described by Professor Fitzpatrick,[1] the practice known as "quick pay"

> has never been acknowledged by any court nor any commentator. The practice works as follows: With the consent of the defendants, class counsel insert provisions into class action settlements that permit counsel to receive whatever fees district courts award them as soon as those courts approve the settlements, regardless of whether the settlements are appealed. If the settlements or fee awards are reversed on appeal, then class counsel agree to refund the fees to the defendants.

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1625 (2009). Professor Fitzpatrick gives the following example of one of these provisions:

---

[1] Plaintiffs cite Professor Fitzpatrick's article, *Do Class Action Lawyers Make Too Little?*, 158 U. Pa. L. Rev. 2043, 2052 (2010), in their motion for attorneys' fees, at page 15 n.8.

> Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Plaintiffs' Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund plus accrued interest at the same net rate as is earned by the Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed.

*Id.* at 1641.

Professor Fitzpatrick contrasts these "quick pay" provisions with "the provision setting forth the traditional practice for the payment of lawyers who, like class counsel, work on contingency: class counsel received their fees only once all possible appeals were exhausted." *Id.* at 1643.[2] He notes that many agreements say "nothing at all about when class counsel would receive their fees," but that "in light of the traditional practice, class counsel probably received

---

[2] Professor Fitzpatrick gives the following example of one of these "traditional" provisions:

> Such attorneys' fees, expenses and costs as are awarded by the Court shall be paid from the Settlement Fund pursuant to the direction of Lead Counsel, but payment shall not be made before . . . the occurrence of the later of: (a) if there are no appeals, then the expiration of the time for the filing or noticing of any appeals from the Order of Final Judgment and Dismissal; or (b) if there is an appeal, the date on which the Order of Final Judgment and Dismissal which has not been materially altered, amended or modified in any respect by any Court without express consent by all parties, is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise. For purposes of this Paragraph, an "appeal" shall include any request for reargument or reconsideration, a petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement.

*Id.* at 1643-44.

their fees in these cases only once any appeals to the settlements or fees had been exhausted." *Id.* at 1644.

Professor Fitzpatrick reports that:

> quick-pay provisions are the near-exclusive province of securities fraud class actions: although four-fifths of securities fraud settlements included quick-pay provisions, only one-twentieth of non-securities class action settlements did so. [¶] A few possible hypotheses may explain this dramatic divide between securities and non-securities cases. . . . [I]t is possible that defendants would balk at quick-pay provisions . . . when they are concerned that the thin capitalization of class counsel makes it uncertain whether the fee award could be repaid should something happen to the settlement on appeal. It is possible that the non-securities class action bar may be less well capitalized than the securities class action bar.

*Id.* at 1645. Professor Fitzpatrick identifies the obvious "risk[] to class members" of these provisions: "if class counsel are, for some reason, unable to repay the attorneys' fees they have received early, class members may be left without any way to recover them." *Id.* at 1647.

### B. The *Diamonds Antitrust Litigation*

The risk identified by Professor Fitzpatrick in his November 2009 article came to life eight months later, in the *Diamonds Antitrust Litigation*. In March 2006, the parties to a series of antitrust class actions against the international diamond conglomerate, De Beers S.A., entered into a settlement agreement containing a "quick pay" provision requiring that the attorneys' fee award be paid "within five (5) Court days after the award is entered by the Court," and that "[i]n the event the Settlement is reversed on appeal or the awards of attorneys' fees and reimbursement of costs are reduced on appeal, any Counsel for the Settlement Classes that received awards of fees and/or reimbursement of costs shall return any such fees and costs consistent with a Court order within ten (10) days . . . ." (Exhibit B hereto, at 18.)

