IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To: | No. C 11-3342 SI |
| ELECTROGRAPH SYSTEMS, INC., *et al.*, | **ORDER GRANTING IN PART NEC DEFENDANTS' MOTION TO DISMISS** |
| Plaintiffs, | |
| v. | |
| NEC CORPORATION, *et al.*, | |
| Defendants. | |

On January 13, 2012, the Court heard argument on a motion to dismiss in this matter filed by defendants NEC Corporation, NEC LCD Technologies, Ltd., NEC Electronics America, Inc., NEC Corporation of America, Inc., and NEC Display Solutions of America, Inc. (collectively, "NEC"). Having considered the moving papers and the arguments of the parties, and for good cause appearing, the Court hereby GRANTS IN PART NEC's motion.

**BACKGROUND**

Plaintiff Electrograph Systems, Inc. is a New York corporation that "conducted business as a value-added wholesale distributor of display technology solutions, including plasma and LCD displays and components, rear-screen projection TVs, projectors, and digital electronic products." Compl. at ¶16. Plaintiff Electrograph Technologies, Inc. is a New York corporation that "conducted business as an information technologies solution provider." Compl. at ¶17. On April 5, 2011, Electrograph Systems

and Electrograph Technologies (collectively, "Electrograph") filed this action in the Eastern District of New York, seeking to recover for a "long-running conspiracy . . . to fix, raise, stabilize, and maintain prices for Liquid Crystal Display panels ('LCD Panels')." Compl. at ¶1. Electrograph is also a plaintiff in another case in this MDL, *Electrograph Systems, Inc. v. Epson Imaging Devices Corp.*, Case No. 10-0117. After this Court denied Electrograph's request to add NEC as a defendant in that case, Electrograph filed this case, naming only NEC as a defendant.

Electrograph's complaint in this matter is almost identical to its complaint in case number 10-0117. Rather than include detailed allegations against NEC in the body of its complaint, Electrograph has somewhat unusually attached a description of its NEC-specific allegations to its complaint as Appendix A. Explicitly referencing the discovery produced to date, Electrograph alleges that NEC attended meetings with other manufacturers of LCD panels, that it shared its confidential information with its competitors, and that it agreed to fix prices of panels sold to certain purchasers. *See* Compl., Appendix A; *see also* Compl. at ¶¶84-85.

Electrograph's complaint against NEC includes five claims: 1) a claim under the Sherman Act based upon LCD Products that Electrograph purchased directly from NEC and other defendants; 2) a claim under the California Cartwright Act; 3) a claim under California's Unfair Competition law; 4) a claim under the New York Donnelly Act; and 5) a claim under the New York Unfair Competition Law. Compl. at ¶¶199-236.

NEC now moves to dismiss Electrograph's Complaint. It argues that Electrograph has not adequately alleged NEC's participation in the conspiracy. It also asserts that contracts executed between Electrograph and various NEC entities prevent prosecution of these claims.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."

2

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief may be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

A motion to dismiss pursuant to a forum-selection clause is properly addressed under Federal Rule of Civil Procedure 12(b)(3). *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). In resolving a motion to dismiss based on a forum-selection clause, "the pleadings need not be accepted as true . . . and the court may consider facts outside of the pleadings. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (citations omitted). A court "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party . . . ." *Id.* at 1138.

**DISCUSSION**

As mentioned above, NEC asserts that Electrograph has not adequately alleged its participation in the conspiracy and that certain contracts mandate dismissal of Electrograph's claims.

**I. Adequacy of Allegations**

In its papers and again at oral argument, NEC has strenuously argued that the complaint's allegations against it are insufficient to state a claim. It points to the paucity of evidence Electrograph has collected against it despite the fact that Electrograph has had the benefit of years of discovery from NEC's alleged co-conspirators. It argues that the majority of the evidence Electrograph cites cannot reasonably be interpreted as evidence of anticompetitive conduct. Of those few pieces of evidence that may suggest price fixing, NEC points out that they date from 1998 to 2001, before the heart of the crystal conspiracy had started. NEC contends that it is not plausible to infer NEC's participation in a 10-year conspiracy based upon such outdated, limited allegations. As confirmation of the implausibility

3

of Electrograph's claims, NEC refers to the decision by counsel for plaintiffs in both the indirect- and direct-purchaser class actions to forego bringing claims against NEC.

