**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To: | No. C 11-2225 SI |
| OFFICE DEPOT, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>AU OPTRONICS CORPORATION, *et al.*,<br><br>　　　　Defendants. | **ORDER GRANTING IN PART MOTIONS TO DISMISS COMPLAINT** |

On January 13, 2012, the Court heard argument on two motions to dismiss in this matter: a joint motion filed by most of the defendants, and a motion filed by defendants NEC Corporation, NEC LCD Technologies, Ltd., and NEC Electronics America, Inc. (collectively, "NEC"). Having considered the moving papers and the arguments of the parties, and for good cause appearing, the Court hereby GRANTS IN PART both motions.

## BACKGROUND

Office Depot is a "global supplier of office products and services" incorporated in Delaware and headquartered in Florida. On March 31, 2011, it filed this action in the Southern District of Florida, seeking to recover for a "long-running conspiracy . . . to fix, raise, stabilize, and maintain prices for Liquid Crystal Display panels ('LCD Panels')." Compl. at ¶1. Office Depot filed a first amended complaint ("FAC") on September 19, 2011. The FAC contains four claims: 1) a claim under the

Sherman Act; 2) a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); 3) a claim under California's Cartwright Act; and 4) a claim under California's Unfair Competition Law. FAC at ¶¶274-305.

Defendants now move to dismiss Office Depot's FAC.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief may be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

As stated above, defendants have filed two motions to dismiss Office Depot's complaint: a joint motion and a separate motion that pertains only to NEC.

### I.  Defendants' Joint Motion

Defendants' joint motion to dismiss raises four grounds for dismissal. First, defendants argue that Office Depot's claims are untimely. Second, defendants contend that Office Depot's state-law claims are precluded by due process principles. Third, they assert that Office Depot's jury trial demand

2

must be stricken as to certain claims. Finally, they argue that Office Depot's FAC impermissibly relies on group pleading.

### A. Timeliness of Office Depot's Claims

Defendants first argue that Office Depot's claims are untimely. Office Depot filed suit on March 31, 2011, more than four years after the DOJ's December 11, 2006, announcement of its investigation into the conspiracy.[1] Because the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the California Cartwright Act, and the California Unfair Competition Law each has a four-year statute of limitations, defendants contend that Office Depot's claims under those statutes must be dismissed.

Office Depot raises two bases for tolling that it asserts make its claims timely. First, it asserts that the indirect-purchaser class action complaints tolled the statutes of limitations from December 14, 2006, to November 5, 2007. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."). Second, it asserts that the direct-purchasers' class action complaints, by virtue of equitable and cross-jurisdictional tolling, tolled the statues of limitations from November 5, 2007, until December 27, 2010, the date Office Depot opted out of the direct-purchaser class. The Court finds that Office Depot's FDUTPA claims are timely, but that its California claims are not.

#### 1. Tolling Based on Indirect-Purchaser Complaints

Office Depot initially identified two indirect-purchaser class actions that it asserts included California and Florida indirect-purchaser claims and that included Office Depot as a class member. *See Audio Video Artistry v. Samsung Elecs. Co. Ltd.*, Case No. 2:06-cv-32848 (W.D. Tenn.) (filed December 14, 2006); *Chris Ferencsik v. LG Philips LCS Co., Ltd., et al.*, Case No. 06-6714 (E.D.N.Y.) (filed December 20, 2006).

---

[1] This Court has treated a plaintiff's allegations of fraudulent concealment as sufficient, as a pleading matter, to toll the statute of limitations until the DOJ announced its investigation on December 11, 2006. *See* Order Granting in Part and Denying in Part Defendants' Motions to Dismiss Complaints, Master Docket No. 666, at 27-28 (August 25, 2008).

3

Defendants argue, however, that the plaintiffs in these cases lacked standing to bring claims under California or Florida law. *See Pecover v. Electronic Arts, Inc.*, 633 F. Supp. 2d 976, 984-85 (N.D. Cal. 2009) ("The named plaintiffs in this action purchased the video game at issue in California and the District of Columbia and have alleged no basis for standing to bring claims under the laws of other states."). The plaintiffs were residents of Tennessee and New York, respectively, and the complaints did not allege that they purchased the LCD products elsewhere. Defendants contend that, because these plaintiffs lacked standing, their class actions could not toll Office Depot's state-law claims. *See Palmer v. Stassinos*, 236 F.R.D. 460, 465 (N.D. Cal. 2006) ("[T]he filing of Palmer and Hammer's putative class action cannot have tolled the statute of limitations as to the UCL claim [because] Palmer and Hammer lacked standing to assert claims under the UCL."); *but see In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, --- F.Supp.2d ----, 2011 WL 4089580 (S.D.N.Y. 2011) (reaching opposite conclusion after noting that "there is no conclusive Supreme Court or Second Circuit authority and lower courts are divided").

