**United States District Court**
For the Northern District of California

1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6          FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8    IN RE: TFT-LCD (FLAT PANEL) ANTITRUST          No. M 07-1827 SI
     LITIGATION
9    _____/     MDL No. 1827
10   This Order Relates to:                         **ORDER DENYING STATES OF
                                                    ILLINOIS AND WASHINGTON'S
11       All Indirect-Purchaser Plaintiff Class     MOTION TO MODIFY THE IPPS'
         Actions                                    CLASS FOR INJUNCTIVE RELIEF**
12
     _____/
13

14          On January 20, 2012, the Court heard argument on the States of Illinois and Washington's (the

15   "States") motion to modify the indirect-purchaser plaintiffs' (IPPs) class for injunctive relief.[1]  Having

16   considered the moving papers and the arguments of the parties, and for good cause appearing, the Court

17   hereby DENIES the States' motion.

18          The States' motion is the latest exchange in a long-running territorial dispute in this MDL.  Both

19   the States and IPPs seek to represent, to differing degrees, the residents of Illinois and Washington.

20   Those residents are currently members of the IPPs' injunctive relief class, a nationwide class certified

21   under Rule 23(b)(2)[2] that asserts a single claim under the Sherman Act.  They are also represented by

22   the States in *parens patriae* actions currently pending in Illinois and Washington state courts.  The

23   States contend that their laws grant them, through their *parens patriae* powers, sole authority to

24   _____

25          [1]The State of South Carolina has requested leave to appear as *amicus curiae* on this motion.  The
     Court GRANTS this request.
26

27          [2]This rule provides that a class action may be maintained if "the party opposing the class has
     acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or
     corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P.
28   23(b)(2).

1   represent their residents in collective actions.[3]

2        Over time, this dispute has been winnowed down – IPPs, for example, no longer seek to

3   represent Illinois or Washington purchasers in claims for monetary damages, while the States acquiesced

4   to the recent IPP settlement after receiving numerous assurances concerning the scope of the

5   settlement's release.  The last remaining issue in this dispute is the ability of the indirect-purchaser

6   plaintiffs to include Illinois and Washington residents in the nationwide injunctive class.

7        The States request that the nationwide class be modified to exclude residents of Illinois and

8   Washington.  They contend that a fundamental conflict of interest prevents IPPs from adequately

9   representing their residents.  Under this argument, IPPs are engaged in "claim splitting" by seeking only

10  an injunction and not damages on behalf of Illinois and Washington residents.[4]  According to the States,

11  a judgment for or against the IPP injunctive relief class could have preclusive effects upon either the

12  residents' future claims for damages or the States' own proprietary actions.  *See* Motion at 5 ("[T]he

13  IPPs are not pursuing monetary relief for the States' indirect purchasers, and – unless they are carved

14  out from the class – their monetary claims could be precluded as res judicata.").

15       The Court concludes that the IPP injunctive-relief class will not preclude future claims by Illinois

16  and Washington residents, and that modification of the class is therefore not warranted.  In the Ninth

17  Circuit, "the general rule is that a class action suit seeking only declaratory and injunctive relief does

18  not bar subsequent individual damages claims by class members, even if based on the same events."

19  *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996).  Indeed, "every federal court of appeals that has

20  considered the question has held that a class action seeking only declaratory or injunctive relief does

21  not bar subsequent individual suits for damages."  *Id.* (quoting *In re Jackson Lockdown/MCO Cases*,

22  568 F. Supp. 869, 892 (E.D. Mich. 1983)).

23       The rationale for this rule – which has typically been applied in the Title VII context – is that

24

25       [3]*See* 740 Ill. Comp. Stat. § 10/7(2); Wash. Rev. Code § 19.86.080.

26       [4]The States' brief also argues that IPPs may not release the state-law injunctive relief claims of

27  their residents as part of the settlements reached in this matter.  This matter was resolved to the States'
    satisfaction at the hearing on preliminary approval of the IPP settlements.

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

claims for monetary damages typically rely upon different facts than claims for injunctive relief.  *See*, *e.g.*, *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 891 (1984) ("The inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.'").  The individualized factual showing needed to establish entitlement to money damages is generally not required for the blanket, one-size-fits-all remedies available to a (b)(2) class.  *Cf. Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2557 (2011) ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'").

The same basic dichotomy exists in this case.  To prevail on their claim for injunctive relief, IPPs need only show "threatened loss or damage by a violation of the antitrust laws."  15 U.S.C. § 26; *see also Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998) ("[A]n antitrust plaintiff seeking injunctive relief need only show a threatened injury, not an actual one.").  No further individualized showing is necessary to warrant injunctive relief for all class members.  Plaintiffs seeking damages, in contrast, would have to make individualized showings on issues such as causation and damages to prevail.

The limited preclusive effect of a (b)(2) class is also evidenced by its limited procedural protections.  Such classes are mandatory and do not require that class members be given notice or the ability to opt out.  As numerous courts have noted, these limitations restrain the preclusive effect a (b)(2) class may have on its members:

> [Section] (b)(2) does not require that class members be given notice and opt-out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory, and that depriving people of their right to sue in this manner complies with the Due Process Clause.  In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process.

