IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To: | No. C 10-1064 SI |
| DELL INC., *et al.*,<br>　　　　Plaintiffs,<br>　v.<br>SHARP CORPORATION, *et al.*,<br>　　　　Defendants. / | **ORDER ALLOWING DEPOSITION OF ERIC KORMAN (DELL)** |

　　　Defendants have filed an objection to an order of the Special Master granting Dell's motion for a protective order that prohibits defendants from deposing Eric Korman. *See* Special Master's Order Re: Dell's Motion for Protective Order to Prohibit Defendants from Deposing Eric Korman, Master Docket No. 4430 (December 27, 2011) ("Order"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for disposition without oral argument and therefore VACATES the hearing currently scheduled for March 2, 2012. Having considered the papers of the parties, and for good cause appearing, the Court hereby GRANTS defendants' objection.

　　　Korman was an employee of Dell Corporation between 1997 and 2008. West Decl., Exh. M at Exh. A, ¶2 ("Korman Decl."). Between 2001 and 2003, Korman authored a number of emails that suggest he was aware of the alleged price-fixing conspiracy between manufacturers of TFT-LCD panels. These emails refer to the "cartel" in existence among LCD manufacturers – one humorously refers to it as the "Coordinated Activities Related To Expensive LCD's." West Decl., Exh. D (emphasis in

original); *see also* West Decl., Exhs. E, F, G, H. Some of the emails also suggest that Korman was allowed to view the minutes of the crystal meetings, which lie at the heart of Dell's antitrust claims. West Decl., Exhs. D, H.

In late 2011, approximately a week before the discovery deadline, defendants attempted to notice Korman's deposition.[1] They did so unilaterally, without discussing the matter with Dell or the Special Master, despite the fact that they had already reached their quota of 12 depositions under the Discovery Protocol applicable to this case. *See* Special Master's Order Re: Number of Depositions, Master Docket No. 983, at ¶¶3, 5 (May 13, 2009) (establishing 12-deposition limit for "any single defendant group," but stating that the limit is "presumptive only" and may be expanded "upon motion to the Court for good cause"), *amended by* Master Docket No. 1595. Dell subsequently filed a motion for a protective order, which the Special Master granted:

> In the end, I conclude that the rules are the rules. Defendants exhausted their 12-deposition limit as to Dell and have not presented any convincing reason why it should be expanded. They waited until the last minute to notice this deposition, did not cooperate in scheduling it, and have not demonstrated adequate service on the witness. If the mere assertion that a witness may have important evidence were enough to evade all these rules, every party in the case could make the same arguments – and reasonable, accepted limits on discovery that had been in place for the entire case would melt away.

Order at 3 (footnote omitted).

The Special Master's Order addresses a procedural matter, which this Court reviews for abuse of discretion. *See* Order Appointing Martin Quinn as Special Master, Master Docket No. 1679, at ¶18 (April 12, 2010); Fed. R. Civ. P. 53(f)(3)-(5).

Having reviewed the documents at issue, the Court agrees with defendants that Korman's deposition should be allowed to proceed. The emails authored by Korman are highly relevant to defendants' case. They appear to undermine Dell's claims of fraudulent concealment, *see* Second Amended Complaint at ¶¶232-43, and may be relevant to other potential defenses, such as mitigation

---

[1] Defendants purport to have served Korman with a Rule 45 subpoena in Austin on the evening of December 1, 2011, but it is far from clear whether defendants actually served Korman, who now lives in Taiwan and was apparently present in that country on December 2, 2011. Korman, however, has submitted a declaration stating that he will not contest the adequacy of service and is "available and willing to appear and testify at a deposition." Korman Decl., ¶5.

of damages.[2] More importantly, however, the emails are unique evidence, unlike anything the Court has seen in the five-years this MDL has existed. Given the unique nature of the documents, the Court thinks it proper to allow defendants to depose their author.

Dell contends that defendants have had the opportunity to question other Dell witnesses about the emails. Those witnesses, however, did not write the emails. Thus, their ability to testify about the documents was limited. *See*, *e.g.*, West Decl., Exh. N at Exh. D ("I would not have authored this email, so I do not know what was behind his intention writing that."); *id.* ("That would be something Eric [Korman] could answer."); West Decl., Exh. N at Exh. E ("I don't know what Eric means."); *id.* ("I don't know. Again, I'm not Eric Korman."); Ganske Decl., Exh. H ("I honestly don't have any idea who he's referring to here."); Ganske Decl., Exh. I (testimony that witness did not know "how [Korman] knew, apparently, the contents of cartel meeting minutes").

In light of Korman's unique knowledge, the Court concludes that the protective order constituted an abuse of discretion. Given the nature of the emails, the presumptive limit of 12 depositions should yield to defendants' compelling interest in further discovery. Further, defendants' failure to coordinate with Dell to set up the Korman deposition was not so flagrant or abusive as to warrant prohibition of the deposition altogether. Dell does not contend, for example, that defendants routinely flout the Deposition Protocol. Finally, the Court notes the Special Master's subsequent comments questioning his basis for the Order. Supp. West Decl., Exh. B ("[E]ven though I issued an order last month relying somewhat heavily on the 12-depo limit to deny a deposition . . . I really hadn't thought of it as much as I should have. . . . [T]he 12 limit is looking less relevant and appropriate now.").

//
//
//
//

---

[2]The Court takes no position on the parties' dispute over the availability of this defense.

3

Accordingly, the Court GRANTS defendants' objection to the Special Master's Order. If Korman remains willing to be deposed, defendants may proceed with his deposition. Docket No. 4528 in 07-1827; Docket No. 164 in 10-1064.

**IT IS SO ORDERED.**

Dated: March 1, 2012

SUSAN ILLSTON
United States District Judge