Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Judith A. Zahid (215418)
Patrick B. Clayton (240191)
Qianwei Fu (242669)
Heather Rankie (268002)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:	(415) 693-0700
Facsimile:	(415) 693-0770
*fscarpulla@zelle.com*
*ccorbitt@zelle.com*

Joseph M Alioto (42980)
Theresa D. Moore (99978)
THE ALIOTO FIRM
225 Bush Street, 16th Floor
San Francisco, CA  94111
Telephone:	(415) 434-8900
Facsimile:	(415) 434-9200
*jmalioto@aliotolaw.com*

*Co-Lead Class Counsel for Indirect-Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. 3:07-md-1827 SI<br><br>**CLASS ACTION** |
| This Document Relates to:<br><br>Indirect-Purchaser Class Action | **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION REGARDING TRIAL STRUCTURE**<br><br>Hearing Date: April 20, 2012<br>Time: 9:00 a.m.<br>Courtroom: 10, 19th Floor<br><br>The Honorable Susan Illston |

## I. INTRODUCTION

Defendants' Motion Regarding Trial Structure and For Relief to Avoid Duplicative Recovery (Dkt. # 5258) derives from the flawed premise that separate recoveries, based on different legal predicates, by different groups of plaintiffs, are "duplicate" recoveries simply because the panels underlying these different claims were sold on multiple distribution levels. But the plaintiffs are each suing for their own injuries, and under well-established federal and state laws, their recoveries are separate and distinct, not duplicative.

Neither federal nor state law allows the drastic remedies Defendants seek. Neither federal nor state law supports Defendants' argument that different groups of purchasers, each with their own claims, may not fully recover for their separate injuries arising from Defendants' overcharge. With less than two months before trial, Defendants urge this Court to make radical changes to a trial plan that has been known and scheduled for more than a year. For the reasons set forth below, Defendants' Motion should be denied.

## II. ARGUMENT

### A. Under Long-Standing Legal Principles, A Price-Fixing Conspiracy Can Cause Legally-Recognized Injuries To Both Direct Purchasers And Indirect Purchasers, And Both Are Entitled To Seek Relief For Their Own Injuries.

Defendants' arguments never come to terms with the fact that each state and federal statute gives a right of recovery to a particular group of protected persons. Direct-Purchaser Plaintiffs ("DPPs") can recover damages for their own injuries under Section 4 of the Clayton Act (15 U.S.C. § 15) for violations of the federal Sherman Act (15 U.S.C. § 1). Indirect-Purchaser Plaintiffs ("IPPs") can recover damages for their own injuries under various state statutes only. Neither federal nor state law permits the allocation of price-fixing overcharges between different classes asserting separate antitrust claims – one a federal Sherman Act suit, the other a state-law antitrust action. Under black-letter law, both claims of both groups of plaintiffs are entitled to recover separate damage awards. Under federal law, the DPPs are entitled unequivocally to the full measure of the overcharge amount, without regard to pass-on. *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968). Likewise, the IPPs, who are only end-users, are entitled under Supreme Court authority and applicable state laws to the full measure of any

1   overcharge they establish has been passed through to them.  *California v. ARC America*, 490 U.S.
2   93 (1989).  This result is fully supported by long-standing Supreme Court authority, federal and
3   state antitrust precedent, and both federal and state policies of deterring illegal price-fixing.

4     When the Supreme Court held that its *Illinois Brick* decision did not pre-empt state
5   indirect-purchaser statutes (*ARC America*, 490 U.S. at 105-06), the Court expressly rejected the
6   same argument that Defendants make here – *i.e.*, that those state laws could create "multiple
7   liability" for defendants.  The Court held that there is no federal policy prohibiting states from
8   creating indirect-purchaser liability "in addition to" the damage remedy under the Clayton Act.
9   490 U.S. at 105.  The Court noted that such laws "are consistent with the broad purposes of the
10  federal antitrust laws: deterring anticompetitive conduct and ensuring compensation of victims of
11  that conduct."  *Id.* at 95.  While Section 4 of the Clayton Act only permits direct purchasers to
12  recover for overcharges under federal law, "nothing in *Illinois Brick* suggests that it would be
13  contrary to congressional purposes for states to allow indirect purchasers to recover under their
14  own antitrust laws."  *Id.* at 96.

