FILED
APR 11 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Gary Joseph Bonas II
25794 Covala Court
Valencia, California 91355
(661) 600-5222

April 04, 2012

Honorable Judge Illston                     U.S. Marshal David Singer
United States District Court                United States Marshal
Northern District of California             312 N. Spring Street
Courtroom 10 - 19th Floor                   Room G-23
450 Golden Gate Avenue                      Los Angeles, Calif. 90012
San Francisco, California CA 94102

Re:    *In Re TFT-LCD (Flat Panel) Antitrust Litigation MDL 1827*

Dear Judge Illston and Clerks,

This letter is provided pursuant to the court's formal public invitation for comment in the above referenced matter.

This is an extremely high profile fiduciary case. It will impact the rights of nearly every adult *"citizen of the United States of America"* and most fictitious firm or business, from small to jumbo in size. To date the partial settlement *dollars involved are over half a billion, up to a third of which fiduciary counsel pre-arranged to claim for themselves.*

The notice instructs that comment is to be postmarked by April 13, 2012. To provide an informed comment or otherwise, some basic inquiries in this concerted price manipulation case have been made to lead class counsel Zelle Hoffman and others, including:

Exhibit A    March 17, 2012

May I please have a copy of your team's hourly price lists? May I please have a copy of Zelle's price setting compliance manual? May I please be put on the service list?

Exhibit B    April 01, 2012

Were counsels' prices set pursuant to the lawful forces of supply and demand?

The public interest *requires* ... that prices be ... dependent upon ... the interplay of the economic forces of supply and demand.[1]

I've yet to receive any response to these elementary questions. Thus, I provide this status report, with attached Exhibit letters C – F, inquiries about who is and is not represented and CV.

Thank you for your courtesy.

Kind regards,

Gary Joseph Bonas II

---

[1] *Speegle v. Board of Fire Underwriters*, 29 Cal.2d 34, at 44 (1946).

## Table of Exhibits

| Exhibit A | March 17, 2012 | Bonas' economic business letter to Zelle Hoffman, e.g. |
| Exhibit B | April 01, 2012 | Bonas' case business letter to Zelle Hoffman, e.g. |
| Exhibit C | April 03, 2012 | Bonas' case business letter to Zelle Hoffman, e.g. |
| Exhibit D | January 23, 2012 | Bonas' case business letter to Hausfeld, e.g. |

| Exhibit E | March 03, 2012 | Bonas' related business letter to Milberg/Robbins Geller |

### 12-30-03 Unsigned Agreement

| Exhibit F | March 22, 2012 | Bonas' related business letter to Governor Jerry Brown |

**Rule 11:** *(a) Signature: An unsigned paper shall be stricken* unless omission … is corrected promptly after being called to the attention of attorney or party.[2]

[I]nstruction comes in *terms of the mandatory "shall,"* which normally creates an obligation impervious to judicial discretion.[3]

### Preface

### The Supreme Statutes Instruct:

### 14th Amendment, Section 1

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States ….

**No State shall make** or enforce **any law which shall abridge** the privileges or *immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law*; nor deny to any person within its jurisdiction the equal protection of the laws.

### 18 U.S.C. 241

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, *Territory … or District* in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States … –

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or *if such acts include kidnapping or an attempt to kidnap,* … they shall be fined under this title or imprisoned for any term of years or for life, or both ….

---

[2] See CAL. CCP. CODE § 128.7 (The Foreign Domestic Sovereign Republic of California's Twin Power Body of Law).

[3] *Anderson* v. *Yungkau*, 329 U.S. 482, 485 (1947).

Gary Joseph Bonas II
25794 Covala Court
Valencia, California 91355
Cell No. 661-600-5222

March 17, 2012

Fran Scarpulla
Zelle Hoffman Voelbel
44 Montgomery St., Ste. 3400
San Francisco, Calif. 94191

Kamala D. Harris
CA Republic – Atty. General
455 Golden Gate Ave.,
Suite 11000
San Francisco, CA. 94102

Re: *Flat Screen Overcharge (LCD)*

Dear Zell et al.,

Thank you for representing me and many in my circle for being overcharged when we bought flat a flat screen TV, computer, lap top or otherwise in the past decade or so.

