1

2

3

4

5  IN THE UNITED STATES DISTRICT COURT

6  FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  IN RE: TFT-LCD (FLAT PANEL) ANTITRUST          No. M 07-1827 SI
                                                   MDL No. 1827
9  LITIGATION
                                                   **JURY INSTRUCTIONS**
10  _____/

11  This Order Relates To:

12         Direct-Purchaser Plaintiff Class Actions

13  _____/

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**DUTY OF JURY**

Ladies and gentlemen:  It is my duty to instruct you on the law.  During this trial, you have heard testimony from certain witnesses, and reviewed certain documents in evidence, with reference to what is and what is not lawful or what they considered to be lawful or not lawful.  You are to disregard any such testimony and such documents in applying the law to the facts.  I alone will instruct you as to what is lawful or unlawful conduct.

These instructions are to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout your deliberations.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**PREPONDERANCE OF THE EVIDENCE**

The plaintiffs have the burden of proving their claims by a preponderance of the evidence.  When a party has the burden of proof on any claim  by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

United States District Court
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IDENTIFICATION OF PARTIES AND  CORPORATE EQUALITY

As I said at the outset of this case, the Plaintiffs consist of two classes of purchasers. The first class bought LCD panels directly from Toshiba, one of its alleged co-conspirators, or one of their subsidiaries or affiliates. This class is represented by Texas Digital Systems, Inc., as class representative.

The second plaintiff class, the Finished Products Class, is suing only on behalf of persons and entities in the United States who purchased a television, computer monitor, or notebook computer containing an LCD panel between January 1, 1999 and December 31, 2006. The second class bought these TFT-LCD finished products directly from Toshiba, one of its alleged co-conspirators, or one of their subsidiaries or affiliates. The representatives of this class are CMP Consulting Services, Inc., Crago, Inc., and Home Technologies Bellevue LLC.

The Court appointed these class representatives to present the case on behalf of these classes. So although you did not hear from each individual class member, you did hear the claims of individual class representatives, and any judgment — win or lose — will be binding on the rest of the class members. When I refer to "Plaintiffs" generally in these instructions, I will be referring to both the named plaintiffs and other class members.

The Defendants in this case are the following Toshiba entities: Toshiba Corporation, Toshiba Mobile Display Co., Ltd., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc.  I will refer to them collectively as "Toshiba," unless a specific distinction needs to be made.  Toshiba makes TFT-LCD panels and certain finished products.

Toshiba and most of the Plaintiffs are corporations. A corporation is entitled to the same fair trial as a private individual.  All persons, corporations, partnerships, and other organizations stand equal before the law, and stand equal in this Court.

Therefore, it does not matter that some of the parties are corporations or that some corporations are larger or smaller than others.  You should consider and decide this case as a dispute between those of equal standing.  Each party is entitled to the same fair consideration of the evidence, and a decision from you based on the law as I explain it to you.

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are received into evidence; and

3.      any facts to which the lawyers have agreed.

**WHAT IS NOT EVIDENCE**

As I instructed you in the preliminary instructions, in reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.    (4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you may find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or

4

United States District Court
For the Northern District of California

1    circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

2

3                                **RULING ON OBJECTIONS**

4          There are rules of evidence that control what can be received into evidence.  When a lawyer

5    asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was

6    not permitted by the rules of evidence, that lawyer may have objected.  If I overruled the objection, the

7    question was answered or the exhibit received.  If I sustained the objection, the question could not be

8    answered, and the exhibit could not be received.  Whenever I sustained an objection to a question, you

9    must ignore the question and must not guess what the answer might have been.

10         Sometimes I may have ordered that evidence be stricken from the record and that you disregard

11   or ignore the evidence.  That means that when you are deciding the case, you must not consider the

12   evidence that I told you to disregard.

13

14                              **CREDIBILITY OF WITNESSES**

15         In deciding the facts in this case, you may have to decide which testimony to believe and which

16   testimony not to believe.  You may believe everything a witness said, or part of it, or none of it.  Proof

17   of a fact does not necessarily depend on the number of witnesses who testify about it.

18         In considering the testimony of any witness, you may take into account:

19         (1) the opportunity and ability of the witness to see or hear or know the things testified to;

20         (2) the witness's memory;

21         (3) the witness's manner while testifying;

22         (4) the witness's interest in the outcome of the case and any bias or prejudice;

23         (5) whether other evidence contradicted the witness's testimony;

24         (6) the reasonableness of the witness's testimony in light of all the evidence; and

25         (7) any other factors that bear on believability.

26         The weight of the evidence as to a fact does not necessarily depend on the number of witnesses

27   who testify about it.

28

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### BIAS OF WITNESSES

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party, including a cooperation agreement.

