CHRISTOPHER A. NEDEAU (CA SBN 81297)
CARL L. BLUMENSTEIN (CA SBN 124158)
SALEZKA L. AGUIRRE (CA SBN 260956)
NOSSAMAN LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:  415.398.3600
Facsimile:  415.398.2438
Email: cnedeau@nossaman.com
        cblumenstein@nossaman.com
        saguirre@nossaman.com

Attorneys for Defendants
AU OPTRONICS CORPORATION and
AU OPTRONICS CORPORATION AMERICA

[additional defendants on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. 3:07-md-1827 SI |
| This Document Relates to: Individual Case Nos. 3:10-cv-4572 SI; 10-cv-4945 SI; 09-cv-4997 SI; 3:11-cv-00058-SI; 3:10-cv-05452-SI; 3:10-cv-0017-SI | Individual Case Nos. 3:10-cv-4572 SI; 10-cv-4945 SI; 09-cv-4997 SI; 3:11-cv-00058-SI; 3:10-cv-05452-SI; 3:10-cv-0017-SI |
| BEST BUY CO., INC., ET AL., | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT FOR LACK OF ANTITRUST INJURY AND LACK OF ANTITRUST STANDING AS TO CLAIMS INVOLVING MOBILE PHONES AND DIGITAL STILL CAMERAS** |
| Plaintiffs, | |
| v. | |
| AU OPTRONICS CORPORATION, ET AL., | |
| Defendants. | Date:  September 7, 2012 |
| | Time:  9:00 a.m. |
| | Place:  Courtroom 10, 19th Floor |
| | Hon. Susan Illston |
| TARGET CORP., ET AL., | |
| Plaintiffs, | **FILED UNDER SEAL** |
| v. | **REDACTED VERSION** |
| AU OPTRONICS CORPORATION, ET AL., | |
| Defendants. | |

AT&T MOBILITY LLC, ET AL.,

                Plaintiffs,

    v.

AU OPTRONICS CORPORATION, ET AL.,

                Defendants.

EASTMAN KODAK CO.,

                Plaintiff,

    v.

EPSON IMAGING DEVICES CORP., ET AL.,

                Defendants.

COSTCO WHOLESALE CORP.,

                Plaintiff,

    v.

AU OPTRONICS CORPORATION, ET AL.,

                Defendants.

ELECTROGRAPH SYSTEMS, INC.;
ELECTROGRAPH TECHNOLOGIES
CORP.,

                Plaintiffs,

    v.

EPSON IMAGING DEVICES
CORPORATION, ET AL.,

                Defendants.

## FILED UNDER SEAL - REDACTED VERSION

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that on September 7, 2012, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10, 19th Floor, San Francisco, California, before the Honorable Susan Illston, the undersigned Defendants ("Defendants") will and hereby do move for summary judgment and partial summary judgment under Federal Rule of Civil Procedure 56 because there is no genuine dispute that Plaintiffs lack antitrust injury and antitrust standing, both of which are necessary to pursue claims based on their purchases of mobile phones and digital still cameras. Because Plaintiffs do not participate in markets in which the alleged collusion occurred (the markets for LCD panels), and because Plaintiffs' alleged injuries are indirect and speculative, any apportionment of damages would be complex, and there is a great risk of duplicative recovery, these claims should be dismissed with prejudice.

Defendants seek an order granting summary judgment in their favor on all of Plaintiffs' claims for mobile phone and digital still camera purchases under federal law and the antitrust laws of Arizona, California, Illinois, Iowa, Kansas, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, Tennessee, Washington, and Wisconsin. This motion is based on this Notice of Motion; the following Memorandum of Points and Authorities; the accompanying Declaration of Salezka L. Aguirre; the files in these actions; argument of counsel; and such other matters as the Court may consider. In addition, this motion incorporates by reference all arguments made in Defendants' Motion for Summary Judgment Against Indirect Purchaser Plaintiffs in 14 States, 3:07-md-1827 SI, MDL Dkt. No. 3447, Sept. 6, 2011, and Defendants' Reply in Support of Motion for Summary Judgment Against Indirect Purchaser Plaintiffs in 14 States, 3:07-md-1827 SI, MDL Dkt. No. 3978, Oct. 21, 2011.

# TABLE OF CONTENTS

Page

I.     ISSUES PRESENTED ........................................................................................... 3

II.    PRIOR ORDERS ................................................................................................. 4

III.   FACTUAL BACKGROUND ................................................................................ 4

IV.    ARGUMENT ...................................................................................................... 7

    A.     Summary Judgment Should Be Granted If Plaintiffs Cannot Prove
          Antitrust Injury And Antitrust Standing ........................................................ 7

    B.     Plaintiffs Cannot Prove That They Suffered Antitrust Injury ....................... 8

          1.     Plaintiffs Are Unable To Prove That They Participated In Markets
                For LCD Panels ................................................................................ 8

          2.     Plaintiffs' Alleged Injuries Are Not Inextricably Intertwined With
                Those Of Market Participants. ........................................................ 13

    C.     Plaintiffs Cannot Prove That They Have Antitrust Standing For Claims
          Based On DSC And Mobile Phone Purchases ........................................... 17

          1.     Plaintiffs' Alleged Injuries Are Indirect. ...................................... 18

          2.     The Measure Of Harm Suffered By Plaintiffs Is Speculative. ........ 19

          3.     Plaintiffs' Claims Present A Risk Of Duplicative Recovery That
                Cannot Be Resolved Through Apportionment Of Damages. .......... 20

          4.     Plaintiffs Lack Antitrust Standing Under The Laws Of States That
                Follow The *AGC* Approach. ......................................................... 21

V.     CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Ad Mgmt. v. Gen. Tel. Co. of Cal.,*
    190 F.3d 1051 (9th Cir. 1999) ................................................................................................. *passim*

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)........................................................................................................................ 7

*Ass'n of Wash. Pub. Hosp. Dist. v. Philip Morris Inc.,*
    241 F.3d 696 (9th Cir. 2001) ...................................................................................................... 22

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
    459 U.S. 519 (1983)............................................................................................................... *passim*

*AT&T Mobility v. AU Optronics Corporation,*
    Case No 09-CV-4997.................................................................................................................... 3

*Axis, S.p.A. v. Micafil, Inc.,*
    870 F.2d 1105 (6th Cir. 1989) ................................................................................................... 17

*Blue Shield of Va., Inc. v. McCready,*
    57 U.S. 465 (1982).......................................................................................................................... 2

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1997) ............................................................................................................... 1, 7, 8

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)....................................................................................................................... 7

*Cole v. Champion Enters.,*
    496 F. Supp. 2d 613 (M.D.N.C. 2007) ....................................................................................... 8

*Crouch v. Crompton Corp.,*
    Nos. 02-cvs-4375, 03-cvs-2514, 2004 WL 2414027 (N.C. Super. Ct. Oct. 28, 2004).................... 12

*Datagate, Inc. v. Hewlett-Packard Co.,*
    941 F.2d 864 (9th Cir. 1991) ....................................................................................................... 3

*Datel Holdings, Ltd. v. Microsoft Corp.,*
    712 F. Supp. 2d 974 (N.D. Cal. 2010) ................................................................................ 13, 15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ............................................................................. *passim*

*First Med. Representatives, LLC v. Futura Med. Corp.,*
    195 F. Supp. 2d 917 (E.D. Mich. 2002) ..................................................................................... 8

*In re Flash Memory Antitrust Litig.,*
    No. 07-cv-00086-SBA ................................................................................................................ 16

*G.K.A. Beverage Corp. v. Honickman,*
    55 F.3d 762 (2d Cir. 1995) ........................................................................................................ 23

*Ghem, Inc. v. Mapco Petroleum, Inc.,*
    850 S.W.2d 447 (Tenn. 1993)..................................................................................................... 8

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
   352 F.3d 367 (9th Cir. 2003) ............................................................................ 8

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......................................................... 17

*Hairston v. Pac. 10 Conference*,
   101 F.3d 1315 (9th Cir. 1996) ........................................................................... 7

*IGT v. Alliance Gaming Corp.*,
   No. 2:04-cv-1676, 2007 U.S. Dist. LEXIS 20668 (D. Nev. Mar. 22, 2007) ........ 8

*Int'l Bhd. of Teamsters v. Philip Morris*,
   196 F.3d 818 (7th Cir. 1999) ........................................................................... 22

*Int'l Boxing Club of N.Y., Inc. v. United States*,
   358 U.S. 242 (1959) ........................................................................................... 9

*Johnson v. Pac. Lighting Land Co.*,
   817 F.2d 601 (9th Cir. 1987) ............................................................................. 8

*Kanne v. Visa U.S.A. Inc.*,
   723 N.W.2d 293 (Neb. 2006) ...................................................................... 8, 22

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
   232 F.3d 979 (9th Cir. 2000) ..................................................................... 18, 22

*Lerma v. Univision Commc'ns*,
   52 F. Supp. 2d 1011 (E.D. Wis. 1999) ............................................................. 8

*Lorenzo v. Qualcomm Inc.*,
   603 F. Supp. 2d 1291 (S.D. Cal. 2009) ..................................................... 13, 17

*M.A.P. Oil Co. v. Texaco, Inc.*,
   691 F.2d 1303 (9th Cir. 1982) ......................................................................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................... 7

*N.Y. ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
   42 A.D.3d 301 (N.Y. App. Div. 2007) ............................................................ 23

*Nass-Romero v. Visa U.S.A. Inc.*,
   No. 30,540, 2012 N.M. App. LEXIS 31 (N.M. Ct. App. Apr. 18, 2012) ...... 8, 23

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) ........................................................................... 7

*Nw. Laborers-Emp'rs Health & Sec. Trust Fund v. Philip Morris, Inc.*,
   58 F. Supp. 2d 1211 (W.D. Wash. 1999) ......................................................... 8

*O'Brien v. Leegin Creative Leather Prods., Inc.*,
   No. 101,000, 2012 Kan. LEXIS 246 (Kan. May 4, 2012) ................................ 8

*O'Regan v. Arbitration Forums*,
   121 F.3d. 1060 (7th Cir. 1997) .................................................................... 8, 22

*Orr v. Beamon*,
   77 F. Supp. 2d 1208 (D. Kan. 1999) ............................................................... 22

