1    HOLLY A. HOUSE (SB# 136045)
     KEVIN C. McCANN (SB# 120874)
2    SEAN D. UNGER (SB# 231694)
     PAUL HASTINGS LLP
3    55 Second Street
     Twenty-Fourth Floor
4    San Francisco, CA  94105-3441
     Telephone:  (415) 856-7000
5    Facsimile:  (415) 856-7100
     *hollyhouse@paulhastings.com*
6    *kevinmccann@paulhastings.com*
     *seanunger@paulhastings.com*
7

8    LEE F. BERGER (SB# 222756)
     PAUL HASTINGS LLP
9    875 15th Street, N.W.
     Washington, DC 20005
10   Telephone: (202) 551-1772
     Facsimile: (202) 551-0172
11   *leeberger@paulhastings.com*

12   Attorneys for Defendants
     LG Display Co., Ltd. and LG Display America, Inc.

13            UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15              SAN FRANCISCO DIVISION

| | |
|---|---|
| 16   IN RE:  TFT-LCD (FLAT PANEL) <br> 17   ANTITRUST LITIGATION | Case No. 3:09-cv-04997; 3:10-cv-04572 SI; <br> 3:10-cv-00117 SI; 3:10-cv-04945 SI; <br> 3:11-cv-00058 SI |
| 18   This Document Relates To: | |
| 19   *AT&T Mobility LLC, et al. v. AU Optronics* <br>      *Corporation, et al.*, Case No. 09-cv-04997 SI <br> 20 | Case No. M 07-md-01827 SI <br><br> MDL No. 1827 |
| 21   *Best Buy Co., Inc., et al. v. AU Optronics* <br>      *Corporation, et al.*, Case No. 10-cv-04572 SI | |
| 22   *Electrograph Systems, Inc., et al. v. Epson* <br>      *Imaging Devices Corporation, et al.*, <br> 23   Case No. 10-cv-00117 SI | **NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*** |
| 24   *Target Corp., et al. v. AU Optronics* <br>      *Corporation, et al.*, Case No. 10-cv-04945 SI <br> 25 | Date:        October 3, 2012 <br> Time:        9:00 a.m. |
| 26   *Costco Wholesale Corporation v. AU* <br>      *Optronics Corporation, et al.*, <br> 27   Case No. 11-cv-00058 SI | Courtroom: 10 <br> Judge:     Honorable Susan Y. Illston |

28

Case No. 09-cv-04997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1

## NOTICE OF MOTION

2       PLEASE TAKE NOTICE THAT on October 3, 2012 at 9:00 a.m. in Courtroom 10, 19th

3   Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Susan Illston,

4   defendants reflected in the signature block below ("Defendants"), will and hereby do move the

5   Court under Federal Rule of Civil Procedure 56 for an order granting partial summary judgment

6   in favor of Defendants as to "Plaintiffs" (defined to include Target Corp., Sears, Roebuck and

7   Co., Kmart Corp., Old Comp, Inc., Good Guys, Inc., RadioShack Corp., and Newegg, Inc.

8   (collectively, "Target"); Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Stores, L.P.,

9   Best Buy China Ltd., and Magnolia Hi-Fi, Inc. ("Best Buy"); Electrograph Systems, Inc. and

10  Electrograph Technologies Corp. ("Electrograph"); AT&T Mobility LLC, AT&T Corp., AT&T

11  Services, Inc., Bellsouth Telecommunications, Inc., Pacific Bell Telephone Company, AT&T

12  Operations, Inc., AT&T Datacomm, Inc., and Southwestern Bell Telephone Company

13  (collectively, "AT&T"); and Costco Wholesale Corporation ("Costco")) regarding Plaintiffs'

14  Clayton Act claims based on purchases of finished products.

15      Specifically, Defendants seek an order precluding each Plaintiff from asserting claims

16  under the Clayton Act based on their finished product purchases.  As to those purchases, Plaintiffs

17  are "indirect" purchasers, and Plaintiffs lack evidence suggesting they fall within one of the three

18  narrow exceptions to the "direct purchaser rule" announced in *Illinois Brick Co. v. Illinois*, 431

19  U.S. 720 (1977).  *See In re ATM Fee Litigation*, 2012 WL 2855813, --- F.3d ---, (9th Cir. July 12,

20  2002).  Plaintiffs therefore lack standing to assert claims under the Sherman and Clayton Acts for

21  purchases of finished products, and judgment should be entered as to those claims.

22      This motion is based on this Notice of Motion and Motion; the following Memorandum of

23  Points and Authorities; any reply memorandum as may be filed; the accompanying Declaration of

24  Lee F. Berger; the Declaration of Gregory Weingart; the arguments of counsel; and such other

25  material as the Court may consider.

26

27

28

Case No. 09-cv-04997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

-i-

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ..................................................................................................... i

ISSUES PRESENTED FOR DECISION ...................................................................... 1

I.       INTRODUCTION ............................................................................................ 1

II.      THE NINTH CIRCUIT'S DECISION IN *IN RE ATM FEE* LITIGATION ..................... 3

III.     BACKGROUND ............................................................................................... 8

         1.      These Plaintiffs Seek To Pursue Clayton Act Claims for Purchases
                 of LCD Finished Products..................................................................... 8

         2.      Plaintiffs Allege a Conspiracy To Fix the Prices of LCD Panels,
                 Not Finished Products Containing LCD Panels...................................... 10

         3.      During the Relevant Period Most Manufacturers of LCD Panels
                 Did Not Own or Control the Sellers of LCD Finished Products. ............. 11

         4.      No Plaintiff Seeking To Pursue Clayton Act Claims for Purchases
                 of LCD Finished Products Has Offered Evidence as to Who
                 Manufactured Each of the Panels in the Products They Seek To Put
                 at Issue................................................................................................. 12

IV.      STANDARD OF REVIEW ................................................................................ 13

V.       ARGUMENT ................................................................................................... 14

         A.      Plaintiffs Are Indirect Purchasers of LCD Panels.................................. 14

         B.      No Exception to *Illinois Brick*'s "Direct Purchaser" Rule Applies. ..................... 15

                 1.      Plaintiffs Offer No Evidence Raising a Disputed Question of
                         Material Fact that They Can Invoke the Cost-Plus Exception.................. 15

                 2.      Plaintiffs Offer No Evidence Raising a Disputed Question of
                         Material Fact Suggesting They Can Invoke the Co-Conspirator
                         Exception. ................................................................................. 16

                 3.      Plaintiffs Can Offer No Evidence Raising a Disputed Question of
                         Material Fact on a Product-by-Product Basis that a Specific Alleged
                         Conspirator Both Manufactured the LCD Panel in Their LCD
                         Finished Product and Owned or Controlled the Seller of that
                         Finished Product to the Plaintiff. ............................................... 16

Case No. 09-cv-04997, 10-cv-04572 SI,                                    MOTION FOR PARTIAL SUMMARY
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,          -i-            JUDGMENT FOR LACK OF STANDING
Case No. M 07-md-1827 SI                                         UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

# TABLE OF CONTENTS
(continued)

Page

a.   Plaintiffs Do Not Have Standing To Assert Claims Based on Purchases of Products Containing Panels Made by Non-Conspirators. ................................................................ 17

b.   Plaintiffs Do Not Have Standing To Assert Claims Based on Purchases of Finished Products From Companies that Are Not Controlled by Panel-Making Alleged Conspirators. .............. 17

c.   Plaintiffs Do Not Have Standing To Assert Claims Based on LCD Finished Product Purchases Where Different Alleged Conspirators Manufactured the LCD Panel and the LCD Finished Product. ........................................................ 19

d.   Plaintiffs Have No Evidence To Prove Clayton Act Standing For Any Individual LCD Finished Product Purchase. ........................................................ 21

4.   *In re ATM Fee* Precludes Recognizing New Exceptions. ........................ 22

VI.   CONCLUSION ........................................................................... 23

Case No. 09-cv-04997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,          -ii-
Case No. M 07-md-1827 SI

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## CASES

4

*Anderson v. Liberty Lobby, Inc.*,
5
    477 U.S. 242 (1986) ......................................................................................................... 13

6

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*,
    523 F.3d 1116 (9th Cir. 2008) ...................................................................................... 4,5

7

*Freeman San Diego Ass'n of Realtors*,
8
    322 F.3d 1133 (9th Cir. 2003) ......................................................................................... 6

9

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .................................................................................................*passim*
10

*In re ATM Fee Litigation*,
11
    2012 WL 2855813, --- F.3d --- (9th Cir. July 12, 2002)................................................*passim*

12

*In re Cathode Ray Antitrust Litig.*,
    No. 07-5944, D.I. 1221 (N.D. Cal. May 31, 2012) ................................................. 5, 23
13

14

*In re Linerboard Antitrust Litigation*,
    305 F.3d 145 (3d Cir. 2002) ....................................................................................... 6, 22
15

*In re Sugar Indus. Antitrust Litigation.*,
16
    570 F.2d 13 (3d Cir. 1978) ............................................................................................... 6

17

*Kansas v. UtiliCorp United, Inc.*,
    497 U.S. 199 (1990) ..................................................................................................... 2, 4
18

19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................................... 14
20

*Royal Printing Co. v. Kimberly-Clark Corp.*,
21
    621 F.2d 323 (9th Cir. 1980) .....................................................................................*passim*

22

*Sullivan v. City of Augusta*,
    511 F.3d 16 (1st Cir. 2007) ............................................................................................ 19
23

24

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ........................................................................ 21
25

## OTHER AUTHORITIES

26

Fed. R. Civ. P. 56(a).............................................................................................................. 13

27

28

Case No. 09-cv-4997, 10-cv-04572 SI,                                     MOTION FOR PARTIAL SUMMARY
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,    -iii-    JUDGMENT FOR LACK OF STANDING
Case No. M 07-md-1827 SI                                        UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

**ISSUES PRESENTED FOR DECISION**

Under the "direct purchaser rule" announced by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) and as recently analyzed in *In re ATM Fee Litigation*, 2012 WL 2855813, --- F.3d ---, (9th Cir. July 12, 2002), do Plaintiffs lack standing to pursue claims under the Sherman and Clayton Acts when they did not purchase allegedly price-fixed LCD panels but instead purchased finished products, some of which allegedly included such panels?

