IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TECH DATA CORPORATION; TECH DATA PRODUCT MANAGEMENT, INC.,

    Plaintiffs,

  v.

AU OPTRONICS CORPORATION, *et al.*,

    Defendants.

_____/

No. M 07-1827 SI
MDL No. 1827

No. C 11-05765 SI

**ORDER GRANTING IN PART DEFENDANTS' JOINT MOTION AND NEC'S MOTION TO DISMISS COMPLAINT**

Currently before the Court are two motions to dismiss the First Amended Complaint of Tech Data Corporation and Tech Data Product Management, Inc.'s (collectively "Tech Data"). One such motion is filed by defendants jointly. Defendant NEC has joined the joint motion and filed separately. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters suitable for disposition without oral argument and therefore VACATES the hearing currently scheduled for August 3, 2012. Having considered the parties' papers, and for good cause appearing, the Court hereby GRANTS IN PART defendants' joint motion and GRANTS IN PART NEC's motion.

**BACKGROUND**

Plaintiff Tech Data is "the world's second largest wholesale distributor of information technology products" and is incorporated and headquartered in Florida. FAC at ¶ 18-19. On October

28, 2011, it filed this action in the Middle District of Florida, seeking to recover for a "long-running conspiracy . . . to fix, raise, stabilize, and maintain prices for Liquid Crystal Display panels ('LCD Panels')." Compl. at ¶ 1. Tech Data filed its first amended complaint ("FAC") on April 2, 2012. The FAC contains four claims: 1) a claim under the Clayton Act to recover for an alleged violation of Section 1 of the Sherman Act; 2) a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); 3) a claim under California's Cartwright Act ("Cartwright Act"); and 4) a claim under California's Unfair Competition Law ("UCL"). FAC at ¶¶ 292-324.

Defendants now move to dismiss Tech Data's FAC in part.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief may be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

**I. Defendants' Joint Motion**

Defendants' joint motion seeks to limit plaintiff's claims in three ways: first, "Tech Data's claims for damages under the Sherman Act and Clayton Act should be dismissed to the extent they seek

2

to recover for indirect purchases of LCD products"; second, "Tech Data's claims under the Cartwright Act, UCL, and FDUTPA should be dismissed to the extent such claims are based on out-of-state purchases"; and, third, "Tech Data's claims under the [Cartwright Act, UCL, and FDUTPA] are barred by the applicable statute of limitations." Defs.' Joint Mot. To Dismiss, In Part, Tech Data Corporation and Tech Data Product Management, Inc.'s First Am. Compl. (hereinafter, "Joint Motion") at 2, Master Dkt. No. 5736.

### A. Sherman Act and Clayton Act Claims Are Limited to Direct Purchases

Defendants move to dismiss Tech Data's Sherman Act and Clayton Act claims to the extent that they are based upon indirect purchases. The parties appear to be in agreement on this point. In its opposition to the Joint Motion, Tech Data states that "[i]ts claims under those [Sherman Act and Clayton Act] statutes are limited solely to its direct purchases" and that "Tech Data does not seek any damages under these [Sherman Act and Clayton Act] statutes based on its indirect purchases." Tech Data Corporation and Tech Data Product Management, Inc.'s Opp'n To Defs.' Joint Mot. To Dismiss First Am. Compl. ("Opposition") at 3, Master Dkt. No. 6025. Accordingly, the Court GRANTS defendants' motion to dismiss the Sherman Act and Clayton Act claims to the extent that they cover indirect purchases.

### B. Tech Data's State-Law Claims Are Limited to In-State Purchases

The Court has already ruled in this MDL that "in order to invoke the various state laws at issue, plaintiffs must be able to allege that 'the occurrence or transaction giving rise to the litigation' – plaintiff's purchases of allegedly price-fixed goods – occurred in the various states." Order Granting Defs.' Joint Mot. To Dismiss and Granting Pl.'s Leave To Am. at 5, Master Dkt. No. 1823; *see also* Order Granting Samsung SDI's And Sanyo Consumer Electronics' Mot. To Dismiss Second Amended Complaint (Target Corp.) at 5, Master Dkt. No. 4703; Order Granting In Part Motions To Dismiss Complaints ("*Office Depot*") at 5, Master Dkt. No. 4592; Order Granting Defs.' Joint Mot. To Dismiss at 12, Master Dkt. No. 1822. The parties appear to be in agreement on this point as well. Tech Data recognizes this Court's precedent and "will defer arguing this position at this juncture." Opposition at

3

3. Accordingly, the Court GRANTS defendants' motion to dismiss Tech Data's claims under the Cartwright Act, UCL, and FDUTPA to the extent that these claims cover purchases made outside of the acts' respective states.

