United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To: | No. C 11-6241 SI |
| COMPUCOM SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AU OPTRONICS CORPORATION, *et al.*,<br><br>Defendants. | **ORDER GRANTING IN PART DEFENDANTS' JOINT MOTION TO DISMISS AND NEC'S MOTION TO DISMISS** |

Currently before the Court are two motions to dismiss: a joint motion filed by most of the defendants, and a separate motion filed by defendants NEC Corporation, NEC Electronics America, Inc., NEC LCD Technologies, Ltd., NEC Corporation of America, Inc., and NEC Display Solutions of America, Inc. (collectively, "NEC"). Pursuant to Civil Local Rule 7-1(b), the Court finds these matters suitable for disposition without oral argument and therefore VACATES the hearing currently scheduled for August 24, 2012. Having considered the parties' papers, and for good cause appearing, the Court hereby GRANTS IN PART defendants' joint motion and NEC's motion.

**BACKGROUND**

CompuCom Services, Inc. ("CompuCom") is a Delaware corporation headquartered in Dallas, Texas. It operates as "a leading IT outsourcing company providing infrastructure management services, application services, systems integration and consulting services, as well as the procurement and

management of hardware and software." First Amended Complaint ("FAC") at ¶ 18. During the conspiracy period, CompuCom maintained operations in Texas, California, New York, and Massachusetts. *Id*. at ¶ 19. CompuCom alleges that it purchased Liquid Crystal Display ("LCD") panels both directly from defendants or their co-conspirators, and indirectly when purchasing manufactured consumer electronic products containing defendants' LCD panels. On October 28, 2011, CompuCom filed this action in the Northern District of Texas, seeking to recover for a "long-running conspiracy . . . to fix, raise, stabilize, and maintain prices for Liquid Crystal Display panels ("LCD Panels")." Compl. at ¶ 1. On May 8, 2012, CompuCom filed a FAC that contains (1) a claim under the Sherman Act, based on direct purchases of LCD panels, and (2) relief to recover damages under the California Cartwright Act, the California Unfair Competition Law, and the New York Donnelly Act based on indirect purchases. FAC at ¶¶ 311-340. Defendants now move to dismiss CompuCom's FAC.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief may be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

As stated above, defendants have filed two motions to dismiss CompuCom's complaint: a joint motion and a separate motion that pertains only to NEC.

**I.    Defendants' Joint Motion**

Defendants' joint motion raises four grounds for dismissal. First, defendants argue that CompuCom's claims are untimely. Second, defendants contend that CompuCom's New York law claim should be dismissed to the extent it is based on indirect purchases made prior to the enactment of New York's *Illinois Brick* repealer statute. Third, they assert that CompuCom's state-law claims based on purchases made outside of California and New York should be dismissed. Finally, they argue that CompuCom lacks standing to bring federal antitrust claims for indirect purchases of LCD products.

The parties appear to be in agreement with respect to the second, third, and fourth grounds for dismissal.[1] Thus, the Court need only consider defendants' first ground for dismissal regarding the timeliness (or lack thereof) of CompuCom's California claims.

Defendants' contention that CompuCom's California claims are untimely requires little discussion. The Court has already ruled that the Indirect-Purchaser Plaintiffs' Consolidated Amended Complaint ("IPP-CAC") operated to toll the state law claims of plaintiffs who, like CompuCom, are resellers of LCD panels and products. *See*, *e.g.*, Order Denying Defendants' Joint Motion to Dismiss; Granting NEC's Motion to Dismiss (*Tweeter*), Master Docket No. 6386, at 5 (Aug. 8, 2012);Order Granting in Part Defendants' Joint Motion and NEC's Motion to Dismiss (*Tech Data*), Master Docket No. 6345, at 5 (Aug. 6, 2012). The Court finds no reason to depart from those prior rulings.

