1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  IN RE: TFT-LCD (FLAT PANEL)                    No. M 07-1827 SI
   ANTITRUST LITIGATION                           MDL No. 1827
9  _____/

10 This Order Relates To:

11 AT&T MOBILITY, LLC, *et al.*, v. AU            **ORDER GRANTING DEFENDANTS'**
   OPTRONICS CORP., *et al.*, C 09-4997 SI        **JOINT MOTION FOR PARTIAL**
12                                                **SUMMARY JUDGMENT ON CHOICE-**
                                                  **OF-LAW GROUNDS**
13 TARGET CORP., *et al.*, v. AU OPTRONICS
   CORP., *et al.*, C 10-4945 SI
14
              Defendants.
15 _____/

16
         On August 24, 2012, the Court held a hearing on defendants' joint motion for partial summary
17
   judgment with respect to certain indirect purchaser claims of plaintiffs AT&T Mobility, RadioShack,
18
   and Old Comp., Inc. ("CompUSA"). For the reasons set forth below, the Court GRANTS defendants'
19
   motion. Docket Nos. 6082 & 6083 in Master Docket 07-1827 SI; Docket Nos. 281 & 282 in C 09-4997
20
   SI; Docket Nos. 236 & 237 in C 10-4945 SI.
21

22
                                          **BACKGROUND**
23
         AT&T Mobility is headquartered in Georgia. Defendants have submitted undisputed evidence
24
   that the AT&T Mobility officials involved in contracting for and purchasing handsets, including
25
   negotiating with mobile phone suppliers, selecting mobile phones for purchase, and issuing purchase
26
   orders for handsets, were located primarily in Georgia. Some of these activities also occurred in
27

28

**United States District Court**
For the Northern District of California

1  Washington and Texas.[1]  None of these activities took place in Tennessee.  *See generally* Exhibits

2  attached to Cohen Decl. & Reply Cohen Decl.

3       RadioShack is headquartered in Texas.  Defendants have submitted undisputed evidence that all

4  RadioShack employees involved in contracting with LCD product suppliers, selecting LCD products,

5  issuing purchase orders, and paying invoices were based in Texas.  None of these activities took place

6  in California.  *See generally* Lutz Decl., Ex. N-Q & Reply Lutz Decl., Ex. A.

7       CompUSA was headquartered in Texas during the relevant time period.  Defendants have

8  submitted undisputed evidence that CompUSA's merchandising employees were based in Texas, that

9  the vast majority of contract negotiations took place in Texas, LCD product types and quantities were

10  selected in Texas, and invoices were paid in Texas.  None of these activities took place in California or

11  Illinois.[2]  *See generally* Lutz Decl., Ex. N, R-T & Reply Lutz Decl., Ex. B.

12

13  **LEGAL STANDARD**

14       Summary judgment is proper "if the movant shows that there is no genuine dispute as to any

15  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

16  moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.

17  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to

18

---

19  [1] Payments issued from Texas and Florida; AT&T Mobility has not alleged that Texas or Florida law applies to its claims.

20  [2] Defendants have also submitted evidence showing that all CompUSA purchase orders were
21  issued by the merchandising division, which was in Texas. *See* CompUSA 30(b)(6) deposition (Virginia Hodges) at 38:24-39:5 ("Q: Was the merchandising division also responsible for issuing purchase orders for LCD products?  A: Yes, sir."), 164:4-6 ("Q: The purchase orders all come from – the merchandising
22  division were all located in Texas?  A: Yes.") (Lutz Decl., Ex. R); *see also* Target SAC ¶ 29 ("In addition, CompUSA issued all of its purchase orders for LCD products from Texas and received
23  invoices for those orders in Texas.").  In opposition to defendants' motion, CompUSA submitted the declaration of Todd Whitbeck, an Executive Consultant for OldComp, Inc., "which is the vehicle used
24  for winding down CompUSA, Inc.'s business."  Whitbeck Decl. ¶ 1.  Mr. Whitbeck states that during the time period of 2003-2006, "[p]urchase orders were prepared and issued in Alameda, California for
25  the products that were processed at the Hayward Distribution Center."  *Id*. ¶ 4.
    Defendants state that CompUSA did not previously disclose Mr. Whitbeck as a witness.  In any
26  event, it is well settled that a party cannot "contradict their earlier allegations in an effort to survive summary judgment."  *Cline v. Industrial Maintenance Engineering & Contracting Co*., 200 F.3d 1223,
27  1232 (9th Cir. 2000).  Accordingly, because Mr. Whitbeck's declaration contradicts both CompUSA's own allegations in the SAC as well as the testimony of its Rule 30(b)(6) designee, the Court disregards
28  Mr. Whitbeck's statement about the issuance of purchase orders from California.

2

<b>United States District Court</b><br>For the Northern District of California

1  negate or disprove matters on which the non-moving party will have the burden of proof at trial. The

2  moving party need only demonstrate to the Court that there is an absence of evidence to support the non-

3  moving party's case. *See id.* at 325.

