IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL No. 1827<br>Case No. C 09-5609 SI |
| This Order Relates To:<br><br>NOKIA CORPORATION and NOKIA, INC.,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>AU OPTRONICS CORPORATION, *et al*.,<br><br>　　　　　Defendants. / | **ORDER DENYING DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO FOREIGN COMMERCE CLAIMS** |

Now before the Court is defendants' joint motion for partial summary judgment on Nokia Corporation and Nokia, Inc.'s ("Nokia's") foreign commerce claims. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and VACATES the hearing currently scheduled for August 31, 2012. Having considered the parties' papers, and for good cause appearing, the Court hereby DENIES defendants' motion. Master Docket Nos. 5878 & 5879; Docket Nos. 161 & 162 in C 09-5609 SI.

Nokia Corporation is based in Finland. Its wholly-owned subsidiary, Nokia Inc., is headquartered in Texas. As of 2005, Nokia Corp. owned and operated Mexico-based Nokia Reynosa S.A. de C.V. ("Nokia Mexico). *See* Nokia 30(b)(6) deposition (Carlos Pelcastre) at 24:9-16. During the relevant period, Nokia Mexico operated under Mexico's Maquiladora Program. *Id*. at 22:19-22. That program allows certain products to be transported to Mexico on a temporary and duty-free basis for use in the manufacture or assembly of finished products. *Id*. at 23:1-14; 48:11-16. It is undisputed

that defendants shipped LCD panels to Nokia in the United States, where they were held, in-bond, before being transported to Nokia Mexico under the Maquiladora Program. Nokia Mexico used defendants' LCD panels in handset mobile devices it manufactured. Nokia Mexico sent the finished devices back to the United States, from where Nokia Inc. sold them to U.S. and foreign customers.

Defendants move for summary judgment on Nokia's claims arising from its purchases of LCD panels that "were undisputedly agreed to and paid for by Nokia Corp. outside the United States," and "ultimately shipped to Mexico." Motion at 1. Defendants describe these as Nokia's "foreign purchase claims" and argue that they are barred by the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"). 15 U.S.C. § 6a.

The FTAIA establishes a general rule that the Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations." *Id.*; *see also Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 854 (7th Cir. 2012) (en banc) ("Import trade and commerce are excluded at the outset from the coverage of the FTAIA in the same way that domestic interstate commerce is excluded."); Order Granting Defendants' Joint Motion to Dismiss (*Motorola I* Order), Master Docket No. 1822, at 5 (June 28, 2010) ("Sherman Act claims based on 'imports' are not barred by the FTAIA."). The Seventh Circuit has recently stated:

> This means only that conduct in both domestic and import trade is subject to the Sherman Act's general requirements for effects on commerce, not to the special requirements spelled out in the FTAIA. Where the FTAIA does apply, it 'remov[es] from the Sherman Act's reach . . . commercial activities taking place abroad, unless those activities adversely affect . . . imports into the United States . . . . The applicability of U.S. law to transactions in which a good or service is being sent directly into the United States, with no intermediate stops, is both fully predictable to foreign entities and necessary for the protection of U.S. consumers.

*Minn-Chem*, 683 F.3d at 854.

Although "[t]he [FTAIA] does not define the term 'import,' [] the term generally denotes a product (or perhaps a service) has been brought into the United States from abroad." *Motorola I* Order at 5 (quoting *Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293, 303 (3d Cir. 2002)). "[T]he relevant inquiry is whether defendants' alleged anticompetitive behavior was 'directed at an import market.'" *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d Cir. 2011) (quoting *Turicentro*, 303 F.3d at 303).

Defendants contend that the LCD products at issue do not constitute "import commerce" because they merely passed through the United States, in bond, en route to Nokia Mexico. *See* Motion at 13. Defendants argue that U.S. customs law establishes that "goods which, like the LCD products at issue, transit the United States in bond en route to a final destination in a foreign country, are *not* U.S. imports" under the FTAIA. *Id*. at 9 (emphasis original). As Nokia points out, the Court has already ruled that definitions arising under different statutes are irrelevant to determining whether a good is an "import" under the FTAIA. *See Motorola I* Order at 8 (finding the definition of "import trade" contained in the Tariff Act of 1930 inapplicable to what constitutes an "import" under the FTAIA). The Court finds no reason to depart from its prior ruling. Moreover, the parties do not dispute that the LCD products at issue were "brought into the United States from abroad." *See Turicentro*, 303 F.3d at 303.

Nor is the Court persuaded by defendants' argument that their alleged anti-competitive conduct was not "directed at an import market," because Nokia decided to transfer the LCD products at issue from Nokia Mexico back to the United States. While it is correct that "[t]he dispositive inquiry is whether the conduct of defendants, not plaintiffs, involves 'import trade or commerce,'" *id*., the cases on which defendants rely to support their argument are distinguishable. None of those cases involved goods or services that defendants shipped directly to the United States. *See Motorola I* Order (import exception did not apply where Motorola's foreign affiliates purchased LCDs abroad for assembly into products that those affiliates subsequently exported to Motorola in the United States); *Turicentro*, 303 F.3d at 303 ("Defendants did not directly bring items or services into the United States."); *Kruman v. Christies's Int'l PLC*, 284 F.3d 384, 395-396 (2d Cir. 2002) (same); *CSR Ltd. v. Cigna Corp.*, 405 F. Supp. 2d 526, 540 (D. N.J. 2005) (same); *United Phosphorus v. Angus Chem. Corp.*, 131 F. Supp. 2d 1003,1023 (N.D. Ill. 2001) (same).

Here, defendants shipped the LCD products at issue directly to Nokia in the United States. *See generally* Houser Decl., Ex. A (Pelcastre deposition), Ex. E (Samsung SDI sales data indicating that LCDs were shipped to the United States and invoiced to Nokia Inc.). After their arrival, the LCDs were transferred to Nokia Mexico for assembly into mobile wireless handsets. *Id*. The handsets were then returned to Nokia Inc. in Texas in accordance with Mexico's Maquiladora Program. *Id*. Nokia Inc. thereafter sold the assembled handsets to U.S. and foreign customers. *Id*. The Court finds that there

3

is evidence from which a reasonable jury could conclude that defendants' anti-competitive conduct was directed at an import market, notwithstanding the fact that the LCD products at issue happened to "enter[] and travel[] through the United States," Motion at 5, before arriving in Mexico.[1]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion. Master Docket Nos. 5878 & 5879; Docket Nos. 161 & 162 in C 09-5609 SI.

**IT IS SO ORDERED.**

Dated: August 29, 2012

SUSAN ILLSTON
United States District Judge

---

[1] The Court disagrees that a separate action brought by Nokia Corp. in the United Kingdom against some of the same defendants precludes Nokia from pursuing its foreign commerce claims in the United States. The Court will consider defendants' challenges to Nokia's state-law claims when deciding another pending joint motion for summary judgment. *See* Defendants' Joint Motion for Partial Summary Judgment as to [Nokia's] (1) Claims Based on Inferred Invoices; and (2) State Law Claims, Master Docket Nos. 6092 & 6197.

4