Michael P. Kenny (mike.kenny@alston.com)
Debra D. Bernstein (debra.bernstein@alston.com)
Rodney J. Ganske (rod.ganske@alston.com)
**ALSTON + BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

Douglas R. Young (dyoung@fbm.com)
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street
San Francisco, California 94104
Telephone: (415) 954-4410
Facsimile: (415) 954-4480

***Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.***

**[Additional Counsel Listed On Signature Page]**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | MASTER CASE NO. 3:07-md-1827 SI, MQ<br>MDL NO. 1827 |
| DELL INC. and DELL PRODUCTS L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>AU OPTRONICS CORP., *et al.*,<br><br>Defendants. | Individual Case No. 3:10-cv-01064 SI<br>**PLAINTIFFS DELL INC.'S AND DELL PRODUCTS L.P.'S MOTION TO INTERVENE AND OBJECTION TO DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE TOSHIBA SETTLEMENT**<br><br>Date: October 10, 2012<br>Time: 4:00 p.m.<br>Place: Courtroom 10, 19th Floor<br>Judge: Honorable Susan Illston |

**TABLE OF CONTENTS**

I. ISSUE PRESENTED FOR DECISION .......... 1

II. INTRODUCTION .......... 1

III. STATEMENT OF FACTS .......... 2

A. The TFT-LCD Price-Fixing Litigation .......... 2

B. Trial and Verdict .......... 3

C. The Proposed Settlement .......... 3

IV. LEGAL ARGUMENT .......... 4

A. Dell Satisfies the Rule 24(b) Elements for Permissive Intervention and Has Standing to Object to the Proposed Settlement .......... 4

A. The Court Should Deny Preliminary Approval of the Toshiba Settlement Agreement .......... 6

B. The Toshiba Vacatur Provision Fails the Balancing Test Required by *Ringsby* .......... 7

1. *The public has a significant interest in the jury's Special Verdict and judicial economy* .......... 8

2. *Dell has a significant interest in the jury's Special Verdict* .......... 9

3. *Vacatur is an abuse of the judicial process and is an inappropriate collateral attack on a judgment* .......... 10

4. *Vacatur does not further settlement* .......... 11

V. CONCLUSION .......... 12

-i-

DELL'S MOTION TO INTERVENE AND OBJECTION TO DPPS' MOTION FOR PRELIMINARY APPROVAL OF TOSHIBA SETTLEMENT

Master File No. M07-1827 SI
3:10-cv-01064 SI

# TABLE OF AUTHORITIES

**CASES**

*Aetna Cas. & Surety Co. v. Home Ins. Co.*,
882 F. Supp. 1355 (S.D.N.Y. 1995) .......... 9

*Allen-Bradley v. Kollmorgen Corp.*,
199 F.R.D. 316 (E.D. Wis. 2001) .......... 2, 11

*Am. Games, Inc. v. Trade Prods., Inc.*,
142 F.3d 1164 (1998) .......... 2, 5, 6, 7

*Bates v. Union Oil Co. of Cal.*,
944 F.2d 647 (9th Cir. 1991) .......... 6, 9

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) .......... 4

*Benavides v. Jackson Nat'l Life Ins. Co.*,
820 F. Supp. 1284 (D. Colo. 1993) .......... 8, 11

*Chartis Specialty Ins. Co. v. Queen Anne HS, LLC*,
No. C11-335 RAJ, 2012 U.S. Dist. LEXIS 124602 (W.D. Wash., Aug. 31, 2012) .......... 7, 9, 11

*Evans v. Mullins*,
130 F. Supp. 2d 774 (W.D. Va. 2001) .......... 1, 9

*Garrett v. Albright*,
No. 4:06-cv-4137-NKL, 2008 WL 2872206 (W.D. Mo. July 22, 2008) .......... 11

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) .......... 6

*In re Mem'l Hosp. of Iowa Cnty., Inc.*,
862 F.2d 1299 (7th Cir. 1988) .......... 8, 10, 12

*In re NASDAQ Market Markers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) .......... 7

*Infineon Tech. N.A. Corp. v. Mosaid Tech., Inc.*,
No. 02-5772, 2007 U.S. Dist. LEXIS 11726 (N.D. Cal. Feb. 5, 2007) .......... 10

*Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*,
510 U.S. 27 (1993) .......... 7

*John Morrell & Co. v. Local Union 304A*,
913 F.2d 544 (8th Cir. 1990) .......... 9

