IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION _____/ This Order Relates to: *Motorola Mobility, Inc. v AU Optronics Corporation, et al.,* C 09-5840 SI _____/ | No. M 07-1827 SI MDL. No. 1827 Case No. C 09-5840 SI **ORDER DENYING SANYO CONSUMER ELECTRONICS' MOTION FOR SUMMARY JUDGMENT ON MOTOROLA'S CLAIMS** |

Now before the Court is the motion by Sanyo Consumer Electronics, Ltd. for summary judgment on plaintiff Motorola Mobility's Sherman Act, breach of contract, and unjust enrichment claims. Pursuant to Civil Local Rule 7-1(b), the Court found this matter suitable for disposition without oral argument. Having considered the parties' papers, and for good cause appearing, the Court hereby DENIES Sanyo's motion.

Sanyo contends that Motorola's Sherman Act claim should be dismissed because there is no evidence that Sanyo participated in the price-fixing conspiracy. Sanyo first argues – and Motorola disputes – that Motorola has failed to identify any admissible evidence demonstrating that Sanyo did not act "independently with respect to the output and pricing of small panel LCDs." Motion at 11.

A plaintiff can establish a genuine issue of material fact by producing either direct evidence of a defendant's price-fixing conduct or circumstantial evidence from which a reasonable fact finder could conclude the same. *In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999); *see also Sun Microsystems*, 622 F. Supp. 2d at 896 (citing *Movie 1 & 2 v. United Artists Commc'ns*, 909 F.2d 1245, 1251-52 (9th Cir. 1990); *United States v. Gen. Motors Corp.*, 384 U.S. 127, 142-43 (1966)). The Ninth

Circuit "has outlined a two-part test to be applied whenever a plaintiff rests it case entirely on circumstantial evidence." *Id*. at 1094. "First, the defendant can 'rebut an allegation of conspiracy by showing a plausible and justifiable reason for its conduct that is consistent with proper business practice.' The burden then shifts back to the plaintiff to provide specific evidence tending to show that defendant was not engaging in permissible competitive behavior." *Id*. (internal citations omitted); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1059, 1972 (9th Cir. 2007).

Highlighting evidence of communications between Sanyo and its competitors regarding future pricing of LCD panels, Motorola claims that "Sanyo provides no plausible pro-competitive justifications" for its otherwise anticompetitive conduct. *Id*. The Court agrees that there are triable issues of material fact concerning Sanyo's participation in the overarching price-fixing conspiracy; many of those same facts militate against a finding that Sanyo acted independently. *See*, *e.g.*, Declaration of Jason C. Murray ("Murray Decl."), Ex. 13 (deposition testimony of Masanobu Matsumura that he followed instructions from his general managers (who had pricing authority) and met regularly with representatives of Samsung, Sharp, Toshiba Matsushita Display, and Hitachi to exchange competitively sensitive supply and pricing information relating to Sanyo's LCD technology); Ex. 25 (deposition testimony of Samsung's H.B. Suh, admitting that he met with Mr. Matsumura on several occasions to "discuss[] the prices to charge customers."). Although Sanyo argues that its interactions with its competitors constituted nothing more than legitimate exchanges of information, such disputes regarding the interpretation of evidence are not appropriate for resolution on summary judgment.

The parties also dispute whether "small" LCD panels are in different economic markets from "large" panels. Sanyo claims that it "sold no *small* LCD panels to . . . U.S. customers, including Motorola," Motion at 1, and that to maintain its Sherman Act claim, Motorola relies on evidence regarding Sanyo's sale of large panel displays, "a different product line" all together. Motion at 16. In response, Motorola points to deposition testimony of its expert, Dr. Bernheim, who did not disclaim the view that large and small LCD panels are in the same antitrust market. Dr. Bernheim further testified that overcharges for large and small LCD panels were "closely correlated." The Court agrees with Motorola that Sanyo is improperly attempting to carve the conspiracy into a number of mini-conspiracies. *See Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)

("Plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. The character and effect of a conspiracy are not to be judged by dismembering it an viewing its parts, but only looking at it as a whole.") (quotations and citation omitted). Taken in the light most favorable to Motorola, the evidence shows that Sanyo participated in the price-fixing conspiracy across all panel sizes.

Finally, Sanyo contends that there is no evidence demonstrating that it entered into any unlawful agreement with other LCD suppliers on price or output. *See* Motion at 18. Based largely upon *In re Citric Acid Litigation*, Sanyo argues that Motorola's Sherman Act claims should not be allowed to go to trial.

The Court finds Sanyo's reliance on *Citric Acid* unavailing. In that case, the Ninth Circuit affirmed summary judgment for Cargill where there was no direct evidence of Cargill's participation in a price-fixing conspiracy, and the circumstantial evidence did not allow an inference of illegal activity. To begin with, unlike *Citric Acid*, no conspirator in this case has unequivocally stated that Sanyo was not involved in the conspiracy. *Cf. Citric Acid*, 996 F. Supp. At 956 ("Most persuasive is the testimony of Hans Hartmann, . . . who pled guilty to being a member of the conspiracy [and] stated that no one from Cargill attended any of the meetings at which the conspirators allocated market share . . . and that he never received sales figures from Cargill."). Further, the circumstantial evidence of Sanyo's participation in the overarching conspiracy is significantly more compelling than the evidence in *Citric Acid*. There is evidence that Sanyo received pricing information from its competitors, shared its own pricing information, and that LCD prices of various sizes were impacted by pricing agreements reached with other LCD manufacturers. Although there is no "smoking gun" linking Sanyo to the Crystal Meetings or to an explicit agreement on LCD prices or output, there is ample evidence for a jury to find that Sanyo knowingly joined the overarching price-fixing conspiracy.

Sanyo also seeks summary adjudication of Motorola's breach of contract and unjust enrichment claims. With respect to the breach claim, Sanyo contends that there is no evidence of a contract between "Sanyo Consumer Electronics and Motorola containing any of the terms" that serve as a basis for Motorola's breach claim. *See* Motion at 23. Even if there was, Sanyo claims that there is no evidence that its sales prices "were the result of any unlawful price-fixing conduct." *Id*. Motorola argues, and

3

the Court agrees, that under Illinois law, Sanyo—defined in Motorola's Third Amended Complaint as "SANYO Consumer Electronics Co., Ltd., and its affiliates, parents, subsidiaries, agents and representatives . . ."—can be held liable for breach of contract under the facts in this case.  *See*, *e.g.*, *Lundberg v. Church Farm, Inc.*, 151 Ill. App. 3d 452, 461 (1986); *Van Dorn Co. v. Future Chem. and Oil Corp.*, 753 F.2d 565 (7th Cir. 1985); Murray Decl., Exs. 4, 6-8 (deposition testimony and documentation demonstrating that the LCD operations of Sanyo and its various entities were integrated into a single business unit during much of the conspiracy period).  Given the ample evidence from which a jury could conclude that "Motorola purchased tens of millions of dollars of panels" from Sanyo at artificially inflated prices, the Court concludes there is a triable issue of fact concerning Motorola's breach claim.  The Court further concludes that Motorola's unjust enrichment claim, which Sanyo concedes "is wholly derivative of its Sherman Act claim," should be resolved at trial as well.

For the foregoing reasons, the Court hereby DENIES Sanyo Consumer Electronics' motion for summary judgment.  Master Docket No. 5849; Docket No. 348 in C 09-5840 SI.

**IT IS SO ORDERED.**

Dated: October 9, 2012

SUSAN ILLSTON
United States District Judge