IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION _____/ This Order Relates to: *Dell Inc. et al. v. AU Optronics Corporation, et al.,* C 10-1064 SI _____/ | No. M 07-1827 SI MDL. No. 1827 Case No. C 10-1064 SI **ORDER DENYING DELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST AUO ON LIABILITY ISSUES DETERMINED IN THE AUO CRIMINAL TRIAL AND DENYING DELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST TOSHIBA ON LIABILITY ISSUES DETERMINED IN THE TOSHIBA TRIAL** |

Dell's motions for partial summary judgment against AUO and Toshiba on liability issues determined in the AUO criminal trial and the DPP trial are scheduled for a hearing on October 12, 2012. Pursuant to Civil Local Rule 7-1(b), the Court determines that these matters are appropriate for resolution without oral argument, and VACATES the hearing on these motions. For the reasons set forth below, the Court DENIES the motions. Docket Nos. 6359 & 6417.

**LEGAL STANDARD**

Offensive nonmutual issue preclusion applies where a plaintiff seeks to prevent a defendant from relitigating an issue that the defendant previously litigated unsuccessfully in a separate action against a different party. *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 713 n.3 (9th Cir. 2005). "A party invoking issue preclusion must show: (1) the issue at stake is identical to

an issue raised in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003). "The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Clark v. Bear Stearns & Co., Inc*., 966 F.2d 1318, 1321 (9th Cir. 1992).

In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979), the Supreme Court approved the use of offensive nonmutual issue preclusion and granted to trial courts "broad discretion to determine when it should be applied." "The Supreme Court's grant of 'broad discretion' to trial courts provides those courts the authority to take potential shortcomings or indices of unfairness into account when considering whether to apply offensive nonmutual issue preclusion, even where the above-listed standard prerequisites are met." *Syverson v. International Business Machines Corp*., 472 F.3d 1072, 1078-79 (9th Cir. 2007) (citing *Parklane Hosiery*, 439 U.S. at 331). "The potential shortcomings or indices of unfairness identified by the Court include whether (1) 'the plaintiff had the incentive to adopt a "wait and see" attitude in the hope that the first action by another plaintiff would result in a favorable judgment' which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first 'and that could readily cause a different result.'" *Syverson*, 472 F.3d at 1079 (quoting *Parklane Hosiery*, 439 U.S. at 330–31).

**DISCUSSION**

**I.    Dell's motion for partial summary judgment against AUO on liability issues determined in the AUO criminal trial**

Dell seeks an order holding that the AUO corporate defendants are precluded from relitigating the following matters: (1) that from on or about September 14, 2001 until on or about December 1, 2006, AU Optronics Corporation and AU Optronics Corporation America violated the Sherman Act by fixing

1  the price of TFT-LCD panels (as charged in the Superseding Indictment, Ex. 7), which were sold to Dell
and other customers; (2) the conspirators derived gains from the conspiracy; and (3) the participants in
the conspiracy included AU Optronics Corporation, AU Optronics Corporation America, LG Phillips
LCD Co., Ltd., Samsung Electronics Co., Ltd., Chunghwa Picture Tubes, Ltd., Chi Mei Optoelectronics
Corporation, and HannStar Display Corporation. Dell argues that "the factual issues actually litigated
and decided by the jury in the AUO Criminal Trial are substantively identical to those that will be
presented and determined in the Dell Action," and that a review of the evidence, pleadings and the
testimony at the AUO trial confirms that the price-fixing conspiracy proved by the DOJ is identical to
that alleged by Dell. Docket No. 351 at 4-5.

AUO contends that Dell has not met its burden to satisfy any of the elements of issue preclusion. AUO contends that the jury was not instructed to decide and made no finding regarding the duration of the conspiracy, and therefore Dell is not entitled to summary judgment that the Sherman Act violation encompassed the period from September 14, 2001 through December 1, 2006.  AUO also argues that the jury made no finding about TFT-LCD panels "which were sold to Dell," that the issue of "gains" from the conspiracy has no relevance to Dell's civil lawsuit, and that the jury made no finding regarding the identity of the conspiracy's participants. AUO also argues that although the jury found a criminal violation of the Sherman Act, the bases and nature of that finding are far different than what Dell must prove to establish liability on its civil Sherman Act claim, including *inter alia*, (1) that defendants fraudulently concealed their activities, an issue upon which Dell bears the burden of proof in order to bring its claims within the limitations period, (2) with regard to foreign conduct, that Dell's alleged injury arose as a consequence of the domestic effect of that conduct, and (3) that Dell suffered "antitrust injury."

