**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION _____/ | No. M 07-1827 SI<br>MDL. No. 1827 |
| This Order Relates to:<br><br>Direct Purchaser Class Action.<br><br>_____/ | **ORDER DENYING DELL'S MOTION TO INTERVENE AND GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH TOSHIBA DEFENDANTS** |

On October 12, 2012, the Court held a hearing on Dell's motion to intervene in the direct purchaser class action and on the direct purchaser plaintiffs' motion for preliminary approval of the class settlement with the Toshiba defendants. For the reasons set forth below, the Court DENIES Dell's motion to intervene and GRANTS the motion for preliminary approval of the class settlement with the Toshiba defendants. Docket Nos. 6675 and 6840.

**BACKGROUND**

After class certification and subsequent case management proceedings before this Court and the

Special Master, this Court ordered the parties to proceed with mediation. Docket No. 2165. Professor Eric Green, nominated by the direct purchaser class plaintiffs ("DPPs"), was appointed a mediator for the class actions.[1] The parties engaged in mediation, and while all other defendants settled with the DPPs in advance of trial, Toshiba did not. The parties selected the jury on May 14, 2012, the trial against Toshiba began on May 21, 2012. The DPPs and Toshiba engaged in mediation mid-trial, and those efforts were also unsuccessful. The trial lasted six weeks, and on July 3, 2012, the jury returned a verdict finding that: (1) Toshiba knowingly participated in the conspiracy to fix TFT-LCD panel prices; (2) class members were injured as a result of a conspiracy in which Toshiba knowingly participated; and (3) as a result of their injuries, class members suffered a total of $87,000,000 in damages. Docket No. 6061. Toshiba filed Rule 50 motions, which remain pending. After the trial, Toshiba filed a motion to set off the trebled damages award ($261,000,000) by the amounts that the DPPs had recovered in settlements from the other defendants ($443,022,242). Docket No. 6133. That motion was scheduled for a hearing on August 24, 2012.

The parties continued to engage in settlement discussions after the verdict. Professor Green convened an in-person mediation session on July 17, 2012; that session was unproductive. Professor Green continued intermittently with bilateral discussions, until August 12, 2012, when he presented the parties with a "mediator's proposal," with instructions that each side could accept or reject the proposal, but that it was not subject to negotiation. Docket No. 6926 ¶¶ 9-10. The proposal called for Toshiba to pay $30 million, and included a term for vacatur of the special verdict. *Id*. The parties accepted the mediator's proposal. On August 22, 2012, the parties informed the Court that they had reached a settlement, and Toshiba withdrew without prejudice its motion to set-off the settlement amounts against the damages award. Docket Nos. 6509, 6510. As there are post-trial motions pending, the Court has not yet entered judgment on the jury's verdict.

On September 10, 2012, the DPPs filed a motion for preliminary approval of the TFT-LCD Direct Purchaser Class—Toshiba Settlement Agreement (hereinafter "Settlement Agreement"). Docket No. 6675. Under Paragraph 11(c) of the proposed Settlement Agreement, Toshiba and the DPPs must

---

[1] Professor Green has filed a declaration describing the mediations in this case. Docket No. 6926.

2

seek an order from this Court "vacating and setting aside the special verdict returned by the jury on July 3, 2012, such that it is null and void and without any force or effect." Docket No. 6675-3. The Settlement Agreement also states "[i]f the Court refuses to approve this Agreement or any part thereof . . . [or] declines to enter a final judgment that meets the minimum requirements set forth in Paragraph 11 of this Agreement . . . Toshiba [has] the right to terminate. . . ." *Id.* at 19-20.

Dell Inc. and Dell Products L.P. (collectively, "Dell") opted out of the direct purchaser class action and filed their own lawsuit against the defendants (in this multidistrict litigation) alleging violations of U.S. antitrust laws. *Dell Inc. et al. v. AU Optronics Corp., et al.*, C 10-1064 SI. On August 2, 2012, Dell filed a Motion for Partial Summary Judgment Against Toshiba on Liability Issues Determined in the Toshiba Trial. Docket No. 6359. That motion was pending at the time that the DPPs and Toshiba reached their settlement.[2] On September 12, 2012, Dell filed a letter stating that the vacatur provision "raises a number of issues for Dell and the other Direct Action Plaintiffs," particularly in light of Dell's pending summary judgment motion regarding liability issues determined in the Toshiba trial. Docket No. 6699. Dell requested that the hearing on preliminary approval of the settlement be delayed until Dell had an opportunity to brief the issue of vacatur. *Id.* On September 14, 2012, the Court held a hearing concerning preliminary approval of the settlement, and set a briefing schedule to allow Dell the opportunity to file a motion regarding the settlement agreement.

