IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL. No. 1827 |
| This Order Relates to:<br><br>*Motorola Mobility, Inc. v. AU Optronics Corporation, et al.,* C 09-5840 SI<br><br>/ | **ORDER GRANTING IN PART AND DENYING IN PART SAMSUNG'S MOTION FOR SUMMARY JUDGMENT ON MOTOROLA'S FOREIGN CONTRACT AND UNJUST ENRICHMENT CLAIMS** |

On October 23, 2012, the Court heard argument on Samsung's motion for summary judgment on Motorola's foreign contract claims and unjust enrichment claims. Having considered the moving papers and the arguments of the parties, and for good cause appearing, Court hereby GRANTS Samsung's motion as to Motorola's foreign contract claims and DENIES Samsung's motion as to Motorola's unjust enrichment claims. Master Docket 6322.

**BACKGROUND**

This action stems from allegations of a global price-fixing conspiracy in the market for liquid-crystal display ("LCD") panels. Plaintiff Motorola Mobility, Inc. ("Motorola") claims that Samsung Electronics Co., Ltd., Samsung Semiconductor, Inc., and Samsung Electronics America, Inc. (collectively "Samsung"), along with other Defendants ("Defendants"), "conspired with the purpose and effect of fixing, raising, stabilizing, and maintaining prices for LCD Panels." Third Amended Complaint ("TAC"), ¶2. Motorola's TAC alleges claims based on three categories of purchases: (1) LCD Panels delivered to Motorola in the United States; (2) LCD Panels delivered to Motorola manufacturing

facilities abroad for inclusion in Motorola devices imported and later sold in the United States; and (3) LCD Panels delivered to Motorola manufacturing facilities abroad for inclusion in Motorola devices sold abroad.[1] TAC, ¶ 184. The TAC includes claims under the Sherman Act and Illinois Antitrust Act, as well as breach of contract and unjust enrichment claims under Illinois law against Samsung and other Defendants. TAC at ¶¶228-330.

On July 31, 2012, Samsung filed a motion, seeking summary judgment on Motorola's state law breach of contract and unjust enrichment claims. Motion at 3-4, 11-12.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most

---

[1] Defendants named in Motorola's TAC filed a motion for summary judgment alleging that the Foreign Trade Antitrust Improvements Act ("FTAIA") bars the second and third of these categories, namely, TFT-LCD purchases in foreign markets. On August 9, 2012, the Court denied the motion, holding that Defendants' arguments presented issues of fact which must be resolved by the jury in this case, as discussed *infra*, in Part II, Section B. (Docket No. 6422).

2

favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

**DISCUSSION**

Samsung seeks summary judgment on two categories of state-law claims based on purchases by Motorola's Singapore and Chinese subsidiaries from Samsung: (1) breach of contract claims; and (2) unjust enrichment claims.

**I.     Breach of Contract**

Motorola's TAC alleges that Samsung breached its contractual obligation to Motorola under Illinois law by engaging in illegal price-fixing activity. TAC, ¶¶ 276-282. Under Illinois law, the interpretation of a contract presents a question of law that is decided by the court. *Hessler v. Crystal Lake Chrysler-Plymouth, Inc.*, 788 N.E.2d 405, 411 (Ill. App. Ct. 2003). A dispute over the terms of an unambiguous contract is therefore appropriate for disposition on summary judgment. *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir.2004). The elements for a breach of contract claim are (1) the existence of a valid and enforceable contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract and (4) a resulting injury to the plaintiff. *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001).

Samsung advances two reasons why it is entitled to summary judgment on Motorola's contract claim. First, Samsung asserts that it did not breach the terms of the purchase orders, which it maintains are the only contracts at issue. Motion at 2. Second, Samsung argues that Motorola did not suffer actual damages because it passed on over 100 percent of any overcharges it incurred. Motion at 3.

