IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL. No. 1827 |
| _____/ | No. C 09-1115 SI |
| This Order Relates to: | **ORDER DENYING TOSHIBA'S MOTION FOR SUMMARY JUDGMENT ON ATS's CLAIMS** |
| *ATS Claim, LLC v. Epson Electronics America, Inc., et al.*, C 09-1115 SI | |
| _____/ | |

On October 23, 2012, the Court heard argument on Toshiba's[1] motion for summary judgment against plaintiff ATS Claim, LLC. Toshiba contends that there is no evidence in the record sufficient to demonstrate a genuine dispute that Toshiba conspired to fix prices of TFT-LCD panels purchased by plaintiff ATS Claim, LLC's predecessor-in-interest from LG Display. Having carefully considered the parties' papers, the Court DENIES the motion for the reasons set forth below. Docket No. 6661.

---

[1] Defendants Toshiba Corporation, Toshiba Mobile Display Co., Ltd., Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc., hereinafter collectively "Toshiba."

# BACKGROUND

## 1. Factual Background

The following facts are undisputed. AutoMark Technical Systems LLC was founded in 2002 to develop a voting machine called the AutoMark Voter Assist Terminal, which allowed persons with physical disabilities to mark a paper ballot in elections. McAhren Decl. ¶ 2, Ex. 1 at 21:15-16, 22:5-20. AutoMark had no manufacturing facilities of its own, so it hired Ricoh Electronics to construct the Voter Terminal in 2004. *Id.*, Ex. 1 at 24:25-25:2; 28:13-22. The Voter Terminal design included a 15-inch TFT-LCD panel, which Ricoh was responsible for purchasing. *Id.*, Ex. 1 at 116. Ricoh only considered the bids of two suppliers for the panels: Sharp Corporation and the LG Display entities. *Id.*, Ex. 2 at 37:23-38:1. In 2004, Ricoh purchased the TFT-LCD panels from LG Display. *Id.*, Ex. 2 at 73:6-13; Ex. 4. Ricoh never solicited a bid from Toshiba for the voter-terminal project, Toshiba never bid on the project, and none of the panels used in the Voter Terminals were supplied by Toshiba. *Id.*, Ex. 2 at 109:23-110:8.

## 2. Related Actions and Procedural History

On December 17, 2008, the LG Display entities[2] and Sharp Corporation pled guilty to criminal price-fixing charges brought under section 1 of the Sherman Act. Docket Nos. 749-1, 758. The LG Display entities admitted that, from on or about September 21, 2001, to on or about June 1, 2006, through their officers and employees, they participated in a conspiracy among major TFT-LCD manufacturers to fix prices of TFT-LCD panels in the United States and elsewhere. Sharp also admitted that it participated in a conspiracy with other major TFT-LCD producers to fix prices of TFT-LCD panels within the same time period, but only with respect to sales made to Dell, Inc., Apple, Inc., and Motorola Corporation.

On October 14, 2009, plaintiff ATS[3] filed its first amended complaint in a stand-alone civil action, alleging that Toshiba, the LG Display entities, Sharp, and a host of other TFT-LCD

---

[2] Defendants LG Display Co., Ltd. and LG Display America, Inc..

[3] In 2007, Ricoh assigned to ATS Claim, LLC, plaintiff in this action, any claims that Ricoh might have relating to its purchases of TFT-LCD panels for the Voter Terminal. *Id.*, Ex. 1 at 17:20-18:12; Ex. 3.

2

manufacturers colluded to fix the prices of the panels used in AutoMark's Voter Terminal, in violation of section 1 of the Sherman Act. Pl.'s First Am. Compl. ¶¶ 1-4, 134-138. Since that time, all other defendants in this action, including the LG entities and Sharp, have been dismissed by stipulation; Toshiba is the only remaining defendant. Because plaintiff does not allege that Toshiba made any of the sales underlying its claim, plaintiff proceeds against Toshiba solely on a theory of joint and several liability. Toshiba has never admitted liability or any form of participation in the conspiracy. However, the Court denied Toshiba's September 14, 2011, motion for summary judgment as to all related direct- and indirect-purchaser actions on the grounds that there is "ample evidence" Toshiba participated in the overarching conspiracy to fix prices on TFT-LCD panels during the relevant period to require trial of those claims. Docket No. 4107. On July 2, 2012, a special verdict for damages was entered against Toshiba in the direct-purchaser class action trial. Docket No. 6061.

