1

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT

7         FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10  IN RE: TFT-LCD (FLAT PANEL) ANTITRUST          No. M 07-1827 SI
    LITIGATION                                     MDL. No. 1827
11  _____/
                                                   Case No. 10-1064 SI
12  This Order Relates to:                         **ORDER DENYING DEFENDANTS'**
13                                                  **MOTION FOR PARTIAL SUMMARY**
        *Dell Inc. et al. v. AU Optronics*         **JUDGMENT DISMISSING DELL'S PRE-**
14      *Corporation, et al.,* C 10-1064 SI        **DECEMBER 2002 CLAIMS AS TIME-**
                                                   **BARRED AND FOR PARTIAL**
15                                                  **SUMMARY JUDGMENT OF DELL'S**
                                                   **FAILURE TO MITIGATE DAMAGES**
16  _____/

17

18

19      On November 30, 2012, the Court held a hearing on defendants' motion for partial summary

20  judgment dismissing Dell's pre-December 2002 claims as time-barred and for partial summary judgment

21  of Dell's failure to mitigate damages.  For the reasons set forth in this order, the Court DENIES

22  defendants' motion.  Docket Nos. 5847 & 5886.

23

24                              **DISCUSSION**

25  **1.      Fraudulent concealment**

26      Defendants contend that Dell's claims relating to conduct occurring before December 12, 2002,

27  are barred by the applicable four-year statute of limitations because the evidence shows that Dell had

28

*(left margin, vertical text)* **United States District Court**  For the Northern District of California

knowledge of the facts underlying its claims before December 12, 2002.[1]  Defendants argue that Dell employees had suspicions of "cartel" activity among TFT-LCD suppliers as early as 1998, and that Dell employees frequently referred to defendants as a "cartel" in e-mails and other documents.  Defendants also contend that as early as 2001, Dell had actual knowledge of price-fixing meetings among TFT-LCD suppliers.  Defendants have submitted evidence showing that in 2001, Eric Korman, Dell's Director of Engineering and Supplier Development Director on Dell's TFT-LCD procurement team, learned directly from Samsung and LG that TFT-LCD suppliers were meeting to exchange market information and set prices of TFT-LCD panels.  Defendants have submitted Mr. Korman's declaration in which he states, *inter alia*, that he reported this information to his supervisors on numerous occasions.  Defendants argue that, at a minimum, the record shows that Dell had constructive knowledge of the facts underlying its claims, and that Dell did nothing to investigate its claims prior to December 2002.

Dell contends that summary judgment is not appropriate because there are genuine issues of material fact as to whether defendants fraudulently concealed the alleged conspiracy such that Dell did not know of its existence.  Dell contends that while certain Dell employees were suspicious about defendants' behavior, no one at Dell had actual knowledge of Dell's claims.  Dell argues that "the mere use of the word 'cartel' in some Dell documents" does not show that Dell knew that it suppliers were reaching agreements to fix prices to Dell.  Docket No. 6127 at 7:16.  Instead, according to Dell, the evidence shows that employees used the term "cartel" loosely to refer to the fact that a heavy concentration of LCD business resided with a handful of companies.  Dell attacks Mr. Korman's credibility, arguing that Mr. Korman is biased, that his declaration is inconsistent with his own deposition testimony, and that his testimony is contradicted by testimony from other Dell employees and

---

[1] Dell alleges only direct purchaser price-fixing claims under Section One of the Sherman Act. The direct purchaser plaintiff class action lawsuit, filed on December 12, 2006, tolled Dell's claims. Dell has alleged that its claims relating to conduct occurring before December 12, 2002, are timely because defendants fraudulently concealed the alleged price-fixing conspiracy, and Dell did not discover and could not have discovered through the exercise of reasonable diligence the existence of the conspiracy until December 2006.

1  defense witnesses.[2] Dell also asserts that the record demonstrates that its employees took various steps

2  to investigate suspicions of price-fixing, and that those investigations were reasonable under the

3  circumstances.

4        To toll the statute of limitations under a theory of fraudulent concealment, Dell must prove that

5  defendants "fraudulently concealed the existence of the cause of action so that [Dell], acting as a

6  reasonable person, did not know of its existence." *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858

7  F.2d 499, 502 (9th Cir. 1988).   Summary judgment is appropriate "if uncontroverted evidence

8  'irrefutably demonstrates that a plaintiff discovered or should have discovered [the cause of action] but

9  failed to file a timely complaint.'" *Id.* (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th

10  Cir. 1987)).

11        While defendants have submitted powerful evidence suggesting that Dell knew about

12  defendants' alleged price-fixing activities prior to December 2002, the Court concludes that summary

13  judgment is not appropriate because the parties have submitted conflicting evidence regarding what Dell

14  employees knew and when they knew it.  Further, assuming Dell did not have actual knowledge of the

15  alleged conspiracy, there are disputes of fact regarding whether Dell took reasonable steps to investigate

16  suspicions of cartel activity.

