IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION

No. M 07-1827 SI
MDL. No. 1827

Case No. C 11-0058 SI

This Order Relates to:

*Costco Wholesale Corp. v. AU Optronics Corp., et al.,* C 11-0058 SI

**ORDER GRANTING IN PART DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AS TO COSTCO'S INDIRECT PURCHASES**

Currently before the Court is defendants' joint motion for partial summary judgment as to Costco's indirect purchases. Having considered the moving papers and the arguments of the parties, and for good cause appearing, the Court hereby GRANTS the motion as to indirect purchases from Acer, eMachines, Envision, Gateway, Proview, Sylvania, and Visio; and DENIES the motion as to purchases from Panasonic and JVC. Docket 5979.

## BACKGROUND

Plaintiff Costco Wholesale Corporation ("Costco") is a retailer which purchased finished products containing LCD panels from a number of different vendors. Costco filed a complaint asserting violations under Section 1 of the Sherman Act and the Washington Consumer Protection Act, among other state law antitrust actions.[1] The Court dismissed all claims except those asserted pursuant to the Sherman Act and the Washington Consumer Protection Act. *See* Dkt. No. 3396 (Order Granting In Part

---

[1] Costco asserted violations under the California Cartwright Act, the Arizona Antitrust Act, the Florida Deceptive and Unfair Trade Practices Act, and the Illinois Antitrust Act. *See* Second Am. Compl., Dkt. No. 4428, ¶¶ 184-213.

Defendants' Joint Motion to Dismiss Complaint) and Dkt. No. 4195 (Order Granting Defendants' Joint Motion to Dismiss In Part Amended Complaint).

As the Court previously recognized, Washington law does not allow private indirect purchasers to recover under its state antitrust laws. Dkt. No. 3396 at 6. To recover under Washington antitrust law, as under federal antitrust law, an indirect purchaser must fall within an exception to *Illinois Brick* to assert standing.

In *Illinois Brick*, the Supreme Court held that only direct purchasers of price-fixed goods may bring suit under the federal antitrust laws. Subsequent cases have outlined limited exceptions to the *Illinois Brick* rule and have held that indirect purchasers may have standing to bring suit in one of the following three situations: (1) if a pre-existing cost-plus contract with the direct purchaser exists; (2) if the indirect purchaser establishes a price-fixing conspiracy between the manufacturer and the middle-man as to the price paid by the plaintiffs; and (3) if a conspirator owns or controls the direct purchaser, or the direct purchaser owns or controls a conspirator. *In Re ATM Fee Antitrust Litigation*, 686 F.3d 741, 756-58 (9th Cir. 2012); *Royal Printing v. Kimberly-Clark Corp.,* 621 F. 2d 323 (9th Cir. 1980); *Freeman v. San Diego Ass'n of Realtors*, 322 F. 3d 1133 (9th Cir. 2003). With respect to the ownership/control exception, the Ninth Circuit held in *ATM Fee* that the "no realistic possibility" inquiry that the Ninth Circuit had recognized in *Freeman* is not a separate exception to the *Illinois Brick* rule, and does not apply outside the ownership or control context. *ATM Fee*, 686 F.3d at 756-58.

In this motion for partial summary judgment, Defendants[2] assert that Costco lacks standing to pursue Sherman and Clayton Act claims based on Costco's indirect purchases from particular vendors because no ownership/control relationship exists between any of these vendors and an alleged conspirator.[3]

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and

---

[2] HannStar Display Corp.; AU Optronics Corp., AU Optronics Corp. America; Chimei Innolux Corp., Chi Mei Optoelectronics USA, Inc., CMO Japan Co., Ltd.; LG Display Co., Ltd., LG Display America, Inc.; Chunghwa Picture Tubes, Ltd.; Epson Imaging Devices Corp., EpsonElectronics America, Inc.

[3] The parties do not dispute that the first two *Illinois Brick* exceptions are inapplicable.

