**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL. No. 1827 |
| _____/ | Case No. C 12-3802 SI |
| This Order Relates to: | **ORDER GRANTING IN PART DEFENDANTS' JOINT MOTION TO DISMISS PROVIEW'S SECOND AMENDED COMPLAINT** |
| *Proview Technology Inc., et al. v. AU Optronics Corp., et. al.,* C 12-3802 SI | |
| _____/ | |

Currently before the Court is defendants' joint motion to dismiss Proview's Second Amended Complaint. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters suitable for disposition without oral argument and therefore VACATES the hearings currently scheduled for March 22, 2013. Having considered the moving papers and the arguments of the parties, and for good cause appearing, the Court hereby GRANTS in part and DENIES in part Defendants' motion. Docket No. 7607.

**BACKGROUND**

Plaintiffs include four entities: Proview Technology Inc. ("PTI"), a California corporation; and three of its affiliated Original Equipment Manufacturers ("OEMs") in Taiwan and China, Proview Technology Co., Ltd., Proview Group Limited, and Proview Optronics Co., Ltd. (collectively, "Proview OEMs"). PTI sells TFT-LCD products such as computer monitors and televisions to retailers in the United States. PTI receives the products from its affiliated OEMS through a process by which PTI instructs the Proview OEMs to purchase LCD Panels for delivery in Asia and manufacture into LCD products, which PTI purchases and imports into the United States. Second Amended Complaint ("SAC"), ¶¶ 14-15, 132-33. Plaintiffs filed this action on July 20, 2012, seeking to recover damages for

a "a long-running conspiracy by manufacturers of liquid crystal display panels ("LCD Panels")." Complaint at ¶1. On October 17, 2012, Plaintiffs amended the complaint as of right, and on January 14, 2013, they further amended the complaint after seeking and receiving Defendants' consent. This Second Amended Complaint alleges that during the conspiracy period (January 1, 1996-December 11, 2006), plaintiffs directly and indirectly purchased LCD products from defendants and their co-conspirators. SAC, ¶ 2. As a result of defendants' and their co-conspirators' conspiracy, the complaint alleges, plaintiffs paid artificially-inflated prices for LCD panels. *Id.* Plaintiffs seek relief under the Sherman Act, the California Cartwright Act and Unfair Competition Laws, and an unjust enrichment theory. *Id.* at 160-78. Defendants move to dismiss Plaintiffs' claims based on a number of different theories, as detailed below.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

1  the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal

2  quotation marks omitted).

3

4                                                    **DISCUSSION**

5          Defendants raise numerous challenges to Plaintiffs' SAC. In their Opposition, Plaintiffs do not

6  oppose dismissal of certain claims alleged in the SAC, and thus, only four issues raised in the motion

7  remain to be decided.[1] First, Defendants argue that PTI, as an indirect purchaser, lacks standing to bring

8  claims under the Sherman Act. Second, Defendants assert that the Proview OEMs, as foreign

9  companies, are barred from bringing Sherman Act claims by the Foreign Trade Antitrust Improvements

10  Act ("FTAIA"). Third, Defendants argue that PTI's Cartwright Act claim does not comport with due

11  process because no purchases were made within California. Lastly, Defendants argue that Plaintiffs'

12  state claims are untimely, and their tolling theories do not cure the untimeliness.

13

14  **1.      Standing for PTI's Sherman Act claim**

15          Defendants argue that PTI lacks standing to pursue its Sherman Act claim because it indirectly

16  purchased LCD products from the Proview OEMs and is thus barred by the "direct purchaser" rule in

17  *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Defendants allege that PTI cannot invoke the

18  ownership/control exception to the *Illinois Brick* bar against standing for indirect purchasers, because

19  it does not sufficiently allege "control" of the PTI OEMs by PTI. Defendants also allege that even if

20  PTI were a direct purchaser, it never opted out of the DPP Class and therefore its claims have been

21  extinguished by that action. Plaintiffs argue that PTI exercises sufficient control over the Proview

22  OEMs to qualify for the ownership/control exception, and that Plaintiffs have sufficiently alleged this

23  control in the SAC. *See* SAC, ¶¶ 14-15, 118, 132.

24          The ownership and control exception to the *Illinois Brick* bar against standing for indirect

25  purchasers encompasses relationships involving "such functional economic or other unity between the

26  direct purchaser and either the defendant or the indirect purchaser, that there effectively has been only

27  _____

28          [1]Plaintiffs do not oppose dismissal of the Proview OEMs' claims under the Cartwright Act and
        the UCL and Plaintiffs' claims for unjust enrichment. *See* Opposition at 2, n.1.

United States District Court
For the Northern District of California

1   one sale." *Sun Microsystems, Inc. v. Hynix Semiconductor Inc*., *et al*, 608 F.Supp.2d 1166, 1180 (N.D.

