COOLEY LLP
SCOTT S. BALBER (*pro hac vice* application forthcoming)
sbalber@cooley.com
JONATHAN CROSS (*pro hac vice* application forthcoming)
jcross@cooley.com
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

COOLEY LLP
JOSEPH B. WOODRING (272940)
jwoodring@cooley.com
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

Attorneys for Non-Party Creditor
LFG NATIONAL CAPITAL, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. 07-1827 SI<br><br>MDL NO. 1827 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | **NON-PARTY CREDITOR LFG NATIONAL CAPITAL, LLC'S NOTICE OF MOTION AND MOTION TO DIRECT FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 26, 2013<br>Time: 9:00 a.m.<br>Judge: Hon. Susan Illston<br>Ctrm: 10, 19th Floor |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 26, 2013 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10, 19th Floor of the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, the Honorable Susan Illston presiding, Non-Party Creditor LFG National Capital, LLC ("LFG") will and hereby does move this Court for an Order directing that the Settlement Fund Administrator pay to LFG all sums representing fees and costs of the Alioto Law Firm and/or Joseph M. Alioto (collectively, "the Debtors") in the above captioned matter, up to the amount presently due and owing under the Term Loan and Security Agreement between LFG and the Alioto Law Firm.

Non-Party Creditor LFG respectfully moves for this Order Directing Fees and Costs on the grounds that (1) LFG is a secured creditor of the Alioto Law Firm under a binding and enforceable Loan Agreement, to which Joseph M. Alioto executed a Guaranty, (2) the Debtors are in default, having breached the terms of the Loan Agreement and Guaranty, (3) LFG holds a perfected lien over the fees and costs at issue, which it may enforce under California Commercial Code Section 9-607.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and Declarations of Alan Zimmerman and Frank Sabella (and the attached Exhibits), all records and papers on file in this action, and any evidence or oral argument offered at any hearing on this Motion.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

Dated: March 22, 2013 COOLEY LLP

*/s/ Joseph B. Woodring*
Joseph B. Woodring (272940)

*/s/ Scott S. Balber*
Scott S. Balber (*pro hac vice* application forthcoming)

Attorneys for Non-Party Creditor
LFG NATIONAL CAPITAL, LLC

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the General Order No. 45, section 45 X(B), for The United States District Court for the Northern District of California, I, Joseph B. Woodring, hereby attest that the concurrence to the filing of the foregoing document has been obtained from Scott S. Balber who has provided the conformed signature above.

Dated: March 22, 2013

COOLEY, LLP

BY: */s/ Joseph B. Woodring*
     JOSEPH B. WOODRING

Attorneys For Non-Party Creditor LFG NATIONAL CAPITAL, LLC

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

# Table of Contents

**Page**

I. INTRODUCTION AND STATEMENT OF ISSUES ....................................................... 4

II. STATEMENT OF FACTS ................................................................................................ 5

    A. The Debtors Executed The Loan Agreement and Guaranty and Breached Their Terms .................................................................................................................. 5

    B. The Debtors Breached the Loan Agreement and Guarantees ............................... 6

    C. Interest Under the Loan Agreement ........................................................................ 6

III. ARGUMENT ..................................................................................................................... 7

    A. LFG Holds a Perfected Lien Over the Fees and Costs at Issue ............................. 8

    B. LFG is a Secured Creditor of the Firm Under an Undisputed Loan Agreement that the Debtors Breached ...................................................................... 8

        1. A Contract Existed Between LFG and the Debtors ................................... 8

        2. LFG Performed its Obligations Under the Loan Agreement ..................... 8

        3. The Debtors Breached the Loan Agreement .............................................. 9

        4. LFG Has Been Damaged by the Debtors' Breaches of the Loan Agreement ...................................................................................................... 9

    C. Alioto's Efforts to Escape His Liabilities Under the Loan Agreement Fail ......... 10

    D. LFG Is Entitled to Direct Payment From the Settlement Fund Under California Commercial Code Section 9-607 ........................................................... 11

IV. CONCLUSION ................................................................................................................ 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Gray1 CPB, LLC v. Kolokotronis*,
    202 Cal. App. 4th 480 (Cal. App. 2011) .................................................................................. 10

*Torrey Pines Bank v. Sup. Ct.*,
    216 Cal. App. 813 (Cal. App. 1989) ........................................................................................ 10

**STATUTES**

California Commercial Code
    § 9310 ......................................................................................................................................... 8
    § 9301(1) .................................................................................................................................... 8
    § 9312(a) .................................................................................................................................... 8
    § 9514 ......................................................................................................................................... 8
    § 9601(a) .................................................................................................................................. 12

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES**

Movant LFG National Capital, LLC ("LFG"), by and through its attorneys Cooley LLP, respectfully submits this Motion to Direct Fees and Costs in anticipation of this Court's Order approving a plan of allocation for the award of costs and attorneys' fees to counsel for the Indirect Purchaser Plaintiffs in the above captioned matter (the "Litigation").

