United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL. No. 1827 |
| _____/ | Case No. C 10-4945 SI |
| This Order Relates to:<br><br>*Target Corp., et al., v. AU Optronics Corp., et. al.,* C 10-4945 SI | **ORDER GRANTING IN PART TARGET PLAINTIFFS' MOTION FOR RECONSIDERATION RE CARTWRIGHT ACT CLAIMS** |
| _____/ | |

Currently before the Court is Plaintiffs'[1] Motion for Reconsideration of the Court's Orders Dismissing Plaintiffs' Cartwright Act Claims. Pursuant to Civil Local Rule 7-1(b), the Court found these matters suitable for disposition without oral argument and therefore VACATED the hearings currently scheduled for May 2, 2013. Having considered the moving papers and the arguments of the parties, and for good cause appearing, the Court hereby GRANTS in part and DENIES in part Defendants' motion. Docket No. 7670.

**BACKGROUND**

Plaintiffs filed this antitrust action in 2010, seeking to "recover the damages [it] incurred as a result of a long-running conspiracy by manufacturers of liquid crystal display panels ('LCD Panels')." *See* SAC at ¶1. On September 7, 2011, this Court granted plaintiffs leave to file a Second Amended Complaint ("SAC"). The SAC alleges that "[d]efendants and their co-conspirators formed an

---

[1] Plaintiffs are Target Corp.; Sears, Roebuck & Co.; Kmart Corp.; Old Comp, Inc.; and RadioShack Corp.

international cartel illegally to restrict competition in the United States in the market for LCD Panels." *Id.* at ¶3. The SAC includes claims under the Sherman Act, 15 U.S.C. § 1, and claims under the antitrust and unfair competition laws of California and various other states. SAC at ¶¶231-68.

Defendants Samsung SDI and Sanyo Electronics moved to dismiss plaintiffs' Cartwright Act claims based on the grounds, among others, that plaintiffs' purchases were made outside of California. *See* Docket No. 4162. Additionally, defendants jointly moved for summary judgment on plaintiffs' Cartwright Act claims in two separate motions. *See* Docket Nos. 6111 and 6083. The first motion applied to Target, Sears, and Kmart, and defendants argued that application of California law would violate defendants' due process rights. The second motion applied to RadioShack and CompUSA, and defendants made the same due process arguments, but also raised a separate basis for summary judgment on choice of law grounds.

In its orders addressing the above motions, the Court dismissed plaintiffs' California Cartwright Act claims on due process grounds because plaintiffs had failed to establish that purchases of price-fixed goods occurred in California. *See* Docket Nos. 4703, 6570, and 6802. In these orders, the Court relied on earlier orders upholding the same due process rights with respect to other plaintiffs, such as AT&T. *See* Docket No. 1823.

On February 14, 2013, the Ninth Circuit Court of Appeals issued an opinion in *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013), in which it reversed this Court's earlier ruling dismissing AT&T's California law claims. The Ninth Circuit held that "the Cartwright Act can be lawfully applied without violating a defendant's due process rights when more than a *de minimis* amount of that defendant's alleged conspiratorial activity leading to the sale of price-fixed goods to plaintiffs took place in California." *AT&T Mobility LLC*, at *6. The Ninth Circuit remanded to this Court to make an individual determination consistent with the Circuit's opinion "with respect to *each* defendant as to whether plaintiffs have alleged sufficient conspiratorial conduct within California, that is not 'slight and casual,' such that the application of California law to *that* defendant is 'neither arbitrary nor fundamentally unfair.'" *Id*. at *7 (emphasis added).

Based on the Ninth Circuit's decision, plaintiffs seek to reinstate the California Cartwright Act claims previously dismissed on due process grounds. At the March 15, 2013 case management

2

conference, the Court granted plaintiffs leave to file a motion for reconsideration. Plaintiffs filed this motion shortly thereafter.

## LEGAL STANDARD

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir.1993). Reconsideration should be used conservatively, because it is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir.2003) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30 [4] (3d ed.2000)). A motion for reconsideration may not be used to present arguments that were presented initially or "reasonably could have been raised" during the initial motion. *Id.* The district court has discretion to deny a motion for reconsideration. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir.2000).

## DISCUSSION

In the SAC, plaintiffs allege various instances of conspiratorial conduct with California. For example, they allege:

> Defendants engaged in and implemented their conspiracy in the United States through the offices they maintained in California. Defendants' employees in their California offices engaged in communications and meetings with other defendants to exchange price and supply information and reach agreements regarding LCD Panel prices to be charged to their customers in the United States and elsewhere. Defendants' employees in California also received information from their counterparts elsewhere regarding the substance of defendants' agreements with respect to LCD Panel prices and supply, and were instructed to use this information in the course of price negotiations with customers in the United States. Defendants' California offices were thus the means through which they implemented their conspiracy in the United States.

