Richard M. Heimann (State Bar No. 63607)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:    (415) 956-1000
Facsimile:     (415) 956-1008

Bruce L. Simon (State Bar No. 96241)
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:    (415) 433-9000
Facsimile:     (415) 433-9008

*Counsel for the Direct Purchaser Class Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS | Master File No. M07-1827 SI<br><br>MDL No. 1827<br><br>**NOTICE OF MOTION AND MOTION FOR AN ORDER APPROVING DISTRIBUTION OF SETTLEMENT FUNDS TO THE DIRECT PURCHASER CLASS MEMBERS**<br><br>Date:    July 12, 2013<br>Time:    9:00 a.m.<br>Courtroom: 10, 19th Floor<br><br>The Honorable Susan Illston |

1108972.2

MASTER FILE NO. M07-1827 SI
MOTION FOR AN ORDER APPROVING DISTRIBUTION OF SETTLEMENT FUNDS
TO THE DIRECT PURCHASER CLASS MEMBERS

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... 3
    I.     INTRODUCTION ............................................................................................ 3
    II.    BACKGROUND .............................................................................................. 4
         A.    Claims Administration .......................................................................... 4
         B.    Distribution of Net Settlement Fund ..................................................... 5
    III.   ARGUMENT .................................................................................................... 6
         A.    The Court Should Approve the Administrative Recommendations of the Claims Administrator Concerning Acceptance or Rejection of Timely Claims ................................................................................. 6
         B.    Co-Lead Class Counsel's Position on the Payment of Eligible Late Claims .................................................................................................. 7
         C.    Plaintiffs Propose Temporarily Holding Back 20% From Claims Whose *Pro Rata* Share of the Net Settlement Fund Exceed $10,000 to Address Any Potential Contingencies ............................................... 7
         D.    The Court Should Authorize Payment Of Outstanding Claims Administration Expenses and Reserve Amounts for Estimated Expenses and Previously-Rejected Claimants ........................................ 8
CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

Page

### CASES

*In re Gypsum Antitrust Cases,*
    565 F.2d 1123 (9th Cir. 1977) .......................................................................................... 7

*Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.),*
    233 F.3d 188 (3rd Cir. 2000) ........................................................................................... 7

1

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD, AND TO ALL DIRECT PURCHASER CLASS MEMBERS:**

**PLEASE TAKE NOTICE** that at 9:00 a.m. on July 12, 2013, or at such time subject to the Court's calendar, Direct Purchaser Class Plaintiffs will, and hereby do, move before the Honorable Susan Illston, United States District Judge, at the United States Courthouse, 450 Golden Gate Avenue, Courtroom 10, San Francisco, California, for an order approving the first distribution of settlement funds to the Direct Purchaser Class Members.  This motion is based upon the supporting Memorandum of Points and Authorities filed concurrently with this Notice; the supporting Declarations of Robin Niemiec and Elizabeth Pritzker, filed concurrently with this Notice; the records, pleadings, and papers filed in this action; and upon such argument as may be presented to the Court at the hearing on this motion.

## I.   INTRODUCTION

Direct Purchaser Class Plaintiffs ("Plaintiffs") move for an order approving distribution of settlement funds to members of the Direct Purchaser Class.  As explained below, and in the Declaration of Robin N. Niemiec ("Niemiec Decl."), filed herewith, Rust Consulting, Inc. ("Rust") has diligently processed claims and made determinations as to each claimant's eligibility.  There was a significant amount of participation in the claims process by Class Members: 3,810 claims were filed before the Court-set April 5, 2012 deadline to file claims, and 227 claims were filed thereafter.

As of April 30, 2013, the Net Settlement Fund contains $317,662,343.04.  Declaration of Elizabeth C. Pritzker ("Pritzker Decl."), filed herewith, ¶ 9,  Plaintiffs propose that the Court order Rust to hold back 20% from all timely, eligible claims whose *pro rata* share of the settlement fund exceeds $10,000 (*i.e.*, $63,207,179.19) while the Court decides whether to pay late-filed or disputed claims, and in case of other unexpected contingencies.  After any such claims are adjudicated, Plaintiffs then recommend a final distribution to exhaust the fund.

