Richard M. Heimann (State Bar No. 63607)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile:  (415) 956-1008

Bruce L. Simon (State Bar No. 96241)
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008

*Co-Lead Counsel for the Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS | Case No. MDL 3:07-md-1827 SI<br><br>CLASS ACTION<br><br>**DECLARATION OF ROBIN M. NIEMIEC IN SUPPORT OF MOTION FOR AN ORDER APPROVING DISTRIBUTION OF SETTLEMENT FUNDS TO THE DIRECT PURCHASER CLASS MEMBERS**<br><br>Date:        July 12, 2013<br>Time:       9:00 a.m.<br>Courtroom: 10, 19th Floor |

Robin M. Niemiec, declares and states that:

1. I am a Client Services Director for Rust Consulting, Inc. ("Rust"). I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently hereto.

2. I submit this Declaration in order to provide the Court and the parties to the above-captioned litigation (the "Action") with information regarding the status of claims administration to date, the dissemination and processing of the Proof of Claim Forms ("Claim Forms") and the calculation for and distribution of the Net Settlement Fund (the "Settlement Fund") to the Settlement Class.

3. Pursuant to the Order Granting Preliminary Approval of Direct Purchaser Class Settlement with Defendants Epson Imaging Devices Corporation and Epson Electronics America, Inc. dated October 6, 2010 (Dkt. No. 2077), Rust was appointed the Claims Administrator to oversee, among other things, the process of providing notice about the Settlement.

**Claims Administration Services Provided By Rust**

4. The services provided by Rust in this Action were described in detail in the Declaration of Robin M. Niemiec dated February 3, 2011 (Dkt. No. 2396) in regard to the dissemination of the Notice of class action litigation and settlements (the "Niemiec 2011 Declaration"), the Declaration of Charlene Young in Support of Direct Purchaser Class Plaintiffs' Motion for Final Approval of Settlements with the Chimei, Hannstar, Hitachi, LG Display, Mitsui, Samsung, Sanyo, and Sharp Defendants dated December 5, 2011 (Dkt. No. 4275, Attachment #2) (the "Young Declaration"), and the Declaration of Robin M. Niemiec in Support of Direct Purchaser Class Plaintiffs' Motion for Final Approval of Settlements With AUO and Toshiba Defendants dated November 30, 2012 (Dkt. No. 7267, Exh. 4) (the "Niemiec 2012 Declaration"). For ease of reference, the Niemiec 2011 Declaration, the Young Declaration, and

854868.1
1109003.1

2

MDL 3:07-md-1827 SI

DECLARATION OF ROBIN M. NIEMIEC ISO MOTION FOR AN ORDER APPROVING DISTRIBUTION OF SETTLEMENT FUNDS TO DIRECT PURCHASER CLASS MEMBERS

1 the Niemiec 2012 Declaration (collectively, the "Dissemination Declarations") are annexed hereto as Exhibits A, B and C, respectively, without their own exhibits.

5. Among other things, Rust provided notice about the Action to potential Class Members; processed, evaluated, and audited completed and submitted Claim Forms; calculated the *pro rata* share for each Class Member who filed a valid and timely claim and calculated the *pro rata* share for each Class Member who filed a valid and late claim ("Claimant"). Rust will distribute the Net Settlement Fund to the Claimants upon this Court's approval of the Motion Authorizing Distribution of the Settlement Fund.

6. Rust has also served as a repository for Class Members' inquiries, communications, and Claim Forms. To carry out these tasks, Rust leases and maintains a Post Office Box (P.O. Box 24659, West Palm Beach, FL 33416) for the receipt of all written communications necessary to the administration of the settlement.

7. Rust also maintains a toll-free telephone number (877-888-3757) for Class Member inquiries. The callers hear a pre-recorded message which answers many frequently asked questions. They are also able to speak to a live operator to answer additional questions. As of April 30, 2013, there have been 3,537 calls to the toll-free hotline number and of those, 850 callers requested to speak with a live telephone operator.

8. Rust established and maintains a website, www.tftlcdclassaction.com, specifically dedicated to providing information about the TFT-LCD Direct Purchaser litigation and settlement. The website, among other things, includes tabs with Class Notices, Court documents, Settlement Agreements, Frequently Asked Questions and contact information. The website also provided Class Members the ability to register online for subsequent notices and the opportunity to file an online claim form as of October 10, 2011.

