IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL. No. 1827 |
| This Order Relates to:<br>*Target Corp, et. al.*, v. *AU Optronics Corp. et al.*, Case No. 10-CV-4945 / | **ORDER RE LG'S MOTION IN LIMINE NO. 14 ON CHOICE-OF-LAW REGARDING COMPUSA'S AND RADIOSHACK'S INDIRECT PURCHASER CLAIMS** |

LG's motion in limine No. 14 argues that Texas law, rather than California law, should apply to the indirect purchaser claims of CompUSA (OldComp) and RadioShack. Docket No. 8134. LG relies on a prior order from this Court addressing a choice of law analysis[1] and also argues that Texas has a greater interest than California in applying its law to CompUSA's and Radioshack's claims because both of these plaintiffs alleged injuries that occurred in Texas, both are based in Texas, and both negotiated all purchases in Texas, issued purchase orders from Texas, and made payments from Texas. Moreover, LG argues, Texas has an interest in applying its law, which would preclude an indirect

---

[1] Defendant's reliance on the prior order ("Costco Order") is misplaced. After the Costco Order was issued, the Ninth Circuit decided *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013). *AT&T Mobility* involved the question of whether California law could apply consistent with due process limitations, expressly separating that question from the issue of choice of law. The *AT&T Mobility* opinion rejected this Court's view that the place of purchase was the governing inquiry for due process purposes, and held that the relevant "occurrence or transaction" includes not only the sale of price-fixed goods, but also defendants' conspiratorial conduct leading up to the sale. The Costco Order, issued pre-*AT&T Mobility*, did not sufficiently consider the location of defendants' conspiratorial conduct, and therefore the Court declines to rely on it.

purchaser lawsuit here, because it seeks to prevent duplicative liability and limit indirect purchaser cases which would be too complex for efficient judicial resolution. Plaintiffs oppose the motion on the grounds that Texas does not have an interest in applying its law, and even if it did, California has a greater interest in applying its law.

Because RadioShack and CompUSA filed suit in the Northern District of California, California's choice-of-law rules apply. A choice of law analysis under California law involves a three step inquiry.

> First, the court must determine whether the foreign law differs from California law. Second, if there is a difference, the court must determine whether a 'true conflict' exists by determining whether both states have a legitimate interest in applying their own law to the case at hand . . . Third, when both states have a legitimate interest in the application of their respective laws, the court analyzes the 'comparative impairment' of the interests of the two states and applies the law of the state whose interest would be more impaired if its law were not applied.

*McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 225 (2010).

**1.    Conflict of laws**

It is clear that Texas law differs from California in this matter as Texas law does not allow indirect purchaser lawsuits while California law does. There exists, therefore, a conflict of laws.

**2.    True conflict  - the states' interest in applying their laws**

The next step is to determine whether both states have a legitimate interest in the application of its law.

California has an articulated interest in applying its law. The Cartwright Act included as important goals deterrence and full disgorgement of ill-gotten gains, especially in the context of price fixing cartels; that deterrence and full disgorgement includes extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California. *See Clayworth v. Pfizer, Inc*., 49 Cal. 4th 758, 783 (2010) ("[T]he Cartwright Act has always been focused on the punishment of violators for the larger purpose of promoting free competition."); *Diamond Multimedia Systems v. Superior Court,* 19 Cal.4th 1036, 1063-65 (1999). It is clear that California's interest involves the regulation of conduct occurring within its borders and the deterrence and punishment of misconduct.

Texas has also articulated its interest in applying its law to this case. In deciding to preclude indirect purchasers from bringing suit, Texas was guided by the reasoning outlined in *Illinois Brick Co. v. Illinois Brick*, 434 U.S. 881 (1977). Namely, Texas was persuaded of the importance of preventing duplicative recoveries and limiting lawsuits that would be too "complex and burdensome as the courts attempted to determine the proper apportionment of pass-on antitrust charges to each level of indirect purchasers." *Abbott Laboratories, Inc. v. Segura*, 907 S.W.2d 503, 505-507 (Tex.1995). The Court disagrees with plaintiffs' argument that Defendants have "no interest in ensuring that out-of-state defendants are shielded from damages." To the contrary, the Ninth Circuit, quoting the California Supreme Court, has held that states have an interest in "being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *Mazza v. American Honda Motor Co., Inc.,* 666 F.3d 581, 592-93 (9th Cir. 2012) (quoting *McCann*, 48 Cal.4th at 97–98).

Because each state has an interest in applying its own law, a true conflict exists, and the Court must determine which state's law would be more impaired if its law is not applied.

### 3. Which state's interest would be more impaired?

If Texas law is applied, California's interest in regulating the conduct of out-of-state parties will be impaired. Specifically, California's interest in deterring anticompetitive conduct will be affected, thereby impairing its interest in promoting free competition.

If California law is applied, however, Texas will be impaired in its express efforts to limit recovery in antitrust cases to direct purchasers. As detailed above, Texas made an explicit decision to follow the reasoning of the federal courts in precluding indirect purchasers from bringing suit based on the concerns outlined in *Illinois Brick*. Applying California law would therefore negatively affect Texas' ability to foster an inviting business climate and would contravene its decision to prevent duplicative recovery, and to limit litigation and the burden on the Courts, even when its residents are involved.

On balance, the Court concludes that Texas' law will be most impaired if California law is

applied. While this is a close question, the Court concludes that much, perhaps most, of the actionable conduct in this case took place in Texas. While some conspiratorial conduct is alleged in California, thereby creating sufficient contacts to satisfy due process, the Court finds the contacts with Texas far outweigh those with California. Conspiratorial conduct is also alleged in Texas, although the bulk of the conduct is alleged to have taken place abroad. Plaintiffs alleged injuries that occurred in Texas; both CompUSA and RadioShack are based in Texas; and both CompUSA and RadioShack negotiated all purchases in Texas, issued purchase orders from Texas, and made payments from Texas. Considering all these factors, the Court concludes that Texas' interest, and the impairment of it, is paramount here. As the Ninth Circuit in *Mazza* recognized with respect to other foreign jurisdictions, Texas has "an interest in applying its law to transactions within its borders and that, if California law were applied . . . [Texas] would be impaired in [its] ability to calibrate liability to foster commerce." Accordingly, the Court finds that Texas law applies, and CompUSA's and RadioShack's indirect purchaser claims are therefore dismissed.

**IT IS SO ORDERED.**

Dated: July 11, 2013

SUSAN ILLSTON
United States District Judge