1   ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
    Roman M. Silberfeld, Bar No. 62783
2   RMSilberfeld@rkmc.com
    Bernice Conn, Bar No. 161594
3   BConn@rkmc.com
    Michael A. Geibelson, Bar No. 179970
4   MAGeibelson@rkmc.com
    David Martinez, Bar No. 193183
5   DMartinez@rkmc.com
    Laura E. Nelson, Bar No. 231856
6   LENelson@rkmc.com
    2049 Century Park East, Suite 3400
7   Los Angeles, CA  90067-3208
    Telephone:     310-552-0130
8   Facsimile:     310-229-5800

9   *Attorneys For Plaintiffs Best Buy Co., Inc.; Best Buy
10  Purchasing LLC; Best Buy Enterprise Services,
    Inc.; Best Buy Stores, L.P.; BestBuy.com, L.L.C.;
11  and Magnolia Hi-Fi, Inc.*

12

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15

16  IN RE TFT-LCD (FLAT PANEL) ANTITRUST        Master File No. 07-MD-1827 SI
17  LITIGATION                                   MDL No. 1827

                                                 Individual Cases:
18  This Documents Relates To:                   Case No. 10-CV-4572
                                                 Case No. 12-CV-4114
19  *Best Buy Co., Inc. v. AU Optronics Corp., et al.,*
20  Case No. 10-CV-4572                          **BEST BUY'S TRIAL BRIEF RE:
                                                 FRCP 1006 SUMMARY WITNESS
21  *Best Buy Co., Inc. v. Toshiba Corp. et al.,*   RE:**
    Case No. 12-CV-4114
22                                               **1.   GUILTY PLEAS AND
                                                 JUDGMENTS; AND**
23
                                                 **2.   CORPORATE OWNERSHIP
24                                               DOCUMENTS**

25                                               **The Honorable Susan Illston**

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# I.

## **INTRODUCTION**

Best Buy intends to call Daniel Gill on Monday, August 5, 2013 to summarize voluminous records of guilty pleas and corporate ownership documents.  Mr. Gill is a proper summary witness under Rule 1006 because the underlying materials, which comprise dozens of documents and thousands of pages, are voluminous and admissible.  *See* Fed R. Evid. 1006.  Best Buy disclosed its intention to call a summary witness on these topics in its June 25, 2013 witness list (Dkt. 8179, at pg. 8, items 76-77), and disclosed Mr. Gill on July 23, 2013 as a witness Best Buy intends to call live.

Best Buy also moves for the admission of the records that Mr. Gill will summarize.  Best Buy made this evidence available to Defendants in connection with its Exhibit List on June 24, 2013 (Dkt. 8179), and is doing so again here. [1]

Evidence of Guilty Pleas

Evidence of the guilty pleas (and related judgments and sentencing memorandums) of corporate entities who participated in the global LCD price fixing conspiracy is relevant and admissible.  This evidence is relevant to prove the scope and extent of the conspiracy, as well as to rebut contradictory lay and expert testimony, including testimony already presented at this trial attempting to limit the scope of the conspiracy.  As shown below, the Rule 803(22) hearsay exception broadly applies to criminal judgments, as well as documents underlying the judgment, including guilty pleas and sentencing memorandums.  *See, e.g.*, *United States ex rel. Miller v. Bill Harber Int'l. Constr., Inc.*, 608 F.3d 871 (D.C. Cir. 2010); *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc*., 448 F. Supp. 2d 1172, 1184 (C.D. Cal. 2006).

Evidence of Corporate Ownership

Evidence of the corporate relationships of various defendant and co-conspirator entities – predominantly in the form of corporate Annual Reports and SEC filings – is relevant to establish Best Buy's direct purchases under the Sherman Act.  The evidence is admissible because Best

---

[1] Best Buy also produced its evidence establishing corporate relationships in connection with its Request for Judicial Notice filed on June 18, 2013.  *See* Dkt. 8135.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   Buy has obtained and produced custodian of records declarations under FRE 902(12) and 803(6)

2   authenticating the evidence and establishing the business records foundation for its admission.

3   *See* Silberfeld Declaration, at <u>Exh. B</u>.

4       <u>Defendant's Failure To Stipulate to Authenticity and Business Records Character of</u>

5       <u>Corporate Ownership Documents</u>

6       In its Final Pretrial Scheduling Order, the Court Ordered that the parties work together "to

7   enter reasonable stipulations concerning authenticity, business records status and admissibility of

8   documents, and concerning corporate relationships among subsidiaries and affiliates."  Dkt. 8298,

9   at pg. 8.

10      Defendants have ignored repeated requests that they stipulate to the admissibility of

11  documents establishing corporate ownership and/or to the fact of those relationships.  *See*

12  Silberfeld Decl., at <u>Exh. E</u>.  Best Buy produced custodians of records declarations on July 12, 18

13  and 24 establishing the authenticity and business records character of this evidence.  On July 18,

14  24 and 31, 2013, Best Buy requested that Defendants stipulate to the admissibility of these

15  records and of the ownership relationships they establish.  Defendants have not responded.

16      As such, Best Buy requests that the Court charge Defendants with the time required to

17  establish these relationships.  *See* July 9 Transcript, at 8295, at pg. 9:17-23 ("So, I'm telling you

18  right now that if that's how it starts to work during the trial, then whoever in the Court's view is

19  being unreasonable about things that ought not be disputed, then that person is going to find --

20  that party will find itself in a position where some of its time may be allocated to having resolved

21  an issue that should have been resolved in advance.").

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

<div style="text-align:left;">ROBINS, KAPLAN, MILLER & CIRESI L.L.P.<br>ATTORNEYS AT LAW<br>LOS ANGELES</div>

## II.

## <u>ARGUMENT</u>

**A.    Best Buy Has Established The Requisite Foundation for Mr. Gill's Testimony Under Rule 1006**

Rule 1006 provides that:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court. *Id.*

Best Buy has met each of these requirements because:  (1) the underlying documents are voluminous and admissible; (2) the documents were made available to Defendants on June 25, 2013 and Best Buy produced custodians of records declarations as they became available on July 12, 18 and 24; and (3) Mr. Gill will be subject to cross-examination.  *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515, fn. 9 (9th Cir. 1985) ("Plaintiffs had ample opportunity to cross-examine MGM Grand's Vice-President of Finance, under whose direction the summary was prepared. Any inaccuracies in the cost estimates could have been brought out on this cross-examination.").

**B.    Evidence of Guilty Pleas is Voluminous and Admissible**

This Court has repeatedly denied Defendants' *in limine* motions to exclude guilty pleas of corporate entities who participated in the global LCD price fixing conspiracy.  *See*, *e.g.*, Dkt. No. 8298, at pg. 5 (denying HannStar's motion in this action); Dkt. 5597, at pg 7 (denying Toshiba's motion in the DPP action).

Guilty pleas and other documents underlying judgments in criminal proceedings are, of course, admissible under Rule 803(22).  In *United States ex rel. Miller v. Bill Harber Int'l. Constr., Inc.*, 608 F.3d 871, the D.C. Circuit held that a co-defendant's plea agreement and Rule 11 memorandum are admissible under Rule 803(22):

> That is, because this is a civil case, [the co-defendant's] guilty plea may be admitted under Rule 803(22) against all the defendants as long as the plea was admitted "to prove any fact essential to sustain the

> judgment" . . . [T]he Rule 11 memorandum clearly states more than the bare conclusion that [the co-defendant] was guilty. Instead, it asserts the several facts already mentioned: that [the co-defendant] and others submitted bids and made payments as part of a bid-rigging conspiracy . . . Each of those facts is essential to sustain the legal conclusion of [the co-defendant's] guilt under Section 1 of the Sherman Act, and therefore fell within the scope of the rule.

*Id.*, at 892.

Other courts have reached the same conclusion. *See, e.g.*, *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (plea agreement of Ponzi scheme ringleader was admissible hearsay under Rule 803(22) against other defendants in subsequent civil fraudulent conveyance action); *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1184 (C.D. Cal. 2006) (plea agreement admissible under Rule 803(22) and not barred by hearsay rule) (citation omitted); *United States v. 47 mm Cannon*, 95 F. Supp. 2d 545, 548 (E.D. Va. 2000) (Rule 803(22) permitted the government to use a plea agreement to prove the elements required in a civil forfeiture proceeding); *Guillermety v. Gonzales*, 491 F. Supp. 2d 199, 201 (D.P.R. 2006) (one defendant's guilty plea was admissible under Rule 803(22) to establish all defendants' liability).

In fact, reflecting the broad scope of the Rule 803(22) exception, courts also admit into evidence *foreign indictments* under Rule 803(22). *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 412 (6th Cir. 2006) (holding that Korean court records, including indictments, were admissible under Rule 803(22)). Thus, co-conspirator and individual employee guilty plea evidence for the truth of the matter asserted is admissible under Rule 803(22).[2]

---

[2] Even if Rule 803(22) did not apply to co-conspirator and individual guilty plea evidence (and it does), this evidence would still be admissible hearsay under the Fed. R. Evid. 807 residual exception. *See In re Slatkin*, 525 F.3d 805, 811-13 (9th Cir. 2008) (holding that plea agreement was admissible under Rule 807 after it could not determine which hearsay exception the bankruptcy court relied upon in admitting plea agreement). Like *In re Slatkin*, where the Ninth Circuit observed that the plea agreement was more probative of fraudulent intent than other evidence because direct proof of fraudulent intent is rarely available, *id.* at 812, it is well-recognized that direct evidence to support an antitrust conspiracy claim is "frequently difficult for antitrust plaintiffs to come by." *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 465 (3d Cir. 1998). This is certainly true here, where the plea agreements evidence both the existence of unlawful price-fixing agreements as well as their effect on LCD panel pricing, and where some witnesses in this trial have provided equivocal testimony about competitor agreements or testified that they did not determine pricing based on agreements between conspirators or that the conspiracy was not "effective."

1      Further, evidence of guilty pleas, including those entered into by co-conspirators and

2  individual employees, is admissible to prove the existence of, as well as the extent and scope of

3  the conspiracy alleged by Plaintiffs – *e.g.*, that an industry-wide conspiracy in the LCD Panel

4  market existed, that Defendants and other co-conspirators participated in that conspiracy, and that

5  there were acts committed in furtherance of that conspiracy.  Indeed, evidence of prior guilty

6  pleas of other co-conspirators is relevant *prima facie* evidence against all members of that

7  conspiracy in a subsequent civil suit.  *See, e.g., Miller v. Holzmann*, 563 F. Supp. 2d 54, 82, 84-

8  85 (D.D.C. 2008) (surveying cases and admitting one defendant's guilty plea to establish the

9  liability of other defendants, and holding that facts recited in a guilty plea and Rule 11

10  memorandum of a defendant in a prior antitrust case was admissible in a subsequent civil case

11  against all defendants to prove that a conspiracy of the type alleged by the government existed)[3];

12  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401, 403 (8th Cir. 1995) (non-party

13  employee's guilty plea and accompanying sworn statement were admissible against defendant

14  employer in subsequent civil case); *Newby v. Enron Corp.*, 491 F. Supp. 2d 690, 703 (S.D. Tex.

15  2007) (same); *Guillermety v. Gonzales*, 491 F. Supp. 2d at 201 (same). [4]

16      This evidence is also relevant to rebut testimony from any witnesses that the LCD market

17  was competitive or that they did not determine pricing based on agreements with their

18  competitors.  It is also relevant to rebut any expert testimony proffered by the Defendants that the

19  conspiracy was not "effective."  *See Miller*, 563 F. Supp. 2d at 82 (statement in Rule 11

20  memorandum that conspirators met and agreed "to increase the price level of bids on USAID-

21  funded Contracts" was relevant to whether defendant caused damages to the United States

22  because statement was evidence that the United States paid more on these contracts than it

23  otherwise would have absent collusion).

---

[3] *Aff'd in part, vacated in part on other grounds by United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871 (D.C. Cir. 2010).

[4] *See also* ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, 2005 Edition (2005), G-24 (with respect to a prior antitrust conviction, juries were instructed that they "may use such conviction and findings of fact that support it, without more, to resolve issues in this case that are the same as the ones in the prior case.").

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   Further, the evidence is voluminous, comprising 71 documents and hundreds of pages.

2   *See* Silberfeld Decl., at Exh. A; *cf. United States v. Possick* (8th Cir. 1988) 849 F.2d 332, 339

3   (chart summarizing 20 drug transactions admissible where underlying documentation was

4   voluminous).  Best Buy made the documents available to Defendants for inspection when it

5   disclosed its Exhibit List on June 25, 2013 (*see* Dkt. 8179) [5], and is identifying them again by

6   way of this Trial Brief.  *See* Silberfeld Decl., at <u>Exh. A</u>.

7   Finally, Best Buy's proposed Rule 1006 summary sets forth relevant information from the

8   guilty pleas and judgments in neutral fashion in chart format, and Mr. Gill will be available for

9   cross-examination.  *See Frank Music Corp.*, 772 F.2d at 515.

10   **C.   Evidence of Corporate Relationships is Voluminous and Admissible**

11   Mr. Gill will also summarize voluminous records establishing the ownership relationships

12   for Samsung, Sharp, Toshiba, LGE, Philips, Panasonic, and NEC through the graphics attached as

13   <u>Exhibit D</u>.  These graphics depict these relationships in simple, neutral fashion.  The underlying

14   evidence consists of Annual Reports and SEC statements documenting the corporate

15   relationships, as well as several press releases issued by certain entities about their corporate

16   structure.  *See* <u>Exh. C</u>.

17   Best Buy has established the foundation for the admission of each of these documents

18   through custodian of records declarations authenticating the documents and establishing that they

19   are business records.  *See* Silberfeld Del., at <u>Exh. B</u> (declarations); *cf.* Fed. R. Evid. 803(6) and

20   902(11), (12).  Under Rule 902(11) and (12), certified domestic and foreign records of regularly

21   conducted activity are self-authenticating.  *Id.*  Under Rule 803(6), the documents are admissible

22   as business records.  *Id.*  Further, the records comprise dozens of annual reports and financial

23   statements and thousands of pages and are therefore voluminous under Rule 1006.  *See* <u>Exh. C</u>.

24

25

26

27

28   [5] Best Buy has marked several additional documents as Exhibits since it served its Exhibit list, including custodian of records declarations and certain press releases.  *See* Best Buy Trial Exhibit Nos. 2819-2838.

---

Master Case No. 3:07-MD-1827 SI                                        BEST BUY'S RULE 1006 TRIAL BRIEF

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**CONCLUSION**

For these reasons, the Court should admit evidence of guilty pleas and judgments related to the LCD price fixing conspiracy, as well as documents evidencing corporate relationships. Further, the Court should Order that the time spent by Best Buy in introducing this evidence should be charged against Defendants' trial time.

Dated:  August 1, 2013                    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


By:    /s/ Roman M. Silberfeld
           Roman M. Silberfeld
           Bernice Conn
           Michael A. Geibelson
           David Martinez
           Laura E. Nelson

Attorneys For Plaintiffs
BEST BUY CO., INC.; BEST BUY PURCHASING LLC; BEST BUY ENTERPRISE SERVICES, INC.; BEST BUY STORES, L.P.; BESTBUY.COM, L.L.C.; and MAGNOLIA HI-FI, INC.

