**United States District Court**
For the Northern District of California

1

2

3

4

5    IN THE UNITED STATES DISTRICT COURT

6    FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    IN RE: TFT-LCD (FLAT PANEL) ANTITRUST          No. M 07-1827 SI
                                                     MDL No. 1827
9    LITIGATION
                                                     **JURY INSTRUCTIONS**
10   _____/
                                                     (**DRAFT - POST CONFERENCE**)
11

12   This  Relates To:

13   *Best Buy Co., Inc. v. AU Optronics Corp., et al.,*
     Case No. 10-CV-4572 SI
14
     *Best Buy Co., Inc. v. Toshiba Corp., et al.,*
15   Case No. 12-CV-4114 SI
     _____/
16

17

18

19

20

21

22

23

24

25

26

27

28

**DUTY OF JURY**

Ladies and gentlemen: It is my duty to instruct you on the law. During this trial, you have heard testimony from certain witnesses, and reviewed certain documents in evidence, with reference to what is and what is not lawful or what they considered to be lawful or not lawful. You are to disregard any such testimony and such documents in determining what the law is (although that testimony may be relevant to issues you need to decide, such as knowledge and intent). I alone will instruct you as to what is lawful or unlawful conduct.

These instructions are to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set throughout your deliberations. You will also be provided a set of the exhibits admitted into evidence. This set of instructions and those exhibits are not to be taken home and must remain in the jury room when you leave in the evenings.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**PREPONDERANCE OF THE EVIDENCE**

The plaintiffs have the burden of proving their claims by a preponderance of the evidence. The defendants have the burden of proving their affirmative defenses by a preponderance of the evidence. When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

United States District Court
For the Northern District of California

1    You should base your decision on all of the evidence, regardless of which party presented it.

2

3    **IDENTIFICATION OF PARTIES AND CLAIMS AND DEFENSES**

4    As you know, this trial involves products called "Thin-Film Transistor Liquid Crystal Display

5    Panels." These panels are sometimes called "TFT-LCD Panels" or sometimes just "LCD panels" or

6    "panels" for short. TFT-LCD panels are found in a number of finished products, including flat screen

7    computer monitors, laptops, and flat screen televisions. They are the screens that display the images.

8    This trial involves certain manufacturers of these TFT-LCD panels.

9    The plaintiffs in this case are (1) Best Buy Co., (2) Best Buy Purchasing LLC, (3) Best Buy

10   Enterprise Services Inc., (4) Best Buy Stores L.P., (5) Bestbuy.com LLC, and (6) Magnolia Hi-Fi, Inc.

11   In these instructions and in the verdict form, the plaintiffs are sometimes referred to collectively as the

12   "Best Buy entities."   The plaintiffs allege that they are buyers and resellers of finished products

13   containing TFT- LCD panels. The defendants in this trial are (1) HannStar Display Corporation, (2)

14   Toshiba Corporation, (3) Toshiba Mobile Display Co., Ltd., (4) Toshiba America Electronics

15   Components Inc., and (5) Toshiba America Information Systems Inc. HannStar is a manufacturer of

16   TFT-LCD panels. The Toshiba entities include manufacturers of TFT-LCD panels, as well as related

17   companies.  In these instructions and in the verdict form, the Toshiba entities are sometimes referred

18   to collectively as "Toshiba" or the "Toshiba entities."

19   The plaintiffs allege that the defendants engaged in a conspiracy to fix the price of TFT-LCD

20   panels in violation of United States federal law (the Sherman Act) and Minnesota state law with the

21   following entities: Acer Display, AU Optronics Corporation ("AUO"), Chi Mei Corporation ("CMO"),

22   Chunghwa Picture Tubes, Ltd. ("CPT"), Epson Imaging Devices Corporation, Hitachi Displays, Ltd.,

23   Hydis Technologies Co., Ltd. f/k/a BOE Hydis Technology Co., Ltd. ("Hydis"), Koninklijke Philips

24   Electronics N.V. (a/k/a Royal Philips Electronics N.V.), LG Display Co., Ltd., Mitsubishi Electronics

25   Corporation, NEC LCD Technologies, Ltd., Quanta Display, Inc., Samsung SDI Co., Ltd., Samsung

26   Electronics Co., Ltd., Sanyo Consumer Electronics Co., Ltd. (f/k/a Tottori Sanyo Electric Co.), Sharp

27   Corporation, Toppoly Optoelectronics Corp., and Unipac Optoelectronics.  The plaintiffs allege that the

28   conspiracy lasted from January 1, 1998 through December 1, 2006.

