1  LATHAM & WATKINS LLP
   505 Montgomery Street
2  Suite 2000
   San Francisco, CA 94111-6538
3  Telephone:  415.391.0600
   Facsimile:  415.395.8095
4
   DANIEL WALL (CA Bar: 102580)
5      dan.wall@lw.com
   YI CHIN HO (CA Bar: 204834)
6      yichin.ho@lw.com
   BELINDA LEE (CA Bar: 199635)
7      belinda.lee@lw.com
   JOANNA ROSEN (CA Bar: 244943
8      joanna.rosen@lw.com
9  *Attorneys for Defendant*
   HannStar Display Corporation
10

11                UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14 | IN RE:  TFT-LCD (FLAT PANEL) | No. 3:07-md-1827-SI
   | ANTITRUST LITIGATION |
15 | | Individual Case No. 10-cv -04572 SI
16 | | **MDL No. 1827**
17 | *Best Buy Co., Inc., et al. v. AU Optronics* | **DECLARATION OF GARY GREENFIELD**
   | *Corp., et al.*, No. 10-cv-4572 SI | **IN SUPPORT OF DEFENDANT**
18 | | **HANNSTAR DISPLAY CORPORATION'S**
   | | **OPPOSITION TO BEST BUY**
19 | | **PLAINTIFFS' MOTION FOR FEES AND**
   | | **COSTS**
20 |
21 | | Hearing
   | | Date:      November 22, 2013
22 | | Time:      9:00 a.m.
   | | Place:     Courtroom 10, 19th Floor
23 | | **[Civil Local Rule 79-5]**
24

25                 **PUBLIC REDACTED VERSION**

26

27

28

1    **<u>Declaration of Gary Greenfield</u>**

2         I, Gary Greenfield, declare:

3         1.    I have been retained by HannStar Display Corporation to analyze and provide my

4    opinions and conclusions regarding the attorneys' fees and costs[1] sought by plaintiffs on the

5    Motion. I am filing this Declaration in support of the Opposition by HannStar Display

6    Corporation ("HannStar") to the Motion for Fees and Costs of Best Buy Co., Inc. and the related

7    plaintiffs ("plaintiffs" or "Best Buy") (the "Motion"). I have personal knowledge of the matters

8    set forth herein and, if called upon to testify, I could and would competently testify there.

9    **I.    <u>Background</u>**

10         2.    I am the founder of Litigation Cost Management (LCM), based in Oakland,

11   California. LCM commenced business in 1991. LCM is in the business of consulting regarding

12   legal fee-related issues. As part of our business, we regularly conduct analyses of fee requests in

13   litigation with regard to the reasonableness, appropriateness and allocation of time, fees and

14   expenses being sought, as well as hourly rates. We also consult with clients regarding how to

15   manage their outside litigation more effectively and efficiently. LCM works with both law firms

16   and clients of law firms in undertaking its analyses and consulting about effective litigation

17   management.

18         3.    Prior to starting LCM in January, 1991, I was a partner in the law firm of Shartsis,

19   Friese & Ginsburg in San Francisco, California, where I was a litigator for fifteen years, having

20   become a partner in the firm in 1981. During my career at my former law firm, I handled

21   general commercial litigation, from pre-filing preparation and negotiations through trials and

22   appeals. I handled litigation of varying types, including breach of contract, constitutional law,

23   securities, fraud, bankruptcy litigation, intellectual property, unfair competition, and civil rights

24   litigation. I represented both plaintiffs and defendants. I handled both contingency cases and

25

26

27   ───────────────────

[1] Plaintiffs refer to the expenses and disbursements they are seeking on the Motion as "costs,"
28   regardless of whether they are also seeking them as part of their Bill of Costs, and I will do
likewise.

1    **GREENFIELD DECLARATION ISO DEFENDANT
HANNSTAR'S OPPOSITION TO BEST BUY
PLAINTIFFS' MOTION FOR FEES AND COSTS**

1    cases where we were compensated on an hourly basis.  I graduated from the Boalt Hall School of

2    Law in 1975 and received my undergraduate degree from Stanford University in 1971.

3            4.      Since LCM was founded, I have conducted several hundred analyses of the legal

4    and expert witness fees and expenses in cases of various types and sizes.  These have included

5    individual actions, multi-party suits and class actions.  The cases have included the full range of

6    civil litigation, such as patent, copyright, trademark, real property, False Claims Act, ERISA

7    bankruptcy, tax, breach of contract, securities, antitrust, environmental, insurance coverage and

8    bad faith, discrimination, disability, civil rights, constitutional law, inverse condemnation,

9    personal injury and products liability cases.  I have myself been personally involved in,

10   conducted analysis in and supervised each of these analyses.  As part of my work on these

11   projects, I have prepared and submitted numerous reports on issues related to attorneys' fees,

12   both on behalf of parties opposing fee applications and on behalf of law firms or clients seeking

13   to recover their fees.

