Kenneth S. Marks (*pro hac vice*)
Jonathan R. Ross (*pro hac vice*)
Johnny W. Carter (*pro hac vice*)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Facsimile:   (713) 654-6666
Email: kmarks@susmangodfrey.com
        jross@susmangodfrey.com
        jcarter@susmangodfrey.com

Parker C. Folse III (*pro hac vice*)
Rachel S. Black (*pro hac vice*)
Jordan Connors (*pro hac vice*)
SUSMAN GODFREY LLP
1201 Third Avenue
Seattle, Washington 98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
Email:  pfolse@susmangodfrey.com
         rblack@susmangodfrey.com
         jconnors@susmangodfrey.com

*Attorneys for Alfred H. Siegel, solely in his
capacity as Trustee of the Circuit City Stores,
Inc. Liquidating Trust*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br>————————————————————<br>This Document Relates to Individual Case No. 10-cv-5625 SI<br><br>ALFRED H. SIEGEL, AS TRUSTEE OF THE CIRCUIT CITY STORES, INC. LIQUIDATING TRUST,<br><br>        Plaintiff,<br><br>v.<br><br>AU OPTRONICS CORPORATION, ET AL<br><br>        Defendants. | Master File No. M07-md-1827 SI-FS<br><br>MDL No. 1827 SI<br><br>This Document Relates To:<br>Case No. 10-CV-05625-SI<br><br>**PLAINTIFF ALFRED H. SIEGEL, AS TRUSTEE OF THE CIRCUIT CITY STORES, INC. LIQUIDATING TRUST'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 22, 2013<br>Time: 9:00 am<br>Dept.: Courtroom 10, 19th Floor<br>Judge: Hon. Susan Illston |

## REDACTED VERSION OF DOCUMENTS
## SOUGHT TO BE SEALED

# <u>TABLE OF CONTENTS</u>

**MEMORANDUM OF POINTS OF AUTHORITIES** ....................................................... 2

**I.     STATEMENT OF FACTS** ................................................................................ 3

**II.    LEGAL STANDARD** ...................................................................................... 7

     A.    Summary Judgment ........................................................................... 7

     B.    Choice of Law ................................................................................... 7

**III.   CALIFORNIA'S CHOICE OF LAW ANALYSIS FOCUSES ON STATE INTERESTS, NOT STATE CONTACTS** ....................................... 8

**IV.    CALIFORNIA LAW APPLIES TO PLAINTIFF'S STATE ANTITRUST CLAIM** ................................................................................ 10

     A.    Step 1: California and Virginia Antitrust Law Differ With Respect To Indirect Purchaser Claims ........................................... 10

     B.    Step 2: Defendants Have Not Established that Virginia Has Any Interest In Having Its Antitrust Laws Applied In This Case ................. 11

          1.    Virginia Has No Interest in Applying Its Law To This Case. ................. 11

          2.    California Has a Significant and Explicit Interest in Providing Circuit City Trust with a Private Cause of Action for Its Indirect Purchases ...... 13

     C.    Step 3: Even If a "True Conflict" Exists, California's Interest Would Be Most Impaired if Virginia Antitrust Law Is Applied .......................... 15

**V.     CALIFORNIA LAW APPLIES TO PLAINTIFF'S CONSUMER PROTECTION CLAIMS** ............................................................................... 17

     A.    Step 1: A Material Conflict Exists Between California and Virginia Consumer Protection Law ................................................. 17

     B.    Step 2: Defendants Have Not Established that Virginia Has Any Interest In Having Its Consumer Protection Law Applied In This Case ................................................................................. 17

     C.    Step 3: Even If a "True Conflict" Exists, California's Interest Would Be Most Impaired if Virginia Consumer Protection Law Is Applied ............................................................................ 18

**VI.    CALIFORNIA LAW APPLIES TO PLAINTIFF'S UNJUST-ENRICHMENT CLAIM** .................................................................. 19

**VII.   CONCLUSION** ............................................................................................ 19

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page i

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

## TABLE OF AUTHORITIES

**Cases**

*Abogados v. AT & T, Inc.*,
    223 F.3d 932 (9th Cir. 2000) .......................................................................................... 9

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................... 7

*Anderson v. Savin Corp.*,
    254 Cal. Rptr. 627 (Ca. Ct. App. 1988) ....................................................................... 11

*AT&T Mobility LLC v. AU Optronics Corp.*,
    707 F.3d 1106 (9th Cir. 2013) ..................................................................................... 14

*California v. Infineon Techs.*,
    531 F. Supp. 2d 1124 (N.D. Cal. 2007) ................................................................. 10, 11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................................... 7

*Cel-Tech*,
    973 P.2d at 539 ........................................................................................................... 18

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) .................................................................................................... 12

*Clayworth v. Pfizer, Inc.*,
    233 P.3d 1066 (Cal. 2010) ............................................................................... 14, 17, 19

*CRS Recovery, Inc. v. Laxton*,
    600 F.3d 1138 (9th Cir. 2010) ............................................................................... 7, 8, 9

*Diamond Multimedia Sys. v. Superior Court*,
    968 P.2d 539 (Cal. 1999) ............................................................................................ 14

*Engel v. CBS*,
    981 F.2d 1076 ............................................................................................................... 9

*Estrella v. Freedom Fin. Network, LLC*,
    No. C-09-03156-SI, 2010 WL 2231790 (N.D. Cal. June 2, 2010) ............................... 15

*Hill v. Novartis Pharm. Corp., 1*,
    :06-CV-00939-AWI, 2012 WL 967577 (E.D. Cal. Mar. 21, 2012) ..................... 9, 10, 13

*Hurtado v. Superior Court*,
    522 P.2d 666 (Cal. 1974) ........................................................................................... 7, 8

*In re TFT-LCD (Flat Panel) Antitrust Litig., AT&T Mobility, LLC v. AU
    Optronics Corp.*,
    No. 11-16188, 2011 WL 9670906 (9th Cir. Sept. 8, 2011) ................................... 14, 18

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page ii

MASTER FILE NO.: M-07-1827-SI
CASE No. 3:10-05625 SI

*Johnson v. Mitchell*,
  2:10-CV-1968 GEB GGH PS, 2013 WL 2102835 –6 (E.D. Cal. May 14,
  2013).................................................................................................................................9

*Johnson v. Spider Staging Corp.*,
  555 P.2d 997 (Wash. 1976) .......................................................................................2, 3

*McCann v. Foster Wheeler LLC*,
  225 P.3d 516 (Cal. 2010)..........................................................................................9, 16

*McGhee v. Arabian Am. Oil Co.*,
  871 F.2d 1412 (9th Cir. 1989) .....................................................................................7, 8

*Paulsen v. CNF Inc.*,
  559 F.3d 1061 (9th Cir. 2009) .........................................................................................8

*Pedroza v. BRB*,
  624 F.3d 926 (9th Cir. 2009) ........................................................................................12

*Strassberg v. New England Mut. Life Ins. Co.*,
  575 F.2d 1262 (9th Cir.1978) .......................................................................................10

*Voelker v. Porsche Cars N. Am., Inc.*,
  353 F.3d 516 (7th Cir. 2003) ...........................................................................................7

*Wash. Mut. Bank, FA v. Superior Court*,
  15 P.3d 1071 (Cal. 2001).............................................................................................9, 16

**Statutes**

Cal. Bus. & Prof. Code § 16750(a) ...........................................................................................14

Cal. Bus. & Prof. Code § 17200...............................................................................................17

Cal. Com. Code § 2106 ...............................................................................................................6

Cal. Com. Code § 2401(2)...........................................................................................................7

Va. Code Ann. § 59.1-9.17.......................................................................................................11

Va. Code Ann. § 8.2-106.............................................................................................................6

Va. Code Ann. § 8.2-401(2) ........................................................................................................7

**Rules**

Fed. R. Civ. P. 56 .........................................................................................................................7

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page iii

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

Plaintiff Alfred H. Siegel, as the duly appointed Trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Circuit City Trust"), respectfully submits this Opposition to Defendants' Motion for Partial Summary Judgment on Choice of Law and Memorandum of Points and Authorities in Support Thereof.

## PRIOR RELEVANT ORDERS

This Court's prior relevant orders include:

- July 11, 2013 Order Re LG's Motion in Limine No. 14 Regarding CompUSA's and RadioShack's Indirect Purchaser Claims (MDL ECF No. 8297);

- November 29, 2011 Order Granting Defendants' Joint Motion to Dismiss in Part Amended Complaint (MDL ECF No. 4195);

- August 29, 2011 Order Granting in Part Defendants' Joint Motion to Dismiss Complaint (MDL ECF No. 3396).

## ISSUES TO BE DECIDED

1. Have Defendants established that Virginia has any interest in applying its antitrust and consumer protection laws to this case, when Virginia has articulated no interest in barring indirect purchaser lawsuits or regulating illegal conduct that took place outside of Virginia?

2. Assuming that Defendants have shown that Virginia has an interest in applying its law here, have Defendants established that Virginia's interests would be more impaired if its law were not applied than California, whose interest in deterring anticompetitive conduct and in promoting free competition will be significantly impaired if Virginia antitrust and consumer protection laws are applied to Plaintiff's claims?

3. Given California's interest in having its law applied to Circuit City Trust's claims, should the Court apply that law with respect to Circuit City Trust's state antitrust and consumer protection claims?

OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 1

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

## **MEMORANDUM OF POINTS OF AUTHORITIES**

Defendants' Motion, for the first time in this MDL, seeks under California's choice-of-law rules to apply the law of a state that has expressed no interest in barring indirect purchaser lawsuits, over the law of California, which has stated an express interest in allowing such suits. In support of their Motion, Defendants rely heavily on Circuit City Stores, Inc.'s ("Circuit City") "deep roots" in Virginia. This reliance is misplaced, however, because under California's choice of law analysis, the Court must analyze competing state <u>interests</u> – not competing state <u>contacts</u>. California has a significant interest in regulating the conduct of out-of-state parties to deter anticompetitive conduct and promote free competition, especially where the conspiracy occurred in large part in California, whereas Defendants have not established that Virginia has any interest in applying its law – other than by pointing to Circuit City's activities in that state. Accordingly, the Court should deny Defendants' Motion and apply California law to Plaintiff's claims.

This Court's prior choice-of-law rulings are consistent with the application of California law to Plaintiff's claims. This Court has never ruled, as Defendants suggest, that "if a plaintiff was based in, negotiated its purchases from, issued purchase orders from, and sent payments from a state, that state is the state with the greatest interest in the plaintiff's claimed injury." Mot. at 3. Instead, in the *Costco* ruling that Defendants claim "parallel[s] the grounds for this motion," Mot. at 4, this Court applied Washington's "most significant relationship" choice-of-law rule – which <u>requires</u> consideration of "which contacts are most significant and to determine where these contacts are found."[1] Order Granting Defs.' Joint Mot. to Dismiss in Part Am. Compl. 3 Nov. 29, 2011, MDL ECF No. 4195; Order Granting in Part Defs.' Joint Mot. to Dismiss Compl. 6, August 29, 2011, MDL ECF No. 3396 (quoting *Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash. 1976)). Whether this Court's *Costco* ruling "fits the facts of this case seamlessly" as Defendants assert is simply irrelevant under California's choice of law rules. Mot.

---

[1] With regard to the *Costco* ruling, this Court has stated: "The Costco Order, issued pre *AT&T Mobility [LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013)], did not sufficiently consider the location of defendants' conspiratorial conduct, and therefore the Court declines to rely on it." *See* Order Re LG's Mot. in Limine No. 14 Regarding CompUSA's & RadioShack's Indirect Purchaser Claims, July 11, 2013, MDL ECF No. 8297, at 1 n.1.

OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 2

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

at 8.

As this Court recently recognized, a choice of law analysis under California law requires that this Court consider more than a plaintiff's mere contacts. *See* Order Re LG's Mot. in Limine No. 14 Regarding CompUSA's & RadioShack's Indirect Purchaser Claims 2-3, July 11, 2013, MDL ECF No. 8297 (hereinafter, "Order re LG's Mot. in Limine No. 14"). Indeed, in the only order this Court has issued applying California's choice of law principles, the Court recognized California's "articulated interest in applying its law" and in "regulating the conduct of out-of-state parties," "deterring anticompetitive conduct" and "promoting free competition." *Id.* Although in that case the Court determined that Texas law applied, the Court recognized that Texas had strong interest in applying its law, in that it had taken "express efforts to limit recovery in antitrust cases to direct purchasers." *Id.* at 3.

Here, however, the choice of law is not between California and Texas; it is between California and Virginia – which, unlike Texas, has never addressed the standing of indirect purchaser claims or "articulated its interest in applying its law to this case." *Id.* Virginia simply has no interest in applying its law to this case. Accordingly, as set forth in full below, applying the California choice of law analysis consistent with this Court's prior ruling requires the application of California law to Circuit City Trust's claims.

## I.    STATEMENT OF FACTS

Defendants were part of a multinational price-fixing conspiracy whose activities spread from Asia to the United States. This price fixing conspiracy took place, in large part, in California, and resulted in injury to Circuit City, that occurred, in large part, in California. Defendants executed their illegal conspiracy through their connections to and activities in California and, as a result, they successfully increased the prices that Circuit City paid for products containing price-fixed LCD panels that Circuit City took possession of and sold in California.

Defendants used their California corporate headquarters, principal places of business, or

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 3

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

other offices and facilities in California to further their illegal conspiracy.[2] For example, Defendants' California-based employees exchanged information with their counterparts related to sales of LCD panels to customers in the United States:

- ████████████████████████████████████████████████ Decl. of Rachel S. Black in Support of Pl.'s Opp. to Defs.' Mot. of Partial Summ. J. on Choice of Law ("Black Decl."), filed concurrently herewith, Ex. 1.

- ████████████████████████████████████████████████ Black Decl. Ex. 2.

- ████████████████████████████████████████████████ Black Decl. Ex. 3.

In accordance with Defendants' instructions, these California-based employees exchanged information with competitors, both through face-to-face contact and through other means. The California-based employees then relayed the competitive information to their superiors abroad:

- ████████████████████████████████████████████████

---

[2] Defendants' relevant subsidiaries and/or affiliates located in California included the following: (1) Samsung Semiconductor, Inc. ("SSI"), *see* Samsung Sales Network, Americas, USA-California, http://www.samsung.com/global/business/semiconductor/sales-network (last visited November 4, 2013); (2) Chi Mei Optoelectronics USA, Inc. ("CMO USA") (Chimei Entities' Answer to Circuit City's Second Am. Compl. ¶ 7, No. 10-cv-5625, ECF No. 67); (3) Nexgen Mediatech USA, Inc. ("Nexgen USA")(*Id.* ¶ 7); (4) Epson Electronics America, Inc. ("EEA") (Epson's Answer to Circuit City's Second Am. Compl. ¶ 51, No. 10-cv-5625, ECF No. 60); (5) Toshiba America Information Systems, Inc. ("TAIS") (TAIS's Answer to Circuit City's Second Am. Compl. ¶ 48, No. 10-cv-5625, ECF No. 66); and (6) Toshiba America Electronic Components, Inc. ("TAEC")(*Id.* ¶ 47).

[3] Black Decl. Exs. 4 & 6–14.

| OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW AND MEMORANDUM OF POINTS AND AUTHORITIES Page 4 | MASTER FILE NO.: M-07-1827-SI CASE NO. 3:10-05625 SI |

Black Decl. Ex. 15.

- 

Black Decl. Ex. 23.

- 

Black Decl. Exs. 22& 3.

These are just examples of Defendants' attempts to use their California connections to further the illegal price-fixing conspiracy. Defendants' foreign-based employees also transmitted similar information to the California-based employees in furtherance of the conspiracy,[5] and

---

[4] Black Decl. Exs. 5 & 16–22.

[5] Black Decl. Ex. 25

Black Decl. Ex. 26

Black Decl. Ex. 1

Black Decl. Ex. 27

Black Decl. Ex. 28

Black Decl. Ex. 30

Black Decl. Ex. 31

Black Decl. Ex.

Black Decl. Ex. 33

Black Decl. Ex. 34

Black Decl. Ex. 35

Black Decl. Ex. 36

Black Decl. Ex. 37

Black Decl. Ex. 38

Black Decl. Ex. 39

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 5

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

Defendants' California-based employees submitted price quotes tainted by their unlawful conspiracy to customers located in California and elsewhere.[6]

Defendants' guilty pleas also demonstrate that the illegal conspiracy extended into California. The guilty pleas of six corporate conspirators and five individual conspirators acknowledge that "[a]cts in furtherance of this conspiracy were carried out within the Northern District of California" and that "TFT-LCD affected by this conspiracy was sold by one or more of the conspirators to customers in this District."[7]

Defendants' conspiracy heavily impacted Circuit City's activities in California and harmed Circuit City in California. Circuit City conducted a substantial volume of business in the state including retail and online sales, and it received LCD products throughout the conspiracy period in its distribution centers in Walnut and Livermore, California. Fose Decl ¶ 3 & Ex. 1. Between the years of 1996 and 2006, Circuit City had between 69 and 87 retail stores in California, operated by Circuit City Stores West Coast, Inc., which was incorporated in California. Fose Decl. ¶¶ 5, 7 & Ex. 1. Many LCD purchases were concluded in California, where Circuit City took title to various LCD products at its distribution centers.[8] Fose Exs. 2–5

Black Decl. Ex. 40

Black Decl. Ex. 41

Black Decl. Ex. 30

Black Decl. Ex. 42

[6] Black Decl. Ex. 25

Black Decl. Ex. 26

Black Decl. Ex. 3

Black Decl. Ex. 43

[7] *See* Black Decl. Exs. 44-54 (plea agreements).

[8] LCD Products that defendants shipped to Circuit City's distribution centers in California were "purchased" by Circuit City in California. Pursuant to the Uniform Commercial Code as enacted in both California and Virginia, Circuit City completed its purchases of LCD Products when title passed from Defendants to Circuit City, which occurred upon Defendants' physical delivery of the goods to California. U.C.C. § 1-201(b)(29) (defining a "purchase as "taking by sale"); Va. Code Ann. § 8.2-106; Cal. Com.

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 6

MASTER FILE NO.: M-07-1827-SI
CASE NO. 3:10-05625 SI

(various agreements showing transfer of title/FOB at delivery destination). In fact, Circuit City purchased more price-fixed goods in California than in any other state, as Circuit City took receipt of purchases totaling over $1.16 billion over the course of the conspiracy in California. Fose Decl. ¶¶ 12–13 & Exs. 6–7.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Defendants are entitled to summary judgment only if "there is no genuine issue as to any material fact" and they are "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not appropriate if a "dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating absence of all genuine issues of material fact. *Id.* at 256. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B.   Choice of Law

Under California's choice-of-law rules, it is Defendants' burden to show that the law of Virginia should apply over California law. *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1143 (9th Cir. 2010). "[G]enerally speaking [California] will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." *Hurtado v. Superior Court*, 522 P.2d 666, 670 (Cal. 1974). "The burden is on the party seeking to invoke foreign law." *McGhee*

---

Code § 2106 ("A 'sale' consists in the passing of title from the seller to the buyer for a price."); Va. Code Ann. § 8.2-401(2); Cal. Com. Code § 2401(2) ("Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods."); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 523 (7th Cir. 2003) ("Under the [U.C.C.] . . . it is well established that a sale occurs only where there is a passing of title to a buyer.") (internal citation omitted).

OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW AND MEMORANDUM OF POINTS AND AUTHORITIES Page 7

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

*v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989); *see CRS Recovery*, 600 F.3d at 1142 ("As a default, the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that the foreign rule of decision will further the interests of that state.").

### III.    CALIFORNIA'S CHOICE OF LAW ANALYSIS FOCUSES ON STATE INTERESTS, NOT STATE CONTACTS

Defendants are correct that California's choice of law rules apply.  Although Defendants correctly set forth the basic elements of California's three-step choice of law analysis, they neglect to disclose that (1) it is Defendants' burden to invoke the laws of a foreign state; (2) the analysis focuses on the competing state interests, which includes consideration of the history, status, purpose, and function of the states' laws and the relative commitment of the respective states to the laws involved; and (3) the third prong is weighted by California's preference for application of its own law. When Virginia and California's relative interests are considered, as is required, it is clear that California law must be applied, and that Defendants' motion fails.

California's choice of law rules provide that the California rule of decision will apply "unless a party invokes the law of a foreign state that 'will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.'" *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) (quoting *Hurtado*, 522 P.2d at 670). California courts employ a three-step "governmental interest analysis" to assess whether California law or non-forum law apply. *Id.* This analysis applies on a claim-by-claim basis. *McGhee*, 871 F.2d at 1422 ("If distinct claims for relief implicate different alignments of interest among the relevant jurisdictions, separate applications of a governmental interest analysis are required.").

Under the first step of the governmental interest choice of law analysis, Defendants are required to show that Virginia law materially differs from the law of California.[9] *CRS Recovery*, 600 F.3d at 1142. If the laws differ, the second step requires Defendants to show that application

---

[9] Because California and Illinois both permit indirect purchasers to bring suit under state antitrust laws, there is no actual conflict, and California courts would therefore apply California law. For that reason, this memorandum discusses only the conflict between California and Virginia law.

OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 8

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

of Virginia law will further the interests of that state. *Id.* In this step, the Court "examine[s] each jurisdiction's interest in the application of its own law in the circumstances of the particular case to determine whether a true conflict exists" – that is, whether both California and Virginia have an interest in having their respective laws applied. *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 529 (Cal. 2010) (citations and quotation marks omitted).

If only California has a legitimate interest in the application of its rule of decision, there is a "false conflict" and the law of the California is applied. *CRS Recovery*, 600 F.3d at 1142. Thus, the Court "may properly find California law applicable without proceeding to the third step in the analysis if the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied." *Hill v. Novartis Pharm. Corp.*, 1:06-CV-00939-AWI, 2012 WL 967577 (E.D. Cal. Mar. 21, 2012) (quoting *Wash. Mut. Bank, FA v. Superior Court*, 15 P.3d 1071, 1081 (Cal. 2001)).

"[I]f more than one jurisdiction has a legitimate interest, the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions." *CRS Recovery*, 600 F.3d at 1142 (quoting *Abogados v. AT & T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000)). At this stage, the Court must "carefully evaluate and compare the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *McCann*, 225 P.3d at 533 (citations and quotation marks omitted). "In making this comparative impairment analysis, the trial court must determine the relative commitment of the respective states to the laws involved and consider the history and current status of the states' laws and the function and purpose of those laws." *Wash. Mut. Bank*, 15 P.3d at 1081 (internal quotation marks omitted).

Importantly, in the third step, "[t]he balancing of impairment is slightly weighted by California's general preference for applying its own law." *Johnson v. Mitchell*, 2:10-CV-1968 GEB GGH PS, 2013 WL 2102835, *5–6 (E.D. Cal. May 14, 2013) (quoting *Engel v. CBS*, 981 F.2d 1076, 1080–81 (9th Cir.1993)). Thus, when determining whether to apply California or

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 9

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

Virginia law:

> the Court is guided by the following principle: [W]hen the forum state undertakes its search to find the proper law to apply based upon the interests of the litigants and the involved states, it is understood that [n]ormally, even in cases involving foreign elements, <u>the court should be expected, as a matter of course, to apply the rule of decision found in the law of the forum</u>.

*Hill v. Novartis Pharm. Corp.*, 1:06-CV-00939-AWI, 2012 WL 967577 (E.D. Cal. Mar. 21, 2012) (internal quotation marks omitted; emphasis added; alterations in original); *Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1262, 1264 (9th Cir.1978) (holding that "the preference is to apply California law, rather than choose the foreign law as a rule of decision").

    Applying this test to Circuit City Trust's claims, it is clear that Defendants have not met their burden, and that California law applies to Plaintiff's state antitrust and consumer protection claims. Each claim is analyzed in turn below.

## IV.   <u>CALIFORNIA LAW APPLIES TO PLAINTIFF'S STATE ANTITRUST CLAIM</u>

    Although Defendants are correct that California and Virginia antitrust laws differ, Defendants have failed to demonstrate (1) that Virginia has any interest in applying its antitrust or consumer protection laws in this case; (2) even if it has any such interest, Virginia's interest overcomes California's general preference for a applying its own law; and (3) that Virginia would be more impaired than California if its law were not applied. Accordingly, under California's governmental interest analysis, California law applies to Circuit City Trust's antitrust claims.

    **A.**   <u>**Step 1: California and Virginia Antitrust Law Differ With Respect To Indirect Purchaser Claims**</u>

    Defendants are correct that there is a material difference between the applicable laws of Virginia and California. California has expressly granted standing to indirect purchasers to bring private antitrust actions, and Virginia has not directly addressed the issue. As this Court has previously noted, the "Virginia Antitrust Act is … silent on the specific question whether indirect purchasers have standing to bring suit under the Act." *Infineon Techs.*, 531 F. Supp. 2d at 1150. In construing Virginia law to prohibit indirect purchaser standing, this Court noted that

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 10

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

doing so "avoid[s] any unwarranted expansion of the rights available pursuant to Virginia's Antitrust Act, at least until <u>Virginia courts themselves have the occasion to weigh in on the issue</u>." *Id.* (emphasis added). Virginia courts have not yet "weighed in on the issue." Thus, the law of California and Virginia conflict regarding the standing of indirect purchasers to bring state antitrust actions.

**B.    Step 2: Defendants Have Not Established that Virginia Has Any Interest In Having Its Antitrust Laws Applied In This Case**

"Only if each of the states involved has a legitimate but conflicting interest in applying its own law" is "a true conflicts case" presented. *Anderson v. Savin Corp.*, 254 Cal. Rptr. 627, 629 (Ca. Ct. App. 1988) (internal quotation marks omitted). The choice-of-law analysis stops here because Defendants have failed to establish that Virginia has any interest in applying its law to this litigation, and California has a significant interest in doing so.

**1.    Virginia has no interest in applying its law to this case.**

Defendants argue generally that "Circuit City is deeply rooted in Virginia," but they fail to connect Circuit City's "roots" with any expressed interest on the part of Virginia to apply its law to this case. Motion at 8. Plaintiff does not deny that Circuit City had "roots" in Virginia – but Circuit City's roots do not establish any interest on Virginia's part in applying its antitrust law here. Under the correct analysis, which considers state interests as opposed to state contacts, it is clear that Virginia has no such interest.

First, Virginia has never affirmatively barred indirect purchaser claims and its silence on the issue cannot be interpreted as an expression of interest. Neither the Virginia legislature nor the judiciary has addressed the standing of an indirect purchaser to bring a cause of action under Virginia's antitrust laws. In 1974, at a time when indirect purchasers did have standing to bring such actions under federal law, Virginia passed the Virginia Antitrust Act's Harmonization Provision, Va. Code Ann. § 59.1-9.17, which requires that Virginia antitrust laws "be applied and construed to effectuate its general purposes in harmony with judicial interpretation of comparable federal statutory positions." Other than this 1974 legislative enactment, which at the

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 11

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

time <u>created</u> a private cause of action for indirect purchasers, Virginia has remained silent on the issue. Defendants attempt to construe Virginia's silence as indicative of a "strong interest in limiting liability for indirect purchaser claims," Mot. at 9, but their inference runs afoul of the Supreme Court's precept that "Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994) (internal quotation marks omitted); *see Pedroza v. BRB*, 624 F.3d 926, 933 (9th Cir. 2009) ("[C]ongressional inaction is not a reliable guide to determine legislative intent.").

Second, even if Virginia had articulated an interest in limiting liability for indirect purchaser claims, Defendants fail to establish that Virginia would be interested in limiting such liability against out-of-state defendants who victimized resident plaintiffs with a conspiracy that largely took place out of state. Defendants have offered no evidence that even a single Defendant or co-conspirator took any proactive steps in furtherance of the conspiracy in Virginia – other than by selling price-fixed goods to a resident of Virginia.[10] By contrast, Defendants maintained principal places of business in California or had sales offices or sales agents in California, and have admitted that actions in furtherance of their price-fixing conspiracy occurred in California. *See supra* n.9. Accordingly, even if Virginia had some interest in limiting liability for indirect purchaser claims, Defendants have failed to meet their burden to establish that such an interest would apply to <u>Defendants'</u> conduct.

Finally, Defendants have not demonstrated that Virginia's interest would be advanced by shielding out-of-state defendants from liability <u>in other states</u>. Even if Virginia has an interest in assuring companies operating within Virginia that such companies will not be liable for indirect purchaser claims in Virginia, Defendants have not demonstrated that Virginia has any interest in shielding companies from such liability <u>in an out-of-state court for out-of-state conduct</u>. Indeed,

---

[10] Defendants only allege that <u>Circuit City</u> made purchasing decisions and issued purchase orders from Virginia, received invoices for products in Virginia, and paid those invoices from the Virginia headquarters. Mot. at 4. They do not allege that any of their own conspiratorial conduct took place in Virginia.

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 12

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

"the fact those companies could potentially be subject to [indirect purchaser claims] *in other states* does not make [Virginia] an any less attractive place to do business" and may instead make Virginia "a more attractive place to do business by comparison." *Hill v. Novartis Pharm. Corp.*, 2012 WL 967577 at *8.

*Hill v. Novartis Pharmaceutical Corp* is directly on point. In that case, the Eastern District of California rejected a defendant's argument that New Jersey had an interest in applying its punitive damages law in order to "promot[e] economic activity within its borders [and] attract[] corporations and protect[] those corporations whose principal places of business are located in the state." *Id.* It explained:

> Shielding corporations from excessive liability *in New Jersey* would undeniably advance New Jersey's economic interest. Defendant, however, has provided no argument or evidence to explain how New Jersey's interest would be advanced by shielding corporations from excessive liability *in other states*. If, as Defendant suggests, New Jersey's interest lies in attracting companies *to New Jersey* and providing them with a favorable business climate *in New Jersey,* the fact those companies could potentially be subject to punitive liability *in other states* does not make *New Jersey* any less attractive place to do business. If anything, it makes New Jersey a more attractive place to do business by comparison. In any case, Plaintiff is seeking to hold Defendant liable only in California. There are presumably plenty of other states over which New Jersey holds an advantage simply because of its law. One might argue that shielding New Jersey corporations from excessive liability in all jurisdictions would help preserve their financial health, thereby preserving New Jersey's economic welfare in the process. But Defendant has provided no evidence to show New Jersey's interest in economic welfare would be significantly impaired if California's punitive damages law were to apply here. The extent to which New Jersey's interest would be impaired if California law applied is speculative at best.

*Id.* Similarly, here, Defendant has provided no evidence to show that Virginia's interest in economic welfare equates to an interest in limiting the out-of-state liability of an out-of-state corporation for conduct that occurred out-of-state. Simply put, Virginia has no legitimate interest in applying its antitrust law to this case.

### 2. California Has a Significant and Explicit Interest in Providing Circuit City Trust with a Private Cause of Action for Its Indirect Purchases

By contrast, California has a significant interest in applying its antitrust law to Circuit City Trust's claims against Defendants. As this Court previously observed:

> California has an articulated interest in applying its law. The Cartwright Act included as important goals deterrence and full disgorgement of ill-gotten gains,

OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 13

MASTER FILE NO.: M-07-1827-SI
CASE NO. 3:10-05625 SI

especially in the context of price fixing cartels; that deterrence and full disgorgement includes <u>extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California</u>. It is clear that California's interest involves the regulation of conduct occurring within its borders and the deterrence and punishment of misconduct.

Order re LG's Mot. in Limine No. 14, at 2, MDL ECF No. 8297 (emphasis added; internal citations omitted).

Indeed, the State of California <u>itself</u> has <u>expressly</u> stated its interest in having its laws applied to Defendants. The State of California filed an amicus brief in the Ninth Circuit explaining its interest in providing a private right of action for plaintiffs like Circuit City for the particular illegal defendant conduct at issue in this MDL:

> [T]he California Supreme Court . . . emphasized that deterrence and full disgorgement of ill-gotten gains were important goals of the [California] Cartwright Act, especially in the context of price fixing cartels ….
>
> …
>
> The California Supreme Court has further recognized that deterrence and full disgorgement includes extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California.

Brief of *Amicus Curiae* the State of California, *In re TFT-LCD (Flat Panel) Antitrust Litig., AT&T Mobility, LLC v. AU Optronics Corp.*, No. 11-16188, 2011 WL 9670906, at \*21-22 (9th Cir. Sept. 8, 2011). The Ninth Circuit agreed: "[W]e conclude that the perpetration of anticompetitive activities within California creates state interests in applying California law to that conduct." *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1112 (9th Cir. 2013) (internal quotation marks and alterations omitted).

The California State legislature and courts have also repeatedly expressed the state's significant interest in providing plaintiffs with a cause of action for deceptive or anticompetitive business practices within its borders. *See, e.g.*, Cal. Bus. & Prof. Code § 16750(a) (providing for a private antitrust cause of action for indirect purchasers); *Diamond Multimedia Sys. v. Superior Court*, 968 P.2d 539, 557 (Cal. 1999) (describing the state's "legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices" which "helps to ensure that the flow of out-of-state capital necessary to the growth of California business will continue"); *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1083 (Cal. 2010) ("[T]he Cartwright Act

OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 14

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

has always been focused on the punishment of violators for the larger purpose of promoting free competition."); *cf. Estrella v. Freedom Fin. Network, LLC*, No. C-09-03156-SI, 2010 WL 2231790, at *6 (N.D. Cal. June 2, 2010) ("California has a clear and substantial interest in preventing fraudulent practices in this state and a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices, and for that reason has a legitimate interest in extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California." (internal quotation marks omitted)).

California's interest in applying its antitrust laws, repeatedly stressed by California itself and recognized by this Court, is undeniably applicable to Circuit City Trust's claims against Defendants. As set forth above, Defendants engaged in illegal conduct in furtherance of their price-fixing conspiracy in California and a substantial portion of Circuit City Trust's injuries occurred in California. *See supra* Part I. Defendants' assertion that California has no legitimate interest in applying its laws to Circuit City's claims is simply not credible.

**C.**    **Step 3: Even If a "True Conflict" Exists, California's Interest Would Be Most Impaired if Virginia Antitrust Law Is Applied**

Even assuming that Defendants have satisfied their burden of showing that Virginia has an interest in having its own law applied to this case – which they have not – Defendants' motion still fails because Virginia's interest does not overcome California's general preference for a applying its own law, and California's interests would be most impaired if its law were not applied.

As this Court has previously stated, if out-of-state law is applied to state antitrust claims, "California's interest in deterring anticompetitive conduct will be affected, thereby impairing its interest in promoting free competition." Order re LG's Mot. in Limine No. 14, at 3, MDL ECF No. 8297. California's significant interest in regulating the illegal conduct of out-of-state parties – an interest it has stated expressly – will be significantly impaired if Circuit City is required to proceed under Virginia law. By contrast, if California law is applied, no stated interest of Virginia will be impaired:

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 15

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

- While the California legislature and judiciary has repeatedly expressed a policy interest in regulating antitrust conduct within its borders and providing indirect purchaser plaintiffs a private cause of action for antitrust violations, the Virginia legislature and judiciary have both remained silent on the issue. *See supra* Part IV.B.2.

- While California has filed an *amicus* brief specifically expressing its state interest in the deterring defendants' price fixing cartel by "extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California," Virginia has expressed no such interest. *Id.*

- While by their own admission Defendants engaged in illegal price fixing activity in California, Defendants have offered no evidence that even a single Defendant or co-conspirator took any proactive steps furtherance of the conspiracy in Virginia – other than by selling price-fixed goods to a resident of Virginia. *Id.*; *see also supra* Part I.

- Even if Virginia may have an interest in protecting resident corporations from liability for indirect purchaser claims, Defendants have not established that Virginia has any interest in limiting out-of-state recoveries by a Virginia indirect purchaser against out-of-state defendants based on out-of-state conduct. *See supra* Part IV.B.2.

"[T]he relative commitment" of California to its antitrust law, "the history and current status" of California and Virginia antitrust law, "and the function and purpose of those laws" clearly weigh in favor of the application of California law to Circuit City Trust's claims. *Wash. Mut. Bank*, 15 P.3d at 1081.

Moreover, as Defendants correctly note, "'a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders.'" Mot. at 10 (quoting *McCann*, 225 P.3d 516 (Cal. 2010)). Here, Defendants actively engaged in illegal price fixing conduct in California, not in Virginia, and Circuit City purchased more LCD products in California than in

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 16

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

any other state. *See supra* Part I. California itself has urged this Court to apply its law and protect its significant interests. All of these facts confirm that California's interest in "the protection of competition, not competitors" inside its borders predominates over any unstated interest Virginia may have in limiting its own resident plaintiff from seeking relief for out-of-state price-fixing. See *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1083 (2010). Accordingly, California law should apply to Circuit City Trust's antitrust claims.

## V. CALIFORNIA LAW APPLIES TO PLAINTIFF'S CONSUMER PROTECTION CLAIMS

For the same reasons set forth above, California law should also apply to Circuit City Trust's consumer protection claims. Defendants have failed to establish that Virginia has any interest in applying its consumer protection laws; and even if Defendants were to make such a showing, Virginia's interest does not overcome California's general preference for a applying its own law, and California's interest in applying its consumer protection law would be impermissibly impaired if the Court were to apply Virginia law to business practices affecting consumers in California.

### A. Step 1: A Material Conflict Exists Between California and Virginia Consumer Protection Law

Plaintiffs agree that Virginia and California consumer protection laws differ. The UCL offers broader protection than Virginia law for consumers against "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

### B. Step 2: Defendants Have Not Established that Virginia Has Any Interest In Having Its Consumer Protection Law Applied In This Case

Defendants again focus on Circuit City's contacts with Virginia and fail to articulate any interest Virginia may have in extending its laws to an out-of-state case against out-of-state defendants based on out-of-state conduct. To the contrary, California has a significant state interest in broadly preventing "unlawful, unfair, or fraudulent business act[s] or practice[s]" within its borders. Cal. Bus. & Prof. Code § 17200.

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 17

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

Defendants allege that California is no longer interested in applying its laws to this case because "any harm suffered by California's consumers as a result of Defendants' alleged anticompetitive conduct was remedied by the class action settlements." Mot. at 12. This ignores the UCL's purpose of "preserv[ing] fair business competition" and "govern[ing] anti-competitive business practices." *Cel-Tech*, 973 P.2d at 539. This interest naturally applies to Circuit City's purchase of LCD products in California. As detailed above, Circuit City purchased price-fixed LCD Products in California and Defendants have admitted that they conducted acts in furtherance of their conspiracy in California. *See supra* Part I.

Moreover, as discussed above, California itself explicitly stated that its interest in deterring illegal activity extends to "out-of-state parties harmed by wrongful conduct occurring in California." Brief of *Amicus Curiae* the State of California, *AT&T Mobility*, 2011 WL 9670906, at *22.

## C. Step 3: Even If a "True Conflict" Exists, California's Interest Would Be Most Impaired if Virginia Consumer Protection Law Is Applied

Even assuming that Defendants have satisfied their burden of showing that Virginia has an interest in having its own law applied to this case – which they have not – Defendants' motion still fails because Virginia's interest does not overcome California's general preference for a applying its own law, and California's interests would be most impaired if its law were not applied.

California's significant interest in regulating the illegal conduct of out-of-state parties – an interest it has stated expressly – will be significantly impaired if Circuit City is required to proceed under Virginia consumer protection law. By contrast, if California law is applied, no stated interest of Virginia will be impaired. As stated previously, California has explicitly stated its interest in deterring defendants' price fixing cartel by "extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California," whereas Virginia has expressed no such interest. *Id*. Defendants have offered no evidence that even a single Defendant or co-conspirator took any proactive steps furtherance of the conspiracy in Virginia – other than

OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW AND MEMORANDUM OF POINTS AND AUTHORITIES Page 18

MASTER FILE NO.:  M-07-1827-SI CASE No. 3:10-05625 SI

by selling price-fixed goods to a resident of Virginia. And Defendants have not established that Virginia has any interest in limiting out-of-state recoveries by a Virginia indirect purchaser against out-of-state defendants based on out-of-state conduct.

California's interest in "the protection of *competition*, not *competitors*" inside its borders predominates over any unstated interest Virginia may have in limiting its own resident plaintiff from seeking relief for out-of-state price-fixing. *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1083 (2010). Accordingly, California law should apply to Circuit City Trust's consumer protection claims.

## VI. CALIFORNIA LAW APPLIES TO PLAINTIFF'S UNJUST-ENRICHMENT CLAIM

Defendants' argument limiting Circuit City Trust's unjust-enrichment remedies hinges entirely on their argument that Virginia law should bar Plaintiff's indirect purchaser suit and UCL claims. Because, as explained above, Defendants' argument fails in that respect, Circuit City Trust is entitled to retain its unjust enrichment claim under California law.

## VII. CONCLUSION

For the foregoing reasons, Circuit City Trust respectfully requests that the Court deny Defendants' partial summary judgment motion.

Dated:  November 4, 2013                         SUSMAN GODFREY L.L.P.

                                                 By:  _/s/ Rachel S. Black_____

                                                     Parker C. Folse III
                                                     Rachel S. Black
                                                     Jordan Connors
                                                     SUSMAN GODFREY L.L.P.
                                                     1201 Third Avenue, Suite 3800
                                                     Seattle, Washington 98101-3000
                                                     Telephone:  (206) 516-3880
                                                     Facsimile:  (206) 516-3883
                                                     Email:  pfolse@susmangodfrey.com
                                                             rblack@susmangodfrey.com
                                                             jconnors@susmangodfrey.com

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 19

MASTER FILE NO.:  M-07-1827-SI
CASE NO. 3:10-05625 SI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email: kmarks@susmangodfrey.com
        jross@susmangodfrey.com
        jcarter@susmangodfrey.com

*Attorneys for Plaintiff Alfred H. Siegel,*
*solely in his capacity as Trustee of the*
*Circuit City Stores, Inc. Liquidating Trust*

OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW
AND MEMORANDUM OF POINTS AND AUTHORITIES
Page 20

MASTER FILE NO.:  M-07-1827-SI
CASE No. 3:10-05625 SI