IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL. No. 1827<br><br>Case Nos. 10-4572 SI |
| This Order Relates to:<br><br>*Best Buy et al. v. AU Optronics Corporation, et al.,* C 10-4572 SI<br><br>／ | **ORDER RE: POST-TRIAL MOTIONS** |

Various post-trial motions are scheduled for a hearing on November 22, 2013. Pursuant to Civil Local Rule 7-1(b), the Court determines that these matters are appropriate for resolution without oral argument, and VACATES the hearing on these motions. For the reasons set forth in this order, the Court DENIES HannStar's motion for judgment as a matter of law, GRANTS IN PART Best Buy's motion to amend the judgment, and GRANTS IN PART HannStar's motion to vacate the judgment. Docket Nos. 8608, 8611 and 8653.[1]

**BACKGROUND**

A jury trial was held from July 23, 2013 to September 3, 2013, on Best Buy's claims against Toshiba and HannStar under the Sherman Act and the Minnesota Antitrust Law. During opening

---

[1] The Court will issue a separate order regarding Best Buy's motion for fees and costs. Docket No. 8610.

statement, HannStar admitted that it had violated United States antitrust laws and had pled guilty to participating in a price-fixing conspiracy from 2001 to 2006 by fixing the prices of TFT-LCD panels used in computer monitors and notebook computers. HannStar disputed Best Buy's allegations that it also conspired to fix the prices of smaller TFT-LCD panels, such as those used in mobile phones, and it disputed the allegation that HannStar's involvement in the conspiracy began in 1998. Docket No. 8371 (Tr. Transcript at 232-35). Toshiba denied any participation in the price-fixing conspiracy. *Id*. at 248.

The jury returned a special verdict, and, as relevant to the instant motions, made the following findings: (1) Best Buy did not prove, by a preponderance of the evidence, that Toshiba knowingly participated in a conspiracy to fix, raise, maintain or stabilize the prices of TFT-LCD panels; (2) Best Buy proved, by a preponderance of the evidence, that HannStar knowingly participated in a conspiracy to fix, raise, maintain or stabilize the prices of TFT-LCD panels; (3) Best Buy proved, by a preponderance of the evidence, that the conspiracy involved TFT-LCD panels and/or finished products imported into the United States; (4) Best Buy proved, by a preponderance of the evidence, that the conspiracy involving these imported TFT-LCD panels and/or finished products produced substantial intended effects in the United States; (5) Best Buy did not prove, by a preponderance of the evidence, that the conspiracy involved conduct which had a direct, substantial and reasonably foreseeable effect on trade or commerce in the United States; (6) Best Buy proved, by a preponderance of the evidence, that it was injured as a result of the conspiracy; (7) Best Buy proved, by a preponderance of the evidence, that it suffered damages in the amount of $7,471,943 for its direct purchases only; and (8) Best Buy did not prove, by a preponderance of the evidence, that it suffered any damages with respect to its indirect purchases only. Docket No. 8562.

Now before the Court are HannStar's motion for judgment as a matter of law, and competing motions by HannStar and Best Buy regarding amending or vacating the judgment to reflect trebled damages and/or an offset as a result of settlements totaling $229,000,000 received by Best Buy from other parties.

**DISCUSSION**

**I.    Defendant's motion for judgment as a matter of law pursuant to Fed. R. Civ. Proc. 50(b)**

   **A.    Legal standard**

In reviewing a renewed motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* The question is whether there is substantial evidence to support the jury finding for the non- moving party. *See Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F. 3d 1222, 1227 (9th Cir. 2001). In ruling on such a motion, the trial court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists to support the verdict. *See Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984). Substantial evidence is more than a scintilla of evidence. *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Chisholm Bris. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974). Rather, it is defined as such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence. *See Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

   **B.    Analysis**

      **1.    Direct purchase damages**

HannStar challenges the jury's award of direct purchase damages on numerous grounds. First, HannStar argues that the jury's finding that Toshiba did not participate in the conspiracy renders any damage award speculative because Best Buy did not present evidence showing what portion of the claimed damages were attributable to Toshiba.

In an antitrust case, the "jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946); *see also Knutson v. Daily Review, Inc.*, 548 F.2d 795, 811 (9th Cir. 1976) (noting the "loose standard" applied to proving the amount of damages in antitrust cases once the fact of damage has been

3

shown). The Court finds that the jury had sufficient evidence to calculate direct damages. As Best Buy notes, the jury apparently adopted the damages methodology and calculations of HannStar's own expert, Dean Snyder, who put forth a damage calculation of $7,471,943. *Compare* Docket No. 8562 at 5 (verdict in the amount of $7,471,943) and Trial Ex. 8277 (Dean Snyder's damage calculation of $7,471,943). Further, there was testimony that Toshiba absorbed any increased cost of LCD panels in the price of the finished products it sold to Best Buy, and that Toshiba made specialized panels and that few, if any, of these panels were used in products purchased by Best Buy. Based upon this testimony, combined with HannStar's decision not to put on any evidence separating damages attributable to Toshiba, the jury could have concluded that any damages attributable to Toshiba that were included in Dean Snyder's calculations were modest.[2]

Second, HannStar argues that the damages award is speculative because Best Buy did not prove that seven entities[3] participated in the conspiracy and did not put on evidence about how to deduct their market share when calculating damages. However, evidence was introduced at trial linking each of these entities to the conspiracy, *see* Docket No. 8721 at 7:4-10:12 (summarizing evidence), and thus there was a basis for the jury to include sales from those entities in the damages award.

Third, HannStar argues that the damages award is speculative because Best Buy did not put on evidence deducting sales from entities that did not attend the Crystal Meetings, on the theory that HannStar only admitted to participating in a conspiracy involving the Crystal Meetings. Relatedly, HannStar argues that Best Buy did not present evidence supporting an award of damages based on purchases of small panel products. HannStar argues that the evidence at trial was uncontested that small panels, such as those used in mobile phone applications, were not discussed at the Crystal Meetings, and that no evidence was presented at trial establishing that HannStar engaged in any improper communications with any manufacturer of small panels about fixing the prices of small panels.

---

[2] Further, the Court notes that the trebled damages award of $22,415,829 is more than offset by the $229,000,000 in settlements that Best Buy received from other defendants, and thus to the extent that the jury improperly included any damages attributable to Toshiba in its damages award, HannStar is not harmed.

[3] Those entities are Acer Display Co., NEC LCD Technologies Ltd., Hydis Technologies Co., Ltd. (BOE Hydis Technology Co., Ltd.), Unipac Optoelectronics, Mitsubishi Electronics Corp., Royal Philips Electronics N.V., and Toppoly Optoelectronics.

4

HannStar also emphasizes the fact that it did not make or sell small panels for use its mobile phone applications, and argues that it was not a competitor in the mobile phone panel market.

Best Buy responds, and the Court agrees, that there was evidence at trial both of HannStar's participation in the conspiracy outside of the Crystal Meetings, and that the conspiracy included an agreement to fix the prices of small TFT-LCD panels. There was testimony that HannStar was responsible for notifying the Japanese companies of the decisions made at Crystal Meetings, that HannStar attended vendor parties where HannStar shared confidential competitive information, and that a HannStar employee engaged in bilateral meetings with conspirators outside of the Crystal Meetings. In addition, there was evidence that Epson, Sharp, and Hitachi pled guilty to conspiring to fix the prices of LCD panels, including small panels. The jury also heard evidence that HannStar engaged in collusive contacts with Hitachi and Sharp, as well as evidence of collusive conduct outside of the Crystal Meetings with makers of small panel products. HannStar is jointly and severally liable for the entire conspiracy, regardless of whether every conspirator attended Crystal Meetings or small panels were discussed at the Crystal Meetings. *See also United States v. Foster*, 985 F.2d 466, 469 (9th Cir. 1993) ("Once there is proof of a conspiracy, 'evidence of only a slight connection to the conspiracy' is sufficient to convict for participation in the conspiracy.") (internal citation omitted), *as amended* 17 F.3d 1256 (9th Cir. 1994).                   Finally, HannStar contends that Best Buy failed to provide sufficient evidence of Koninklijke Philips Electronics N.V. ("Royal Philips") and LG Electronics, Inc. ("LGE")'s ownership or control of LG Display Co., Ltd. ("LG Display") to confer direct purchaser standing regarding purchases made from LG entities. HannStar argues that Best Buy's evidence showed only that Royal Phillips and LGE had less-than-majority interests in LG Display, and that at no point did Royal Phillips or LGE have control over LG Display's board of directors.

"[I]ndirect purchasers may sue when customers of the direct purchaser own or control the direct purchaser, . . . or when a conspiring seller owns or controls the direct purchaser." *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 749 (9th Cir. 2012) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 n.1 (1977) and *Royal Printing Co. v. Kimberly–Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980)). The Ninth Circuit has explained that "control" means "to exercise restraint or direction over; dominate, regulate, or command," or to have "the power or authority to guide or manage." *In re ATM Fee*, 686

5

F.3d at 757 (internal citations omitted). Quoting *In re ATM Fee*, HannStar asserts that "the Ninth Circuit has held that stock ownership 'that amounts to less than a majority, is not sufficient proof of domination or control.'" Docket No. 8653 at 12:1-2 (quoting *In re ATM Fee*, 686 F.3d at 757). However, *In re ATM Fee* did not hold that minority stock ownership could not be considered to determine control; instead, the court considered the nature of the minority stock ownership – which in that case it found to be "widely disbursed" and approximately ten percent – and held that under those facts, such minority stock ownership was insufficient to establish control. *See also Sun Microsystems, Inc. v. Hynix Semiconductor Inc.*, *et al*, 608 F. Supp. 2d 1166, 1180 (N.D. Cal. 2009) ("Some examples of the types of facts that would satisfy the control exception have furthermore been defined as: "interlocking directorates, minority stock ownership, loan agreements that subject the wholesalers to the manufacturers' operating control, trust agreements, or other modes of control separate from ownership of a majority of the wholesalers' common stock.'") (quoting *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 606 (7th Cir.1997)).

Here, Best Buy introduced, *inter alia*, evidence of Royal Philips' and LGE's significant stock ownership of LG Display (between 50% and 32.9%), the July 26, 1999 Joint Venture Agreement between LGE and Royal Philips providing that each party was entitled to nominate three of the six directors of LG Display, and the July 9, 2004 Shareholder Agreement between Royal Philips and LGE providing that each party was entitled to nominate two of the nine outside directors, as well as the CFO (Royal Philips) and the CEO (LGE). Thus, there was sufficient evidence in the record for the jury to find that Best Buy could recover direct purchase damages based on purchases from the LG entities.

### 2.     **Individual injury**

HannStar also contends that Best Buy failed to prove individual injury in fact as to each of the Best Buy plaintiffs. HannStar argues that the six separate Best Buy entities were each required to establish injury in fact in order to sustain their claims for damages, and that it was improper to allow the jury to find injury as to "Best Buy" collectively.

Best Buy responds that all of the evidence at trial treated the Best Buy entities collectively and established that "Best Buy" was injured, and thus the jury was not required to make separate findings

6

of injury for each of the six Best Buy plaintiffs. Best Buy officer Wendy Fritz testified that "Best Buy" purchased approximately $32 billion of TFT-LCD products during the relevant period, that "Best Buy" entered into Vendor Master Agreements and Annual Program Agreements with vendors around the world, and that these agreements governed all of "Best Buy's" TFT-LCD purchases. Ms. Fritz gave extensive testimony about "Best Buy's" purchasing policies, gross margin requirements, pricing policies, etc., and there was testimony that "Best Buy" maintains one large database containing records of all products purchased by all of the Best Buy entities. Best Buy also notes that all of the experts, including HannStar's, analyzed "Best Buy's" damages as if it were a single entity rather than breaking out damages separately by each Best Buy plaintiff. The Court agrees with Best Buy that on this record, the jury was not required to make separate findings of injury as to each Best Buy entity.

### 3. Application of Minnesota law

Third, HannStar contends that Best Buy failed to prove that the application of Minnesota law is constitutional. HannStar argues that there was no evidence at trial that any conspiratorial activity took place in Minnesota, and that there is no evidence that any individual plaintiff made any particular purchase in Minnesota.

"The Due Process Clause . . . requires a court to invalidate the application of a state's law only where the state has 'no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction.'" *AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1111 (9th Cir. 2013) (*quoting Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981)). Best Buy officer Wendy Fritz testified, *inter alia*, that Best Buy is headquartered in Minnesota and that the Vendor Master Agreements and Annual Program Agreements governing its LCD product purchases were entered into in Minnesota. This Court has repeatedly held that the Due Process Clause is satisfied and a plaintiff may invoke a state's laws where the agreement to purchase price fixed goods was negotiated and entered into in that state. Accordingly, the Court finds that Best Buy presented evidence showing that the application of Minnesota law is constitutional.

### 4. FTAIA

Finally, HannStar argues that Best Buy failed to satisfy the requirements of the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a. Congress passed the FTAIA in an effort to limit the application of American antitrust laws to foreign anticompetitive conduct when that conduct caused no injury to consumers in the United States. *See Hartford Fire Ins. v. California*, 509 U.S. 764, 796 n.23 (1993) ("The FTAIA was intended to exempt from the Sherman Act export transactions that did not injure the United States economy.") (citing H.R. Rep. No. 97-686, ¶¶ 2-3, 9-10 (1982)). "The Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States." *Hartford Fire Ins.*, 509 U.S. at 796.

The jury was instructed as follows regarding the elements of the Sherman Act claim:

> HORIZONTAL PRICE FIXING --
> ELEMENTS OF THE FEDERAL CLAIMS
>
> Under the federal Sherman Act, it is illegal for competitors, regardless of their size or amount of sales, to agree on the prices to be charged for their competing products.
>
> An agreement between competing firms can violate this rule even if there is not an agreement on the exact price to be charged. For example, it is illegal for competing companies to agree on maximum or minimum prices, a range within which prices will fall, a formula to set prices, or a component of prices, such as a shipping charge or an interest rate. It is also illegal for competitors to agree on a plan or scheme that will tend to stabilize prices.
>
> To prevail against a defendant on a price-fixing claim, the plaintiffs must prove as to that particular defendant each of the following elements by a preponderance of the evidence:
>
> First, that an agreement to fix the prices of LCD panels existed;
>
> Second, that such defendant knowingly – that is, voluntarily and intentionally – became a party to that agreement;
>
> Third, that such agreement occurred in or affected interstate, import or foreign commerce. *Any such conduct involving import commerce must have produced substantial intended effects in the United States; any such foreign commerce must have produced direct, substantial and reasonably foreseeable effects in the United States*; and
>
> Fourth, that the agreement caused plaintiffs to suffer an injury to their business or property.

Docket No. 8543 at 12 (emphasis added).

In accordance with these instructions, Questions 3-5 of the verdict form asked:

8

**Question 3:** Did Best Buy prove, by a preponderance of the evidence and in accordance with the instructions given to you, that the conspiracy involved TFT-LCD panels and/or finished products (e.g., notebook computers, computer monitors, televisions, camcorders, cell phones and digital cameras containing TFT-LCD panels) imported into the United States?

    _____    _____
        Yes                          No

If your answer to this question is "Yes," please answer the next question. If your answer to this question is "No," please go to Question 5.

**Question 4:** Did Best Buy prove, by a preponderance of the evidence and in accordance with the instructions given to you, that the conspiracy involving these imported TFT-LCD panels and/or finished products produced substantial intended effects in the United States?

    _____    _____
        Yes                          No

Please answer the next question.

**Question 5:** Did Best Buy prove, by a preponderance of the evidence and in accordance with the instructions given to you, that the conspiracy involved conduct which had a direct, substantial and reasonably foreseeable effect on trade or commerce in the United States?

    _____    _____
        Yes                          No

If your answer to either Question 4 or Question 5 is "Yes," please answer the next question. If your answers to both Question 4 and Question 5 are "No,"please go to the end of the verdict form, and sign and date it where indicated.

The jury answered "yes" to Questions 3 and 4, and "no" to Question 5.

Thus, the jury found, in accordance with the instructions, that the conspiracy involved TFT-LCD panels and/or finished products (e.g., notebook computers, computer monitors, televisions, camcorders, cell phones and digital cameras containing TFT-LCD panels) imported into the United States, and that the conspiracy produced substantial intended effects in the United States, thus satisfying the FTAIA and bringing the conspiracy within the ambit of the Sherman Act. The jury's "no" answer to Question 5, which must be read in conjunction with the instructions, is not inconsistent with this finding, and indeed the verdict form assumes that the jury could answer Questions 4 and 5 differently.

The Court also rejects HannStar's argument that Best Buy did not present sufficient evidence to satisfy the requirements of the FTAIA. Best Buy presented evidence that over a number of years, the

9

international cartel controlled well over 90% of the TFT-LCD market, charged supra-competitive prices for TFT-LCD panels, and those panels were incorporated into billions of dollars worth of finished products such as computer monitors, notebook computers, and mobile phones that were imported into the United States and sold to United States companies and consumers. *See generally Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 858-861 (7th Cir. 2012) (en banc) (holding that where the plaintiffs alleged that "foreign sellers allegedly created a cartel, took steps outside the United States to drive the price up of a product that is wanted in the United States, and then (after succeeding in doing so) sold that product to U.S. customers," the challenged transactions either occurred in import commerce or had a direct, substantial and reasonably foreseeable effect on either the domestic or import commerce of the United States).

## II. Defendant's motion to vacate judgment pursuant to Fed. R. Civ. Proc. 60(b) and plaintiffs' motion to amend the judgment

The parties have filed competing motions to amend or vacate the judgment. Plaintiffs seek to amend the judgment to reflect treble damages in the amount of $22,415,829, while HannStar seeks to vacate the judgment because the $229,000,000 that Best Buy received in settlements from other parties far exceeds the amount of trebled damages. Best Buy does not dispute that the settlements received from other parties should be offset against Best Buy's recovery from HannStar, nor does it dispute that, at the end of the day, Best Buy will not recover damages from HannStar. However, Best Buy asserts that the proper procedure is to issue an amended judgment reflecting the trebled damages award, and then HannStar may demand that Best Buy acknowledge the partial[4] satisfaction of judgment resulting from prior offsetting settlements. HannStar argues that plaintiffs' position "makes no sense" and that there is "no justification for the unnecessary paper shuffling" that plaintiffs propose.

The Court has reviewed the cases cited by the parties and concludes that the proper course is to issue an amended judgment setting forth the amount of trebled damages $22,415,829, and reflecting the settlement offset, the result of which is that Best Buy may collect no damages from HannStar. *See*

---

[4] The satisfaction would be "partial" because Best Buy seeks its fees and costs as the prevailing party under the antitrust statutes.

10

*William Inglis & Sons Baking Co. v. Continental Baking Co., Inc.*, 981 F.2d 1023, 1024 (9th Cir. 1992) ("Upon trebling [the damages award], this amount becomes $300,000. *Subtracting the $800,000 settlement payment produces the ultimate judgment*. Since this result is negative, Inglis may collect no damages from Continental.") (emphasis added); *see also Syverson v. Heitmann*, 171 Cal. App. 3d 106, 110 (Cal. App.1985) ("Where a plaintiff's settlement completely offsets the damages assessed against a nonsettling joint tortfeasor, *it reduces the judgment to zero* by operation of law.") (emphasis added).[5]

## CONCLUSION

For the reasons set forth above, defendant's motion for judgment as a matter of law is DENIED, and defendant's motion to vacate the judgment and plaintiffs' motion to amend the judgment are GRANTED IN PART AND DENIED IN PART.

**IT IS SO ORDERED.**

Dated: November 20, 2013

SUSAN ILLSTON
United States District Judge

---

[5] The Ninth Circuit's decision in *William Inglis* cited *Syverson* with approval. *Syverson* was superseded by statute as stated in *Goodman v. Lozano*, 47 Cal.4th 1327 (2010). In *Goodman*, the California Supreme Court interpreted various sections of the California Code of Civil Procedure regarding who is a "prevailing party"; those California statutes are not at issue in this case. However, to the extent it is relevant, the *Goodman* court reaffirmed the principle that "[i]f the settlement amount is greater than the damage award, the award is entirely offset, resulting in a zero judgment." *Goodman*, 47 Cal. 4th at 1330.