Richard M. Heimann (State Bar No. 63607)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:   (415) 956-1000
Facsimile:   (415) 956-1008

Bruce L. Simon (State Bar No. 96241)
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:   (415) 433-9000
Facsimile:   (415) 433-9008

*Counsel for the Direct Purchaser Class Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. M07-1827 SI<br><br>MDL No. 1827 |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS | **DIRECT PURCHASER CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN ORDER APPROVING SECOND DISTRIBUTION OF SETTLEMENT FUNDS**<br><br>Date:   January 17, 2014<br>Time:   9:00 a.m.<br>Courtroom: 10, 19th Floor<br><br>The Honorable Susan Illston |

1142740.3

MASTER FILE NO. M07-1827 SI
DIRECT PURCHASER CLASS PLAINTIFFS'  NOTICE OF MOTION AND MOTION
FOR SECOND DISTRIBUTION OF SETTLEMENT FUNDS

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD, AND TO ALL DIRECT PURCHASER CLASS MEMBERS:**

**PLEASE TAKE NOTICE** that at 9:00 a.m. on January 17, 2014, or at such time subject to the Court's calendar,[1] Direct Purchaser Class Plaintiffs will, and hereby do, move before the Honorable Susan Illston, United States District Judge, at the United States Courthouse, 450 Golden Gate Avenue, Courtroom 10, San Francisco, California, for an order approving the second distribution of settlement funds to the Direct Purchaser Class Members.  This motion is based upon the supporting Memorandum of Points and Authorities filed concurrently with this Notice; Plaintiffs' November 22, 2013 Status Report (Dkt. No. 8791); the Declaration of Robin Niemiec in Support of this Motion, filed concurrently with this Notice; the records, pleadings, and papers filed in this action; and upon such argument as may be presented to the Court at the hearing on this motion.

---

[1] Direct Purchaser Class Plaintiffs respectfully submit that this Motion can be determined without a hearing.  If no opposition or response is filed, they respectfully request that the Court enter an Order on the Motion after the 14-day period to file a response expires.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Direct Purchaser Class Plaintiffs ("Plaintiffs") move the Court for an order authorizing a second distribution of settlement funds to the Direct Purchaser Class.

Previously, on July 12, 2013, the Court ordered a distribution of $258,637,975.14 from the Settlement Fund created for Direct Purchaser Class Members (the "Initial Distribution"). (Dkt. No. 8302 ¶ 8.) The Court's Order further provided,

> After the Initial Distribution has been completed, and 120 days has passed, Co-Lead Class Counsel shall update the Court regarding the status of disputed and late claims, the total of checks sent to claimants but not negotiated, and the remaining balance in the Settlement Fund. After updating the Court regarding the Initial Distribution, Co-Lead Class Counsel shall seek approval from the Court for distribution of all remaining amounts in the Settlement Fund according to the same *pro rata* formula used to calculate payments made as part of the Initial Distribution.

(*Id.* ¶ 10.)

On November 22, 2013, pursuant to the Court's July 12 Order, Plaintiffs provided a status report regarding the Initial Distribution. *See generally* Direct Purchaser Class Pls.' Status Report RE Initial Distribution of Settlement Funds (Dkt. No. 8791). There, Plaintiffs reported that $58,694,382.06 remained in the Settlement Fund as of October 30, 2013. *Id.* at 3:17. Additionally, Plaintiffs reported that, of the approximately $259 million distributed as part of the Initial Distribution, $94,851.64 remained from 154 checks that were uncashed, undeliverable, or returned ("Uncashed Funds"). *Id.* at 3:19. Finally, Plaintiffs reported that three claimants – Propeller, Inc.; DuPont; and OfficeMax – recently submitted affidavits seeking payment of their late-filed or disputed claims.

Plaintiffs respectfully move the Court for an order authorizing distribution of the remaining settlement proceeds (*i.e.*, the Settlement Fund and Uncashed Funds) to bring this case to a close ("Second Distribution").[2] As part of that order, Plaintiffs request that the Court

---

[2] Class Counsel is in the process of closing out the Litigation Fund, which the Court authorized to cover litigation-related fees and costs. Class Counsel must account for, among other things, unpaid fees and costs owed under previous orders of the Court but not yet paid. Once that process is complete, Class Counsel will return to the Class any funds remaining in the Litigation
*Footnote continued on next page*

determine whether Propeller's, DuPont's, and OfficeMax's claims should be paid and authorize an additional payment of $15,000 to Claims Administrator Rust Consulting, Inc. ("Rust") for claims administration costs associated with the Second Distribution.

## II.     BACKGROUND

Plaintiffs reported the statistics of the Initial Distribution in their November 22, 2013 Status Report (Dkt. No. 8791) and do not recite those facts again here, but incorporate them by reference. Below, Plaintiffs offer background on claimants seeking payment of their late-filed or disputed claims.

### A.     Propeller, Inc. and DuPont Request Payment of Late-Filed Claims.

After the Court-imposed deadline for filing declarations supporting the payment of late-filed and disputed claims, and after the Court issued its order regarding such claims, two additional claimants – Propeller, Inc. and DuPont – contacted Rust requesting payment of their late-filed claims. Decl. of Robin Niemiec in Support of Motion for Second Distribution ("Niemiec 2d Dist. Decl.") ¶ 13. Both Propeller and DuPont have submitted affidavits explaining why they contend their late-filed claims should be paid. *Id.*, Exs. A-B. The total estimated award value for Propeller's and DuPont's claims is $199,343.52.[3] *Id.* ¶ 14.

Propeller explains that, after corresponding with Rust regarding making a claim and learning that Rust had data on Propeller's purchases, "[n]othing led [Propeller] to believe that any further action needed to be taken in order to be paid." Niemiec 2d Dist. Decl., Ex. A at 1. Propeller states that it "should have been given better notice" and "respectfully request[s] that [it] be included on the next distribution." *Id.*

DuPont states that it only learned of its "qualifying direct purchases in late 2012 during its preparation of its LCD indirect claim." Niemiec 2d Dist. Decl., Ex. B. DuPont states that it "submitted its direct purchaser claim as soon as it could after an expedited effort to locate

---

*Footnote continued from previous page*
Fund, depositing into the Settlement Fund any such funds. Such a deposit may result in increased award amounts to claimants receiving checks as part of the Second Distribution.

[3] This amount assumes that both of these late-filed claims will be paid, along with OfficeMax's adjusted claim.

relevant information and records." *Id.*

### B. OfficeMax Seeks Adjustment of its Disputed Claim.

Last week, Class Counsel was contacted by OfficeMax, which disputed Rust's adjustment of its claim. In letters dated August 24, 2012 and February 21, 2013, Rust informed OfficeMax that it considered only approximately $3.9 million of OfficeMax's approximately $183 million claim as eligible. Niemiec 2d Dist. Decl. ¶ 15. Rust's determination was made based on its review of OfficeMax's purchases as reflected in Defendants' data. OfficeMax did not file an affidavit in response to the Court's July 12 Order, which set forth a process for disputed claims.

After OfficeMax submitted additional documentation on November 21, Rust reevaluated OfficeMax's claim, determining that it made approximately $183,440,899 in eligible purchases. Niemiec 2d Dist. Decl. ¶ 15. OfficeMax explains that it did not provide the information previously because it was "told by the Claims Administrator that nothing could be done to change their adjustment" and that it "never received the Distribution Order, nor was [it] aware of the 30 day time period to pursue late or disputed claims." *Id.*, Ex. C ¶¶ 7-8. The total estimated award value for OfficeMax's adjusted claim is $1,650,858.52.[4] *Id.* ¶ 15.

## III. ARGUMENT

As Plaintiffs stated in last week's Status Report, there has been robust participation by Class Members in the claims process and the Initial Distribution was accomplished pursuant to the Court's July 12 Distribution Order, with checks issued to 2,390 class members. Because some of the settlement funds were held back from the Initial Distribution to account for certain contingencies, an additional distribution is necessary to disburse the remaining funds to Class Members and bring this matter to a close. Thus, Plaintiffs respectfully request that the Court enter an Order approving the distribution of all remaining amounts in the Settlement Fund and the $94,851.64 in Uncashed Funds.

Similar to the Initial Distribution, within the Panel and Product Classes, claimants are to be paid on a *pro rata* basis for their recognized loss. For the Panel Class, the recognized loss is

---

[4] This amount assumes that OfficeMax's claim will be paid, along with Propeller's and DuPont's.

100% of the eligible purchases of stand-alone panels. For the Product Class, the recognized loss is based on percentages of panel value in a finished product which are: 75% for monitors. 15% for notebook computers, 47% for televisions, and 7.6% for other products. The Product Class' recognized loss dollar is calculated using these percentages. Niemiec 2d Dist. Decl. ¶ 12.

To facilitate the expeditious exhaustion of the Settlement Fund, Plaintiffs propose that the Court require that all checks bear the notation "Non-Negotiable after 28 Days" and that no check may be negotiated after 45 days. Because the period to negotiate checks is shortened, Rust will send checks to claimants by overnight courier. Notably, each of the claimants receiving a second distribution check cashed their checks from the Initial Distribution. Niemiec 2d Dist. Decl. ¶ 20. Plaintiffs therefore anticipate that a very high percentage of the checks distributed as part of the second distribution will be cashed.

### A.   The Court Has Discretion to Pay Propeller's and DuPont's Late-Filed Claims and OfficeMax's Disputed Claim.

Plaintiffs recommend payment of Propeller's and DuPont's late-filed claims and OfficeMax's request for an adjustment, which have a combined estimated award value of $1,850,202.04. If these claims are paid, this would reduce the *pro rata* distribution to Panel Class members from $.0169 per recognized loss dollar to $.0168 per recognized loss dollar. Niemiec 2d Dist. Decl. ¶¶ 12, 16. For the Product Class, the *pro rata* distribution would be reduced from $.0079 per recognized loss dollar to $.0075 per recognized loss dollar. *Id*.

The Court has discretion to order payment of such tardy claims. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977) (discussing district court's discretion regarding late claims). Plaintiffs respectfully request that the Court review the affidavits and decide whether these three claims should be paid.

### B.   Plaintiffs Request an Additional $15,000 for Claims Administration Expenses.

Rust has estimated that "an additional $15,000 of fees and expenses" will be incurred to implement the second distribution. Niemiec 2d Dist. Decl. ¶ 6. Among other things, this amount will pay for "preparing for and implementing the second distribution, responding to claimant inquiries and activities associated with closing the website, hotline and distribution account." *Id.*

Plaintiffs recommend that the Court authorize payment of these additional expenses.

### C. In the Event Funds Remain After the Second Distribution, Plaintiffs Will File a Status Report and Recommend a Disposition.

If all checks for the Second Distribution are delivered and cashed, the Court's Order on the current motion should exhaust the Settlement Fund. As noted above, all claimants receiving a second check cashed the check they received as part of the Initial Distribution. Niemiec 2d Dist. Decl. ¶ 20.

In the event that not all checks are cashed after the deadline to negotiate checks has passed, within 15 days of that deadline, Plaintiffs will file a status report apprising the Court of the settlement funds remaining and recommend whether a *cy pres* distribution to one or more charitable organizations is warranted. *Cy pres* distributions are permissible for "unclaimed . . . portions of a class-action settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). Such a distribution would be to an organization that "bears a substantial nexus to the interests of the class members." *Id.* at 821.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request an order permitting a Second Distribution of the Settlement Fund. Direct Purchaser Class Plaintiffs respectfully submit that this Motion can be determined without a hearing. If no opposition or response is filed, they respectfully request that the Court enter an Order on the Motion after the 14-day period to file a response expires.

Respectfully submitted,

Dated:  November 27, 2013          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:   */s/ Marc A. Pilotin*
         Marc A. Pilotin

Richard M. Heimann (State Bar No. 063607)
Eric B. Fastiff (State Bar No. 182260)
Brendan Glackin (State Bar No. 199643)
Marc A. Pilotin (State Bar No. 266369)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:   (415) 956-1000
Facsimile:   (415) 956-1008

Dated:  November 27, 2013          PEARSON, SIMON & WARSHAW, LLP

By:   */s/ Bruce L. Simon*
         Bruce L. Simon

Clifford H. Pearson (State Bar No. 108523)
Bruce L. Simon (State Bar No. 96241)
Aaron M. Sheanin (State Bar No. 214472)
Robert Retana (State Bar No. 148677)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:   (415) 433-9000
Facsimile:   (415) 433-9008

*Counsel for the Direct Purchaser Class Plaintiffs*

# **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the other signatory.

Dated: November 27, 2013         By:         */s/ Marc A. Pilotin*
                                              Marc A. Pilotin