1  Richard M. Heimann (State Bar No. 63607)
   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2  275 Battery Street, 29th Floor
   San Francisco, California 94111
3  Telephone: (415) 956-1000
   Facsimile:  (415) 956-1008
4
   Bruce L. Simon (State Bar No. 96241)
5  PEARSON, SIMON & WARSHAW, LLP
   44 Montgomery Street, Suite 2450
6  San Francisco, California 94104
   Telephone: (415) 433-9000
7  Facsimile:  (415) 433-9008

8  *Co-Lead Counsel for the Direct Purchaser Plaintiffs*

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12

| | |
|---|---|
| 13 IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. MDL 3:07-md-1827 SI |
| | CLASS ACTION |
| This Document Relates to: | **DECLARATION OF ROBIN M. NIEMIEC IN SUPPORT OF DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR AN ORDER APPROVING SECOND DISTRIBUTION OF SETTLEMENT FUNDS** |
| ALL DIRECT PURCHASER CLASS ACTIONS | |
| | Date:       January 17, 2013<br>Time:       9:00 a.m.<br>Courtroom: 10, 19th Floor |

1142988.2                                          MDL 3:07-md-1827 SI
DECLARATION OF ROBIN M. NIEMIEC IN SUPPORT OF DIRECT PURCHASER CLASS PLAINTIFFS'
MOTION FOR AN ORDER APPROVING SECOND DISTRIBUTION OF SETTLEMENT FUNDS

Robin M. Niemiec, declares and states that:

1. I am a Client Services Director for Rust Consulting, Inc. ("Rust"). I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently hereto.

2. I submit this Declaration in order to provide the Court and the parties to the above-captioned litigation (the "Action") with information regarding the calculation for and distribution of the remaining Settlement Fund (the "Second Distribution").

3. Pursuant to the Order Granting Preliminary Approval of Direct Purchaser Class Settlement with Defendants Epson Imaging Devices Corporation and Epson Electronics America, Inc. dated October 6, 2010 (Dkt. No. 2077), Rust was appointed the Claims Administrator to oversee, among other things, the process of providing notice about the Settlement.

<u>Calculation and Allocation of the Second Distribution</u>

4. As set forth in my declaration in support of Direct Purchaser Class Plaintiffs' Status Report Regarding Initial Distribution of Settlement Funds ("Niemiec Status Declaration"), a total of $94,851.64 remains from 154 uncashed, undeliverable or returned checks ("Uncashed Funds")

5. Pursuant to the Initial Distribution Order, and after payment of Class Member Vann's claim and the corrected award amounts for Class Members' Nexis, Inc. and J.H. Fagan Company, Rust reserved $58,185,584.04 from the Net Settlement Fund for future unanticipated contingences.

6. It is estimated that an additional $15,000 of fees and expenses will be incurred by Rust in preparing for and implementing the Second Distribution, responding to claimant inquiries and activities associated with closing the website, hotline and distribution account.

7. If payment is allowed to Rust for $15,000 anticipated administrative fees and the Uncashed Funds are added to the original reserve amount, $58,265,435.68 remains to be distributed in the Second Distribution ("Second Distribution Fund").

8. Pursuant to this Court's Order Regarding Payment of Late-Filed and Disputed Claims ("Late/Disputed Claims Order"), this Court authorized payment to nineteen (19) claims ("Late/Disputed Claims").

9. The amount owed to the Late/Disputed Claims for the Initial Distribution, based on the *pro rata* percentages outlined in the Initial Distribution Order, is $7,196,313.64, collectively.

10. After payment of the Late/Disputed claims as outline above, $52,057,732.73 will remain in the Second Distribution Fund which represents $21,551,733.98 in panel purchases ("Panel Second Distribution Fund") and $30,505,998.75 in product purchases ("Product Second Distribution Fund").

11. Including the claimants from the Initial Distribution, and the Late/Disputed Claims, a total of 209 claims ("Second Distribution Claimants") had money held back from their Initial Distribution and are entitled to funds from the Panel Second Distribution Fund and/or funds from the Product Second Distribution Fund described in ¶10.

12. Similar to the Initial Distribution, within the Panel and Product Class, claimants are to be paid on a *pro rata* basis of their recognized loss. For the Panel Class, the recognized loss is 100% of the eligible purchases of stand alone panels. For the Product Class, the recognized loss is based on percentages of panel value in a finished product which are: 75% for monitors, 15% for notebook computers, 47% for televisions, and 7.6% for other products. The Product Class' recognized loss dollar is calculated using these percentages. For example, if a Class Member has $1,000,000 in eligible monitor purchases, their recognized loss is $750,000. 209 Second Distribution Claimants will receive distribution based on a *pro rata* payout of approximately $.0169 per recognized loss dollar for the Panel Class and approximately $.0079 per recognized loss dollar for the Product Class.

13. After the Late/Disputed Claims Order was issued, Rust was contacted by three (3) additional claimants ("Additional Late/Disputed Claimants"), Propeller, DuPont and OfficeMax, requesting payments for their claims or an adjustment to their already paid claim. These were late-filed or disputed claims that did not provide Affidavits prior to the Late/Disputed Claims

1  Order, but have since provided Affidavits.  Attached as Exhibits A, B and C are Affidavits

2  prepared by Propeller, DuPont and OfficeMax, respectively.

3        14.     Two of the three Additional Late/Disputed Claimants, Propeller and DuPont, were

4  late-filed claims.  The total estimated award value for Propeller's and DuPont's claims (including

5  funds they would be entitled to from the Initial Distribution and the Second Distribution) is

6  $199,343.52.

7        15.     The third Additional Late/Disputed Claimant, OfficeMax, disputed Rust's

8  determination of their claim.  In letters dated August 24, 2012 and February 21, 2013, Rust

9  informed OfficeMax that it would consider only approximately $3.9 million of OfficeMax's

10  approximate $183 million claim eligible unless proof was provided.  Only $3.9 million in

11  purchases was supported by Defendants' data.  OfficeMax recently sent Rust the required proof

12  and it was determined that OfficeMax made approximately $183,440.899 in eligible purchases.

13  The total estimated award value for OfficeMax's claim (including funds they would be entitled to

14  from the Initial Distribution and the Second Distribution) is $1,650,858.52.

15        16.     If the Additional Late/Disputed Claimants were to receive payment similar to the

16  Late/Disputed Claims, 211 Second Distribution Claimants, will receive distribution based on a

17  *pro rata* payout of approximately $.0168 per recognized loss dollar for the Panel Class and

18  approximately $.0075 per recognized loss dollar for the Product Class.

19        17.     Upon entry of an order approving the Second Distribution as originally submitted

20  or as modified by the Court, Rust will (a) transfer an amount ordered by the Court into a

21  Distribution Fund, (b) calculate each authorized claimant's share of the Second Distribution Fund

22  and (c) promptly mail payments, via overnight delivery, to Class Members at the address

23  indicated on their Claim Form or as updated in Rust's database.

24        18.     Rust recommends that checks disbursed to Authorized Claimants bear the notation

25  "Non-Negotiable After 28 Days" and that no check be negotiated in the Distribution Account

26  more than 45 days after the date of the check.

27        19.     Any funds that remain after the 45 days will be disbursed as designated by this

28  Court and Class Counsel.

20. Each of the claimants receiving a second check cashed the first check they received as part of the Initial Distribution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 27th day of November, 2013 in Palm Beach Gardens, Florida.

_Robin M. Niemiec_
Robin M. Niemiec