IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. C 07-01827 SI |
| This Document Relates to: | Individual Case No. 10-05625 SI |
| ALFRED H. SIEGEL, AS TRUSTEE OF THE CIRCUIT CITY STORES, INC. LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AU OPTRONICS CORPORATION, et al.,<br><br>Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHOICE OF LAW GROUNDS**<br><br>**(Docket No. 8676)** |

On November 22, 2013, the Court heard argument on defendant's motion for partial summary judgment on choice of law grounds. Having considered the arguments of counsel and the papers submitted, the Court GRANTS IN PART AND DENIES IN PART the defendant's motion.

**BACKGROUND**

The facts of this case are undisputed. Plaintiff Circuit City[1] was a national electronics retailer, with headquarters in Richmond, Virginia. Compl. ¶ 14. Circuit City maintained regional distribution centers throughout the country, including in California and Illinois. *Id.* ¶ 2. Defendants AU Optronics

---

[1] Circuit City filed for bankruptcy in 2008, and its interests in this case are represented by Alfred H. Siegel, as trustee of the Circuit City liquidating trust. *See* Compl. ¶ 3.

Corporation and AU Optronics Corporation America (collectively, "AUO") manufactured LCD panels and products. *Id.* ¶¶ 15-16. Circuit City purchased LCD products manufactured by AUO, and received them at its regional distribution centers. *Id.* ¶ 2.

Circuit City alleges that AUO was part of a price-fixing conspiracy related to LCD panels and products. *Id.* ¶ 17. According to Circuit City, substantial acts in furtherance of the alleged conspiracy took place in California. *See, e.g.*, Declaration of Rachel S. Black in Support of Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment ("Black Decl.") Exs. 1-3, 26-39. During the alleged conspiracy period, Circuit City maintained between 69 and 87 retail stores in California, in addition to its distribution centers in the state. Declaration of Brandi Fose in Support of Plaintiff's Opposition ¶¶ 5, 7; *id.* at Ex. 1. Circuit City received LCD products manufactured by AUO at, among other places, its California distribution centers. *Id.* at Exs. 2-5.

On December 10, 2010, Circuit City filed a complaint against multiple defendants, including AUO, alleging various anticompetitive activities. On May 5, 2011, Circuit City filed a first amended complaint. On July 7, 2011, Circuit City filed the operative complaint, alleging: (1) violations of the Sherman Act; (2) violations of the California Cartwright Act; (3) violations of the California Consumer Protection and Unfair Competition Laws; (4) claims for restitution and unjust enrichment under California law; and (5) violations of the Illinois Antitrust Act. Second Amended Complaint ("SAC") ¶¶ 254-289. On September 15, 2011, the Court denied the defendants' joint motion to dismiss the SAC. On October 14, 2013, AUO filed the instant motion for partial summary judgment. AUO moves for summary judgment as to Circuit City's second, third, fourth, and fifth causes of action, on choice of law grounds. Defendants' Motion for Partial Summary Judgment on Choice-of-Law Grounds ("Defs.' Mot.").

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to

disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION**

AUO asks the Court to grant summary judgment as to four of Circuit City's five causes of action, on choice of law grounds. Specifically, AUO argues that Circuit City was, at all relevant times, headquartered in Virginia. Defs.' Mot. at 4-5. AUO contends that, because all of Circuit City's purchase orders and invoices originated from its Virginia headquarters, and its liquidating trust is organized under Virginia law, Virginia law should govern Circuit City's state law claims. *Id.* For the reasons set forth below, the Court rejects AUO's arguments.

//
//

**1.     Choice of Law.**

"In a federal question action that involves supplemental jurisdiction over state law claims, [the court applies] the choice of law rules of the forum state – here, California." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009). California's choice of law rules state that "California will apply its own rule of decision unless a party invokes a law of a foreign state that 'will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.'" *Id.* (quoting *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974)). A choice of law analysis under California law requires a three-step inquiry:

> First, the court must determine whether the foreign law differs from California law. Second, if there is a difference, the court must determine whether a "true conflict" exists by determining whether both states have a legitimate interest in applying their own law to the case at hand . . . Third, when both states have a legitimate interest in the application of their respective laws, the court analyzes the "comparative impairment" of the interests of the two states and applies the law of the state whose interest would be more impaired if its law were not applied.

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 225 (2010). This analysis considers the governmental interest each state has in the application of its native law to the facts at hand. *Paulsen*, 559 F.3d at 1080.

Under the first step, the party invoking foreign law must demonstrate that the foreign law is materially different from California law. In the second step, that party must show that the foreign state has a legitimate interest in having its own law applied to the case. "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." *CRS Recovery Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010). Only if more than one state has a legitimate interest must the court proceed to the third step. *Id.* In the final step the court undertakes a "comparative impairment" analysis to determine "the relative commitment of the respective states to the laws involved . . . the history and current status of the states' laws and the function and purpose of those laws." *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920 (2001) (citation and internal quotation marks omitted). Because California evinces a "general preference for applying its own law," the impairment analysis is slightly weighted in favor of applying California law. *Engel v. CBS Inc.*, 981 F.2d 1076, 1081 (9th Cir. 1992).

4

**2.      California Law Applies to the California Antitrust Claim.**

The parties do not dispute that Virginia law is materially different from California or Illinois[2] law with respect to indirect purchaser antitrust actions.  However, AUO argues that Virginia has a significant interest in having its law applied to this case and that the comparative impairment analysis favors Virginia.  For the reasons set forth below, the Court disagrees.

**A.      The States' Interest in Applying Their Laws.**

At the second step of the governmental interest test, the Court must determine whether a true conflict exists; that is, whether both states have a legitimate interest in having their state law applied to the case.  *McCann*, 48 Cal. 4th at 225.

California has a manifest interest in the application of its law.  The Cartwright Act proscribes a sweeping array of anticompetitive and conspiratorial conduct.  *See* Cal. Bus. & Prof. Code § 16720.  In addition to proscribing the sale of price-fixed goods in California, the Act also prohibits making or entering "trusts," including agreements to fix or control prices.  *Id.*  "Rightly understood then, the 'transaction or occurrence' proscribed by the Cartwright Act includes not only the sale of price-fixed goods, but the full extent of incipient conspiratorial conduct described in section 16720 of the Act." *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1110 (9th Cir. 2013).

The Cartwright Act's purpose further indicates that California has an interest in applying its law to conduct such as that alleged here.  "From its inception, the Cartwright Act has always been focused on the punishment of violators for the larger purpose of promoting free competition." *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 783 (2010).  Compensating consumers for damage caused by anticompetitive activities is merely "a tool by which these procompetitive purposes are carried out . . . ." *Id.*  Thus, California has a governmental interest in the application of its law whenever conduct triggering the Cartwright Act's prohibitions occurs within its borders.  *AT&T Mobility*, 707 F.3d at 1112 ("Finally, we conclude that the perpetration of anticompetitive activities within California creates state

---

[2]Circuit City notes in its opposition that there is no conflict between California and Illinois law and therefore California law should apply to its state antitrust claims.  At oral argument, counsel for Circuit City conceded that, if the Court applied California law, the cause of action based on Illinois law would no longer be proper.  The Court therefore GRANTS AUO's motion for summary judgment as to Circuit City's fifth cause of action for violation of the Illinois Antitrust Act.

1  interests in applying California law to that conduct.") (alteration, citation, and internal quotation marks
2  omitted).

3  Virginia also has an interest in the application of its law to this matter. A state may have a "valid
4  interest in shielding out-of-state businesses from what the state may consider to be excessive litigation."
5  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 592 (9th Cir. 2012). Virginia has chosen not to offer
6  its citizens the opportunity to bring indirect purchaser claims in antitrust cases. *See California v.*
7  *Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1151 (N.D. Cal. 2007). Circuit City does not dispute that
8  at least some of the impact of the alleged price fixing took place at its headquarters in Virginia, from
9  which it placed purchase orders and generated payments. The Ninth Circuit has held that a state has an
10 interest in "being able to assure individuals and commercial entities operating within its territory that
11 applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals
12 and businesses in the event they are faced with litigation in the future." *Mazza*, 666 F.3d at 592-93
13 (quoting *McCann*, 48 Cal. 4th at 97-98). Thus, Virginia also has an interest in the application of its law
14 to this matter.

15 Because each state has an interest in applying its own law, a true conflict exists, and the Court
16 must determine which state's interests would be more impaired if its laws were not applied.

17

18 **B.     Comparative Impairment.**

19 No Virginia citizen or business entity is a defendant in this case, so that no Virginia entity will
20 be adversely affected by application of California's law or by failure to apply Virginia's law. However,
21 if California law is applied, Virginia's interest in limiting the liability of entities doing business within
22 its borders will be impaired somewhat, since Circuit City – a Virginia citizen – will be permitted to
23 bring claims that it would be denied under Virginia's more restrictive antitrust laws.

24 If Virginia law is applied, however, California will be impaired in its interest in deterring
25 antitrust violations by "enforcing the state's antitrust laws against those violations that do occur, and
26 ensuring disgorgement of any ill-gotten proceeds." *AT&T Mobility*, 707 F.3d at 1112-13.

27 "In making this comparative impairment analysis, the trial court must determine the relative
28 commitment of the respective states to the laws involved and consider the history and current status of

6

the states' laws and the function and purpose of those laws." *Wash Mut.*, 24 Cal. 4th at 920 (citation and internal quotation marks omitted). On balance, the Court concludes that California's interests will be most impaired if California law is not applied in this matter.

California has repeatedly demonstrated its commitment to the application and enforcement of the Cartwright Act. The California legislature took the affirmative step of passing an *Illinois Brick* repealer statute to ensure that indirect purchasers would retain a cause of action under the Cartwright Act. *Clayworth*, 49 Cal. 4th at 781. The California Supreme Court has held that the purposes of the Cartwright Act are better served by overcompensating plaintiffs than by failing to adequately deter anticompetitive behavior. *Id.* at 783. The Ninth Circuit has also recognized the strength of California's commitment to enforcing the Cartwright Act, albeit in the context of a due process challenge rather than a choice of law analysis. *AT&T Mobility*, 707 F.3d at 1112-13 ("Applying California law to anticompetitive conduct undertaken within California advances the Cartwright Act's overarching goals of maximizing effective deterrence of antitrust violations, enforcing the state's antitrust laws against those violations that do occur, and ensuring disgorgement of any ill-gotten proceeds.") (citation and internal quotation marks omitted)). In sum, California has expressly articulated an interest in enforcing a law that sweeps broadly to deter and punish anticompetitive behavior. *See id.* at 1110.

By contrast, Virginia has not expressly articulated a position regarding indirect purchaser lawsuits. The Virginia legislature enacted its federal harmonization statute in 1974. *See* Va. Code Ann. § 59.1-9.17. Unlike several other states, including California, Virginia did not pass an *Illinois Brick* repealer statute following the 1977 decision. *See* 431 U.S. 720 (1977). However, Virginia courts have not yet expressly ruled on the issue of indirect purchaser standing. *See* Dkt. 870 (noting the absence of Virginia case law explicitly conferring standing on indirect purchaser plaintiffs). Thus, the Court cannot say that Virginia has manifested a particular commitment to barring indirect purchaser lawsuits. Nor can anything significant be divined regarding the function and purpose of Virginia's law in this area.

California has manifested a greater commitment to its law in this area than has Virginia. In addition, the history and purpose of the Cartwright Act support applying it here in a manner that Virginia's law does not. Even if the two states' interests were in equipoise, the Court would still be

7

obliged to apply California law. *See Engel*, 981 F.2d at 1081. Accordingly, the Court finds that California's interest would be more impaired if its law was not applied in this matter.

AUO argues that Virginia has the greater interest – and thus, its interest would be more impaired if its law is not applied – because the alleged "wrongs" in this case occurred in Virginia. California recognizes that "the place of the wrong has the predominant interest" in applying its law, and that the place of the wrong is "the state where the last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593 (citations omitted). AUO contends that the relevant "last event" in this case took place in Virginia, where Circuit City placed purchase orders and authorized payments. However, the Cartwright Act proscribes a broad range of conduct beyond the sale of price-fixed goods. *See AT&T*, 707 F.3d at 1110. Thus, the "last event" necessary to make AUO allegedly liable in California took place when AUO's agents acted to carry out the alleged anticompetitive agreements to fix the prices of the LCD products that Circuit City ultimately purchased. *See id.* (noting that the Cartwright Act "reaches beyond the Sherman Act to threats to competition in their incipiency"). The Court therefore finds that California has the predominant interest under the "place of the wrong" analysis.

AUO also relies upon one of the Court's prior orders in this matter, in which the relevant choice of law was between California and Texas. *See* Dkt. 8297. AUO argues that the Court's ruling on that issue should inform the analysis here. However, unlike Virginia, Texas has expressly articulated a policy of prohibiting indirect purchaser lawsuits. *See Abbott Labs., Inc. v. Segura*, 907 S.W.2d 503, 506 (Tex. 1995) ("Antitrust suits would become even more complex and burdensome as the courts attempted to determine the proper apportionment of pass-on antitrust charges to each level of indirect purchasers."). The Court therefore declines to rely on the prior order.

Accordingly, the Court finds that the choice of law analysis favors applying California law to Circuit City's state law antitrust claim, and therefore DENIES AUO's motion for summary judgment as to Circuit City's cause of action under the Cartwright Act.

**3.     California Law Applies to the Consumer Protection Claim.**

AUO next argues that the Court should grant summary judgment on choice of law grounds as to Circuit City's third cause of action, for violation of California's consumer protection and unfair

8

1 competition laws. Where a party raises choice of law issues with regard to more than one cause of
2 action, "a separate conflict of laws inquiry must be made with respect to each issue in the case." *Wash.*
3 *Mut.*, 24 Cal. 4th at 920. The parties agree that California law is materially different from Virginia law
4 with respect to consumer protection. However, AUO argues that there is a true conflict here, and that
5 Virginia's interests would be more impaired if its law is not applied. For the following reasons, the
6 Court disagrees.

### A. The States' Interests in Applying Their Laws.

Both states have a legitimate interest in the application of their law to the facts of this case. California's unfair competition law ("UCL") sweeps broadly, proscribing "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Comm'ns, Inc. v. L.A Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). It has, as a major purpose, "the preservation of fair business competition." *Id.* (citations omitted). The California Legislature purposely utilized broad language in drafting the statute, intending that the law should enable courts "to deal with the innumerable new schemes which the fertility of man's invention would contrive." *Id.* at 181 (citation and internal quotation marks omitted). The UCL's primary focus is "on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).

By contrast, Virginia's consumer protection statute is far more limited. The Virginia Consumer Protection Act applies only to "consumer transactions." Va. Code Ann. §§ 59.1-200. A consumer transaction is the sale of goods or services "to be used primarily for personal, family, or household purposes." *Id.* § 59.1-198. "The Virginia General Assembly intended that the VCPA 'be applied as remedial legislation to promote fair and ethical standards of dealings between *suppliers* and the *consuming public*.'" *Baker v. Elam*, 883 F. Supp. 2d 576, 578 (E.D. Va. 2012) (emphasis in original). Thus, Virginia has an interest in limiting its citizens' rights to bring consumer protection suits "to those who have purchased goods for personal, family, or household use." *Microsoft Corp. v. #9 Software, Inc.*, No. Civ. A 405CV106, 2005 WL 347965, at *4 (E.D. Va. Dec. 15, 2005).

9

Because both states have a legitimate interest in the application of their law to this matter, the Court must proceed to the third step of the choice of law analysis.

### B. Comparative Impairment.

Again, no Virginia citizen or business entity is a defendant in this case, so that no Virginia entity will be adversely affected by application of California's law or by failure to apply Virginia's law. If California law is applied to this case, however, Virginia's interest will be impaired because Circuit City, a Virginia citizen, will be permitted to seek consumer protection remedies it would be denied under Virginia law. If Virginia law was applied, however, California's interest would be impaired through its inability to punish the alleged anticompetitive conduct that took place within California.

On balance, the Court finds that California's interest will be most impaired if its law is not applied. Virginia's consumer protection statute focuses on limiting who can bring suit to plaintiffs who engaged in consumer transactions for personal use. California's consumer protection statute sweeps more broadly, with a primary focus on the defendant's conduct, rather than the plaintiff's injury. *See In re Tobacco II Cases*, 46 Cal. 4th at 312. If Virginia law was applied here, California would be thwarted in its interest in preserving fair competition within the state. As noted above, even if the balance of interests was equal, the Court would still be bound to apply California law. *See Engel*, 981 F.2d at 1081. Accordingly, the Court finds that the comparative impairment analysis favors applying California law.[3]

The Court concludes that the choice of law analysis favors applying California law to Circuit City's consumer protection and unfair competition claim, and therefore DENIES AUO's motion for summary judgment as to Circuit City's third cause of action.

---

[3] AUO makes the same argument here as it makes regarding the state antitrust cause of action with respect to the "last event" needed to establish liability. Given the broad scope of unfair behavior the UCL seeks to encompass, the Court disagrees with AUO's argument for the same reasons detailed above.

10

**4.     California Law Applies to the Unjust Enrichment Claim.**

AUO's sole argument for dismissing Circuit City's fourth claim, for restitution and unjust enrichment under California law, hinges on the application of Virginia law to Circuit City's state antitrust claim. Because the Court finds that California law applies to Circuit City's state antitrust claim, the Court DENIES AUO's motion for summary judgment as to Circuit City's restitution and unjust enrichment claim.

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby DENIES the motion for summary judgment as to the cause of action for violations of the California Cartwright Act; DENIES the motion for summary judgment as to the cause of action for violations of the California Consumer Protection and Unfair Competition Laws; DENIES the motion for summary judgment as to the cause of action for restitution and unjust enrichment; and GRANTS the motion for summary judgment as to the cause of action for violation of the Illinois Antitrust Act. This Order resolves Docket No. 8676.

**IT IS SO ORDERED.**

Dated: December 3, 2013

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE