IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION _____/ | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To Individual Case No. 13-cv-3349 SI: | No. C 13-3349 SI |
| ACER AMERICA CORPORATION; GATEWAY, INC.; and GATEWAY U.S. RETAIL, INC. f/k/a EMACHINES, INC.,<br><br>        Plaintiffs,<br>  v.<br>HITACHI, LTD.; HITACHI DISPLAYS, LTD.; HITACHI ELECTRONIC DEVICES (USA), INC.; NEC CORPORATION; NEC CORPORATION OF AMERICA; NEC DISPLAY SOLUTIONS OF AMERICA, INC.; NEC LCD TECHNOLOGIES, LTD., NEC ELECTRONICS AMERICA, INC.; TOSHIBA CORPORATION; TOSHIBA MOBILE DISPLAY CO., LTD.; TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC.; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; LG DISPLAY CO., LTD.; LG DISPLAY AMERICA, INC.,<br><br>        Defendants.<br>_____/ | **ORDER RE NEC DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

Currently before the Court is the NEC defendants' motion to compel arbitration. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing scheduled for April 18, 2014. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART the motion to compel arbitration.

## BACKGROUND

The current motion is brought by five related defendants: NEC Corporation; NEC LCD Technologies, Ltd.; NEC Display Solutions of America, Inc. ("NDSA"); NEC Electronics America, Inc.; and NEC Corporation of America, Inc. (collectively, "NEC"). On February 23, 1998, plaintiff Gateway, Inc. ("Gateway") entered into a purchase agreement with Mitsubishi Electronics America – a predecessor to NDSA. *See* Declaration of Dylan Dunavan ("Dunavan Decl.") Ex. A. The agreement stated that it would "remain in effect for a period of three (3) years," and would "automatically renew for an additional one (1) year" unless the agreement was properly terminated. *Id.* ¶ 18. The agreement contained a detailed procedure for handling "[a]ll disputes under this Agreement, of any nature whatsoever . . . ." *Id.* ¶ 21. Specifically, it stated that "[a]ll disputes under this Agreement shall be submitted to arbitration under the rules of the American Arbitration Association ('AAA') with the location for arbitration to be in the State of South Dakota." *Id.*

NEC now moves to compel Gateway, as well as plaintiffs Acer America Corporation ("Acer"), and Gateway U.S. Retail, successor-in-interest to eMachines ("eMachines"), to submit all of their claims against NEC to arbitration. NEC further moves for an order staying this action as to NEC, pending the arbitration.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts must enforce agreements to arbitrate rigorously. *See Hall Street Assoc.*, 552 U.S. at 582. Courts are also directed to

resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, the strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt*, 489 U.S. at 474. This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 831 (2d Cir. 1988) (stating that the purpose of the FAA "was to make arbitration agreements as enforceable as other contracts, but not more so" (internal quotation marks omitted)).

**DISCUSSION**

Plaintiffs concede that claims arising from Gateway's purchases from NDSA, made during the period between February 23, 1998 through February 23, 2002, may be sent to arbitration. However, plaintiffs contend that: (1) claims arising from purchases made outside of that time period are not subject to arbitration; (2) even during that time period, the agreement only covered direct purchases; (3) Acer and eMachines cannot be compelled to arbitrate; and (4) no NEC defendants other than NDSA – successor to the signatory to the agreement – should be entitled to enforce the arbitration clause. Plaintiffs further argue that, should the Court determine that arbitration is appropriate, the agreement's limitation of liability clause must be declared unenforceable. Finally, they contend that a stay of proceedings is inappropriate. The Court addresses each argument in turn.

**1.      Temporal Limitations of the Agreement.**

Plaintiffs argue that only claims arising from purchases made during the agreement's time period may be sent to arbitration. Plaintiffs agree that the agreement's automatic renewal provision was triggered, and that the agreement was in effect from February 23, 1998 until February 23, 2002. NEC counters that the agreement covers all purchases plaintiffs made from NEC, at any time.

3

In support of its argument, NEC provides a declaration from NDSA's general counsel, stating that, before this lawsuit was initiated, NDSA received a demand letter from Acer, listing "the sales quantity and collective amount Plaintiffs paid based on their direct and indirect purchases of TFT-LCD products, which they identified as having been either manufactured or placed in the chain of distribution by NEC anywhere at any time during the period January 1996 through December 2006." Declaration of Dylan Dunavan in Support of NEC Defendants' Reply Memorandum ("Dunavan Reply Decl.") ¶ 2. NEC then used that information to identify the sales that formed the basis for plaintiffs' demand. *Id.* ¶ 3. NEC determined that the only sales relevant to the demand letter were made to Gateway, from NDSA's predecessor, between August, 2003 and September, 2004. *Id.* ¶ 4. NEC asserts that "the Agreement . . . governed the sales identified in the demand letter." *Id.* ¶ 5.

"When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally. . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Under California contract law, 'if the language [of a contract] is clear and explicit, and does not involve an absurdity' the language must govern the contract's interpretation." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009) (alteration in original) (quoting Cal. Civ. Code § 1638). Additionally, if it is possible to ascertain the parties' intentions from the writing alone, the Court should not look elsewhere when determining its meaning. *See* Cal. Civ. Code § 1639.

The agreement at issue here clearly states that it would remain in effect for three years, with an automatic one year renewal absent express action by one of the parties. Dunavan Decl. Ex. A ¶ 18. It further provides that all disputes "under this Agreement" shall be submitted to arbitration. *Id.* ¶ 21. The Court finds that it is clear from the language of the contract that it was intended to cover purchases made during the contractual period – that is, from February 23, 1998 until February 23, 2002. Therefore, the phrase "under this Agreement" must refer only to purchases made during the time-span covered by the contract. "Only disputes 'that the parties have agreed to submit to arbitration' should be arbitrated." *Comedy Club*, 553 F.3d at 1285 (quoting *First Options*, 514 U.S. at 943). Accordingly, the Court concludes that, under the express terms of the agreement, only purchases made between February 23, 1998 and February 23, 2002 should be submitted to arbitration.

4

NEC contends that its general counsel's declaration, stating that the agreement covered all sales to Gateway, is sufficient proof that the agreement to arbitrate was not temporally limited. This argument is unavailing. Indeed, given the Court's conclusion that the contractual language is clear and explicit, it would be improper for the Court to consider the declaration at all. *See* Cal. Civ. Code §§ 1638, 1639.

Accordingly, the Court GRANTS the motion to compel arbitration with respect to purchases made by Gateway from NDSA during the time period of February 23, 1998 to February 23, 2002.[1] To the extent NEC seeks to arbitrate claims arising from purchases made outside of that time period, the motion is DENIED.

**2.      Scope of the Agreement.**

NEC argues that all claims against it, including indirect purchaser claims and claims based on co-conspirator liability, should be submitted to arbitration. NEC further contends that the language of the agreement indicates that the question of whether such claims are arbitrable should be decided by the arbitrator.

The Court notes at the outset that it will not assume the parties intended to arbitrate arbitrability absent "clear and unmistakable evidence that they did so." *First Options*, 514 U.S. at 944 (alterations, citation, and internal quotation marks omitted). Where an agreement is silent or ambiguous on the point of who should decide questions of arbitrability, it is the courts' province to decide the arbitrability question. *Id.* at 945. This agreement is silent regarding the parties' intent to arbitrate arbitrability of particular claims. Therefore, the Court must determine whether plaintiffs' non-direct purchase claims are arbitrable.

The Court has previously held that only claims arising out of the parties' business relationship – that is, claims based upon purchases made directly from the defendant – may be submitted to arbitration. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.* (*Jaco*), No. 07-md-1827, MDL Dkt. No. 4526 (N.D. Cal. Jan. 10, 2012). The Court sees no reason to depart from that holding here.

---

[1] The Court recognizes that NEC asserts that the only purchases Gateway made were outside of the relevant time period. Nonetheless, to the extent the parties discover any direct purchases made by Gateway between February 23, 1998 and February 23, 2002, those claims, and only those claims, are subject to arbitration.

5

Accordingly, Gateway's claims during the period outlined above are arbitrable only to the extent they are based on purchases it made directly from NEC; to the extent Gateway's claims are based on indirect purchases or co-conspirator liability, such claims are not subject to arbitration.

**3.      Application of Agreement to Acer and eMachines.**

Plaintiffs argue that, even though Gateway is bound by the agreement to arbitrate certain claims, Acer and eMachines are not signatories to the agreement and therefore cannot be bound by it.

"A contract may bind non-parties such as an intended third party beneficiary, an agent, or an assignee." *Comedy Club*, 553 F.3d at 1287. However, "in the absence of such extraordinary relationships," an arbitration clause will generally not bind a non-party. *Id.*

NEC argues that the plaintiffs are all related entities and therefore Acer and eMachines should also be compelled to arbitrate under the terms of the agreement. The Court disagrees. According to the complaint, Gateway did not acquire eMachines until 2004, two years after the agreement's termination date. *See* Am. Compl. ¶ 23. Acer did not acquire Gateway until 2007, five years after the agreement's termination date. *See id.* ¶ 21. Under these circumstances it would inequitable to require Acer and eMachines to be bound by a contract to which they never agreed and under which they never operated.

Accordingly, the Court finds that only Gateway is bound by the terms of the arbitration agreement and therefore DENIES NEC's motion to the extent it requests that Acer and eMachines be compelled to arbitrate.

**4.      Application of Agreement to NEC Defendants Other Than NDSA.**

Plaintiffs argue that only NDSA, and not the other four NEC defendants, can enforce the arbitration agreement.

The Ninth Circuit has held that a signatory to a contract may be required to arbitrate a dispute with a non-signatory where there is a "close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and . . . the claims [are] intertwined with the underlying contractual obligations." *Munid v. Union Sec. Life Inc. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009). Moreover, "[w]hen the charges against a parent company

6

and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *Fujian Pac. Elec. Co. Ltd. v. Bechtel Power Corp.*, No. C 04–3126 MHP, 2004 WL 2645974, at *6 (N.D. Cal. Nov. 19, 2004) (quoting *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321-22 (4th Cir. 1988)).

Plaintiffs' complaint alleges that the NEC entities are intertwined through alter ego or agency relationships. Am. Compl. ¶¶ 32-37. Indeed, the complaint often refers to the five defendants collectively as "NEC." *Id.* ¶ 37. The Court finds that the relationship between the five NEC defendants is sufficiently close, and the relationship between the non-signatory NEC defendants' alleged wrongs and the arbitration agreement is sufficiently intertwined, such that Gateway can be compelled to arbitrate against all five NEC defendants.

Accordingly, the Court concludes that all five NEC defendants may enforce the arbitration provision, subject to the limitations set forth above.

### 5.     **Enforceability of Limitation of Liability Clause.**

Plaintiffs argue that, should the Court determine that arbitration is warranted, the agreement's clause limiting special damages in arbitration should be declared unenforceable.

Some courts have indicated that a party may not waive its right to treble damages in the antitrust context through a contractual limitation on recoverable damages. *See, e.g.*, *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) ("On the basis of these precedents, we conclude that the award of treble damages under the federal antitrust statutes cannot be waived."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (stating that if a contractual agreement had operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy"). The Court agrees that the agreement's limitation of liability clause is unenforceable. Accordingly, the Court GRANTS plaintiffs' request and severs the limitation on special damages from the agreement. *See* Dunavan Decl. Ex. A ¶ 28 ("The terms and conditions stated herein are declared to be severable.").

**6.     Stay of Proceedings.**

Finally, NEC requests that the Court stay these proceedings pending the outcome of arbitration. Given that the Court has determined that the arbitration may proceed only between Gateway and NEC, and only regarding direct purchases made during the period of February 23, 1998 through February 23, 2002, it is clear that the bulk of the parties and claims in this case will not proceed through arbitration. Additionally, given the breadth and scope of these MDL proceedings, a stay would have little benefit. Accordingly, the Court DENIES this request. *See United States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (holding that decision to stay proceedings is within district court's discretion).

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby GRANTS IN PART AND DENIES IN PART NEC's motion to compel arbitration. This Order resolves Master Docket No. 8885.

**IT IS SO ORDERED.**

Dated: April 10, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE