BRUCE L. SIMON (Bar No. 96241)
  bsimon@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008

RICHARD M. HEIMANN (Bar No. 63607)
  rheimann@lchb.com
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile:  (415) 956-1008

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | Case No. MDL 3:07-md-1827 SI<br><br>**CLASS ACTION**<br><br>**STATUS REPORT REGARDING SECOND DISTRIBUTION OF SETTLEMENT FUNDS TO DIRECT PURCHASER CLASS MEMBERS AND NOTICE OF MOTION AND MOTION FOR *CY PRES* DISTRIBUTION**<br><br>Date: May 23, 2014<br>Time: 9:00 a.m.<br>Ctrm: 10, 19th Floor<br><br>The Honorable Susan Illston |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD, AND TO ALL DIRECT PURCHASER CLASS MEMBERS:**

**PLEASE TAKE NOTE THAT** at 9:00 a.m. on May 23, 2014, or at such time subject to the Court's calendar,[1] Direct Purchaser Plaintiffs ("Plaintiffs") will, and hereby do, move before the Honorable Susan Illston, United States District Judge, at the United States Courthouse, 450 Golden Gate Avenue, Courtroom 10, San Francisco, California, for an order approving the distribution of the remaining amounts in the Settlement Fund via a *cy pres* remedy as detailed herein. This motion is based on this Notice; the Declarations of Bruce Simon and Robin Niemiec in Support of this Motion, filed concurrently with this Notice; the records, pleadings, and papers filed in this action; and upon such argument as may be presented to the Court at the hearing on this motion. Plaintiffs also provide herein a status report to the Court regarding the Second Distribution of Settlement Funds to Direct Purchaser Class Members.

---

[1] Plaintiffs respectfully submit that this Motion can be determined without a hearing. If no opposition or response is filed, they respectfully request that the Court enter an Order on the Motion after the 14-day period to file a response expires.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

859121.1                                                                 1                                                        MDL 3:07-md-1827 SI
STATUS REPORT REGARDING SECOND DISTRIBUTION AND NOTICE OF MOTION AND MOTION FOR CY PRES DISTRIBUTION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Direct Purchaser Plaintiffs ("Plaintiffs") hereby update the Court regarding the completion of the Second Distribution of Settlement Funds to Class Members, and move the Court for an order authorizing a *cy pres* remedy for $2,500.05 remaining in the Settlement Fund. The entirety of the $473,022,242 obtained through the settlements with Defendants (less attorneys' fees and cost, incentive awards and claims administration expenses) has now been distributed to Class Members, except for $2,500.05.

As described below, the Second Distribution of Settlement Funds has been completed, and all checks have been cashed. Plaintiffs therefore seek to distribute the remaining funds through a *cy pres* distribution because the remaining amount is too small to make a third distribution to Class Members feasible. Plaintiffs recommend the following four organizations as *cy pres* recipients:

1. The American Antitrust Institute;
2. Berkeley School of Law, Technology & Public Policy Clinic;
3. Hastings College of Law Institute for Innovation Law; and
4. Public Justice

As set forth below, each of these organizations bears a substantial nexus to the interests of Class Members. Plaintiffs therefore respectfully request that the Court enter an order permitting a *cy pres* distribution of the remaining funds, which will bring this case to a close.

## II. STATUS REPORT REGARDING SECOND DISTRIBUTION OF SETTLEMENT FUNDS

### A. The Remaining Settlement Funds Have Been Distributed.

In its Order Approving Second Distribution of Settlement Funds to the Direct Purchaser Class Members [Dkt. No. 8851] ("Second Distribution Order"), the Court (1) approved an additional payment of $15,000 to Rust Consulting, Inc. for claims administration expenses incurred in connection with administering and distributing checks to Class Members for the Second Distribution; (2) authorized payment of the late-filed claims of Propeller, Inc. and DuPont,

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

and payment of the adjusted claim of OfficeMax; (3) directed Rust to distribute to eligible claimants the amounts remaining in the Settlement Fund according to the Plan of Allocation approved by the Court and consistent with the First Distribution Order [Dkt. No. 8585] and the Second Distribution Order; (4) ordered that checks issued by Rust for the Second Distribution are to bear the notation "Non-Negotiable after 28 days" and that no check issued as part of the Second Distribution is to be negotiated more than 45 days after the date of the check; and (5) ordered that, if there are any proceeds remaining in the Settlement Fund after the Second Distribution because of uncashed, undelivered or returned checks, sixty (60) days after Rust has issued checks for the Second Distribution, Co-Lead Class Counsel are to update the Court regarding such proceeds and recommend a disposition of these proceeds, which may include a *cy pres* distribution to one or more charitable organizations that bear a substantial nexus to the interests of the class members.

Pursuant to the Order Regarding Payment of Late-Filed and Disputed Claims ("September 3 Order") [Dkt. No. 8585] and the Second Distribution Order, on February 14, 2014, Rust issued payments, totaling $58,805,805.43, to 222 claimants who had funds held back in the initial distribution and three other Court approved claims. Decl. of Robin Niemiec (filed herewith) ¶ 3.

At the request of Class Counsel, $2,500.00 of the remaining Settlement Fund were not distributed in the Second Distribution to account for any additional costs and/or expenses. *Id.*, ¶ 4. Pursuant to the Second Distribution Order, checks issued by Rust for the Second Distribution had the notation "Non-Negotiable after 28 days" and no check issued was negotiated more than 45 days after the date of the check. *Id.*, ¶ 5.

Rust re-issued checks to Settlement Class Members who contacted Rust and requested their checks be reissued. *Id.*, ¶ 6. Beginning on February 27, 2014, for any checks that remained uncashed, Rust began an outreach program, via telephone and email, to encourage claimants to cash their checks. *Id.*, ¶ 7. Rust continued their outreach program until all checks had been negotiated. *Id.*, ¶ 8. Thus, as of April 4, 2014, $2,500.05 remained in the distribution account, which reflects the amount Class Counsel requested to be held back for unforeseen contingencies. *Id.*, ¶ 10. Payment of that amount to Class Members would not be feasible because the cost to distribute it to the class would far exceed the amount left in the Settlement Fund.

B.  Late Claim of ASA Electronics, LLC

On March 12, 2014, Class Counsel contacted Rust to advise that ASA Electronics, LLC ("ASA") had contacted them on March 11, 2014 requesting information on a claim it submitted on September 9, 2013. *Id.*, ¶ 9; Declaration of Bruce L. Simon, filed herewith, ¶ 3. Prior to March 12, 2014, Rust did not advise Class Counsel of the existence of this late claim nor provide any documentation to Class Counsel related thereto. Decl. of Robin Niemiec, ¶ 9.

For various reasons, Rust deemed ASA's claim form to be late and ineligible for payment. *Id.* ASA filed its claim form well after the April 2012 claim filing deadline and after the distribution process began. *Id.* ASA also missed the Court-ordered August 12, 2013 deadline to submit affidavits in support of late-filed claims and after the Court issued its September 5, 2013 order authorizing payment of late-filed and disputed claims. *Id.* Because ASA's claim was not received until September 9, 2013, it was not submitted to the Court with the other previous late and disputed claims in May 2013. And since Class Counsel was not made aware of this late claim until March 11, 2014, neither was it included in the Motion For An Order Approving Second Distribution Of Settlement Funds filed on November 27, 2013 (Doc. No. 8807).

On a March 26, 2014 telephone call, Rust advised ASA that nothing further could be done in regard to its claim because it was filed after all applicable deadlines and all Settlement Funds have been distributed. Rust also informed ASA that Audiovox Corporation filed a claim on behalf of its subsidiaries and affiliates, of which one was a company known as ASA. A portion of Audiovox's award was applicable to ASA. *Id.*

Since March 26, 2014, Rust has received no further inquiries or communication from ASA, and accordingly, Rust considers this matter resolved. *Id.* Plaintiffs nevertheless wish to advise the Court regarding this late claim filed by ASA.

### III.  THE COURT SHOULD APPROVE A *CY PRES* DISTRIBUTION.

In the context of a class action settlement, the *cy pres* doctrine allows payments to be made to a third party for the indirect benefit of the class as opposed to being made directly to the class members. See 4 Conte & Newberg, *Newberg on Class Actions*, § 11.20 (4th ed. 2002). Pursuant to the *cy pres* doctrine, funds from the settlement of a class action suit may be used to promote the

interests of class members when the distribution of all funds to class members is infeasible. Here, there is $2,500.05 remaining in the Settlement Fund which makes a third distribution of funds to class members infeasible. For that reason, Co-Lead Class Counsel respectfully recommend that those funds be distributed to the *cy pres* recipients identified below.

The Ninth Circuit has instructed District Courts to evaluate the *cy pres* provisions of class action settlements for "'a driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (quoting *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)). More specifically, any *cy pres* remedy must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members" and must not benefit a group "too remote from the plaintiff class." *Id.* (quoting *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308-09 (9th Cir. 1990)). In order "[t]o ensure that the settlement retains some connection to the plaintiff class and the underlying claims, . . . a *cy pres* award must qualify as the next best distribution to giving the funds directly to class members." *Id.* (citation and internal quotation marks omitted).

With these standards in mind, Plaintiffs respectfully recommend to the Court the following organizations as recipients of the remaining Settlement Funds in equal parts. There is a substantial nexus between these organizations and the interests of class members, which are direct purchaser of TFT-LCD panels and certain products containing such panels. Additional materials regarding these organizations are attached to the Declaration of Bruce L. Simon, filed herewith, as Exhibits A-D.

1. <u>The American Antitrust Institute</u> (Simon Decl., Ex. A): The American Antitrust Institute ("AAI") is an independent and non-profit education, research, and advocacy organization. Its mission is to increase the role of competition, assure that competition works in the interests of consumers, and challenge abuses of concentrated economic power in the American and world economy. It has a centrist legal-economic ideology and promotes the vigorous use of antitrust as a vital component of national and international competition policy.

1   The AAI bears a substantial nexus to the interests of Class Members in that it is an organization whose work is specifically related to the antitrust laws under which Class Members' claims were brought.

2.  <u>Berkeley School of Law, Technology & Public Policy Clinic</u> (Simon Decl., Ex. B): The mission of the Berkeley Center for Law & Technology ("BCLT") is to foster the beneficial and ethical understanding of intellectual property law and related fields as they affect public policy, business, science and technology.  Established in 1995 with a focus on intellectual property, BCLT has developed the leading program in law and technology.  BCLT has expanded over the years to encompass privacy law, cyberlaw, electronic commerce, digital entertainment law, cleantech, biotech, telecommunications regulation and many other areas of constitutional, regulatory and business law that are affected by new technologies.

The BCLT bears a substantial nexus to the interests of Class Members in that its work relates to technology and regulatory and business law.  The work of BCLT is related to the issues of technology, and business and regulatory law, that were a part of Class Members' claims in that they pertained to TFT-LCD technology and the sale of TFT-LCD panels and products to Class Members.

3.  <u>Hastings College of Law Institute for Innovation Law</u> (Simon Decl., Ex. C): The Institute for Innovation Law (the "Institute") is a public interest academic center at U.C. Hastings. The Institute engages in academic research and education to encourage innovation through the practice and development of law and policy. The Institute's mission is to identify and promote the tools, knowledge, and skills needed to encourage innovation through the practice and development of law and policy.  Dedicated to promoting data-driven law-making, the Institute seeks to empower regulators to make informed decisions using reliable and objective analysis. Importantly, the Institute is developing a set of resources, skills, and knowledge applicable to other areas of the law.  Research on legal issues that limit entrepreneurship is one part of a purpose driven initiative to study Data Driven Law Making.  The Data Driven Law Making initiative is part of a greater effort by the Institute to support all aspects of innovation, legal and technical, at the intersection of the law and technology. The Institute's work is comprised of both research initiatives and a

classroom component.  Administratively, the Institute serves as the umbrella entity for three sub-programs:  the Startup Legal Garage, the Law and Bioscience Project, and the Privacy and Technology Project.

The Institute bears a substantial nexus to the interests of Class Members in that it engages in research and education related to issues of business regulation and technology.  Class Members' claims related to TFT-LCD technology and the application of antitrust laws to the sale of that technology.

4.   Public Justice (Simon Decl., Ex. D):  Public Justice marshals the resources, experience and dedication of public interest lawyers from across the country.  Their docket is one of the widest-ranging of any public interest law firm in the country.  It includes cases involving deceptive pharmaceutical companies, irresponsible manufacturers, unscrupulous payday lenders, unjust employers, punitive credit card companies, unfair school athletic programs, inhumane government detention centers, dangerous food producers, reckless polluters, and more.

Public Justice bears a substantial nexus to the interests of Class Members in that it litigates against unfair business practices that cause injury to consumers.

Plaintiffs respectfully request that the Court order the distribution of the remaining funds via a *cy pres* distribution to these organizations, which will be divided equally among those organizations approved by the Court.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order permitting the *cy pres* distribution of the funds remaining in the Settlement Fund.

Respectfully submitted,

DATED: April 15, 2014  **PEARSON, SIMON & WARSHAW, LLP**

By: */s/ Bruce L. Simon*
 BRUCE L. SIMON

DATED: April 15, 2014  **LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**

By: */s/ Marc A. Pilotin*
 MARC A. PILOTIN

*Counsel for Direct Purchaser Class Plaintiffs*