UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. 3:07-MD-1827 SI<br>MDL No. 1827 |
| This Document Relates to:<br><br>Indirect-Purchaser Class Action:<br><br>*State of Missouri, et al. v. AU Optronics Corporation, et al.,* Case No. 10-cv-3619;<br><br>*State of Florida v. AU Optronics Corporation, et al.,* Case No. 10-cv-3517; and<br><br>*State of New York v. AU Optronics Corporation, et al.,* Case No. 11-cv-0711. | DECLARATION OF ROBIN M. NIEMIEC OF RUST CONSULTING, INC., NOTICE AND CLAIMS ADMINISTRATOR, IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION TO AUTHORIZE DISTRIBUTION OF SETTLEMENT FUND |

I, Robin M. Niemiec, declare as follows:

    1.    I am employed as a Client Services Director at Rust Consulting, Inc. ("Rust") (as used herein, "Rust" includes its sister company, Kinsella Media, Inc.). I am over twenty-one (21) years of age and am not a party to the above-captioned actions ("the Actions"). I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently thereto.

    2.    Rust was retained by Co-Lead Counsel for the Indirect Purchaser Plaintiff Class ("the Class") pursuant to the "Order Granting Preliminary Approval of Combined Class, *Parens Patriae*, and Governmental Entity Settlements" (dated January 26, 2012), and the "Order Granting Preliminary Approval of Combined Class, *Parens Patriae*, and Governmental Entity Settlements with AUO, LG Display and Toshiba Defendants" (dated July 31, 2012), to serve as the Settlement Notice and Claims Administrator.

3.      I submit this Declaration to provide the Court with information about claims administration in connection with the settlement of the Actions ("the Settlement"). As used herein, "Class" and "Class Member(s)" include the *parens patriae* group members.

4.      Rust was engaged to, among other things, provide notice about the Settlement to potential Class Members; process completed claim forms; calculate the *pro rata* recovery for each Class Member who filed a valid claim; and distribute the Settlement Fund to Class Members. Rust has served as the central contact point for Class Members' and potential Class Members' inquiries, communications and claims in this Settlement.

*Claim Processing Activities*

5.      For quality control purposes, Rust created a database to track all claims submitted to share in this Settlement ("Database"). Each online claim was given a unique "Claim Number" at the time the claim was submitted. Upon receipt, paper claims were grouped in batches of fifty, each claim was grouped in the order it was processed by Rust's mailroom staff, each batch of claims was numbered sequentially, and each paper claim was stamped with a unique Claim Number.

6.      The Court-ordered December 6, 2012 deadline to submit claims was contained in all Notices disseminated to potential Class Members and in a statement posted on the litigation website:

> "The DEADLINE to file a claim to receive a share in the $1.1 Billion Settlement Fund is December 6, 2012."

Rust continued to receive and process claims submitted after this date. After December 6, 2012, at the direction of Counsel, the website language was changed to read:

> "In order to receive a payment, you must file a valid claim. The claim filing deadline was December 6, 2012 and had passed. You may still file a claim, but there is no guarantee that claims filed after December 6, 2012 will be accepted."

2

On or about May 30, 2014, at the direction of Counsel, Rust revised the settlement website to state:

> "The deadline to file a claim was December 6, 2012, and has now passed. Counsel intend to recommend that the Court accept late claims submitted after December 6, 2012 until June 6, 2014, but not allow late claims submitted after June 6, 2014."

7. As of June 6, 2014, Rust received and processed 233,944 online claims and 15,597 paper claims from potential Class Members ("Claimants"), totaling 249,541 claims, of these, 229,175 claims were either submitted online or postmarked by December 6, 2012. A total of 362 claims were submitted between May 30, 2014 (when the settlement website language alerted potential claimants that counsel would recommend payment of claims filed by June 6) and June 6, 2014. This is approximately the same number that had been received in the previous seven weeks.

8. Unless noted otherwise, all information provided in this Declaration pertains to claims submitted online or postmarked by June 6, 2014.

9. Rust received an additional 92 claims after June 6, 2014.

10. Online claims provided (at the time of submission) or in the case of paper claims, Rust's data-entry staff entered, the following information, (to the extent provided by the claimant) into the Database: name, address, telephone number, email address and the last four digits of an individual's Social Security Number or a business' full Federal Taxpayer Identification number. In addition, each Claimant's responses to the Eligibility Questions[1] and the number of television, monitor and notebook purchases claimed were entered into the

---

[1] The "Eligibility Questions" were on the Court-approved Claim Form and had to be answered in the affirmative to establish class membership. These questions were designed to confirm that a claimed purchase: (1) was made while the claimant was a resident of one of the 24 eligible states or the District of Columbia; (2) was made indirectly; and (3) was a television, monitor and/or notebook computer containing an LCD Flat Panel purchased for the claimant's own use (not for resale) during the Class Period.

Database. The claim number on each claim is used as the unique identifier for a Claimant's records in the Database.

11. Rust first reviewed each claim for eligibility to determine:

    a. claims that were duplicative of a claim previously filed; and

    b. claimants that answered in the negative to one or more of the Eligibility Questions on the claim form, which indicated a failure to purchase the product indirectly and/or a failure to purchase the product while residing in one of the eligible states,[2] or for personal use during the Class Period.

12. Rust identified 14,001 claims as duplicative of claims previously filed and sent letters to Claimants advising that the duplicative claims were ineligible. Rust identified 123 claims where one or all of the Eligibility Questions were answered in the negative and sent letters to those Claimants advising them that they were ineligible. Each of these Claimants was given the opportunity to dispute the determination and provide proof in support of their position. If it was determined that the proof provided established eligibility, Rust updated the Database accordingly. After this process, a total of 13,955 duplicative claims remained ineligible, and 79 claims remained ineligible as a result of failure to purchase the product indirectly and/or failure to purchase the product while a resident of one of the eligible states.

13. Rust also reviewed each claim for the following deficiencies, which, if corrected, would make the claim eligible for payment:

    a. incomplete or missing purchase information;

    b. failure to answer one or all of the eligibility questions or answered one or all of the eligibility questions in both the affirmative and negative; and/or

---

[2] Purchases were required to be made while the claimant was a resident of the states of Arizona, Arkansas, California, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin or the District of Columbia.

4

c.   missing a signature.

14.   Rust sent 3,510 letters via First Class mail advising Claimants that their claims were deficient, explaining the reason(s) for the deficiency, requesting that the Claimants provide the data or information necessary to remedy the deficiency and advising the Claimant that a failure to respond might result in the claim being disallowed. Claimants were given 30 days to respond and cure deficiencies. For any Claimant that failed to respond or cure their deficiency, Rust sent a "second chance" letter. The second chance letter provided Claimants with the opportunity to cure their deficiency and advised the Claimant, for a second time, that a failure to respond might result in the claim being disallowed. Claimants were again given 30 days to respond and cure deficiencies.

15.   After processing responses to the letters mailed, 10 Claimants that failed to provide purchase information and 24 Claimants that failed to answer one or more of the Eligibility Questions or answered one or more of the Eligibility Questions in both the affirmative and negative were deemed ineligible.

16.   After processing responses to the letters mailed to Claimants who failed to sign their claims, four claims, with a total of 24 products purchased (an average of six products per claim), failed to cure this deficiency. Each of these four claimants identified himself as an individual. After consultation with Counsel, and as a result of the small number of products per claim, counsel decided to waive the signature requirement and the claims were deemed eligible.

17.   Governmental entities are not included in the Class, although governmental entities in the eight plaintiff States are eligible for redress programs. Rust will not handle the administration of the States' redress programs. In consultation with Counsel, Rust identified 299 claims filed by governmental entities which are ineligible for payment from the Class

Settlement. Letters were sent to these governmental entities advising that they are not Class Members and may not participate in the Class Settlement.

18. An additional 858 claims were ineligible because:

    a. the Claimant withdrew the claim;

    b. the claim was a test claim entered by Rust Consulting; or

    c. the document that was assigned a claim number actually was not a claim.

*Audit Activities*

19. All remaining claims were reviewed for possible audit. Claims which had been reviewed for a deficiency, as described above, were also evaluated under the audit criteria. Claimants were requested to indicate on the claim form whether he/she/it was filing for an individual or a small, medium or large business (based on number of employees). Based on these designations, after consultation with Counsel, it was determined that individual claims for more than 20 products, small and medium business claims for more than 100 products, and large business claims for more than 150 products would be subject to review/audit. If no designation was made on the claim form and more than 20 products were claimed, the claim was subject to review/audit.

20. Rust sent 3,438 letters to individuals and businesses identified through this process, requesting proof that the purchases claimed fell within the Class definition by documenting that:

    a. the purchase was made during the Class Period;

    b. the purchase was an indirect purchase;

    c. the purchase was a TFT-LCD monitor, notebook or television;

    d. the purchase was made while the Claimant was a resident of one of the eligible states or the District of Columbia; and

6

    e.  the purchase was for personal use and not resale.

21. Claimants were given 30 days to respond.  For Claimants that failed to respond to this letter, Rust sent a "second chance" letter which told Claimants that they needed to provide proof of their claim in order for it to be considered for eligibility.  The letter also advised Claimants, for a second time, that a failure to respond might result in the claim being disallowed, and gave Claimants another 30 days to respond.  Throughout the course of the audit process, Claimants who requested extensions to provide documentation usually were granted additional time.

22. As a result of the audit process, 703 claims were deemed ineligible for failure to respond or for failure to respond with adequate documentation.

23. If the audit resulted in the number of purchases made by a Claimant being adjusted upward or downward, the claim amount was amended in the Database.

24. For any Claimant that was sent an audit/request for information letter as described above, a "Final Claim Determination" letter was mailed to notify the Claimant of his/her/its approved Claim Total.  Claimants had 10 days to respond if they disagreed with this determination.

***Allocation of the Settlement Fund***

25. The Net Settlement Fund available for distribution to Class Claimants will include settlement principal plus past and future interest, and reductions for attorneys' fees and expenses, incentive awards to Class representatives, the governmental entities' share of the Settlement recovery, previously paid expenses and a reserve for estimated additional taxes, accountant's fees, Escrow Agent fees and claims administration expenses ("Net Settlement Fund").  Rust has been informed that Wells Fargo has paid all applicable taxes for the Qualified Settlement Fund to date.

26. Pursuant to the Plan of Allocation, the Net Settlement Fund will be distributed *pro rata* based on the number of monitors, notebooks and televisions purchased. The Plan of Allocation provides that televisions will count at twice the rate of monitors and notebooks, generally reflecting the cost of the LCD panel in each product purchased. Therefore, for purposes of this Declaration, the "panel equivalent" counts allow for a single rate for monitors and notebooks (one panel equivalent) and double for televisions (two panel equivalents). Rust has reported to Counsel that the 233,473 valid claims from Class Members submitted by June 6, 2014, contain a total of 16,212,038 panel equivalents. Included in this count are 18,078 claims for 5,956,723 panel equivalents that were submitted or postmarked after December 6, 2012 (the filing deadline).

27. As of September 9, 2014, an additional 92 claims were submitted after June 6, 2014. Of these 11 claims were duplicates, government entities or not intended to be claims; 63, if received timely, would not have been subject to an audit and contain no deficiencies; 18, if received timely, would have been subject to an audit. Of the 18 that would have been subject to an audit, 13 submitted adequate proof of class defined purchases. The 76 claims that would not have been subject to an audit or provided proof with their filing total 149,366 panel equivalents. The 5 claims that did not provide proof at the time of the filing total 11,488 panel equivalents.

28. Rust has reported to Counsel that 16,079 claims, regardless of when they were filed, have been identified as invalid after conclusion of the claim processing and audit activities described above. A chart summarizing the results of the claims processing and audit review is attached hereto as Exhibit A.

***Distribution of Net Settlement Fund***

29. The claims administration process for the Class is complete.

8

30. Each Class Member whose claim is approved by the Court will receive a *pro rata* payment from the Net Settlement Fund.

***Administrative Fees and Expenses***

31. Rust has invoiced a total of $8,878,322.26 in notice and administration services, $6,373,282.08 by Kinsella Media and $2,505,040.18 by Rust Consulting. A list of these invoices is attached hereto as Exhibit B. Of this amount, $218,134.97 has not yet been paid.. Future expenses to administer and process the check distribution are estimated at $357,714.00. Attached hereto as Exhibit C is a copy of Rust's estimate for future fees and expenses.

32. Upon approval of the Court, Rust will promptly distribute the appropriate shares of the Net Settlement Fund to eligible Claimants.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 12th day of September, 2014, in Palm Beach Gardens, Florida.

Robin M. Niemiec

Robin M. Niemiec