JAMES B. BALDINGER (*pro hac vice*)
jbaldinger@carltonfields.com
DAVID B. ESAU (*pro hac vice*)
desau@carltonfields.com
**CARLTON FIELDS JORDEN BURT, P.A.**
CityPlace Tower
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL 33401
Telephone: (561) 659-7070
Facsimile:  (561) 659-7368

HSIANG "JAMES" H. LIN (SBN 241472)
jlin@tklg-llp.com
DAVID V. SACK (*pro hac vice*)
dsack@tklg-llp.com
FATIMA S. ALLOO (SBN 283694)
falloo@tklg-llp.com
**TECHKNOWLEDGE LAW GROUP LLP**
100 Marine Parkway, Suite 200
Redwood Shores, CA 94065
Telephone: (650) 517-5200
Facsimile: (650) 226-3133

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. M:07-1827 SI MDL No. 1827 |
| This Document Relates to Individual Case No. 3:13-cv-03349-SI | Individual Case No. 3:13-cv-03349 SI |
| Acer America Corporation et al., <br><br> Plaintiffs, <br> v. <br><br> Hitachi, Ltd. et al. <br><br> Defendants. | [~~PROPOSED~~] REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) SAMSUNG ELECTRONICS TAIWAN CO., LTD. <br><br> The Hon. Susan Illston |

The United States District Court for the Northern District of California, the Honorable Susan Illston, Senior District Judge, presents its compliments to the Appropriate Judicial Authority of Taiwan, and requests international judicial assistance to obtain evidence to be used in a civil proceeding before this Court in the above captioned matter.

## I.   REQUEST

The Court requests the assistance described herein as necessary in the interest of justice. The assistance requested is that the Appropriate Judicial Authority of Taiwan compel depositions and production of documents from the following corporate entity:

**Samsung Electronics Taiwan Co., Ltd.**
**10th Floor No. 399 Rui Guang Road**
**Nei Hu District Taipei, Taiwan**

The Court requests Samsung Electronics Taiwan Co., Ltd. ("Samsung") to produce the documents and things as set out in Attachment A of this Request, and to produce a witness for the deposition topics as set out in Attachment A of this Request. The Court understands the confidential nature of the documents and testimony requested from Samsung. As such, attached as Attachment B is the protective order in this case to protect the confidentiality of the documents and testimony Samsung produces.

## II.   FACTUAL ALLEGATIONS

Acer America Corporation ("Acer America"), Gateway, Inc. ("Gateway"), and Gateway U.S. Retail, Inc., f/k/a eMachines, Inc. ("Gateway U.S. Retail") (collectively, "Acer") filed suit against NEC Corporation; NEC Corporation of America; NEC Display Solutions of America, Inc.; NEC LCD Technologies, Ltd.; Toshiba Corporation; Toshiba Matsushita Display Technology Co., Ltd.; Toshiba America Electronic Components, Inc.; Toshiba America Information Systems, Inc.; LG Display Co., Ltd.; and LG Display America, Inc. (collectively, "Defendants") to recover damages from Defendants. Acer alleges that its injury was caused by Defendants' and their alleged co-conspirators' allegedly long-running, unlawful conspiracy to fix, raise, stabilize, and maintain prices

[PROPOSED] REQUEST FOR
INT'L JUDICIAL ASSISTANCE
Case No. 3:13-cv-03349 SI

for LCD panels and finished LCD products (hereinafter "LCD products").   Acer alleges that Defendants' and their alleged co-conspirators' alleged conspiracy extended from at least January 1, 1996 through at least December 11, 2006 (the "Relevant Period").   Acer alleges that it suffered damages from Defendants' and their alleged co-conspirators' alleged conspiracy by purchasing Defendants' and their alleged co-conspirators' LCD panels and LCD products at noncompetitive prices set by Defendants and their alleged co-conspirators through their alleged conspiracy.

Acer's investigation indicates that Samsung is a company from which Acer may have purchased LCD panels and LCD products during the Relevant Period, either directly or through Acer's Original Design Manufacturers ("ODMs").   Thus, it appears that Samsung possesses information of relevance to this litigation, including:  (1) the quantity of LCD panels and LCD products that Samsung sold to Acer; (2) the prices of these sales; (3) the revenue generated from these sales; (4) the costs Samsung incurred in connection with the manufacture and sale of LCD panels and LCD products to Acer or to Acer's ODMs; and (5) the names of the companies that supplied the LCD panels and LCD products to Samsung for sale to Acer.

**III.   EVIDENCE**

The documents to be produced are identified in Attachment A.  The deposition topics are also listed in Attachment A.  Identified as Attachment B, the Court's protective order in this case protects the confidentiality of any documents and testimony Samsung produces.

**IV.   OFFER OF RECIPROCAL ASSISTANCE**

The United States District Court of the Northern District of California is willing to provide similar assistance to the Judicial Authorities of Taiwan.  See 28 U.S.C. § 1782.

///

[PROPOSED] REQUEST FOR
INT'L JUDICIAL ASSISTANCE
Case No. 3:13-cv-03349 SI

1

**V.      REIMBURSEMENT FOR COSTS**

2

     Should there be any costs associated with the service herein, it will be the responsibility of

3

the attorneys for Acer to reimburse the Appropriate Judicial Authority of Taiwan concerning the

4

same.  Please direct any correspondence or communications concerning costs to the following:

5

6

                    David V. Sack
**TECHKNOWLEDGE LAW GROUP LLP**

7

100 Marine Parkway, Suite 200
Redwood Shores, CA 94065

8

Telephone: (650) 517-5200
Facsimile: (650) 226-3133

9

10

11

Date: _____11/24/14_____

12

(SEAL OF COURT)

          _____
Honorable Susan Illston

13

UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF CALIFORNIA

14

450 Golden Gate Ave., 19th Floor, Rm. 10
San Francisco, CA 94102

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] REQUEST FOR
INT'L JUDICIAL ASSISTANCE
Case No. 3:13-cv-03349 SI

Attachment A

*In Re TFT-LCD (Flat Panel) Antitrust Litigation*
*Acer America Corp. v. Hitachi, Ltd., et al.*
MDL Case No. 3:07-MD-1827 SI / Case No. 3:13-CV-03349 SI

ATTACHMENT A

## I.   DEFINITIONS

The words and phrases used in these requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California. In addition, the following terms shall have the meanings set forth below whenever used in any Request for Production of Documents.

1.      The words "all," "any," and "each" mean "each and every."

2.      The words "and" and "or" are both conjunctive and disjunctive as necessary.

3.      "Communications" means, without limitation, the transmittal of information (in the form of facts, ideas, inquiries or otherwise) between individuals or companies whether oral, written, electronic, or otherwise, and whether direct or through an intermediary.

4.      "Concerning" or "concerns" means discussing, relating to, contradicting, referring to, reflecting, analyzing, describing, constituting, evidencing, containing or disclosing or supporting the referenced matter.

5.      "Document" and "documents" shall have the meaning ascribed to them under the Federal Rules of Civil Procedure and shall also mean all electronically stored information ("ESI") including, without limitation, electronic data or data compilations, electronic files, email and other electronic communications saved to or located on hard disks, file servers, floppy disks, CDs, DVDs, backup tapes, thumb drives, or any other electronic media, whether or not in tangible or electronic form.

6.      "LCD Panel" means any display technology involving glass plates or substrates and liquid crystal compound to electronically display an image, including both liquid crystal

display panels as well as modules consisting of liquid crystal display panels combined with a backlight unit, a driver, and other equipment that allow the panel to operate and be integrated into a mobile wireless handset, television, computer monitor, tablet computer or other product.

7.      "LCD-containing finished product" refers to any product containing an LCD Panel, including, without limitation, mobile wireless handsets, two-way radios, desktop computer monitors, notebook computers, tablet computers, and televisions.

8.      The term "person" or "persons" includes any natural person, public entity, partnership, corporation, association, firm, trust, joint venture, agency, board, authority, commission or other such entity.

9.      "Supplier" means any supplier, manufacturer, or seller of LCD Panels or LCD-containing finished products.

10. "Acer" means Acer Inc., Acer America Corporation, Gateway, Inc., and Gateway U.S. Retail, Inc., f/k/a eMachines, Inc., their predecessors and successors, and any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, partner, member, director, officer, agent employee, consultant, staff member, or other representative of any of the foregoing.

11.      "You" or "Your" means Samsung Electronics Taiwan Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., their predecessors and successors, and any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, partner, member, director, officer, agent employee, consultant, staff member, or other representative of any of the foregoing.

## II.   INSTRUCTIONS

1.      In responding to this Letter Rogatory, You are requested to produce all documents in Your possession, custody, or control, wherever located, including without limitation any

2

document available to You upon request from Your parents, affiliates, subsidiaries, employees, officers, directors, attorneys, accountants, financial advisors, consultants, private investigators, or other agents or persons acting or purporting to act on Your behalf, as required by the Federal Rules of Civil Procedure and the applicable local rules.

2.      If any part of a document is responsive to any request herein, produce the entire document, including any attachments or exhibits.

3.      All documents should be produced as maintained in the ordinary course of business.

4.      Any noun used in the singular form shall be construed and applied so as to include the plural, form also, and vice versa.

5.      If You are not producing any documents in response to any of the Requests herein, Your response should make it clear that You are not producing any documents in response to that Request.

6.      If only a part of a Request is objectionable, the response shall identify with particularity any document or other tangible thing falling within any category of item in the request to which an objection is being made, and shall set forth clearly the extent of and the specific ground for the objection.

7.       Each Document Request shall be construed independently, and no Document Request shall be viewed as limiting the scope of any other Document Request.

8.      Unless a different time is specified, the relevant time period for each document request is January 1, 1996 through present.

9.      You shall designate one or more of Your officers, directors, managing agents, or such other authorized persons who consent to testify on Your behalf concerning the "Deposition Topics" described below. If You designate more than one witness, please identify each such

3

witness by name and title, and identify the specific matters on which each such witness will testify, in writing at least five business days prior to the deposition.

## III.   REQUESTS FOR PRODUCTION

1.    <u>LCD Panel Sales Data</u>:  Please produce transaction-level data, in native format, for all LCD Panels sold by You to Acer or sold by You to Acer's original design manufacturers ("ODMs") for incorporation into Acer's LCD-containing finished products from January 1996 through present. Please include fields that identify:

a.   the date when You shipped the LCD Panel;

b.   the quantity of LCD Panels associated with each transaction, along with the units of measure for each quantity field in the data;

c.   the date when You billed Acer for the LCD Panel;

d.   the location from where You shipped the LCD Panel in each transaction;

e.   the location to which You shipped the LCD Panel in each transaction;

f.   the product code/model number for the LCD Panel and the description of the LCD Panel;

g.   the gross and net price of each LCD Panel You sold in each transaction;

h.   any discounts, rebates, credits, freight allowances, free goods and/or any other price adjustments You made in connection with each transaction;

i.   the gross and net total amount paid by Acer or its ODMs for the LCD Panel You sold in each transaction;

j.   any taxes, customs, tariffs, duties or other fees paid on the LCD Panel in each transaction;

k.   the invoice number, purchase order number, and/or any other data sufficient to identify a unique transaction.

l.      the name of the ODM or ODMs involved in each transaction.[1]

2.      <u>Finished Goods Sales Data</u>:   Please produce transaction-level data, in native format, for all LCD-containing finished products sold by You to Acer or manufactured by You for Acer from January 1996 through present. Please include fields that identify:

a.      the date when You shipped the LCD-containing finished product;

b.      the quantity of LCD-containing finished products associated with each transaction, along with the units of measure for each quantity field in the data;

c.      the date when You billed Acer for the LCD-containing finished product;

d.      the location from where You shipped the LCD-containing finished products in each transaction;

e.      the location to which You shipped the LCD-containing finished products in each transaction;

f.      the product code/model number for the LCD-containing finished product and the description of the LCD-containing finished product;

g.      the gross and net price of each LCD-containing finished product You sold in each transaction;

h.      any discounts, rebates, credits, freight allowances, free goods and/or any other price adjustments You made in connection with each transaction;

i.      the gross and net total amount paid by Acer for the LCD-containing finished products You sold in each transaction;

j.      any taxes, customs, tariffs, duties or other fees paid on the LCD-containing finished products in each transaction;

k.      the invoice number, purchase order number, and/or any other data

_____

[1] See Attachment C for a list of the Acer Plaintiffs ODMs and LCD Panel Suppliers.

5

sufficient to identify a unique transaction.

3.      Please produce documents or databases sufficient to identify all physical characteristics You use to identify each unique LCD Panel, and LCD-containing finished product, contained in the data produced in response to Requests Nos. 1 and 2, respectively.

4.      For each unique LCD Panel and LCD-containing finished product identified in the data produced in response to Requests Nos. 1 and 2, please produce:

      a.      documents and/or data sufficient to identify the supplier of the LCD Panel, including the supplier of the LCD Panel for each unique LCD-containing finished product;[2]

      b.      the part number of the LCD Panel, including the part number of the LCD Panel contained in each LCD-containing finished product; and

      c.      all information You maintain concerning the specifications and characteristics of the LCD Panel, including the specifications and characteristics of the LCD Panel contained in each unique LCD-containing finished product.

5.      Please produce documents or data sufficient to explain all model codes contained in the data produced in response to Requests Nos. 1 and 2.

6.      LCD Panel Cost Data:  Please produce data, in native format, sufficient to show, by month or quarter, from January 1996 through present, and for each type of LCD Panel sold by You to Acer or sold by You to Acer's ODMs for incorporation into Acer's LCD-containing finished products during this time period, Your costs incurred in connection with the manufacture and sale of those LCD Panels, including cost of goods sold (COGS) and costs of goods manufactured (COGM).

      a.      COGS and COGM data should include a breakdown of material, labor,

---

[2] See Attachment C for a list of the Acer Plaintiffs ODMs and LCD Panel Suppliers.

variable overhead, and fixed overhead, and any other cost categories tracked in the ordinary course of business.

b.      If You utilize a standard costing system, please include standard cost and variance data for the above cost categories. If this level of data is unavailable then please provide product/product line profit and loss statements at the most disaggregated level available.

7.      Finished Goods Cost Data:  Please produce data, in native format, sufficient to show, by month or quarter, from January 1996 through present, and for each type of LCD-containing finished product sold by You to Acer or manufactured by You for Acer during this time period, Your costs incurred in connection with the manufacture and sale of those LCD-containing finished products, including cost of goods sold (COGS) and costs of goods manufactured (COGM).

a.      COGS and COGM data should include a breakdown of material, labor, variable overhead, and fixed overhead, and any other cost categories tracked in the ordinary course of business.

b.      If You utilize a standard costing system, please include standard cost and variance data for the above cost categories. If this level of data is unavailable then please provide product/product line profit and loss statements at the most disaggregated level available.

8.      Please produce documents and/or data sufficient to identify, for each measurement of cost included in the data produced in response to Requests Nos. 6 and 7, each component of that measurement of cost.

9.      Please produce all communications between You, the suppliers of the LCD Panels, and any other persons or entities concerning the prices of the LCD Panels sold to Acer,

manufactured by You for Acer, and/or sold to Acer's ODMs for incorporation into Acer's LCD-containing finished products.

10. Please produce all documents concerning the prices of the LCD Panels sold to Acer or sold to Acer's ODMs for incorporation into Acer's LCD-containing finished products.

11. Please produce all documents relating to communications between You and any other person or entity concerning the prices of LCD Panels and the prices of LCD-containing finished products.

12. Please produce all documents concerning:

    a. the prices of the LCD Panels sold to Acer or to Acer's ODMs for incorporation into Acer's LCD-containing finished products; and

    b. the prices of the LCD Panels to be incorporated into LCD-containing finished products sold to Acer or manufactured by You for Acer.

13. <u>LCD Panel Purchase Data</u>:  For each unique LCD-containing finished product identified in the data produced in response to Request No. 2, please produce transactional-level data, in native format, reflecting Your purchases of LCD Panels in connection with the sale of those LCD-containing finished products to Acer or the manufacture of those LCD-containing finished products for Acer, from January 1996 through present, including, but not limited to documents or data concerning:

    a. the date when You received the LCD Panels;

    b. the quantity of LCD Panels associated with each transaction, and the units of measure for each quantity field in the data;

    c. the location from where You took delivery of the LCD Panels;

    d. the manufacturer of the LCD Panel;

    e. the specific entity that shipped the LCD Panels to You;

    f.   data or information used to identify the specifications of each LCD Panel, including but not limited to part numbers, serial numbers or any other unique identifier, complete product descriptions, and size;

    g.   the gross and net price of each LCD Panel You purchased in each transaction;

    h.   any discounts, rebates, credits, freight allowances, free goods and/or any other price adjustments You made in connection with each transaction involving an LCD Panel;

    i.   the gross and net total amount paid for the LCD Panels You purchased in connection with each such transaction;

    j.   any taxes, customs, tariffs, duties or other fees paid on each LCD Panel You purchased;

    k.   the invoice number, purchase order number, and/or any other data sufficient to identify a unique transaction.

14.    Documents sufficient to show Your relationship with Your parents, subsidiaries and affiliates.

## IV.   DEPOSITION TOPICS

1.    <u>LCD Panel Sales Data</u>:  Your transaction-level data for all LCD Panels sold by You to Acer or sold by You to Acer's original design manufacturers ("ODMs") for incorporation into Acer's LCD-containing finished products from January 1996 through present, including:

    a.    the date when You shipped the LCD Panel;

    b.    the quantity of LCD Panels associated with each transaction, along with the units of measure for each quantity field in the data;

    c.    the date when You billed Acer for the LCD Panel;

    d.    the location from where You shipped the LCD Panel in each transaction;

e.  the location to which You shipped the LCD Panel in each transaction;

f.  the product code/model number for the LCD Panel and the description of the LCD Panel;

g.  the gross and net price of each LCD Panel You sold in each transaction;

h.  any discounts, rebates, credits, freight allowances, free goods and/or any other price adjustments You made in connection with each transaction;

i.  the gross and net total amount paid by Acer or its ODMs for the LCD Panel You sold in each transaction;

j.  any taxes, customs, tariffs, duties or other fees paid on the LCD Panel in each transaction;

k.  the invoice number, purchase order number, and/or any other data sufficient to identify a unique transaction.

l.  the name of the ODM or ODMs involved in each transaction.

2.  <u>Finished Goods Sales Data</u>:  Your transaction-level data for all LCD-containing finished products sold by You to Acer or manufactured by You for Acer from January 1996 through present, including:

a.  the date when You shipped the LCD-containing finished product;

b.  the quantity of LCD-containing finished products associated with each transaction, along with the units of measure for each quantity field in the data;

c.  the date when You billed Acer for the LCD-containing finished product;

d.  the location from where You shipped the LCD-containing finished products in each transaction;

e.  the location to which You shipped the LCD-containing finished products in each transaction;

   f.  the product code/model number for the LCD-containing finished product and the description of the LCD-containing finished product;

   g.  the gross and net price of each LCD-containing finished product You sold in each transaction;

   h.  any discounts, rebates, credits, freight allowances, free goods and/or any other price adjustments You made in connection with each transaction;

   i.  the gross and net total amount paid by Acer for the LCD-containing finished products You sold in each transaction;

   j.  any taxes, customs, tariffs, duties or other fees paid on the LCD-containing finished products in each transaction;

   k.  the invoice number, purchase order number, and/or any other data sufficient to identify a unique transaction.

  3.  All physical characteristics You use to identify each unique LCD Panel, and LCD-containing finished product, contained in the data produced in response to Document Requests Nos. 1 and 2, respectively.

  4.  For each unique LCD Panel and LCD-containing finished product identified in the data produced in response to Document Requests Nos. 1 and 2, the supplier of the LCD Panel, including the supplier of the LCD Panel for each unique LCD-containing finished product; the part number of the LCD Panel, including the part number of the LCD Panel contained in each LCD-containing finished product; and the specifications and characteristics of the LCD Panel contained in each unique LCD-containing finished product.

  5.  All model codes contained in the data produced in response to Document Requests Nos. 1 and 2.

  6.  <u>LCD Panel Cost Data</u>:  By month or quarter, from January 1996 through present,

and for each type of LCD Panel sold by You to Acer or sold by You to Acer's ODMs for incorporation into Acer's LCD-containing finished products during this time period, Your costs incurred in connection with the manufacture and sale of those LCD Panels, including cost of goods sold (COGS) and costs of goods manufactured (COGM).

7.     <u>Finished Goods Cost Data</u>:   By month or quarter, from January 1996 through present, and for each type of LCD-containing finished product sold by You to Acer or manufactured by You for Acer during this time period, Your costs incurred in connection with the manufacture and sale of those LCD-containing finished products, including cost of goods sold (COGS) and costs of goods manufactured (COGM).

8.     For each measurement of cost included in the data produced in response to Document Requests Nos. 6 and 7, identify each component of that measurement of cost.

9.     Communications between You, the suppliers of the LCD Panels, and any other persons or entities concerning the prices of the LCD Panels sold to Acer, manufactured by You for Acer, and/or sold to Acer's ODMs for incorporation into Acer's LCD-containing finished products.

10.     Communications between You and any other person or entity concerning the prices of LCD Panels and the prices of LCD-containing finished products.

11.     The prices of the LCD Panels sold to Acer or to Acer's ODMs for incorporation into Acer's LCD-containing finished products; and the prices of the LCD Panels to be incorporated into LCD-containing finished products sold to Acer or manufactured by You for Acer.

12.     <u>LCD Panel Purchase Data</u>:   For each unique LCD-containing finished product identified in the data produced in response to Document Request No. 2, discuss transactional-level data reflecting Your purchases of LCD Panels in connection with the sale of those

LCD-containing finished products to Acer or the manufacture of those LCD-containing finished products for Acer, from January 1996 through present, including, but not limited to documents or data concerning:

      a.      the date when You received the LCD Panels;

      b.      the quantity of LCD Panels associated with each transaction, and the units of measure for each quantity field in the data;

      c.      the location from where You took delivery of the LCD Panels;

      d.      the manufacturer of the LCD Panel;

      e.      the specific entity that shipped the LCD Panels to You;

      f.      data or information used to identify the specifications of each LCD Panel, including but not limited to part numbers, serial numbers or any other unique identifier, complete product descriptions, and size;

      g.      the gross and net price of each LCD Panel You purchased in each transaction;

      h.      any discounts, rebates, credits, freight allowances, free goods and/or any other price adjustments You made in connection with each transaction involving an LCD Panel;

      i.      the gross and net total amount paid for the LCD Panels You purchased in connection with each such transaction;

      j.      any taxes, customs, tariffs, duties or other fees paid on each LCD Panel You purchased;

      k.      the invoice number, purchase order number, and/or any other data sufficient to identify a unique transaction.

13.      Your relationship with Your parents, subsidiaries, and affiliates.

14.   <u>Authentication of Documents</u>:   Authentication of all documents produced in response to this Letter Rogatory.

Attachment B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In Re TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No.: M-07-1827 SI |
|  | MDL NO. 1827 |
| This Document Relates to: | STIPULATED PROTECTIVE ORDER |
| ALL ACTIONS. |  |

### 1.    PURPOSES AND LIMITATIONS.

Disclosure and discovery activity in this action may involve production of trade secrets or other confidential research, development, or commercial information, within the meaning of Fed.R.Civ.P. 26(c); or other private or competitively sensitive information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords extends only to the limited information or items that are entitled under the applicable legal principles to confidential treatment. The parties further acknowledge, as set forth in Section 10, below, that this Stipulated Protective Order creates no entitlement to file confidential information under seal. Civil Local Rule 79-5 sets forth the

procedures that must be followed and reflects the standards that will be applied when a party seeks permission from the Court to file material under seal, and is hereby incorporated by reference.

**2.    DEFINITIONS.**

2.1    <u>Party</u>:  any party to this action, including all of its officers, directors, and employees.

2.2    <u>Disclosure or Discovery Material</u>:  all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, documents, testimony, transcripts, or tangible things) that are produced or generated in disclosures or responses to discovery in this matter.

2.3    <u>Confidential Information or Items</u>:  information (regardless of how generated, stored or maintained) or tangible things that qualify for protection under standards developed under Fed.R.Civ.P. 26(c).

2.4    <u>Highly Confidential Information or Items</u>:  extremely sensitive Confidential Information or Items whose disclosure to another Party or non-party would create a substantial risk of injury that could not be avoided by less restrictive means.

2.5    <u>Receiving Party</u>:  a Party that receives Disclosure or Discovery Material from a Producing Party.

2.6    <u>Producing Party</u>:  a Party or non-party that produces Disclosure or Discovery Material in this action.

2.7.    <u>Designating Party</u>:  a Party or non-party that designates information or items that it produces in disclosures or in responses to discovery as "Confidential" or "Highly Confidential."

2.8    <u>Protected Material</u>:  any Disclosure or Discovery Material that is designated as "Confidential" or as "Highly Confidential."

2.9.    <u>Outside Counsel</u>:  attorneys, along with their paralegals, and other support personnel, who are not employees of a Party but who are retained to represent or advise a Party in this action.

2

STIPULATED PROTECTIVE ORDER

1    2.10    In House Legal Personnel:  attorneys and other personnel employed by

2    a Party to perform legal functions who are responsible for overseeing this litigation for the

3    Party.

4    2.11    Counsel (without qualifier):  Outside Counsel and In House Legal

5    Personnel (as well as their support staffs, including but not limited to attorneys, paralegals,

6    secretaries, law clerks, and investigators).

7    2.12    Expert and/or Consultant:  a person with specialized knowledge or

8    experience in a matter pertinent to the litigation, along with his or her employees and support

9    personnel, who has been retained by a Party or its Counsel to serve as an expert witness or as

10   a consultant in this action, and who is not currently an employee, nor has been an employee

11   within four years of the date of entry of this Order, of a Party or of a TFT-LCD business unit

12   of a non-party, and who, at the time of retention, is not anticipated to become an employee of

13   a Party or of a TFT-LCD business unit of a non-party.  This definition includes a professional

14   jury or trial consultant retained in connection with this litigation.

15   2.13    Professional Vendors:  persons or entities that provide litigation support

16   services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations;

17   organizing, storing, retrieving data in any form or medium; *etc.*) and their employees and

18   subcontractors.

19   **3.    SCOPE.**

20   The protections conferred by this Stipulated Protective Order cover not only

21   Protected Material (as defined above), but also any information copied or extracted therefrom,

22   as well as all copies, excerpts, summaries, or compilations thereof, plus testimony,

23   conversations, or presentations by Parties or Counsel in settings that might reveal Protected

24   Material.  However, this Order shall not be construed to cause any Counsel to produce, return,

25   and/or destroy their own attorney work product, or the work product of their co-counsel.

26   **4.    DURATION.**

27   The confidentiality obligations imposed by this Order shall remain in effect until

28   the Designating Party agrees otherwise in writing or this Court orders otherwise.

3

STIPULATED PROTECTIVE ORDER

1    **5.     DESIGNATING PROTECTED MATERIAL.**

2        5.1    Exercise of Restraint and Care in Designating Material for Protection.

3    Each Party or non-party that designates information or items for protection under this Order

4    must take care to limit any such designation to specific material that qualifies under the

5    appropriate standards and avoid indiscriminate designations.

6            If it comes to a Designating Party's attention that information or items that it

7    designated for protection do not qualify for protection at all, or do not qualify for the level of

8    protection initially asserted, that Designating Party must promptly notify all Receiving Parties

9    that it is withdrawing or changing the mistaken designation.

10        5.2    Manner and Timing of Designations.  Except as otherwise provided in

11    this Order (*see, e.g.*, section 5.2(b), below), or as otherwise stipulated or ordered, material

12    that qualifies for protection under this Order must be clearly so designated before the material

13    is disclosed or produced.  Notwithstanding the preceding sentence, should a Producing Party

14    discover that it produced material that was not designated as Protected Material or that it

15    produced material that was designated as Protected Material but had designated that Protected

16    Material in the incorrect category of Protected Material, the Producing Party may notify all

17    Parties, in writing, of the error and identifying (by bates number or other individually

18    identifiable information) the affected documents and their new designation or re-designation.

19    Thereafter, the material so designated or re-designated will be treated as Protected Material.

20    Promptly after providing such notice, the Producing Party shall provide re-labeled copies of

21    the material to each Receiving Party reflecting the change in designation.  The Receiving Party

22    will replace the incorrectly designated material with the newly designated materials and will

23    destroy the incorrectly designated materials.

24            Designation in conformity with this Order requires:

25        (a)    for information in documentary form (apart from transcripts of

26    depositions or other pretrial or trial proceedings), that the Producing Party affix the

27    legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on each page that

28    contains protected material.

4

STIPULATED PROTECTIVE ORDER

1          (b)     for testimony given in deposition, that a Party, or a non-party that

2   sponsors, offers, gives, or elicits the testimony, designate any portion of the testimony

3   as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," either on the record before

4   the deposition is concluded, or in writing on or before the later of (i) fourteen days after

5   the final transcript is received or (ii) the date by which any review by the witness and

6   corrections to the transcript are to be completed under Fed. R. Civ. P. 30(e). Only

7   those portions of the testimony that are designated for protection in accordance with the

8   preceding sentence shall be covered by the provisions of this Stipulated Protective

9   Order. The entire testimony shall be deemed to have been designated Highly

10   Confidential until the time within which the transcript may be designated has elapsed.

11   If testimony is not designated within the prescribed time period, then such testimony

12   shall not be deemed Confidential or Highly Confidential except as ordered by the

13   Court.

14         Transcript pages containing Protected Material must be separately bound by the

15   court reporter, who must affix to each such page the legend "CONFIDENTIAL" or

16   "HIGHLY CONFIDENTIAL," as instructed by the Party or nonparty sponsoring,

17   offering, giving or eliciting the witness' testimony.

18          (c)     for information produced in electronic or video format, and for any

19   other tangible items, that the Producing Party affix in a prominent place on the exterior

20   of the container or containers in which the information or item is stored the legend

21   "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

22         5.3   Inadvertent Failures to Designate. If corrected, an inadvertent failure to

23   designate qualified information or items as "Confidential" or "Highly Confidential" does not,

24   standing alone, waive the Designating Party's right to secure protection under this Order for

25   such material. If material is re-designated as "Confidential" or "Highly Confidential" after the

26   material was initially produced, the Receiving Party, upon notification of the designation, must

27   make reasonable efforts to assure that the material is treated in accordance with the provisions

28   of this Order.

STIPULATED PROTECTIVE ORDER

1          5.4    Increasing the Designation of Information or Items Produced by Other

2    Parties or Non-Parties.  Subject to the standards of paragraph 5.1, a Party may increase the

3    designation (*i.e.*, change any Disclosure or Discovery Material produced without a designation

4    to a designation of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or designate any

5    Disclosure or Discovery Material produced as "CONFIDENTIAL" to a designation of

6    "HIGHLY CONFIDENTIAL") of any Discovery Material produced by any other Party or

7    non-Party, provided that said Discovery Material contains the upward Designating Party's own

8    Confidential or Highly Confidential Information.  Any such increase in the designation of a

9    document shall be made within 90 days of the date of its production, unless good cause is

10   shown for a later increase in the designation.

11         Increasing a designation shall be accomplished by providing written notice to all

12   Parties identifying (by bates number or other individually identifiable information) the

13   Disclosure or Discovery Material whose designation is to be increased.  Promptly after

14   providing such notice, the upward Designating Party shall provide re-labeled copies of the

15   material to each Receiving Party reflecting the change in designation.  The Receiving Party

16   will replace the incorrectly designated material with the newly designated materials and will

17   destroy the incorrectly designated materials.  Any Party may object to the increased

18   designation of Disclosure or Discovery Materials pursuant to the procedures set forth in

19   paragraph 6 regarding challenging designations.  The upward Designating Party shall bear the

20   burden of establishing the basis for the increased designation.

21         **6.**    **CHALLENGING CONFIDENTIALITY DESIGNATIONS.**

22         6.1    Timing of Challenges.  A Party does not waive its right to challenge a

23   confidentiality designation by electing not to mount a challenge promptly after the original

24   designation is disclosed.

25         6.2    Meet and Confer.  A Party that elects to initiate a challenge to a

26   Designating Party's confidentiality designation must do so in good faith and must begin the

27   process by notifying the Designating Party in writing, by telephone or in person of its challenge

28   and identify the challenged material, then conferring directly in voice to voice dialogue (other

STIPULATED PROTECTIVE ORDER

1  forms of communication are not sufficient) with counsel for the Designating Party. The Parties

2  must then meet and confer in good faith. Each Party must explain the basis for its respective

3  position about the propriety of the challenged confidentiality designations. The parties shall

4  have fourteen (14) days from the initial notification of a challenge to complete this meet and

5  confer process.

6        6.3    Judicial Intervention. In any judicial proceeding challenging a

7  confidentiality designation, the burden of persuasion with respect to the propriety of the

8  confidentiality designation shall remain upon the Designating Party. If the parties are not able

9  to resolve a dispute about a confidentiality designation within the time provided in paragraph

10  6.2, above, the parties shall, within fourteen (14) days thereafter, prepare and present to the

11  Special Master a joint letter brief that identifies the challenged material and sets forth the

12  respective positions of the parties about the propriety of the challenged confidentiality

13  designations. Until the ruling on the dispute becomes final pursuant to the provisions of

14  Pre-Trial Order No. 4, all parties shall continue to afford the material in question the level of

15  protection to which it is entitled under the Designating Party's designation.

16        In the event that the final ruling is that the challenged material is not confidential

17  or that its designation should be changed, the Designating Party shall reproduce copies of all

18  materials with their designations removed or changed in accordance with the ruling within

19  thirty (30) days at the expense of the Designating Party.

20        **7.**    **ACCESS TO AND USE OF PROTECTED MATERIAL.**

21        7.1    Basic Principles. A Receiving Party may use Protected Material that is

22  disclosed or produced by a Producing Party only in connection with this action for prosecuting,

23  defending, or attempting to settle this action. Such Protected Material may be disclosed only

24  to the categories of persons and under the conditions described in this Order. When the

25  litigation has been terminated, a Receiving Party must comply with the provisions of section 11,

26  below (FINAL DISPOSITION).

27        Protected Material must be stored and maintained by a Receiving Party at a

28  location and in a secure manner that ensures that access is limited to the persons authorized

7

STIPULATED PROTECTIVE ORDER

under this Order.  For purposes of this Order, a secure website, or other internet-based document depository with adequate security, shall be deemed a secure location.

7.2   Disclosure of "CONFIDENTIAL" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)   the Receiving Party's Outside Counsel of record in this action, as well as employees of said counsel to whom it is reasonably necessary to disclose the information for this litigation;

(b)   current or former officers, directors, and employees of Parties to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement To Be Bound by Protective Order" (Exhibit A);

(c)   Experts and/or Consultants with respect to each of whom (1) disclosure is reasonably necessary for this litigation, and (2) an "Agreement To Be Bound by Protective Order" (Exhibit A) has been signed;

(d)   the Court and its personnel;

(e)   stenographers, their staffs, and professional vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement To Be Bound by Protective Order" (Exhibit A);

(f)   the author, addressees, or recipients of the document, or any other natural person who would have likely reviewed such document during his or her employment as a result of the substantive nature of his or her employment position,  or who is specifically identified in the document, or whose conduct is purported to be specifically identified in the document;

(g)   witnesses in the action to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement To Be Bound by Protective Order" (Exhibit A); provided that, Confidential Information may be disclosed to a witness during their deposition, but only if they have executed the "Agreement to Be Bound by Protective Order" (Exhibit A), which shall be made an exhibit to the deposition

8

STIPULATED PROTECTIVE ORDER

1      transcript, or have agreed on the record to keep the information confidential and not to

2      use it for any purpose, or have been ordered to do so; and provided further that, pages

3      of transcribed deposition testimony or exhibits to depositions that reveal Confidential

4      Information must be marked "Confidential" and separately bound by the court reporter

5      and not included in the main deposition transcript and exhibit binder, and may not be

6      disclosed to anyone except as permitted under this Stipulated Protective Order; and

7               (h)      any other person to whom the Designating Party agrees in writing or on

8      the record, and any other person to whom the Court compels access to the Confidential

9      Information.

10           7.3     Disclosure of "HIGHLY CONFIDENTIAL" Information or Items.

11 Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a

12 Receiving Party may disclose any information or item designated "HIGHLY

13 CONFIDENTIAL" only to:

14               (a)      the Receiving Party's Outside Counsel of record in this action, as well as

15      employees of said counsel to whom it is reasonably necessary to disclose the

16      information for this litigation;

17               (b)      Experts and/or Consultants with respect to each of whom (1) disclosure

18      is reasonably necessary for this litigation, and (2) an "Agreement To Be Bound by

19      Protective Order" (Exhibit A) has been signed;

20               (c)      the Court and its personnel;

21               (d)      stenographers, their staffs, and professional vendors to whom disclosure

22      is reasonably necessary for this litigation and who have signed the "Agreement to Be

23      Bound by Protective Order" (Exhibit A);

24               (e)      the author, addressees or recipients of the document, or any other

25      natural person who would have likely reviewed such document during his or her

26      employment as a result of the substantive nature of his or her employment position, or

27      who is specifically identified in the document, or whose conduct is purported to be

28      specifically identified in the document;

9

STIPULATED PROTECTIVE ORDER

1    (f)  deposition witnesses but only during their depositions and only if they

2 have executed the "Agreement to Be Bound by Protective Order" (Exhibit A), which

3 shall be made an exhibit to the deposition transcript, or have agreed on the record to

4 keep the information confidential and not to use it for any purpose, or have been

5 ordered to do so; and in addition, if the witness is an employee of a Party or is a former

6 employee of a Party, then In House Legal Personnel of the Party in attendance at the

7 deposition of such a witness, may also be present during that portion of the deposition

8 but only if the In House Legal Personnel has signed the "Agreement to Be Bound by

9 Protective Order" (Exhibit A); provided that, pages of transcribed deposition testimony

10 or exhibits to depositions that reveal Highly Confidential Information must be marked

11 "Highly Confidential" and separately bound by the court reporter and not included in

12 the main deposition transcript and exhibit binder, and may not be disclosed to anyone

13 except as permitted under this Stipulated Protective Order; and provided, further that,

14 the parties will meet and confer if the Designating Party believes a particular document

15 requires different treatment for use at deposition; and

16    (g)  any other person to whom the Designating Party agrees in writing or on

17  the record, and any other person to whom the Court compels access to the Highly

18  Confidential Information.

19    7.4  Retention of Exhibit A.  Outside Counsel for the Party that obtains the

20 signed "Agreements To Be Bound by Protective Order" (Exhibit A), as required above, shall

21 retain them for one year following the final termination of this action, including any appeals,

22 and shall make them available to other Parties upon good cause shown.

23    7.5  Retention of Protected Material.  Persons who have been shown

24 Protected Material pursuant to Section 7.2(b), (f), or (g), or Section 7.3(e) or (f) shall not

25 retain copies of such Protected Material.

26

27

28

10

STIPULATED PROTECTIVE ORDER

**8.  PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION.**

If a Receiving Party is served with a discovery request, subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," the Receiving Party must so notify the Designating Party, in writing (by fax or electronic mail, if possible), along with a copy of the discovery request, subpoena or order, as soon as reasonably practicable.

The Receiving Party also must immediately inform the party who caused the discovery request, subpoena or order to issue in the other litigation that some or all the material covered by the subpoena or order is the subject of this Protective Order.  In addition, the Receiving Party must deliver a copy of this Stipulated Protective Order promptly to the party in the other action that caused the discovery request, subpoena or order to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Stipulated Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interest in the court from which the discovery request, subpoena or order is issued.  The Designating Party shall bear the burdens and the expenses of seeking protection in that court of its confidential or highly confidential material. Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

**9.  UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL.**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement To Be Bound" that is attached hereto as Exhibit A.

11

STIPULATED PROTECTIVE ORDER

**10.     FILING PROTECTED MATERIAL.**

Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5.

**11.     FINAL DISPOSITION.**

Unless otherwise ordered or agreed in writing by the Producing Party, within thirty days after the final termination of this action, including any appeals, each Receiving Party must return all Protected Material to the Producing Party. As used in this subdivision, "Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material. The Receiving Party may destroy some or all of the Protected Material instead of returning it. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the thirty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material. Notwithstanding this provision, counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION), above.

**12.     INADVERTENTLY PRODUCED DOCUMENTS.**

If a Party at any time notifies any other Party that it inadvertently produced documents, testimony, information, and/or things that are protected from disclosure under the attorney-client privilege, work product doctrine, and/or any other applicable privilege or immunity from disclosure, or the Receiving Party discovers such inadvertent production, the inadvertent production shall not be deemed a waiver of the applicable privilege or protection.

12

STIPULATED PROTECTIVE ORDER

The Receiving Party shall immediately return all copies of such documents, testimony, information and/or things to the inadvertently producing Party and shall not use such items for any purpose until further order of the Court. In all events, such return must occur within three (3) business days of receipt of notice or discovery of the inadvertent production. The return of any discovery item to the inadvertently producing Party shall not in any way preclude the Receiving Party from moving the Court for a ruling that the document or thing was never privileged.

### 13. ATTORNEY RENDERING ADVICE

Nothing in this Protective Order will bar or otherwise restrict an attorney from rendering advice to his or her client with respect to this matter or from relying upon or generally referring to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" Disclosure or Discovery Material in rendering such advice; provided however, that in rendering such advice or in otherwise communicating with his or her client, the attorney shall not reveal or disclose the specific content thereof if such disclosure is not otherwise permitted under this Protective Order.

### 14. DISPOSITIVE MOTION HEARINGS AND TRIAL

The terms of this Protective Order shall govern in all circumstances except for presentations of evidence and argument at hearings on dispositive motions and at trial. The parties shall meet and confer in advance of such proceedings and seek the guidance of the Court as to appropriate procedures to govern such proceedings.

### 15. MISCELLANEOUS.

15.1 <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

15.2 <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

13

STIPULATED PROTECTIVE ORDER

1    **IT IS SO STIPULATED.**

2                                      PEARSON, SIMON, SOTER, WARSHAW &
                                       PENNY, LLP
3

4                                      By: _____
                                                    Bruce L. Simon
5

6                                      Bruce L. Simon (State Bar No. 96241)
                                       44 Montgomery Street, Suite 1200
7                                      San Francisco, CA 94104
                                       Telephone:      (415) 433-9000
8                                      Facsimile:      (415) 433-9008

9                                      Interim Co-Lead Counsel for the Direct Purchaser
                                       Plaintiffs
10
                                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
11

12                                     By: _____
                                                  Richard M. Heimann
13

14                                     Richard M. Heimann (State Bar No. 63607)
                                       275 Battery Street, 30th Floor
15                                     San Francisco, CA 94111-3339
                                       Telephone:      (415) 956-1000
16                                     Facsimile:      (415) 956-1008

17                                     Interim Co-Lead Counsel for the Direct Purchaser
                                       Plaintiffs
18

19                                     GIRARD GIBBS, LLP

20

21                                     By: _____
                                                  Elizabeth C. Pritzker
22

23                                     Elizabeth C. Pritzker (State Bar No. 146267)
                                       601 California Street, Suite 1400
24                                     San Francisco, CA 94108
                                       Telephone:      (415) 981-4800
25                                     Facsimile:      (415) 981-4846

26                                     Interim Liaison Counsel for the Direct Purchaser
                                       Plaintiffs
27

28

                                             14
─────────────────────────────────────────────────────────
STIPULATED PROTECTIVE ORDER

ZELLE HOFMANN VOELBEL MASON &
GETTE LLP

By: _Francis O. Scarpulla_____
          Francis O. Scarpulla

Francis O. Scarpulla (State Bar No. 41059)
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:       (415) 693-0700
Facsimile:       (415) 693-0770

Interim Co-Lead Counsel for the Indirect Purchaser
Plaintiffs

ALIOTO LAW FIRM

By: _Joseph M. Alioto_____
          Joseph M. Alioto

Joseph M. Alioto (State Bar No. 42680)
555 California Street, Suite 3160
San Francisco, CA 94104
Telephone:       (415) 434-8900
Facsimile:       (415) 434-9200

Interim Co-Lead Counsel for the Indirect Purchaser
Plaintiffs

MINAMI TAMAKI LLP

By: _____
          Jack W. Lee

Jack W. Lee (State Bar No. 71626)
360 Post Street, 8th Floor
San Francisco, California 94108
Telephone:       (415) 788-0204
Facsimile:       (415) 398-3887

Interim Liaison Counsel for the Indirect Purchaser
Plaintiffs

15

STIPULATED PROTECTIVE ORDER

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: _Albert J Boro, J_
        Albert J. Boro, Jr.

Albert J. Boro, Jr. (State Bar No. 126657)
50 Fremont Street
San Francisco, CA 94105
Telephone: (415) 983-1000
Facsimile:    (415) 983-1200

Attorneys for Defendants Sharp Corporation and
Sharp Electronics Corporation

SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: _____
        Michael Healy

Michael Healy (State Bar No. 95098)
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105
Tel:    (415) 781-7900
Fax:   (415) 781-2635

Attorneys for Defendant
AU Optronics Corporation America

WILMER CUTLER PICKERING HALE AND DORR
LLP

By: _____
        Steven F. Cherry

Steven F. Cherry (*pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel:   (202) 663-6000
Fax:   (202) 663-6363

Attorneys for Defendants Chi Mei Optoelectronics USA,
Inc., CMO Japan Co., Ltd., and Nexgen Mediatech USA,
Inc.

STIPULATED PROTECTIVE ORDER

SEDGWICK, DETERT, MORAN & ARNOLD LLP


By: _Michael F. Healy_
              Michael Healy

Michael Healy (State Bar No. 95098)
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, CA 94105
Tel:    (415) 781-7900
Fax:   (415) 781-2635

Attorneys for Defendant
AU Optronics Corporation America


WILMER CUTLER PICKERING HALE AND DORR LLP


By: _____
              Steven F. Cherry

Steven F. Cherry (*pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel:    (202) 663-6000
Fax:   (202) 663-6363

Attorneys for Defendants Chi Mei Optoelectronics USA, Inc., CMO Japan Co., Ltd., and Nexgen Mediatech USA, Inc.
PAUL, HASTINGS, JANOFSKY & WALKER LLP


By: _____
              Kevin C. McCann

Kevin C. McCann (State Bar No. 120874)
55 Second Street, 24th Floor
San Francisco, CA 94105
Tel:    (415) 856-7000
Fax:   (415) 856-7100

Attorneys for Defendants Epson Electronics America, Inc. and Epson Imaging Devices Corporation

17

STIPULATED PROTECTIVE ORDER

1

SEDGWICK, DETERT, MORAN & ARNOLD LLP

2

3    By: _____

Michael Healy

4

Michael Healy (State Bar No. 95098)

5    One Market Plaza
Steuart Tower, 8th Floor

6    San Francisco, CA 94105
Tel:      (415) 781-7900

7    Fax:      (415) 781-2635

8    Attorneys for Defendant

9    AU Optronics Corporation America

10   WILMER CUTLER PICKERING HALE AND DORR
LLP

11

12   By: _____

13                      Steven F. Cherry

14   Steven F. Cherry (*pro hac vice*)

15   1875 Pennsylvania Avenue NW
Washington, DC 20006

16   Tel:      (202) 663-6000
Fax:      (202) 663-6363

17   Attorneys for Defendants Chi Mei Optoelectronics

18   USA, Inc., CMO Japan Co., Ltd., and Nexgen
Mediatech USA, Inc.

19   PAUL, HASTINGS, JANOFSKY & WALKER LLP

20

21   By: _____

Kevin C. McCann

22

Kevin C. McCann (State Bar No. 120874)

23   55 Second Street, 24th Floor
San Francisco, CA 94105

24   Tel:      (415) 856-7000
Fax:      (415) 856-7100

25

26   Attorneys for Defendants Epson Electronics America,
Inc. and Epson Imaging Devices Corporation

27

28

17

STIPULATED PROTECTIVE ORDER

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
                Kevin C. McCann

Kevin C. McCann (State Bar No. 120874)
55 Second Street, 24th Floor
San Francisco, CA 94105
Tel:        (415) 856-7000
Fax:       (415) 856-7100

Attorneys for Defendants Epson Electronics America,
Inc. and Epson Imaging Devices Corporation


MORGAN, LEWIS & BOCKIUS LLP


By: _____
                Kent M. Roger

Kent M. Roger (State Bar No. 95987)
One Market
Spear Street Tower
San Francisco, CA 94105
Tel.:        (415) 442-1000
Fax:        (415) 442-1001

Attorneys for Defendants Hitachi Electronic Devices
(USA), Inc., Hitachi, Ltd., and Hitachi Displays, Ltd.


WINSTON & STRAWN LLP


By: _____
                Lawrence R. Desideri

Lawrence R. Desideri (*pro hac vice*)
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:        (312) 558-7883
Fax:        (312) 558-5700

Attorneys for Defendant
LG Electronics USA, Inc.

17

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
            Kevin C. McCann

Kevin C. McCann (State Bar No. 120874)
55 Second Street, 24th Floor
San Francisco, CA 94105
Tel:        (415) 856-7000
Fax:       (415) 856-7100

Attorneys for Defendants Epson Electronics America,
Inc. and Epson Imaging Devices Corporation

MORGAN, LEWIS & BOCKIUS LLP

By: _____
            Kent M. Roger

Kent M. Roger (State Bar No. 95987)
One Market
Spear Street Tower
San Francisco, CA 94105
Tel.:       (415) 442-1000
Fax:       (415) 442-1001

Attorneys for Defendants Hitachi Electronic Devices
(USA), Inc., Hitachi, Ltd., and Hitachi Displays, Ltd.

WINSTON & STRAWN LLP

By: _____
            Lawrence R. Desideri

Lawrence R. Desideri (*pro hac vice*)
35 W. Wacker Drive
Chicago, Illinois 60601
Tel:        (312) 558-7883
Fax:       (312) 558-5700

Attorneys for Defendant
LG Electronics USA, Inc.

17

STIPULATED PROTECTIVE ORDER

1    PAUL, HASTINGS, JANOFSKY & WALKER LLP

2

3    By:_____
                    Kevin C. McCann

4
     Kevin C. McCann (State Bar No. 120874)
5    55 Second Street, 24th Floor
     San Francisco, CA 94105
6    Tel:      (415) 856-7000
     Fax:      (415) 856-7100
7

8    Attorneys for Defendants Epson Electronics America,
     Inc. and Epson Imaging Devices Corporation
9

10   MORGAN, LEWIS & BOCKIUS LLP

11

12   By:_____
                    Kent M. Roger

13
     Kent M. Roger (State Bar No. 95987)
14   One Market
     Spear Street Tower
15   San Francisco, CA 94105
     Tel.:     (415) 442-1000
16   Fax:      (415) 442-1001

17   Attorneys for Defendants Hitachi Electronic Devices
     (USA), Inc., Hitachi, Ltd., and Hitachi Displays, Ltd.
18

19   WINSTON & STRAWN LLP

20

21   By:_____
                    Michael P. Mayer
22

23   Lawrence R. Desideri (*pro hac vice*)
     Michael P. Mayer (*pro hac vice*)
24   35 W. Wacker Drive
     Chicago, Illinois 60601
25   Tel:      (312) 558-7883
     Fax:      (312) 558-5700
26

27   Attorneys for Defendant
     LG Electronics USA, Inc.
28

                              17

STIPULATED PROTECTIVE ORDER

1  | MORGAN, LEWIS & BOCKIUS LLP

2

3  | By:_____
   | Kent M. Roger

4

5  | Kent M. Roger (State Bar No. 95987)
   | One Market

6  | Spear Street Tower
   | San Francisco, CA 94105

7  | Tel.:    (415) 442-1000
   | Fax:     (415) 442-1001

8  | Attorneys for Defendants Hitachi Electronic Devices

9  | (USA), Inc., Hitachi, Ltd., and Hitachi Displays, Ltd.

10 | WINSTON & STRAWN LLP

11

12 | By:_____

13 | Lawrence R. Desideri

14 | Lawrence R. Desideri (*pro hac vice*)
   | 35 W. Wacker Drive

15 | Chicago, Illinois 60601
   | Tel:     (312) 558-7883

16 | Fax:     (312) 558-5700

17 | Attorneys for Defendant
   | LG Electronics USA, Inc.

18

19 | CLEARY GOTTLIEB STEEN & HAMILTON LLP

20

21 | By: _Michael R. Lazerwitz (LB)_

22 | Michael R. Lazerwitz

23 | Michael R. Lazerwitz (*pro hac vice*)
   | 2000 Pennsylvania Avenue NW

24 | Washington, DC 20006
   | Tel.:    (202) 974-1680

25 | Fax:     (202) 974 1999

26 | Attorneys for Defendants LG.Philips LCD America,
   | Inc. and LG.Philips LCD Co., Ltd.

27

28

18

STIPULATED PROTECTIVE ORDER

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

Michael R. Lazerwitz

Michael R. Lazerwitz (*pro hac vice*)
2000 Pennsylvania Avenue NW
Washington, DC 20006
Tel.:    (202) 974-1680
Fax:    (202) 974 1999

Attorneys for Defendants LG.Philips LCD America, Inc.
and LG.Philips LCD Co., Ltd.

DUANE MORRIS LLP

By: _____

George D. Niespolo

George D. Niespolo (State Bar No. 72107)
One Market Street
Spear Tower, 20th Floor
San Francisco, CA 94105
Tel.:    (415) 957-3013
Fax:    (415) 957-3001

Attorneys for Defendants NEC Electronics America, Inc.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: _____

James L. McGinnis

James L. McGinnis (State Bar No. 95788)
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Tel:    (415) 434-9100
Fax:    (415) 434-3947

Attorneys for Defendants Samsung Electronics America,
Inc., Samsung Semiconductor, Inc. and Samsung
Electronics Co., Ltd.

18

STIPULATED PROTECTIVE ORDER

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By: _____
           Michael R. Lazerwitz

Michael R. Lazerwitz (*pro hac vice*)
2000 Pennsylvania Avenue NW
Washington, DC 20006
Tel.:     (202) 974-1680
Fax:     (202) 974 1999

Attorneys for Defendants LG.Philips LCD America, Inc.
and LG.Philips LCD Co., Ltd.


DUANE MORRIS LLP


By: _____
           George D. Niespolo

George D. Niespolo (State Bar No. 72107)
One Market Street
Spear Tower, 20th Floor
San Francisco, CA 94105
Tel.:     (415) 957-3013
Fax:     (415) 957-3001

Attorneys for Defendants NEC Electronics America, Inc.


SHEPPARD MULLIN RICHTER & HAMPTON LLP


By: _____
           James L. McGinnis

James L. McGinnis (State Bar No. 95788)
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Tel:     (415) 434-9100
Fax:     (415) 434-3947

Attorneys for Defendants Samsung Electronics America,
Inc., Samsung Semiconductor, Inc. and Samsung
Electronics Co., Ltd.

18

STIPULATED PROTECTIVE ORDER

1   WHITE & CASE LLP

2

3   By: _Wayne A. Cross /mm_
                    Wayne A. Cross
4
    Wayne A. Cross (*pro hac vice*)
5   1155 Avenue of the Americas
    New York, NY 10036
6   Tel:    (212) 819-8200
    Fax:    (212) 354-8113
7
    Attorneys for Defendants Toshiba America Electronic
8   Components, Inc., Toshiba America Information
    Systems, Inc., Toshiba Corporation, and Toshiba
9   Matsushita Display Technology Co., Ltd.

10

11  SULLIVAN & CROMWELL LLP

12

13  By: _____
                    Garrard R. Beeney
14
    Garrard R. Beeney (*pro hac vice*)
15  125 Broad Street
    New York, NY 10004
16  Tel:    (212) 558-4000
    Fax:    (212) 558-3588
17
    Attorneys for Defendant
18  Koninklijke Philips Electronics N.V.

19

20

21

22  PURSUANT TO STIPULATION, IT IS SO ORDERED.

23

24                          _Susan Illston_
    DATED:_ _____    _____
25                          Hon. Susan Illston
                            United States District Judge
26

27

28

                            19

    STIPULATED PROTECTIVE ORDER

1                  WHITE & CASE LLP

2

3                  By: _____
                                   Wayne A. Cross

4

5                  Wayne A. Cross (*pro hac vice*)
                  1155 Avenue of the Americas

6                  New York, NY 10036
                  Tel:     (212) 819-8200

7                  Fax:    (212) 354-8113

8                  Attorneys for Defendants Toshiba America Electronic
                  Components, Inc., Toshiba America Information

9                  Systems, Inc., Toshiba Corporation, and Toshiba
                  Matsushita Display Technology Co., Ltd.

10

11                SULLIVAN & CROMWELL LLP

12

13                By: *Garrard R. Beeney* / nso
                                Garrard R. Beeney

14

15                Garrard R. Beeney (*pro hac vice*)
                  125 Broad Street

16                New York, NY 10004
                  Tel:     (212) 558-4000

17                Fax:    (212) 558-3588

18                Attorneys for Defendant
                  Koninklijke Philips Electronics N.V.

19

20

21

22    PURSUANT TO STIPULATION, IT IS SO ORDERED.

23

24    DATED: 3/19/12               _____

25                                       Hon. Susan Illston
                                United States District Judge

26

27

28

                                   19

STIPULATED PROTECTIVE ORDER

1                      **EXHIBIT A**

2       **ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

3         I, _____ [print full name], of

4 _____ [print or type full address],

5 declare under penalty of perjury under the laws of the United States of America that I have read

6 in its entirety and understand the Stipulated Protective Order that was issued by the United

7 States District Court for the Northern District of California, San Francisco Division, in the

8 case of In Re TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION, No.: M-07-1827 SI,

9 MDL No. 1827.

10         I agree to comply with and to be bound by all the terms of this Stipulated

11 Protective Order, and I understand and acknowledge that failure to so comply could expose me

12 to sanctions and punishment in the nature of contempt.  I solemnly promise that I will not

13 disclose in any manner any information or item that is subject to this Stipulated Protective

14 Order to any person or entity except in strict compliance with the provisions of this Order.

15         I further agree to submit to the jurisdiction of the United States District Court

16 for the Northern District of California for the purpose of enforcing the terms of this Stipulated

17 Protective Order, even if such enforcement proceedings occur after termination of this action.

18

19 Date: _____

20 City and State (or Country) where sworn and signed: _____

21

22 Printed name: _____

23 Signature: _____

24

25

26

27

28

STIPULATED PROTECTIVE ORDER

Attachment C

## Acer Plaintiffs ODM and LCD Panel Maker List

1. Advanced Displays, Inc.
2. ADI Corp.
3. Alpha Networks Inc.; Alpha Technical Services Inc.
4. Alps Electric Co., Ltd.
5. AmTRAN Technology Co. Ltd.; AmTRAN Video Corporation; AmTran America Corporation; Amtran Logistics, Inc.
6. Arima Computer Corporation; Arima Computer (Jiang Su) Co., Ltd.; Arima Computer (U.K.) Ltd.; Flextronics International Ltd.; Flextronics International USA, Inc.; Flextronics America, LLC; Flextronics Computer (Texas) Corporation; Arima Computer (Texas) Corporation
7. AU Optronics Corporation; AU Optronics Corporation America
8. ASUSTek Computer Inc.; Asus Computer International
9. BOE Corp.; BOE Hydis Technology Co., Ltd.; BOE Hydis America Inc.; Hydis Technologies Co., Ltd.; Hydis Taiwan Inc.; BOE Optoelectronics Technology Co., Ltd. (Hong Kong); Beijing BOE Optoelectronics Technology Co., Ltd.
10. Chi Mei Corporation; Chimei Innolux Corporation; Innolux Corporation; Innolux Display Corporation; Chi Mei Optoelectronics Corporation; Chi Mei Optoelectronics USA, Inc.; CMO Japan Co., Ltd.; Nexgen Mediatech, Inc.; Nexgen Mediatech USA, Inc.
11. Chunghwa Picture Tubes, Ltd.; Tatung Co.; Tatung Company of America, Inc.
12. Compal Electronics, Inc.; Compal Communications; Bizcom Electronics, Inc.; Auscom Engineering Inc.; Compal Electronics (China) Co., Ltd.; Compal Electronics Technology (Kunshan) Co., Ltd.; Compal Information (Kunshan) Co., Ltd.; Compal Information Technology (Kunshan) Co., Ltd.
13. Toppoly Optoelectronics Corp.; TPO Displays Corp.
14. Fujitsu Limited; Fujitsu Display Technologies Corp.; FDK America, Inc.
15. HannStar Display Corporation
16. Hitachi, Ltd.; Hitachi Displays, Ltd.; Hitachi Electronic Devices (USA), Inc.; Hitachi East Asia Ltd.; Hitachi High-Technologies Corporation; Hitachi High-Technologies America, Inc.; Hitachi America, Ltd.; Kaohsiung Opto-Electronics Americas, Inc.; KOE Americas, Inc.
17. Hon Hai Precision Industry Co., Ltd.; Foxconn Technology Group; Foxconn Electronics Inc.; Foxconn/Hon Hai Logistics California LLC
18. IDT International Ltd.
19. International Business Machines Corporation; IBM Japan, Ltd.
20. International Display Technology; International Display Technology Co., Inc.; International Display Technology Co., Ltd.; International Display Technology, Ltd.; International Display Technology USA Inc.
21. Inventec Corporation; Inventec Electronics (USA) Co., Ltd.; Inventec (U.S.A.) Corporation; Inventec Distribution North America Corporation; Inventec Configuration (North America) Corporation; Inventec Holding (North America) Corporation; Inventec Manufacturing (North America) Corporation; Inventec BESTA Co., Ltd.; Inventec Micro-Electronics; Inventec Multimedia & Telecom Corp.
22. IPS Alpha Technology, Ltd.
23. LG Display Co., Ltd.; LG.Philips LCD Co., Ltd.; LG Display America, Inc.; LG.Philips LCD America, Inc.; LG International (HK) Ltd.; LG.Philips LCD Taiwan Co., Ltd.; LG Display Taiwan Co., Ltd.; LG

Innotek Co., Ltd.; LG Electronics, Inc.; LG Electronics U.S.A., Inc.; LG Electronics Alabama Inc.; LG Electronics Mexicali S.A. De C.V.; LG Electronics Mexico S.A. de C.V.; LG Electronics Mobile Research U.S.A., LLC; LG Electronics Mobilecomm U.S.A., Inc.; LG Electronics Wales Ltd.; LG Semicon America, Inc.

24. Lite-ON IT Corporation; Lite-ON Technology Corporation; Lite-ON, Inc.; Lite-On Technology USA, Inc.; Lite-On Trading USA, Inc.

25. Mitsubishi Electric Corporation; Mitsubishi Electric & Electronics USA, Inc.; Mitsubishi Electric US, Inc.; Mitsubishi Digital Electronics America Inc.; Mitsubishi Electronics America, Inc.; Mitsubishi Electronics Device Group; Mitsubishi Electronics

26. Mitsui & Co., Ltd.; Mitsui & Co. (Taiwan), Ltd.; Mitsui & Co. (USA), Inc.; Mitsui Comtek Corp.

27. NEC Corporation; NEC Corporation of America; NEC Display Solutions of America, Inc.; NEC LCD Technologies, Ltd.; NEC Electronics America, Inc.; Shanghai SVA-NEC Liquid Crystal Display Co., Ltd.

28. NEC Electronics, Inc.; Renesas Electronics Corporation; Renesas Electronics America Inc.

29. Optoma Technology Inc.; Coretronic Corporation

30. Optrex Corp.

31. Panasonic Corporation; Panasonic Corporation of North America; Panasonic Liquid Crystal Display Co., Ltd.; Panasonic Industrial Sales (Taiwan) Co., Ltd.; Panasonic Industrial Devices Sales Taiwan Co., Ltd.

32. Prime View International Co., Ltd.; E Ink Corporation; E Ink Holdings Incorporated

33. Royal Philips Electronics N.V.; Philips Electronics North America Corp.; Philips Display Corp.; Philips Components Kobe K.K.; Philips Mobile Display Systems

34. Quanta Computer Inc.; Quanta Computer USA, Inc.; Quanta Manufacturing Incorporation; Quanta International, Ltd.; Quanta Service Inc.; Quanta Service Nashville LLC; Quanta Shanghai Manufacture City; Quanta Changshu Manufacturing City; Quanta Chongqing Manufacturing City

35. Quanta Display Inc.

36. S-LCD Corp.

37. Samsung Electronics Co., Ltd.; Samsung Semiconductor, Inc.; Samsung Electronics America, Inc.; Samsung Electronics Taiwan Co., Ltd.; Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Samsung SSI; Samsung Mobile Display; Samsung Display Co., Ltd.; Samsung Telecommunications America, LLC

38. Sanyo Consumer Electronics Co., Ltd.; Tottori Sanyo Electric Co., Ltd.; Sanyo Electric Co., Ltd.; Sanyo Multimedia Tottori Co., Ltd.; Sanyo Electronic Device (U.S.A.) Corporation; Sanyo North America Corporation; Sanyo Manufacturing Corporation

39. Seiko Epson Corporation; Epson Imaging Devices Corporation; Epson Electronics America, Inc.; Epson America, Inc.

40. Sharp Corporation; Sharp Electronics Corporation

41. Toshiba Corporation; Toshiba Matsushita Display Technology Co., Ltd. (n/k/a Toshiba Mobile Display Co., Ltd.); Toshiba America Electronic Components, Inc.; Toshiba America Information Systems, Inc.; Toshiba Electronics Taiwan Corporation; Toshiba Digital Media Network Taiwan Corporation; Toshiba Corporation Digital Media Network Co.; Toshiba Digital Media Network

42. Top Victory Electronics (Fujian) Co., Ltd.; Top Victory Electronics (Taiwan) Co., Ltd.; Top Victory International Limited; TP Vision Europe B.V.; TP Vision Holding B.V.; TP Vision Netherlands B.V.;

TPV Electronics (Fujian) Co., Ltd.; TPV (Top Victory) Investments Limited; TPV International (USA), Inc.; TPV Technology Limited; Envision Peripherals, Inc.

43. Unipac Optoelectronics Corp.

44. Wistron Corporation; Wistron Corporation (Shanghai) Co., Ltd.; Wistron (Kunshan) Co., Ltd.; Wistron (Zhongshan) Co., Ltd.; Wistron ITS (Beijing) Inc.; Wistron InfoComm (Qingdao) Co., Ltd.; Wistron InfoComm Technology (Kunshan) Co., Ltd.; Wistron InfoComm (Zhongshan) Corporation; Wistron Investment (Sichuan) Co., Ltd.; Wistron InfoComm Manufacturing (Kunshan) Co., Ltd.; Wistron Service (Kunshan) Co., Ltd.; Wistron InfoComm (Chongqing) Co., Ltd.; Wistron InfoComm (Chengdu) Co., Ltd.; Wistron InfoComm (Taizhou) Co., Ltd.; Wistron (Chengdu) Co., Ltd.; Wistron Optronics (Shanghai) Co., Ltd.; Wistron Mexico S.A. de C.V.; Wistron InfoComm Corporation; Wistron InfoComm Texas Corporation