3

OBJECTION TO SETTLEMENTS AND
MOTION FOR ATTORNEYS' FEES
CASE NO. MDL 3:07-MD-1827 SI

On May 22, 2008, the district court approved the settlement, and entered an order awarding class counsel approximately $76 million in attorneys' fees and costs. (Exhibit C hereto.) On July 13, 2010, the Third Circuit vacated the judgment approving the settlement, concluding that the settlement classes were improperly certified, and noting that its decision rendered the parallel appeals from the fee and cost award moot. *See Sullivan v. DB Investments, Inc.*, 613 F.3d 134, 158 n.23 (3d Cir. 2010).

On August 27, 2010, rehearing *en banc* was granted, and the panel decision vacated. *See Sullivan v. DB Investments, Inc.*, 619 F.3d 287 (3d. Cir. 2010). The appeal was heard *en banc* on February 23, 2011. The *en banc* Court has yet to issue its decision, which is expected at any time. (*See* https://diamondsclassaction.com.)

In ongoing litigation over the responsibility of its current and former partners to contribute to the repayment, if required, of over $8.5 million in fees received in the *Diamonds Antitrust Litigation*, Co-Lead Class Counsel for Direct Purchaser Class Plaintiffs—also a co-lead in the *Diamonds Antitrust Litigation*--has repeatedly asserted that its repayment obligation "would only arise if the Third Circuit Court of Appeals overturned the settlement in the Diamonds Litigation [*en banc*] and . . . the District Court, on remand, ordered LCHB to repay a portion of the fee award." (Exhibit D hereto, at 8 n.19 (emphasis added). *See also* Exhibit E hereto (Complaint for Declaratory Relief).)

C. **The LCD Direct Purchaser Settlement Agreements**

Of the ten settlement agreements presently before the Court, seven contain "quick pay" provisions requiring that Class Counsel be paid their attorneys' fees and costs within five days of entry of a fee and cost award, without regard to the finality of the judgment approving the

settlement or award. The Samsung Settlement Agreement is typical in this regard, providing that "[t]he Fee and Expense Award, as approved by the Court, shall be paid from the Settlement Fund within five (5) Court days after the Fee and Expense Award is entered by the Court . . . ." (*Id.* ¶ 24(b).) (*Accord* Hitachi Settlement Agreement ¶ 24(a); HannStar Settlement Agreement ¶ 24(a); Chimei Settlement Agreement ¶ 24(a); Mitsui Settlement Agreement ¶ 24(a).) The Epson Settlement Agreement expressly provides that such payment shall be made "within five (5) Court days after the award is entered by the Court, regardless of the existence of any objections, potential for appeal therefrom, or collateral attack on the Settlement or any part thereof." (*Id.* ¶ 23(b).) (*Accord* Sanyo Settlement Agreement ¶ 23(b).)

The LG Display and Sharp Settlement Agreements contain modified "traditional" provisions, which withhold the payment of attorneys' fees until after the judgment approving the settlement becomes "final," although they contain no parallel finality requirement with respect to the fee award. (*See* LG Display Settlement Agreement ¶¶ 11, 23(b); Sharp Settlement Agreement ¶¶ 12, 24(b).) Finally, the Chungwa Settlement Agreement is silent as to the timing of payment, providing only that "[t]he Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund." (*Id.* ¶ 23.) Professor Fitzpatrick would read the traditional finality requirement into this agreement. *See* 62 Vand. L. Rev. at 1644.

Like Professor Fitzpatrick's example, and the *Diamonds Antitrust* agreement, each of the seven "quick pay" agreements presently before the Court require repayment by any class counsel who receives fees prior to finality, if the judgment approving the settlement is reversed, or the fee award is reduced, on appeal. The Samsung Settlement Agreement is the most precise in this regard:

> In the event the Settlement is reversed on appeal or the awards of attorneys' fees and reimbursement of costs are reversed or reduced on appeal, any Class Counsel that received awards of fees or reimbursement of costs that are subject to elimination or reduction shall, within ten (10) business days after receiving notice of the applicable Court order, refund to the Settlement Fund the full amount of attorneys' fees previously paid to such Class Counsel . . . , or, if the fee award is reduced, a proportion of such full amount which shall be equal to the proportion of (i) the reduced fee award to (ii) the original fee award. Each Class Counsel, jointly and severally with its partners or other equity owners, shall be jointly and severally liable to the Settlement Fund and to Samsung for the repayment of such amounts by Class Counsel.

(Samsung Settlement Agreement ¶ 24(b).)[3]

These agreements also make it clear that the settling defendants are not responsible to the Litigation Product Class or the Litigation Panel Class for any amounts they or the Settlement Fund are unable to recoup via these voluntary repayment arrangements: "For the further avoidance of doubt, Samsung's obligation to fund the Settlement will not be altered or increased if, for any reason any Class Counsel fails to repay to the Settlement Fund any sums due to be repaid . . . ." (Samsung Settlement Agreement ¶ 24(b).) (*See also* Hitachi Settlement Agreement ¶ 24(d) (Hitachi has no "liability whatsoever with respect to any payment to Class

---

[3] (*See also* Hitachi Settlement Agreement ¶ 24(b) (requiring return of "any such fees and costs consistent with a Court order within ten (10) days"); HannStar Settlement Agreement ¶ 24(a) (requiring repayment "plus interest thereon at the same rate(s) as earned on the Settlement Fund in an amount consistent with such reversal or modification"); Chimei Settlement Agreement ¶ 24(a) ("any Plaintiffs' counsel that received awards of fees and or reimbursement of costs that are subject to reduction shall within ten (10) business days from receiving notice of the applicable court order refund to the Settlement Fund the required amounts"); Mitsui Settlement Agreement ¶ 24(a) (requiring return of "any such fees and costs consistent with a Court order within ten (10) days"); Sanyo Settlement Agreement ¶ 23(c) (requiring return of fees and costs plus interest "in an amount consistent with such reversal or modification"); Epson Settlement Agreement ¶ 23(c) (same).)

Counsel of any Fee and Expense Award"); HannStar Settlement Agreement ¶ 24(d) (same); Chimei Settlement Agreement ¶ 24(d) (same); Mitsui Settlement Agreement ¶ 24(d) (same); Sanyo Settlement Agreement ¶ 23(e) (same); Epson Settlement Agreement ¶ 23(e) (same).)

### D. A Letter of Credit or Other Security Is Necessary to Protect the Interests of Class Members

The principal problem with the "quick pay" provision identified by Professor Fitzpatrick—the potential inability of class counsel to repay fees received by them prematurely—is amplified in "megafund" cases like these, in which class counsel seek a staggering sum—over $120 million—in attorneys' fees. If such a large fee award is reduced on appeal, but the settlement is upheld, the excess funds become the property of the class. If class counsel are unable to return those funds, there is no practical way for the class to recover them, except by hiring new counsel to pursue a collection action against class counsel on contingency, deducting the contingent fee percentage from any amounts recovered for the class. The class can never be made whole by such an arrangement—in addition to the unhappy spectacle of class counsel being sued by the class.

If, as in the *Diamonds Antitrust Litigation*, the settlement itself is overturned, the situation is even worse. If class counsel are unable to return the fees, they remain in litigation—or further settlement negotiations—with an adversary to whom they are indebted and unable to repay, necessitating their immediate disqualification, and the appointment of new counsel to represent the class. Co-Lead Class Counsel for Direct Purchaser Class Plaintiffs, already in litigation over a potential $8.5 million repayment liability in *Diamonds Antitrust*, should not be allowed to "double down" on such risky "quick pay" arrangements by taking a much *larger* fee award prematurely here.

The only credible solution to these problems is a return to the "traditional quick pay" provision, in which class counsel receiving fees prior to finality must post a letter of credit sufficient to reimburse the settlement fund for the amounts withdrawn, plus interest, in the event that the settlement is overturned or the fee award reduced on appeal.[4]

For example, in the *Synthroid Marketing Litigation*, which involved an $87.4 million settlement for consumers, the settlement agreement provided that class counsel could be paid their attorneys' fee and cost award, prior to finality, only if counsel receiving such fees provided a letter of credit equal to slightly more than the amount withdrawn, to cover any interest which would have otherwise accrued on the funds prior to repayment. These letters of credit were maintained in place throughout the duration of the appeals, which lasted several years.[5] *See In re Synthroid Marketing Litig.*, 110 F. Supp. 2d 676 (N.D. Ill. 2000) (approving settlement and awarding fees), 264 F.3d 712 (7th Cir. 2001) (reversing fee award), 201 F. Supp. 2d 861 (N.D. Ill. 2001) (entering revised fee award), 325 F.3d 974 (7th Cir. 2003) (modifying revised fee award).

One of the largest antitrust settlements to date, a $1.25 billion settlement with El Paso Natural Gas Company, also contained the following, "traditional quick pay" provision:

> [A]fter entry of an order(s) awarding attorneys' fees and litigation expenses by the Class Action Court, prior to the Effective Date [*i.e.*, finality], Class Counsel may be paid from the Escrow Account, in the aggregate, up to 50% of the attorneys' fees and litigation expenses so awarded, provided that each law firm or

---

[4] Professor Fitzpatrick conducted his survey in 2006, after this more conservative version of "quick pay" apparently fell out of fashion. *See* 62 Vand. L. Rev. at 1642-43.

[5] This settlement, approved in 2000, pre-dates electronic filing in the Northern District of Illinois, so the settlement agreement itself is no longer available. The undersigned drafted the letters of credit.

8

OBJECTION TO SETTLEMENTS AND
MOTION FOR ATTORNEYS' FEES
CASE NO. MDL 3:07-MD-1827 SI

attorney receiving such payment shall provide El Paso with a letter of credit, issued by a financial institution and on terms acceptable to El Paso, equal to 110% of the amount of the payment. In the event that . . . the judgment approving the class settlement or the order making the fee and/or expense award is reversed or modified on appeal, . . . within five days following such reversal or modification, they shall restore to the settlement Escrow Account the fees and expenses previously paid to them in full or any amount consistent with such reversal or modification, plus interest thereon . . . through the date of restoration. If such restoration is not made within this five (5) Business Day period, El Paso may exercise the applicable letter of credit to the extent of any deficiency.

(Exhibit F hereto, at 48 (emphasis added).)

If class counsel are truly "good for it"—in this case, over $120 million—they should have no difficulty obtaining a similar letter of credit from a financial institution attesting to that fact. The risk of non-payment should not be visited upon the class. Accordingly, the provisions of the settlement agreements allowing class counsel to withdraw attorneys' fees and costs prior to finality, without posting a letter of credit or other adequate security, should be rejected.

## II.   THE CLAIMS PROCESS IS UNDULY BURDENSOME

[TO BE CONTINUED]


Respectfully submitted,

Barry Himmelstein
HIMMELSTEIN LAW NETWORK
2000 Powell St., Suite 1605
Emeryville, CA 94608-1861
Telephone: (510) 450-0782
Facsimile: (510) 380-6147
Email: barry@himmellaw.com

In *Propria Persona*

# EXHIBIT B

Agreement Re: Confidentiality

The undersigned agree that the discussions between the parties and/or counsel, concerning the disputes between Barry Himmelstein and Lieff Cabraser Heimann & Bernstein, LLP, on November 22, 2011 and November 28, 2011, are confidential as provided for in Federal Rule of Evidence Rule 408 and California Evidence Code Section 1152.

_____      _____11/28/11_____
Pierce O'Donnell                                         Date

_____      _____11/28/2011_____
Barry Himmelstein                                       Date

_____      _____11/28/2011_____
Kathleen Ewins                                          Date

_____      _____11/28/11_____
Douglas Melton                                          Date

_____      _____11/28/2011_____
Joe McMonigle                                           Date

_____      _____11/20/11_____
Richard Heimann                                         Date