NEC's argument is based on the premise that this Court should evaluate Electrograph's complaint under a different standard than it would in an ordinary case. NEC asserts that this Court may consider Electrograph's allegations in light of the Court's familiarity with this MDL, the voluminous discovery available to Electrograph before it filed its complaint, and class counsel's apparent conclusion that NEC was not involved in the conspiracy.

The Court does not agree. NEC has not provided the Court with a single case in which a court has taken such considerations into account. NEC may well be correct that Electrograph cannot prove it participated in the conspiracy – the evidence Electrograph has attached to its complaint, for example, would be unlikely to defeat a motion for summary judgment – but the Court cannot accept NEC's invitation to shortcut the pleading process. There may be little evidence that NEC participated in the conspiracy, but NEC was dismissed from the class actions at an early stage, was not a central figure in the conspiracy, and was never a focus of class action discovery. Electrograph has the right to develop its own case, independent of class counsel's determination that NEC was not worth pursuing.

Having reviewed Electrograph's allegations, the Court is satisfied that they meet the standards set forth in *Iqbal* and *Twombly*. While the Court agrees with NEC that much of the evidence Electrograph relies on is not particularly probative of NEC's participation in the conspiracy,[1] taken as a whole Electrograph's allegations satisfy the minimum requirements of the federal rules. Even NEC acknowledges, for example, that a Samsung representative testified at deposition that he reached agreements with NEC on prices to charge customers. *See id.* at ¶3-5 (alleging that H.B. Suh testified that he reached "understandings" with NEC about the prices at which the companies would sell their panels). Although defendants contend that this evidence, at best, establishes only a limited conspiracy between NEC and Samsung, the Court does not view such a narrow interpretation of this evidence as appropriate at the pleading stage.

---

[1] The parties have provided the Court with the discovery on which Electrograph's allegations are based, including the deposition testimony of H.B. Suh. The Court has considered this material because neither party objects to it and because Electrograph's complaint explicitly relies on it. *See*, *e.g.*, *In re Facebook PPC Adver. Litig.*, 2010 WL 5174021, at *3 (N.D. Cal., Dec. 15, 2010).

NEC also objects to Electrograph's use of "group pleading." NEC recognizes that this Court has rejected variations of the same "group pleading" argument on a number of occasions. *See*, *e.g.*, Order Denying Defendants' Joint Motion to Dismiss the Second Amended Complaint, Master Docket No. 3590, at 3-4 (September 15, 2011); Order Denying Defendants' Joint Motion to Dismiss, Master Docket No. 3614, at 4-5. It nevertheless contends that group pleading is improper in its case because it is a new defendant in this MDL.

The Court disagrees. The complaint contains plausible allegations of NEC's involvement in the conspiracy, and alleges that NEC's subsidiaries assisted the parent company in carrying the conspiracy out. The Court sees no reason to treat NEC differently from the other defendants in this MDL.

## II.     Effect of Distributor Agreements

NEC also argues that Electrograph's claims are controlled by distributor agreements executed between various Electrograph and NEC entities.[2] These agreements, all of which are highly similar, provide that an 18-month limitations period will apply to all causes of action "in any form arising out of" the agreements, that the agreements would be "governed and construed" under Illinois law, and that the parties waived their right to a jury trial.[3]

As an initial matter, the Court agrees with Electrograph that these agreements only govern purchases that it made directly from the NEC entities. *See*, *e.g.*, Order Granting in Part and Denying

---

[2]NEC has provided the Court with six distributor agreements: (1) a July 2, 2000, agreement between NEC Technologies, Inc. and Activelight, Inc.; (2) an October 1, 2002, agreement between NEC-Mitsubishi Electronics Display of America, Inc. and Activelight, Inc.; (3) a December 21, 2001, agreement between NEC Technologies, Inc. and CineLight Corporation; (4) a December 6, 2004, agreement between NEC-Mitsubishi Electronics Display of America, Inc. and International Computer Graphics, Inc.; (5) a May 4, 2000, agreement between NEC Technologies, Inc. and Electrograph Systems, Inc.; and (6) a September 18, 2002, agreement between NEC-Mitsubishi Electronics Display of America, Inc. and Electrograph Systems, Inc. *See* Dunavan Decl., ¶¶2-7 & Exhs. A-F.

Electrograph contests the Court's ability to take judicial notice of these documents, but has not contested the authenticity of the documents themselves. Because the documents are not in dispute and because Court may consider these documents in the context of a motion to dismiss for improper venue under Rule 12(b)(3), it GRANTS NEC's request for judicial notice. *See Argueta*, 87 F.3d at 324.

[3]Electrograph argues in passing that the agreements may only be enforced by the NEC entities that are parties to the agreements. The Court disagrees. Especially given Electrograph's treatment of NEC as a unified entity in its complaint, the Court finds that the contracts may be enforced by all the NEC entities. *See* Order Granting in Part LG Display Co., Ltd.'s and LG Display America, Inc.'s Motion to Compel Arbitration, Master Docket No. 3613, at 6-8 (September 19, 2011).

5

1 in Part Defendants' Joint Motion to Dismiss the Complaint, Master Docket No. 2561, at 3 (March 16, 2011) (granting defendants' motion to dismiss Dell's complaint based upon contractual choice-of-law clause only "to the extent [Dell's] claims are based upon purchases from those defendants"). The agreements do not reach Electrograph's claims that are based upon purchases from other co-conspirators. Nor do they reach those claims that are based upon indirect purchases of NEC panels. In addition, Electrograph has represented that its state-law claims include only causes of action for direct purchases. Thus, the only claims that fall under the contracts at issue are Electrograph's Sherman Act claims based on direct purchases from the NEC entities.

### A. Timeliness of Claims

The agreements between Electrograph and NEC included a contractual limitations provision requiring suit under the contracts to be brought "[no] more than eighteen (18) months after the cause of action has arisen." Dunavan Decl., Exhs. A-F. Electrograph did not file this action until April 5, 2011. Because this is more than 18 months after December 11, 2006, NEC asserts that Electrograph's claims are untimely.[4]

Electrograph alleges that its Sherman Act claims were tolled by a number of different events: (1) from December 14, 2006, through November 5, 2009, by the class action complaints filed shortly after the DOJ announced its investigation, *see Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974); (2) from November 6, 2008, through April 5, 2011, by the DOJ's criminal antitrust action pending before this Court, *see* 15 U.S.C. § 16(I); and (3) from December 9, 2010, until April 2, 2011, by the pendency of Electrograph's motion to amend to add NEC as a defendant in its other action, *see United States v. Katz*, 494 F. Supp. 2d 641, 644 (S.D. Ohio 2006) ("There is simply no reason why the statute of limitations should be tolled during the pendency of a motion for leave to amend, which is ultimately granted, and not be tolled when such a motion is ultimately denied."). The Court agrees on all three counts.

---

[4]This Court has treated a plaintiff's allegations of fraudulent concealment as sufficient, as a pleading matter, to toll the statute of limitations until the DOJ announced its investigation on December 11, 2006. *See* Order Granting in Part and Denying in Part Defendants' Motions to Dismiss Complaints, Master Docket No. 666, at 27-28 (August 25, 2008).

6

The Court agrees with NEC, however, that Electrograph's claims were only tolled to the extent NEC entities were named as defendants or coconspirators in the class actions. Electrograph has not provided the Court with any purported class action that included NEC Corporation, NEC Electronics of America, or NEC Display Solutions of America as a defendant. Accordingly, these entities must be dismissed from Electrograph's complaint.

### B.   Choice-of-Law Clause

Next, NEC asserts that the contracts mandate dismissal of Electrograph's California and New York claims.[5] This argument is based upon a clause in the agreements that provides: "This Agreement shall be governed and construed in all respects in accordance with the laws of the State of Illinois." Dunavan Decl., ¶¶2-7. As mentioned above, however, Electrograph has represented that it only brings indirect-purchaser claims under state law. The contracts therefore do not reach Electrograph's California or New York claims.

### C.   Jury Trial Waiver

Finally, NEC contends that the contracts include a jury trial waiver and requests that Electrograph's jury demand be stricken. The Court agrees that the jury waiver is valid and enforceable. *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007). Thus, Electrograph's demand for a jury trial must be stricken to the extent its claims are based upon purchases from NEC. Electrograph is entitled to a jury trial on its remaining claims.

//

//

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART

---

[5] Defendants' opening brief also argues that Electrograph's claims under California and New York law violate due process because Electrograph has not alleged that it made purchases in those states. Electrograph's complaint, however, contains such allegations. Complaint, ¶207, 225.

7

NEC's motion to dismiss.  Docket No. 18 in 11-3342; Docket No. 3452 in 07-1827.

**IT IS SO ORDERED.**

Dated: January 18, 2012

SUSAN ILLSTON
United States District Judge