As for the California statute of limitations, the Court finds that tolling would be inappropriate. It is apparent from the face of the complaints Office Depot has identified that the plaintiffs lacked standing. Accordingly, the Court agrees with defendants that Office Depot may not rely on these purported class actions to toll its California claims. *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, --- F. Supp. 2d ----, 2011 WL 4089580 (S.D.N.Y. 2011) ("There may be circumstances where the representative so clearly lacks standing that no reasonable class member would have relied.").

The Court, however, finds that *American Pipe* tolling applies to the Florida statute of limitations. Office Depot has recently asked this that this Court take judicial notice of two class actions: *Jafarian v. LG Philips LCD Company Ltd.*, Case No. 07-0994 (N.D. Cal., Feb. 16, 2007), and *Eisler v. AU Optoelectronics Co., Ltd.*, *et al*, Case No. 3:07-cv-60289-JIC, 2007 U.S. Dist. Ct. Pleadings 60289 (S.D. Fla., March 1, 2007). Both cases were purported class actions that included FDUTPA claims, brought by Florida residents. They are sufficient to toll the Florida statute of limitations. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 2008 WL 2385506 (N.D. Fla., June 9, 2008).

4

### 2. Tolling Based on Direct-Purchaser Complaints

Because its California claim was not tolled by any indirect purchaser class action, Office Depot contends that the claim was tolled by the direct purchaser class-action complaint under the doctrines of cross-jurisdictional and equitable tolling.

For this argument, Office Depot relies on *Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009). *Hatfield*, however, held only that California residents could take advantage of equitable tolling based upon class actions filed in other jurisdictions. *Id.* at 1189 ("Although we conclude that California would allow its resident class members to reap tolling benefits under its equitable tolling doctrine, the same cannot be said for the non-resident class members."). Because Office Depot is based in Florida, the Court concludes that it cannot take advantage of California's equitable tolling.

### B. Due Process

Next, defendants assert that Office Depot's state-law claims must be dismissed because those claims are based upon purchases made in other states. This Court has previously held that, "in order to invoke the various state laws at issue, [a plaintiff] must be able to allege that 'the occurrence or transaction giving rise to the litigation' – which is [plaintiff's] purchase of allegedly price-fixed goods – occurred in the various states." *See* Order Granting Defendants' Joint Motion to Dismiss and Granting Plaintiffs Leave to Amend, Master Docket No. 1823, at 3-5 (June 28, 2010). Office Depot alleges that it purchased TFT-LCD products in Florida, and defendants appear to concede that Office Depot's Florida law claims do not violate due process. *Cf.* Reply at 2.

Whether Office Depot may bring a claim under California law is a harder question. Office Depot's complaint alleges only that it "purchased LCD products by purchase orders to California." FAC at ¶289. At oral argument, Office Depot explained that it purchased LCD products from companies located in California, issuing the purchase orders from its headquarters in Florida.

The Court agrees with defendants that Office Depot's allegations are inadequate to support the application of California law. Because Office Depot is headquartered in Florida, and because its purchase orders emanated from that location, its "purchase of allegedly price-fixed goods" took place in that state. Office Depot has not alleged that it dealt with the defendants in California, or that

5

California otherwise had any direct relevance to the specific purchases that form the basis of its complaint. Without more, due process precludes the application of California law. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981) ("In order to ensure that the choice of law is neither arbitrary nor fundamentally unfair, . . . the Court has invalidated the choice of law of a State which has had no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction.").

**C. Jury Waiver**

Next, defendants argue that Office Depot signed contracts with Samsung, Sharp, and Toshiba that contained jury waiver provisions.[2] The Court agrees that these defendants may insist on a bench trial for any dispute arising out of purchases made pursuant to those contracts. Office Depot remains entitled to a jury trial for its indirect-purchaser claims, as well as for any claims based upon direct purchases that were not made pursuant to the contracts.

The Court does not agree with defendants' contention that the jury waiver provisions were intended to apply retroactively. The language defendants rely on – that the agreements "supersede[] all other prior agreements" – indicates that the new agreements were intended to replace any prior contracts, not alter the terms of the previous business dealings between the parties. *See*, *e.g.*, Arens Decl., Exh. 1 ("This Agreement will supersede all other prior agreements and shall remain in force until it is replaced by a subsequent agreement."). Nothing suggests that the contracts were intended to apply retroactively.

**D. Group Pleading**

Finally, defendants contend that Office Depot's complaint impermissibly relies on group pleading. This Court has addressed similar arguments numerous times in this MDL and has concluded that allegations substantially similar to those in Office Depot's compliant satisfy federal pleading standards. *See*, *e.g.*, Order Denying Defendants' Joint Motion to Dismiss the Second Amended

---

[2]The Court GRANTS defendants' unopposed request for judicial notice.

6

Complaint, Master Docket No. 3590, at 3-4 (September 15, 2011); Order Denying Defendants' Joint Motion to Dismiss, Master Docket No. 3614, at 4-5. Accordingly, the Court DENIES defendants' motion to dismiss on this basis.

## II.  NEC's Motion

NEC's motion raises two grounds for dismissal of Office Depot's claims against it. First, NEC asserts that Office Depot executed a settlement agreement that released its claims against NEC. Second, NEC contends that Office Depot's allegations are insufficient to state a claim against it.

### A.  Release

On March 10, 2009, Office Depot and NEC Corporation of America[3] signed a Settlement and Release Agreement to resolve a dispute unrelated to this MDL. The release provides that:

> each Party . . . hereby forever releases, discharges and acquits the other Party . . . from and against any and all claims . . . and liabilities of every kind and nature and consequential damages, in all cases past, present and future, which the Releasers may now have or may hereafter have on account of and arising out of any matter, cause, thing, or event, known or unknown, express or implied of whatsoever nature or kind, in law or in equity, for claims asserted or claims that could have been asserted arising out of or in any way related to the Dispute, the Contract, or any other purchase or sale transaction which occurred between the parties prior to the Effective Date.

Dunavan Decl., Exh. A at ¶2.

The Court agrees with NEC that some of Office Depot's claims fall within the scope of this Release. By its own terms, the Release applies to Office Depot's purchases from NEC Corporation of America, or from any of the other NEC entities. Accordingly, the Court agrees that all such claims must be dismissed. The Court agrees with Office Depot, however, that the release is limited to transactions that occurred "between the parties." To the extent Office Depot's claims against NEC are based upon co-conspirator liability for purchases made from other sources, including indirect purchases of NEC panels, the Release does not bar its claims.

---

[3] NEC Corporation of America is a subsidiary of NEC Corporation. *See* Dunavan Decl., ¶3. It is not named as a defendant in this action.

7

**B.     Adequacy of Allegations**

NEC next argues that Office Depot's allegations against it are too spare to state a claim. NEC is correct that Office Depot's complaint does not include many allegations against it. Paragraphs 130 and 210 of Office Depot's complaint, however, contain the following allegations:

> 130. Defendant NEC joined the Conspiracy by participating in multi-lateral meetings and bilateral meetings and discussions with, among others, Samsung, Toshiba, Hitachi, Sharp, and LG to share information and reach agreement on prices for LCD Products beginning as early as 1998. In these discussions with its competitors and fellow Conspirators, NEC exchanged price and supply information and also agreed on prices, price increases, and production limits and quotas for LCD panels.
>
> 210. By 2001, Sharp employees were engaging in bilateral discussions with competitors to share price information for both TFT-LCD panels and STN-LCD panels used for mobile wireless handset applications. For example, a March 29, 2001 email from Sharp's Masa Fukada to Ming Shi of Sharp shows Mr. Fukada communicating future "competitor price" data for both STN-LCD panels and TFT-LCD panels from Epson, Hitachi, Matsushita, NEC and others.

FAC at 130, 210. While these allegations are not voluminous, they are sufficient to inform NEC, at best a minor player in the conspiracy, of the basis for the charges against it.

NEC argues that these allegations do not create a plausible basis for concluding that it participated in the overarching conspiracy. The Court disagrees. The conspiracy in this case is well-established. Although NEC may have played only a limited role, Office Depot's allegations sufficiently allege that NEC played some role. NEC's arguments that it did not participate in the full conspiracy, that it otherwise withdrew, or that Office Depot should have garnered more compelling evidence given the amount of discovery in this MDL are all better considered on summary judgment.

Finally, NEC contends that Office Depot's complaint impermissibly relies on group pleading. The Court disagrees. The complaint contains plausible allegations of NEC's involvement in the conspiracy, and alleges that NEC's subsidiaries assisted the parent company in carrying the conspiracy out. NEC's contention that its subsidiaries did not play any role in the conspiracy is better addressed following discovery.

//

//

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' joint motion to dismiss and GRANTS IN PART NEC's motion to dismiss or, in the alternative, for summary judgment. Docket Nos. 3949, 3954 in 07-1827; Docket Nos. 46, 50 in 11-2225.

**IT IS SO ORDERED.**

Dated: January 18, 2012

SUSAN ILLSTON
United States District Judge