*Dukes*, 131 S. Ct. at 2559.  Some courts have found these limitations to be reason for refusing to certify a (b)(2) class where its members have potential claims for monetary recovery.  *See Zachery v. Texaco Exploration and Production, Inc.*, 185 F.R.D. 230, 243-44 (W.D. Tex. 1999) ("[T]he Court is not willing

1    to gamble away the proposed class members' potential rights to compensatory damages in this case.").

2    In the Court's view, however, it makes little sense to turn the mandatory nature of the (b)(2) class into

3    a feature that counsels against certification. Instead, it is better seen as consistent with the prevailing

4    view that (b)(2) classes are limited in the degree to which they may bind their members. *See Morrow*

5    *v. Washington*, 277 F.R.D. 172, 203-04 (E.D. Tex. 2011) (expressing disagreement with *Zachary*);

6    *Norris v. Slothouber*, 718 F.2d 1116, 1117 (D.C. Cir. 1983) ("A suit for damages is not precluded by

7    reason of the plaintiff's membership in a class for which no monetary relief is sought"); *Coleman v.*

8    *General Motors Acceptance Corp.*, 220 F.R.D. 64, 81-82 (M.D. Tenn. 2004) ("These authorities

9    underscore the idea that it is far from clear that money damages would be precluded in separate

10   individual damages actions."); *cf. Pate v. U.S.*, 328 F. Supp. 2d 62, 73-74 (D.D.C. 2004) (finding claims

11   for monetary relief were not barred by res judicata where plaintiff had no notice of earlier (b)(2) class

12   action).

13           The States rely heavily on *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), a recent

14   Supreme Court decision that discussed whether a class certified under Rule 23(b)(2) could include

15   claims for backpay or other individualized monetary relief. *Id.* at 2559. The plaintiffs argued that (b)(2)

16   class certification was appropriate because the monetary relief "d[id] not 'predominate' over their

17   requests for injunctive and declaratory relief." *Id.* at 2559. Noting that (b)(2) classes were

18   "mandatory," however, and did not require notice to class members or the option to opt-out, the

19   Supreme Court expressed concern with the plaintiffs' view:

20           [Plaintiffs'] predominance test, moreover, creates perverse incentives for class
             representatives to place at risk potentially valid claims for monetary relief. In this case,
21           for example, the named plaintiffs declined to include employees' claims for
             compensatory damages in their complaint. That strategy of including only backpay
22           claims made it more likely that monetary relief would not "predominate." But it also
             created the possibility (if the predominance test were correct) that individual class
23           members' compensatory-damages claims would be precluded by litigation they had no
             power to hold themselves apart from. If it were determined, for example, that a
24           particular class member is not entitled to backpay because her denial of increased pay
             or a promotion was not the product of discrimination, that employee might be
25           collaterally estopped from independently seeking compensatory damages based on that
             same denial.
26

27   *Id.* Analogizing to this passage, the States contend that IPPs' nationwide injunctive relief class

28                                                      4

1   constitutes a similar threat to their residents' claims for monetary relief

2        The Court disagrees with the States' reading of *Dukes*. If the States' argument were correct, the

3   (b)(2) class in *Dukes* would have had serious preclusive implications for its members regardless of

4   whether or not the class sought monetary relief. Yet there seemed to be little controversy about the

5   propriety of certifying a class limited to injunctive relief; instead, the Supreme Court focused on the

6   problems that would arise if individualized relief were allowed in a (b)(2) class. This focus confirms

7   what common sense suggests: a Rule 23(b)(2) judgment, with its one-size-fits-all approach and its

8   limited procedural protections, will not preclude later claims for individualized relief.[5] Any other

9   conclusion would eviscerate the (b)(2) class, preventing its use whenever there was a chance that

10  unknown class members might have damages claims.

11       Thus, the Court is convinced that there is no conflict of interest here, and that the IPP injunctive

12  relief class will not preclude claims for damages brought by or on behalf of the States of Illinois and

13  Washington and their residents. Accordingly, the States' motion is DENIED.

14

15

16  //

17  //

18  //

19  //

20

21  _____

22      [5]As *Dukes* implies, a different issue arises when claim splitting occurs in the context of a class
    that seeks monetary damages. Because concerns about preclusion are much more significant in that

23  circumstance, courts have refused to certify classes based on conflicts of interest between the named
    plaintiffs and the absent class members. Most of the cases the States rely on arose in this context. *See*

24  *W. States Wholesale, Inc. v. Synthetic Indus.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002) (declining to certify
    (b)(3) class); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 283 (5th Cir. 2008) (affirming denial of
    (b)(2) class certification where plaintiffs sought backpay but not compensatory or punitive damages);

25  *Nafar v. Hollywood Tanning Sys., Inc.*, 339 Fed. Appx. 216 (3d Cir. 2009) (vacating certification of
    (b)(3) class); *Krueger v. Wyeth, Inc.*, 2008 WL 481956 (S.D. Cal., Feb. 19, 2008) (declining to certify

26  (b)(3) class); *Drimmer v. WD-40 Co.*, 2007 WL 2456003 (S.D. Cal., Aug. 24, 2007) (same); *but see*
    *Fosmire v. Progressive Max Ins. Co.*, 2011 WL 4801915 (W.D. Wash., Oct. 11, 2011) (declining to

27  certify (b)(2) class).

28                                  5

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES the States' motion to modify the IPP injunctive relief class.  Docket Nos. 4092, 4113.

**IT IS SO ORDERED.**

Dated: January 30, 2012

_____
SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California