15    Both DPPs' and IPPs' injuries are recognized under the law, and both can recover their full
16  measure of damages.  No case holds otherwise.  In fact, as Professor Herbert Hovenkamp has
17  stated when writing on this very subject:

> Importantly, the existence of a state statute in no way limits or controls damage measurements under federal law.  That is, the state statute cannot mandate that the damages be "allocated," for that would reduce the direct purchaser's federal right.  Thus a direct purchaser proceeding under federal law will be entitled to treble the entire monopoly overcharge, while the indirect purchaser proceeding under state law will be entitled to treble the overcharge that was passed on to it.  At the margin, this regime could produce six-fold rather than treble damages.

22  Herbert Hovenkamp, *Federal Antitrust Policy: The Law of Competition and Its Practice* (West
23  1994), § 16.6d.

24    The Supreme Court's ruling in *ARC America* is dispositive of this motion.  It holds that any
25  "multiple liability" that may result from separate parties asserting separate claims under federal
26  and state antitrust law is permissible, and, therefore, no allocation is allowed.  *See also English v.*
27  *General Electric Co.*, 496 U.S. 72, 89 (1990) ("Moreover, and more importantly, we think the
28  District Court failed to follow this Court's teaching that 'ordinarily, state causes of action are not

pre-empted solely because they impose liability over and above that authorized by federal law.'") (citing *ARC America* at 105); *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000); *see also In re Visa Check/Mastermoney Antitrust Litig.*, 2005 WL 2100930, *6-*7 (E.D.N.Y. Aug. 31, 2005) ("[t]here is no question that the existence of such statutes complicates antitrust litigation, but that cost is incurred in furtherance of the broader goals of deterring anticompetitive conduct and compensating victims of that conduct. Thus there is no federal policy against states imposing liability in addition to the liability imposed by federal antitrust law.").

**B.     These Cases Do Not Threaten Defendants' Due Process Rights.**

**1.     This Case Does Not Present A Due Process Problem In The Form of Multiple Plaintiffs All Claiming the Same Item of Property.**

Defendants argue that their Due Process rights are implicated because they "face multiple claims to the same pot of money" (Motion at 9). But that is a false analogy. This is not a case where multiple claimants seek the same specific item of property. Instead, each plaintiff group in this case has a different claim and has suffered a unique injury, and each is seeking damages for its own injury. There is no risk of conflicting judgments on a specific item of property, such as the risk of conflicting escheat judgments directed at the portfolio of unclaimed money orders in *Western Union Telegraph Co. v. Pennsylvania*, 368 U.S. 71 (1961), cited by Defendants (Motion at 8-9). The Due Process problem identified in *Western Union* is not present here. Far from violating Due Process, recovery under federal and state laws is entirely consistent with the purposes of the antitrust laws to deter violators and compensate their victims. *ARC America*, 490 U.S. at 95.

**2.     This Case Does Not Involve an Excessive Punitive Damages Award That Would Violate Defendants' Due Process Rights.**

Defendants argue that because treble damages have been analogized to punitive damages, two Supreme Court cases – *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) – mean that treble damages awards in this case

3
IPPS' OPP'N TO DEFS' MOT. RE TRIAL STRUCTURE
Case No. 3:07-md-1827 SI

would result in excessive penalties in violation of the Due Process clause (Motion at 10-12).[1]  That is wrong, for three reasons.

First, unlike *State Farm* and *Gore*, this case is not about a runaway jury award of punitive damages.  Instead, Defendants are complaining about statutory treble damages remedies that were codified by Congress and state legislatures.  There is a big difference between a statutory treble damage award and a discretionary punitive damage award from a jury.  Because there is no due process problem when a defendant faces antitrust liability under both state and federal laws, there is no greater basis for a Due Process claim simply because both of those statutes provide for trebling.  And given that these treble damage statutes have been in place for years, the Due Process concerns from *State Farm* and *Gore* – that is, the punitive damage awards might be unpredictable or out of proportion – are absent here.

Second, in applying the ratio for permissible punitive damage awards from *Gore*, Defendants incorrectly compare the overcharge on the DPPs to Defendants' total exposure for all plaintiffs' possible damages (trebled) (Motion at 10).  That is the wrong comparison.  The proper application of the *Gore* ratio requires comparing the "actual harm inflicted on the plaintiff" to that plaintiff's treble damage award.  *Gore*, 517 U.S. at 580.  *See also State Farm*, 538 U.S. at 424-25.  For any particular plaintiff in these LCD cases, the punishment-to-harm ratio is never more than three to one, and that ratio is proper under either Supreme Court case.

Third, unlike the jury awards in both *State Farm* and *Gore*, Congress and the state legislatures have spoken directly on the proper remedies for the antitrust violations at issue here.  Neither *State Farm* nor *Gore* would require this Court to second-guess those legislative judgments.  *State Farm,* 538 U.S. at 422 (each state may determine "what measure of punishment" to impose for prohibited conduct); *Gore*, 517 U.S. at 583 (court should "accord substantial deference to

---

[1]  In *State Farm*, the jury awarded compensatory damages of $2.6 million (later reduced to $1 million) and $145 million in punitive damages (538 U.S. at 415); and in *Gore*, the jury awarded $4,000 in compensatory damages and $4 million in punitive damages (517 U.S. at 565).  The Due Process problem arose because the defendants in those cases could not know the size of the possible sanction for prohibited conduct. *State Farm*, 538 U.S. at 416; *Gore*, 517 U.S. at 574.

4
IPPS' OPP'N TO DEFS' MOT. RE TRIAL STRUCTURE
Case No. 3:07-md-1827 SI

legislative judgments concerning appropriate sanctions" for the conduct at issue) (citations omitted). The statutory damages in this case do not violate Defendants' Due Process rights.

### C. The Law Does Not Permit or Require The Overcharge Allocation That Defendants Propose.

Throughout their Motion, Defendants argue that the Court should take steps to allocate the overcharge among the various parties who recover damages (*see* Motion at 1, 3, 12 and 15-16), but such an allocation is not permitted under the law.

#### 1. The Clayton Act Does Not Permit The Overcharge Allocation That Defendants Propose.

Defendants suggest that this Court may set aside the Supreme Court decisions in *Hanover Shoe, Inc. v. United Shoe Machinery Corp*, 392 U.S. 481 (1968) and *Illinois Brick v. Illinois*, 431 U.S. 720 (1977), incorrectly arguing that those antitrust cases do not fit with this litigation (Motion at 15-16). Those cases prohibit a pass-on defense in a Clayton Act damages case (*Hanover Shoe*) and prohibit indirect purchasers from suing under the Clayton Act to collect damages from a passed-on overcharge (*Illinois Brick*) in a federal Sherman Act case. Defendants mistakenly claim that those pass-on rules can be disregarded by this Court if two of the explanations for those rules – ensuring that direct purchasers have enough incentive to sue and avoiding complexity of proof of pass-on – are not present.

Defendants are wrong. The Supreme Court has held that trial courts may not disregard the *Hanover Shoe/Illinois Brick* pass-on rules by creating new exceptions to fit particular cases. *Kansas v. Utilicorp United Inc*., 497 U.S. 199, 216-17 (1990). For the district courts, those pass-on rules are set in stone, without exceptions. *Id*.; *Delaware Valley Surg. Supply Inc. v. Bamberg County Mem. Hosp.,* 523 F.3d 1116, 1122 (9th Cir. 2008).[2] The particular explanations provided in *Hanover Shoe* (and *Illinois Brick*) do not usurp the clear policy holdings of those cases, and the district courts may not craft new exceptions to those holdings. *Utilicorp*., 497 U.S. at 216-17.

---

[2] In their Motion (at p. 15), Defendants hint at the "cost-plus contract" exception identified in *Hanover Shoe* and *Illinois Brick*. That narrow exception allows indirect purchasers to maintain a federal antitrust damages suit if there is a distribution contract that requires the direct purchaser to pass on all cost increases and requires the indirect purchaser to buy a fixed quantity regardless of price. There is no cost-plus contract in this case. The exception cannot be expanded to cover other situations. *Utilicorp*., 497 U.S. at 217-18.

Defendants' next argument – that the Court's decision in *ARC America* "confirms that *Hanover Shoe's* approach must give way when both direct purchasers and indirect purchasers have sued" (Motion at 16) – is exactly backwards. In *ARC America*, the Supreme Court held that state law damages remedies for indirect purchasers are not pre-empted by the Clayton Act. *ARC America,* 490 U.S. at 105-06. The Court rejected an argument that state laws might create multiple liability, stating that state law indirect purchaser damages are "over and above" the remedies under the Clayton Act. 490 U.S. at 105. Thus, the Clayton Act may not be used to eliminate any recovery by an indirect purchaser under state law.

Given these authorities, Defendants have no basis to ask the Court to fashion new exceptions to the *Hanover Shoe/Illinois Brick* rules. The Supreme Court cases do not allow the allocation that Defendants seek.

### 2. The Relevant State Statutes Do Not Require The Overcharge Allocation That Defendants Propose.

Defendants next argue that various state statutes support the Defendants' proposed overcharge allocation (Motion at 13-15). But those state statutes cannot be read to pre-empt the federal Clayton Act or to overrule *Hanover Shoe* or *ARC America*, because those states have no authority to change the pass-on rules for Clayton Act damages. *See* Hovenkamp, *Federal Antitrust Policy: The Law of Competition and Its Practice* (West 1994), § 16.6d ("Importantly, the existence of a state statute in no way limits or controls damage measurements under federal law. That is, the state statute cannot mandate that the damages be 'allocated,' for that would reduce the direct purchaser's federal right.").

Accordingly, the only reading of those state statutes is that a court may allow a pass-on defense, or take other appropriate action, if two claimants at different points in the chain of distribution both seek to recover under that specific state statute. No state statute or case provides – nor could one provide – that an overcharge must be apportioned among various plaintiffs who have sued for injuries under other state statutes or under the Clayton Act.

As the Supreme Court stated in *ARC America*, "these state statutes cannot and do not purport to affect remedies available under federal law." 490 U.S. at 96. While *ARC America*

1  discusses a *settlement* allocation between direct and indirect purchasers, that allocation was the
2  result of the particular settlement terms, not because of any substantive law: "That direct
3  purchasers may have to share with indirect purchasers is a function of the fact and form of
4  settlement rather than the impermissible operation of state indirect purchaser statutes." 490 U.S. at
5  97.  This statement is inapposite with respect to the *trial* of this case, and reinforces the fact that
6  Defendants have no law to support their argument that damages must be allocated between direct
7  and indirect purchasers.

8  Defendants cite dicta in *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 787 (2008) (Motion at 2,
9  14), discussing whether a pass-on defense should be allowed when more than one claimant on the
10 distribution chain seeks to recover in a Cartwright Act suit.  The IPP class is entirely end-users,
11 and there are no intermediate resellers in the upcoming trial.  Most of the Direct-Action Plaintiffs
12 ("DAPs") are opt-outs from the DPP class who are asserting federal Sherman Act claims, and for
13 all of the reasons stated above, no allocation of their damages with the IPPs is permissible.
14 Moreover, many DAPs, *e.g.*, AT&T and Motorola, are making claims for small panels that are not
15 part of the IPPs' damages claims.  Defendants argue that the issue of duplicative recovery "is
16 properly raised when the cases are at a stage that the evidence confirms the risk . . ." (Motion at 3).
17 They have cited no such evidence.  Although some DAPs were resellers to the IPPs, *e.g.*, Best Buy
18 and Costco, Defendants have failed to show that any quantified overcharges on any indirect
19 purchase for re-sale were not passed through to consumers, so there is no factual basis on this
20 record for any need to resolve an allocation issue.

21 Finally, even if there were any factual or legal basis for such an allocation between
22 plaintiffs claiming under the same state laws, it should not be a jury issue.  Defendants are making
23 an equitable argument, and thus the Court should address and resolve it, if necessary, only after the
24 trial, when the jury has determined the IPP pass-through rate and awarded the full amount of IPP
25 damages.  *See* E. Varanini, *Exiting the Fun House of Mirrors:  Clayworth v. Pfizer and the*
26 *Handling of Pass-On in Post-Trial Allocation Proceedings in Federal and State Court*, 20
27 COMPETITION 28 (2011).
28

**D.     Principles of Equity Do Not Support the Overcharge Allocation That Defendants Propose.**

Defendants' Motion apparently asks the Court to limit Defendants' damages exposure by appealing to equitable principles.  Those appeals to fairness, especially coming from confessed felon LG Display and convicted felon AUO, are misplaced, to say the least.  Defendants certainly were aware of the effect that their unlawful conduct would have on purchasers of LCD panels, and products containing LCD panels.  As a matter of law, participants in a price-fixing cartel are on notice that their unlawful activities may harm more than one group of plaintiffs.  *See, e.g., Knevelbaaard Dairies v. Kraft Foods, Inc*., 232 F.3d 979, 982 (9th Cir. 2000) (a buyers' cartel that fixed the purchase price of cheese also impacted the purchase price of fluid milk, thereby injuring both cheese sellers and milk sellers).  And the record here shows that the LCD Panel makers were aware of the harm that they were causing throughout the distribution channel:  while Defendants were fixing prices on LCD Panels, they were also monitoring street prices of finished LCD Products in the United States, so they could see the market-wide impact of their conduct.[3]  There is no unfairness in holding Defendants accountable for the injuries that they caused.  But even apart from foreseeability, participants in a conspiracy are legally accountable for all injuries caused by the conspiracy.  *El Ranco, Inc. v. First Nat'l Bank*, 406 F.2d 1205, 1216 (9th Cir. 1968).

This is not an appropriate case to invoke the Court's equitable powers.  *Accord Texas Indus., Inc. v. Radcliff Materials, Inc*., 451 U.S. 630, 646-647 (1981) (holding that any modifications to the damages rules under the Clayton Act must come from Congress, not from a Court acting in equity).  Moreover, the Court should reject a plea to equity from a participant in an unlawful conspiracy.  *Adler v. Federal Republic of Nigeria*, 219 F.3d 869, 876-77 (9th Cir. 2000).

**E.     The Court Should Not Adopt Any Of The Inappropriate Case Management Techniques Requested By Defendants.**

In the last section of their Motion (at pp. 16-24), Defendants list various trial techniques that could be used to address the supposed duplicative recovery problem in this case.  Without

---

[3]    *See, e.g.*, Order Denying Defs' Jt. Dispositive Mot. Re Indirect Purchaser Claims Based On Foreign Sales (Dkt. # 3833) at 12 ("As additional evidence that defendants' actions were targeted at the United States, plaintiffs point out that defendants monitored 'street prices' of their customers' goods to inform their price-fixing strategy."  (citing exhibits)).

arguing for any specific option, Defendants suggest a series of procedural changes that the Court could implement. The various proposals are not supported by any case law, and for all of the reasons discussed above, they should not be adopted. In addition, restructuring proposals such as these come too late, given that Defendants are suggesting a radical reshaping of this MDL case for the first time just a few weeks before the class action trial.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

DATED: April 4, 2012                              Respectfully submitted,

                                                              */s/ Francis O. Scarpulla*
                                                               Francis O. Scarpulla

Francis O. Scarpulla (41059)
Craig C. Corbitt (83251)
Judith A. Zahid (215418)
Patrick B. Clayton (240191)
Qianwei Fu (242669)
Heather Rankie (268002)
ZELLE HOFMANN VOELBEL &
  MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:   (415) 693-0700
Facsimile:    (415) 693-0770
*fscarpulla@zelle.com*
*ccorbitt@zelle.com*

Joseph M Alioto (42980)
Theresa D. Moore (99978)
THE ALIOTO FIRM
225 Bush Street, 16th Floor
San Francisco, CA  94111
Telephone:   (415) 434-8900
Facsimile:    (415) 434-9200
*jmalioto@aliotolaw.com*

*Co-Lead Class Counsel for Indirect-Purchaser Plaintiffs*

#3231276