In connection with your fiduciary representation, I have a few client requests.

First, may I please have a copy of the operative client retainer contract in this case?

Second, may I please have a copy **of your class team's (identified in on the operative consolidated complaint) hourly price lists** for the period identified in the "release of claims" in the settlements under review; the time period in the published notice, which was court approved, is from 1999 to the present. I do not require the whole firms' price lists, only those that have and are expected to bill time here.

Third, may I please have a copy of Zell's (and all co-counsels') price setting compliance manual, which I assume includes the following rules of competition, among others:

- In a competitive market, price is based on cost rather than on value.[6]
- In ... competitive markets price equals costs and each seller knows his costs.[7]
- Good Faith Pricing: measure costs and setting a good faith price accordingly.[8]
- In every contract there is an implied covenant of good faith and fair dealing.[9]
- The purpose of legitimate price exchanges is to eliminate ... the ignorance of buyers ... concerning the conditions of supply and demand – price dispersion.[10]

Fourth, I'd appreciate being put on the service list to insure I receive all future filings.

Thank you in advance for the requested information.

Sincerely,
Gary Joseph Bonas II

---

[6] *In re HIGH FRUCTOSE CORN SYRUP ANTITRUST LITIGATION*, 295 F.3d 651 (7th Cir. 2002).
[7] Richard A. Posner, *Antitrust: An Economic Perspective*, Chapter 7, at pages 133-136 (1976).
[8] *Competitive Strategy*, Michael Porter (1980 Free Press); see *Beasley v. Wells Farg*, 235 Cal.App.3d 1395 (1991).
[9] *Kirke La Shelle Company v. The Paul Armstrong Company et al.* 263 N.Y. 79 (1933).
[10] *Information and Antitrust: Reflections on the Engineers and Gypsum Decisions*, 67 Georgetown Law Journal 1187 (1979).

Gary Joseph Bonas II
25794 Covala Court
Valencia, California 91355

April 01, 2012

Fran Scarpulla  
Zelle Hoffman Voelbel  
44 Montgomery St., Ste. 3400  
San Francisco, Calif. 94191

Guido Saveri  
Saveri & Saveri Inc  
706 Sansome St  
San Francisco, CA 94111

Re: *Flat Screens - Overcharge (LCD)*

Dear Firm(s),

    I have yet to receive firm reply to my client inquiry letter dated 03-17-12 in the above overcharge case. This supplement further clarifies my inquiry, with short research attachments.

    To assist clients' decision to support or question the settlement, it would help to know if the class' fiduciary voices here fixed their price lists pursuant to the "economic forces of supply and demand." I ask this question because one District 12 state court explained:

> The public interest requires ... that prices be ... dependent upon ... the interplay of the economic forces of supply and demand.[3]

There was no mention of this in either the complaint or the class' retainer contract(s). Indeed, I don't think the named class representatives know how to evaluate whether prices are set pursuant to such rules, as "required" according to the properly referenced District 12 authority.

    I think clients would appreciate learning how the act and math of price matching up with close colleagues squares with the law of supplying demand.[4] These numbers, e.g., were verified:

| Year | | | |
|---|---|---|---|
| 2008 | $895 (+$245) | $900 (+$250) | ? |
| ... | ... | ... | ? |
| 2004 | **$650 (+$50)** | **$650 (+$50)** | **$650 (+?)** |
| 2003 | $600 (+$50) | $600 (+$50) | ? |
| 2002 | $550 | $550 | ? |
| | **Guido Saveri** | **Francis Scarpulla** | **Joseph M. Alioto** |

> [S]uch information exchanges are not ... *per se* legal ...; their legality under the antitrust laws depends specifically on their effect upon competition.[5]

Thank you for your courtesy explaining this economic contract consideration question.

                              Sincerely,

                              Gary Joseph Bonas II

---

[3] *Speegle v. Board of Fire Underwriters*, 29 Cal.2d 34, at 44 (1946).  
[4] *U.S. v. Container*, 393 U.S. 333 (1969).  
[5] *Penne v. Greater Minneapolis Area Board of Realtors*, 604 F.2d 1143, 1148 (8th Cir. 1979).

Gary Joseph Bonas II
25794 Covala Court
Valencia, California 91355
(661) 600-5222

April 03, 2012

Fran Scarpulla
Zelle Hoffman Voelbel
44 Montgomery St., Ste. 3400
San Francisco, Calif. 94104

Joseph M. Alioto
The Alioto Law Firm
555 California Street, 31st Fl.
San Francisco, CA 94104

Re:   *In Re TFT-LCD (Flat Panel) Antitrust Litigation MDL 1827*

Dear Counsel,

I reviewed the client definitions in this $500,000,000.00 case and had a few questions.

First, with regard to the private cartel overcharge refund (damages), the client base is:

> All person or entities in one of 24 states ... who, from January 1, 1999 to December 31, 2006, as residents ..., purchased LCD panels ... in televisions, monitors, and/or laptop computers ... indirectly ... for their own use and not for resale.

You specifically excluded "**Federal**, *state or local governmental* entities" from your client list. As defined, you do not represent, for example, the United States Navy, Army, Air Force, Marines, Marshal Service, Federal Bureau of Investigation, CIA, NASA, Department of Education, Department of Labor, any federal educational entity and so forth.

Second, eight state Attorneys General brought related cases and, according to the notice:

> are participating in these Settlements to resolve related claims arising from the same alleged conduct as asserted in the class actions: (1) **on behalf of state residents** under the doctrine of *parens patriae*, which allows a state to bring a lawsuit on behalf of its citizens, **and/or for governmental entities**; (2) **for civil penalties**; and (3) for other relief, including equitable relief.[2]

Third, it seems these eight states seek remedy and repose for their government purchases, but that is a little unclear given the "and/or" wording. Do they purport to represent federal entities? If so, do they have constitutional power to do so? If not, are these claims preserved?

On the injunction point, exactly what pricing system or pricing protocol did the accused agree not to employ, if any? Some research on this central point is attached for clarification.

Thank you for your courtesy in answering these questions.

Kind regards,

Gary Joseph Bonas II

---

[2] States' Action: The Attorneys General of Arkansas, California, Florida, Michigan, Missouri, New York, West Virginia and Wisconsin.

Gary Joseph Bonas II
25794 Covala Court
Valencia, California 91355
Cell No. 661-600-5222

January 23, 2012

Michael P. Lehmann
Hausfeld, LLP
44 Montgomery Street,
Suite 3400
San Francisco, Calif. 94104

Bobby Pouya
PEARSON, SIMON
44 Montgomery St.
Suite 1430
San Fran, Calif. 94104

*In re: LCD – The "Crystal Equilibrium Cycle"*
***Enforcing an Un-Manipulated Economy***

Dear Fiduciary Counsel,

Thank you for contracting to represent in the above referenced overcharge case.

As economic equilibrium enforcers, in the context of recent disclosures, below I've identified some of your core allegations about economic price collusion. Your allegations directly track the symptoms of another field in which your clients, courts and public enforcers might have an interest.

Here, I present the simple law of price equilibrium, as you eloquently presented in the referenced complaint. I then turn to a simple equilibrium compliance question in the course of this big economic case, which impacts millions of Americans.

First, the main economic crime allegations, according to your complaint, include:

> 96. Typically, when a new competitor enters a market, ***it brings incremental production online thereby adding supply, and prices drop until an equilibrium is reached.*** In the Firms' industry, however, ***the lead players conspired to rein in and discipline these new entrants*** until the new entrants were assimilated into the conspiracy. This had the effect of tempering price drops and ***preventing them from reaching a competitive equilibrium***.
>
> 97. The conspiracy eliminated the effects of the crystal cycle in the field.[1]

A balanced economy, defined by charge equilibrium enforcement, is something all Wall Street ops have a mammoth interest in averting. Deliberate non-compliance with equilibrium protocols leads to a host of symptoms, some of which, as you and your rival business partners correctly allege, follow:

**B.** **Structure of the Firms' Industry**

---

[1] 12-05-08 LCD - Hausfeld's Field Complaint allegations, at page 21.

1

85. The Firms' industry has several characteristics that facilitated a conspiracy, including market concentration, ease of information sharing, the consolidation of manufacturers, multiple interrelated business relationships, significant barriers to entry, heightened price sensitivity to supply and demand forces, and homogeneity of products.

## 1. Market Concentration

86. The market for the Firms' paper products and services is very large. Sales amount to billions of dollars annually.

87. Despite its enormous size, the Firms' industry is highly concentrated, a factor that is conducive to the type of collusive activity alleged.

## 2. Information Sharing

88. Because of common membership in trade associations, interrelated business arrangements such as joint ventures, sharing offices in the same locations, and relationships between the executives of certain firms, there were many opportunities for the accused to discuss and exchange competitive information. *The ease of communication was facilitated by* the use of meetings, *telephone calls, e-mails, and instant messages*. The firms took advantage of these opportunities to discuss, and agree upon, their pricing for their paper products and services as alleged below.[2]

89. Additionally, the firms' capacity and pricing data is known and or reported by each to each other in the normal course of their business. A simple review of their pricing policies, for example, allows each to identify each others' future plans for bringing capacity on line, capacity utilization, market share, pricing, and the advent of new overcharge technologies. Because there were very few companies that needed to be analyzed in order to obtain this data, all competitors in the field had ready and timely access to reliable information about their competition's pricing as well as future supply and capacity decisions. *By meeting up together* as herein below alleged as well as monitoring and analyzing this information over time, *participants in the conspiracy were able to signal their respective intent, verify that the conspiracy was working, and identify any parties who might be deviating from the conspiracy.*

## 4. Multiple Interrelated Business Relationships

91. The industry is marked by a web of joint ventures, and other cooperative arrangements that can facilitate collusion.[3]

92. The industry has *a close-knit nature whereby multiple business relationships between supposed competitors blur the lines of competition* and provided ample opportunity to collude. These relationships created a

---

[2] 12-05-08 LCD - Hausfeld's Field Complaint allegations, at page 18.
[3] 12-05-08 LCD - Hausfeld's Field Complaint allegations, at page 19.

### 6. The "Crystal Cycle"

95. Unlike all markets, the firms' industry is not subject to business cycles of supply and demand. In the typical industry, this cycle is known as the "crystal cycle." This cycle has been described as "boom and bust" periods caused by alternating periods of oversupply and shortages, which create downward and upward pressures on prices for products and/or services. The firms, together, are very careful about not oversupplying the market – even though ***demand far exceeds what is supplied***.[4]

96. Another factor is the entry of new competitors. Typically, when a new competitor enters a market, it brings incremental production online thereby adding supply, and ***prices drop until an equilibrium*** is reached. In the Firms' industry, however, ***the appointed lead players conspired to rein in and discipline these new entrants*** until the new entrants were assimilated into the conspiracy. This had the effect of tempering price drops and ***preventing them from reaching a competitive equilibrium***.

97. The conspiracy eliminated the effects of the crystal cycle in the field.

### 7. Dominant Firm Paper Products and Services

98. Notwithstanding the many be different applications for the Firms' paper products and services, there is a consistent and homogeneous way to monitor, analyze, discipline, and enforce their conspiracy. This can be done by looking at the predominant, or most popular, paper products and recorded services and the applications for those units that represent the highest percentage of sales. This can also be accomplished by looking at standardized statistics used in the industry, such as the amount of paper products, unit services and revenues per closing. By using these, and other industry analytics, the Firms' could monitor, analyze, discipline, and enforce their conspiracy.[5]

In the context of the above, please explain how your prices are set in by way of the law you enforce - crystal cycle's competitive forces of supply and demand? I am trying to understand how that law fits the fact that one unit hour of the same time in '06, e.g., cost buyers $575, which number was upped every year to $950 in '10. See Ex1-2.

Thank you for courtesy and time explaining this situation.

Warm regards,

Gary Joseph Bonas II

---

[4] 12-05-08 LCD - Hausfeld's Field Complaint allegations, at page 20.
[5] 12-05-08 LCD - Hausfeld's Field Complaint allegations, at page 21.

3

Gary Joseph Bonas II
25794 Covala Court
Valencia, California 91355

March 02, 2012

Darren Robbins  
Sam Rudman  
Robbins Geller  
655 West Broadway, Suite 1900  
San Diego, Calif. 92101

Herbert Hovenkamp  
Iowa College of Law  
Iowa City, Iowa 52242  
herbert-hovenkamp@uiowa.edu  
rposner@law.uchicago.edu

*Re:*   *The Economic Lit Firms v. Bonas*

Dear Mrrs. Robbins - Rudman *et al.*,

Thank you for your firm's e-mail correspondence dated 03-01-12.

From your communication, there are clearly some communication gaps about our law and economic practice. These gaps directly relate to adequacy of representation pursuant to fiduciary duties. This short response aims to fill some of our communication breakdowns.

First, your firm's recent words are unfriendly retorts to being courtesy copied with basic price law, economic rules and whistle-blowing applications. Your firm has long contracted to enforce these rules, but doesn't – and it doesn't disclose the law to either clients or courts:

In a competitive market price is equal to cost and each seller knows his own cost.[1]

*The purpose of legitimate price exchanges* is to eliminate … the ignorance of buyers or sellers concerning *the conditions of supply and demand* – i.e., price dispersion.

With legitimate information exchanges there is no reason to expect the average market price, or price level, to change.

If it does change, that is evidence that the purpose of the exchange of information was not … a legitimate objective – *but rather to raise prices above the competitive level.*[2]

I recently shared simple whistle-blowing applications of the above rules in memos dated 02-23-12, 02-24-12 and 02-27-12. For those who specialize in our field of price law and economics, it is or should be known that these directives have broad application to all businesses. And they specifically apply to hourly price setting. I shared this intelligence with your firm in 2001 – the present, with some small breaks owing to your firm's "censor Bonas order" about it.

In spite of being repeatedly apprized of these rules and its flagrant breaches, the firm: 1) continues in refusing to advance them, in breach of retainer contracts obligating it to do so; & 2) refuses to comply with them in setting retainer and signed fee application prices. For example, the firm has never offered any proof to any client or court that any of its hourly prices are "competitive," i.e., based on costs, which defines the word "competitive."

---

[1] *Antitrust Law, An Economic Perspective*, Ch 7, at 133, 136 (University of Chicago Press, 1976).  
[2] *Information and Antitrust: Reflections on the Engineers and Gypsum Decisions*, 67 Georgetown Law Journal 1187 (1979).

1

Second, I have long understood that firms' suppression of the above rules (and their fact based analysis in price-fixing actions) is the only gateway to firms' huge money business (stock price-fixing). That's why, for example, when your Len Simon and other firms sued Southern California's supermarkets over Milk price fixing (*Barela*) in the early - mid '90s, it concealed the twin facts it secured, yet only I've disclosed - since '01. (See *Barela* firm service list attached).

Like many other players (Bernstein Litowitz), you erected an illegal curtain between your antitrust and your securities price fixing practices. That wall requires the criminal and systematic suppression of corporate price system details, the above and following trade laws:

- You ... determine ... price ... based on ... [cost] .... [3]
- A "*competitive price*" is specifically defined, "competitive ... -- *i.e.*, price will equal cost ...."
- A "*competitive revenue*, like price, is supremely defined, "competitive ... -- *i.e.*, revenue will equal cost ...."[4]

Third, your firms' recent communication confirms that, in house, your circulation of disinformation about our past to present dealings remains. To address this problem, recall that your firm chose to sue me over the above and related materials. The case remains open because you all arranged, among other things, not to sign the one pleading that attempted to close it:

> **Rule 11:** *(a) Signature:* **An unsigned paper shall be stricken** unless omission ... is corrected promptly after being called to the attention of attorney or party.

The unsigned "plea paper" your firm (Lerach) and its counsel (D.A. Buck et al.) refused to sign is attached, again, for the record. I've repeatedly pointed out this conclusive error in spite of **your firm, D.A., the court** and the Bar's disinformation to the contrary. The plea is therefore "struck" or "erased" from the record - there is no plea, no conviction and the case remains active.

Fourth, the above is merely a short clarifying response to these words the firm sent me:

> Mr. Bonas - this is the last time I am going to ask. Stop sending me emails. They are unsolicited and are *considered spam*. Based on your prior dealings *with* this members of *this firm* I will seek whatever legal remedy available.[5]

Your Mr. Collins is either ill-read in spam law or has another motive (liability) for such words.

I look forward to hearing from you so we can windup our past differences and focus our energies on more important matters. Curing the law and economic virus that Wall Street has long infected our economy, courts and academia with is where we should being. Your thoughts?

Your friend,

Gary Joseph Bonas II

See Expatriation below:

---

[3] UCLAs' Dr. Lewis Solmon, under oath at page 1751:6-10.
[4] *U.S. v. Container*, 393 U.S. 333 (1969).
[5] From: ChrisC@rgrdlaw.com, To: boneslaw@live.com; tgibauhaus@att.net, CC: smv0072@gmail.com, Subject: RE: CFTC - FTC (Whistleblowing), Date: Thu, 1 Mar 2012 23:20:30 +0000

2

Gary Joseph Bonas II
25794 Covala Court
Valencia, California 91355

March 22, 2012

Governor Jerry Brown                               Senator Barbara Boxer
c/o Richard Frederick Wolfe - #85346               United States Senate
State Capitol, Suite 1173                          600 B Street, Ste. 2240
Sacramento, CA 95814                               San Diego, CA 92191
Richard.Wolfe@doj.ca.gov                           JJerez@boxerlaw.com

Re:  *Milberg-Robbins et al v. Bonas (Corrective Retraction Request)*

Dear State,

I write about a business matter that I'd appreciate you attending to. In the context of prior briefings, the following summarizes the situation.

## I. The State Has Been On Actual Notice

The County-State has been on actual notice (since 12-30-03) that no plea conviction against Bonas exists.

Absent a signed plea contract conviction, no state actor (Court, Prosecutor, State Troopers, P.O. or Parole operatives) has any power to act under it. The State never opposed Bonas' appeal. It refused to acknowledge formally raised motions on this point. And it refuses to respond or otherwise acknowledge the following conclusive debriefings:

A)  01-09-12 – The State Republic has entered prohibited interstate compacts;
B)  01-11-12 – The State has removed or tampered with material court records;
C)  01-15-12 – The State refuses to acknowledge request to preserve evidence; &
D)  01-20-12 – The State refused to enter the plea contract, but has pretended it did.

## II. A Stricken Plea Is No Plea – Reminder

As a professional reminder, I refer you to a recent U.S. Supreme Court case to aid your understanding of how plea negotiations work:

> *"[T]rading between prosecutor and defense counsel" "is what plea bargaining is."* "It is not some adjunct to the criminal justice system; it is the criminal justice system."[1]

The "attempted" conviction pleading has been operatively stricken from the record. The complaining parties (Milberg/Robbins Geller et al.) intentionally refused to sign it. See Exhibit 1. The controlling rule about this non-court conviction paper plainly instructs:

> **Rule 11:** *(a) Signature: An unsigned paper shall be stricken* unless omission ... is corrected promptly after being called to the attention of attorney or party.[2]

---

[1] *MISSOURI v. FRYE*, __ U.S. __ (Decided March 21, 2012), citing Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1912 (1992).

[2] See CAL. CCP. CODE § 128.7 (The Foreign Domestic Sovereign Republic of California's Twin Power Body of Law).

1

Moreover, due to the County/State's breach of duty to *promptly correct*, the attempted conviction here was and forever remains (by operation of law) officially "stricken" from the record for all purposes. Nothing from any state, appellate (McDonald) court or any other government branch (Federal or state) alters this inconvenient legal reality:

> [I]nstruction comes in *terms of the mandatory "shall,"* which normally creates an obligation impervious to judicial discretion.[3]

### III.   State Defense Counsel's Duty

Just like its public defender's office, the state appellate defender's office has long been on actual notice of the above situation. The current president of this firm is Elizabeth Missakian, whose firm is doing business by contract with the state:

> Appellate Defenders, Inc., is a non-profit law firm which administers the appointed counsel system for the California Court of Appeal … in California. The office operates under a contract with the California Administrative Office of the Courts.[4]
>
> …
>
> As a nonprofit corporation chartered since 1972 under the laws of California, Appellate Defenders, Inc., is governed by a 13-member board of directors. *The board, which also governs Federal Defenders of San Diego, Inc.*, selects and oversees the executive director of each organization. *It meets* approximately monthly to discuss the business of the organizations and the projects of the board as a whole.

The Appellate Defender's, Inc. (like the others) has refused its legal contract duties/responsibilities to take any steps to mitigate the accruing damages resulting from the disinformation/propaganda about the existence of a conviction by plea contract in this case.

The staff in these offices should be well versed in the law of what is and is not "competent assistance of counsel." If not, the high court governing this territory explained:

> [D]efense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.[5]

### IV.   Conclusion

The attached law and economic whistle-blowing materials are provided to assist and "full understanding" of the record here. See attached S.E.C. thank you letter.

It would be appreciated if your office would explain the concerted refusal to deal with this situation.

Sincerely,

Gary Joseph Bonas II

---

[3] *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947).
[4] http://www.adi-sandiego.com/about.html
[5] *MISSOURI v. FRYE*, __ U.S. __ (Decided March 21, 2012).

2

| Defendant | CASE NUMBER: |
|---|---|
| CASH BONAS | SCD151916 0006 |

## PLEA

2. I now plead Guilty/No Contest and admit the charges, convictions and allegations described in paragraph #1, above. I admit that on the dates charged, I: *(Describe facts as to each charge and allegation)*

Stipulate to the preliminary hearing as a factual basis for the plea.  [CB]

13. I declare under penalty of perjury that I have read, understood, and initialed each item above and any attached addendum, and everything on the form and any attached addendum is true and correct.  [CB]

Dated: 12/30/03    Defendant's Signature: *Cash J. Bonas*

Defendant's Address: _____
Street _____
City _____ State _____ Zip _____
Telephone Number: (   ) _____

Defendant's Right Thumb Print

### ATTORNEY'S STATEMENT

I, the attorney for the defendant in the above-entitled case, personally read and explained to the defendant the entire contents of this plea form and any addendum thereto. I discussed all charges and possible defenses with the defendant, and the consequences of this plea, including any immigration consequences. I personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge his/her understanding and waivers. I observed the defendant date and sign this form and any addendum. I concur in the defendant's plea and waiver of constitutional rights.

Dated: 12/30/03    DAVE (Print Name)    Attorney for Defendant (Signature)
(Circle one:  PD / APD / PCC / RETAINED)

### INTERPRETER'S STATEMENT (If Applicable)

I, the sworn _____ language interpreter in this proceeding, truly translated for the defendant the entire contents of this form and any attached addendum. The defendant indicated understanding of the contents of this form and any addendum and then initialed and signed the form and any addendum.

Dated: _____
(Print Name)    Court Interpreter    (Signature)

### PROSECUTOR'S STATEMENT

The People of the State of California, plaintiff, by its attorney, the District Attorney for the County of San Diego, concurs with the defendant's plea of Guilty/No Contest as set forth above.

Dated: _____
(Print Name)    Deputy District Attorney    (Signature)

### COURT'S FINDING AND ORDER

The Court, having questioned the defendant and defendant's attorney concerning the defendant's plea of Guilty/No Contest and admissions of the prior convictions and allegations, if any, finds that: The defendant understands and voluntarily and intelligently waives his/her constitutional rights; the defendant's plea and admissions are freely and voluntarily made; the defendant understands the nature of the charges and the consequences of the plea and admissions; and there is a factual basis for same. The Court accepts the defendant's plea and admissions, and the defendant is convicted thereby.

Dated: 12/30/03    _____
Judge of the Superior Court

SDSC CRM-12(Rev. 11-03)    **PLEA OF GUILTY/NO CONTEST - FELONY**    Page three of three