For these reasons, in evaluating the testimony of those witnesses, you should consider the extent to which or whether that testimony may have been influenced by any of these factors.  In addition, you should examine the testimony of those witnesses with greater caution than that of other witnesses.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his testimony with caution, weigh it with care and subject it to close and searching scrutiny.

### INCONSISTENT STATEMENT

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

### USE OF INTERPRETERS IN COURT

Certain individuals called as witnesses in this case did not speak English as their first language. These witnesses may have requested the assistance of an interpreter during their testimony.  You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist

6

that witness or party.

## EXPERT WITNESS

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## CONFLICTING EXPERT TESTIMONY

You have heard testimony of witnesses the parties refer to as experts who have been called by both sides to give their opinion about various issues.

The witnesses who testified in this case did so in order to assist you in reaching a decision on certain issues.  It is your obligation to determine the expertise, if any, of such witnesses and the credibility of such witnesses and the reliability of their opinions.

The testimony of these witnesses is in conflict.  They disagree. You must remember that you are the sole trier of the facts, and where their testimony relates to question of fact, it is your job to resolve the disagreements.

The way you resolve the conflict between these witnesses is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses. In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion and the witness' motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence.  You should not permit a witness' opinion testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness.  The

determination of the facts in this case rests solely with you.

## TESTIMONY BY DR. FLAMM AND DR. HARRIS ABOUT THE SAMSUNG INTERROGATORY RESPONSES

In the testimony you heard from Dr. Flamm and from Dr. Harris, you heard references to Samsung interrogatory responses. These Samsung interrogatory responses were written responses that Samsung provided to questions that Plaintiffs asked under certain court procedures. The Samsung interrogatory responses have not been admitted into evidence. While Dr. Flamm and Dr. Harris were entitled to rely upon those responses in forming their opinions and answering questions, the interrogatory responses were not received in evidence in this trial.

## INFERENCES

During the trial you may have heard the attorneys use the term "inference," and in their arguments they may have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiffs ask you to draw one set of inferences, while Toshiba asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw — but not required to draw — from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

## ELEMENTS OF THE OFFENSE

8

Plaintiffs claim that they were injured because Toshiba and one or more of its competitors conspired to fix the prices for LCD panels.

Under the Sherman Act it is illegal for competitors, regardless of their size or amount of sales, to agree on the prices to be charged for their competing products.

An agreement between competing firms can violate this rule even if there is not an agreement on the exact price to be charged.  For example, it is illegal for competing companies to agree on maximum or minimum prices, a range within which prices will fall, a formula to set prices, or a component of prices, such as a shipping charge or an interest rate.  It is also illegal for competitors to agree on a plan or scheme that will tend to stabilize prices.

Any agreement to fix or stabilize prices is illegal.

To prevail against Toshiba on a price-fixing claim, plaintiffs must prove as to Toshiba  each of the following elements by a preponderance of the evidence:

**First**, that an agreement to fix the prices of LCD panels existed;

**Second**, that Toshiba knowingly – that is, voluntarily and intentionally – became a party to that agreement;

**Third**, that such agreement occurred in or affected interstate, import or foreign commerce.  Any such import commerce must have produced substantial intended effects in the United States; any such foreign commerce must have produced direct, substantial and reasonably foreseeable effects in the United States; and

**Fourth**, that the agreement caused plaintiffs to suffer an injury to its business or property.

If you find the evidence is insufficient to prove any one or more of these elements as to Toshiba, then you must find for Toshiba and against plaintiffs on plaintiffs' price-fixing claim.  If you find that the evidence is sufficient to prove all four elements as to Toshiba, then you must find for plaintiffs and against Toshiba on plaintiff's price-fixing claim.

**CONTRACT, COMBINATION OR CONSPIRACY**

The plaintiffs allege that Toshiba participated in a conspiracy to restrain trade by fixing the prices of LCD panels.  A conspiracy is an agreement by two or more persons to accomplish some unlawful purpose or to accomplish a lawful purpose by unlawful means.

The plaintiffs must prove both of the following elements by a preponderance of the evidence:

**First**, that the alleged conspiracy existed; and

**Second**, that Toshiba knowingly became a member of that conspiracy; knowingly means voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

A conspiracy is a kind of "partnership" in which each person found to be a member of the conspiracy is liable for all acts and statements of the other members made during the existence of and in furtherance of the conspiracy.  To create such a relationship, two or more persons must enter into an agreement that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means.

To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which they would accomplish their purpose.  The agreement itself may have been entirely unspoken.  What the evidence must show to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement to accomplish a common purpose.  It is the agreement to act together that constitutes the conspiracy. Whether the agreement succeeds or fails does not matter.

A conspiracy may vary in its membership from time to time.  It may be formed without all parties coming to an agreement at the same time, such as where competitors, without previous agreement, separately accept invitations to participate in a plan to restrain trade.  The agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose.  It is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.

United States District Court
For the Northern District of California

Direct proof of an agreement may not be available. A conspiracy may be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons were acting independently. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

It is not necessary that the evidence show that all of the means or methods claimed by the plaintiffs were agreed upon to carry out the alleged conspiracy; nor that all of the means or methods that were agreed upon were actually used or put into operation; nor that all the persons alleged to be members of the conspiracy actually were members. What the evidence must show is that the alleged conspiracy of two or more persons existed, that one or more of the means or methods alleged was used to carry out its purpose, and that Toshiba knowingly became a member of the conspiracy.

In determining whether an agreement has been proved, you must view the evidence as a whole and not piecemeal. In considering the evidence, you first should determine whether or not the alleged conspiracy existed. If you conclude that the conspiracy did exist, you should next determine whether Toshiba knowingly became a member of that conspiracy with the intent to further its purposes.

## HORIZONTAL PRICE FIXING — EVIDENCE OF SIMILARITY

Evidence that Toshiba may have charged identical prices as its competitors for the same goods, or engaged in identical or similar business practices, does not alone establish an agreement to fix prices because such practices may be consistent with lawful, ordinary and proper competitive behavior in a free and open market.

The Sherman Act prohibits agreements between two or more competitors to fix prices. It does not prohibit independent behavior even if such behavior is similar or identical to that of competitors.

A defendant may lawfully charge prices identical to those charged by its competitors and not violate the Sherman Act. A defendant may even copy the prices of a competitor or follow and conform exactly to the price policies and price changes of its competitors. Likewise, a defendant does not violate the Sherman Act by taking some action in the hope or expectation that its competitors will follow, so long as it has not reached an agreement with its competitors. Parallel conduct, without more, does not violate the law.

Nevertheless, you may consider such facts and circumstances, along with all the other evidence, in determining whether any similarity or identity of prices resulted from the independent business judgment of Toshiba freely competing in the open market, or whether it resulted from an agreement between Toshiba and one or more of its alleged co-conspirators.

## PARTICIPATION AND INTENT

Before you can find that Toshiba was a member of the conspiracy alleged by plaintiffs, the evidence must show that Toshiba knowingly joined in the unlawful plan at its inception or at some later time with the intent to advance or further some object or purpose of the conspiracy.

To act knowingly means to act voluntarily and intentionally, and not because of mistake or accident or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he had been one of those who formed or began the conspiracy and participated in every part of it.

The membership of a defendant in a conspiracy must be based only on evidence of its own statements or conduct. In determining whether Toshiba was a member of the alleged conspiracy, you

should consider only the evidence of Toshiba's statements and conduct, including any evidence of Toshiba's knowledge or lack of knowledge, status, and participation in the events involved, and any other evidence of participation in the conspiracy alleged.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy. But actions or statements of any conspirator that were not done or made in furtherance of the conspiracy, or that were done or made before its existence or after its termination, may be considered as evidence only against the person who made them.

Once a person is found by you to be a member of a conspiracy, he or she is presumed to remain a member and is responsible for all actions taken by all conspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned or that the person has withdrawn from the conspiracy.

Although a defendant who was a member of a conspiracy may withdraw from and abandon the conspiracy, that defendant is still liable with all other co-conspirators for the illegal acts, if any, committed by that defendant or by any co-conspirator while the defendant was a member of the conspiracy up until the time of the defendant's withdrawal.

### IMPORT COMMERCE — INTENT; SUBSTANTIAL EFFECT

U.S. antitrust law applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States.

To show that foreign conduct was meant to produce some substantial effect, the plaintiffs must establish by a preponderance of the evidence that Toshiba knowingly entered into an express or tacit agreement intending to produce a substantial effect in the United States.

The plaintiffs must also meet their burden of proving that the alleged agreement between Toshiba and the alleged co-conspirators in fact produced a "substantial" effect on the U.S. market.  A

substantial effect in the United States cannot simply be assumed. Nor can a substantial effect in the United States be assumed to continue because it once existed. The plaintiffs must prove that the substantial effect requirement is met at the relevant time.

### GOOD INTENT NOT A DEFENSE

If you find that Toshiba engaged in a price-fixing conspiracy, it is not a defense that Toshiba acted with good motives or thought its conduct was legal, or that the conduct may have had some good results.

### HORIZONTAL PRICE FIXING—
### EVIDENCE OF EXCHANGE OF PRICE INFORMATION

Evidence has been introduced concerning the exchange of information among Toshiba and certain LCD suppliers about their prices for LCD panels. Plaintiffs claim that such exchanges are part of the evidence establishing an agreement to fix prices.

The fact that Toshiba exchanged price information does not necessarily establish an agreement to fix prices. There may be other legitimate reasons that would lead competitors to exchange price information, and the law recognizes that exchanges of price information may enhance competition and benefit consumers. On the other hand, if you find that price information was exchanged and that Toshiba does not offer a reasonable explanation as to why it was exchanging that information, you may consider whether it was being exchanged as part of an agreement to fix prices, along with all of the other evidence bearing on whether there was an agreement to fix prices.

United States District Court
For the Northern District of California

## CONSPIRACY – BUY/SELL TRANSACTIONS BETWEEN COMPETITORS ARE NOT PRICE FIXING

It is lawful for buyers of goods or services to discuss and decide on prices of those goods or services with the sellers of the goods or services, even if the buyers and sellers are otherwise competitors.

## PREVIOUS GUILTY PLEA INSTRUCTION

During the trial, I read to you an instruction agreed to by the Plaintiffs and Toshiba, describing for you the specific guilty pleas/criminal convictions of executives and companies other than Toshiba. I told you that along with these final instructions you would be provided with a copy of that instruction. I will not read it aloud again, but it is included here in these instructions at pages 15-20.

## STIPULATION RE: GUILTY PLEAS

The parties have stipulated that certain LCD suppliers – but not Toshiba – were convicted of violating the U.S. antitrust laws.  And, therefore, I instruct you that:

1. Chunghwa Picture Tubes, Ltd. pled guilty to "participating in a conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ('TFT-LCD') sold in the United States and elsewhere, from on or about September 14, 2001, to on or about December 1, 2006, in violation of the [U.S. antitrust laws]."  Chunghwa Plea at ¶2 (Ex. (0573).  "In furtherance of the conspiracy, [Chunghwa], through its officers and employees, engaged in discussions and attended meetings, including group meetings commonly referred to by the participants as 'crystal meetings,' with representatives of other major TFT-LCD producers.  During these discussions and meetings, agreements were reached to fix the price of TFT-LCD to be sold in the United States and elsewhere."  Chunghwa Plea at ¶4(c) (Ex. 0573).  Chunghwa employees Chieng-Hon "Frank" Lin, Hsueh-Lung "Brian" Lee, and Chih-Chun "C.C." Liu also pled guilty.  Mr. Lin was sentenced to 270 days in prison; Mr. Lee was sentenced to 180 days in prison; and Mr. Liu was sentenced to 210 days

in prison.

2. Chi Mei Optoelectronics Corporation pled guilty to "participating in a conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ('TFT-LCD') sold in the United States and elsewhere, from on or about September 14, 2001, to on or about December 1, 2006, in violation of the [U.S antitrust laws]." Chi Mei Plea at ¶2 (Ex. 0552). "In furtherance of the conspiracy, [Chi Mei], through its officers and employees, engaged in discussions and attended meetings, including group meetings referred to by some of the participants as 'crystal meetings,' with representatives of other major TFT-LCD producers. During these discussions and meetings, agreements were reached to fix the price of certain TFT-LCD to be sold in the United States and elsewhere." Chi Mei Plea at ¶4(c) (Ex. 0552). Chi Mei employees Chu-Hsiang "James" Yang, Jau-Yang "J.Y." Ho, Wen-Hung "Amigo" Huang, and Chen-Lung Kuo also pled guilty. Mr. Yang was sentenced to 270 days in prison; Mr. Ho was sentenced to fourteen months in prison; Mr. Huang was sentenced to 270 days in prison; and Mr. Kuo was sentenced to 270 days in prison.

3. HannStar Display Corporation pled guilty to "participating in a conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ('TFT-LCD') sold in the United States and elsewhere, from on or about September 14, 2001, to on or about January 31, 2006, in violation of the [U.S. antitrust laws]." HannStar Plea at ¶2 (Ex. 0554). "In furtherance of the conspiracy, [HannStar], through its officers and employees, engaged in discussions and attended meetings, including group meetings referred to by some of the participants as 'crystal meetings,' with representatives of other TFT-LCD producers. During these discussions and meetings, agreements were reached to fix the price of certain TFT-LCD to be sold in the United States and elsewhere." HannStar Plea at ¶4(c) (Ex. 0554). Jui-Hung "Sam" Wu of HannStar also pled guilty. Mr. Wu was sentenced to 210 days in prison.

4. LG Display Co., Ltd. (f/k/a LG. Philips LCD Co., Ltd.), and LG Display America, Inc. (f/k/a LG.Philips LCD America, Inc.) pled guilty to "participating in a conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ('TFT-LCD') sold in the United States and elsewhere, from on or about September 21, 2001, to on or about June 1, 2006,

United States District Court
For the Northern District of California

in violation of the [U.S. antitrust laws]." LG Plea at ¶2 (Ex. 0569). "In furtherance of the conspiracy, [LG Display], through their officers and employees, engaged in discussions and attended meetings, including group meetings commonly referred to by the participants as 'crystal meetings,' with representatives of other major TFT-LCD producers. During these discussions and meetings, agreements were reached to fix the price of TFT-LCD to be sold in the United States and elsewhere." LG Plea at ¶4(c) (Ex. 0569). LG Display employees Chang Suk Chung and Bock Kwon also pled guilty. Mr. Chung was sentenced to seven months in prison, and Mr. Kwon was sentenced to twelve months and one day in prison.

5. A Federal Grand Jury indicted AU Optronics, AU Optronics Corporation America ("AUO") and certain of their employees for entering into and engaging in a "combination and conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ('TFT-LCD') in the United States and elsewhere . . . in violation [] of the [U.S. antitrust laws]." Superseding Indictment at ¶2, 09-CR-00110-SI, ECF No. 8 (June 10, 2010). "The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among [AUO] and other coconspirators, the substantial terms of which were to agree to fix the prices of TFT-LCDs for use in notebook computers, desktop computer monitors, and televisions in the United States and elsewhere." Superseding Indictment at ¶3, 09-CR-00110-SI, ECF No. 8 (June 10, 2010). "For the purpose of forming and carrying out the charged combination and conspiracy, [AUO] and other coconspirators did those things that they combined and conspired to do, including, among other things" attending "Crystal Meetings" in Taiwan approximately once a month with Taiwanese and Korean LCD suppliers for the purpose of fixing the price of TFT-LCD panels. Superseding Indictment at ¶¶17(a)-(l), 09-CR-00110-SI, ECF No. 8 (June 10, 2010). "During the period covered by [the] Indictment, participants in the Crystal Meetings regularly exchanged production, shipping, supply, demand, and pricing information with each other at the meetings for the purpose of agreeing to fix the price of TFT-LCD, as well as implementing, monitoring, and enforcing adherence to the fixed prices. Up until 2003, the participants in the Crystal Meetings reached price agreements on certain sized TFT-LCD used in computer notebooks and monitors. Beginning in 2003, the price agreements reached at the Crystal

United States District Court
For the Northern District of California

Meetings also included certain sized TFT-LCD used in flat-screen televisions." Superseding Indictment at ¶17(e), 09-CR-00110-SI, ECF No. 8 (June 10, 2010). A jury found AU Optronics and AU Optronics Corporation America guilty of violating the U.S. antitrust laws as alleged in the Indictment. AUO Special Verdict Form at 1 (Ex. 0551). AUO employees Hsuan Bin "H.B." Chen and Hui Hsiung were also found guilty and are awaiting sentencing. AUO Special Verdict Form at 2 (Ex. 0551). AUO employees Lai-Juh "L.J." Chen and Tsannrong "Hubert" Lee were found not guilty. AUO Special Verdict Form at 2 (Ex. 0551). And the jury was unable to reach a verdict for AUO employee Shiu Lung "Steven" Leung. AUO Special Verdict Form at 2 (Ex. 0551).

6. Sharp Corporation pled guilty to three separate counts of violating the U.S. antitrust laws by: (1) "participating in a conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ('TFT-LCD') sold to Dell, Inc. ('Dell') for use in computer monitors and laptops, from on or about April 1, 2001 to on or about December 1, 2006;" (2) "participating in a conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold to Apple Computer, Inc. ('Apple') for use in iPod portable music players, from on or about September 1, 2005 to on or about December 1, 2006;" and (3) "participating in a conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold to Motorola, Inc. ('Motorola') for use in Razr mobile phones, from the fall of 2005 to the middle of 2006." Sharp Plea ¶2 (Ex. 0556). In furtherance of the three counts, "[Sharp], through its officers and employees, engaged in bilateral telephone discussions and attended bilateral meetings with representatives of other major TFT-LCD producers. During these discussions and meetings, agreements were reached to fix the price of TFT-LCD sold to" Dell, Apple, and Motorola. Sharp Plea ¶¶4(c)-4(e) (Ex. 0556). "The business activities of [Sharp] and its coconspirators in connection with the production and sale of TFT-LCD affected by this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce." Sharp Plea ¶4(f) (Ex. 0556). No employee of Sharp pled guilty or was convicted.

7. Hitachi Display Ltd. pled guilty to "participating in a conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ('TFT-LCD') sold to Dell Inc., or its subsidiaries ('Dell') for use in desktop monitors and notebook computers, from on

**United States District Court**
For the Northern District of California

or about April 1, 2001 to on or about March 31, 2004, in violation of the [U.S. antitrust laws]." Hitachi Plea at ¶2 (Ex. 0555). "In furtherance of the conspiracy, [Hitachi], through its officers and employees, engaged in telephone discussions and attended bilateral meetings with representatives of other major TFT-LCD producers. During these discussions and meetings, agreements were reached to fix the price of TFT-LCD sold to Dell for use in notebook computers." Hitachi Plea at ¶4(c) (Ex. 0555). "The business activities of [Hitachi] and its coconspirators in connection with the production and sale of TFT-LCD affected by this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce." Hitachi Plea at ¶4(d) (Ex. 0555). No employee of Hitachi pled guilty or was convicted, although one employee—Sakae Someya—was indicted for joining and participating in the same Dell conspiracy and has not yet appeared.

8. Epson Imaging Devices Corporation pled guilty to "participating in a conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ('TFT-LCD') sold to Motorola, Inc. ('Motorola') for use in Razr mobile phones, from the fall of 2005 to the middle of 2006, in violation of the [U.S. antitrust laws]." Epson Plea at ¶2 (Ex. 0553). "During the relevant period, [Epson] was a producer of TFT-LCD, [and] was engaged in the sale of small-sized TFT-LCD in the United States and elsewhere[.]" Epson Plea at ¶4(a) (Ex. 0553). In furtherance of the violation, "[Epson], through its officers and employees, engaged in bilateral telephone discussions and attended bilateral meetings in Japan with representatives of other major TFT-LCD producers. During these discussions and meetings, agreements were reached to fix the price of TFT-LCD sold to Motorola for use in Razr mobile phones." Epson Plea at ¶4(c) (Ex. 0553). During the relevant time period, the business activities of Epson "and its coconspirators in connection with the production and sale of TFT-LCD that were the subjects of the conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce." Epson Plea at ¶4(d) (Ex. 0553). No employee of Epson pled guilty or was convicted.

9. All of the LCD suppliers that pled guilty to violating the U.S. antitrust laws agreed to cooperate fully and truthfully with DOJ prosecutors by producing all non-privileged documents, making certain employees available for interviews, and making certain employees available to testify in grand

jury, trial and any other judicial proceedings.  The individuals that pled guilty—Mr. Lin, Mr. Lee, Mr. Liu, Mr. Yang, Mr. Ho, Mr. Huang, Mr. Kuo, Mr. Wu, Mr. Chung, and Mr. Kwon—also agreed to cooperate with DOJ prosecutors by producing all non-privileged documents, traveling to the United States for interviews with DOJ, and traveling to the United States to testify in grand jury, trial, and other judicial proceedings.

10. Neither Samsung nor any of its employees was indicted or convicted of violating the U.S. antitrust laws.  In January 2006, Samsung applied for and was granted amnesty for itself and its employees under DOJ's Corporate Leniency Program.  In doing so, Samsung admitted to violating the U.S. antitrust laws and agreed to cooperation obligations with DOJ's investigation of the LCD industry similar to those agreed to by the entities and persons who pled guilty.

11. In providing this instruction to you, I did not preclude the parties from offering further evidence on these subjects.

## SETTLEMENT AGREEMENTS OF SETTLING DEFENDANTS

Certain LCD suppliers — who were formerly defendants in this matter — reached settlements with the Direct Purchaser Plaintiffs prior to trial.  Those settlement agreements generally require the settling defendants to cooperate with Plaintiffs in pursuing Plaintiffs' claims against Toshiba.  The fact of the existence of these settlement agreements should not influence your consideration of this case, but you may consider the cooperation obligations in evaluating the bias and credibility of witnesses associated with the settling defendants.

## OPT-OUT CLASS MEMBERS

Certain companies have chosen not to pursue claims in this case and have "opted out" of the two Plaintiff classes.  These companies are sometimes referred to as "opt outs."  If a class member chooses to "opt out," that class member's claim is excluded from the litigation.

During the course of this trial, you have heard Plaintiffs and Toshiba mention that certain companies have "opted out" of the two Plaintiff classes. For example, companies like Dell, Apple, HP, IBM, and Motorola have all "opted out" of this litigation. You should not speculate on their absence from this case, and the Plaintiffs do not seek damages for sales made to "opt-out" firms.

The companies that have "opted out" of this litigation are free to bring their own separate lawsuits if they wish, and some of them have done so, including but not limited to Dell, HP, and Motorola. These other lawsuits are not before you, and the existence of these lawsuits should also not influence your consideration of this case.

**WITNESSES WHO DID NOT TESTIFY AT TRIAL**

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify. Plaintiffs sought to have former Sharp employees Kazuyoshi Nakayama and Shigeo Nakabu, former Hitachi employee Sakae Someya, and former Toshiba employee Christina Caperton testify at trial. Each of these individuals declined to provide testimony. Plaintiffs also sought to have LG Display employee Chan Han Kim testify, but were unable to bring him to trial.

Toshiba sought to bring the following individuals to trial: (1) former Toshiba employee, Christina Caperton, (2) Dell employees, Sarah Zu, Michael Blood, Meng Chun Tan, Piyush Bhargava, and Shutan Lillie; (3) Motorola employee, Angela Ford; (4) CPT employees, C.M. Kuan and C.C. Liu; (5) LG employee, Stanley Park; (6) Chi Mei employee, J.Y. Ho; and (7) AUO employee Michael Wong. Each of these individuals declined to provide testimony.

**CONSPIRACY— CORPORATIONS**

A corporation is a person, but it acts only through its agents. A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents or with its unincorporated divisions or its wholly-owned subsidiaries.

**United States District Court**
For the Northern District of California

Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and the statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that outsiders could reasonably believe the agent would have, judging from his position with the company, the responsibilities previously entrusted to him or his office, and the circumstances surrounding his past conduct.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his employment with apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

### SHERMAN ACT -- ANTITRUST INJURY

If you find that Toshiba has violated Section 1 of the Sherman Act as alleged by Plaintiffs, then you must decide if Plaintiffs are entitled to recover damages from Toshiba.

Plaintiffs are entitled to recover damages for injuries to their business or property if they can establish three elements of injury and causation:

*First*, that the Plaintiff classes were in fact injured as a result of Toshiba's alleged violation of the antitrust laws;

*Second*, that Toshiba's alleged illegal conduct was a material cause of Plaintiffs' injuries; and

*Third*, that Plaintiffs' injuries are injuries of the type that the antitrust laws were intended to

United States District Court
For the Northern District of California

1   prevent.

2       The first element is sometimes referred to as "injury in fact," or "fact of damage." For Plaintiffs

3   to establish that they are entitled to recover damages, they must prove that the Plaintiff classes were

4   injured as a result of Toshiba's alleged violation of the antitrust laws.   Proving the fact of damage does

5   not require Plaintiffs to prove the dollar value of the injury.  It requires only that they prove that they

6   were in fact injured by Toshiba's alleged antitrust violation.  If you find that Plaintiffs have established

7   that they were in fact injured, you may then consider the amount of their damages.  It is important to

8   understand, however, that injury and amount of damage are different concepts and that you cannot

9   consider the amount of damage unless and until you have concluded that Plaintiffs have established that

10  they were in fact injured.

11

12      As to the second element, Plaintiffs must also offer evidence that establishes as a matter of fact

13  and with a fair degree of certainty that Toshiba's alleged illegal conduct was a material cause of their

14  injuries. This means that Plaintiffs must prove that some damage occurred to them as a result of

15  Toshiba's alleged antitrust violation, and not some other cause.  Plaintiffs are not required to prove that

16  Toshiba's alleged antitrust violation was the sole cause of their injuries; nor do Plaintiffs need to

17  eliminate all other possible causes of injury.  It is enough if Plaintiffs have proved that the alleged

18  antitrust violation was a material cause of their injuries.  However, if you find that Plaintiffs' injuries

19  were caused primarily by something other than the alleged antitrust violation, then you must find that

20  Plaintiffs have failed to prove that they are entitled to recover damages.

21      To prove the final element, Plaintiffs must establish that their injuries are the type of injuries

22  that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If

23  Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in

24  competition, or acts that would otherwise harm consumers, then Plaintiffs' injuries are antitrust injuries.

25  On the other hand, if Plaintiffs' injuries were caused by heightened competition, the competitive process

26  itself, or by acts that would benefit consumers, then Plaintiffs' injuries are not antitrust injuries and

27  Plaintiffs may not recover damages for those injuries under the antitrust laws.  You should bear in mind

28  that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or

protect against -- such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit -- and the antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

If Plaintiffs can establish that they were in fact injured by Toshiba's conduct, that Toshiba's allegedly illegal conduct was a material cause of Plaintiffs' injuries, and that their injuries were the type that the antitrust laws were intended to prevent, then Plaintiffs are entitled to recover damages for their injuries to their business or property.

### DAMAGES — EFFECT OF INSTRUCTION AS TO DAMAGES

I am now going to instruct you on the issue of damages. The fact that I am giving you instructions concerning the issue of Plaintiffs' damages does not mean that I believe the Plaintiffs should, or should not, prevail in this case.

If, for any reason, you reach a verdict for Toshiba on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give. Instructions as to the measure of damages are given for your guidance in the event you should find in favor of Plaintiffs, based on a preponderance of the evidence in accordance with the other instructions I have given you regarding the existence of conspiracy, Toshiba's knowingly joining that conspiracy, injury in fact, substantial effect, and causation. You should only consider calculating damages if you first find that Toshiba violated the antitrust laws and that this violation caused injury to Plaintiffs.

### DAMAGES – ANTITRUST DAMAGES – INTRODUCTION AND PURPOSE

If you find that Toshiba violated the antitrust laws and that this violation caused injury to the Plaintiff classes, then you must determine the amount of damages for all such Plaintiffs. The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that

were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer — what we sometimes refer to as punitive damages — or to deter defendant from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation. You are also not permitted to award to Plaintiffs an amount for attorneys' fees or the costs of maintaining this lawsuit. Antitrust damages are compensatory only. In other words, they are designed to compensate Plaintiffs for the particular injuries they suffered as a result of the alleged violation of the law.

Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages. If the amount of damages attributable to the alleged antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

It may be difficult for you to determine the precise amount of damage suffered by the plaintiff. If Plaintiffs establish with reasonable probability the existence of an injury proximately caused by Toshiba's antitrust violation, you are permitted to make a just and reasonable estimate of the damages. So long as there is a reasonable basis in the evidence for a damages award, Plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty. The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates. Plaintiff must prove the reasonableness of each of the assumptions upon which the damages calculation is based. If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then your verdict must be for Toshiba. If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

Plaintiffs are seeking to recover damages on behalf of two classes of purchasers that includes

persons in the United States who purchased either (1) a TFT-LCD panel, or (2) a television, computer monitor or notebook computer containing a TFT-LCD panel directly from Toshiba or certain TFT-LCD suppliers between January 1, 1999 and December 31, 2006.   To award damages for the classes, you need not determine the overcharge paid by each class member with precision.  It is sufficient for you to determine the average overcharge paid by class members or estimate the overcharge paid by class members, as long as the average or estimate is based on evidence and reasonable inferences.  You may not, however, engage in guesswork or speculation.  If damages can only be ascertained through guesswork or speculation, you may not award damages.

Plaintiffs claim that the class members were harmed because they paid higher prices for the TFT-LCD panels, or the televisions, computer monitors or notebook computers containing them, than they would have paid in the absence of the alleged price-fixing conspiracy.  A proper method of calculating such damages is to award the difference between the prices actually paid for these products and the prices which would have been paid in the absence of the agreement to fix prices.

## DAMAGES – JOINT CONSPIRATOR LIABILITY

Each participant in a conspiracy which violates the antitrust laws is "jointly and severally" liable for all the damages resulting from the conspiracy.  This means that each conspirator is fully liable for all of the damages caused by acts of any other member of the conspiracy done pursuant to, or in furtherance of, the conspiracy during the time it was a member.

If you find that Toshiba participated in the conspiracy alleged by Plaintiffs and that Plaintiffs are entitled to damages based on the other instructions in this case, then Toshiba is liable for all damages caused by the conspiracy during the time it was a member, including all overcharges on purchases of TFT-LCD panels and TFT-LCD finished products that are part of the claims here made by plaintiff classes from all conspirators, not just the overcharges on purchased from Toshiba.

## NOMINAL DAMAGES

26

The law which applies to this case authorizes an award of nominal damages. If you find for the Plaintiffs but you find that the Plaintiffs have failed to prove damages as defined in these instructions, you must award nominal damages.  Nominal damages may not exceed one dollar.

**United States District Court**
For the Northern District of California

1

2
**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding

3
juror.  That person will preside over the deliberations and speak for you here in court.

4

5
You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your

6
verdict must be unanimous.

7
Each of you must decide the case for yourself, but you should do so only after you have

8
considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your

9
fellow jurors.

10
Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not

11
come to a decision simply because other jurors think it is right.

12
It is important that you attempt to reach a unanimous verdict but, of course, only if each of you

13
can do so after having made your own conscientious decision.  Do not change an honest belief about

14
the weight and effect of the evidence simply to reach a verdict.

15

16

17
**CONDUCT OF THE JURY**

18
I will now say a few words about your conduct as jurors.

19
First, do not decide what the verdict should be until you and your fellow jurors have completed

20
your deliberations.

21
Second, because you must decide this case based only on the evidence received in the case and

22
on my instructions as to the law that applies, you must not be exposed to any other information about

23
the case or to the issues it involves while you deliberate.  Thus, until the end of the case or unless I tell

24
you otherwise:

25

26
Do not communicate with anyone in any way and do not let anyone else communicate with you

27
in any way about the merits of the case or anything to do with it.  This includes discussing the case in

28
person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room,

United States District Court
For the Northern District of California

blog, Web site or other feature.  You may not "blog," "tweet," or use Facebook or any other social networking site to communicate anything to do with the case or your jury service.  This applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial.  In the jury room, you are not to use your cellphones at recesses or lunch to call anyone to ask questions about the case.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you have received all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, "Googling" any party or lawyer or court personnel, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**TAKING NOTES**

You may have taken notes to help you remember the evidence.  Whether or not you have taken notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note

through Tracy, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.