*Ostrofe v. H.S. Crocker Co.*,
    740 F.2d 739 (9th Cir. 1984) ................................................................................................ 13

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
    868 So. 2d 331 (Miss. 2004) ............................................................................................. 8, 23

*Paladin Assocs. v. Mont. Power Co.*,
    328 F.3d 1145 (9th Cir. 2003) ................................................................................................ 9

*Pasco Indus., Inc. v. Talco Recycling, Inc.*,
    985 P.2d 535 (Ariz. Ct. App. 1998) ....................................................................................... 8

*In re Potash Antitrust Litig.*,
    667 F. Supp. 2d 907 (N.D. Ill. 2009) ................................................................................... 23

*Southard v. Visa U.S.A. Inc.*,
    734 N.W.2d 192 (Iowa 2007) ........................................................................................... 8, 22

*Stark v. Visa U.S.A. Inc.*,
    No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) ................................ 12

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-cv-01819-CW ............................................................................................................ 16

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999) ................................................................................................. 17

*Sterling Merch., Inc. v. Nestle, S.A.*,
    656 F.3d 112 (1st Cir. 2011) ................................................................................................... 7

*Stolow v. Greg Manning Auctions, Inc.*,
    258 F. Supp. 2d 236 (S.D.N.Y. 2003) .................................................................................. 23

*Strang v. Visa U.S.A. Inc.*,
    No. 03-cv-011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) ......................... 12, 19, 23

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) .............................................................................................. 10

*Teague v. Bayer AG*,
    195 N.C. App. 18 (2000) ...................................................................................................... 12

*Tremco, Inc. v. Holman*,
    No. C8-96-2139, 1997 WL 423575 (Minn. App. July 29, 1997) ............................................ 8

*Vinci v. Waste Mgmt., Inc.*,
    36 Cal. App. 4th 1811 (Cal. Ct. App. 1995) ........................................................................... 8

*Whitesell Int'l Corp. v. Whitaker*,
    No. 05-518716-CZ, 2007 WL 6741070 (Mich. Cir. Ct. July 31, 2007) ................................ 22

*Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*,
    736 F. Supp. 2d 661 (W.D.N.Y. 2010) ................................................................................... 8

**Statutes**

Ariz. Rev. Stat. § 44-1412 .................................................................................................... 8, 21

Cal. Bus. & Prof. Code §§ 16700 et seq. ................................................................................. 22

Mich. Comp. Law. Ann. § 445.784 ................................................................................................. 23

N.M. Stat. Ann. § 57-1-15 ....................................................................................................... 8, 23

Nev. Rev. Stat. § 598A.050 ..................................................................................................... 8, 23

New York's Gen. Bus. Law § 349 .................................................................................................. 23

Wash Rev. Code Ann. § 19.86.920.............................................................................................. 22

**Other Authorities**

*Horizontal Merger Guidelines*, United States Department of Justice and Federal Trade Commission, Aug. 19, 2010................................................................................................................................. 9

**Rules**

Fed. R. Civ. P. 56(c)...................................................................................................................... 7

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT FOR
LACK OF ANTITRUST INJURY AND ANTITRUST STANDING

## MEMORANDUM OF POINTS AND AUTHORITIES

The small LCD panel, in contrast to the large panel in a television or monitor, is one of many components in a mobile phone or digital still camera ("DSC") and represents a small fraction of these products' value. A purchaser of a mobile phone or DSC is at the end of a complex manufacturing chain that includes other more direct purchasers of small LCD panels who have also sued Defendants and whose damage claims are less convoluted.

Summary judgment should be granted on Plaintiffs' claims for mobile phone and DSC purchases on two separate grounds: lack of antitrust injury and lack of antitrust standing. Plaintiffs did not participate in the markets affected by Defendants' alleged conspiracies, and thus cannot demonstrate antitrust injury. For this reason, and because their alleged injuries are indirect, speculative, and present a likelihood of duplicative recovery and complexity in damages apportionment, Plaintiffs also lack antitrust standing. Because both antitrust injury and antitrust standing are separate and necessary preconditions to Plaintiffs' recovery, their claims should be dismissed with prejudice.

Plaintiffs cannot meet their burden of proving that they have suffered antitrust injury, which is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' act unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1997). Antitrust injury requires, among other things, a showing that the plaintiff "suffered [the] injury *in the market where competition is being restrained*." *Am. Ad Mgmt. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) (emphasis added).

A private plaintiff seeking to recover under the federal antitrust laws also bears the burden of proving "antitrust standing"—in other words, a plaintiff must prove that it "is a proper party to bring an antitrust claim." *Id.* The test for antitrust standing under federal law (and the laws of states that have adopted this approach) was established by the Supreme Court in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"). In determining whether a plaintiff has antitrust standing, the courts consider, in addition to antitrust injury: 1) "the directness of the injury"; 2) "the speculative measure of the harm"; 3) "the risk of duplicative recovery"; and 4) "the complexity in apportioning damages." *Am. Ad Mgmt.*, 190

1

1   F.3d at 1054. Thus, a finding of antitrust injury is necessary, but is not sufficient in itself, for a

2   finding of antitrust standing. *Id.*

3        Because of these requirements, not every purchaser of every product containing a small LCD

4   panel has a cognizable claim under the antitrust laws related to alleged collusion in the LCD panel

5   industry. *See AGC*, 459 U.S. at 536 ("[T]he judicial remedy cannot encompass every conceivable

6   harm that can be traced to alleged wrongdoing."); *id.* at 535 ("Congress did not intend to allow every

7   person tangentially affected by an antitrust violation to maintain an action to recover threefold

8   damages for the injury to his business or property." (citing *Blue Shield of Va., Inc. v. McCready*, 457

9   U.S. 465, 477 (1982))).

10        While Plaintiffs here cannot establish antitrust injury or antitrust standing generally, that

11   failure is most apparent as to their purchases of mobile phones and DSCs—purchases that occurred in

12   entirely separate markets (mobile phones and cameras), remote from those markets in which

13   Defendants' conspiracy allegedly occurred (LCD panels). Plaintiffs cannot prove that they have

14   suffered antitrust injury or that they have antitrust standing, because they did not participate in the

15   markets where the alleged antitrust violations took place, and because their alleged injuries are

16   indirect, speculative, and would result in duplicative recovery and extremely complex apportionment

17   of damages.

18        *First*, Plaintiffs have not suffered an antitrust injury. The "markets" allegedly restrained by

19   Defendants' conduct in this case are markets for LCD *panels*—here exclusively small panels.

20   Plaintiffs, however, did not purchase LCD panels. Instead, they purchased DSCs and mobile phones,

21   which contain numerous component parts, just one of which is an LCD panel—a component

22   representing less than 10% of the value of the mobile phone and less than 11% of the value of the

23   DSC. The LCD panel markets and the DSC and mobile phone product markets are not inextricably

24   intertwined, and the parties here did not regard them as such—Plaintiffs did not focus on the cost or

25   source of the LCD panels contained in the products they purchased, nor did Defendants typically rely

26   on DSC and mobile phone "street prices" when negotiating the price of LCD panels. Because the

27   markets for DSCs and mobile phones are entirely separate and distinct from the markets for small-

28   sized LCD panels, Plaintiffs cannot meet their burden of proving antitrust injury, and Defendants are

2

1    entitled to summary judgment as to their federal claims and claims under the antitrust laws of

2    Arizona, California, Illinois, Iowa, Kansas, Michigan, Minnesota, Mississippi, Nebraska, Nevada,

3    New Mexico, New York, North Carolina, Tennessee, Washington, and Wisconsin.

4        *Second*, Plaintiffs lack antitrust standing because their mobile phone and DSC-based claims

5    are too remote and speculative.  Because Plaintiffs cannot meet their burden of proving that they have

6    antitrust standing to maintain their claims against LCD panel manufacturers, *Datagate, Inc. v.*

7    *Hewlett-Packard Co.*, 941 F.2d 864, 868 (9th Cir. 1991), summary judgment should be granted as to

8    their federal claims and claims under the antitrust laws of Arizona, California, Illinois, Iowa, Kansas,

9    Michigan, Mississippi, Nebraska, Nevada, New Mexico, New York, Washington, and Wisconsin.

10    **I.      ISSUES PRESENTED**

11        1.  Whether Plaintiffs' claims based on mobile phone and DSC purchases must be dismissed

12    for lack of antitrust injury under federal law and the antitrust laws of Arizona, California, Illinois,

13    Iowa, Kansas, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North

14    Carolina, Tennessee, Washington, and Wisconsin.

15        2.  Whether Plaintiffs' claims based on mobile phone and DSC purchases must be dismissed

16    for lack of antitrust standing under federal law and the antitrust laws of Arizona, California, Illinois,

17    Iowa, Kansas, Michigan, Mississippi, Nebraska, Nevada, New Mexico, New York, Washington, and

18    Wisconsin.[1]

19

20

21

22

23

24

25

26

27

28

[1] Plaintiffs' claims relating to mobile phone purchases brought in *AT&T Mobility v. AU Optronics Corporation*, Case No 09-CV-4997, under the antitrust laws of Arizona, California, District of Columbia, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, West Virginia, and Wisconsin, were previously dismissed by the Court due to a lack of mobile phone purchases in those states by the AT&T Plaintiffs.  June 28, 2010 Order, MDL Dkt. No. 1823; Nov. 12, 2010 Order, MDL Dkt. No. 2142 (the "November 12 Order").  As a result, with respect to the AT&T Plaintiffs' *mobile phone purchases*, the pending claims are limited to those brought under the laws of Tennessee, New York, and Illinois, as those are the only states in which the AT&T Plaintiffs allege they made purchases of mobile phones.  AT&T's Third Am. Compl. ¶¶ 1, 2, 74-75; AT&T Pls.' Opp'n to Defs.' Joint Mot. to Dismiss Second Am. Compl., MDL Dkt. 2064, Sept. 27, 2010, at 3:17-22.  However, the AT&T Plaintiffs have appealed the November 12 Order, and that appeal is currently pending before the Ninth Circuit.  March 4, 2011 Order, MDL Dkt. No. 2522.  In the event the Ninth Circuit were to overturn the November 12 Order, the AT&T Defendants reserve the right to move for summary judgment on claims relating to mobile phone purchases for (i) lack of antitrust injury under the antitrust laws of Arizona, California, District of Columbia, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, West Virginia, and Wisconsin and (ii) lack of antitrust

## II.    PRIOR ORDERS

Defendants previously moved to dismiss the class plaintiffs' claims based on purchases of LCD products for lack of antitrust standing, but the Court allowed the claims to proceed, finding that the issue would be better addressed on a fuller factual record.  Aug. 25, 2008 Order, MDL Dkt. No. 666 (denying defendants' motion to dismiss indirect and direct purchaser class actions).  After the completion of discovery in the class cases, the Court denied a motion for summary judgment for lack of antitrust standing on the indirect purchaser class plaintiffs' claims related to televisions, monitors, and notebook computers.  Dec. 7, 2011 Order, MDL Dkt. No. 4301.  Defendants now move for summary judgment on Plaintiffs' claims based on their purchases of mobile phones and DSCs containing various types of LCD panels—products not at issue in the summary judgment motion brought against the indirect purchaser plaintiff class, and as to which the LCD panel is a smaller component part and for which there is no reasonable argument that the markets are the same as the markets for the end products at issue, or that the panel and product markets are inextricably intertwined.[2]

## III.    FACTUAL BACKGROUND

Plaintiffs are resellers of mobile phone handsets and DSCs (as well as various other goods and services).  *See Kodak's* First Am. Compl., MDL Dkt. No. 2955, June 22, 2011, ¶ 1; Costco's Second Am. Compl., MDL Dkt. No. 4428, Dec. 23, 2011, ¶ 7; Best Buy's First Am. Compl., MDL Dkt. No. 2878, June 7, 2011, ¶¶ 18-19, 21; Target Corp., et al.'s Second Am. Compl., MDL Dkt. No. 3511, Sept. 9, 2011, ¶ 2; AT&T's Third Am. Compl., MDL Dkt. No. 3508, Sept. 9, 2011, ¶ 1; Electrograph's First Am. Compl., MDL Dkt. No. 3681, Sept. 23, 2011, ¶¶ 16-17.  During the alleged conspiracy periods, Plaintiffs purchased DSCs and mobile phones for resale, some of which allegedly

---

standing under the antitrust laws of Arizona, California, District of Columbia, Iowa, Kansas, Maine, Michigan, Mississippi, Nebraska, Nevada, New Mexico, North Dakota, South Dakota, West Virginia, and Wisconsin.

[2]  In the interest of efficiency and judicial economy, Defendants incorporate by reference all arguments made in Defendants' Motion for Summary Judgment Against Indirect Purchaser Plaintiffs in 14 States, 3:07-md-1827 SI, MDL Dkt. No. 3447, Sept. 6, 2011 ("IPP MSJ"), and Defendants' Reply in Support of Motion for Summary Judgment Against Indirect Purchaser Plaintiffs in 14 States, 3:07-md-1827 SI, MDL Dkt. No. 3978, Oct. 21, 2011 ("IPP Reply").  For the reasons set forth in those motions, Plaintiffs also lack antitrust standing as to their purchases of products containing large-sized LCD panels.

---

4

1    contained LCD panels manufactured by certain Defendants.  *See, e.g.*, Kodak's First Am. Compl. ¶ 4;

2    Best Buy's First Am. Compl. ¶ 19; AT&T's Third Am. Compl. ¶¶ 1, 2, 74-75.  Plaintiffs claim that

3    Defendants entered into agreements regarding certain LCD panels that "inevitably included and/or

4    affected the prices" of LCD panels used in mobile phones and DSCs.  *See* Best Buy's First Am.

5    Compl. ¶ 171; Target Corp., et al.'s Second Am. Compl. ¶ 199; AT&T's Third Am. Compl. ¶ 196;

6    *see also, e.g.*, Kodak's First Am. Compl. ¶¶ 92, 95; Electrograph's First Am. Compl.  ¶¶ 2, 88-90.

7    They assert that "[a]s a result of Defendants' unlawful conduct, Plaintiffs paid higher prices for LCD

8    Products than they would have paid in a competitive market."  Best Buy's First Am. Compl. ¶ 3; *see*

9    *also, e.g.*, Kodak's First Am. Compl. ¶ 95; AT&T's Third Am. Compl. ¶¶ 10, 213; Electrograph's

10   First Am. Compl., ¶¶ 7, 18.  They seek damages based on the purchase of mobile phones and DSCs.

11   *See, e.g.*, Declaration of Salezka L. Aguirre in Support of Defendants' Motion for Summary

12   Judgment and Partial Summary Judgment (hereinafter "Aguirre Decl."), Ex. 1 (Epstein & Frankel

13   Report (Best Buy)) ¶ 55; *id.* Ex. 2 (Marx Report (Target)) ¶ 51; *id.* Ex. 3 (Marx Report (AT&T)) ¶ 1;

14   *id.* Ex. 4 (Macartney Report (Kodak)) at 4-5; *id.* Ex. 5 (Marx Report (Electrograph)) ¶ 1.

15           As purchasers and resellers of DSCs and mobile phones, Plaintiffs are participants in the

16   markets for these retail products.  However, they do not claim to be, and are not, purchasers of LCD

17   panels.  *See, e.g.*, Kodak's First Am. Compl. ¶ 95 ("Kodak purchased DSCs from OEMs, which in

18   turn purchased LCD Panels from defendants and co-conspirators."); Aguirre Decl. Ex. 4 (Macartney

19   Report (Kodak)) at 44 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

20   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓;

21   *id.* Ex. 6 (Hodges (Old Comp 30(b)(6)) Dep. Tr.) at 168:8-14

22   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; *id.* Ex. 7 (Harris Dep. Tr.) at 28:3-24 (testifying that he is familiar

23   with the distinction between LCD panels and products and that Best Buy's lawsuit relates to its

24   purchases of LCD products); *id.* Ex. 8 (Shavey (Costco 30(b)(6)) Dep. Tr.) at 17:8-11 ▓▓▓▓▓

25   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; *id.* Ex. 9 (Nayar (Target

26   30(b)(6)) Dep. Tr.) at 29:8-13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓;

27   *id.* Ex. 10 (Salley (RadioShack 30(b)(6)) Dep. Tr.) at 33:10-13

28   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; *id.* Ex. 11 (Pls.' Supplemental

1    Resp. No. 270 to Defs.' First Set of Reqs. for Admis., Mar. 6, 2012) ("Plaintiffs [including Sears and

2    Kmart] admit that they seek damages in the above-captioned litigation based only on purchases of

3    LCD-containing products[.]"); *id.* Ex. 12 (Ellenberg (AT&T 30(b)(6)) Dep. Tr.) at 97:24-98:1

4    ███████████████████████████████████████████████; *id.* Ex. 13 (Lincks (Electrograph

5    30(b)(6)) Dep. Tr.) at 42:20-43:6 ████████████████████████████████████

6    ████████████████████████████████████████████████████.

7         Plaintiffs do not purport to bring claims of price fixing in the DSC or mobile phone markets.

8    *See, e.g.*, Aguirre Decl. Ex. 14 (Kodak's Response No. 74 to Defs.' First Set of Reqs. for Admis.,

9    Jan. 30, 2012) (admitting that "Kodak does not seek to recover for any agreement to fix, raise or

10   maintain prices for LCD PRODUCTS"). Nor is there any evidence that there was a conspiracy to set

11   the prices of finished LCD products such as the mobile phones and DSCs they purchased. *See, e.g.*,

12   Aguirre Decl. Ex. 15 (Bernheim Dep. Tr.) at 692:22-693:16 ████████████████████████

13   ████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████; *id.* Ex. 4 (Macartney

15   Report (Kodak)) at 3 ████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ██████. Instead, Plaintiffs' claims center on alleged conspiracies to set the prices of different sizes of

18   LCD panels, which were later used, along with numerous other components, to create products. *See,*

19   *e.g.*, Kodak's First Am. Compl. ¶ 2 ("[D]efendants and their co-conspirators conspired with the

20   purpose and effect of fixing, raising, stabilizing, and maintaining prices for LCD Panels."); Target

21   Corp., et al.'s Second Am. Compl. ¶ 3 ("Defendants and their co-conspirators formed an international

22   cartel illegally to restrict competition in the United States in the market for LCD Panels."); AT&T's

23   Third Am. Compl. ¶ 3 ("[D]efendants and their co-conspirators conspired with the purpose and effect

24   of fixing, raising, stabilizing and maintaining prices for LCD Panels . . ."); Electrograph's First Am.

25   Compl. ¶ 1 ("[D]efendants and their co-conspirators formed an international cartel . . . [t]he purpose

26   and effect of [which] was to fix, raise, stabilize and maintain prices for Thin Film Transistor-Liquid

27   Crystal Display ('TFT-LCD') panels.").

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT FOR
LACK OF ANTITRUST INJURY AND ANTITRUST STANDING

## IV.    ARGUMENT

### A.    Summary Judgment Should Be Granted If Plaintiffs Cannot Prove Antitrust Injury And Antitrust Standing

Plaintiffs bear the burden in this case to prove both (1) antitrust injury, and (2) antitrust standing. *See Brunswick Corp.*, 429 U.S. at 489 (burden on plaintiff to prove antitrust injury); *Sterling Merch., Inc. v. Nestle, S.A.*, 656 F.3d 112, 121 (1st Cir. 2011) ("The plaintiff bears the burden of proving antitrust injury."); *Hairston v. Pac. 10 Conference*, 101 F.3d 1315, 1321 (9th Cir. 1996) (Trott, J., concurring) ("[A]ntitrust standing is an essential threshold element of an antitrust case"; a plaintiff must therefore prove "that he or she is an appropriate antitrust plaintiff").

Summary judgment should be granted when the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and Defendants are entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

The party moving for summary judgment bears the initial burden of showing that there are no genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Under Rule 56, Defendants may carry their initial burden by simply "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.* 210 F.3d 1099, 1106 (9th Cir. 2000) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Here, Defendants can more than meet their initial burden, because the undisputed evidence shows that Plaintiffs did not purchase mobile phones or DSCs in the relevant markets affected by the alleged conspiracies—LCD panel markets; thus, Plaintiffs lack the antitrust injury required to bring their claims. This deficiency alone requires entry of summary judgment. Further, because the antitrust injury prong and remaining elements of the *AGC* test all weigh heavily against Plaintiffs, they lack antitrust standing. Summary judgment should be granted on both of these grounds.

### B.    Plaintiffs Cannot Prove That They Suffered Antitrust Injury

To recover under the Sherman Act or the antitrust laws of Arizona, California, Illinois, Iowa, Kansas, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, Tennessee, Washington, and Wisconsin, Plaintiffs must demonstrate that they have suffered antitrust injury, which is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' act unlawful." *Brunswick Corp.*, 429 U.S. at 489.[3]  A necessary condition of "antitrust injury" is that the "injured party be a participant in the same market as the alleged malefactors." *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 372 (9th Cir. 2003).  It is not enough that the conduct and injury be somehow connected.  "Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Am. Ad Mgmt.*, 190 F.3d at 1057.  To recover under their claims based on their purchases of mobile phones and DSCs, Plaintiffs must demonstrate that they participated in the relevant markets affected by the alleged conspiracies—markets for small LCD panels.

### 1.    Plaintiffs Are Unable To Prove That They Participated In Markets For LCD Panels.

These Plaintiffs, who are resellers of DSCs and mobile phones (among other products), cannot satisfy this standard because they have not participated in LCD small panel markets. Plaintiffs and their experts have admitted that the conspiracy alleged in these cases involved alleged

---

[3] *See, e.g.*, Ariz. Rev. Stat. § 44-1412; Nev. Rev. Stat. § 598A.050; N.M. Stat. Ann. § 57-1-15; *O'Regan v. Arbitration Forums*, 121 F.3d. 1060, 1065 (7th Cir. 1997); *Johnson v. Pac. Lighting Land Co.*, 817 F.2d 601, 604 (9th Cir. 1987); *Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*, 736 F. Supp. 2d 661, 669 (W.D.N.Y. 2010); *Cole v. Champion Enters.*, 496 F. Supp. 2d 613, 634 (M.D.N.C. 2007); *IGT v. Alliance Gaming Corp.*, No. 2:04-cv-1676, 2007 U.S. Dist. LEXIS 20668, at *34 (D. Nev. Mar. 22, 2007); *First Med. Representatives, LLC v. Futura Med. Corp.*, 195 F. Supp. 2d 917, 923-25 (E.D. Mich. 2002); *Nw. Laborers-Emp'rs Health & Sec. Trust Fund v. Philip Morris, Inc.*, 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999); *Lerma v. Univision Commc'ns*, 52 F. Supp. 2d 1011, 1016-17 (E.D. Wis. 1999); *O'Brien v. Leegin Creative Leather Prods., Inc.*, No. 101,000, 2012 Kan. LEXIS 246, at *33 (Kan. May 4, 2012); *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198-99 (Iowa 2007); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 296 (Neb. 2006); *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 344 (Miss. 2004); *Ghem, Inc. v. Mapco Petroleum, Inc.*, 850 S.W.2d 447, 457-58 (Tenn. 1993); *Nass-Romero v. Visa U.S.A. Inc.*, No. 30,540, 2012 N.M. App. LEXIS 31, at *15-16 (N.M. Ct. App. Apr. 18, 2012); *Pasco Indus., Inc. v. Talco Recycling, Inc.*, 985 P.2d 535, 546 (Ariz. Ct. App. 1998); *Tremco, Inc. v. Holman*, No. C8-96-2139, 1997 WL 423575, at *2 (Minn. App. July 29, 1997) (unpublished); *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 (Cal. Ct. App. 1995).

8

1  agreements as to the prices of LCD panels—not mobile phones, DSCs, or other end products

2  containing small-sized panels. *See, e.g.*, Aguirre Decl. Ex. 15 (Bernheim Dep. Tr.) at 692:22-693:16.

3        Because Plaintiffs purchased mobile phones and DSCs rather than LCD panels, Plaintiffs

4  were not participants in the same markets as the alleged conspiracy. "For antitrust purposes, a

5  'market is comprised of products that have reasonable interchangeability for the purposes for which

6  they are produced—price, use and qualities considered.'" *Paladin Assocs. v. Mont. Power Co.*, 328

7  F.3d 1145, 1156, n.10 (9th Cir. 2003) (quoting *Int'l Boxing Club of N.Y., Inc. v. United States*, 358

8  U.S. 242, 250 (1959)); *see also Horizontal Merger Guidelines*, United States Department of Justice

9  and Federal Trade Commission, Aug. 19, 2010 ("Market definition focuses solely on demand

10  substitution factors, *i.e.*, on customers' ability and willingness to substitute away from one product to

11  another in response to a price increase or a corresponding non-price change such as a reduction in

12  product quality or service."). DSCs and mobile phones are not reasonable substitutes for LCD

13  panels.

14        In response to an increase in the price of a mobile phone or DSC, neither Plaintiffs nor any

15  consumer would willingly switch to an LCD panel. An LCD panel cannot be used to place a call,

16  take a picture, save phone numbers and contact information, or send a text message—but some or all

17  of these can be done with a mobile phone. *See also* Aguirre Decl. Ex. 20 (Mallinson Report (Costco,

18  Target, et al.)) ¶ 37

19  ; *id.* Ex. 22 (Mallinson Report (Best Buy)) ¶ 57

20

21  ; *id.* ¶ 35 . Moreover, at the start of the

22  alleged conspiracy period, the LCD panels incorporated in mobile phones had very limited

23  functionality.

24  *Id.* Ex. 20 (Mallinson Report (Costco,

25  Target, et al.)) ¶ 15. These phones were used primarily, if not exclusively, for voice services and the

26  essential features of the phones were those that allowed calls to be made and received. *See, e.g., id.*

27

28  ; *id.* Ex. 23 (Snyder Report (AT&T, Costco, Electrograph, Target, et

9

al.)) ¶ 80 █████████████████████████████████████████████

██████████████████████████; *see also id.* Ex. 24 (Mallinson Dep. Tr.) at 41:17-23

████████████████████████████████████████████; *id.* Ex. 20 (Mallinson

Report (Costco, Target, et al.)) at 25-27 ████████████████████████████

████; *id.* Ex. 25 ████████████████████████████████████████.

Similarly, an LCD panel cannot be used to take pictures or store images electronically, as one

can do with a DSC.  In fact, Plaintiffs' expert has admitted that ██████████████

████████████████████████████████████  Aguirre Decl. Ex. 4

(Macartney Report (Kodak)) at 34.  Further, an LCD panel represents only one of many components

that make up a DSC.  *Id.* at 36-37 ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████.

For all of these reasons, DSCs and mobile phones cannot be considered a "reasonable

substitute"—or any sort of substitute—for small LCD panels.  There is simply no argument or

evidence to the contrary.  Instead, in an effort to stretch the LCD panel markets to include any

products that contain such panels, Plaintiffs allege that "LCD Panels are—and were throughout the

Conspiracy Period—the most expensive and significant component of LCD Products."  Target Corp.,

et al.'s Second Am. Compl. ¶ 104; *see also* Best Buy's First Am. Compl. ¶ 79 (same); AT&T's Third

Am. Compl. ¶ 207 (same); Costco's Second Am. Compl. ¶ 79 (discussing "the significant impact that

the price of LCD panels has on the cost of finished products"); Electrograph's First Am. Compl. ¶

114 (same).

But bald allegations are insufficient at the summary judgment stage.  *See, e.g., Taylor v. List*,

880 F.2d 1040, 1045 (9th Cir. 1989).  And those allegations are contradicted by the evidence in this

case, which demonstrates that the exact opposite is true for mobile phones. █████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ Aguirre

Decl. Ex. 22 (Mallinson Report (Best Buy)) ¶ 37; *see also id.* ¶¶ 35, 57 ████████████

█████████████ and are ███████████████████████████████████████████████████████████████████████. Indeed, Plaintiffs' own expert, Dr. Bernheim, ██████████████████████████████████████████████████████████████████. *See, e.g., id.* Ex. 17 (Bernheim Report (Best Buy)) ¶ 61; *id.* Ex. 18 (Bernheim Report (Costco)) ¶ 62 (same); *id.* Ex. 19 (Bernheim Report (AT&T)) ¶ 60 (same); *id.* Ex. 21 (Bernheim Report (Electrograph)) ¶ 60 (same).

The same is true for DSCs. The LCD panel is one of the many components that make up a DSC. A DSC is comprised of ████████████████████████████████████████████████████████████ ████████████████████████████████████████ Aguirre Decl. Ex. 4 (Macartney Report (Kodak)) at 36-37. And the LCD panel is not even a core cost component of a DSC. *See id.* at 37 ████████████████████████████ ████████████████████████████████; *id.* Ex. 26 (Macartney Dep. Tr.) at 191:6-11. In fact, Macartney, an expert for Kodak, ████████████████████████████████████████████████████████████████ ████████████. *See id.* Ex. 27 (Macartney Reply Report (Kodak)) at 123 ██████████████████ █████████████████████████████████; *see also id.* Ex. 28 (Silzars Report (Kodak)) ████ ¶ 50 ████████████████████████████████████████████████████████████ Where, as here, a component part represents so small a percentage of the end product, and where the uses and utility of the end product and component part are so distinct from one another, they cannot be considered part of the same market.

The court in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* confronted a similar set of facts and concluded—as this Court should here—that plaintiffs lacked antitrust injury (and thus antitrust standing). 516 F. Supp. 2d 1072 (N.D. Cal. 2007) (Hamilton, J.). In that case, plaintiff purchasers of products containing DRAM semiconductor chips brought suit claiming injury based on defendants' alleged conspiracy to fix the prices of DRAM. *Id.* at 1091. As a basis for its decision that plaintiffs did not suffer antitrust injury, the court agreed with defendants' argument that "since plaintiffs purchased DRAM as a component of other products—such as computers—these plaintiffs are not participants in the alleged market for DRAM." *Id.* at 1090. The court noted that plaintiffs "purchased DRAM as a component in computers and other electronic products . . . [h]owever, the market that plaintiffs allege as the source for the purportedly illegal price-fixing

1   conspiracy was the general market for DRAM, *a market that is distinct from the market for electronic*

2   *products* that include DRAM." *Id.* at 1091 (emphasis added). As a result, the court held that

3   "plaintiffs who are purchasing products in which DRAM is a component, rather than DRAM itself,

4   are participating in a secondary market that is incidental to the primary price-fixed market (i.e., the

5   market for DRAM modules themselves)," and found that those plaintiffs had not suffered antitrust

6   injury. *Id.*[4]

7          While this Court previously found the DRAM case distinguishable for purposes of addressing

8   products containing large LCD panels, such as televisions and monitors, in which the LCD panel is

9   the most significant component, mobile phones and DSCs are different.[5]  In this respect, the LCD

10  panel in mobile phones and DSCs is analogous to the memory chip in the DRAM case.  Unlike

11  televisions and monitors, in which the LCD panel is the most significant attribute, Plaintiffs admit

12  that, in addition to LCD panels, mobile phones ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

13  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

14  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

15          Aguirre Decl. Ex. 16 (Bernheim Report (Target)) ¶ 35; *id.* Ex. 21 Bernheim Report

16  (Electrograph)) ¶ 32 (same); *see also id.* Ex. 19 (Bernheim Report (AT&T)) ¶ 32 (same); *id.* Ex. 22

17  (Mallinson Report (Best Buy)) ¶ 57 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

18

19  4  Two cases relied on by Judge Hamilton in *In re DRAM* further compel the same result here.  *See*
20      *Crouch v. Crompton Corp.*, Nos. 02-cvs-4375 & 03-cvs-2514, 2004 WL 2414027, at *24 (N.C.
        Super. Ct. Oct. 28, 2004) (noting that plaintiff, as a purchaser of rubber tires rather than rubber
        chemicals, was in a market "secondarily affected by the restraint in the original chemical
20      market"), *overruled on other grounds by Teague v. Bayer AG*, 195 N.C. App. 18 (2009); *Stark v.
        Visa U.S.A. Inc.*, No. 03-055030-CZ, 2004 WL 1879003, at *2 (Mich. Cir. Ct. July 23, 2004)
21      (finding insufficient allegations to show antitrust standing where "plaintiff is not a consumer or
        competitor in the allegedly restrained market").  Judge Hamilton deemed the Visa debit card
22      cases, such as *Stark*, particularly "instructive" on this issue, stating that "[i]n these cases, the
        indirect purchasers were ultimate consumers of various 'goods' that they purchased from
23      merchants who were themselves the alleged victims of defendants' conspiracy to illegally tie
        products in violation of section 1," and that "[t]he numerous courts considering antitrust standing
24      in this context generally found that, although an artificially raised price had been passed down
        from defendants to merchants in the market for credit card services, the indirect purchasers were
25      not participants in the actual market for credit card services, just for goods sold by those
        merchants." *DRAM*, 516 F. Supp. 2d at 1090 (citing *Stark*, 2004 WL 1879003, at *2; *Strang v.
26      Visa U.S.A. Inc.*, No. 03-cv-011323, 2005 WL 1403769, at *4 (Wis. Cir. Ct. Feb. 8, 2005)).

27  5  Defendants respectfully disagree with this holding, but for the reasons discussed below, the
28      Court's holding does not apply to mobile phones.



. Similarly,

. *See id.* Ex. 4 Macartney Report (Kodak) at 37 ; *id.* Ex. 27 (Macartney Reply Report (Kodak)) at 123 ; *id.* Ex. 26 (Macartney Dep. Tr.) at 191:5-11; *id.* Ex. 29 (Gu Dep. Tr.) at 363:14-19.  LCD panels are simply not a significant enough component in the total cost of a mobile phone or DSC to fairly characterize purchasers of those devices as participants in the markets for LCD panels.

### 2. Plaintiffs' Alleged Injuries Are Not Inextricably Intertwined With Those Of Market Participants.

Nor can Plaintiffs satisfy the narrow exception to the "market participant" rule applied when a party's injury is "inextricably intertwined" with the injuries of market participants. *Am. Ad Mgmt.*, 190 F.3d at 1057 n.5.  "This exception applies when the claimant can be considered the 'direct victim' of a conspiracy or the 'necessary means' by which the conspiracy was carried out." *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1300-01 (S.D. Cal. 2009) (citing *Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739, 744-47 (9th Cir. 1984)); *see also Datel Holdings, Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 993-94 (N.D. Cal. 2010).

This Court has previously addressed this inquiry in terms of whether the defendants treated the markets for large LCD panels and the products that contain them as interconnected.  In denying defendants' motion for summary judgment on *AGC* grounds in the indirect purchaser class case, this Court found compelling evidence suggesting "that defendants treated the markets as interconnected, relying on the price of finished LCD products when setting prices of LCD panels."  Dec. 7, 2011 Order at 2.  The evidence presented to the Court on that issue, however, like those plaintiffs' claims before the Court, focused on televisions, monitors, and notebook computers, and not on DSCs and mobile phones.  Here, by contrast, Plaintiffs cannot show that Defendants regularly relied on the prices of mobile phones or DCSs when negotiating LCD panel prices.

13

The evidence in this case also demonstrates that *Plaintiffs* paid little to no attention to details regarding the panels contained in the products that they purchased. In contrast, companies that actually participated in LCD panel markets focused intently on the quality and features of the panels. *Compare, e.g.*, Aguirre Decl. Ex. 30 (Milligan (Motorola 30(b)(6)) Dep. Tr.) at 79:6-80:22

█████████████████████████████████████████████████████████████

; *id.* Ex. 31 (Robinson (Motorola 30(b)(6)) Dep. Tr.) at 383:1-386:6 █████████████

; *id.* Ex. 32 (Aho (Nokia 30(b)(6)) Dep. Tr.) at 87:5-18 ████████████████████████████████

; *with id.* Ex. 12 (Ellenberg (AT&T 30(b)(6)) Dep. Tr.) at 98:2-99:9 █████████████

; *id.* Ex. 9 (Nayar (Target 30(b)(6)) Dep. Tr.) at 154:3-18 ██████████████████████████

; *id.* Ex. 8 (Shavey (Costco 30(b)(6)) Dep. Tr.) at 38:19-22 █████████████████████████

Generally, Plaintiffs did not even know who manufactured the LCD panel contained in the products that they purchased, nor what the handset manufacturer paid for the panel. *See, e.g.*, Aguirre Decl. Ex. 10 (Salley (RadioShack 30(b)(6)) Dep. Tr.) at 68:22-69:17 ███████████████

; *id.* Ex. 33 (Burns Dep. Tr.) at 64:19-25 ████████████████████████████████████████████████

; *id.* Ex. 34 (Smith (Sears/Kmart 30(b)(6)) Dep. Tr.) at 151:11-18 ████████████████████

; *id.* Ex. 6 (Hodges (Old Comp 30(b)(6)) Dep. Tr.) at 170:4-11, 172:6-173:4 ██████████████

; *id.* Ex. 12 (Ellenberg (AT&T 30(b)(6)) Dep. Tr.) at 244:17-21 ████████████████████████

; *id.* Ex. 13 (Lincks (Electrograph 30(b)(6)) Dep. Tr. at 187:18-188:1 ███████████████████

1      ██████████. The same is true for other purchasers of mobile phones, further illustrating that

2      the mobile phone market was not "inextricably intertwined" with the markets for LCD panels. *See,*

3      *e.g., id.* Ex. 36 (Ruth (TracFone 30(b)(6)) Dep. Tr.) at 63:10-13 ████████

4      ████████████████████████████████████████

5      ████.

6           As they were not purchasers of LCD panels, Plaintiffs cannot claim to be the "direct victims"

7      of an alleged conspiracy to fix the price of such panels. And as in *Datel*, Plaintiffs' alleged injuries

8      here were not a "necessary step" in carrying out the conspiracies that they allege.[6] As evidenced by

9      the wide array of LCD products at issue in this litigation, including the televisions, monitors, and

10     notebook computers upon which the indirect purchaser class premised the entirety of their case, as

11     well as hand-held video recorders, hand-held video games, hand-held navigation devices, MP3

12     players, and other hand-held electronic devices, there is enormous demand for LCD panels outside of

13     the demand for mobile phones or DSCs. Moreover, as to the demand for LCD panels generated by

14     the demand for mobile phones and DSCs, the actual purchasers of those panels have also appeared in

15     this Court to assert their claims. *See* Motorola Mobility, Inc.'s Third Am. Compl., MDL Dkt. No.

16     3173, July 22, 2011; Nokia Corp., et al.'s First Am. Compl., MDL Dkt. No. 1933, July 29, 2010;

17     Hewlett-Packard Co.'s Compl., Case No. 11-4116-SI, Dkt. No. 5, Aug. 19, 2011.

18          Demand for DSCs and mobile phones does not depend on a demand for LCD panels. DSC

19     demand depends on a demand for the ability to take and save pictures electronically. Mobile phone

20     demand depends on a demand to engage in mobile communications—initially talking, and then

21     subsequently including sending text messages and emails, taking pictures, or playing a video game.

22     *See, e.g.*, Aguirre Decl. Ex. 20 (Mallinson Report (Costco, Target, et al.)) ¶¶ 13-14 █████

23     ████████████████████████████████████████

24

25    [6] In *Datel*, plaintiff, a manufacturer of memory cards and other accessories compatible with

26      defendant's online gaming system, alleged that defendant monopolized the gaming system market
      by altering its product to render it incompatible with plaintiff's accessories. 712 F. Supp. 2d at

27      990-91. The Court rejected plaintiff's attempt to meet the exception to the market participant
      rule, noting that "[p]laintiff's allegations center on its injury in the secondary market," and that

28      injury to plaintiff was not a "necessary step in Defendant's alleged market dominance." *Id.* at
      994.

1 ████████████████████████████████████████████████ and that ██████

2 ████████████████████████████████████████████████ ; *see also M.A.P. Oil Co. v. Texaco,*

3 *Inc.*, 691 F.2d 1303, 1306 (9th Cir. 1982) (noting that if products "are reasonably interchangeable by

4 consumers for the same market, or if they have a high cross-elasticity of demand in the trade, they

5 will be included in the same market").

6       Common sense also compels the conclusion that each component of a DSC and mobile phone

7 cannot be coextensive or inextricably linked with the camera and phone markets. While LCD panels

8 are a component of DSCs and some mobile phones, so are image sensors, central processing units,

9 keyboards, cameras, batteries, memory capacity, and software. *See, e.g.*, Aguirre Decl. Ex. 22

10 (Mallinson Report (Best Buy)) ¶ 37; *id.* Ex. 27 (Macartney Reply Report (Kodak)) at 123. Each

11 component represents one of many variables that may influence the price of a DSC or mobile phone.

12 *See, e.g.*, *id.* Ex. 23 (Snyder Report (Target, Costco, Electrograph, AT&T et al.)) ¶ 83 ████████

13 ████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████

15       Thus, for example, if there were allegations of separate acts of collusion by manufacturers of

16 both the camera component of mobile phones or DSCs and the LCD panel component, one would not

17 conclude that the camera and panel components were in the same market as one another, much less

18 the same market as mobile phones or DSCs. Each component could be used in products other than

19 mobile phones and DSCs, and each is sold separate and apart from mobile phones and DSCs. The

20 same is true as to memory capacity (such as DRAM, SRAM, or Flash Memory—each the subject of

21 standalone lawsuits in this district). *See In re Dynamic Random Access Memory (DRAM) Litig.*, No.

22 02-cv-01486-PJH; *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-cv-01819-

23 CW; *In re Flash Memory Antitrust Litig.*, No. 07-cv-00086-SBA. It simply cannot be that resellers of

24 mobile phones and DSCs participate in the markets for each and every one of those components

25 merely because they purchased an end product in which that component is a small part—even if there

26 is no demand for each of those parts separate from their use in the multitude of end products in which

27 they are incorporated.

28

16

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT FOR
LACK OF ANTITRUST INJURY AND ANTITRUST STANDING

1    Because Plaintiffs here are participants in separate and distinct markets, and are not the direct

2    victims of the conspiracies that they allege, nor a "necessary means" by which these alleged

3    conspiracies were carried out, bare allegations that "[t]he market for LCD Panels and the markets for

4    LCD Products are inextricably linked and intertwined," *see, e.g.*, Target Corp., et al.'s Second Am.

5    Compl. ¶ 97; Kodak's First Am. Compl. ¶ 35; Electrograph's First Am. Compl. ¶ 229, do not create a

6    question of material fact necessary to withstand a motion for summary judgment. *See Lorenzo*, 603

7    F. Supp. 2d at 1301 ("The simple invocation of the phrase 'inextricably intertwined' will not allow a

8    plaintiff to avoid the fundamental requirement" of antitrust injury.) (quoting *Steamfitters Local Union*

9    *No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 926, n.8 (3d Cir. 1999)).  Summary

10   judgment should be entered on Plaintiffs' DSC and mobile phone claims.

**C.    Plaintiffs Cannot Prove That They Have Antitrust Standing For Claims Based On DSC And Mobile Phone Purchases**

13   Even a plaintiff who has suffered antitrust injury must also show "antitrust standing"—in

14   other words, that the plaintiff "is a proper party to bring an antitrust claim." *Am. Ad Mgmt.*, 190 F.3d

15   at 1054.  While the antitrust injury requirement focuses on the nature of the harm suffered by the

16   plaintiff, antitrust standing focuses on the remoteness of the plaintiff's claim. *See, e.g., In re*

17   *Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007).  Thus,

18   under federal law and the law of the states that have adopted or would adopt a remoteness analysis,

19   even a plaintiff who has suffered antitrust injury may lack standing if its claim is attenuated and there

20   is a more direct claimant with an incentive to pursue its own claim. *AGC*, 459 U.S. at 542; *see also*

21   *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1110-11 (6th Cir. 1989 ("Any inquiry to determine

22   whether antitrust injury has been shown is more limited than one to determine whether the plaintiff

23   has standing. . . . [E]ven if an antitrust injury is shown sufficiently, standing may be denied on the

24   basis of other factors.").

25   To determine whether a plaintiff is a proper party to bring a private antitrust action, courts

26   consider the following factors:  (1) nature of the injury; (2) directness of the injury; (3) speculative

27   nature of the harm; (4) risk of duplicative recovery; and (5) complexity of damages apportionment.

28   *Am. Ad Mgmt.*, 190 F.3d at 1054-55; *see also AGC*, 459 U.S. at 538-44.  Here, all of these factors

1    weigh in Defendants' favor.  This motion has already addressed the first of these factors—the

2    requirement that Plaintiffs prove "antitrust injury."  Plaintiffs cannot demonstrate antitrust injury,

3    which necessarily means that they also lack antitrust standing.  *See Am. Ad Mgmt.*, 190 F.3d at 1054

4    ("[A] showing of antitrust injury is necessary, but not always sufficient, to establish standing.")

5    (internal citations and quotation marks omitted).  However, even if this Court were to find that

6    Plaintiffs could demonstrate antitrust injury, this motion should still be granted because all of the

7    remaining *AGC* factors weigh against Plaintiffs.

8                    **1.    Plaintiffs' Alleged Injuries Are Indirect.**

9            Plaintiffs' alleged injuries are indisputably indirect.  "To assess the directness of this injury,

10   [courts] look to the chain of causation between [plaintiff's] injury and the alleged restraint in the

11   market."  *Id.* at 1058.  Further, "there must be not a mere causal link, but a direct effect."

12   *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989 (9th Cir. 2000).  In *DRAM*, Judge

13   Hamilton noted that "[i]t requires no leap of logic to conclude that each product in which DRAM is a

14   component, contains numerous other components, all of which *collectively* determine the final price

15   actually paid by plaintiffs for the final product.  In other words, the price for the actual product paid

16   by plaintiffs is reflective of much more than just the component price for DRAM."  516 F. Supp. 2d

17   at 1092.  In this case, Plaintiffs bought DSCs and mobile phones that contained not only LCD panels,

18   but also countless other components that affected the final price, including lenses, batteries, cameras,

19   memory, and software.  *See, e.g.*, Aguirre Decl. Ex. 16 (Bernheim Report (Target)) ¶ 35; *id.* Ex. 19

20   (Bernheim Report (AT&T)) ¶ 32; *id.* Ex. 21 (Bernheim Report (Electrograph)) ¶ 32; *id.* Ex. 4

21   (Macartney Report (Kodak)) at 36-37; *id.* Ex. 27 (Macartney Reply Report (Kodak)) at 123.  LCD

22   panels are but one small component of the final price of the DSCs and mobile phones that Plaintiffs

23   purchased.  *Id.*  Because all of those components, as well as a myriad of other factors that affect the

24   supply of and demand for DSCs and mobile phones, influenced Plaintiffs' purchase price, and

25   Plaintiffs' claims are indirect (and in some cases several steps down a chain of distribution), any

26   alleged injuries are indirect.  That indirectness weighs against a finding of antitrust standing.

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT FOR
LACK OF ANTITRUST INJURY AND ANTITRUST STANDING

### 2. The Measure Of Harm Suffered By Plaintiffs Is Speculative.

In *AGC*, the Supreme Court found the damages claim in question to be speculative because the alleged injury was indirect, and "the alleged effects . . . may have been produced by independent factors." 459 U.S. at 542. As previously noted, Plaintiffs are not seeking damages for alleged price fixing of the DSCs and mobile phones they purchased. They are instead reaching back several steps in the chain of distribution, and attempting to demonstrate that they were harmed by alleged price fixing of a single component of the complex product that they ultimately purchased.

Moreover, the final price paid by Plaintiffs was affected not only by variations in the prices for all of the other components that make up the DSC and mobile phone, but also the intervening pricing decisions made by the direct panel purchasers who manufactured the DSCs and phones as well as other supply-and-demand factors of the markets for DSCs and mobile phones.[7]

Not only must new pass-through calculations be taken for each level, but "the causal connection . . . often times will be obliterated in the intervening steps in the chain of distribution." *Strang*, 2005 WL 1403769, at *5. And here, the intervening purchasers of mobile phone and DSC panels, such as Motorola, Nokia and Hewlett-Packard, are also present before this Court and will be asserting that they suffered the harm caused by the alleged panel price fixing by absorbing the entirety of any alleged overcharge. Because of the multiple steps separating the panel sale from the mobile phone or DSC purchase, and the relatively small proportion of the total price that the LCD panel represents, any claims of harm to Plaintiffs from the purchase of mobile phones would be unavoidably speculative. That speculative character weighs in favor of summary judgment.

---

[7]  *See, e.g.*, Aguirre Decl. Ex. 23 (Snyder Report (AT&T, Target, Electrograph, Costco et al.)) ¶ 33 ▓▓▓; *id.* Ex. 4 (Macartney Report (Kodak)) at 34 ▓▓▓; *id.* Ex. 35 (Snyder Report (Kodak)) ¶ 117 ▓▓▓

### 3.   Plaintiffs' Claims Present A Risk Of Duplicative Recovery That Cannot Be Resolved Through Apportionment Of Damages.

"The indirectness of the alleged injury also implicates the strong interest, identified in our prior cases, in keeping the scope of complex antitrust trials within judicially manageable limits. These cases have stressed the importance of avoiding either the risk of duplicate recoveries on one hand, or the danger of complex apportionment of damages on the other." *AGC*, 459 U.S. at 543-44. In *AGC*, the court discussed the danger of duplicative recovery in an identical situation; that is, suits by indirect purchasers to recover damages for higher costs passed on to them, which are the result of an alleged antitrust violation higher up the chain. *See* 459 U.S. at 543-44 ("[P]otential plaintiffs at each level in the distribution chain would be in a position to assert conflicting claims to a common fund, the amount of the alleged overcharge, thereby creating the danger of multiple liability for the fund and prejudice to absent plaintiffs.").

The risk of duplicative recovery is great in this case, where there are multiple other potential plaintiffs at different stages in the distribution chain.[8]  Many of these potential plaintiffs have already brought suit, and new suits may yet be filed.  Allowing Plaintiffs to maintain these claims would present a risk of duplicative recovery, an inequitable result that this Court should not permit.

Apportionment of the damages claims is no solution here.  In *AGC*, the court noted that "massive and complex damages litigation not only burdens the court, but also undermines the effectiveness of treble-damages suits," such that complex damage apportionment is itself a factor that weighs against antitrust standing.  459 U.S. at 545.  The distribution chain for DSC and mobile phone products, like other LCD products, is many-layered and complex.  *See* Aguirre Decl. Ex. 23 (Snyder Report (Target, AT&T, Electrograph, Costco, et al.)) at n.164 ███████████████

_____

[8]  *See, e.g.*, Direct Purchaser Pls.' Third Am. Compl., MDL Dkt. No. 1416, Dec. 2, 2009; Nokia's First Am. Compl.; Motorola's Third Am. Compl.; *see also* Aguirre Decl. Ex. 23 (Snyder Report (Target, AT&T, Electrograph, Costco et al.)) ¶ 164 ███████████████

███████████████ ; *id.* ¶¶ 22-23 ███████████████



(citations omitted) (emphasis added)); *id.* Ex. 35 (Snyder Report (Kodak)) ¶ 117 . And, as the discovery produced in this case makes plain, the distribution chain through which a particular mobile phone or DSC panel (and later, product) passed is not clear. *See, e.g., id.* Ex. 23 (Snyder Report (Target, Costco, Electrograph, AT&T, et al.)) ¶ 33

Where, as here, the panel represents such a small part of the cost of the DSCs and mobile phones that Plaintiffs purchased, the risk of duplicative recovery and the corresponding problems of apportionment of damages make this case appropriate for summary judgment on grounds of antitrust standing.

  **4. Plaintiffs Lack Antitrust Standing Under The Laws Of States That Follow The *AGC* Approach.**

  Plaintiffs thus also lack antitrust standing to pursue claims for purchases of mobile phones and DSCs under the laws of states that have adopted or would adopt a remoteness analysis, either under *AGC* specifically or a corollary standard, including Arizona, California, Illinois, Iowa, Kansas, Michigan, Mississippi, Nebraska, Nevada, New Mexico, New York, Washington, and Wisconsin. Because the *AGC* analysis is equally applicable under these state laws, this Court should grant summary judgment on Plaintiffs' claims for mobile phone purchases.

  ***Arizona.*** Arizona's antitrust laws are construed in harmony with analogous federal provisions. Ariz. Rev. Stat. § 44-1412 (asserting that courts applying the Arizona Uniform State Antitrust Act "may use as a guide interpretations given by the federal courts to comparable antitrust statutes").

***Illinois.*** Although Illinois has passed an *Illinois Brick* repealer statute, courts have noted that "in other respects Illinois antitrust law uses the federal approach." *Int'l Bhd. of Teamsters v. Philip Morris*, 196 F.3d 818, 828 (7th Cir. 1999); *see also O'Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997) ("Federal antitrust standing rules apply under the Illinois Antitrust Act.").

***Nebraska.*** The Nebraska Supreme Court has held that the *AGC* factors apply to Nebraska's antitrust laws. *Kanne v. Visa U.S.A. Inc.*, 272 Neb. 489 (2006).

***Washington.*** "Washington courts are directed to interpret the CPA in light of federal court decisions interpreting federal antitrust law. Further, any departure from federal law must be for a reason rooted in Washington statutes or case law and not in general policy arguments." *Ass'n of Wash. Pub. Hosp. Dist. v. Philip Morris Inc.*, 241 F.3d 696, 706 (9th Cir. 2001) (internal citations, alterations, and quotation marks omitted).

Defendants incorporate the arguments regarding the state laws of California, Iowa, Kansas, Michigan, Mississippi, Nevada, New Mexico, New York, and Wisconsin set forth in the defendants' summary judgment briefing in the indirect purchaser class case. *See* IPP MSJ at 6-14; IPP Reply at 4-7. For ease of reference, Defendants provide key cases and statutes from each of those states below.

***California.*** The Ninth Circuit has noted that the *AGC* factors apply under California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 et seq. *See, e.g., Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000).

***Iowa.*** The Iowa Supreme Court has expressly adopted the *AGC* test to claims under Iowa law. *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198-99 (Iowa 2007).

***Kansas.*** Federal courts in Kansas have applied the *AGC* test to claims under Kansas's antitrust law. *See, e.g., Orr v. Beamon*, 77 F. Supp. 2d 1208, 1212 (D. Kan. 1999).

***Michigan.*** Michigan's circuit courts have applied the *AGC* test, *see, e.g., Whitesell Int'l Corp. v. Whitaker*, No. 05-518716-CZ, 2007 WL 6741070 (Mich. Cir. Ct. July 31, 2007), and Michigan law mandates that in construing the Michigan Antitrust Reform Act, "the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes." Mich. Comp. Law. Ann. § 445.784.

1    ***Mississippi.***  In *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 344 (Miss.

2    2004), the Mississippi Supreme Court applied principles of antitrust injury as interpreted under

3    federal law.  *See also In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 945 (N.D. Ill. 2009).  Judge

4    Hamilton subsequently concluded in *DRAM* that application of the *AGC* principles to Mississippi

5    antitrust law is appropriate.  516 F. Supp. 2d at 1095.

6    ***Nevada.***  Nevada's antitrust laws contain a provision stating that they "shall be construed in

7    harmony with prevailing judicial interpretations of the federal antitrust statutes."  Nev. Rev. Stat.

8    § 598A.050.

9    ***New Mexico.***  New Mexico's Antitrust Act provides that it "shall be construed in harmony

10   with judicial interpretations of the federal antitrust laws."  N.M. Stat. Ann. § 57-1-15; *see, e.g.*, *Nass-*

11   *Romero v. Visa U.S.A. Inc.*, 2012 N.M. App. LEXIS 31, at *9-10, 14 (N.M. Ct. App. Apr. 18, 2012).

12   ***New York.***  The Second Circuit has applied antitrust standing principles to determine

13   Donnelly Act claims.  *See G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766 (2d Cir. 1995);

14   *see also Stolow v. Greg Manning Auctions, Inc.*, 258 F. Supp. 2d 236, 244 n.8 (S.D.N.Y. 2003)

15   (noting that New York's antitrust law "is modeled on the Sherman Act and should be construed in

16   light of federal precedent" (internal quotation marks and citations omitted)).  State appellate courts

17   have also applied a remoteness test to indirect purchaser claims of injury under New York's Gen.

18   Bus. Law § 349.  *See, e.g.*, *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 303-04

19   (N.Y. App. Div. 2007).

20   ***Wisconsin.***  Wisconsin's circuit courts have applied the *AGC* factors to indirect antitrust

21   claims under state law.  *See, e.g.*, *Strang v. Visa U.S.A. Inc.*, No. 03-CV-011323, 2005 WL 1403769,

22   at *3 n.7 (Wis. Cir. Ct. Feb. 8, 2005).

23   For the same reasons described above with respect to Plaintiffs' Sherman Act claims,

24   Plaintiffs also lack standing to bring these state law claims.

25   **V.    CONCLUSION**

26   There is no genuine issue of material fact regarding whether DSCs and mobile phones are in

27   the same markets as LCD panels.  Moreover, Plaintiffs' alleged injuries for DSC and mobile phone

28   purchases are remote and speculative and allowing them to recover for these injuries would risk

23

1   duplicative recovery and complex apportionment of damages.  Plaintiffs cannot meet their burden of

2   showing either antitrust injury or antitrust standing based on purchases of DSCs and mobile phones.

3   Defendants therefore respectfully request that the Court grant their motion for summary judgment.

4                                          Respectfully submitted

5                                          Nossaman LLP

6   DATED:  June 29, 2012

7                                          By:  /s/    Carl L. Blumenstein
                                                    Carl L. Blumenstein

8                                          Christopher A. Nedeau (CA SBN 81297)
9                                          Carl L. Blumenstein (CA SBN 124158)
                                           Salezka L. Aguirre (CA SBN 260956)
10                                         NOSSAMAN LLP
                                           50 California Street, 34th Floor
11                                         San Francisco, CA  94111
                                           Telephone:  415.398.3600
12                                         Facsimile:  415.398.2438
                                           cnedeau@nossaman.com
13                                         cblumenstein@nossaman.com
                                           saguirre@nossaman.com
14
                                           Attorneys for Defendants AU Optronics Corporation
15                                         and AU Optronics Corporation America, Inc.

16

17                                         By:   /s/ Rachel S. Brass
                                           Joel S. Sanders (SBN 107234)
18                                         Rachel S. Brass (SBN 219301)
                                           Austin V. Schwing (SBN 211696)
19                                         Joel Willard (SBN 247899)
                                           GIBSON, DUNN & CRUTCHER LLP
20                                         555 Mission Street, Suite 3000
                                           San Francisco, California 94105
21                                         Tel: (415) 393-8200
                                           Fax: (415) 393-8306
22                                         jsanders@gibsondunn.com
                                           rbrass@gibsondunn.com
23
                                           Attorneys for Defendant Chunghwa Picture Tubes,
24                                         Ltd. as to the *Best Buy*, *Target et al.*, and *Costco*
                                           cases only

25

26

27

28

                                                24

1

By:   /s/ William S. Farmer
William S. Farmer (SBN 46694)

2

Jacob P. Alpren (SBN 235713)
Andrew H. Pontious (SBN 157174)

3

COLLETTE ERICKSON
FARMER & O'NEILL LLP

4

235 Pine Street, Suite 1300
San Francisco, CA  94104

5

Tel: (415) 788 4646
Fax: (415) 788 6929

6

wfarmer@collette.com

7

Attorneys for Defendant Chunghwa Picture Tubes,
Ltd. as to the *AT&T* case only

8

9

By:   /s/     Stephen P. Freccero
Stephen P. Freccero (SBN 131093)

10

Melvin R. Goldman (SBN 34097)
Derek F. Foran (SBN 224569)

11

MORRISON & FOERSTER LLP
425 Market Street

12

San Francisco, California 94105
(415) 268-7000 / (415) 268-7522

13

mgoldman@mofo.com
sfreccero@mofo.com

14

dforan@mofo.com

15

Attorneys for Defendants Epson Imaging Devices
Corporation and Epson Electronics America, Inc.

16

As to *Best Buy*, *Costco*, *Electrograph and Kodak*
actions only

17

18

By:   /s/ Brad D. Brian

19

Brad D. Brian
Gregory J. Weingart

20

Hailyn J. Chen
MUNGER, TOLLES & OLSON LLP

21

355 South Grand Avenue
Los Angeles, CA  90071-1560

22

Telephone: (213) 683-9100
Facsimile: (213) 687-3702

23

Brad.Brian@mto.com

24

Jerome C. Roth (State Bar No. 159483)
560 Mission Street, 27th Floor

25

San Francisco, CA  94105-2907
Telephone: (415) 512-4000

26

Facsimile:  (415) 512-4077

27

Attorneys for Defendants LG Display Co., Ltd.,
and LG Display America, Inc. as to the *AT&T* case

28

only

25

By:  /s/     Holly A. House
Holly A. House (State Bar No. 136045)
Kevin McCann (State Bar No. 120874)
Lee F. Berger (State Bar No. 222756)
Sean Unger (State Bar No. 231694)
PAUL HASTINGS LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Telephone:    (415) 856-7000
Facsimile:    (415) 856-7100
hollyhouse@paulhastings.com
leeberger@paulhastings.com

Attorneys for Defendants
LG Display Co., Ltd. and LG Display America,
Inc. as to the *Best Buy*, *Electrograph*, *Costco*, and
*Target* cases only

By:  /s/    Michael W. Scarborough
Michael W. Scarborough (SBN 203524)
SHEPPARD MULLIN RICHTER & HAMPTON
Four Embarcadero Center, 17th Floor
San Francisco, California  94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
mscarborough@sheppardmullin.com

Eric S. O'Connor (SBN 223244)
SHEPPARD MULLIN RICHTER & HAMPTON
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212-653-8700
Facsimile: 212-653-8701
eoconnor@sheppardmullin.com

Counsel for Defendants Samsung SDI America,
Inc. and Samsung SDI Co., Ltd.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT FOR
LACK OF ANTITRUST INJURY AND ANTITRUST STANDING

1

2          By:  /s/     Robert D. Wick
           Robert D. Wick (pro hac vice)
3          Neil K. Roman (pro hac vice)
           Derek Ludwin (pro hac vice)
4          COVINGTON & BURLING LLP
           1201 Pennsylvania Ave. NW
5          Washington, D.C. 20004
            (202) 662-6000 (telephone)
6          (202) 662-6291 (facsimile)
           rwick@cov.com
7
           Attorneys for Defendants Samsung Electronics
8          Co., Ltd., Samsung Semiconductor, Inc. and
           Samsung Electronics America, Inc. as to *AT&T*
9          case only

10
           By:  /s/     Harrison J. Frahn IV
11         Harrison J. Frahn IV (SBN 206822)
           SIMPSON THACHER & BARTLETT LLP
12         2250 Hanover Street
           Palo Alto, California 94304
13         (650) 251-5000 / (650) 251-5002
           hfrahn@stblaw.com
14
           Attorneys for Defendants Chi Mei Corporation,
15         Chimei Innolux Corporation (f/k/a Chi Mei
           Optoelectronics Corporation), Chi Mei
16         Optoelectronics
           USA, Inc., CMO Japan Co., Ltd., Nexgen
17         Mediatech, Inc. and Nexgen Mediatech USA, Inc.
           as to the *AT&T* and *Costco* cases only.
18

19         By:  /s/   Michael R. Scott
           Michael R. Scott (pro hac vice)
20         Michael J. Ewart (pro hac vice)
           HILLIS CLARK MARTIN & PETERSON P.S.
21         1221 Second Avenue, Suite 500
           Seattle, WA 98101-2925
22         Telephone:  (206) 623-1745
           Facsimile:  (206) 623-7789
23         mrs@hcmp.com; mje@hcmp.com

24         Attorneys for Defendants Chi Mei Corporation,
           Chimei Innolux Corporation f/k/a Chi Mei
25         Optoelectronics Corporation, Chi Mei
           Optoelectronics USA, Inc., CMO Japan Co., Ltd.,
26         Nexgen Mediatech, Inc. and Nexgen Mediatech
           USA, Inc. in *Best Buy* and *Target Corp., et al.*
27         cases only

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT FOR
LACK OF ANTITRUST INJURY AND ANTITRUST STANDING

1

2                           By:   /s/   Allison A. Davis
Allison A. Davis (Bar No. 139203)

3                           Sanjay Nangia (Bar No. 264986)
505 Montgomery Street, Suite 800

4                           San Francisco, CA  94111
DAVIS WRIGHT TREMAINE LLP

5                           Tel:  (415) 276-6500
Fax:  (415) 276-6599

6

7                           Nick S. Verwolf (admitted pro hac vice)
777 – 108th Ave. N.E., Suite 2300

8                           Bellevue, WA  98004
DAVIS WRIGHT TREMAINE LLP

9                           Tel:  (425) 646-6125
Fax:  (425) 646-6199

10                         Attorneys for Defendant

11                         Sanyo Consumer Electronics Co., Ltd. as to *AT&T*
and *Target Corp., et al.* cases only

12

13                           By:   /s/   Kent M. Roger

14                         MORGAN, LEWIS & BOCKIUS LLP
Kent M. Roger (SBN 95987)

15                         Herbert J. Hoying (SBN 257495)
One Market, Spear Street Tower

16                         San Francisco, CA 94105-1126
Tel:  (415) 442-1000

17                         Fax:  (415) 442-1001
kroger@morganlewis.com

18                         hhoying@morganlewis.com

19                         Counsel for Defendants Hitachi, Ltd., Hitachi
Electronic Devices (USA), Inc. and Hitachi

20                         Displays, Ltd.

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT FOR
LACK OF ANTITRUST INJURY AND ANTITRUST STANDING

1

2                                   By:  /s/   Brendan P. Cullen
                                    Brendan P. Cullen, Esq.
3                                   Shawn Joe Lichaa, Esq.
                                    1870 Embarcadero Road
4                                   Palo Alto, California  94303
                                    SULLIVAN & CROMWELL LLP
5                                   Tel:  (650) 461-5600
                                    Fax:  (650) 461-5700
6                                   cullenb@sullcrom.com
                                    lichaas@sullcrom.com
7
                                    SULLIVAN & CROMWELL LLP
8                                   Garrard R. Beeney, Esq.
                                    Bradley P. Smith, Esq.
9                                   Matthew S. Fitzwater, Esq.
                                    125 Broad Street
10                                  New York, NY  10004-2498
                                    Tel:  (212) 558-4000
11                                  Fax:  (212) 558-3588
                                    beeneyg@sullcrom.com
12                                  smithbr@sullcrom.com
                                    fitzwaterm@sullcrom.com
13
                                    Attorneys for Defendant
14                                  Philips Electronics North America Corporation

15
                                    By:  /s/   Robert E. Freitas
16                                  Robert E. Freitas
                                    Jason S. Angell
17                                  Jerry Chen
                                    FREITAS TSENG & KAUFMAN LLP
18                                  100 Marine Parkway, Suite 200
                                    Redwood Shores, CA  94065
19                                  Telephone:  (650) 593-6300
                                    Facsimile:   (650) 593-6301
20                                  rfreitas@ftklaw.com
                                    jangell@ftklaw.com
21                                  jchen@ftklaw.com

22                                  Attorneys for Defendant HannStar Display
                                    Corporation as to *Target Corp. et al.*, *Best Buy*,
23                                  *Costco* and *Electrograph* cases only

24

25

26

27

28

By: __/s/   Donald H. Mullins_____
      Donald H. Mullins

BADGLEY MULLINS LAW GROUP, PLLC
Donald H. Mullins (admitted pro hac vice)
Mark K. Davis (admitted pro hac vice)
701 Fifth Avenue, Suite 4750
Seattle, WA  98104
Tel: (206) 621-6566
Fax: (206) 621-9686
donmullins@badgleymullins.com
mdavis@badgleymullins.com

RAMSEY & ERHLICH LLP
Ismail Ramsey (Bar No. 189820)
803 Hearst Avenue
Berkeley, CA  97410
Tel:  (510) 548-3600
Fax:  (510) 291-3060
izzy@ramsey-ehrlich.com

Attorneys for Defendant HannStar Display
Corporation as to the *AT&T* action only


By: __/s/   Craig A. Benson_____
Kenneth A. Gallo (pro hac vice)
Joseph S. Simons (pro hac vice)
Craig A. Benson (pro hac vice)
Bruce H. Searby (pro hac vice)
2001 K Street NW
Washington, DC 20006
PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
(202) 223-7300 (telephone)
(202) 223-7420 (facsimile)
kgallo@paulweiss.com
jsimons@paulweiss.com
cbenson@paulweiss.com
bsearby@paulweiss.com

Attorneys for Defendants Sharp Corporation and
Sharp Electronics Corporation as to *AT&T* and *Best
Buy* cases only

By:  /s/   Jacob R. Sorensen
John M. Grenfell (CA Bar No. 88500)
Jacob R. Sorensen (CA Bar No. 209134)
Fusae Nara (pro hac vice)
Andrew D. Lanphere (CA Bar No. 191479)
PILLSBURY WINTHROP SHAW PITTMAN
LLP
50 Fremont Street
San Francisco, CA  94105
Telephone: (415) 983-1000
Facsimile: (415) 983-1200
john.grenfell@pillsburylaw.com
jake.sorensen@pillsburylaw.com

Attorneys for Defendants Sharp Corporation and
Sharp Electronics Corporation as to *Target Corp.,
et al.*, *Best Buy,* and *Electrograph* cases only


By:  /s/   John H. Chung

Christopher M. Curran (*pro hac vice*)
Email:  ccurran@whitecase.com
Martin M. Toto (*pro hac vice*)
Email:  mtoto@whitecase.com
John H. Chung (*pro hac vice*)
Email:  jchung@whitecase.com
Kristen J. McAhren (*pro hac vice*)
Email:  kmcahren@whitecase.com
**WHITE & CASE**LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone:     (212) 819-8200
Facsimile:      (212) 354-8113

Attorneys for Toshiba Corporation, Toshiba
Mobile Display Co., Ltd., Toshiba America
Electronic Components, Inc., and Toshiba America
Information Systems, Inc.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT FOR
LACK OF ANTITRUST INJURY AND ANTITRUST STANDING

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:   /s/   Michael E. Mumford
Paul P. Eyre
Ernest E. Vargo
Michael E. Mumford
Erin K. Murdock-Park
BAKER & HOSTETLER LLP
PNC Center
1900 East Ninth Street, Suite 3200
Cleveland, Ohio 44114
Telephone:  (216) 621.0200
Facsimile:  (216) 696.0740
peyre@bakerlaw.com
evargo@bakerlaw.com
mmumford@bakerlaw.com
emurdockpark@bakerlaw.com

Attorneys for Defendant Mitsui & Co. (Taiwan),
Ltd. as to *Electrograph* case

Attestation:  The filer of this document attests that the concurrence of the signatories thereto has been obtained.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT FOR LACK OF ANTITRUST INJURY AND ANTITRUST STANDING