**RELEVANT PRIOR ORDERS**

| Date | MDL Dkt. No. | Order and Holding |
|---|---|---|
| Mar. 3, 2009 | 873 | *Order Denying Tatung Company of America's Motion to Dismiss Direct Purchaser Plaintiffs' First Amended Complaint* (Court held that Tatung Company of America had not shown that it was not a proper defendant under *Royal Printing* and *Freeman*, but could renew its arguments upon a fuller factual record.) |
| Mar. 28, 2010 | 1641 | *Order Granting in Part and Denying in Part Direct Purchaser Plaintiffs' Motion for Class Certification; Granting Defendants' Motion to Strike Untimely Declarations* (Court held that *Illinois Brick* arguments against purchasers of finished products did not defeat the typicality requirement for class certification.) |
| Mar. 28, 2010 | 1643 | *Order Denying Tatung Company of America's Motion for Leave to File a Motion for Reconsideration of March 3, 2009 Order Denying Motion to Dismiss* (Court reaffirmed prior holding that Tatung Company of America was a proper defendant under *Royal Printing* and *Freeman*.) |
| Nov. 7, 2011 | 4108 | *Order Denying Toshiba Entities' Motion for Partial Summary Judgment Under* Illinois Brick (Court held that *Royal Printing* exception applied to direct purchasers.) |
| June 27, 2012 | 6028 | *DPP Jury Instructions*, at 3 (Court defined Finished Products Class as plaintiffs who purchased finished products directly from Toshiba, one of its alleged co-conspirators, or one of their subsidiaries or affiliates.) |
| June 28, 2012 | N/A | *DPP Trial Transcript*, at 3576:2-4 (Court denied Toshiba's request for verdict form requiring ownership or control to establish *Royal Printing* exception.) |

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

-1-

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1    **I.      INTRODUCTION**

2            The impact of the Ninth Circuit's decision last week in *In re ATM Fee Antitrust*

3    *Litigation*, ---F.3d ---, 2012 WL 2855813 (9th Cir. July 12, 2012) is both significant and

4    immediate.  In particular, the *In re ATM Fee* decision confirmed that a plaintiff who does not

5    purchase and pay for the specific product or service whose price is fixed by agreement is not a

6    "direct purchaser" within the meaning of the Clayton Act and lacks standing to sue unless one of

7    three "limited" exceptions apply—the cost-plus exception, the co-conspirator exception, or the

8    "ownership or control" exception.  *Id.* at *6.  Applying the Supreme Court's admonition in

9    *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 216 (1990), the Ninth Circuit refused to

10   recognize new exceptions to the *Illinois Brick* rule and held that existing exceptions should be

11   given narrow readings.  *Id.* at *13.

12           In holding that the only plaintiffs with Clayton Act standing were those who paid the fixed

13   price "(and not an upstream price that was then passed on)," *id.* at *12, the Ninth Circuit

14   expressly disagreed with this Court's previous broader construction of the co-conspirator

15   exception to allow suit based on finished product purchases despite alleging only a panel

16   conspiracy.  *Id.* at *12 n.7.  The Ninth Circuit stated that it "would have to extend our current co-

17   conspirator exception" to accept that argument, noted that other courts, including this Court in

18   this case, have done so, but stated that "*we decline to do so*."  *Id.* at *12 (emphasis added).  The

19   Ninth Circuit's refusal to expand the *Royal Printing Co. v. Kimberly-Clark Corp.,* 621 F.2d 323

20   (9th Cir. 1980) exception beyond purchases from a direct purchaser owned or controlled by a co-

21   conspirator is also at odds with this Court's more lenient application of the *Royal Printing*

22   exception in these cases to include non-parental affiliation.  *E.g.,* D.I. 666; D.I. 1641.

23           In these cases, the product allegedly price-fixed is the LCD *panel*.   Yet, these Plaintiffs

24   seek to bring "direct" federal claims, based on the purchase of a finished *product*, not a panel.

25   Even if panel prices were fixed with the expectation and intent that higher prices for finished

26   products would result, that is not enough, under the square holding of *In re ATM Fee*, to give

27   antitrust standing to anyone who purchases finished products from a member of the conspiracy.

28   *In re ATM Fee*, therefore, mandates the dismissal of much, if not all, of the Clayton Act claims

Case No. 09-cv-4997, 10-cv-04572 SI,                                    MOTION FOR PARTIAL SUMMARY
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,          -2-        JUDGMENT FOR LACK OF STANDING
Case No. M 07-md-1827 SI                                             UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

Plaintiffs pursue as purported "direct" purchasers.  Specifically:

- The Court should dismiss Plaintiffs' Clayton Act claims based on Plaintiffs' purchases (even from alleged conspirators) of finished products containing panels not manufactured by an alleged conspirator because those were not direct purchases of a price-fixed product;

- The Court should dismiss Plaintiffs' Clayton Act claims based on Plaintiffs' purchases of finished products from companies that are not owned and controlled by an alleged conspirator;

- The Court should dismiss Plaintiffs' Clayton Act claims based on Plaintiffs' purchases of finished products made by an alleged conspirator where the finished product contains a panel made by a different alleged conspirator because the latter does not own or control the former; and

- As a corollary of the foregoing, the Court should dismiss Plaintiffs' Clayton Act claims as to each purchase of a finished product for which a Plaintiff cannot identify the panel manufacturer.

## II.     THE NINTH CIRCUIT'S DECISION IN *IN RE ATM FEE LITIGATION*

The impetus for this motion is the Ninth Circuit's July 12, 2012 decision in *In re ATM Fee Litigation*.  In *In re ATM Fee*, plaintiff bank cardholders brought suit against bank defendants and an automated teller machine ("ATM") network, alleging that the defendants had illegally conspired to fix the price of one of four fees involved in a "foreign ATM" transaction.  *In re ATM Fee*, 2012 WL 2855813, at *1.  The district court granted summary judgment for the defendants on the ground that the plaintiffs lacked antitrust standing, and the Ninth Circuit affirmed.

"A 'foreign ATM transaction' occurs when ATM cardholders withdraw money from their bank account using an ATM not owned by their bank (which issued them the card)."  *Id.* at *1. The transaction involves four parties: (1) the cardholder; (2) the card-issuing bank; (3) the entity that owns the ATM Machine; and (4) the ATM network, i.e., the entity that connects the ATM owners with card-issuing banks.  *Id.* at *1.  Plaintiffs in *In re ATM Fee* were cardholders. Defendants were both the owner of the STAR ATM network and certain banks that both owned

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI
-3-
MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1   ATM machines and issued ATM cards.  *Id.*

2       Plaintiffs' theory was that the defendant banks (who were members of the STAR network)

3   and STAR itself conspired to set the "interchange fee," which is one of the four fees an ATM

4   transaction triggers.  *Id.* at *2.  The four fees are:  (1) the "surcharge," paid from the cardholder to

5   the owner of the ATM; (2) the "foreign ATM fee," paid from the cardholder to the card-issuing

6   bank; (3) the "switch fee," paid from the card-issuing bank to the ATM network; and (4) the

7   "interchange fee," paid from the card-issuing bank to the ATM owner.  *Id.*  Only two of the fees

8   were relevant to the case.  Plaintiffs alleged that defendants and STAR conspired to set the

9   "interchange" fee, which was in turn passed on to them as part of the "foreign ATM fee."  *Id.* at

10  *2, *6 ("In other words, the Bank Defendants pass on the cost of the interchange fees through the

11  foreign ATM fees.").

12      Plaintiffs sought to proceed under federal law, arguing that they could proceed as "direct

13  purchasers" despite the fact that they never paid the price-fixed "interchange fee."  *Id.*  Similar to

14  Plaintiffs here, they argued that they had standing because they "'purchased directly from price-

15  fixing Defendants'" which "conspired to fix interchange fees for the purpose and effect of fixing

16  foreign ATM fees."  *Id.* at *9, 12.  The Ninth Circuit disagreed.

17      The Ninth Circuit explained that the "'Supreme Court has interpreted [§ 4 of the Clayton

18  Act]'" "'narrowly, thereby constraining the class of parties that have statutory standing to recover

19  damages through antitrust suits.'"  *Id.* at *5 (quoting *Del. Valley Surgical Supply Inc. v. Johnson*

20  *& Johnson*, 523 F.3d 1116, 1119 (9th Cir. 2008)).  Under *Illinois Brick Co. v. Illinois*, 431 U.S.

21  720 (1977), the Ninth Circuit reasoned that "indirect purchasers may not use a pass-on theory to

22  recover damages [under federal laws] and thus have no standing to sue."  *Id.*  Noting that the

23  "Supreme Court has expressed reluctance in carving exceptions to the *Illinois Brick* rule[,]" the

24  Ninth Circuit nonetheless recognized that "limited exceptions do exist."  *Id.*[1]  The Court

---

[1] The Ninth Circuit explained that the Supreme Court has strictly policed exceptions to *Illinois Brick*.  *In re ATM Fee*, 2012 WL 2855813 at *13; *see also Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 216 ("The rationales underlying *Hanover Shoe* and *Illinois Brick* will not apply with equal force in all cases.  We nonetheless believe that ample justification exists for our stated decision not to carve out exceptions to the [direct purchaser] rule for particular types of markets.") *(*quotations omitted).  Others in this district have agreed and emphasized that *Illinois*

(continued)

Case No. 09-cv-4997, 10-cv-04572 SI,                -4-                MOTION FOR PARTIAL SUMMARY
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,                        JUDGMENT FOR LACK OF STANDING
Case No. M 07-md-1827 SI                                   UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1    identified only three:  (1) "an exception for indirect purchasers when a pre-existing cost-plus

2    contract with the direct purchaser exists[;]" (2)  a co-conspirator exception; and (3) an exception

3    where "customers of the direct purchaser either own or control the direct purchaser," "or when a

4    conspiring seller owns or controls the direct purchaser[.]"  *Id.* at *6.

5         *In re ATM Fee* centered on the scope of these three exceptions and whether plaintiffs

6    could (or had) properly invoked any of them.  The Court walked through a four-part analysis, and

7    it is that analysis that shapes this motion and impacts the claims asserted by Plaintiffs:

8         • **Cardholders Were Indirect Purchasers Because They Did Not Directly Pay**
9           **the Interchange Fee.**

10        First, the Ninth Circuit held that plaintiff cardholders were indirect purchasers.  "The

11   district court found plaintiffs to be indirect purchasers, because they do not directly pay the fixed

12   interchange fee," and the Ninth Circuit agreed.  *Id.* at *6.

13        • **Cardholders Did Not Invoke the Cost-Plus Exception.**

14        Second, the Ninth Circuit observed that the plaintiffs did not allege that they had pre-

15   existing cost-plus contracts with the defendant banks and therefore the cost-plus contract

16   exception did not apply.  *Id.* at *6.

17        • **Cardholders Could Not Invoke the Co-Conspirator Exception Because They**
18          **Could Not Show the Price They Paid Was Set by the Conspiracy.**

19        Third, the Ninth Circuit agreed that the plaintiffs could not invoke the co-conspirator

20   exception, because "under the co-conspirator exception recognized in this circuit, the price paid

21

22   (continued)
     Brick must be strictly enforced.  For example, Judge Legge, sitting as Special Master in the *In re*
23   *Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. CV–07–5944–SC (N.D. Cal. May 31,
     2012), recently issued a report where he explained:  "One must conclude that *Illinois Brick* is still
24   the law and the policy of the United States Supreme Court, and that it is a bright line rule.  It
     applies even if otherwise meritorious claims are barred by the 'direct purchasers only' rule."  *Id.*
25   at Docket No. 1221 ("Report and Recommendation Regarding Defendants Joint Motion for
     Summary Judgment") at *8 (rejecting as impermissible claims based on indirect purchases of
26   finished goods such as those here); s*ee also Del. Valley Surgical Supply*, 523 F.3d at1120-21 (the
     "direct purchaser rule" is a bright line rule).  Consistent with these admonitions, the Ninth Circuit
27   in *In re ATM Fee* repeatedly counsels that the few recognized exceptions should be given a
     narrow construction.  *See* 2012 WL 2855813, at *1, *5, *6, *9, and *13.

28

Case No. 09-cv-4997, 10-cv-04572 SI,                                    MOTION FOR PARTIAL SUMMARY
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,        -5-        JUDGMENT FOR LACK OF STANDING
Case No. M 07-md-1827 SI                                          UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1   by a plaintiff must be set by the conspiracy and *not merely affected by the setting of another*

2   *price*," and plaintiffs had no evidence to meet that standard.  *Id.* at *11 (emphasis added).

3        The Court explained that "[t]he ATM Network (not the card-issuing bank, nor the ATM

4   owners) establishes the interchange fee.  Individual card-issuing banks set their own ATM fees."

5   *Id.* at *1.  Plaintiffs argued that "conspiring to set a price for the purpose and effect of raising the

6   price at issue equates to fixing that price and makes the payers of the raised price direct

7   purchasers."  *Id.* at *10.  Plaintiffs cited *Freeman San Diego Ass'n of Realtors*, 322 F.3d 1133

8   (9th Cir. 2003), where the plaintiffs paid fees to Sandicor, a Multiple Listing Service ("MLS"),

9   and Sandicor in turn paid (allegedly fixed) "support fees" to realtor associations that were its

10  shareholders.  The Ninth Circuit again rejected plaintiffs' position:  "Standing existed in

11  *Freeman*, not because the association fixed the support fees for the purpose and effect of raising

12  MLS fees, but because of the associations' ownership and control of Sandicor (the direct

13  purchaser)."  2012 WL 2855813 at *11.  "Here, unlike *Freeman*, the Bank Defendants

14  independently set the fee paid by Plaintiff (*i.e.*, the foreign ATM fee) and the amount of such fees

15  varies between Bank Defendants."  *Id.* at *12.  The Ninth Circuit held that the plaintiffs' theory

16  "contradicts *Illinois Brick*, because *Illinois Brick* rejected exceptions for markups by middlemen

17  or when the price-fixed good is a vital input to a larger product."  *Id.* at *10.

18       In this connection, the Ninth Circuit respectfully disagreed with the reasoning of an order

19  in this *TFT-LCD* litigation (this Court's March 28, 2010 order certifying a direct purchaser

20  product class).  The *In re ATM Fee* plaintiffs cited that decision asking that the Court of Appeal

21  extend the co-conspirator exception to them because they had purchased banking services from,

22  and paid the foreign ATM fee directly to, the Bank Defendants that allegedly fixed the different

23  interchange fee.  *Id.*  Recognizing that this Court had adopted similar reasoning in holding that

24  "consumers of the final [LCD] products are direct purchasers because they 'purchased from the

25  alleged violator[,]'" *id.* at *12 n.7, the Ninth Circuit "decline[d] to do so."  *Id.* at *12.[2]  The Ninth

26  _____

27  [2] The Ninth Circuit also distinguished or criticized two decisions on which this Court had relied,
    *In re Sugar Indus. Antitrust Litigation.*, 570 F.2d 13 (3d Cir. 1978) and *In re Linerboard Antitrust Litigation*, 305 F.3d 145 (3d Cir. 2002).  *Id.* at *12 n.7.

28

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI                                    -6-

1    Circuit instead explained that it "*recognize[s] the co-conspirator exception only when the*

2    *conspiracy involves setting the price paid by the plaintiffs*." *Id.* (emphasis added).[3]

3
4         • **Cardholders Could Not Invoke the Ownership and Control Exception**
              **Because They Could Not Show a Conspiracy Participant Directly Owned the**
5             **Actual Direct Purchaser.**

6         Finally, the Ninth Circuit held that the plaintiffs could not invoke the "ownership and

7    control" exception.  Under *Royal Printing*, this exception allows an indirect purchaser to sue only

8    "where a conspiracy seller owns or controls the direct purchaser."  *Id.* at *6.

9         Plaintiffs argued that they fell within the *Royal Printing* exception as supposedly

10   expanded by *Freeman* because (they claimed) there was no realistic possibility that the defendant

11   banks (members of STAR) would sue STAR or their co-conspirator banks.  *Id.* at *13.  In some

12   instances, that would require a co-conspirator (a bank that paid the interchange fee to the ATM

13   owner) to sue another co-conspirator (who owned the ATM Machine).  Citing to language in

14   *Freeman* that "'[i]ndirect purchasers can sue for damages if there is no realistic possibility that

15   the direct purchaser will sue its supplier over the antitrust violation[,]" plaintiffs argued they had

16   standing.  *Id.* at *13 (quoting *Freeman*, 322 F.3d at 1145-46).  The Ninth Circuit again disagreed.

17        The Court explained that the quoted *Freeman* language did not displace the narrow

18   ownership or control test, because "*Freeman* relied on ownership and control to find standing"—

19   namely that "the co-conspiring realtor associations owned and controlled Sandicor (the direct

20   purchaser) and had the power to appoint Sandicor's board of directors."  *Id.*  "Therefore," the

21   Court explained, "*Freeman* outlines that whether a realistic possibility of suit exists, depends on

22   the existence of [such] ownership and control between the direct purchaser and the seller."  *Id.*

23   The Court then "decline[d] to extend the exception noted in *Royal Printing* and *Freeman* to

24   situations where the seller does not own or control the direct purchasers, because, after *Royal*

25   *Printing*, the Supreme Court stated that '[t]he possibility of allowing an exception, even in rather

26

27   ――――――――――――
     [3] In this regard the Ninth Circuit acknowledged that "this co-conspirator exception is not really an
28   exception at all."  *In re ATM Fee*, 2012 WL 2855813 at *7.

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,            -7-         MOTION FOR PARTIAL SUMMARY
Case No. M 07-md-1827 SI                                             JUDGMENT FOR LACK OF STANDING
                                                                    UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1    meritorious circumstances, would undermine the rule.'" *Id.* (quoting *UtiliCorp*, 497 U.S. at 216).

2            Applying this rule under summary judgment standards, the Ninth Circuit held that

3    plaintiffs lacked standing because "[p]laintiffs do not allege that STAR owns or controls Bank

4    Defendants or that Bank Defendants own or control other Bank Defendants." *Id.* at 13*; see also*

5    *id.* at 14, n.10 ("As for the time period from July 2, 2000, to February 1, 2001 [the time prior to

6    STAR's public ownership], there are no allegations that Bank Defendants controlled one another

7    or conspired to fix foreign ATM fees.  As such, the concern in *Royal Printing* of a controlling

8    party prohibiting the direct purchaser from suing is not present here.").

9            As explained below, each of these holdings applies with full force to preclude Plaintiffs'

10   federal claims as purported direct purchasers of finished goods.

11   **III.    BACKGROUND**

12           For the Plaintiffs at issue in this motion, the undisputed relevant facts mirror the facts in *In*

13   *re ATM Fee*.  As in *In re ATM Fee*, these Plaintiffs do not allege they purchased the price-fixed

14   product (an LCD panel).  As in *In re ATM Fee*, these Plaintiffs admit that they do not allege a

15   conspiracy to fix the price of what they actually purchased (an LCD finished product).  As in

16   *In re ATM Fee*, these Plaintiffs have no evidence that the direct purchasers from which Plaintiffs

17   themselves purchased were owned or controlled by alleged conspiracy members.  Unlike in *In re*

18   *ATM Fee*, but equally relevant because of it, many of the purported "direct purchasers" from

19   which plaintiffs bought are not even themselves direct purchasers.  Unlike in *In re ATM Fee*, but

20   equally relevant because of it, these Plaintiffs lack evidence as to who manufactured the panels

21   later combined into the LCD finished products they ultimately purchased.

22           **1.     These Plaintiffs Seek To Pursue Clayton Act Claims for Purchases of LCD
23                    Finished Products.**

24           Defendants bring this motion against the AT&T, Best Buy, Costco, Electrograph, and

25   Target Plaintiffs' Sherman and Clayton Act claims.  All of these Plaintiffs base their claims on

26   purchases of finished products such as televisions and mobile phones containing LCD panels.

27   None of these Plaintiffs (in contrast to other plaintiffs in this MDL, such as Dell and HP) base

28

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,                    -8-
Case No. M 07-md-1827 SI

their claims on direct purchases of allegedly price-fixed LCD panels.[4]  Plaintiff Electrograph was

a distributor that purchased LCD finished products for resale primarily to resellers and system

integrators.[5]  Plaintiffs Best Buy, Costco, CompUSA, Good Guys, Kmart, Newegg, RadioShack,

Sears, and Target were retailers that purchased LCD finished products for resale to consumers.[6]

Plaintiff AT&T was a telecommunications provider that purchased LCD finished products for

resale to its customers (national retail chains, authorized sales agents and consumers).[7]  All these

Plaintiffs admit that their claims are based on the purchase of LCD finished products.[8]  And

Plaintiffs' experts calculate damages based on purchases of LCD finished products only, not LCD

panels.[9]  Indeed, the Plaintiffs' expert charged with calculating their "direct purchaser" damages,

---

[4] For purposes of this motion only, "panels" includes "modules."  Defendants reserve the issue of whether or under what circumstance, a module that incorporates an LCD panel is a separate product or step in distribution for purposes of analysis under *In re ATM Fee* or other authorities.

[5] *See Electrograph Systems, Inc., et al. v. Epson Imaging Device Corp., et al.*, No. 3:10-cv-00117, Dkt. 93, Amended Comp. ("Electrograph Comp.") ¶ 16 (Sept. 23, 2011).

[6] *See, e.g., Best Buy Co., Inc., et al. v. AU Optronics Corp., et al.*, No. 3:10-cv-04572, Dkt. 37, Amended Comp. ("Best Buy Comp.") ¶ 12; *Costco Wholesale Corp. v. AU Optronics Corp., et al.*, No. 3:11-cv-00058, Dkt. 96, Second Amended Comp. (Dec. 23, 2011) ("Costco Comp.") ¶¶ 1, 5; *Target Corp., et al. v. AU Optronics Corp., et al.*, No. 3:10-cv-04945, Dkt. 77, Second Amended Comp. (Sept. 9, 2011) ("Target Comp.") ¶¶ 19, 22, 26, 38, 41.

[7] *See AT&T Mobility LLC, et al. v. AU Optronics Corp., et al.,* No. 3:09-cv-4997, Dkt. 150, Third Amended Comp. (Sept. 9, 2011) ("AT&T Comp.") ¶¶ 1, 73-76.

[8] *See, e.g.,* Declaration of Lee F. Berger in Support of Motion for Partial Summary Judgment for Lack of Standing ("Berger Decl."), Ex. A, Best Buy Plaintiffs' Responses to Defendant LG Display Co., Ltd's First Set of Requests for Admissions No. 6 (Jan. 30, 2012) ("Best Buy is not currently asserting any claim based on its purchase or acquisition of any LCD Panels.  Best Buy's claims are limited at this time to those arising from its purchase of LCD Products."); Ex. B, Target Plaintiffs' Responses to LG Display Co., Ltd's First Set of Requests for Admissions No. 6 (Jan. 30, 2012) ("Plaintiffs admit that they did not purchase stand-alone LCD panels during the Conspiracy Period."); Costco Comp. ¶ 1 ("Costco purchased finished products."); Ex. C, Costco Plaintiff's Responses to LG Display Co., Ltd.'s First Set of Requests for Admissions Nos. 4-6 (Dec. 5, 2011) (admitting lack of panel purchases); Ex. D, Electrograph Plaintiffs' Supplemental Responses to LG Display Co., Ltd's First Set of Requests for Admissions No. 6 (Mar. 7, 2012) ("Electrograph admits that its claims are not based on purchases of stand-alone LCD Panels and states that its claims are based on purchases of LCD Products…."); Declaration of Gregory Weingart in Support of Motion for Partial Summary Judgment for Lack of Standing ("Weingart Decl."), Ex. A, AT&T's Responses to LG Display Co., Ltd.'s First Set of Requests for Admission, Nos. 4, 6 (Jan. 30, 2012) ("AT&T admits that it did not purchase standalone LCD Panels during the Relevant Period.").

[9] *See, e.g.,* Berger Decl., Ex. E, at 80, Expert Report of B. Douglas Bernheim, PhD Concerning Best Buy Co. Inc. et al. (Dec. 15, 2011) ("Best Buy Bernheim Opening Report") ("I calculated the total overcharges incurred by [plaintiff] on its purchases of *LCD products* from defendants.") (emphasis added); Berger Decl., Ex. F at 80, Expert Report of B. Douglas Bernheim, PhD (continued)

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

Dr. Bernheim, expressly relies on his finding that there is a "100% pass-on rate to the dollar-value overcharges for LCD panels" to find that the overcharge on the price-fixed LCD panels was passed on to Plaintiffs when they purchased LCD finished products.[10]

### 2. Plaintiffs Allege a Conspiracy To Fix the Prices of LCD Panels, Not Finished Products Containing LCD Panels.

Plaintiffs admit that the conspiracy they allege aimed to fix the prices of LCD *panels*, not the prices of LCD finished products. *See* Berger Decl., Ex. I, Electrographs' Obj. & Suppl. Responses to Defs.' First Set of Requests for Admission, at No. 178 (Mar. 8, 2012) ("Electrograph admits that it does not allege that the Conspirators entered into a separate price-fixing conspiracy related to TFT-LCD Finished Products . . . ."); Ex. J, Target Plfs.' Supp. Responses to Defs.' First Set of Requests for Admission, at No. 190 (Mar. 6, 2012) ("Plaintiffs admit that they do not allege that the Conspirators entered into a separate price fixing conspiracy related to LCD Finished Products . . . ."); Ex. K, Costco Wholesale Corp.'s Second Supp. Responses & Objections to Defs.' First Set of Requests for Admission, at Nos. 209-51 (Mar. 2, 2012) ("Costco admits that it has no evidence that the conspirators entered into agreements to fix, raise, or maintain the prices for LCD products themselves."); Ex. L, Letter from Laura Nelson to Chris Wyant, dated Mar. 5, 2012, at 2 (Best Buy "takes the position that the evidence that the Conspirators entered into agreements to fix, raise, or maintain prices of TFT-LCD Panels and that those price increases *affected* the prices of TFT-LCD Finished Products . . . .") (emphasis added);

---

(continued)
Concerning Overcharges to Costco Wholesale Corporation on Products Containing LCD Panels (Dec. 15, 2011) ("Costco Bernheim Opening Report") (same); Berger Decl., Ex. G at 80, Expert Report of B. Douglas Bernheim, PhD Concerning Electrograph Systems Inc. and Electrograph Technologies Corp. (Dec. 15, 2011) ("Electrograph Bernheim Opening Report") (same); Berger Decl., Ex. H at 80, Expert Report of B. Douglas Bernheim, PhD Concerning Target Corp., Sears, Roebuck and Co., Kmart Corp., Old Comp. Inc., Good Guys Inc., RadioShack Corp. and Newegg Inc. (Dec. 15, 2011) ("Target Bernheim Opening Report") (same); Weingart Decl., Ex. B, at 79, Expert Report of B. Douglas Bernheim, PhD Concerning AT&T Mobility LLC (Dec. 21, 2011) ("AT&T Bernheim Opening Report") (same).

[10] *See, e.g.*, Berger Decl., Ex. E, at 78 ("I computed damages for individual plaintiffs by applying a 100% pass-through rate to the dollar-value overcharges for LCD panels."); Berger Decl., Ex. F, at 78 (same); Berger Decl., Ex. G, at 78 (same); Berger Decl., Ex. H, at 78 (same); Weingart Decl., Ex. B, at 77 (same).

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI                    -10-                    MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1    Weingart Decl., Ex. C, AT&T Responses & Objections to Defs.' First Joint Set of Interrogatories,

2    at 49-50 (Jan. 30, 2012) (AT&T contends that "defendants entered into agreements with other

3    Co-conspirators to fix, raise, or maintain the prices of *LCD Panels* at supracompetitive levels,"

4    which had the "*corresponding effect* of increasing, to supracompetitive levels, the prices that

5    AT&T paid for LCD products containing the price-fixed LCD Panels.") (emphasis added).

6
7
###        3.    During the Relevant Period Most Manufacturers of LCD Panels Did Not Own or Control the Sellers of LCD Finished Products.

8              Together, Plaintiffs bring Sherman and Clayton Act claims for their LCD finished product

9    purchases from at least 40 suppliers. *See* Berger Decl., ¶25, Ex. X.  Although Plaintiffs

10   characterize these purchases as "direct," they have provided virtually no insight into the control

11   relationships they contend entitle them to Clayton Act standing.[11]

12             For example, Plaintiff Best Buy seeks over eight million dollars in damages for purchases

13   of LCD finished products from Nikon, even though Nikon was never mentioned in Best Buy's

14   complaint or, to the best of Defendants' knowledge, anywhere else in the case. *See* Berger Decl.,

15   Ex. E, at 80-81 (Best Buy Bernheim Opening Report).  Put differently, Plaintiffs have offered no

16   evidence that Nikon is controlled by an LCD panel manufacturer accused of fixing prices.

17             This is true across Plaintiffs' cases.  All Plaintiffs but Costco bring Clayton Act claims

18   based on purchases of LCD finished products from LG Electronics, for example.  *See* Berger

19   Decl., ¶25, Ex. X.  But LG Electronics has not made LCD panels since 1998.  *See* Berger Decl.,

20   Ex. M, Declaration of Joongmoo Byun ¶ 2 (Oct. 6, 2011).  And while Plaintiffs argue that they

21   can recover for purchases from LG Electronics based on that company's relationship with LG

22   Display,[12] they admit that LG Electronics has never been a division or subsidiary of LG Display,

23   and that LG Display has never owned a majority share in LG Electronics.[13]

24   ───────────────────

[11] Costco explicitly included within its "direct purchaser" claims purchases from several entities it
25   claimed fit under the now-discarded *Freeman* "no realistic possibility of suit"
     standard.  Defendants filed a separate motion addressing these easily-disposed of issues before *In*
26   *re ATM Fee* was issued, Dkt. No. 5979, and do not address those transactions here.

[12] *See, e.g.,* Berger Decl., Ex. N, Target Plaintiffs' Supplemental Responses to Defendant LG
27   Display Co., Ltd's First Set of Interrogatories, at No. 10 (Mar. 13, 2012).

[13] Berger Decl., Ex. B, at Nos. 9, 18; Berger Decl., Ex. O, Electrograph's Objections &
28                                                                                    (continued)

Case No. 09-cv-4997, 10-cv-04572 SI,                         -11-         MOTION FOR PARTIAL SUMMARY
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,                            JUDGMENT FOR LACK OF STANDING
Case No. M 07-md-1827 SI                                              UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1    Plaintiffs' evidentiary failure is particularly stark for purchases from more extended

2  distribution chains.  In many instances, even the purported "direct purchasers" are not direct

3  purchasers at all.   Original Design Manufacturers ("ODMs") are often the true direct purchasers,

4  having bought the panels from the manufacturers, assembled them into finished products, and

5  sold them to the companies who ultimately sold them to Plaintiffs.  *See* Berger Decl., Ex. P,

6  Expert Report of Edward A. Snyder, Ph.D. Regarding Target, et al. ¶ 49 (Feb. 23, 2012).

7    Indeed, the evidence shows that a large percentage of the finished products sold by

8  Hitachi, Sharp, Samsung, Panasonic, and others, *were in fact manufactured by another*

9  *company.  See, e.g.*, Berger Decl. Ex. Q, SECm00093707 (showing that of the approximately 2.3

10  million LCD Hitachi monitors sold between 2001 and 2006, 725,000 were made by Hitachi,

11  while the rest were made by contract manufacturers or ODMs); Ex. R, SECm00093311 (showing

12  that between 2004 and 2005 AOC assembled televisions for LG Electronics, Mitsubishi, Philips,

13  and others).  Plaintiffs have failed to offer any evidence that these ODMs were not the real direct

14  purchasers of Defendants' panels.  Further still, as discussed below, the *panels* that were included

15  in the finished products that the ODMs sold to companies like Hitachi and Samsung were often

16  manufactured by someone else.  For a large percentage of the LCD finished products composing

17  their claims, Plaintiffs have failed to offer any evidence identifying the manufacturer of the LCD

18  panels those products contain.

19    **4.    No Plaintiff Seeking To Pursue Clayton Act Claims for Purchases of LCD
           Finished Products Has Offered Evidence as to Who Manufactured Each of
20           the Panels in the Products They Seek To Put at Issue.**

21    The finished product manufacturers that sold products to Plaintiffs—including the named

22  Defendants—sourced their panels from a variety of companies.  This is equally true for vertically

23  integrated companies and non-vertically integrated companies.  At times, the finished product

24  manufacturing divisions of the vertically integrated Defendants incorporated the Defendant's own

25  _____

26  (continued)
    Responses to LG Display Co., Ltd.'s First Set of Requests for Admission, at Nos. 9, 18 (Jan. 30,
    2012); Berger Decl., Ex. A, at Nos. 9, 18; Berger Decl., Ex. Y, Costco Plaintiff's Supplemental
27  Responses to LG Display's Requests for Admission, at Nos. 10, 18 (Jan. 30, 2012); Weingart
    Decl. Ex. A, at Nos. 9, 16-17.

28

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,       -12-
Case No. M 07-md-1827 SI

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1  panels into their finished products, while at other times they used panels purchased from

2  competitors. *See, e.g.,* Berger Decl., Ex. H (Bernheim Target Report) ¶ 64 ("The evidence I have

3  seen indicates that the vertically integrated defendants . . . often self-supplied LCD panels while

4  simultaneously buying them from and selling them to other firms at market prices."). The

5  vertically integrated Defendants in this case purchased panels both from other Defendants (*e.g*.,

6  LG Display, AUO, and Chi Mei) and from non-defendants. *See, e.g.*, Berger Decl., Ex. S, Expert

7  Rebuttal Report of Leslie H. Marx Concerning Target et al. ¶ 61 (May 11, 2012) ("Data supplied

8  by defendant[] Samsung. . . show numerous LCD products containing LCD panels supplied by

9  companies *other than alleged conspirators*[.]") (emphasis added).

10       Plaintiffs concede that they cannot identify the company that manufactured the LCD

11  panels in most LCD finished products. *See, e.g.*, Berger Decl., Ex. T, Expert Report of Leslie H.

12  Marx Concerning Target et al. ¶ 72 n.9 (Dec. 15, 2012) ("The data available to me generally did

13  not identify the manufacturers of LCD panels contained in specific LCD products. . . . [A]t least

14  during the Conspiracy Period, only a few suppliers or buyers of LCD products maintained this

15  kind of information in the course of ordinary business."); Weingart Decl. Ex. D, Plaintiff AT&T's

16  Responses and Objections to Defendant Sanyo's First Set of Interrogatories, at No. 16 (Nov. 23,

17  2011) (AT&T "does not track the source of the LCD Panels incorporated into the LCD Products

18  it purchased in the normal course of business."). No Plaintiff has provided evidence of which

19  company manufactured each of the panels at issue in its claims. Indeed, Dr. Marx was able to

20  identify the panel manufacturer for less than one-quarter of the indirect purchaser LCD finished

21  products analyzed in her report. Berger Decl., Ex. U, Deposition of Leslie H. Marx, at 541:9-25

22  (June 11, 2012).

23  **IV.    <u>STANDARD OF REVIEW</u>**

24       Summary judgment should be entered where, as here, "the movant shows that there is no

25  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

26  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Although

27  "standing is a question of law for the district court to decide," *In re ATM Fee*, 2012 WL 2855813,

28  at *4 (citing *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)), summary judgment may be granted

Case No. 09-cv-4997, 10-cv-04572 SI,                    MOTION FOR PARTIAL SUMMARY
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,    -13-    JUDGMENT FOR LACK OF STANDING
Case No. M 07-md-1827 SI                           UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1   where there is no dispute of material fact regarding plaintiffs' claim of standing.  *See Lujan v.*

2   *Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("each element [of standing] must be supported

3   in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the

4   manner and degree of evidence required at the successive stages of the litigation.").

5   **V.   ARGUMENT**

6   　　　Based on undisputed facts, this motion seeks summary judgment in Defendants' favor on

7   Plaintiffs' Clayton and Sherman Act claims for their LCD *finished product* purchases.  Plaintiffs

8   are "indirect purchasers" who lack standing to bring these claims.  Defendants recognize that this

9   Court has covered some of this territory before.  Indeed, the scope of the *Illinois Brick* rule was a

10   major focus of the direct purchaser class litigation.  Yet, *In re ATM Fee* offers binding guidance

11   to this Court, including respectful disagreement with one of this Court's previous rulings.  The

12   Ninth Circuit has now mandated that only direct purchasers *of the price-fixed goods* may pursue

13   claims under the Clayton Act, unless one of the three narrow exceptions applies.  Here, none do.

14   　　　Recognizing *In re ATM Fee* is new authority, Defendants here track the questions the

15   Ninth Circuit raised and resolved in its decision.  In so doing, Defendants show that, as in *In re*

16   *ATM Fee*, "none of the exceptions allow Plaintiffs to avoid 'run[ning] squarely into the *Illinois*

17   *Brick* wall."  2012 WL 2855813, at *6 (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049

18   (9th Cir. 2008)).

19   **A.   Plaintiffs Are Indirect Purchasers of LCD Panels.**

20   　　　It is undisputed that these Plaintiffs purchased finished products containing LCD panels

21   and not the panels themselves.  *See supra* 10 n.8.  Plaintiffs have no evidence of a finished

22   product conspiracy and cannot allege one.  *See supra* 11-12.   Plaintiffs do claim that Defendants

23   knew that fixing the price of the component panel would *affect* the price of the downstream

24   product.  *E.g.*, Berger Decl., Ex. K, at No. 211 ("Costco states that the conspirators entered into

25   agreements to fix, raise, or maintain the prices for LCD panels, which the conspirators *knew*

26   would raise the prices of LCD products.") (emphasis added); Weingart Decl. Ex. C, at 50 (AT&T

27   contends that "defendants entered into agreements with other Co-conspirators to fix, raise, or

28   maintain the prices of *LCD Panels* at supracompetitive levels," which had the "*corresponding*

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

-14-

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1   *effect* of increasing, to supracompetitive levels, the prices that AT&T paid for LCD products

2   containing the price-fixed LCD Panels.") (emphasis added).  These purported grounds for

3   standing are virtually identical to those the Ninth Circuit rejected in *In re ATM Fee*:

4           Plaintiffs argue that conspiring to set a price for the purpose and
        effect of raising the price at issue equates to fixing that price and
5           makes the payers of the raised price direct purchasers.

6           Plaintiffs' argument misses the mark.  *Illinois Brick* rejected this
        argument when it rejected "mark up" claims.

7

8   2012 WL 2855813, at *10.  Thus, *In re ATM Fee* makes clear that Defendants' purported

9   knowledge of potential downstream impact is not the test for direct purchaser standing.  Whether

10  Plaintiffs paid a price-fixed price is the fact that matters:

11          The price paid by plaintiffs must be the price set (not merely 'fixed'
        in some broad sense) for plaintiffs to be a direct purchaser under the
12          narrowly defined injury requirement of § 4 of the Clayton Act.
        Further, under the co-conspirator exception recognized in this
13          circuit, the price paid by the plaintiff must be set by the conspiracy
        and not merely affected by the setting of another price.

14

15  *Id.* at *11 (citing *Arizona v. Shamrock Foods*, 729 F.2d 1208, 1211 (9th Cir. 1984)).  Because

16  Plaintiffs have admitted in discovery that they do not have evidence of a *LCD finished product*

17  conspiracy, their finished product purchases are indirect.

18          **B.      No Exception to *Illinois Brick*'s "Direct Purchaser" Rule Applies.**

19          Following the *In re ATM Fee* analysis and having confirmed that Plaintiffs are not direct

20  purchasers, the next question is whether any of the "limited exceptions" allowing indirect

21  purchasers standing apply.  *In re ATM Fee*, 2012 WL 2855813, at *6.  If not, as in *In re ATM Fee*,

22  Plaintiffs' Clayton Act claims must be dismissed.

23          **1.      Plaintiffs Offer No Evidence Raising a Disputed Question of Material Fact
                that They Can Invoke the Cost-Plus Exception.**
24

25          Here, as in *In re ATM Fee*, Plaintiffs do not invoke the first recognized exception – the

26  cost-plus contract exception.  Plaintiffs do not allege that they had cost-plus contracts with direct

27  purchasers (let alone "preexisting" ones).  This exception to *Illinois Brick* does not apply.

28

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI                    -15-                MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1

2

      **2.**      **Plaintiffs Offer No Evidence Raising a Disputed Question of Material Fact Suggesting They Can Invoke the Co-Conspirator Exception.**

3           Plaintiffs have similarly admitted facts that confirm that the co-conspirator exception does

4  not apply.  As *In re ATM Fee* clarified, the Ninth Circuit "recognizes the co-conspirator exception

5  *only* when the conspiracy involves setting the price paid by the plaintiffs."  2012 WL 2855813, at

6  *12 (emphasis added).  Put slightly differently, "fixing one fee for the purpose and effect of

7  inflating another fee does not make the purchaser a direct purchaser under *Illinois Brick*."  *Id.* at

8  *11.  Here summary judgment is appropriate because Plaintiffs have no evidence suggesting (let

9  alone raising a disputed question of fact) that they can meet this standard.  They have

10  affirmatively conceded that the opposite is in fact true.

11           Costco and Best Buy are emblematic.  Costco admitted that "it has no evidence that the

12  conspirators entered into agreements to fix, raise, or maintain the prices for LCD products

13  themselves."  Berger Decl., Ex. K, at No. 211.  Best Buy explained that it "takes the position that

14  the evidence that the Conspirators entered into agreements to fix, raise, or maintain prices of

15  TFT-LCD Panels and that those price increases affected the prices of TFT-LCD Finished

16  Products . . . ."  Berger Decl., Ex. L, at 2.  But *In re ATM Fee* expressly rejects an "affects" or

17  "effect" test.  *In re ATM Fee*, 2012 WL 2855813, at *11.

18           For the exception to apply, "the price paid by a plaintiff must be set by the conspiracy and

19  not merely affected by the setting of another price."  *In re ATM Fee*, 2012 WL 2855813, at *11.

20  Having admitted that they cannot meet this standard, Plaintiffs cannot invoke the co-conspirator

21  exception to save their federal LCD finished product claims.

22

23

24

      **3.**      **Plaintiffs Can Offer No Evidence Raising a Disputed Question of Material Fact on a Product-by-Product Basis that a Specific Alleged Conspirator Both Manufactured the LCD Panel in Their LCD Finished Product and Owned or Controlled the Seller of that Finished Product to the Plaintiff.**

25           Nor can Plaintiffs invoke the "ownership or control" exception to the *Illinois Brick* direct

26  purchaser rule.  In *In re ATM Fee*'s wake, this rule is easy to state:  "[I]ndirect purchasers may

27  sue [under the Clayton Act] when customers of the direct purchaser own or control the direct

28  purchaser . . . or when a conspiring seller owns or controls the direct purchaser."  *In re ATM Fee*,

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI        **-16-**        MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1   2012 WL 2855813, at *6.[14]  Paralleling *In re ATM Fee*, Plaintiffs' LCD finished product claims

2   do not fall within this exception and must be dismissed for many reasons.

3            a.      **Plaintiffs Do Not Have Standing To Assert Claims Based on Purchases**

4                    **of Products Containing Panels Made by Non-Conspirators.**

5            The "ownership and control" test is objective.  It looks at the direct purchaser and who

6   owns it.  It does not look at the subjective likelihood of who will sue.  *In re ATM Fee* cites

7   favorably the admonition that "'[t]he Supreme Court . . . has thus far been indifferent to the

8   question whether the direct purchaser is likely to sue.'"  *Id.* (quoting IA Phillip E. Areeda et al.,

9   ANTITRUST LAW ¶ 346h (3d ed. 2007)).  Instead, the test asks the objective question whether the

10  alleged conspiring seller owns or controls the direct purchaser.  *Id.* at *13.

11           As to finished products containing panels that Plaintiffs do not allege were manufactured

12  by alleged conspiracy participants, this test is dispositive.  Even if a conspiracy member

13  purchased such a panel, incorporated it into a product, and then sold that finished product to a

14  Plaintiff, the exception does not apply.  Under this scenario, *no one* purchased a price-fixed

15  product, and "a conspiring seller does not own or control the direct purchaser," because the panel

16  manufacturer is not alleged to be a conspiring seller.  *Id.* at *6.  Defendants' motion should

17  therefore be granted with respect to sales of *any* LCD finished product in which the underlying

18  panel was not manufactured by a party alleged to have participated in the alleged conspiracy.

19           b.      **Plaintiffs Do Not Have Standing To Assert Claims Based on Purchases**

20                   **of Finished Products From Companies that Are Not Controlled by**
                     **Panel-Making Alleged Conspirators.**

21           Following that same reasoning, Defendants' motion should be granted for any of

22  Plaintiffs' finished product claims where the direct purchaser of the incorporated panel was not

23  owned or controlled by an allegedly conspiring LCD panel manufacturer.

24           As discussed above, many of the direct purchasers of LCD panels were original

25

26  [14] Plaintiffs do not allege that *they* own any of the companies who were the true direct purchasers
    of the LCD panels.  Defendants therefore limit their discussion in this section to the second part

27  of the "ownership or control" exception, namely "when a conspiring seller owns or controls the
    direct purchaser."  *Id.*, at *6.

28

Case No. 09-cv-4997, 10-cv-04572 SI,                                    MOTION FOR PARTIAL SUMMARY
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,          -17-          JUDGMENT FOR LACK OF STANDING
Case No. M 07-1827 SI                                          UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1   equipment manufacturers ("OEMs"), ODMs, or systems integrators which bought panels from the

2   panel manufacturers and assembled them into finished products.  These intermediaries purchased

3   LCD panels but sold LCD finished products; sometimes they sold those finished products to

4   Plaintiffs, and sometimes they sold those finished products into a stream that (with stops along

5   the way) led to Plaintiffs.  *See supra* 13.  It is undisputed that there were intervening direct

6   purchasers between the LCD panel manufacturers and the Plaintiffs.  This reality precludes

7   Plaintiffs from relying on the "ownership or control" exception for many of their LCD finished

8   product claims.  Plaintiffs can offer no evidence that a defendant or alleged co-conspirator

9   controlled these OEMs, ODMs, or systems integrators, and thus the Court should dismiss all of

10  Plaintiffs' finished product claims where an independent company was the direct purchaser of the

11  TFT-LCD panel.

12          This is true even where Plaintiffs claim that the direct purchasers had some affiliation with

13  a defendant or alleged co-conspirator.  "Affiliation" is not the test.  Ownership and control by the

14  alleged conspirator is.  *In re ATM Fee*, 2012 WL 2855813, at *13; *id.* at *12 (referring to test as

15  "parental control").  For example, some Plaintiffs include indirect purchases from LG Electronics

16  in quantifying the claims they are pursuing under the Clayton Act.  *See, e.g.*, Weingart Decl. Ex.

17  B ¶ 12.  Under *In re ATM Fee*, these claims must also be dismissed.  Plaintiffs offer no evidence

18  that LG Display owned or controlled LG Electronics.  *See supra* 12.  Or take Nikon, which Best

19  Buy claims to be the source of "direct" purchases.  *See supra* 12.  Best Buy does not allege and

20  has no evidence that Nikon participated in the alleged conspiracy, nor does it have any evidence

21  that a company that did participate in the alleged conspiracy owned or controlled Nikon.  Nor

22  could it.  Control "means to exercise restraint or direction over . . . or to have the power or

23  authority to guide or manage."  *Id.* at *14.  This means a Plaintiff who claims one company

24  controlled another "must prove it," and "[s]tock ownership alone, at least when it amounts to less

25  than a majority, is not sufficient proof of domination or control."  *Id.* (quoting *Kaplan v. Centex

26  Corp.*, 284 A.2d 119, 122-23 (Del. Ch. 1971)).

27          Here, Plaintiffs can point to no evidence suggesting they can meet these proof standards as

28  to LG Electronics, Nikon, or many of the other companies from whom they allege they purchased

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI                          -18-                    MOTION FOR PARTIAL SUMMARY
                                                                          JUDGMENT FOR LACK OF STANDING
                                                                          UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1  finished products.[15]  For these reasons, the Court should dismiss all of Plaintiffs' Clayton Act

2  claims where the direct purchaser of the incorporated LCD panel was not owned or controlled by

3  an allegedly conspiring manufacturer.

        **c.**      **Plaintiffs Do Not Have Standing To Assert Claims Based on LCD**
4                 **Finished Product Purchases Where Different Alleged Conspirators**

5                 **Manufactured the LCD Panel and the LCD Finished Product.**

6         Next, because of a similar lack of parental ownership or control by a co-conspirator, *In re*

7  *ATM Fee* also requires dismissal where a Plaintiff purchased a LCD finished product

8  manufactured by one defendant or alleged co-conspirator but which incorporated a LCD panel

9  manufactured by a different defendant or alleged co-conspirator.  For example, consider instances

10  in which defendant Chimei Innolux Corporation (f/k/a Chie Mei Optoelectronics Corporation)

11  sold a television panel to defendant Sharp Corporation.[16]  Chimei Innolux and Sharp are both

12  publicly held companies, and hence are not under common ownership or control.  There has never

13  been any allegation that Chimei Innolux owns or controls Sharp.  Thus, where Chimei Innolux

14  sold a LCD panel to Sharp, the exception does not apply, because the "ownership or control" *does*

15  *not* extend "to situations where the seller does not own or control the direct purchaser."  *In re*

16  *ATM Fee*, 2012 WL 2855813 at *13.  This is true across a broad swath of Plaintiffs' claims.

17  AUO sold television panels to Mitsubishi and Philips and countless others; LG Display sold

18  monitor panels to, among others, NEC and LG Electronics.  *See* Berger Decl., Exs. Q & R.  To

19

20  ───────────────

[15] LG Electronics and Best Buy are not the only examples.  Plaintiffs include in their Clayton Act
21  damages claims finished product purchases from Tatung without any evidence that the direct
purchaser of the panel underlying these products was "owned or controlled" by a defendant or co-
22  conspirator.  These examples are admittedly not exhaustive.  Plaintiffs assert their federal damage
claims based on LCD finished product purchases from more than 40 companies.  Berger Decl. ¶
23  25 & Exhibit X.  Plaintiffs, however, have never identified which specific exception they believe
permits their indirect claims to proceed under the *Illinois Brick*'s "direct
24  purchaser rule."  *See In re ATM Fee*, 2012 WL 2855813, at *4 ("[E]ach element [of standing]
must be supported in the same way as any other matter on which the plaintiff bears the burden of
25  proof[.]") (quotations omitted).  As the First Circuit explained in another context, *Sullivan v. City
of Augusta*, 511 F.3d 16 (1st Cir. 2007), "[i]t is plaintiffs' burden to establish injury-in-fact as an
essential part of their standing—not [defendant's] burden to disprove it."  *Id*. at 29.
26  [16] *See, e.g.*, Berger Decl., Ex. V, Deposition of Masahiro Yokota (Sharp Electronics Corp.),
109:5-12 (Mar. 11, 2009) ("Q: Did Sharp Corp have occasion to purchase panels or modules from
27  other manufacturers for use in any of the LCD products we have been talking about? A: Yes, we
have.  Q: And from what manufacturers? A: The manufacturers, such as AUO or CMO.").

28

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI      -19-      MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1   the extent Plaintiffs assert claims based on their purchases of LCD finished products

2   incorporating panels made by a manufacturer that does not own or control the LCD finished

3   product seller, on its face *In re ATM Fee* bars their claims.

4   　　　*In re ATM Fee* could not be more explicit about this result.  There, plaintiffs alleged that

5   defendant banks fixed the interchange fee paid by ATM owners (including some of the same

6   defendant banks), which was then passed on to the plaintiffs (by some of the same defendant

7   banks) in the form of a foreign ATM fee.  *In re ATM Fee*, 2012 WL 2855813, at *2.  Plaintiffs

8   argued that under *Royal Printing*, the fact that there were different defendants on both sides of the

9   direct transaction meant that an exception should apply, and they should be allowed to sue despite

10  being only indirect purchasers.  *Id.* at *13.  The Ninth Circuit disagreed, confirming that *Royal*

11  *Printing* does not reach that far:  "[T]here are no allegations that Bank Defendants controlled one

12  another or conspired to fix foreign ATM fees [the price paid by the plaintiffs].  As such, the

13  concern in *Royal Printing* of a controlling party prohibiting the direct purchasers from suing is

14  not present here."  *Id.* at *14, n.10.  Control is the only test, and because the defendant banks did

15  not control each other under the "control" standards the Ninth Circuit articulated in *In re ATM*

16  *Fee*, *see supra* 17-18, the *Royal Printing* exception did not apply even though defendants were

17  alleged co-conspirators.

18  　　　So too here.  For example, there are no allegations that the panel-manufacturing

19  Defendants controlled one another under those stringent standards or conspired to fix finished

20  product prices.  There is no evidence that Chi Mei controls Sharp.  There is no evidence that

21  AUO controls Philips.  There is no evidence that LG Display controls NEC.  Because the Ninth

22  Circuit refused "to extend the exception noted in *Royal Printing* and *Freeman* to situations where

23  the seller does not own or control the direct purchasers [who sold to plaintiffs]," *id.* at 13, this

24  Court should grant Defendants' motion for summary judgment on all claims where Plaintiffs

25  (i) purchased a LCD finished product manufactured by one Defendant or alleged co-conspirator

26  but which incorporated a LCD panel manufactured by a different Defendant or alleged co-

27  conspirator or (ii) where an ODM or systems integrator was the actual direct purchaser.

28

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

-20-

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1

**d.      Plaintiffs Have No Evidence To Prove Clayton Act Standing For Any Individual LCD Finished Product Purchase.**

2

3        As *In re ATM Fee* makes clear, Plaintiffs do not have standing under the Clayton Act to

4  bring claims for indirect purchases unless they satisfy one of the three limited exceptions to

5  *Illinois Brick*.  *Id.* at *11.  Exceptions are evaluated on a purchase-by-purchase basis; the fact that

6  a plaintiff might have standing under *Illinois Brick* for some purchases does not allow the plaintiff

7  to bootstrap standing for claims that *Illinois Brick* bars.  *See Royal Printing*, 621 F.2d at 327–28

8  (holding that plaintiffs could only recover for the *specific purchases* from entities that were

9  owned by co-conspirators; claims based on purchases from direct purchasers *not* owned by a co-

10  conspirator were barred under *Illinois Brick*); *see also Sun Microsystems Inc. v. Hynix*

11  *Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1180–82 (N.D. Cal. 2009) (holding that plaintiff failed

12  to present a material dispute of fact as to whether certain indirect purchases fell within the control

13  exception to *Illinois Brick*).

14        Plaintiffs offer no way to determine whether the LCD finished products that they

15  purchased—even from allegedly "controlled" subsidiaries—contain panels made by the allegedly

16  controlling parent conspirators.  To be sure, as to Plaintiffs' supposed "direct" purchases of

17  finished products, Plaintiffs' expert Dr. Marx studies a few examples of purchases and determines

18  that there are "numerous LCD products [that] contain LCD panels supplied by companies other

19  than alleged conspirators," but she does not try to show which "direct" purchases contain alleged-

20  conspirator panels, let alone try to identify those purchases containing panels made by a

21  controlling alleged conspirator.  Berger Decl., Ex. S ¶¶ 61-62.  As to Plaintiffs' acknowledged

22  indirect purchases—those for which Plaintiffs do not seek Clayton Act standing—Dr. Marx tries

23  to identify which of Plaintiffs' purchases of finished products contain a conspirator-made panel

24  and which do not.  *Id.* ¶ 63.  But even this task is challenging because "[t]he data available . . .

25  generally did not identify the manufacturers of LCD panels contained in specific LCD products."

26  *Id.* ¶ 72 n.9.  Accordingly, Dr. Marx was able to identify the panel manufacturer in fewer than

27  25% of the products she studied.  *See* Berger Decl. Ex. U, at 558:9-559:14.  Further, Dr. Marx

28  makes *no* effort to account for ODMs and systems integrators as intermediaries between the panel

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI                          -21-                          MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1    maker and the LCD finished product maker.  And in any event, this exercise cannot support

2    Plaintiffs' burden here, because Dr. Marx's identification analysis does not concern the LCD

3    finished product purchases for which Plaintiffs seek Clayton Act standing, and does not look at

4    any other question besides whether the panel was made by an alleged conspirator or not.

5               **4.    *In re ATM Fee* Precludes Recognizing New Exceptions.**

6         As established above, *supra* at n.1, the over-arching instruction from the Ninth Circuit in

7    *In re ATM Fee* is that the few exceptions to *Illinois Brick*'s "direct purchaser rule" are to be

8    interpreted narrowly and courts should refuse to recognize new exceptions where the Supreme

9    Court has not done so.  For example, the Ninth Circuit rejected this Court's reliance on *In re*

10   *Linerboard*, 305 F.3d 145, 158-60 (3d Cir. 2002) in a prior *TFT-LCD* decision, because decisions

11   such as *Linerboard* "restrict *Illinois Brick's* influence by allowing an exception when the direct

12   purchaser conspires with the seller, even though the price illegally set is an upstream cost that is

13   passed-on to the plaintiffs."  *In re ATM Fee*, 2012 WL 2855813 at *12, n.7.  This "contradicts the

14   Supreme Court's admonition 'not to 'carve out exceptions to the [direct purchaser] rule for

15   particular types of markets.'"  *Id.* (quoting *UtiliCorp*, 497 U.S. at 216 (quoting *Illinois Brick*, 431

16   U.S. at 744)).  Elsewhere, *In re ATM Fee*, again citing *UtiliCorp*, rejected expanding *Royal*

17   *Printing*'s "ownership and control" test, because to do so would "undermine the [direct

18   purchaser] rule."  *Id.* at *13.

19        Distinct from the arguments above, this *In re ATM Fee* admonition—no new exceptions—

20   further confirms why Plaintiffs' LCD finished product claims should be dismissed.  Setting

21   everything else aside, the basic point is this:  Plaintiffs did not buy the allegedly price-fixed good,

22   a panel.  They bought finished products in which such panels were one component among many.

23   No Ninth Circuit case allows an indirect purchaser to sue under the Clayton Act in these

24   circumstances—where the product purchased is different from the price-fixed good.[17]  A new

25   exception would be required, and the law does not permit new exceptions.

26

27   ────────────────────
     [17] In *Royal Printing*, for example, the same product (paper) passed through several sets of hands.
28   *Royal Printing*, 621 F.2d at 324.

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI                    -22-        MOTION FOR PARTIAL SUMMARY
                                                        JUDGMENT FOR LACK OF STANDING
                                                        UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1       Judge Legge, sitting as Special Master in the *CRT* litigation, reached a similar conclusion.

2  Disagreeing with this Court's pre-*In re ATM Fee* analysis, Judge Legge recommended that Judge

3  Conti dismiss *all* direct purchaser claims founded on finished product purchases.  *See* Report &

4  Recommendation, *In re Cathode Ray Antitrust Litig.*, No. 07-5944, D.I. 1221 (N.D. Cal. May 31,

5  2012) (objection pending).  As he explained:  "The plaintiffs against whom this motion is directed

6  did not purchase any price-fixed product, *i.e.*, a CRT, from anyone.  They purchased, at best, a

7  manufactured product which contained a CRT.  Therefore, even the cases which have found some

8  exception to *Illinois Brick* cannot apply in <u>this</u> case, because plaintiffs did not purchase a price-

9  fixed product."  *Id.* at *12 (emphasis in original).

10       Thus, while *In re ATM Fee* compels the dismissal of Plaintiffs' finished product claims for

11  all of the reasons stated above, it equally compels the dismissal of their finished product claims

12  for the mere fact that they are finished product claims.  No existing Ninth Circuit exception

13  sanctions allowing Plaintiffs to pursue Clayton Act claims based on their downstream LCD

14  finished product purchases when they only claim to have evidence of a LCD panel conspiracy.

**VI.**    <u>**CONCLUSION**</u>

16       The Ninth Circuit's holding in *In re ATM Fee* means that Plaintiffs lack standing to pursue

17  federal claims for their LCD finished product purchases.  Plaintiffs are indisputably indirect

18  purchasers.  Not one of the three narrow exceptions to *Illinois Brick's* strict "direct purchaser

19  rule" apply to their purchases.  Each is free to pursue claims based on their indirect purchases

20  under state law (if applicable and subject to all Defendants' defenses).  Their federal claims,

21  however, must be dismissed.

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

-23-

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1                                                      Respectfully submitted,

2 DATED:  July 20, 2012              By:___/s/ Holly House_____

3                                           Holly A. House (State Bar No. 136045)
Kevin C. McCann (State Bar No. 120874)
Lee F. Berger (State Bar No. 222756)

4                                           Sean D. Unger (State Bar No. 231694)
PAUL HASTINGS LLP

5        55 Second Street
Twenty-Fourth Floor

6        San Francisco, Ca  94105
Telephone:  (415) 856-7000

7        Facsimile:  (415) 856-7100
*hollyhouse@paulhastings.com*

8        *kevinmccann@paulhastings.com*
*leeberger@paulhastings.com*

9        *seanunger@paulhastings.com*

10        Attorneys for Defendants
LG Display Co., Ltd. and LG Display America, Inc.

11        As to *Best Buy*, *Costco*, *Electrograph*, and *Target* cases

12        only

13        By:___*/s/ Gregory J. Weingart*_____

14        Gregory J. Weingart (State Bar No. 157997)
Brad D. Brian (State Bar No. 079001)

15        Jerome C. Roth (State Bar No. 159483)
Truc T. Do (State Bar No. 191845)

16        MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue

17        Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100

18        Facsimile:      (213) 687-3702
*Brad.Brian@mto.com*

19        Attorneys for Defendants LG Display Co., Ltd. and LG

20        Display America, Inc.

21        As to *AT&T* case only

22        By:___/s/ Stephen P. Freccero_____

23        Stephen P. Freccero (SBN 131093)
Melvin R. Goldman (SBN 34097)

24        Derek F. Foran (SBN 224569)
MORRISON & FOERSTER LLP

25        425 Market Street
San Francisco, California 94105

26        (415) 268-7000 / (415) 268-7522
mgoldman@mofo.com

27        sfreccero@mofo.com
sfreccero@mofo.com

28        dforan@mofo.com

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI        -24-        MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

Attorneys for Defendants Epson Imaging Devices
Corporation and Epson Electronics America, Inc.

As to *Best Buy, Costco,* and *Electrograph* cases only

By:     */s/* Carl L. Blumenstein
Carl L. Blumenstein (State Bar No. 124158)
Christopher A. Nedeau (State Bar No. 81297)
Farschad Farzan (State Bar No. 215194)
NOSSAMAN LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile: 415.398.2438
*cnedeau@nossaman.com*
*cblumenstein@nossaman.com*
*ffarzan@nossaman.com*

Attorneys for Defendants
AU Optronics Corporation and AU Optronics
Corporation America

By:     */s/* Brendan P. Cullen
Brendan P. Cullen, Esq.
Shawn Joe Lichaa, Esq.
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, CA  94303
Tel:  (650) 461-5600
Fax:  (650) 461-5700
*cullenb@sullcrom.com*
*lichaas@sullcrom.com*

SULLIVAN & CROMWELL LLP
Garrard R. Beeney, Esq.
Bradley P. Smith, Esq.
Matthew S. Fitzwater, Esq.
125 Broad Street
New York, NY  10004-2498
Tel:  (212) 558-4000
Fax:  (212) 558-3588
*beeneyg@sullcrom.com*
*smithbr@sullcrom.com*
*fitzwaterm@sullcrom.com*

Counsel for Defendant Philips Electronics North
America Corporation

As to the *Target* case only

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

-25-

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

| | |
|---|---|
| 1 | By:____/s/ Rachel S. Brass_____ |
| | Rachel S. Brass (SBN 219301) |
| 2 | Joel S. Sanders (SBN 107234) |
| | Austin V. Schwing (SBN 211696 |
| 3 | Joel Willard (SBN 247899) |
| | GIBSON, DUNN & CRUTCHER LLP |
| 4 | 555 Mission Street, Suite 3000 |
| | San Francisco, California 94105 |
| 5 | (415) 393-8200 / (415) 393-8306 |
| | *jsanders@gibsondunn.com* |
| 6 | *rbrass@gibsondunn.com* |
| 7 | Attorneys for Defendants Chunghwa Picture Tubes, Ltd. |
| 8 | As to the *Best Buy, Target,* and *Costco* cases only |
| 9 | |
| 10 | By:____/s/ William S. Farmer_____ |
| | William S. Farmer (SBN 46694) |
| 11 | Jacob P. Alpren (SBN 235713) |
| | Andrew H. Pontious (SBN 157174) |
| 12 | COLLETTE ERICKSON FARMER & O'NEILL LLP |
| | 235 Pine Street, Suite 1300 |
| 13 | San Francisco, CA 94104 |
| | (415) 788-4646 / (415) 788-6929 |
| 14 | *wfarmer@collette.com* |
| | *jalpren@collette.com* |
| 15 | *apontious@collette.com* |
| 16 | Attorneys for Defendant Chunghwa Picture Tubes, Ltd. |
| 17 | As to the *AT&T* case only |
| 18 | By:____/s/ Robert E. Freitas_____ |
| | Robert E. Freitas (SBN 80948) |
| 19 | *rfreitas@ftklaw.com* |
| | Jason S. Angell (SBN 221607) |
| 20 | *jangell@ftklaw.com* |
| | Jerry Chen (SBN 229318) |
| 21 | *jchen@ftklaw.com* |
| | FREITAS TSENG & KAUFMAN LLP |
| 22 | 100 Marine Parkway, Suite 200 |
| | Redwood Shores, California 94065 |
| 23 | Telephone: (650) 593-6300 |
| | Facsimile: (650) 593-6301 |
| 24 | |
| 25 | Attorneys for Defendant HannStar Display Corporation |
| 26 | |
| 27 | By:____/s/ Donald H. Mullins_____ |
| | Donald H. Mullins |
| 28 | BADGLEY MULLINS LAW GROUP, PLLC |
| | Donald H. Mullins (admitted *pro hac vice*) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mark K. Davis (admitted *pro hac vice*)
701 Fifth Avenue, Suite 4750
Seattle, WA 98104
Tel: (206) 621-6566
Fax: (206) 621-9686
*donmullins@badgleymullins.com*
*mdavis@badgleymullins.com*

RAMSEY & ERHLICH LLP
Ismail Ramsey (Bar No. 189820)
803 Hearst Avenue
Berkeley, CA 97410
Tel: (510) 548-3600
Fax: (510) 291-3060
*izzy@ramsey-ehrlich.com*

Attorneys for Defendant
Hannstar Display Corporation

As to the *AT&T* case only


By: ___/s/ Paul P. Eyre_____
Paul P. Eyre
Tracy L. Cole
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4210
Facsimile: (212) 589-4201
*peyre@bakerlaw.com*
*tcole@bakerlaw.com*

Ernest E. Vargo
Michael E. Mumford
Erin K. Murdock-Park
BAKER & HOSTETLER LLP
PNC Center
1900 East Ninth Street, Suite 3200
Cleveland, OH 44114-3482
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
*evargo@bakerlaw.com*
*mmumford@bakerlaw.com*
*emurdockpark@bakerlaw.com*

Attorneys for Defendant Mitsui & Co. (Taiwan), Ltd.

As to the *Electrograph* case only


By: ___/s/ Jacob R. Sorensen_____
Jacob R. Sorensen (SBN 209134)
John M. Grenfell (SBN 88500)
Fusae Nara (*pro hac vice*)

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

-27-

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

Andrew D. Lanphere (SBN 191479)
PILLSBURY WINTHROP SHAW PITTMAN LLP
50 Fremont Street
San Francisco, California  94105
(415) 983-1000 / (415) 983-1200
*john.grenfell@pillsburylaw.com*
*jake.sorensen@pillsburylaw.com*
*fusae.nara@pillsburylaw.com*
*andrew.lanphere@pillsburylaw.com*

Attorneys for Defendants Sharp Corporation and
Sharp Electronics Corporation

As to the *Target et al., Electrograph,* and *Best Buy* cases
only

By:____/s/ Kenneth A. Gallo_____
Kenneth A. Gallo (pro hac vice)
Joseph S. Simons (pro hac vice)
Craig A. Benson (pro hac vice)
2001 K Street NW
Washington, DC 20006
PAUL WEISS RIFKIND WHARTON & GARRISON
LLP
(202) 223-7300 (telephone)
(202) 223-7420 (facsimile)
*kgallo@paulweiss.com*

Attorneys for Defendants Sharp Corporation and Sharp
Electronics Corporation

As to the *Best Buy* and *AT&T* cases only

By:____/s/ Richard S. Taffett_____
Richard S. Taffet (pro hac vice)
Kenneth I. Schacter (pro hac vice)
Jon R. Roellke (pro hac vice)
Colin C. West (SBN 184095)
Kristen A. Palumbo (SBN 215857)
Three Embarcadero Center
San Francisco, CA 94111-4067
BINGHAM MCCUTCHEN LLP
(415) 393-2000 (telephone)
(415) 393-2286 (facsimile)
*colin.west@bingham.com*

Attorneys for Defendants Sharp Corporation and Sharp
Electronics Corporation

As to the *AT&T* case only

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI                    -28-                    MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1          By:____/s/ Michael Scarborough_____
          Michael Scarborough, Esq.

2          SHEPPARD MULLIN RICHTER & HAMPTON LLP
          Four Embarcadero Center, 17th Floor

3          San Francisco, CA 94111
          Tel:  (415) 434-9100

4          Fax:  (415) 434-3947
          *mscarborough@sheppardmullin.com*

5

6          Attorneys for Defendants
          Samsung SDI, Inc.

7          Samsung SDI Co., Ltd. and
          Samsung SDI America, Inc.

8          As to the *AT&T* case only

9

10         By:____/s/___Robert D. Wick (*pro hac vice*)
          Robert D. Wick (*pro hac vice*)

11         Neil K. Roman (*pro hac vice*)
          COVINGTON & BURLING LLP

12         1201 Pennsylvania Ave. NW
          Washington, D.C. 20004

13         (202) 662-6000 (telephone)

14         *Attorneys for Defendants*
          Samsung Electronics Co., Ltd.,

15         Samsung Semiconductor, Inc. and
          Samsung Electronics America, Inc.

16         As to the *AT&T action* only

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

-29-

MOTION FOR PARTIAL SUMMARY
JUDGMENT FOR LACK OF STANDING
UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:    /s/ Allison A. Davis
Allison A. Davis (Bar No. 139203)
Sanjay Nangia (Bar No. 264986)
505 Montgomery Street, Suite 800
San Francisco, CA  94111
DAVIS WRIGHT TREMAINE LLP
Tel:  (415) 276-6500
Fax:  (415) 276-6599
*allisondavis@dwt.com*

Nick S. Verwolf (admitted pro hac vice)
777 – 108th Ave. N.E., Suite 2300
Bellevue, WA  98004
DAVIS WRIGHT TREMAINE LLP
Tel:  (425) 646-6125
Fax:  (425) 646-6199
*nickverwolf@dwt.com*

Attorneys for Defendant
Sanyo Consumer Electronics Co., Ltd.

By: /s/ Kent M. Roger
Kent M. Roger (Bar No. 95987)
Herman J. Hoying (Bar No. 257495)
MORGAN LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
(415) 442-1000 (Phone)
(415) 442-1001 (Facsimile)
*kroger@morganlewis.com*
*hhoying@morganlewis.com*

Attorneys for Defendants Hitachi, Ltd., Hitachi Displays,
Ltd. (n/k/a Japan Display East, Inc.) and Hitachi
Electronic Devices (USA), Inc.

As to the *Best Buy, Costco* and *Electrograph* cases only

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI                    -30-           MOTION FOR PARTIAL SUMMARY
                                                          JUDGMENT FOR LACK OF STANDING
                                                          UNDER *ILLINOIS BRICK* AND *IN RE ATM FEE*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SIMPSON THACHER & BARTLETT LLP

By:  /s/ Harrison J. Frahn IV
James G. Kreissman (Bar No. 206740)
Harrison J. Frahn IV (Bar No. 206822)
Jason M. Bussey (Bar No. 227185)
2550 Hanover Street
Palo Alto, California  94304
Tel: (650) 251-5000
Fax: (650) 251-5002
*jkreissman@stblaw.com*
*hfrahn@stblaw.com*
*jbussey@stblaw.com*

Attorneys for Defendants
Chimei Innolux Corporation (f/k/a Chi Mei
Optoelectronics Corporation), Chi Mei Corporation, Chi
Mei Optoelectronics USA, Inc., CMO Japan Co., Ltd.,
Nexgen Mediatech, Inc. and Nexgen Mediatech USA,
Inc.

As to the *AT&T* and *Costco* actions only


HILLIS CLARK MARTIN & PETERSON P.S.

By:  /s/ Michael R. Scott
Michael R. Scott (pro hac vice)
Michael J. Ewart (pro hac vice)
1221 Second Avenue, Suite 500
Seattle WA 98101-2925
Telephone:  (206) 623-1745
Facsimile:  (206) 623-7789
*mrs@hcmp.com*
*mje@hcmp.com*

Attorneys for Defendants Chi Mei Corporation,
Chimei Innolux Corporation (f/k/a Chi Mei
Optoelectronics Corporation, Chi Mei Optoelectronics
USA, Inc., CMO Japan Co., Ltd., Nexgen Mediatech,
Inc. and Nexgen Mediatech USA, Inc.

As to the *Best Buy* and *Target* actions only


Attestation:  The filer of this document attests that the concurrence of the signatories
thereto has been obtained.

Case No. 09-cv-4997, 10-cv-04572 SI,
10-cv-00117 SI, 10-cv-04945 SI, 11-cv-00058 SI,
Case No. M 07-md-1827 SI

-31-