### C. Tech Data's State Claims Are Tolled In Part

Defendants argue that Tech Data's FDUTPA, Cartwright Act, and UCL claims are untimely. Tech Data filed suit on October 28, 2011, more than four years after the DOJ's December 11, 2006, announcement of its investigation into the conspiracy.[1] Because these claims have four-year statutes of limitations, defendants contend that Tech Data's claims must be dismissed.

Tech Data offers four reasons why its claims are timely, the first of which the Court finds sufficient to toll certain portions of its state claims. Tech Data asserts that the Indirect-Purchaser Plaintiffs' Consolidated Amended Complaint ("IPP-CAC"), filed against defendants on November 5, 2007, tolled the statutes of limitations until December 5, 2008, when the complaint was amended to exclude resellers. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."). The Court need not reach Tech Data's other proffered reasons for tolling, which are based on separate indirect-purchaser class action complaints and cross-jurisdictional and equitable tolling.

Plaintiff asserts that the IPP-CAC filed on November 5, 2007, an indirect-purchaser class action, included California and Florida claims and included Tech Data as a class member. Defendants' chief arguments are first, that the IPP-CAC did not include a UCL claim; second, that the IPP-CAC did not include Tech Data as a member of its represented class; and third, that the earlier indirect-purchaser class actions excluded Tech Data as a member of their represented classes. The Court agrees with plaintiff and is not persuaded by defendants' arguments.

---

[1] This Court has treated a plaintiff's allegations of fraudulent concealment as sufficient, as a pleading matter, to toll the statute of limitations until the DOJ announced its investigation on December 11, 2006. *See Office Depot* at 3, Master Dkt. No. 4592; Order Granting in Part and Denying in Part Defs.' Motions to Dismiss Complaints at 27-28, Master Dkt. No. 666; *see also* Order Denying Defs.' Joint Mot. for Partial Summ. J. Based On the Florida Statute of Limitations, Master Dkt. No. 3628.

4

First, plaintiff claims that the IPP-CAC tolls its claim from the November 5, 2007 filing date until December 5, 2008, when it was amended to exclude resellers. Contrary to defendants' assertions, the November 5, 2007 filing contains specific reference to California's UCL, Sections 17200, *et seq.* of the California Business and Professions Code. IPP-CAC at ¶ 271.

Second, the referenced version of the IPP-CAC is also relevant when deciding whether plaintiff was included in the class definition; plaintiff claims tolling only from the November 5, 2007 filing date until December 5, 2008. The November 5, 2007 filing defined the class with broad language, including "all persons and entities in [the state] who indirectly purchased" the products at issue. IPP-CAC at ¶ 217. This complaint stood unmodified until over a year later, when on December 5, 2008, it was amended to explicitly disqualify plaintiff from the class. This scenario is analogous to one presented earlier in this MDL by P.C. Richard & Son, where plaintiff was entitled to tolling "until the date the class definition was narrowed." Order Granting In Part Defs.' Motions to Dismiss ("*P.C. Richard*") at 5, Master Dkt. No. 4601. In that case, the "complaint purported to represent 'all persons and entities' who were indirect-purchasers. Further, the complaint was not narrowed until eight months after it was filed. Even assuming the . . . plaintiff intended to represent a class of only end-users, is was not readily apparent to any other party who may have relied upon the suit." *Id.* As with P.C. Richard, the Court finds that Tech Data is entitled to tolling for its indirect purchases until December 5, 2008, when the class definition was narrowed.

Because the IPP-CAC sufficiently tolls Tech Data's FDUTPA, Cartwright Act, and UCL claims, the Court need not address the other early indirect-purchaser class actions. Similarly, the Court need not address plaintiff's cross-jurisdictional and equitable tolling arguments based on direct-purchaser complaints.

The Court agrees with defendants, however, that only those claims expressly asserted in the above actions were tolled. Thus, to the extent Tech Data's state claims are based upon direct purchases, they were not tolled by the above cases. In addition, the Court agrees with defendants that tolling is limited to those defendants, products, and conspiracy periods identified in the class action complaints Tech Data relies upon. *See* Order Granting In Part Defs.' Motions to Dismiss at 6, Master Dkt. No. 4602; *P.C. Richard* at 6.

5

**II.     NEC's Motion**

NEC independently moves on three grounds to dismiss plaintiff's Sherman Act claim. First, NEC asserts that Tech Data executed agreements that limited the time period for claims against NEC and specified what law would govern; also, the agreements waived a right to jury trial. Second, NEC raises unique arguments stating that *American Pipe* tolling does not apply to Tech Data's claims against it. Third, NEC contends that Tech Data's allegations are insufficient to state a claim against it.

**A.     The Agreements**

NEC argues that Tech Data's claims are controlled by two distributor agreements executed between Tech Data and various NEC entities in 1987 and 2002, respectively. These agreements provide that respective 18-month and a 24-month limitations periods will apply to "any action in any form arising out of" the agreements, that the agreements would be respectively governed under Massachusetts and Florida law, and that the parties waived their right to a jury trial for disputes arising under the agreements.

As an initial matter, the Court agrees with Tech Data that these agreements could only govern purchases that it made directly from the NEC entities. *See*, *e.g.*, Order Granting In Part NEC Defendants' Mot. To Dismiss ("*Electrograph*") at 5-6, Master Dkt. No. 4591. The agreements do not reach Tech Data's indirect-purchaser claims. In addition, Tech Data has represented that its state-law claims include only causes of action for indirect purchases. Thus, the only claim that could fall under the contracts at issue is Tech Data's Sherman Act claim based on direct purchases from the NEC entities. As the contracts do not reach the state claims, those claims are not subject to dismissal or a modified tolling period by the contracts.

The Court takes judicial notice of both the 1987 and 2002 Authorized Distributor Agreements between Tech Data and the NEC subsidiaries.[2] The Court, however, does not adopt defendant's characterization of the contracts. Several factual questions about the applicability of the 1987 contract

---

[2]Tech Data contests the Court's ability to take judicial notice of these documents, but has not contested the authenticity of the documents themselves. Although not explicitly referenced within the four corners of the complaint, the authenticity of the documents is not in dispute; judicial notice is GRANTED. *See Electrograph* at 7; *cf.* Order Denying Defendants' Joint Motion To Dismiss at 6, Master Dkt. No. 3614 ("plaintiff contests the authenticity and reliability of the contract").

6

are in dispute; it would be an improper use of judicial notice to construe these disputed terms in favor of the defendant on a motion to dismiss. The details of the 2002 agreement are recognized by the Court. As such, the Court agrees with NEC that the contract includes a jury trial waiver and requires that Tech Data's jury demand be stricken to the extent its claims are based upon direct purchases from NEC that were made under the 2002 agreement. Tech Data is entitled to a jury trial on its remaining claims. Additionally, plaintiff's Sherman Act claim based on direct purchases from NEC must survive the limited 24-month limitations period specified in the contract to withstand defendant's motion to dismiss.[3]

### B. Tolling

NEC raises some tolling issues distinct from those raised in defendants' joint motion. NEC's Sherman Act argument is unique in that purchases made directly from NEC under the 2002 agreement are governed by a 24-month limitations period. Tech Data's causes of action started accruing on December 11, 2006,[4] and plaintiff's claim was not filed until October 28, 2011, 58 months and 17 days later. The Court agrees with plaintiff that its Sherman Act claim was tolled by the DOJ's criminal antitrust action pending before this Court. *See* 15 U.S.C. § 16(I); *Electrograph* at 6. Defendant's motion to dismiss the plaintiff's Sherman Act claim as untimely is DENIED.

With regard to indirect-purchaser state law complaints, NEC points out that only some members of its corporate family were named defendants in the various class actions that Tech Data relies on for tolling. NEC argues that tolling applies only to the named NEC defendants, and therefore a patchwork of eligible defendants exists based on the details of each class action claim. With respect to the IPP-CAC specifically, NEC Corp. and NDSA were not named defendants. Further, the complaints that did include NEC Corp. and NDSA allegedly restricted their class definition to those who made purchases from 2002 to 2006. Defendant relies on language from this Court's finding that "tolling is limited to

---

[3] Tech Data argues that the agreement may only be enforced by the NEC entities that are parties to the agreements. The Court disagrees and finds that the contract may be enforced by all the NEC entities. *See Electrograph* at n.3; Order Granting in Part LG Display Co., Ltd.'s and LG Display America, Inc.'s Mot. to Compel Arbitration at 6-8, Dkt. No. 3613.

[4] See note 1, *supra*.

7

the defendants, products, and conspiracy period identified in the [relied upon] class action[] complaint[s]." *P.C. Richard* at 6. Plaintiff alleges that NEC Corp. exercises "parental" relationships over its "wholly-owned and controlled subsidiar[ies] of NEC Corporation," referring to the other named NEC defendants. *See* FAC ¶ 35-39. Plaintiff cites authority that considers members of the same corporate family, especially those exercising "parental" relationships, sufficient to toll claims at the summary judgement stage. *See City of St. Petersburg v. Dayco Products, Inc.*, 06-20953, 2008 WL 5428172 (S.D. Fla. Dec. 30, 2008); *Becks v. Emery-Richardson, Inc.*, 86-6866-CIV GONZALEZ, 1990 WL 303548 (S.D. Fla. Dec. 21, 1990). This Court has previously refused to toll claims against various NEC entities based on claims against other NEC entities in this MDL, stating that "claims were only tolled to the extent NEC entities were named as defendants or coconspirators in the class actions." *Electrograph* at 7. *Electrograph* ruled on a complaint that was nearly identical in wording to Tech Data's regarding allegations of the extent of NEC's parental control over its subsidiaries. *Compare* Complaint ¶ 36, 3:11-cv-03342-SI, Dkt. No. 1, *with* FAC ¶ 39. This Court finds tolling limited to the specific NEC entities named in the relied upon class actions.

Defendants concede that *Eisler* and the IPP-CAC collectively name NEC Electrics Corporation, NECELAM, and NLD as defendants; plaintiff's complaints against these defendants are effectively tolled. Plaintiff must rely on *DiMatteo*, *Ferencsik*, and *Granich* to toll claims against NEC Corp. and NDSA. The Court is persuaded by defendant's argument and calculation of the tolling period. *Granich* tolled claims less than 8 months and therefore does not meet the 10 month, 17 day period plaintiff must show. *DiMatteo* and *Ferencsik* toll Tech Data's claim sufficiently long, but the tolled claims are restricted to a class of purchases made from 2002 to 2006. Defendant's motion to dismiss claims against NEC Corp. and NDSA is GRANTED to the extent that the claims involve indirect purchases made outside of the conspiracy period alleged in *DiMatteo* and *Ferencsik*.

### C.     Adequacy of Allegations

Having reviewed Tech Data's allegations, the Court is satisfied that they meet the standards set forth in *Iqbal* and *Twombly*. While the Court agrees with NEC that much of the evidence Tech Data relies on is not particularly probative of NEC's participation in the conspiracy, taken as a whole Tech

8

Data's allegations satisfy the minimum requirements of the federal rules. The Court has addressed this argument when ruling on NEC's motions to dismiss complaints by Office Depot, P.C. Richard, and Electrograph. *See P.C. Richard*, Dkt. No. 4601; *Office Depot*, Dkt. No. 4592; *Electrograph*, Dkt. No. 4591. Tech Data's allegations against NEC are at least as detailed as those the Court found sufficient in the above cases. *See*, *e.g.*, FAC ¶¶ 130-34, 214.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' joint motion to dismiss, and GRANTS IN PART NEC's motion to dismiss.

**IT IS SO ORDERED.**

Dated: August 6, 2012

SUSAN ILLSTON
United States District Judge