The parties do not dispute that for CompuCom's claims to be timely, it must demonstrate that they were tolled for at least ten months and 17 days during the period of December 11, 2006 through

---

[1] First, CompuCom concedes that its Donnelly Act clams are "limited to purchases made on and after December 23, 1998," the date on which New York's *Illinois Brick* repealer statute was enacted. *See* Opposition at 20, n. 7. Next, CompuCom claims that its "California and New York claims are based solely on the purchases it made in California and New York, respectively." *Id*. at 19-20. And, finally, CompuCom acknowledges that its federal claims are limited to "its purchases of finished products containing price-fixed LCDs from Defendants, their corporate affiliates, and their [alleged] co-conspirators." *Id*. at 20. Accordingly, the Court GRANTS IN PART defendants' joint motion on these three grounds.

3

October 28, 2011. The IPP-CAC tolled CompuCom's state law claims for a period of one year and one month, from November 5, 2007, to December 5, 2008, when the IPP-CAC was amended to explicitly exclude resellers. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."). Accordingly, the Court DENIES defendants' joint motion to dismiss CompuCom's claims under California law.[2]

## II.  NEC's Motion

As mentioned above, NEC has filed a separate motion in which it asserts that the terms of a distributor agreement mandate the dismissal of CompuCom's claims.[3]

### A.  Effect of Distributor Agreement

NEC argues that CompuCom's claims are controlled by a distributor agreement executed between CompuCom and NEC Technologies, Inc. ("the Agreement") on January 25, 1991.[4] The Agreement provides that Massachusetts law governs the parties' disputes, that an 18-month limitations period applies to "any action in any form arising out of [the] Agreement," and that any such dispute would be filed in the state of Massachusetts. Declaration of Dylan Dunavan ("Dunavan Decl.") ¶ 2, Exh. A. The

---

[2] The Court has previously ruled that tolling in this context is limited to those defendants, products, and conspiracy periods identified in the class action complaints upon which plaintiffs rely. *See*, *e.g.*, *Tweeter* at 5; Order Granting In Part Defendants' Motions to Dismiss (*P.C. Richard*), Master Dkt. No. 4601, at 6 (Jan. 18, 2012). Thus, the Court GRANTS defendants' motion to the extent that the allegations in CompuCom's FAC exceed such limitations.

[3] NEC also contends that CompuCom has not adequately alleged NEC's participation in the conspiracy. The Court has addressed this argument several times before. *See*, *e.g.*, *Tech data* at 8-9; Order Granting In Part Defendants' Motion to Dismiss (*Electrograph*), Master Docket No. 4591, at 4 (Jan. 18, 2012); Order Granting In Part Motions to Dismiss (*Office Depot*), Master Docket No. 4592 at 8 (Jan. 18, 2012). Having reviewed CompuCom's allegations, the Court is satisfied that they meet the standards set forth in *Iqbal* and *Twombly*. While the Court agrees with NEC that much of the evidence upon which CompuCom relies is not particularly probative of NEC's participation in the conspiracy, taken as a whole CompuCom's allegations satisfy the minimum requirements of the federal rules.

[4] The Court GRANTS NEC's request for judicial notice of the January 25, 1991 Authorized Major Reseller Agreement between NEC Technologies, Inc. and CompuCom Systems, as well as the May 23, 2000 Notice of Assignment from NEC Technologies to CompuCom.

Agreement further provided that the parties waived their right to a jury trial. *Id*. The rights and obligations set forth in the Agreement were later assigned to NEC Mitsubishi Electronics Display of America, Inc. ("NEC-Mitsubishi"), which was a joint venture between NEC Technologies and Mitsubishi Electronics America, Inc. and Mitsubishi Electric Sales Canada, Inc. to sell LCD products. *Id*. at ¶ 4, Exh. B. NEC-Mitsubishi later changed its name to NEC Display Solutions of America, Inc., a named defendant in this case. *Id*. at ¶ 5.

The Court agrees with NEC that the Agreement applies to all of the NEC defendants. *See*, *e.g.*, *Tech Data* at 7, n. 3; *Electrograph* at 5, n.3. However, the Court agrees with CompuCom that the Agreement only governs purchases that CompuCom made directly from the NEC entities. *See id*. at 6. The Agreement does not apply to CompuCom's claims that are based upon purchases from other co-conspirators. Nor does it reach those claims that are based upon indirect purchases of NEC panels. Further, CompuCom has represented that its state-law claims include only causes of action for indirect purchases. Thus, the only claims that fall under the Agreement are CompuCom's Sherman Act claims based on direct purchases from NEC entities.

### A.     Timeliness of Claims

The agreement between CompuCom and NEC included a contractual limitations provision requiring suit under the contract be brought "no more than eighteen (18) months after the cause of action has arisen." Dunavan Decl., ¶ 2, Exh. A. CompuCom did not file this action until October 28, 2011. Because this is more than 18 months after December 11, 2006, NEC asserts that CompuCom's claims are untimely.[5]

CompuCom alleges that its Sherman Act claims were tolled by a couple of different events: (1) from December 14, 2006, through November 5, 2009, by the class action complaints filed shortly after the DOJ announced its investigation, *see Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974); and (2) from November 12, 2008, through October 28, 2011, by the DOJ's criminal antitrust action pending

---

[5]This Court has treated a plaintiff's allegations of fraudulent concealment as sufficient, as a pleading matter, to toll the statute of limitations until the DOJ announced its investigation on December 11, 2006. *See*, *e.g.*, Order Granting in Part and Denying in Part Defs.' Motions to Dismiss Complaints, Master Dkt. No. 666, at 27-28 (Aug. 25, 2008).

before this Court, *see* 15 U.S.C. § 16(I). The Court agrees on both accounts. However, the Court agrees with NEC that CompuCom's claims were only tolled to the extent NEC entities were named as defendants or co-conspirators in the class actions. CompuCom has not provided the Court with any purported class action that operates to toll CompuCom's claims against NEC Corporation, NEC Corporation of America, or NEC Display Solutions of America. *See*, *e.g.*, *Tweeter* at 6-8. Accordingly, these entities must be dismissed from CompuCom's complaint.

### B. Choice-of-Law Clause

NEC asserts that the Agreement mandates dismissal of CompuCom's California and New York claims,[6] because the Agreement provides that: "This Agreement will be governed by the laws of the Commonwealth of Massachusetts." Dunavan Decl., ¶ 2, Exh. A. As mentioned above, however, CompuCom has represented that it only brings indirect-purchaser claims under state law. The Agreement therefore does not reach CompuCom's California or New York claims.

### C. Jury Trial Waiver

NEC also contends that the Agreement includes a jury trial waiver and requests that CompuCom's jury demand be stricken. The Court agrees that the jury waiver is valid and enforceable. *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007). Thus, CompuCom's demand for a jury trial must be stricken to the extent its claims are based upon purchases from NEC directly. CompuCom is entitled to a jury trial on its remaining claims.

### D. Forum Selection Clause

Finally, NEC argues that the Agreement contains a forum-selection clause that required CompuCom to file its complaint in a Massachusetts Court. As the Court has previously held, "enforcement of the forum selection clause[] would contravene the federal policy in favor of efficient

---

[6] NEC's opening brief also argues that CompuCom's claims under California and New York law violate due process to the extent that CompuCom's claims are based on out-of-state purchases. CompuCom, however, contends that its claims are based upon purchases made in California and New York.

6

resolution of trial." Order Denying NEC/Defendants' Motion to Dismiss Electrograph Complaint for Improper Venue, Master Docket No. 4784, at 2 (Feb. 12, 2012). The Court adheres to its prior decision.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' joint motion to dismiss NEC's motion to dismiss as to NEC Corporation, NEC Corporation of America, or NEC Display Solutions of America from CompuCom's complaint. Docket Nos. 56, 58 in 11-6241; Master Docket Nos. 6108, 6114 in 07-1827.

**IT IS SO ORDERED.**

Dated: August 21, 2012

SUSAN ILLSTON
United States District Judge