4  The burden then shifts to the non-moving party to "designate specific facts showing that there

5  is a genuine issue for trial." *Id.* at 324. To carry this burden, the non-moving party must "do more than

6  simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

7  *Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of

8  evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for

9  the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

10  In deciding a summary judgment motion, the evidence is viewed in the light most favorable to

11  the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility

12  determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

13  are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*

14  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues

15  of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th

16  Cir.1979); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (observing

17  that there is no genuine issue of fact "where the only evidence presented is 'uncorroborated and

18  self-serving' testimony" (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))). The

19  evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(c). Hearsay statements found

20  in affidavits are inadmissible. *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 762-63 (9th Cir. 1980).

21

22  **DISCUSSION**

23  Defendants move for summary judgment on the following claims: (1) AT&T Mobility's indirect

24  purchaser claims brought under Tennessee law; (2) RadioShack's indirect purchaser claims brought

25  under California law; and (3) CompUSA's indirect purchaser claims brought under California and

26

27

28

United States District Court
For the Northern District of California

3

**United States District Court**
For the Northern District of California

1    Illinois law.[3]  Defendants argue that discovery shows that the plaintiffs did not purchase products

2    containing LCD panels in Tennessee (AT&T Mobility), California (RadioShack and CompUSA), and

3    Illinois (CompUSA), but only received products in those states before reshipping them across the

4    country.  Defendants contend that the relevant purchasing activity occurred in Georgia for AT&T

5    Mobility and Texas for RadioShack and CompUSA, and thus as a matter of Due Process that plaintiffs

6    may not bring indirect purchaser claims under Tennessee, California or Illinois law.  As a separate and

7    independent basis for summary judgment, defendants bring a choice-of-law challenge to plaintiffs' state-

8    law claims, arguing that Georgia (AT&T Mobility) and Texas (RadioShack and CompUSA) law

9    governs those claims.

10          Before a court may apply a particular state's law to a cause of action, it must ensure that

11   application of that law would comport with the Due Process Clause of the United States Constitution.

12   In undertaking this inquiry, the Court must examine "the contacts of the State, whose law [is to be]

13   applied, with the parties and with the occurrence or transaction giving rise to the litigation." *Allstate*

14   *Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981).  Only if the state has a "significant contact or significant

15   aggregation of contacts, creating state interests, with the parties and the occurrence or transaction" may

16   the law of that state be applied. *Id.*; *see also Phillips Petroleum v. Shutts*, 472 U.S. 797, 821-22 (1985)

17   (Due Process requires a "significant contact or significant aggregation of contacts" between the

18   plaintiff's claims and the state at issue).

19          This Court has consistently held that, for purposes of state law indirect purchaser claims,

20   plaintiffs are deemed to be injured in the states where they agreed to pay inflated prices for products,

21   not the states where they merely received products.  The Court has held (1) as a matter of due process,

22   "in order to invoke the various state laws at issue, [plaintiff] must be able to allege that the occurrence

23   or transaction giving rise to the litigation – which is [plaintiff's] purchase of allegedly price-fixed goods

24   – occurred in the various states," and the state where a plaintiff's "injury – its overpayment for LCD

25

26         [3] Defendants' motion also addressed the application of Massachusetts and Mississippi law to
     RadioShack's claims, but RadioShack's opposition states that it is not pursuing damages claims under
27   those state's laws.  Opp'n at 5 n.16.  Similarly, defendants' motion addressed the applicability of
     Washington law to AT&T Mobility's claims (based on the purchasing activity of the former AT&T
28   Wireless), but in the opposition AT&T Mobility has abandoned claims based on that entity's purchases.
     Opp'n at 2 n.6, 23.

4

**United States District Court**
For the Northern District of California

1   products – occurred in . . . the state in which [plaintiff] paid its invoices," *In re TFT-LCD (Flat Panel)*

2   *Antitrust Litig. (Costco I)*, Nos. MDL 07-1827 SI, C 11-58 SI, 2011 WL 3809767, at \*2, \*4 (N.D. Cal.

3   Aug. 29, 2011); (2) as a matter of due process, "[plaintiff] may not bring claims under the laws of the

4   states where it has alleged only that it has received goods," *id*. at \*3; and (3) applying choice-of-law

5   principles, the state where a plaintiff paid the invoices, negotiated purchases, and is headquartered "has

6   stronger connections with and interests in plaintiffs' claims than states from which plaintiff merely

7   issued purchase orders or received product shipments and in which defendants have a presence." *Id* at

8   \*4-5.

9       Plaintiffs argue that their purchases of LCD products were completed at their respective

10  distribution centers, which are located in Tennessee (AT&T Mobility), California (RadioShack and

11  CompUSA), and Illinois (CompUSA).[4]  Plaintiffs argue that they only agreed to pay the

12  supracompetitive prices for price-fixed products after they took title at their distribution centers, and that

13  plaintiffs' receipt of products in Tennessee, California and Illinois constitutes a "purchase" of those

14  products in those states pursuant to the Uniform Commercial Code ("UCC").  RadioShack and

15  CompUSA also argue that the application California law to their claims is supported by the evidence

16  of defendants' contacts and anti-competitive conduct in California.

17      The Court has previously rejected plaintiffs' arguments that a plaintiff's antitrust injury occurs

18  in the state where it receives products. The Court has also rejected the related argument that a plaintiff's

19  injury occurred in the state where they "took title" of LCD products.[5]  In *Costco II*, Costco argued, as

20  plaintiffs do here, that its injury occurred in California where it received shipments because it did not

21  purchase the LCD products until title passed to Costco, and that Costco's standard terms provided that

22

23  [4] Plaintiffs also assert, citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. MDL 07-1827
    SI, C 09-4997 SI, 2010 WL 4705518, at \*2-3 (N.D. Cal. Nov. 12, 2010), that "[t]his Court has already
24  held in the AT&T case that AT&T's allegations that it purchased handsets in Tennessee were, as a
    matter of law, sufficient to allow application of Tennessee's antitrust laws, consistent with Due
25  Process." Opp'n at 14:6-8. However, as defendants note, defendants did not move to dismiss AT&T
    Mobility's claims under Tennessee law because AT&T Mobility alleged that it made "purchases" in
26  Tennessee.

27  [5] Consistent with these rulings, the Court has also held that "it is the location of the purchase,
    not the ultimate destination of the LCD products, that determines where the injury occurred" for
28  purposes of determining whether a plaintiff's purchases fall within the domestic injury exception to the
    FTAIA.  Docket No. 4831 at 5:18-19.

5

**United States District Court**
For the Northern District of California

1   title passed to Costco only after Costco received and accepted merchandise at its distribution center in

2   California. *See* Docket No. 64 at 6-7 in C 11-58 SI (Costco's Response to Defendants' Joint Motion

3   to Dismiss Amended Complaint). Costco also relied on the UCC's definition of "purchase" to support

4   its argument that California law applied to its claims. *Id*. The Court rejected those arguments and held

5   "Costco's purchasing process was controlled from Washington and that Costco was injured in

6   Washington." *In re TFT-LCD (Flat Panel) Antitrust Litig. (Costco II)*, Nos. MDL 07-1827 SI, C 11-58

7   SI, 2011 WL 5922966, at *2 (N.D. Cal. Nov. 28, 2011). The Court noted that Costco was headquartered

8   in Washington, and LCD products "were selected in Washington, the negotiation over the terms of

9   purchase took place in Washington, the invoices were sent to Washington, and payment issued from

10   Costco's Washington headquarters." *Id*.

11       The Court's reasoning in *Costco II* applies here, and warrants summary judgment in favor of

12   defendants. The undisputed evidence shows that AT&T Mobility agreed to pay allegedly inflated prices

13   in Georgia, not Tennessee. AT&T Mobility executed purchase agreements in Georgia, negotiated

14   purchases in Georgia, and issued purchase orders in Georgia. None of these activities occurred in

15   Tennessee, and Tennessee's only connection to AT&T Mobility's claims is that mobile phones were

16   received  at the Memphis distribution center and then redistributed to retail stores throughout the

17   country. Similarly, RadioShack and CompUSA agreed to pay allegedly inflated prices in Texas, nor

18   California or Illinois. The undisputed evidence shows that RadioShack and CompUSA executed

19   purchase agreements in Texas, negotiated purchases in Texas, issued purchase orders in Texas, and

20   payment issued from Texas. Again, none of these activities occurred in California or Illinois, and

21   RadioShack and CompUSA only received products in those states before shipping them to stores across

22   the country.[6]

23       Accordingly, the Court GRANTS defendants' motion for partial summary judgment on (1)

24   AT&T Mobility's indirect purchaser claims brought under Tennessee law; (2) RadioShack's indirect

25

26       [6] In addition, the Court has repeatedly rejected the argument that a plaintiff may invoke
California law based on defendants' alleged California contacts as these contacts "do not provide a link
between plaintiffs' claims that they purchased price-fixed products and California." *In re TFT-LCD*
27   *(Flat Panel) Antitrust Litig.*, Nos. MDL 07-1827 SI, C 09-4997 SI, 2010 WL 2609434, at *3 (N.D. Cal.
June 28, 2010). AT&T's interlocutory appeal of this Court's order dismissing its California claims is
28   currently pending in the Ninth Circuit.

1    purchaser claims brought under California law; and (3) CompUSA's indirect purchaser claims brought

2    under California and Illinois law. The Court finds it unnecessary to address the alternative basis (choice

3    of law) for defendants' motion for summary judgment.

4

5                                          **CONCLUSION**

6          For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants'

7    motion. Docket Nos. 6082 & 6083 in Master Docket 07-1827 SI; Docket Nos. 281 & 282 in C 09-4997

8    SI; Docket Nos. 236 & 237 in C 10-4945 SI.

9

10         **IT IS SO ORDERED.**

11

12   Dated: August 27, 2012

13                                                         SUSAN ILLSTON
                                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7