-ii-

DELL'S MOTION TO INTERVENE AND OBJECTION TO DPPS' MOTION FOR PRELIMINARY APPROVAL OF TOSHIBA SETTLEMENT

Master File No. M07-1827 SI
3:10-cv-01064 SI

*Metromedia Co. v. Fugazy*,
983 F.2d 350 (2d Cir. 1992) ....................................................................................9

*Nat'l Black Police Ass'n v. District of Columbia*,
108 F.3d 346 (D.C. Cir. 1997)....................................................................................2

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seafirst Corp.*,
891 F.2d 762, 765 (9th Cir. 1989) ..............................................................................8

*Nilssen v. Motorola*,
No. 93-cv-6333, 2002 U.S. Dist. LEXIS 20089 (N.D. Ill. Oct. 21, 2002) ..............................10

*Norman v. McKee*,
290 F. Supp. 29 (N.D.Cal. 1968)...................................................................................6

*Pivot Point Int'l v. Charlene Prods.*,
No. 90-cv-6933, 2002 U.S. Dist. LEXIS 13185 (N.D. Ill. July 10, 2002) ..........................8, 10

*Purcell v. Keane*,
54 F.R.D. 455 (E.D. Pa. 1972) .....................................................................................6

*Ringsby Truck Lines, Inc. v. W. Conference of Teamsters*,
686 F.2d 720 (9th Cir. 1982) .................................................................................passim

*TM Patents, L.P. v. Int'l Bus. Machs. Corp.*,
72 F. Supp. 2d 370 (S.D.N.Y. 1999)............................................................................10

*Tripati v. Henman*,
857 F.2d 1366 (9th Cir. 1988) .....................................................................................10

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
513 U.S. 18 (1994) ..............................................................................................passim

*Venegas v. Skaggs*,
867 F.2d 527 (9th Cir. 1989) ........................................................................................4

*Zinus, Inc. v. Simmons Bedding Co.*,
No. 07-3012, 2008 U.S. Dist. LEXIS 33359 (N.D. Cal. Apr. 23, 2008)....................................9

**STATUTES**

15 U.S.C. § 15(a) ...........................................................................................................3

28 U.S.C. § 1407..............................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24(b)(1) .............................................................................................1, 4

Fed. R. Civ. P. 60(b)(5) ....................................................................................................7

Federal Rule of Civil Procedure 23(e)....................................................................................6

*Manual for Complex Litigation* (Fourth) § 21.632 (2004)..................................................................6

Restatement (Second) of Judgments § 13 ........................................................................................9

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to the Court's instructions at the September 14, 2012 Hearing related to the Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Settlement Agreement, on October 10, 2012, at 4:00 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Susan Illston, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Dell Inc. and Dell Products L.P. (collectively, "Dell") will and hereby do move this Court for permission to intervene in the Direct Purchaser Class Action cases for the sole purpose of objecting to the Motion for Preliminary Approval of Settlement Agreement.

The Motion is based on this Notice of Motion and the accompanying Memorandum of Law in Support being submitted concurrently herewith, the argument of counsel, and all papers and records on file in this matter.

Respectfully submitted this 24th day of September, 2012.

By: */s/ Rodney J. Ganske*
Michael P. Kenny, Esq.
Debra D. Bernstein, Esq.
Rodney J. Ganske, Esq.
**ALSTON + BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
mike.kenny@alston.com
debra.bernstein@alston.com
rod.ganske@alston.com

Douglas R. Young
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street
San Francisco, California 94104
Telephone: (415) 954-4410
Facsimile: (415) 954-4480
DYoung@fbm.com

Kimball R. Anderson, Esq.
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
kanderson@winston.com

*Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.*

DELL'S MOTION TO INTERVENE AND OBJECTION TO DPPS' MOTION FOR PRELIMINARY APPROVAL OF TOSHIBA SETTLEMENT

Master File No. M07-1827 SI
3:10-cv-01064 SIS

## I. ISSUE PRESENTED FOR DECISION

Whether this Court should provide preliminary approval for the Toshiba Settlement where no exceptional circumstances warrant the extraordinary remedy of vacating a jury verdict for no reason other than the parties wish it to disappear.

## II. INTRODUCTION

Dell Inc. and Dell Products L.P. (collectively, "Dell") respectfully request that this Court permit Dell to intervene pursuant to Rule 24(b) of the Federal Rules of Civil Procedure for the limited purpose of presenting objections to the proposed Settlement Agreement between the Direct Purchaser Class Plaintiffs ("DPPs") and Toshiba Corporation, Toshiba Mobile Display Co., Ltd., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc. (collectively "Toshiba"). The proposed settlement contains a vacatur provision that, if approved, would render the jury's July 3, 2012 verdict "null and void and without any force or effect," in violation of Ninth Circuit precedent. *See Ringsby Truck Lines, Inc. v. W. Conference of Teamsters*, 686 F.2d 720, 721 (9th Cir. 1982) ("If the effect of post-judgment settlements were automatically to vacate the trial court's judgment, any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books."); *see also Evans v. Mullins*, 130 F. Supp. 2d 774, 775-76 (W.D. Va. 2001) (absent extraordinary circumstances, federal courts refuse to grant requests to vacate jury verdicts – even those upon which a judgment has not been entered) (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 28 (1994)).

Unlike every other defendant that settled with the DPPs before trial,[1] Toshiba vigorously litigated the DPPs' claims for more than five years and took the calculated risk to go to trial and lost. After six weeks of testimony, evidence and deliberations, a jury found Toshiba liable for participating in the very price-fixing conspiracy it denied. *See* MDL Dkt. No. 6061. Toshiba took a calculated risk by going to trial and now seeks to erase history, casting aside the hard work of this Court and the jury.

Toshiba's draft settlement provision rests upon the premise that a jury's verdict can be negotiated away. But the law is clear that a district court's decision to vacate a judgment must

[1] *See* MDL Dkt. 4275, DPPs' Motion for Approval of Settlements.

carefully balance "the competing values of finality of judgment and right to relitigation of unreviewed disputes." *Ringsby*, 286 F.2d at 722; *see also Bonner Mall*, 513 U.S. at 26, 29 (holding vacatur is an "extraordinary remedy" that should only be granted in "exceptional circumstances," which "do not include the mere fact that the settlement agreement provides for vacatur").[2] Toshiba should not be permitted to "manipulate the judicial system by rolling the dice . . . in the district court and then 'washing away' any 'unfavorable outcome' through use of settlement and vacatur." *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 351-352 (D.C. Cir. 1997).

## III. STATEMENT OF FACTS

### A. The TFT-LCD Price-Fixing Litigation

Nearly six years ago, in December 2006, government authorities in the United States, Japan, South Korea, and the European Union disclosed the existence of a comprehensive investigation into a global price-fixing conspiracy among TFT-LCD manufacturers. Following the announcement of the DOJ's investigation, numerous class action lawsuits were filed around the country. In April 2007, the Judicial Panel on Multidistrict Litigation transferred the TFT-LCD cases to this Court for consolidated or coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. Then, in March 2010, Dell filed its own lawsuit. Since that time, Dell and the DPPs (and other victims of the conspiracy) have aggressively litigated against Toshiba, deposing more than 20 Toshiba witnesses, reviewing and translating thousands of documents, and coordinating extensively on the prosecution of this case. The DPPs settled with all of the other defendants before trial,[3] but Toshiba chose to try its case against the DPPs (the "Toshiba Trial").

---

[2] Although *Bonner Mall* does not set forth the legal standard the court must use to review the vacatur provision here as the Ninth Circuit has held "a district court may vacate ***its own*** decision in the absence of extraordinary circumstances," *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (1998) (emphasis added), the policies and analyses underlying *Bonner Mall* apply with equal force to the case *sub judice*. *See Allen-Bradley v. Kollmorgen Corp.*, 199 F.R.D. 316, 318 (E.D. Wis. 2001) (denying vacatur to a district court order and recognizing "much of the underlying justification" in *Bonner Mall* could "nonetheless be usefully employed."). As such, Dell's Objection cites extensively from *Bonner Mall* and its progeny.

[3] *See* MDL Dkt. 4275, DPPs' Motion for Approval of Settlements.

**B. Trial and Verdict**

After a six-week trial, with 25 live witnesses, 20 witnesses presented by deposition and more than 330 exhibits, the jury in the Toshiba Trial found that "Toshiba knowingly participated in a conspiracy to fix, raise, maintain or stabilize the prices of TFT-LCD panels," causing substantial harm to a class of direct purchaser plaintiffs that bought TFT-LCD panels. *See* MDL Dkt. No. 6061. The jury awarded the DPPs damages of $87,000,000, which are automatically trebled under the Sherman Act. *See* 15 U.S.C. § 15(a). The DPPs are also entitled to recover "the cost of suit, including a reasonable attorney's fee." *Id*. On August 22, 2012, the DPPs' counsel notified the Court that they had reached an agreement with the Toshiba Defendants. *See* MDL Dkt. No. 6510.

**C. The Proposed Settlement**

On September 10, 2012, the DPPs filed a Motion for Preliminary Approval of Class Settlement with the Toshiba Defendants (the "Motion for Preliminary Approval"), attaching a copy of the proposed settlement agreement.[4] *See* MDL Dkt. No. 6675. Under Paragraph 11(c) of the proposed settlement agreement, Toshiba and the DPPs must seek an order from this Court "vacating and setting aside the special verdict returned by the jury on July 3, 2012, such that it is null and void and without any force or effect." *See* MDL Dkt. 6675-3. And, "[i]f the Court refuses to approve this Agreement or any part thereof . . . . [or] declines to enter a final judgment that meets the minimum requirements set forth in Paragraph 11 of this Agreement . . . . Toshiba [has] the right to terminate. . . ." *Id*. at 19-20.

Recognizing the impact a vacated judgment could have on Dell's pending Motion for Partial Summary Judgment Against Toshiba on Liability Issues Determined in the Toshiba Trial ("Motion for Collateral Estoppel"), which is premised upon the special jury verdict, *see* MDL Dkt. No. 6359, and Dell's intention to inform the jury of the existence of the special jury verdict at the upcoming January 2013 trial, Dell filed a letter requesting that the hearing for preliminary approval be delayed until Dell had an opportunity to brief the issue of vacatur before the Court. *See* MDL Dkt. No. 6699. DPPs filed a letter responding to Dell's request, claiming that Dell had no standing and its objection was without

[4] In conjunction with their motion for preliminary approval of the settlement, the DPPs filed a Motion to Shorten the Time for Hearing on the preliminary approval, which was granted. *See* MDL Dkt. No. 6690.

merit. *See* MDL Dkt. No. 6701. This Court held a hearing on September 14, 2012, concerning preliminary approval of the Toshiba Settlement Agreement and postponed the approval hearing until the parties had briefed the vacatur issue. Dell now files the present Motion to Intervene and Objection to the Toshiba Settlement Agreement.

## IV. LEGAL ARGUMENT

### A. Dell Satisfies the Rule 24(b) Elements for Permissive Intervention and Has Standing to Object to the Proposed Settlement

"On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1). Courts generally allow permissive intervention when there is (1) an independent ground for jurisdiction, (2) a timely motion, and (3) a common question of law or fact between the person's claim or defense and the main action. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). Whether a party will be allowed to intervene is within the sound discretion of the trial court. *See, e.g., Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990). Dell should be permitted to intervene because Dell has satisfied each of the requirements for intervention and permitting intervention would not cause undue delay or prejudice on the DPPs or Toshiba.

***First,*** this Court has an independent ground for jurisdiction over Dell: Dell is a party to the same MDL as the DPP case and is actively litigating its claims before this Court.

***Second***, Dell's request to intervene is timely because it was filed within the time permitted by the Court for Dell to file a brief objecting to the proposed settlement agreement and within two weeks after the DPPs filed their Motion for Preliminary Approval. Moreover, because this Court has not yet decided the Motion for Preliminary Approval and Dell does not seek to unreasonably delay the Court's decision, no prejudice would be caused by allowing Dell to intervene. This Court has already expressed an interest in the issue Dell seeks to raise – the propriety of erasing a public jury verdict as a mere expedient to facilitate a private settlement – and has permitted Dell to submit briefing on that issue.

***Third***, there is a common question of law or fact between Dell's claims and the DPP's claims against Toshiba. Dell, a direct purchaser, has alleged that it was injured by the same conspiracy that caused harm to the Direct Purchaser Class. Based on these common issues, Dell filed a Motion for Collateral Estoppel. *See* MDL Dkt. No. 6359. If the jury verdict were vacated, Dell's Motion for Collateral Estoppel will likely be adversely affected. Intervention under these circumstances is warranted by the facts and has been granted by district courts in the Ninth Circuit. *See Am. Games*, 142 F.3d at 1167 (noting the district court allowed the interested party who was seeking collateral estoppel in another action to intervene).

***Finally***, the harm Dell would suffer as a result of vacatur is sufficient to satisfy standing under Article III of the Constitution. Although the DPPs have taken the position that Dell has no standing to object to the proposed settlement agreement because it opted out of the class, *see* MDL Dkt. No. 6701, the Ninth Circuit law is clear: an intervenor seeking to take advantage of the preclusive effects of a judgment has standing to object to a motion to vacate that judgment. *See Am. Games*, 142 F.3d at 1168. In *American Games*, the district court granted summary judgment, finding that a bingo card series was not copyrightable. *Id*. at 1166. While on appeal to the Ninth Circuit, the plaintiff agreed to purchase the assets of the defendant, which mooted the case. *Id*. The parties requested dismissal of the appeal and vacatur of the district court's prior judgment. *Id*. On remand, the district court permitted a non-party to the original case, American Games, to intervene finding that American Games had standing to object to the vacatur motion because American Games was a defendant in another lawsuit brought by the Plaintiff that raised "similar copyright issues presented in [the underlying action]." *Id*. at 1166-1167. Ultimately, the district court decided to vacate its judgment because "vacating the judgment was not the primary motive for the sale." *Id*. at 1170. American Games, the intervenor, appealed. The Ninth Circuit held that American Games had standing to challenge the district court's vacatur order, reasoning that:

> American Games is the defendant in an Iowa lawsuit brought by Stuart which raises the same or similar copyright issues presented in this case. American Games stands to benefit directly from the preclusive effect of the district court's decision on those issues if that court's vacatur decision is reversed. The actual or threatened injury to American Games is the loss of the preclusive force of the district court's decision. That loss is traceable

> to the district court's vacatur order, and is redressable by favorable action on appeal should this court decide to reverse that vacatur order, restoring the decision. Thus, American Games satisfies the constitutionally required minima for standing in an Article III court.

*Id*. at 1167.

Dell is no different than the intervenor in *American Games*. Dell has filed a Motion for Collateral Estoppel on Liability Issues Decided in the Toshiba Trial. *See* MDL Dkt. No. 6359. If vacatur is granted, it would have the potential of stripping the jury's Special Verdict of its preclusive effect. *See, e.g., Bates v. Union Oil Co. of Cal.*, 944 F.2d 647, 650 (9th Cir. 1991) ("If the court weighs the *Ringsby* factors and refuses to vacate the judgment, the judgment may have preclusive effect. If, however, the district court considers the *Ringsby* factors and vacates the judgment, the judgment will lose any preclusive effect."). Thus, Dell "stands to benefit directly from the preclusive effect of the" Toshiba jury's Special Verdict if this Court denies the parties efforts to vacate the jury verdict. *Am. Games*, 142 F.3d at 1167. The "threatened injury to [Dell] is the loss of the preclusive force of the district court's decision," which is traceable to this Court's decision to approve the settlement agreement and vacate the jury's Special Verdict. *Id*. Given that the proposed Settlement Agreement requires this Court to vacate the jury's July 3, 2012 Special Verdict, Dell has standing to object.

### B. The Court Should Deny Preliminary Approval of the Toshiba Settlement Agreement

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement of claims or issues of a certified class. In determining whether to provide preliminary approval of a proposed settlement, the court must evaluate whether the settlement is within "the range of reasonableness." *See, e.g., Manual for Complex Litigation* (Fourth) § 21.632 (2004). The burden of proving the settlement is fair, adequate and reasonable rests with the DPPs. *See Norman v. McKee*, 290 F. Supp. 29, 32 (N.D.Cal. 1968), *aff'd*, 431 F.2d 769 (9th Cir. 1970); *Purcell v. Keane*, 54 F.R.D. 455 (E.D. Pa. 1972). The "district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. The court cannot accept a settlement that the proponents have not shown to be fair, reasonable, and adequate." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

- 6 -

DELL'S MOTION TO INTERVENE AND OBJECTION TO DPPS' MOTION FOR PRELIMINARY APPROVAL OF TOSHIBA SETTLEMENT

Master File No. M07-1827 SI
3:10-cv-01064 SI

Preliminary approval should only be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations [and] has ***no obvious deficiencies***." *See In re NASDAQ Market Markers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (emphasis added).

Here, the proposed settlement agreement contains an obvious deficiency: it contains a vacatur provision that violates settled public policy. If accepted, the vacatur provision would require the Court to erase the jury's verdict. Vacatur is an extraordinary equitable remedy that is not supported by the facts presented here. The inclusion of the vacatur provision is material to the settlement agreement, as shown by Toshiba's "all or nothing" provision permitting Toshiba to terminate the agreement if vacatur is not granted, and violates *Ringsby*. For these reasons, the proposed settlement is not fair and reasonable as required for preliminary approval. Accordingly, this Court should deny preliminary approval.

### C. The Toshiba Vacatur Provision Fails the Balancing Test Required by *Ringsby*

When, as here, a district court is requested to vacate its judgment because the parties have settled the underlying dispute, the district court must balance "the consequences and attendant hardships of dismissal or refusal to dismiss and the competing values of finality of judgment and right to relitigation of unreviewed disputes." *Am. Games*, 142 F.3d at 1168; *see also Chartis Specialty Ins. Co. v. Queen Anne HS, LLC*, No. C11-335 RAJ, 2012 U.S. Dist. LEXIS 124602, at *5 (W.D. Wash., Aug. 31, 2012) (explaining "a district court considering a *Rule 60(b)* motion to vacate its own *judgment* can engage in broad equitable balancing"); *see also* Fed. R. Civ. P. 60(b)(5).

Careful balancing is required because "[i]t would be quite destructive to the principle of judicial finality to put such a litigant in a position to destroy the collateral conclusiveness of a judgment by destroying his own right of appeal." *See Ringsby*, 686 F.2d at 721; *see also Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting) ("Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur."). Indeed, a trial court's "opinion is a public act of the government, which may not be expunged by private agreement," "[h]istory cannot be rewritten,"

- 7 -

DELL'S MOTION TO INTERVENE AND OBJECTION TO DPPS' MOTION FOR PRELIMINARY APPROVAL OF TOSHIBA SETTLEMENT

Master File No. M07-1827 SI
3:10-cv-01064 SI

and "[t]here is no common law writ of erasure." *In re Mem'l Hosp. of Iowa Cnty., Inc.*, 862 F.2d 1299, 1300 (7th Cir. 1988).

Toshiba is not entitled to vacatur here. There was no happenstance or unilateral conduct that rendered the jury's Special Verdict moot. The vacatur provision was added by Toshiba in an effort to erase the collateral estoppel effect that would ordinarily attach to the jury's Special Verdict. This calculated settlement and forfeiture of a right to review is the antithesis of "happenstance." Given the calculated nature of Toshiba's request for vacatur, it is subject to the Ninth Circuit's balancing test. *Ringsby*, 682 F.2d 721.

The vacatur provision cannot satisfy the balancing test set forth by the Ninth Circuit. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seafirst Corp.*, 891 F.2d 762, 765 (9th Cir. 1989) (affirming district court's order denying vacatur when "the existence of third-party interests and the investment of judicial resources tipped the equities in favor of finality.") Federal courts have consistently held that a jury's verdict is a public act, not the litigants' private property to barter with in settlement negotiations. *See Bonner Mall*, 513 U.S. at 26. The jury's special verdict was "created at cost to the public . . . the judicial system ought not allow the social value of that precedent . . . to be a bargaining chip in the process of settlement." *Mem'l Hosp.*, 862 F.2d at 1302; *see also Benavides v. Jackson Nat'l Life Ins. Co.*, 820 F. Supp. 1284 (D. Colo. 1993) ("A party that can erase negative precedent through vacatur views the lower court's judgment as a bargaining chip: in exchange for the victor's agreement to relinquish the precedential value of the judgment, the loser will offer some form of inevitably pecuniary sweetener."); *see also Pivot Point Int'l v. Charlene Prods.*, No. 90-cv-6933, 2002 U.S. Dist. LEXIS 13185, at *4 (N.D. Ill. July 10, 2002) ("[Plaintiff] wants to rid itself of the risk that it will lose this new case. . . [through issue preclusion], and presumably has agreed to compensate [Defendant] for the assistance."). The parties should not be permitted to bargain away the jury's verdict; Toshiba's request should yield to the legitimate interests of the public and Dell.

1. *The public has a significant interest in the jury's Special Verdict and judicial economy*

The jury spent six-weeks listening to witnesses testify, reviewing evidence, and deliberating on the issues presented to them. Federal courts have consistently denied vacatur based, in part, on the

public interest in conserving scarce judicial resources. *See Zinus, Inc. v. Simmons Bedding Co.*, No. 07-3012, 2008 U.S. Dist. LEXIS 33359, at * 6 (N.D. Cal. Apr. 23, 2008) ("The public paid for this use of court resources through its tax dollars. Vacatur would render that expenditure a waste, and the parties cite no public interest that would be served by vacatur which would justify a waste of public funds."); *see also Chartis Specialty Ins.*, 2012 U.S. Dist. LEXIS 124602, at *10 (declining to vacate summary judgment order given public interest in judicial precedent reasoning "the court doubts that it serves the public interest to selectively vacate decisions adverse to one litigant"); *Aetna Cas. & Surety Co. v. Home Ins. Co.*, 882 F. Supp. 1355, 1358 (S.D.N.Y. 1995) (vacatur "ignores the considerable judicial resources that have already been expended"); *see Evans*, 130 F. Supp. 2d at 776 ("Judicial economy is not achieved where, as here, the time and resources attendant to bringing a trial to fruition have already been spent, only to be undone because the parties have settled at the end of the day.").

Here, the public's interest in the jury's Special Verdict is even more pronounced. The parties have been aggressively litigating this case for six years, consuming considerable judicial resources. The trial itself was a massive undertaking that consumed this Court for almost two months. The public clearly has an interest in the result, especially where, as here, the verdict will provide issue preclusion in subsequent proceedings, thereby limiting the repeated expenditure of judicial resources.

*2. Dell has a significant interest in the jury's Special Verdict*

Dell also has a significant pecuniary interest in the jury's Special Verdict. In fact, Dell has filed a Motion for Collateral Estoppel. *See* MDL Dkt. No. 6359. If vacatur is granted, it would have the potential of stripping the jury's Special Verdict of its preclusive effect. *See, e.g., Bates*, 944 F.2d at 650 ("If the court weighs the *Ringsby* factors and refuses to vacate the judgment, the judgment may have preclusive effect. If, however, the district court considers the *Ringsby* factors and vacates the judgment, the judgment will lose any preclusive effect."). Thus, by seeking to vacate the jury's verdict, Toshiba hopes to eliminate any collateral estoppel effects it may have in Dell's case.[5]

---

[5] Although Toshiba argues that the jury's verdict is not a final judgment for purposes of collateral estoppel, *see* MDL Dkt. 6597, Dell has established the required finality for purposes of issue preclusion. *See* MDL Dkt. No. 6824; *see also John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 548-49, 63 (8th Cir. 1990) (finding verdict at liability phase of trial had issue preclusive effect even though liability verdict was not immediately appealable since damages phase of trial had not concluded); *see also Metromedia Co. v. Fugazy*, 983 F.2d 350, 366 (2d Cir. 1992) (holding the fact that

When considering whether to vacate a judgment, courts have consistently considered the effects on third parties, including those that may seek to use the judgment in another proceeding. *See Infineon Tech. N.A. Corp. v. Mosaid Tech., Inc.*, No. 02-5772, 2007 U.S. Dist. LEXIS 11726, at *9 (N.D. Cal. Feb. 5, 2007) (denying joint motion to vacate when "some or all of [the prior] rulings *may* be entitled to preclusive effect"); *see also Pivot*, 2002 U.S. Dist. LEXIS 13185, at *4 ("Effects on third parties. . . counsel most strongly *against* vacating a judgment . . . ."); *see also Nilssen v. Motorola*, No. 93-cv-6333, 2002 U.S. Dist. LEXIS 20089, at *8 (N.D. Ill. Oct. 21, 2002) (holding plaintiff "fails to demonstrate why avoiding issue preclusion constitutes an exceptional, or even significant circumstance").

As part of this MDL, Dell has worked diligently alongside the DPPs to procure testimony and uncover foreign language documents to establish that Toshiba knowingly participated in the conspiracy to fix TFT-LCD prices. Now, the jury has found Toshiba liable for its participation in the conspiracy. To deprive Dell of the benefit of the jury's Special Verdict simply because Toshiba has the financial wherewithal to pay off a lost bet would run afoul of the principles espoused in *Bonner Mall*. *See* 513 U.S. at 26. Toshiba and the DPPs "may be free to contract about the preclusive effect" of the Special Verdict findings between themselves, but "they are not free to contract about the existence" of the findings, the preclusive effect of those findings, or insist that this Court enforce their agreement. *Mem'l Hosp.*, 862 F.2d at 1303.

*3. Vacatur is an abuse of the judicial process and is an inappropriate collateral attack on a judgment*

Vacatur must also be denied because it is a collateral attack on the jury's Special Verdict that conflicts with the orderly operation of the federal judicial system. "Vacatur allows disappointed litigators effectively to rewrite history. . . . The case law becomes what the party with the greatest

---

damages awarded to plaintiff have not yet been calculated does not prevent use of final ruling on defendant's liability for collateral estoppel purposes); *TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 72 F. Supp. 2d 370, 376-80 (S.D.N.Y. 1999) (precluding relitigation of court's prior claim construction as that decision was sufficiently "final"); *see* Restatement (Second) of Judgments § 13 illustration 3 (1982). Indeed, even an appeal by Toshiba cannot render the jury's verdict non-final for purposes of collateral estoppel. *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (recognizing "'[t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal'").

resources wishes it to be." *Benavides*, 820 F. Supp. at 1289. *Bonner Mall* rejected these very efforts. 513 U.S. at 27 ("To allow a party . . . to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would . . . disturb the orderly operation of the federal judicial system.").

4. *Vacatur does not further settlement*

The only potential benefit of vacatur here is that an approved settlement will end the litigation between the DPPs and Toshiba. *See* MDL Dkt. No. 6701 at 3 ("Dell's position violates the longstanding judicial policy favoring settlement."). But the Supreme Court was clear in *Bonner Mall* when it held that vacatur is an "extraordinary remedy" and "that mootness by reason of settlement does not justify vacatur of a judgment under review," absent "exceptional circumstances," which "do not include ***the mere fact that the settlement agreement provides for vacatur*** . . . ." 513 U.S. at 26, 28 (emphasis supplied). Although *Bonner Mall* sets forth the standard for appellate vacatur, the underlying justifications for the decision apply with equal force here. *See Allen-Bradley*, 199 F.R.D. at 318 (denying vacatur to a district court order and recognizing "much of the underlying justification" in *Bonner Mall* could "nonetheless be usefully employed."). Settlement alone is a legally insufficient basis to justify vacatur.

Moreover, vacatur does not, as the DPPs suggest in their letter, further settlement. *See Bonner Mall*, 513 U.S. at 27-28 ("[W]hile the availability of vacatur may facilitate settlement after the judgment . . .it may *deter* settlement at an earlier stage. *Some* litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court."). "[A] liberal policy of vacatur does not favor settlement. It instead encourages parties with deep pockets to litigate with impunity, knowing that they can eliminate adverse decisions with a settlement and a motion to vacate." *Chartis Specialty Ins.*, 2012 U.S. Dist. LEXIS 124602, at *11. "Indeed, granting [DPPs'] motion would not only diminish the contribution of the members of the jury who spent a significant amount of their own time carefully listening to evidence and deliberating but also thwart the judicial policy encouraging settlement." *Garrett v. Albright*, No. 4:06-cv-4137-NKL, 2008 WL 2872206, at *2 (W.D. Mo. July 22, 2008) (refusing to vacate jury's verdict ***before final judgment*** when parties had settled because

- 11 -

DELL'S MOTION TO INTERVENE AND OBJECTION TO DPPS' MOTION FOR PRELIMINARY APPROVAL OF TOSHIBA SETTLEMENT

Master File No. M07-1827 SI
3:10-cv-01064 SI

"[t]he fact that the parties have reached an agreement does not undermine the findings of the jury, and vacating their verdict for no reason other than an erroneous contention as to mootness is unjustified").

When balancing this limited, dubious benefit against the harm suffered by the public generally and Dell specifically, it is clear vacatur is not warranted under *Ringsby*. If Toshiba wanted "to avoid stare decisis and preclusive effects, [it] need only settle before the [jury] render[ed] a decision." *See Mem'l Hosp.*, 862 F.2d at 1302. Toshiba's private interests in vacatur are outweighed by the countervailing public interest in judicial economy, the orderly administration of the federal judicial system, and Dell's interests in the preclusive effect of the jury's Special Verdict.

**V. CONCLUSION**

For the foregoing reasons and the authorities cited, Dell respectfully requests this Court deny DPPs' Motion for Preliminary Approval of the Class Settlement with the Toshiba Defendants.

Respectfully submitted this 24th day of September, 2012.

- 12 -

DELL'S MOTION TO INTERVENE AND OBJECTION TO DPPS' MOTION FOR PRELIMINARY APPROVAL OF TOSHIBA SETTLEMENT

Master File No. M07-1827 SI
3:10-cv-01064 SI

By: */s/ Rodney J. Ganske*

Michael P. Kenny, Esq.
Debra D. Bernstein, Esq.
Rodney J. Ganske, Esq.
ALSTON + BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel: (404) 881-7000
Facsimile: (404) 881-7777
mike.kenny@alston.com
debra.bernstein@alston.com
rod.ganske@alston.com

Douglas R. Young, Esq.
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street
San Francisco, California 94104
Telephone: (415) 954-4410
Facsimile: (415) 954-4480
DYoung@fbm.com

Kimball R. Anderson, Esq.
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, Illinois 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
kanderson@winston.com

*Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.*

- 13 -

DELL'S MOTION TO INTERVENE AND OBJECTION TO DPPS' MOTION FOR PRELIMINARY APPROVAL OF TOSHIBA SETTLEMENT

Master File No. M07-1827 SI
3:10-cv-01064 SI