The Court concludes that Dell has not met its burden of showing with "clarity and certainty" that the three issues for which it seeks preclusion were actually determined by the jury and that a determination of the issues was a "critical and necessary part of the judgment in the earlier action." *Clark*, 966 F.2d at 1320, 1322. As to the two corporate AUO defendants, the verdict form set forth four questions:

    1.       Do you find that defendant, AU OPTRONICS CORPORATION, violated the Sherman

3

|   |   |   |
|---|---|---|
| 1 |  | Act as charged? |
| 2 | 2. | Do you find that defendant, AU OPTRONICS CORPORATION AMERICA, violated the Sherman Act as charged? |
| 4 | 8. | Did the participants in the conspiracy derive gains from the conspiracy? |
| 5 | 9. | Was the amount of combined gross gains derived from the conspiracy by all the participants in the conspiracy including AU Optronics Corporation ("AUO"), AU Optronics Corporation America ("AUOA"), LG Phillips LCD Co., Ltd. ("LG"), Samsung Electronics Co., Ltd. ("Samsung"), Chunghwa Picture Tubes, Ltd. ("CPT"), Chi Mei Optoelectronics Corporation ("CMO"), and HannStar Display Corporation ("HannStar"), $500 million or more? |

*See* CR 09-110, Docket No. 851. The jury answered "yes" to each question, and did not make any additional findings or explain the basis of these findings.

Dell argues that the jury must have concluded that the conspiracy lasted for the entire period charged in the superseding indictment (from on or about September 14, 2001 until on or about December 1, 2006), because questions 1 and 2 of the verdict form asked whether AUO violated the Sherman Act "as charged." However, the Court instructed the jury that it was permitted to convict if it found that AUO joined the alleged conspiracy at any point during its life and remained in the conspiracy until at least June 9, 2005. *See* CR 09-110, Docket No. 829 at 12:17-23 (jury instructions). Issue preclusion is inappropriate when a "jury instruction raises a doubt or confusion as to the basis and breadth of the jury's finding." *Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1145 (9th Cir. 2009) (applying state law analogous to federal law, and holding "[c]onsidering the instructions given, the *Wrench* jury finding that the character used by Taco Bell was 'not independently created by [TBWA]' does not clearly establish what the jury decided on the 'independent creation' issue, the issue of fact Taco Bell is attempting to preclude TBWA from contesting.").

Dell also argues that the jury must have found that the conspiracy lasted for the entire period charged because it concluded that the gross gains from the conspiracy were $500 million or more. However, at trial DOJ presented evidence that the gross gains were substantially in excess of $500 million. Because the jury was not asked to specify the gross gains or the conspiracy period, the Court

4

cannot conclude that the jury necessarily decided that the conspiracy lasted for the entire time charged in the superseding indictment. *See Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569 (1951) ("It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil [antitrust] proceeding. . . . Such estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution.").

Similarly, although question 9 on the verdict form listed various participants in the conspiracy, the jury was never asked to decide and did not make a finding as to the identity of the co-conspirators. Instead, the jury instructions stated that the government only had to prove that AUO entered into an agreement or mutual understanding with at least one competitor, with no identification of the other competitors. Docket No. 829 at 9. In light of that jury instruction, the Court cannot determine that the jury necessarily found that all of the companies listed in question 9 were participants in the conspiracy.[1]

Finally, Dell contends that the jury must have necessarily found that AUO violated the Sherman Act by fixing the price of panels sold to Dell because Dell was mentioned numerous times during the trial and a Dell employee testified for two days. However, although the jury found that AUO and its co-conspirators violated the Sherman Act and derived gains from the conspiracy, the jury did not specifically find whether any derived gains from the conspiracy were attributed to sales to Dell.

Accordingly, the Court DENIES Dell's motion for partial summary judgment on liability issues determined in the AUO criminal trial.[2]

## II. Dell's motion for partial summary judgment against Toshiba on liability issues determined in the Toshiba trial

Dell requests that the Court find that Toshiba is precluded from relitigating the following issues:

---

[1] Although the Court concludes that Dell is not entitled to offensive nonmutual issue preclusion as to the identity of the participants in the conspiracy, it would be appropriate to instruct the jury that LG Phillips LCD Co., Ltd., Chunghwa Picture Tubes, Ltd., Chi Mei Optoelectronics Corporation, and HannStar Display Corporation pled guilty, and that Samsung Electronics Co., Ltd. was granted amnesty and admitted to violating the U.S. antitrust laws. *See* Docket No. 6028 at 15 -20 ( final jury instructions in direct purchaser plaintiff trial against Toshiba). The Court makes no finding at this time regarding what a jury would be told regarding the criminal convictions of the AUO defendants.

[2] AUO has objected to certain evidence submitted by Dell in support of its motion. This order did not rely on any of the evidence at issue, and accordingly the Court does not address the evidentiary objections.

5

(1) that Toshiba knowingly participated in a conspiracy to fix, raise, maintain or stabilize the prices of TFT-LCD panels sold to Dell and other direct purchaser customers in violation of the Sherman Act; (2) the conspiracy was in effect from at least January 1, 1999 to December 31, 2006; and (3) Toshiba's co-conspirators included AU Optronics Corporation, AU Optronics Corporation America, Chi Mei Corporation, Chi Mei Optoelectronics Corporation, Chi Mei Optoelectronics USA, Inc., Nexgen Mediatech, Inc., Nexgen Mediatech USA, Inc., LG Display Co., Ltd., LG Display America, Inc., Samsung Electronics Co., Ltd., Samsung Electronics America Inc., Samsung Semiconductor, Inc., Chunghwa Picture Tubes, Ltd., Tatung Company of America, Inc.,  HannStar Display Corporation, Sharp Corporation, Sharp Electronics Corporation, Epson Imaging Devices Corporation, Epson Electronics America, Inc., Hitachi Electronics Devices (USA), Inc., Hitachi, Ltd., and Hitachi Displays Ltd.  Dell contends that these issues were actually and necessarily decided by the jury's verdict in the direct purchaser plaintiffs' case against Toshiba.

The Court concludes that Dell has not met its burden to show that it can assert offensive nonmutual issue preclusion.  Dell opted out of the direct purchaser class action, and the jury was explicitly instructed by the Court that Dell and other opt outs were not part of the litigation, that Dell had brought its own lawsuit, as had others, and that "the existence of these lawsuits should also not influence your consideration of this case."  *See* Docket No. 6036 at 20-21. As Dell's claims were not before the jury, the jury could not have concluded that "Toshiba knowingly participated in a conspiracy to fix, raise, maintain or stabilize the prices of TFT-LCD panels sold to Dell."  In addition, in the DPP trial the jury was not instructed to and did not make any findings regarding the identity of Toshiba's alleged co-conspirators or the duration of the conspiracy.  The fact that there is substantial overlap between the pleadings and evidence in the DPP case and Dell's case is insufficient to meet Dell's burden of demonstrating that the issues for which it seeks preclusive effect are identical to those that were actually litigated and decided in the DPP trial.

Dell also relies on Toshiba's motion to set off the jury verdict with prior direct purchaser

plaintiff settlements.[3] Dell asserts that "[b]y moving this Court to set off its co-conspirators' settlements with the DPP's, Toshiba has expressly admitted that the jury determined it participated in a broad overarching conspiracy to fix prices with each of the co-conspirators it seeks to use as a 'set off' from the jury's damage award." Docket No. 353 at 8:17-20. However, the set-off motion dealt with whether the prior DPP settlements (which did not compensate for injury to Dell) compensated the same injury as the jury's verdict in the DPP/Toshiba trial, and thus Toshiba's arguments in that motion do not bear on whether Dell is entitled to assert issue preclusion.

Accordingly, the Court DENIES Dell's motion for partial summary judgment on liability issues determined in the DPP/Toshiba trial.

## CONCLUSION

For the foregoing reasons, the Court DENIES Dell's motion for partial summary judgment against AUO on liability issues determined in the AUO criminal trial, and DENIES Dell's motion for partial summary judgment against Toshiba on liability issues determined in the direct purchaser plaintiffs' class action trial against Toshiba. Docket Nos. 6359 & 6417.

**IT IS SO ORDERED.**

Dated: October 11, 2012

SUSAN ILLSTON
United States District Judge

---

[3] Toshiba withdrew that motion without prejudice after Toshiba and the direct purchaser class plaintiffs settled. On October 12, 2012, the Court will hold a hearing on the direct purchaser plaintiffs' motion for preliminary approval, and the Court will address that motion in a separate order.