Now before the Court are (1) the DPP's motion for preliminary approval of the settlement and (2) Dell's motion to intervene in the direct purchaser plaintiff class action for the limited purpose of objecting to the motion for preliminary approval.

**DISCUSSION**

**I.   Dell's motion for permissive intervention**

If a party does not qualify for intervention of right, a court may permit that party's "timely application" for intervention "[w]hen an applicant's claim or defense and the main action have a

---

[2] In an order filed October 11, 2012, the Court denied Dell's motion, holding that Dell had not met its burden to show it was entitled to assert offensive nonmutual issue preclusion based on the Toshiba verdict. *See* Docket No. 6942 at 5-7.

3

1  question of law or fact in common." Fed. R. Civ. P. 24(b)(2). In deciding whether a party should be
2  permitted to intervene a court may consider the following factors, among others: the nature and extent
3  of the intervenors' interest; their standing to raise relevant legal issues; the legal position they seek to
4  advance, and its probable relation to the merits of the case; whether the intervenors' interests are
5  adequately represented by other parties; and whether parties seeking intervention will significantly
6  contribute to full development of the underlying factual issues in the suit and to the just and equitable
7  adjudication of the legal questions presented. *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326,
8  1329 (9th Cir. 1977). Permissive intervention "is committed to the broad discretion of the district
9  court." *Orange County v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986).

10  Dell seeks to intervene in the direct purchaser class action for the limited purpose of objecting
11  to the motion for preliminary approval. Dell objects to the vacatur provision, and contends that it is in
12  violation of Ninth Circuit precedent. Dell asserts that under this precedent a jury verdict can only be
13  vacated if there are "extraordinary circumstances" justifying vacatur, and that such circumstances are
14  not present here.

15  Dell's arguments in favor of granting permissive intervention and its objection to the motion for
16  preliminary approval are intertwined: Dell contends that it would be harmed if the Court approves the
17  settlement and vacates the jury verdict because Dell seeks to take advantage of the preclusive effect of
18  that jury verdict. However, as set forth in the Court's Order Denying Dell's Motion for Partial Summary
19  Judgment Against Toshiba on Liability Issues Determined in the Toshiba Trial, the Court held that Dell
20  has not met its burden to show that it can assert offensive nonmutual issue preclusion based on the
21  Toshiba verdict. *See* Docket No. 6942 at 5-7. Indeed, at the hearing on Dell's motion to intervene,
22  Dell's counsel conceded that Dell lacks standing to intervene in light of the Court's summary judgment
23  order. As such, and because Dell is not a member of the direct purchaser class that will be affected by
24  the settlement agreement, the Court finds that Dell has not demonstrated that permissive intervention
25  is appropriate. *See In re Vitamins Antitrust Litig.*, No. 4572 Case 1:99-mc-0197-TFH, slip op. at 5-9
26  (D.D.C. Nov. 30, 2004) (in an antitrust multidistrict litigation, denying motion by indirect purchasers
27  who sought to intervene in class case to object to preliminary approval of class settlement calling for
28

4

vacatur of verdict).[3]

Accordingly, the Court DENIES Dell's motion for permissive intervention.[4]

## II. DPP's motion for preliminary approval of the Toshiba settlement

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement of claims or issues of the certified class. The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it is within "the range of reasonableness." *In re Tableware Antitrust Litig.*, 484 F. Supp. 1078, 1079 (N.D. Cal. 2007). Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

Dell contends that the vacatur provision violates public policy, and thus that preliminary approval should be denied. As a threshold matter, Dell and the parties to the settlement disagree about the standard that the Court should apply when evaluating the vacatur provision. Dell contends that this Court can only vacate the jury verdict if "exceptional circumstances" are present, while the DPPs and Toshiba contend that the Court may vacate the verdict so long as doing so is equitable.

The Court concludes that the DPPs and Toshiba are correct, and that under Ninth Circuit and Supreme Court precedent, "a district court may vacate its own decision in the absence of extraordinary circumstances." *American Games, Inc. v. Trade Products, Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998). In *American Games*, the district court granted summary judgment in favor of the defendant in a copyright action, and the plaintiff appealed. While the appeal was pending, the plaintiff and defendant companies merged and the case on appeal became moot. *Id.* at 1166. The parties requested dismissal of the appeal, and returned to the district court to request vacatur of the district court judgment. *Id.* The

---

[3] A copy of the slip opinion was submitted by the DPPs at Docket No. 6887-2.

[4] Although the Court finds that Dell has not established that permissive intervention is appropriate, the Court has carefully considered Dell's arguments that a vacatur is not in the public interest, and addresses those arguments in this order.

5

district court "performed an equitable balancing of the hardships and the public interests at stake," which it concluded weighed in favor of vacatur. *Id*. An intervenor appealed the district court's vacatur, and the question on appeal was whether the district court erred in employing an equitable balancing test rather than the "exceptional circumstances" test set forth in *U.S. Bancorp v. Bonner Mall*, 513 U.S. 18, 29 (1994) ("*Bonner Mall*") (holding that "exceptional circumstances" must be present for an appellate court to vacate the judgment of a lower court when the appeal becomes moot as a result of settlement, and that "the mere fact that the settlement agreement provides for vacatur" does not constitute exceptional circumstances).

After reviewing *Bonner Mall* and post-*Bonner Mall* Ninth Circuit decisions, the *American Games* court held that "the district court below could have vacated its own judgment using *Ringsby*'s equitable balancing test even if Stuart and Trade Products had mooted their case by settlement." *American Games*, 142 F.3d at 1169. Under that equitable balancing test, the district court should consider "the consequences and attendant hardships of dismissal or refusal to dismiss" and "the competing values of finality of judgment and right to relitigation of unreviewed disputes." *Id*. at 1168 (quoting *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982)).

The Court concludes that the vacatur provision satisfies the equitable balancing test. The Court has presided over this complex multidistrict litigation from its inception, and as the record in this case demonstrates, the direct purchaser class action was tenaciously defended by Toshiba at every stage of this litigation. The Court does not lightly set aside a jury verdict. However, the Court is persuaded that the settlement is in the best interest of the class, and that the jury verdict was a significant reason that the case ultimately reached a settlement. The Court had indicated that it was likely to grant the set-off motion, which would leave the class with no damages recovery from Toshiba. In addition, Toshiba had Rule 50 motions pending, and Toshiba has stated that if those motions were denied it would file a motion for new trial. If the verdict stood and a new trial was denied, Toshiba faced the prospect of the direct purchaser counsel seeking approximately $146 million in fees and costs from Toshiba. Thus, absent a settlement, both sides would have engaged in further protracted and expensive litigation at the district court and appellate levels. The public interest in judicial economy supports preliminary approval

of the vacatur provision. *See generally In re Vitamins Antitrust Litig.*, No. 4572 Case 1:99-mc-0197-TFH, slip op. at 15 (finding judicial economy supported preliminary approval of a settlement agreement calling for vacatur of a jury verdict because "the Settlement obviates the need for ruling on any outstanding motion seeking to set aside the verdict, any appeal and potential remand, and any new trial that this Court or an appellate court potentially could require," and stating that "the judicial resources that resulted in the jury verdict were not wasted, as the verdict surely had a significant effect on the Settlement's outcome.").

"[W]here vacatur does not diminish the effect of judicial precedent or does not unduly impinge on judicial resources, the public interests cited by *Bonner Mall* are diminished and vacatur is appropriate." *Mayes v. City of Hammond, Ind.*, 631 F. Supp. 2d 1082, 1089 (N.D. Ind. 2008) (applying "equitable balancing" test for vacatur of verdict and judgment resulting from settlement). Here, the proposed settlement would vacate the jury verdict only, and would not vacate any court decision. *See id.* at 1090 ("A number of cases concerned by the effect vacatur would have on precedent, including *Bonner Mall* and *Memorial Hospital* and district court cases within the Seventh Circuit, can be distinguished on this important basis as the parties in these cases were seeking to vacate orders or published opinions which contained substantive constructions of the law."); *see also In re Vitamins Antitrust Litig.*, No. 4572 Case 1:99-mc-0197-TFH, slip op. at 13-14 ("Further, the Settlement only vacates the jury verdict, which is quite different from the judicial opinions that the Supreme Court sought to protect in Bancorp. . . . While the reasoning and precedent of court opinions may be systemically valuable in many future instances, the role of the jury in the judicial system is confined solely to deciding the case before it without explanation of its reasoning.").

Accordingly, having reviewed the Settlement Agreement, the filings listed above, the pleadings and other papers on file in this action, and the statements of counsel and the parties, the Court hereby GRANTS the motion for preliminary approval of the Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. For purposes of this Order, except as otherwise set forth herein, the Court adopts and incorporates the definitions contained in the Settlement Agreement.

2. The Court hereby gives its preliminary approval to the Settlement Agreement, subject

7

to a hearing on the final approval of the settlement (the "Fairness Hearing").

3. The Court finds that the settlement falls within the range of possible approval. The Court further finds that there is a sufficient basis for notifying the class of the proposed settlement with Toshiba, and for enjoining class members from proceeding in any other action against Toshiba pending the conclusion of the Fairness Hearing.

4. The Court will conduct a Fairness Hearing on December 14, 2012 at 9:00 a.m. The Fairness Hearing will be conducted to determine the following:

    a. Whether the proposed settlement is fair, reasonable, and adequate and should be granted final approval;

    b. Whether final judgment should be entered dismissing the claims of the class against Toshiba with prejudice as required by the Settlement Agreement; and

    c. Such other matters as the Court may deem appropriate.

5. The Court will conduct a hearing on Class Counsel's motions for an award of attorneys' fees and reimbursement of expenses and costs ("Fee and Expense Application") and for payment of incentive awards to class representatives at the same time as the Fairness Hearing.

6. On or before October 24, 2012, the Claims Administrator shall send class notice substantially in the form attached hereto as Exhibit A to all members of the class who can be identified by reasonable effort. Such notice shall be sent either by first class U.S. mail postage prepaid or by e-mail. On or before October 19, 2012, the Claims Administrator shall cause class notice substantially in the form of Exhibit B hereto to be published in the national edition of The Wall Street Journal. The Claims Administrator shall also cause a copy of the class notice and settlement agreement to be posted on the internet at www.tftlcdclassaction.com.

7. The Court finds that notice and form of dissemination of notice to the Class constitutes valid, due and sufficient notice to the Class, constitute the best notice available under the circumstances, and comply fully with the requirements of the Federal Rules of Civil Procedure.

8. Class Members already were given an opportunity to exclude themselves, and another opportunity is not necessary or required.

9. Class Members shall, upon final approval of the settlement, be bound by the terms and

provision of the settlement so approved, including but not limited to the releases, waivers, and covenants described in the agreement, whether or not such person or entity objected to the settlement and whether or not such person or entity makes a claim upon the settlement funds.

10. Class Members have the right to object to the settlement by filing written objections with the Court no later November 19, 2012, copies of which shall be served on all counsel listed in the class notice. Failure to timely file and serve written objections will preclude a class member from objecting to the class settlement.

11. Class Members have the right to appear at the Fairness Hearing and address the Court.

12. All briefs, memoranda, and papers in support of the Fee and Expense Application and motion for incentive awards shall be filed on or before October 26, 2012.

13. All briefs, memoranda, and papers in support of final approval of the settlement shall be filed on or before November 30, 2012.

14. All further Direct Purchaser Class proceedings as to Toshiba are hereby stayed except for any actions required to effectuate the settlement.

15. The Court retains exclusive jurisdiction over this action to consider all further matters arising out of or connected with the Toshiba settlement.

16. On August 10, 2012, the Court granted preliminary approval to a settlement between the Direct Purchaser Class and AU Optronics Corporation and AU Optronics Corporation America (collectively "AUO"). Docket No. 6437. The Court subsequently vacated the notice and hearing schedule for the AUO settlement and now modifies it, so it will be consistent with the schedule for the Toshiba settlement, as follows:

| Date | Action |
| --- | --- |
| October 19, 2012 | Publication of Summary Class Notice |
| October 24, 2012 | Mailing of Class Notice |
| October 26, 2012 | File motion for fees and reimbursement of litigation expenses |
| November 19, 2012 | Deadline to comment on or object to settlement or fee and expense application |
| November 30, 2012 | File motion for final settlement approval |

9

December 14, 2012 at 9:00 a.m.        Final Settlement Approval Hearing/Fairness Hearing

**IT IS SO ORDERED.**

Dated: October 15, 2012

SUSAN ILLSTON  
United States District Judge