3

### A. The Contract

Samsung asserts that it did not breach the terms of the purchase orders, and the "compliance with laws" provisions of the purchase orders did not override the specific purchase prices stated on the face of the orders. Motion at 5. Motorola argues that the purchase orders merely represent a subset of the overall contractual relationship, which is evidenced by a number of agreements including non-disclosure, hubbing, and rebate agreements, written communications, and other documents, as well as the parties' course of dealing. Opposition at 8. Motorola alleges Samsung breached its obligations pursuant to this overall contractual relationship. *Id.*

The Court agrees with Samsung that the purchase orders are the sole contracts at issue. First, Motorola's TAC repeatedly identifies the purchase orders and the "compliance with laws" provision of the purchase orders as the basis for Samsung's contractual obligations. No other contract or agreement is identified. *See* TAC; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("the complaint must provide "the defendant [with] fair notice of what the ... claim is and the grounds upon which it rests."). For example, Motorola asserts that the two companies "entered into multiple contracts for the sale of LCD Panels and/or LCD Products...," and these contracts "include purchase orders issued by Motorola to Samsung." TAC, ¶ 277. The TAC further alleges that "[p]ursuant to each of these contracts, Samsung agreed...that all LCD Panels and/or LCD Products provided to Motorola would be produced, manufactured and supplied, and services rendered, in compliance with all applicable laws, rules, regulations, and standards. A specific provision confirming this term was included in many of the individual purchase orders." TAC, ¶ 278. Motorola claims Samsung breached the contracts because "Samsung did not comply with the terms of its contracts with Motorola, including the provision assuring compliance with all applicable laws. . ." TAC, ¶ 280. Motorola cites to ¶ 157 of the TAC to support its assertion that it based its breach of contract claim on the entire set of contracts, as opposed to just the purchase orders. However, this paragraph, and a number of others, identify only the purchase orders and the compliance with laws provision of the purchase orders, to the exclusion of any other named contract or provision. TAC, ¶¶ 5, 149, 157. Because the TAC failed to identify any other agreement or provision to put Samsung on notice of how it breached its contractual obligations, Motorola's current argument will be rejected. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir.

2006) (rejecting plaintiff's argument that new allegations raised in her response to a summary judgment motion provided defendants adequate notice under liberal notice pleading standards of the specific factual allegations underlying her new theories); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,* 624 F.3d 1083, 1089 (9th Cir. 2010) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings") (citation omitted) (quoting *Wasco Products, Inc. v.. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir.2006)); *Johnson v. Methodist Medical Center of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993) ("[t]here must be a point at which a plaintiff makes a commitment to the theory of its case").

Moreover, as Samsung notes, the purchase orders contain two integration clauses, included at the beginning and the end of the "Standard Procurement Terms and Conditions" ("Terms and Conditions") of the purchase orders. Motion at 3, 6; Stokes Decl. Exh. 22; Playforth Decl, Exh. B; *see Air Safety v. Teachers Realty Corp.*, 706 N.E.2d 882, 885 (Ill. 1962) ("where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence"). Section 1 of the Terms and Conditions provides, "[t]his order constitutes the entire agreement between Motorola and Seller and it specifically supersedes all prior or contemporaneous agreements, arrangements, representations and communications whether oral or written." *Id*. Section 22 further provides, "This order and any documents attached to or referred to on this order constitute the entire agreement between the parties and can only be modified by a writing signed by authorized representatives of both parties." *Id*. Despite these express terms, Motorola argues that the contractual relationship extends beyond the purchase orders and points to the deposition of Janet Robinson, Vice President of Procurement at Motorola, in which Robinson explained that Motorola has "many documents that in concert represent our agreements between Motorola and our suppliers," including hubbing agreements, non-disclosure agreements, and purchase orders. Opposition at 4, 8-9 n.2; Stokes Decl, Exh. 7 (Robinson Deposition. at 35:22-24); *see also* Stokes Decl, Exh. 24 (Motorola Supplemental Resp. to Interrog No. 3 at 6).

Under the Illinois Uniform Commercial Code ("UCC"),[2] extrinsic evidence may be permitted to determine whether the agreement is completely or partially integrated, even if a contract is not ambiguous. *See Hessler*, 788 N.E.2d at 413 (explaining that an inquiry into whether parties intended a contract to be integrated involves consideration of the following factors: merger or integration clauses, disclaimer clauses, prior negotiations, any alleged extrinsic terms, and the sophistication of the parties).[3] Here, the Court finds that the purchase orders were intended to be the final written expression of the parties. Samsung and Motorola are both sophisticated corporations with access to counsel. *See Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 790 (7th Cir. 1995) (refusing to imply any extrinsic terms, noting that the parties were sophisticated corporations with access to legal counsel who could clearly define their legal obligations in their agreement); *Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1116 (7th Cir. 1983) ("[the] policy of upholding the integrity of written contracts and favoring written terms over extrinsic evidence is particularly relevant in cases of this nature involving a written contract between two large corporations presumably represented by competent counsel. Such parties should be held to the terms of their written contract whenever it is reasonable to do so. . ."). Moreover, the integration clauses, which Motorola drafted, explicitly define the purchase orders as the "entire agreement" between the parties and prohibit "all prior and contemporaneous agreements, arrangements, representations and communications whether oral or written." Stokes Decl. Exh. 22; Playforth Decl, Exh. B. Having drafted these clauses, Motorola's argument that "[a]ny claim that the integration clause in the purchase orders somehow excludes the other agreements between the parties makes no sense" is disingenuous, and Motorola's attempt to contradict the plain language of the Terms and Conditions fails. Opposition at 11 n.5; *see* 810 ILL. COMP. STAT.

---

[2] Because the overall supply agreements primarily involve the sale of goods in the form of LCD panels, they are governed by the Illinois Uniform Commercial Code ("UCC"). *See* 810 ILL. COMP. STAT. 5/2-105 (2009) (goods, for purposes of the Illinois UCC, are "[a]ll things, including specially manufactured goods, which are movable at the time of identification to the contract for sale. . .").

[3] Some Illinois contract cases involving the sale of goods do not appear to apply this specific UCC rule. *See*, e.g., *Brooklyn Bagels v. Earthgrains Refrigerated Dough Products, Inc.,* 212 F.3d 373, 380 (7th Cir. 2000) (permitting extrinsic evidence only when the contract was ambiguous); *MAN Roland Inc. v. Quantum Color Corp.,* 57 F.Supp.2d 568, 571-72 (N.D. Ill. 1999). However, the court applies the UCC rule because the agreements at issue involve the sale of goods, and this permissive approach is consistent with the Court's obligation to view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.

5/2-202; *Hessler*, 788 N.E. 2d at 412 (evidence of prior agreements or contemporaneous oral agreements is generally inadmissible to vary or contradict the terms of an integrated written contract). Additionally, Motorola's argument that the course of dealing between the two parties reflects an agreement that goes beyond the purchase orders is without merit. *See* 810 Ill. Comp. Stat. 5/2-202*; Brooklyn Bagel v. Earthgrains Refrigerated Dough Products, Inc.*, 212 F.3d 373, 380-81 (7th Cir. 2000) (rejecting course of dealing evidence because it was inconsistent with the express terms of the contract).

Turning to the compliance of laws provision, Samsung asserts that the provision does not apply to antitrust laws, but rather was intended "to insulate Motorola from liability to third parties that might arise from violations of law related to the production of goods or the performance of services pursuant to the contract." Motion at 7. The provision reads,

> COMPLIANCE WITH LAWS: Seller warrants that the goods and services supplied pursuant to this order will have been performed, produced and supplied in compliance all applicable laws, orders, rules and regulations of [Singapore/PRC], including but not limited to all applicable jurisdictions' rules and regulations concerning freedom of association, wages and working hours, safety and health, anti-discrimination and humane treatment of workers. Seller shall indemnify Motorola against any liability caused by any non-compliance with this provision.

Stokes Decl. Exh. 22; Playforth Decl, Exh. B. Samsung asserts that established principles of contract construction support its position. Motion at 7-8.

The Court agrees with Samsung. Under Illinois law, contract terms are interpreted according to their plain meaning unless otherwise defined. *Utility Audit, Inc. v. Horace Mann Service Corp.*, 383 F.3d 683, 687 (7th Cir. 2004). A review of the plain language of the compliance with laws provision compels the conclusion that it does not apply to antitrust laws. First, the provision plainly states that it applies to "goods and services supplied pursuant to this order" and mandates they be "performed, produced and supplied in compliance. . ." Stokes Decl. Exh. 22; Playforth Decl, Exh. B. This provision does not, by its plain language, apply to the initial setting of prices, which is the conduct that forms the basis of the antitrust claims Motorola asserts in the TAC. Second, the Court agrees with Samsung's interpretation that the clause was directed at protecting Motorola from potential liability relating to the performance of the contract. Motion at 7. Particularly compelling is the enumerated list of rules and regulations, which, as Samsung argues, apply to activities solely relating to performance of the contract.

*See* Motion at 7; Stokes Decl. Exh. 22; Playforth Decl, Exh. B.  Although Motorola disputes this interpretation, Opposition at 10, it does not specifically dispute Samsung's claim that the enumerated categories all relate to performance, other than to argue that the terms "including, but not limited to" and "all applicable laws. . ." allow for the conclusion that this provision was not intended to apply only to the category of listed rules and regulations. *See Thornhill Publ'g Co.*, 594 F.2d at 738 (finding conclusory statements without factual support to be insufficient to support summary judgment).

Nor can Motorola's claims proceed on the theory that Samsung breached either an implied term prohibiting a violation of the law or the covenant of good faith and fair dealing. *See* Opposition at 9-10; *Jackson Nat. Life Ins. Co. v. Gofen & Glossberg, Inc.*, 882 F.Supp. 713, 720 (N.D. Ill. 1995) (explaining that the express terms of a contract will prevail over implied terms); *Saunders v. Michigan Ave. Nat. Bank*, 662 N.E.2d 602, 610 (Ill. App. Ct. 1996) ("Parties are entitled to enforce the terms of negotiated contracts to the letter without being mulcted for lack of good faith. Express covenants abrogate the operation of implied covenants so courts will not permit implied agreements to overrule or modify the express contract of the parties")(quoting *Resolution Trust Corp. v. Holtzman*, 618 N.E.2d 418, 424 (Ill. App. Ct. 1993)); *Northern Trust Co. v. VIII South Michigan Associates*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995) ("The covenant of good faith and fair dealing does not enable a guarantor to read an obligation into a contract that does not exist").

Finally, Motorola's attempt to raise new theories of Samsung's breach by asserting that Samsung is liable for breach of contract due to its disclosure of confidential information has come too late. *See Pickern*, 457 F.3d at 968-69 (rejecting plaintiff's argument that new allegations raised in her response to a summary judgment motion provided defendants adequate notice under liberal notice pleading standards of the specific factual allegations underlying her new theories); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir.2000) (holding that the district court did not err in prohibiting plaintiffs from proceeding on a theory raised for the first time at summary judgment); *Ortiz v. Lopez*, 668 F.Supp.2d 1072, 1082 (E.D.Cal.2010) (citing *Coleman*, 232 F.3d at 1292-93) (explaining that the issues on summary judgment are framed by the issues in the complaint, which "guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations. For these reasons, a plaintiff cannot oppose summary judgment based on a new theory of

8

liability because it would essentially blind-side the defendant with a new legal issue after the bulk of discovery has likely been completed."). Motorola failed to assert a theory of non-disclosure of confidential information in its TAC and provided no other indication prior to the Opposition that it would rely on this theory.[4] Even Motorola's Supplemental Responses to Interrogatories No. 3, which mentioned that non-disclosure agreements formed part of the overall supply agreement, did not mention the non-disclosure provision of the purchase orders. Stokes Decl., Exh. 24 (Motorola Supplemental Resp. to Interrog No. 3 at 6).

Based on the foregoing, the Court GRANTS Samsung's motion for summary judgment as to its breach of contract claim.

### B.     Damages/Injury

Samsung alleges it is also entitled to summary judgment because Motorola is unable to prove it suffered damages. Motion at 10-12. Samsung points to the testimony of Motorola's expert, Dr. Douglas Bernheim, as evidence that Motorola passed on over 100 percent of any overcharges to its customers. Playforth Decl. Ex. E (Bernheim Dep. 729:25-730:5).[5] Motorola counters this position, however, with the report of Samsung's expert, Dr. Edward Snyder, who estimated that Motorola passed on [only] 87 percent of any overcharges. Ex. 23 at 12-13. These contentions, which need not be decided in connection with the breach of contract claims, are addressed below to the extent necessary.

## II.    Unjust Enrichment

Samsung also seeks summary judgment on Motorola's unjust enrichment claim under Illinois law. To prove unjust enrichment a plaintiff must demonstrate that "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental

---

[4] Although Motorola claims that Samsung and other Defendants engaged in "illegal exchanges of supply, production, and pricing information. . .", see TAC ¶ 87, it does not allege that Defendants disclosed Motorola's confidential information.

[5] The Court's Order, dated February 10, 2011, held that "defendants are entitled to show that Motorola's contract damages may have been reduced by passing on any overcharges through downstream sales." (Docket No. 2418 (Feb. 10, 2011)).

9

principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

Samsung advances three theories to support its motion: (1) that the existence of an express contract bars a claim of unjust enrichment; (2) that the FTAIA preempts Motorola's unjust enrichment claim; and (3) that because Motorola passed on 100 percent of its alleged harm, Samsung was not enriched to Motorola's detriment, a required element of an unjust enrichment claim. Motion at 12-14.

### A.     Does an Express Contract Bar a Claim of Unjust Enrichment?

Samsung argues it is entitled to summary judgment on Motorola's unjust enrichment claim because a specific contract governed the parties' sales relationship, and the existence of this contract forecloses the claim. Motion at 12-13.

The Court disagrees. Under Illinois law, generally, the existence of a contract bars an unjust enrichment claim, unless the claim falls outside the subject matter of the contract. *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir.2004). In determining whether a claim falls outside of the contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim. *Id*. As discussed *supra*, the Court finds that the purchase orders, including the "compliance with laws" provision, do not address antitrust conduct, which is the underlying wrongful conduct alleged in the unjust enrichment claim. *See* Part I, Section A.

Samsung relies on language from *Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E. 2d 999, 1002 (1982), but that case is both factually and legally distinguishable. In *Industrial Lift Truck*, the plaintiff distributor made certain design changes to the defendant manufacturer's product to adapt it to the American market, but the design changes were neither requested by the manufacturer nor required by the dealership contract between the parties. *Id*. at 1002. After the manufacturer terminated the dealership agreement, the distributor filed a lawsuit seeking reimbursement from the manufacturer for the design changes under a quasi-contract theory. *Id*. The court rejected this theory, noting that, "[i]n essence, plaintiff is seeking to use quasi-contract as a means to circumvent the realities of a contract it freely entered into." *Id*. The court specifically noted that "Quasi-contract is not a means for shifting a risk *one has assumed* under contract." *Id*. (citing *Tondre v. Pontiac School District No. 105*,

1  342 N.E.2d 290 (1975))(emphasis added).

2  Here, Motorola entered into a contractual agreement with Samsung in the form of the purchase orders, and it agreed to pay the prices listed on the purchase orders. Motorola did not assume the risk of antitrust violations by Samsung in the way plaintiff in *Industrial Lift Truck* had assumed the risk of its own actions. The underlying conduct of Motorola's unjust enrichment claim, namely, Samsung's price-fixing activities, fall outside of the subject matter of the purchase orders, and Motorola may bring a claim for unjust enrichment.

### B. Does FTAIA Bar Motorola's Unjust Enrichment Claim?

Samsung asserts that the FTAIA preempts Motorola's unjust enrichment claim to the extent that Motorola's foreign purchases are barred by the FTAIA. Motion at 14. On August 9, 2012, the Court denied defendants' joint motion for summary judgment, which asserted that the FTAIA barred recovery for Motorola's TFT-LCD purchases in foreign markets. Docket No. 6422. The Court held that "whether the price fixing activities alleged by Motorola gave rise to direct, substantial, and reasonably foreseeable effects on domestic commerce, and whether such effects gave rise to a Sherman Act claim, present issues of fact which must be resolved by the jury in this case." Because Samsung's assertion relies on the proposition that the FTAIA bars claims based on Motorola's foreign purchases, the Court's denial of summary judgment on that issue warrants denial of summary judgment on its claim that the FTAIA preempts Motorola's unjust enrichment claim based on those same purchases.

### C. Motorola's Detriment

Samsung finally argues that it was not enriched "to [Motorola's] detriment" because Motorola passed on more than 100 percent of its alleged harm. Motion at 13. Motorola, however, alleges that Samsung was unjustly enriched by the amount Motorola paid in excess of what the price would have been but for Samsung's price-fixing activities. TAC, ¶ 286.

To succeed on an unjust enrichment claim, plaintiff "must show a detriment—and, significantly, a connection between the detriment and the defendant's retention of the benefit." *HPI Health Care Services*, 545 N.E.2d at 678 ("a plaintiff must allege that the defendant has unjustly retained a benefit

to the plaintiff's detriment"). A plaintiff need not show loss or damages to demonstrate it suffered a detriment; however, in some unjust enrichment cases, the loss or damages suffered by a plaintiff might be relevant to establishing that there is a detriment. *Cleary v. Phillip Morris*, 656 F.3d 511, 518-19 (7th Cir. 2011).

To warrant a grant of summary judgment, Samsung must demonstrate an absence of evidence to suggest that Samsung unjustly benefitted to Motorola's detriment. See *Celotex Corp.*, 477 U.S. at 325. The Court finds that Samsung has not met this initial burden. *See id.* at 323. Samsung's sole argument is that Motorola did not suffer damages because it passed on 100% of overcharges, as demonstrated by the deposition testimony of Motorola's expert, Dr. Bernheim. Playforth Decl., Exh. E at 665:14-17; 729:25-730:1-5.[6] Even assuming Motorola passed on 100% of its overcharges, however, a genuine issue remains as to whether Motorola suffered a detriment. First, as *Cleary v. Phillips*, makes clear, a plaintiff claiming unjust enrichment does not necessarily have to show damages to demonstrate it suffered a detriment, though it may be a relevant factor. *See Cleary,* 656 F.3d at 518-19. Additionally, damages in an unjust-enrichment claim "are restitution measured by the defendant's gain, *not the plaintiff's loss*." *Raintree Homes, Inc. v. Village of Long Grove*, 807 N.E.2d 439, 444-45 (Ill. App. Ct. 2004) (emphasis added). In this regard, Samsung's reliance on its contract damages in support of its damage theory for unjust enrichment is inapposite; damages for breach of contract differs from restitution for unjust enrichment. Motion at 9-11; *see Raintree Homes,* 807 N.E.2d at 445. In any event, Dr. Bernheim testified that Motorola may have incurred economic damage "and *then* passed it forward." Playforth Decl., Exh. E at 730:14-17 (emphasis added). That Motorola does not specifically address this point (i.e. what potential detriment it may have faced in first incurring damages and then passing it on) is irrelevant; at this stage, it is Samsung's burden to initially demonstrate that such

---

[6] In its discussion about contract damages, Motorola disputes that it passed on 100% of its overcharges and points to the report of Samsung's expert, Dr. Snyder, to demonstrate it passed on only 87% of overcharges. Opposition at 12. Playforth Decl., Exh 23. Samsung argues that this evidence is inadmissible and cannot be considered on summary judgment because Motorola is bound by the deposition testimony of its own expert, failed to provide contrary testimony from Dr. Snyder, and cannot require Dr. Snyder to appear at trial. *Id*. at 8-9. Samsung is correct that only admissible evidence may be considered for purposes of this motion. *See* Fed. R. Civ. P. 56(c)). However, because the Court finds that a genuine issue of material fact exists with respect to Motorola's detriment, regardless of the percentage of overcharges Motorola may have passed on, it is not necessary for this Court to resolve the issue of admissibility of this evidence.

evidence does not exist and thus, there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323.

Given Samsung's minimal showing in support of its motion, Samsung has failed to meet this burden. The Court finds that there is a genuine issue of material fact with respect to whether Samsung has been enriched to Motorola's detriment, and this will be left up to a jury to decide, not the Court. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on motions for summary judgment.").

Accordingly, the Court DENIES Samsung's motion for summary judgment on the unjust enrichment claim.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Samsung's motion as to Motorola's foreign contract claim and DENIES Samsung' motion as to Motorola's unjust enrichment claim. Master Docket Nos. 6322 in 07-1827.

**IT IS SO ORDERED.**

Dated: November 6, 2012

SUSAN ILLSTON
United States District Judge