On September 7, 2012, Toshiba moved for summary judgment on plaintiff ATS's claim, contending that the record does not contain any admissible evidence creating a genuine dispute that any TFT-LCD manufacturer conspired to fix the prices of the panels used in AutoMark's Voter Terminal. Toshiba argues that the panels Ricoh purchased were highly-specialized and therefore occupy a distinct market outside the scope of any conspiracy.

## LEGAL STANDARD

### 1.     Collateral Estoppel (Offensive Nonmutual Issue Preclusion)

Offensive nonmutual issue preclusion applies where a plaintiff seeks to prevent a defendant from relitigating an issue that the defendant previously litigated unsuccessfully in a separate action against a different party. *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 713n.3 (9th Cir. 2005). "A party invoking issue preclusion must show: (1) the issue at stake is identical to an issue raised in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003). "The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992).

3

## 2. Motion for Summary Judgment

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. *Id.* at 325. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.*.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* Conclusory, speculative testimony in affidavits and moving papers, however, is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, the evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

## DISCUSSION

## 1. Plaintiff's Request for Offensive Nonmutual Issue Preclusion

ATS asserts that Toshiba cannot deny antitrust liability to ATS, because of the special verdict handed down in the direct-purchaser class trial, and it therefore seeks to preclude Toshiba from

4

relitigating the issues decided in that case.

The Court concludes that plaintiff has not met its burden in demonstrating it can assert offensive nonmutual issue preclusion. First, the special verdict is not a final judgment.[4] *See Littlejohn*, 321 F.3d at 923. Furthermore, the direct-purchaser class jury did not make any findings of fact regarding the identities of Toshiba's alleged co-conspirators or the duration of any conspiracy. The Court has already explained that, "the fact that there is substantial overlap between the pleadings and evidence in the [direct-purchaser] case and [the instant] case is insufficient to meet [a movant's] burden of demonstrating that the issues for which it seeks preclusive effect are identical to those that were actually litigated and decided in the [direct-purchaser] trial." Docket No. 6942 at 6. As a result, plaintiff will not receive the benefit of issue preclusion with respect to Toshiba's liability in the instant litigation.

**2.    Toshiba's Motion for Summary Judgment**

Toshiba asserts that summary judgment is warranted because ATS has no evidence that any TFT-LCD supplier conspired to fix the prices of panels used in the Voter Terminals. Specifically, Toshiba claims that the panels used in the Voter Terminals are specialized panels that constitute a distinct market apart from the TFT-LCD market at large, and ATS does not have evidence of a conspiracy in this distinct market.

To survive summary judgment, plaintiff must provide direct or circumstantial evidence sufficient to support a jury's finding that a price-fixing agreement exists and that the panels used in the Voter Terminal fall within the scope of the agreement. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984)); Docket No. 4123 at 2-3 (Order Denying Defendants' Motion for Partial Summary Judgment as to Sole Soured Panels).

Plaintiff points to the factual admissions made in the plea agreements entered by the LG Display entities and Sharp to demonstrate the existence of a conspiracy. Docket Nos. 750, Ex. 1, and 758. Both entities admitted that at the time LG Display sold Ricoh panels, LG Display was engaged in a global

---

[4] Moreover, the jury verdict from the direct-purchaser class action is likely to be vacated as part of a settlement agreement between the class and the Toshiba entities, which has received preliminary approval from the Court. Docket No. 6988.

5

price-fixing conspiracy. *Id.* Although Sharp's guilty plea was confined to sales made to specific purchasers, as this Court has said, "evidence suggesting that defendants fixed the price of some panels . . . is inconsistent with permissible competition, and could support an inference that defendants included [additional] panels . . . within the scope of their conspiracy." Docket No. 4123 at 2-3. Furthermore, LG Display, which did not similarly restrict its participation in the overarching conspiracy, was the entity that ultimately sold panels to Ricoh. Additionally, although Toshiba is not collaterally estopped from denying its participation in an overarching conspiracy, its reliance on the lack of evidence linking Toshiba to the overarching conspiracy is unpersuasive. *See* Order Denying Toshiba Entities' Motion for Summary Judgment, Docket No. 4107 (holding that there is "ample evidence" from which a jury could conclude that Toshiba participated in the overarching price-fixing conspiracy). Viewing these facts in the light most favorable to plaintiff, as the Court must do at summary judgment, the Court finds that the record consists of sufficient evidence to create a genuine dispute regarding Toshiba's participation in the overarching conspiracy.

The crux of the instant motion is whether the panels that LG Display sold to Ricoh are outside the scope of any established or alleged price-fixing conspiracy. Toshiba claims that the TFT-LCD panels that Ricoh purchased from LG Display "occupied at least a unique niche in the marketplace, if not a market unto themselves." Motion at 1. This is true, they argue, because various federal and state governmental authorities must extensively regulate, test, and certify such electronic devices before they are used in elections. *Id.* at 4-5. ATS disputes this characterization by asserting that the panels used in the Voter Terminals are the same panels at the center of the overarching conspiracy. Opposition at 6-7.

The Court concludes that plaintiff has met its burden in demonstrating that there is a genuine dispute as to whether the panels that Ricoh purchased from the LG Display entities fall within the scope of the overarching conspiracy involving 15" TFT-LCD panels. First, plaintiff submits deposition testimony that suggests that although Ricoh primarily considered sourcing the panels from the LG Display entities and Sharp, it did not rule out other panel manufacturers, whose panels could have been substituted. Germaine Decl., Exh. 2, 120-122, 124; *see Coalition For ICANN Transparency, Inc. v. VeriSign, Inc.* 611 F.3d 495, 507 (9th Cir. 2010) (explaining that courts should consider whether a

6

product and its substitutes are reasonably interchangeable by consumers for the same purpose in determining relevant market for antitrust purposes). Moreover, even if Ricoh had ruled out other panel manufacturers, without further evidence of Ricoh's reasons for ruling out other manufacturers, this does not necessarily demonstrate that the panels were so different as to constitute a distinct market. Plaintiff produces a price quote from LG Display that suggests the panels it purchased were standard 15" TFT-LCD panels. Germaine Decl. Exh. 7. Moreover, both parties point to the deposition testimony of Eugene Cummings, a former principal at AutoMark, who stated that the first consideration for choosing the panels was that they were 15" TFT-LCD. McAhren Decl., Ex. 1 at 120:17-121:1 ("Most [requirements] are met by 15-inch panels . . . other than that, the panels were all a little different"). Although Toshiba points to this deposition testimony to assert that the panels Ricoh sought were specialized in some manner, the evidence does not tend to support this reasoning exclusively. *See id.,* Exh. 2; Germaine Decl., Exh. 2, 121-124. Instead, the evidence suggests that some panels better accommodated AutoMark and Ricoh's design specifications. *See* Germaine Decl., Exh. 2, 121-124. Second, this deposition testimony also supports plaintiff's contention that any modifications to the panel that were made to bring them into compliance with government certification and testing standards occurred post-sale, and seemingly only with regard to the interface components, not the panels themselves. Germaine Decl., Ex. 2 at 121:13-24; 124:13-25 and Ex. 3. Drawing all inferences in favor of plaintiff and viewing the evidence in the light most favorable to plaintiff, there is a genuine dispute as to whether the panels that Ricoh purchased fell within the scope of the overarching conspiracy. Accordingly, the Court DENIES Toshiba's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Toshiba entities' motion for summary judgment is DENIED. Docket No. 6661.

**IT IS SO ORDERED.**

Dated: November 7, 2012

SUSAN ILLSTON
United States District Judge

7