17        Accordingly, the Court DENIES defendants' motion for partial summary judgment dismissing

18  Dell's pre-December 2002 claims as time-barred.

19

20  **II.     Mitigation**

21        Defendants separately move for summary judgment on Dell's claims relating to conduct after

22  December 2002 on the ground that Dell failed to mitigate its damages.  Defendants contend that Dell

23  had an affirmative obligation to take reasonable steps to avoid damages, and that the evidence discussed

24  *supra* shows that "Dell failed to take reasonable steps that could have eliminated its damages entirely

25  ────────────────

26        [2] Dell has filed a motion for sanctions against defendants, in which Dell contends that defendants engaged in misconduct in securing Mr. Korman's deposition. Dell requests as sanctions,

27  *inter alia*, that the Court bar the use of Mr. Korman's testimony in motion practice or trial and that the Court strike defendants' statute of limitations defense on the basis of fraudulent concealment. The sanctions motion is currently pending before the Special Master. In ruling on the current motion, the

28  Court assumes that Mr. Korman's testimony is generally admissible.

1 and instead knowingly allowed alleged treble damages to accumulate for five years." Docket No. 5847

2 at 1:21-23. Defendants argue that Dell could have mitigated its damages by complaining to the

3 Department of Justice and/or filing suit against defendants.

4 In response, plaintiffs contend that mitigation is not a defense to horizontal price-fixing.

5 Plaintiffs argue that the authorities cited by defendants "are decades-old cases holding, unremarkably,

6 that the duty to mitigate may exist in cases where the plaintiff is seeking lost profits or damages for a

7 concerted refusal to deal." Docket No. 6127 at 17:22-23. Plaintiffs also assert that allowing a

8 mitigation defense to a horizontal price-fixing conspiracy would eviscerate the statute of limitations by

9 requiring plaintiffs to take immediate action in order to preserve their legal rights.

10 The Court agrees with Dell that the cases cited by defendants are inapposite because none of

11 those cases involved horizontal price-fixing. *See e.g., Pierce v. Ramsey Winch Co.*,753 F.2d 416 (5th

12 Cir. 1985) (vertical price-fixing); *MCI Communications Corp. v. AT&T*, 708 F.2d 1081 (7th Cir. 1983)

13 (monopolization, attempt to monopolize, conspiracy to monopolize, and conspiracy in restraint of trade);

14 *Litton Systems, Inc. v. AT&T*, 700 F.2d 785 (2d Cir. 1983) (monopolization); *Borger v. Yamaha Intern.*

15 *Corp.*, 625 F.2d 390 (2d Cir. 1980) (refusal to deal); *Hanover Shoe, Inc. v. United Shoe Machinery*

16 *Corp.*,185 F. Supp. 826 (D.C. Pa. 1960) (unlawful overcharges). Defendants also cite the ABA Model

17 Jury Instructions in Civil Antitrust Cases, Instruction 14 titled "Mitigation." *See* ABA Section of

18 Antitrust Law, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 Ed. (2005) at

19 F-47. However, the cases cited in the "Notes" as support for a mitigation instruction involved predatory

20 pricing and/or a refusal to deal, not horizontal price-fixing. *See id*. (citing *Malcolm v. Marathon Oil*

21 *Co.*, 642 F.2d 845 (5th Cir. 1981); *Golf City, Inc. v. Wilson Sporting Goods, Co., Inc*., 555 F.2d 426 (5th

22 Cir. 1977)).

23 In the absence of any on-point authority, the Court declines to hold that defendants may assert

24 mitigation as a defense to Dell's horizontal price-fixing claim. While an antitrust plaintiff alleging a

25 refusal to deal or vertical price-fixing could reasonably be expected to mitigate damages by finding

26 another supplier, a victim of horizontal price-fixing does not have this option. The Court also finds that

27 the monopolization cases against AT&T, which arose in the context of singular, complex and heavily

28 regulated framework, do not shed any light on whether mitigation is a defense to a horizontal price-

4

**United States District Court**
For the Northern District of California

1   fixing claim.  *See MCI Communications Corp. v. AT&T*, 708 F.2d at 1207 (quoting lower court jury

2   instructions which stated, *inter alia*, "AT&T contends that the FCC had the power to resolve many of

3   the alleged unlawful acts of which MCI complains and that if MCI had filed complaints with the FCC,

4   or formally objected to tariffs of AT & T, the FCC could have resolved any disputes over FX, CCSA,

5   local distribution areas, the terms and conditions of furnishing local distribution facilities, and multipoint

6   service. MCI denies this contention and argues that AT & T encouraged it to continue negotiating rather

7   than resorting to the FCC."); *Litton Systems, Inc.*, 700 F.2d at 820 n.47 (noting AT&T's argument that

8   "Litton should have mitigated its damages by removing the interface devices as soon as the tariff

9   requiring them was invalidated").

10      Accordingly, the Court DENIES defendants' motion seeking summary judgment as to Dell's

11  post-December 2002 claims for failure to mitigate damages.

12

13                                          **CONCLUSION**

14      For the reasons set forth above, defendants' motion is DENIED.

15

16      **IT IS SO ORDERED.**

17

18   Dated: November 30, 2012

                                            SUSAN ILLSTON
19                                          United States District Judge

20

21

22

23

24

25

26

27

28