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

**DISCUSSION**

Costco is a retailer which purchased finished products containing LCD panels from a number of different vendors. Costco claims that as a result of its purchases from these vendors, it sustained damages in the form of overcharges. *See* Second Amended Complaint ("SAC"), ¶ 55, Dkt. No. 4428. Some of the vendors are alleged conspirators, or divisions, subsidiaries, or owners of alleged conspirators, while others are "affiliates of some Defendants and co-conspirators" and "companies that have other important business arrangements with Defendants and co-conspirators." *Id.* In its complaint,

3

Costco appears to base its standing to pursue some of these purchases on the ownership/control exception identified in *Royal Printing Company*, 621 F.3d at 326 ("*Illinois Brick* does not bar an indirect purchaser's suit where the direct purchaser is a division or subsidiary of a co-conspirator"). Specifically, Costco alleges that there is "no realistic possibility that these sellers will seek to recover for the damage caused by the conspiracy, and in fact they did not seek to recover before the expiration of the statute of limitations." SAC, ¶ 55. The motion at issues involves nine vendors which are not named defendants and, according to Defendants, have no ownership or control relationship with any Defendant or co-conspirator.[4]

Defendants argue that Costco lacks standing to sue for purchases from these nine vendors because they fail to fall within the *Royal Printing* exception. Defendants assert that *Royal Printing* recognized a narrow exception to *Illinois Brick*, to allow standing for purchases "where the direct purchaser is a division or subsidiary of a co-conspirator." Where, however, the "purchases were made through independents not affiliated with any manufacturer . . . [plaintiffs] are truly indirect purchasers from [defendants] and are barred by *Illinois Brick* . . . ." Motion at 8 (quoting *Royal Printing*, 621 F.3d at 324, 328). Defendants claim there is no evidence to establish an ownership or control relationship between any of these nine vendors and Defendants or alleged co-conspirators.

Costco asserts that the ownership/control standard is not limited to parent-subsidiary relationships, and urges that it is not relying on mere "contractual relationships" to assert standing. Rather, Costco contends that the vendors are not independent companies, and the Court must consider the facts to determine whether there is ownership *or* control between the vendors and Defendants or co-conspirators. The contractual relationships, Costco asserts, demonstrate "the power of and motives for the control affiliations." Opposition at 11. For a number of the vendors, Costco asserts standing solely because there is no realistic possibility that these vendors would bring suit against any of the Defendants or co-conspirators.

The Ninth Circuit's decision in *ATM Fee* clarified that the "realistic possibility of suit" inquiry

---

[4]The vendors are: Acer Computers, eMachines, Envision Peripherals, Gateway, JVC, Panasonic, Proview, Sylvania, and Vizio. Costco notes in its Opposition that it does not seek to recover for its purchases from Princeton GS, which Defendants had also mentioned in its motion. Opposition at 3, n. 2.

4

outlined in *Royal Printing* is not a *separate* exception - it part of the analysis to be done under the ownership/control exception. *ATM Fee*, 686 F.3d at 756. The Court noted that "*Freeman* outlines that, whether a realistic possibility of suit exists, depends on the ownership or control between the direct purchaser and the seller," and the Court expressly declined to extend the "realistic possibility of suit" exception to situations outside of the ownership/control context, noting the Supreme Court's admonition against allowing further exceptions to *Illinois Brick*. *Id*. (citing *Kansas v. Utilicorp*, 497 U.S. 199, 216 (1990)).

"Control" means "to exercise restraint or direction over; dominate, regulate, or command," *United States v. Bennett*, 621 F.2d 1131, 1139 n.2 (9th Cir. 2010) (quoting Webster's College Dictionary 297 (Random House 1991)), or to have "the power or authority to guide or manage," *id*. (quoting Webster's New Collegiate Dictionary 285 (9th ed. 1983)). *ATM Fee*, 686 F.3d at 757. The Ninth Circuit described the "power or authority to guide or manage" that is required to demonstrate "the type of control necessary to meet the exception to *Illinois Brick*." *Id.* at 758. In that case, the Court found that the direct purchaser banks, who owned approximately 10 percent of the publicly traded Delaware corporation that owned the seller, "had insufficient ownership interests to control" the seller or its shareholder. *Id*. at 757. The Court further explained that "[s]tock ownership alone, at least when it amounts to less than a majority, is not sufficient proof of domination or control." *Id.* The Ninth Circuit also noted that the ATM Network Advisory Board, consisting of some of the banks and allegedly established to appease the banks anxious about a change in the ownership of the STAR Network, "had no power to set interchange fees [the price-fixed fee] or to control [STAR's shareholder's] board." *Id.* The Network Advisory Board's "input on policies and pricing issues . . . does not constitute the type of control necessary to meet the exception to *Illinois Brick*." *Id*. at 758.

Using these guidelines, the Court analyzes whether Costco has provided sufficient evidence of an ownership or control relationship between each challenged vendor and an alleged conspirator. To the extent Costco bases its argument solely on the realistic possibility that a particular vendor would sue its seller, without any showing that the vendor and the seller have an ownership/control relationship, the Court will grant the motion as to that vendor. Additionally, the Court notes that the fact that a company's shareholder interest is less than 50% and/or representation on the board of directors of

5

another company is less than 50% does not necessarily preclude control; however, where Costco has not provided sufficient evidence of ownership or control in other ways, the Court will grant the motion.

**1.    Panasonic**

Defendants dispute Costco's allegation that Panasonic controlled or was controlled by an alleged conspirator. Costco asserts that Panasonic has not brought and will not bring suit due to Panasonic's ownership and control of entities that participated in the conspiracy and its multiple joint ventures with other conspirators. Costco points to Panasonic's relationships with Toshiba Matsushita Display Technology Co., Ltd. and IPS Alpha to create a genuine issue of material fact.

Costco submits evidence that Panasonic jointly owned alleged conspirator Toshiba Matsushita Display Technology Co., Ltd. (TMD), holding a 40 percent share, *see* Merriman Decl. Exh. 2 (Panasonic 2002 20-F at 12), Exh. 3 (Panasonic 2006 20-F at 127), and TMD served as the panel manufacturer for Panasonic and Toshiba. *See* Merriman Decl. Exh. 2 (Panasonic 2002 20-F at 19, 121) ("[A] new joint venture, [TMD] was established upon division of relevant business from both companies" and "has succeeded to LCD operations of the two parent companies."); Exh. 57 at 2 ("Assets, liabilities, rights and obligations involved in the business to be transferred from [Panasonic] and Toshiba, which are considered to be mandatory to operations [of TMD]"); Exh. 3 at 11 ("In April 2002, [Panasonic] and Toshiba . . . separated their respective [LCD] panel operations and established a joint venture company, [TMD], for the development, manufacture and sale of LCD panels and next-generation display devices."). Costco also provides evidence that some of TMD's board members came from Panasonic. Merriman Decl. Exh. 57 at 3 (when TMD was formed, three of TMD's eight board members were from Panasonic), Exh. 58 at 2 (TMD presentation showing that four of TMD's board members were from Panasonic in 2002); Exh. 60 at 5 (same in 2003); Exh. 61 at 3-4 (same in 2005); Exh. 62 at 3 (same in 2006). Costco presents no evidence that Panasonic in fact exercised control over TMD's business or operation, beyond its less than controlling ownership interest, but argues that "Panasonic and TMD had intertwined economic interests, as TMD sold half the LCD panels it manufactured to either Panasonic or Toshiba,"*see* Opposition at 14. It is not clear whether these relationships, alone, would constitute the type of "power or authority to guide or manage" required to

6

1 come within the ownership/control exception. *ATM Fee*, 686 F.3d at 757.

2 However, Costco also provides evidence of Panasonic's ownership and control of IPS Alpha
3 Technology Ltd. ("IPS Alpha"), which Costco alleges is a conspirator.[5] From 2004, when IPS Alpha
4 was formed as a joint venture, through the end of the conspiracy, and until 2009, Panasonic owned less
5 than a 50% share of IPS Alpha. *See* Merriman Decl. Exh. 8. However, in 2009, Panasonic bought out
6 other shareholders to acquire a 92% share in IPS Alpha, and as of this time, owned and controlled IPS
7 Alpha. *See id*, Exh. 9. Based on this ownership and control, Panasonic was in a position to dictate
8 whether or not IPS Alpha could bring a lawsuit. *See ATM Fee*, 686 F.3d at 756 ("in *Freeman*, we found
9 no realistic possibility of suit, because the associations owned and controlled the direct purchaser); *see,*
10 *e.g., Royal Printing*, 621 F.2d at 326 n. 7 ("[I]f Royal Printing is ... barred [from suing], and the
11 *controlled* wholesalers will not sue, the appellees' transactions would be immune from private antitrust
12 enforcement.") (emphasis added).

13 Viewing the evidence in the light most favorable to plaintiff, the Court concludes Costco has
14 provided sufficient evidence of Panasonic's ownership and control of alleged co-conspirators to create
15 a genuine issue of material fact. Therefore, the Court denies summary judgment as to purchases from
16 Panasonic.

17

18 **2.    JVC**

19 Costco's arguments that JVC falls within the ownership/control exception are based on JVC's
20 status as Panasonic's former subsidiary and "current affiliate." Opposition at 12. Costco argues that
21 a lawsuit by JVC "against the conspirators would be contrary to the interests of its affiliates and its

---

[5] Defendants dispute IPS Alpha's alleged participation in the price-fixing conspiracy. However, subsequent to the briefing of this motion, the Court found that, for purposes of summary judgment, there is admissible evidence from which a jury could conclude that IPS Alpha participated in the price-fixing conspiracy. *See* Order Granting in Part and Denying in Part Defendants' Joint Motion for Partial Summary Judgment as to NonParty Co-Conspirators, Dkt. No. 7109 (November 6, 2012)("During the alleged conspiracy, IPS Alpha was created by and remained controlled and operated by Panasonic, Toshiba, and Hitachi, and IPS Alpha's president (who also served as Hitachi's president) attended a number of price-fixing meetings. Plaintiffs have also submitted evidence showing that representatives from Panasonic, which was formerly Matsushita Electric, exchanged pricing and other proprietary LCD panel information with defendants. This evidence is sufficient to raise a triable issue of fact to defeat summary judgment.")
.

largest shareholder, Panasonic." *Id*. at 13, n. 8. Costco provides evidence that JVC operated as a subsidiary of Panasonic during the conspiracy, with Panasonic owning a 52.4% share of JVC. *See* Merriman Decl., Exh. 13-15.[6] Costco also provides evidence of shared patent agreements between Panasonic and JVC, and points out that the two companies have been represented by the same counsel in certain proceedings. *Id*., Exh. 17.

As with Panasonic, the Court concludes that viewing the evidence in the light most favorable to plaintiff, Costco has provided sufficient evidence that JVC falls within the ownership/control exception to create a genuine issue of material fact for trial. Therefore, the Court denies summary judgment as to purchases from Panasonic.

### 3. Acer, Gateway, and eMachines

Costco bases its argument in support of standing for purchases made from these vendors[7] on Acer's creation of Acer Display Technology, Inc. ("ADT"), which subsequently merged with Unipac Electronics in 2001 to create AU Optronics, a conspirator. Costco argues that ADT participated in "conspiratorial meetings" between 1999-2001, prior to becoming AUO, and while directly owned by Acer. Opposition at 17. Based on these affiliations, Costco argues, it is "highly unlikely" that Acer, Gateway, or eMachines will sue AUO or its co-conspirators. *Id*. at 18.

Because Costco's argument relies solely on the unlikelihood that Acer, Gateway, or eMachines would sue AUO or a co-conspirator, without providing evidence of an ownership or control relationship between these entities, the Court grants summary judgment as to purchases made from Acer, Gateway, and eMachines.

### 4. Proview

Costco argues that there is no realistic possibility that Proview will sue its "significant

---

[6]That interest dropped to 36.8% after the conspiracy, until 2007, when JVC merged with Kenwood to form JVC Kenwood Holdings (which now owns 100% of JVC). *See* Merriman Decl., Exh. 13-15. As of March 31, 2012, Panasonic owned 19.21% of JVC Kenwood. *Id*., Exh. 1 at 22.

[7]Gateway Inc. is a wholly owned subsidiary of Acer Inc., and Gateway Inc. acquired eMachines in 2004. Opposition at 16.

8

shareholder, Tatung Company, or Tatung's subsidiary (and conspirator) Chunghwa Picture Tubes, Ltd." Opposition at 18. Costco points to evidence that in 2007, Tatung became the second largest shareholder of Proview and further exerted control through its appointment of certain Proview board members. *Id*. The evidence, however, falls short of establishing that Tatung or CPT owned or controlled Proview for purposes of standing. *See* Merriman Decl. Exh. 29 (Tatung owns a 16.22 percent share of Proview, and it appointed three of the eight Proview board members). Accordingly, the Court grants summary judgment as to purchases made from Proview.

### 5. Sylvania

Costco alleges that Sylvania's parent company, Funai, is "interlocked" with at least three conspirators and that these "critical long-term relationships" eliminate any realistic possibility that Funai/Sylvania will bring antitrust claims against the conspirators. Costco's argument is not based on ownership, but rather on a control relationship between Funai/Sylvania and a conspirator. Evidence of these "critical long-term relationships" includes Funai's partial ownership of Chimei Innolux Corp., it's loan to Chimei, and its sourcing of 90 percent of its panels from Chimei. *See* Merriman Decl., Exh. 36. This evidence, however, falls short of establishing the type of "power or authority to guide or manage" required to come within the ownership/control exception. *ATM Fee*, 686 F.3d at 757. Therefore, the Court grants summary judgment as to purchases made from Sylvania.

### 6. Envision

Envision Peripherals, Inc. will not pursue claims, Costco alleges, because its parent company is "subject to the control, albeit indirect, by the conspirators." Opposition at 19-20. Costco alleges that Envision is owned "in large part" by Top Victory Investments Limited ("TPV"), and one of TPV's largest shareholders is Royal Phillips, an alleged conspirator. *Id*. TPV is also partially owned by Chimei and has joint ventures with HannStar, AUO, and Chunghwa.

These relationships are too attenuated to fall under the ownership/control exception. *See* Merriman Decl., Exh 39 (TPV owns 24 percent of Envision), Exh. 41 (Royal Phillips owns 15.8 percent of TPV plus a convertible bond that could increase that percentage to 28 percent if converted), Exh. 43

9

(Chimei owns 7.68 percent of TPV), Exh. 43, 44 (TPV's joint ventures). Accordingly, Court grants summary judgment as to purchases made from Envision.

**7.    Vizio**

Costco does not allege that Vizio is owned or controlled by a conspirator; rather, Costco alleges that Vizio, Inc. is owned or controlled by companies that are "affiliated with conspirators." Opposition at 21. The standard required to demonstrate an ownership/control relationship does not encompass this expanded relationship. On this basis alone, the Court grants summary judgment as to purchases made from Vizio.[8]

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Defendants' joint motion for partial summary judgment as to Costco's indirect purchases from Acer, eMachines, Envision, Gateway, Proview, Sylvania, and Visio, and DENIES the motion as to purchases from Panasonic and JVC. Master Docket No. 5979.

**IT IS SO ORDERED.**

Dated: December 26, 2012

SUSAN ILLSTON
United States District Judge

---

[8] The Court finds it unnecessary to reach defendants' argument concerning Costco's claims based on purchases from vendors who "appear to be members of the Direct Purchaser Plaintiff class."