2   Cal. 2009); *see, e.g., Jewish Hosp. Ass'n v. Stewart Mech. Enters.,* 628 F.2d 971, 975 (6th Cir.1980);

3   *Royal Printing Co. v. Kimberly-Clark Corp*., 621 F.2d 323, 326-27 (9th Cir.1980); *In re Mercedes-Benz*

4   *Anti-Trust Litig*., 157 F.Supp.2d 355, 355 (D.N.J.2001) ("[T]he rationale of *Illinois Brick's* bar to

5   indirect purchaser suits does not apply where the supposed intermediary is controlled by one or the other

6   of the parties").  The Ninth Circuit recently addressed the ownership and control exception in the context

7   of the relationship between direct purchasers and defendants/co-conspirators.  *In Re ATM Fee Antitrust*

8   *Litigation*, 686 F.3d 741, 756-58 (9th Cir. 2012).  The Court explained that "control" means "to exercise

9   restraint or direction over; dominate, regulate, or command," *United States v. Bennett*, 621 F.2d 1131,

10  1139 n.2 (9th Cir. 2010) (quoting Webster's College Dictionary 297 (Random House 1991)), or to have

11  "the power or authority to guide or manage," *id.* (quoting Webster's New Collegiate Dictionary 285 (9th

12  ed. 1983)).  *ATM Fee*, 686 F.3d at 757.  The Ninth Circuit further described the "power or authority to

13  guide or manage" that is required to demonstrate "the type of control necessary to meet the exception

14  to *Illinois Brick*." *Id*. at 758.  Paradigmatic examples of "situations where an ownership or control

15  relationship between an indirect purchaser and a direct purchaser" may exist include parent-subsidiary

16  relationships or one company's stock ownership of another.  *Jewish Hosp. Ass'n*, 628 F.2d at 975.

17          The Court finds that Plaintiffs' SAC fails to adequately allege that its claims fall within the

18  control exception to *Illinois Brick*.  Although Plaintiffs allege – conclusorily – that the Proview OEMs

19  act as agents for PTI and that PTI has "control of" the Proview OEMs, the SAC fails to allege sufficient

20  facts to support or explain the type of control exercised by PTI or to demonstrate that it is adequate to

21  meet the exception.  That PTI "instructed its affiliated OEMs . . . to purchase LCD panels" does not, by

22  itself, demonstrate that PTI controlled the Proview OEMs.  Accordingly, the Court GRANTS

23  Defendants' motion to dismiss PTI's Sherman Act claims and gives Plaintiffs leave to amend their

24  complaint.[2]

25

26

27          [2]In light of this finding, the Court need not reach the issue of whether PTI, as a "direct
    purchaser" may assert a Sherman Act claim even though it did not opt out of the Direct Purchaser Class
28  ("DPP") Action.

4

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

**2.        Effect of FTAIA on the Proview OEM's Sherman Act Claims**

Defendants argue that as foreign entities with no nexus to the U.S., the Proview OEMs made their direct purchases entirely in foreign commerce and are therefore barred by the FTAIA from bringing Sherman Act claims.  Defendants argue that the Proview OEMs have failed to adequately plead any exception to FTAIA's bar on foreign purchases, and that an amendment will not cure their claims in light of the fact that they did not opt out of the DPP Action.  The Proview OEMs argue that the FTAIA does not bar its Sherman Act claims for "U.S.-related commerce not already included in PTI's claims" because the alleged conspiracy "deliberately targeted the U.S. Market and involved both domestic and international conduct" and because the purchases were "based on contract terms and pricing negotiated by PTI specifically *for U.S. bound LCD products*."  Opposition at 6.  The Proview Plaintiffs largely rely on this Court's orders in the Dell and Motorola cases.  The Proview Plaintiffs argue that their claims are based on panel purchases which are "nearly identical" to the purchases by Dell and Motorola's foreign affiliates, and that the Court should find here, as it did there, that the SAC adequately pleads an exception to the FTAIA.

The Court concludes that the Proview SAC does not allege enough facts to adequately plead an exception to the FTAIA.  In both the Dell and Motorola cases, plaintiffs had alleged that a global price for all TFT-LCD products purchased from defendants had been negotiated in the U.S. at Dell's and at Motorola's U.S. offices.  The Providew Plaintiffs' SAC does not allege similar facts.  At most, the SAC alleges that "[t]he prices Plaintiffs used in purchase orders placed with Defendants were based on price and quantity determinations based on U.S. Negotiations." SAC, ¶¶ 136.  The Court does not find this clear enough or specific enough to allege a domestic effect to qualify for an exception to the FTAIA.  The lack of specificity is exacerbated by the SAC's allegations that Defendants met with the Proview OEMs' representatives in Asia to negotiate contract terms and pricing.  *Id*. at ¶ 134.  Further, unlike the Dell and Motorola complaints, the SAC does not identify whether any "price and quantity determinations based on U.S. Negotiations" were binding on the Proview OEMs.  Accordingly, the Court concludes that Plaintiffs have not alleged sufficient facts to bring  the Proview OEMs' Sherman Act claims within the domestic injury exception to the FTAIA and GRANTS Defendants' motion to dismiss the Proview OEMs' Sherman Act claims on this ground, with leave to amend the complaint.

1  **3.      Plaintiffs' Cartwright Act Claims**

2          Defendants seek to dismiss Plaintiffs' state law claims on the grounds that they are time-barred

3  and are barred by due process concerns.  Because Plaintiffs concede that the Proview OEMs' state law

4  claims are not tolled by class action tolling, they are untimely; only PTI's state law claims remain to be

5  decided.

6

7          **a.      Tolling of PTI's Cartwright Act and UCL claims**

8          Defendants argue that PTI's Cartwright Act and UCL claims are untimely.  Plaintiffs filed suit

9  on July 20, 2012, some 5-1/2 years after the DOJ's December 11, 2006 announcement of its

10 investigation into the conspiracy.  Because these claims have four-year statutes of limitations,

11 Defendants contend that Plaintiffs' claims are untimely unless tolled; and they challenge the factual

12 adequacy of the allegations supporting the various tolling theories alleged in the SAC.  Plaintiffs

13 conceded that certain claims were untimely and that certain tolling theories were inapplicable,[3] but argue

14 that PTI's state law claims were tolled to the extent identified in this Court's Order involving

15 ViewSonic.  *See* Docket No. 7255.  In that Order, the Court found that ViewSonic, a reseller, could rely

16 on the filings of *Hee v. LG Philips LCD Co. Ltd.* and *Selfridge v. LG Philips Co., Ltd.,* to toll its

17 California claims, but the tolling was limited to the defendants, products, and conspiracy periods

18 identified in the *Hee*, *Selfridge*, and IPP-CAC actions.  PTI contends that application of the same tolling

19 principles to its complaint renders its claims timely.

20         The Court concludes that like *ViewSonic*, PTI may rely on *Hee* and *Selfridge* to toll its state

21 claims, but the tolling will similarly be limited to the defendants, products, and conspiracy periods

22 identified in *Hee*, *Selfridge*, and the IPP-CAC.  Accordingly, the Court DENIES Defendants' motion

23 to dismiss PTI's state law claims on the grounds that they are barred by the statute of limitations.

24         As discussed below however, the claims are dismissed without prejudice based on due process

25 concerns

26

27         [3]Plaintiffs concede that class action tolling does not toll the Proview OEMs' state law claims and
   that 15 U.S.C. § 16(i) does not toll state law claims.  Accordingly, defendants' motion to dismiss these
28 claims is GRANTED.

6

*United States District Court*
For the Northern District of California

**b.    Due Process**

Defendants argue that PTI has failed to make sufficiently individualized allegations of each Defendants' alleged conspiratorial activity, in light of the Ninth Circuit's recent decision in *AT&T Mobility LLC v. AU Optronics Corp.*, and its order directing that due process must be analyzed on an individualized, defendant-by-defendant basis. No. 11-16188, 2013 WL 540859 (9th Cir. Feb. 14, 2013). The Court agrees.

In *AT&T Mobility*, the Ninth Circuit held, "the Cartwright Act can be lawfully applied without violating a defendant's due process rights when more than a *de minimis* amount of that defendant's alleged conspiratorial activity leading to the sale of price-fixed goods to plaintiffs took place in California." *AT&T Mobility LLC*, at *6.  The Court remanded to this Court to make an individual assessment "with respect to *each* Defendant as to whether Plaintiffs have alleged sufficient conspiratorial conduct within California, that is not 'slight and casual,' such that the application of California law to *that* Defendant is 'neither arbitrary nor fundamentally unfair.'" *Id.* at *7 (emphasis added).  Based on the Ninth Circuit's holding, the Court concludes that Plaintiffs must adequately allege conspiratorial conduct of each Defendant in California.  Accordingly, because the SAC fails to do this, the Court GRANTS Defendants' motion to dismiss PTI's Cartwright Act claims on due process grounds, and the Court gives Plaintiffs leave to amend the complaint.

**c.    Plaintiff's Unjust Enrichment Claims**

Defendants challenged Plaintiff's unjust enrichment claims for a number of reasons, including its timeliness.  Plaintiffs concede that any claim for unjust enrichment is time-barred. *See* Opposition at 2, n.1. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' unjust enrichment claim.

///

**United States District Court**
For the Northern District of California

7

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

     For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part Defendants' joint motion. **Any amended complaint must be filed by April 5, 2013.** Docket No. 7607.

    **IT IS SO ORDERED.**

Dated: March 20, 2013

SUSAN ILLSTON
United States District Judge

8