## I. INTRODUCTION AND STATEMENT OF ISSUES

Joseph M. Alioto ("Alioto") and the Alioto Law Firm (the "Firm") (collectively, "the Debtors") borrowed in excess of $18.3 million from LFG since 2004 and have not paid the money that is owed. The entire balance under the Firm's loan agreement with LFG – over $28.2 million with accrued interest and fees – has been due and payable for more than two years, yet the Debtors have not made any payment to LFG since June of 2010, thirty-one months ago. The essential elements that require the Debtors to fulfill their obligation to LFG – the existence of a valid Loan Agreement, the amount of the outstanding loan balance, and the Debtors' failure to pay such balance – are readily ascertainable and not subject to serious dispute.

LFG is a secured creditor of the Debtors pursuant to a Term Loan and Security Agreement dated March 1, 2005, as amended (the "Loan Agreement"). LFG holds a perfected first lien security interest in all assets of the Firm, including any fees, costs or any other amounts that are or will become due to Alioto and/or the Firm on account of this case. LFG's security interest was perfected on or about January 12, 2004 (continuation filed on December 31, 2008). The Firm remains in default under the Loan Agreement and all obligations of the Firm under the Loan Agreement are now due and payable to LFG in full in the amount of approximately $28.2 million. The Firm has been notified of numerous defaults under the Loan Agreement, most recently by letter dated February 16, 2013. The defaults remain uncured.

As a consequence of the Firm's continuing default under the Loan Agreement, and under the terms of the Loan Agreement, any and all fees, costs or other amounts that are or will become due to the Firm on account of the Litigation have been assigned to and are payable to LFG until the total indebtedness owing to LFG has been paid. Accordingly, LFG respectfully moves for an Order directing that the Settlement Fund Administrator pay to LFG all sums representing fees and

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

costs of the Alioto Law Firm and/or Joseph M. Alioto, up to the $28.2 million amount presently due and owing under the Loan Agreement.

## II. STATEMENT OF FACTS

### A. The Debtors Executed The Loan Agreement and Guaranty and Breached Their Terms

On March 1, 2005 the Loan Agreement[1] was executed between the Firm and LawFinance Group, Inc. ("LawFinance"), then an affiliate of LFG.[2] (Zimmerman Decl., ¶ 3; *see also id.*, Ex. A.) The Loan Agreement provided an initial advance amount of $7,344,220.52 to (i) pay down the unpaid principal, accrued interest, and any fees and chargeable expenses from the prior loan agreement, (ii) pay any interest and fees and chargeable expenses due and payable under the Loan Agreement, and (iii) "fund the working capital needs of [the Firm]." (*Id.*, Ex. A at 4 & 218.) The Loan Agreement also provided for subsequent advances, subject to the terms of the Loan Agreement. (*Id.*, Ex. A at 4.)

The parties to the Loan Agreement entered into a series of amendments thereto. (*See id.*, Ex. A at 30-217.) Alioto acknowledged his loan obligations each time he sought extensions of time to pay and additional funding from LFG, as reflected in the loan amendments. (*Id.*, Ex. A at 30, 81, 91, 95, 175, & 200.) Under Amendment No. 5 to the Loan Agreement, dated May 29, 2009, Alioto and the Firm acknowledged a then-current balance due of $24,308,446.17.[3] (*Id.*, Ex. A at 175.)

The Loan Agreement matured on December 31, 2010 according to the terms of Amendment No. 6 thereto. (*Id.*, Ex. A at 196.) As provided by the Loan Agreement, the entire balance thereunder has been immediately due and payable since that date (even without regard to

---

[1] The Loan Agreement replaced, and provided funds to refinance the amounts due under, an earlier, similar loan agreement between the Firm and LawFinance dated January 14, 2004. (Declaration of Alan L. Zimmerman ("Zimmerman Decl."), ¶ 4; *see also id.*, Ex. B.)

[2] On March 1, 2005, LawFinance assigned and sold to LFG all of LawFinance's rights and interests under the Loan Agreement. (Zimmerman Decl., ¶ 5; *see also id.*, Exs. C & D.)

[3] Alioto had the opportunity, pursuant to paragraph 3 of Amendment No. 5, to review and contest this sum within 21 days of the effective date of the Amendment. (Zimmerman Decl., Ex. A at 175.) He did not do so.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

1    the Debtors' defaults under the Loan Agreement, discussed *infra*). (*Id.*; *see also id.*, Ex. A at 4.)

2    Also on March 1, 2005, a Guaranty was executed between Alioto and LawFinance,

3    whereby Alioto personally guaranteed payment of all present and future obligations of the Firm

4    under the Loan Agreement (the "Guaranty"). (*Id.*, Ex. F.)

5    As of March 15, 2013, the Debtors owed LFG $28,264,324.93. (Declaration of Frank

6    Sabella ("Sabella Decl."), ¶ 18.) This sum is secured by a lien on the fees and costs which the

7    Debtors expect to receive in this case. (Zimmerman Decl., Ex. E.)

8    **B.    The Debtors Breached the Loan Agreement and Guarantees**

9    The Debtors have been in continuous default of their obligations under the Loan

10   Agreement, failing to remit required interest and principal payments on at least 13 occasions. (*Id.*,

11   ¶ 11; *id.*, Ex. H.)

12   Each of these payment defaults constitutes an Event of Default under Section 11.1 of the

13   Loan Agreement.[4] (*Id.*, Ex. A at 12.) Pursuant to Section 12.1.2 of the Loan Agreement, each

14   such Event of Default authorized LFG to declare all of the Debtors' obligations under the Loan

15   Agreement immediately due and payable. (*Id.*, Ex. A at 13.) Accordingly, on June 12, 2012, LFG

16   served written notice upon the Debtors that all such obligations were immediately due and

17   payable. (*Id.*, Ex. H at 6.) LFG has served similar written default notices on a monthly basis

18   since June 12, 2012. (*Id.*, Ex. H.)

19   **C.    Interest Under the Loan Agreement**

20   Under the Loan Agreement, upon the occurrence of any Event of Default, interest shall

21   accrue at a Default Rate and LFG may declare all obligations under the Loan Agreement to be

22   immediately due and payable in full. (*Id.*, Ex. A at 13.) Despite this, LFG has not charged the

23   Debtors the Default Rate on the outstanding balance and, instead, has accrued interest at the rate

---

[4] On October 13, 2010, LFG sent the Debtors the first notice that an Event of Default had occurred. (Zimmerman Decl., at Ex. H at 1.) The notice informed Alioto that, during an audit at his office in October 2010, "it was discovered that $150,000.00 in attorney's fee retainer payment was received by your Firm . . . [and] not paid or deposited in to the Alioto Revenue Trust Account" and that "[i]t appears that these funds were not used to pay down the loan, as required." (*Id.*) Under Section 12.1.2 of the Loan Agreement, LFG then had the right to "[d]eclare all Obligations to be immediately due and payable . . . ." (*Id.*, Ex. A at 13.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

of 0.81% per annum. (Sabella Decl., ¶ 25.) Since December 31, 2010, the Maturity Date of the Loan Agreement, all of the Debtors' obligations under the Loan Agreement have been immediately due and payable in full. (Zimmerman Decl., Ex. A at 13.)

By letter dated June 12, 2012, LFG provided Alioto with written notice that all obligations under the Loan Agreement were due and payable immediately and that LFG was thereby exercising its rights and demanding immediate payment under the Guaranty. (*Id*., Ex. H at 6.)

However, as of March 15, 2013, $28,264,324.93 (exclusive of attorneys' fees) is currently outstanding under the Loan Agreement. (Sabella Decl., ¶ 18.)

Alioto has not paid any monies to LFG pursuant to the terms of the Guaranty. (Zimmerman Decl., ¶ 9.)

## III. ARGUMENT

LFG holds a perfected lien over the costs and fees that will be awarded to Alioto and the Firm in the instant litigation. There is no dispute that LFG is a secured creditor of the Firm, or that the Loan Agreement between the Debtors and LFG is valid and enforceable. LFG performed its obligations under the Loan Agreement, advancing over $18,319,424.16[5] in principal to the Firm over the course of the Agreement. (Sabella Decl., ¶ 19.) The Debtors are in breach of the Loan Agreement through numerous Events of Default. (Zimmerman Decl., Ex. H.) All obligations of the Firm under the Loan Agreement are now due and payable to LFG in full in the amount of $28,264,324.93. (Sabella Decl., ¶ 18.)

Alioto's protestations to the contrary center on a letter from LFG's loan servicer, which Alioto continues to willfully misconstrue, requesting that Alioto confirm the balance, as of December 31, 2011, for one of the three accounts comprising the total loan balance. (*See id*., ¶¶ 8-13.) As LFG has explained to Alioto repeatedly, the 2011 audit confirmation request pertained only to the account reflecting the "capitalized" portion of the loan balance. (*See id*.) As Alioto well knows, under the terms of the Loan Agreement, some amounts due – such as interest

---

[5] This amount does not include life insurance and legal fees that LFG advanced pursuant to the Loan Agreement. (Sabella Decl., ¶ 19.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

accruing after the third Amendment to the Loan Agreement – are not capitalized, meaning that interest is not charged on these sums. (*See id*., ¶ 9.) Because LFG's auditors opted to audit only the capitalized account, the audit confirmation sent to Alioto pertained only to that account, not to the entire loan balance. (*See id*., ¶¶ 8-13.)

In all events, Alioto's claims on this score are meritless and are readily contradicted by the final audit filed herewith. (*See id*., Ex. A.) LFG therefore respectfully requests that the Court include in its Order on Attorneys' Fees in the Litigation a direction that payment of $28,264,324.93 from any fees and costs to be paid to Alioto be paid directly to LFG, as permitted under Section 9-607 of the California Commercial Code.[6]

### A. LFG Holds a Perfected Lien Over the Fees and Costs at Issue

Under California law, the perfection of security interests is governed by the law of the jurisdiction where the debtor is located. Cal. Com. Code § 9301(1). Here, the debtor is located in California, and California law accordingly governs. Under California Commercial Code Sections 9310(a) and 9312(a), an interest is perfected upon filing of a financing statement. The relevant financing statement was filed in California on January 12, 2004 (continuation filed on December 31, 2008). (Zimmerman Decl., Ex. E.)[7] Therefore, LFG is a secured creditor with a perfected claim that dates back to January 12, 2004.

### B. LFG is a Secured Creditor of the Firm Under an Undisputed Loan Agreement that the Debtors Breached

#### 1. A Contract Existed Between LFG and the Debtors

It is undisputed that on March 1, 2005, a valid Loan Agreement was executed between the Firm and LawFinance, an affiliate of LFG. Through an Assignment Certificate, LawFinance assigned and sold to LFG all of LawFinance's rights and interests under the Loan Agreement.

---

[6] LFG reserves all rights in connection with interest, fees and costs accruing under the Loan Agreement after March 15, 2013.
[7] Although the financing statement was filed by Law Finance Group, Inc. on January 12, 2004 (continuation filed on December 31, 2008), LFG is an assignee of Law Finance Group, Inc., *see* Zimmerman Decl., Ex. C, and is therefore deemed to have perfected when Law Finance Group, Inc. perfected its security interest. Cal. Com. Code §9-310(c) and 9514.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

8.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

### 2. LFG Performed its Obligations Under the Loan Agreement

Pursuant to Section 2.1 of the Loan Agreement, LFG's relevant responsibilities were limited to advancing the sums borrowed by the Debtors. (Zimmerman Decl., Ex. A at 4.) LFG fulfilled those responsibilities, lending $18,319,424.16[8] to the Debtors. (Sabella Decl., ¶ 19.) Alioto has not contended that LFG has failed to meet its contractual obligations under the Loan Agreement.

### 3. The Debtors Breached the Loan Agreement

As discussed *supra*, it is beyond dispute that the entire outstanding balance under the Loan Agreement has been due for more than two years and that, in breach of the Loan Agreement, the Debtors have not paid such sums. The Debtors are accordingly liable for the balance due.[9] Despite the passing of the December 31, 2010 Maturity Date of the loan, rendering all monies owed under the loan due and payable, the Debtors still owe at least $28,264,324.93. (Sabella Decl., ¶ 18.) They have made no payments since June 24, 2010 and, indeed, have made no payments whatsoever since the loan matured. (*Id*., ¶¶ 20-21.) Nothing more need be shown to establish that Alioto and the Firm have breached the loan agreement and that LFG is entitled to immediate and full payment of the balance thereunder.[10]

### 4. LFG Has Been Damaged by the Debtors' Breaches of the Loan Agreement

As a result of the breaches of the Loan Agreement, LFG has been damaged, and is owed $28,264,324.93 under the Loan Agreement (exclusive of attorneys' fees) by the Debtors as of

---

[8] Exclusive of life insurance payments and legal fees. (Sabella Decl., ¶ 19.)

[9] Underlining the essentially indisputable nature of their liability, in Amendment No. 4 to the Loan Agreement, the Debtors entered into a Stipulation for Entry of Judgment in LFG's favor upon their default under the Loan Agreement. (Zimmerman Decl., Ex. G.) In so stipulating, the Debtors "waive[d] all rights to contest the entry of such judgment," and "waive[d] their rights to appeal or to seek review of the judgment . . . and waive[d] all rights to amend or modify the judgment or to seek a determination of rights or obligations thereunder." (*Id*., Ex. G at 3.) The Stipulation demonstrates that no further process is necessary to adjudicate Debtors' liability, and the Debtors have waived any challenges thereto.

[10] LFG reserves all rights in connection with Alioto's and the Firm's myriad other breaches of the Loan Agreement, such as their failure to provide required financial reporting to LFG and to deposit fees received by them into an agreed escrow account. It is not necessary to address these defaults in this Motion, because the maturity of the loan and its non-payment are clear.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

March 15, 2013, with interest accruing at 0.81% per annum.[11]

### C. Alioto's Efforts to Escape His Liabilities Under the Loan Agreement Fail

In his letter to the Court dated February 12, 2013, Alioto asks that the Court take no action on this matter because, among other reasons,[12] LFG purportedly transmitted a letter and an account statement for the year ending December 31, 2011 that showed conflicting amounts due. (Dkt. Nos. 7606 & 7606-1.) In making this claim, Alioto points to a letter from LFG dated February 23, 2012 that shows an "outstanding cost loan balance" of $23,175,220.20 through December 31, 2011, as calculated by the independent auditing firm of Crowe Horwath, LLP. (Dkt. No. 7606-1 at 3.) Alioto then cites an LFG loan summary, also through December 31, 2011, that sets forth an outstanding balance of $27,614,080.93. (*Id*. at 4.) Alioto concludes that, despite his continuing obligations under the Loan Agreement, he informed LFG that "no further payments would be made until an independent auditing firm confirmed the true and real amount owed." (Dkt. No. 7606 at 2.)[13]

Alioto misleadingly omits to inform the Court that LFG promptly alerted him that the lower balance constituted only one account – the Capitalized Balance Account - of three LFG

---

[11] The foregoing analysis applies with equal weight against Alioto, who signed a Guaranty to the Loan Agreement. (*See* Zimmerman Decl., Ex. F.) A lender is entitled to collect against a guarantor when: "(1) there is a valid guaranty; (2) the borrower defaults, thus triggering the guaranty; (3) the lender provides notice of default to the guarantor; and (4) the guarantor fails to perform under the guaranty." *See Torrey Pines Bank v. Sup. Ct.*, 216 Cal. App. 813, 819 (Cal. App. 1989); *Gray1 CPB, LLC v. Kolokotronis*, 202 Cal. App. 4th 480, 485-86 (Cal. App. 2011).

[12] Alioto also claimed that the Court should ignore LFG's rights under the UCC because (i) Mr. Balber was not admitted *pro hac vice* when he submitted a letter to the Court, (ii) LFG opted to alert the Court of this situation via letter rather than motion, (iii) Alioto's independent bookkeepers and CPAs discovered "other irregularities" regarding the Loan Agreement, and (iv) LFG purportedly threatened to make its claim public. (*See* Dkt. No. 7606.) Setting aside items (i) and (ii) – which are addressed by this Motion and Mr. Balber's concurrently filed *pro hac vice* application – Alioto proffers no details about alleged "irregularities," nor does he explain how they would absolve him of a debt topping $28 million. Alioto's assertion that LFG somehow "threatened" public action is also baseless and defies common sense; LFG is simply taking the steps necessary to enforce its rights under the UCC and the Loan Agreement.

[13] Notably, Alioto did not contest the validity of the Loan Agreement itself, the amounts that LFG advanced under the Agreement, that LFG has fulfilled its obligations under the Agreement, or that Alioto breached the Agreement. Instead, he concedes that he owed at least $23,175,220.20 as of December 31, 2011. As detailed above, however, this communication by LFG's CFO cannot absolve the Debtors of paying the full amount currently due and payable.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

loan accounts that comprise the LFG loan accounts for the Alioto Loan. (Sabella Decl., ¶¶ 9-13.) On February 23, 2012, LFG Servicing's CFO sent Alioto a letter that showed an outstanding amount, for the Capitalized Balance Account only, of $23,175,220.20 through December 31, 2011. (*Id*., ¶ 10.) The February 23, 2012 letter did not purport to provide a total balance due under the Alioto Loan Agreement; the balance stated was limited to one of the three internal LFG National accounts comprising the total loan balance. (*Id*., ¶ 11.) Shortly after this letter was sent, LFG endeavored to correct Alioto's misunderstanding of the February 23, 2012 correspondence by providing a clarifying letter to Alioto as well as a memorandum from LFG's CFO explaining the reasons for the apparent discrepancy and providing the correct information.[14] (*Id*., ¶ 12.) Despite these clarifications, Alioto maintains that he need not repay his debt.

To put this manufactured issue to rest, LFG commissioned an independent auditor to audit the amounts due under the Loan Agreement as of December 31, 2011. This audit – the results of which are filed herewith – makes clear that, as of December 31, 2011, Alioto owed the full amount communicated to him by LFG in the statement of his Loan account for the period ending December 31, 2011: $27,614,080.93. (*Id*., Ex. A at 3.) At the interest rate of 0.81% per annum, along with accrued fees and expenses such as life insurance premiums for which Alioto and the Firm are responsible under the Loan Agreement, the amount due and payable as of March 15, 2013 stands at $28,264,324.93. (Sabella Decl., ¶ 18.)

### D. LFG Is Entitled to Direct Payment From the Settlement Fund Under California Commercial Code Section 9-607

California Commercial Code Section 9-607 states, in relevant part, that a secured creditor may:

> (1) Notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party.
> […]
> (3) Enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the

---

[14] Indeed, LFG provided Alioto and his accountant with detailed documentation of the loan balance in May and June of 2012 and again in November of 2012; Alioto has not substantively responded to these materials. (Sabella Decl., ¶¶ 23-24; *id*. at Ex. E.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral.

Cal. Com. Code § 9607 (West).[15]

Section 9-607, in sum, provides that a secured creditor holding a lien over sums owed to a debtor may direct the person owing such sums to make payment to the secured creditor. Here, as a secured creditor under the Loan Agreement, LFG is entitled to exercise the rights of Alioto and the Firm with respect to the obligations to them of the Settlement Administrator in this Litigation. *See id*. Accordingly, at such time as an Order is issued by this Court in the Litigation entitling Alioto and the Firm to receive payment of fees and costs in the Litigation, LFG intends to assert its right under California Commercial Code Section 9-607 to request payment to LFG of an amount up to the then-current balance under the Loan Agreement. In order to avoid the necessity of the Settlement Administrator and/or co-counsel seeking guidance from this Court in response to LFG's Section 9-607 demand, LFG asks that this Court provide for payment to LFG, from the Firm's fee and costs award, of an amount equal to the outstanding balance under the loan.

### IV.   CONCLUSION

LFG respectfully requests that Court include in its Order on Attorneys' Fees a direction that payment of $28,264,324.93 from any fees and costs to be paid to Alioto be paid directly to LFG, as permitted by Section 9-607 of the Uniform Commercial Code. Pursuant to its rights under the Uniform Commercial Code, LFG respectfully requests that no monies be distributed to Alioto or the Firm in this case until the amounts owed to LFG under the Loan Agreement are paid in full.

---

[15] California Commercial Code Section 9601(a) further provides that a secured party may enforce its security interest "by any available judicial procedure."

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES

Dated: March 22, 2013	COOLEY LLP


	*/s/ Joseph B. Woodring*
	Joseph B. Woodring (272940)


	*/s/ Scott S. Balber*
	Scott S. Balber (*pro hac vice* application forthcoming)

	Attorneys for Non-Party Creditor
	LFG NATIONAL CAPITAL, LLC


**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to the General Order No. 45, section 45 X(B), for The United States District Court for the Northern District of California, I, Joseph B. Woodring, hereby attest that the concurrence to the filing of the foregoing document has been obtained from Scott S. Balber who has provided the conformed signature above.

Dated: March 22, 2013

	COOLEY, LLP

	BY: */s/ Joseph B. Woodring*
	         JOSEPH B. WOODRING

	Attorneys For Non-Party Creditor LFG NATIONAL CAPITAL, LLC

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

NO. 07-1827 SI
NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS & AUTHORITIES