SAC, ¶ 6; *see also* ¶ 112 (the conspiracy "was effectuated through a combination of group and bilateral discussions that took place in Japan, South Korea, Taiwan, California, and elsewhere in the United States"). Additionally, plaintiffs allege that particular employees of Defendant companies engaged in communications, partly in California, in which competitive pricing information was shared and which

3

"were meant to advance the conspiracy's presence in and control over the U.S. market for LCD Panels and LCD Products." *Id*. at ¶ 117. Plaintiffs also discuss such conspiratorial conduct in ¶¶ 135-144. Within this context, the Court analyzes whether plaintiffs have alleged sufficient conspiratorial conduct with respect to *each* defendant.[2]

**1.     Chimei (CMO), AUO, and LG**

In plaintiffs' response to Defendants' joint motion for summary judgment, plaintiffs presented evidence to support their argument that "Defendants used California as a launching pad for their illegal activities..." by using their corporate headquarters, principal places of business, or other offices and facilities in California to further the conspiracy. *See* Docket No. 6394 at 2. For example, plaintiffs alleged that CMO's Edward Hung directed a California-based CMO employee Eric Raymond to approach someone at LG to "talk with the LG person to raise up the price before submit pricing to Apple . . ." and that AUO America employee Evan Huang, based in California, reported pricing information to Alice Ho of AUO. Plaintiffs further allege conspiratorial conduct in California through phone conversations between Raymond and Huang in which they discussed LCD panel prices and attempts to "align . . . to defense cost reduction pressure." *Id*. The evidence also suggests that a California LG employee, Davis Lee, communicated price quotes which referenced an agreement reached with Samsung regarding HP-Compaq pricing. *See id*. at 5, n. 13.

Assuming plaintiffs' allegations to be true and drawing all reasonable inferences in plaintiffs' favor, plaintiffs have sufficiently alleged conspiratorial conduct in California by CMO, AUO, and LG. Accordingly, the Court reverses its decision dismissing plaintiffs' Cartwright Act claims on due process grounds against the Chimei entities, AUO entities, and LG entities.

---

[2] Plaintiffs' present motion seeks reconsideration only of this Court's prior dismissal based on due process grounds. Defendants invite the Court to take this opportunity also to consider other issues, including additional choice of law arguments originally raised with respect to RadioShack and CompUSA. The Court declines this invitation.

4

**2.     Sharp**

In the SAC, plaintiffs allege that Brian Graham of Sharp "met and agreed to fix prices for LCD Panels with [his] U.S. counterparts at defendants LG Display, Toshiba, and AU Optronics, and at other LCD Panel suppliers . . .," sometimes meeting at restaurants and bars in the United States and frequently communicating by telephone at their offices in the United States. SAC, ¶ 117. Some of these communications took place, in part, within California. *Id*. Additionally, plaintiffs allege that a San-Jose based employee, Jon Horne, received information "regarding the LCD Panel prices that Toshiba, Epson, and other defendants planned to quote customers for certain small panel applications" and received information from Kazuyoshi Nakayama of Sharp that was obtained from Sharp's competitors, including Toshiba and Epson, "for use in upcoming price negotiations in the United States." *Id*. at 143. The SAC alleges that Mr. Horne was instructed by Sharp personnel to destroy the emails on his computer in San Jose, California which "describ[e] Mr. Nakayama's meetings with Sharp's competitors and pricing information obtained by Mr. Nakayama at those meetings." *Id*.

The Court concludes that allegations of Brian Graham's price-fixing activities within California are sufficient to allege conspiratorial conduct in California. With respect to Horne's conduct, the Court notes that the allegations of actual conspiratorial conduct in California are bare, but finds that they are sufficient for purposes of this motion. Accordingly, the Court reverses its decision to dismiss plaintiffs' Cartwright Act claims on due process grounds as to Sharp.

**3.     Toshiba**

Plaintiffs allege that Toshiba personnel in its San Jose, California offices "were involved in and implemented defendants' conspiracy in the United States" and point to the activities of San Jose-based employee Cameron Zand. SAC, ¶ 142. Plaintiffs allege that Zand "received information in Toshiba's California office from his counterparts in Japan regarding the prices Sharp, Epson and other defendants planned to quote to customers for certain small panel applications" and other defendants' planned supply of small LCD Panels. He was also in frequent contact with Makoto Chiba and Masotoshi Tanaka, who had "discussed and reached agreements regarding LCD panel pricing" with H.B. Suh of Samsung and who guided Zand with respect to upcoming price negotiations with U.S. customers. *Id*.

Plaintiffs' allegations with respect to Toshiba are bare. However, when viewing the allegations in the context of other allegations, they suffice for purposes of this motion. Accordingly, the Court reverses its decision to dismiss plaintiffs' Cartwright Act claims on due process grounds as to Toshiba.

### 4. HannStar and Chunghwa

With respect to defendants, HannStar and Chunghwa, the Court concludes that plaintiffs have not alleged sufficient conspiratorial conduct by either of these Defendants in California. The Court rejects plaintiffs' assertion that the plea agreements are sufficient to establish conspiratorial conduct in California pursuant to the *AT&T Mobility* holding. The plea agreements merely acknowledge that "acts in furtherance of the conspiracy . . . were carried out in California." This statement does not indicate which Defendant carried out which act, and thus cannot satisfy the Ninth Circuit's express instructions to conduct a defendant-by-defendant analysis with respect to conspiratorial conduct. Moreover, mere allegations of "acts in furtherance of the conspiracy," without more, fail to meet this the standard identified in *AT&T Mobility*. Rather, plaintiffs must allege conduct that is not "slight and casual . . . such that the application of California law to that Defendant is 'neither arbitrary nor fundamentally unfair.'" *AT&T Mobility*, at 1114. Accordingly, the Court declines to reconsider its prior dismissal of plaintiffs' California Cartwright Act claims as against HannStar and Chunghwa.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part Defendants' joint motion. Docket No. 7670.

**IT IS SO ORDERED.**

Dated: May 6, 2013

SUSAN ILLSTON
United States District Judge