## II.  BACKGROUND

### A.  Claims Administration

Pursuant to the Court-approved notice, potential Class Members were required to submit claims by April 5, 2012. (Dkt. No. 4438.) The Court appointed Rust to administer the claims process. (Dkt. No. 2077.) In her declaration filed herewith, Rust's Client Services Director Robin M. Niemiec describes the claims administration process. Niemiec Decl., ¶¶ 4-33.

Rust received and processed a total of 4,037 claim forms. Niemiec Decl., ¶ 13. Of those, 3,811 were postmarked by April 5, 2012 and considered timely ("Timely Claims"). *Id.* ¶ 14. There were 226 claim forms received after that date and considered late ("Late Claims"). *Id.* Rust reviewed each claim form received to determine whether it was valid and included all required information. *Id.* ¶ 17.

Rust performed multiple reviews to ensure accuracy and afforded claimants an opportunity to address deficiencies. If Rust concluded that any claim forms were deficient, Rust notified claimants of their potential ineligibility and, in conjunction with Co-Lead Class Counsel, attempted to resolve any disputes. Niemiec Decl., ¶¶ 18-30. Independent of this review process, Rust audited certain claims in accordance with its quality assurance standards. *Id.*, ¶ 23. Based on these processes, Rust determined that 972 Timely Claims (totaling $8,889,226,194.76 in claimed purchases) and 47 Late Claims ($118,158,855.00 in claimed purchases) were ineligible. *Id.*, ¶¶ 32-33, Exs. H-I (Ineligible Claims Reports). Subtracting these claims, there are 2,839 eligible Timely Claims and 179 eligible Late Claims. *Id.* ¶¶ 34-35. If paid, the potential award payment for eligible Late Claims would total $10,667,337.77. *Id.*, ¶ 36.

Co-Lead Class Counsel and Rust also worked with claimants in an effort to eliminate or reduce the number of contested claims. *Id.*, ¶ 30. Despite these efforts, there are five known claimants who still disagree with their claim determinations. *Id.*. One of these claimants did not provide Rust with an amount of claimed purchases. *Id.* The total amount of the purchases claimed for the other four of these claimants is $29,917,854.00. Of the total amount of claimed purchases for these four claimants, $29,548,062.00 was determined to be ineligible and is thus the disputed portion of those claims. *Id.* This amounts to a potential award of $974,664.25 if these

1   four disputes are all resolved in the claimants' favor by the Court. *Id*. It is anticipated that some
2   or all of these five claimants may file a request with the Court to allow their claims despite the
3   adverse determination received during the claims process.

4           **B.**      <u>**Distribution of Net Settlement Fund**</u>

5           As noted above, as of April 30, 2013, the cash balance of the Net Settlement Fund is
6   $317,662,343.04. Pritzker Decl., ¶ 9. This balance reflects the payments of attorneys' fees and
7   costs, incentive awards to named plaintiffs, taxes, and bank, administrative, accounting, claims
8   processing, and other costs.[1]

9           Pursuant to the plan of allocation, the settlement fund is to be divided with 50% of the
10  fund allocated for members that purchased qualifying stand alone panels (the "Panel Class") and
11  50% of the settlement fund allocated for the members that purchased qualifying LCD products
12  (the "Product Class"). Niemiec Decl., ¶ 39. Within the product class, claimants are to be paid
13  based on the value of the panel in the finished product ("panel value"). The panel value
14  percentages for finished products are 75% for monitors, 15% for notebook computers, 47% for
15  televisions, and 7.6% for other products.[2] *Id.* The Product Class' recognized loss dollar is
16  calculated using these percentages. If the Court orders payment of only eligible Timely Claims,
17  the *pro rata* payment amount will be approximately $.13413 per recognized loss dollar for the
18  Panel Class and approximately $.04137 per recognized loss dollar for the Product Class. *Id*.

19          If, however, the Court orders payment of all eligible Timely and Late Claims, the *pro rata*
20  payment amount will be $.12669 per recognized loss dollar for the Panel Class and approximately
21  $.04079 per recognized loss dollar for the Product Class. *Id*. This represents a difference of 5.3%
22  for the Panel Class, and 1.4% for the Product Class. *Id*., ¶ 39.

---

[1] The amounts received as settlement consideration from Defendants was $473,022,242.00. Pritzker Decl., ¶ 9. Subtracting taxes, tax preparation services, trustee fees, claims administration costs, and attorneys' fees and costs results in a net settlement fund of $317,662,343.04. *Id.* As of April 30, 2013, the bank account holding the settlement fund contained $318,087,356.96. *Id.* The $424,013.92 difference between the "net settlement fund" and the amount in the bank account represents the amount of unrealized gains and interest generated from investment of settlement funds deposited in the Settlement Fund for the benefit of Class Members. *Id*., ¶ 11. This amount ultimately will be distributed to Class Members upon final distribution of the fund.

[2] "Other products" consist of various finished products containing TFT-LCD panels that are not monitors, notebook computers, or televisions.

Upon entry of an order approving the distribution as originally submitted or as modified by the Court, Rust will (a) transfer an amount ordered by the Court into a Distribution Fund and (b) calculate each authorized claimant's *pro rata* share of the Distribution Fund pursuant to the court approved plan of allocation.

Rust will then promptly mail payments to Class Members at the address indicated on their Claim Form or as updated in Rust's database. Any funds that remain due to uncashed checks after 90 days can be disbursed to authorized claimants according to the same *pro rata* formula used to calculate their payments under the initial distribution of funds. Rust recommends that the checks disbursed to claimants bear the notation "Non-Negotiable After 90 Days" and that no check be negotiated more than 120 days after the date of the check. Niemiec Decl., ¶ 43. The additional 30 days is to allow for bank processing and a small extension of time for individuals who present their checks to the bank after the 90 days but the bank proceeds to accept the check for payment. *Id.* Co-Lead Class Counsel concur with this recommendation.

## III.   ARGUMENT

Based on Co-Lead Class Counsel's supervision of Rust's claims administration process, Plaintiffs propose that the Court accept Rust's recommendations regarding payment of claims and that 20% be withheld initially from claims whose *pro rata* share of the net settlement fund exceeds $10,000 for any potential contingencies, and while the Court addresses any disputed or Late Claims. Co-Lead Class Counsel do not take a position on the payment of Late Claims at this time.

### A.   The Court Should Approve the Administrative Recommendations of the Claims Administrator Concerning Acceptance or Rejection of Timely Claims

As explained above, Rust has performed a diligent, thorough review of claim forms. Included in this process was a separate audit of certain claims to confirm the eligibility of purchases. Based on this process, Rust has determined that there are there are 2,838 eligible Timely Claims. Co-Lead Class Counsel agree with Rust's determinations. Plaintiffs thus propose that the Court approve Rust's determinations concerning the payment of eligible Timely Claims.

### B. Co-Lead Class Counsel's Position on the Payment of Eligible Late Claims

Rust received 226 claim forms after the Court's April 5, 2012 deadline to submit claims. Rust determined that 179 of those Late Claims would be eligible if they had been filed in a timely manner. Niemiec Decl., ¶ 35. Payment of all of these eligible Late Claims will reduce Timely Claims by approximately 5.3% for the Panel Class, and 1.4% for the Product Class. *Id.*, ¶ 39. Co-Lead Class Counsel's position with respect to the payment of eligible Late Claims at this time is that any late claimant should make a showing through a Court filing as to why their claim is excusably late. It makes a difference how late the claim is, and the reason for the lateness, and whether excusable neglect is involved. Until it is known who will so move, and how much is involved, Co-Lead Class Counsel cannot take a position on the late claims.

The Court has discretion to allow or disallow such claims. *See In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1128 (9th Cir. 1977) (Court has discretion with respect to the disallowance of late claims); *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.),* 233 F.3d 188, 194-97 (3rd Cir. 2000) (Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers to protect unnamed but interested persons; a court may assert this power to allow late-filed proofs of claim). Those who filed Late Claims, as well as those intending to dispute their claim determination, should petition the Court for an allowance of their late claim within 30 days of the order approving distribution; thus, Plaintiffs have requested the hold back of funds in the amount stated below to, in part, account for the possible payment of late claims. Rust will post on the website the order approving distribution, and the deadlines for filing papers regarding late and disputed claims.

### C. Plaintiffs Propose Temporarily Holding Back 20% From Claims Whose *Pro Rata* Share of the Net Settlement Fund Exceed $10,000 to Address Any Potential Contingencies

Based on its experience, Rust has recommended that 20% be withheld from those timely, eligible claims whose *pro rata* share of the Net Settlement Fund exceeds $10,000 (which totals $63,207,179.19) to pay taxes that may be earned on the settlement fund prior to it being fully

1  disbursed, to pay any disputed or Late Claims that the Court resolves in the claimant's favor,[3] and
2  also to address any unanticipated contingencies that may arise.  Upon resolution of any such
3  issues, Plaintiffs will then request that the Court order the distribution of the remaining funds.
4        Plaintiffs therefore propose that, to account for the above-described payments, or any
5  unforeseen outstanding payments, the Court authorize Rust to hold back $63,207,179.19 of the
6  Net Settlement Fund from the first distribution.  After the initial payment is made to Class
7  Members and 120 days has passed, Class Counsel will update the Court regarding the number and
8  status of claimants who have filed papers with the Court regarding disputed and late claims, the
9  total of checks sent to claimants but not negotiated, and the remaining balance in the Settlement
10 Fund.  Plaintiffs will update the Court regarding the first distribution, and thereafter request that
11 all remaining amounts in that Fund be distributed with the Court's approval.

12    **D.  The Court Should Authorize Payment Of Outstanding Claims Administration Expenses and Reserve Amounts for Estimated Expenses and Previously-Rejected Claimants**
13

14       Rust has provided Co-Lead Class Counsel with an invoice detailing the fees and expenses
15 it has incurred to date to administer the claims of the Class Members.  Niemiec Decl., ¶ 44 and
16 Exh. N.  Class Counsel have reviewed the invoice and believe the fees and expenses are
17 reasonable.  Plaintiffs respectfully request that the Court authorize payments of $759,167.92 from
18 the Settlement Fund to Rust for accrued fees and expenses incurred through April 30, 2013.
19       Plaintiffs further request the Court to authorize a reserve of $79,615.94 from the
20 Settlement Fund for estimated future claims administration expenses that Rust reasonably expects
21 will be incurred in connection with administering and distributing checks to Class Members.
22 These expenses include, among other things, costs for postage, claims processing, and the
23 management of a call center.  *See id.*, ¶ 41 and Exh. O.

---

[3] This amount is sufficient to pay all Late Claims whose *pro rata* share would amount to $10,667,337.77 if they were approved by the Court and four disputed claims whose *pro rata* share would amount to $974,664.25 if approved by the Court.  Niemiec Decl., ¶ 40.  One of the unresolved disputed claims did not list the amount of their purchases on their claim form so that amount remains unknown.  *Id*.  Of course, there may be other claimants who file a request to have their claim approved by the Court who are not currently considered an unresolved disputed claim by Rust.

# CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the distributions and enter the proposed First Distribution Order.

Respectfully submitted,

Dated: May 28, 2013     LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:    */s/ Eric B. Fastiff*
       Eric B. Fastiff

Richard M. Heimann (State Bar No. 063607)
Eric B. Fastiff (State Bar No. 182260)
Brendan Glackin (State Bar No. 199643)
Marc A. Pilotin (State Bar No. 266369)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Dated: May 28, 2013     PEARSON, SIMON, & WARSHAW LLP

By:    */s/ Bruce L. Simon*
       Bruce L. Simon

Clifford H. Pearson (State Bar No. 108523)
Bruce L. Simon (State Bar No. 96241)
Aaron M. Sheanin (State Bar No. 214472)
Robert G. Retana (State Bar No. 148677)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

*Co-Lead Class Counsel for the Direct Purchaser Class Plaintiffs*

PRITZKER | LAW
Elizabeth C. Pritzker
633 Battery Street, Suite 110
San Francisco, CA 94111
Telephone: 415.692.6772
Facsimile: 415.366.6110

*Liaison Counsel for the Direct Purchaser Class Plaintiffs*

## ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the other signatory.

Dated: May 28, 2013          By:          */s/ Eric B. Fastiff*
                                          Eric B. Fastiff