**Claims Filing Process**

9. As described in ¶ 13 of the Young Declaration (Exhibit B), potential Class Members had the ability to register online to have a pre-printed Claim Form sent to them via mail or file a claim online.

10. As described in ¶ 13 of the Young Declaration, Rust received purchase data from some Defendants to be used for the purpose of pre-printing Claim Forms containing a Class Member's purchases according to the data for those Defendants.

11. As outlined in ¶¶ 15 – 16 of the Young Declaration, the online claim filing process was temporarily suspended and modified to include the ability to provide claim and purchase information for the Non-Settling Defendants as well as clarify the class period and products for Chunghwa.

12. On or about March 13, 2012, Rust mailed and/or emailed 3,247 Claim Forms to Class Members who either filed a claim online previously or had registered online to receive a Claim Form. Rust mailed Claim Forms with pre-printed Defendant purchase data to those Claimants identified as having pre-printed Defendant purchase data and Claim Forms without pre-printed Defendant purchase data to Claimants not identified in the data supplied by Defendants but who had registered online. The Claim Forms instructed Claimants to return the claim forms by the April 5, 2012 deadline for filing Claim Forms. Claimants were able to (1) accept the pre-printed Defendant purchase information in the Claim Form, (2) disagree with the pre-printed Defendant purchase information in the Claim Form and submit supporting documentation, or (3) submit their own claim amounts and supporting documentation if there was no pre-printed Defendant purchase information on the Claim Form.

13. Rust received and processed a total of 4,037 Claim Forms. For quality control purposes, each Claim Form was sequentially stamped upon receipt with a unique Claim Number.

14. Of the 4,037 Claim Forms received and processed by Rust, 3,811 were postmarked by April 5, 2012 and considered timely ("Timely Claims") and 226 were postmarked after April 5, 2012 and considered late ("Late Claims").

15. Rust created a segregated database as a repository for the Claim Form data in this Action, and Rust's data entry staff entered appropriate information as to each claim (including Claimant identification information and the products and dollar values of products claimed by the Class Member) into the database.

854868.1  
1109003.1

4

MDL 3:07-md-1827 SI

DECLARATION OF ROBIN M. NIEMIEC ISO MOTION FOR AN ORDER APPROVING DISTRIBUTION OF SETTLEMENT FUNDS TO DIRECT PURCHASER CLASS MEMBERS

16. The claim number on each Claim Form was used as the unique identifier for the Claimant's corresponding record in the Rust database.

**Audit Process and Deficiencies**

17. Rust audited/reviewed each Claim Form received to determine whether it was valid and included all required information.

18. Rust identified certain Claim Forms that, as submitted, were deficient—that is, missing pertinent information or documentation, in whole or in part, necessary to calculate each Claimant's *pro rata* share of the Net Settlement Fund—but which, if corrected, might make the Claim Form eligible for payment. Rust coded as deficient those claims in which the Claim Form:

   (a) did not contain purchase amounts;
   (b) did not list product type and/or defendant information;
   (c) was not signed; or
   (d) was blank.

19. Rust sent 225 letters to these Claimants notifying them why their Claim Forms were deficient and seeking supplementation. Samples of these letters are attached as Exhibit D.

20. Rust also sent 933 letters to Claimants whose Claim Forms were determined to be ineligible in whole or in part because:

   (a) the Claim Form was duplicative of another filed Claim Form (such as where one claim was faxed to Rust and a copy was mailed at a later date) or the Claim Form contained duplicate purchases; or,
   (b) the purchases were not made from a Defendant (*i.e*., indirect purchases).

21. In these situations, Claimants were instructed to advise Rust if they did not agree with the determinations. A sample of these letters is attached as Exhibit E.

22. As indicated in ¶¶ 19-20 above, Rust sent a total of 1,158 letters to Claimants in an effort to resolve deficiencies and notify Claimants of ineligibility. Rust reviewed and processed responses from Claimants to these deficiency and ineligibility letters and evaluated the responses to determine whether to accept, reject or modify the claims based on the information and/or documentation received, and consulted as necessary with Class Counsel. Where Claimant

1  responses cured the deficient or ineligible circumstance in whole, or in part, Rust updated its
2  database and the Claim Forms accordingly.

3      23.    Of the Claim Forms received, 561 were subject to review by Rust in accordance
4  with its quality assurance standards ("Audited Claims").  After consultation with and pursuant to
5  the directions of Class Counsel, it was determined that all Claims filed by individuals exceeding
6  $20,000, all Claims filed by companies exceeding $1,000,000 and other random claims would be
7  audited.  The value of the claims audited constituted approximately 75% of the total value of
8  claims submitted by Claimants.

9      24.    Rust's review of the Audited Claims also included a comparison of the purchase
10  amounts claimed versus the Defendant purchase data provided to Rust to ensure each Claimant
11  was allocated the appropriate amount of purchases per the Defendants' data.

12      25.    The Claimants for these Audited Claims were mailed Request for Information
13  Letters in which they were asked to supply proof of their claimed purchases.  Those with claimed
14  purchases higher than the Defendant data purchase information were notified that their claim was
15  adjusted to the Defendants' purchase data amount and if they disagreed with the adjustment, they
16  were to supply proof of their claimed purchases.  Samples of these letters are attached at
17  Exhibit F.

18      26.    Documentation totaling in excess of $20 billion was supplied by Class Members to
19  support their claims in response to the Request for Information Letters. The documentation was
20  comprised of tens of thousands of pieces of documentation in the form of invoices, cancelled
21  checks, purchase orders, spreadsheets, screen shots of computer images, packing slips, wire
22  transfer confirmations and other such documentation which included eligible and ineligible
23  purchases.  The responses received from the Audited Claims were reviewed and the records in the
24  Rust database were updated.

25      27.    During this review and audit process, Rust, in close consultation with Class
26  Counsel, addressed numerous questions about product eligibility, Claimants' possible status as
27  Defendants, co-conspirators or affiliates of Defendants, the adequacy of proof submitted by
28  Claimants who did not accept the pre-printed Purchase Data, and other issues.  The process has

1  included extensive e-mail and postal mail correspondence and telephone contact with Claimants
2  to audit and verify the accuracy, integrity and *bona fides* of the claims that were submitted and to
3  ensure that only legitimate, *bona fide* claims based on eligible purchases are honored.

4   28.   Rust undertook these extensive communications with Claimants to ensure that
5  Claimants receive the benefit of all legitimate purchases, that all Claimants were given every
6  reasonable opportunity to support their claims and to cure, explain and be heard with respect to
7  any deficiencies that were identified, and to eliminate or reduce the number of contested
8  rejections or reductions of claims that would have to be resolved by the Court. Class Counsel
9  worked extensively with Rust at all stages of the claims administration process.

10   29.   On February 21, 2013, Rust sent letters to all Claimants that received a blank
11  Claim Form deficiency letter or Request for More Information letter notifying them that their
12  claim was accepted, reduced or rejected. Letters were sent to Claimants advising their Claim
13  Form was ineligible in whole or in part because:

14   (a)   the Claim Form listed ineligible products; or
15   (b)   the products claimed were purchased and delivered outside the United
16       States;
17   (c)   the claim was filed by a Defendant or its parent, subsidiary or affiliate, or a
18       co-conspirator which are excluded from the classes pursuant to the Court's
19       order certifying the settlement class;
20   (d)   the purchases were made outside of the class period.

21  Samples of the letters sent to these Claimants are attached at Exhibit G.

22   30.   Class Counsel and Rust also worked with Claimants in an effort to eliminate or
23  reduce the number of contested claim determinations. Despite these efforts, there are five
24  Claimants who still disagree with their claim determinations. One claimant did not provide Rust
25  with an amount of claimed purchases. The total amount of purchases claimed for the other four
26  of these Claimants is $29,917,854.00. Of the total amount of claimed purchases for these four
27  Claimants, $29,548,062.00 was determined to be ineligible and is the disputed portion. Payment
28  of these four disputed claims would total $974,664.25 if approved by the Court. The amount of

1  the award for the fifth disputed claim remains unknown since no purchase information was
2  submitted by that claimant.

3  31.  All claims filed after April 5, 2012 ("Late Claims") were subject to the same
4  deficiency and audit process as outlined in ¶¶ 17-29 above. In some instances, the request for
5  proof for some large claims was requested via email for compliance.

6  32.  Prior to the completion of audits, document review, communications (email, USPS
7  and telephone) with potential Class Members and processing of Late Claims, Rust processed
8  3,811 Timely Claims with a total of $28,778,857,155.60 in claimed purchases. Of these,
9  972 claims totaling $8,889,226,194.76 in claimed purchases were determined to be ineligible.
10 Please see Ineligible Timely Claims Report attached as Exhibit H.

11 33.  After the completion of audits, document review, communications (email, USPS
12 and telephone) with potential Class Members, Rust processed 226 Late Claims with a total of
13 $477,343,298.11 in claimed purchases. Of these, 47 claims totaling $118,158,855.00 in claimed
14 purchases were determined to be ineligible. Please see Ineligible Late Claims Report attached as
15 Exhibit I.

16 **Number of Eligible Timely and Late Claims**

17 34.  Rust prepared and provided to Class Counsel, a list of 2,839 Authorized Claimants
18 who filed Timely Claims for distribution of the Net Settlement Fund on a *pro rata* basis among
19 Class Members based on the dollar amount each Class Member paid to Defendants for direct
20 purchases during the period January 1, 1996 through December 31, 2006 and whose Claims are
21 determined by Rust to be eligible to receive a distribution from the Net Settlement Fund. Rust
22 determined the following eligible purchases by Claimants who filed Timely Claims:
23    Stand Alone Panels:  $1,181,070,112.83
24    Televisions:  $1,572,299,347.40
25    Computer Monitors:  $2,445,984,079.32
26    Notebook Computers:  $8,259,751,078.93
27    Other Products:  $217,690,050.49
28    Total:  $13,676,794,668.97

1  Please see the schedule of Claimants and their recognized loss and award amount attached as

2  Exhibit J.  To protect the privacy of these Claimants, their names have not been included.

3      35.    Rust evaluated Late Claims and determined that, if they were not filed late, there

4  would be an additional 179 Authorized Claimants with the following eligible purchases:

5      Stand Alone Panels:  $66,374,704.07

6      Televisions:  $95,066,328.48

7      Computer Monitors:  $675,608.16

8      Notebook Computers:  $63,015,004.92

9      Other Products:  $3,181,017.66

10      Total:  $228,312,663.29

11  Attached as Exhibit K is a schedule of all Claimants, timely or late, and their recognized loss and

12  award amount if this Court orders payment for Late Claims, their names have not been included.

13      36.    If the Court ordered that Late Claims are entitled to a distribution from the Net

14  Settlement Fund, the timely Claimants' percentages of the Net Settlement Fund, would be

15  modified as described in ¶ 39 below.  Please see schedule of Claimants who filed Timely Claims

16  and their recognized loss amount attached as Exhibit L and schedule of Claimants who filed Late

17  Claims and their recognized loss amount attached as Exhibit M.  To protect the privacy of these

18  Claimants, their names have not been included.  If the Court were to order payment of all Late

19  Claims, the award amounts would total $10,667,337.77.

20      37.    Upon approval of this Court, Rust intends to mail authorized claimants their *pro*

21  *rata* portion of the Net Settlement Fund.

22  **Calculation and Allocation of the Net Settlement Fund**

23      38.    As of May 7, 2013, the Net Settlement Fund is valued at approximately

24  $317,662,343.04.  This balance reflects interest earned, payment of taxes, the distribution of

25  counsel fees and litigation expenses to counsel for the Class pursuant to this Court's Order dated

26  December 27, 2011.

27      39.    As indicated in ¶ 34 above, Rust identified 2,839 Timely Claims that had

28  qualifying purchases.  Pursuant to the plan of allocation, the settlement fund is to be divided with

1  50% of the fund allocated for members that purchased qualifying stand alone panels (the "Panel
2  Class") and 50% of the settlement fund allocated for the members that purchased qualifying LCD
3  products (the "Product Class").  Within the Panel and Product Class, claimants are to be paid on a
4  *pro rata* basis of their recognized loss.  For the Panel Class, the recognized loss is 100% of the
5  eligible purchases of stand alone panels.  For the Product Class, the recognized loss is based on
6  percentages of panel value in a finished product which are:  75% for monitors, 15% for notebook
7  computers, 47% for televisions, and 7.6% for other products.  The Product Class' recognized loss
8  dollar is calculated using these percentages.  For example, if a Class Member has $1,000,000 in
9  eligible monitor purchases, their recognized loss is $750,000.   The Claimants will receive
10 distribution based on a *pro rata* payout of approximately $.13413 per recognized loss dollar for
11 the Panel Class and approximately $.04137 per recognized loss dollar for the Product Class.  If
12 this Court orders payment of Late Claims, the number of Claimants would instead total 3,018,
13 and they would receive a *pro rata* payout of approximately $.12699 per recognized loss dollar for
14 the Panel Class and approximately $.04079 per recognized loss dollar for the Product Class.  This
15 is a difference of 5.3% for the Panel Class and 1.4% for the Product Class.

16      40.    In Rust's experience, it is advisable to withhold some funds from settlement
17 distributions such as this in order to pay taxes that may be earned on the settlement fund prior to it
18 being fully disbursed, and also to address any claims issues that may arise in the future.  Rust
19 recommends that twenty percent (20%) of the Net Settlement Fund be withheld from all claims
20 whose award amount is greater than $10,000 and escrowed for such purposes.  Calculating twenty
21 percent (20%) of such claims, including Timely Claims only, the amount held back from the first
22 distribution would be $63,207,179.19.  This amount is sufficient to pay the following:
23   • Late Claims in the amount of $10,667,337.77 if approved by the Court;
24   • Disputed Claims in the amount of $974,664.25 if approved by the Court.
25 As noted above, the amount of the fifth disputed claim remains unknown, and other claimants that
26 we do not consider to have unresolved disputed claims may also file a request that the Court
27 approve their claim.  Any funds that remain after a specified period of time can be disbursed to
28

854868.1
1109003.1
                                        10                              MDL 3:07-md-1827 SI
DECLARATION OF ROBIN M. NIEMIEC ISO MOTION FOR AN ORDER APPROVING DISTRIBUTION OF
           SETTLEMENT FUNDS TO DIRECT PURCHASER CLASS MEMBERS

1  Authorized Claimants according to the same *pro rata* formula used to calculate their payments
2  under the initial distribution of funds.

3        41.    Upon entry of an order approving the distribution as originally submitted or as
4  modified by the Court, Rust will (a) transfer an amount ordered by the Court into a Distribution
5  Fund and (b) calculate each authorized claimant's *pro rata* share of the Distribution Fund
6  pursuant to the court approved plan of allocation.

7        42.    Rust will then promptly mail payments to Class Members at the address indicated
8  on their Claim Form or as updated in Rust's database. Any funds that remain due to uncashed
9  checks after a specified period of time can be disbursed to Authorized Claimants according to the
10 same *pro rata* formula used to calculate their payments under the initial distribution of funds.

11       43.    Based on its experience in administering many other settlements, Rust
12 recommends that checks disbursed to Authorized Claimants bear the notation "Non-Negotiable
13 After 90 Days" and that no check be negotiated in the Distribution Account more than 120 days
14 after the date of the check. The additional 30 days is to allow for bank processing and a small
15 extension of time for individuals who present their checks to the bank after the 90 days but the
16 bank proceeds to accept the check for payment.

17       **Claims Administration Fees**

18       44.    Throughout the notice and claims administration process, Rust provided to Class
19 Counsel invoices for settlement administration fees and expenses. Invoices totaling $978,458.82
20 for administrative fees and out-of-pocket expenses rendered from the fall 2010 through
21 August 31, 2012 had been submitted to Class Counsel and paid from the Settlement Fund.
22 Invoices totaling $759,167.92 have been submitted to Class Counsel for administrative fees and
23 out-of-pocket expenses from September 1, 2012 through April 30, 2013 and have not been paid as
24 of today's date. Copies of these unpaid invoices are attached as Exhibit N.

25       45.    Attached as Exhibit O is Rust's estimate of fees and expenses to be incurred
26 through completion of the claims administration process which total $79,615.94. Estimated fees
27 and expenses include setting up a distribution account, sending initial and reissued payments to
28 Claimants, filing necessary tax returns, and responding to Claimant inquiries.

**Records Retention and Destruction**

46. Rust requests that the Court enter an Order authorizing it to destroy the paper copies of the Claim Forms one year after the Action is concluded, and to destroy electronic copies of claim records three years after the Action is concluded.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 28th day of May, 2013 in Palm Beach Gardens, Florida.

*/s/ Robin M. Niemiec*

Robin M. Niemiec