## DECLARATION OF ROMAN M. SILBERFELD

I, ROMAN M. SILBERFELD, declare as follows:

1.      I am a partner with the law firm of Robins, Kaplan, Miller & Ciresi L.L.P., counsel for Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc. (collectively "Best Buy") in the above-captioned action currently pending in the U.S. District Court for the Northern District of California.  I submit this declaration in support of Best Buy's Trial Brief re FRCP 1006 Summary Witness Re: 1.  Guilty Pleas and Judgments; and 2. Corporate Ownership Documents.

2.      I have personal knowledge of the facts stated herein, and I could and would competently testify thereto if called as a witness.

3.      Attached hereto as Exhibit A are true and correct certified copies of informations, sentencing memorandums, plea agreements and judgments of individuals and entities convicted of fixing prices for LCD panels in proceedings before this Court.

4.      Attached hereto as Exhibit B is a true and correct copy of the following custodian of records declarations:

| | |
|---|---|
| Trial Exhibit 2828 | Business Records and Authenticity Declaration of Shinobu Obata, General Manager in the Legal Division of NEC Corporation, dated July 22, 2013; |
| Trial Exhibit 2829 | Business Records and Authenticity Declaration of Christoph Wolfsgruber, Group Chief Accountant and Financial Reporting for Philips International B.V., a subsidiary of Koninklijke Philips N.Y. (Philips) dated June 27, 2013; |
| Trial Exhibit 2832 | Business Records and Authenticity Declaration of Hirohisa Ikutomi (1), Manager of IR Disclosure Team, Global Finance Administration Center for Panasonic Corporation (Panasonic), dated July 23, 2013 (authenticating various Press Releases); |
| Trial Exhibit 2830 | Business Records and Authenticity Declaration of Hirohisa Ikutomi (2), Manager of IR Disclosure Team, Global Finance Administration Center for Panasonic Corporation (Panasonic), dated July 23, 2013 (authenticating various Matsushita Electric Industrial Co., Ltd. (Panasonic) Annual Reports); |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

| Trial Exhibit 2831 | Business Records and Authenticity Declaration of Hirohisa Ikutomi (3), Manager of IR Disclosure Team, Global Finance Administration Center for Panasonic Corporation (Panasonic), dated July 23, 2013 (Authenticating various Form 20-F Filings); |
|---|---|
| Trial Exhibit 2833 | Business Records and Authenticity Declaration of Clara Chang, Senior Manager of LG Electronics, USA, dated June 5, 2013; |
| Trial Exhibit 2834 | Business Records and Authenticity Declaration of Hyoung-Geun Park, Senior Manager of LG Electronics, Inc., dated July 12, 2013; |
| Trial Exhibit 2835 | Business Records and Authenticity Declaration of Jihyeoun Jang, Marketing Manager of LG Electronics, Inc., dated July 10, 2013; |
| Trial Exhibit 2836 | Business Records and Authenticity Declaration of Dylan Dunavan, General Counsel of NEC Display Solutions of America, dated July 16, 2013; |
| Trial Exhibit 2837 | Business Records and Authenticity Declaration of Keiji Ushijima, Associate Senior Vice President and General Manager of Legal and IPR Division of NEC LCD Technologies, Ltd., dated July 22, 201; and |
| Trial Exhibit 2838 | Business Records and Authenticity Declaration of Kyusung Lee, Vice President, Global Legal Affairs Team, Samsung Electronics, dated July 18, 2013 |

5.      Attached hereto as Exhibit C is description of evidence supporting certain ownership relationships for Toshiba, Samsung, Sharp, LGE, Philips, Panasonic and NEC.

6.      Attached hereto as Exhibit D is a true and correct copy of graphics that we propose to use during the examination of summary witness Daniel Gil relevant to certain ownership relationships for Toshiba, Samsung, Sharp, LGE, Philips, Panasonic and NEC.  Exhibit D is premised on the documents identified in Exhibit C, which in turn are authenticated by the declarations set forth in Exhibit B above.

7.      Best Buy produced custodians of records declarations on July 12, 18 and 24 establishing that Annual Reports and SEC filings are authentic and are business records.

8.      We have repeatedly asked Defendants to stipulate to the admissibility of these records and their business records character of these documents, as well as to the corporate relationships among subsidiaries and affiliates.

9.     These requests include those made on July 19, 24 and 31, 2013.  Defendants have provided no meaningful response to these requests.  Attached hereto as <u>Exhibit E</u> are true and correct copies of this correspondence.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct to the best of my knowledge.

Executed this 1st day of August, 2013 in San Francisco, California.

<div align="center">

_____/s/ Roman M. Silberfeld_____
Roman M. Silberfeld

</div>

# EXHIBIT A

| Criminal Document Inventory | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
| 2032 | 2/4/2009 | Indictment | Indictment: Cheng Yuan Lin, Wen Jun Cheng, and Duk Mo Koo | AUO | Title 15, United States Code, Section 1 (Price Fixing):    "From on or about September 14,2001, until on or about December 1, 2006 ("the period covered by this Indictment"), … the defendants and other coconspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT-LCD") in the United States and elsewhere. The combination and conspiracy engaged in by the defendants and other coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1)....<br>    "During the period covered by this Indictment, defendant AU OPTRONICS CORPORATION was a Taiwan corporation with its principal place of business located in Hsinchu, Taiwan. Defendant AU OPTRONICS CORPORATION joined and participated in the conspiracy from at least as early as September 14, 2001 and continuing at least until December 1, 2006. During the period covered by this Indictment, defendant AU OPTRONICS CORPORATION was engaged in the business of producing and selling TFT-LCDs to customers in the United States and elsewhere....<br>    "Within the period covered by this Indictment, defendant AU OPTRONICS CORPORATION AMERICA was a wholly owned subsidiary of defendant AU OPTRONICS CORPORATION, and a United States corporation incorporated in the State of California with its principal place of business located in Houston, Texas. Defendant AU OPTRONICS CORPORATION AMERICA joined and participated in the conspiracy from at least as early as spring 2003 and continuing at least until December 1, 2006. Within the period covered by this Indictment, defendant AU OPTRONICS CORPORATION AMERICA was engaged in the business of selling TFT-LCDs to customers in the United States." | 9/14/01-12/1/06 | | |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2070 | 6/10/2010 | Indictment | Superseding Indictment | AUO | Title 15, United States Code, Section 1 (Price Fixing):    "From on or about September 14,2001, until on or about December 1, 2006 ("the period covered by this Indictment"), ... the defendants and other coconspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT-LCD") in the United States and elsewhere. The combination and conspiracy engaged in by the defendants and other coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1)....<br><br>    "During the period covered by this Indictment, defendant AU OPTRONICS CORPORATION was a Taiwan corporation with its principal place of business located in Hsinchu, Taiwan. Defendant AU OPTRONICS CORPORATION joined and participated in the conspiracy from at least as early as September 14, 2001 and continuing at least until December 1, 2006. During the period covered by this Indictment, defendant AU OPTRONICS CORPORATION was engaged in the business of producing and selling TFT-LCDs to customers in the United States and elsewhere....<br><br>    "Within the period covered by this Indictment, defendant AU OPTRONICS CORPORATION AMERICA was a wholly owned subsidiary of defendant AU OPTRONICS CORPORATION, and a United States corporation incorporated in the State of California with its principal place of business located in Houston, Texas. Defendant AU OPTRONICS CORPORATION AMERICA joined and participated in the conspiracy from at least as early as spring 2003 and continuing at least until December 1, 2006. Within the period covered by this Indictment, defendant AU OPTRONICS CORPORATION AMERICA was engaged in the business of selling TFT-LCDs to customers in the United States." | 9/14/01-12/1/06 | | |
| 2087 | 3/13/2012 | Jury Verdict Form | Special Verdict Form (Criminal trial): AU Optronics Corporation, AU Optronics Corporation America, Hsuan Bin "H.B." Chen, Hui Hsiung ("Kuma"), Lai-Juh "L.J." Chen, and Tsannrong "Hubert" Lee for violating Sherman Act as charged | AUO | Guilt found as to AU Optronics Corporation, AU Optronics Corporation America, Hsuan Bin "H.B." Chen, Hui Hsiung ("Kuma"), Lai-Juh "L.J." Chen, and Tsannrong "Hubert" Lee for violating Sherman Act as charged. | 9/14/01-12/1/06 | | |
| 2088 | 12/19/2012 | Jury Verdict Form | Verdict Form (Criminal Trial): Steven Leung | AUO | Found guilty of violating the Sherman Act: Steven Leung | 9/14/01-12/1/06 | | |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2058 | 12/8/2009 | Information | Information: Chi Mei | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing): "1. CHI MEI OPTOELECTRONICS ("defendant") is made defendant on the charge stated below. 2. From on or about September 14,2001 to on or about December 1, 2006, defendant and its coconspirators entered into and engaged in a combination and conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT -LCD"). The combination and conspiracy engaged in by the defendant and its coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation ofSection 1 ofthe Sherman Act (15 U.S.C. § 1). 3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and its coconspirators, the substantial terms of which were to agree to fix the prices of TFT-LCD." | 9/14/01-12/1/06 | | |
| 2062 | 4/23/2010 | Information | Information: Chu-Hsaing "James" Yang | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing) | 9/14/01-12/1/06 | | |
| 2066 | 4/30/2010 | Information | Information: Jau-Yang Ho | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing) | 9/14/01-12/1/06 | | |
| 2073 | 7/28/2010 | Information | Wen-Hung Huang Information | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing) | 9/14/01-12/1/06 | | |
| 2076 | 8/4/2010 | Information | Information: Chen-Lung Kuo | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing) | 9/14/01-12/1/06 | | |
| 2061 | 2/17/2010 | Judgment | Judgment: Chi Mei | Chi Mei | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 12/2006 | | $220 Million |
| 2064 | 4/30/2010 | Judgment | Judgment: Chu-Hsaing Yang | Chi Mei | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 12/2006 | 270 days | $25,000 |
| 2069 | 6/2/2010 | Judgment | Judgment: Jau-Yang Ho | Chi Mei | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 12/2006 | 14 months | $50,000 |
| 2080 | 9/2/2010 | Judgment | Judgment: Wen-Hung Huang | Chi Mei | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 12/2006 | 270 days | $25,000 |
| 2082 | 9/15/2010 | Judgment | Judgment: Chen-Lung Kuo | Chi Mei | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 12/2006 | 270 days | $35,000 |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2059 | 2/2/2010 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Chi Mei | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing): "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold in the United States and elsewhere, from on or about September 14, 2001, to on or about December 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." "In furtherance of the conspiracy, the defendants, through their officers and employees, engaged in discussions and attended meetings, including group meetings commonly referred to by the partipants as "crystal meetings," with representatives of other major TFT-LCD producers.  During these discussions and meeting, agreements were reached to fix the price of TFT-LCD to be sold in the United States and elsewhere." "During the relevant period, TFT-LCD sold by the on or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of TFT-LCD, as well as payments for TFT-LCD, traveled in interstate and foreign commerce." "The business activities of the defendants and their co-conspirators in connection with the production and sale of TFT-LCD that were the subjects of the conspiracy were within the flow of, and substantially affected, interstate and foreign commerce."  "Acts in furtherance of this conspiracy were carried out within the Northern District of California. TFT-LCD that were the subjects of the conspiracy were sold by one or more of the conspirators to customers in this District." | 9/14/01-12/1/06 | | $220 Million |
| 2063 | 4/28/2010 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Chu-Hsaing "James" Yang | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold in the United States and elsewhere, from on or about April 1, 2004, to on or about December 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." | 4/1/04-12/1/06 | 270 days | |
| 2067 | 5/24/2010 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Jau-Yang Ho | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold in the United States and elsewhere, from on or about September 21, 2001, to on or about December 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." | 9/21/01-12/1/06 | 14 months | |
| 2075 | 8/2/2010 | Plea Agmt | Joint Sentencing Memorandum and Plea Agreement: Wen-Hung "Amigo" Huang | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold in the United States and elsewhere, from on or about September 14, 2001 to on or about December 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." | 9/14/01-12/1/06 | | |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2079 | 8/30/2010 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Chen-Lung Kuo | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold in the United States and elsewhere, from on or about April 1, 2004, to on or about December 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." | 4/1/04-12/1/06 | | |
| 2060 | 2/8/2010 | Plea Colloquy | Transcript: Chi Mei Guilty Plea | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing): Admission of engaging in acts, equipment and supplies necessary to the production of tft-lcd traveled in interstate commerce, some acts were carried out within the Northern District of California, one or more products were sold to customers in the Northern District of California (30-31.) | 9/14/01-12/1/06 | | |
| 2065 | 4/30/2010 | Plea Colloquy | Transcript: Chu-Hsaing Yang Guilty Plea | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing): Page 12: 4/1/04-12/1/06 participation in price fixing. | 4/1/04-12/1/06 | | |
| 2068 | 6/1/2010 | Plea Colloquy | Transcript: Jau-Yang Ho Guilty Plea | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing); beginning 9/01 (page 14) | 9/14/01-12/1/06 | | |
| 2078 | 8/6/2010 | Plea Colloquy | Transcript: Wen-Hung Huang Guilty Plea | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing); beginning 9/14/01 (page 12) | 9/14/01-12/1/06 | | |
| 2081 | 9/3/2010 | Plea Colloquy | Transcript: Chen-Lung Kuo Guilty Plea | Chi Mei | Title 15, United States Code, Section 1 (Price Fixing), (Page 11-12) | 4/1/04-9/1/06 | | |
| 2019 | 11/12/2008 | Information | Information: Chunghwa | CPT | Title 15, United States Code, Section 1 (Price Fixing): "From on or about September 14, 2001 to on or about December 1, 2006, defendant and its coconspirators entered into and engaged in a combination and conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT -LCD"). The combination and conspiracy engaged in by the defendant and its coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). 3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and its coconspirators, the substantial terms of which were to agree to fix the prices of TFT-LCD. … During the period covered by this Information, CHUNGHWA PICTURE TUBES, LTD. engaged in the business of producing and selling TFTLCD to customers in the United States and elsewhere." | 9/14/01-12/1/06 | | |
| 2030 | 1/15/2009 | Information | Information: Hsueh-Lung Lee, Chieng-Hon Lin, and Chih-Chun Liu | CPT | Title 15, United States Code, Section 1 (Price Fixing) | 9/14/01-12/1/06 | | |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2031 | 1/20/2009 | Judgment | Judgment: Chunghwa | CPT | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 12/6/06 | | $65 Million |
| 2040 | 2/23/2009 | Judgment | Judgment: Chieng-Hon Lin | CPT | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 12/2006 | 270 days | $50,000 |
| 2043 | 3/9/2009 | Judgment | Judgment: Chih-Chun Liu | CPT | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 12/2006 | 210 days | $30,000 |
| 2044 | 3/9/2009 | Judgment | Judgment: Hsueh-Lung "Brian" Lee | CPT | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 12/2006 | 180 days | $20,000 |
| 2027 | 1/5/2009 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Chunghwa | CPT | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold in the United States and elsewhere, from on or about September 14, 2001, to on or about December 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." "In furtherance of the conspiracy, the defendants, through their officers and employees, engaged in discussions and attended meetings, including group meetings commonly referred to by the partipants as "crystal meetings," with representatives of other major TFT-LCD producers.  During these discussions and meeting, agreements were reached to fix the price of TFT-LCD to be sold in the United States and elsewhere" "During the relevant period, TFT-LCD sold by the on or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of TFT-LCD, as well as payments for TFT-LCD, traveled in interstate and foreign commerce." "The business activities of the defendant and their coconspirators in connection with the production and sale of TFT-LCD that were the subjects of the conspiracy were within the flow of, and substantially affected, interstate and foreign commerce." "Acts in furtherance of this conspiracy were carried out within the Northern District of California. TFT-LCD that were the subjects of the conspiracy were sold by one or more of the conspirators to customers in this District." | 9/14/01-12/01/06 | | |
| 2033 | 2/12/2009 | Plea Agmt | Joint Sentencing Memorandum and Plea Agreement: Chieng-Hon Lin | CPT | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices ofTFT-LCD sold in the United States and elsewhere, from on or about June 11, 2003 to on or about December 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." | 6/11/03-12/1/06 | | |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2038 | 2/20/2009 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Chih-Chun Liu | CPT | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices ofTFT-LCD sold in the United States and elsewhere, from on or about September 14, 2001, to on or about July 8, 2005 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." | 9/14/01-7/8/05 | | |
| 2039 | 2/20/2009 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Hsueh-Lung Lee | CPT | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold in the United States and elsewhere, from on or about September 14, 2001, to on or about December 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." | 9/14/01-12/1/06 | | |
| 2028 | 1/14/2009 | Plea Colloquy | Transcript: Chunghwa Guilty Plea | CPT | Title 15, United States Code, Section 1 (Price Fixing) | 9/14/01-12/1/06 | | |
| 2037 | 2/20/2009 | Plea Colloquy | Transcript: Chieng-Hon Lin Guilty Plea | CPT | Title 15, United States Code, Section 1 (Price Fixing) | 6/11/03-12/1/06 | | |
| 2041 | 2/27/2009 | Plea Colloquy | Transcript: Hsueh-Lung Lee and Chih-Chun Liu Guilty Plea | CPT | Title 15, United States Code, Section 1 (Price Fixing) | 9/14/01-12/1/06 | | |
| 2054 | 8/25/2009 | Information | Information: Epson | Epson | Title 15, United States Code, Section 1 (Price Fixing): "1. EPSON IMAGING DEVICES CORPORATION ("defendant") is made a defendant on the charge stated below. 2. From in or about the fall of2005 to in or about the middle of2006, defendant and its coconspirators entered into and engaged in a combination and conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT-LCD") sold to Motorola Inc. ("Motorola") for use in Razr mobile phones. The combination and conspiracy engaged in by the defendant and its coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section I of the Sherman Act (15 U.S.C. § 1). 3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and its coconspirators, the substantial terms of which were to agree to fix the prices of TFT-LCD to be sold to Motorola for use in Razr mobile phones." | Fall 2005-Middle 2006 | | |
| 2057 | 10/26/2009 | Judgment | Judgment: Epson | Epson | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Approximately 6/2006 | | $26 Million |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2055 | 10/9/2009 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Epson | Epson | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold to Motorola for use in Razr mobile phones, from the fall of 2005 to the middle of 2006 ("the relevant period")  in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  During the relevant period EID engaged in the sale of small-sized TFT-LCD in the United States and elsewhere and employed between 1,000 and 5,000 employees" " In furtherance of the conspiracy, the defendants, through their officers and employees, engaged in bilateral telephone discussions, and attended bilateral meetings in Japan with representatives of other major TFT-LCD producers. During these discussions and meeting, agreements were reached to fix the price of TFT-LCD sold to Motorola for use in Razr mobile phones."  "During the relevant period, TFT-LCD sold by the on or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of TFT-LCD, as well as payments for TFT-LCD, traveled in interstate and foreign commerce." "The business activities of the defendnat and its cocosprators in connection with the production and sale of TFT-LCD that were the subjects of the conspiracy were withinn the flow of, and substantially affected, interstate and foreign commerce." "Acts in furtherance of this conspiracy were carried out within the Northern District of California.  TFT-LCD that were the subjects of the conspiracy were sold by one or more of the conspirators to customers in this District." | Fall 2005- Middle 2006 | | |
| 2056 | 10/16/2009 | Plea Colloquy | Transcript: Epson Guilty Plea | Epson | Title 15, United States Code, Section 1 (Price Fixing) | Fall 2005- Middle 2006 | | |
| 2071 | 6/29/2010 | Information | Information: HannStar | HannStar | Title 15, United States Code, Section 1 (Price Fixing): "1. HANNSTAR DISPLAY CORPORATION ("defendant") is made the defendant on the charge stated below. 2. From on or about September 14, 200 I to on or about January 31, 2006, the defendant and its cocosnprators entered into and engaged in a combination and conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT-LCD"). The combination and conspiracy engaged in by the defendant and its cocosprators wais in unreasonable restraint of interstate and foreign trade and commerce in violation of Section I of the Sherman Act (15 U .S.C. § I). 3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and its cocosprators, the substantial terms of which were to agree to fix the prices of TFT-LCD." | 9/14/01- 1/31/06 | | |
| 2083 | 10/27/2010 | Information | Information: Jui Hung Wu | HannStar | Title 15, United States Code, Section 1 (Price Fixing) | 9/14/01- 1/31/06 | | |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2077 | 8/6/2010 | Judgment | Judgment: HannStar | HannStar | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 1/31/06 | | $30 Million |
| 2085 | 11/12/2010 | Judgment | Judgment: Jui Hung Wu | HannStar | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 1/31/06 | 210 days | $20,000 |
| 2072 | 7/22/2010 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: HannStar | HannStar | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices ofTFT-LCD sold in the United States and elsewhere, from on or about September 14, 2001, to on or about January 31, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." "In furtherance of the conspiracy, the defendants, through their officers and employees, engaged in discussions and attended meetings, including group meetings commonly referred to by the partipants as "crystal meetings," with representatives of other major TFT-LCD producers.  During these discussions and meeting, agreements were reached to fix the price of TFT-LCD to be sold in the United States and elsewhere." "During the relevant period, TFT-LCD sold by the on or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of TFT-LCD, as well as payments for TFT-LCD, traveled in interstate and foreign commerce.  Certain business activities of the defendant and their co-conspirators in connection with the production and sale of TFT-LCD that were the subjects of the conspiracy were within the flow of, and substantially affected, interstate and foreign commerce." "Acts in furtherance of this conspiracy were carried out within the Northern District of California. TFT-LCD that were the subjects of the conspiracy were sold by one or more of the conspirators to customers in this District." | 9/14/01-1/31/06 | | |
| 2084 | 11/9/2010 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Jui Hung Wu | HannStar | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices ofTFT-LCD sold in the United States and elsewhere, from on or about September 21, 2001, to on or about January 31, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." | 9/21/01-1/31/06 | | |
| 2074 | 7/30/2010 | Plea Colloquy | Transcript: HannStar Guilty Plea | HannStar | Title 15, United States Code, Section 1 (Price Fixing) (Page 16) | 9/14/01-1/31/06 | | |
| 2086 | 11/12/2010 | Plea Colloquy | Transcript: Jui Hung Wu Guilty Plea | HannStar | Title 15, United States Code, Section 1 (Price Fixing) | 9/21/01-1/31/06 | | |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2046 | 3/31/2009 | Indictment | Indictment: Sakae Someya | Hitachi | Title 15, United States Code, Section 1 (Price Fixing): "1. SAKAE SOMEYA is hereby indicted and made a defendant on the charge stated below: 2. From on or about January 1, 2001, until on or about December 31, 2004, the exact dates being unknown to the Grand Jury, the defendant, SAKAE SOMEY A, coconspirator Hitachi Displays Ltd. ("Hitachi"), and other corporations and individuals, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT-LCD") sold to Dell Inc. or its subsidiaries ("Dell") for use in desktop monitors and notebook computers. The combination and conspiracy engaged in by the defendant, his corporate employer, and other coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). 3. Defendant SAKAE SOMEYA joined and participated in the conspiracy from as early as January 1, 2001 and continued until at least December 31, 2004." | 1/1/01-12/31/04 | | |
| 2045 | 3/10/2009 | Information | Information: Hitachi | Hitachi | Title 15, United States Code, Section 1 (Price Fixing): "2. From on or about April 1, 2001 to on or about March 31,2004, defendant and its coconspirators entered into and engaged in a combination and conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT LCD") sold to Dell Inc. or its subsidiaries ("Dell") for use in desktop monitors and notebook computers. The combination and conspiracy engaged in by the defendant and its coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). 3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and its coconspirators, the substantial terms of which were to agree to fix the prices of TFT-LCD to be sold to Dell. 4. For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and its coconspirators did those things that they combined and conspired to do, including, among other things: (a) participating in bilateral meetings, conversations, and communications in Japan, Korea, and the United States to discuss the prices of TFT-LCD to be sold to Dell; (b) agreeing, during those bilateral meetings, conversations, and communications, to charge prices of TFT-LCD to be sold to Dell at certain predetermined levels; (c) issuing price quotations in accordance with the agreements reached; and (d) exchanging information on sales of TFT-LCD sold to Dell, for the purpose of monitoring and enforcing adherence to the agreed-upon prices." | 4/1/01-3/31/04 | | |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2050 | 6/4/2009 | Judgment | Judgment: Hitachi | Hitachi | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 3/2004 | | $31 Million |
| 2048 | 5/17/2009 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Hitachi | Hitachi | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold to Dell for use in notebook computers, from on or about April 1, 2001 to on or about March 31, 2004 in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  During the relevant period, Hitachi was engaged in the sale of TFT-LCD for use in notebook computers in the United States and elsewhere and employed between 1,000 and 5,000 employees." "In furtherance of the conspiracy, the defendants, through their officers and employees, engaged in  telephone discussions, and attended bilateral meetings with representatives of other major TFT-LCD producers." "During the relevant period, TFT-LCD sold by the on or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of TFT-LCD, as well as payments for TFT-LCD, traveled in interstate and foreign commerce." "Acts in furtherance of this conspiracy were carried out within the Northern District of California.  TFT-LCD that were the subjects of the conspiracy were sold by one or more of the conspirators to customers in this District." | 4/1/01-3/31/04 | | |
| 2049 | 5/22/2009 | Plea Transcript | Colloquy : Hitachi Guilty Plea | Hitachi | Title 15, United States Code, Section 1 (Price Fixing) | 4/1/01-3/31/04 | | |
| 2020 | 11/12/2008 | Information | Information: LG | LG | Title 15, United States Code, Section 1 (Price Fixing): "2. From on or about September 21, 2001 to on or about June 1, 2006, the defendants and their cococonspirators entered into and engaged in a combination and conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT-LCD"). The combination and conspiracy engaged in by the defendants and their cococonspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). 3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendants and their cococonspirators, the substantial terms of which were to agree to fix the prices of TFT-LCD." | 9/21/01-6/1/06 | | |
| 2029 | 1/15/2009 | Information | Information: Chang Suk Chung | LG | Title 15, United States Code, Section 1 (Price Fixing) | 9/21/01-6/1/06 | | |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2047 | 4/27/2009 | Information | Information: Bock Kwon | LG | Title 15, United States Code, Section 1 (Price Fixing): "1. BOCK KWON ("defendant") is made a defendant on the charge stated below. 2. From on or about September 21, 2001, until on or about June 1, 2006, the defendant's corporate employer, LG Display Co., Ltd. (formerly LG.Philips LCD Co., Ltd.) ("LG"), and coconspirators entered into and engaged in a combination and conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT-LCD"). The combination and conspiracy engaged in by the defendant's corporate employer and coconspirators was an unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). The defendant knowingly joined and participated in the charged conspiracy from on or about September 21, 2001, until on or about June 1, 2006. 3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant, his corporate employer, and coconspirators, the substantial terms of which were to agree to fix the prices of TFT-LCD." | 12/21/01-6/1/06 | | |
| 2035 | 2/18/2009 | Judgment | Judgment: Chang Suk Chung | LG | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 6/1/06 | 7 months | $25,000 |
| 2042 | 3/6/2009 | Judgment | Judgment: LG | LG | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 6/1/06 | | $400 Million |
| 2053 | 6/29/2009 | Judgment | Judgment: Bock Kwon | LG | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Count One | Offense ended 6/2006 | 12 months 1 day | $30,000 |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2022 | 12/8/2008 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: LG | LG | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold in the United States and elsewhere, from on or about September 21, 2001, to on or about June 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." "In furtherance of the conspiracy, the defendants, through their officers and employees, engaged in discussions and attended meetings, including group meetings commonly referred to by the partipcants as 'crystal meetings,' with representatives of other major TFT-LCD producers.  During these discussions and meeting, agreements were reached to fix the price of TFT-LCD to be sold in the United States and elsewhere." "During the relevant period, TFT-LCD sold by the on or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of TFT-LCD, as well as payments for TFT-LCD, traveled in interstate and foreign commerce." "The business activities of the defendants and their co-conspirators in connection with the production and sale of TFT-LCD that were the subjects of the conspiracy were within the flow of, and substantially affected, interstate and foreign commerce."  "Acts in furtherance of this conspiracy were carried out within the Northern District of California.  TFT-LCD that were the subjects of the conspiracy were sold by one or more of the conspirators to customers in this District." | 9/21/01-6/21/06 | | |
| 2036 | 2/20/2009 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Chang Suk Chung | LG | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices ofTFT-LCD sold in the United States and elsewhere, from on or about September 21, 2001, to on or about December 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." | 9/21/01-6/1/06 | | |
| 2051 | 6/18/2009 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Bock Kwon | LG | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold in the United States and elsewhere, from on or about September 21, 2001, to on or about June 1, 2006 (the "relevant period"), in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." | 9/21/01-6/1/06 | | |
| 2024 | 12/15/2008 | Plea Colloquy | Transcript: LG Guilty Plea | LG | Title 15, United States Code, Section 1 (Price Fixing) | 9/21/01 to 6/1/06 | | |
| 2034 | 2/17/2009 | Plea Colloquy | Transcript: Chang Suk Chung Guilty Plea | LG | Title 15, United States Code, Section 1 (Price Fixing): see 2034-0018 | 9/21/01-6/1/06 | | |
| 2052 | 6/24/2009 | Plea Colloquy | Transcript: Bock Kwon Guilty Plea | LG | Title 15, United States Code, Section 1 (Price Fixing) | 9/21/01-6/1/06 | | |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2021 | 11/12/2008 | Information | Information: Sharp | Sharp | Title 15, United States Code, Section 1 (Price Fixing): "2. From on or about April 1, 200 I to on or about December 1, 2006, defendant and its coconspirators entered into and engaged in a combination and conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ("TFT-LCD") sold to Dell Inc. ("Dell") for use in computer monitors and laptops. The combination and conspiracy engaged in by the defendant and its coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S. C. § I). 3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and its coconspirators, the substantial terms of which were to agree to fix the prices of TFT -LCD to be sold to Dell." COUNT 2: "13. From on or about September 1, 2005 to on or about December 1, 2006, defendant and its coconspirators entered into and engaged in a combination and conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of TFT-LCD sold to Apple Computer Inc. ("Apple") for use in iPod portable music players. The combination and conspiracy engaged in by the defendant and its coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1)." COUNT 3: "From in or about the fall of2005 to in or about the middle of 2006, defendant and its coconspirators entered into and engaged in a combination and conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of TFT-LCD sold to Motorola Inc. ("Motorola") for use in Razr mobile phones. The combination and conspiracy engaged in by the defendant and its coconspirators was in unreasonable restraint of interstate and  foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1)." | 4/1/01-12/1/06 | | |
| 2026 | 12/19/2008 | Judgment | Judgment: Sharp | Sharp | Pleaded Guilty to Violation of Title 15, United States Code, Section 1 (Price Fixing): Counts One, Two and Three | Offense ended 12/6/06 | | $120 Million |

| Exhibit No. | Date | Document Type | Document Description | Affiliated Co. / Co. Involved | U.S. District Court Information, Indictment, Plea, Verdict or Judgment Summary Details | Period | Incarceration | Fine |
|---|---|---|---|---|---|---|---|---|
| 2023 | 12/8/2008 | Plea Agreement | Joint Sentencing Memorandum and Plea Agreement: Sharp | Sharp | Title 15, United States Code, Section 1 (Price Fixing);  "conspiracy to suppress and eliminate competition by fixing the prices of TFT-LCD sold in the United States and elsewhere"....."in violation of the Sherman Anitrust Act, 15 U.S.C. § 1."   Sharp pleaded guilty to a three-count information which included conspiracy counts to suppress and eliminate competition by fixing the prices of TFT-LCD sold to Dell for use computer monitors and laptops, from on or about April 1, 2001 to on or about December 1, 2006; to suppress and eliminate competition by fixing the prices of TFT-LCD sold to Apple for use in iPod portable music players, from on or about September 1, 2005 to on or about December 1, 2006; and eliminate competition by fixing the prices of TFT-LCD sold to Motorola for use in Razr mobile phones, from the fall of 2005 to the middle of 2006.  "In furtherance of the conspiracy, the defendants, through their officers and employees, engaged in bilateral telephone discussions, and attended bilateral meetings with representatives of other major TFT-LCD producers.  During these discussions and meeting, agreements were reached to fix the price of TFT-LCD' to be sold to Dell, Apple and Motorola."  "During the relevant period, TFT-LCD sold by the one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of TFT-LCD, as well as payments for TFT-LCD, traveled in interstate and foreign commerce." | 4/1/01 - 12/1/06 | | |
| 2025 | 12/16/2008 | Plea Colloquy | Transcript: Sharp Guilty Plea | Sharp | Title 15, United States Code, Section 1 (Price Fixing) | 4/1/01-12/1/06 | | |

EXHIBIT B

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**(SAN FRANCISCO DIVISION)**

</div>

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL)<br>ANTITRUST LITIGATION | MASTER CASE NO. 3:07-md-1827 SI, MQ<br>MDL NO. 1827 |
| | |
| **This Documents Relates To:** | Individual Cases: |
| *Best Buy v. AU Optronics Corp. et al,*<br>Case No. 10-CV-4572, | CASE NO. 10-CV-4572<br>CASE NO. 10-CV-5452 |
| *Best Buy v. Toshiba Corp. et al*<br>Case No. 12-CV-4114 | CASE NO. 10-CV-4945<br>CASE NO. 12-CV-4114 |
| *Eastman Kodak Company v. Epson Imaging*<br>*Devices Corp. et al.,* Case No. 10-CV-5452 | **CERTIFICATION OF AUTHENTICITY** |

I, Shinobu Obata, declare as follows:

1.    I currently hold the position of General Manager in the Legal Division of NEC Corporation.   Except for those matters on information and belief, which I believe to be true, I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.    Attached hereto as Attachment A is a list of business records (identified by document name) prepared and/or maintained by NEC Corporation ("the Records").

3.    I am qualified to attest to the manner and process by which these Records are created and maintained by virtue of my duties and responsibilities as General Manager in the Legal Division of NEC Corporation.

4.    The Records are true and correct duplicate copies of original business records prepared and/or maintained by NEC Corporation.

5.    The Records were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, someone with knowledge of those matters.

6.    The Records were kept in the course of a regularly conducted business activity.

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI

2013 Exhibit 2828

1      7.    The Records were made as a regular practice of that business activity.

2

3      I declare under penalty of perjury and criminal penalty under the laws of the United States of

4  America that the foregoing is true and correct. Executed this 22nd day of July 2013.

5

6

7                             Shinobu Obata

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION OF AUTHENTICITY                                      Master File No. M07-1827 SI
                                     Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                                 2

1

## ATTACHMENT A

2

1.  Press Release, Name Determined for New Joint Venture Company in the Small and Midsized

3
    Liquid Crystal Panel Business, April 18, 2011, available at

4
    http://www.nec.co.jp/press/en/1104/1801.html.

5

6
2.  Press Release, The NEC Group and AVIC International Group Agree to a Capital Alliance to
    Strengthen the Small and Midsized Liquid Crystal Panel Business, February 25, 2011,

7
    available at http://www.nec.co.jp/press/en/1102/2502.html.

8

9
3.  Press Release, NEC Establishes New LCD Company to Develop Core LCD Technologies and
    Customized Products for the Industrial and High-End Monitor Markets, January 30, 2003,

10
    available at http://www.nec.co.jp/press/en/0301/3002.html.

11

12
4.  Press Release, NEC Establishes Specialist LCD Company to Develop Core LCD

13
    Technologies and Customized Products for the Industrial and High-End Monitor Markets,

14
    March 31, 2003, available at http://www.nec.co.jp/press/en/0303/3102.html.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION OF AUTHENTICITY

Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATION OF AUTHENTICITY

Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
4

1   **UNITED STATES DISTRICT COURT**
    **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
2   **(SAN FRANCISCO DIVISION)**

3

4   | IN RE: TFT-LCD (FLAT PANEL) | MASTER CASE NO. 3:07-md-1827 SI, MQ |
    | ANTITRUST LITIGATION | MDL NO. 1827 |

5

6   **This Documents Relates To:**          Individual Cases:

7   *Best Buy v. AU Optronics Corp. et al,*    CASE NO. 10-CV-4572
    Case No. 10-CV-4572,                       CASE NO. 10-CV-5452
8                                              CASE NO. 10-CV-4945
    *Best Buy v. Toshiba Corp. et al*          CASE NO. 12-CV-4114
9   Case No. 12-CV-4114

10  *Eastman Kodak Company v. Epson Imaging*   **CERTIFICATION OF AUTHENTICITY**
    *Devices Corp. et al.,* Case No. 10-CV-5452

11  *Target Corp., et. al., v. AU Optronics Corp. et al.,*
12  Case No. 10-CV-4945

13

14      I, Christoph Wolfsgruber, declare as follows:

15      1.      I am Group Chief Accountant, Financial Reporting, for Philips International B.V., a

16  subsidiary of Koninklijke Philips N.V. ("Philips") (formerly known as Koninklijke Philips Electronics

17  N.V.), and have held this position for one year. I have been employed by Philips International B.V.

18  and its affiliates for 29 years. I have personal knowledge of the facts set forth herein, and if called as a

19  witness, I could and would competently testify thereto.

20      2.      Attached hereto as Attachment A is a list identifying business records prepared and/or

21  maintained by Philips ("the Records").

22      3.      I am the custodian of the Records, or am otherwise qualified to attest to the manner and

23  process by which these Records are created and maintained by virtue of my duties and responsibilities

24  as Group Chief Accountant, Financial Reporting at Philips International BV.

25      4.      The Records are true and correct duplicate copies of original business records prepared

26  and/or maintained by Philips.

27

28

CERTIFICATION OF AUTHENTICITY                                      Master File No. M07-1827 SI
                    Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                                1

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI

2013 Exhibit 2829

5.     The Records were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, someone with knowledge of those matters.

6.     The Records were kept in the course of a regularly conducted business activity.

7.     The Records were made as a regular practice of that business activity.

I declare under penalty of perjury and criminal penalty under the laws of the United States of America that the foregoing is true and correct. Executed this 27th day of June, 2013 at Amsterdam, The Netherlands.

Christoph Wolfsgruber

2829-0002

**ATTACHMENT A**

LG Electronics Inc. / Koninklijke Philips Electronics N.V. Joint Venture Agreement

LG Electronics Inc. / Koninklijke Philips Electronics N.V. Shareholders Agreement

Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2000

Exhibit 8 to Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2000, "List of Significant Subsidiaries"

Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2001

Exhibit 8 to Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2001, "List of Significant Subsidiaries"

Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2002

Exhibit 8 to Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2002, "List of Significant Subsidiaries"

Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2003

Exhibit 8 to Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2003, "List of Significant Subsidiaries"

Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2004

Exhibit 8 to Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2004, "List of Significant Subsidiaries"

Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2005

Exhibit 8 to Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2005, "List of Significant Subsidiaries"

Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2006

Exhibit 8 to Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2006, "List of Significant Subsidiaries"

Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2007

Exhibit 8 to Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2007, "List of Significant Subsidiaries"

Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2008

Exhibit 8 to Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2008, "List of Significant Subsidiaries"

Philips Annual Report 2001

Philips Annual Report 2002

1   Philips Annual Report 2003

2   Philips Annual Report 2004

3   Philips Annual Report 2005

4   Philips Annual Report 2006

5   Philips Annual Report 2007

6   Philips  Annual Report 2008

7   Press Release, Philips reclassifies its Mobile Display Systems Activities under 'Other Activities,' dated April 15, 2005 available at

8   http://www.newscenter.philips.com/main/standard/about/news/press/archive/2005/ article-14962.wpd.

9

10   Press Release, Philips' breakthrough polyled technology makes its debut in new James Bond film, Dated December 18, 2002,

11   available at http://www.newscenter.philips.com/main/standard/about/news/press/archive/2002/ article-2642.wpd.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL)<br>ANTITRUST LITIGATION | MASTER CASE NO. 3:07-md-1827 SI, MQ<br>MDL NO. 1827 |
| **This Documents Relates To:**<br><br>*Best Buy v. AU Optronics Corp. et al,*<br>Case No. 10-CV-4572,<br><br>*Best Buy v. Toshiba Corp. et al*<br>Case No. 12-CV-4114<br><br>*Eastman Kodak Company v. Epson Imaging*<br>*Devices Corp. et al.,* Case No. 10-CV-5452<br><br>*Target Corp., et. al.,* v. *AU Optronics Corp. et al.,*<br>Case No. 10-CV-4945 | Individual Cases:<br><br>CASE NO. 10-CV-4572<br>CASE NO. 10-CV-5452<br>CASE NO. 10-CV-4945<br>CASE NO. 12-CV-4114<br><br>**CERTIFICATION OF AUTHENTICITY** |

I, Hirohisa Ikutomi, declare as follows:

1.     I am Manager of IR Disclosure Team, Global Finance Administration Center for Panasonic Corporation ("Panasonic"), and have held this position for half a year.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.     Attached hereto as Attachment A is a list identifying business records prepared and/or maintained by Panasonic ("the Records").

3.     I am the custodian of the Records, or am otherwise qualified to attest to the manner and process by which these Records are created and maintained by virtue of my duties and responsibilities as a Manager at Panasonic.

4.     The Records are true and correct duplicate copies of original business records prepared and/or maintained by Panasonic.

5.     The Records were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, someone with knowledge of those matters.

UNITED STATES DISTRICT COURT,<br>NORTHERN DISTRICT OF CALIFORNIA<br>MDL No. 3:07-md-1827-SI<br><br>**2013 Exhibit 2832**

6.   The Records were kept in the course of a regularly conducted business activity.

7.   The Records were made as a regular practice of that business activity.

I declare under penalty of perjury and criminal penalty under the laws of the United States of America that the foregoing is true and correct. Executed this **23** day of July 2013 at Osaka.

*H. Ikutomi*

Hirohisa Ikutomi

2832-0002

1

## ATTACHMENT A

2 Matsushita Electric Industrial Co., Ltd. form 20-F for the fiscal year ended March 31, 2002

3 Matsushita Electric Industrial Co., Ltd. form 20-F for the fiscal year ended March 31, 2003

4 Matsushita Electric Industrial Co., Ltd. form 20-F for the fiscal year ended March 31, 2004

5 Matsushita Electric Industrial Co., Ltd. form 20-F for the fiscal year ended March 31, 2005

6 Matsushita Electric Industrial Co., Ltd. form 20-F for the fiscal year ended March 31, 2006

7 Matsushita Electric Industrial Co., Ltd. form 20-F for the fiscal year ended March 31, 2007

8 Matsushita Electric Industrial Co., Ltd. form 20-F for the fiscal year ended March 31, 2008

9 Panasonic Corporation form 20-F for the fiscal year ended March 31, 2009

10 Panasonic Corporation form 20-F for the fiscal year ended March 31, 2010

11 Panasonic Corporation form 20-F for the fiscal year ended March 31, 2011

12 Panasonic Corporation form 20-F for the fiscal year ended March 31, 2012

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION OF AUTHENTICITY

Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
3

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | MASTER CASE NO. 3:07-md-1827 SI, MQ MDL NO. 1827 |
| **This Documents Relates To:** | Individual Cases: |
| *Best Buy v. AU Optronics Corp. et al,* Case No. 10-CV-4572, | CASE NO. 10-CV-4572 CASE NO. 10-CV-5452 CASE NO. 10-CV-4945 CASE NO. 12-CV-4114 |
| *Best Buy v. Toshiba Corp. et al* Case No. 12-CV-4114 | |
| *Eastman Kodak Company v. Epson Imaging Devices Corp. et al.,* Case No. 10-CV-5452 | **CERTIFICATION OF AUTHENTICITY** |
| *Target Corp., et. al.,* v. *AU Optronics Corp. et al.,* Case No. 10-CV-4945 | |

I, Hirohisa Ikutomi, declare as follows:

1.     I am Manager of IR Disclosure Team, Global Finance Administration Center for Panasonic Corporation ("Panasonic"), and have held this position for half a year. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.     Attached hereto as Attachment A is a list identifying certain documents prepared and/or maintained by Panasonic ("the Documents").

3.     I am the custodian of the Documents, or am otherwise qualified to attest to the manner and process by which these Documents are created and maintained by virtue of my duties and responsibilities as a Manager at Panasonic.

4.     The Documents are true and correct duplicate copies of original documents prepared and/or maintained by Panasonic.

5.     The Documents were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, someone with knowledge of those matters.

CERTIFICATION OF AUTHENTICITY      Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
1

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI

2013 Exhibit 2830

1
2      I declare under penalty of perjury and criminal penalty under the laws of the United States of
3   America that the foregoing is true and correct.  Executed this __23__ day of July 2013 at Osaka.
4
5                                    _H. Ikutomi_
6                                    Hirohisa Ikutomi
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATION OF AUTHENTICITY                                    Master File No. M07-1827 SI
                              Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                                   2

1

## ATTACHMENT A

2   1.  Press Release. Hitachi, Toshiba and Matsushita Conclude Agreement for Establishment of TV LCD Panel Joint Venture, IPS Alpha Technology, October 29, 2004

3

4   2.  Press Release. Conclusion of Formal Contract Between Hitachi and Matsushita Related to Comprehensive LCD Panel Business Alliance, February 15, 2008

5   3.  Press Release. Panasonic to Change Company Name of Subsidiary (IPS Alpha Technology),August 23, 2010,

6

7   4.  Press Release. Matsushita Announces Proposed Senior Management Changes

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION OF AUTHENTICITY

Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
3

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)**

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | MASTER CASE NO. 3:07-md-1827 SI, MQ MDL NO. 1827 |
| | |
| **This Documents Relates To:** | Individual Cases: |
| *Best Buy v. AU Optronics Corp. et al,* Case No. 10-CV-4572, | CASE NO. 10-CV-4572 CASE NO. 10-CV-5452 CASE NO. 10-CV-4945 |
| *Best Buy v. Toshiba Corp. et al* Case No. 12-CV-4114 | CASE NO. 12-CV-4114 |
| *Eastman Kodak Company v. Epson Imaging Devices Corp. et al.,* Case No. 10-CV-5452 | **CERTIFICATION OF AUTHENTICITY** |
| *Target Corp., et. al.,* v. *AU Optronics Corp. et al.,* Case No. 10-CV-4945 | |

I, Hirohisa Ikutomi, declare as follows:

1.     I am Manager of IR Disclosure Team, Global Finance Administration Center for Panasonic Corporation ("Panasonic"), and have held this position for half a year.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.     Attached hereto as Attachment A is a list identifying business records prepared and/or maintained by Panasonic ("the Records").

3.     I am the custodian of the Records, or am otherwise qualified to attest to the manner and process by which these Records are created and maintained by virtue of my duties and responsibilities as a Manager at Panasonic.

4.     The Records are true and correct duplicate copies of original business records prepared and/or maintained by Panasonic.

5.     The Records were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, someone with knowledge of those matters.

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI

2013 Exhibit 2831

6.     The Records were kept in the course of a regularly conducted business activity.

7.     The Records were made as a regular practice of that business activity.


I declare under penalty of perjury and criminal penalty under the laws of the United States of America that the foregoing is true and correct. Executed this **23** day of July 2013 at Osaka.

Hirohisa Ikutomi

2831-0002

## ATTACHMENT A

Matsushita Electric Industrial Co., Ltd. Annual Report 2001

Matsushita Electric Industrial Co., Ltd. Annual Report 2002

Matsushita Electric Industrial Co., Ltd. Annual Report 2008

1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT

8          NORTHERN DISTRICT OF CALIFORNIA

9          SAN FRANCISCO DIVISION

10

11  | IN RE TFT-LCD (FLAT PANEL) ANTITRUST | Master File No. 07-MD-1827 SI
    | LITIGATION | MDL No. 1827

12

13  This Documents Relates To:            Individual Cases:
                                          Case No. 10-CV-4572
14  *Best Buy Co., Inc. v. AU Optronics Corp., et al.,*   Case No. 12-CV-4114
    Case No. 10-CV-4572                   Case No. 10-CV-5452
                                          Case No. 10-CV-4945
15  *Best Buy Co., Inc. v. Toshiba Corp. et al.,*
16  Case No. 12-CV-4114                   **DECLARATION OF CLARA CHANG**

17  *Eastman Kodak Company v. Epson Imaging
    Devices Corp., et al.,*
18  Case No. 10-CV-5452                   The Honorable Susan Y. Illston

19  *Target Corp., et al. v. AU Optronics Corp., et
    al.,*
20  Case No. 10-CV-4945

21

22

23

24

25

26

27

28

Master Case No. 3:07-MD-1827 SI
Individual Files: 10-CV-4572; 12-CV-4114          DECLARATION OF CLARA CHANG
10-CV-5452; 10-CV-4945

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI

2013 Exhibit 2833

I, Clara Chang, declare as follows:

1.      I am Clara Chang, and I have worked for LG Electronics USA for 9 years.  I am currently Sr. manager, and I have served in this role for 9 years.

2.      I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

3.      Attached hereto as Attachment A is a true and correct copy of a list of records created by the LG Electronics USA.

4.      The records included in Attachment A are true and correct duplicate copies of original business records prepared and maintained by LG Electronics USA.

5.      I swear or affirm that the following is true regarding the records included in Attachment A:

    A.  I am the custodian of the records, or I am an employee familiar with the manner and process by which these records are created and maintained, by virtue of my duties and responsibilities as PR manager;

    B.  The records were made at or near the time of the occurrences of the matters set forth, by, or from information transmitted by, personnel with knowledge of those matters;

    C.  The records were kept in the course of regularly conducted business activity;

    D.  It was the regular practice of LG Electronics USA to make the records.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 5th  day of June 2013, at New Jersey.



**Attachment A**

LG Electronics Press Release, LG Electronics USA Names K.I Kown to President of the
Consumer Electronics Division

1

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)**

2

3

| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | MASTER CASE NO. 3:07-md-1827 SI, MQ MDL NO. 1827 |

4

5

6  **This Documents Relates To:**

7  *Best Buy v. AU Optronics Corp. et al,*
   Case No. 10-CV-4572,

8  *Best Buy v. Toshiba Corp. et al*
   Case No. 12-CV-4114

9

10 *Eastman Kodak Company v. Epson Imaging
   Devices Corp. et al.,* Case No. 10-CV-5452

11 *Target Corp., et. al.,* v. *AU Optronics Corp. et al.,*
   Case No. 10-CV-4945

12

Individual Cases:

CASE NO. 10-CV-4572
CASE NO. 10-CV-5452
CASE NO. 10-CV-4945
CASE NO. 12-CV-4114

**DECLARATION OF HYOUNG-GEUN
PARK**

13

14    I, Hyoung-Geun Park, declare as follows:

15    1.    I have been employed by LG Electronics, Inc. ("LG") for 9 years. I am currently a

16 senior manager in the consolidation team, and have held this position for 7 years.  Except for those

17 matters on information and belief, which I believe to be true, I have personal knowledge of the facts set

18 forth herein, and if called as a witness, I could and would competently testify thereto.

19    2.    Attached hereto as Attachment A is a list of business records prepared and/or

20 maintained by LG ("the Records").

21    3.    I am the custodian of the Records, or am otherwise qualified to attest to the manner and

22 process by which these Records are created and maintained by virtue of my duties and responsibilities

23 as a senior manager in the consolidation team at LG.

24    4.    The Records are true and correct duplicate copies of original business records prepared

25 and/or maintained by LG.

26    5.    The Records were made at or near the time of the occurrences of the matters set forth by,

27 or from information transmitted by, someone with knowledge of those matters.

28

CERTIFICATION OF AUTHENTICITY                    Master File No. M07-1827 SI
               Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                        1

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI

**2013 Exhibit 2834**

6.     The Records were kept in the course of a regularly conducted business activity.

7.     The Records were made as a regular practice of that business activity.


I declare under penalty of perjury and criminal penalty under the laws of the United States of America that the foregoing is true and correct. Executed this _12_ day of July 2013.

Hyoung-Geun Park

1

## ATTACHMENT A

2

LG ELECTRONICS INC. and Subsidiaries Audit Report for the Year Ended December 31, 1999

3

LG ELECTRONICS INC. and Subsidiaries Audit Report for the Year Ended December 31, 2000

4

and 1999

5

LG ELECTRONICS INC. and Subsidiaries Audit Report for the Year Ended December 31, 2001

6

and 2000

7

LG ELECTRONICS INC. Audit Report 2002

8

LG ELECTRONICS INC. and Subsidiaries Consolidated Financial Statements 2003 and 2002

9

LG ELECTRONICS INC. and Subsidiaries Consolidated Financial Statements 2004 and 2003

10

LG ELECTRONICS INC. and Subsidiaries Consolidated Financial Statements 2005 and 2004

11

LG ELECTRONICS INC. and Subsidiaries Consolidated Financial Statements 2006 and 2005

12

LG ELECTRONICS INC. and Subsidiaries Consolidated Financial Statements 2007 and 2006

13

LG ELECTRONICS INC. and Subsidiaries Consolidated Financial Statements 2008 and 2007

14

LG ELECTRONICS INC. and Subsidiaries Consolidated Financial Statements 2009 and 2008

15

LG ELECTRONICS INC. Separate Financial Statements December 31, 2010 and 2009

16

LG ELECTRONICS Consolidated Financial Statements December 31, 2012 and 2011

17

18

19

20

21

22

23

24

25

26

27

28

hyejin1.lee/이혜진/2013-06-26 13:27

**2834-0003**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | MASTER CASE NO. 3:07-md-1827 SI, MQ MDL NO. 1827 |
| **This Documents Relates To:** | Individual Cases: |
| *Best Buy v. AU Optronics Corp. et al,* Case No. 10-CV-4572, | CASE NO. 10-CV-4572 CASE NO. 10-CV-5452 |
| *Best Buy v. Toshiba Corp. et al* Case No. 12-CV-4114 | CASE NO. 10-CV-4945 CASE NO. 12-CV-4114 |
| *Eastman Kodak Company v. Epson Imaging Devices Corp. et al.,* Case No. 10-CV-5452 | **DECLARATION OF JIHYEOUN JANG** |
| *Target Corp., et. al.,* v. *AU Optronics Corp. et al.,* Case No. 10-CV-4945 | |

I, Jihyeoun Jang, declare as follows:

1.      I am currently employed by LG Electronics, Inc. ("LG") as a marketing manager, and have held this position for 2.5 years.  Except for those matters on information and belief, which I believe to be true, I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.      Attached hereto as Attachment A is a list of business records prepared and/or maintained by LG ("the Records").

3.      I am the custodian of the Records, or am otherwise qualified to attest to the manner and process by which these Records are created and maintained by virtue of my duties and responsibilities as a marketing manager at LG.

4.      The Records are true and correct duplicate copies of original business records prepared and/or maintained by LG.

5.      The Records were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, someone with knowledge of those matters.

---

CERTIFICATION OF AUTHENTICITY                                                    Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
1

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA MDL No. 3:07-md-1827-SI

2013 Exhibit 2835

1    6.    The Records were kept in the course of a regularly conducted business activity.

2    7.    The Records were made as a regular practice of that business activity.

3

4    I declare under penalty of perjury and criminal penalty under the laws of the United States of

5    America that the foregoing is true and correct.  Executed this _10_ day of July 2013.

6

7

8                                    Jihyeoun Jang

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION OF AUTHENTICITY                          Master File No. M07-1827 SI
                              Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                                   2

## Attachment A

LG ELECTRONICS INC. Annual Report 1998
LG ELECTRONICS INC. Annual Report 1999
LG ELECTRONICS INC. Annual Report 2000
LG ELECTRONICS INC. Annual Report 2001
LG ELECTRONICS INC. Annual Report 2002
LG ELECTRONICS INC. Annual Report 2003
LG ELECTRONICS INC. Annual Report 2004

SF1 1959072v.1

2835-0003

<table>
<tr><td>1</td><td colspan="2" align="center">UNITED STATES DISTRICT COURT<br>FOR THE NORTHERN DISTRICT OF CALIFORNIA<br>(SAN FRANCISCO DIVISION)</td></tr>
</table>

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL)<br>ANTITRUST LITIGATION | MASTER CASE NO. 3:07-md-1827 SI, MQ<br>MDL NO. 1827 |
| **This Documents Relates To:** | Individual Cases: |
| *Best Buy v. AU Optronics Corp. et al,*<br>Case No. 10-CV-4572, | CASE NO. 10-CV-4572 |
| *Best Buy v. Toshiba Corp. et al*<br>Case No. 12-CV-4114 | CASE NO. 10-CV-5452<br>CASE NO. 10-CV-4945<br>CASE NO. 12-CV-4114 |
| *Eastman Kodak Company v. Epson Imaging<br>Devices Corp. et al.,* Case No. 10-CV-5452 | **CERTIFICATION OF AUTHENTICITY** |
| *Target Corp., et. al.,* v. *AU Optronics Corp. et al.,*<br>Case No. 10-CV-4945 | |

I, Dylan Dunavan, declare as follows:

1.      I currently hold the position of General Counsel of NEC Display Solutions of America, Inc. and have represented NEC Display Solutions of America, Inc. as in-house counsel since 2000. Except for those matters on information and belief, which I believe to be true, I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.      Attached hereto as Attachment A is a list of business records (identified by document name)("the Records").

3.      I am qualified to attest to the manner and process by which these Records are created and maintained by virtue of my duties and responsibilities as General Counsel at NEC Display Solutions of America, Inc.

4.      The Records are true and correct duplicate copies of original business records prepared and/or maintained by the following NEC entities:

a.      Records Nos. 1-6, 7, 10 and 13:  NEC Corporation

---

CERTIFICATION OF AUTHENTICITY

Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
1

UNITED STATES DISTRICT COURT.
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3 07-md-1827-SI

2013 Exhibit 2836

1          b.   Records Nos. 8-9:  NEC Display Solutions of America, Inc.

2          c.   Records Nos. 11-12:  NEC Corporation of America

3      5.     The Records were made at or near the time of the occurrences of the matters set forth

4  by, or from information transmitted by, someone with knowledge of those matters.

5      6.     The Records were kept in the course of a regularly conducted business activity.

6      7.     The Records were made as a regular practice of that business activity.

7

8      I declare under penalty of perjury and criminal penalty under the laws of the United States of

9  America that the foregoing is true and correct.  Executed this 16th day of July 2013.

10

11                                    _____
                                     Dylan Dunavan

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION OF AUTHENTICITY                      Master File No. M07-1827 SI
                                   Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                                        2

### ATTACHMENT A

1. NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2000
2. NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2001
3. NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2002
4. NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2003
5. NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2004
6. NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2005
7. Press Release, NEC & Mitsubishi Electric Establish Display Monitor Business, Jan. 28, 2000
   available at www.nec.co.jp/press/en/0001/2801.html.
8. Press Release, NEC-Mitsubishi Electric Visual Systems Corporation to Become NEC Corporation Wholly-Owned Subsidiary, dated Feb. 21, 2005 available at http://www.necdisplay.com/press-release/nec-mitsubishi-electric-visual-systems-corporation/256.
9. Press Release, NEC-Mitsubishi Begins Operations as NEC Display Solutions, Apr. 1, 2005 available at www.necdisplay.com/press-release/nec-mitsubishi-begins-operations-as-nec-displayso/413.
10. Press Release, NEC Solutions (America), Inc. Launched Today Formed From Integration of Three NEC Companies, Apr. 1, 2002 available at www.nec.co.jp/press/en/0204/0102.html.
11. Press Release, NEC Corporation of America Begins Operations as a Newly Integrated Company, July 3, 2006 available at www.necunifiedsolutions.com/main/NewsEvents/NewPressPage.asp?release=2006070301.xml.
12. Press Release, NEC Sets TPC Benchmark E (TPC-E) Performance Record, Mar. 29, 2012 available at www.necam.com/About/read.cfm?ID=932e575c-9ddf-42d4-841a-ec052b591975.
13. Press Release, NEC USA, NEC America & NEC Solutions (America) to be Combined to Form NEC Corporation of America, Apr. 26, 2006 available at www.nec.co.jp/press/en/0604/2602.html.

CERTIFICATION OF AUTHENTICITY

Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
3

1

2

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)**

3

4

5

IN RE: TFT-LCD (FLAT PANEL)
ANTITRUST LITIGATION

MASTER CASE NO. 3:07-md-1827 SI, MQ
MDL NO. 1827

6

7

8

9

10

11

**This Documents Relates To:**

*Best Buy v. AU Optronics Corp. et al,*
Case No. 10-CV-4572,

*Best Buy v. Toshiba Corp. et al*
Case No. 12-CV-4114

*Eastman Kodak Company v. Epson Imaging
Devices Corp. et al.,* Case No. 10-CV-5452

Individual Cases:

CASE NO. 10-CV-4572
CASE NO. 10-CV-5452
CASE NO. 10-CV-4945
CASE NO. 12-CV-4114

**CERTIFICATION OF AUTHENTICITY**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Keiji Ushijima, declare as follows:

    1.    I currently hold the position of Associate Senior Vice President and General Manager of Legal & IPR Division of NEC LCD Technologies, Ltd. (currently NLT Technologies, Ltd., "NLT"). Except for those matters on information and belief, which I believe to be true, I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

    2.    Attached hereto as Attachment A is a list of business records (identified by document name) prepared and/or maintained by NLT ("the Records").

    3.    I am qualified to attest to the manner and process by which these Records are created and maintained by virtue of my duties and responsibilities as Associate Senior Vice President and General Manager of Legal & IPR Division of NLT.

    4.    The Records are true and correct duplicate copies of original business records prepared and/or maintained by NLT.

    5.    The Records were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, someone with knowledge of those matters.

CERTIFICATION OF AUTHENTICITY

Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
1

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI

2013 Exhibit 2837

6.     The Records were kept in the course of a regularly conducted business activity.

7.     The Records were made as a regular practice of that business activity.

I declare under penalty of perjury and criminal penalty under the laws of the United States of America that the foregoing is true and correct.  Executed this 22nd day of July 2013.

Keiji Ushijima

CERTIFICATION OF AUTHENTICITY

Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
2

1

## ATTACHMENT A

2

1.  Press Release, Capital Alliance, February 25, 2011, available at http://www.nlt-

3

technologies.co.jp/en/release/release_110225.html.

4

5

2.  Press Release, About the new company name announced today, April 18, 2011, available

at http://www.nlt-technologies.co.jp/en/release/release_110418.html.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION OF AUTHENTICITY                                      Master File No. M07-1827 SI
                                         Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
                                                                      3

2837-0003



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATION OF AUTHENTICITY

Master File No. M07-1827 SI
Individual Files 10-CV-4572; 10-CV-5452; 10-CV-4945; 12-CV-4114
4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. 07-MD-1827 SI<br>MDL No. 1827 |
| This Documents Relates To: | Individual Cases:<br>Case No. 10-CV-4572<br>Case No. 12-CV-4114<br>Case No. 10-CV-5452<br>Case No. 10-CV-4945 |
| *Best Buy Co., Inc. v. AU Optronics Corp., et al.,*<br>Case No. 10-CV-4572 | |
| *Best Buy Co., Inc. v. Toshiba Corp. et al.,*<br>Case No. 12-CV-4114 | **DECLARATION OF KYUSUNG LEE** |
| *Eastman Kodak Company v. Epson Imaging Devices Corp., et al.,*<br>Case No. 10-CV-5452 | |
| *Target Corp., et al. v. AU Optronics Corp., et al.,*<br>Case No. 10-CV-4945 | The Honorable Susan Y. Illston |

Master Case No. 3:07-MD-1827 SI
Individual Files: 10-CV-4572; 12-CV-4114
10-CV-5452; 10-CV-4945

DECLARATION OF KYUSUNG LEE

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI

2013 Exhibit 2838

I, Kyusung Lee, declare as follows:

1.      I joined Samsung Electronics Co., Ltd. in 2001, and currently serve as Vice President at the Global Legal Affairs Team.

2.      I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

3.      Attached hereto as Attachment A is a true and correct copy of a list of records created by Samsung Electronics Co., Ltd.

4.      The records included in Attachment A are true and correct duplicate copies of original business records prepared and maintained by Samsung Electronics Co., Ltd.

5.      I swear or affirm that the following is true regarding the records included in Attachment A:

        A.      I am an employee familiar with the manner and process by which these records are created and maintained, by virtue of my duties and responsibilities as Vice President of Global Legal Affairs;

        B.      The records were made at or near the time of the occurrences of the matters set forth, by, or from information transmitted by, personnel with knowledge of those matters;

        C.      The records were kept in the course of regularly conducted business activity;

        D.      It was the regular practice of Samsung Electronics Co., Ltd. to make the records.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 18th day of July, 2013, in Seoul, Korea.

Kyusung Lee, Vice President

**Attachment A**

Samsung Electronics 1998 Annual Report

Samsung Electronics 1999 Annual Report

Samsung Electronics 2000 Annual Report

Samsung Electronics 2001 Annual Report

Samsung Electronics 2002 Annual Report

Samsung Electronics 2003 Annual Report

Samsung Electronics 2004 Annual Report

Samsung Electronics 2005 Annual Report

Samsung Electronics 2006 Annual Report

Samsung Electronics 2007 Annual Report

Samsung Electronics 2008 Annual Report

Samsung Electronics 2009 Annual Report

Samsung Electronics 2010 Annual Report

Samsung Electronics 2011 Annual Report

Samsung Electronics Co., Ltd. Audit Report 2001

Samsung Electronics Co., Ltd. Audit Report 2002

Samsung Electronics Co., Ltd Notes to Consolidated Financial Statements December 31, 1999

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements December 31, 2000 and 1999

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements December 31, 2001 and 2000

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements December 31, 2002 and 2001

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements December 31, 2003 and 2002

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements December 31, 2004 and 2003

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements December 31, 2005 and 2004

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements December 31, 2006 and 2005

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements December 31, 2007 and 2006

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements December 31, 2008 and 2007

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements December 31, 2009 and 2008

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements (2010)

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements (2011)

Samsung Electronics Co., Ltd and Subsidiaries Notes to Consolidated Financial Statements (2012)

Samsung Electronics Co., Ltd. Audit Report 2004

Samsung Electronics Co., Ltd. Audit Report 2005

Samsung Electronics Co., Ltd. Non-Consolidated Financial Statements December 31, 2006 and 2005

Samsung Electronics Co., Ltd. Non-Consolidated Financial Statements December 31, 2007 and 2006

Samsung Electronics Co., Ltd. Non-Consolidated Financial Statements December 31, 2008 and 2007

EXHIBIT C

IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION
Master File No. 07-MD-1827 SI
MDL No. 1827

*Best Buy Co., Inc. v. AU Optronics Corp., et al.,*
Case No. 10-CV-4572

*Best Buy Co., Inc. v. Toshiba Corp. et al.,*
Case No. 12-CV-4114

**Ownership/Control Relationships
and Supporting Evidence**

I.   **TOSHIBA**

1.   Toshiba Corporation owned 100 percent of Toshiba America, Inc. ("TAI") from 1998 through 2006.[1]

2.   TAI owned 100 percent of Toshiba America Information Systems ("TAIS") from 1998 through 2006.[2]

3.   TAI owned 100 percent of Toshiba America Consumer Products LLC ("TACP") from 1998 through 2006.  During part of the period from 1998 through 2006, TACP was also known as Toshiba America Consumer Products, Inc.[3]

4.   TAI owned 100 percent of Toshiba America Electronic Components, Inc. ("TAEC") from 1998 through 2006.[4]

5.   Toshiba Corporation owned 60 percent of Toshiba Matsushita Display Technology Co., Ltd. ("TMD") from April 1, 2002 through 2006.[5]

6.   Matsushita Electric Industrial Co., Ltd. ("Matsushita") (n.k.a. Panasonic Corporation) owned 40 percent of TMD from April 1, 2002 through 2006.[6]

II.   **SAMSUNG**

1.   Samsung Electronics Co., Ltd. owned 100 percent of Samsung Electronics America, Inc. from 1998 through 2006.[7]

### III.    SHARP

1.    Sharp Electronics Corporation was a subsidiary of Sharp Corporation from 1998 through 2006.[8]

### IV.    LGE

1.    LG Electronics, Inc. ("LGE Korea") owned at least 99.7% of LG Electronics USA, Inc. ("LGE USA") from 1998 through 2006.[9]

2.    LGE Korea owned 100 percent of LG Electronics MobileComm U.S.A., Inc. (f.k.a LG Infocomm U.S.A., Inc.) ("LGE MobileComm") from 2001 through 2006.[10]

3.    LGE Korea owned 100 percent of Zenith Electronics Corporation (f.k.a Zenith Electronics LLC) ("Zenith") from 1999 through 2006.[11]

### V.    PHILIPS

1.    Koninklijke Philips Electronics N.V. ("Royal Philips Electronics") owned 100 percent of Philips Electronics North America Corporation ("PENAC") from 2000 through 2006.[12]

### VI.    LG DISPLAY CO., LTD

1.    LGE Korea and Koninklijke Philips Electronics N.V. ("Royal Philips") held the following ownership interests in LG Display Co., Ltd. (f.k.a LG.Philips LCD Co., Ltd.) ("LGD") from July 26, 1999 through 2006:

    a.    1999: LGE Korea – 50 percent;[13] Royal Philips – 50 percent[14]

    b.    2000: LGE Korea – 50 percent;[15] Royal Philips – 50 percent[16]

    c.    2001: LGE Korea – 50 percent;[17] Royal Philips – 50 percent[18]

    d.    2002: LGE Korea – 50 percent;[19] Royal Philips – 50 percent[20]

    e.    2003: LGE Korea – 50 percent;[21] Royal Philips - unspecified

    f.    2004: LGE Korea – 44.57 percent;[22] Royal Philips – 44.6 percent[23]

    g.    2005: LGE Korea – 37.9 percent;[24] Royal Philips – 32.9 percent[25]

    h.    2006: LGE Korea – 37.9 percent;[26] Royal Philips – 32.9 percent[27]

## VII.   **PANASONIC**

1.   Panasonic Corporation of North America (f.k.a Matsushita Electric Corporation of America) ("PNA") was a principal overseas subsidiary of Panasonic Corporation (f.k.a. Matsushita Electrical Industrial Corporation, Ltd.) from 2001 through 2002, and a wholly-owned subsidiary of Panasonic Corporation from 2003 through 2006.[28]

2.   On April 1, 2011, Sanyo Consumer Electronics Co., Ltd. became a wholly owned subsidiary of Panasonic Corporation.[29]

3.   "National" was a Panasonic brand name from at least 2003 through 2006.[30]

## VIII.   **NEC**

1.   On January 28, 2000, NEC-Mitsubishi Electric Visual Systems Corporation was formed by NEC Corp. and Mitsubishi Electric Corp., with each owning 50% of NEC-Mitsubishi Electric Visual Systems Corporation.  On March 31, 2005, NEC-Mitsubishi Electric Visual Systems Corporation became a wholly-owned subsidiary of NEC Corp., and was renamed to NEC Display Solutions.[31]

2.   On March 31, 2005, NEC Display Solutions (f.k.a NEC-Mitsubishi Electric Visual Systems Corporation) became a wholly-owned subsidiary of NEC Corp.  As of at least April 1, 2005, NEC Display Solutions of America, Inc. (f.k.a NEC-Mitsubishi Electronics Display of America, Inc.) was a wholly owned subsidiary of NEC Display Solutions.[32]

3.   On April 1, 2003, NEC Corp. established NEC LCD Technologies, Ltd. (n.k.a NLT Technologies, Ltd.), and NEC Corp. owned 100 percent of NEC LCD Technologies, Ltd. from April 1, 2003 through 2006.[33]

---

[1] *See* Dkt. 8343 (Stip and Order re Ownership Relationships of the Toshiba Entities).

[2] *See* Dkt. 8343 (Stip and Order re Ownership Relationships of the Toshiba Entities).

3 *See* Dkt. 8343 (Stip and Order re Ownership Relationships of the Toshiba Entities).

4 *See* Dkt. 8343 (Stip and Order re Ownership Relationships of the Toshiba Entities).

5 *See* Dkt. 8343 (Stip and Order re Ownership Relationships of the Toshiba Entities).

6 *See* Dkt. 8343 (Stip and Order re Ownership Relationships of the Toshiba Entities).

7 *See*

A. **Ex. 2179** *(*Samsung 1998 Annual Report at p. 45) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100);
B. **Ex. 2180** (Samsung 1999 Annual Report at p. 56) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100);
C. **Ex. 2181** (Samsung 2000 Annual Report at p. 62) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100);
D. **Exs. 2197** and **2207** (Samsung Audit Report for the years 2000 and 2001 at p. 23) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100);
E. **Exs. 2198** and **2208** (Samsung Audit Report for the years 2001 and 2002 at p. 22) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100);
F. **Exs. 2209** and **2200** (Samsung Audit Report for the years 2003 and 2004 at p. 27) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100);
G. **Exs. 2201** and **2210** (Samsung Audit Report for the years 2004 and 2005 at p. 31 of the file (un-paginated)) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100);
H. **Ex. 2186** (Samsung 2005 Annual Report at p. 85) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100);
I. **Ex. 2187** (Samsung 2006 Annual Report at p. 75) (lists SEC as a subsidiary with Samsung having a "Percentage of Ownership" of 100);
J. **Exs. 2202** and **2211** (Samsung Non-Consolidated Financial Statements for the years 2005 and 2006 at p. 25) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100);
K. **Ex. 2188** (Samsung 2007 Annual Report at p. 78) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100);
L. **Exs. 2203** and **2212** (Samsung Consolidated Financial Statements for the years 2006 and 2007 at p. 14) (lists SEA as a subsidiary with SEC having a "Percentage of Ownership" of 100).

8 *See*

A. **Ex. 2227** (Sharp 100th Anniversary, A Century of Sincerity and Creativity, May 2012 at pp. 24) ("In May 1962, the company's first overseas sales subsidiary, Sharp Electronics Corporation (SEC), was established in the heart of Manhattan.  A wholly-owned subsidiary …, it had 14 employees, including five from Japan.");
B. **Ex. 2214** (Sharp 2000 Annual Report at p. 38) (lists SEC as a consolidated subsidiary, but no ownership percentage indicated);
C. **Ex. 2215** (Sharp 2001 Annual Report at p. 44) (lists SEC as a consolidated subsidiary, but no ownership percentage indicated);
D. **Ex. 2216** (Sharp 2002 Annual Report at p. 40) (listing SEC as a consolidated subsidiary, but no ownership percentage indicated);
E. **Ex. 2827** (Declaration of T. Horiuchi) (Sharp 2003 Annual Report at p. 42) (lists SEC as a consolidated subsidiary, but no ownership percentage indicated);
F. **Ex. 2218** (Sharp 2004 Annual Report at p. 48) (lists SEC as a consolidated subsidiary, but no ownership percentage indicated);
G. **Ex. 2219** (Sharp 2005 Annual Report at p. 47) (lists SEC as a consolidated subsidiary, but no ownership percentage indicated);
H. **Ex. 2220** (Sharp 2006 Annual Report at p. 55) (lists SEC as a consolidated subsidiary, but no ownership percentage indicated);

I.  **Ex. 2221** (Sharp 2007 Annual Report at p. 64) (lists SEC as a consolidated subsidiary, but no ownership percentage indicated).

[9] *See*
A.  **Ex. 2100** (LGE 1998 Annual Report at p. 31) (LGE had a "Percentage of Ownership" in LGE USA of 99.7);
B.  **Ex. 2101** (LGE 1999 Annual Report at p. 33) (LGE had a "Percentage of Ownership" in LGE USA of 100);
C.  **Ex. 2102** (LGE 2000 Annual report at p. 58) (LGE had a "Percentage of Ownership" in LGE USA of 100);
D.  **Ex. 2103** (LGE 2001 Annual Report at p. 63) (LGE had a "Percentage of Ownership" in LGE USA of 100);
E.  **Ex. 2104** (LGE 2002 Annual Report at pp. 64-65) (LGE had a "Percentage of Ownership" in LGE USA of 100);
F.  **Ex. 2105** (LGE 2003 Annual Report at p. 73) (LGE had a "Percentage of Ownership" in LGE USA of 100);
G.  **Ex. 2106** (LGE 2004 Annual Report at p. 84) (LGE had a "Percentage of Ownership" in LGE USA of 100);
H.  **Ex. 2090** (LGE 1999 Audit Report at p. 21) (LGE had a "Percentage of Ownership" in LGE USA of 100);
I.  **Ex. 2091** (LGE 2000 Audit Report at p. 24) (LGE had a "Percentage of Ownership" in LGE USA of 100);
J.  **Ex. 2092** (LGE Audit Report for the years 2000 and 2001 at p. 24) (LGE had a "Percentage of Ownership" in LGE USA of 100);
K.  **Ex. 2107** (LGE 2002 Audit Report at p. 23) (LGE had a "Percentage of Ownership" in LGE USA of 100);
L.  **Ex. 2093** (LGE Consolidated Financial Statements for the years 2002 and 2003 at p. 12) (LGE had a "Percentage of Ownership" in LGE USA of 100);
M.  **Ex. 2094** (LGE Consolidated Financial Statements for the years 2003 and 2004 at p. 12) (LGE had a "Percentage of Ownership" in LGE USA of 100);
N.  **Ex. 2095** (LGE Consolidated Financial Statements for the years 2004 and 2005 at p. 12) (LGE had a "Percentage of Ownership" in LGE USA of 100);
O.  **Ex. 2096** (LGE Consolidated Financial Statements for the years 2005 and 2006 at p. 12) (LGE had a "Percentage of Ownership" in LGE USA of 100);
P.  **Ex. 2097** (LGE Consolidated Financial Statements for the years 2006 and 2007 at p. 13) (LGE had a "Percentage of Ownership" in LGE USA of 100).

[10] *See*
A.  **Ex. 2092** (LGE 2001 Audit Report at p. 24) (LGE Korea had a "Percentage of Ownership" in LG Infocomm U.S.A. Inc. of 100);
B.  **Ex. 2107** (LGE 2002 Audit Report at p. 23 (LGE Korea had a "Percentage of Ownership" in LG Infocomm U.S.A. Inc. of 100);
C.  **Ex. 2093** (LGE Consolidated Financial Statements for the years 2002 and 2003 at p. 12) (LGE Korea had a "Percentage of Ownership" in LG Electronics LG Infocomm, U.S.A. of 100);
D.  **Ex. 2094** (LGE Consolidated Financial Statements for the years 2003 and 2004 at p. 12) (LGE Korea had a "Percentage of Ownership" in LG Electronics MobileComm U.S.A., Inc., formerly LG Infocomm U.S.A., Inc., of 100 );
E.  **Ex. 2095** (LGE Consolidated Financial Statements for the years 2004 and 2005 at p. 11) (LGE Korea had a "percentage of Ownership" in LG Electronics MobileComm U.S.A. Inc. of 100);
F.  **Ex. 2096 (**LGE Consolidated Financial Statements for the years 2005 and 2006 at p. 11 (LGE Korea had a "Percentage of Ownership" in LG Electronics MobileComm U.S.A. Inc. of 100);
G.  **Ex. 2097** (LGE Consolidated Financial Statements for the years 2006 and 2007 at p. 13) (LGE Korea had a "Percentage of Ownership" in LG Electronics MobileComm U.S.A. Inc. of 100).

[11] *See*
A.  **Ex. 2100** (LGE 1998 Annual Report at p. 31) (lists LGE Korea as having a "Percentage of Ownership" in Zenith of 15.51);
B.  **Ex. 2090** (LGE 1999 Audit Report at p. 21) (LGE Korea has a "Percentage of Ownership" in Zenith of 100);
C.  **Ex. 2091** (LGE Audit Report for the years 1999 and 2000) at p. 24 (LGE Korea has a "Percentage of Ownership" in Zenith of 100);

D. **Ex. 2102** (LGE 2000 Annual Report at p. 58) (LGE Korea had a "Percentage of Ownership" in Zenith of 100);

E. **Ex. 2092** (LGE Audit Report for the years 2000 and 2001 at p. 24) (LGE Korea has a "Percentage of Ownership" in Zenith of 100);

F. **Ex. 2103** (LGE 2001 Annual Report at p. 63) (LGE Korea had a "Percentage of Ownership" in Zenith of 100);

G. **Ex. 2107** (LGE 2002 Audit Report at p. 23) (LGE Korea has a "Percentage of Ownership" in Zenith of 100);

H. **Ex. 2104** (LGE 2002 Annual Report at p. 34) (LGE Korea had a "Percentage of Ownership" in Zenith of 100);

I. **Ex. 2093** (LGE Consolidated Financial Statements for the years 2002 and 2003 at p. 12) (LGE Korea has a "Percentage of Ownership" in Zenith of 100);

J. **Ex. 2105** (LGE Annual Report at p. 73) (LGE Korea had a "Percentage of Ownership" in Zenith of 100);

K. **Ex. 2094** (LGE Consolidated Financial Statements for the years 2003 and 2004 at p. 12) (LGE Korea had a "Percentage of Ownership" in Zenith of 100 );

L. **Ex. 2106** (LGE 2004 Annual Report at p. 84) (LGE Korea had a "Percentage of Ownership" in Zenith of 100);

M. **Ex. 2095** (LGE Consolidated Financial Statements for the years 2004 and 2005 at p. 12) (LGE Korea had a "percentage of Ownership" in Zenith of 100);

N. **Ex. 2096 (**LGE Consolidated Financial Statements for the years 2005 and 2006 at p. 12 (LGE Korea had a "Percentage of Ownership" in Zenith of 100);

O. **Ex. 2097** (LGE Consolidated Financial Statements for the years 2006 and 2007 at p. 13) (LGE Korea had a "Percentage of Ownership" in Zenith of 100).

[12] *See*

A. **Ex. 2161** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2000 at Ex. 8, "List of Significant Subsidiaries") (identifying PENAC as an entity 100% owned by Royal Philips);

B. **Ex. 2162** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2001 at Ex. 8, "List of Significant Subsidiaries") (identifying PENAC as an entity 100% owned by Royal Philips);

C. **Ex. 2163** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2002 at Ex. 8, "List of Significant Subsidiaries") (identifying PENAC as an entity 100% owned by Royal Philips);

D. **Ex. 2164** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2003 at Ex. 8, "List of Significant Subsidiaries") (identifying PENAC as an entity 100% owned by Royal Philips);

E. **Ex. 2165** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2004 at Ex. 8, "List of Significant Subsidiaries") (identifying PENAC as an entity 100% owned by Royal Philips);

F. **Ex. 2166** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2005 at Ex. 8, "List of Significant Subsidiaries") (identifying PENAC as an entity 100% owned by Royal Philips);

G. **Ex. 2167** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2006 at Ex. 8, "List of Significant Subsidiaries") (identifying PENAC as an entity 100% owned by Royal Philips).

[13] *See* **Ex. 2101** (LG Electronics Inc. Annual Report 1999 at p. 20) ("As discussed in Note 7 to the accompanying financial statements, pursuant to a joint venture agreement with Koninklijke Philips Electronics N.V. ("Philips") dated July 24, 1999, the Company transferred certain of the Company's stock rights in LG. Philips LCD CO., Ltd. (formerly LG LCD Co., Ltd.) to Philips. As a result, the Company reduced its ownership of LG. Philips LCD Co., Ltd. to 50% ....") and p. 32 (as of December 31, 1999, LGE Korea owns 50 percent of LG. Philips LCD Co., Ltd.).

[14] *See*
   A. **Ex. 2829** (Declaration of C. Wolfsgruber) (Joint Venture Agreement between LGE and Philips dated July 26, 1999 at Sections 2.1, 2.2, 2.3, etc) (Philips to acquire 50% of LGD);
   B. **EX. 2162** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2001 at p. 14) (LG.Philips LCD was a joint venture formed in July 1999 and is a 50/50 joint venture).

[15] *See* **Ex. 2102** (LG Electronics Inc. Annual Report 2000 at p. 55) (as of December 31, 2000, LGE Korea owns 50 percent of LG Philips LCD Co., Ltd.).

[16] *See* **Ex. 2161** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2000 at p. 60) ("LG.Philips LCD Co is a 50/50 manufacturing joint venture with LG Electronics of South Korea ....").

[17] *See* **Ex. 2103** (LG Electronics Inc. Annual Report 2001 at p. 62) (as of December 31, 2001, LGE Korea owns 50 percent of LG. Philips LCD Co., Ltd.).

[18] *See* **Ex. 2162** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2001 at p. 14) ("The 50/50 joint venture, LG.Philips LCD, continues to be a leader in the production of TFT LCDs for computer monitor and notebook applications and is supplying display panels for the fast growing consumer market of LCD TVs.").

[19] *See* **Ex. 2104** (LG Electronics Inc. Annual Report 2002 at p. 63) (as of December 31, 2002, LGE Korea owns 50 percent of LG. Philips LCD Co., Ltd.).

[20] *See* **Ex. 2163** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2002, page number not available) ("LG.Philips LCD Co. is a 50/50 manufacturing joint venture with LG Electronics of South Korea ....").

[21] *See* **Ex. 2105** (LG Electronics Inc. Annual Report 2003 at p. 71) (as of December 31, 2003, LGE Korea owns 50 percent of LG. Philips LCD Co., Ltd.).

[22] *See* **Ex. 2106** (LG Electronics Inc. Annual Report 2004 at pp. 80-81) (as of December 31, 2004, LGE Korea owns 44.57 percent of LG.Philips LCD Co., Ltd.).

[23] *See* **Ex. 2165** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2004, page number not available) ("Philips owns 44.6% of LG.Philips LCD ....").

[24] *See* **Ex. 2095** (LG Electronics Inc. and Subsidiaries Consolidated Financial Statements December 31, 2005 and 2004 at p. 10) (as of December 31, 2005, LGE Korea owns 37.9 percent of LG.Philips LCD Co., Ltd.).

[25] *See* **Ex. 2166** (Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2005, page number not available) ("Philips sold common stock of LG.Philips LCD, further reducing its stake in LG.Philips LCD to 32.9%).

[26] *See* **Ex. 2096** (LG Electronics Inc. and Subsidiaries Consolidated Financial Statements December 31, 2006 and 2005 at p. 10) (as of December 31, 2006, LGE Korea owns 37.9 percent of LG.Philips LCD Co., Ltd.).

[27] *See* **Ex. 2167 (**Koninklijke Philips Electronics N.V. Form 20-F for the Fiscal Year Ended December 31, 2006, page number not available) ("Furthermore, in 2005 the Company sold 27.4 ... million shares in LG.Philips LCD, resulting in ... a 7.6% reduction in the shareholding from 40.5% to 32.9%.").

[28] *See*
   A. **Ex. 2831** (Business Records Decl. of H. Ikutomi dated July 23, 2013) (Attachment A - Panasonic 2001 Annual Report at p. 58) (lists Matsushita Electric Corporation of America as a Principal Overseas Subsidiary);

B. **Ex. 2831** (Business Records Decl. of H. Ikutomi dated July 23, 2013) (Attachment A - Panasonic 2002 Annual Report at p. 66) (lists Matsushita Electric Corporation of America as a Principal Overseas Subsidiary);

C. **Ex. 2145** (Matsushita Electric Industrial Co., Ltd. Form 20-F, for the fiscal year ended March 31, 2003) (lists "Percentage Owned" of PNA at 100%);

D. **Ex. 2146** (Matsushita Electric Industrial Co., Ltd. Form 20-F, for the fiscal year ended March 31, 2004) (lists "Percentage Owned" of PNA at 100%);

E. **Ex. 2147** (Matsushita Electric Industrial Co., Ltd. Form 20-F, for the fiscal year ended March 31, 2005) (lists "Percentage Owned" of PNA at 100%);

F. **Ex. 2148** (Matsushita Electric Industrial Co., Ltd. Form 20-F, for the fiscal year ended March 31, 2006) (lists "Percentage Owned" of PNA at 100%);

G. **Ex. 2149** (Matsushita Electric Industrial Co., Ltd. Form 20-F, for the fiscal year ended March 31, 2007) (lists "Percentage Owned" of PNA at 100%).

[29] *See* **Ex. 2153** (Panasonic Corporation Form 20-F, for the fiscal year ended March 31, 2011, at p. 5) ("On April 1, 2011, Panasonic made Panasonic Electric Works Co., Ltd. and SANYO Electric Co., Ltd. its wholly owned subsidiaries through share exchanges, respectively.") and p. 29 (noting that on "December 21, 2009, [Panasonic] ... acquired 50.2% of the voting rights of SANYO and obtained a controlling interest in SANYO").

[30] *See*

A. **Ex. 2145** (Matsushita Electric Industrial Co., Ltd. Form 20-F, for the fiscal year ended March 31, 2003, at pp. 11, 24, 51, 53, and 95) (noting existence of National brand);

B. **Ex. 2146** (Matsushita Electric Industrial Co., Ltd. Form 20-F, for the fiscal year ended March 31, 2004, at pp. 10, 14, 24, 25, 32, 57, 59, 62, and 106) (noting existence of National Brand);

C. **Ex. 2147** (Matsushita Electric Industrial Co., Ltd. Form 20-F, for the fiscal year ended March 31, 2005, at pp. 10, 13, 27, 35, 61, 63, 67, and 113) (noting existence of National brand);

D. **Ex. 2148** (Matsushita Electric Industrial Co., Ltd. Form 20-F, for the fiscal year ended March 31, 2006, at p. 10, 27, 36, 65, and 116) (noting existence of National brand);

E. **Ex. 2149** (Matsushita Electric Industrial Co., Ltd. Form 20-F, for the fiscal year ended March 31, 2007, at p. 10, 23, 31, 114)(noting existence of National Brand).

[31] *See*

A. **Ex. 2127** (NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2000 at p. 5) (noting that NEC-Mitsubishi Electric Visual Systems Corporation was established in January 2000 by NEC and Mitsubishi Electric Corporation);

B. **Ex. 2128** (NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2001 at p. 78) ("Investments in affiliated companies accounted for by the equity method together with a percentage of the Company's ownership of voting shares at March 31, 2001 are: NEC-Mitsubishi Electric Visual Systems Corporation (50.0%)");

C. **Ex. 2129** (NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2002) (stating that NEC Corp. held a 50% ownership interest in NEC-Mitsubishi Electric Visual Systems);

D. **Ex. 2130** (NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2003 at F-15) (stating that NEC Corp. held a 50% ownership interest in NEC-Mitsubishi Electric Visual Systems);

E. **Ex. 2131** (NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2004 at F-16) (stating that NEC Corp. held a 50% ownership in NEC-Mitsubishi Electric Visual Systems);

F. **Ex. 2132** (NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2005 at § 4.B (unpaginated) (discussing NEC Corp.'s joint venture in developing and producing LCDs);

G. **Ex. 2139** (Press Release dated February 21, 2005) ("NEC-Mitsubishi Electronics Display ... today announced that its parent company NEC-Mitsubishi Electric Visual Systems Corporation ("NM Visual"), a joint venture company of NEC Corporation and Mitsubishi Electric Corporation since January 2000, will become a wholly-owned subsidiary of NEC Corporation on March 31, 2005" and that on "becoming a wholly-owned subsidiary of NEC Corporation ..., the company will be renamed and repositioned as an NEC display solutions company.");

H. **Ex. 2138** (Press Release dated April 1, 2005, NEC-MITSUBISHI Begins Operations as NEC Display Solutions) (noting that the former joint venture with Mitsubishi was now named NEC Display Solutions and returned to operations under NEC).

[32] *See*

A. **Ex. 2139** (Press Release dated February 21, 2005, NEC-Mitsubishi Electric Visual Systems Corporation to become NEC Corporation wholly-owned subsidiary) ("NEC-Mitsubishi Electronics Display ... today announced that its parent company NEC-Mitsubishi Electric Visual Systems Corporation ("NM Visual"), a joint venture company of NEC Corporation and Mitsubishi Electric Corporation since January 2000, will become  a wholly-owned subsidiary of NEC Corporation on March 31, 2005" and that on "becoming a wholly-owned subsidiary of NEC Corporation ..., the company will be renamed and repositioned as an NEC display solutions company," and that the change will have "little impact on the fundamentals of our business or day-to-day operations as NEC has already built a strong brand presence in North America.");

B. **Ex. 2138** (Press Release dated April 1, 2005, NEC-MITSUBISHI Begins Operations as NEC Display Solutions) (noting that NEC Display Solutions of America, Inc. was a business under NEC Display Solutions).

[33] *See*

A. **Ex. 2130** (NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2003 at p. 20) (noting that NEC transferred its color LCD business and transferred it to a subsidiary in 2003);

B. **Ex. 2131** (NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2004 at p. 19) (same);

C. **Ex. 2132** (NEC Corp. Form 20-F for the Fiscal Year Ended March 31, 2005 at § 4.B (unpaginated) (same);

D. **Ex. 2828** (Declaration of S. Obata) (Press Release dated January 30, 2003, NEC Establishes New LCD Company to Develop Core LCD Technologies and Customized Products for the Industrial and High-End Monitor Markets) (noting that NEC Corp. formed NEC LCD Technologies, Ltd. on April 1, 2003);

E. **Ex. 2828** (Declaration of S. Obata) (Press Release dated March 31, 2003, NEC Establishes Specialist LCD Company to Develop Core LCD Technologies and Customized Products for the Industrial and High-End Monitor Markets) (noting that NEC Corp. formed NEC LCD Technologies, Ltd. on April 1, 2003);

F. **Ex. 2828** (Declaration of S. Obata) (Press Released dated February 25, 2011, The NEC Group and AVIC International Group Agree to a Capital Alliance to Strengthen the Small and Midsized Liquid Crystal Panel Business) (noting that NEC LCD Technologies will become a joint venture company with the AVIC International Group, and that, as of February 25, 2011, NEC LCD Technologies was 100% owned by NEC Corporation (see pg. 3 for ownership fact);

G. **Ex. 2828** (Declaration of S. Obata) (Press Release dated April 18, 2011, About the new company name announced today) (noting that NEC LCD Technologies, Ltd. will start in July 2011 as a new joint venture between NEC Corp. and Shenzhen AVIC Optoelectronic Co., Ltd. and, as a result, be renamed to NLT Technologies, Ltd.).

EXHIBIT D





**Panasonic**

**Panasonic**
**Panasonic Corporation**
**(f/k/a Matsushita Electric**
**Industrial Co.**

2001-2002 (principal overseas subsidiary)
2003-2006 (wholly owned subsidiary)

**Panasonic**
**Panasonic Corporation of**
**North America**
**(f/k/a  Matsushita Electric**
**Corporation of America)**









LG Electronics, Inc.
("LGE Korea")

99.7% (1998-2006)

100%
(2001-2006)

100% (1999-2006)

LG Electronics USA, Inc.

LG Electronics MobileComm
USA Inc. (f/k/a LG Infocomm
USA, Inc.)

Zenith Electronics
Corporation (f/k/a/
Zenith Electronics LLC)



100% (2000-2006)



**PHILIPS**


LG Electronics, Inc.
("LGE Korea")

**PHILIPS**
Koninklijke Philips
Electronics N.V.
("Royal Philips")

1999-2003 (50%)
2004 (44.57%)
2005-2006 (37.9%)


LG Display Co., Ltd.
(f/k/a LG Philips LCD
Co., Ltd.)

1999-2003 (50%)
2004 (44.6%)
2005-2006 (32.9%)



# EXHIBIT E

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2049 CENTURY PARK EAST
SUITE 3400
LOS ANGELES, CA 90067-3208
TEL: 310-552-0130 FAX: 310-229-5800
www.rkmc.com

ATTORNEYS AT LAW

DAVID MARTINEZ

July 18, 2013

**VIA E-MAIL**

Jerome C. Roth
jerome.roth@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA  94105

Brad D. Brian
brad.brian@mto.com
**MUNGER, TOLLES & OLSON LLP**
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071

Christopher M. Curran
ccurran@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, NW
Washington, DC 20005

Martin M. Toto
mtoto@whitecase.com
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, NY 10036-2787

Robert E. Freitas
rfreitas@ftkaw.com
**FREITAS TSENG & KAUFMAN LLP**
100 Marine Parkway, Suite 200
Redwood Shores, CA 94065

Re:     *Best Buy Co., Inc., et al. v. AU Optronics Corporation, et al.*
        *Best Buy Co., Inc., et al. v. Toshiba Corp., et al.*
        *In Re TFT-LCD Antitrust Litigation*
        *10-cv-4572 SI / 12-cv-4114 SI / 3:07-md-1827 SI*

Dear Counsel:

We write to follow up on your discussions with Janet Levine immediately after the final
pretrial conference, as well as during our call with counsel for LGD and Toshiba on July 11,
2013 regarding the ownership relationships amongst defendants and co-conspirator families.  As
you know, the Court instructed during the final pretrial conference that the parties stipulate to
issues that are not in dispute.  During our July 11, 2013 conference, counsel for Toshiba and
LGE indicated that they were prepared to stipulate to any facts that Plaintiffs could establish
through admissible proof.

Pursuant to the Courts' instruction and your representations during our call, as well as in
Defendants' Opposition to Plaintiffs' Request for Judicial Notice ("RJN"), we enclose for your
review and approval a stipulation regarding certain ownership relationships.  These facts, and the

July 18, 2013
Page 2

supporting evidence, were presented to you on June 18, 2013 in connection with Plaintiffs' RJN. Since then, we have also provided you with custodian of records declarations for AUO, Samsung, LGE, Philips and NEC as set forth below.  We expect to provide you with a declaration for Sharp shortly.  As to Toshiba, we set forth the admissible evidence on which we intend to rely further below.  Further, we have revised the Toshiba stipulated facts based on comments from Marty Toto during our call of July 11, 2013.

### Samsung

- Declaration of Kyusung Lee

### LGE

- Declarations of Jihyeon Jang, Hyoung-Geun Park, and Clara Chang

### Philips

- Declaration of Christoph Wolfsgruber

### NEC

- Declaration of Dylan Dunavan

### Toshiba

- Toshiba Annual Reports dated 1998 through 2012

- Toshiba Corporate Description, Inside Toshiba, available at www.toshiba.com/tai/about_us.jsp.

- Toshiba Entities' Motion for Partial Summary Judgment Under *Illinois Brick*, dated September 9, 2011

- Toshiba Entities' Motion for Partial Summary Judgment Under *Illinois Brick* and *In re ATM Fee*, dated August 2, 2012

- Toshiba Entities' Objections and Responses to Direct Action Plaintiffs' First Set of Requests for Admission to Defendants Toshiba Corporation, Toshiba Mobile Display Co. Ltd., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc., dated March 18, 2013

- Toshiba Entities' Objections and Responses to Direct Action Plaintiffs' First Set of Interrogatories to Defendants Toshiba Corporation, Toshiba Mobile Display Co. Ltd., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc., dated March 18, 2013

July 18, 2013
Page 3


- Letter dated May 13, 2013 from Kristen J. McAhen of White & Case to Laura E. Nelson of Robins, Kaplan, Miller & Ciresi L.L.P. regarding the Direct Action Plaintiffs' First and Second Set of RFAs and Interrogatories to the Toshiba Entities.

Kindly review the proposed stipulation and advise whether you have any changes.  We would like to get it on file by July 22, 2013.

Very truly yours,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


*/s/ David Martinez*

David Martinez

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2049 CENTURY PARK EAST
SUITE 3400
LOS ANGELES, CA 90067-3208
TEL: 310-552-0130 FAX: 310-229-5800
www.rkmc.com

ATTORNEYS AT LAW

VINCENT LOH

July 19, 2013

## VIA E-MAIL

Jerome C. Roth
jerome.roth@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA 94105

Brad D. Brian
brad.brian@mto.com
**MUNGER, TOLLES & OLSON LLP**
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071

Christopher M. Curran
ccurran@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, NW
Washington, DC 20005

Martin M. Toto
mtoto@whitecase.com
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, NY 10036-2787

Robert E. Freitas
rfreitas@ftkaw.com
**FREITAS TSENG & KAUFMAN LLP**
100 Marine Parkway, Suite 200
Redwood Shores, CA 94065

Re:   *Best Buy Co., Inc., et al. v. AU Optronics Corporation, et al.*
      *Best Buy Co., Inc., et al. v. Toshiba Corp., et al.*
      *In Re TFT-LCD Antitrust Litigation*
      *10-cv-4572 SI / 12-cv-4114 SI / 3:07-md-1827 SI*

Dear Counsel:

As referenced in David Martinez's letter dated July 18, 2013, attached please find the declaration of Tetsuhiro Horiuchi certifying documents as business records pursuant to Federal Rules of Evidence 902(11) or (12). The underlying documents were included on either Plaintiffs' Joint Initial Exhibit List or Plaintiffs' Supplemental Exhibit List and were the subject of the Track 1B Plaintiffs' Request for Judicial Notice.

July 19, 2013
Page 2


       Please let me know whether the Track 1B Plaintiffs have your approval to file the stipulation and proposed order that was circulated by David Martinez yesterday.  As previously mentioned, we would like to get it on file by July 22, 2013.

                              Very truly yours,

                              ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

                              */s/ Vincent Loh*

                              Vincent Loh

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2049 CENTURY PARK EAST
SUITE 3400
LOS ANGELES, CA 90067-3208
TEL: 310-552-0130 FAX: 310-229-5800
www.rkmc.com

ATTORNEYS AT LAW

DAVID MARTINEZ

July 24, 2013

**VIA E-MAIL**

Christopher M. Curran
ccurran@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, NW
Washington, DC 20005

Martin M. Toto
mtoto@whitecase.com
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, NY 10036-2787

Robert E. Freitas
rfreitas@ftkaw.com
**FREITAS TSENG & KAUFMAN LLP**
100 Marine Parkway, Suite 200
Redwood Shores, CA 94065

Re:    *Best Buy Co., Inc., et al. v. AU Optronics Corporation, et al.*
       *Best Buy Co., Inc., et al. v. Toshiba Corp., et al.*
       *In Re TFT-LCD Antitrust Litigation*
       *10-cv-4572 SI / 12-cv-4114 SI / 3:07-md-1827 SI*

Dear Counsel:

      Attached please find the declaration of Panasonic personnel Hirohisa Ikutomi certifying documents as business records pursuant to Federal Rules of Evidence 902(11) or (12). The underlying documents were included in Plaintiffs' Joint Initial Exhibit List or Plaintiffs' Supplemental Exhibit List and were the subject of the Track 1B Plaintiffs' Request for Judicial Notice. We provided you with pinpoint citations to these documents, as well as the documents supporting our proposed stipulation, on June 18, 2013.

      Also attached is a revised stipulation that accounts for the corporate relationships established by the Ikutomi declaration, as well as the Obata and Ushijima declarations provided to you on July 22, 2013. With the exception of the Toshiba relationships, we still have not heard from you regarding the corporate relationships set forth in the proposed stipulation we gave you on July 18, 2013.

July 24, 2013
Page 2


        We have now given you sworn declarations sufficient to establish the authenticity and the business records nature of the documents underlying our proposed stipulation regarding undisputable corporate relationships.  Please confirm that we have your consent to file the stipulation.  If you have any objection, tell us the basis for the objection now.  Should you refuse to stipulate to the facts set forth in the stipulation, we will ask the Court to charge the time spent in introducing the documents against Defendants' trial time.

                                        Very truly yours,

                                        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


                                        */s/ David Martinez*

                                        David Martinez

84066901.1

**Castiglioni, Lilia C**

| | |
|---|---|
| **From:** | Martinez, David |
| **Sent:** | Wednesday, July 31, 2013 11:54 AM |
| **To:** | Robert Freitas (RFreitas@ftklaw.com); Curran, Christopher (ccurran@whitecase.com) |
| **Cc:** | Jessica Leal (JLeal@ftklaw.com); Geibelson, Michael A.; Martinez, David |
| **Subject:** | LCD -  Ownership Stipulation |
| **Attachments:** | Letter to Counsel re Declarations.pdf; Declaration of C. Chang (LG).pdf; Declaration of H. Park (LG).pdf; Declaration of J. Jang (LG).pdf; Declaration of D. Dunavan (NEC).pdf; Declaration of K. Ushijima (NEC).pdf; Declaration of S. Obata (NEC).pdf; Decl. of H. Ikutomi (Panasonic).pdf; Declaration of C. Wolfsgruber (Philips).pdf; Declaration of K. Lee (Samsung).pdf; Declaration of T. Horiuchi (Sharp).pdf; (84057501)_(1)_07.19.13 Letter to All Counsel re Sharp Declaration and Stip.PDF; Letter to Counsel re Declarations.pdf; 07-18-13 - Letter to counsel re declarations.PDF; (84066899)_(1) Stipulation re Corporate Ownership.DOC; Letter to Counsel re Declarations.pdf |

Bob and Chris –

I write to follow up on your conversation with Michael Geibelson this morning.

I attach our prior correspondence to you of July 18, 19 and 24 regarding a proposed stipulation regarding certain corporate ownership facts established by the documents authenticated in the attached Rule 902(12) and 803(6) declarations, which we previously provided you.  We are prepared to stipulate to the preservation of any appeal rights you believe you have under ATM Fee.

We also request your stipulation regarding  admission into evidence of the guilty pleas of corporate entities and individuals that pled guilty to participating in a conspiracy to fix LCD prices.

David


**David Martinez, Esq.**
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East │ Suite 3400
Los Angeles │ California 90067-3208
Tel: 310.552.0130
Fax: 310.229.5800

*Celebrating 75 Years of Providing National Legal Solutions*