3

The plaintiffs contend that they were injured because manufacturers of the finished products containing TFT-LCD panels had to pay more for TFT-LCD panels, and those manufacturers and sometimes intermediate sellers then passed on the higher costs of the TFT-LCD panels to the plaintiffs.

Toshiba contends that it did not reach any agreements with any competitors and therefore it was not part of any conspiracy regarding TFT-LCD panels.

HannStar admits to participating in what you have heard described as the Crystal Meetings between September 2001 and January 2006, and admits that pricing agreements regarding certain panels were sometimes reached during those meetings. HannStar denies engaging in any other unlawful conduct or participating in any other conspiracy. HannStar also disputes how effective and broad any conspiracy was and contends that the plaintiffs claim more in damages than the evidence supports. HannStar denies that it reached any agreements on panel prices with any of the Toshiba entities.

The defendants also contend, as to the plaintiffs' Minnesota state law claims only, that the plaintiffs passed on most of any higher costs to their own customers and thus were not harmed themselves. That contention regarding passing on of costs to customers applies only to the state law claims.

## CORPORATE EQUALITY

The plaintiffs and defendants involved in this case are corporations. A corporation is entitled to the same fair trial as a private individual.  All persons, corporations, partnerships, and other organizations stand equal before the law, and stand equal in this Court.

Therefore, in examining the issues in this case, it does not matter that some of the parties are corporations.  You should consider and decide this case as a dispute between those of equal standing.

You should decide the case as to each defendant and as to each plaintiff separately, even though there are multiple defendants and plaintiffs, and the parties may have presented some common evidence.

Unless otherwise stated, the instructions apply to all parties.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

### WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness, whether the witness appeared live in the courtroom, by depositions, or through a reading of prior sworn testimony;

2.      the exhibits that are received into evidence;

3.      any facts to which the parties have agreed; and

4.      any facts of which I have told you I have taken judicial notice.

### WHAT IS NOT EVIDENCE

As I instructed you in the preliminary instructions, in reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did.  Circumstantial evidence

is proof of one or more facts from which you may find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected. If I overruled the objection, the question was answered or the exhibit received. If I sustained the objection, the question could not be answered, and the exhibit could not be received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness said, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

1

2

**BIAS OF WITNESSES**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party, including a cooperation agreement.

For these reasons, in evaluating the testimony of those witnesses, you should consider the extent to which or whether that testimony may have been influenced by any of these factors.  In addition, you should examine the testimony of those witnesses with greater caution than that of other witnesses.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his testimony with caution, weigh it with care and subject it to close and searching scrutiny.

**INCONSISTENT STATEMENT**

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**IMPEACHMENT OF WITNESS'S TESTIMONY**

The testimony of a witness may have been discredited or "impeached" by showing that on some

former occasion the witness made a statement that is inconsistent with the witness's testimony in this trial. Evidence of this kind may be considered by you in connection with all the other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness.

**USE OF INTERPRETERS IN COURT**

Certain individuals called as witnesses in this case do not speak English as their first language. These witnesses may have requested the assistance of an interpreter during their testimony. You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

**EXPERT WITNESS**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**CONFLICTING EXPERT TESTIMONY**

You have heard testimony of witnesses the parties refer to as experts who have been called by both sides to give their opinion about various issues.

The witnesses who testified in this case did so in order to assist you in reaching a decision on certain issues. It is your obligation to determine the expertise, if any, of such witnesses and the credibility of such witnesses and the reliability of their opinions.

The testimony of these witnesses is in conflict. They disagree. You must remember that you are the sole trier of the facts, and where their testimony relates to question of fact, it is your job to resolve the disagreements.

The way you resolve the conflict between these witnesses is the same way that you decide other

fact questions and the same way you decide whether to believe ordinary witnesses. In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion and the witness' motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence.  You should not permit a witness' opinion testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness.  The determination of the facts in this case rests solely with you.

## INFERENCES

During the trial you may have heard the attorneys use the term "inference," and in their arguments they may ask you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiffs may ask you to draw one set of inferences, while the defendants may ask you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw — but not required to draw — from the facts which have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

United States District Court
For the Northern District of California

## ALL AVAILABLE WITNESSES OR
## EVIDENCE NEED NOT BE PRODUCED

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in this case.

## DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.  When a deposition was read to you, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

## CHARTS AND SUMMARIES

During trial, the parties showed you various charts or summaries. Some of those charts or summaries came into evidence, while others did not.

Charts not received into evidence are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

By contrast, charts and summaries received into evidence should be treated as any other evidence. You should therefore give them only such weight as you think the underlying evidence

1   deserves.

2

3

## STIPULATIONS OF FACT

4

5       The plaintiffs and Toshiba have agreed to certain facts to be placed in evidence in two stipulated

6   statements, as Exhibits 2859 and 2860. You should therefore treat these facts as having been proved as

7   to the plaintiffs and Toshiba.

8

9

## LITIGATION-RELATED DESIGNATIONS ARE NOT
## RELEVANT TO THE SUBSTANCE OF THE DOCUMENTS

10

11

12       Virtually all documents used at this trial have previously been used in prior investigations or

13   litigation matters. Accordingly, many of the documents have been marked with legends stating "Highly

     Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential — Grand Jury Material"

14   or words to that effect. These designations are not part of the original documents and have no relevance

15   to the substance of any of the documents provided to you as evidence.

16

17

18

## FEDERAL CLAIMS/ "DIRECT PURCHASES"

19

20       You have heard evidence and argument about the plaintiffs' purchases of finished products

21   containing LCD panels, and you have heard the attorneys in the case refer to the federal Sherman Act

     claims as "direct purchases."

22

23       The Sherman Act applies to purchases of finished products when a plaintiff (1) buys a product

24   containing a panel made by a conspirator, or that was made by an entity that is owned or controlled by,

     or owns or controls, any one of the conspirators; and (2) the finished product was sold to plaintiff by a

25   conspirator or by an entity which is owned or controlled by, or owns or controls, any one of the

26   conspirators.

27

28       "Own" means to own greater than 50% of the stock of the company in question. "Control" means

**United States District Court**
For the Northern District of California

to exercise restraint or direction over; dominate, regulate, command, or to have the power or authority to guide or manage. Stock ownership alone, when it amounts to less than a majority, is not sufficient proof of domination or control. Mere input into policies or pricing issues, on its own, is not control.

**HORIZONTAL PRICE FIXING --
ELEMENTS OF THE FEDERAL CLAIMS**

Under the federal Sherman Act, it is illegal for competitors, regardless of their size or amount of sales, to agree on the prices to be charged for their competing products.

An agreement between competing firms can violate this rule even if there is not an agreement on the exact price to be charged.  For example, it is illegal for competing companies to agree on maximum or minimum prices, a range within which prices will fall, a formula to set prices, or a component of prices, such as a shipping charge or an interest rate.  It is also illegal for competitors to agree on a plan or scheme that will tend to stabilize prices.

To prevail against a defendant on a price-fixing claim, the plaintiffs must prove as to that particular defendant each of the following elements by a preponderance of the evidence:

**First**, that an agreement to fix the prices of LCD panels existed;

**Second**, that such defendant knowingly – that is, voluntarily and intentionally – became a party to that agreement;

**Third**, that such agreement occurred in or affected interstate, import or foreign commerce.  Any such conduct involving import commerce must have produced substantial intended effects in the United States; any such foreign commerce must have produced direct, substantial and reasonably foreseeable effects in the United States; and

**Fourth**, that the agreement caused plaintiffs to suffer an injury to their business or property.

If you find the evidence is insufficient to prove any one or more of these elements as to a particular defendant then you must find for that defendant and against the plaintiffs on the plaintiffs'

12

price-fixing claim. If you find that the evidence is sufficient to prove all four elements as to a particular defendant, and you find that the plaintiffs have also made other required showings I discuss later in these instructions then you must find for the plaintiffs and against that particular defendant on plaintiffs' price-fixing claim.

**HORIZONTAL PRICE FIXING --
ELEMENTS OF THE STATE LAW CLAIMS**

I will now instruct you on the elements of the plaintiffs' Minnesota state law claims, as distinct from plaintiffs' federal law claims. For the TFT-LCD finished products at issue with respect to the plaintiffs' state law claims, the plaintiffs allege they purchased those products from entities such as finished product makers and distributors who were not the defendants or alleged co-conspirators, and who were not companies owned or controlled by a defendant or a co-conspirator. Rather, in these state law claims the plaintiffs are seeking damages based on purchases from other entities of TFT-LCD finished products containing TFT-LCD panels manufactured by the defendants or their alleged co-conspirators. The parties have sometimes referred to the plaintiffs' state law claims as "indirect" claims. The plaintiffs may recover for "indirect" claims in different circumstances than those under which the plaintiffs may recover for "direct" claims under federal law.

To prevail against a defendant on a Minnesota state-law price-fixing claim, the plaintiffs must prove as to that particular defendant each of the following elements by a preponderance of the evidence:

**First**, that an agreement to fix the prices of LCD panels existed;

**Second**, that such defendant knowingly – that is, voluntarily and intentionally – became a party to that agreement;

**Third**, that such agreement occurred in or affected commerce in Minnesota. Any such conduct involving import commerce must have produced substantial intended effects in the United States; any foreign commerce must have produced direct, substantial and reasonably foreseeable effects in the United States; and

**Fourth**, that the agreement caused plaintiffs to suffer an injury to their business or property.

If you find the evidence is insufficient to prove any one or more of these elements as to a particular defendant then you must find for that defendant and against the plaintiffs on the plaintiffs' price-fixing claim.  If you find that the evidence is sufficient to prove all four elements as to a particular defendant, and you find that the plaintiffs have also made other required showings I discuss later in these instructions then you must find for the plaintiffs and against that particular defendant on plaintiffs' price-fixing claim.

## STATUTE OF LIMITATIONS: STATE LAW CLAIMS

Minnesota law generally does not permit a plaintiff to recover damages for injuries that it suffered more than four years before the plaintiff filed suit. An exception to this time limitation is where a defendant has actively concealed its wrongful conduct; this is called fraudulent concealment.

In this case, plaintiffs cannot recover for antitrust injury that occurred prior to September 15, 2005 (for Toshiba) and prior to February 5, 2006 (for HannStar), unless they can show fraudulent concealment.  To establish fraudulent concealment, plaintiffs must prove that:

(1) the members of the conspiracy actively concealed the alleged conduct that caused the plaintiffs' injuries;

(2) the plaintiffs failed to discover the conspiracy before September 15, 2005 (for Toshiba) and before February 5, 2006 (for HannStar); and

(3) the plaintiffs exercised due diligence to try to discover the conspiracy if facts were available to them that should have aroused their suspicion.

If plaintiffs prove each of the three elements as to a particular defendant, the statute of limitations would no longer apply to the state law claims during that period as to that defendant. If plaintiffs fail to show any one of the three elements, you must apply the dates I have provided you and you may not award the plaintiffs any damages under state law based on purchases before those dates.

14

**IMPORT COMMERCE — INTENT; SUBSTANTIAL EFFECT**

Antitrust law applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States.

To show that foreign conduct was meant to produce some substantial effect, the plaintiffs must establish by a preponderance of the evidence that each defendant knowingly entered into an express or tacit agreement intending to produce a substantial effect in the United States.

The plaintiffs must also meet their burden of proving that the alleged agreement between the defendants and the alleged co-conspirators in fact produced a "substantial" effect on the U.S. market. A substantial effect in the United States cannot simply be assumed. Nor can a substantial effect in the United States be assumed to continue because it once existed. The plaintiffs must prove that the substantial effect requirement is met at the relevant time.


**CONTRACT, COMBINATION OR CONSPIRACY**

The plaintiffs allege that the defendants and others participated in a conspiracy to restrain trade by fixing the prices of TFT-LCD panels. A conspiracy is an agreement by two or more persons to accomplish some unlawful purpose or to accomplish a lawful purpose by unlawful means.

The plaintiffs must prove both of the following elements by a preponderance of the evidence:

**First**, that the alleged conspiracy existed; and

**Second**, that the defendants knowingly became a member of that conspiracy; knowingly means voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

A conspiracy is a kind of "partnership" in which each person found to be a member of the conspiracy is liable for all acts and statements of the other members made during the existence of and in furtherance of the conspiracy. To create such a relationship, two or more persons must enter into an agreement that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means.

To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which they would accomplish their purpose. The agreement itself may have been entirely unspoken. What the evidence must show to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement to accomplish a common purpose. It is the agreement to act together that constitutes the conspiracy. Whether the agreement succeeds or fails does not matter.

A conspiracy may vary in its membership from time to time. It may be formed without all parties coming to an agreement at the same time, such as where competitors, without previous agreement, separately accept invitations to participate in a plan to restrain trade. The agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose. It is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.

Direct proof of an agreement may not be available. A conspiracy may be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons were acting independently. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

It is not necessary that the evidence show that all of the means or methods claimed by the plaintiffs were agreed upon to carry out the alleged conspiracy; nor that all of the means or methods that were agreed upon were actually used or put into operation; nor that all the persons alleged to be members of the conspiracy actually were members. What the evidence must show is that the alleged conspiracy of two or more persons existed, that one or more of the means or methods alleged was used to carry out its purpose, and that a defendant knowingly became a member of the conspiracy.

16

In determining whether an agreement has been proved, you must view the evidence as a whole and not piecemeal. In considering the evidence, you first should determine whether or not the alleged conspiracy existed. If you conclude that the conspiracy did exist, you should next determine whether the defendants knowingly became members of that conspiracy with the intent to further its purposes.

## PARTICIPATION AND INTENT

Before you can find that a defendant was a member of the conspiracy alleged by plaintiffs, the evidence must show that the defendant knowingly joined in the unlawful plan at its inception or at some later time with the intent to advance or further some object or purpose of the conspiracy.

To act knowingly means to act voluntarily and intentionally, and not because of mistake or accident or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he had been one of those who formed or began the conspiracy and participated in every part of it.

The membership of a defendant in a conspiracy must be based only on evidence of its own statements or conduct. In determining whether the defendants were members of the alleged conspiracy, you should consider only the evidence of the defendant's statements and conduct, including any evidence of the defendant's knowledge or lack of knowledge, status, and participation in the events involved, and any other evidence of participation in the conspiracy alleged.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy. But actions or statements of any conspirator that were not done or made in furtherance of the conspiracy, or that were done or

United States District Court
For the Northern District of California

made before its existence or after its termination, may be considered as evidence only against the person who made them.

Once a person is found by you to be a member of a conspiracy, he or she is presumed to remain a member and is responsible for all actions taken by all conspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned or that the person has withdrawn from the conspiracy.

Although a defendant who was a member of a conspiracy may withdraw from and abandon the conspiracy, that defendant is still liable with all other co-conspirators for the illegal acts, if any, committed by that defendant or by any co-conspirator while the defendant was a member of the conspiracy up until the time of the defendant's withdrawal.

## GOOD INTENT NOT A DEFENSE

If you find that a defendant engaged in a price-fixing conspiracy, it is not a defense for that defendant that it acted with good motives or thought its conduct was legal, or that the conduct may have had some good results.

## HORIZONTAL PRICE FIXING—
## EVIDENCE OF EXCHANGE OF PRICE INFORMATION

Evidence has been introduced concerning the exchange of information about prices for TFT-LCD panels among one of more of the defendants and/or other TFT-LCD manufacturers alleged to be co-conspirators. Plaintiffs claim that such exchanges are part of the evidence establishing an agreement to fix prices.

The fact that a defendant exchanged price information does not necessarily establish an agreement to fix prices. There may be other legitimate reasons that would lead competitors to exchange price information, and the law recognizes that exchanges of price information may enhance competition

and benefit consumers.  On the other hand, if you find that price information was exchanged and that a defendant does not offer a reasonable explanation as to why it was exchanging that information, you may consider whether it was being exchanged as part of an agreement to fix prices, along with all of the other evidence bearing on whether there was an agreement to fix prices.

You have also heard evidence in this case that certain companies were invited to join a conspiracy or to initiate a conspiracy.  A mere invitation to join a price-fixing conspiracy, without acceptance, is not proof of knowingly joining a conspiracy.

## HORIZONTAL PRICE FIXING — EVIDENCE OF PRICE SIMILARITY

Evidence that the defendants may have charged identical prices as their competitors for the same goods, or engaged in identical or similar business practices, does not alone establish an agreement to fix prices because such practices may be consistent with lawful, ordinary and proper competitive behavior in a free and open market.

Antitrust law prohibits agreements between two or more competitors to fix prices.  It does not prohibit independent behavior even if such behavior is similar or identical to that of competitors.  A defendant may lawfully charge prices identical to those charged by its competitors and not violate the antitrust laws.  A defendant may even copy the prices of a competitor or follow and conform exactly to the price policies and price changes of its competitors.  Likewise, a defendant does not violate antitrust law by taking some action in the hope or expectation that its competitors will follow, so long as it has not reached an agreement with its competitors.  Parallel conduct, without more, does not violate the law.

Nevertheless, you may consider such facts and circumstances, along with all the other evidence, in determining whether any similarity or identity of prices resulted from the independent business judgment of a defendant freely competing in the open market, or whether it resulted from an agreement between a defendant and one or more of their alleged co-conspirators.

United States District Court
For the Northern District of California

## CONSPIRACY – BUY/SELL TRANSACTIONS BETWEEN COMPETITORS ARE NOT PRICE FIXING

It is lawful for buyers of goods or services to discuss and decide on prices of those goods or services with the sellers of the goods or services, even if the buyers and sellers are otherwise competitors.

## CONSPIRACY— CORPORATIONS

A corporation acts through its agents. A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, employees, its unincorporated divisions or its wholly-owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and the statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that outsiders could reasonably believe the agent would have, judging from his position with the company, the responsibilities previously entrusted to him or his office, and the circumstances surrounding his past conduct.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his employment with apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

**ANTITRUST INJURY**

If you find that a defendant has violated the antitrust laws, then you must decide if the plaintiffs are entitled to recover damages from that defendant.

The plaintiffs are entitled to recover damages for injuries to their business or property if they can establish three elements of injury and causation:

*First*, that the plaintiffs were in fact injured as a result of the defendant's alleged violation of the antitrust laws;

*Second*, that the defendant's alleged illegal conduct was a material cause of the plaintiffs' injuries; and

*Third*, that the plaintiffs' injuries are injuries of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact," or "fact of damage."  For the plaintiffs to establish that they are entitled to recover damages, they must prove that the plaintiffs were injured as a result of defendants' alleged violation of the antitrust laws.   Proving the fact of damage does not require the plaintiffs to prove the dollar value of the injury.  It requires only that they prove that they were in fact injured by defendants' alleged antitrust violation.  If you find that the plaintiffs have established that they were in fact injured, you may then consider the amount of their damages.  It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that the plaintiffs have established that they were in fact injured.

As to the second element, the plaintiffs must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that the defendants' alleged illegal conduct was a material cause of their injuries. This means that the plaintiffs must prove that some damage occurred to them as a result of the defendants' alleged antitrust violation, and not some other cause.  The plaintiffs are not required to prove that the defendants' alleged antitrust violation was the sole cause of their injuries; nor do the plaintiffs need to eliminate all other possible causes of injury.  It is enough if the plaintiffs have proved

that the alleged antitrust violation was a material cause of their injuries.  However, if you find that the plaintiffs' injuries  were caused primarily by something other than the alleged antitrust violation, then you must find that the plaintiffs have failed to prove that they are entitled to recover damages.

To prove the final element, the plaintiffs must establish that their injuries are the type of injuries that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If the plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then the plaintiffs' injuries are antitrust injuries.  On the other hand, if the plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then the plaintiffs' injuries are not antitrust injuries and the plaintiffs may not recover damages for those injuries under the antitrust laws.

If the plaintiffs can establish that they were in fact injured by the defendants' conduct, that the defendants' allegedly illegal conduct was a material cause of the plaintiffs' injuries, and that their injuries were the type that the antitrust laws were intended to prevent, then the plaintiffs are entitled to recover damages for their injuries to their business or property.

## DAMAGES — EFFECT OF INSTRUCTION AS TO DAMAGES

I am now going to instruct you on the issue of damages.  The fact that I am giving you instructions concerning the issue of the plaintiffs' damages does not mean that I believe the plaintiffs should, or should not, prevail in this case.

If, for any reason, you reach a verdict for any defendant on the issue of liability, you should not consider the issue of damages as to that defendant, and you may disregard the damages instructions that I am about to give.  Instructions as to the measure of damages are given for your guidance in the event you should find in favor of plaintiffs, as to one or more of the defendants, based on a preponderance of the evidence in accordance with the other instructions I have given you regarding the existence of conspiracy, whether a defendant knowingly joined that conspiracy, injury in fact, and causation.  You should only consider calculating damages if you first find that a defendant violated the antitrust laws

and that this violation caused injury to plaintiffs.

## DAMAGES – ANTITRUST DAMAGES – INTRODUCTION AND PURPOSE

If you find that any of the defendants violated the antitrust laws and that this violation caused injury to the plaintiffs, then you must determine the amount of damages plaintiffs are entitled to recover. The law provides that a plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer or to deter defendant from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation. Antitrust damages are compensatory only. In other words, they are designed to compensate the plaintiffs for the particular injuries they suffered as a result of the alleged violation of the law.

## DAMAGES – JOINT CONSPIRATOR LIABILITY

Each participant in a conspiracy which violates the antitrust laws is "jointly and severally" liable for all the damages resulting from the conspiracy. This means that each conspirator is fully liable for all of the damages caused by acts of any other member of the conspiracy done pursuant to, or in furtherance of, the conspiracy during the time it was a member of the conspiracy.

If you find that a defendant participated in the conspiracy alleged by the plaintiffs and that the plaintiffs are entitled to damages based on the other instructions in this case, then that defendant is liable for all damages caused by the conspiracy during the time it was a member. Such damages generally include all overcharges on purchases of TFT-LCD finished products that are part of the claims here

made by the plaintiffs from all conspirators, not just the overcharges on TFT-LCD finished products purchased from that defendant.

### FEDERAL DAMAGES – NO-"PASS-ON" CONSIDERATION

To award damages on the plaintiffs' federal claims (the "direct" claims), you need not determine the overcharge paid by the plaintiffs with precision. It is sufficient for you to determine the average overcharge paid by the plaintiffs or estimate the overcharge paid by the plaintiffs, as long as the average or estimate is based on evidence and reasonable inferences. You may not, however, engage in guesswork or speculation. If damages can only be ascertained through guesswork or speculation, you may not award damages.

The plaintiffs claim that they were harmed because they paid higher prices for the TFT-LCD products than they would have paid in the absence of the alleged price-fixing conspiracy. A proper method of calculating such damages is to award the difference between the prices actually paid for these products and the prices which would have been paid in the absence of the agreement to fix prices.

Whether or not the plaintiffs passed on any overcharges to its customers is irrelevant to your calculation of damages under federal law.

### STATE LAW DAMAGES -- "PASS-ON"

The plaintiffs may recover damages for the state "indirect" claims in different circumstances than those under which the plaintiffs may recover for "direct" claims under federal law.

As to these "indirect" claims, if you conclude that the plaintiffs have met their burden on liability and are entitled to damages, the plaintiffs are entitled to recover only to the extent that the alleged price-fixing conspiracy caused the prices that they paid for the TFT-LCD products to be higher than those prices would have been in the absence of the price-fixing conspiracy, and only to the extent that the plaintiffs absorbed the overcharge, meaning that they did not pass through the overcharge to their

customers.

Because the plaintiffs did not purchase the panels at issue in their indirect claims directly from the defendants or other companies that participated in a panel conspiracy, plaintiffs must initially show that the overcharges were passed through to the plaintiffs. This means that the plaintiffs must show that there was an initial overcharge on the price of the TFT-LCD panel by a conspirator who was a TFT-LCD panel manufacturer and that the companies above the plaintiffs in the distribution chain then passed on some or all of the overcharge on the price of the TFT-LCD panel to the plaintiffs.

State law similarly recognizes that the plaintiffs may, in turn, pass on any overcharge it paid when it resells TFT-LCD products to its customers. State law provides that a plaintiff is not entitled to recover for any alleged overcharge it passed on to its own customers (in this case consumers of TFT-LCD finished products). The parties have sometimes referred to this as "downstream pass-on" or "pass-on to consumers."

The defendants have the burden to prove by a preponderance of the evidence that the plaintiffs passed-on some or all of an alleged overcharge to their customers. If the defendants prove by a preponderance of the evidence that the plaintiffs passed-on all of an alleged overcharge to their customers you should award zero damages as to that overcharge. If the defendants prove by a preponderance of the evidence that the plaintiffs passed-on some of an overcharge to their customers, then you must deduct that "downstream pass-on" from the plaintiffs' total damages.

## NO CLAIMS FOR LOST SALES OR LOST PROFITS

The plaintiffs are not seeking damages for lost profits as a result of the alleged conspiracy. In determining the amount of damages to award plaintiffs, if any, you should not consider whether the plaintiffs experienced a decrease in sales or profits as a result of the alleged conspiracy.

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DAMAGES -- NO NEED FOR CERTAINTY; SPECULATION NOT PERMITTED**

Damages may not be based on guesswork or speculation. If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages. If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages. It may be difficult for you to determine the precise amount of damage suffered by the plaintiffs. If the plaintiffs establish with reasonable probability the existence of an injury proximately caused by the defendant's antitrust violation, you are permitted to make a just and reasonable estimate of the damages. So long as there is a reasonable basis in the evidence for a damages award, the plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty. The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates. The plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based. If you find that the plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then your verdict must be for defendants. If you find that the plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

**DAMAGES -- CONSUMER DAMAGES**

You have heard testimony about a settlement reached between defendants and a class of consumers. The size or amount of the consumer recovery is irrelevant to your consideration of damages in this case. The Court, after trial, will make any adjustments in the verdict that may be required by law.

26

United States District Court
For the Northern District of California

**NOMINAL DAMAGES**

The law which applies to this case authorizes an award of nominal damages. If you find for the plaintiffs but you find that the plaintiffs have failed to prove damages as defined in these instructions, you must award nominal damages.  Nominal damages may not exceed one dollar.

**SETTLEMENT AGREEMENTS OF SETTLING DEFENDANTS**

Certain LCD suppliers — who were formerly defendants in this matter — reached settlements with the plaintiffs prior to trial.  Some of these settlement agreements generally require the settling defendants to cooperate with the plaintiffs in pursuing plaintiffs' claims as to the other defendants.  The existence of these settlement agreements should not influence your consideration of this case, but you may consider the cooperation obligations in evaluating the bias and credibility of witnesses associated with the settling defendants.

**GUILTY PLEAS AND CONVICTIONS**

You have heard evidence of certain convictions for violating the antitrust laws by fixing the prices of LCD panels.  The convictions are evidence, on their face, that during the periods specified in the pleas or charged in the indictment, AUO, Chunghwa, Chi Mei, HannStar, LG Display, Sharp, Epson, and Hitachi engaged in the violations stated in each of their plea agreements or in the indictment.  You, therefore, may use such convictions and findings of fact that support them, without more, to resolve issues in this case that are the same as the ones in the prior cases.

You are the sole judges of whether the plaintiffs have proved by a preponderance of the evidence that they are entitled to a verdict in their favor. You must determine from all of the evidence in this case, including the convictions and findings of fact, whether the defendants engaged in the conduct alleged by the plaintiffs and whether the plaintiffs have proved all of the required elements of their claim.

The defendants have offered evidence in this case to refute the plaintiffs' charges. If, after

considering all of the evidence presented by both parties, you conclude that the plaintiffs have not proved all of the required elements of their claims, then you cannot find the defendants liable in this case.

## LACK OF INDICTMENT OF TOSHIBA AND CERTAIN CO-CONSPIRATORS

Toshiba and certain alleged co-conspirators were not indicted by the Department of Justice, and you may consider that fact in your deliberations. But the fact that Toshiba or certain alleged co-conspirators were not criminally indicted does not necessarily mean that they did not engage in the alleged illegal conduct.

**United States District Court**
For the Northern District of California

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, do not decide what the verdict should be until you and your fellow jurors have completed your deliberations.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves while you deliberate. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room,

29

**United States District Court**
For the Northern District of California

blog, Web site or other feature.  You may not "blog," "tweet," or use Facebook or any other social networking site to communicate anything to do with the case or your jury service.  This applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial.  In the jury room, you are not to use your cellphones at recesses or lunch to call anyone to ask questions about the case.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you have received all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, "Googling" any party or lawyer or court personnel, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**TAKING NOTES**

You may have taken notes to help you remember the evidence.  Whether or not you have taken notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note

through Tracy, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

### RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.