14           5.      I have qualified and testified previously as an expert witness in litigation

15   regarding legal and expert witness fees on at least eighteen occasions, again both on behalf of

16   parties seeking to recover their attorneys' fees and parties opposing requests for attorneys' fees.

17           6.      I was appointed serve as a Special Master in a case entitled, *Insurance

18   Commissioner of the State of California v. Golden Eagle Insurance Company*, to analyze and

19   report to the San Francisco Superior Court regarding the fees and expenses of various law firms

20   and experts in an insurance company conservation proceeding before that Court.

21           7.      As part of my work, I also consult with law firms and clients of law firms

22   regarding law firm billing practices, effective litigation management, and legal bill analysis and

23   auditing procedures.  I have lectured and conducted seminars for clients and law firms in each of

24   these areas.

25           8.      I have taught or been a speaker at a number of programs regarding analysis of

26   legal fees, legal bill auditing and litigation management.  I am an instructor for the National

27   Association of Legal Fee Analysis.

28

1    9.    For purposes of my analyses in these various cases and my consulting work, we

2    have received and analyzed the time entries, billing rates and expenses billed in many hundreds

3    of cases, involving law firms and law firm offices across the country.[2]  I also regularly review

4    cases and articles dealing with attorneys' fees, billing rates and litigation management issues,

5    surveys and articles regarding billing rates being charged in the legal industry, and have attended

6    seminars (including where I have been an instructor) where issues relating to attorneys' fees and

7    litigation management issues have been the topic.  As a result, I am familiar with typical and

8    commonly accepted billing practices among law firms, as well as the rates typically charged by

9    lawyers of various experience levels and expertise both nationally and in various parts of the

10   United States.

11       10. My resume is attached hereto as **Exhibit 1**.

12   **II.    Materials Reviewed**

13       11. For purposes of my analysis, I have reviewed the materials set forth in **Exhibit 2**.

14   **III.   Overview**

15       12.    This action is part of the Multidistrict Litigation known as <u>In Re TFT-LCD (Flat</u>

16   <u>Panel) Antitrust Litigation</u> (the "MDL") involving antitrust violations alleged by a number of

17   plaintiffs which were both direct and indirect purchasers of products that contained liquid crystal

18   display flat panels, ranging from cell phones to televisions.  HannStar was one of the defendants.

19   It is my understanding that HannStar did not contest liability during the course of the litigation.

20   There were several class actions that were part of the MDL, but plaintiffs opted out of those

21   actions and brought this action instead, which involved solely Best Buy and its affiliates.

22       13.    The action went to trial against HannStar and Toshiba Corporation ("Toshiba")

23   with all the other defendants in the action settling prior to trial.  It is my understanding that, out

24   of the forty-two witnesses who testified at trial, there was one HannStar-affiliated witness and

25   twelve Toshiba-related witnesses (as well as five expert witnesses and seventeen witnesses who

26

27   _____

[2] I receive and review bills and rate information in many cases beyond those I work on as an
expert in litigation, including for clients for whom I do consulting work, and I also receive and

28   review compilations of rates from various sources which I consider reliable indicators of rates in
various markets.

1   were affiliated with, employees of or former employees of an alleged co-conspirator.)  The jury

2   returned a defense verdict for Toshiba.  As stated, HannStar did not contest liability, and the jury

3   found HannStar liable.  Best Buy had sought $800 million in damages against Toshiba and

4   HannStar, and the jury found that Best Buy had suffered $7,471,943 in damages in its direct

5   purchases and zero in its indirect purchases, which together was less than one percent of the

6   damages sought.  Plaintiffs are now seeking $9,103,109.95 in fees and $8,550,525.26 in costs on

7   this Motion, plus up to another $222,984.62 that plaintiffs are seeking in their Bill of Costs**.**  A

8   Biller Summary showing all the billers in the time entries is set forth as **Exhibit 3**.

9        14.    I was retained by HannStar to analyze various aspects of the fees and costs sought

10   on the Motion regarding what portion of the fees are compensable.  My analysis follows.

11   **IV.    Methodology**

12        15.    In order to undertake the analyses for this Motion, we created a database of the

13   time entries and costs produced by plaintiffs in support of the Motion.[3]  We create a database of

14   this type in virtually every case I am involved in where the analysis of time entries is involved.  I

15   then analyzed the time entries and quantified various types of activities and projects on the case.

16   Certain of the analyses I undertook are included with this Report as Exhibits.  We also generated

17   reports for reference purposes for the convenience of the Court and parties, showing all the time

18   entries in the bills organized by date and all the time entries organized by biller, which are

19   included with this Declaration as an Appendix.[4]

20

---

21   [3] The process for creation of the database of the time in this case was as follows:  (a) LCM
    created an electronic computer file of the time entries and expense entries in the time entries
22   supplied in support of the Motion.  The information put into the computer file included the work
    date, the identity of the biller undertaking each task or group of tasks on the bills, the
23   descriptions of the work undertaken, the time spent, the amount billed, as well as other
    information from the bills; (b) We then checked the computer file using various analyses and
24   tests to verify that it accurately reflects the time entries provided.  At times, we correct obvious
    misspellings or typographical errors.  There may still remain typographical errors (such as
25   misspellings) due to the conversion process, which we take into account in performing our
    analyses.

26

27   Once we determined that the information input was accurate, the file was converted into a
    database "table," and we constructed our database from that table.

28   [4] As indicated in the footnote in the various database reports we have generated, we have taken
    the 5% discount provided by plaintiffs into account in the reports.  We have done so by reducing

1    16.    After the database was created, I commenced the process of analyzing various

2    aspects of the time and fees.  One step in that process is to identify the time entries that relate to

3    various aspects of the case I am analyzing.  This often starts with a search of the database for

4    certain words or terms that I conclude may identify the time entries for the particular analysis I

5    am doing.[5]    Search reports may be over-inclusive and/or under-inclusive so, when possible, we

6    fine-tune the reports by culling out entries that do not appear to relate to the analysis in question,

7    even though a particular search term appears in the entry, and add other entries that relate to the

8    analysis but do not use the search terms selected.  Through this process, we create reports that

9    reflect, to the best of our ability, the work done related to the particular analysis.

10   REDACTED

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   the rates shown by 5% from the amounts appearing in the time entries provided in support of the
     Motion.

27   [5] Thus, for example, to start the analysis of time spent on work related to the "indirect purchases"
     claim, we conducted a search of "indirect" and other terms that I determined through reviewing
     materials in the underlying file, interviewing counsel for HannStar which I believe, based on my
28   own experience, will identify the relevant time entries.

REDACTED



REDACTED

6   GREENFIELD DECLARATION ISO DEFENDANT
HANNSTAR'S OPPOSITION TO BEST BUY
PLAINTIFFS' MOTION FOR FEES AND COSTS



REDACTED

REDACTED

.

7   **GREENFIELD DECLARATION ISO DEFENDANT
HANNSTAR'S OPPOSITION TO BEST BUY
PLAINTIFFS' MOTION FOR FEES AND COSTS**

1    REDACTED
2
3
4
5
6
7
8                                        .
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24    _____
25
26
27
28                    REDACTED

REDACTED

1    REDACTED

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    ———————————————

27

28    REDACTED

1

REDACTED

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REDACTED

11  **GREENFIELD DECLARATION ISO DEFENDANT
HANNSTAR'S OPPOSITION TO BEST BUY
PLAINTIFFS' MOTION FOR FEES AND COSTS**



REDACTED

12  GREENFIELD DECLARATION ISO DEFENDANT
HANNSTAR'S OPPOSITION TO BEST BUY
PLAINTIFFS' MOTION FOR FEES AND COSTS

1    REDACTED
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

REDACTED

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 ─────────────────────

28  REDACTED

14  **GREENFIELD DECLARATION ISO DEFENDANT**
**HANNSTAR'S OPPOSITION TO BEST BUY**
**PLAINTIFFS' MOTION FOR FEES AND COSTS**

1                                  REDACTED

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REDACTED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1    REDACTED

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17  **GREENFIELD DECLARATION ISO DEFENDANT HANNSTAR'S OPPOSITION TO BEST BUY PLAINTIFFS' MOTION FOR FEES AND COSTS**

1

REDACTED

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

.

20

21

22

23

24

25

26

27

28

REDACTED

1     REDACTED

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23     _____

24

25

26

27

28    REDACTED

19  **GREENFIELD DECLARATION ISO DEFENDANT
HANNSTAR'S OPPOSITION TO BEST BUY
PLAINTIFFS' MOTION FOR FEES AND COSTS**

# REDACTED

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed at Alameda County, California on October 30, 2013.

_____
Gary Greenfield

**GREENFIELD DECLARATION ISO DEFENDANT HANNSTAR'S OPPOSITION TO BEST BUY PLAINTIFFS' MOTION FOR FEES AND COSTS**

# APPENDICES A AND B

## REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED

# EXHIBITS

# 1 – 32

## REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED